IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) ) ) | Case No. 23-00623 (TJC) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) | **Re: Doc. No. 385, 394** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO MOTION OF AD-HOC COMMITTEE OF MERCY PENSIONERS TO ESTABLISH OFFICIAL COMMITTEE OF PENSIONERS UNDER 11 U.S.C. § 1102 (a)(2)**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases ("Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") files this objection (the "Objection") to the motion of the Mercy pension claimants Ad Hoc Committee (the "Ad Hoc Committee") establish an official committee of pension claimants under 11 U.S.C. § 1102(a)(2) [Docket No. 385] (the "Motion"),[1] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Committee is sympathetic to the interests of the pension claimants represented by the Ad Hoc Committee, however the appointment of an *official* committee of pension claimants (a "Pension Claimants Committee") is not required, warranted or appropriate under the circumstances of these Chapter 11 Cases. Rather, the relief requested is inconsistent with caselaw addressing the standards to be applied by Courts considering the appointment of additional committee pursuant to section 1102 of Title 11 of the United States Code (the "Bankruptcy Code") and the Motion is devoid of any evidence, authority or precedent in support thereof.

2. Applying the standards for the appointment of an official committee (as discussed further herein), the interests of the pension claimants are already adequately represented by the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Committee and, to the extent there are any *material* divergent interests (which there are not), pension claimants are already well organized and represented by separate counsel. Simply, the Ad Hoc Committee has not met its high burden for the Court to appoint an official committee of pension claimants.

3. The appointment of a second official committee would drain limited estate resources by requiring the Debtors to pay additional professional fees, which could be substantial. Pension claimants can participate as parties in interest in the Chapter 11 Cases or continue to act collectively through the Ad Hoc Committee. Further, the Committee's by-laws permit it to appoint *ex oficio* members to ensure that unique interests are adequately protected, and the United States Trustee can add a pension claimant to the Committee. These solutions are more appropriate and cost effective than appointing a second official committee.

4. Finally, the Ad Hoc Committee and the Responding Pension Claimants (defined below) fail to demonstrate that pension claimants are underrepresented as required by applicable caselaw. In fact, the Motion makes a strong case that pension claimants are adequately represented: many pension claimants have been contacted, a steering committee was appointed by those claimants, and they retained counsel to represent their collective interests. Thus, the Motion is simply a way for the Ad Hoc Committee's professionals to be paid from estate resources, to the detriment of the estates and all general unsecured creditors.

5. For the foregoing reasons and those that follow, the Committee submits that the Motion should be denied. However, the Committee remains open and willing to discuss solutions with the Ad Hoc Committee to address the concerns raised in the Motion.

## BACKGROUND

7. On August 7, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. On August 15, 2023, the United States Trustee formed the Committee [Doc. No. 107]. The Committee engaged the undersigned as its proposed legal co-counsel on August 18, 2023.

9. On October 18, 2023, the Ad Hoc Committee filed the Motion [Doc No. 385].

10. The Motion states that over 400 pension claimants have been contacted and that there is a steering committee guiding the ad hoc committee's actions, including engaging counsel to represent it in the Debtors' bankruptcy cases. *See* Motion at ¶¶ 6-13. The Ad Hoc Committee asserts, without any basis in fact, that official status would give it access to information it would otherwise be unable to obtain, improve pension claimants' ability to identify the Debtors' obligations under the pension plan or other estate assets, and facilitate the participation of pension claimants in the Chapter 11 Cases and their role in plan discussions. *Id*. at ¶¶ 31-35.

11. On October 20, 2023, three pension beneficiaries (the "Responding Pension Claimants") filed a *Statement of Certain Concerned Pension Beneficiaries in Support of the Formation of an Official Committee of pension claimants* [Docket No. 394] (the "Statement in Support"). The pension beneficiaries allege, without any factual or evidentiary basis, that their goals are potentially in conflict with the Committee to the extent the "trust" character of the Plan assets is questioned and because the pension claimants hold claims and causes of action against the Debtors and other parties that are unique to them. *Id*. at ¶¶ 4, 6. The pension claimants also assert that official status would facilitate the participation of pension claimants in the Chapter 11 Cases and their role in plan discussions. *Id*. at ¶¶ 7-8.

12. The Statement in Support also alleges that pension claimants did not receive notice of the bar date for filing general unsecured claims because the Debtors excluded them from the creditor matrix based on the Debtors' statement that the Plan assets are not property of the estate and that the pension claimants are not creditors. *Id*. at ¶¶ 7-8. Finally, the pension claimants assert (again without any support or evidence) that granting one of their representatives a seat in the committee will be futile given the potential conflicts and motivations of the Debtor and the Committee. *See id*. at ¶ 11.

## **OBJECTION**

13. The Motion should be denied because "cause"–an essential showing under 11 U.S.C. § 1102 (a)(2)–is not present nor has the Ad Hoc Committee alleged any facts supporting a

Case 23-00623    Doc 415    Filed 10/25/23    Entered 10/25/23 16:52:27    Desc Main
Document      Page 4 of 9

finding of cause. The appointment of an additional official committee is extraordinary relief that courts are reluctant to grant. *See e.g. In re Dana Corp.,* 344 B.R. 35, 38 (Bankr.S.D.N.Y.2006); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005*); In re Agway, Inc.*, 297 B.R. 371, 374 (Bankr. N.D.N.Y. 2003). It is the burden of the party seeking the appointment of an additional committee to prove there is inadequate representation. *See Dana Corp.*, 344 B.R. at 38 (further citations omitted); *Agway,* 297 B.R. at 374; *Winn-Dixie Stores* 326 B.R. at 857.

14.    Courts generally consider similar, non-dispositive, factors when analyzing the adequacy of representation by an official committee of unsecured creditors including: (1) the ability of the committee to function; (2) the nature of the case; (3) the standing and desires of the various constituencies; (4) the ability for creditors to participate in the case even without an official committee pursuant to section 1109(b) of the Bankruptcy Code and the potential to recover expenses pursuant to section 503(b) of the Bankruptcy Code; (5) the delay and additional cost that would result if the court grants the motion; (6) the tasks that a committee or separate committee is to perform; and (7) other factors relevant to the adequate representation issue. *See Dana Corp.*, 344 B.R. at 38 (further citations omitted); *Agway,* 297 B.R. at 374; *Winn-Dixie Stores* 326 B.R. at 857.

15.    While the Ad Hoc Committee and Responding Pension Claimants argue that pension claimants' claims are sufficiently complex and distinct to those represented by the Committee as to warrant an appointment of an additional committee, *see* Motion at ¶ 30; Statement in Support at ¶ 4, they fail to explain (or proffer any evidence) *how* they are distinct and *why* the Committee cannot adequately represent those interests. The Responding Pension Claimants also cite alleged potential conflicts that would prevent the Committee from adequately representing the pension claimants, *see* Statement in Support at ¶¶ 3, 4, 6, 10, but those allegations are without proof and premature.

16.    Courts have held that even though an official committee may not have a direct representative of a particular interest, a committee of unsecured creditors may adequately represent that interest. *See Agway*, 297 B.R. at 374 (denying the appointment of an ad hoc retiree

-4-

committee where the official committee of unsecured creditors was able to adequately represent the retiree committee in negotiations, where the retirees were not precluded from expressing their views, and where the appointment of a retiree committee would add an additional layer of unwarranted expenses because the official committee of unsecured creditors demonstrated during the life of the case that it can adequately represent the interest of the retirees); *see also Winn-Dixie Stores*, 326 B.R. at 858-59 (denying the appointment of a retirement plan committee where the retirement plan committee would not provide a benefit to the overall administration of the estate, where the retirement plan committee would only add additional costs to the estate from prospective litigation, and where the official committee of unsecured creditors represents the interests of the retirement plan committee because its interests align with the retirement plan committee, to maximize the value of the debtors' estates).

17. The Committee is "not merely a conduit through whom the debtor speaks to and negotiates with creditors generally. On the contrary, it is purposely intended to represent the necessarily different interests and concerns of the creditors it represents.… There is simply no other entity established by the [Bankruptcy] Code to guard those interests." *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981) (holding it was too early for the debtor to dispute a member of the creditor's committee where the disputed unsecured creditor's interests aligned with the interests of other general unsecured claimants).

18. Each of the concerns addressed in *Agway* are present in these Chapter 11 Cases. The Committee was appointed to represent the interests of all general unsecured creditors of the Debtors, including those interests held by the pension claimants, which the pension claimants acknowledge. *See* Statement in Support at ¶ 5. Although it is true that the claims of the pension claimants are different from, for example, a trade creditor that sold medical supplies to the Debtors, contrary to the assertions of the Responding pension claimants (*see* Statement in Support at ¶ 11), those interests are not so distinct from the interests of other unsecured creditors as to render the Committee unable to effectively represent them. *See Winn-Dixie Stores* 326 B.R. at 856, 859 (holding that the retiree plan committee's interests were adequately represented by

the committee of unsecured creditors where the official committee of unsecured creditors did not have a retiree plan claimant on it).

19. In addition, pension claimants are not precluded from expressing their views in the Chapter 11 Cases. The Bankruptcy Rules envision collective action by creditors acting on an ad hoc basis. *See*, *e.g.*, Fed. R. Bankr. P. 2019. As the Motion lays bare, the pension claimants, as a group, are well organized, have elected a steering committee to guide their collective action, and have engaged competent counsel to represent them before the Court and in any discussions with the Debtors and other parties. The Ad Hoc Committee (as well as creditors and individual pension claimants) have the statutory right to raise and be heard on any issue in these Chapter 11 Cases. *See* 11 U.S.C. § 1109(b). Thus, the Ad Hoc Committee has at its disposal the practical and legal tools necessary to separately represent pension claimants along with the efforts of the Committee on behalf of all general unsecured creditors (including the pension claimants).

20. The Responding Pension Claimants argue that the Committee is unable to represent them because the Debtors excluded pension claimants from the creditor matrix. See Statement in Support at ¶¶ 7-8. But, according to the Debtors, Plan assets are not property of the bankruptcy estates. See *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") [Docket No. 135 at 8]. Assuming, *arguendo*, that the Debtors' position is the correct one (a position the Committee does not concede), pension claimants may not be creditors of the estates at all–their interests *qua* pension claimants would be assertible against Plan assets rather than estate property–and would have no standing to be heard in the Chapter 11 Cases, thus obviating the need for an official committee.

21. There are other, less disruptive and more austere means to remedy the Ad Hoc Committee's and Responding Pension Claimants' assertions that pension claimants are not adequately represented by the Committee: a pension claimant can be appointed to the Committee *ex oficio*, though that is not necessary. *See Winn-Dixie Stores* 326 B.R. at 856, 859 (holding that the retiree plan committee's interests were adequately represented by the committee of unsecured

creditors where the official committee of unsecured creditors did not have a retiree plan claimant on it). The Responding Pension Claimants acknowledged that they can have representatives on the Committee. *See* Statement in Support at ¶ 11. However, they reject that idea due to alleged but unspecified "conflicts" between their interests and the interests of other general unsecured creditors. These assertions are theoretical at best and have no factual support behind them. The interests of every unsecured creditor diverge at a certain point–for example, depending on whether a creditor provided goods versus services to a debtor; if a creditor has an administrative claim under 11 U.S.C. § 503(b)(9); if a creditor has an executory contract with a debtor and whether that contract is assumed or rejected–but there is a common thread tying all unsecured creditors together: they are all *unsecured* creditors. Viewed from this perspective, the pension claimants are no different than the unsecured creditors serving on the Committee. The fact that a trust may exist to satisfy all or a part of their claims is of no moment. As previously discussed, the Committee represents the interests of *all* general unsecured creditors, including the Responding Pension Claimants and all pension claimants (to the extent that they hold general unsecured claims), and will continue to do so.

22.     Furthermore, the appointment of a second official committee to represent the interests of pension claimants would burden the Debtors' estates with a substantial amount of additional but unnecessary administrative expenses. An official committee would likely seek to retain counsel (and perhaps other professionals) whose fees and expenses would be borne by the estates. *See*, *e.g.*, 11 U.S.C. §§ 327-330. This additional expense is unwarranted where, as here, the interests of the pension claimants are already being represented by the Committee and creditors' recovery amounts remain unknown at this juncture.

23.     It is important to note that the Ad Hoc Committee and the Responding Pension Claimants fail to cite any case law supporting the appointment of an official committee. In fact, the Committee has not found any case law that establishes a pensioner, retiree, or retirement plan committee pursuant to 11 U.S.C. § 1102.

24. In conclusion, the Committee notes that its by-laws provide the appointment of *ex-officio* members and the U.S. Trustee has the ability to appoint additional members to the Committee. These concepts should be explored and considered rather imposing the cost and expense of an additional committee of these estates.

**WHEREFORE**, the Committee respectfully requests that this Court deny the Motion and grant the Committee such further relief as is proper.

Dated: October 25, 2023

Respectfully submitted,
*/s/ Andrew H. Sherman*
Andrew H. Sherman, NJS Bar No. 042731991
(admitted *pro hac vice*)
Boris I. Mankovetskiy, NJS Bar No. 012862001
(admitted *pro hac vice*)
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-643-7000
Facsimile: 973-643-6500
E-mail: asherman@sillscummis.com
          bmankovetskiy@sillscummis.com

-and-

*/s/ Robert C. Gainer*
Robert C. Gainer IS9998471
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, Iowa 50266
Telephone:    515-223-6600
Facsimile:    515-223-6787
E-mail: rgainer@cutlerfirm.com

*Proposed Attorneys for The Official Committee of Unsecured Creditors of Mercy Hospital, Iowa City, Iowa, et al.*

-8-

-9-

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated October 25, 2023.

*/s/ Stephanie Newton*