## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| *In re* | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, et al., | Case No. 23-00623 (TJC) |
|  | Jointly Administered |
| Debtorss. | **Re:  Dkt. No. 385, 394, 409, 415** |

### REPLY OF CERTAIN CONCERNED PENSION BENEFICIARIES IN RESPONSE TO OPPOSITION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE FORMATION OF AN OFFICIAL COMMITTEE OF PENSIONERS

Nancy Russo, J. Nicholas Russo, and Brent Strabala, (the "**Concerned Pension Beneficiaries**") by and through their attorneys, file this limited response to the opposition of the Official Committee of Unsecured Creditors (the "**Creditor's Committee**") to the formation of an official committee of pensioners (dkt. 415) (the "**Opposition**").

1.      The Committee suggests that it is aware of no cases in which a pensioner or retiree committee was appointed under 11 U.S.C. § 1102:

> In fact, the Committee has not found any case law that establishes a pensioner, retiree, or retirement plan committee pursuant to 11 U.S.C. § 1102.

Opposition, ¶ 23.

2.      This asserting is curious. You do not have to look under too many rocks to find retiree committees appointed under § 1102.[1]  And those cases illuminate why an official committee of pensioners is appropriate in this case.

---

[1]      Retiree committees are also appointed under 11 U.S.C. § 1114 when the benefits are limited to non-pension retirement benefits such as health care, death benefits, and similar obligations.  In *Dana Corporation,* which the Official Committee cites for the premise that appointment of additional official committees are disfavored, the Court did, in fact, appoint a retiree committee under § 1114.  See *In re Dana Corporation*, Case No. 06-10354 (Bankr. S.D.N.Y.) (Official Committee of Non-Union Retirees) (order entered August 9, 2006).  For a decision referencing this committee, see e.g. 2007 WL 4589331, Dec. 26, 2007).

3.      Three prominent cases over the past decade in which retiree committees were appointed pursuant to 11 U.S.C. § 1102 are the chapter 9 proceedings of the City of Detroit,[2] the City of Stockton, California,[3] and the City of Chester, Pennsylvania.[4]  Section 1102 is expressly incorporated into chapter 9.  *See* 11 U.S.C. § 901(a).  The fact that these are chapter 9 cases is not relevant; what is relevant are the reasons that the retirees committees were appointed in those cases.

4.      In City of Chester, the motion was granted upon the motion of the AdHoc Committee of Retired Municipal Employees of Chester, Pennsylvania.  That motion, and the order of appointment, is attached as **Exhibit A**.  The AdHoc Committee in Chester argued for prompt appointment of an official committee of retirees while the entry of an order for relief on the chapter 9 was pending.  The City had moved for appointment of a judicial mediator "to assist the City and its stakeholders in exploring a path to a viable plan of adjustment that balances the competing claims against the City and the limited resources available."[5] The City identified "funding of the Pension Plans" and other municipal obligations as topics for mediation.[6]  The Chester retirees held entitlements to both pension payments and retiree healthcare benefits, including $127 million in unfunded pension liabilities.[7]  Arguing that, although a group of retirees had managed to form and retain counsel, the problem of representation remained paramount, the AdHoc Committee stated:

---

[2]      In re City of Detroit, Case No. 13-53846 (Bankr. E.D. Mich.) (Official Committee of Retirees) (order of appointment at docket 279).  For a decision referencing the Official Committee, see e.g. In re City of Detroit, 2015 WL 603888  (Bankr. E.D. Mich., Feb. 12, 2015).

[3]      In re City of Stockton, California, Case No. 12-32118-CMK (Bankr. E.D. Calif.) (Official Committee of Retirees) (order of appointment at docket 846).  For a decision referencing the Official Committee, see e.g. In re City of Stockton, California, 542 B.R. 621 (Bankr. E.D. Cal. 2015).

[4]      In re City of Chester, Pennsylvania, Case No. 22-130320-AMC (Bankr. E.D. Penn)  (Official Committee of Retired Employees).  For a case referencing the Official Committee, see e.g. In re City of Chester, Pennsylvania, 649 B.R. 633, 660 (Bankr. E.D. Penn 2023).

[5]      Exhibit A, ¶ 7 (internal cites omitted).

[6]      Id.

[7]      Id., ¶ 8.

> In the absence of an Official Retiree Committee, certain Retirees formed the Ad Hoc Retiree Committee, which comprises Retirees from the ranks of the City's retired police officers, firefighters, and non-uniform employees.  On December 13, 2022, the Ad Hoc Retiree Committee met and adopted by-laws. The Ad Hoc Retiree Committee has retained qualified legal counsel, but it cannot afford to pay the legal fees of its counsel and is receiving legal services at present on a concessionary basis. The Ad Hoc Retiree Committee is also not in a position to retain a financial advisor or other relevant professionals.[8]

The AdHoc Committee continued by describing the unique attributes of its constituency necessitating a formal role:

> [A]s a practical matter, the Retirees are unable to participate in this case without an official committee. There are more than 250 Retirees (plus their beneficiaries) with accrued rights in pensions and healthcare benefits. *The Retirees, by definition, are retired individuals (or their beneficiaries), in many cases elderly and living on a fixed income. Retirees are generally unfamiliar with chapter 9 bankruptcy and—unlike other creditors of the City such as bondholders and other parties in interest such as governmental entities—lack the means to obtain sophisticated representation in this case on an individual basis.* Absent the appointment of a Retiree Committee, the Retirees do not stand to receive any form of effective collective representation in this chapter 9 case.  (emphasis added)

Exhibit A, ¶ 19.  In this case, the number of pensioners and their beneficiaries far exceeds the number in City of Chester, with most of the pension beneficiaries having similar attributes – retired, elderly, and in many cases substantially dependent on fixed income sources, including their Mercy Hospital pension payments.

    5.    In the City of Detroit, the debtor was the proponent of the formation of an Official Committee to represent retirees who were not otherwise covered or represented by a collective bargaining agreement.  In City of Stockton, a prepetition adhoc committee of retirees was given an Official Committee of Retirees by the United States Trustee without opposition. Both municipalities faced obligations to thousands (in Detroit's case, tens of thousands) of retirees. While many of the retirees were represented directly or indirectly by unions, many were not.  Both municipalities faced significant hurdles in the restructuring process in attempting to communicate

---

[8]    Id., ¶ 9.

with, negotiate with, and ultimately bind thousands of otherwise unrepresented individual retirees unless those retirees were given an official representative in the case <u>and</u> the resources to support that representative.  The City of Detroit motion to appoint an official committee of retirees, and the order approving that motion, is appended hereto as **Exhibit B.**  The notice of appointment for City of Stockton is appended hereto as **Exhibit C**.

      6.     The Creditor's Committee has cited, in particular, to the *Winn-Dixie* case for the apparent propositions that a condition precedent to the appointment of an official committee of pensioners is an actual attack on the rights of the pensioners, and that, as a rule, appointing an additional committee should be denied because it can result in additional cost and be "disruptive." Opposition, ¶ 21.[9]  However, if a party takes positions that are disruptive AND unproductive, the court has mechanisms – including but not limited to the fee approval process - to address that concern.  If a party takes positions that are disruptive and merited, then the disruption is necessary. Denying appointment merely because of hypothetical concerns about disruption and cost has the effect of a preclusive ruling on the merits of the positions that have not yet been brought into the case or before the court.

      7.     The better view, as advocated in City of Chester, is that a pensioner committee "should be appointed early in a case 'so that adequate representation can be afforded before significant bridges are crossed.'"  Exhibit A, ¶ 16 (quoting *In re McLean Industries, Inc*., 70 B.R. 852, 862-63 (Bankr. S.D.N.Y. 1987) (citing *In re Johns-Manville Corp*., 801 F.2d 60, 62 (2d Cir.1986)).

      8.     Here, significant bridges are being crossed and will continue to be crossed. The claims process ignored the pensioners, leaving them to their own devices.  As in City of Chester, the Mercy Hospital pensioners have been forced to try to organize and obtain representation without little if any help or guidance from the Debtors, who have not established any formal or useful communication campaign to reach the pensioners or address their concerns.

---

[9]     See In re Winn-Dixie Stores, Inc., 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005) (court concludes, in summary fashion, that appointment of a retiree committee would "engender discord, litigation and delay").

The fact that the pensioners may still be receiving contract benefits (for now) is a red herring – the case threatens to pass them by. The pensioners have had no real opportunity to participate in the process to sell substantially all of the Debtors' assets, nor have they have a real opportunity to participate in the issues raised by the proposed settlement to allow the Debtors to access the Foundation for operating expenses, a controversial path that has now bled back into the sale process.

9.      The Debtors scheduled aggregate general unsecured claims in the amount of $17,339,659.80. (Dkt. 135). The Debtors estimated, as of the Petition Date, that the Pension Trust was underfunded in the approximate amount of $23 million. Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings, ¶ 41. (Dkt. 27). In other words, the pensioners, in the aggregate, dominate the unsecured class. Furthermore, the pensioners may have litigation claims that are unique to them, either directly or derivatively through the Pension Plan, based on the facts and circumstances that led to the $23 million shortfall.

10.      Again, the pensioners should have their own official committee.

Dated: October 27, 2023                **CONCERNED PENSION BENEFICIARIES**


                                          By: /s/  Mark S. Melickian


Samuel Z. Marks (AT0004896)      -- and --      Mark S. Melickian (admitted *pro hac vice*)
**MARKS LAW FIRM P.C.**                          **RAINES FELDMAN LITTRELL LLP**
4225 University Avenue                            30 N. LaSalle St., Ste. 3100
Des Moines, Iowa 50311                            Chicago, Illinois 60602
Telephone: 515.276.7211                           Telephone:  312.704.9400
Fax: 515.276.6280                                 Mobile:      312-576-3644
Email: office@markslawdm.com                      Facsimile:  312.372.7951
                                                  Email:  mmelickian@raineslaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this day, October 27, 2023, a true and correct copy of the foregoing pleading was served electronically on all parties who receive electronic notice through the CM/ECF as listed on CM/ECF's notice of electronic filing.


/s/  Mark S. Melickian

Mark S. Melickian
RAINES FELDMAN LITTRELL LLP
30 N. LaSalle St., Ste. 3100
Chicago, Illinois 60602
Telephone:     312.704.9400
Mobile:        312-576-3644
Facsimile:     312.372.7951
mmelickian@raineslaw.com

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032 |
| Debtor. | Judge Ashely M. Chan |

**MOTION OF THE AD HOC COMMITTEE OF RETIRED
MUNICIPAL EMPLOYEES OF CHESTER, PENNSYLVANIA FOR (I) ENTRY
OF AN ORDER DIRECTING APPOINTMENT OF AN OFFICIAL
COMMITTEE OF RETIRED EMPLOYEES UNDER SECTION 1102(A)(2)
OF THE BANKRUPTCY CODE, AND (II) AN EXPEDITED HEARING**

The Ad Hoc Committee of Retired Municipal Employees of the City of Chester, Pennsylvania (the "**Ad Hoc Retiree Committee**") hereby submits this motion (the "**Motion**") under section 1102(a)(2) of the Bankruptcy Code, 11 U.S.C. § 1102(a)(2), for entry of an Order directing the United States Trustee to appoint an official committee of retirees ("**Official Retiree Committee**") to represent the Retirees (as defined herein) of the City of Chester, Pennsylvania (the "**City**") in this chapter 9 bankruptcy case. In support of the Motion, the Ad Hoc Retiree Committee respectfully states:

**<u>Introduction</u>**

1.     This chapter 9 case is only weeks old, but highly consequential matters are already in process. Court-ordered judicial mediation has commenced, the City's eligibility to be a debtor is being litigated, and other motions and adversary proceedings are pending. Yet the largest creditor constituency in the case—the City's retired employees and their beneficiaries who are entitled to pensions and other post-employment benefits (the "**Retirees**")—lacks adequate representation. The Ad Hoc Retiree Committee comprises Retirees, but it lacks standing to represent or negotiate on behalf of Retirees in an official capacity and lacks resources to employ

professionals necessary to protect the Retirees' interests. The Ad Hoc Retiree Committee recognizes the need for expeditious resolution of the various complex issues facing the City, but the Retirees must be afforded the opportunity to participate in that process through an appropriate legal representative. Accordingly, the Ad Hoc Retiree Committee respectfully requests that the Court direct the United States Trustee to appoint an Official Retiree Committee to represent the Retirees in an official capacity.

### Jurisdiction and Venue

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5.     On November 10, 2022 (the "**Petition Date**"), the City filed a petition [Dkt. 1] in this Court seeking protection under chapter 9 of the Bankruptcy Code.

6.     On the Petition Date, the Debtor filed a *Motion for Entry of an Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice, (B) Establishing a Deadline for Objections to Eligibility, and (C) Granting Related Relief Filed by City of Chester, Pennsylvania* [Dkt. 8] (the "**Commencement Motion**"). On November 15, 2022, the Court held a hearing on the Commencement Motion, and entered an order setting December 19, 2022 as the deadline to file objections to the Debtor's eligibility. [Dkt. 49.] On December 19, 2022, two parties objected to the Debtor's eligibility under section 109(c) of the

Bankruptcy Code. [Dkt. 146, 147.] A status conference to determine a framework for resolving

eligibility objections is scheduled for January 3, 2023.

7.       Also on the Petition Date, the City filed its *Motion for Entry of an Order (I)*

*Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III)*

*Granting Related Relief* (the "**Mediation Motion**") [Dkt. 16], requesting "the appointment of a

judicial Mediator to assist the City and its stakeholders in exploring a path to a viable plan of

adjustment that balances the competing claims against the City and the limited resources

available." (Mediation Motion ¶ 9.) Among the "Mediation Issues" identified by the City are "the

funding of the Pension Plans"; "[a]djustment of pensions and retiree medical and prescription

benefits"; "[t]he terms of a plan of adjustment"; and the monetization of water and sewage assets.

(*Id.* ¶ 18.) The Mediation Motion envisions participation by all major creditor constituencies and

parties in interest (*id.* ¶ 16), including the Retirees (*id.* ¶ 16(c)).

8.       The Retirees are, by far, the largest creditor constituency in this case, and the City's

retirement benefit obligations constitute its largest obligations. The City's filings indicate it owes

approximately $127 million in unfunded pension liabilities (*see List of Creditors Holding 20*

*Largest Unsecured Claims* at 1-3 (Dkt. 1-2); *Declaration of Vijay Kapoor* ¶ 17 (Dkt. 6) ("**Kapoor**

**Declaration**")), and over $232 million for unfunded retiree healthcare benefits. (Kapoor Decl.

¶ 18.)[1] However, the Retirees have no official representation.

9.       In the absence of an Official Retiree Committee, certain Retirees formed the Ad

Hoc Retiree Committee, which comprises Retirees from the ranks of the City's retired police

---

[1] The City maintains three defined benefit pension plans established for the City's employees: the Police Pension Plan
("PPP"), the Paid Firemen's Pension Plan ("FPP"), and the Officers and Employees Pension Plan, which covers
eligible employees not in the PPP or FPP.

Case 22-13032-amc Doc 153 Filed 01/27/23 Entered 01/27/23 21:53:28 Desc Main Document Page 11 of 45

officers, firefighters, and non-uniform employees.[2] On December 13, 2022, the Ad Hoc Retiree Committee met and adopted by-laws. The Ad Hoc Retiree Committee has retained qualified legal counsel, but it cannot afford to pay the legal fees of its counsel and is receiving legal services at present on a concessionary basis. The Ad Hoc Retiree Committee is also not in a position to retain a financial advisor or other relevant professionals.

10. On December 14, 2022, the Ad Hoc Retiree Committee filed its *Statement in Response to the Mediation Motion* [Dkt. 122], supporting mediation but submitting that "no mediation should commence, and no determinations should be made in this case that may prejudice the rights and interests of the Retirees, pending the formation of an Official Retiree Committee and the opportunity for the Retirees to be heard through an appropriate legal representative." (*Id.* ¶ 7.)

11. On December 16, 2022, the Court entered the *Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* [Dkt. 139] (the "**Mediation Order**"), referring all "Mediation Issues," as defined in the Mediation Motion, to the Honorable Mary F. Walrath for mandatory mediation.

## Relief Requested

12. The Ad Hoc Retiree Committee seeks entry of an Order under Bankruptcy Code section 1102(a)(2) directing the United States Trustee to appoint an Official Retiree Committee to act as the authorized representative of the Retirees.

---

[2] See *Verified Statement of the Ad Hoc Committee of Retired Municipal Employees of the City of Chester, Pennsylvania Under Rule 2019 of the Federal Rules of Bankruptcy Procedure* [Dkt. 123].

### Discussion

13.     Appointment of an Official Retiree Committee is warranted in this case. This Motion is timely, and appointment of an Official Retiree Committee is necessary to assure adequate representation of the Retirees.

14.     Bankruptcy Code section 1102(a)(1) provides that "as soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." 11 U.S.C. § 1102(a)(1).[3]

15.     Bankruptcy Code section 1102(a)(2) further provides that "upon request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors" and the "United States trustee shall appoint any such committee." 11 U.S.C. § 1102(a)(2).[4]

### A. Appointment of an Official Retiree Committee Is Appropriate Prior to the Order for Relief.

16.     This Motion is ripe for disposition. Committees should be appointed early in a case "so that adequate representation can be afforded before significant bridges are crossed." *In re McLean Industries, Inc.*, 70 B.R. 852, 862-63 (Bankr. S.D.N.Y. 1987) (citing *In re Johns-Manville Corp.*, 801 F.2d 60, 62 (2d Cir.1986)). Accordingly, a "motion under section 1102 should be made promptly." *In re Drexel Burnham. Lambert Group, Inc.*, 118 B.R. 209, 211 (Bankr. S.D.N.Y. 1990) (noting it is "important that committees begin functioning promptly . . . organize quickly,

---

[3] Section 1102 is incorporated into chapter 9 under Bankruptcy Code section 901(a). 11 U.S.C. § 901(a).

[4] Once a bankruptcy court determines the need for an official committee in a case, "it must leave the job of naming members of that committee to the United States Trustee." *In re Budd Co., Inc.*, 512 B.R. 910, 913 (Bankr. N.D. Ill. 2014).

make initial decisions, investigate and start negotiations"). Section 1102(a)(1) requires prompt appointment of an official committee of unsecured creditors after the order for relief has been entered in a chapter 11 case. In a voluntary chapter 11 case, the order for relief is automatic upon filing of a petition. 11 U.S.C. § 301(a). By contrast, in a chapter 9 case, the Court must determine whether the debtor is eligible under section 109(c) before the order for relief is entered. *See* 11 U.S.C. § 921(d) ("If the petition is not dismissed under subsection (c) of this section, the court shall order relief under this chapter notwithstanding section 301(b)."). While section 1102(a)(1) does not, by its text, *prohibit* appointing a committee of unsecured creditors (or any other committee) *before* an order for relief is entered in a chapter 9 case, the language may create uncertainty about whether and when appointment of a committee is appropriate.[5]

17.     Section 1102(a)(2), however, is not conditioned on entry of the order for relief, and the Court may direct appointment of an official committee for cause at any time. Indeed, in the City of Detroit's chapter 9 case, the city moved for the appointment of an official committee of retirees on the Petition Date, and an official retiree committee was appointed before entry of the order of relief. *See In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich., Aug. 22, 2013) [Dkt. No. 566] (appointing official retiree committee under section 1102(a)(2)). Accordingly, the Court may direct appointment of an Official Retiree Committee, notwithstanding the pending eligibility dispute, if doing so is "necessary to assure adequate representation of creditors." 11 U.S.C. § 1102(a)(2).

---

[5] To this point, the Ad Hoc Retiree Committee has been in communication with the United States Trustee about the appointment of an Official Retiree Committee, and the indication from the United States Trustee has been an inclination to await the entry of an order for relief before appointing an Official Retiree Committee, perhaps based on its reading of section 1102(a)(1) of the Bankruptcy Code.

**B. Appointment of an Official Retiree Committee Is Necessary To Ensure "Adequate Representation" of the Retirees' Interests.**

*18.*     The Retirees require appointment of an Official Retiree Committee to provide adequate representation of the Retirees in this case. Section 1102(a)(2) does not define "adequate representation," and bankruptcy courts have discretion to determine if committee appointment is warranted based on the facts of each case. *See In re Mansfield Ferrous Castings, Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988). Courts have weighed numerous non-exclusive factors in determining adequate representation, including the ability of creditors to participate in the case without a committee and the size and complexity of the proceedings. *See Budd*, 512 B.R. at 913; *In re Dow Corning Corp.*, 194 B.R. 121, 141-43 (Bankr. E.D. Mich. 1996).

19.     Here, the appointment of the Retiree Committee is necessary to assure the adequate representation of the Retirees. *First*, as a practical matter, the Retirees are unable to participate in this case without an official committee. There are more than 250 Retirees (plus their beneficiaries) with accrued rights in pensions and healthcare benefits. The Retirees, by definition, are retired individuals (or their beneficiaries), in many cases elderly and living on a fixed income. Retirees are generally unfamiliar with chapter 9 bankruptcy and—unlike other creditors of the City such as bondholders and other parties in interest such as governmental entities—lack the means to obtain sophisticated representation in this case on an individual basis. Absent the appointment of a Retiree Committee, the Retirees do not stand to receive any form of effective collective representation in this chapter 9 case.

20.     It is clear from the City's filings that it may seek not only to restructure but to cut Retirees' accrued retirement benefits. Delaying or precluding the Retirees from official representation in restructuring negotiations that may seek to restructure, and may contemplate cuts

to, their accrued retirement benefits blatantly threatens to prejudice the Retirees' rights and interests.

21.     *Second*, the size and complexity of the case warrants appointment of an Official Retiree Committee. Although the City is smaller than some other municipalities that have entered restructuring proceedings, its obligations to Retirees nevertheless total hundreds of millions of dollars and constitute critical support for the livelihood, health, and well-being of hundreds of individuals. Moreover, the Retirees' claims for pension and healthcare benefits are complex and completely distinct from other types of unsecured claims. The City cannot successfully restructure unless it addresses its obligations to the Retirees, and it cannot engage the Retirees individually, particularly when they are not represented. The appointment of the Retiree Committee will provide the City and other parties in interest with a centralized point of contact and an effective entity with which to engage in negotiations regarding treatment of the Retirees' pension and healthcare benefits.

22.     For substantially similar reasons, official retiree committees charged with appearing and negotiating on behalf of retirees are routinely appointed in municipal bankruptcies. *See In re Commonwealth of Puerto Rico*, Case No. 17-3283 (D.P.R. June 15, 2017) [Dkt. 340]; *In re City of Detroit*, Case No. 13-53846 (Bankr. E.D. Mich., Aug. 22, 2013) [Dkt. 566]; *In re City of Stockton*, Case No. 12-32118 (Bankr. E.D. Cal. Apr. 1, 2013) [Dkt. 846]; *In re City of Vallejo*, Case No. 08-26813 (Bankr. E.D. Cal. Oct. 8, 2008) [Dkt. 286]. Accordingly, the Ad Hoc Retiree Committee respectfully submits that the appointment of an Official Retiree Committee in this case is warranted under section 1102(a)(2) of the Bankruptcy Code.

**Request for Expedited Consideration Under Local Rule 5070-1(f)**

23.     The Ad Hoc Retiree Committee requests that this Motion be heard at the same time as the Court's status conference to consider procedures for adjudication of objections to the City's eligibility, scheduled for January 3, 2023 at 2:00 p.m. Eastern Standard Time.  Without expedited consideration of this Motion, Retirees' ability to fully participate in this case, which necessitates an Official Retiree Committee, will be further delayed.

24.     In this regard, the Ad Hoc Retiree Committee wishes to note that the concept of appointing an Official Retiree Committee is not being raised for the first time at this juncture by the Ad Hoc Retiree Committee.  On December 14, 2022, less than a day after the Ad Hoc Retiree Committee was formed, it promptly reached out to the U.S. Trustee about this issue.  The Ad Hoc Retiree Committee did not, however, immediately file this Motion at that time because it believed it was prudent to await (a) the Court's December 15, 2022 hearing as to whether the mediation process would move forward pending a determination of the City's eligibility to be a chapter 9 debtor and (b) Judge Walrath's initial mediation meeting on December 21, 2022, to ascertain the anticipated timeline for commencing mediation.  On December 16, 2022, counsel for the Ad Hoc Retiree Committee communicated via email with the U.S. Trustee regarding the Court's authorization for mediation to proceed and the upcoming initial mediation meeting, and indicated to the U.S. Trustee that, depending on the timeline for mediation, counsel would revert regarding the appointment of an Official Retiree Committee.  Then on December 21, 2022, just hours after the initial mediation meeting, counsel for the Ad Hoc Retiree Committee communicated with the U.S. Trustee again via email, to inform that mediation was indeed moving forward and that the Ad

Hoc Retiree Committee intended to soon file a motion for the appointment of an Official Retiree Committee.

25.     Moreover, the Ad Hoc Retiree Committee notes that the appointment of an Official Retiree Committee may be a lengthier process than appointing an unsecured creditors committee in a chapter 11 case.  Giving notice to the Retiree community of the solicitation process may require more time, and the interview process may be more involved.  Beginning that process as soon as possible is critical to ensuring the Official Retiree Committee is timely formed.

26.     Finally, the Ad Hoc Retiree Committee submits that the issue raised by this Motion is relatively straightforward and does not require a lengthy notice period.

27.     In accordance with Local Rule 5070-1(f), on December 22, 2022, the Ad Hoc Retiree Committee requested, by email, the consent of counsel to the City and the Office of the United States Trustee for expedited consideration of this Motion.  The Ad Hoc Retiree Committee has not received a response from the City as of the filing of this Motion.  The U.S. Trustee has indicated that it does not consent to expedited consideration.

*(Signature page follows.)*

WHEREFORE, the Ad Hoc Retiree Committee respectfully requests that the Court enter

an order, substantially in the form attached hereto as **Exhibit B**, directing the Office of the United

States Trustee to promptly appoint an Official Retiree Committee under Bankruptcy Code section

1102(a)(2).


Dated: December 23, 2022

/s/ *Robert D. Gordon*
JENNER & BLOCK LLP
Robert D. Gordon (admitted *pro hac vice*)
Carl Wedoff (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
rgordon@jenner.com
cwedoff@jenner.com

/s/ *William J. Burnett*
FLASTER/GREENBERG P.C.
William J. Burnett (PA Bar No. 75975)
1717 Arch St., Suite 3300
Philadelphia, PA 19103
(215) 279-9383
william.burnett@flastergreenberg.com

*Attorneys for the Ad Hoc Committee of Retired
  Municipal Employees of Chester, Pennsylvania*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032 |
| Debtor | Judge Ashely M. Chan |

## ORDER UNDER SECTION 1102(A)(2) OF THE BANKRUPTCY CODE DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF RETIRED EMPLOYEES

This matter coming before the Court on the *Motion for (I) Entry of an Order Directing Appointment of an Official Committee of Retired Employees Under Section 1102(a)(2) of the Bankruptcy Code, and (II) an Expedited Hearing* [Dkt. 153] (the "**Motion**") filed by the Ad Hoc Retiree Committee;[1] the Court having reviewed the Motion; and having heard the statements of counsel at the hearing before the Court; and finding that: (a) the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding under 28 U.S.C. § 157(b); (c) the Court is authorized to direct appointment of an Official Committee of Retired Employees under section 1102(a)(2) of the Bankruptcy Code; and (d) appointment of an Official Committee of Retired Employees under section 1102(a)(2) of the Bankruptcy Code is necessary to ensure adequate representation of the Retirees in this chapter 9 case;[2] and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

---

[1] Capitalized terms not otherwise defined in this Order have the meanings provided in the Motion.

[2] The Court is not limited by section 1102(a)(1) because "no 'order for relief under chapter 11 of this title' has been (or will be) entered" in this chapter 9 case. *See In re City of Detroit, Mich.*, 519 B.R. 673, 677 (Bankr. E.D. Mich. 2014) (finding that 11 U.S.C. 1102(a)(1) does not apply in chapter 9 cases).

1.      The Motion is **GRANTED** as set forth herein.

2.      In accordance with section 1102(a)(2) of the Bankruptcy Code, the United States Trustee shall promptly appoint an Official Committee of Retired Employees to represent the City of Chester's retired employees and their beneficiaries who are entitled to pensions and other post-employment benefits. The Official Committee of Retired Employees shall have the powers and duties prescribed in section 1103 of the Bankruptcy Code, subject to any limitations applicable in chapter 9 cases.

3.      Nothing contained in the Motion or this Order shall be deemed an admission or a finding that the City has any obligation to provide any retirement benefits to any specific Retiree or other party.

4.      Nothing in this Order shall prejudice any parties' ability to contest the eligibility of the Debtor to file a petition under chapter 9 of the Bankruptcy Code, pursuant to section 109(c) of the Bankruptcy Code, or otherwise.

5.      After the United States Trustee forms the Official Committee of Retired Employees, it shall promptly file an appropriate notice with the Court.

6.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order.

Dated: January 4, 2023 _____

_____

Honorable Ashely M. Chan
United States Bankruptcy Judge

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------x
                                           :
In re                                      : Chapter 9
                                           :
CITY OF DETROIT, MICHIGAN,                 : Case No. 13-53846
                                           :
                    Debtor.                : Hon. _____
                                           :
                                           :
-------------------------------------------------x
```

## MOTION OF DEBTOR, PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE, FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A COMMITTEE OF RETIRED EMPLOYEES

The City of Detroit, Michigan ("Detroit" or the "City"), as the debtor

in the above-captioned case, hereby moves the Court, pursuant to

section 1102(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"),

for the entry of an order[1] directing the appointment of a Retiree Committee (as

defined below) to represent Retirees (as defined below) in connection with this

case.  In support of this Motion, the City respectfully represents as follows:

---

[1]    This Motion includes certain attachments that are labeled in accordance with Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules").  Consistent with Local Rule 9014-1(b), a copy of the proposed form of order granting this Motion is attached hereto as Exhibit 1.  A summary identifying each included attachment by exhibit number is appended to this Motion.

## Background

1.      Incorporated in 1806, Detroit is the largest city in Michigan. As of December 2012, the City had a population of less than 685,000 (down from a peak population of nearly 2 million in 1950).

2.      Over the past several decades, the City has experienced significant economic challenges that have negatively impacted employment, business conditions and quality of life.  These challenges include, among other things, (a) a contraction of its historic manufacturing base, (b) a declining population, (c) high unemployment, (d) an erosion of the City's income and property tax bases, (e) a reduction in state revenue sharing and (f) a lack of adequate reinvestment in the City and its infrastructure.

3.      As of June 30, 2013 — the end of the City's 2013 fiscal year — the City's liabilities exceeded $18 billion (including, among other things, general obligation and special revenue bonds, unfunded actuarially accrued pension and other postemployment benefit liabilities, pension obligation certificate liabilities and related derivative liabilities).  Excluding the proceeds of debt issuances, the City has incurred large and unsustainable operating deficits for each of the past six years.  As of June 30, 2013, the City's accumulated unrestricted general fund deficit was approximately $237.0 million.  Excluding the impact of a recent debt

issuance, this represents an increase of approximately $47.4 million over fiscal year 2012.

4.      On February 19, 2013, a review team appointed by Rick Snyder, Governor of the State of Michigan (the "Governor"), pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, MCL § 141.1201, et seq. ("PA 72"), issued its report with respect to the City and its finances (the "Review Team Report").  The Review Team Report concluded that a local government financial emergency exists within the City.

5.      On March 14, 2013, in response to the Review Team Report and the declining financial condition of the City and at the request of the Governor, the Local Emergency Financial Assistance Loan Board of the State of Michigan appointed Kevyn D. Orr as emergency financial manager with respect to the City under PA 72, effective as of March 25, 2013.

6.      On March 28, 2013, upon the effectiveness of Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL § 141.1541, et seq. ("PA 436"), Mr. Orr became, and continues to act as, emergency manager with respect to the City under PA 436 (in such capacity, the "Emergency Manager").  Pursuant to PA 436, the Emergency Manager acts "for and in the place and stead of the governing body and the office of chief administrative officer" of the City.  MCL § 141.1549.  In addition, the Emergency Manager acts exclusively on behalf

of the City with respect to the filing of a case under chapter 9 of the Bankruptcy

Code upon receiving authorization from the Governor.  MCL § 141.1558.

       7.     On July 18, 2013, the Governor issued his written decision

(the "Authorization") approving the Emergency Manager's recommendation that

the City be authorized to proceed under chapter 9 of the Bankruptcy Code.

Thereafter, also on July 18, 2013, the Emergency Manager issued an order

approving the filing of the City's chapter 9 case consistent with the Authorization

(the "Approval Order").  True and correct copies of the Approval Order and

the Authorization are attached as Exhibit A to the Statement of Qualifications

Pursuant to Section 109(c) of the Bankruptcy Code, filed contemporaneously with

this Motion.

       8.     In accordance with the Authorization and the Approval Order,

on July 18, 2013 (the "Petition Date"), the City commenced a case under chapter 9

of the Bankruptcy Code.  Additional details regarding the City and the events

leading to the commencement of this chapter 9 case are set forth in the Declaration

of Kevyn D. Orr in Support of City of Detroit, Michigan's Statement of

Qualifications Pursuant to Section 109(c) of the Bankruptcy Code, filed

contemporaneously with this Motion.

## Jurisdiction

9.      The Court has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C.

§§ 1408 and 1409.

## Relief Requested

10.      The City hereby seeks an order, pursuant to section 1102(a)(2)

of the Bankruptcy Code, directing the United States Trustee for the Eastern District

of Michigan (the "U.S. Trustee") to appoint an official committee (the "Retiree

Committee") to act as the authorized representative of those former employees of

the City and their beneficiaries (collectively, the "Retirees") who are entitled to

receive pension benefits (the "Pension Benefits") and health and other

post-employment welfare benefits (the "Other Post-Employment Benefits" and,

together with the Pension Benefits, the "Retirement Benefits"), whether or not such

Retirees currently are receiving Retirement Benefits.

## Facts Relevant to This Motion

### *The Pension Liabilities*

11.      The City's retirement systems consist of the General Retirement

System (the "GRS") and the Police and Fire Retirement System (the "PFRS" and,

together with the GRS, the "Retirement Systems").  See City of Detroit, Michigan

Comprehensive Annual Financial Report for the Year Ended June 30, 2012

(the "2012 CAFR") at 121.  Each Retirement System is a single employer plan

composed of a defined benefit plan and a defined contribution annuity plan.  Id.

As of June 30, 2012, membership of the Retirement Systems consisted of over

23,500 Retirees (including more than 2,400 former employees not yet receiving

Pension Benefits) and more than 9,700 active employees with an expectation of

receiving benefits when they retire.  Id.

      12.    Each Retirement System is administered and managed by a

Board of Trustees (together, the "Boards").  See DETROIT CITY CHARTER art. 11,

§ 103 (providing for the establishment of the GRS Board and the PFRS Board);

DETROIT CITY CODE § 47-1-3.  The Boards generally are responsible for managing

the assets of the Retirement Systems, selecting the applicable actuarial assumptions

and methods for the Retirement Systems and computing the annual contribution of

the City.  Id.; see also DETROIT CITY CODE § 47-2-19 (granting authority to

calculate the City's annual contributions).  The Boards, however, have no authority

to amend the terms of the Retirement Systems and pension plans created

thereunder.  That authority lies with the City through amendments of the Detroit

City Code that establish each Retirement System.  See DETROIT CITY CODE

§ 47-4-4 ("The City reserves the right to amend . . . the Plans created hereunder at

any time; such amendments may include termination of the Plan."); DETROIT CITY

CHARTER, Art. 11, § 102 (retirement plans continue in effect unless changed by the City Charter or City ordinance).

13.     Based on current actuarial assumptions and methods employed by the Retirement Systems' own actuary, the combined unfunded actuarial accrued liabilities ("UAAL") of the Retirement Systems as of the end of fiscal year 2012 was approximately $977 million.  See Declaration of Charles M. Moore in Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Moore Declaration"), filed contemporaneously herewith, at ¶ 10.  The combined reported UAAL for the Retirement Systems, however, is premised upon a host of aggressive valuation assumptions and methods that, in the City's view, serve to substantially understate the unfunded liabilities of the Retirement Systems.  Using what the City believes are more realistic assumptions, the City's actuaries have estimated that the cumulative UAAL for the Retirement Systems as of June 30, 2013 is approximately $3.5 billion.  See Moore Declaration, at ¶¶ 13-14.  Additional information regarding the Retirement Systems and the City's Pension Benefit obligations is set forth in the Moore Declaration.

***The Other Post-Employment Benefit Liabilities***

14.     The Other Post-Employment Benefit Plan (the "OPEB Plan") is a single employer defined benefit plan administered by the City and the Retirement

Systems.[2]  See 2012 CAFR at 124.  Under the OPEB Plan, the City provides,

among other things, medical coverage to substantially all retirees pursuant to the

terms of applicable collective bargaining agreements or section 13-8-3 of the

Detroit City Code, as well as life insurance and supplemental death benefits.  Id.

As of June 30, 2011, the City had 19,389 retirees enrolled in and receiving benefits

under the OPEB Plan.  Id. at 125.

15.     The City's obligations under the OPEB Plan are substantial and

unsustainable.  For the fiscal year ending June 30, 2012, and based on the design of

the retiree health benefits program as of January 1, 2013, the present value of the

City's expected post-retirement benefit obligation to all Retirees was estimated to

be approximately $6.40 billion.[3]  The City finances the OPEB Plan on a

pay-as-you-go basis.[4]  2012 CAFR at 126.  Thus, virtually all of the accrued

liability for the OPEB Plan — over 99% — is unfunded.  Id. at 127 (stating that, as

of June 30, 2011, only approximately $26 million of the OPEB Plan's aggregate

---

[2]     The OPEB Plan consists of the Health and Life Insurance Benefit Plan and
the Supplemental Death Benefit Plan.

[3]     Utilizing the actuarial data provided by the Retirement Systems' actuary, as
of June 30, 2011 (the most recent actuarial valuation date), the City's
actuarially accrued post-retirement benefit liabilities totaled approximately
$5.72 billion.

[4]     A portion of the Supplemental Death Benefit Plan is funded.  The liabilities
for the Health and Life Insurance Benefit Plan, which represent the vast
majority of the liabilities for the OPEB Plan, are completely unfunded.

actuarially accrued liability at that time was funded).  Additional information

regarding the OPEB Plan and the City's Other Post-Employment Benefit

obligations is set forth in the Declaration of Gaurav Malhotra in Support of City of

Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the

Bankruptcy Code, filed contemporaneously with this Motion.

### *The Unions and Associations*

16.     A total of approximately 47 distinct bargaining units

(collectively, the "Bargaining Units") of 28 unions (the "Unions") represent certain

employees and/or Retirees of the City.  At least four retiree associations

(collectively, the "Associations") also provide voluntary membership to certain

Retirees who were members of the City's Unions.  Although many of the City's

Retirees are members of a Union (or were during their employment with the City),

other Retirees were non-unionized employees of the City.

17.     Prior to the Petition Date, the City sent letters to each of the

Unions to determine whether they are willing to represent their respective Retirees

in connection with the City's restructuring.  As of the Petition Date, only eight

Unions (representing ten Bargaining Units) offered to represent their Retirees in

restructuring discussions.  The City also sent letters to each of the Associations to

determine whether they were willing to represent Union Retirees in connection

with the City's restructuring.  Two Associations offered to represent Retirees in

these discussions.  Despite the City's efforts to organize the Retirees prior to this

chapter 9 case, most Retirees remained unrepresented in negotiations.

18.     Notably, in meetings with the City, not a single Retiree

Association or Union has indicated that it can legally bind those Retirees already

receiving health insurance in connection with a restructuring of retiree health

benefits.

19.     As to pension benefits provided by the Retirement Systems, the

legal authority of the Boards is limited to the powers provided under the Detroit

City Code and Charter, and as indicated above at paragraph 12, the powers of each

of the Boards are limited to asset management and administration.  The Boards

have no authority to make amendments to the pension plans established under the

Retirement Systems.  There is no legal authority available to the Boards by which

they could bind the Retirees to any restructuring of the existing pension plan

programs under the Retirement Systems, particularly to the extent that such

restructuring would include amendments to the pension plan designs.

Accordingly, as described below, the City respectfully requests that the Court enter

an order directing the appointment of a Retiree Committee to negotiate on behalf

of all Retirees in connection with the City's restructuring and otherwise participate

in this case.

## Basis for Relief

### *Appointment of a Retiree Committee is Justified*

20.    Section 1102(a)(2) of the Bankruptcy Code provides as follows:

> On request of a party in interest, the court may order the
> appointment of additional committees of creditors . . . if
> necessary  to  assure  adequate  representation  of
> creditors . . . .   The United States Trustee shall appoint
> any such committee.

11 U.S.C. § 1102(a)(2).  Section 1102 of the Bankruptcy Code is made applicable

in a case under chapter 9 by section 901 of the Bankruptcy Code.  See 11 U.S.C.

§ 901(a) (providing that section 1102 of the Bankruptcy Code, among other

provisions, applies in a case under chapter 9).

21.    Authorities interpreting section 1102(a)(2) of the Bankruptcy

Code in the context of chapter 11 cases indicate that whether the appointment of a

specific committee is appropriate depends on the facts and circumstances of the

case.  See In re Beker Indus. Corp., 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985)

("The statute affords no test of adequate representation, leaving the bankruptcy

courts with discretion to examine the facts of each case to determine if additional

committees are warranted."); see also In re Dow Corning Corp., 194 B.R. 121, 141

(Bankr. E.D. Mich. 1996) ("Most courts confronted with a motion for the

appointment of a separate committee recognize that there is no bright line test for

determining whether an additional committee should be appointed.  Instead, the

decision must be made on a case-by-case basis."), rev'd on other grounds,

212 B.R. 258 (E.D. Mich. 1997).

22.     In determining whether to appoint a committee under

section 1102(a)(2) of the Bankruptcy Code, "the following non-exclusive factors

are the most pertinent:  (a) the nature of the case; (b) identification of the various

groups of creditors and their interests; (c) the composition of the committee; and

(d) the ability of the committee to properly function."  Dow Corning, 194 B.R.

at 142.

23.     Here, the appointment of the Retiree Committee is necessary to

assure the adequate representation of the Retirees.  The City's bankruptcy case is

the largest chapter 9 case in history, involving the complex restructuring of myriad

relationships, including the City's relationship with each of the Retirees.  In the

aggregate, the City's Retirement Benefit obligations constitute the largest

unsecured obligations to be addressed in this case, and the City recognizes the

crucial importance of these obligations to the Retirees.  Under the circumstances,

the City believes that the interests of the Retirees are aligned.  Given the

substantially similar interests of the Retirees, the City anticipates that the Retiree

Committee will function properly.

24.     Moreover, the Retirees would benefit from adequate

representation.  There are over 23,500 Retirees with rights to or currently in receipt

of pensions, and over 19,000 Retirees are currently receiving health benefits.

The Retirees, by definition, are retired individuals, in many cases elderly and living

on a fixed income.  The City expects that most of the Retirees are not familiar with

chapter 9 and — unlike certain other unsecured creditors of the City such as

bondholders and large trade creditors — lack the means to obtain sophisticated

representation in this case on an individual basis.  Absent the appointment of a

Retiree Committee, only a minority of the Retirees stand to receive any form of

collective representation in this chapter 9 case.  Crucially, it appears that the small

number of Unions and Associations that have offered to represent Retirees possess

no legal authority to bind those individuals to restructure pension and retiree health

benefits.

25.    The Retirees are uniquely positioned as a group, particularly

given (a) their common interest in maximizing their Retirement Benefits,

(b) the fundamental importance of the restructuring of Retirement Benefit

obligations to the City and (c) the impact that this restructuring will have on the

Retirees.  The appointment of the Retiree Committee, therefore, will (a) provide

representation to the Retirees that they otherwise would lack, (b) provide a single

party to negotiate with the City on behalf of the Retirees as a group and (c) assist

the many thousands of Retirees in expressing their views and exercising their

rights during the City's restructuring.

26.     From the City's perspective, the appointment of the Retiree Committee is critical to allow the City to restructure its liabilities effectively and administer this chapter 9 case.  Simply put, the City cannot successfully restructure unless it addresses its crippling unfunded Retirement Benefit obligations. Moreover, the City cannot as a practical matter engage each of the more than 20,000 Retirees in negotiations or litigation on an individual basis, nor are the individual Retirees expected to be in a position to engage in meaningful negotiations without representation.  The appointment of the Retiree Committee will provide the City with a centralized point of contact, and the Retirees with sophisticated representation, to engage in negotiations regarding the restructuring of the City's Retirement Benefit obligations.  As such, the City believes that the Retiree Committee will serve as an important participant in the efforts to restructure the City's Retirement Benefit obligations, which necessarily must be a key component of any plan of adjustment in this case.  For these reasons, the City respectfully submits that the appointment of the Retiree Committee is warranted under sections 901 and 1102(a)(2) of the Bankruptcy Code.

***Appointment of the Retiree Committee***

27.     The City intends to work cooperatively with the U.S. Trustee to establish an appropriate, open and fair procedure by which the U.S. Trustee will solicit interested Retirees and possibly other representatives to serve on the Retiree

Committee (the "<u>Selection Procedures</u>").  In particular, the City proposes the

following Selection Procedures:

- Promptly following the entry of an order granting this Motion, the City will contact various key Unions and Retiree Associations for input respecting potential Retiree representatives.  Following such input, the City will contact the U.S. Trustee to agree upon a method for identifying a representative sample from among the Retirees to solicit (collectively, the "<u>Solicited Retirees</u>");

- Within three business days of the City and U.S. Trustee identifying the Solicited Retirees, the City will mail a notice and questionnaire in the form attached hereto as <u>Exhibit 6</u> (the "<u>Questionnaire</u>") to each Solicited Retiree to determine his or her interest in serving on the Retiree Committee.  The City also will post the notice and the Questionnaire on the website established by the City's claims and noticing agent— www.kccllc.net/Detroit (the "<u>Website</u>").

- Any Solicited Retiree interested in serving on the Retiree Committee will be required to complete the Questionnaire and fax or mail it to the U.S. Trustee's Office so that it is *received* by the U.S. Trustee no later than seven days after it is mailed to the Solicited Retiree by the City (the "<u>Questionnaire Deadline</u>").

- In addition, the City will provide the U.S. Trustee with contact information with respect to each of the Unions and Associations, to the extent known to the City.  The U.S. Trustee also may solicit the interest of Union or Association representatives to participate on the Retiree Committee.

- The U.S. Trustee will work promptly to select the individuals to serve on the Retiree Committee from those Solicited Retirees that submitted a Questionnaire by the Questionnaire Deadline, and from any Union or Association representatives solicited.

- After the U.S. Trustee forms the Retiree Committee, it will promptly file an appropriate notice with the Court.

## Reservation of Rights

28.    The City files this Motion without prejudice to or waiver of its

rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is

intended to, shall constitute or shall be deemed to constitute the City's consent,

pursuant to section 904 of the Bankruptcy Code, to this Court's interference with

(a) any of the political or governmental powers of the City, (b) any of the property

or revenues of the City or (c) the City's use or enjoyment of any income-producing

property.

## Notice

29.    Notice of this Motion has been given to the following (or their

counsel if known):  (a) the Office of the United States Trustee; (b) the trustees,

transfer agents and/or paying agents, as applicable, for the City's secured and

unsecured bonds; (c) the City's largest unsecured creditors as identified on the list

filed under Bankruptcy Rule 1007(d); (d) the Unions; (e) the Associations;

(f) the Boards of the Retirement Systems; (g) the insurers of the City's bonds;

(h) the insurers of the certificates of participation issued with respect to the City's

pension funds (the "COPs"); (i) certain significant holders of the COPs;

(j) the counterparties under the swap contracts entered into in connection with the

COPs (collectively, the "Swaps"); and (k) the insurers of the Swaps.  The City

submits that no other or further notice need be provided.

**No Prior Request**

30.     No prior request for the relief sought in this Motion has been

made to this or any other Court.

WHEREFORE, the City respectfully requests that this Court:

(a) enter an order substantially in the form attached hereto as Exhibit 1 granting the

relief sought herein; and (b) grant such other and further relief to the City as the

Court may deem proper.

Dated:  July 19, 2013                    Respectfully submitted,


  /s/ David G. Heiman                 
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com


Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com


Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com


ATTORNEYS FOR THE CITY

Docket #0279  Date Filed: 8/2/2013

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
---------------------------------------------------x
                                              :
In re                                         : Chapter 9
                                              :
CITY OF DETROIT, MICHIGAN,                    : Case No. 13-53846
                                              :
                        Debtor.               : Hon. Steven W. Rhodes
                                              :
                                              :
---------------------------------------------------x
```

## ORDER, PURSUANT TO SECTION 1102(A)(2)
## OF THE BANKRUPTCY CODE, DIRECTING THE
## APPOINTMENT OF A COMMITTEE OF RETIRED EMPLOYEES

This matter coming before the Court on the Motion of Debtor, Pursuant to

Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing the

Appointment of a Committee of Retired Employees (the "Motion"),[1] filed by the

City of Detroit, Michigan (the "City"); the Court having reviewed the Motion, the

Declaration of Kevyn D. Orr filed contemporaneously therewith (the "Orr

Declaration"), the Declaration of Gaurav Malhotra filed contemporaneously

therewith (the "Malhotra Declaration") and the Moore Declaration, and having

considered the statements of counsel and the evidence adduced with respect to the

Motion at a hearing before the Court (the "Hearing"); and the Court finding that

---

[1]      Capitalized terms not otherwise defined herein have the meanings
given to them in the Motion.

1353846130802000000000017

(a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances and (d) the appointment of the Retiree Committee pursuant to section 1102(a)(2) of the Bankruptcy Code is necessary to ensure adequate representation of the Retirees in this chapter 9 case; and the Court having determined that the legal and factual bases set forth in the Motion, the Orr Declaration, the Malhotra Declaration and the Moore Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.  The Motion is granted as stated herein.

2.  Pursuant to section 1102(a)(2) of the Bankruptcy Code, the U.S. Trustee shall appoint a Retiree Committee to represent the retired employees of the City of Detroit.  The Retiree Committee shall have the powers and duties prescribed in section 1103 of the Bankruptcy Code, except the power prescribed in section 1103(c)(4) of the Bankruptcy Code, in all cases subject to the limitations applicable in chapter 9 cases.

3.  Nothing contained in the Motion or this Order shall be deemed an admission or a finding that the City has any obligation to provide any Retirement Benefits to any Retiree or other party.

4. In developing procedures for the solicitation of potential committee members and the formation of a representative committee, the U.S. Trustee may make reasonable requests for information from the City, including, but not limited to, contact information for the Retirees and each of the Unions and the Associations, to the extent such information is known to the City.  After the U.S. Trustee forms the Retiree Committee, it shall promptly file an appropriate notice with the Court.

5.  The City has agreed to pay the reasonable professional expenses of the Retiree Committee.  If the Court enters an order appointing a fee examiner, the professional expenses of the Retiree Committee shall be subject to that order.

.

**Signed on August 02, 2013**

_____/s/ Steven Rhodes_____
Steven Rhodes
United States Bankruptcy Judge

**EXHIBIT C**

2
Antonia Darling – 76190
Assistant U.S. Trustee
UNITED STATES DEPARTMENT OF JUSTICE
501 "I" Street, Suite 7-500
Sacramento, California 95814
(916) 930-2100/ Fax (916) 930-2099
antonia.darling@usdoj.gov

Attorneys for August B. Landis,
Acting United States Trustee, Region 17

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | ) Case No.:  12-32118-C-9 |
| | ) |
| **City of Stockton** | ) D.C. No.:  UST-1 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

**APPOINTMENT OF OFFICIAL COMMITTEE OF RETIREES**

Pursuant to Sections 1102(a) and 1102(b)(1) of the Bankruptcy Code, made applicable to

a chapter 9 case by Section 901,  the following members of the current Ad Hoc Committee of

Retirees, are appointed to the Official Committee of  Retirees:

**COMMITTEE MEMBERS** :

(1) **Dwane Milnes**, email address: dwane.milnes@sbcglobal.net

(2) **Robert Sivell**, email address: sivellfarms@msn.com

(3) **L. Patrick Samsell**, email address: psamsell@comcast.net

(4) **Mark Anderson**, email address: andrsnz@aol.com

(5) **Larry Long**, email address: llong0858@sbcglobal.net

(6) **Mary Morley**, email address: m5122@sbcglobal.net

(7) **Cynthia Neely**, email address: love2gallivant@yahoo.com

(8) **Morris Allen**, email address: mlaciveng@comcast.net

(9) **Rick Butterworth**, email address: rbutterworth52@hotmail.com

(10) **Anthony Delgado**, email address: bmradct@yahoo.com

(11) **Shelley Green**, email address: shelly2500@sbcglobal.net

(12) **Gary Ingraham**, email address: gcingraham@comcast.net

(13) **Frank Johnston**, email address: frank.johnston@gmail.com

Said Ad Hoc Committee, formed prior to the Order for entry of relief, was created when the Association of Retired Employees of the City of Stockton ("ARECOS") caused a letter dated October 15, 2012 ("Solicitation Letter") to be sent to all retired employees of the City, seeking volunteers to serve on such committee.  The current members consist of all retirees who indicated a willingness to serve. The Acting United States Trustee deems that the Ad Hoc committee was fairly chosen and represent the different kinds of interest within the creditor group, and therefore it meets the requirements of section 1102 (b)(1) to be appointed as the official committee.

Executed at Sacramento, California on this  1st day of April, 2013.

Attorney for the Acting United
States Trustee, August B. Landis


 /s/    Antonia G. Darling
Antonia G. Darling
E-filer: antonia.darling@usdoj.gov