## EXHIBIT A

**October 27, 2023 Transcript**

1                IN THE UNITED STATES BANKRUPTCY COURT

2                  FOR THE NORTHERN DISTRICT OF IOWA

3

4

5   IN RE:

6   MERCY HOSPITAL, IOWA CITY      Case No. 23-00623 (TJC)

7   IOWA, et al.                   Jointly Administered

8                   Debtors.

9   _____

10

11

12              REPORT OF AUCTION PROCEEDINGS

13                       Via Zoom

14              Friday, October 27, 2023

15          10:09 a.m. Eastern Standard Time

16

17

18

19

20

21

22

23   Reported by:  Renee J. Ogden, CSR-3455, RPR.

24   Job No.: 23979

25

```
 1   APPEARANCES:

 2


 3   MCDERMOTT WILL & EMERY LLP

 4   BY:  DANIEL M. SIMON, ESQUIRE

 5   1180 Peachtree Street, NE

 6   Suite 3350

 7   Atlanta, GA 30309

 8   (404) 260 8554

 9   Dmsimon@mwe.com

10   - and -

11   MCDERMOTT WILL & EMERY LLP

12   BY:  FELICIA GERBER PERLMAN, ESQUIRE

13   444 West Lake Street

14   Chicago, Illinois  60606-0029

15   (312) 984 3680

16   Fperlman@mwe.com

17   Counsel for the Debtors

18

19

20

21

22

23

24

25
```

```
 1   NYEMASTER GOODE, P.C.

 2   BY:  ROY LEAF, ESQUIRE

 3   700 Walnut Street

 4   Suite 1600

 5   Des Moines, Iowa 50309

 6   (515) 283-3100

 7   Rleaf@nyemaster.com

 8   Counsel for Debtors

 9

10   NYEMASTER GOODE, P.C.

11   BY: KRISTINA M. STANGER

12   700 Walnut

13   Suite 1600

14   Des Moines, Iowa 50309-3899

15   (515) 283-8009

16   Kmstanger@nyemaster.com

17   Counsel for the Debtors

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3    POLSINELLI

 4    BY:  DAVID E. GORDON, ESQUIRE

 5    501 Commerce Street

 6    Suite 1300

 7    Nashville, Tennessee 37219

 8    (404) 253-6005

 9    Dgordon@polsinelli.com

10    - and -

11    POLSINELLI

12    BY:  LINAS J. GRIKIS, ESQUIRE

13    150 North Riverside Plaza

14    Suite 300

15    Chicago, Illinois 60606

16    (312) 873-2946

17    Lgrikis@polsinelli.com

18    - and -

19

20

21

22

23

24

25
```

```
 1   POLSINELLI

 2   BY:  CULLIN B. HUGHES, ESQUIRE

 3   900 West 48th Place

 4   Suite 900

 5   Kansas City, Missouri 64112

 6   (816) 360-4121

 7   Chughes@polsinelli.com

 8   Counsel for The State University of Iowa

 9

10   MINTZ LEVIN COHN FERRIS

11   GLOVSKY AND POPEO, P.C.

12   BY:  NATHAN F. COCO, ESQUIRE

13   919 Third Avenue

14   New York, New York  10022

15   (212) 935-3000

16   Nfcoco@mintz.com

17   Counsel for Computershare Trust

18   Company as master trustee and

19   Preston Hollow Community Capital, Inc.

20   As bondholder representative

21

22

23

24

25
```

```
 1   SILLS CUMMIS & GROSS P.C.

 2   BY:  ANDREW H. SHERMAN, ESQUIRE

 3   The Legal Center

 4   One Riverfront Plaza

 5   Newark, New Jersey  07102

 6   Asherman@sillscummis.com

 7   Counsel to the Official

 8   Committee of Unsecured Creditors

 9   - and -

10   BORIS I. MANKOVETSKIY

11   SILLS CUMMIS & GROSS P.C.

12   BY:  ANDREW H. SHERMAN, ESQUIRE

13   The Legal Center

14   One Riverfront Plaza

15   Newark, New Jersey  07102

16   Bmankovetskiy@sillscummis.com

17   Counsel to the Official

18   Committee of Unsecured Creditors

19

20   ALSO PRESENT:

21   JOHN DINAN - Preston Hollow

22   JIM PORTER - on behalf of the Debtors

23   MARK TONEY - on behalf of the Debtors

24   CORBIN CONNELL - Computershare

25   NARENDRA GANTI - FTI Consulting
```

1   CLIFFORD A. ZUCKER - FTI Consulting

2   C. RICHARD BAYMAN - H2C Securities Inc.

3   ANDREW S. ORMAN - H2C Securities Inc.

4   TOM CLANCY - Mercy, Iowa City

5   ASHLEY CHAMPION-POLSINELLI - State University of Iowa

6   JACK HAAKE - Debtors

7   JACOB PARK - Mercy, Iowa City

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Friday, October 27, 2023

2    10:09 a.m. Eastern Standard Time

3

4              ATTORNEY SIMON:  Good morning, everyone.

5              This is the reopened auction in the

6    Mercy Hospital, Iowa City matter, case number

7    23-00623 currently pending in the United States

8    Bankruptcy Court for the Northern District of Iowa.

9              My name is Dan Simon from McDermott Will

10   & Emery, counsel for the Debtors.

11             We're joined today by my partner,

12   Felicia Perlman; the Debtors' chief executive

13   officer, Tom Clancy; the Debtors' chief

14   restructuring officer, Mark Toney; and the Debtors'

15   chief financial officer, Jim Porter.

16             We also have the two bidding parties on

17   the line.

18             The first is the group known as the

19   Bondholder Representatives from Preston Hollow

20   Community Capital and Computershare.

21             And the second is the University of

22   Iowa.

23             We're also joined by the Official

24   Committee of Unsecured Creditors who acts as the

25   sole consultation party under the bidding

1    procedures.

2              I'm going to ask that each party have

3    only one speaker designated to speak so that we

4    keep the transcript streamlined.

5              Nathan Coco, is it safe to assume that

6    you are the speaker for the Bondholder

7    Representative?

8              ATTORNEY COCO:  That is correct.

9              ATTORNEY SIMON:  Dave Gordon, is it safe

10   to assume that you are the speaker for the

11   University of Iowa?

12             ATTORNEY GORDON:  Yes, that's correct.

13   David Gordon on behalf of the State University of

14   Iowa.

15             ATTORNEY SIMON:  Andrew Sherman, is it

16   fair to assume that you are the speaker for the

17   committee?

18             ATTORNEY SHERMAN:  It is a fair

19   statement, Mr. Simon.

20             ATTORNEY SIMON:  Thank you.

21             As you know, this auction is being

22   conducted pursuant to the bidding procedures order

23   which was entered by the bankruptcy court on

24   September 14th, and filed at Docket 222.

25             The Debtor commenced the auction

1   pursuant to those bidding procedures on

2   October 4th.  We were all in person at McDermott's

3   offices in Chicago.  The auction was continued

4   later that evening and resumed via Zoom on

5   October 10th.

6          At the conclusion of the auction on

7   October 10th, the Debtors, after consultation with

8   the committee, determined that the highest or

9   otherwise best bid was the final bid submitted by

10  the Bondholder Representative.

11         That bid, as stated on the record, was a

12  credit bid in the amount of $27.8 million, an

13  agreement to fund up to $1.2 million in operating

14  losses from November 15th to November 30th, and

15  payment in cash of the $800,000 breakup fee to the

16  University of Iowa.

17         That bid also included an obligation to

18  begin funding the operating losses of the Debtors

19  in full from December 1st until the closing of the

20  sale.

21         In the days that followed the conclusion

22  of that auction, a material disagreement emerged.

23  The Bondholder Representative took the position

24  that the obligation to fund operating losses of the

25  Debtors would be offset by all available sources of

Case 23-00623   Doc 420-1   Filed 10/27/23   Entered 10/27/23 12:41:06   Desc Exhibit
Transcript of Bankruptcy Auction October 27, 2023   Page 12 of 25 Mercy Hospital, Iowa City, Iowa, et al
A Transcript of October 27, 2023   Page 12 of 25

1    funds, which would include the Debtors' cash as

2    well as Foundation cash contemplated to be paid

3    under a settlement agreement which remains subject

4    to court approval.

5              The practical reality of that

6    disagreement meant that the Debtors' cash and

7    Foundation cash would be depleted prior to any

8    funding obligation was required by the Bondholder

9    Representative and prior to any closing.

10             The Bondholder Representative last

11   Thursday filed a motion to compel compliance with

12   the bidding procedures.

13             The Debtors dispute many of the

14   allegations in that pleading and reserve all

15   rights.

16             Needless to say, this disagreement

17   necessarily meant that the value of the final bid

18   from Preston Hollow was materially different than

19   what the Debtors and the Committee determined at

20   the auction.

21             Given that the sale hearing had been

22   continued and no sale order was entered, and that

23   the Debtors could not reach agreement with the

24   Bondholder Representative, the Debtors determined

25   after consultation with the Committee that it was

1    appropriate and consist with the bidding procedures

2    and their fiduciary duties to reopen the auction

3    this morning.

4                    The various parties on the phone today

5    were notified via email this past Wednesday.

6                    So with those introductory comments, I

7    want to seek one simple clarification from the

8    University of Iowa first.

9                    The last bid described by the

10   University of Iowa on the record on October 10th

11   contained an obligation to fund operating losses of

12   the Debtors on and after December 1st, 2023 until a

13   closing occurred.

14                   The Debtors understood that the funding

15   of operating losses would be calculated as the

16   difference between operating expenses and operating

17   revenues.  In other words, this calculation would

18   be without regard to Debtors' existing cash or

19   Foundation cash.

20                   Was the University's last bid on the

21   record consistent with the Debtors' understanding

22   as I just described?

23                   ATTORNEY GORDON:  The University's last

24   bid on the record did not include any Foundation

25   money.

1      With respect to cash, I do believe we

2    assumed that the Debtors would use their cash on

3    hand to fund their operations and that we would

4    make up the difference between operating revenues

5    and losses.

6      ATTORNEY SIMON:  Okay.  So it would be

7    the difference between the operating expenses and

8    the operating revenues?

9      ATTORNEY GORDON:  Correct.  And would

10    not include any Foundation money whatsoever.

11      ATTORNEY SIMON:  Thank you.

12      With that clarification and the fact

13    that the Bondholder Representative stated in their

14    papers that they had a different interpretation of

15    operating losses, the Debtors have determined in

16    consultation with the committee that the last bid

17    submitted by the Bondholder Representatives is no

18    longer the highest or otherwise best bid.

19      Instead, the last bid submitted by the

20    University of Iowa on the record on October 10th

21    has been determined to be the current highest or

22    otherwise best bid.

23      This also necessarily means that the

24    Bondholder Representative bid, which was previously

25    determined to be the successful bid or the winning

1      bid at the auction, is no longer the successful bid

2      or the winning bid.

3              At this point, I will turn back to you,

4      Mr. Gordon, from the University of Iowa, to see if

5      you have any modifications to your current bid or

6      otherwise wish to make any statements for the

7      record.

8              ATTORNEY GORDON:  Sure, we do.  Again,

9      David Gordon with Polsinelli on behalf of the State

10     University of Iowa.

11             Since October 10th when the Debtors

12     filed the notice of auction results designating

13     Preston Hollow's credit bid, the Bondholder

14     Representative credit bid as the winning bid, the

15     State University of Iowa has continued to monitor

16     the situation of this bankruptcy.

17             The University of Iowa Healthcare

18     Leadership, Board of Regents, State of Iowa believe

19     that the providers and staff members of

20     Mercy Iowa City who serve our community are

21     invaluable essential partners.

22             Consistent with its commitment to

23     maintaining sustainable access to care and

24     healthcare workforce, and in light of the current

25     impasse among the parties to this bankruptcy court

1   proceeding, the State University of Iowa is willing

2   to intercede to preserve the legacy of Mercy

3   Iowa City.

4         The University hereby reinstates the bid

5   in the following manner:  If the University is

6   chosen as with winning bidder, and subject to the

7   acquisition being approved as the winning bidder by

8   the bankruptcy court within a reasonable period of

9   time, the satisfaction of all the closing

10  conditions in our asset purchase agreement

11  including licensure, and entering into an employee

12  leaseback with the Debtors until such time as the

13  transaction can reasonably close, which the

14  University anticipates will occur on or before

15  January 31, 2024, we reinstate our bid.

16         The purchase price will be an amount

17  equal to $28 million, plus an amount equal to the

18  Debtors' actual operating losses exclusive of

19  professional fees and all other costs and expenses

20  the relating to the bankruptcy that are not already

21  otherwise covered by the Debtors' cash and other

22  investments for the period commencing on

23  December 1, 2023, and continuing until such time as

24  the transaction closes.

25         For the avoidance of doubt, calculation

1    of the Debtors' operating losses shall in no way

2    take into account any funds made available to the

3    Debtors by the Mercy Iowa City Foundation.

4              In addition to that cash component just

5    stated, if University is chosen as the winning

6    bidder, it commits to invest at least $25 million

7    on information technology infrastructure, physical

8    plant infrastructure, including but not limited to

9    the roof, parking facility, plant equipment, and

10   medical equipment.  The University will make this

11   $25 million investment within five years of

12   closing.

13             The University submits this bid in

14   recognition and appreciation of the profound

15   contribution that Mercy Hospital has made and will

16   continue to make to the community.  We look forward

17   to continuing the mission of Mercy Iowa City,

18   supporting its loyal staff and healthcare

19   professionals through what has been a trying time

20   and we stand with Mercy Iowa City and its employees

21   and staff.

22             ATTORNEY SIMON:  I'd like to go off the

23   record for five minutes just to have a quick break

24   with our team.

25             (Off the record at 10:20 a.m.)

1        (Back on the record at 11:27 a.m.)

2        ATTORNEY SIMON:  We're back on the

3   record.  We appreciate everyone's patience during

4   that break.

5        We do want to make one clarification for

6   the record with respect to the last bid from the

7   University of Iowa.  I'll make it now.

8        With respect to the assets being

9   purchased.  To the extent that actual operating

10  disbursements are greater than actual operating

11  receipts, then the University agrees to fund the

12  difference post-December 1st without regard to the

13  Debtors' Foundation funds or the Debtors' cash on

14  hand as of that date as of December 1st.

15       That funding commitment does not include

16  any agreement to fund by the University of

17  restructuring professional fees of the Debtors

18  during this period.

19       David, can you confirm that statement on

20  behalf of the University?

21       ATTORNEY GORDON:  I confirm that

22  statement on behalf of the University.  That is our

23  understanding of our commitment to fund the

24  operating expenses.

25       ATTORNEY SIMON:  So with that

1    clarification and statements made on the record,

2    the Debtors deem the University of Iowa's bid to be

3    highest or otherwise best bid.

4              I will now turn to Nathan, the

5    Bondholder Representatives, to determine whether

6    you wish to submit a topping bid.

7              ATTORNEY COCO:  Before I address that

8    question, Dan -- thank you -- let me ask Corbin and

9    JD, do you think it's appropriate for us to have a

10   caucus or recess here or are you comfortable with

11   us proceeding?

12             MR. DINAN:  PHC as Bondholder

13   Representative is comfortable proceeding.

14             MR. CONNELL:  Computershare likewise is

15   comfortable proceeding.  Thank you.

16             ATTORNEY COCO:  So with that, I'll

17   address your question as follows.

18             Let me first state for the record, this

19   is Nathan Coco on behalf of the Preston Hollow

20   Community Capital, Inc. and Bondholder

21   Representatives, and Computershare Trust Company,

22   NA, as master trustee, which I will refer to

23   collectively as the Secured Bondholder

24   Representatives.

25             I'm joined in this proceeding by Corbin

1    Connell from Computershare who serves as the master

2    trustee, and by John Dinan on behalf of Preston

3    Hollow.

4              We would like to state for the record

5    and for the avoidance of doubt, that the Secured

6    Bondholder Representatives' final bid at the

7    auction convened on October 10, 2023 was for the

8    payment of the breakup fee, plus $29 million

9    consisting of, one, $27.8 million credit bid; two,

10   a $1.2 million cash bid to be satisfied through the

11   backstop of operating losses up to that amount

12   incurred by Mercy Hospital, Iowa City, Iowa for the

13   for the period of November 15 through November 30;

14   three, a further commitment to backstop operating

15   losses incurred by Mercy for the period of

16   December 1, 2023 through the closing date.

17             The credit bid was for all of the

18   purchased assets, as that term is defined in the

19   credit bid asset purchase agreement, as well as

20   Mercy's interest in certain clinics and parking

21   lots, but excluding the medical office building

22   referred to as the MOB2 and adjacent parking lot.

23             The bid was subject to satisfaction of

24   all contractual closing conditions and the Secured

25   Bondholder's credit bid asset purchase agreement.

1           For the further avoidance of doubt, the

2     the backstop commitment incorporated in the Secured

3     Bondholder Representative's bid is different from

4     what the University and the Debtors have just

5     described with respect to the University's bid.

6           The backstop commitment incorporated in

7     the Secured Bondholder Representative's bid was to

8     advance funds to the Debtors' bankruptcy estates

9     for the specific amounts by which Mercy's operating

10    expenses exceeded its available funds to pay such

11    expenses including Mercy's available cash on hand

12    and any funds contributed to Mercy by the

13    Foundation.

14          The Secured Bondholder Representatives

15    are willing to increase their credit bid by

16    $1 million.  But to be clear, the Secured

17    Bondholder Representatives will not alter or

18    increase the amount of their bid, nor will the

19    Secured Bondholder Representatives agree to or

20    close a transaction with the Debtors either as a

21    bidder, a backup bidder, or otherwise, if such bid

22    does not provide for the application of Mercy's

23    cash on hand and funds contributed by the

24    Foundation in determining operating losses.

25          From the Secured Bondholder

1        Representative's perspective, any transaction that

2        is not inclusive of Mercy's cash on hand and

3        Foundation funds for purposes of determining

4        operating losses is not financially viable, does

5        not comport with the bid they proffered at the

6        auction convened on October 10th, and the Secured

7        Bondholder Representatives will not move forward on

8        that basis.

9              The Secured Bondholder Representatives

10       reserve all of their rights in connection with this

11       auction and the sale process.

12             ATTORNEY SIMON:  Thank you, Nathan.

13             Based upon the statements made on the

14       record today, the Debtors in consultation with the

15       committee determine that the bid from the

16       University of Iowa is the winning bid or successful

17       bid at the auction.

18             I'll say as a part of this determination

19       the Debtors take very seriously their fiduciary

20       duties and the power granted to the Debtors under

21       the bidding procedures order.

22             That's in part why we believed it

23       appropriate to reopen the auction today.

24             The bid submitted by the Bondholder

25       Representatives as described by Mr. Coco, after

1    accounting for the fact that it required use of all

2    of the remaining funds, including Foundation funds

3    and cash on hand, meant that this bid is not a

4    viable alternative.

5           The bidding procedures grant broad

6    discretion to the Debtors, including the specific

7    ability of the Debtors to reject at any time before

8    entry of an order of the court approving a winning

9    bids, any bid that the Debtors determine is, 1,

10    inadequate or insufficient; 2 not in conformity

11    with the requirements of the bankruptcy codes

12    and/or bidding procedures; or 3, contrary to the

13    best interest of the Debtor, their estate, their

14    creditors, and other stakeholders.

15           Under this power, the Debtors do not

16    believe that any bid that requires use of the

17    Debtors' remaining cash and Foundation cash prior

18    to closing is a viable transaction under the

19    circumstances.  Therefore, the Debtors reject the

20    bid of the Bondholder Representatives as stated.

21           The Debtors deem the winning bidder to

22    be the University of Iowa based upon the terms

23    stated on the record which will remain subject to

24    definitive documentation and approval of the

25    bankruptcy court.

1          Does anyone else wish to say anything

2    for the record at this point?

3          With that, I'd like to thank all of

4    parties for their cooperation and attention in

5    these important matters.

6          As you know, the Debtors have been very

7    focused on ongoing patient care in the midst of

8    these bankruptcy proceedings which has not always

9    been an easy task.

10          We thank both of the bidding parties.

11   We believe that the transaction with the University

12   of Iowa will go a long way to restoring confidence

13   in the Debtors' employees and ensuring ongoing

14   patient care in the community for many years to

15   come.

16          The Debtors will be filing shortly an

17   amended notice of auction results.  I will report

18   these results to the court at the hearing this

19   afternoon.

20          We also intend to notice up a sale

21   hearing for November 5th.

22          Thank you, everyone.  We're off the

23   required.

24          (Auction concluded at 11:34 a.m.)

25

```
 1                  CERTIFICATE OF NOTARY

 2   STATE OF MICHIGAN       )

 3                           ) SS

 4   COUNTY OF WAYNE         )

 5

 6              I, RENEE J. OGDEN, certify that the

 7        foregoing was recorded by me stenographically and

 8        reduced to computer transcription; that this is a

 9        true, full and correct transcript of my

10        stenographic notes so taken; and that I am not

11        related to, nor of counsel to, either party nor

12        interested in the event of this cause.

13

14

15

16

17

18               RENEE J. OGDEN, CSR-3455

19               Notary Public,

20               Wayne County, Michigan

21        My Commission expires: June 21, 2025

22

23

24

25
```