## EXHIBIT A

**Proposed Order**

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 26, 38** |

### [PROPOSED] FINAL ORDER GRANTING MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[1] of the Debtors for entry of that certain *Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 38] (the "<u>Interim Order</u>") and a final order (this "<u>Final Order</u>" and, together with the Interim Order, the "<u>Cash Collateral Orders</u>") (a) authorizing the Debtors' use of Cash Collateral and granting adequate protection and (b) granting related relief, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and due and appropriate notice of the Motion, the interim hearing held on August 8, 2023 (the "<u>Interim Hearing</u>") to consider entry of the Interim Order, and the final hearing (the "<u>Final Hearing</u>" and, together with the Interim Hearing, the "<u>Cash Collateral Hearings</u>") to consider entry of this Final Order having been provided by the Debtors; and it appearing that no other or further

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

notice need be provided; and the Court having reviewed the Motion; and upon the record made by the Debtors in the Motion, in the First Day Declaration, and at the Cash Collateral Hearings; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties-in-interest in these Chapter 11 Cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[2]

A.    *Petition Date*. On August 7, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Court commencing these Chapter 11 Cases.

B.    *Debtors-in-Possession*.  The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.    *Committee Formation*. On August 15, 2023, the Office of the United States Trustee (the "U.S. Trustee") filed a *Notice of Appointment of Creditors' Committee* [Docket No. 107] appointing an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

D.    *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over the Chapter 11 Cases, the Motion, and the parties and property affected thereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue for

---

[2] Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

      E.      *Debtors' Stipulations and Acknowledgements Regarding the Prepetition Secured*

*Parties*.  In requesting the use of Cash Collateral, and in exchange for and in recognition of the

consent (and/or deemed consent) of the Prepetition Secured Parties (as defined below) to the use

of their Cash Collateral (in each case, as set forth in this Final Order), subject to paragraph 12

hereof, the Debtors for themselves, their estates and all representatives of such estates, admit,

stipulate, acknowledge and agree as follows (collectively, the admissions, stipulations, and

acknowledgments and agreements set forth in this paragraph E, the "Stipulations"):

      (i)      Mercy Hospital is indebted to the Trustee for the benefit of the beneficial

holders with respect to those certain Health Facilities Revenue Bonds, Series 2011 (Mercy

Hospital Project) (the "2011 Bonds") and the Health Facilities Revenue Bonds, Series 2018

(Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the

"Bonds").

      (ii)      The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer")

pursuant to that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust

Indenture"), between the Issuer and Wells Fargo Bank, National Association, as

predecessor Trustee (the "2011 Bond Trustee") and the proceeds of the 2011 Bonds were

loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of November

1, 2011 (the "2011 Loan Agreement"), between the Issuer and Mercy Hospital.  Under the

2011 Trust Indenture, the Issuer assigned and pledged to the 2011 Bond Trustee

substantially all of its rights under the 2011 Loan Agreement, including its rights in and to

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the "Obligation" (as defined therein) securing the 2011 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2011 Loan Agreement.

(iii)     The 2018 Bonds were issued by the Issuer pursuant to that certain Trust

Indenture dated as of May 1, 2018 (the "2018 Trust Indenture" and, together with the 2011

Trust Indenture, the "Indentures"), between the Issuer and Wells Fargo Bank, National

Association, as predecessor Trustee (the "2018 Bond Trustee") and the proceeds of the

2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated

as of May 1, 2018 (the "2018 Loan Agreement"), between the Issuer and Mercy Hospital.

Under the 2018 Trust Indenture, the Issuer assigned and pledged to the 2018 Bond Trustee

substantially all of its rights under the 2018 Loan Agreement, including its rights in and to

the "Obligation" (as defined therein) securing the 2018 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2018 Loan Agreement, except for

certain Reserved Rights (as defined therein).

(iv)     Both series of Bonds are secured by Obligations issued by Mercy Hospital

under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and

amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998, a Second

Supplemental Master Trust Indenture dated as of September 1, 2002, a Third Supplemental

Master Trust Indenture dated as of July 1, 2005, a Fourth Supplemental Master Trust

Indenture dated as of October 1, 2005, a Fifth Supplemental Master Trust Indenture dated

as of April 1, 2008, a Sixth Supplemental Master Trust Indenture dated as of August 1,

2010, a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018, and an

Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 (collectively, as

supplemented, the "Master Trust Indenture"), each by and between Mercy Hospital and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Wells Fargo Bank, National Association, as predecessor Master Trustee (the "Master Trustee" and, together with the 2011 Bond Trustee and the 2018 Bond Trustee, the "Trustee").

(v)      Computershare Trust Company, N.A., is the successor 2011 Bond Trustee, 2018 Bond Trustee, and Master Trustee.

(vi)      As security for their obligations with respect to the Bonds, Mercy Hospital entered into the Master Trust Indenture and that certain Mortgage and Security Agreement and Fixture Financing Statement (the "Mortgage"), dated as of May 1, 2018, and recorded on May 11, 2018, in Johnson County, Iowa, in favor of the Master Trustee.  The 2011 Trust Indenture, 2011 Loan Agreement, 2018 Trust Indenture, 2018 Loan Agreement, Master Trust Indenture, Mortgage, Obligations, and any other document or agreement delivered as security for, or in respect of, the Bonds or Mercy Hospital's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

(vii)      The Trustee holds a valid and enforceable perfected first priority lien and security interest in substantially all of Mercy Hospital's real and personal property as set forth in, and subject to the terms of, the Bond Documents (all such collateral, the "Prepetition Trustee Collateral" and the liens on such Prepetition Trustee Collateral, the "Prepetition Trustee Liens") including, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

land as set forth (and to the extent set forth) in the Mortgage, and all of Mercy Hospital's

accounts and assignable general intangibles regardless of how generated, and all proceeds

therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial

Code, as set forth (and to the extent set forth) in the Granting Clauses, Division I, of the

Master Trust Indenture, which includes Mercy Hospital's membership interest in its limited

liability company affiliates Corridor Radiology, LLC, Eastern Iowa Rehabilitation

Hospital, LLC; Iowa City Ambulatory Surgery Center, L.L.C; and Mercy Iowa City ACO,

LLC; *provided, however*, that the Debtors assert that the Prepetition Trustee Liens do not

attach, extend or otherwise cover Mercy Hospital's deposit accounts and investment

accounts and hereby make no Stipulation to that effect; *provided further*, that the Trustee

asserts that the Prepetition Trustee Liens do attach, extend, or otherwise cover such deposit

accounts and investment accounts and reserves its rights and claims with respect thereto.

All parties in interest reserve their rights with respect to whether the Prepetition Trustee

Liens extend to Mercy Hospital's membership and/or ownership interests in Mercy

Hospital Foundation and Mercy Services Iowa City, Inc.

    (viii)        [3]As of the Petition Date, the aggregate indebtedness under the Bonds (the

"Bond Claim") was not less than the sum of (A) $[58,489,897.63] in unpaid principal on

the Bonds was, consisting of $[24,270,000] in principal amount of Series 2011 Bonds and

$[34,219,897.63] in principal amount of Series 2018 Bonds, (B) accrued but unpaid interest

on the Bonds in the aggregate amount of $[1,036,758.06], consisting of $[570,036.67] in

accrued interest on the 2011 Bonds and $[466,721.39] in accrued interest on the 2018

Bonds, and (C) other amounts, including accrued and unpaid fees and expenses of the

---

[3] NTD: Amounts under review

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Trustee and its professionals incurred through the Petition Date, that are reimbursable under the Bond Documents in accordance with their terms.

(ix)     The Bond Claim constitutes a legal, valid, binding, and enforceable obligation against Mercy Hospital and is secured on a first priority basis by the Prepetition Trustee Liens in the Prepetition Trustee Collateral, subject to Prepetition Permitted Liens (as defined below).

(x)     The Debtors do not possess and agree not to assert any claim (as such term is defined in section 101(5) of the Bankruptcy Code), counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Bond Documents, and the Debtors agree not to assert recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(xi)     On or about November 22, 2016, Mercy Services submitted a customer application to McKesson Corporation and its affiliates (collectively, "McKesson"; the Trustee and McKesson are collectively referred to as the "Prepetition Secured Parties") for the purchase of pharmaceutical and medical-surgical products (the "McKesson Security Agreement"; the McKesson Agreement and any related documents or filings are, together with the Bond Documents, collectively referred to as the "Prepetition Documents"). McKesson holds a valid and enforceable first priority lien and security interest in substantially all of Mercy Services' personal property as set forth in, and subject to the terms of, the McKesson Security Agreement and any related documents or filings (all such collateral, the "Prepetition McKesson Collateral" and the liens on such Prepetition McKesson Collateral, the "Prepetition McKesson Liens"; the Prepetition Trustee Collateral

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

and Prepetition McKesson Collateral are collectively referred to as the "Prepetition Collateral," and the Prepetition Trustee Liens and Prepetition McKesson Liens are collectively referred to as the "Prepetition Liens").

(xii)    As of the Petition Date, the aggregate indebtedness owed to McKesson (the "McKesson Claim") was approximately $400,000.00.

F.    *Consensual Use of Cash Collateral.*  The Debtors have requested the use of the Cash Collateral of the Prepetition Secured Parties in connection with the Chapter 11 Cases.  The Prepetition Secured Parties consent to the use of each of their respective Cash Collateral upon the express terms of this Final Order.

G.    *Need for Use of Cash Collateral.*  Without the use of Cash Collateral, the Debtors' continued operation as a going concern would be disrupted, and the Debtors and their patients, employees, estates and creditors would be immediately and irreparably harmed. The Debtors would not have the funds necessary to maintain the Mercy Hospital facilities, pay employee compensation, payroll taxes, overhead and other expenses, nor could they effectuate a sale transaction.  The Debtors require use of Cash Collateral as provided herein.

H.    *Good Faith; Exercise of Debtors' Business Judgment.*  The Debtors and the Prepetition Secured Parties have negotiated at arm's length and in good faith in the negotiation and preparation of this Final Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Final Order, inclusive of the adequate protection provided to the Prepetition Secured Parties, reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

1.      *Motion Granted.*  The Motion is granted on a final basis as set forth herein.

2.      *Use of Cash Collateral.*  The Debtors may use Cash Collateral subject to the terms of this Final Order and solely in accordance with the budget, attached hereto as **Exhibit 1** (as such budget may be updated and/or modified from time to time by the Debtors; provided, however, that to the extent such updates or modifications increase total disbursements over a four (4) week period by more than ten (10%) percent in the aggregate, they shall require the consent of the Master Trustee (which consent shall not be unreasonably withheld, conditioned, or delayed) or, if the Master Trustee does not consent, the approval of the Court, the "Budget"); *provided*, that the Budget may not be modified to increase expenditures for estate professional fees without consent of the Master Trustee.  In the event of a dispute concerning the Budget, all rights of the Debtors, the Committee, and Trustee shall be and are reserved.

3.      *Adequate Protection of Interests of McKesson.*  As provided in this Final Order, McKesson is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition McKesson Collateral (including Cash Collateral), solely to the extent of the postpetition diminution in value which is as a result of, or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of such Prepetition McKesson Collateral (including Cash Collateral), or the grant of a lien under Bankruptcy Code section 364, or subordination to the Carve Out and applicable case law interpreting the same (any such diminution, "Diminution in Value").  McKesson shall receive the following:

(a)      *McKesson Adequate Protection Liens.*  McKesson is hereby granted, upon entry of this Final Order, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected additional and replacement security interests in and liens upon all of

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the property of Mercy Services (the "<u>McKesson Adequate Protection Liens</u>") of any kind or nature

whatsoever, including, without limitation, property which, but for the commencement of the

Chapter 11 Cases, would constitute Prepetition McKesson Collateral subject to validly perfected,

non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and

profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the

"<u>McKesson Adequate Protection Collateral</u>"); *provided*, *however*, that such McKesson Adequate

Protection Collateral shall not include any causes of action, including, without limitation, any

claims and causes of action under Bankruptcy Code section 502(d), 544, 545, 547, 548, 549, 550

or 553, or any other avoidance actions under the Bankruptcy Code (collectively, "<u>Avoidance</u>

<u>Actions</u>") or the proceeds thereof; *provided, further, that* the McKesson Adequate Protection Liens

shall in each case be subject and subordinate only to (i) the Carve-Out (as defined below), (ii) any

liens that exist on, and are legal, valid, binding, enforceable, perfected, and non-avoidable as of,

the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to

applicable Prepetition Documents or applicable law, and (iii) any liens in existence immediately

prior to the Petition Date that are legal, valid, enforceable, binding and non-avoidable, and are

perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), and which are

permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Prepetition

Documents or applicable law, and in each case not including the Prepetition Liens or the Adequate

Protection Liens (as defined below) (such liens described in clauses (ii) and (iii), collectively, and

not including any Prepetition Liens or Adequate Protection Liens, the "<u>Prepetition Permitted</u>

<u>Liens</u>"); and

      (b)    *Payment of McKesson's Fees and Expenses*. As further adequate protection,

the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

documented out-of-pocket professional fees, expenses and disbursements of one primary legal counsel and one local Iowa legal counsel, in each case, incurred by McKesson (the "McKesson Fees and Expenses") in the amounts and at the times set forth in the Budget.

4.    *Adequate Protection of Interests of the Trustee.*  As provided in the Interim Order and reaffirmed by this Final Order, the Trustee is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition Collateral (including Cash Collateral), solely to the extent of the Diminution in Value of such Prepetition Collateral (including Cash Collateral).  The Trustee, for the benefit of itself and the holders of the Bonds, shall receive the following:

(c)    *Trustee Adequate Protection Liens*.  The Trustee, for the benefit of the holders of the Bonds, was granted upon entry of the Interim Order, which grant is hereby reaffirmed upon entry of this Final Order, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected additional and replacement security interests in and liens upon all of the Debtors' property (the "Trustee Adequate Protection Liens" and, together with the McKesson Adequate Protection Liens, the "Adequate Protection Liens") of any kind or nature whatsoever, including, without limitation, property which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral subject to validly perfected, non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the "Trustee Adequate Protection Collateral" and, together with the McKesson Adequate Protection Collateral, the "Adequate Protection Collateral"); *provided*, *however*, that such Trustee Adequate Protection Collateral shall not include any Avoidance Actions, or proceeds thereof (the "Excluded Adequate Protection Collateral"); *provided, further, that* the Trustee Adequate Protection Liens shall in each

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

case be subject and subordinate only to (i) the Carve-Out, (ii) any Prepetition Permitted Liens, and

(iii) solely with respect to the McKesson Adequate Protection Collateral, the McKesson Adequate

Protection Liens;

(d)    *Superpriority Claims*.    As additional adequate protection, the Master

Trustee, for the benefit of itself and the holders of the Bonds, was granted upon entry of the Interim

Order, which grant is hereby reaffirmed upon entry of this Final Order, subject only to payment of

the Carve-Out, an allowed superpriority administrative expense claim (each a "Superpriority

Claim" and, collectively, the "Superpriority Claims") as provided for in Bankruptcy Code sections

503(b) and 507(b) against all assets of the Debtors' estates, *provided*, *however*, that such

Superpriority Claims shall not include Excluded Adequate Protection Collateral.  Subject only to

the Carve-Out, and except as provided below, the Superpriority Claims shall have priority over

any and all administrative expenses, adequate protection claims and other claims against the

Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation,

all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b),

and over any and all administrative expenses or other claims arising under the Bankruptcy Code.

Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases of the

Debtors shall be senior to, or *pari passu* with, any of the Superpriority Claims; and

(e)    *Payment of Master Trustee's Fees and Expenses*. As further adequate

protection, the Debtors shall pay in full in cash and in immediately available funds, the actual,

reasonable and documented out-of-pocket professional fees, expenses and disbursements

(including, but not limited to, the expenses and disbursements of counsel and other third-party

consultants, including financial advisors) incurred by the Master Trustee (the "Master Trustee Fees

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

and Expenses" and, together with the McKesson Fees and Expenses, the "Fees and Expenses")
solely in the amounts and at the times set forth in the Budget.

(f)    *Distribution of Sale Proceed*s.  As further adequate protection, and solely
in the event that the Trustee does not file or otherwise assert an objection to a sale of substantially
all of the Debtors' assets to the University of Iowa, the Debtors agree to not object or otherwise
assert an objection to a motion filed by the Master Trustee that seeks a distribution to the Trustee
at closing of such sale; *provided* that such distribution of sale proceeds is not in excess of
$26,800,000, minus the Carve-Out.

5.    *Review of Fees and Expenses*.  None of the Fees and Expenses shall be subject to
separate approval by this Court or require compliance with the United States Trustee Guidelines,
and no recipient of any such payments made with respect to the Fees and Expenses shall be
required to file any interim or final fee application with respect thereto or otherwise seek the
Court's approval of any such payments; *provided, that* copies of the invoices for such Fees and
Expenses (the "Invoiced Fees") shall be served by email on the Debtors, the United States Trustee,
and counsel to the Committee (collectively, the "Fee Notice Parties"), who shall have ten (10)
business days (the "Review Period") to review and assert any objections thereto.  Invoiced Fees
shall be in the form of an invoice summary for professional fees and categorized expenses incurred
during the pendency of the Chapter 11 Cases, together with time entries which may be modified
to redact information subject to the attorney-client privilege, any work product doctrine, privilege
or protection, common interest doctrine privilege or protection, any other evidentiary privilege or
protection recognized under applicable law, or any other confidential information, and the
provision of such invoices shall not constitute any waiver of the attorney-client privilege, work
product doctrine, privilege or protection, common interest doctrine privilege or protection, or any

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

other evidentiary privilege or protection recognized under applicable law. The Fee Notice Parties

reserve their respective rights to request additional information with respect to the Invoiced Fees

and to challenge an assertion of privilege with respect to such redactions.  The Fee Notice Parties

may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if,

within the Review Period, a Fee Notice Party notifies the submitting party in writing the Disputed

Invoiced Fees and the basis for such objection (the applicable parties shall work in good faith to

promptly resolve any such objection or, if unable to do so, shall seek an order of the Court).  For

the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the

Disputed Invoiced Fees.

6.     *Undersecurity/506(b)*.  In the event that it is determined by order of the Court that

McKesson or the Trustee is either (a) not oversecured and/or (b) not entitled pursuant to

Bankruptcy Code section 506(b) to any postpetition adequate protection payment, fees and

expenses relating to the McKesson Claim or the Bond Claim, respectively, then any Fees and

Expenses remitted to the Trustee shall reduce the Bond Claim and any Fees and Expenses remitted

to McKesson shall reduce the McKesson Claim.

7.     *Perfection of Adequate Protection Liens*.  The approval of the Cash Collateral

Orders by the Court shall be sufficient and conclusive evidence of the validity, extent,

enforceability, and perfection of the Adequate Protection Liens granted to the Prepetition Secured

Parties whether or not the Prepetition Secured Parties elect to file or record financing statements

or any other documents that may otherwise be required under federal or state law in any

jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect

such liens under applicable law; *provided, however*, that the Prepetition Secured Parties may, in

their sole discretion, but shall not be required to, file a certified copy of one or both of the Cash

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Collateral Orders in any filing or recording office in any jurisdiction in which the Debtors have

real or personal property; and such filing or recording shall be accepted and shall constitute further

evidence of perfection of the liens and security interests of the Prepetition Secured Parties.

8.      *Financial Reporting.* As additional adequate protection, the Debtors shall deliver

to the Master Trustee and its counsel, and the Committee and its counsel, an updated rolling Budget

no later than the Tuesday of each calendar week commencing on the first Tuesday following the

first full week after the Petition Date.  No later than the Wednesday of each calendar week

commencing on the first Wednesday following the first full week, the Debtors shall deliver to the

Master Trustee and the Committee a variance report comparing, on a line-item basis, actual results

to the Budget for the previous individual week on a weekly and cumulative basis.  The Debtors

shall also use reasonable best efforts to provide to professional advisors for the Master Trustee and

the Committee (i) within 45 days after the end of each month, commencing with the month ending

July 31, 2023, a monthly balance sheet of Mercy Hospital as of the last day of each fiscal month

and the related income statement for the one-month period then ended and (ii) within 15 days after

the end of each month, commencing with the month ending August 31, 2023, "AR Days", "Days

Not Final Billed", and accounts receivable balances by aging.

9.      *Right to Seek Additional Adequate Protection.* This Final Order is without prejudice

to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured

Parties to request further or alternative forms of adequate protection at any time upon notice and a

hearing or the rights of the Debtors or any other party to contest such request.

10.     *Events of Default; Remedies Upon an Event of Default.*

(a)      Each of the following shall be considered an Event of Default ("Event of

Default") under this Final Order:

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(i)     this Final Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Trustee;

(ii)    the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order;

(iii)   the dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases to chapter 7 cases, or suspension of the Chapter 11 Cases under section 305 of the Bankruptcy Code;

(iv)    the appointment of a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code);

(v)     the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtors, by any entity other than the Trustee on any Prepetition Collateral or Adequate Protection Collateral;

(vi)    the entry of an order granting any superpriority claim which is senior to or *pari passu* with the Trustee other than as provided for in this Final Order;

(vii)   the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtors other than as set forth in the Budget or as provided for in this Final Order;

(viii)  the cessation of Adequate Protection Liens or the Superpriority Claims granted pursuant to this Final Order to be valid, perfected and enforceable in all respects;

(ix)    the filing of any Challenge (as defined below) to any Prepetition Liens or Prepetition Collateral by the Debtors;

(x)     the payment of estate professional fees by the Debtors out of Prepetition Collateral or Trustee Adequate Protection Collateral other than to the extent set forth in the Budget;

(xi)    the filing of, or otherwise asserting an, objection by the Debtors to a motion by the Master Trustee seeking a distribution to the Master Trustee at closing of no more than $26,800,000 in sale proceeds, minus the Carve-Out; or

(xii)   failure to materially comply with the following milestone covenants:

      a.   By December 5, 2023, the Debtors shall provide drafts of the Disclosure Statement and Plan to the Trustee;

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

    b.  By December 14, 2023, the Debtors shall file the Disclosure Statement and Plan, each in form and substance reasonably acceptable to the Trustee;

    c.  By January 24, 2024, the Debtors shall obtain entry of an order approving the Disclosure Statement and related solicitation procedures, in form and substance reasonably acceptable to the Trustee;

    d.  By not later than March 8, 2024, the Debtors shall obtain an order confirming the Plan, in form and substance reasonably acceptable to the Trustee; and

    e.  Within 30 days of the Plan being confirmed, the Plan effective date shall occur.

(b)    Notwithstanding anything herein, the Debtors shall no longer, pursuant to the Interim Order, this Final Order or otherwise, be authorized to use Cash Collateral for any purpose hereunder upon the occurrence of an Event of Default (such date, the "Termination Date"); provided, however, that the Trustee shall provide five (5) business days (the "Default Notice Period") written notice via email to counsel to the Debtors, the United States Trustee, and counsel to the Committee of any Event of Default (the "Default Notice") and the Debtors may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtors or the Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing (collectively, the "Debtor Default Period Rights").

(c)    Notwithstanding the occurrence of an Event of Default, the Trustee may elect in writing not to terminate the Debtors' authority to borrow funds and/or use Cash Collateral hereunder, as applicable, to waive defaults hereunder, or to forbear from the exercise of rights and remedies hereunder.

18

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(d)    Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Trustee shall survive the Termination Date.

11.    *Exercise of Rights.*  The Trustee shall be entitled to apply the payments or proceeds of the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral as it deems appropriate, subject to the Carve-Out and the Prepetition Permitted Liens, if any, and in no event shall the Trustee be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Trustee Adequate Protection Collateral or otherwise.

12.    *Challenges to Debtors' Stipulations/Investigation Period.*    The Debtors' Stipulations shall be binding upon the Debtors in all circumstances and for all purposes immediately upon entry of this Final Order.  The Debtors' Stipulations shall be binding upon the Committee, all other creditors, and all parties-in-interest (collectively, the "Interested Parties") and each of their respective successors and assigns, in all circumstances and for all purposes, and the Debtors and all Interested Parties shall be prohibited and barred from otherwise asserting any claims or causes of action against the Trustee and/or holders of the Bonds on behalf of the Debtors' estates, unless (a)  any Interested Party timely files an adversary proceeding or contested matter (a "Challenge") by no later than the date that is thirty (30) days after entry of this Final Order (the "Challenge Deadline") challenging the Stipulations or otherwise asserting any claim or cause of action against the Trustee and/or holders of the Bonds and (b) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge.  If no Challenge is commenced by an Interested Party prior to the Challenge Deadline, then the Stipulations shall be binding upon such Interested Party in all circumstances and for all purposes and not be subject to any other or further Challenge, contest, attack, objection,

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

challenge, defense, claim, or counterclaim, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by such Interested Party.  Further, if an Interested Party timely files a Challenge to a Stipulation or Stipulations or raises a claim or cause of action, then except for the Stipulation, Stipulations, claims or causes of action expressly subject to such Challenge, Challenges to other Stipulations and other claims and causes of action are hereby deemed forever waived and barred.  This Final Order confers standing on the Committee, but not on any other Interested Party to commence, prosecute and/or settle a Challenge.

13.    *Section 506(c); Section 552(b)*.  Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral, pursuant to section 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Trustee and no such consent shall be implied from any other action, inaction, or acquiescence by the Trustee.

14.    *Carve-Out*.  In partial consideration of the Debtors' acknowledgement of the Bond Claim and the Debtors' waiver of any claims under sections 506(c) and 552(b) of the Bankruptcy Code, the Trustee consents to the payment of certain expenses and professional fees incurred during the pendency of these Chapter 11 Cases that shall be superior in all instances to the liens and claims of the Trustee and all other parties (the "Carve Out").  As used in the Cash Collateral Orders, "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section

726(b) (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all budgeted, accrued and unpaid fees, costs, and expenses ("Professional Fees") incurred or accrued by persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363 or 1103 (collectively, the "Professionals") prior to the date that is five (5) business days following the Termination Date (the "Carve-Out Trigger Date"); and (iv) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all Professional fees incurred or accrued by Professionals after the Carve-Out Trigger Date in an aggregate amount not to exceed $250,000.  Notwithstanding anything to the contrary in this Final Order or Prepeititon Documents, or otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate Protection Liens and Superpriority Claims), the Prepetition Liens, the Prepetition Permitted Liens, and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out.  Nothing herein shall constitute a waiver of any right of the Prepetition Secured Parties to object to fees and expenses of any Professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid (or parties' rights to respond thereto).  Except to the extent of and in consideration of the Carve Out, (y) no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Trustee, the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code or a similar principal of law; and (z) the "equities of the case" exception under section 552(b) of the Bankruptcy Code is waived as to the Trustee, the Prepetition Trustee Collateral, and the Trustee Adequate Protection Collateral.  Any payment or reimbursement made

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

in respect of the Carve Out incurred by any Professional on or after the Carve-Out Trigger Date

shall permanently reduce the Carve Out on a dollar for dollar basis.

15.     *Professional Fee Reserve.*  For purposes of the Cash Collateral Orders, the Debtors

are authorized to establish a reserve (the "Professional Fee Reserve") of funds sufficient to satisfy

the budgeted Professional Fees that have or will come due during the pendency of the Case,

including those that have not yet been approved by the Court.  At the end of each week following

the Petition Date, the Debtors may (and are hereby authorized to) disburse and allocate funds from

the Mercy Hospital investment account to the Professional Fee Reserve in an amount equal to

100% of the Carve-Out amount allocated for Professional Fees for that week under the Budget,

pending approval of the Court to disburse such funds to the respective beneficiaries.  The Debtors

are not permitted to use funds contained in the Professional Fee Reserve for any purpose other

than for Professional Fees without further order of this Court.  To the extent that the funds in the

Professional Fee Reserve exceed the Professional Fees allowed by the Court for a beneficiary of

the Carve-Out, such funds shall revert to the Debtors.

16.     *Limitations on Use of Cash Collateral.*  Notwithstanding anything else herein,

subject to the proviso at the last sentence of this paragraph 16, no amounts under the Carve-Out or

the proceeds of Prepetition Collateral (including Cash Collateral) and Adequate Protection

Collateral shall be used after the date of entry of the Final Order for the purpose of: (i) objecting

to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection,

priority, or enforceability of: (a) the Bond Claim or the Prepetition Liens or (b) any other rights or

interests of the Trustee granted under the Cash Collateral Order; (ii) asserting any claims or causes

of action, including, without limitation, any Avoidance Actions against the Trustee or the holders

of the Bonds or invoking the equitable doctrine of "marshalling" or any other similar doctrine with

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

respect to any of the Prepetition Trustee Collateral, the Trustee Adequate Protection Collateral or otherwise; (iii) preventing, hindering, or delaying the enforcement or realization by the Trustee upon any of the Prepetition Collateral or Adequate Protection Collateral (other than to contest whether an asserted Event of Default or Termination Date has occurred and is continuing); (iv) incurring secured indebtedness that would be senior to, or *pari passu* with, the obligations owed to the Trustee under the Cash Collateral Orders except as permitted by the Cash Collateral Orders; or (v) modifying any adequate protection granted to the Trustee. Notwithstanding the foregoing, not more than $50,000 of the Cash Collateral may be made available to reimburse the Committee upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Bond Claim and/or the Prepetition Trustee Liens.

17.     *Right to Credit Bid*.  The Debtors admit, acknowledge, and agree that the Trustee has the right to credit bid the Bond Claim in connection with any sale or other disposition of the Prepetition Collateral under the Bankruptcy Code.

18.     *Deemed Request for Stay Relief*.  This Final Order shall be deemed to constitute a request by the Trustee for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection as of the Petition Date.

19.     *No Control*.  None of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors,

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

notwithstanding any consent to this Final Order and extending financial accommodations of any type, kind or nature under this Final Order.

20.    *No Third Party Beneficiaries*.  The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors). No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

21.    *No Modification*.  Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Prepetition Documents.

22.    *No Waiver*.  No consent by the Trustee to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Trustee, as applicable, in the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to the provisions of sections 506(c) and/or 552(b) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence.

23.    *Final Order Controls*.  In the event of a conflict between the terms of the Interim Order and this Final Order, the terms of this Final Order shall control.

24.    *Effectiveness of the Final Order*.  Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

25.    *Implementation of the Final Order*.  The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

26. *Exclusive Jurisdiction.* The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated and entered this _____ day of _____, 2023.

_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:          rleaf@nyemaster.com

- and –

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:          fperlman@mwe.com
                  dsimon@mwe.com
                  ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:          jhaake@mwe.com

**EXHIBIT 1**

**<u>Cash Collateral Budget</u>**