# Exhibit B

CITY OF HILLS, IOWA

and

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Trustee

TRUST INDENTURE

Dated as of May 1, 2018

$41,760,000

CITY OF HILLS, IOWA
HEALTH FACILITIES REVENUE BONDS, SERIES 2018
(MERCY HOSPITAL PROJECT)

010-8605-5752/12

# TABLE OF CONTENTS

**Page**

This Table of Contents is not a part of this Trust Indenture and is provided only for convenience of reference.

ARTICLE I    DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS .............. 2

    Section 1.01    Definitions..................................................................... 2

    Section 1.02    Content of Certificates and Opinions.................................... 10

    Section 1.03    Interpretation.................................................................. 11

ARTICLE II    THE BONDS ............................................................................ 11

    Section 2.01    Authorization of Bonds..................................................... 11

    Section 2.02    Terms of the Bonds.......................................................... 11

    Section 2.03    Execution of Bonds.......................................................... 12

    Section 2.04    Transfer of Bonds............................................................ 13

    Section 2.05    Exchange of Bonds. ......................................................... 13

    Section 2.06    Bond Register.................................................................. 14

    Section 2.07    Temporary Bonds............................................................. 14

    Section 2.08    Bonds Mutilated, Lost, Destroyed or Stolen......................... 14

    Section 2.09    Use of Securities Depository. ............................................ 15

    Section 2.10    No Constitutional Debt. .................................................... 16

ARTICLE III    ISSUANCE OF BONDS; APPLICATION OF PROCEEDS ......................... 17

    Section 3.01    Issuance of Bonds. .......................................................... 17

    Section 3.02    Application of Proceeds of Bonds. ..................................... 17

    Section 3.03    Establishment and Application of Project Fund. .................... 18

    Section 3.04    Establishment and Application of Expense Fund. .................. 19

    Section 3.05    Establishment and Application of Prior Bonds Redemption Fund. ......... 19

    Section 3.06    Validity of Bonds.............................................................. 20

ARTICLE IV    REDEMPTION OF BONDS ............................................................ 20

    Section 4.01    Terms of Redemption. ...................................................... 20

    Section 4.02    Selection of Bonds for Redemption. .................................... 21

    Section 4.03    Notice of Redemption....................................................... 22

    Section 4.04    Partial Redemption of Bonds. ............................................ 22

    Section 4.05    Effect of Redemption........................................................ 22

Section 4.06    Purchase in Lieu of Redemption. ........................................... 23

ARTICLE V      REVENUES; FUNDS AND ACCOUNTS; PAYMENT OF
               PRINCIPAL AND INTEREST ........................................... 23

Section 5.01    Pledge and Assignment; Revenue Fund. ................................. 23

Section 5.02    Allocation of Revenues. .................................................. 24

Section 5.03    Application of Interest Account. ......................................... 25

Section 5.04    Application of Principal Account. ........................................ 25

Section 5.05    Debt Service Reserve Fund. .............................................. 26

Section 5.06    Application of Redemption Fund. ......................................... 27

Section 5.07    Rebate Fund. ............................................................ 27

Section 5.08    Investment of Moneys in Funds and Accounts. ........................... 28

ARTICLE VI     PARTICULAR COVENANTS ............................................. 30

Section 6.01    Punctual Payment. ....................................................... 30

Section 6.02    Extension of Payment of Bonds. .......................................... 30

Section 6.03    Against Encumbrances. ................................................... 30

Section 6.04    Power to Issue Bonds and Make Pledge and Assignment. ................. 31

Section 6.05    Accounting Records and Financial Statements. .......................... 31

Section 6.06    Tax Covenants. .......................................................... 31

Section 6.07    Enforcement of Loan Agreement and the Series 2018 Obligation. ......... 31

Section 6.08    Amendment of Loan Agreement. ......................................... 31

Section 6.09    Release and Substitution of Series 2018 Obligation. ..................... 32

Section 6.10    Further Assurances. ...................................................... 33

Section 6.11    Continuing Disclosure. ................................................... 33

ARTICLE VII    EVENTS OF DEFAULT AND REMEDIES OF BONDHOLDERS ............. 34

Section 7.01    Events of Default. ........................................................ 34

Section 7.02    Acceleration of Maturities. ............................................... 34

Section 7.03    Application of Revenues and Other Funds After Default. ................. 35

Section 7.04    Trustee to Represent Bondholders. ....................................... 36

Section 7.05    Bondholder Representative's Direction of Proceedings. .................. 37

Section 7.06    Limitation on Bondholders' Right to Sue. ................................ 37

Section 7.07    Absolute Obligation of Issuer. ............................................ 38

Section 7.08    Termination of Proceedings. .............................................. 38

Section 7.09    Remedies Not Exclusive. ................................................. 38

-ii-

Section 7.10    No Waiver of Default..................................................................39

ARTICLE VIII  THE TRUSTEE; THE BONDHOLDER REPRESENTATIVE ...................39

Section 8.01    Duties, Immunities and Liabilities of Trustee.............................39

Section 8.02    Merger or Consolidation. ...........................................................40

Section 8.03    Liability of Trustee. ...................................................................41

Section 8.04    Right of Trustee to Rely on Documents. ....................................42

Section 8.05    Preservation and Inspection of Documents.................................43

Section 8.06    Performance of Duties. ...............................................................43

Section 8.07    Compensation and Indemnification. ...........................................43

Section 8.08    Appointment of Bondholder Representative. ...............................43

Section 8.09    Notices and Reporting Obligations..............................................44

Section 8.10    Limitation of Liability; Indemnification. .....................................44

Section 8.11    Permissive Right. .......................................................................45

Section 8.12    Arbitration..................................................................................45

ARTICLE IX     MODIFICATION OR AMENDMENT OF THIS INDENTURE...................45

Section 9.01    Amendments Permitted................................................................45

Section 9.02    Effect of Supplemental Trust Indenture.......................................47

Section 9.03    Endorsement of Bonds; Preparation of New Bonds. ...................47

Section 9.04    Amendment of Particular Bonds..................................................48

ARTICLE X      DEFEASANCE...............................................................................48

Section 10.01  Discharge of Indenture................................................................48

Section 10.02  Discharge of Liability on Bonds. .................................................49

Section 10.03  Deposit of Money or Securities with Trustee. ..............................49

Section 10.04  Payment of Bonds After Discharge of Indenture..........................50

ARTICLE XI     MISCELLANEOUS .........................................................................50

Section 11.01  Liability of Issuer Limited to Revenues.......................................50

Section 11.02  Successor is Deemed Included in All References to Predecessor. ..........50

Section 11.03  Limitation of Rights to Parties, Borrower and Bondholders. .................51

Section 11.04  Waiver of Notice.........................................................................51

Section 11.05  Destruction of Bonds. .................................................................51

Section 11.06  Severability of Invalid Provisions.................................................51

Section 11.07  Notices. ......................................................................................51

Section 11.08  Evidence of Rights of Bondholders. .............................................52

010-8605-5752/12

Section 11.09  Disqualified Bonds..................................................................... 52

Section 11.10  Money Held for Particular Bonds. ............................................. 53

Section 11.11  Funds and Accounts. .................................................................. 53

Section 11.12  Waiver of Personal Liability. ..................................................... 53

Section 11.13  Business Days. ............................................................................ 53

Section 11.14  Governing Law and Venue. ....................................................... 53

Section 11.15  Execution in Several Counterparts............................................. 54

EXHIBIT A        FORM OF BOND..................................................................... A-1

EXHIBIT B        QUALIFIED INVESTMENTS ................................................. B-1

010-8605-5752/12

THIS TRUST INDENTURE, dated as of May 1, 2018 (the "Indenture" or "Trust Indenture"), between the City of Hills, Iowa, a city and political subdivision of the State of Iowa (the "Issuer") and Wells Fargo Bank, National Association, a national banking association organized and existing under the laws of the United States, as Trustee (the "Trustee");

WITNESSETH:

WHEREAS, the Issuer is authorized under the provisions of Chapter 419 of the Code of Iowa, 2017, as amended (the "Act"), among other things, to issue revenue bonds and loan the proceeds thereof pursuant to a loan agreement to one or more contracting parties (as defined in the Act) to be used to pay the cost of acquiring, by construction or purchase, land, buildings, improvements and equipment, or any interest therein, suitable for use of any organization described in Section 501(c)(3) of the Internal Revenue Code (the "Code") which is exempt from federal income tax under Section 501(a) of the Code (a "Tax Exempt Organization") and to refund any bonds issued under the Act; and

WHEREAS, Mercy Hospital, Iowa City, Iowa (the "Borrower") is a Tax Exempt Organization and has requested the Issuer to issue its Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project), in the principal amount of $41,760,000 (the "Series 2018 Bonds" or the "Bonds") and to loan the proceeds of the Series 2018 Bonds to the Borrower to be used by the Borrower for the following purposes: (i) financing a portion of the costs of the construction, renovation, expansion, equipping and furnishing of the Borrower's existing hospital facilities, including the purchase of routine capital equipment, hardware, and software, all located on the Borrower's campus at 500 East Market Street, Iowa City, Iowa (the "Project"); (ii) refunding the outstanding principal amount of the Issuer's Variable Rate Demand Health Facilities Revenue Bonds, Series 2008 (Mercy Hospital Project) (the "Prior Bonds"); and (iii) funding any necessary debt service reserve and/or capitalized interest funds and paying for costs of issuance of the Series 2018 Bonds; and

WHEREAS, the Issuer intends to issue the Series 2018 Bonds pursuant to this Indenture and loan the proceeds of the Series 2018 Bonds to the Borrower pursuant to a Loan Agreement dated as of May 1, 2018 (the "Loan Agreement") between the Issuer and the Borrower; and

WHEREAS, the execution and delivery of this Indenture, and the issuance of the Series 2018 Bonds under the Act have been in all respects duly and validly authorized by resolution duly passed and approved by the Issuer; and

WHEREAS, in order to provide for the repayment of such loan, the Borrower has agreed to execute and deliver to the Trustee, its Direct Note Obligation, Series 2018, dated the date of authentication of the Series 2018 Bonds (the "Series 2018 Obligation"), which Series 2018 Obligation will be issued and secured under the Master Trust Indenture dated as of June 1, 1998 (the "Original Master Indenture") as supplemented and amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998 (the "First Supplemental Indenture"), a Second Supplemental Master Trust Indenture dated as of September 1, 2002 (the "Second Supplemental Indenture"), a Third Supplemental Master Trust Indenture dated as of July 1, 2005 (the "Third Supplemental Indenture"), a Fourth Supplemental Master Trust Indenture dated as of October 1, 2005 (the "Fourth Supplemental Indenture"), a Fifth Supplemental Master Trust Indenture dated

1

as of April 1, 2008 (the "Fifth Supplemental Indenture"), a Sixth Supplemental Master Trust Indenture dated as of August 1, 2010 (the "Sixth Supplemental Indenture"), a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018 (the "Seventh Supplemental Indenture") and an Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 (the "Eighth Supplemental Indenture") (together, as further supplemented and amended from time to time, the "Master Indenture"), all by and between the Borrower and Wells Fargo Bank, National Association, as Master Trustee (the "Master Trustee"); and

WHEREAS, it has been determined that the estimated amount necessary to finance the cost of the acquisition, construction and equipping of the Project, and refunding the Prior Bonds, including necessary expenses incidental to the issuance of the Series 2018 Bonds, will require the issuance, sale and delivery of Series 2018 Bonds in the aggregate principal amount of $41,760,000, as hereinafter provided; and

WHEREAS, in order to secure the payment of the Series 2018 Bonds, the Issuer will pledge all of its right, title and interest in and to the Loan Agreement (except certain reserved rights) and the Series 2018 Obligation, including its right to receive certain payments pursuant to the Series 2018 Obligation, to the Trustee pursuant to this Indenture; and

WHEREAS, the Trustee has accepted the trusts created by this Indenture and in evidence thereof has joined in the execution hereof; and

WHEREAS, all acts and proceedings required by law necessary to make the Bonds, when executed by the Issuer, authenticated and delivered by the Trustee and duly issued, the valid, binding and legal limited obligations of the Issuer, and to constitute this Indenture a valid and binding agreement for the uses and purposes herein set forth in accordance with its terms, have been done and taken, and the execution and delivery of the Indenture have been in all respects duly authorized;

NOW, THEREFORE, THIS BOND INDENTURE WITNESSETH, that in order to secure the payment of the principal of and the interest on all Bonds at any time issued and outstanding under this Indenture, according to their tenor, and to secure the performance and observance of all the covenants and conditions therein and herein set forth, and to declare the terms and conditions upon and subject to which the Bonds are to be issued and received, and in consideration of the premises and of the mutual covenants herein contained and of the purchase and acceptance of the Bonds by the Holders thereof, and for other valuable consideration, the receipt whereof is hereby acknowledged, the Issuer does hereby covenant and agree with the Trustee, for the benefit of the respective Holders from time to time of the Bonds, as follows:

## ARTICLE I
## DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS

SECTION 1.01   Definitions.

Unless the context otherwise requires, the terms defined in this Section shall, for all purposes of this Indenture and of any Supplemental Trust Indenture and of any certificate, opinion or other document herein mentioned, have the meanings herein specified, to be equally applicable to both the singular and plural forms of any of the terms herein defined.

2

"Act" means Chapter 419 of the Code of Iowa, 2017, as amended.

"Additional Payments" means the payments so designated and required to be made by the Borrower pursuant to Section 3.2 of the Loan Agreement.

"Administrative Fees and Expenses" means any application, commitment, financing or similar fee charged, or reimbursement for administrative or other expenses incurred, by the Issuer or the Trustee.

"Authorized Denominations" means $100,000 and integral multiples of $5,000 in excess thereof, or such other denominations as may be set forth in a supplement hereto.

"Authorized Representative" means, with respect to the Borrower or any Member, its chairman of the board, president, vice president, chief executive officer, chief financial officer, treasurer or any other person designated as an Authorized Representative by a Certificate signed by one of the above parties and filed with the Trustee.

"Beneficial Owner" means any Person which has or shares the power, directly or indirectly, to make investment decisions concerning ownership of any of the Bonds (including any Person holding Bonds through nominees, depositories or other intermediaries).

"Bond Counsel" means legal counsel of recognized national standing in the field of obligations the interest on which is excluded from gross income for federal income tax purposes, selected by the Borrower and not objected to by the Issuer or the Bondholder Representative.

"Bond Documents" means the Indenture, the Bonds, the Continuing Disclosure Undertaking and the Placement Agreement.

"Bond Financed Property" means the Project and all of the property financed or refinanced with the proceeds of the Prior Bonds.

"Bond Year" means the period of twelve consecutive months ending on June 1 in any year in which Bonds are Outstanding, except for the initial Bond Year which commences on the Date of Issuance.

"Bondholder Representative" has the meaning established in, and is the Person identified pursuant to, Section 8.08 hereof.

"Bonds" or "Series 2018 Bonds" mean the Issuer's Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project) authorized by, and issued pursuant to, this Trust Indenture.

"Borrower" means Mercy Hospital, Iowa City, Iowa, a nonprofit corporation duly organized and existing under the laws of the State of Iowa, or any corporation which is the surviving, resulting or transferee corporation in any merger, consolidation or transfer of assets permitted under the Master Indenture.

"Business Day" means a day that is not a Saturday, Sunday or legal holiday on which banking institutions in the State of Iowa, the State of New York or in any state in which the office

3

of the Master Trustee or the Trustee is located are authorized to remain closed or a day on which the New York Stock Exchange is closed.

"Certificate," "Statement," "Request," "Requisition" and "Order" of the Issuer or the Borrower, mean, respectively, a written certificate, statement, request, requisition or order signed in the name of the Issuer by its Mayor or City Clerk or such other person as may be designated and authorized to sign for the Issuer, or in the name of the Borrower by an Authorized Representative of the Borrower. Any such instrument and supporting opinions or representations, if any, may, but need not, be combined in a single instrument with any other instrument, opinion or representation, and the two or more so combined shall be read and construed as a single instrument.

"Code" means the Internal Revenue Code of 1986, as amended, or any successor statute thereto, and any regulations promulgated thereunder.

"Continuing Disclosure Undertaking" means that certain Continuing Disclosure Undertaking, dated as of May 1, 2018 of the Borrower relating to the Series 2018 Bonds, as it may be amended in accordance with its terms.

"Corporate Trust Office" means the office of the Trustee, which as of the date hereof is located at 10 S. Wacker Drive, 13th Floor, Chicago, Illinois 60606, Attention: Corporate Trust Services, or such other or additional offices as shall be specified by the Trustee in writing delivered to the Issuer and the Borrower.

"Costs of Issuance" means all items of expense directly or indirectly payable by or reimbursable to the Issuer or the Borrower and related to the authorization, issuance, sale and delivery of the Bonds, including but not limited to advertising and printing costs, costs of preparation and reproduction of documents, filing and recording fees, initial fees and charges of the Trustee and the Master Trustee, initial and ongoing fees and charges of the Issuer, legal fees and charges, fees and disbursements of consultants and professionals, Rating Agency fees, fees and charges for preparation, execution, transportation and safekeeping of the Bonds, and any other cost, charge or fee in connection with the original issuance of the Bonds.

"Date of Issuance" means May 10, 2018.

"Debt Service Reserve Fund" means the fund by that name created by Section 5.05 hereof.

"Debt Service Reserve Fund Requirement" means $4,050,177.12.

"Default Rate" means 11.00%.

"Determination of Taxability" means and shall be deemed to have occurred on the first to occur of the following:

(i)     the date when the Issuer or any Member files any statement, supplemental statement or other tax schedule return or document which discloses that an Event of Taxability shall have in fact occurred;

4

(ii)     the date when the Issuer, the Obligated Group Agent or any Member shall be advised in writing by the Commissioner of the Internal Revenue Service or the Director of Tax-Exempt Bonds of the Tax-Exempt and Government Entities Division of the Internal Revenue Service (or any other governmental official exercising the same or a substantially similar function from time to time, including an employee subordinate to one of these officers who has been authorized to provide such advice) that, based upon the filings of the Issuer, the Obligated Group Agent or any Member, or upon any review or audit of the Issuer, the Obligated Group Agent or any Member or upon any other ground whatsoever, an Event of Taxability shall have occurred; or

(iii)    the date when the Issuer the Obligated Group Agent or any Member shall receive notice from a Holder that the Internal Revenue Service (or any other governmental agency or official exercising the same or a substantially similar function from time to time) has assessed as includable in the gross income of such Holder the interest on the Bonds due to the occurrence of an Event of Taxability;

provided, however, no Determination of Taxability shall occur under subparagraph (ii) or (iii) above unless the Issuer or the Obligated Group has been afforded the reasonable opportunity, at its or the Borrower's expense, to contest any such determination, and, further, no Determination of Taxability shall occur until such contest, if made, has been finally determined; provided, further, however, that upon demand from a Holder or the Bondholder Representative, the Borrower shall promptly reimburse such Holder for any payments, including any taxes, interest, penalties or other charges, such Holder shall be obligated to make as a result of the Determination of Taxability.

"Eighth Supplemental Indenture" means the Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 between the Borrower and the Master Trustee, which supplements and amends the Master Indenture.

"Electronic Means" means facsimile transmission, email transmission or other similar electronic means of communication providing evidence of transmission, including a telephone communication confirmed by any other method set forth in this definition.

"Expense Fund" means the fund by that name established pursuant to Section 3.04.

"Event of Default" means any of the events specified in Section 7.01.

"Event of Taxability" means (i) a change in law or fact or the interpretation thereof, or the occurrence or existence of any fact, event or circumstance (including, without limitation, the taking of any action by the Issuer or the Borrower or any other Member, or the failure to take any action by the Issuer or the Borrower or any other Member, or the making by the Issuer or the Borrower or any other Member of any misrepresentation herein or in any certificate required to be given in connection with the issuance, sale or delivery of the Bonds) that has the effect of causing interest paid or payable on the Bonds to become included, in whole or in part, in the gross income of the Holder for federal income tax purposes or (ii) the entry of any decree or judgment by a court of competent jurisdiction, or the taking of any official action by the Internal Revenue Service or the Department of the Treasury, which decree, judgment or action shall be final under applicable

5

procedural law, in either case, which has the effect of causing interest paid or payable on the Bonds to become includable, in whole or in part, in the gross income of a Holder for federal income tax purposes with respect to the Bonds.

"Facilities" means all land, leasehold interests and buildings and all fixtures and equipment (as defined in the Uniform Commercial Code or equivalent statute then in effect in the state where such fixtures or equipment are located) of the Borrower.

"Favorable Opinion of Bond Counsel" means, with respect to any action the occurrence of which requires such an opinion, an unqualified Opinion of Counsel, which shall be Bond Counsel, to the effect that such action is permitted under the Indenture and will not result in the inclusion of interest on the Bonds in gross income for federal income tax purposes.

"Fiscal Year" shall have the meaning set forth in the Master Indenture.

"Fitch" means Fitch, Inc., d/b/a Fitch Ratings, a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the Borrower by notice in writing to the Issuer and the Trustee.

"Governing Board" means the board of directors, board of trustees or other board or group of individuals in which the power of the corporation or other entity is vested, except for those powers reserved to the corporate membership by the articles of incorporation or bylaws of such corporation or entity.

"Holder" or "Bondholder," whenever used herein with respect to a Bond, means the Person in whose name such Bond is registered on the registration books maintained by the Trustee per Section 2.06 hereof.

"Indenture" or "Trust Indenture" means this Trust Indenture, as originally executed or as it may from time to time be supplemented, modified or amended by any Supplemental Trust Indenture.

"Interest Account" means the account by that name established in the Revenue Fund pursuant to Section 5.02.

"Interest Payment Date" means June 1 and December 1 of each year, commencing December 1, 2018.

"Issuer" means the City of Hills, Iowa and its successors and assigns.

"Kroll" means Kroll Bond Rating Agency, Inc. and its successors and assigns or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the Borrower by notice in writing to the Issuer and the Trustee.

6

"Loan" means the loan of the proceeds of the sale of the Series 2018 Bonds by the Issuer to the Borrower pursuant to the Loan Agreement.

"Loan Agreement" means that certain loan agreement by and between the Issuer and the Borrower, dated as of May 1, 2018, as originally executed and as it may from time to time be supplemented, modified or amended in accordance with the terms thereof and of this Indenture.

"Loan Default Event" means any of the events specified in Section 6.1 of the Loan Agreement.

"Loan Documents" means the Loan Agreement, the Mortgage, the Series 2018 Obligation and the Master Trust Indenture.

"Loan Repayments" means the payments so designated and required to be made by the Borrower pursuant to Section 3.1 of the Loan Agreement.

"Mandatory Sinking Account Payment" means the amount required by Section 5.04 to be paid on any single date for the retirement of Bonds.

"Master Indenture" means the Master Trust Indenture dated as of June 1, 1998, between the Borrower and Master Trustee, as master trustee, as supplemented by various supplemental indentures from time to time, including without limitation, by the Eighth Supplemental Indenture.

"Master Trustee" means Wells Fargo Bank, National Association, its successors and assigns.

"Members" or "Obligated Group Members" means each Person that is then obligated under the Master Indenture.

"Modified Bonds" has the meaning established in Section 2.05(b) hereof.

"Moody's" means Moody's Investors Service, a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the Borrower by notice to the Issuer and the Trustee, and not objected to by the Issuer.

"Mortgage" means the Mortgage and Security Agreement and Fixture Financing Statement dated as of May 1, 2018, between the Borrower, as mortgagor, and the Master Trustee, as mortgagee, as the same may be amended from time to time.

"Obligated Group" means all the Members.

"Opinion of Counsel" means a written opinion of counsel (who may be counsel for the Issuer) selected by the Borrower and not objected to by the Issuer or the Trustee.

"Optional Redemption Account" means the account by that name in the Redemption Fund established pursuant to Section 5.06.

"Outstanding," when used as of any particular time with reference to Bonds, means (subject to the provisions of Section 11.09) all Bonds theretofore, or thereupon being, authenticated and delivered by the Trustee under this Indenture except: (1) Bonds theretofore cancelled by the Trustee or surrendered to the Trustee for cancellation; (2) Bonds with respect to which all liability of the Issuer shall have been discharged in accordance with Section 10.02; and (3) Bonds for the transfer or exchange of or in lieu of or in substitution for which other Bonds shall have been authenticated and delivered by the Trustee pursuant to this Indenture.

"Person" means an individual, corporation, limited liability company, firm, association, partnership, trust or other legal entity or group of entities, including a governmental entity or any agency or political subdivision thereof.

"Placement Agent" means Piper Jaffray & Co.

"Placement Agreement" means the Placement Agreement dated as of May 1, 2018 among the Issuer, the Borrower and the Placement Agent named therein.

"Principal Account" means the account by that name established in the Revenue Fund pursuant to Section 5.02.

"Principal Payment Date" means, with respect to a Bond, the date on which principal evidenced by such Bond becomes due and payable, whether at maturity, upon redemption, by declaration of acceleration or otherwise.

"Prior Bond Trustee" means Wells Fargo Bank, National Association, as trustee under the Prior Bonds Indenture, its successor and assigns.

"Prior Bonds" means the Issuer's previous issue of Variable Rate Demand Health Facilities Revenue Bonds, Series 2008 (Mercy Hospital Project) dated April 29, 2008.

"Prior Bonds Indenture" means the Indenture of Trust dated as of April 1, 2008 between the Issuer and the Prior Bond Trustee pursuant to which the Prior Bonds were issued.

"Prior Bonds Refunding Fund" means the fund by that name established pursuant to Section 3.05 hereof.

"Project" means construction, renovation, expansion, equipping and furnishing of the Borrower's existing hospital facilities, including the purchase of routine capital equipment, hardware, and software as detailed in the Tax Agreement, all located on the Borrower's campus at 500 East Market Street, Iowa City, Iowa.

"Project Fund" means the fund by that name established pursuant to Section 3.03 hereof.

"Qualified Investments" means investments identified in Exhibit B hereto.

"Rating Agency" means S&P, Moody's, Fitch and Kroll or any national rating agency then rating the Bonds.

8

"Rating Category" means one of the general rating categories of any Rating Agency without regard to any refinement or gradation of such rating category by numerical modifier or otherwise.

"Rebate Fund" means the fund by that name established pursuant to Section 5.07 hereof.

"Record Date" means the fifteenth day (whether or not a Business Day) of the month preceding each Interest Payment Date.

"Redemption Fund" means the fund by that name established pursuant to Section 5.01 hereof.

"Redemption Price" means, with respect to any Bond (or portion thereof), the principal amount of such Bond (or portion) plus the applicable premium, if any, payable upon redemption thereof pursuant to the provisions of such Bond and this Indenture.

"Reserved Rights" means any rights of the Issuer (i) to receive any Additional Payments or Administrative Fees and Expenses to the extent payable to the Issuer, (ii) to receive any amounts paid by the Borrower pursuant to Sections 3.2, 5.2, 5.3 and 6.7 of the Loan Agreement, and (iii) to indemnification, enforcement or inspection or to receive notices or opinions under the Loan Agreement and the obligation of the Borrower to make deposits pursuant to the Tax Agreement.

"Revenue Fund" means the fund by that name established pursuant to Section 5.01.

"Revenues" means all amounts received by the Issuer or the Trustee for the account of the Issuer pursuant or with respect to the Loan Agreement or the Series 2018 Obligation, including, without limiting the generality of the foregoing, Loan Repayments (including both timely and delinquent payments, any late charges, and whether paid from any source), amounts payable under Section 3.2(f) of the Loan Agreement to replenish the Debt Service Reserve Fund, prepayments, business interruption insurance proceeds, condemnation proceeds, and all interest, profits or other income derived from the investment of amounts in any fund or account established pursuant to this Indenture, but not including any Additional Payments (other than amounts payable under Section 3.2(f) of the Loan Agreement), Administrative Fees and Expenses, payments received related to Reserved Rights or any moneys required to be deposited to the Rebate Fund.

"S&P" means S&P Global Ratings, Inc., a corporation organized and existing under the laws of the State of New York, its successors and assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the Borrower by notice to the Issuer and the Trustee.

"Securities Depository" means The Depository Trust Company and its successors and assigns, or any other Securities Depository selected as set forth in Section 2.09 which agrees to follow the procedures required to be followed by such Securities Depository in connection with the Bonds.

"Series 2018 Obligation" means the Direct Note Obligation, Series 2018 dated the date of issuance of the Series 2018 Bonds, delivered by the Borrower pursuant to the Master Indenture.

010-8605-5752/12

"Sinking Account" means the subaccount in the Principal Account so designated and established pursuant to Section 5.04(B).

"Special Record Date" means the date established by the Trustee pursuant to Section 2.02 as a record date for the payment of defaulted interest on the Bonds.

"Special Redemption Account" means the account by that name in the Redemption Fund established pursuant to Section 5.06 hereof.

"State" means the State of Iowa.

"Supplemental Trust Indenture" means any indenture hereafter duly authorized and entered into between the Issuer and the Trustee, supplementing, modifying or amending this Trust Indenture; but only if and to the extent that such Supplemental Trust Indenture is specifically authorized hereunder.

"Tax Agreement" means the Tax Certificate and Agreement among the Issuer, the Trustee and the Borrower dated the Date of Issuance, as the same may be amended or supplemented in accordance with its terms.

"Taxable Date" means the date as of which interest on the Bonds is first includable in the gross income of the Holder (including, without limitation, any previous Holder) thereof as a result of an Event of Taxability as such date is established pursuant to a Determination of Taxability.

"Taxable Rate" means 11.00%.

"Term Bonds" mean the Bonds payable at or before their specified maturity date or dates from Mandatory Sinking Account Payments established for the purpose and calculated to retire such Bonds on or before their specified maturity date or dates.

"Trustee" means Wells Fargo Bank, National Association, a national banking association duly organized and existing under the laws of the United States of America, or its successor as provided in Section 8.01, as Trustee hereunder.

"Uniform Commercial Code" means Iowa Code Chapter 554, as amended.

"United States Government Obligations" means direct general obligations of, or obligations the payment of the principal of and interest on which are unconditionally guaranteed as to full and timely payment by, the United States of America, which obligations are noncallable.

SECTION 1.02    Content of Certificates and Opinions.

Any such certificate or opinion made or given by an officer of the Issuer or the Borrower may be based, insofar as it relates to legal or accounting matters, upon a certificate or opinion of or representation by counsel or an accountant, unless such officer knows that the certificate, opinion or representation with respect to the matters upon which such certificate or statement may be based, as aforesaid, is erroneous. Any such certificate or opinion made or given by counsel or an accountant may be based, insofar as it relates to factual matters (with respect to which

10

information is in the possession of the Issuer or the Borrower, as the case may be) upon a certificate or opinion of or representation by an officer of the Issuer or the Borrower, unless such counsel or accountant knows, that the certificate or opinion or representation with respect to the matters upon which such certificate or opinion or representation may be based, as aforesaid, is erroneous. The same officer of the Issuer or the Borrower, or the same counsel or accountant, as the case may be, need not certify to all of the matters required to be certified under any provision of this Indenture, but different officers, counsel or accountants may certify to different matters, respectively.

SECTION 1.03      Interpretation.

(A)      Unless the context otherwise indicates, words expressed in the singular shall include the plural and vice versa and the use of the neuter, masculine, or feminine gender is for convenience only and shall be deemed to mean and include the neuter, masculine or feminine gender, as appropriate.

(B)      Headings of articles and sections herein and the table of contents hereof are solely for convenience of reference, do not constitute a part hereof and shall not affect the meaning, construction or effect hereof.

(C)      All references herein to "Articles," "Sections" and other subdivisions are to the corresponding Articles, Sections or subdivisions of this Trust Indenture; the words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Trust Indenture as a whole and not to any particular Article, Section or subdivision hereof.

ARTICLE II
THE BONDS

SECTION 2.01      Authorization of Bonds.

An issue of Bonds to be issued hereunder in order to obtain moneys for the benefit of the Issuer and the Borrower is hereby created. The Bonds are designated as "City of Hills, Iowa Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project)." The aggregate principal amount of Bonds that may be issued and Outstanding under this Indenture shall not exceed $41,760,000. This Indenture constitutes a continuing agreement with the Holders from time to time of the Bonds to secure the full payment of the principal of, premium, if any, and interest on all such Bonds subject to the covenants, provisions and conditions herein contained.

SECTION 2.02      Terms of the Bonds.

(A)      The Bonds shall be issued as fully registered Bonds in Authorized Denominations. The Bonds shall be initially registered in the name of Cede & Co., as nominee of the Securities Depository, or any successor thereto. Registered ownership of the Bonds, or any portion thereof, may not thereafter be transferred except as set forth in this Article II. The Bonds shall be dated as of the Date of Issuance, and interest thereon shall be payable on each Interest Payment Date. The Bonds shall mature on June 1, 2035 (subject to the right of prior redemption set forth in Article IV) and shall bear interest at 6.00%; provided

11

(i)     from and after any Taxable Date, the interest rate on Bonds shall be equal to the Taxable Rate; and

(ii)    from and after the effective date and during the continuation of an Event of Default, the interest rate for Bonds shall be equal to the Default Rate.

(B)    The principal or Redemption Price of the Bonds shall be payable in lawful money of the United States of America at the Corporate Trust Office of the Trustee upon surrender of the Bonds to the Trustee for cancellation. Payment of the interest on any Bond shall be made on each Interest Payment Date to the Holder thereof as of the Record Date for each Interest Payment Date by check mailed by first-class mail on each Interest Payment Date to such Holder at his address as it appears on the registration books maintained by the Trustee or, upon the written request of any Holder of at least $1,000,000 in principal amount of Bonds, submitted to the Trustee at least one Business Day prior to the Record Date, by wire transfer in immediately available funds to an account within the United States of America designated by such Bondholder.

(C)    The Bonds shall be numbered in consecutive numerical order from R-1 upwards, and each such Bond shall bear interest from the Date of Issuance. Interest shall be calculated on a three hundred sixty (360) day year basis of twelve (12) thirty (30) day months.

(D)    Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Holder on such Record Date and shall be paid to the Person in whose name the Bond is registered at the close of business on a Special Record Date for the payment of such defaulted interest to be fixed by the Trustee, notice of which shall be given to the Holders by first-class mail not less than ten (10) days prior to such Special Record Date.

(E)    The Bonds shall be subject to redemption as provided in Article IV.

SECTION 2.03    <u>Execution of Bonds.</u>

The Bonds shall be executed on behalf of the Issuer with the manual or facsimile signature of the Mayor of the Issuer and the Issuer's corporate seal shall be affixed thereto or printed or otherwise reproduced thereon and attested by the manual or facsimile signature of its City Clerk. All authorized facsimile signatures shall have the same force and effect as if manually signed.

The Bonds shall then be delivered to the Trustee for authentication by it. In case any of the officers who shall have signed or attested any of the Bonds shall cease to be such officer or officers of the Issuer before the Bonds so signed or attested shall have been authenticated or delivered by the Trustee or issued by the Issuer, such Bonds may nevertheless be authenticated, delivered and issued and, upon such authentication, delivery and issue, shall be as binding upon the Issuer as though those who signed and attested the same had continued to be such officers of the Issuer, and also any Bond may be signed and attested on behalf of the Issuer by such persons as at the actual date of execution of such Bond shall be the proper officers of the Issuer although at the nominal date of such Bond any such person shall not have been such officer of the Issuer.

Only such of the Bonds as shall bear thereon a certificate of authentication substantially in the form attached hereto as <u>Exhibit A,</u> manually executed by an authorized signatory of the Trustee, shall be valid or obligatory for any purpose or entitled to the benefits of this Indenture,

and such certificate of the Trustee shall be conclusive evidence that the Bonds so authenticated have been duly executed, authenticated and delivered hereunder and are entitled to the benefits of this Indenture.

SECTION 2.04        Transfer of Bonds.

Subject to the provisions of Section 2.09, any Bond may, in accordance with its terms, be transferred, upon the books required to be kept pursuant to the provisions of Section 2.06, by the Person in whose name it is registered, in person or by his duly authorized attorney, upon surrender of such Bond for cancellation, accompanied by delivery of a written instrument of transfer, duly executed in a form acceptable to the Trustee, and such other documentation as the Trustee may reasonably require.

Whenever any Bond or Bonds shall be surrendered for transfer, the Issuer shall execute and the Trustee shall authenticate and deliver a new Bond or Bonds, of the same maturity and for a like aggregate principal amount of authorized denominations.  The Trustee shall require the Bondholder requesting such transfer to pay any tax or other governmental charge or charge imposed by the Trustee required to be paid with respect to such transfer.  The Trustee shall not be required to transfer (i) any Bond during the period established by the Trustee for the selection of Bonds for redemption or (ii) any Bond called for redemption.

No investor letter or representation of any sort is required hereby to be obtained from any transferee in connection with any transfer of all or a portion of any Bond.

SECTION 2.05        Exchange of Bonds.

(A)        Bonds may be exchanged at the Corporate Trust Office of the Trustee for a like aggregate principal amount of Bonds of other Authorized Denominations of the same maturity. The Trustee shall require the Bondholder requesting such exchange to pay any tax or other governmental charge or charge imposed by the Trustee required to be paid with respect to such exchange. The Trustee shall not be required to exchange (i) any Bond during the period established by the Trustee for the selection of Bonds for redemption or (ii) any Bond called for redemption.

(B)        With the written consent of 100% of the Beneficial Owners of the Bonds, the Trustee shall exchange the Bonds for two or more serial and/or term Bonds or a combination thereof, bearing interest at such rates and payable at stated maturities or pursuant to Mandatory Sinking Account Payment requirements (the "Modified Bonds") as directed by the Beneficial Owners; provided that the overall debt service on the Modified Bonds shall be no greater than the overall debt service on the exchanged Bonds.  The Modified Bonds shall be issued in book-entry form with DTC.  No exchange of Bonds in accordance with this Section 2.05(B) shall be valid unless the Trustee is furnished with an opinion of Bond Counsel to the effect that such exchange is permitted by this Indenture and shall not adversely affect the exclusion from gross income of interest on the Bonds for federal income tax purposes. The expenses associated with the exchange, obtaining new CUSIP numbers and DTC registration, Bond Counsel and other opinions reasonably requested by the Trustee, the Authority, Bond Counsel and the Beneficial Owners, and the reasonable fees of the Trustee (which Trustee fees will not exceed $5,000) shall be paid by the holders of the Bonds.

13

(C)    The transferor shall also provide or cause to be provided to the Trustee all information necessary to allow the Trustee to comply with any applicable tax reporting obligations, including without limitation any cost basis reporting obligations under Internal Revenue Code Section 6045.  The Trustee may rely on the information provided to it and shall have no responsibility to verify or ensure the accuracy of such information.

SECTION 2.06    Bond Register.

The Trustee will keep or cause to be kept sufficient books for the registration and transfer of the Bonds, which shall at all times, upon reasonable notice, be open to inspection by any Bondholder or his agent duly authorized in writing, the Issuer or the Borrower; and, upon presentation for such purpose, the Trustee shall, under such reasonable regulations as it may prescribe, register or transfer or cause to be registered or transferred, on such books, Bonds as hereinbefore provided.

The Person in whose name any Bond shall be registered shall be deemed the owner thereof for all purposes thereof, and payment of or on account of the interest and principal or Redemption Price represented by such Bond shall be made only to or upon the order in writing of such Holder, which payment shall be valid and effectual to satisfy and discharge the liability upon such Bond to the extent of the sum or sums so paid.

SECTION 2.07    Temporary Bonds.

The Bonds may be issued in temporary form exchangeable for definitive Bonds when ready for delivery.  Any temporary Bond may be printed, lithographed or typewritten, shall be of such authorized denominations as may be determined by the Issuer, shall be in fully registered form without coupons and may contain such reference to any of the provisions of this Indenture as may be appropriate.  A temporary Bond may be in the form of a single fully registered Bond payable in installments, each on the date, in the amount and at the rate of interest established for the Bonds maturing on such date.  Every temporary Bond shall be executed by the Issuer and be authenticated by the Trustee upon the same conditions and in substantially the same manner as the definitive Bonds.  If the Issuer issues temporary Bonds it will execute and deliver definitive Bonds as promptly thereafter as practicable, and thereupon the temporary Bonds may be surrendered, for cancellation, in exchange therefor at the Corporate Trust Office of the Trustee, and the Trustee shall authenticate and deliver in exchange for such temporary Bonds an equal aggregate principal amount of definitive Bonds of authorized denominations of the same maturity or maturities.  Until so exchanged, the temporary Bonds shall be entitled to the same benefits under this Indenture as definitive Bonds authenticated and delivered hereunder.

SECTION 2.08    Bonds Mutilated, Lost, Destroyed or Stolen.

If any Bond shall become mutilated, the Issuer, at the expense of the Holder of said Bond, shall execute, and the Trustee shall thereupon authenticate and deliver, a new Bond of like tenor in exchange and substitution for the Bond so mutilated, but only upon surrender to the Trustee of the Bond so mutilated.  Every mutilated Bond so surrendered to the Trustee shall be cancelled by it.  If any Bond shall be lost, destroyed or stolen, evidence of such loss, destruction or theft may be submitted to the Trustee and, if such evidence be satisfactory and indemnity satisfactory to the

14

Trustee and the Issuer shall be given, the Issuer, at the expense of the Holder, shall execute, and the Trustee shall thereupon authenticate and deliver, a new Bond of like tenor in lieu of and in substitution for the Bond so lost, destroyed or stolen (or if any such Bond shall have matured, instead of issuing a substitute Bond, the Trustee upon written direction of the Issuer may pay the same without surrender thereof upon receipt of the above-mentioned indemnity). The Trustee may require payment of a sum not exceeding the actual cost of preparing each new Bond issued under this Section and of the expenses which may be incurred by the Issuer and the Trustee in complying with this Section. Any Bond issued under the provisions of this Section in lieu of any Bond alleged to be lost, destroyed or stolen shall constitute an original additional contractual obligation on the part of the Issuer whether or not the Bond so alleged to be lost, destroyed or stolen be at any time enforceable by anyone, and shall be entitled to the benefits of this Indenture with all other Bonds secured by this Indenture.

SECTION 2.09    Use of Securities Depository.

(A)    The Bonds shall initially be issued as provided in Section 2.02. Registered ownership of the Bonds, or any portion thereof, may not thereafter be transferred except:

(i)    To any successor to the Securities Depository or its nominee, or to any substitute Securities Depository designated pursuant to clause (ii) of this subsection (a) ("substitute Securities Depository"); provided that the successor to the Securities Depository or substitute Securities Depository shall be qualified under any applicable laws to provide the service proposed to be provided by it;

(ii)    To any substitute Securities Depository designated by the Issuer (at the direction of the Borrower) and not objected to by the Trustee, upon (1) the resignation of the Securities Depository or its successor (or any substitute Securities Depository or its successor); or (2) a determination by the Issuer (at the direction of the Borrower) that the Securities Depository or its successor (or any substitute Securities Depository or its successor) is no longer able to carry out its functions as Securities Depository; provided, that any such substitute Securities Depository shall be qualified under any applicable laws to provide the services proposed to be provided by it; or

(iii)    To any Person as provided below, upon (1) the resignation of the Securities Depository (or substitute Securities Depository or its successor) from its functions as Securities Depository; provided, that no substitute Securities Depository which is not objected to by the Trustee can be obtained or (2) a determination by the Issuer (with the concurrence of the Borrower) that it is in the best interests of the Issuer to remove the Securities Depository (or any substitute Securities Depository or its successor) from its functions as Securities Depository.

(B)    In the case of any transfer pursuant to clause (i) or clause (ii) of subsection (A) hereof, upon receipt of the Outstanding Bonds by the Trustee, together with a Certificate of the Issuer to the Trustee, a single new Bond for each maturity shall be executed and delivered in the

15

aggregate principal amount of the Bonds of such maturity then Outstanding, registered in the name of the Securities Depository or such substitute Securities Depository, or their nominees, as the case may be, all as specified in such Certificate of the Issuer.  In the case of any transfer pursuant to clause (iii) of subsection (A) hereof, upon receipt of the Outstanding Bonds by the Trustee, new Bonds shall be executed and delivered in such denominations numbered in consecutive order from R-1 up and registered in the names of such Person as are requested in such a Statement of the Issuer, subject to the limitations of Section 2.02, provided the Trustee shall not be required to deliver such new Bonds within a period less than sixty (60) days from the date of receipt of such Certificate of the Issuer.

(C)     The Issuer, the Borrower and the Trustee shall be entitled to treat the Person in whose name any Bond is registered as the Bondholder thereof for all purposes of the Indenture and any applicable laws, notwithstanding any notice to the contrary received by an officer of the Trustee or the Issuer; and the Issuer and the Trustee shall have no responsibility for transmitting payments to, communication with, notifying, or otherwise dealing with any Beneficial Owners of the Bonds.  Neither the Issuer, the Borrower nor the Trustee shall have any responsibility or obligation, legal or otherwise, to the Beneficial Owners or to any other party including the Securities Depository or its successor (or substitute Securities Depository or its successor), except to the Holder of any Bond.

(D)     Notwithstanding any other provision of this Indenture to the contrary, so long as all Bonds are registered in the name of any nominee of the Securities Depository, requirement for transfer or delivery of the Bonds, with respect to redemption or otherwise, may be effectuated by providing appropriate transfer instructions to the Securities Depository.

(E)     In connection with any proposed transfer outside the book-entry only system, the Issuer, the Borrower or DTC shall provide or cause to be provided to the Trustee all information necessary to allow the Trustee to comply with any applicable tax reporting obligations, including without limitation any cost basis reporting obligations under Internal Revenue Code Section 6045.  The Trustee may rely on the information provided to it and shall have no responsibility to verify or ensure the accuracy of such information.

SECTION 2.10     No Constitutional Debt.

It is understood and agreed by the Borrower and the Bondowners that no covenant, provisions or agreement of the Issuer herein or in the Bonds or in any other document executed by the Issuer in connection with the issuance, sale and delivery of the Bonds, or any obligation herein or therein imposed upon the Issuer or breach thereof, shall give rise to a pecuniary liability of the Issuer, its council members, officers, employees or agents or a charge against the Issuer's general credit or general fund or shall obligate the Issuer, its council members, officers, employees or agents financially in any way except with respect to this Indenture, the funds and accounts held hereunder and the application of Revenues therefrom and from the Loan Agreement, and from the proceeds of the Bonds.  No failure of the Issuer to comply with any term, condition, covenant or agreement therein shall subject the Issuer, its council members, officers, employees or agents to liability for any claim for damages, costs or other financial or pecuniary charges except to the extent that the same can be paid or recovered from this Indenture, the funds and accounts held hereunder and the application of Revenues therefrom and from the Loan Agreement and from the

16

proceeds of the Bonds. No execution on any claim, demand, cause of action or judgment shall be levied upon or collected from the general credit or general fund of the Issuer. In making the agreements, provisions and covenants set forth herein, the Issuer has not obligated itself except with respect to this Indenture and the funds and accounts held hereunder and the application of Revenues hereunder and under the Loan Agreement and the proceeds of the Bonds, as hereinabove provided.

The Bonds constitute special, limited obligations of the Issuer, payable solely from proceeds of the Bonds, the Revenues pledged to the payment thereof pursuant to the Indenture and the Loan Agreement, amounts realized under the Mortgage and the Series 2018 Obligation and the funds and accounts held under and pursuant to this Indenture and pledged therefor. The Bonds, the interest thereon and any other payments or costs incident thereto do not constitute an indebtedness or a loan of the credit of the Issuer, the State or any political subdivision thereof within the meaning of any constitutional or statutory provisions. The Issuer does not pledge its faith or credit nor the faith or credit of the State nor any political subdivision of the State to the payment of the principal of, the interest on or any other payments or costs incident to the Bonds. The issuance of the Bonds and the execution of any documents in relation thereto do not directly, indirectly or contingently obligate the State or any political subdivision of the State to apply money from or levy or pledge any form of taxation whatever to the payment of the principal of or interest on the Bonds or any other payments or costs incident thereto.

It is further understood and agreed by the Borrower and the Bondowners that the Issuer, its council members, officials, officers, employees or agents shall incur no pecuniary liability hereunder and shall not be liable for any expenses related hereto, all of which the Borrower agrees to pay. If, notwithstanding the provisions of this Section, the Issuer, its council members, officials, officers, employees or agents incur any expense, or suffer any losses, claims or damages or incur any liabilities, the Borrower shall indemnify and hold harmless the Issuer, its council members, officials, officers, employees or agents from the same and shall reimburse the Issuer, its council members, officials, officers, employees or agents in relation thereto, and this covenant to indemnify, hold harmless and reimburse the Issuer, its council members, officials, officers, employees or agents shall survive delivery of and payment for the Bonds.

## ARTICLE III
## ISSUANCE OF BONDS; APPLICATION OF PROCEEDS

SECTION 3.01        Issuance of Bonds.

At any time after the execution of this Indenture, the Issuer may execute and the Trustee shall authenticate and, upon Request of the Issuer, deliver the Bonds in the aggregate principal amount of $41,760,000.

SECTION 3.02        Application of Proceeds of Bonds.

(A)     The proceeds received from the sale of the Bonds ($40,501,771.20, consisting of the aggregate principal amount of the Bonds of $41,760,000 and less original issue discount of

$1,258,228.80), shall be deposited in trust with the Trustee, who shall forthwith deposit such funds as follows:

> (i)     The Trustee shall deposit the sum of $1,416,000.00 to the Project Fund.

> (ii)    The Trustee shall deposit the sum of $715,594.08 to the Expense Fund.

> (iii)   The Trustee shall deposit the sum of $4,050,177.12 to the Debt Service Reserve Fund.

> (iv)    The Trustee shall deposit the sum of $34,320,000.00 to the Prior Bonds Refunding Fund.

(B)     The Trustee may, in its discretion, establish a temporary fund or account in its books and records to facilitate such transfers.

SECTION 3.03     Establishment and Application of Project Fund.

There is hereby created and established with the Trustee a trust fund to be designated Project Fund — Mercy Hospital (the "Project Fund") which shall be expended in accordance with the provisions of the Loan Agreement and this Indenture. The Trustee shall, from time to time, establish such accounts in the Project Fund as may be requested by the Borrower. Moneys received from the investment of moneys in the Project Fund shall be deposited into the Project Fund.

(A)     Disbursements from the Project Fund.  Money on deposit in the Project Fund shall be paid out from time to time by the Trustee to or upon the written Request of the Borrower in order to pay or as reimbursement to the Borrower for payments made by it for the costs of acquiring, constructing and/or installing the Project, including the following purposes (but, subject to the provisions of subparagraphs (D) and (E) hereof, for no other purposes):

> (1)     Payment or reimbursement to the Borrower of such amounts as shall be necessary to pay for or reimburse the Borrower for expenditures in connection with (i) the preparation of plans and specifications for the Project (including any preliminary study or planning of the Project or any aspect thereof), and payment of any architectural, engineering or supervisory fees and expenses and (ii) acquiring, constructing and/or installing the Project, any other costs and expenses relating to the Project;

> (2)     Payment of expenses incurred in seeking to enforce any remedy against any contractor or subcontractor in respect of any default under a contract relating to the Project; and

> (3)     Payment of any other costs and expenses relating to the Project.

(B)     Written Request of the Borrower for payments from the Project Fund.  Money on deposit in the Project Fund shall be paid out from time to time by the Trustee to or upon the order of the Borrower in each case upon receipt by the Trustee of a Request of the Borrower: (1) Stating that costs of an aggregate amount set forth in such Request have been made or incurred and were necessary for preparation of plans and specifications of the Project or the construction, acquisition

18

and/or installation of the Project and were made or incurred in accordance with the construction contracts or purchase orders therefor then in effect; (2) Stating that the amount paid or to be paid, as set forth in such Request, is reasonable and represents a part of the amount payable for the costs of construction, acquisition and/or installation of the Project and that such payment was not paid in advance of the time, if any, fixed for payment and was made in accordance with the terms of any contracts or purchase orders applicable thereto and in accordance with usual and customary practice under existing conditions; and (3) Stating that no part of the said costs of the Project was included in any Request previously filed with the Trustee under the provisions hereof.

(C)    Disposition of Project Fund Money After Completion.    If after payment by the Trustee of all orders theretofore tendered to the Trustee under the provisions of subparagraph (B) of this Section there shall remain any balance of money in the Project Fund, such money shall be deposited as follows:  (1) if less than 95% of the proceeds of the Series 2018 Bonds (other than the proceeds used to refund the Prior Bonds) have been expended to pay the costs of construction, acquisition and/or installation of the Project as determined by the Borrower, the excess money in the Project Fund shall be transferred to a fund to be designated as the Optional Redemption Account and invested in Qualified Investments having a yield no greater than the yield on the Series 2018 Bonds, and applied to redemption of Series 2018 Bonds pursuant to Section 4.01 hereof on the first date on which such Series 2018 Bonds may be redeemed without premium, or (2) in all other cases, the excess money in the Project Fund shall be transferred to the Revenue Fund and applied as provided in Section 5.01 hereof

(D)    Investment of Project Fund Money.    Money on deposit in the Project Fund may be invested only in Qualified Investments and the income therefrom shall be credited to the Project Fund.

SECTION 3.04        Establishment and Application of Expense Fund.

The Trustee shall establish a separate account to be known as the "Expense Fund - Mercy Hospital" (hereinafter called the "Expense Fund").  An initial deposit to the credit of the Expense Fund is to be made under the provisions of Section 3.02 hereof.

Money on deposit in the Expense Fund shall be paid out from time to time by the Trustee to or upon the Request of the Borrower in order to pay or as reimbursement to the Borrower for payments made by it for the Costs of Issuance of the Series 2018 Bonds.

At such time as the Borrower notifies the Trustee that all Costs of Issuance of the Series 2018 Bonds payable from the Expense Fund have been paid, and in no event later than November 1, 2018, the Trustee shall transfer any moneys remaining in the Expense Fund to the Project Fund.

SECTION 3.05        Establishment and Application of Prior Bonds Redemption Fund.

The Trustee shall establish a separate account to be known as the "Prior Bonds Refunding Fund - Mercy Hospital" (hereinafter called the "Prior Bonds Refunding Fund").  An initial deposit to the credit of the Prior Bonds Refunding Fund is to be made under the provisions of Section 3.02(A)(iv) hereof.

19

Upon deposit of the amount stipulated in Section 3.02(A)(iv) into the Prior Bonds Refunding Fund, the Trustee shall immediately transfer such amount to the Prior Bonds Trustee for deposit in the Bond Fund of the Prior Bonds Indenture for the purpose of immediately defeasing and subsequently redeeming the Prior Bonds.

Upon redemption of all of the Prior Bonds, the Trustee shall, pursuant to separate written direction from the Borrower, transfer any moneys remaining in the Prior Bonds Refunding Fund to the Interest Account of the Bond Fund hereunder.

SECTION 3.06        Validity of Bonds.

The validity of the authorization and issuance of the Bonds is not dependent on and shall not be affected in any way by any proceedings taken by the Issuer or the Trustee with respect to or in connection with the Loan Agreement.  The recital contained in the Bonds that all acts and proceedings required by the Constitution and laws of the State to exist, to have happened and to have been performed precedent to and in the issuance thereof shall be conclusive evidence of the validity of the Bonds and the validity of the obligations which they represent and of compliance with the provisions of law in their issuance.

ARTICLE IV

REDEMPTION OF BONDS

SECTION 4.01        Terms of Redemption.

(A)        Optional Redemption.  The Bonds maturing on or after June 1, 2024 are subject to redemption prior to their respective stated maturities upon Request of the Borrower given to the Trustee and the Issuer (unless waived by the Trustee and the Issuer in their sole discretion) at least forty-five (45) days prior to such redemption date, from any source of available funds, in whole or in part (and if in part, in such amounts and maturities as may be specified by the Borrower or if the Borrower fails to designate such maturities, in inverse order of maturity) on June 1, 2023 or any date thereafter, at the Redemption Prices, expressed as a percentage of the principal amount redeemed, plus accrued interest, if any, to the redemption date, as provided below:

| Redemption date | Redemption Price |
| --- | --- |
| June 1, 2023 to May 31, 2024 | 103% of par |
| June 1, 2024 to May 31, 2025 | 102% of par |
| June 1, 2025 to May 31, 2026 | 101% of par |
| On and after June 1, 2026 | 100% of par |

(B)        Extraordinary Optional Redemption.  (i) The Bonds are subject to redemption prior to their respective dates of maturity in the event of damage to or destruction of the Facilities of any Member or any part thereof or condemnation (or sale consummated under threat of

20

condemnation) of the Facilities of any Member or any part thereof in excess of the greater of (a) $1,000,000 or (b) the sum of $1,000,000 plus an amount equal to $1,000,000 multiplied by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from its level as of July 1, 1998, but only to the extent of the funds provided for in Section 410, 411 and 412 of the Master Indenture. If called for redemption in such event, Bonds shall be subject to redemption by the Issuer at any time, in whole or in part, and if in part in an Authorized Denomination and by maturities designated by the Borrower (less than all of a single maturity to be selected randomly in such manner as may be determined by the Trustee), at the principal amount thereof plus accrued interest thereon to the redemption date and without premium from the proceeds of such insurance or condemnation award; provided, however, that in no event shall the principal amount of Bonds so redeemed exceed the amount of such Net Proceeds.

(ii) The Bonds are also subject to redemption in whole at any time at a Redemption Price equal to the principal amount thereof plus accrued interest thereon to the date fixed for redemption upon the written request of the Borrower to the Trustee certifying that the Borrower has reason to believe that it or any Member of the Obligated Group, is or will be, by virtue of any Member of the Obligated Group's participation in connection with the issuance of the Bonds, required or ordered by final legislation, judicial or administrative action (whether or not the Borrower or any Member of the Obligated Group is party to such action) of the United States of America, any state or any agency, department or subdivision thereof to operate the Facilities of any Member of the Obligated Group or any part thereof in a manner which the Board of Directors of the Borrower determines, in good faith, to be contrary to the Ethical and Religious Directives for Catholic Health Care Services or similar guidelines promulgated by the National Council of Catholic Bishops.

(C)    <u>Mandatory Sinking Account Redemption.</u>  The Bonds are subject to redemption prior to their stated maturity in part, randomly, from Mandatory Sinking Account Payments established in Section 5.04(C), at the principal amount thereof together with interest accrued thereon to the date fixed for redemption, without premium.

(D)    <u>Redemption Following Determination of Taxability.</u>  The Bonds are subject to mandatory redemption at any time following a Determination of Taxability, at the written direction of the Holder thereof given to the Borrower, Trustee and Issuer (unless such notice is waived by each) at least forty-five (45) days prior to such redemption, from any source of available funds, in whole or in part, at a Redemption Price of 105%, plus accrued interest to the redemption date.

SECTION 4.02        <u>Selection of Bonds for Redemption.</u>

Whenever provision is made in this Indenture for the redemption of less than all of the Bonds or any given portion thereof, the Trustee shall select the Bonds to be redeemed, from all Bonds subject to redemption or such given portion thereof not previously called for redemption, randomly; provided, however that in such instances as provided for herein where the Borrower is to specify the maturities of Bonds to be redeemed, the Trustee shall redeem Bonds in accordance with any such specification.

21

SECTION 4.03        Notice of Redemption.

(A)        Notice of redemption shall be mailed by first-class mail by the Trustee, not less than thirty (30) days prior to the redemption date, to (i) the respective Holders of any Bonds designated for redemption at their addresses appearing on the bond registration books of the Trustee, and (ii) the Issuer and the Securities Depository.  Notice of redemption shall be given by overnight mail or electronic means to the Securities Depository.  Each notice of redemption shall state the date of such notice, the Date of Issuance, the redemption date, the Redemption Price, the place or places of redemption (including the name and appropriate address or addresses of the Trustee), the maturity, the CUSIP numbers, if any, and, in the case of Bonds to be redeemed in part only, the respective portions of the principal amount thereof to be redeemed.  Each such notice shall also state that on said date there will become due and payable on each of said Bonds the Redemption Price thereof or of said specified portion of the principal amount thereof in the case of a Bond to be redeemed in part only, together with interest accrued thereon to the redemption date, and that from and after such redemption date interest thereon shall cease to accrue, and shall require that such Bonds be then surrendered.

(B)        Any notice of optional redemption hereunder may be conditioned upon moneys being on deposit with the Trustee on or prior to the redemption date in an amount sufficient to pay the redemption price on the redemption date.  If such notice is conditional and either the Trustee receives written notice from the Borrower that moneys sufficient to pay the redemption price will not be on deposit on the redemption date, or such moneys are not received on the redemption date, then such notice shall be of no force and effect, the Bond Trustee shall not redeem such Bonds and the Bond Trustee shall give notice, in the same manner in which the notice of redemption was given, that such moneys were not or will not be so received and that such Bonds will not be redeemed and will remain outstanding.

(C)        Failure by the Trustee to give notice pursuant to this Section 4.03 to the Issuer, or the insufficiency of any such notice shall not affect the sufficiency of the proceedings for redemption.  Failure by the Trustee to mail notice of redemption (or failure by any such Holder or Holders to receive said notice) pursuant to this Section 4.03 to any one or more of the respective Holders of any Bonds designated for redemption shall not affect the sufficiency of the proceedings for redemption with respect to the Holders to whom such notice was mailed.

(D)        Notice of redemption of Bonds shall be given by the Trustee, at the expense of the Borrower, for and on behalf of the Issuer.

SECTION 4.04        Partial Redemption of Bonds.

Upon surrender of any Bond redeemed in part only, the Issuer shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Borrower, a new Bond or Bonds of authorized denominations, and of the same maturity, equal in aggregate principal amount to the unredeemed portion of the Bond surrendered.

SECTION 4.05        Effect of Redemption.

(A)        Notice of redemption having been duly given as aforesaid, and moneys for payment of the Redemption Price of, together with interest accrued to the redemption date on, the Bonds

22

(or portions thereof) so called for redemption being held by the Trustee, on the redemption date designated in such notice, the Bonds (or portions thereof) so called for redemption shall become due and payable at the Redemption Price specified in such notice and interest accrued thereon to the redemption date, interest on the Bonds so called for redemption shall cease to accrue, said Bonds (or portions thereof) shall cease to be entitled to any benefit or security under this Indenture, and the Holders of said Bonds shall have no rights in respect thereof except to receive payment of said Redemption Price and accrued interest to the date fixed for redemption from funds held by the Trustee for such payment.

(B)     All Bonds redeemed pursuant to the provisions of this Article shall be cancelled upon surrender thereof.

SECTION 4.06        Purchase in Lieu of Redemption.

Each Holder or Beneficial Owner, by purchase and acceptance of any Bond, irrevocably grants to the Borrower the option to purchase such Bond at any time such Bond is subject to optional redemption as described in Section 4.01 of this Indenture.  Such Bond is to be purchased at a purchase price equal to the then applicable redemption price of such Bond.  The Borrower may only exercise such option, after the Borrower shall deliver a Favorable Opinion of Bond Counsel to the Trustee, and shall direct the Trustee to provide notice of mandatory purchase, such notice to be provided, as and to the extent applicable, in accordance with Section 4.03 of this Indenture and to select Bonds subject to mandatory purchase in the same manner as Bonds called for redemption pursuant to this Indenture.  On the date fixed for purchase of any Bond in lieu of redemption as described in this Section, the Borrower shall pay the purchase price of such Bond to the Trustee in immediately available funds, and the Trustee shall pay the same to the Holders of the Bonds being purchased against delivery thereof.  No purchase of any Bond in lieu of redemption as described in this Section shall operate to extinguish the indebtedness of the Borrower evidenced by such Bond.  No Holder or Beneficial Owner may elect to retain a Bond subject to mandatory purchase in lieu of redemption.  The Borrower may exercise its option to purchase Bonds, in whole or in part, in accordance with this Section.

ARTICLE V

REVENUES; FUNDS AND ACCOUNTS;
PAYMENT OF PRINCIPAL AND INTEREST

SECTION 5.01        Pledge and Assignment; Revenue Fund.

(A)     Subject only to the provisions of this Indenture permitting the application thereof for the purposes and on the terms and conditions set forth herein, there are hereby pledged to secure the payment of the principal (and Redemption Price) of and interest on the Bonds in accordance with their terms and the provisions of this Indenture, all of the Revenues, amounts realized under the Mortgage and the Series 2018 Obligation, and any other amounts (including proceeds of the sale of Bonds) held in any fund or account established pursuant to this Indenture, excepting only moneys on deposit in the Rebate Fund.  Said pledge shall constitute a lien on and security interest

in such assets and shall attach, be perfected and be valid and binding from and after delivery by the Trustee of the Bonds, without any physical delivery thereof or further act.

(B)    The Issuer hereby transfers in trust, grants a security interest in and assigns to the Trustee, for the benefit of the Holders from time to time of the Bonds, all of the Revenues and other assets pledged in subsection (A) of this Section and all of the right, title and interest of the Issuer in the Loan Agreement, except for Reserved Rights. The Trustee shall be entitled to and shall collect and receive all of the Revenues, and any Revenues collected or received by the Issuer shall be deemed to be held, and to have been collected or received, by the Issuer as the agent of the Trustee and shall forthwith be paid by the Issuer to the Trustee. The Trustee shall also be entitled to and subject to the provisions of this Indenture, shall take all steps, actions and proceedings reasonably necessary in its judgment to enforce all of the rights of the Issuer and all of the obligations of the Borrower under the Loan Agreement and all of the obligations of the Members under the Series 2018 Obligation other than Reserved Rights.

(C)    All Revenues shall be promptly deposited by the Trustee upon receipt thereof in a special fund designated as the "Revenue Fund" which the Trustee shall establish, maintain and hold in trust, except as otherwise provided in Sections 5.06 and 5.07 and except that all moneys received by the Trustee and required to be deposited in the Redemption Fund shall be promptly deposited in the "Redemption Fund," which the Trustee shall establish, maintain and hold in trust. All Revenues deposited with the Trustee shall be held, disbursed, allocated and applied by the Trustee only as provided in this Indenture.

(D)    If on any Interest Payment Date or a Principal Payment Date, the Trustee has not received Loan Repayments or other Revenues sufficient to make the transfers required by Section 5.02, the Trustee shall immediately notify the Borrower (by notice to both its chief financial officer and chief executive officer) of such insufficiency (stating in such notice that (i) the Trustee has not received Loan Repayments or other Revenues sufficient to make the transfers required by Section 5.02 and (ii) the amount by which the obligation to make such transfer exceeds the amount available therefore).

SECTION 5.02        Allocation of Revenues.

(A)    On or before the following dates, the Trustee shall transfer from the Revenue Fund and deposit into the following respective accounts (each of which the Trustee shall establish and maintain within the Revenue Fund), then to the Debt Service Reserve Fund and then to the Rebate Fund, the following amounts, in the following order of priority, the requirements of each such account or fund (including the making up of any deficiencies in any such account resulting from lack of Revenues sufficient to make any earlier required deposit) at the time of deposit to be satisfied before any transfer is made to any account or fund subsequent in priority:

First: on each Interest Payment Date, to the Interest Account, the aggregate amount of interest becoming due and payable on such Interest Payment Date on all Outstanding Bonds then Outstanding;

Second:  on each Principal Payment Date, to the Principal Account, the aggregate amount of principal becoming due and payable on such Principal Payment Date and the

24

aggregate amount of the Mandatory Sinking Account Payment required to be paid into the Sinking Account for the Outstanding Bonds on such Principal Payment Date;

Third: on any date on which there is a deficiency therein, to the Debt Service Reserve Fund, the amount necessary to fund such deficiency; and

Fourth: on each date specified in the Tax Agreement, to the Rebate Fund, such amounts as are required to be deposited therein by the Tax Agreement.

(B)     Upon Request of the Borrower, any moneys remaining in the Revenue Fund after the foregoing transfers shall be transferred to the Borrower.

SECTION 5.03     Application of Interest Account.

All amounts in the Interest Account shall be used and withdrawn by the Trustee solely for the purpose of paying interest on the Bonds as it shall become due and payable (including accrued interest on any Bonds purchased or redeemed prior to maturity pursuant to this Indenture).

SECTION 5.04     Application of Principal Account.

(A)     All amounts in the Principal Account shall be used and withdrawn by the Trustee solely for the purpose of paying the principal of the Bonds when due and payable, except that all amounts in the Sinking Account shall be used and withdrawn by the Trustee to purchase or redeem or pay at maturity Term Bonds, as provided herein.

(B)     The Trustee shall establish and maintain within the Principal Account a separate subaccount for the Bonds designated as the "Sinking Account." With respect to the Sinking Account, on any Mandatory Sinking Account Payment date established for the Sinking Account, the Trustee shall transfer the amount deposited in the Principal Account pursuant to Section 5.02 for the purpose of making a Mandatory Sinking Account Payment from the Principal Account to the Sinking Account. On such Mandatory Sinking Account Payment date, the Trustee shall apply the Mandatory Sinking Account Payment required on that date to the redemption (or payment at maturity, as the case may be) of the Bonds, upon the notice and in the manner provided in Article IV; provided that, at any time prior to giving such notice of such redemption, the Trustee at the direction of the Borrower on behalf of the Issuer shall apply such moneys to the purchase of Bonds at public or private sale, as and when and at such prices (including brokerage and other charges, but excluding accrued interest, which is payable from the Interest Account) as the Borrower may direct, in writing, except that the purchase price (excluding accrued interest) shall not exceed the par amount of the Bonds. If, during the twelve-month period immediately preceding the Mandatory Sinking Account Payment date, the Trustee has purchased Bonds of the maturity for which such Sinking Account was established with moneys in the Sinking Account, or, during said period and prior to giving said notice of redemption, the Borrower has deposited Bonds of such maturity with the Trustee, or Bonds of such maturity were at any time purchased or redeemed by the Trustee from the Redemption Fund and allocable to said Mandatory Sinking Account Payment, such Bonds so purchased or deposited or redeemed shall be applied, to the extent of the full principal amount thereof, to reduce said Mandatory Sinking Account Payment. All Bonds purchased or deposited pursuant to this subsection shall be delivered to the Trustee and cancelled. Any amounts remaining in the Sinking Account when all of the Bonds are no longer

25

Outstanding shall be withdrawn by the Trustee and transferred to the Revenue Fund.  All Bonds purchased from the Sinking Account or deposited by the Borrower with the Trustee shall be allocated first to the next succeeding Mandatory Sinking Account Payment in inverse order, then to the remaining Mandatory Sinking Account Payments, then as the Borrower directs.

(C)    Subject to the terms and conditions set forth in this Section and in Section 4.01(C), the Bonds shall be redeemed (or paid at maturity, as the case may be) by application of Mandatory Sinking Account Payments in the following amounts and on the following dates:

| Mandatory Sinking Account Payment Dates (June 1) | Mandatory Sinking Account Payments |
|---|---|
| 2019 | $    515,000 |
| 2020 | 720,000 |
| 2021 | 800,000 |
| 2022 | 885,000 |
| 2023 | 965,000 |
| 2024 | 1,060,000 |
| 2025 | 1,165,000 |
| 2026 | 1,270,000 |
| 2027 | 1,390,000 |
| 2028 | 1,515,000 |
| 2029 | 1,650,000 |
| 2030 | 3,925,000 |
| 2031 | 4,305,000 |
| 2032 | 4,710,000 |
| 2033 | 5,150,000 |
| 2034 | 5,615,000 |
| 2035* | 6,120,000 |

*Maturity

SECTION 5.05    Debt Service Reserve Fund.

The Trustee shall establish and maintain so long as any of the Bonds are outstanding a separate account to be known as the "Debt Service Reserve Fund" (hereinafter called the "Debt Service Reserve Fund").  An initial deposit to the credit of the Debt Service Reserve Fund shall be made upon the initial issuance of the Series 2018 Bonds under the provisions of Section 3.02(A) hereof.

Amounts on deposit in the Debt Service Reserve Fund shall be transferred by the Trustee to the Interest Account and the Principal Account (in the order listed) on any Interest Payment Date or Principal Payment Date to make up for any deficiencies in such accounts on such date.

If the amount on deposit in the Debt Service Reserve Fund is ever less than the Debt Service Reserve Fund Requirement either because of a transfer therefrom or a valuation thereof as hereinafter provided, the Loan Agreement requires the Borrower to restore the Debt Service

26

Reserve Fund to an amount equal to the Debt Service Reserve Fund Requirement (i) in the case of a deficiency due to a transfer to the Interest Account or Principal Account, the Borrower will pay to the Trustee on the first Business Day of each subsequent month an amount not less than one-fifth of the initial deficiency in order to eliminate the deficiency before the following Interest Payment Date, or (ii) in the case of a deficiency due to a change in the value of the Qualified Investments therein, within 30 days of the valuation in which the deficiency is quantified.

Qualified Investments in the Debt Service Reserve Fund shall be valued by the Trustee on the first day of June in each calendar year; provided however that the Borrower or the Bondholder Representative may request that the Debt Service Reserve Fund be valued at any time in addition to the annual valuation date.

If a valuation determines that the amount on deposit in the Debt Service Reserve Fund is greater than the Debt Service Reserve Fund Requirement, the amount in excess of the Debt Service Reserve Fund Requirement shall be transferred to the Interest Account.

SECTION 5.06    Application of Redemption Fund.

The Trustee shall establish and maintain within the Redemption Fund a separate Optional Redemption Account and a separate Special Redemption Account and shall accept all moneys deposited for redemption and shall deposit such moneys into said Accounts, as applicable. All amounts deposited in the Optional Redemption Account and in the Special Redemption Account shall be accepted and used and withdrawn by the Trustee solely for the purpose of redeeming Bonds, in the manner and upon the terms and conditions specified in Article IV, at the next succeeding date of redemption for which notice has been given and at the Redemption Prices then applicable to redemptions from the Optional Redemption Account and the Special Redemption Account, respectively; provided that, at any time prior to giving such notice of redemption, the Trustee shall, upon written direction of the Borrower, apply such amounts to the purchase of Bonds at public or private sale, as and when and at such prices (including brokerage and other charges, but excluding accrued interest, which is payable from the Interest Account) as the Borrower may direct, except that the purchase price (exclusive of accrued interest) may not exceed the Redemption Price then applicable to such Bonds (or, if such Bonds are not then subject to redemption, the par value of such Bonds). All Bonds purchased or redeemed from the Redemption Fund shall be allocated to applicable Mandatory Sinking Account Payments designated in a Certificate of the Borrower (or if the Borrower fails to deliver such a Certificate to the Trustee, in inverse order of their payment dates).

SECTION 5.07    Rebate Fund.

(A)    The Trustee shall establish and maintain, when required, a fund separate from any other fund established and maintained hereunder designated as the "Rebate Fund." Within the Rebate Fund, the Trustee shall maintain such accounts as shall be necessary to comply with instructions of the Borrower given pursuant to the terms and conditions of the Tax Agreement. Subject to the transfer provisions provided in subsection (E) below, all money at any time deposited in the Rebate Fund shall be held by the Trustee in trust, to the extent required to satisfy the Rebate Amount (as defined in the Tax Agreement), for payment to the federal government of the United States of America. Neither the Issuer, the Borrower nor the Holder of any Bonds shall

have any rights in or claim to such money. All amounts deposited into or on deposit in the Rebate Fund shall be governed by this Section, by Section 6.06 and by the Tax Agreement (which is incorporated herein by reference). The Trustee shall be deemed conclusively to have complied with such provisions if it follows the directions of the Borrower including supplying all necessary information in the manner provided in the Tax Agreement, and shall have no liability or responsibility to enforce compliance by the Borrower or the Issuer with the terms of the Tax Agreement or any other tax covenants contained herein. The Trustee shall not be responsible for calculating Rebate Amounts or for the adequacy or correctness of any rebate report or rebate calculations. The Trustee shall have no independent duty to review such calculations or enforce the compliance by the Borrower with such rebate requirements. The Trustee shall have no duty or obligation to determine the applicability of the Code and shall only be obligated to act in accordance with written instructions provided by the Borrower.

(B)    Upon the Borrower's written direction, an amount shall be deposited to the Rebate Fund by the Trustee from deposits by the Borrower, if and to the extent required, so that the balance in the Rebate Fund shall equal the Rebate Amount. Computations of the Rebate Amount shall be furnished by or on behalf of the Borrower in accordance with the Tax Agreement. The Trustee shall supply to the Borrower and/or the Issuer all necessary information in the manner provided in the Tax Agreement to the extent such information is reasonably available to the Trustee.

(C)    The Trustee shall have no obligation to rebate any amounts required to be rebated pursuant to this Section, other than from moneys held in the funds and accounts created under this Indenture or from other moneys provided to it by the Borrower.

(D)    At the written direction of the Borrower, the Trustee shall invest all amounts held in the Rebate Fund solely in Qualified Investments, subject to the restrictions set forth in the Tax Agreement. Moneys shall not be transferred from the Rebate Fund except as provided in subsection (E) below. The Trustee shall not be liable for any consequences arising from such investment.

(E)    Upon receipt of the Borrower's written directions, the Trustee shall remit part or all of the balances in the Rebate Fund to the United States, as so directed. In addition, if the Borrower so directs, the Trustee shall deposit money into or transfer money out of the Rebate Fund from or into such accounts or funds as directed by the Borrower's written directions; provided, however, only moneys in excess of the Rebate Amount may, at the written direction of the Borrower or the Issuer, be transferred out of the Rebate Fund to such other accounts or funds or to anyone other than the United States in satisfaction of the arbitrage rebate obligation. Any funds remaining in the Rebate Fund after each five year remittance to the United States of America, redemption and payment of all of the Bonds and payment and satisfaction of any Rebate Amount, or provision made therefor satisfactory to the Trustee, shall be withdrawn and remitted to the Borrower.

(F)    Notwithstanding any other provision of this Indenture, including in particular Article X, the obligation to remit the Rebate Amount to the United States and to comply with all other requirements of this Section, Section 6.06 and the Tax Agreement shall survive the defeasance or payment in full of the Bonds.

SECTION 5.08    Investment of Moneys in Funds and Accounts.

28

(A)     Any moneys in any of the funds and accounts shall be invested or reinvested by the Trustee, to the extent permitted by law, at the written request of and as directed by an Authorized Representative of the Borrower, in any Qualified Investments. Moneys in all funds and accounts shall be invested in Qualified Investments maturing not later than the date on which it is estimated that such moneys will be required for the purposes set forth in this Indenture. Although the Issuer and the Borrower each recognizes that it may obtain a broker confirmation or written statement containing comparable information at no additional cost, the Issuer and the Borrower hereby agree that confirmations of permitted investments are not required to be issued by the Trustee for each month in which a monthly statement is rendered. No statement need be rendered for any fund or account if no activity occurred in such fund or account during such month.

(B)     The Trustee may make any and all such investments through its own bond or investment department or the bond or investment department of any bank or trust company under common control with the Trustee. All such investments shall at all times be a part of the fund or account from which the moneys used to acquire such investments shall have come and all income and profits on such investments shall be credited to, and losses thereon shall be charged against, such fund. All investments hereunder shall be registered in the name of the Trustee, as Trustee under the Indenture. All investments hereunder shall be held by or under the control of the Trustee. The Trustee shall sell and reduce to cash a sufficient amount of investments of funds in any account of the Revenue Fund or in the Debt Service Reserve Fund whenever the cash balance in such account of the Revenue Fund is insufficient, together with any other funds available therefor, to pay the principal of, premium, if any, and interest on the Bonds when due. The Trustee shall not be liable or responsible for any reduction in value or loss with respect to any investment made in accordance with the instructions received from an Authorized Representative of the Borrower.

(C)     The Issuer covenants and certifies to and for the benefit of the Owners of the Bonds from time to time Outstanding that so long as any of the Bonds remain Outstanding, the Issuer shall not (to the extent within its control) direct that moneys on deposit in any fund or account in connection with the Bonds (whether or not such moneys were derived from the proceeds of the sale of the Bonds or from any other sources), be used in a manner that would cause the Bonds to be classified as "arbitrage bonds" within the meaning of Section 148 of the Code. The Issuer further agrees to cooperate with any reasonable request of the Borrower relating to maintaining the exclusion of interest on the Bonds from gross income; provided, however, that the Issuer shall have no responsibility for directing the investment of any moneys, determining the amount of moneys subject to any applicable yield restriction under Section 148 of the Code, calculating or paying any Rebate Amount pursuant to Section 148(f) of the Code, or expending any funds to do so without first being assured of reimbursement for such expenditure.

The Issuer hereby covenants that it will file such returns and make payments as directed by the Borrower (but only from moneys provided to the Issuer by or on behalf of the Borrower expressly for such purposes), if any, required to be made to the United States pursuant to the Code in order to establish or maintain the exclusion of the interest on the Bonds from gross income for federal income tax purposes.

(D)     Notwithstanding any provision of this Indenture to the contrary, the Trustee shall not be liable or responsible for any calculation or determination which may be required in connection with or for the purpose of complying with Section 148 of the Code or any applicable

010-8605-5752/12

Treasury Regulations (the "Arbitrage Rules"), including, without limitation, the calculation of amounts required to be paid to the United States under the provisions of the Arbitrage Rules, the maximum amount which may be invested in "nonpurpose obligations" as defined in the Code and the fair market value of any investments made hereunder, it being understood and agreed that the sole obligation of the Trustee with respect to investments of funds hereunder shall be to invest the moneys received by the Trustee pursuant to the instructions of the Authorized Representative of the Borrower. The Trustee shall have no responsibility for determining whether or not the investments made pursuant to the direction of the Authorized Representative of the Borrower or any of the instructions received by the Trustee under this Section comply with the requirements of the Arbitrage Rules or Section 5.1 of the Loan Agreement and shall have no responsibility for monitoring the obligations of the Borrower or the Issuer for compliance with the provisions of the Loan Agreement or the Indenture with respect to the Arbitrage Rules.

## ARTICLE VI

## PARTICULAR COVENANTS

SECTION 6.01     Punctual Payment.

The Issuer shall punctually cause to be paid the principal of and Redemption Price and interest on all of the Bonds, in strict conformity with the terms of the Bonds and of this Indenture, according to the true intent and meaning thereof, but only out of Revenues and other assets pledged for such payment as provided in this Indenture with no obligation to collect such funds.

SECTION 6.02     Extension of Payment of Bonds.

The Issuer shall not directly or indirectly extend or assent to the extension of the maturity of any of the Bonds or the time of payment of any claims for interest by the purchase or funding of such Bonds or claims for interest or by any other arrangement and in case the maturity of any of the Bonds or the time of payment of any such claims for interest shall be extended, such Bonds or claims for interest shall not be entitled, in case of any default hereunder, to the benefits of this Indenture, except subject to the prior payment in full of the principal of all of the Bonds then Outstanding and of all claims for interest thereon that shall not have been so extended. Nothing in this Section shall be deemed to limit the right of the Issuer to issue bonds for the purpose of refunding any Outstanding Bonds, and such issuance shall not be deemed to constitute an extension of maturity of Bonds.

SECTION 6.03     Against Encumbrances.

The Issuer shall not create any pledge, lien, charge or other encumbrance upon the Revenues and other assets pledged or assigned under this Indenture while any of the Bonds are Outstanding, except the pledge and assignment created by this Indenture. Subject to this limitation, the Issuer expressly reserves the right to enter into one or more other indentures for any of its

010-8605-5752/12

corporate purposes, including other programs under the Act, and reserves the right to issue other obligations for such purposes.

SECTION 6.04    Power to Issue Bonds and Make Pledge and Assignment.

The Issuer is duly authorized pursuant to law to issue the Bonds and to enter into this Indenture and to pledge and assign the Revenues and other assets purported to be pledged and assigned, respectively, under this Indenture in the manner and to the extent provided in this Indenture. The Trustee shall at all times, subject to the provisions of this Indenture and to the extent permitted by law, defend, preserve and protect said pledge and assignment of Revenues and other assets and all the rights of the Bondholders under this Indenture against all claims and demands of all Persons whomsoever.

SECTION 6.05    Accounting Records and Financial Statements.

The Trustee shall at all times keep, or cause to be kept, proper books of record and account, prepared in accordance with corporate trust industry standards, in which complete and accurate entries shall be made of all transactions made by or on behalf of the Trustee relating to the proceeds of Bonds, the Revenues, the Loan Agreement, the Series 2018 Obligation and all funds and accounts established pursuant to this Indenture. Such books of record and account shall be available for inspection by the Issuer, the Borrower and any Bondholder, or the agent or representative of any of them duly authorized in writing, at reasonable hours and under reasonable circumstances, including reasonable notice to the Trustee.

SECTION 6.06    Tax Covenants.

The Issuer shall at all times do and perform all acts and things permitted by law and this Indenture that are necessary or desirable in order to assure that interest paid on the Bonds will be excluded from gross income for purposes of federal income taxes and shall take no action that would result in such interest not being excluded from gross income for federal income taxes. Without limiting the generality of the foregoing, the Issuer agrees to comply with the provisions of the Tax Agreement.

SECTION 6.07    Enforcement of Loan Agreement and the Series 2018 Obligation.

The Trustee shall promptly collect all amounts due from the Borrower pursuant to the Agreement (other than Reserved Rights) and from the Members pursuant to the Series 2018 Obligation, shall perform all duties imposed upon it pursuant to the Loan Agreement and, subject to the specific provisions of this Indenture, shall diligently enforce, and take all steps, actions and proceedings reasonably necessary for the enforcement of all of the rights of the Issuer and all of the obligations of the Borrower and the other Members.

SECTION 6.08    Amendment of Loan Agreement.

(A)    Except as provided in Section 6.08(B), the Issuer shall not amend, modify or terminate any of the terms of the Loan Agreement, or consent to any such amendment, modification or termination unless the prior written consent of the Holders of a majority in principal amount of the Bonds then Outstanding and the Bondholder Representative to such

31

amendment, modification or termination is filed with the Trustee, provided that no such amendment, modification or termination shall reduce the amount of Loan Repayments to be made to the Issuer or the Trustee by the Borrower pursuant to the Agreement, or extend the time for making such payments, without the written consent of all of the Holders of the Bonds then Outstanding.

(B)    Notwithstanding the provisions of Section 6.08(A), the terms of the Loan Agreement may also be modified or amended from time to time at any time by the Issuer and the Bondholder Representative without the necessity of obtaining the consent of any Bondholders, only to the extent permitted by law and only for any one or more of the following purposes:

(1)    to add to the covenants and agreements of the Issuer or the Borrower contained in the Loan Agreement other covenants and agreements thereafter to be observed, to pledge or assign additional security for the Bonds (or any portion thereof), or to surrender any right or power therein reserved to or conferred upon the Issuer or the Borrower, provided, that no such covenant, agreement, pledge, assignment or surrender shall materially adversely affect the interests of the Holders of the Bonds;

(2)    to make such provisions for the purpose of curing any ambiguity, inconsistency or omission, or of curing or correcting any defective provision, contained in the Loan Agreement, or in regard to matters or questions arising under the Loan Agreement, as deemed necessary or desirable and not inconsistent with the Loan Agreement or this Indenture, and which shall not materially adversely affect the interests of the Holders of the Bonds; or

(3)    to maintain the exclusion from gross income for federal income tax purposes of interest payable with respect to the Bonds.

SECTION 6.09        Release and Substitution of Series 2018 Obligation.

The Trustee will surrender the Series 2018 Obligation to the Master Trustee upon presentation to the Trustee of the following:

(A)    original replacement notes or similar obligations issued by the Borrower (the "Substitute Notes") under and pursuant to and secured by a master trust indenture (the "Replacement Master Indenture") executed by the Borrower, all current Members of the Obligated Group and certain other parties named therein (collectively, the "New Group") and an independent corporate trustee (the "New Trustee") meeting the eligibility requirements of the Master Trustee as set forth in Section 606 of the Master Indenture, which Substitute Notes have been duly authenticated by the New Trustee;

(B)    an original executed counterpart of the Replacement Master Indenture;

(C)    evidence of compliance with the tests set forth in Section 404 of the Master Indenture for adding a new Member to the Obligated Group, including an Officer's Certificate certifying that (a) the New Group could, after giving effect to such Substitute Notes, meet the conditions described in the provisions of Section 415(A) of the Master Indenture for the incurrence of one dollar of additional Long-Term Indebtedness, as demonstrated in such Certificate, and (b) the New Group would not be in default under the provisions of the Master Indenture, including

32

without limitation the provisions of Section 418 of the Master Indenture, as demonstrated in such Certificate;

(D)     an opinion of Independent Counsel addressed to the Trustee and the Issuer (in form and substance acceptable to the Issuer) to the effect that:

(1)     the Replacement Master Indenture has been duly authorized, executed and delivered by each member of the New Group (or by an agent on each such member's behalf), each Substitute Note has been duly authorized, executed and delivered by the Borrower and each of the Replacement Master Indenture and each Substitute Note is a legal, valid and binding obligation of each member of the New Group, subject in each case to customary exceptions for bankruptcy, insolvency and other laws generally affecting enforcement of creditors' rights and application of general principles of equity;

(2)     all requirements and conditions to the issuance of the Substitute Notes set forth in the Replacement Master Indenture have been complied with and satisfied; and

(3)     registration of the Substitute Notes under the Securities Act of 1933, as amended, is not required or, if such registration is required, the New Group has complied with all applicable provisions of said Act;

(E)     an Opinion of Bond Counsel that the surrender of the Series 2018 Obligation and the acceptance by the Trustee of the Substitute Notes satisfies the requirements set forth herein and will not adversely affect the validity of the Bonds or any exemption for the purposes of federal income taxation to which interest on such Bonds would otherwise be entitled;

(F)     if the Bonds are then rated by any Rating Agency, written evidence from each such Rating Agency then maintaining a rating on the Bonds that the rating on the Bonds after giving effect to the exchange of Substitute Notes for the Series 2018 Obligation will not result in the rating on the Bonds being lowered or withdrawn; and

(G)     such other opinions and certificates as the Trustee may reasonably require, together with such reasonable indemnities as the Trustee may request.

The Trustee shall give immediate written notice to the Issuer and the Bondholder Representative of a request to surrender the Series 2018 Obligation.

SECTION 6.10     Further Assurances.

The Issuer will make, execute and deliver any and all such further indentures, instruments and assurances as may be reasonably necessary or proper to carry out the intention or to facilitate the performance of this Indenture and for the better assuring and confirming unto the Holders of the Bonds of the rights and benefits provided in this Indenture.

SECTION 6.11     Continuing Disclosure.

Pursuant to Section 7.10 of the Loan Agreement, the Borrower has covenanted to enter into, comply with and carry out all of the provisions of the Continuing Disclosure Undertaking

33

that complies with the provisions of Rule 15c2-12 promulgated by the Securities and Exchange Commission (as amended from time to time, the "Rule"). The Borrower has undertaken all responsibility for compliance with continuing disclosure requirements, and the Issuer shall have no liability to the Holders of the Bonds or any other Person with respect to the Rule. Notwithstanding any other provision of this Indenture, failure of the Borrower to enter into and comply with the Continuing Disclosure Undertaking shall not be considered an Event of Default; however, any Bondholder or Beneficial Owner may and the Trustee, at the written request of any Participating Underwriter (as defined in the Rule), the Bondholder Representative or the Holders of at least 25% aggregate principal amount of Outstanding Bonds, shall (but only to the extent it has been indemnified to its satisfaction from any loss, liability or expense, including without limitation, fees and expenses of its attorneys and advisors and additional fees and expenses of the Trustee), take such actions as may be necessary and appropriate, including seeking mandate or specific performance by court order, to cause the Borrower to comply with its obligations under Section 7.10 of the Loan Agreement.

## ARTICLE VII

### EVENTS OF DEFAULT AND REMEDIES OF BONDHOLDERS

SECTION 7.01        Events of Default.

The following events shall be Events of Default:

(A)      default in the due and punctual payment of the principal or Redemption Price of any Bond when and as the same shall become due and payable;

(B)      default in the due and punctual payment of any installment of interest on any Bond when and as the same shall become due and payable;

(C)      except as provided in Section 7.01(D), default by the Issuer in the observance of any of the other covenants, agreements or conditions on its part contained in this Indenture or in the Bonds, if such default shall have continued for a period of sixty (60) days after written notice thereof, specifying such default and requiring the same to be remedied, shall have been given to the Issuer by the Trustee, or to the Issuer and the Trustee by the Bondholder Representative or the Holders of not less than twenty-five percent (25%) in aggregate principal amount of the Bonds at the time Outstanding;

(D)      default by the Issuer in the observance of its covenants set forth in Section 6.06 hereof, if such default shall have continued for a period of thirty (30) days after written notice thereof, specifying such default and requiring the same to be remedied, shall have been given to the Issuer; or

(E)      a Loan Default Event.

SECTION 7.02        Acceleration of Maturities.

Upon the occurrence of any Event of Default described in Section 7.01, the Trustee may, and shall upon the written request of the Bondholder Representative or the Holders of a majority

of the aggregate principal amount of Bonds then Outstanding, declare all Bonds then outstanding to be due and payable immediately, and, upon such declaration, all principal and interest accrued thereon shall become immediately due and payable, and there shall be an automatic corresponding acceleration of the Borrower's obligation to make all payments required to be made under the Loan Agreement and the Series 2018 Obligation in an amount sufficient to pay immediately all principal of and accrued and unpaid interest on the Bonds. Interest at the Default Rate shall accrue on the Bonds from the date of the declaration of acceleration to the date of payment (even if after the date of acceleration).

In addition to the foregoing, the Trustee may, and shall upon the written request of the Bondholder Representative or the Holders of a majority of the aggregate principal amount of Bonds then Outstanding, take whatever action at law or in equity is necessary or desirable to enforce the performance, observance or compliance by the Issuer with any covenant, condition or agreement by the Issuer under this Indenture.

Any such declaration, however, is subject to the condition that if, at any time after such declaration and before any judgment or decree for the payment of the moneys due shall have been obtained or entered, the Issuer or the Borrower shall deposit with the Trustee a sum sufficient to pay all the principal, Mandatory Sinking Account Payments or Redemption Price of and installments of interest on the Bonds, payment of which is overdue, with interest on such overdue principal at the Default Rate, and the reasonable charges and expenses of the Trustee and the Issuer (including fees and expenses of their respective attorneys), and if the Trustee has received notification from the Master Trustee that the declaration of acceleration of the Series 2018 Obligation has been annulled pursuant to the Master Indenture and any and all other defaults known to the Trustee (other than in the payment of principal of and interest on the Bonds due and payable solely by reason of such declaration) shall have been made good or cured to the satisfaction of the Trustee or provision deemed by the Trustee to be adequate shall have been made therefor, then, and in every such case, the Trustee shall on behalf of the Holders of all of the Bonds, rescind and annul such declaration and its consequences and waive such default; but no such rescission and annulment shall extend to or shall affect any subsequent default, or shall impair or exhaust any right or power consequent thereon.

Immediately after any acceleration hereunder, the Trustee, to the extent it has not already done so, shall notify in writing the Issuer and the Bondholder Representative of the occurrence of such acceleration.

SECTION 7.03    Application of Revenues and Other Funds After Default.

If an Event of Default shall occur and be continuing, all Revenues and any other funds then held or thereafter received by the Trustee under any of the provisions of this Indenture (subject to Section 11.10 and other than moneys required to be deposited in the Rebate Fund) shall be applied by the Trustee as follows and in the following order:

(A)    To the payment of any expenses necessary in the opinion of the Trustee to protect the interests of the Holders of the Bonds and payment of reasonable fees, charges and expenses of the Trustee (including reasonable fees and disbursements of its counsel) incurred in and about the

35

performance of its powers and duties under this Indenture including any outstanding fees and expenses of the Trustee; and

(B)     To the payment of the principal or Redemption Price of and interest then due on the Bonds (upon presentation of the Bonds to be paid, and stamping thereon of the payment if only partially paid, or surrender thereof if fully paid) subject to the provisions of this Indenture (including Section 6.02), as follows:

(1)     Unless the principal of all of the Bonds shall have become or have been declared due and payable,

First: To the payment to the Persons entitled thereto of all installments of interest then due in the order of the maturity of such installments, with interest on the overdue interest at the Default Rate, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon, to the Persons entitled thereto, without any discrimination or preference; and

Second: To the payment to the Persons entitled thereto of the unpaid principal or Redemption Price of any Bonds that shall have become due, whether at maturity or by call for redemption, with interest on the overdue principal at the Default Rate, and, if the amount available shall not be sufficient to pay in full all the Bonds, together with such interest, then to the payment thereof ratably, according to the amounts of principal or Redemption Price due on such date to the Persons entitled thereto, without any discrimination or preference.

(2)     If the principal of all of the Bonds shall have become or have been declared due and payable, to the payment of the principal and interest then due and unpaid upon the Bonds, with interest on the overdue principal at the Default Rate, and, if the amount available shall not be sufficient to pay in full the whole amount so due and unpaid, then to the payment thereof ratably, without preference or priority of principal over interest, or of interest over principal, or of any installment of interest over any other installment of interest, or of any Bond over any other Bond, according to the amounts due respectively for principal and interest, to the Persons entitled thereto without any discrimination or preference.

(C)     To the payment of fees and expenses, including reasonable attorney fees of the Issuer.

SECTION 7.04     Trustee to Represent Bondholders.

The Trustee is hereby irrevocably appointed (and the successive respective Holders of the Bonds, by taking and holding the same, shall be conclusively deemed to have so appointed the Trustee) as trustee and true and lawful attorney-in-fact of the Holders of the Bonds for the purpose of exercising and prosecuting on their behalf such rights and remedies as may be available to such Bondholder Representative or Holders under the provisions of the Bonds, this Indenture, the Loan Agreement, the Series 2018 Obligation, the Act and applicable provisions of any other law. Upon the occurrence and continuance of an Event of Default or other occasion giving rise to a right in

36

the Trustee to represent the Bondholders, the Trustee in its discretion may, and upon the written request of the Bondholder Representative or the Holders of not less than twenty-five percent (25%) in aggregate principal amount of the Bonds then Outstanding, and upon being indemnified to its satisfaction therefor, shall, proceed to protect or enforce its rights or the rights of such Holders by such appropriate action, suit, mandamus or other proceedings as it shall deem most effectual to protect and enforce any such right, at law or in equity, either for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the enforcement of any other appropriate legal or equitable right or remedy vested in the Trustee, in such Holders under this Indenture, the Loan Agreement, the Series 2018 Obligation, the Act or any other law; and upon instituting such proceeding, the Trustee shall be entitled, as a matter of right, to the appointment of a receiver of the Revenues and other assets pledged under this Indenture, pending such proceedings. All rights of action under this Indenture or the Bonds or otherwise may be prosecuted and enforced by the Trustee without the possession of any of the Bonds or the production thereof in any proceeding relating thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in the name of the Trustee for the benefit and protection of all the Holders of such Bonds, subject to the provisions of this Indenture (including Section 6.02).

SECTION 7.05    Bondholder Representative's Direction of Proceedings.

Anything in this Indenture to the contrary notwithstanding, if an Event of Default shall have occurred and be continuing, (a) the Bondholder Representative, in its sole discretion, as evidenced by a written request of the Bondholder Representative delivered to the Trustee, may, but shall not be required to, direct the time, method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture, or for the appointment of a receiver, or any other proceedings or remedies hereunder; provided, however, that (i) such direction shall not be otherwise than in accordance with the provisions hereof and applicable law, and (ii) except with respect to a declaration of the acceleration of the principal of and interest on the Bonds in accordance herewith, the Trustee shall not be required to act on any such written Request of the Bondholder Representative delivered to it unless indemnified as provided in Section 9.07, and (b) the Bondholder Representative, in its sole discretion, as evidenced by a written Request of the Bondholder Representative delivered to the Trustee, may, but shall not be required to (i) in lieu of the Trustee, exercise such one or more of the rights and powers conferred on the Trustee or the Holders by this Article, and (ii) exercise such other rights and powers granted to the Issuer under this Indenture or the Loan Documents, either by a suit or suits in equity or in law for the enforcement of any appropriate equitable or legal remedy that the Bondholder Representative shall deem most expedient in the interests of the Beneficial Owners. Notwithstanding the foregoing, the provisions of this Section shall not apply to the Reserved Rights of the Issuer, the enforcement of which shall be reserved exclusively to the Issuer and the Issuer Indemnified Persons, as the case may be.

SECTION 7.06    Limitation on Bondholders' Right to Sue.

No Holder of any Bond shall have the right to institute any suit, action or proceeding at law or in equity, for the protection or enforcement of any right or remedy under this Indenture, the Loan Agreement, the Series 2018 Obligation or any other applicable law with respect to such Bond, unless (1) such Holder shall have given to the Trustee written notice of the occurrence of

37

an Event of Default; (2) the Bondholder Representative or the Holders of not less than twenty-five percent (25%) in aggregate principal amount of the Bonds then Outstanding shall have made written request upon the Trustee to exercise the powers hereinbefore granted or to institute such suit, action or proceeding in its own name; (3) such Holder or said Holders shall have tendered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request; and (4) the Trustee shall have refused or omitted to comply with such request for a period of sixty (60) days after such written request shall have been received by, and said tender of indemnity shall have been made to, the Trustee.

Such notification, request, tender of indemnity and refusal or omission are hereby declared, in every case, to be conditions precedent to the exercise by any Holder of Bonds of any remedy hereunder or under law; it being understood and intended that no one or more Holders of Bonds shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Indenture or the rights of any other Holders of Bonds, or to enforce any right under this Indenture, the Loan Agreement, the Series 2018 Obligation, the Act or other applicable law with respect to the Bonds, except in the manner herein provided, and that all proceedings at law or in equity to enforce any such right shall be instituted, had and maintained in the manner herein provided and for the benefit and protection of all Holders of the Outstanding Bonds, subject to the provisions of this Indenture (including Section 6.02).

SECTION 7.07    Absolute Obligation of Issuer.

Nothing contained in Section 7.06 or in any other provision of this Indenture or in the Bonds shall affect or impair the obligation of the Issuer, which is absolute and unconditional, to pay the principal or Redemption Price of and interest on the Bonds to the respective Holders of the Bonds at their respective dates of maturity, or upon call for redemption, as herein provided, but only out of the Revenues and other assets herein pledged therefor, or affect or impair the right of such Holders, which is also absolute and unconditional, to enforce such payment by virtue of the contract embodied in the Bonds.

SECTION 7.08    Termination of Proceedings.

In case any proceedings taken by the Trustee, any one or more Bondholders on account of any Event of Default shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Trustee or the Bondholders, then in every such case the Issuer, the Trustee and the Bondholders, subject to any determination in such proceedings, shall be restored to their former positions and rights hereunder, severally and respectively, and all rights, remedies, powers and duties of the Issuer, the Trustee and the Bondholders shall continue as though no such proceedings had been taken.

SECTION 7.09    Remedies Not Exclusive.

No remedy herein conferred upon or reserved to the Trustee or to the Holders of the Bonds is intended to be exclusive of any other remedy or remedies, and each and every such remedy, to the extent permitted by law, shall be cumulative and in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or otherwise.

38

SECTION 7.10        No Waiver of Default.

No delay or omission of the Trustee or of any Holder of the Bonds to exercise any right or power arising upon the occurrence of any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Indenture to the Trustee or the Holders of the Bonds may be exercised from time to time and as often as may be deemed expedient.

## ARTICLE VIII

## THE TRUSTEE; THE BONDHOLDER REPRESENTATIVE

SECTION 8.01        Duties, Immunities and Liabilities of Trustee.

(A)    The Issuer, upon request of the Borrower, hereby appoints Wells Fargo Bank, National Association, as Trustee.  The Trustee shall, prior to an Event of Default, and after the curing or waiver of all Events of Default which may have occurred, perform such duties and only such duties as are specifically set forth in this Indenture, and, except to the extent required by law, no implied covenants or obligations shall be read into this Indenture against the Trustee.  The Trustee shall, during the existence of any Event of Default (which has not been cured or waived in accordance herewith), exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(B)    The Trustee may be removed at any time upon written request of the Borrower or the Bondholder Representative unless an Event of Default shall have occurred and then be continuing, and shall be removed if at any time requested to do so by an instrument or concurrent instruments in writing signed by the Bondholder Representative or Holders of not less than a majority in aggregate principal amount of the Bonds then Outstanding (or their attorneys duly authorized in writing) or if at any time the Trustee shall cease to be eligible in accordance with subsection (E) of this Section, or shall become incapable of acting, or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or its property shall be appointed, or any public officer shall take control or charge of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation. In each case the Borrower or the Issuer shall give written notice of such removal to the Trustee, and thereupon the Borrower shall appoint a successor Trustee by an instrument in writing.

(C)    The Trustee may at any time resign by giving written notice of such resignation to the Issuer, the Bondholder Representative and the Borrower, and by giving the Bondholders notice of such resignation by mail at the addresses shown on the registration books maintained by the Trustee.  Upon receiving such notice of resignation, the Borrower shall with the written consent of the Bondholder Representative appoint a successor Trustee by an instrument in writing, unless an Event of Default shall have occurred in which case the Issuer or the Holders of not less than a

39

majority in aggregate principal amount of the Bonds then Outstanding shall make such appointment.

(D)    The Trustee shall not be relieved of its duties hereunder until its successor Trustee has accepted its appointment and assumed the duties of Trustee hereunder.  Any removal or resignation of the Trustee and appointment of a successor Trustee shall become effective upon prior written approval of such successor Trustee and acceptance of appointment by the successor Trustee.  If no successor Trustee shall have been appointed and have accepted appointment within thirty (30) days of giving notice of removal or notice of resignation as aforesaid, the resigning Trustee or any Bondholder (on behalf of himself and all other Bondholders) may petition any court of competent jurisdiction for the appointment of a successor Trustee, and such court may thereupon, after such notice (if any) as it may deem proper, appoint such successor Trustee.  Any successor Trustee appointed under this Indenture, shall signify its acceptance of such appointment by executing and delivering to the Issuer, the Bondholder Representative, the Borrower and to its predecessor Trustee a written acceptance thereof, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become vested with all the moneys, estates, properties, rights, powers, trusts, duties and obligations of such predecessor Trustee, with like effect as if originally named Trustee herein; but, nevertheless at the request of the successor Trustee, such predecessor Trustee shall execute and deliver any and all instruments of conveyance or further assurance and do such other things as may reasonably be required for more fully and certainly vesting in and confirming to such successor Trustee all the right, title and interest of such predecessor Trustee in and to any property held by it under this Indenture and shall pay over, transfer, assign and deliver to the successor Trustee any money or other property subject to the trusts and conditions herein set forth.  Upon request of the successor Trustee, the Issuer shall execute and deliver any and all instruments as may be reasonably required for more fully and certainly vesting in and confirming to such successor Trustee all such moneys, estates, properties, rights, powers, trusts, duties and obligations.  Upon prior written approval of a successor Trustee and upon acceptance of appointment by a successor Trustee as provided in this subsection, the successor Trustee shall mail a notice of the succession of such Trustee to the trusts hereunder to the Bondholders at the addresses shown on the registration books maintained by the Trustee.

(E)    Any successor Trustee shall be a trust company or bank having the powers of a trust company having (or, in the case of a trust company or bank included in a bank holding company system, with a bank holding company having) a combined capital and surplus of at least fifty million dollars ($50,000,000) and subject to supervision or examination by federal or state authority.  If such bank or trust company publishes a report of condition at least annually, pursuant to law or to the requirements of any supervising or examining authority above referred to, then for the purpose of this subsection the combined capital and surplus of such bank or trust company shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.  In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this subsection (E), the Trustee shall resign immediately in the manner and with the effect specified in this Section.

SECTION 8.02    Merger or Consolidation.

Any company into which the Trustee may be merged or converted or with which it may be consolidated or any company resulting from any merger, conversion or consolidation to which it

40

shall be a party or any company to which the Trustee may sell or transfer all or substantially all of its corporate trust business, provided such company shall be eligible under subsection (E) of Section 8.01, shall be the successor to such Trustee without the execution or filing of any paper or any further act, anything herein to the contrary notwithstanding.

SECTION 8.03    Liability of Trustee.

(A)    The recitals of facts herein and in the Bonds contained shall be taken as statements of the Issuer, and the Trustee assumes no responsibility for the correctness of the same, and makes no representations as to the legality, validity or sufficiency of this Indenture, the Loan Agreement, the Series 2018 Obligation or any other document related hereto, or of the Bonds, and shall incur no responsibility in respect thereof, other than in connection with the duties or obligations herein or in the Bonds assigned to or imposed upon it except for any recital or representation specifically relating to the Trustee or its powers.    The Trustee shall, however, be responsible for its representations contained in its certificate of authentication on the Bonds.    The Trustee shall not be liable in connection with the performance of its duties hereunder, except for its own negligence, or willful misconduct; provided, that this shall not be construed to limit the effect of subsection (F) hereof.    The Trustee may become the owner of Bonds with the same rights it would have if it were not Trustee, and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of Bondholders, whether or not such committee shall represent the Holders of a majority in principal amount of the Bonds then Outstanding.

(B)    The Trustee shall not be liable for any error of judgment made in good faith by a responsible officer, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts.

(C)    The Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of not less than a majority in aggregate principal amount (or such lesser principal amount as is provided hereby) of the Bonds at the time Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Indenture.

(D)    The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Bondholders pursuant to the provisions of this Indenture unless such Bondholders shall have offered to the Trustee

41

security or indemnity reasonable to it against the costs, expenses and liabilities which may be incurred therein or thereby.

(E)     The Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture unless it shall be proved that the Trustee was negligent.

(F)     No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers.

(G)     Whether or not therein expressly so provided, every provision of this Indenture, the Loan Agreement, the Series 2018 Obligation or other documents relating to the issuance of the Bonds, relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article.

(H)     The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, requisition, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, coupon or other paper or document, but the Trustee, in its discretion and at its expense, may make such further investigation or inquiry into such facts of matters as it may deem fit.

(I)     The Trustee shall have no responsibility with respect to any information, statement, or recital in any official statement, offering memorandum or any other disclosure material prepared or distributed with respect to the Bonds.

(J)     The Trustee shall not be deemed to have knowledge of an Event of Default hereunder, under the Loan Agreement, the Series 2018 Obligation or any other document related to the Bonds unless any officer in the Corporate Trust Department shall have actual knowledge thereof. As used herein, "actual knowledge" shall mean the actual fact or statement of knowing without any independent duty to make any investigation with regard thereto.

SECTION 8.04          Right of Trustee to Rely on Documents.

The Trustee shall be protected in acting upon any notice, resolution, request, statement, requisition, consent, order, certificate, report, opinion, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties. Before the Trustee acts or refrains from acting, it may consult with counsel, who may be counsel of or to the Issuer, with regard to legal questions, and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance therewith.

With the exception of Persons in whose names Bonds are registered on the books maintained by the Trustee for such purpose, the Trustee shall not be bound to recognize any Person as the Holder of a Bond unless and until such Bond is submitted for inspection, if required, and his title thereto is satisfactorily established, if disputed.

42

Whenever in the administration of the trusts imposed upon it by this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a Certificate of the Issuer, and such Certificate shall be full warrant to the Trustee for any action taken or suffered in good faith under the provisions of this Indenture in reliance upon such Certificate, but in its discretion the Trustee may, in lieu thereof, accept other evidence of such matter or may require such additional evidence as to it may deem reasonable.

SECTION 8.05        Preservation and Inspection of Documents.

All documents received by the Trustee under the provisions of this Indenture shall be retained in its possession and shall be subject at all reasonable times to the inspection of the Issuer, the Borrower, and any Bondholder, and their agents and representatives duly authorized in writing (if such Bondholder provides to the Trustee thirty (30) days prior written notice and such notice specifies a date upon which such inspection shall occur), during normal business hours and under reasonable conditions, including reasonable notice to the Trustee.

SECTION 8.06        Performance of Duties.

The Trustee may execute any of the trusts or powers hereof and perform the duties required of it under either directly or by or through attorneys or agents and shall be entitled to advice of counsel concerning all matters of trust and its duties hereunder and shall be absolutely protected in relying thereon. The Trustee shall not be responsible for the negligence or misconduct of such persons selected by it with reasonable care.

SECTION 8.07        Compensation and Indemnification.

Pursuant to a separate fee agreement between the Trustee and the Borrower, the Borrower has agreed to pay to the Trustee from time to time reasonable compensation for all services rendered under this Indenture, and also all reasonable expenses, charges, legal and consulting fees and other disbursements and those of its attorneys, agents and employees, incurred in and about the performance of its powers and duties under this Indenture.

No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of its rights or powers, if it has not received the agreed compensation for such services or, in cases where the Trustee has a right to reimbursement or indemnification for such performance or exercise, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it. Under no circumstances shall the Trustee be liable in its individual capacity for the obligations evidenced by the Bonds.

SECTION 8.08        Appointment of Bondholder Representative.

(A)        The initial Bondholder Representative shall be Preston Hollow Capital, LLC, and Preston Hollow Capital, LLC shall serve as such until it is removed or resigns as provided herein.

43

(B)     The Bondholder Representative (i) shall have such rights as are set forth therefor in the Indenture and the Loan Documents, and (ii) shall be the sole representative of the Beneficial Owners of the Bonds to give any consents, authorizations or approvals hereunder, exercise any rights or direct remedies hereunder or take any other action as may be taken by the Beneficial Owners under this Indenture.

(C)     The Beneficial Owners of a majority in aggregate principal amount of the Outstanding Bonds may remove the Bondholder Representative, by giving signed, written notice of such removal to the Issuer, the Trustee and the Borrower, which removal shall become effective upon receipt of such written notice by the Issuer, the Trustee and the Borrower. The Bondholder Representative may at any time resign by giving at least 30 days' written notice of such resignation to the Issuer, the Trustee and the Borrower. Upon removal or resignation of the Bondholder Representative, the Beneficial Owners of a majority in aggregate principal amount of the Outstanding Bonds may, but shall not be required to, appoint a successor Bondholder Representative, by giving signed, written notice of such appointment to the Issuer, the Trustee and the Borrower, which appointment shall become effective upon receipt of such written notice by the Issuer, the Trustee and the Borrower. During any period in which no Bondholder Representative has been appointed as provided herein, references in the Bond Documents and the Loan Documents to the Bondholder Representative shall be deemed to be references to the Beneficial Owners of a majority in aggregate principal amount of the Outstanding Bonds.

(D)     Any successor Bondholder Representative shall automatically become a party to each agreement to which the Bondholder Representative is a party without the execution or filing of any paper or the performance of any further act.

SECTION 8.09     Notices and Reporting Obligations.

The appointment of a Bondholder Representative shall in no way affect any reporting or notice requirements to the Beneficial Owners hereunder or under the Bond Documents, except that such Bondholder Representative shall also receive copies of all such reports and notices.

SECTION 8.10     Limitation of Liability; Indemnification.

The Bondholder Representative (and its officers, directors, employees, agents and representatives) shall (i) not be liable to the Beneficial Owners of the Bonds for any act or omission in its capacity as Bondholder Representative unless it is determined by a court of competent jurisdiction by a final and non-appealable order that the Bondholder Representative engaged in fraud or that its actions constituted gross negligence or willful misconduct. The Bondholder Representative shall be entitled to treat as genuine any letter or other document furnished to it in its capacity as Bondholder Representative that it believes to be genuine and to have been signed and presented by the proper party or parties. In addition, the Beneficial Owners shall severally, and not jointly, in proportion to each Owners' pro rata interest in the Bonds, indemnify and hold harmless the Bondholder Representative (and its officers, directors, employees, agents and representatives) against any claims, damages, judgments, loss, liability, cost or expense (including attorney's fees and costs) incurred on the part of the Bondholder Representatives and arising out of or in connection with the acceptance, performance or administration of the Bondholder Representatives' duties hereunder, including, without limitation, the Bondholder Representative

44

having to indemnify the Trustee for any actions it takes hereunder or under any Bond Document. The Beneficial Owners covenant and agree not to commence any action or proceeding in any court against the Bondholder Representative (and its officers, directors, employees, agents and representatives).

SECTION 8.11    Permissive Right.

The permissive right of the Bondholder Representative to act pursuant to this Indenture shall not be construed as a duty, and the Bondholder Representative shall not be answerable with respect to any such permissive right other than for its gross negligence or willful misconduct that the Bondholder Representative is finally adjudicated (sustained on appeal, if any) by a court of competent jurisdiction to have committed. The Bondholder Representative shall have no duties, including no fiduciary or contractual duties, to any Person unless such duties are expressly set forth in this Indenture, and no such duties shall be implied or imposed under any principle of equity. Whenever any Bond Document or Loan Document makes reference to obtaining or granting Bondholder Representative consent or approval, such consent or approval may be granted or withheld by the Bondholder Representative in its sole, absolute and unreviewable discretion.

SECTION 8.12    Arbitration.

Any action, claim or proceeding brought against the Bondholder Representative by the Beneficial Owners, or by any party to the Bond Documents or Loan Documents other than the Trustee or the Issuer, shall be determined by arbitration administered by the American Arbitration Association and governed by its arbitration rules in effect as of the date of this Indenture, subject to any modifications contained herein. The number of arbitrators shall be three. The place of arbitration shall be New York, New York, and any and all awards and other decisions shall be deemed to have been made there, without prejudice to the right of the arbitral tribunal to hold hearings, meetings, or sessions any place it deems appropriate. The language of the arbitration shall be English. All and any awards or other decisions of the arbitral tribunal shall be final and binding on the parties. The parties consent to the jurisdiction of the courts of the state of New York to confirm an arbitration award.

ARTICLE IX

MODIFICATION OR AMENDMENT OF THIS INDENTURE

SECTION 9.01    Amendments Permitted.

(A)    This Indenture and the rights and obligations of the Issuer, of the Trustee and of the Holders of the Bonds may be modified or amended from time to time and at any time by a Supplemental Trust Indenture, which the Issuer and the Trustee may enter into with the written consent of the Borrower and when the written consent the Bondholder Representative and the Holders of a majority in aggregate principal amount of the Bonds then Outstanding shall have been filed with the Trustee. No such modification or amendment shall (1) extend the fixed maturity of any Bond, or reduce the amount of principal thereof, or extend the time of payment or reduce the amount of any Mandatory Sinking Account Payment, or reduce the rate of interest thereon, or extend the time of payment of interest thereon, or reduce any premium payable upon the

45

redemption thereof, or change any redemption dates or other redemption provisions, without the consent of the Holder of each Bond so affected, or (2) reduce the aforesaid percentage of Bonds the consent of the Holders of which is required to effect any such modification or amendment, or permit the creation of any lien on the Revenues and other assets pledged under this Indenture prior to or on a parity with the lien created by this Indenture, or deprive the Holders of the Bonds of the lien created by this Indenture on such Revenues and other assets (except as expressly provided in this Indenture), without the consent of the Holders of all Bonds then Outstanding.  It shall not be necessary for the consent of the Bondholders to approve the particular form of any Supplemental Trust Indenture, but it shall be sufficient if such consent shall approve the substance thereof. Promptly after the execution by the Issuer and the Trustee of any Supplemental Trust Indenture pursuant to this subsection (A), the Trustee shall mail a notice, setting forth in general terms the substance of such Supplemental Trust Indenture to the Bondholders at the addresses shown on the registration books maintained by the Trustee. Any failure to give such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such Supplemental Trust Indenture.

(B)    This Indenture and the rights and obligations of the Issuer, of the Trustee and of the Holders of the Bonds may also be modified or amended from time to time and at any time by a Supplemental Trust Indenture, which the Issuer and the Trustee may enter into without the consent of any Bondholders, but with the written consent of the Borrower and the Bondholder Representative, but only to the extent permitted by law and only for any one or more of the following purposes:

(1)    to add to the covenants and agreements of the Issuer in this Indenture contained other covenants and agreements thereafter to be observed, to pledge or assign additional security for the Bonds (or any portion thereof), or to surrender any right or power herein reserved to or conferred upon the Issuer, provided, that no such covenant, agreement, pledge, assignment or surrender shall materially adversely affect the interests of the Holders of the Bonds;

(2)    to make such provisions for the purpose of curing any ambiguity, inconsistency or omission, or of curing or correcting any defective provision, contained in this Indenture, or in regard to matters or questions arising under this Indenture, as the Issuer, the Borrower or the Trustee may deem necessary or desirable and not inconsistent with this Indenture, and which shall not materially adversely affect the interests of the Holders of the Bonds;

(3)    to modify, amend or supplement this Indenture in such manner as to permit the qualification hereof under the Trust Indenture Act of 1939, as amended, or any similar federal statute hereafter in effect, and to add such other terms, conditions and provisions as

46

may be permitted by said act or similar federal statute, and which shall not materially adversely affect the interests of the Holders of the Bonds;

       (4)    to provide any additional procedures, covenants or agreements to maintain the exclusion from gross income for federal income tax purposes of the interest on the Bonds, including the amendment of any Tax Agreement;

       (5)    to facilitate (i) the transfer of Bonds from one Securities Depository to another in the succession of Securities Depositories, or (ii) the withdrawal from a Securities Depository of Bonds held in a Book-Entry System and the issuance of replacement Bonds in fully registered form to Persons other than a Securities Depository;

       (6)    to make any changes required by a Rating Agency in order to obtain or maintain a rating for the Bonds; or

       (7)    to make any other changes which will not materially adversely affect the interests of the Holders of the Bonds.

    (C)    The Trustee may in its discretion, but shall not be obligated to, enter into any such Supplemental Trust Indenture authorized by subsections (A) or (B) of this Section which materially adversely affects the Trustee's own rights, duties or immunities under this Indenture or otherwise. In executing, or accepting the additional trusts created by, any Supplemental Trust Indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee and the Issuer shall be entitled to receive, and shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such Supplemental Trust Indenture is authorized by and in compliance with this Indenture.

    SECTION 9.02      Effect of Supplemental Trust Indenture.

    Upon the execution of any Supplemental Trust Indenture pursuant to this Article, this Indenture shall be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Indenture of the Issuer, the Trustee and all Holders of Bonds Outstanding shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such Supplemental Trust Indenture shall be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

    SECTION 9.03      Endorsement of Bonds; Preparation of New Bonds.

    Bonds delivered after the execution of any Supplemental Trust Indenture pursuant to this Article may bear a notation by endorsement or otherwise in form approved by the Issuer and the Trustee as to any modification or amendment provided for in such Supplemental Trust Indenture, and, in that case, upon demand of the Holder of any Bond Outstanding at the time of such execution and presentation of his Bond for the purpose at the Corporate Trust Office of the Trustee or at such additional offices as the Trustee may select and designate for that purpose, a suitable notation shall be made on such Bond. If the Supplemental Trust Indenture shall so provide, new Bonds so modified as to conform, in the opinion of the Issuer, to any modification or amendment contained in such Supplemental Trust Indenture, shall be prepared by the Trustee at the expense of the

47

Borrower, executed by the Issuer and authenticated by the Trustee, and upon demand of the Holders of any Bonds then Outstanding shall be exchanged at the Corporate Trust Office of the Trustee, without cost to any Bondholder, for Bonds then Outstanding, upon surrender for cancellation of such Bonds, in equal aggregate principal amounts of the same maturity.

SECTION 9.04        Amendment of Particular Bonds.

The provisions of this Article shall not prevent any Bondholder from accepting any amendment as to the particular Bonds held by him, provided that due notation thereof is made on such Bonds.

ARTICLE X

DEFEASANCE

SECTION 10.01        Discharge of Indenture.

(A)      The Bonds may be paid in any of the following ways:

(i)      by paying or causing to be paid the principal or Redemption Price of and interest on all Bonds Outstanding, as and when the same become due and payable;

(ii)     by depositing with the Trustee, in trust, at or before maturity, moneys or securities in the necessary amount (as provided in Section 10.03) to pay when due or redeem all Bonds then Outstanding; or

(iii)    by delivering to the Trustee, for cancellation by it, all Bonds then Outstanding.

(B)      If the Bonds shall be paid as provided in (A) above, and if there shall be paid all other sums payable hereunder, then and in that case at the election of the Issuer (evidenced by a Certificate of the Issuer filed with the Trustee signifying the intention of the Issuer to discharge all such indebtedness and this Indenture), and notwithstanding that any Bonds shall not have been surrendered for payment, this Indenture and the pledge of Revenues and other assets made under this Indenture and all covenants, agreements and other obligations of the Issuer under this Indenture (except as otherwise specifically provided herein) shall cease, terminate, become void and be completely discharged and satisfied. In such event, upon the request of the Issuer, the Trustee shall cause an accounting for such period or periods as may be requested by the Issuer to be prepared and filed with the Issuer and shall execute and deliver to the Issuer all such instruments as may be necessary to evidence such discharge and satisfaction, and the Trustee shall pay over, transfer, assign or deliver to the Borrower all moneys or securities or other property held by it pursuant to this Indenture which are not required for the payment or redemption of Bonds not theretofore surrendered for such payment or redemption; provided that in all events moneys in the Rebate Fund shall be subject to the provisions of Section 5.07; and provided further that, prior to the Trustee paying over, transferring, assigning or delivering to the Borrower such moneys,

48

securities or other property, all Administrative Fees and Expenses and any indemnification owed the Issuer and the Trustee shall have been paid.

SECTION 10.02     Discharge of Liability on Bonds.

(A)     Upon the deposit with the Trustee, in trust, at or before maturity, of money or securities in the necessary amount (as provided in Section 10.03) to pay or redeem any Outstanding Bond (whether upon or prior to its maturity or the redemption date of such Bond), provided that, if such Bond is to be redeemed prior to maturity, notice of such redemption shall have been given as in Article IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice, then all liability of the Issuer in respect of such Bond shall cease, terminate, become void and be completely discharged and satisfied, except only that thereafter the Holder thereof shall be entitled to payment of the principal or Redemption Price of and interest on such Bond by the Issuer, and the Issuer shall remain liable for such payments, but only out of such money or securities deposited with the Trustee as aforesaid for their payment, subject, however, to the provisions of Section 10.04.

(B)     The Issuer or the Borrower may at any time surrender to the Trustee for cancellation by it any Bonds previously issued and delivered, which the Issuer may have acquired in any manner whatsoever, and such Bonds, upon such surrender and cancellation, shall be deemed to be paid and retired.

SECTION 10.03     Deposit of Money or Securities with Trustee.

Whenever in this Indenture it is provided or permitted that there be deposited with or held in trust by the Trustee money or securities in the necessary amount to pay or redeem any Bonds, the money or securities so to be deposited or held may include money or securities, or a combination thereof, held by the Trustee in the funds and accounts established pursuant to this Indenture (other than the Rebate Fund) and shall be:

(i)     lawful money of the United States of America in an amount equal to the principal amount of such Bonds and all unpaid interest thereon to maturity, except that, in the case of Bonds which are to be redeemed prior to maturity and in respect of which notice of such redemption shall have been given as in Article IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice, the amount to be deposited or held shall be the principal amount or Redemption Price of such Bonds and all unpaid interest thereon to the redemption date; or

(ii)     United States Government Obligations (not callable by the issuer thereof prior to maturity), the principal of and interest on which when due (without any income from the reinvestment thereof) will provide money sufficient, in the opinion of an independent public accountant or other verification agent, to pay the principal or Redemption Price of and all unpaid interest to maturity, or to the redemption date, as the case may be, on the Bonds to be paid or redeemed, as such principal or Redemption Price and interest become due; provided that, in the case of Bonds which are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as in Article

49

IV provided or provision satisfactory to the Trustee shall have been made for the giving of such notice;

provided, in each case, that (i) the Trustee shall have been irrevocably instructed (by the terms of this Indenture or by Request of the Issuer) to apply such money to the payment of such principal or Redemption Price and interest with respect to such Bond and (ii) an Opinion of Counsel as to the defeasance of such Bonds.

SECTION 10.04        Payment of Bonds After Discharge of Indenture.

Notwithstanding any provisions of this Indenture, any moneys held by the Trustee in trust for the payment of the principal of, or interest on, any Bonds and remaining unclaimed for the period' which is one year less than the statutory escheat period after the principal or Redemption Price of all of the Bonds has become due and payable (whether at maturity or upon call for redemption or by acceleration as provided in this Indenture), if such moneys were so held at such date, or the period which is one year less than the statutory escheat period after the date of deposit of such moneys if deposited after said date when all of the Bonds became due and payable, shall be repaid to the Borrower free from the trusts created by this Indenture upon receipt of an indemnification agreement acceptable to the Issuer and the Trustee indemnifying the Issuer and the Trustee with respect to claims of Holders of Bonds which have not yet been paid, and all liability of the Trustee with respect to such moneys shall thereupon cease; provided, however, that before the repayment of such moneys to the Borrower as aforesaid, the Trustee may (at the cost of the Borrower) first mail to the Holders of Bonds which have not yet been paid, at the addresses shown on the registration books maintained by the Trustee, a notice, in such form as may be deemed appropriate by the Trustee with respect to the Bonds so payable and not presented and with respect to the provisions relating to the repayment to the Borrower of the moneys held for the payment thereof.

ARTICLE XI

MISCELLANEOUS

SECTION 11.01        Liability of Issuer Limited to Revenues.

Notwithstanding anything in this Indenture or in the Bonds contained, the Issuer shall not be required to advance any moneys derived from any source other than the Revenues and other assets pledged under this Indenture for any of the purposes in this Indenture mentioned, whether for the payment of the principal or Redemption Price of or interest on the Bonds or for any other purpose of this Indenture.

SECTION 11.02        Successor is Deemed Included in All References to Predecessor.

Whenever in this Indenture either the Issuer or the Trustee is named or referred to, such reference shall be deemed to include the successors or assigns thereof, and all the covenants and agreements in this Indenture contained by or on behalf of the Issuer or the Trustee shall bind and inure to the benefit of the respective successors and assigns thereof whether so expressed or not.

010-8605-5752/12

SECTION 11.03    Limitation of Rights to Parties, Borrower and Bondholders.

Nothing in this Indenture or in the Bonds expressed or implied is intended or shall be construed to give to any Person other than the Issuer, the Trustee, the Borrower and the Holders of the Bonds, including the Bondholder Representative, any legal or equitable right, remedy or claim under or in respect of this Indenture or any covenant, condition or provision therein or herein contained; and all such covenants, conditions and provisions are and shall be held to be for the sole and exclusive benefit of the Issuer, the Trustee, the Borrower and the Holders of the Bonds.

SECTION 11.04    Waiver of Notice.

Whenever in this Indenture the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the Person entitled to receive such notice and in any such case the giving or receipt of such notice shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

SECTION 11.05    Destruction of Bonds.

Whenever in this Indenture provision is made for the cancellation by the Trustee and the delivery to the Issuer of any Bonds, the Trustee shall, in lieu of such cancellation and delivery, destroy such Bonds pursuant to its retention policy then in effect, and deliver a certificate of such destruction to the Issuer upon its written request.

SECTION 11.06    Severability of Invalid Provisions.

If any one or more of the provisions contained in this Indenture or in the Bonds shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such provision or provisions shall be deemed severable from the remaining provisions contained in this Indenture and such invalidity, illegality or unenforceability shall not affect any other provision of this Indenture, and this Indenture shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein.

SECTION 11.07    Notices.

All notices to Bondholders shall be given by Electronic Means unless otherwise provided herein and, if by a telecommunications device not capable of producing a written notice, confirmed in writing as soon as practicable. Any notice to or demand upon the Trustee and the Master Trustee may be served or presented, and such demand may be made, at the Corporate Trust Office of the Trustee at 10 South Wacker Drive, 13th Floor, Chicago, IL 60606 Attn: Corporate Trust Services or at such other address as may have been filed in writing by the Trustee with the Issuer. Any notice to or demand upon the Issuer, the Bondholder Representative or the Borrower shall be deemed to have been sufficiently given or served for all purposes by being delivered or sent by Electronic Means or by being deposited, postage prepaid, in a U.S. Postal Service letter box, addressed, as the case may be, to: the Issuer at City Hall, P.O. Box 345, Hills, IA 52235-0345, Attention: City Clerk; the Bondholder Representative at:  1717 Main Street, Suite 3900, Dallas, Texas 75201, Attn:  Chief Credit Officer; or, to the Borrower at Mercy Hospital, Iowa City, Iowa, 500 East Market Street, Iowa City, Iowa 52245, Attention Chief Financial Officer (or such other

51

addresses as may have been filed in writing by the Issuer, the Bondholder Representative or the Borrower with the Trustee).

Notwithstanding the foregoing provisions of this Section 11.07, the Trustee shall not be deemed to have received, and shall not be liable for failing to act upon the contents of any notice, unless and until the Trustee actually receives such notice.

Any notice, certificate, opinion, report or other document or information required to be given to Holders of the Bonds, the Trustee, the Borrower or the Issuer under this Indenture or the Loan Agreement or in connection with the Series 2018 Obligation, and any notice or report or other document or information required to be given to the Municipal Security Rulemaking Board's disclosure website (or to any dissemination agent for transmittal thereto) under the Continuing Disclosure Undertaking, shall also be filed with the Holders of the Bonds, the Trustee, the Borrower, the Municipal Security Rulemaking Board's disclosure website (or dissemination agent), as appropriate.

SECTION 11.08    Evidence of Rights of Bondholders.

Any request, consent or other instrument required or permitted by this Indenture to be signed and executed by Bondholders may be in any number of concurrent instruments of substantially similar tenor and shall be signed or executed by such Bondholders in person or by an agent or agents duly appointed in writing. Proof of the execution of any such request, consent or other instrument or of a writing appointing any such agent, or of the holding by any person of Bonds transferable by delivery, shall be sufficient for any purpose of this Indenture and shall be conclusive in favor of the Trustee and of the Issuer if made in the manner provided in this Section.

The fact and date of the execution by any Person of any such request, consent or other instrument or writing may be proved by the certificate of any notary public or other officer of any jurisdiction, authorized by the laws thereof to take acknowledgments of deeds, certifying that the Person signing such request, consent or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution duly sworn to before such notary public or other officer.

The ownership of Bonds shall be proved by the bond registration books held by the Trustee.

Any request, consent, or other instrument or writing of the Holder of any Bond shall bind every future Holder of the same Bond and the Holder of every Bond issued in exchange therefor or in lieu thereof, in respect of anything done or suffered to be done by the Trustee or the Issuer in accordance therewith or reliance thereon.

SECTION 11.09    Disqualified Bonds.

In determining whether the Holders of the requisite aggregate principal amount of Bonds have concurred in any demand, request, direction, consent or waiver under this Indenture, Bonds which are owned or held by or for the account of the Issuer, the Borrower or by any other obligor on the Bonds, or by any Person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the Issuer, the Borrower or any other obligor on the Bonds, shall be disregarded and deemed not to be Outstanding for the purpose of any such determination, but

52

only to the extent the Trustee has actual knowledge of such ownership. Bonds so owned which have been pledged in good faith may be regarded as Outstanding for the purposes of this Section if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Bonds and that the pledgee is not a person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the Issuer, the Borrower or any other obligor on the Bonds. In case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

SECTION 11.10    Money Held for Particular Bonds.

The money held by the Trustee for the payment of the interest, principal or Redemption Price due on any date with respect to particular Bonds (or portions of Bonds in the case of Bonds redeemed in part only) shall, on and after such date and pending such payment, be set aside on its books and held in trust uninvested by it for the Holders of the Bonds entitled thereto, subject, however, to the provisions of Section 10.04.

SECTION 11.11    Funds and Accounts.

The Trustee may establish such funds and accounts as it deems necessary or appropriate to fulfill its obligations under this Indenture. Any fund required by this Indenture to be established and maintained by the Trustee may be established and maintained in the accounting records of the Trustee either as a fund or an account, and may, for the purposes of such records, any audits thereof and any reports or statements with respect thereto, be treated either as a fund or as an account; but all such records with respect to all such funds shall at all times be maintained in accordance with customary standards of the corporate trust industry, to the extent practicable, and with due regard for the requirements of Section 6.06 and for the protection of the security of the Bonds and the rights of every Holder thereof Notwithstanding any other provision of this Indenture, the Trustee shall only be required to open any funds or accounts when it receives, or is notified that it will receive, funds or moneys to be deposited and maintained in such funds or accounts.

SECTION 11.12    Waiver of Personal Liability.

No director, member, officer, agent or employee of the Issuer shall be individually or personally liable for the payment of the principal (or Redemption Price) of or interest on the Bonds or be subject to any personal liability or accountability by reason of the issuance thereof; but nothing herein contained shall relieve any such member, officer, agent or employee from the performance of any official duty provided by law or by this Indenture.

SECTION 11.13    Business Days.

If any date specified herein shall not be a Business Day, any action required on such date may be made on the next succeeding Business Day with the same effect as if made on such date.

SECTION 11.14    Governing Law and Venue.

This Indenture is governed by the laws of the State of Iowa, without regard to the choice of law rules of the State of Iowa. Venue for any action under this Indenture to which the Issuer is a party shall lie within the district courts of the State of Iowa, and the parties hereto consent to the

jurisdiction and venue of any such court and hereby waive any argument that venue in such forums is not convenient.

SECTION 11.15        Execution in Several Counterparts.

This Indenture may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original; and all such counterparts, or as many of them as the Issuer and the Trustee shall preserve undestroyed, shall together constitute but one and the same instrument.

*[balance of page intentionally blank; next page is signature page]*

010-8605-5752/12

IN WITNESS WHEREOF, the City of Hills, Iowa has caused these presents to be signed in its name and on its behalf by its Mayor and City Clerk, all as of the day and year first above written; and to evidence its acceptance of the trusts hereby created, Wells Fargo Bank, National Association, as Trustee, has caused these presents to be signed in its name and on its behalf by its duly authorized officer, all as of the day and year first above written.

CITY OF HILLS, IOWA

By: _____
    Mayor

Attest:

By: _____
    City Clerk

(Seal)

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee

By: _____
    Vice President

[Execution Page for Trust Indenture]

IN WITNESS WHEREOF, the City of Hills, Iowa has caused these presents to be signed in its name and on its behalf by its Mayor and City Clerk, all as of the day and year first above written; and to evidence its acceptance of the trusts hereby created, Wells Fargo Bank, National Association, as Trustee, has caused these presents to be signed in its name and on its behalf by its duly authorized officer, all as of the day and year first above written.

CITY OF HILLS, IOWA

By: _____
     Mayor

Attest:

By: _____
     City Clerk

(Seal)

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee

By: _____
     Vice President

[Execution Page for Trust Indenture]

Exhibits to the foregoing document may be obtained from counsel for Plaintiffs.