# Exhibit E

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

# MASTER TRUST INDENTURE

between

## MERCY HOSPITAL, IOWA CITY, IOWA

and

## NORWEST BANK IOWA, NATIONAL ASSOCIATION,
as Master Trustee

Dated as of June 1, 1998

## DIRECT OBLIGATIONS

This instrument was prepared by:

Dorsey & Whitney LLP
801 Grand, Suite 3900
Des Moines, Iowa  50309-2790
(515)283-1000  Fax: (515) 283-1060

## TABLE OF CONTENTS

This Table of Contents is not a part of this Master Trust Indenture and is provided only for convenience of reference.

ARTICLE I
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARTICLE II
THE OBLIGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   Section 201. Series, Designation and Amount of Obligations . . . . . . . . . . . . . . . . . . 32
   Section 202. Payment of Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   Section 203. Execution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
   Section 204. Authentication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
   Section 205. Form of Obligations and Temporary Obligations . . . . . . . . . . . . . . . . . 34
   Section 206. Mutilated, Lost, Stolen or Destroyed Obligations . . . . . . . . . . . . . . . . . 35
   Section 207. Registration; Negotiability; Cancellation upon Surrender;
               Exchange of Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
   Section 208. Issuance of Series 1998 Obligations . . . . . . . . . . . . . . . . . . . . . . . . . 36
   Section 209. Security for Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
   Section 210. Issuance of Obligations in Forms Other than Notes . . . . . . . . . . . . . . . 39

ARTICLE III
PREPAYMENT OR REDEMPTION OF OBLIGATIONS . . . . . . . . . . . . . . . . . . . . . . . . 41
   Section 301. Prepayment or Redemption Dates and Prices . . . . . . . . . . . . . . . . . . . 41
   Section 302. Notice of Prepayment or Redemption . . . . . . . . . . . . . . . . . . . . . . . . 43
   Section 303. Partial Prepayment or Redemption of Obligations . . . . . . . . . . . . . . . . 44
   Section 304. Effect of Call for Prepayment or Redemption . . . . . . . . . . . . . . . . . . . 44

ARTICLE IV
GENERAL COVENANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
   Section 401. Payment of Principal, Premium, if any, and Interest . . . . . . . . . . . . . . . 46
   Section 402. Performance of Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
   Section 403. Representations and Warranties by the Obligated Group . . . . . . . . . . . . 46
   Section 404. Entrance Into the Obligated Group . . . . . . . . . . . . . . . . . . . . . . . . . . 47
   Section 405. Cessation of Status as a Member of the Obligated Group . . . . . . . . . . . 49
   Section 406. Covenants as to Corporate Existence, Maintenance
               of Properties, and Similar Matters, Right of Contest . . . . . . . . . . . . . . . 50
   Section 407. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
   Section 408. Right to Perform Members' Covenants; Advances . . . . . . . . . . . . . . . . 54
   Section 409. Rates and Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
   Section 410. Damage or Destruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Section 411. Condemnation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Section 412. Other Provisions with Respect to Net Proceeds . . . . . . . . . . . . . . . . . . . 59
Section 413. Merger, Consolidation, Sale or Conveyance . . . . . . . . . . . . . . . . . . . . . . 59
Section 414. Financial Statements, Etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Section 415. Permitted Additional Indebtedness . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section 416. Calculation of Debt Service and Debt Service Coverage . . . . . . . . . . . . 69
Section 417. Sale, Lease or Other Disposition of Property . . . . . . . . . . . . . . . . . . . . . 71
Section 418. Liens on Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
Section 419. Right to Consent, Etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
Section 420. List of Obligation Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
Section 421. Designation of Additional Paying Agents . . . . . . . . . . . . . . . . . . . . . . 74
Section 422. Further Assurances; Additional Property . . . . . . . . . . . . . . . . . . . . . . . 74
Section 423. Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
Section 424. Dividend and Stock Purchases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
Section 425. Additions to Excluded Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

ARTICLE V
REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
Section 501. Extension of Payment; Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
Section 502. Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
Section 503. Acceleration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
Section 504. Remedies; Rights of Obligation Holders . . . . . . . . . . . . . . . . . . . . . . . 80
Section 505. Direction of Proceedings by Holders . . . . . . . . . . . . . . . . . . . . . . . . . 81
Section 506. Appointment of Receivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Section 507. Application of Moneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
Section 508. Remedies Vested in Master Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 83
Section 509. Rights and Remedies of Obligation Holders . . . . . . . . . . . . . . . . . . . . . 83
Section 510. Termination of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
Section 511. Waiver of Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
Section 512. Members' Rights of Possession and Use of Property . . . . . . . . . . . . . . . 85
Section 513. Related Bond Trustee or Bondholders Deemed To
             Be Obligation Holders; Bond Insurer's Rights . . . . . . . . . . . . . . . . . . 85

ARTICLE VI
THE MASTER TRUSTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
Section 601. Acceptance of the Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
Section 602. Fees, Charges and Expenses of Master Trustee
             and any Additional Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Section 603. Notice to Obligation Holders if Default Occurs . . . . . . . . . . . . . . . . . . . 89
Section 604. Intervention by Master Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Section 605. Successor Master Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
Section 606. Corporate Master Trustee Required; Eligibility . . . . . . . . . . . . . . . . . . . 89
Section 607. Resignation by the Master Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . 90

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Section 608. Removal of the Master Trustee ................................ 90
Section 609. Appointment of Successor Master Trustee
by the Obligation Holders; Temporary Master Trustee .............. 90
Section 610. Concerning Any Successor Master Trustee ......................... 91
Section 611. Master Trustee Protected in Relying Upon Resolutions, Etc. ......... 91
Section 612. Successor Master Trustee as Trustee of Funds, Paying Agent
and Obligation Registrar .................................... 91
Section 613. Maintenance of Record ..................................... 91

ARTICLE VII
SUPPLEMENTAL MASTER INDENTURES ................................ 92
Section 701. Supplemental Master Indentures Not Requiring Consent
of Obligation Holders ...................................... 92
Section 702. Supplemental Master Indentures Requiring
Consent of Obligation Holders ............................... 94

ARTICLE VIII
SATISFACTION OF THE MASTER INDENTURE .............................. 96
Section 801. Defeasance ............................................. 96
Section 802. Provision for Payment of a Particular Series
of Obligations or Portion Thereof ............................ 97
Section 803. Satisfaction of Related Bonds ............................... 98

ARTICLE IX
MANNER OF EVIDENCING OWNERSHIP OF OBLIGATIONS ..................... 99
Section 901. Proof of Ownership .......................................... 99

ARTICLE X
MISCELLANEOUS ..................................................... 100
Section 1001. Limitation of Rights ...................................... 100
Section 1002. Unclaimed Moneys ....................................... 100
Section 1003. Severability ............................................. 100
Section 1004. Notices ................................................ 100
Section 1005. Master Trustee as Paying Agent and Registrar .................. 101
Section 1006. Counterparts ............................................ 101
Section 1007. Applicable Law .......................................... 101
Section 1008. Immunity of Officers, Employees and Members ................. 101
Section 1009. Holidays ............................................... 102

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

THIS IS A MASTER TRUST INDENTURE dated as of June 1, 1998 among MERCY HOSPITAL, IOWA CITY, IOWA (the "Corporation"), an Iowa not for profit corporation and the initial member of the Obligated Group hereinafter referred to, and NORWEST BANK IOWA, NATIONAL ASSOCIATION, a national banking institution duly established, existing and authorized to accept and execute trusts of the character herein set out under and by virtue of the laws of the United States of America, with its principal corporate trust office at 666 Walnut Street, Des Moines, Iowa 50309, herein called the "Master Trustee".

WITNESSETH:

WHEREAS, the Corporation is authorized by law, and deems it necessary and desirable that it be able to issue Direct Note Obligations and other evidences of indebtedness (collectively, the "Obligations") of several series in order to secure the financing or refinancing of health care and related facilities and for other lawful and proper corporate purposes; and

WHEREAS, the Corporation also desires to provide in this Master Indenture for other legal entities to join with it in the future pooling of credit resources in order to achieve lower borrowing costs and to become jointly and severally liable with the Corporation and such other entities for the payment of such Obligations and the performance of all covenants contained herein. The Corporation and each legal entity incurring such joint and several liability in accordance with the terms hereof are herein referred to individually as a "Member" and collectively as the "Members" or the "Obligated Group"; and

WHEREAS, the Corporation and the Master Trustee have previously entered into a Master Trust Indenture dated as of November 1, 1986 (the "Original Prior Master Indenture"), and as supplemented and amended, the "Prior Master Indenture") pursuant to which the Corporation has issued the following Master Notes:

(a) Series 1986 Master Note in the original principal amount of $21,565,000 to secure the Corporation's obligations under a Loan Agreement dated as of November 1, 1986 between the Corporation and the City of Iowa City, Iowa pursuant to which such City loaned the proceeds of its Hospital Facility Refunding Revenue Bonds, Series 1986 (Mercy Hospital, Iowa City, Iowa) (the "Series 1986 Bonds") to the Corporation;

(b) Series 1992 Master Note in the original principal amount of $7,000,000 to secure the Corporation's obligations under a Loan Agreement dated as of November 1, 1992 between the Corporation and the City of Hills, Iowa (the "Issuer") pursuant to which the Issuer loaned the proceeds of its Hospital Facility Revenue Bonds, Series 1992 (Mercy Hospital, Iowa City, Iowa) (the "Series 1992 Bonds") to the Corporation;

(c) Series 1996A Master Note in the original principal amount of $5,052,144 to secure the obligations of the Corporation [as surviving corporation of a merger with

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Mercycenter Iowa City ("Mercycenter") and Mercy Facilities, Inc. ("Facilities")] under a
Loan Agreement dated as of March 1, 1994 (the "Series 1994 Loan Agreement" between
Facilities and the Issuer pursuant to which the Issuer loaned the proceeds of its Hospital
Facility Revenue Bond, Series 1994 (Mercy Facilities, Inc. Project) (the "Series 1994
Bonds") to Facilities; and

(d)     Series 1996B Master Note in the original principal amount of $1,114,832.67
to secure the obligations of the Corporation (as surviving corporation of the merger with
Mercycenter and Facilities) under a Loan Agreement dated as of March 1, 1994 (the "Series
1994 Note Agreement") between Facilities and Iowa State Bank & Trust Company, Iowa
City, Iowa (the "Managing Lender"), First National Bank, Iowa City, Iowa, and Hills Bank
and Trust Company (together, the "Lenders") entered into in connection with a loan by the
Lenders to Facilities and the issuance by Facilities of its Second Mortgage Note, Series 1994
(the "Second Mortgage Note"); and

WHEREAS, the Corporation has made arrangements with the Issuer for the Issuer to issue
its Revenue Refunding Bonds, Series 1998 (Mercy Hospital, Iowa City, Iowa) in the principal
amount of $32,605,000 (the "Series 1998 Bonds") and to loan the proceeds thereof to the
Corporation pursuant to a Loan Agreement dated as of June 1, 1998 (the "Loan Agreement") for the
purpose of refunding the Series 1986 Bonds and the Series 1992 Bonds, financing a Project (as
defined in the Loan Agreement) and paying a portion of the costs of issuance of the Series 1998
Bonds; and

WHEREAS, the Lenders, as holders of 100% principal amount of the Series 1994 Bonds and
the Second Mortgage Note have agreed to exchange the Series 1996A Master Note and the Series
1996B Master Note for Obligations issued pursuant to this Master Indenture and to the satisfaction
and discharge of the Prior Master Indenture; and

WHEREAS, contemporaneously with the execution and delivery of this Master Indenture,
the Corporation will issue and deliver the following Obligations (together, the "Series 1998
Obligations") (i) $32,605,000 Direct Note Obligation, Series 1998A (the "Series 1998A Obligation")
to secure the Corporation's obligations under the Loan Agreement; (ii) $1,722,430.31 Direct Note
Obligation, Series 1998B (the "Series 1998B Obligation") to secure the Corporation's obligations
under the Series 1994 Loan Agreement; and (iii) $249,146.87 Direct Note Obligation, Series 1998C
(the "Series 1998C Obligations") to secure the Corporation's obligations under the Series 1994 Note
Agreement; and

WHEREAS, all acts and things necessary to make the Series 1998 Obligations, when
authorized and executed by the Corporation and authenticated and delivered by the Master Trustee
as in this Master Indenture provided, the valid, binding and legal obligations of the Obligated Group,
and to constitute these presents a valid indenture and agreement according to its terms, have been
done and performed and the execution of this Master Indenture and the issuance hereunder of the

-2-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Series 1998 Obligations have in all respects been duly authorized, and the Corporation in the exercise of the legal right and power vested in it, executes this Master Indenture and the Corporation proposes to make, execute, issue and deliver the Series 1998 Obligations and the Members of the Obligated Group may make, execute, issue and deliver one or more Additional Obligations of various series.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

In order to declare the terms and conditions upon which Obligations of each series are authenticated, issued and delivered, and in consideration of the premises, of the purchase and acceptance of Obligations of each series by the holders thereof and of the sum of One Dollar to them duly paid by the Master Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Members covenant and agree with the Master Trustee, for the equal and proportionate benefit of the respective holders from time to time of Obligations of each series as follows:

GRANTING CLAUSES

That each Member of the Obligated Group in consideration of the premises and of the purchase of the Obligations and of other good and lawful consideration, the receipt of which is hereby acknowledged, and to secure the payment of the principal of, premium, if any, and interest on the Obligations and the performance and observance of all of the covenants and conditions herein or therein contained, has executed and delivered this Master Indenture and has conveyed, mortgaged, granted, assigned, transferred, pledged, set over and confirmed and granted a security interest in and by these presents does hereby convey, mortgage, grant, assign, transfer, pledge, set over and confirm and grant a security interest in, unto the Master Trustee, its successor or successors and its or their assigns forever, with power of sale, all and singular the property, real and personal, hereinafter described (said property being herein sometimes referred to as the "trust estate") to wit:

DIVISION I

All accounts and assignable general intangibles now owned or hereafter acquired by any Member of the Obligated Group regardless of how generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial Code, as amended, of the state in which such Member has its primary place of business; excluding, however, gifts, grants, bequests, donations and contributions of any Member heretofore or hereafter made, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with its use for payments required under this Master Indenture or on the Obligations (defined in this Master Indenture and referred to herein as the "Unrestricted Receivables"); and

-3-

Mercy Hospital Iowa City/641968-2/Master Trust Indenture

## DIVISION II

Any and all other property of every kind and nature from time to time hereafter, by delivery or by writing of any kind, conveyed, pledged, assigned or transferred as and for additional security hereunder by any Member of the Obligated Group or by anyone on its behalf to the Master Trustee, including without limitation, funds of any Member held by the Master Trustee as security for the Obligations;

TO HAVE AND TO HOLD, all and singular, the properties, rights and privileges hereby conveyed, assigned and pledged by any Member or intended so to be, unto the Master Trustee and its successors and assigns forever, in trust, nevertheless, with power of sale for the equal and pro rata benefit and security of all Obligations issued hereunder, without preference, priority or distinction as to participation in the lien, benefit and protection hereof of one Obligation over or from the others, by reason of priority in the issue or negotiation or maturity thereof, or for any other reason whatsoever, except as herein otherwise expressly provided, so that each and all of such Obligations shall have the same right, lien and privilege under this Master Indenture and shall be equally secured hereby with the same effect as if the same had all been made, issued and negotiated simultaneously with the delivery hereof and were expressed to mature on one and the same date;

PROVIDED, HOWEVER, that the Unrestricted Receivables so pledged hereunder which consist of accounts and proceeds thereof may be (i) transferred despite and free of this pledge if such transfer is in accordance with the provisions of this Master Indenture and any Lien created hereunder on any such Unrestricted Receivables shall terminate and be released immediately upon any such transfer or (ii) subjected to a Lien permitted by clause (u) of the definition of Permitted Encumbrances; or

PROVIDED, NEVERTHELESS, and these presents are upon the express condition, that if the Members or their successors or assigns shall well and truly pay or cause to be paid the principal of such Obligations with interest, according to the provisions set forth in the Obligations or shall provide for the payment or redemption of such Obligations by depositing or causing to be deposited with the Master Trustee the entire amount of funds or securities requisite for payment or redemption thereof when and as authorized by the provisions hereof, and shall also pay or cause to be paid all other sums payable hereunder by the Members, then these presents and the estate and rights hereby granted shall cease, determine and become void, and thereupon the Master Trustee, on payment of its lawful charges and disbursements then unpaid, on demand of the Members and upon the payment of the cost and expenses thereof, shall duly execute, acknowledge and deliver to the Members such instruments of satisfaction or release as may be necessary or proper to discharge this Master Indenture of record, and if necessary shall grant, reassign and deliver to the Members, their successors or assigns, all and singular the property, rights, privileges and interests by them hereby granted, conveyed and assigned, and all substitutes therefor, or any part thereof, not previously disposed of or released as herein provided; otherwise this Master Indenture shall be and remain in full force.

-4-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

## ARTICLE I

## DEFINITIONS

In addition to the words and terms elsewhere defined in this Master Indenture, the following words and terms as used in this Master Indenture shall have the following meanings unless the context or use indicates another or different meaning or intent:

*"Accelerable Instrument"* means any Obligation or any mortgage, indenture, loan agreement or other instrument under which there has been issued or incurred, or by which there is secured, any Indebtedness evidenced by an Obligation, which Obligation or instrument provides that, upon the occurrence of an event of default under such Obligation or instrument, the holder thereof may request that the Master Trustee declare such Obligation or Indebtedness due and payable prior to the date on which it would otherwise become due and payable.

*"Act"* means Chapter 419 of the Code of Iowa, as from time to time amended.

*"Additional Indebtedness"* means Indebtedness incurred by any Member subsequent to the issuance of the Series 1998 Obligations.

*"Additional Obligation"* means any evidence of Indebtedness or evidence of any repayment obligation under an Interest Rate Agreement issued after the issuance of the Series 1998 Obligations authorized to be issued by a Member pursuant to this Master Indenture which has been authenticated by the Master Trustee pursuant to Section 204 hereof.

*"Adjusted Contributions"* means, for any fiscal year of a Person, the lesser of: (i) the Unrestricted Contributions actually received by such Person for such fiscal year or (ii) the sum total of Unrestricted Contributions actually received by such Person during such fiscal year and during the preceding four fiscal years of such Person divided by five, provided that, in making the computation under (ii), the amount of Unrestricted Contributions for the fiscal year (of such five fiscal years) in which the amount of Unrestricted Contributions is largest shall, if it exceeds 150% of the amount of Unrestricted Contributions for the fiscal year (of such five fiscal years) in which the amount of Unrestricted Contributions is second largest, be reduced to an amount equal to 150% of the amount of Unrestricted Contributions for said fiscal year in which the amount of Unrestricted Contributions is second largest.

*"Affiliate"* means a corporation, limited liability company, partnership, joint venture, association, business trust or similar entity (a) which controls, is controlled by or is under common control with, directly or indirectly, a Member; or (b) a majority of the members of the Directing Body of which are members of the Directing Body of a Member. For the purposes of this definition, control means with respect to: (a) a corporation having stock, the ownership, directly or indirectly,

-5-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

of more than 50% of the securities (as defined in Section 2(l) of the Securities Act of 1933, as amended) of any class or classes, the holders of which are ordinarily, in the absence of contingencies, entitled to elect a majority of the Directing Body of such corporation; (b) a not for profit corporation not having stock, having the power to elect or appoint, directly or indirectly, a majority of the members of the Directing Body of such corporation; or (c) any other entity, the power to direct the management of such entity through the ownership of a majority of its voting securities or the right to designate or elect a majority of the members of its Directing Body, by contract or otherwise. For the purposes of this definition, "Directing Body" means with respect to: (a) a corporation having stock, such corporation's board of directors and the owners, directly or indirectly, of more than 50% of the securities (as defined in Section 2(l) of the Securities Act of 1933, as amended) of any class or classes, the holders of which are ordinarily, in the absence of contingencies, entitled to elect a majority of the corporation's directors (both of which groups shall be considered a Directing Body); (b) a not for profit corporation not having stock, such corporation's members if the members have complete discretion to elect the corporation's Directing Body, or the corporation's Directing Body if the corporation's members do not have such discretion; and (c) any other entity, its governing board or body. For the purposes of this definition, all references to directors and members shall be deemed to include all entities performing the function of directors or members however denominated.

"*Balloon Indebtedness*" means Long-Term Indebtedness, 25% or more of the original principal of which matures during any consecutive twelve-month period, if such maturing principal amount is not required to be amortized below such percentage by mandatory redemption or prepayment prior to such twelve-month period. Balloon Indebtedness does not include Indebtedness which otherwise would be classified hereunder as Put Indebtedness.

"*Bond Indenture*" means the Bond Trust Indenture dated as of June 1, 1998 from the Issuer to the Bond Trustee, as it may from time to time be amended or supplemented.

"*Bond Trustee*" means Norwest Bank Iowa, National Association, or any successor trustee under the Bond Indenture.

"*Bondholder,*" "*holder*" or "*owner of the Bonds*" means the registered owner of any Related Bond.

"*Book Value,*" *when* used with respect to Property of a Member, means the value of such Property, net of accumulated depreciation and amortization, as reflected in the most recent audited financial statements of such Member which have been prepared in accordance with generally accepted accounting principles, and, when used with respect to Property of all Members, means the aggregate of the values of such Property, net of accumulated depreciation and amortization, as reflected in the most recent audited combined financial statements of the Corporation, the other Members of the Obligated Group and subsidiaries prepared in accordance with generally accepted

-6-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

accounting principles, provided that such aggregate shall be calculated in such a manner that no portion of the value of any Property of any Member is included more than once.

*"Business Day"* means a day which is not (a) a Saturday, Sunday or legal holiday on which banking institutions in the State of Iowa or the State of New York are authorized by law to close or (b) a day on which the New York Stock Exchange is closed.

*"Capitalized Interest"* means amounts irrevocably deposited in escrow to pay interest on Funded Indebtedness or Related Bonds and interest earned on amounts irrevocably deposited in escrow to the extent such interest earned is required to be applied to pay interest on Funded Indebtedness or Related Bonds.

*"Capitalized lease"* means any lease of real or personal property which, in accordance with generally accepted accounting principles, is required to be capitalized on the balance sheet of the lessee.

*"Capitalized Rentals"* means, as of the date of determination, the amount at which the aggregate Net Rentals due and to become due under a Capitalized Lease under which a Person is a lessee would be reflected as a liability on a balance sheet of such Person.

*"Code"* means the Internal Revenue Code of 1986, as amended from time to time.

*"Commitment Indebtedness"* means the obligation of any Member to repay amounts disbursed pursuant to a commitment from a financial institution to pay, refinance or purchase when due, when tendered or when required to be purchased or to make a loan for any such purpose (a) other Indebtedness of such Member, or (b) Indebtedness of a Person who is not a Member, which Indebtedness is guaranteed by a Guaranty of such Member or secured by or payable from amounts paid on Indebtedness of such Member, in either case which Indebtedness or Guaranty of such Member was incurred in accordance with the provisions of Section 415 hereof, and the obligation of any Member to pay interest payable on amounts disbursed for such purposes, plus any fees, costs or expenses payable to such financial institution for, under or in connection with such commitment, in the event of disbursement pursuant to such commitment or in connection with enforcement thereof, including without limitation any penalties payable in the event of such enforcement.

*"Completion Funded Indebtedness"* means any Funded Indebtedness for borrowed money: (a) incurred for the purpose of financing the completion of the acquisition, construction, remodeling, renovation or equipping of Facilities with respect to which Funded Indebtedness for borrowed money has been incurred in accordance with the provisions hereof, and (b) with a principal amount not in excess of the amount required to provide a completed and equipped Facility of substantially the same type and scope contemplated at the time such prior Funded Indebtedness was originally incurred, to provide for Capitalized Interest during the period of construction, to provide any reserve fund

-7-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

relating to such Completion Funded Indebtedness and to pay the costs and expenses of issuing such Completion Funded Indebtedness.

*"Construction Index"* means the most recent issue of the "Dodge Construction Index for U.S. and Canadian Cities" with reference to the city in which the subject property is located (or, if such Index is not available for such city, with reference to the city located closest geographically to the city in which the subject property is located), or, if such Index is no longer published or used by the federal government in measuring costs under Medicare or Medicaid programs, such other index which is certified to be comparable and appropriate by the Obligated Group Agent in an Officer's Certificate delivered to the Master Trustee and which other index is acceptable to the Master Trustee.

*"Consultant"* means a professional consulting or banking firm selected by the Obligated Group Agent and acceptable to the Master Trustee, having the skill and experience necessary to render the particular report required and having a favorable and nationally recognized reputation for such skill and experience, which firm shall have no interest, direct or indirect, in any Member and shall not have a partner, member, director, officer or employee who is a partner, member, director, officer or employee of any Member, it being understood that an arm's-length contract between such firm and any Member for the performance of consulting or banking services shall not in and of itself be regarded as creating an interest in or an employee relationship with such entity.

*"Contributions"* means the aggregate amount of all contributions, grants, gifts, bequests and devises actually received in cash or marketable securities by any Person in the applicable fiscal year of such Person and any such contributions, grants, gifts, bequests and devises originally received in a form other than cash or marketable securities by any Person which are converted in such fiscal year to cash or marketable securities.

*"Corporation"* means Mercy Hospital, Iowa City, Iowa, an Iowa not for profit corporation, and its successors and assigns and any surviving, resulting or transferee corporation.

*"Cross-over Date"* means, with respect to Cross-over Refunding Indebtedness, the date on which the principal portion of the Cross-over Refunded Indebtedness is paid or redeemed, or on which it is anticipated that such principal portion will be paid or redeemed, from the proceeds of such Cross-over Refunding Indebtedness.

*"Cross-over Refunded Indebtedness"* means Indebtedness of a Person refunded by Cross-over Refunding Indebtedness.

*"Cross-over Refunding Indebtedness"* means Indebtedness of a Person issued for the purpose of refunding other Indebtedness of such Person if the proceeds of such Cross-over Refunding Indebtedness are irrevocably deposited in escrow to secure the payment on the applicable Cross-over Date of the Cross-over Refunded Indebtedness and earnings on such escrow deposit are required to

-8-

be applied to pay interest or principal on either or both of such Cross-over Refunding Indebtedness or such Cross-over Refunded Indebtedness until the Cross-over Date.

*"Cumulative Net Income Available for Dividends"* means for any Person the amount equal to the sum of the Income Available for Debt Service of such Person for each Fiscal Year subsequent to June 30, 1997, less, in each Fiscal Year, interest on Funded Indebtedness, depreciation and amortization.

*"Current Value"* means (i) with respect to Property, Plant and Equipment: (a) the aggregate fair market value of such Property, Plant and Equipment as reflected in the most recent written report of an appraiser selected by the Obligated Group Agent and acceptable to the Master Trustee and, in the case of real property, who is a member of the American Institute of Real Estate Appraisers (MAI), delivered to the Master Trustee (which report shall be dated not more than three years prior to the date as of which Current Value is to be calculated) increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the date as of which Current Value is to be calculated; plus (b) the Book Value of any Property, Plant and Equipment acquired since the last such report increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such acquisition to the date as of which Current Value is to be calculated; minus (c) the greater of the Book Value or the fair market value (as reflected in such most recent appraiser's report) of any Property, Plant and Equipment disposed of since the last such report increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the date as of which Current Value is to be calculated, and (ii) with respect to any other Property, the fair market value of such Property, which fair market value shall be evidenced in a manner satisfactory to the Master Trustee.

*"Debt Service Requirements"* means, with respect to the period of time for which calculated, the aggregate of the payments required to be made during such period in respect of principal (whether at maturity, as a result of mandatory sinking fund redemption, mandatory prepayment or otherwise) and interest on outstanding Funded Indebtedness of each Person or a group of Persons with respect to which calculated (it being understood that optional redemptions shall not be deemed to be "required" as such term is utilized in the foregoing part of this sentence); provided that: (a) the amount of such payments for a future period shall be calculated in accordance with the assumptions contained in Sections 415 and 416 hereof, (b) interest shall be excluded from the determination of the Debt Service Requirements to the extent that Capitalized Interest is available to pay such interest; (c) principal of Indebtedness shall be excluded from the determination of Debt Service Requirements to the extent that amounts are on deposit in an irrevocable escrow and invested in Escrow Obligations and such amounts (including, where appropriate, the earnings or other increment to accrue thereon) are required to be applied to pay such principal and such amounts so required to be applied are sufficient to pay such principal; and (d) with respect to any Funded Indebtedness for which the number of actual payments of principal in any Fiscal Year is greater than those in the immediately preceding and/or succeeding Fiscal Years solely by reason of the fact that such principal

-9-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

payments are scheduled to occur other than on a specified date or dates or by reason of this clause (d), the last principal payment in such Fiscal Year for which the number of payments is higher shall be deemed to be required to be made in the next preceding or succeeding Fiscal Year, as appropriate and as designated by the Obligated Group Agent.

*"Defaulted Interest"* means interest on any Related Bond of a particular series which is payable but not duly paid on the date due.

*"Enabling Statute"* means the Act and any other legislation pursuant to which any series of Related Bonds is issued.

*"Encumbered"* means, with respect to Property, subject to a Lien described in subsections (b), (d) (other than a Lien securing Non-Recourse Indebtedness), (f) (including only leases whereunder any Member is lessor entered into in accordance with the disposition of Property provisions of the Master Indenture which were not in existence on July 1, 1998), (n)(ii) and (v)(ii) of the definition of Permitted Encumbrances and all other Liens not described in the definition of Permitted Encumbrances; provided that any amounts on deposit in a construction fund created in connection with the issuance of an Obligation which are held as security for the payment of such Obligation or any Indebtedness incurred to purchase such Obligation or the proceeds of which are advanced or otherwise made available in connection with the issuance of such Obligation, shall not be deemed to be Encumbered if the amounts are to be applied to construct or otherwise acquire Property which is not subject to a Lien.

*"Escrow Obligations"* means, (i) with respect to any Obligation which secures a series of Related Bonds, the obligations permitted to be used to refund or advance refund such series of Related Bonds under the Related Bond Indenture, or (ii) in all other cases (a) United States Government Obligations, (b) obligations of any agency or instrumentality of the United States Government, (c) certificates of deposit issued by a bank or trust company which are (1) fully insured by the Federal Deposit Insurance Corporation, Federal Savings and Loan Insurance Corporation or similar corporation chartered by the United States or (2) secured by a pledge of any United States Government Obligations having an aggregate market value, exclusive of accrued interest, equal at least to the principal amount of the certificates so secured, which security is held in a custody account by a custodian satisfactory to the Master Trustee, or (d) (1) evidences of a direct ownership in future interest or principal payments on obligations of the type described in (a) above, which obligations are held in a custody account by a custodian satisfactory to the Master Trustee pursuant to the terms of a custody agreement and (2) obligations issued by any state of the United States or any political subdivision, public instrumentality or public authority of any state, which obligations are not callable before the date the principal thereof will be required and which obligations are fully secured by and payable solely from obligations of the type described in (a) above, which securities are held pursuant to an agreement in form and substance acceptable to the Master Trustee.

-10-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Excluded Property"* means any assets of "employee pension benefit plans" as defined in the Employee Retirement Income Security Act of 1974, as amended, the real estate described in *Exhibit C* hereto, as amended as provided herein from time to time, and all improvements, fixtures, tangible personal property and equipment located thereon and used in connection therewith.

*"Expenses"* means, for any period, the aggregate of all expenses calculated under generally accepted accounting principles, including without limitation any taxes and provisions for uncollectible accounts, incurred by the Person or group of Persons involved during such period, minus (i) interest on Funded Indebtedness, (ii) depreciation and amortization, (iii) extraordinary expenses (including without limitation losses on the sale of assets other than in the ordinary course of business and losses on the extinguishment of debt or termination of pension plans), (iv) any expenses resulting from a forgiveness of or the establishment of reserves against Indebtedness of an Affiliate which does not constitute an extraordinary expense, (v) losses resulting from any reappraisal, revaluation or write-down of assets and (vi) any unrealized losses resulting from changes in the valuation of investment securities; and, if such calculation is being made with respect to the Obligated Group, excluding any such expenses attributable to transactions between any Member and any other Member.

*"Facilities"* means all land, leasehold interests and buildings and all fixtures and equipment (as defined in the Uniform Commercial Code or equivalent statute in effect in the state where such fixtures or equipment are located) of a Person. Facilities shall not include the land, leasehold interests, buildings, fixtures or equipment constituting Excluded Property.

*"Fiscal Year"* means any twelve-month period beginning on July 1 of any calendar year and ending on June 30 of the next calendar year or such other consecutive twelve-month period selected by the Obligated Group Agent as the fiscal year for the Members.

*"Fitch"* means Fitch IBCA, Inc., a corporation organized and existing under the laws of the State of Delaware, its successors and their assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Fitch" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Obligation Group Agent by notice to the Master Trustee.

*"Funded Indebtedness"* means, with respect to any Person, (i) all Indebtedness of such Person for money borrowed or credit extended which is not Short-Term; (ii) all Indebtedness of such Person incurred or assumed in connection with the acquisition or construction of Property which is not Short-Term; (iii) all Short-Term Indebtedness incurred by the Person which is of the type described in Section 415(E) hereof, (iv) the Person's Guaranties of Indebtedness which are not Short-Term; and (v) Capitalized Rentals under Capitalized Leases entered into by the Person; *provided, however,* that Indebtedness that could be described by more than one of the foregoing categories shall not in any case be considered more than once for the purpose of any calculation made pursuant to this Master Indenture.

-11-

"*Funded Indebtedness Ratio*" means the ratio consisting of (i) a numerator equal to the amount determined by dividing the Obligated Group's total Funded Indebtedness by the sum of (a) such Funded Indebtedness and (b) the Obligated Group's total unrestricted fund balances (as reflected in or derived from the most recent audited combined financial statements of the Obligated Group prepared in accordance with generally accepted accounting principles) and (ii) a denominator of one.

"*Governing Body*" means, with respect to a Member, the board of directors, board of trustees or similar group in which the right to exercise the powers of corporate directors or trustees is vested.

"*Government Obligations*" means securities which consist of (a) United States Government Obligations or (b) evidences of a direct ownership in future interest or principal payments on obligations of the type described in subparagraph (a) above, which obligations are held in a custody account by a custodian satisfactory to the Master Trustee pursuant to the terms of a custody agreement.

"*Guaranty*" means all obligations of a Person guaranteeing, or in effect guaranteeing, any Indebtedness, dividend or other obligation of any Primary Obligor in any manner, whether directly or indirectly, including but not limited to obligations incurred through an agreement, contingent or otherwise, by such Person: (1) to purchase such Indebtedness or obligation or any Property constituting security therefor; (2) to advance or supply funds: (i) for the purchase or payment of such Indebtedness or obligation, or (ii) to maintain working capital or other balance sheet condition; (3) to purchase securities or other Property or services primarily for the purpose of assuring the owner of such Indebtedness or obligation of the ability of the Primary Obligor to make payment of the Indebtedness or obligation; or (4) otherwise to assure the owner of such Indebtedness or obligation against loss in respect thereof.

"*Historical Debt Service Coverage Ratio*" means, for any period of time, the ratio consisting of a numerator equal to the amount determined by dividing Income Available for Debt Service for that period by the Debt Service Requirements for such period and a denominator of one; *provided,* that when such calculation is being made with respect to the Obligated Group, Income Available for Debt Service and Debt Service Requirements shall be determined only with respect to those Persons who are Members of the Obligated Group at the time of such calculation; provided, further, that in calculating the Debt Service Requirements for such period, the principal amount of any Indebtedness included in such calculation which is paid during such period shall be excluded to the extent such principal amount is paid from the proceeds of other Indebtedness incurred in compliance with the provisions of this Master Indenture or from amounts deposited to provide for such payment pursuant to an amortization schedule established and maintained in accordance with the provisions of Section 415(G)(ii)(a), which amounts were deposited in Fiscal Years prior to the Fiscal Year in which such principal was paid.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Historical Maximum Annual Debt Service Coverage Ratio"* means, for any period of time, the ratio consisting of a numerator equal to the amount determined by dividing Income Available for Debt Service for that period by the Historical Maximum Annual Debt Service Requirements on the Indebtedness of the Person or Persons involved during any completed period and a denominator of one; *provided however,* that in calculating the Debt Service Requirements for any completed period, the principal amount of any Indebtedness included in such calculation which is paid during such period shall be excluded to the extent such principal amount is paid from the proceeds of other Indebtedness incurred in compliance with the provisions of this Master Indenture or from amounts deposited to provide for such payment pursuant to an amortization schedule established and maintained in accordance with Section 415(G)(ii)(a), which amounts were deposited in Fiscal Years prior to the Fiscal Year in which such principal became due.

*"Historical Maximum Annual Debt Service Requirements"* means the largest total Debt Service Requirements for the Fiscal Year with respect to which a Historical Maximum Annual Debt Service Coverage Ratio is being calculated or any subsequent Fiscal Year on the Indebtedness of the Person or Persons involved which was simultaneously outstanding during the Fiscal Year with respect to which a Historical Maximum Annual Debt Service Coverage Ratio is being calculated.

*"Historical Pro Forma Debt Service Coverage Ratio"* means, for any period of time, the ratio consisting of a numerator equal to the amount determined by dividing Income Available for Debt Service for that period by the Maximum Annual Debt Service Requirement for the Funded Indebtedness then outstanding (other than any Funded Indebtedness being refunded with the Funded Indebtedness then proposed to be issued) and the Funded Indebtedness then proposed to be issued and a denominator of one; provided that when such calculation is being made with respect to the Obligated Group, Income Available for Debt Service and Maximum Annual Debt Service Requirement shall be determined only with respect to those Persons who are Members of the Obligated Group at the time of such calculation.

*"Income Available for Debt Service"* means, for any period, the excess of Revenues over Expenses of the Person or group of Persons involved.

*"Income Available for Debt Service on Guaranteed Debt"* means for any fiscal year of a Primary Obligor all Revenues of the Primary Obligor minus its Expenses.

*"Indebtedness"* means, for any Person, (a) all Guaranties by such Person, (b) all liabilities (exclusive of reserves such as those established for deferred taxes or litigation) recorded or required to be recorded as such on the audited financial statements of such Person in accordance with generally accepted accounting principles, and (c) all obligations for the payment of money incurred or assumed by such Person (i) due and payable in all events or (ii) if incurred or assumed primarily to assure the repayment of money borrowed or credit extended, due and payable upon the occurrence of a condition precedent or upon the performance of work, possession of Property as lessee, rendering of services by others or otherwise, and shall include, without limitation, Non-Recourse

-13-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Indebtedness; provided that Indebtedness shall not include Indebtedness of one Member to another Member, any Guaranty by any Member of Indebtedness of any other Member, the joint and several liability of any Member on Indebtedness issued by another Member, Interest Rate Agreements or any obligation to repay moneys deposited by patients or others with a Member as security for or as prepayment of the cost of patient care or any rights of residents of life care, elderly housing or similar facilities to endowment or similar funds deposited by or on behalf of such residents.

*"Independent Architect"* means an architect, engineer or firm of architects or engineers selected by a Member, acceptable to the Master Trustee and licensed by, or permitted to practice in, the state where the construction involved is located, which architect, engineer or firm of architects or engineers shall have no interest, direct or indirect, in any Member and, in the case of an individual, shall not be a member, director, officer or employee of any Member and, in the case of a firm, shall not have a partner, member, director, officer or employee who is a member, director, officer or employee of any Member; it being understood that an arm's-length contract with any Member for the performance of architectural or engineering services shall not in and of itself be regarded as creating an interest in or an employee relationship with such entity and that the term Independent Architect may include an architect or engineer or a firm of architects or engineers who otherwise meet the requirements of this definition and who also are under contract to construct the facility which they have designed.

*"Independent Counsel"* means an attorney duly admitted to practice law before the highest court of any state and, without limitation, may include independent legal counsel for any Related Issuer, any Member, the Master Trustee or any Related Bond Trustee.

*"Insurance Consultant"* means a person or firm who in the case of an individual is not an employee or officer of any Member or any Related Issuer or which, in the case of a firm, shall not have a partner, member, director, officer or employee who is a member, director, officer or employee of any Member or any Related Issuer, appointed by the Obligated Group Agent and satisfactory to the Master Trustee, qualified to survey risks and to recommend insurance coverage for hospital or health care facilities and services of the type involved, and having a favorable reputation for skill and experience in such surveys and such recommendations, and which may include a broker or agent with whom any Member transacts business.

*"Interest Payment Date"* means Interest Payment Date as defined in the Bond Indenture.

*"Interest Rate Agreement"* means an interest rate exchange, hedge or similar agreement entered into in order to hedge the interest payable on all or a portion of any Indebtedness, which agreement may include, without limitation, an interest rate swap, a forward or futures contract or an option (e.g. a call, put, cap, floor or collar).

*"Issuer"* means the City of Hills, Iowa, its successors and assigns.

-14-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Land"* means the real property of the Obligated Group upon which the primary operations of the Members are conducted as described in *Exhibit A* hereto, as amended as provided herein from time to time, together with all buildings, improvements and fixtures located thereon, but excluding therefrom the Excluded Property.

*"Lien"* means any mortgage, pledge or lease of, security interest in or lien, charge, restriction or encumbrance on any Property of the Person involved in favor of, or which secures any obligation to, any Person other than any Member, and any Capitalized Lease under which any Member is lessee and the lessor is not another Member.

*"Loan Agreement"* means the Loan Agreement dated as of June 1, 1998 between the Corporation and the Issuer, as it may from time to time be amended or supplemented.

*"Long-Term Indebtedness"* means Indebtedness (which also may constitute Balloon Indebtedness or Put Indebtedness) having an original stated maturity or term greater than one year or renewable at the option of the debtor for a period greater than one year from the date of original issuance.

*"Master Indenture"* means the Master Indenture dated as of June 1, 1998 among the Corporation and the Master Trustee, as it may be amended or supplemented in accordance with the terms hereof.

*"Master Trustee"* means Norwest Bank Iowa, National Association, or any successor trustee under the Master Indenture.

*"Maximum Annual Debt Service Requirement"* means the largest total Debt Service Requirements for all Indebtedness outstanding for the current or any succeeding Fiscal Year; provided that in applying the provisions of Section 409 hereof the current year shall be deemed to include the Fiscal Year with respect to which historical debt service coverage is being calculated and provided further that in calculating Maximum Annual Debt Service Requirement for the purposes of applying such provisions, the principal amount of any Indebtedness included in such calculation which is paid during the year with respect to which historical debt service coverage is being calculated shall be excluded to the extent such principal amount is paid from the proceeds of other Indebtedness incurred in compliance with the provisions of the Master Indenture or from amounts deposited to provide for such payment pursuant to an amortization schedule established and maintained in accordance with the provisions of Section 415(G)(ii), which amounts were deposited in Fiscal Years prior to the Fiscal Year in which such principal was paid; provided further that principal and interest payments on Indebtedness due on the first day or first Business Day of a month shall be deemed payable during the preceding month if they are required to be fully deposited with a trustee for such Indebtedness during such preceding month.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Member"* or *"Member of the Obligated Group"* means any Person who is listed on *Exhibit E* hereto after designation as a Member of the Obligated Group pursuant to the terms of this Master Indenture.

*"Moody's"* means Moody's Investors Service, a corporation organized and existing under the laws of the State of Delaware, its successors and assigns and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Obligated Group Agent by notice to the Master Trustee.

*"Net Proceeds"* means, when used with respect to any insurance or condemnation award or sale consummated under threat of condemnation, the gross proceeds from the insurance or condemnation award or sale with respect to which that term is used less all expenses (including attorney's fees, adjuster's fees and any expenses of the Master Trustee) incurred in the collection of such gross proceeds.

*"Net Rentals"* means all fixed rents (including as such all payments which the lessee is obligated to make to the lessor on termination of the lease or surrender of the Property other than upon termination of the lease for a default thereunder) payable under a lease or sublease of real or personal Property excluding any amounts required to be paid by the lessee (whether or not designated as rents or additional rents) on account of maintenance, repairs, insurance, taxes and similar charges. Net Rentals for any future period under any so-called "percentage lease" shall be computed on the basis of the amount reasonably estimated to be payable thereunder for such period, but in any event not less than the amount paid or payable thereunder during the immediately preceding period of the same duration as such future period; provided that the amount estimated to be payable under any such percentage lease shall in all cases recognize any change in the applicable percentage called for by the terms of such lease.

*"Non-Recourse Indebtedness"* means any Indebtedness the liability for which is effectively limited to Property, Plant and Equipment (other than those Portions of the Land upon which the Facilities utilized in the primary operations of the Member owning such Land were located prior to the construction and acquisition of the Property, Plant and Equipment financed with such Indebtedness) and the income therefrom, not less than 80% of the cost of which Property, Plant and Equipment shall have been financed solely with the proceeds of such Indebtedness with no recourse, directly or indirectly, to any other Property of any Member.

*"Obligated Group"* means the Corporation and any other Person which has fulfilled the requirements for entry into the Obligated Group set forth in Section 404 hereof and which has not ceased such status pursuant to Section 405 hereof.

*"Obligated Group Agent"* means the Corporation or such other Member as may be designated from time to time pursuant to written notice to the Master Trustee and each Related Issuer

-16-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

executed by the President or Chairman of the Governing Body of the Corporation or, if the Corporation is no longer a Member of the Obligated Group, of each Member of the Obligated Group.

*"Obligation holder", "holder"* or *"owner of the Obligation"* means the registered owner of any fully registered or book entry Obligation unless alternative provision is made in the Supplemental Master Indenture pursuant to which such Obligation is issued for establishing ownership of such Obligation in which case such alternative provision shall control.

*"Obligations"* means the Series 1998 Obligations and any Additional Obligations and any Obligation or Obligations issued in exchange therefor.

*"Officer's Certificate"* means a certificate signed, in the case of a certificate delivered by a corporation, by the president or any other officer authorized to sign by resolution of the Governing Body of such corporation or, in the case of a certificate delivered by any other Person, the chief executive or chief financial officer of such other Person, in either case whose authority to execute such Certificate shall be evidenced to the satisfaction of the Master Trustee.

*"Official Statement"* means the Official Statement dated July 1, 1998, as supplemented, prepared in connection with the issuance and sale of the Series 1998 Bonds.

*"Outstanding"* means, in the case of Indebtedness of a Person other than Related Bonds or Obligations, all such Indebtedness of such Person which has been issued except any such portion thereof cancelled after purchase on the open market or surrendered for cancellation or because of payment at or redemption prior to maturity, any such Indebtedness in lieu of which other Indebtedness has been duly issued and any such Indebtedness which is no longer deemed outstanding under its terms and with respect to which such Person is no longer liable under the terms of such Indebtedness.

*"Outstanding Obligations"* or *"Obligations outstanding"* means all Obligations which have been duly authenticated and delivered by the Master Trustee under the Master Indenture, except:

(a)     Obligations cancelled after purchase in the open market or because of payment at or prepayment or redemption prior to maturity;

(b)     (i) Obligations for the payment or redemption of which cash or Escrow Obligations shall have been theretofore deposited with the Master Trustee (whether upon or prior to the maturity or redemption date of any such Obligations); provided that if such Obligations are to be prepaid or redeemed prior to the maturity thereof, notice of such prepayment or redemption shall have been given or irrevocable arrangements satisfactory to the Master Trustee shall have been made therefor, or waiver of such notice satisfactory in form to the Master Trustee shall have been filed with the Master Trustee and (ii) Obligations securing Related Bonds for the payment or redemption of which cash or Escrow Obligations

-17-

shall have been theretofore deposited with the Related Bond Trustee (whether upon or prior to the maturity or redemption date of any such Obligations); provided that if such Related Bonds are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given or arrangements satisfactory to the Related Bond Trustee shall have been made therefor, or waiver of notice satisfactory in form to the Related Bond Trustee shall have been filed with the Related Bond Trustee;

(c)     Obligations in lieu of which others have been authenticated hereunder; and

(d)     For purposes of all consents, approvals, waivers and notices required to be obtained or given under this Master Indenture, Obligations held or owned by a Member.

Notwithstanding the foregoing, any Obligation securing Related Bonds shall be deemed outstanding if such Related Bonds are Outstanding.

*"Outstanding Related Bonds"* or *"Related Bonus outstanding"* means all Related Bonds which have been duly authenticated and delivered by the Related Bond Trustee under the Related Bond Indenture and are deemed outstanding under the terms of such Related Bond Indenture or, if such Related Bond Indenture does not specify when Related Bonds are deemed outstanding thereunder, all such Related Bonds which have been so authenticated and delivered, except:

(a)     Related Bonds cancelled after purchase in the open market or because of payment at or prepayment or redemption prior to maturity;

(b)     Related Bonds for the payment or redemption of which cash or Escrow Obligations of the type described in clause (i) of the definition thereof shall have been theretofore deposited with the Related Bond Trustee (whether upon or prior to the maturity or redemption date of any such Bonds) in accordance with the Related Bond Indenture; provided that if such Bonds are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given or arrangements satisfactory to the Related Bond Trustee shall have been made therefor, or waiver of such notice satisfactory in form to the Related Bond Trustee shall have been filed with the Related Bond Trustee;

(c)     Related Bonds in lieu of which others have been authenticated under the Related Bond Indenture; and

(d)     For the purposes of all covenants, approvals, waivers and notices required to be obtained or given under the Related Bond Indenture, Related Bonds held or owned by a Member.

*"Paying Agent"* means the bank or banks, if any, designated pursuant to a Related Bond Indenture to receive and disburse the principal of and interest on any Related Bonds or designated

-18-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

pursuant to the Master Indenture to receive and disburse the principal of and interest on any Obligations.

"*Permitted Encumbrances*" means the Master Indenture, any Related Loan Document, any Related Bond Indenture and, as of any particular time:

(a)   Liens arising by reason of good faith deposits with a Member in connection with tenders, leases of real estate, bids or contracts (other than contracts for the payment of money), deposits by any Member to secure public or statutory obligations, or to secure, or in lieu of, surety, stay or appeal bonds, and deposits as security for the payment of taxes or assessments or other similar charges; any Lien arising by reason of deposits with, or the giving of any form of security to, any governmental agency or any body created or approved by law or governmental regulation for any purpose at any time as required by law or governmental regulation as a condition to the transaction of any business or the exercise of any privilege or license, or to enable any Member to maintain self-insurance or to participate in any funds established to cover any insurance risks or in connection with workmen's compensation, unemployment insurance, pensions or profit sharing plans or other social security plans or programs, or to share in the privileges or benefits required for corporations participating in such arrangements;

(b)   any Lien on Property (other than the Facilities owned prior to the construction or acquisition of such Property) if, at the time the Indebtedness secured thereby is issued or incurred by any Member, or in the case of Property acquired subject to an existing Lien, at the time of such acquisition, the aggregate amount remaining unpaid on the Indebtedness secured thereby (whether or not assumed by the Member) shall not exceed the fair market value or (if such Property has been purchased) the lesser of the acquisition price or the fair market value of the Property subject to such Lien as determined in good faith by the Governing Body of the Member;

(c)   any Lien on the Property of any Member granted in favor of or securing Indebtedness to any other Member;

(d)   any Lien on the Property of any Member permitted under the provisions of Section 418 hereof,

(e)   any Lien on Property if such Lien equally and ratably secures all of the Obligations and only the Obligations;

(f)   leases which relate to Property of the Obligated Group which is of a type that is customarily the subject of such leases, such as office space for physicians and educational institutions, food service facilities, gift shops and radiology or other hospital-based specialty services, pharmacy and similar departments; leases entered into in accordance with the

-19-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

disposition of Property provisions of this Master Indenture; leases, licenses or similar rights to use Property to which the Corporation is a party existing as of July 1, 1998 and any renewals and extensions thereof, and any leases, licenses or similar rights to use Property whereunder a Member is lessee, licensee or the equivalent thereof upon fair and reasonable terms no less favorable to the lessee or licensee than would obtain in a comparable arm's-length transaction;

(g)    Liens for taxes and special assessments which are not then delinquent, or if then delinquent are being contested in accordance with Section 406 hereof,

(h)    utility, access and other easements and rights-of-way, restrictions, encumbrances and exceptions which do not materially interfere with or materially impair the operation of the Property affected thereby (or, if such Property is not being then operated, the operation for which it was designed or last modified);

(i)    any mechanic's, laborer's, materialman's, supplier's or vendor's Lien or right in respect thereof if payment is not yet due under the contract in question or if such Lien is being contested in accordance with the provisions of this Master Indenture;

(j)    such Liens, defects, irregularities of title and encroachments on adjoining property as normally exist with respect to property similar in character to the Property involved and which do not materially adversely affect the value of, or materially impair, the Property affected thereby for the purpose for which it was acquired or is held by the owner thereof, including without limitation statutory liens granted to banks or other financial institutions, which liens have not been specifically granted to secure Indebtedness and which do not apply to Property which has been deposited as part of a plan to secure Indebtedness;

(k)    zoning laws and similar restrictions which are not violated by the Property affected thereby;

(l)    statutory rights under Section 291, Title 42 of the United States Code, as a result of what are commonly known as Hill-Burton grants, and similar rights under other federal statutes or statutes of the state in which the Property involved is located;

(m)    all right, title and interest of the state where the Property involved is located, municipalities and the public in and to tunnels, bridges and passageways over, under or upon a public way;

(n)    Liens on or in Property given, granted, bequeathed or devised by the owner thereof existing at the time of such gift, grant, bequest or devise, provided that (i) such Liens consist solely of restrictions on the use thereof or the income therefrom, or (ii) such Liens secure Indebtedness which is not assumed by any Member and such Liens attach solely to

-20-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

the Property (including the income therefrom) which is the subject of such gift, grant, bequest or devise;

(o)     Liens of or resulting from any judgment or award, the time for the appeal or petition for rehearing of which shall not have expired, or in respect of which any Member shall at any time in good faith be prosecuting an appeal or proceeding for a review and in respect of which a stay of execution pending such appeal or proceeding for review shall be in existence;

(p)     Liens on moneys deposited by patients or others with a Member as security for or as prepayment of the cost of patient care or any rights of residents of life care, elderly housing or similar facilities to endowment or similar funds deposited by or on behalf of such residents;

(q)     Liens on Excluded Property;

(r)     Liens on Property due to rights of third party payors for recoupment of excess reimbursement paid;

(s)     any security interest in the Rebate Fund, any construction, project, depreciation reserve, debt service or interest reserve, debt service fund or any similar fund established pursuant to the terms of any Supplemental Master Indenture, Related Bond Indenture or Related Loan Document in favor of the Master Trustee, a Related Bond Trustee, a Related Issuer or the holder of the Indebtedness issued pursuant to such Supplemental Master Indenture, Related Bond Indenture or Related Loan Document or the holder of any related Commitment Indebtedness;

(t)     any Lien on any Related Bond or any evidence of Indebtedness of any Member acquired by or on behalf of any Member which secures Commitment Indebtedness and only Commitment Indebtedness;

(u)     Liens on accounts receivable arising as a result of the sale of such accounts receivable with or without recourse on commercially reasonable terms, provided that the principal amount of Indebtedness secured by any such Lien does not exceed 125% of the face amount of such accounts receivable;

(v)     such Liens, covenants, conditions and restrictions, if any, which do not secure Indebtedness and which are other than those of the type referred to above, as are set forth in *Exhibit A* to this Master Indenture, and which (i) in the case of Property owned by any Member of the Obligated Group on the date of execution of the Master Indenture, do not and will not, so far as can reasonably be foreseen, materially adversely affect the value of the Property currently affected thereby or materially impair the same, and (ii) in the case of any

-21-

other Property, do not materially impair or materially interfere with the operation or usefulness thereof for the purpose for which such Property was acquired or is held by a Member; and

(w)    the Liens and encumbrances existing on July 1, 1998 and listed on Exhibit A hereto.

*"Permitted Investments"* shall mean and include any of the following:

1.    (a)  Direct obligations (other than an obligation subject to variation in principal repayment) of the United States of America ("United States Treasury Obligations"), (b) obligations fully and unconditionally guaranteed as to timely payment of principal and interest by the United States of America, (c) obligations fully and unconditionally guaranteed as to timely payment of principal and interest by any agency or instrumentality of the United States of America when such obligations are backed by the full faith and credit of the United States of America, or (d) evidences of ownership of proportionate interests in future interest and principal payments on obligations described above held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying government obligations are not available to any person claiming through the custodian or to whom the custodian may be obligated.

2.    Federal Housing Administration debentures.

3.    The listed obligations of government-sponsored agencies which are not backed by the full faith and credit of the United States of America:

-Federal Home Loan Mortgage Corporation (FHLMC)
        Participation certificates (excluded are stripped mortgage securities which are purchased at prices exceeding their principal amounts) Senior Debt obligations
-Farm Credit Banks (formerly: Federal Land Banks, Federal
        Intermediate Credit Banks and Banks for Cooperatives) Consolidated system-wide bonds and notes
-Federal Home Loan Banks (FHL Banks)
        Consolidated debt obligations
-Federal National Mortgage Association (FNMA)
        Senior debt obligations Mortgage-backed securities (excluded are stripped mortgage securities which are purchased at prices exceeding their principal amounts)
-Student Loan Marketing Association (SLMA)
        Senior debt obligations (excluded are securities that do not have a fixed par value and/or whose terms do not promise a fixed dollar amount at maturity or call date)
-Financing Corporation (FICO)
        Debt obligations
-Resolution Funding Corporation (REFCORP)
        Debt obligations

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

4.    Unsecured certificates of deposit, time deposits, and bankers' acceptances (having maturities of not more than 30 days) of any bank the short-term obligations of which are rated 'A-1' or better by S&P.

5.    Deposits the aggregate amount of which are fully Insured by the Federal Deposit Insurance Corporation (FDIC), in banks which have capital and surplus of at least $5 million.

6.    Commercial paper (having original maturities of not more than 270 days) rated 'A-1+' by S&P and 'Prime-1' by Moody's.

7.    Money market funds rated 'AAm' or 'AAm-G' by S&P, or better.

8.    "State Obligations", which means:

A.    Direct general obligations of any state of the United States of America or any subdivision or agency thereof to which is pledged the full faith and credit of a state the unsecured general obligation debt of which is rated 'A3' by Moody's and 'A' by S&P, or better, or any obligation fully and unconditionally guaranteed by any state, subdivision or agency whose unsecured general obligation debt is so rated.

B.    Direct general short-term obligations of any state agency or subdivision or agency thereof described in (A) above and rated 'A-1+' by S&P and 'Prime-1' by Moody's.

C.    Special Revenue Bonds (as defined in the United States Bankruptcy Code) of any state, state agency or subdivision described in (A) above and rated 'AA' or better by S&P and 'Aa' or better by Moody's.

9.    Pre-refunded municipal obligations rated "AAA" by S&P and "Aaa" by Moody's meeting the following requirements:

A.    the municipal obligations are (1) not subject to redemption prior to maturity or (2) the trustee for the municipal obligations has been given irrevocable instructions concerning their call and redemption and the issuer of the municipal obligations has covenanted not to redeem such municipal obligations other than as set forth in such instructions;

B.    the municipal obligations are secured by cash or United States Treasury Obligations which may be applied only to payment of the principal of, interest and premium on such municipal obligations;

C.    the principal of and interest on the United States Treasury Obligations (plus any cash in the escrow) has been verified by the report of independent certified public

-23-

accountants to be sufficient to pay in full all principal of, interest, and premium, if any, due and to become due on the municipal obligations ("Verification");

D.      the cash or United States Treasury Obligations serving as security for the municipal obligations are held by an escrow agent or trustee in trust for owners of the municipal obligations;

E.      no substitution of a United States Treasury Obligation shall be permitted except with another United States Treasury Obligation and upon delivery of a new Verification; and

F.      the cash or United States Treasury Obligations are not available to satisfy any other claims, including those by or against the trustee or escrow agent.

10.      Repurchase agreements:

With (1) any domestic bank, or domestic branch of a foreign bank, the long term debt of which is rated at least "A" by S&P and Moody's; or (2) any broker-dealer with "retail customers" or a related affiliate thereof which broker-dealer has, or the parent company (which guarantees the provider) of which has, long-term debt rated at least "A" by S&P and Moody's, which broker-dealer falls under the Jurisdiction of the Securities Investors Protection Corporation; or (3) any other entity rated "A" or better by S&P and Moody's and acceptable to the Bond Insurer, provided that:

a.      The market value of the collateral is maintained at levels and upon such conditions as would be acceptable to S&P and Moody's to maintain an "A" rating in an "A" rated structured financing (with a market value approach);

b.      The Trustee or a third party acting solely as agent therefor or for the Authority (the "Holder of the Collateral") has possession of the collateral or the collateral has been transferred to the Holder of the Collateral in accordance with applicable state and federal laws (other than by means of entries on the transferor's books);

c.      The repurchase agreement shall state and an opinion of counsel shall be rendered at the time such collateral is delivered that the Holder of the Collateral has a perfected first priority security interest in the collateral, any substituted collateral and all proceeds thereof (in the case of bearer securities, this means the Holder of the Collateral is in possession);

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

    d.    All other requirements of S&P in respect of repurchase agreements shall be met.

    e.    The repurchase agreement shall provide that if during its term the provider's rating by either Moody's or S&P is withdrawn or suspended or falls below "A-" by S&P or "A3" by Moody's, as appropriate, the provider must, at the direction of the Authority or the Trustee (who shall give such direction if so directed by the Bond Insurer), within 10 days of receipt of such direction, repurchase all collateral and terminate the agreement, with no penalty or premium to the Authority or Trustee.

Notwithstanding the above, if a repurchase agreement has a term of 270 days or less (with no evergreen provision), collateral levels need not be as specified in (a) above, so long as such collateral levels are 103% or better and the provider is rated at least "A/A2" by S&P and Moody's, respectively.

11.    Investment agreements with a domestic or foreign bank or corporation (other than a life or property casualty insurance company) the long-term debt of which, or, in the case of a guaranteed corporation the long-term debt, or, in the case of a monoline financial guaranty insurance company, claims paying ability, of the guarantor is rated at least "AA" by S&P and "Aa" by Moody's; provided that, by the terms of the investment agreement:

    (1)    interest payments are to be made to the Bond Trustee at times and in amounts as necessary to pay debt service (or, if the investment agreement is for the construction fund, construction draws) on the Bonds;

    (2)    the invested funds are available for withdrawal without penalty or premium, at any time upon not more than seven days' prior notice; the Authority and the Bond Trustee hereby agree to give or cause to be given notice in accordance with the terms of the investment agreement so as to receive funds thereunder with no penalty or premium paid;

    (3)    the investment agreement shall state that it is the unconditional and general obligation of, and is not subordinated to any other obligation of, the provider thereof; or, in the case of a bank, that the obligation of the bank to make payments under the agreement ranks pari passu with the obligations of the bank to its other depositors and its other unsecured and unsubordinated creditors;

-25-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

(4)     the Bond Trustee receives the opinion of domestic counsel (which opinion shall be addressed to the Bond Trustee and the Bond Insurer) that such investment agreement is legal, valid, binding and enforceable upon the provider in accordance with its terms and of foreign counsel (if applicable) in form and substance acceptable, and addressed to, the Bond Insurer;

(5)     the investment agreement shall provide that if during its term

   (a)     the provider's rating by either S&P or Moody's falls below "AA-" or "Aa3", respectively, the provider shall, at its option, within 10 days of receipt of publication of such downgrade, either (i) collateralize the investment agreement by delivering or transferring in accordance with applicable state and federal laws (other than by means of entries on the provider's books) to the Bond Trustee or a third party acting solely as agent therefor (the "Holder of the Collateral") collateral free and clear of any third-party liens or claims the market value of which collateral is maintained at levels and upon such conditions as would be acceptable to S&P and Moody's to maintain an "A" rating in an "A" rated structured financing (with a market value approach); or (ii) repay the principal of and accrued but unpaid interest on the investment, and

   (b)     the provider's rating by either S&P or Moody's is withdrawn or suspended or falls below "A-" or "A3", respectively, the provider must, at the direction of the Bond Trustee (who shall give such direction if so directed by the Bond Insurer), within 10 days of receipt of such direction, repay the principal of and accrued but unpaid interest on the investment, in either case with no penalty or premium to the Bond Trustee; and

(6)     The investment agreement shall state and an opinion of counsel shall be rendered, in the event collateral is required to be pledged by the provider under the terms of the investment agreement, at the time such collateral is delivered, that the Holder of the Collateral has a perfected first priority security interest in the collateral, any substituted collateral and all proceeds thereof (in the case of bearer securities, this means the Holder of the Collateral is in possession);

(7)     the investment agreement must provide that if during its term

   (a)     the provider shall default in its payment obligations, the provider's obligations under the investment agreement shall, at the direction of

-26-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

the Bond Trustee (who shall give such direction if so directed by the Bond Insurer), be accelerated and amounts invested and accrued but unpaid interest thereon shall be repaid to the Bond Trustee, and

(b)     the provider shall become insolvent, not pay its debts as they become due, be declared or petition to be declared bankrupt, etc. ("event of insolvency"), the provider's obligations shall automatically be accelerated and amounts invested and accrued but unpaid interest thereon shall be repaid to the Bond Trustee.

*"Person"* means any natural person, firm, joint venture, association, partnership, business trust, corporation, limited liability company, public body, agency or political subdivision thereof or any other similar entity.

*"Primary Obligor"* means the Person who is primarily obligated on an obligation which is guaranteed by another Person.

*"Projected Debt Service Coverage Ratio"* means, for any future period, the ratio consisting of a numerator equal to the amount determined by dividing the projected Income Available for Debt Service for that period by the Maximum Annual Debt Service Requirement for the Funded Indebtedness expected to be outstanding during such period and a denominator of one.

*"Projected Rate"* means the projected yield at par of an obligation as set forth in the report of a Consultant (which Consultant and report, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee and each Related Issuer). Such report shall state that in determining the Projected Rate such Consultant reviewed the yield evaluations at par of not less than three obligations selected by such Consultant, the interest on which is entitled to the exemption from federal income tax afforded by Section 103(a) of the Code or any successor thereto (or, if it is not expected that it will be reasonably possible to issue such tax-exempt obligations, or if the interest on the Indebtedness for which the Projected Rate is being calculated is not entitled to such exemption, then obligations the interest on which is subject to federal income taxation) which obligations such Consultant states in its report are reasonable comparators for utilizing in developing such Projected Rate and which obligations: (i) were outstanding on a date selected by the Consultant which date so selected occurred during the 90-day period preceding the date of the calculation utilizing the Projected Rate in question, (ii) to the extent practicable, are obligations of Persons engaged in operations similar to those of the Obligated Group and having a credit rating similar to that of the Obligated Group, (iii) are not entitled to the benefits of any credit enhancement, including without limitation any letter or line of credit or insurance policy, and (iv) to the extent practicable, have a remaining term and amortization schedule substantially the same as the obligation with respect to which such Projected Rate is being developed.

-27-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Property"* means any and all rights, titles and interests in and to any and all property, whether real or personal, tangible (including cash) or intangible, wherever situated and whether now owned or hereafter acquired, other than Excluded Property.

*"Property, Plant and Equipment"* means all Property of each Member which is classified as property, plant and equipment under generally accepted accounting principles.

*"Put Date"* means (i) any date on which an owner of Put Indebtedness may elect to have such Put Indebtedness paid, purchased or redeemed by or on behalf of the underlying obligor prior to its stated maturity date or (ii) any date on which Put Indebtedness is required to be paid, purchased or redeemed from the owner by or on behalf of the underlying obligor (other than at the option of the owner) prior to its stated maturity date, other than pursuant to any mandatory sinking fund or other similar fund or other than by reason of acceleration upon the occurrence of an event of default.

*"Put Indebtedness"* means Indebtedness which is (i) payable or required to be purchased or redeemed by or on behalf of the underlying obligor, at the option of the owner thereof, prior to its stated maturity date or (ii) payable or required to be purchased or redeemed from the owner by or on behalf of the underlying obligor (other than at the option of the owner) prior to its stated maturity date, other than pursuant to any mandatory sinking fund or other similar fund or other than by reason of acceleration upon the occurrence of an event of default.

*"Qualifying Obligation holder"* means any Related Issuer, any Related Bond Trustee, any Bond Insurer (as defined in any Related Bond Indenture) or the holder or holders of 10% or more in aggregate principal amount of the outstanding Obligations of any series.

*"Rating Agency"* means Fitch or Standard & Poor's and their respective successors and assigns.

*"Related Bond Indenture"* means the Bond Indenture and any indenture, bond resolution or similar instrument pursuant to which any series of Related Bonds is issued.

*"Related Bond Trustee"* means the Bond Trustee and any other trustee under any Related Bond Indenture and any successor trustee thereunder or, if no trustee is appointed under a Related Bond Indenture, the Related Issuer.

*"Related Bonds"* means the Bonds and any other revenue bonds or similar obligations issued by any state, commonwealth or territory of the United States or any municipal corporation or other political subdivision formed under the laws thereof or any constituted authority, agency or instrumentality of any of the foregoing empowered to issue obligations on behalf thereof, the proceeds of which are loaned or otherwise made available to any Member in consideration, whether in whole or in part, of the execution, authentication and delivery of an Obligation or Obligations to such governmental issuer.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

"*Related Issuer*" means the Issuer and any other issuer of a series of Related Bonds.

"*Related Loan Document*" means the Loan Agreement and any other document or documents (including without limitation any lease, sublease or installment sales contract) pursuant to which any proceeds of any Related Bonds are advanced to any Member (or any Property financed or refinanced with such proceeds is leased, subleased or sold to a Member).

"*Revenues*" means, for any period, (i) in the case of any Person providing health care services, the sum of (a) gross patient service revenues less contractual allowances and provisions for free care and discounted care, plus (b) other revenues, plus (c) non-operating gains (other than Contributions, income derived from the sale of assets not in the ordinary course of business or any gain from the extinguishment of debt, termination of pension plans or other extraordinary item or earnings which constitute Capitalized Interest or earnings on amounts which are irrevocably deposited in escrow to pay the principal of or interest on Indebtedness), plus (d) Adjusted Contributions, all as determined in accordance with generally accepted accounting principles; and (ii) in the case of any other Person, gross revenues less sale discounts and sale returns and allowances, as determined in accordance with generally accepted accounting principles, but excluding in any event (a) any gains on the sale or other disposition of investments or fixed or capital assets not in the ordinary course and any gains on the extinguishment of debt, (b) earnings resulting from any reappraisal, revaluation or write-up of assets or (c) any unrealized gains resulting from changes in the valuation of investment securities; *provided, however,* that if such calculation is being made with respect to the Obligated Group, such calculation shall be made in such a manner so as to exclude any revenues attributable to transactions between any Member and any other Member.

"*Series 1998 Bonds*" means the $32,605,000 aggregate principal amount of the Issuer's Revenue Refunding Bonds, Series 1998 (Mercy Hospital, Iowa City, Iowa) issued pursuant to the terms and conditions of the Bond Indenture.

"*Series 1998 Obligations*" means the Series 1998A Obligation, the Series 1998B Obligation, and the Series 1998C Obligation.

"*Series 1998A Obligation*" means the Direct Note Obligation, Series 1998A of the Corporation, in substantially the form attached as *Exhibit B-1* to this Master Indenture.

"*Series 1998B Obligation*" means the Direct Note Obligation, Series 1998B of the Corporation, in substantially the form attached as Exhibit B-2 to this Master Indenture.

"*Series 1998C Obligation*" means the Direct Note Obligation, Series 1998C of the Corporation, in substantially the form attached as Exhibit B-3 to this Master Indenture.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*"Short-Term"*, when used in connection with Indebtedness, means having an original maturity less than or equal to one year and not renewable at the option of the debtor for a term greater than one year beyond the date of original issuance.

*"Supplemental Master Indenture"* means an indenture amending or supplementing this Master Indenture entered into pursuant to Article VII hereof.

*"Standard & Poor's"* means Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc., its successors and assigns, and, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, "Standard & Poor's" shall be deemed to refer to any other nationally recognized securities rating agency designated by the Obligated Group Agent by notice to the Master Trustee.

*"Tax Exemption Agreement"* means Tax Exemption Agreement as defined in the Bond Indenture.

*"Tax-Exempt Organization"* means a Person organized under the laws of the United States of America or any state thereof which is an organization described in Section 501 (c)(3) of the Code, which is exempt from federal income taxes under Section 501 (a) of the Code, and which is not a "private foundation" within the meaning of Section 509(a) of the Code, or corresponding provisions of federal income tax laws from time to time in effect.

*"United States Government Obligations"* means noncallable direct obligations of, or obligations the timely payment of the principal of and interest on which is fully guaranteed by, the United States of America including without limitation obligations issued or held in book-entry form.

*"Unrestricted Contributions"* means Contributions which are not restricted in any way that would prevent their application to the payment of debt service on Indebtedness of the Person receiving such Contributions.

*"Unrestricted Receivables"* means all accounts and assignable general intangibles now owned or hereafter acquired by the Person involved regardless of where generated, and all proceeds therefrom whether cash or noncash, all as defined in Article 9 of the Uniform Commercial Code, as amended of the state in which such Person has its principal place of business; excluding, however, gifts, grants, bequests, donations and contributions to such Person heretofore or hereafter made, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payments on such Person's Indebtedness.

*"Written Request"* means with reference to a Related Issuer, a request in writing signed by the Chairperson, Vice-Chairperson, Mayor, Clerk, President, Vice President, Executive Director, Associate Executive Director, Secretary or Assistant Secretary of the Related Issuer and with reference to any Member means a request in writing signed by the President or Vice President of

-30-

such Member, or any other officers designated by the Related Issuer or such Member, as the case may be.

Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, words importing the singular number shall include the plural and vice versa. All accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles except that all such terms shall be deemed to exclude revenues, expenses, assets (except as hereinafter provided), liabilities and other financial information of any entity which is not a Member of the Obligated Group but whose financial information is required to be combined or consolidated with the financial information of any Member of the Obligated Group or whose income or loss is reflected in such financial information of the Obligated Group as a result of utilizing the equity method of accounting for subsidiaries provided that the value of any interest of the Members of the Obligated Group in subsidiaries which subsidiaries are not Members of the Obligated Group shall be reflected in the financial statements of the Members of the Obligated Group in accordance with such equity method. Headings of articles and sections herein and the table of contents hereof are solely for the convenience of reference, do not constitute a part hereof and shall not affect the meaning, construction or effect hereof.

ARTICLE II

THE OBLIGATIONS

*Section 201. Series, Designation and Amount of Obligations.* No Obligations may be issued under the provisions of this Master Indenture except in accordance with this Article. The total principal amount of Obligations, the number of Obligations and the series of Obligations that may be created under this Master Indenture is not limited except as is set forth with respect to the Series 1998 Obligations in Section 208 hereof and as shall be set forth with respect to any other series of Obligations in the Supplemental Master Indenture providing for the issuance thereof. Each series of Obligations, other than the Series 1998 Obligations, shall be issued pursuant to a Supplemental Master Indenture. Each series of Obligations shall be designated so as to differentiate the Obligations of such series from the Obligations of any other series. Unless provided to the contrary in a Supplemental Master Indenture, Obligations shall be issued as fully registered Obligations with the Obligations of each series to be lettered and numbered R-1 and upward.

*Section 202. Payment of Obligations.* The principal of, premium, if any, and interest on the Obligations shall be payable in any currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts, and such principal, premium, if any, and interest shall be payable at the principal corporate trust office of the Master Trustee in Des Moines, Iowa or at the office of any alternate Paying Agent or agents named in any such Obligations or in a Related Bond Indenture. Unless contrary provision is made in the Supplemental Master Indenture pursuant to which such Obligation is issued or the election referred to in the next sentence is made, payment of the interest on the Obligations shall be made to the person appearing on the Obligation registration books of the Obligated Group (kept in the principal corporate trust office of the Master Trustee as Obligation Registrar) as the registered owner thereof and shall be paid by check or draft mailed to the registered owner at his address as it appears on such registration books or at such other address as is furnished to the Master Trustee in writing by such holder; *provided, however,* that any Supplemental Master Indenture creating any Additional Obligation may provide that interest on such Additional Obligation may be paid, upon the request of the holder of such Additional Obligation, by wire transfer. The foregoing notwithstanding, if a Member so elects, payments on such Obligation shall be made directly by such Member, by check or draft hand delivered to the holder thereof or its designee or shall be made by such Member by wire transfer to such holder, in either case delivered on or prior to the date on which such payment is due. Such Member shall give notice of any such payment to the Master Trustee concurrently with the making thereof, specifying the amount paid and identifying the Obligation or Obligations with respect to which such payment was made by series, designation, number and registered holder. Except with respect to Obligations directly paid, the Members agree to deposit with the Master Trustee prior to each due date of the principal of, premium, if any, or interest on any of the Obligations a sum sufficient to pay such principal, premium, if any, or interest so becoming due. Any such moneys shall upon Written Request and direction of the Obligated Group Agent be

-32-

invested in Permitted Investments. The foregoing notwithstanding, amounts deposited with the Master Trustee to provide for the payment of Obligations pledged to the payment of Related Bonds shall be invested in accordance with the provisions of the Related Bond Indenture and Related Loan Document. The Master Trustee shall not be liable or responsible for any loss resulting from any such investments. Investments in Permitted Investments which are United States Government Obligations may be made through repurchase agreements with banks or other financial institutions, including but not limited to the Master Trustee or any Related Bond Trustee, provided that each such repurchase agreement is in a commercially reasonable form, is for a commercially reasonable period, in the opinion of counsel acceptable to the Master Trustee results in the transfer of legal title to identified United States Government Obligations which are segregated in a custodial or trust account for the benefit of the Master Trustee, and further provided that United States Government Obligations acquired pursuant to such repurchase agreements shall be valued at the lower of the then current market value thereof or the repurchase price thereof set forth in the applicable repurchase agreement. Supplemental Master Indentures may create such security including debt service reserve funds and other funds as are necessary to provide for payment or to hold moneys deposited for payment or as security for a related series of Additional Obligations.

Section 203. Execution. Obligations shall be executed on behalf of a Member by the manual or, if permitted by law, facsimile signature of its duly authorized officer or officers and shall have impressed or printed by facsimile thereon the corporate seal of such Member, if any, if required by law, its organizational documents or Governing Body. In case any officer whose signature or facsimile of whose signature shall appear on the Obligations shall cease to be such officer before the delivery of such Obligations, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes, the same as if he had remained in office until delivery.

Section 204. Authentication. No Obligation shall be valid or obligatory for any purpose or entitled to any security or benefit under this Master Indenture unless and until a certificate of authentication on such Obligation substantially in the form set forth below shall have been duly executed by the Master Trustee, and such executed certificate of the Master Trustee upon any such Obligation shall be conclusive evidence that such Obligation has been authenticated and delivered under this Master Indenture. The Master Trustee's certificate of authentication on any Obligation shall be deemed to have been executed by it if signed by an authorized officer or signer of the Master Trustee, but it shall not be necessary that the same officer or signer sign the certificate of authentication on all of the Obligations issued hereunder.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

The Master Trustee's authentication certificate shall be in substantially the following form:

### MASTER TRUSTEE'S AUTHENTICATION CERTIFICATE

This Obligation is one of the Obligations described in the within-mentioned Master Indenture.

_____,

as Master Trustee

By_____
              Authorized Officer

*Section 205. Form of Obligations and Temporary Obligations.* The Series 1998 Obligations shall be substantially in the form set forth in *Exhibits B-1, B-2, and B-3* hereto. All Additional Obligations issued under this Master Indenture shall be substantially in the form set forth in the Supplemental Master Indenture pursuant to which such Additional Obligations are issued, in each case with such appropriate variations, omissions and insertions as are permitted or required by this Master Indenture or deemed necessary by the Master Trustee to reflect the terms and conditions thereof as established hereby and by any Supplemental Master Indenture. Unless Obligations of a series have been registered under the Securities Act of 1933, as amended, each Obligation of such series shall be endorsed with a legend which shall read substantially as follows: "This Obligation has not been registered under the Securities Act of 1933, as amended."

Obligations of any series may be initially issued in temporary form exchangeable for definitive Obligations of the same series when ready for delivery. The temporary Obligations shall be of such denomination or denominations as may be determined by the Member executing the same, and may contain such reference to any of the provisions of this Master Indenture as may be appropriate. Every temporary Obligation shall be executed by a Member and be authenticated by the Master Trustee upon the same conditions and in substantially the same manner as the definitive Obligations. If any Member issues temporary Obligations it will execute and furnish definitive Obligations without delay and thereupon the temporary Obligations may be surrendered for cancellation in exchange therefor at the principal corporate trust office of the Master Trustee, and the Master Trustee shall authenticate and deliver in exchange for such temporary Obligations an equal aggregate principal amount of definitive Obligations of the same series and maturity of authorized denominations. Until so exchanged, the temporary Obligations shall be entitled to the same benefits under this Master Indenture as definitive Obligations authenticated and delivered hereunder.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*Section 206. Mutilated, Lost, Stolen or Destroyed Obligations.* In the event any temporary or definitive Obligation is mutilated, lost, stolen or destroyed, the Member issuing such Obligation may execute and the Master Trustee may authenticate a new Obligation of like form, date, maturity and denomination as that mutilated, lost, stolen or destroyed; provided that, in the case of any mutilated Obligation, such mutilated Obligation shall first be surrendered to the Master Trustee, and in the case of any lost, stolen or destroyed Obligation, there shall be first furnished to such Member and the Master Trustee evidence of such loss, theft or destruction satisfactory to such Member and the Master Trustee, together with indemnity satisfactory to them. In the event any such Obligation shall have matured, instead of issuing a duplicate Obligation the Obligated Group may pay the same without surrender thereof. The Obligated Group and the Master Trustee may charge the holder or owner of such Obligation with their reasonable fees and expenses in this connection.

*Section 207. Registration; Negotiability; Cancellation upon Surrender; Exchange of Obligations.* Upon surrender for transfer of any Obligation at the principal corporate trust office of the Master Trustee, the Member issuing such Obligation shall execute and the Master Trustee shall authenticate and deliver in the name of the transferee or transferees a new fully registered Obligation or Obligations of the same series, designation and maturity without coupons for a like aggregate principal amount.

The execution by a Member of any Obligation of any denomination shall constitute full and due authorization of such denomination and the Master Trustee shall thereby be authorized to authenticate and deliver such Obligation.

The Master Trustee shall not be required to transfer or exchange any Obligation during the period of 15 days next preceding any interest payment date of such Obligation or to transfer or exchange any Obligation after the notice calling such Obligation or portion thereof for redemption has been given as herein provided, or during the period of 15 days next preceding the mailing of such notice of redemption with respect to any Obligation of the same series and maturity.

As to any Obligation, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of any such Obligation shall be made only to or upon the order of the registered owner thereof or his legal representative, but such registration may be changed as herein provided. All such payments shall be valid and effectual to satisfy and discharge the liability upon such Obligation to the extent of the sum or sums so paid.

Any Obligation surrendered for the purpose of payment or retirement or for replacement pursuant to Section 206 hereof shall be cancelled upon surrender thereof to the Master Trustee or any Paying Agent. Unless contrary provision is made in the Supplemental Master Indenture pursuant to which such Obligation is issued, if any Member shall acquire any of the Obligations, such Member shall deliver such Obligations to the Master Trustee for cancellation and the Master Trustee shall cancel the same. Any such Obligations cancelled by any Paying Agent other than the Master

-35-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Trustee shall be promptly transmitted by such Paying Agent to the Master Trustee. Cancelled Obligations may be destroyed by the Master Trustee unless instructions to the contrary are received from the Obligated Group Agent.

The Obligated Group and the Master Trustee may charge each Obligation holder requesting an exchange, registration, change in registration or transfer of an Obligation any tax, fee or other governmental charge required to be paid with respect to such exchange, registration or transfer.

*Section 208. Issuance of Series 1998 Obligations.* The initial Obligations to be issued hereunder shall consist of the Series 1998A Obligation, the Series 1998B Obligation and the Series 1998C Obligation.

A. The Series 1998A Obligation. (i) The Series 1998A Obligation shall be designated "Mercy Hospital, Iowa City, Iowa Direct Note Obligation, Series 1998A (City of Hills, Iowa, Series 1998 Bonds)". The Series 1998A Obligation is hereby expressly limited to the principal amount of $32,605,000.

(ii)    The Series 1998A Obligation shall be substantially in the form set forth in *Exhibit B-1* hereto, shall be in the form of fully registered Obligation without coupons, shall be numbered R-1 and shall be dated as of the Closing Date. For the purposes of the provisions of this Master Indenture regarding approvals, consents and similar matters, the Series 1998A Obligation shall be considered a single series.

(iii)    The Series 1998A Obligation shall bear interest from its date at a rate or rates equal to the interest accruing on and payable with respect to the Series 1998 Bonds, said interest to be payable on or before the 1st day of each February and August beginning with August 1, 1998, in an amount which will not be less than the interest to become due on such Bond on the next succeeding February 15 or August 15; provided, however, that the Corporation may be entitled to certain credits on such payments as permitted under the Loan Agreement.

(iv)    Principal of the Series 1998A Obligation shall be payable on or before the 1st day of each August commencing August 1, 1999, in an amount which will not be less than the amount of principal to become due on such Bond on the next succeeding August 15 by maturity or mandatory Bond Sinking Fund redemption; provided, however, that the Corporation may be entitled to certain credits on such payments as permitted under the Loan Agreement.

(v)    The Corporation hereby elects to make payments on the Series 1998 Obligation by check or draft hand delivered to the Bond Trustee or by wire transfer to the Bond Trustee, in either case delivered on the date each such payment is due. The Corporation also hereby elects to have the Series 1998A Obligation be issuable as a single

-36-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Obligation only in fully registered form exchangeable solely for another fully registered Obligation executed by such thereof as executed the Obligation so delivered to the Master Trustee for exchange.

(vi)    The Series 1998A Obligation shall not be issued until all conditions precedent to the issuance of the Series 1998A Obligation set forth in the Bond Indenture and the Loan Agreement shall have been satisfied or waived by the proper party or parties.  The conditions precedent to the delivery of the Series 1998A Obligation shall include, among other things:

(a)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that all requirements and conditions to the issuance of the Series 1998A Obligation set forth herein have been complied with and satisfied; and

(b)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that registration of the Series 1998A Obligation under the Securities Act of 1933, as amended, is not required.

(vii)    The Corporation shall receive certain credits against its required payments of principal of and interest on the Series 1998A Obligation to the extent set forth in Section 6.3 of the Loan Agreement.

(viii)    The Series 1998A Obligation shall be an Accelerable Instrument.

B.  The Series 1998B Obligation.  (i) The Series 1998B Obligation shall be designated "Mercy Hospital, Iowa City, Iowa Direct Note Obligation, Series 1998B (City of Hills, Iowa, Series 1994 Bonds)".  The Series 1998B Obligation is hereby expressly limited to the principal amount of $1,722,430.31.

(ii)    The Series 1998B Obligation shall be substantially in the form set forth in *Exhibit B-2* hereto, shall be in the form of fully registered Obligation without coupons, shall be numbered R-1 and shall be dated as of the Closing Date.  For the purposes of the provisions of this Master Indenture regarding approvals, consents and similar matters, the Series 1998B Obligation shall be considered a single series.

(iii)    The Series 1998B Obligation shall bear interest from its date at a rate or rates equal to the interest accruing on and payable with respect to the Series 1994 Bonds, and shall be payable in monthly installments of principal and interest in the first day of each month in the amount of $18,958.34 each beginning August 1, 1998, through March 1, 2004, and thereafter in monthly amounts calculated to be sufficient to pay the principal of and interest on the Series 1994 Bonds as the same become due; provided, however, that the Corporation

may be entitled to certain credits on such payments as permitted under the Series 1998B Obligation.

(iv)    The Corporation hereby elects to make payments on the Series 1998B Obligation by check or draft hand delivered to the Series 1994 Trustee or by wire transfer to the Series 1994 Trustee, in either case delivered on the date each such payment is due. The Corporation also hereby elects to have the Series 1998B Obligation be issuable as a single Obligation only in fully registered form exchangeable solely for another fully registered Obligation executed by such thereof as executed the Obligation so delivered to the Master Trustee for exchange.

(v)    The Series 1998B Obligation shall not be issued until the following conditions precedent to the issuance of the Series 1998B Obligation have been satisfied or waived by the proper party or parties:

(a)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that all requirements and conditions to the issuance of the Series 1998B Obligation set forth herein have been complied with and satisfied; and

(b)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that registration of the Series 1998B Obligation under the Securities Act of 1933, as amended, is not required.

(vii)    The Series 1998B Obligation shall be an Accelerable Instrument.

C.  The Series 1998C Obligation.  (i) The Series 1998C Obligation shall be designated "Mercy Hospital, Iowa City, Iowa Direct Note Obligation, Series 1998C (Iowa State Bank and Trust Company, Second Mortgage Note)". The Series 1998C Obligation is hereby expressly limited to the principal amount of $249,146.87.

(ii)    The Series 1998C Obligation shall be substantially in the form set forth in *Exhibit B-3* hereto, shall be in the form of fully registered Obligation without coupons, shall be numbered R-1 and shall be dated as of the Closing Date. For the purposes of the provisions of this Master Indenture regarding approvals, consents and similar matters, the Series 1998C Obligation shall be considered a single series.

(iii)    The Series 1998C Obligation shall bear interest from its date at the rate of 6.60% per annum and shall be payable in monthly installments of principal and interest in the amount of $22,171.16 each on the first day of each month commencing August 1, 1998 and continuing until September 1, 2001, when the entire remaining principal plus accrued

-38-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

interest shall be due and payable; provided, however, that the Corporation may be entitled to certain credits on such payments as permitted under the Series 1998C Obligation.

(iv)    The Corporation hereby elects to make payments on the Series 1998C Obligation by check or draft hand delivered to the Managing Lender or by wire transfer to the Managing Lender, in either case delivered on the date each such payment is due.  The Corporation also hereby elects to have the Series 1998C Obligation be issuable as a single Obligation only in fully registered form exchangeable solely for another fully registered Obligation executed by such thereof as executed the Obligation so delivered to the Master Trustee for exchange.

(v)    The Series 1998C Obligation shall not be issued until the following conditions precedent to the issuance of the Series 1998C Obligation have been satisfied or waived by the proper party or parties:

(a)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that all requirements and conditions to the issuance of the Series 1998C Obligation set forth herein have been complied with and satisfied; and

(b)    delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that registration of the Series 1998C Obligation under the Securities Act of 1933, as amended, is not required.

(vi)    The Series 1998C Obligation shall be an Accelerable Instrument.

*Section 209.  Security for Obligations.*  Any one or more series of Obligations issued hereunder may, so long as any Liens created in connection therewith constitute Permitted Encumbrances, be secured by security (including without limitation letters or lines of credit, insurance or Liens on Property, including health care Facilities of the Obligated Group, or security interests in depreciation reserve, debt service or interest reserve or debt service or similar funds). Such security need not extend to any other Indebtedness (including any other Obligations or series of Obligations).  Consequently, the Supplemental Master Indenture pursuant to which any one or more series of Obligations is issued may provide for such supplements or amendments to the provisions hereof, including without limitation Articles II and V hereof, as are necessary to provide for such security and to permit realization upon such security solely for the benefit of the Obligations entitled thereto.

*Section 210.  Issuance of Obligations in Forms Other than Notes.*  To the extent that any Indebtedness which is permitted or required to be issued pursuant to this Master Indenture is not in the form of a promissory note, an Obligation in the form of a promissory note may be issued hereunder and pledged as security for the payment of such Indebtedness in lieu of directly issuing

-39-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

such Indebtedness as an Obligation hereunder.   Nevertheless, the parties hereto agree that Obligations may be issued hereunder to evidence any type of Indebtedness (other than Non-Recourse Indebtedness), including without limitation any Indebtedness in a form other than a promissory note. Consequently, the Supplemental Master Indenture pursuant to which any Obligation is issued may provide for such supplements or amendments to the provisions hereof, including without limitation Articles II and V hereof, as are necessary to permit the issuance of such Obligation hereunder and as are not inconsistent with the intent hereof that, except as otherwise expressly provided herein, all Obligations issued hereunder be equally and ratably secured by any lien created hereunder.   Any Interest Rate Agreement which is authenticated as an Obligation under this Master Indenture shall be equally and ratably secured by any lien created under this Master Indenture with all other Obligations except as otherwise provided in this Master Indenture; *provided, however,* that any such Obligation shall be deemed outstanding under this Master Indenture solely for the purpose of receiving payment under this Master Indenture and shall not be entitled to exercise any rights under this Master Indenture; and *provided, further,* that any termination payment due under any Interest Rate Agreement shall be subordinate to the payments due on all other Obligations.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

## ARTICLE III

## PREPAYMENT OR REDEMPTION OF OBLIGATIONS

*Section 301. Prepayment or Redemption Dates and Prices.* Obligations shall be subject to optional and mandatory prepayment or redemption in whole or in part and may be prepaid or redeemed prior to maturity as provided in this Master Indenture or the Supplemental Master Indenture pertaining to the series of Obligations to be prepaid or redeemed, but not otherwise.

Unless contrary provision is made in the Supplemental Master Indenture pursuant to which a series of Obligations is issued, the Obligations are callable for redemption prior to maturity in the event of damage to or destruction of the Facilities of any Member or any part thereof or condemnation (or sale consummated under threat of condemnation) of the Facilities of any Member or any part thereof in excess of the greater of (a) $1,000,000 or (b) the sum of $1,000,000 plus an amount equal to $1,000,000 multiplied by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from its level as of July 1, 1998, but only to the extent provided in Sections 410, 411 and 412 hereof. If called for redemption in such events, the Obligations shall be subject to redemption by the Members at any time, in whole or in part, and if in part then by series and maturities designated by the Obligated Group Agent (and, if less than all of a maturity is being redeemed, by lot in such manner as determined by the Master Trustee), at the principal amount thereof plus accrued interest to the redemption date and without premium; provided that if the proceeds result from such damage to or destruction or condemnation or sale consummated under threat of condemnation of any discrete free standing health care Facilities (including but not limited to any hospital, clinic, emergency care center or nursing or extended care center) financed or refinanced directly or indirectly whether in whole or in part from the proceeds of any series of Obligations, the Obligated Group Agent will designate the Obligations of such series for redemption prior to any other series of Obligations.

To the extent not otherwise provided herein or in a Supplemental Master Indenture, the Obligated Group shall have the right to prepay or redeem all or such portion of the Obligations of any particular series as shall be necessary to effect the payment, prepayment, redemption, refunding or advance refunding of the series of Related Bonds secured by such Obligations or any portion thereof in the manner provided in the Related Bond Indenture. If called for prepayment or redemption in such events, the Obligations of such series shall be subject to prepayment or redemption in such amount, and at such times, in the manner and with the premium necessary to effect the refunding, advance refunding or redemption of all or the portion of the series of Related Bonds to be refunded, advance refunded or redeemed.

Except for prepayment or redemption made pursuant to the immediately preceding paragraph and except to the extent that contrary provision is made in the Supplemental Master Indenture pursuant to which a series of Obligations is issued, no redemption of less than all of the Obligations

-41-

of a particular series at the time outstanding shall be made pursuant hereto unless the aggregate principal amount of such Obligations to be redeemed is equal to or more than $100,000.

Unless contrary provision is made herein with respect to the Series 1998 Obligation, in the Supplemental Master Indenture pursuant to which a series of Obligations is issued or in a Related Loan Document, Obligations may be called for optional prepayment or redemption by the Master Trustee pursuant to this Section 301 upon receipt by the Master Trustee at least 30 days prior to the redemption date of a certificate of the Obligated Group Agent requesting such prepayment or redemption and a resolution of a Member designating funds for such prepayment or redemption. Such certificate shall specify the particular series and the principal amount of such series of Obligations so to be called for prepayment or redemption (and if less than all of a series is to be prepaid, the maturities or portions hereof), the applicable prepayment or redemption price or prices and the provision or provisions of this Master Indenture or any Supplemental Master Indenture pursuant to which such Obligations are to be called for prepayment or redemption.

Obligations of any series with respect to which a sinking fund has been established shall be redeemed by the Master Trustee pursuant to the provisions of such sinking fund and Obligations to be mandatorily redeemed or paid at maturity shall be redeemed or paid at maturity, as the case may be, in accordance herewith and with any Supplemental Master Indenture pursuant to which such Obligations were issued, in both cases without any notice from or direction of any Member.

In lieu of prepaying or redeeming Obligations pursuant to this Section 301, the Master Trustee may, at the request of the Obligated Group Agent, use funds otherwise available hereunder for the redemption of such Obligations to purchase such Obligations in the open market at a price not exceeding the redemption price then applicable hereunder.

In addition to the redemptions herein provided which are applicable to all Obligations, each series of Additional Obligations shall be redeemable in the manner, at the time or times, at the premiums, if any, and upon the terms specified in the Supplemental Master Indenture pursuant to which such Obligations were issued or in a Related Loan Document.

The Obligated Group shall have the right to prepay all or a portion of the Series 1998A Obligation as shall be necessary to effect the payment, prepayment, redemption, refunding or advance refunding of the Series 1998 Bonds or any portion thereof in the manner provided in the Bond Indenture. If called for prepayment or redemption in such events, the Series 1998A Obligation shall be subject to prepayment or redemption in such amount, and at such times, in the manner and with the premium necessary to effect the refunding, advance refunding or redemption of all or a portion of the Series 1998 Bonds to be refunded, advanced refunded or redeemed.

The Corporation shall give the Master Trustee not less than 45 days prior written notice of any prepayment of the Series 1998A Obligation which notice shall in either case designate the date

-42-

of prepayment and the amount thereof and direct the redemption of Series 1998 Bonds in amounts corresponding to the prepayment of the Series 1998A Obligation to be prepaid.

The Obligated Group shall have the right to prepay all or a portion of the Series 1998B Obligation as shall be necessary to effect the payment, prepayment, redemption, refunding or advance refunding of the Series 1994 Bonds or any portion thereof in the manner provided in the Bond Indenture. If called for prepayment or redemption in such events, the Series 1998B Obligation shall be subject to prepayment or redemption in such amount, and at such times, in the manner and with the premium necessary to effect the refunding, advance refunding or redemption of all or a portion of the Series 1994 Bonds to be refunded, advanced refunded or redeemed.

The Corporation shall give the Master Trustee not less than 45 days prior written notice of any prepayment of the Series 1998B Obligation which notice shall in either case designate the date of prepayment and the amount thereof and direct the redemption of Series 1994 Bonds in amounts corresponding to the prepayment of the Series 1998B Obligation to be prepaid.

The Obligated Group shall have the right to prepay all or a portion of the Series 1998C Obligation as shall be necessary to effect the payment, prepayment, redemption, refunding or advance refunding of the Second Mortgage Note or any portion thereof in the manner provided in the Bond Indenture. If called for prepayment or redemption in such events, the Series 1998C Obligation shall be subject to prepayment or redemption in such amount, and at such times, in the manner and with the premium necessary to effect the refunding, advance refunding or redemption of all or a portion of the Second Mortgage Note to be refunded, advanced refunded or redeemed.

The Corporation shall give the Master Trustee not less than 45 days prior written notice of any prepayment of the Series 1998C Obligation which notice shall in either case designate the date of prepayment and the amount thereof and direct the redemption of Second Mortgage Note in amounts corresponding to the prepayment of the Series 1998C Obligation to be prepaid.

Section 302. *Notice of Prepayment or Redemption.* Except as permitted by Section 301 above or unless contrary provision is made with respect to a particular series of Obligations in the Supplemental Master Indenture pursuant to which such Obligations are issued, notice of the call for any such prepayment or redemption identifying the Obligations to be prepaid or redeemed shall be given by mailing a copy of such notice by registered or certified mail to each Related Issuer and to the registered owner of Obligations to be prepaid or redeemed to the address shown on the registration books maintained by the Master Trustee not less than 30 days prior to the prepayment or redemption date which notice may provide that the Member giving such notice may elect to cancel such prepayment or redemption at any time prior to such prepayment or redemption in which case it will give notice thereof in the same fashion as soon as reasonably practicable following such election; *provided, however,* that failure to give such notice by mailing or a defect in the notice or the mailing to any particular Obligation holder will not affect the validity of the prepayment or redemption of any other Obligation. Upon the happening of the above conditions and, if such

-43-

Member does not so elect to cancel such prepayment or redemption, sufficient moneys have been deposited with the Master Trustee and are available to pay the principal of, premium, if any, and interest on the Obligation to be prepaid or redeemed to and on the prepayment or redemption date, the Obligations, or portions thereof, thus called shall not bear interest after the applicable prepayment or redemption date, shall no longer be protected by this Master Indenture and shall not be deemed to be outstanding under the provisions of this Master Indenture.  The Master Trustee shall prepay or redeem, in the manner provided in this Article, such an aggregate principal amount of such Obligations of the series to be prepaid or redeemed at the principal amount thereof plus accrued interest to the prepayment or redemption date and premium, if any, as will exhaust as nearly as practicable such funds.  At the written direction of the Obligated Group Agent, such funds may be invested in Escrow Obligations until needed for prepayment or redemption payout.

Section 303.  *Partial Prepayment or Redemption of Obligations*.  Upon surrender of any Obligation for prepayment or redemption in part only, the Member issuing such Obligation shall execute and the Master Trustee shall authenticate and deliver to the holder thereof, at the expense of the Obligated Group, a new registered Obligation or Obligations of the same series and maturity of authorized denominations in aggregate principal amount equal to the unpaid portion of the Obligation surrendered.  Such Member and the Master Trustee may agree with any holder of any Obligation that such holder may, in lieu of surrendering the same for a new registered Obligation, endorse on such Obligation a notice of such partial prepayment or redemption to be made on the following form which shall be typed or printed on the reverse side of such Obligation:

PAYMENTS ON ACCOUNT OF PRINCIPAL

| Payment Date | Principal Amount Prepaid or Redeemed | Balance of Principal Amount Unpaid | Signature |
|---|---|---|---|
| | | | |

Such partial prepayment or redemption shall be valid upon payment of the amount thereof to the registered owner of any such registered Obligation and the Obligated Group and the Master Trustee shall be fully released and discharged from all liability to the extent of such payment irrespective of whether such endorsement shall or shall not have been made upon the reverse of such Obligation by the owner thereof and irrespective of any error or omission in such endorsement.

Section 304.  *Effect of Call for Prepayment or Redemption*.  On the date designated for prepayment or redemption by notice given as herein provided, the Obligations so called for prepayment or redemption shall become and be due and payable at the prepayment or redemption price provided for prepayment or redemption of such Obligations on such date.  If on the date fixed

-44-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

for prepayment or redemption moneys for payment of the prepayment or redemption price and accrued interest are held by the Master Trustee or any other Paying Agent as provided herein, interest on such Obligations so called for prepayment or redemption shall cease to accrue, such Obligations shall cease to be entitled to any benefit or security hereunder except the right to receive payment from the moneys held by the Master Trustee or the Paying Agents and the amount of such Obligations so called for prepayment or redemption shall be deemed paid and no longer outstanding.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

# ARTICLE IV

## GENERAL COVENANTS

*Section 401.   Payment of Principal, Premium, if any, and Interest.*  Each Member unconditionally and irrevocably (subject to the right of such Member to cease its status as a Member of the Obligated Group pursuant to the terms and conditions of Section 405 hereof), jointly and severally covenants that it will promptly pay the principal of, premium, if any, and interest on every Obligation issued under this Master Indenture at the place, on the dates and in the manner provided herein and in said Obligations according to the true intent and meaning thereof Notwithstanding any schedule of payments upon the Obligations set forth herein or in the Obligations, each Member unconditionally and irrevocably (subject to the right of such Member to cease its status as a Member of the Obligated Group pursuant to the terms and conditions of Section 405 hereof), jointly and severally agrees to make payments upon each Obligation and be liable therefor at the times and in the amounts (including principal, interest and premium, if any) equal to the amounts to be paid as interest, principal at maturity or by mandatory sinking fund redemption, or premium, if any, upon any Related Bonds from time to time outstanding.

*Section 402.   Performance of Covenants.*  Each Member covenants that it will faithfully perform at all times any and all covenants, undertakings, stipulations and provisions contained in this Master Indenture and in each and every Obligation executed, authenticated and delivered hereunder.

*Section 403.   Representations and Warranties by the Obligated Group.*  Each Member of the Obligated Group makes the following representations and warranties with respect to itself as the basis for its covenants herein:

(a)    It is a not for profit corporation duly incorporated under the laws of the State of Iowa, is in good standing and duly authorized to conduct its business and affairs in Iowa, is duly authorized and has full power under the laws of Iowa and all other applicable provisions of law and its articles of incorporation and by-laws to create, issue, enter into, execute and deliver this Master Indenture and the Series 1998 Obligations, and all action on its part necessary for the valid execution and delivery of this Master Indenture and the valid creation, issuance and delivery of the Series 1998 Obligations has been duly and effectively taken; and the Series 1998 Obligations in the hands of the holders thereof will be the legal and valid obligations of the Corporation.

(b)    The execution and delivery of the Series 1998 Obligations and this Master Indenture, the consummation of the transactions contemplated hereby, and the fulfillment of the terms and conditions hereof do not and will not conflict with or result in a breach of any of the terms or conditions of any corporate restriction or of any agreement or instrument to which it is now a party, and do not and will not constitute a default under any of the

-46-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

foregoing, or result in the creation or imposition of any Lien of any nature upon any of its Property except for Permitted Encumbrances. It has good and marketable fee simple title to all of its Property constituting real property and good and marketable title to all of its other Property, in both cases, free and clear of all Liens except for Permitted Encumbrances. The easements, rights-of-way, liens, encumbrances, covenants, conditions, restrictions, exceptions, minor defects, irregularities of title and encroachments on adjoining real estate, if any, now existing with respect to its Property do not and will not materially adversely affect the value of the Property currently affected thereby, materially impair the same, or materially impair or materially interfere with the operation and usefulness thereof for the purpose for which it was acquired or is held by it. Its Property does not violate any applicable zoning, land use or similar law or restriction. The recitals of fact and statements contained in this Master Indenture and in each Related Loan Document with respect to the Members of the Obligated Group therein referenced are or, in the case of Related Loan Documents entered into in the future, will be true.

(c)     It has all necessary licenses and permits to occupy and operate its existing Facilities.

(d)     It is a Tax-Exempt Organization; and it has no "unrelated business taxable income" as defined in Section 512 of the Code which could have a material adverse effect on its status as a Tax-Exempt Organization or which, if such income were subject to federal income taxation, would have a material adverse effect on its condition, financial or otherwise.

(e)     It has not heretofore engaged in, and the consummation of the transactions herein provided for and compliance by it with the provisions of this Master Indenture and the Obligations issued hereunder will not involve, any prohibited transaction within the meaning of the Employee Retirement Income Security Act of 1974, as amended (herein sometimes referred to as "ERISA") or Section 4975 of the Code. No "employee pension benefit plans," as defined in ERISA (herein sometimes referred to as "Plans"), maintained by it and no trusts created thereunder, have incurred any "accumulated funding deficiency" as defined in Section 302 of ERISA and the present value of all benefits vested under all Plans did not exceed, as of the last annual valuation date, the value of the assets of the Plans allocable to such vested benefits.

*Section 404. Entrance Into the Obligated Group.*  Any Person may become a Member of the Obligated Group if:

(a)     Such Person is a corporation;

(b)     Such Person shall execute and deliver to the Master Trustee a Supplemental Master Indenture acceptable to the Master Trustee which shall be executed by the Master

-47-

Trustee and the Obligated Group Agent on behalf of the then current Members, containing (i) the agreement of such Person (A) to become a Member of the Obligated Group and thereby to become subject to compliance with all provisions of this Master Indenture and (B) unconditionally and irrevocably (subject to the right of such Person to cease its status as a Member of the Obligated Group pursuant to the terms and conditions of Section 405 hereof) to jointly and severally make payments upon each Obligation at the times and in the amounts provided in each such Obligation and (ii) representations and warranties by such Person substantially similar to those set forth in Section 403 other than those contained in Section 403(d) if such Person is not a Tax-Exempt Organization and provided that any representation regarding incorporation and good standing shall refer to the actual state of incorporation of such person (but with such deviations as are acceptable to the Master Trustee);

(c)     The Obligated Group Agent shall, by appropriate action of its Governing Body, have approved the admission of such Person to the Obligated Group and each of the Members shall have taken such action, if any, required to approve the admission of such Person to the Obligated Group;

(d)     The Master Trustee shall have received (1) a certificate of the Obligated Group Agent which demonstrates that, immediately upon such Person becoming a Member of the Obligated Group (A) the Members would not, as a result of such transaction, be in default in the performance or observance of any covenant or condition to be performed or observed by them hereunder, and (B) the Obligated Group could meet the conditions described in Section 415(A) for the incurrence of one dollar of additional Funded Indebtedness, (2) an opinion of Independent Counsel to the effect that (x) the instrument described in paragraph (b) above has been duly authorized, executed and delivered and constitutes a legal, valid and binding agreement of such Person, enforceable in accordance with its terms, subject to customary exceptions for bankruptcy, insolvency, fraudulent conveyance, and other laws generally affecting enforcement of creditors' rights and application of general principles of equity and to the exceptions set forth in *Exhibit D* hereto and (y) the addition of such Person to the Obligated Group will not adversely affect the status as a Tax-Exempt Organization of any Member which otherwise has such status and (3) if all amounts due or to become due on all Related Bonds have not been paid to the holders thereof and provision for such payment has not been made in such manner as to have resulted in the defeasance of all Related Bond Indentures, an opinion of nationally recognized municipal bond counsel (which counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee), to the effect that under then existing law the consummation of such transaction, whether or not contemplated on the date of delivery of any such Related Bond, would not adversely affect the validity of any Related Bond or any exemption from federal income taxation of interest payable on such Bond otherwise entitled to such exemption; provided that in making the calculation called for by subsection (d)(1)(B) above, (i) there shall be excluded from Revenues (a) any Revenues generated by Property of such Person transferred or otherwise disposed of by such

-48-

Person since the beginning of the Fiscal Year during which such Person's entry into the Obligated Group occurs and (b) any Revenues generated by Property of the new Member which at the time of such Member's entry into the Obligated Group will be categorized as Excluded Property and (ii) there shall be excluded from Expenses (a) any Expenses related to Property of such Person transferred or otherwise disposed of by such Person since the beginning of the Fiscal Year during which such Person's entry into the Obligated Group occurs and (b) any Expenses related to Property of the new Member which at the time of such Member's entry into the Obligated Group will be categorized as Excluded Property; and

(e)     (i) *Exhibit A* to this Master Indenture is amended to include a description of the real property of the Person becoming a Member upon which the primary operations of such Person are conducted and a description of any Permitted Encumbrances of the type described in paragraph (v)(ii) of the definition thereof, (ii) *Exhibit C is* amended to include a description of the Property of the Person becoming a Member which is to be considered Excluded Property (provided that such Property may be treated as Excluded Property only if such Property is real or tangible personal property and the primary operations of such Person are not conducted upon such real property), and (iii) *Exhibit E is* amended to add such Person as a Member.

Each successor, assignee, surviving, resulting or transferee corporation of a Member must agree to become, and satisfy the above-described conditions to becoming, a Member of the Obligated Group prior to any such succession, assignment or other change in such Member's corporate status.

*Section 405.  Cessation of Status as a Member of the Obligated Group.*  Each Member covenants that it will not take any action, corporate or otherwise, which would cause it or any successor thereto into which it is merged or consolidated under the terms of the Master Indenture to cease to be a Member of the Obligated Group unless:

(a)     if the Member proposing to withdraw from the Obligated Group is not a party to any Related Loan Documents with respect to Related Bonds which remain outstanding, another Member of the Obligated Group shall issue an Obligation hereunder evidencing or assuming the obligation of the withdrawing Member in respect of such Related Bonds;

(b)     prior to cessation of such status, there is delivered to the Master Trustee an opinion of nationally recognized municipal bond counsel (which counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee) to the effect that, under then existing law, the cessation by the Member of its status as a Member will not adversely affect the validity of any Related Bond or any exemption from federal income taxation of interest payable thereon to which such Bond would otherwise be entitled;

-49-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

(c)     when it is assumed that such cessation results in a transfer of Property owned by the Member proposing to cease such status to a Person who is not a Member of the Obligated Group, the conditions precedent to such a transfer to an unrelated entity set forth in Section 417(G) hereof have been complied with;

(d)     prior to and immediately after such cessation, no event of default exists hereunder and no event shall have occurred which with the passage of time or the giving of notice, or both, would become such an event of default;

(e)     prior to such cessation there is delivered to the Master Trustee an opinion of Independent Counsel (which Counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee) to the effect that the cessation by such Member of its status as a Member will not adversely affect the status as a Tax-Exempt Organization of any Member which otherwise has such status; and

(f)     prior to cessation of such status, the Obligated Group Agent, on behalf of the other Members of the Obligated Group consents in writing to the withdrawal by such Member.

Upon such cessation in accordance with the foregoing provisions, (i) *Exhibit A* hereto shall be amended to delete therefrom the description of any real property and of any Permitted Encumbrances of the type described in subparagraph (v)(ii) of the definition of Permitted Encumbrances of the Member which has ceased being a Member of the Obligated Group, *(ii) Exhibit C* shall be amended to delete therefrom any Property of the Member which has ceased being a Member and (iii) *Exhibit E* shall be amended to delete therefrom the name of such Person.

*Section 406. Covenants as to Corporate Existence, Maintenance of Properties, and Similar Matters, Right of Contest.* Each Member hereby covenants to:

(a)     Except as otherwise expressly provided herein (i) preserve its corporate or other separate legal existence, (ii) preserve all its rights and licenses to the extent necessary or desirable in the reasonable judgment of such Member's Governing Board in the operation of its business and affairs and (iii) be qualified to do business and conduct its affairs in each jurisdiction where its ownership of Property or the conduct of its business or affairs requires such qualification;

(b)     With respect to any Member which is, on the date it becomes a Member, a not for profit corporation, maintain its status as a not for profit corporation throughout the term of this Master Indenture.

(c)     At all times use its Facilities only in furtherance of its lawful corporate purposes and cause its business to be carried on and conducted and its Property and each part

-50-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

thereof to be maintained, preserved and kept in good repair, working order and condition and in as safe condition as its operations will permit and make all necessary and proper repairs (interior and exterior, structural and non-structural, ordinary as well as extraordinary and foreseen as well as unforeseen), renewals and replacements thereof so that its operations and business shall at all times be conducted in an efficient, proper and advantageous manner; *provided, however,* that nothing herein contained shall be construed (i) to prevent it from ceasing to operate any portion of its Property, if in its reasonable judgment (evidenced, in the case of such a cessation other than in the ordinary course of business, by a determination by its Governing Body) it is advisable not to operate the same, or if it intends to sell or otherwise dispose of the same and within a reasonable time endeavors to effect such sale or other disposition, or (ii) to obligate it to retain, preserve, repair, renew or replace any Property, leases, rights, privileges or licenses no longer used or, in the judgment of its Governing Body, useful in the conduct of its business.

(d)     Pay or cause to be paid: (i) all taxes, levies, assessments and charges on account of the use, occupancy or operation of its Property, including but not limited to all sales, use, occupation, real and personal property taxes, all permit and inspection fees, occupation and license fees and all water, gas, electric, light, power or other utility charges assessed or charged on or against its Property or on account of its use or occupancy thereof or the activities conducted thereon or therein; and (ii) all taxes, assessments and impositions, general and special, ordinary and extraordinary, of every name and kind, which shall be taxed, levied, imposed or assessed during the term of this Master Indenture upon all or any part of its Property, or its interest or the interest of any Related Issuer or either of them in and to its Property, or upon its interest or the interest of any Related Issuer or the interest of either of them in this Master Indenture or the amounts payable hereunder or under the Obligations. If under applicable law any such tax, levy, charge, fee, rate, imposition or assessment may at the option of the taxpayer be paid in installments, any Member may exercise such option.

(e)     Not create or permit to be created or remain and, at its cost and expense, promptly discharge or terminate all Liens on its Property or any part thereof which are not Permitted Encumbrances.

(f)     At its sole cost and expense, promptly comply with all present and future material laws, ordinances, orders, decrees, decisions, rules, regulations and requirements of every duly constituted governmental authority, commission and court and the officers thereof which may be applicable to it or any of its affairs, business, operations and Property, any part thereof, any of the streets, alleys, passageways, sidewalks, curbs, gutters, vaults and vault spaces adjoining any of its Property or any part thereof or to the use or manner of use, occupancy or condition of any of its Property or any part thereof.

(g)     Promptly pay or otherwise satisfy and discharge all of its obligations and Indebtedness and all demands and claims against it as and when the same become due and

payable which if not so paid, satisfied or discharged would constitute a default or an event of default under Section 502(d) hereof.

(h)    At all times comply with all terms, covenants and provisions of any Liens at such time existing upon its Property or any part thereof or securing any of its Indebtedness.

(i)    Procure and maintain all necessary licenses and permits and use its best efforts to maintain the status of its health care Facilities (other than those not currently having such status or not having such status on the date a Person becomes a Member hereunder) as providers of health care services eligible for payment under those third-party payment programs which its Governing Body determines are appropriate.

(j)    In the case of the Corporation and any Member which is a Tax-Exempt Organization at the time it becomes a Member, so long as the Master Indenture shall remain in force and effect and so long as all amounts due or to become due on all Related Bonds have not been fully paid to the holders thereof or provision for such payment has not been made, to take no action or suffer any action to be taken by others, including any action which would result in the alteration or loss of its status as a Tax-Exempt Organization, which could result in any such Related Bond being declared invalid or result in the interest on any Related Bond, which is otherwise exempt from federal or state income taxation, becoming subject to such taxation.

(k)    Operate all of its Facilities so as not to discriminate on a legally impermissible basis.

(l)    In the case of the Corporation and each Member which is a Tax-Exempt Organization at the time it becomes a Member, not distribute any of its revenues, income or profits, whether realized or unrealized, to any of its members, directors or officers or allow the same to inure to the benefit of any private person, association or corporation, other than for the lawful corporate purposes of such Member, as the case may be; *provided, further,* that no such distribution shall be made which is not permitted by the legislation pursuant to which such Member is governed or which would result in the loss or alteration of its status as a Tax-Exempt Organization.

The foregoing notwithstanding, any Member may (i) cease to be a not for profit corporation, (ii) take actions which could result in the alteration or loss of its status as a Tax-Exempt Organization or (iii) distribute its revenues, income or profits to any of its members, directors or officers or allow the same to inure to the benefit of a private person, association or corporation if (1) prior thereto there is delivered to the Master Trustee an opinion of nationally recognized municipal bond counsel (which counsel and opinion, including without limitation the scope, form and other aspects thereof, are acceptable to the Master Trustee) to the effect that such actions would not adversely affect the validity of any Related Bond, the exemption from federal or state income

-52-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

taxation of interest payable on any Related Bond otherwise entitled to such exemption or adversely affect the enforceability in accordance with its terms of the Master Indenture against any Member and (2) after such action the Obligated Group could meet the conditions described in Section 415(A) for the incurrence of one dollar of additional Funded Indebtedness.

For the purposes of this Section 406 (other than subparagraph (e) hereof), the terms Property and Facilities shall be deemed to include Excluded Property.

No Member shall be required to pay any tax, levy, charge, fee, rate, assessment or imposition referred to herein above, to remove any Lien required to be removed under this Section, pay or otherwise satisfy and discharge its obligations, Indebtedness (other than any Obligations), demands and claims against it or to comply with any Lien, law, ordinance, rule, order, decree, decision, regulation or requirement referred to in this Section, so long as such Member shall contest, in good faith and at its cost and expense, in its own name and behalf, the amount or validity thereof, in an appropriate manner or by appropriate proceedings which shall operate during the pendency thereof to prevent the collection of or other realization upon the tax, levy, charge, fee, rate, assessment, imposition, obligation, Indebtedness, demand, claim or Lien so contested, and the sale, forfeiture, or loss of its Property or any part thereof, provided that no such contest shall subject any Related Issuer, any Obligation holder or the Master Trustee to the risk of any liability. While any such matters are pending, such Member shall not be required to pay, remove or cause to be discharged the tax, levy, charge, fee, rate, assessment, imposition, obligation, Indebtedness, demand, claim or Lien being contested unless such Member agrees to settle such contest. Each such contest shall be promptly prosecuted to final conclusion (subject to the right of such Member engaging in such a contest to settle such contest), and in any event the Member will save all Related Issuers, all Related Bond Trustees, all Obligation holders and the Master Trustee harmless from and against all losses, judgments, decrees and costs (including attorneys' fees and expenses in connection therewith) as a result of such contest and will, promptly after the final determination of such contest or settlement thereof, pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable therein, together with all penalties, fines, interests, costs and expenses thereon or incurred in connection therewith. The Member engaging in such a contest shall give the Master Trustee prompt written notice of any such contest. Each Member hereby waives, to the extent permitted by law, any right which it may have to contest (i) any Obligation issued for the benefit of another Member or (ii) any Obligation issued to secure or in connection with Related Bonds.

If the Master Trustee shall notify such Member that, in the opinion of Independent Counsel, by nonpayment of any of the foregoing items the Property of such Member or any substantial part thereof will be subject to imminent loss or forfeiture, then such Member shall promptly pay all such unpaid items and cause them to be satisfied and discharged.

*Section 407. Insurance.* Each Member shall maintain, or cause to be maintained at its sole cost and expense, insurance with respect to its Property, the operation thereof and its business against such casualties, contingencies and risks (including but not limited to public liability and employee

-53-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

dishonesty) and in amounts not less than is customary in the case of corporations engaged in the same or similar activities and similarly situated and as is adequate to protect its Property and operations. For purposes of this Section 407, the term Property shall be deemed to include Excluded Property. The Obligated Group Agent shall annually review the insurance each Member maintains as to whether such insurance is customary and adequate. In addition, the Obligated Group Agent shall at least once every three Fiscal Years (commencing with its Fiscal Year beginning July 1, 2001) cause a certificate of an Insurance Consultant or Insurance Consultants to be delivered to the Master Trustee which indicates that the insurance then being maintained by the Members is customary in the case of corporations engaged in the same or similar activities and similarly situated and is adequate to protect the Obligated Group's Property and operations. The Obligated Group Agent shall cause copies of its review, or the certificates of the Insurance Consultant or Insurance Consultants, as the case may be, to be delivered promptly to the Master Trustee, to each Related Bond Trustee and to each Related Issuer. The Obligated Group or any Member may self-insure if the Insurance Consultant or Insurance Consultants determines that such self-insurance meets the standards set forth in the first sentence of this paragraph and is prudent under the circumstances.

Section 408. *Right to Perform Members' Covenants; Advances.* In the event any Member shall fail to (i) pay any tax, charge, assessment or imposition to the extent required hereunder, (ii) remove any Lien or terminate any lease to the extent required hereunder, (iii) maintain its Property in repair to the extent required hereunder, (iv) procure the insurance required hereby, in the manner herein described, or (v) fail to make any other payment or perform any other act required to be performed hereunder, and is not contesting the same in accordance with Section 406 hereof, then and in each such case the Master Trustee may (but shall not be obligated to) remedy such failure for the account of such Member and make advances for that purpose. No such performance or advance shall operate to release such Member from any such failure and any sums so advanced by the Master Trustee shall be repayable by such Member on demand and shall bear interest at the Master Trustee's announced prime rate per annum from time to time in effect, from the date of the advance until repaid. The Master Trustee shall have the right of entry on such Member's Property or any portion thereof, in order to effectuate the purposes of this Section, subject to the permission of a court of competent jurisdiction, if required by law.

Section 409. *Rates and Charges.* Each Member covenants and agrees to operate all of its Facilities on a revenue producing basis and to charge such fees and rates for its Facilities and services and to exercise such skill and diligence as to provide income from its Property together with other available funds sufficient to pay promptly all payments of principal and interest on its Indebtedness, all expenses of operation, maintenance and repair of its Property and all other payments required to be made by it hereunder to the extent permitted by law. Each Member further covenants and agrees that it will from time to time as often as necessary and to the extent permitted by law, revise its rates, fees and charges in such manner as may be necessary or proper to comply with the provisions of this Section.

-54-

The Members covenant and agree that they will cause the accountants certifying the report referred to in Section 414(B) hereof to calculate the Income Available for Debt Service and Maximum Annual Debt Service Requirement of the Obligated Group for the Fiscal Year covered by such report and to deliver a copy of such calculation to the Persons to whom such report is required to be delivered under such Section 414.

If in any Fiscal Year the Income Available for Debt Service of the Obligated Group is less than 110% of the Maximum Annual Debt Service Requirement of the Obligated Group, the Master Trustee shall require the Obligated Group at its expense to retain a Consultant to make recommendations with respect to the rates, fees and charges of the Members and the Obligated Group's methods of operation and other factors affecting its financial condition in order to increase such Income Available for Debt Service to at least 110% of the Maximum Annual Debt Service Requirement of the Obligated Group.

A copy of the Consultant's report and recommendations, if any, shall be filed with each Member, the Master Trustee, each Related Bond Trustee, each Related Issuer and each Qualifying Obligation holder. Each Member shall follow each recommendation of the Consultant applicable to it to the extent feasible (as determined by the Governing Body of such Member and each Related Issuer) and permitted by law. This Section shall not be construed to prohibit any Member from serving indigent patients to the extent required for such Member to continue its qualification as a Tax-Exempt Organization or from serving any other class or classes of patients without charge or at reduced rates so long as such service does not prevent the Obligated Group from satisfying the other requirements of this Section.

The foregoing provisions notwithstanding, if in any Fiscal Year the Income Available for Debt Service of the Obligated Group is less than 110% of the Maximum Annual Debt Service Requirement of the Obligated Group, the Master Trustee shall not be obligated to require the Obligated Group to retain a Consultant to make such recommendations if: (a) there is filed with the Master Trustee (who shall provide a copy to each Qualifying Obligation holder, Related Bond Trustee and Related Issuer) a written report addressed to them of a Consultant (which Consultant and report, including without limitation the scope, form, substance and other aspects of such report, are acceptable to the Master Trustee) which contains an opinion of such Consultant that applicable laws or regulations have prevented the Obligated Group from generating Income Available for Debt Service during such Fiscal Year in an amount sufficient to equal or exceed 110% of its Maximum Annual Debt Service Requirement and, if requested by the Master Trustee, such report is accompanied by a concurring opinion of Independent Counsel (which Counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee and any Bond Insurer (as defined in any Related Bond Indenture) as to any conclusions of law supporting the opinion of such Consultant; (b) the report of such Consultant indicates that the rates charged by the Obligated Group are such that, in the opinion of the Consultant, the Obligated Group has generated the maximum amount of Revenues reasonably practicable given such laws or regulations; and (c) the Income Available for Debt Service of the

-55-

Obligated Group for such Fiscal Year was at least 100% of the Maximum Annual Debt Service Requirement of the Obligated Group. The Obligated Group shall not be required to cause the Consultant's report referred to in the preceding sentence to be prepared more frequently than once every two Fiscal Years if at the end of the first of such two Fiscal Years the Obligated Group provides to the Master Trustee (who shall provide a copy to each Qualifying Obligation holder, Related Bond Trustee and Related Issuer) an opinion of Independent Counsel (which Counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee) to the effect that the applicable laws and regulations underlying the Consultant's report delivered in respect of the previous Fiscal Year have not changed in any material way.

Section 410. *Damage or Destruction.* Each Member agrees to notify the Master Trustee immediately in the case of the destruction of its Facilities or any portion thereof as a result of fire or other casualty, or any damage to such Facilities or portion thereof as a result of fire or other casualty, the Net Proceeds of which are estimated to exceed the greater of (a) $1,000,000 or (b) the sum of $1,000,000 plus an amount equal to $1,000,000 multiplied by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from its level as of July 1, 1998.

In the event such Net Proceeds exceed the greater of (a) or (b) above, the Member suffering such casualty or loss shall within 12 months after the date on which the Net Proceeds are finally determined elect by written notice of such election to the Master Trustee one of the following three options, subject to the approval of the Master Trustee (which approval may not be unreasonably withheld):

(a) Option A - Repair and Restoration. Such Member may elect to replace, repair, reconstruct, restore or improve any of the Facilities of the Obligated Group or acquire additional Facilities for the Obligated Group or repay Indebtedness incurred for any such purpose pending the receipt of such Net Proceeds. In such event an amount equal to the Net Proceeds of any insurance relating thereto shall be deposited, when received, with the Master Trustee and such Member shall proceed forthwith to replace, repair, reconstruct, restore or improve Facilities of the Obligated Group or to acquire additional Facilities and will apply the Net Proceeds of any insurance relating to such damage or destruction received from the Master Trustee to the payment or reimbursement of the costs of such replacement, repair, reconstruction, restoration, improvement or acquisition or to the repayment of such Indebtedness. So long as the Members are not in default hereunder, any Net Proceeds of insurance relating to such damage or destruction received by the Master Trustee shall be released from time to time by the Master Trustee to such Member upon the receipt by the Master Trustee of

(1) the Written Request of such Member specifying the expenditures made or to be made or the Indebtedness incurred in connection with such replacement, repair, reconstruction, restoration, improvement or acquisition and

-56-

stating that such Net Proceeds, together with any other moneys legally available for such purposes, will be sufficient to complete such replacement, repair, reconstruction, restoration, improvement or acquisition; and

(2)   if such expenditures were or are to be made or such Indebtedness was incurred for the construction or renovation of Facilities, the written approval of such Written Request by an Independent Architect if one has been retained to supervise such construction or renovation.

It is further understood and agreed that in the event such Member shall elect this Option A, such Member shall complete the replacement, repair, reconstruction, restoration, improvement and acquisition of the Facilities, whether or not the Net Proceeds of insurance received for such purposes are sufficient to pay for the same.

(b)   Option B - Prepayment of Obligations.  Subject to the obligations of the Members under Section 406 hereof, such Member may elect to have all of the Net Proceeds payable as a result of such damage or destruction applied to the prepayment of the Obligations. In such event such Member shall, in its notice of election to the Master Trustee, direct the Master Trustee to apply such Net Proceeds, when and as received, to the prepayment of the Obligations.

(c)   Option C - Partial Restoration and Partial Prepayment of Obligations.  Such Member may elect to have a portion of such Net Proceeds applied to the replacement, repair, reconstruction, restoration and improvement of the Facilities of the Obligated Group or the acquisition of additional Facilities for the Obligated Group or the repayment of Indebtedness incurred for any such purpose pending the receipt of such Net Proceeds with the remainder of such Net Proceeds to be applied to prepay Obligations, in which event such Net Proceeds to be used for replacement, repair, reconstruction, restoration, improvement and acquisition shall be applied as set forth in subparagraph (a) of this Section 410 and such Net Proceeds to be used for prepayment of the Obligations shall be applied as set forth in subparagraph (b) of this Section.

The foregoing notwithstanding, no Member will be required to comply with this Section 410 to the extent that the Facilities damaged or destroyed were pledged as security for Non-Recourse Indebtedness incurred in accordance with Section 415(F) hereof or Indebtedness secured by Liens in accordance with Section 418(ii) hereof and the documents pursuant to which such Indebtedness was incurred require Net Proceeds to be applied in a manner inconsistent with this Section 410.

*Section 411. Condemnation.*  The Master Trustee shall cooperate fully with the Members in the handling and conduct of any prospective or pending condemnation proceedings with respect to their Facilities or any part thereof. Each Member hereby irrevocably assigns to the Master Trustee, as its interests may appear, all right, title and interest of such Member in and to any Net

Proceeds of any award, compensation or damages payable in connection with any such condemnation or taking, or payment received in a sale transaction consummated under threat of condemnation (any such award, compensation, damages or payment being hereinafter referred to as an "award"), which exceeds the greater of (a) $1,000,000 or (b) the sum of $1,000,000 plus an amount equal to $1,000,000 multiplied by a percentage equal to the aggregate percentage increase or decrease, as the case may be, in the Construction Index from its level as of July 1, 1998. Such Net Proceeds shall be initially paid to the Master Trustee for disbursement or use as hereinafter provided.

In the event such Net Proceeds exceed the greater of (a) or (b) above, the Member in question shall within 12 months after the date on which the Net Proceeds are finally determined elect by written notice of such election to the Master Trustee one of the following three options, subject to the approval of the Master Trustee (which approval may not be unreasonably withheld):

(a)    Option A - Repairs and Improvements. The Member may elect to use the Net Proceeds of the award for restoration or replacement of or repairs and improvements to the Facilities of the Obligated Group or the acquisition of additional Facilities for the Obligated Group or the repayment of Indebtedness incurred for any such purpose pending the receipt of such Net Proceeds. In such event, so long as the Obligated Group is not in default hereunder, such Member shall have the right to receive such Net Proceeds from the Master Trustee from time to time upon the receipt by the Master Trustee of:

(1)    the Written Request of such Member specifying the expenditures made or to be made or the Indebtedness incurred in connection with such restoration, replacement, repairs, improvements and acquisitions and stating that such Net Proceeds, together with any other moneys legally available for such purposes, will be sufficient to complete such restoration, replacement, repairs, improvements and acquisition; and

(2)    if such expenditures were or are to be made or such Indebtedness was incurred for the construction or renovation of Facilities, the written approval of such Written Request by an Independent Architect if one has been retained to supervise such construction or renovation.

(b)    Option B - Prepayment of Obligations. Subject to the obligation of such Member under Section 406 hereof, such Member may elect to have such Net Proceeds of the award applied to the prepayment of the Obligations. In such event such Member shall, in its notice of election to the Master Trustee, direct the Master Trustee to apply such Net Proceeds, when and as received, to the prepayment of the Obligations.

(c)    Option C - Partial Restoration and Partial Prepayment of Obligations. Such Member may elect to have a portion of such Net Proceeds of the award applied to the repair, replacement, restoration and improvement of the Facilities of the Obligated Group or the

-58-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

acquisition of additional Facilities for the Obligated Group or the repayment of Indebtedness incurred for any such purpose pending the receipt of such Net Proceeds, with the remainder of such Net Proceeds to be applied to the prepayment of Obligations, in which event such Net Proceeds to be used for repair, replacement, restoration, improvement and acquisition shall be applied as set forth in subparagraph (a) of this Section 411 and such Net Proceeds to be used for prepayment of the Obligations shall be applied as set forth in subparagraph (b) of this Section.

The foregoing notwithstanding, no Member will be required to comply with this Section 411 to the extent that the Facilities condemned were pledged as security for Non-Recourse Indebtedness incurred in accordance with Section 415(F) or Indebtedness secured by Liens in accordance with Section 418(ii) hereof and the documents pursuant to which such Indebtedness was issued require Net Proceeds to be applied in a manner inconsistent with this Section 411.

*Section 412. Other Provisions with Respect to Net Proceeds.* Amounts received by the Master Trustee in respect of any awards shall, at the Written Request of the Obligated Group Agent, be deposited with the Master Trustee in a special trust account and be invested or reinvested by the Master Trustee in Permitted Investments subject to any Member's right to receive the same pursuant to Sections 410 and 411 hereof. If any Member elects to proceed under either Section 410 (a) or (c) or 411 (a) or (c), any amounts in respect of such Net Proceeds not so paid to such Member shall be used to prepay Obligations. Notwithstanding anything herein to the contrary, any moneys on deposit with the Master Trustee shall be invested in accordance with, and subject to the terms of, the Tax Exemption Agreement to the extent applicable.

*Section 413. Merger, Consolidation, Sale or Conveyance.* (a) Each Member agrees that it will not merge into, or consolidate with, one or more corporations which are not Members, or allow one or more of such corporations to merge into it, or sell or convey all or substantially all of its Property to any Person who is not a Member, unless:

(i) Any successor corporation to such Member (including without limitation any purchaser of all or substantially all the Property of such Member) is a corporation organized and existing under the laws of the United States of America or a state thereof and shall execute and deliver to the Master Trustee an appropriate instrument, satisfactory to the Master Trustee, containing the agreement of such successor corporation to assume, jointly and severally, the due and punctual payment of the principal of, premium, if any, and interest on all Obligations according to their tenor and the due and punctual performance and observance of all the covenants and conditions of this Master Indenture to be kept and performed by such Member;

(ii) Immediately after such merger or consolidation, or such sale or conveyance, no Member would be in default in the performance or observance of any covenant or condition of any Related Loan Document or this Master Indenture;

-59-

(iii)     Immediately after such merger or consolidation, or such sale or conveyance, the condition described in Section 418(ii)(a) would be met for the creation of a Lien on Property and the condition described in Section 415(A) would be met for the incurrence of one dollar of additional Funded Indebtedness, assuming that any Indebtedness of any successor or acquiring corporation is Indebtedness of such Member and that the Revenues and Expenses of the Member for such most recent Fiscal Year include the Revenues and Expenses of such other corporation; and

(iv)     If all amounts due or to become due on all Related Bonds have not been fully paid to the holders thereof or fully provided for, there shall be delivered to the Master Trustee an opinion of nationally recognized municipal bond counsel (which counsel and opinion, including without limitation the scope, form, substance and other aspects thereof, are acceptable to the Master Trustee) to the effect that under then existing law the consummation of such merger, consolidation, sale or conveyance, whether or not contemplated on the original date of delivery of such Related Bonds, would not adversely affect the validity of such Related Bonds or the exemption otherwise available from federal income taxation of interest payable on such Related Bonds.

(b)     In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for its predecessor, with the same effect as if it had been named herein as such Member. Any successor corporation to such Member thereupon may cause to be signed and may issue in its own name Obligations hereunder and the predecessor corporation shall be released from its obligations hereunder and under any Obligations, if such predecessor corporation shall have conveyed all Property owned by it (or all such Property shall be deemed conveyed by operation of law) to such successor corporation. All Obligations so issued by such successor corporation hereunder shall in all respects have the same legal rank and benefit under this Master Indenture as Obligations theretofore or thereafter issued in accordance with the terms of this Master Indenture as though all of such Obligations had been issued hereunder by such prior Member without any such consolidation, merger, sale or conveyance having occurred.

(c)     In case of any such consolidation, merger, sale or conveyance such changes in phraseology and form (but not in substance) may be made in Obligations thereafter to be issued as may be appropriate.

(d)     The Master Trustee may rely upon an opinion of Independent Counsel as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Section and that it is proper for the Master Trustee under the provisions of Article VII and of this Section to join in the execution of any instrument required to be executed and delivered by this Section.

-60-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Section 414. *Financial Statements, Etc.* The Members covenant that they will keep or cause to be kept proper books of records and accounts in which full, true and correct entries will be made of all dealings or transactions of or in relation to the business and affairs of the Obligated Group in accordance with generally accepted principles of accounting consistently applied (i) except to the extent required by the final paragraph of the definitions section hereof and (ii) except as may be disclosed in the notes to the audited financial statements referred to in subparagraph (B) below. To the extent that generally accepted accounting principles would require consolidation of certain financial information of entities which are not Members of the Obligated Group with financial information of one or more Members, consolidated financial statements prepared in accordance with generally accepted accounting principles which include information with respect to entities which are not Members of the Obligated Group may be delivered in satisfaction of the requirements of this Section 414 so long as: (a) supplemental information in sufficient detail to separately identify the information with respect to the Members of the Obligated Group is delivered to the Master Trustee with the audited financial statements; (b) such supplemental information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements delivered to the Master Trustee and, in the opinion of the accountant, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole; and (c) such supplemental information is used for the purposes hereof or for any agreement, document or certificate executed and delivered in connection or pursuant to this Master Indenture. The Members further covenant that they will furnish to the Master Trustee, any Bond Insurer under any Related Bond Indenture, any requesting Qualifying Obligation holder, any Related Issuers and any Related Bond Trustees:

(A)     As soon as practicable after they are available but in no event more than 60 days after the expiration of each of the first three quarterly fiscal periods of each Fiscal Year of the Obligated Group, combined and combining statement of operations and changes in net assets of the Obligated Group and subsidiaries during such period, and combined and combining statement of financial position as of the end of each such quarterly fiscal period, all in reasonable detail and certified, subject to year-end adjustment, by the Treasurer or another authorized financial officer of the Obligated Group Agent.

(B)     As soon as practicable after they are available, but in no event more than 150 days after the last day of each Fiscal Year, a financial report for such Fiscal Year certified by a firm of nationally recognized independent certified public accountants selected by the Obligated Group Agent and satisfactory to the Master Trustee and each Related Issuer covering the operations of the Obligated Group and subsidiaries for such Fiscal Year and containing a combined and an unaudited combining statement of financial position as of the end of such Fiscal Year and a combined and an unaudited combining statement of changes in net assets for such Fiscal Year and combined and unaudited combining statement of operations for such Fiscal Year, showing in each case in comparative form the financial figures for the preceding Fiscal Year, together with a separate written statement of the accountants preparing such report containing a calculation of the Obligated Group's Historical Debt Service Coverage Ratio and Historical Maximum Annual Debt Service

-61-

Mercy Hospital Iowa City/641968-2/Master Trust Indenture

Coverage Ratio for said Fiscal Year and a statement that such accountants have obtained no knowledge of any default by any Member in the fulfillment of any of the terms, covenants, provisions or conditions of this Master Indenture, or if such accountants shall have obtained knowledge of any such default or defaults, they shall disclose in such statement the default or defaults and the nature thereof (but such accountants shall not be liable directly or indirectly to anyone for failure to obtain knowledge of any default).

(C)    At the time of delivery of the financial report referred to in subsection (B) above, a certificate of the Obligated Group Agent signed by its President or any Vice President, stating that the Obligated Group Agent has made a review of the activities of each Member during the preceding Fiscal Year for the purpose of determining whether or not the Members have complied with all of the terms, provisions and conditions of this Master Indenture and that each Member has kept, observed, performed and fulfilled each and every covenant, provision and condition of this Master Indenture on its part to be performed and is not in default in the performance or observance of any of the terms, covenants, provisions or conditions hereof, or if any Member shall be in default such certificate shall specify all such defaults and the nature thereof.

(D)    Such additional information as the Master Trustee, any requesting Qualifying Obligation holder, any Related Issuer or any Related Bond Trustee may reasonably request concerning any Member in order to enable the Master Trustee, such Qualifying Obligation holder, such Related Issuer or such Related Bond Trustee to determine whether the covenants, terms and provisions of this Master Indenture have been complied with by the Members and for that purpose all pertinent books, documents and vouchers relating to the business, affairs and Property (other than patient, donor and personnel records) of the Members shall, to the extent permitted by law, at all times during regular business hours be open to the inspection of such accountant or other agent (who may make copies of all or any part thereof) as shall from time to time be designated and compensated by the Master Trustee, such Qualifying Obligation holder, such Related Issuer or such Related Bond Trustee.

The Obligated Group Agent also agrees to provide copies of the information referred to in subsections (A) and (B) above to each Rating Agency then maintaining a rating on any Related Bonds or any Indebtedness of any Member.

The Members also agree that, within 10 days after its receipt thereof, the Obligated Group Agent will file with the Master Trustee a copy of each Consultant's report or counsel's opinion required to be prepared under the terms of this Master Indenture.

Without limiting the foregoing each Member will permit the Master Trustee, any such Qualifying Obligation holder, any such Related Issuer or any such Related Bond Trustee (or such persons as they may designate) to visit and inspect, at the expense of such Person, its Property and

-62-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

to discuss the affairs, finances and accounts of the Obligated Group with its officers and independent accountants, all at such reasonable times and as often as the Master Trustee, such Qualifying Obligation holder, such Related Issuer or such Related Bond Trustee may reasonably desire.

The Obligated Group Agent shall give prompt written notice of a change of accountants by the Obligated Group to the Master Trustee and each such Related Issuer and Related Bond Trustee. The notice shall state: (i) the effective date of such change; (ii) whether there were any unresolved disagreements with the former accountants on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which the accountants claimed would have caused them to refer to the disagreement in a report on the disputed matter, if it was not resolved to their satisfaction; and (iii) such additional information relating thereto as such Related Issuer, Related Bond Trustee or the Master Trustee may reasonably request.

Each Member agrees that, whenever requested by any Related Issuer, it shall provide and certify, or cause to be provided and certified, in form satisfactory to such Related Issuer, such information concerning such Member and the other Members, their property, their operation and finances and other matters that such Related Issuer considers necessary to enable it to complete and publish an official statement relating to its Related Bonds when any of such Related Bonds are to be offered for sale or to enable it to make any reports required by law, governmental regulations or the Related Bond Indenture in connection with any such Related Bonds.

*Section 415. Permitted Additional Indebtedness.* So long as any Obligations are outstanding, the Obligated Group will not incur any Additional Indebtedness (whether or not incurred through the issuance of Additional Obligations) other than:

(A)     Funded Indebtedness, if prior to incurrence thereof or, if such Funded Indebtedness was incurred in accordance with another subsection of this Section 415 and any Member wishes to have such Indebtedness classified as having been issued under this subsection (A), prior to such classification, there is delivered to the Master Trustee:

(i)     An Officer's Certificate from the Obligated Group Agent (which Officer's Certificate, including without limitation the scope, form, substance and other aspects thereof, is acceptable to the Master Trustee) stating that the Funded Indebtedness Ratio of the Obligated Group, after giving effect to the incurrence of such Indebtedness and to the application of the proceeds thereof, does not exceed 0.67:1; or

(ii)     An Officer's Certificate from the Obligated Group Agent (which Officer's Certificate, including without limitation the scope, form, substance and other aspects thereof, is acceptable to the Master Trustee) stating that the Historical Pro Forma Debt Service Coverage Ratio of the Obligated Group for the most recent Fiscal Year preceding the date of delivery of the report for which combined financial

-63-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

statements reported upon by independent certified public accountants are available
was not less than 1.15:1; or

(iii)     (a) An Officer's Certificate from the Obligated Group Agent (which
Officer's Certificate, including without limitation the scope, form, substance and
other aspects thereof, is acceptable to the Master Trustee) stating that the Historical
Maximum Annual Debt Service Coverage Ratio of the Obligated Group for the
Fiscal Year next preceding the incurrence of such Funded Indebtedness for which
combined financial statements reported upon by independent certified public
accountants are available was not less than 1.10:1; and (b)(1) a written Consultant's
report (which report, including without limitation the scope, form, substance and
other aspects thereof, is acceptable to the Master Trustee) to the effect that the
Projected Debt Service Coverage Ratio of the Obligated Group for the next Fiscal
Year or, if such Indebtedness is being incurred in connection with the financing of
Facilities, the Fiscal Year succeeding the projected completion date of such Facilities,
is not less than 1.10:1, or (2) an Officer's Certificate from the Obligated Group Agent
in a form acceptable to the Master Trustee to the effect that the Projected Debt
Service Coverage Ratio of the Obligated Group for the next succeeding Fiscal Year
or, if such Indebtedness is being incurred in connection with the financing of
Facilities, the Fiscal Year succeeding the projected completion date of such Facilities,
is not less than 1.20: 1, provided that either of such reports shall include forecast
balance sheets, statements of revenues and expenses and statements of cash flows for
such Fiscal Year and a statement of the relevant assumptions upon which such
forecasted statements are based, which financial statements must indicate that
sufficient revenues and cash flow could be generated to pay the operating expenses
of the Obligated Group's proposed and existing Facilities and the debt service on the
Obligated Group's other existing Indebtedness during such Fiscal Year; provided that
the requirements of the foregoing subsection (iii)(a) or (b), as the case may be, shall
be deemed satisfied if (x) there is delivered to the Master Trustee the report of a
Consultant (which report, including without limitation the scope, form, substance and
other aspects thereof, is acceptable to the Master Trustee and which contains the
information required by the proviso to subsection (iii)(b) in the case of projections)
which contains an opinion of such Consultant that applicable laws or regulations
have prevented or will prevent the Obligated Group from generating the amount of
Income Available for Debt Service required to be generated by subsection (iii)(a) or
(b), as the case may be, as a prerequisite to the issuance of Funded Indebtedness, and,
if requested by the Master Trustee, such report is accompanied by a concurring
opinion of Independent Counsel (which Counsel and opinion, including without
limitation the scope, form, substance and other aspects thereof, are acceptable to the
Master Trustee) as to any conclusions of law supporting the opinion of such
Consultant, (y) the report of the Consultant indicates that the rates charged or to be
charged by the Obligated Group are or will be such that, in the opinion of such

-64-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Consultant, the Obligated Group has generated or will generate the maximum amount of Revenues reasonably practicable given such laws or regulations, and (z) the Historical Maximum Annual Debt Service Coverage Ratio of the Obligated Group and the Projected Debt Service Coverage Ratio of the Obligated Group referred to in the applicable subsection are at least 1.00:1.

(B)     Completion Funded Indebtedness if there is delivered to the Master Trustee: (i) an Officer's Certificate of the Member for whose benefit such Indebtedness is being issued stating that at the time the original Funded Indebtedness for the Facilities to be completed was incurred, such Member had reason to believe that the proceeds of such Funded Indebtedness together with other moneys then expected to be available would provide sufficient moneys for the completion of such Facilities, (ii) a statement of an Independent Architect or an expert acceptable to the Master Trustee setting forth the amount estimated to be needed to complete the Facilities, and (iii) an Officer's Certificate of such Member stating that the proceeds of such Completion Funded Indebtedness to be applied to the completion of the Facilities, together with a reasonable estimate of investment income to be earned on such proceeds and available to pay such costs, the amount of moneys, if any, committed to such completion from available cash or marketable securities and reasonably estimated earnings thereon, enumerated bank loans (including letters or lines of credit) and federal or state grants reasonably expected to be available, will be in an amount not less than the amount set forth in the statement of an Independent Architect or other expert, as the case may be, referred to in (ii).

(C)     Funded Indebtedness for the purpose of refunding (whether in advance or otherwise, including without limitation refunding through the issuance of Cross-over Refunding Indebtedness) any outstanding Funded Indebtedness if prior to the incurrence thereof an Officer's Certificate of a Member is delivered to the Master Trustee stating that, taking into account the issuance of the proposed Funded Indebtedness and the application of the proceeds thereof and any other funds available to be applied to such refunding, the Maximum Annual Debt Service Requirement of the Obligated Group will not be increased by more than 15%.

(D)     Short-Term Indebtedness (other than Short-Term Indebtedness incurred in accordance with subsection (E) hereof) in a total principal amount which at the time incurred does not, together with the principal amount of all other such Short-Term Indebtedness of the Obligated Group then outstanding under this subsection (D) and the principal payable on all Funded Indebtedness during the next succeeding 12 months, excluding such principal to the extent that amounts are on deposit in an irrevocable escrow and such amounts (including, where appropriate, the earnings or other increments to accrue thereon) are required to be applied to pay such principal and such amounts so required to be applied are sufficient to pay such principal, exceed 25% of the Revenues of the Obligated Group for the most recent Fiscal Year for which combined financial statements reported upon by

-65-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

independent certified public accountants are available; *provided, however,* that for a period of 20 consecutive calendar days in each Fiscal Year the total amount of such Short-Term Indebtedness of the Obligated Group outstanding under this subsection (D) shall be not more than 5% of the Revenues of the Obligated Group during the preceding Fiscal Year plus such additional amount as the Obligated Group Agent certifies in an Officer's Certificate is (a) attributable to Short-Term Indebtedness incurred to offset a temporary delay in the receipt of funds due from third party payors and (b) in the minimum amount reasonably practicable taking into account such delay. For the purposes of this subsection, Short-Term Indebtedness shall not include overdrafts to banks to the extent there are immediately available funds of the Obligated Group sufficient to pay such overdrafts and such overdrafts are incurred and corrected in the normal course of business.

(E)     Short-Term Indebtedness if:

(i)     There is in effect at the time the Short-Term Indebtedness provided for by this subsection (E) is incurred a binding commitment (including without limitation letters or lines of credit or insurance) which may be subject only to commercially reasonable contingencies, by a financial institution rated "A" or better by a Rating Agency, which commitment is acceptable to the Master Trustee, to provide financing sufficient to pay such Short-Term Indebtedness at its maturity; and

(ii)     The conditions described in subsection (A) are met with respect to such Short-Term Indebtedness when it is assumed that such Short-Term Indebtedness is Funded Indebtedness maturing over 30 years from the date of issuance of the Short-Term Indebtedness, bears interest on the unpaid principal balance at the Projected Rate and is payable on a level annual debt service basis over a 30-year period.

(F)     Non-Recourse Indebtedness.

(G)     Balloon Indebtedness if:

(i)     (a) there is in effect at the time such Balloon Indebtedness is incurred a binding commitment (including without limitation letters or lines of credit) which may be subject only to commercially reasonable contingencies by a financial institution rated "A" or better by a Rating Agency, which commitment is acceptable to the Master Trustee, to provide financing sufficient to pay the principal amount of such Balloon Indebtedness coming due in each consecutive 12 month period in which 25% or more of the original principal amount of such Balloon Indebtedness comes due; and

-66-

(b)      the conditions set forth in subsection (A) are met with respect to such Balloon Indebtedness when the assumptions set forth in subsection (E)(ii) above are made with respect to the portion of such Balloon Indebtedness becoming due during each such 12 month period; or

(ii)      (a) a Member establishes in an Officer's Certificate filed with the Master Trustee an amortization schedule for such Balloon Indebtedness, which amortization schedule shall provide for payments of principal and interest for each Fiscal Year that are not less than the amounts required to make any actual payments required to be made in such Fiscal Year by the terms of such Balloon Indebtedness;

(b)      such Member agrees in such Officer's Certificate to deposit for each Fiscal Year with a bank or trust company (pursuant to an agreement between such Member and such bank or trust company, which agreement shall be satisfactory in form and substance to the Master Trustee) the amount of principal shown on such amortization schedule net of any amount of principal actually paid on such Balloon Indebtedness during such Fiscal Year (other than from amounts on deposit with such bank or trust company) which deposit shall be made prior to any such required actual payment during such Fiscal Year if the amounts so on deposit are intended to be the source of such actual payments; and

(c)      the conditions described in subsection (A) above are met with respect to such Balloon Indebtedness when it is assumed that such Balloon Indebtedness is actually payable in accordance with such amortization schedule.

(H)      Put Indebtedness if the conditions set forth in subsection (A) above are met with respect to such Put Indebtedness when it is assumed that such Put Indebtedness bears interest at the Projected Rate and is payable on a level annual debt service basis over a 30 year period commencing with the next succeeding Put Date.

(I)      Guaranties by any Member of the payment by another Person of a sum certain; provided that the conditions set forth herein are satisfied if it is assumed that the Indebtedness guaranteed is Funded Indebtedness of such Member. In making the calculation required by this subsection (1) the Obligated Group's Income Available for Debt Service shall not be deemed to include any Revenues of the Primary Obligor and the debt service payable with respect to the Indebtedness guaranteed shall be calculated in accordance with the assumptions contained in this Master Indenture.

(J)      Liabilities for contributions to self-insurance or shared or pooled-risk insurance programs required or permitted to be maintained under this Master Indenture.

(K)      Commitment Indebtedness.

-67-

(L)     Indebtedness consisting of accounts payable incurred in the ordinary course of business or other Indebtedness not incurred or assumed primarily to assure the repayment of money borrowed or credit extended which Indebtedness is incurred in the ordinary course of business.

(M)     Indebtedness the principal amount of which at the time incurred, together with the aggregate principal amount of all other Indebtedness then outstanding which was issued pursuant to the provisions of this subsection (M) and which has not been subsequently reclassified as having been issued under subsection (A), (E), (G) or (H), does not exceed 15% of the Revenues of the Obligated Group for the latest preceding Fiscal Year for which combined financial statements reported upon by independent certified public accountants are available.

(N)     Indebtedness incurred in connection with a sale of accounts receivable with or without recourse on commercially reasonable terms by any Member consisting of an obligation to repurchase all or a portion of such accounts receivable upon certain conditions, provided that the principal amount of such Indebtedness permitted hereby shall not exceed 125% of the aggregate face amount of such accounts receivable.

It is agreed and understood by the parties hereto that various types of Indebtedness may be incurred under any of the above-referenced subsections with respect to which the tests set forth in such subsection are met and need not be incurred under only a subsection specifically referring to such type of Indebtedness (e.g., Balloon Indebtedness and Put Indebtedness may be incurred under subsection (A) above if the tests therein are satisfied).

Each Member covenants that Indebtedness of the type permitted to be incurred under subsection (L) above will not be allowed to become overdue for a period in excess of that which is ordinary for similar institutions without being contested in good faith and by appropriate proceedings.

Each Member covenants that prior to, or as soon as reasonably practicable after, the incurrence of Indebtedness by such Member for money borrowed or credit extended, or the equivalent thereof, after the date of issuance of the Series 1998 Obligation it will deliver to the Master Trustee an Officer's Certificate which identifies the Indebtedness incurred, identifies the subsection of this Section 415 pursuant to which such Indebtedness was incurred, demonstrates compliance with the provisions of such subsection and attaches a copy of the instrument evidencing such Indebtedness; *provided, however,* that this requirement shall not apply to Indebtedness incurred pursuant to subsection (J) or (L) of this Section 415.

Each Member agrees that, prior to incurring Additional Indebtedness for money borrowed or credit extended to entities other than Related Issuers, sellers of real or personal property for purchase money debt, lessors of such property or banks or other institutional lenders, it will provide

-68-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

the Master Trustee with an opinion of Independent Counsel acceptable to the Master Trustee to the effect that, to such Counsel's knowledge, such Member has complied in all material respects with all applicable state and federal laws regarding the issuance of securities in connection with the incurrence of such Additional Indebtedness (including the issuance of any securities or other evidences of indebtedness in connection therewith) and such Counsel has no reason to believe that a right of rescission under such laws exists on the part of the entities to which such Additional Indebtedness is to be incurred.

Section 416. *Calculation of Debt Service and Debt Service Coverage.* The various calculations of the amount of Indebtedness of a Person, the amortization schedule of such Indebtedness and the debt service payable with respect to such Indebtedness required under certain provisions of this Master Indenture shall be made in a manner consistent with that adopted in Section 415 and in this Section 416. In the case of Balloon or Put Indebtedness issued pursuant to subsection (B), (G), (H) or (M) of Section 415 hereof, unless such Indebtedness is reclassified pursuant to this Section 416 as having been issued pursuant to another subsection of Section 415, the amortization schedule of such Indebtedness and the debt service payable with respect to such Indebtedness for future periods shall be calculated on the assumption that such Indebtedness is being issued simultaneously with such calculation. With respect to Put Indebtedness, if the option of the holder to require that such Indebtedness be paid, purchased or redeemed prior to its stated maturity date, or if the requirement that such Indebtedness be paid, purchased, or redeemed prior to its stated maturity date (other than at the option of such holder and other than pursuant to any mandatory sinking fund or any similar fund), has expired or lapsed as of the date of calculation, such Put Indebtedness shall be deemed payable in accordance with its terms.

In determining the amount of debt service payable on Indebtedness in the course of the various calculations required under certain provisions of this Master Indenture, if the terms of the Indebtedness being considered are such that interest thereon for any future period of time is expressed to be calculated at a varying rate per annum, a formula rate or a fixed rate per annum based on a varying index, then for the purpose of making such determination of debt service, interest on such Indebtedness for such period (the "Determination Period") shall be computed by assuming that the rate of interest applicable to the Determination Period is equal to the average of the rate of interest (calculated in the manner in which the rate of interest for the Determination Period is expressed to be calculated) which was in effect on the last date of each of any six consecutive calendar months occurring in the nine full calendar months immediately preceding the month in which such calculation is made; provided that if the index or other basis for calculating such interest was not in existence for at least six full calendar months next preceding the date of calculation, the rate of interest for such portion of such period shall be computed as aforesaid using the Bond Buyer Revenue Bond Index as the applicable index.

The Debt Service Requirement for outstanding Balloon or Put Indebtedness or Short-Term Indebtedness incurred pursuant to the provisions of Section 415 of the Master Indenture for future

-69-

periods of time shall be calculated on the assumption that such Indebtedness is incurred on the date of such calculation.

No debt service shall be deemed payable with respect to Commitment Indebtedness until such time as funding occurs under the commitment which gave rise to such Commitment Indebtedness. From and after such funding, the amount of such debt service shall be calculated in accordance with the actual amount required to be repaid on such Commitment Indebtedness and the actual interest rate and amortization schedule applicable thereto. No Additional Indebtedness shall be deemed to arise when any funding occurs under any such commitment or any such commitment is renewed upon terms which provide for substantially the same terms of repayment of amounts disbursed pursuant to such commitment as obtained prior to such renewal. In addition, no Additional Indebtedness shall be deemed to arise when Indebtedness which bears interest at a variable rate of interest is converted to Indebtedness which bears interest at a fixed rate or the method of computing the variable rate on such Indebtedness is changed or the terms upon which Indebtedness, if Put Indebtedness, may be or is required to be tendered for purchase are changed, if such conversion or change is in accordance with the provisions applicable to such variable rate Indebtedness or Put Indebtedness in effect immediately prior to such conversion or change.

Conversion of variable rate Indebtedness to bear interest at a fixed rate in accordance with its terms or a shift in the method of computing interest or the terms on which Put Indebtedness may be tendered which shift is made in accordance with the terms of such Indebtedness shall not be deemed to constitute the issuance of such Indebtedness for the purposes of applying the various tests under this Master Indenture.

Balloon Indebtedness incurred as provided under subsection (B) or (M) of Section 415, unless reclassified pursuant to this Section 416, shall be deemed to be Payable in accordance with the assumptions set forth in subsection (G)(i)(b) of Section 415. Put Indebtedness incurred as provided under subsection (B) or (M) of Section 415, unless reclassified pursuant to this Section 416, shall be deemed to be payable in accordance with the assumptions set forth in subsection (H) of Section 415.

Except for the purpose of determining whether any particular Guaranty may be incurred in which case it shall be assumed that 100% of the Indebtedness guaranteed is Funded Indebtedness of the guarantor under such Guaranty and except for the purpose of calculating any historical Debt Service Requirements in which case the guarantor's Debt Service Requirements under a Guaranty shall be deemed to be the actual amount paid on such Guaranty by the guarantor, a guarantor shall be considered liable only for 20% of the annual debt service requirement on the Indebtedness guaranteed; *provided, however,* if the guarantor has been required by reason of its guaranty to make a payment in respect of such Indebtedness within the immediately preceding 24 months, the

guarantor shall be considered liable for 100% of the annual debt service requirement on the Indebtedness guaranteed. For the purpose of the various calculations required under this Master Indenture, the Capitalized Rentals under a Capital Lease at the time of such calculation shall be deemed to be the principal payable thereon.

Each Member may elect to have Indebtedness issued pursuant to one provision of Section 415, including without limitation subsection (M) of Section 415, reclassified as having been incurred under another provision of Section 415, by demonstrating compliance with such other provision on the assumption that such Indebtedness is being reissued on the date of delivery of the materials required to be delivered under such other provision including the certification of any applicable Projected Rate. From and after such demonstration, such Indebtedness shall be deemed to have been incurred under the provision with respect to which such compliance has been demonstrated until any subsequent reclassification of such Indebtedness.

Anything herein to the contrary notwithstanding, any portion of any Indebtedness of any Member for which an Interest Rate Agreement has been obtained by such Member shall be deemed to bear interest for the period of time that such Interest Rate Agreement is in effect at a net rate which takes into account the interest payments made by such Member on such Indebtedness and the payments made or received by such Member on such Interest Rate Agreement; provided that the long-term credit rating of the provider of such Interest Rate Agreement (or any guarantor thereof) is in one of the three highest rating categories of any Rating Agency (without regard to any refinements or gradation of rating category by numerical modifier or otherwise) or is at least as high as that of the Obligated Group. In addition, so long as any Indebtedness is deemed to bear interest at a rate taking into account an Interest Rate Agreement, any payments made by a Member on such Interest Rate Agreement shall be excluded from Expenses and any payments received by a Member on such Interest Rate Agreement shall be excluded from Revenues, in each case, for all purposes of this Master Indenture.

*Section 417. Sale, Lease or Other Disposition of Property.* Each Member agrees that it will not, in any consecutive 12-month period, sell, lease or otherwise dispose (including without limitation any involuntary disposition) of Property which, together with all other Property transferred by Members in transactions other than those described in subsections (A) through (G) hereof, totals for such 12-month period in excess of 15% of the total value of the Property of the Obligated Group (calculated on the basis of the Book Value of the assets shown on the assets side of the balance sheet in the combined financial statements of the Obligated Group for the Fiscal Year next preceding the date of such sale, lease or other disposition for which combined financial statements of the Obligated Group reported on by independent certified public accountants are available or, if the Obligated Group Agent so elects, on the basis of Current Value), except for transfers or other dispositions in the ordinary course of business and except for transfers or other dispositions of Property:

(A)     In return for other Property of equal or greater value and usefulness;

-71-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

(B)     To any Person, if prior to such sale, lease or other disposition there is delivered to the Master Trustee an Officer's Certificate of a Member stating that, in the judgment of the signer, such Property has, or within the next succeeding 24 calendar months is reasonably expected to, become inadequate, obsolete, worn out, unsuitable, unprofitable, undesirable or unnecessary and the sale, lease or other disposition thereof will not impair the structural soundness, efficiency or economic value of the remaining Property;

(C)     To another Member;

(D)     Upon fair and reasonable terms no less favorable to the Member than would obtain in a comparable arm's-length transaction, if following such transfer the proceeds received by the transferor are retained thereby, applied to acquire Property or otherwise applied or transferred in accordance herewith;

(E)     To any Person, if such Property consists solely of assets which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payment on the Obligations;

(F)     Pursuant to Section 424 hereof, where the Property subject to such transfer consists solely of cash; or

(G)     To any Person upon delivery to the Master Trustee of (i) an Officer's Certificate of a Member (accompanied by the independent certified public accountant's reports mentioned below) certifying that during the Fiscal Year immediately preceding the proposed disposition for which financial statements have been reported upon by independent certified public accountants, the Historical Maximum Annual Debt Service Coverage Ratio of the Obligated Group, taking into account such disposition, would not have been reduced by more than 35% and would not have been reduced to less than 1.25:1, or (ii) an Officer's Certificate of a Member stating that the Projected Debt Service Coverage Ratio of the Obligated Group for the first full Fiscal Year immediately following the date of such report, taking into account such disposition, (a) would not be reduced more than 35% from the Projected Debt Service Coverage Ratio of the Obligated Group which would have been estimated or forecasted if it were assumed such disposition would not occur and (b) would not be reduced to less than 1.25:1, or (iii) a written report from a Consultant stating that the Projected Debt Service Coverage Ratio of the Obligated Group for the first full Fiscal Year immediately following the date of such report, taking into account such disposition, (a) would not be reduced more than 35% from the Projected Debt Service Coverage of the Obligated Group which would have been estimated or forecasted if it were assumed such disposition would not occur and (b) would not be reduced to less than 1.15:1 or (iv) a written report from a Consultant stating that the Projected Debt Service Coverage Ratio of the Obligated Group for the first full Fiscal Year immediately following the date of such report, taking into account such disposition, would not be less than the Projected Debt Service

-72-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Coverage Ratio for the Obligated Group which would have been estimated or forecasted if it were assumed such disposition would not occur.

The foregoing provisions of this Section notwithstanding, each Member further agrees that it will not sell, lease, donate or otherwise dispose of Property (a) which could reasonably be expected at the time of such sale, lease, donation or disposition to result in a reduction of the Historical Maximum Annual Debt Service Coverage Ratio for the Obligated Group such that the Master Trustee could or would be obligated to require the Obligated Group to retain a Consultant pursuant to Section 409 hereof, or (b) if a Consultant has been retained in, the circumstances described in Section 409 hereof, such action, in the opinion of such Consultant, will have an adverse effect on the Income Available for Debt Service of the Obligated Group. The parties hereto agree that except as otherwise permitted by this Master Indenture (including without limitation transfers to other Members and other transfers permitted as described under this Section) and except as otherwise required by law, it will not enter into any transaction, including without limitation the purchase, sale, exchange or transfer of Property, the rendering of any service, the making of any loan, the extension of any credit or any other transaction, with any Affiliate except pursuant to the reasonable requirements of such Member's activities and upon fair and reasonable terms no less favorable to it than would obtain in a comparable arm's-length transaction with a person not an Affiliate.

*Section 418. Liens on Property.* Section 406(e) notwithstanding, a Lien on Property of any Member securing Indebtedness shall be classified a Permitted Encumbrance (as provided in clause (b) of the definition thereof) and therefore be permitted if:

(i)     such Lien secures Non-Recourse Indebtedness; or

(ii) (a) after giving effect to such Lien and all other Liens classified as Permitted Encumbrances under this subsection (ii)(a), the Book Value or, at the option of the Obligated Group Agent, the Current Value of the Property of the Obligated Group which is Encumbered is not more than 20% of the value of all of the Property of the Obligated Group (calculated on the same basis as the value of the Encumbered Property) and (b) the conditions described in Section 415(A) are met for allowing the incurrence of one dollar of additional Funded Indebtedness.

*Section 419. Right to Consent, Etc.* Each Member shall have the right to agree in any Related Bond Indenture, Related Loan Document or Supplemental Master Indenture pursuant to which an Obligation is issued that, so long as any Related Bonds remain outstanding under such Related Bond Indenture or such Obligation remains outstanding, any or all provisions of this Master Indenture which provide for approval, consent, direction or appointment by the Master Trustee, provide that anything must be satisfactory or acceptable to the Master Trustee, allow the Master Trustee to request anything or contain similar provisions granting discretion to the Master Trustee shall be deemed to also require or allow, as the case may be, the approval, consent, appointment, satisfaction, acceptance, request or like exercise of discretion by the Related Issuer, a Qualifying

-73-

Obligation holder or the Related Bond Trustee, or any one thereof, and that all items required to be delivered or addressed to the Master Trustee hereunder shall also be delivered or addressed to the Related Issuer, such Qualifying Obligation holder and the Related Bond Trustee, or any one thereof, unless waived thereby. If a Member enters into any such agreements in a Related Bond Indenture, Related Loan Document or Supplemental Master Indenture, such agreements shall be deemed to be included herein as if set forth herein.

Section 420.  *List of Obligation Holders.*  The Master Trustee will keep on file at its office a list of the names and addresses of the last known holders of all Obligations and the serial numbers of such Obligations held by each of such holders. At reasonable times and under reasonable regulations established by the Master Trustee, said list may be inspected and copied by any Member, any Obligation holder or the authorized representative thereof, provided that the ownership of such holder and the authority of any such designated representative shall be evidenced to the satisfaction of the Master Trustee.

Section 421.  *Designation of Additional Paying Agents.*  The Obligated Group Agent may, in its discretion, cause the necessary arrangements to be made through the Master Trustee and to be thereafter continued for the designation of alternate Paying Agents, if any, and for the making available of funds hereunder for the payment of such of the Obligations as shall be presented when due at the principal office of the Master Trustee, or its successor in trust hereunder, or at the principal corporate trust office of said alternate Paying Agents.

Section 422.  *Further Assurances; Additional Property.*  (a) The Members will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all such further acts, deeds, conveyances, mortgages, assignments, transfers and assurances as the Master Trustee reasonably may require for the better assuring, assigning and confirming unto the Master Trustee, its successors and assigns, all and singular the security granted hereunder, if any (the "trust estate").

(b)      All right, title and interest of the Members in and to all improvements, betterments, renewals, substitutions and replacements of the Property constituting the "trust estate" or any part thereof, hereafter acquired by a Member, immediately upon such acquisition, and without any further mortgaging, conveyance or assignment, shall become and be part of the "trust estate" and shall be subject, if applicable to Property of such type, to the security interest of this Master Indenture and/or any subsequently created liens and security interest securing the Obligations as fully and completely and with the same effect as though owned by the Members at the time this Master Indenture was executed or any and all such other liens and security interests were created, but at any and all times the Members will execute and deliver to the Master Trustee any and all such further assurances, mortgages, conveyances or assignments thereof and other instruments with respect thereto as the Master Trustee may reasonably require for the purpose of expressly and specifically subjecting the same to the security interest of the Master Indenture or such other subsequently created liens and security interests.

-74-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*Section 423. Indemnity.* Each Member will pay, and will protect, indemnify and save the Master Trustee harmless from and against any and all liabilities, losses, damages, costs and expenses (including attorneys' fees and expenses of such Member and the Master Trustee), causes of action, suits, claims, demands and judgments of whatsoever kind and nature (including those arising or resulting from any injury to or death of any person or damage to Property) arising from or in any manner directly or indirectly growing out of or connected with the following:

(1)     the use, non-use, condition or occupancy of any of the Property of any Member, any repairs, construction, alterations, renovation, relocation, remodeling and equipping thereof or thereto or the condition of any of such Property including adjoining sidewalks, streets or alleys and any equipment or Facilities at any time located on such Property or used in connection therewith but which are not the result of the negligence of the Master Trustee;

(2)     violation of any agreement, warranty, covenant or condition of this Master Indenture, except by the Master Trustee;

(3)     violation of any contract, agreement or restriction by any Member relating to its Property, which shall have existed at the commencement of this Master Indenture;

(4)     violation of any law, ordinance, regulation or court order affecting any Property of any Member or the ownership, occupancy or use thereof,

(5)     any statement or information concerning any Member or its officers and members or its Property, contained in any official statement or other offering document furnished to the Master Trustee or the purchaser of any Obligations or any Related Bonds, that is untrue or incorrect in any material respect, and any omission from such official statement or other offering document of any statement or information which should be contained therein for the purpose for which the same is to be used or which is necessary to make the statements therein concerning any Member, its officers and members and its Property not misleading in any material respect, provided that the official statement or other offering document has been approved by a Member of the Obligated Group and the indemnified party did not have knowledge of the omission or misstatement or did not negligently use the official statement or other offering document in regard to the accuracy or completeness of the official statement or other offering document; and

(6)     the Master Trustee's acceptance or administration of the Master Indenture, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder (other than costs and expenses as a result of the Master Trustee's negligence or willful misconduct).

-75-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Such indemnity shall extend to each person, if any, who "controls" the Master Trustee as that term is defined in Section 15 of the Securities Act of 1933, as amended.

In the event of settlement of any litigation commenced or threatened, such indemnity shall be limited to the aggregate amount paid under a settlement effected with the written consent of the Obligated Group Agent.

The Master Trustee shall promptly notify the Obligated Group Agent in writing of any claim or action brought against the Master Trustee or any controlling person, as the case may be, in respect of which indemnity may be sought against any Member, setting forth the particulars of such claim or action, and the Obligated Group will assume the defense thereof, including the employment of counsel satisfactory to the Master Trustee or such controlling person, as the case may be, and the payment of all expenses. The Master Trustee or any such controlling person, as the case may be, may employ separate counsel in any such action and participate in the defense thereof, and the reasonable fees and expenses of such counsel shall not be payable by the Obligated Group unless such employment has been specifically authorized by the Obligated Group Agent, which authorization shall not be unreasonably withheld. The obligations of the Members set forth in this Section 423 shall survive the termination of this Master Indenture or the resignation or removal of the Master Trustee.

*Section 424. Dividend and Stock Purchases.* If at any time any Member shall have outstanding any capital stock, such Member will not (i) declare or pay any dividends, either in cash or Property, on any shares of such stock (except dividends or other distributions payable solely in shares of such stock), (ii) directly or indirectly purchase, redeem or retire any shares of such stock or any warrants, rights or options to purchase or acquire any shares of such stock, or (iii) make any other payment or distribution, either directly or indirectly, in respect of such stock, which dividend, purchase, redemption, retirement, payment or other distribution, when aggregated with all other such dividends, purchases, redemptions, retirements, payments or distributions made by all Members of the Obligated Group after July 1, 1998, would exceed 50% of Cumulative Net Income Available for Dividends of the Obligated Group.

A Member will not declare any dividend payable more than 60 days after the date of declaration thereof.

For the purposes of this Section 424, the amount of any dividend or distribution declared, paid or distributed in Property shall be deemed to be the greater of the Book Value or the Current Value of such Property at the time of the making of such dividend or distribution.

The foregoing notwithstanding, any dividend or distribution paid by one Member to any other Member shall not be subject to the restrictions of this Section 424.

-76-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Section 425. *Additions to Excluded Property.* *Exhibit C* hereto may be amended to include: (a) additional real property acquired by a Member subsequent to July 1, 1998 and all improvements, fixtures, tangible personal property and equipment located thereon and used in connection therewith upon the receipt by the Master Trustee of an Officer's Certificate of such Member stating that (1) such Property does not constitute a portion of the Land and (2) the total value of all such Property so added to such Exhibit C does not exceed 10% of the total value of Property of the Obligated Group (calculated on the basis of the Book Value of the assets shown on the asset side of the balance sheet in the combined financial statements of the Obligated Group for the most recent Fiscal Year next preceding the date of such amendment to Exhibit C hereto for which combined financial statements reported on by independent certified public accountants are available or, if the Obligated Group Agent so elects, on the basis of Current Value); or (b) unimproved real property (which may be a portion of the Land) upon receipt by the Master Trustee of an Officer's Certificate of such Member stating that such real property is not an integral part of the operation of such Member's activities; provided that in any consecutive 12 month period the total value of the Property of the Obligated Group disposed of other than pursuant to Subsections 417(A) through (G) and of the Property classified as Excluded Property under this Section 425 shall not exceed 10% of the total value of the Property of the Obligated Group (so calculated on the basis of such Book Value or Current Value).

## ARTICLE V

## REMEDIES

*Section 501. Extension of Payment; Penalty.* In case the time for the payment of principal of or the interest on any Obligation shall be extended, whether or not such extension be by or with the consent of the Master Trustee, such principal or such interest so extended shall not be entitled in case of default hereunder to the benefit or security of this Master Indenture except subject to the prior payment in full of the principal of all Obligations then outstanding and of all interest thereon, the time for the payment of which shall not have been extended.

*Section 502. Events of Default.* Each of the following events is hereby declared an "event of default":

(a)    failure of the Obligated Group to pay any installment of interest or principal, or any premium, on any Obligation when the same shall become due and payable, whether at maturity, upon any date fixed for prepayment or by acceleration or otherwise and the continuance of such failure for five days; or

(b)    failure of any Member to comply with, observe or perform any of the covenants, conditions, agreements or provisions hereof and to remedy such default within 30 days after written notice thereof to such Member and the Obligated Group Agent from the Master Trustee or the holders of at least 25% in aggregate principal amount of the outstanding Obligations; provided that if such default cannot with due diligence and dispatch be wholly cured within 60 days but can be wholly cured, the failure of the Member to remedy such default within such 60-day period shall not constitute a default hereunder if the Member shall immediately upon receipt of such notice commence with due diligence and dispatch the curing of such default and, having so commenced the curing of such default, shall thereafter prosecute and complete the same with due diligence and dispatch; or

(c)    any representation or warranty made by any Member herein or in any statement or certificate furnished to the Master Trustee or the purchaser of any Obligation in connection with the sale of any Obligation or furnished by any Member pursuant hereto proves untrue in any material respect as of the date of the issuance or making thereof and shall not be corrected or brought into compliance within 60 days after written notice thereof to the Obligated Group Agent by the Master Trustee or the holders of at least 25% in aggregate principal amount of the outstanding Obligations; or

(d)    default in the payment of the principal of, premium, if any, or interest on any Indebtedness for borrowed money (other than Non-Recourse Indebtedness) of any Member, including without limitation any Indebtedness created by any Related Loan Document, as and

-78-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

when the same shall become due, or an event of default as defined in any mortgage, indenture, loan agreement or other instrument under or pursuant to which there was issued or incurred, or by which there is secured, any such Indebtedness (including any Obligation) of any Member, and which default in payment or event of default entitles the holder thereof to declare or, in the case of any Obligation, to request that the Master Trustee declare, such Indebtedness due and payable prior to the date on which it would otherwise become due and payable; *provided, however,* that if such Indebtedness is not evidenced by an Obligation or issued, incurred or secured by or under a Related Loan Document, a default in payment thereunder shall not constitute an "event of default" hereunder unless the unpaid principal amount of such Indebtedness, together with the unpaid principal amount of all other Indebtedness so in default, exceeds 1% of the unrestricted fund balance of the Obligated Group as shown on or derived from the then latest available audited combined financial statements of the Obligated Group; or

(e)   any judgment, writ or warrant of attachment or of any similar process shall be entered or filed against any Member or against any Property of any Member and remains unvacated, unpaid, unbonded, unstayed or uncontested in good faith for a period of 60 days; *provided, however,* that none of the foregoing shall constitute an event of default unless the amount of such judgment, writ, warrant of attachment or similar process, together with the amount of all other such judgments, writs, warrants or similar processes so unvacated, unpaid, unbonded, unstayed or uncontested, exceeds 1% of the unrestricted fund balance of the Obligated Group as shown on or derived from the then latest available audited combined financial statements of the Obligated Group; or

(f)   any Member admits insolvency or bankruptcy or its inability to pay its debts as they mature, or is generally not paying its debts as such debts become due, or makes an assignment for the benefit of creditors or applies for or consents to the appointment of a trustee, custodian or receiver for such Member, or for the major part of its Property; or

(g)   a trustee, custodian or receiver is appointed for any Member or for the major part of its Property and is not discharged within 60 days after such appointment; or

(h)   bankruptcy, dissolution, reorganization, arrangement, insolvency or liquidation proceedings, proceedings under Title 11 of the United States Code, as amended, or other proceedings for relief under any bankruptcy law or similar law for the relief of debtors are instituted by or against an), Member (other than bankruptcy or similar proceedings instituted by any Member against third parties), and if instituted against any Member are allowed against such Member or are consented to or are not dismissed, stayed or otherwise nullified within 90 days after such institution; or

-79-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

        (i)    payment of any installment of interest or principal, or any premium, on any Related Bond shall not be made when the same shall become due and payable under the provisions of any Related Bond Indenture.

    *Section 503.  Acceleration.*  If an event of default has occurred and is continuing, the Master Trustee may, and if requested by either the holders of not less than 25% in aggregate principal amount of outstanding Obligations or the holder of any Accelerable Instrument under which Accelerable Instrument an event of default exists (which event of default permits the holder thereof to request that the Master Trustee declare such Indebtedness evidenced by an Obligation due and payable prior to the date on which it would otherwise become due and payable), shall, by notice in writing delivered to the Obligated Group Agent, declare the entire principal amount of all Obligations then outstanding hereunder and the interest accrued thereon immediately due and payable, and the entire principal and such interest shall thereupon become immediately due and payable, subject, however, to the provisions of Section 511 hereof with respect to waivers of events of default.

    *Section 504.  Remedies; Rights of Obligation Holders.*  Upon the occurrence of any event of default, the Master Trustee may pursue any available remedy including a suit, action or proceeding at law or in equity to enforce the payment of the principal of, premium, if any, and interest on the Obligations outstanding hereunder and any other sums due hereunder and may collect such sums in the manner provided by law out of the Property or the Excluded Property of any Member wherever situated.

    If an event of default shall have occurred, and if it shall have been requested so to do by either the holders of 25% or more in aggregate principal amount of Obligations outstanding or the holder of an Accelerable Instrument upon whose request pursuant to Section 503 hereof the Master Trustee has accelerated the Obligations and if it shall have been indemnified as provided in Section 601 (k) hereof, the Master Trustee shall be obligated to exercise such one or more of the rights and powers conferred by this Section as the Master Trustee shall deem most expedient in the interests of the holders of Obligations; *provided, however,* that the Master Trustee shall have the right to decline to comply with any such request if the Master Trustee shall be advised by counsel (who may be its own counsel) that the action so requested may not lawfully be taken or the Master Trustee in good faith shall determine that such action would be unjustly prejudicial to the holders of Obligations not parties to such request.

    No remedy by the terms of this Master Indenture conferred upon or reserved to the Master Trustee (or to the holders of Obligations) is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Master Trustee or to the holders of Obligations hereunder now or hereafter existing at law or in equity or by statute.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

No delay or omission to exercise any right or power accruing upon any default or event of default shall impair any such right or power or shall be construed to be a waiver of any such default or event of default, or acquiescence therein; and every such right and power may be exercised from time to time and as often as may be deemed expedient.

No waiver of any default or event of default hereunder, whether by the Master Trustee or by the holders of Obligations, shall extend to or shall affect any subsequent default or event of default or shall impair any rights or remedies consequent thereon.

*Section 505. Direction of Proceedings by Holders.* The holders of a majority in aggregate principal amount of the Obligations then outstanding which have become due and payable in accordance with their terms or have been declared due and payable pursuant to Section 503 hereof and have not been paid in full in the case of remedies exercised to enforce such payment, or the holders of a majority in aggregate principal amount of the Obligations then outstanding in the case of any other remedy, shall have the right, at any time, by an instrument or instruments in writing executed and delivered to the Master Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Master Indenture or for the appointment of a receiver or any other proceedings hereunder; provided that such direction shall not be otherwise than in accordance with the provisions of law and of this Master Indenture and that the Master Trustee shall have the right to decline to comply with any such request if the Master Trustee shall be advised by counsel (who may be its own counsel) that the action so directed may not lawfully be taken or the Master Trustee in good faith shall determine that such action would be unjustly prejudicial to the holders of the Obligations not parties to such direction. Pending such direction from the holders of a majority in aggregate principal amount of the Obligations outstanding, such direction may be given in the same manner and with the same effect by the holder of an Accelerable Instrument upon whose request pursuant to Section 503 hereof the Master Trustee has accelerated the Obligations.

The foregoing notwithstanding, the holders of a majority in aggregate principal amount of the Obligations then outstanding which are entitled to the exclusive benefit of certain security in addition to that intended to secure all or other Obligations shall have the right, at any time, by an instrument or instruments in writing executed and delivered to the Master Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Master Indenture, the Supplemental Master Indenture or Indentures pursuant to which such Obligations were issued or so secured or any separate security document in order to realize on such security; *provided, however,* that such direction shall not be otherwise than in accordance with the provisions of law and of this Master Indenture.

*Section 506. Appointment of Receivers.* Upon the occurrence of an event of default, and upon the filing of a suit or other commencement of judicial proceedings to enforce the rights of the Master Trustee and the holders of Obligations under this Master Indenture, the Master Trustee shall be entitled, as a matter of right, to the appointment of a receiver or receivers of the rights and

-81-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

properties pledged hereunder and of the revenues, issues, payments and profits thereof, pending such proceedings, with such powers as the court making such appointment shall confer.

*Section 507.  Application of Moneys.*  All moneys received by the Master Trustee pursuant to any right given or action taken under the provisions of this Article (except moneys held for the payment of Obligations called for prepayment or redemption which have become due and payable) shall, after payment of the cost and expenses of the proceedings resulting in the collection of such moneys and of the fees of, expenses, liabilities and advances incurred or made by the Master Trustee, any Related Issuers and any Related Bond Trustees, be applied as follows:

(a)  Unless the principal of all the Obligations shall have become or shall have been declared due and payable, all such moneys shall be applied:

*First: To* the payment to the persons entitled thereto of all installments of interest then due on the Obligations, in the order of the maturity of the installments of such interest, and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or privilege; and

*Second:* To the payment to the persons entitled thereto of the unpaid principal and premium, if any, on the Obligations which shall have become due (other than Obligations called for redemption or payment for payment of which moneys are held pursuant to the provisions of this Master Indenture), in the order of the scheduled dates of their payment, and, if the amount available shall not be sufficient to pay in full Obligations due on any particular date, then to the payment ratably, according to the amount of principal and premium due on such date, to the persons entitled thereto without any discrimination or privilege; and

*Third: To* the payment to the persons entitled thereto of all unpaid principal and interest on Obligations, payment of which was extended by such persons as described in Section 501 hereof.

(b)  If the principal of all the Obligations shall have become due or shall have been declared due and payable, all such moneys shall be applied to the payment of the principal, premium, if any, and interest then due and unpaid upon the Obligations without preference or priority of principal, premium or interest over the others, or of any installment of interest over any other installment of interest, or of any Obligation over any other Obligation, ratably, according to the amounts due respectively for principal, premium, if any, and interest to the persons entitled thereto without any discrimination or privilege; provided that no amount shall be paid to any Obligation holder who has extended the time for payment of either principal or interest as described in Section 501 until all other principal, premium, if any, and interest owing on Obligations has been paid; and

-82-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

(c)    If the principal of all the Obligations shall have been declared due and payable, and if such declaration shall thereafter have been rescinded and annulled under the provisions of this Article, then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all the Obligations shall later become due or be declared due and payable, the moneys shall be applied in accordance with the provisions of paragraph (a) of this Section.

Whenever moneys are to be applied by the Master Trustee pursuant to the provisions of this Section, such moneys shall be applied by it at such times, and from time to time, as the Master Trustee shall determine, having due regard for the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future. Whenever the Master Trustee shall apply such moneys, it shall fix the date (which shall be an interest payment date unless it shall deem another date more suitable) upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue. The Master Trustee shall give such notice as it may deem appropriate of the deposit with it of any such moneys and of the fixing of any such date, and shall not be required to make payment to the holder of any unpaid Obligation until such Obligation shall be presented to the Master Trustee for appropriate endorsement or for cancellation if fully paid.

Whenever all Obligations and interest thereon have been paid under the provisions of this Section 507 and all expenses and charges of the Master Trustee have been paid, any balance remaining shall be paid to the person entitled to receive the same; if no other person shall be entitled thereto, then the balance shall be paid to the Obligated Group Agent on behalf of the Members.

*Section 508.  Remedies Vested in Master Trustee.*  All rights of action including the right to file proof of claims under this Master Indenture or under any of the Obligations may be enforced by the Master Trustee without the possession of any of the Obligations or the production thereof in any trial or other proceedings relating thereto and any such suit or proceeding instituted by the Master Trustee shall be brought in its name as Master Trustee without the necessity of joining as plaintiffs or defendants any holders of the Obligations, and any recovery of judgment shall be for the equal benefit of the holders of the Outstanding Obligations.

*Section 509.  Rights and Remedies of Obligation Holders.*  No holder of any Obligation shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this Master Indenture or for the execution of any trust hereof or for the appointment of a receiver or any other remedy hereunder, unless a default shall have become an event of default and (a) the holders of 25% or more in aggregate principal amount (i) of the Obligations which have become due and payable in accordance with their terms or have been declared due and payable pursuant to Section 503 hereof and have not been paid in full in the case of powers exercised to enforce such payment or (ii) the Obligations then outstanding in the case of any other exercise of power or (b) the holder of an Accelerable Instrument upon whose request pursuant to Section 503 hereof the Master Trustee has accelerated the Obligations, shall have made written request to the Master Trustee and

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

shall have offered it reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceeding in its own name, and unless also, in each case, such holders have offered to the Master Trustee indemnity as provided in Section 601 (k), and unless the Master Trustee shall thereafter fail or refuse to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name; and such notification, request and offer of indemnity are hereby declared in every case at the option of the Master Trustee to be conditions precedent to the execution of the powers and trusts of this Master Indenture and to any action or cause of action for the enforcement of this Master Indenture, or for the appointment of a receiver or for any other remedy hereunder; it being understood and intended that no one or more holders of the Obligations shall have any right in any manner whatsoever to affect, disturb or prejudice the lien of this Master Indenture by its, his or their action or to enforce any right hereunder except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal benefit of the holders of all Obligations outstanding. Nothing in this Master Indenture contained shall, however, affect or impair the right of any holder to enforce the payment of the principal of, premium, if any, and interest on any Obligation at and after the maturity thereof, or the obligation of the Members to pay the principal, premium, if any, and interest on each of the Obligations issued hereunder to the respective holders thereof at the time and place, from the source and in the manner in said Obligations expressed.

*Section 510. Termination of Proceedings.* In case the Master Trustee shall have proceeded to enforce any right under this Master Indenture by the appointment of a receiver, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Master Trustee, then and in every case the Members and the Master Trustee shall, subject to any determination in such proceeding, be restored to their former positions and rights hereunder with respect to the Property pledged and assigned hereunder, and all rights, remedies and powers of the Master Trustee shall continue as if no such proceedings had been taken.

*Section 511. Waiver of Events of Default.* If, at any time after the principal of all Obligations shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided and before the acceleration of any Related Bond, any Member shall pay or shall deposit with the Master Trustee a sum sufficient to pay all matured installments of interest upon all such Obligations and the principal and premium, if any, of all such Obligations that shall have become due otherwise than by acceleration (with interest on overdue installments of interest and on such principal and premium, if any, at the rate borne by such Obligations to the date of such payment or deposit, to the extent permitted by law) and the expenses of the Master Trustee, and any and all events of default under this Master Indenture, other than the nonpayment of principal of and accrued interest on such Obligations that shall have become due by acceleration, shall have been remedied, then and in every such case the Master Trustee if the Master Trustee gave the notice of acceleration without there having been any request therefor by a holder or holders of Obligations or Accelerable Instruments or, in all other cases, the holders of a majority in aggregate principal amount of all Obligations then outstanding and the holder of each Accelerable Instrument who requested the giving of notice of

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

acceleration, by written notice to the Obligated Group Agent and to the Master Trustee, may waive all events of default and rescind and annul such declaration and its consequences; but no such waiver or rescission and annulment shall extend to or affect any subsequent event of default, or shall impair any right consequent thereon.

Section 512. *Members' Rights of Possession and Use of Property.* So long as each Member is in full compliance with the terms and provisions of this Master Indenture, each Member shall be suffered and permitted to possess, use and enjoy its Property and appurtenances thereto free of claims of the Master Trustee.

Section 513. *Related Bond Trustee or Bondholders Deemed To Be Obligation Holders; Bond Insurer's Rights.* For the purposes of this Master Indenture, unless a Related Bond Trustee elects to the contrary or contrary provision is made in a Related Bond Indenture or in a Supplemental Master Indenture (with respect to Obligations securing Related Bonds), each Related Bond Trustee shall be deemed the holder of the Obligation or Obligations pledged to secure the Related Bonds with respect to which such Related Bond Trustee is acting as trustee. If such a Related Bond Trustee so elects or the Related Bond Indenture so provides, the holders of each series of Related Bonds shall be deemed the holders of the Obligations to the extent of the principal amount of the Obligations to which their Bonds relate. In addition, the documents pursuant to which any Obligation is issued or pursuant to which Related Bonds which are secured by an Obligation are issued may provide that the Related Issuer is entitled to exercise the rights granted to Obligation holders under Section 502(d) and Section 503. The Bond Trustee shall not act as the holder of the Series 1998 Obligation without the written consent of the Bond Insurer and shall act as such holder as instructed in writing by the Bond Insurer.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

## ARTICLE VI

## THE MASTER TRUSTEE

*Section 601. Acceptance of the Trusts.* The Master Trustee accepts and agrees to execute the trusts imposed upon it by this Master Indenture, but only upon the terms and conditions set forth herein. The Master Trustee, prior to the occurrence of an event of default and after the curing of all events of default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Master Indenture and to perform such duties as an ordinarily prudent trustee under a corporate indenture, and no implied covenants or obligations should be read into this Master Indenture against the Master Trustee. If an event of default under this Master Indenture shall have occurred and be continuing, the Master Trustee shall exercise such of the rights and powers vested in it by this Master Indenture and shall use the same degree of care as a prudent man would exercise or use in the circumstances in the conduct of his own affairs. The Master Trustee agrees to perform such trusts only upon and subject to the following express terms and conditions:

(a)     The Master Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents, receivers, or employees but shall be answerable for the conduct of the same in accordance with the standard specified above, and shall be entitled to advice of counsel concerning all matters of trusts hereof and duties hereunder, and may in all cases pay such reasonable compensation to any attorney, agent, receiver or employee retained or employed by it in connection herewith. The Master Trustee may act upon the opinion or advice of an attorney, surveyor, engineer or accountant selected by it in the exercise of reasonable care or, if selected or retained by any Member, approved by the Master Trustee in the exercise of such care. The Master Trustee shall not be responsible for any loss or damage resulting from any action or nonaction based on its good faith reliance upon such opinion or advice.

(b)     The Master Trustee shall not be responsible for any recital herein, or in the Obligations (except with respect to the certificate of the Master Trustee endorsed on the Obligations), or for the investment of moneys as herein provided (provided that no investment shall be made by the Master Trustee except in compliance with the provisions of this Master Trustee applicable to such investment), or for the recording or re-recording, filing or re-filing of this Master Indenture, or any supplement or amendment thereto, or the filing of financing statements, or for the validity of the execution by the Corporation of this Master Indenture, or by any Member of any supplemental indentures or instruments of further assurance, or for the sufficiency of the security for the Obligations issued hereunder or intended to be secured hereby, or for the value or title of the Property herein conveyed or otherwise as to the maintenance of the security hereof. The Master Trustee may (but shall be under no duty to) require of any Member full information and advice as to the

-86-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

performance of the covenants, conditions and agreements in this Master Indenture and shall use its best efforts, but without any obligation, to advise the Members of any impending default known to the Master Trustee. The Master Trustee shall have no obligation to perform any of the duties of the Obligated Group hereunder.

(c)     The Master Trustee shall not be accountable for the use or application by the Obligated Group of any of the Obligations or the proceeds thereof or for the use or application of any money paid over by the Master Trustee in accordance with the provisions of this Master Indenture or for the use and application of money received by any Paying Agent. The Master Trustee may become the owner of Obligations secured hereby with the same rights it would have if it were not Master Trustee.

(d)     The Master Trustee shall be protected in acting upon any notice, order, requisition, request, consent, certificate, order, opinion (including an opinion of Independent Counsel), affidavit, letter, telegram or other paper or document in good faith deemed by it to be genuine and correct and to have been signed or sent by the proper person or persons. Any action taken by the Master Trustee pursuant to this Master Indenture upon the request or authority or consent of any person who at the time of making such request or giving such authority or consent is the owner of any Obligation shall be conclusive and binding upon all future owners of the same Obligation and upon Obligations issued in exchange therefor or in place thereof.

(e)     As to the existence or non-existence of any fact or as to the sufficiency or validity of any instrument, paper or proceeding, the Master Trustee shall be entitled to rely upon a certificate signed on behalf of any Member by its President, any Vice President, its Treasurer or its Secretary as sufficient evidence of the facts therein contained and, prior to the occurrence of a default of which the Master Trustee has been notified as provided in subsection (g) of this Section, or of which by said subsection it is deemed to have notice, shall also be at liberty to accept a similar certificate to the effect that any particular dealing, transaction or action is necessary or expedient, but may at its discretion secure such further evidence deemed necessary or advisable, but shall in no case be bound to secure the same. The Master Trustee may accept a certificate of the President, any Vice President or Secretary of any Member under its seal to the effect that a resolution in the form therein set forth has been adopted by such Member as conclusive evidence that such resolution has been duly adopted, and is in full force and effect.

(f)     The permissive right of the Master Trustee to do things enumerated in this Master Indenture shall not be construed as a duty and the Master Trustee shall not be answerable for other than its negligence or willful default.

(g)     The Master Trustee shall not be required to take notice or be deemed to have notice of any default hereunder except failure by the Obligated Group to cause to be made

any of the payments to the Master Trustee required to be made by Section 202 or Section 401 unless the Master Trustee shall be specifically notified in writing of such default by a Member, by the written report of nationally recognized independent certified public accountants required by Section 414(B), by any Related Issuer, by any Related Bond Trustee, by the owner of an Accelerable Instrument or by the holders of at least 25% in aggregate principal amount of all Obligations then outstanding and all notices or other instruments required by this Master Indenture to be delivered to the Master Trustee must, in order to be effective, be delivered at the principal corporate trust office of the Master Trustee, and in the absence of such notice so delivered, the Master Trustee may conclusively assume there is no default except as aforesaid.

(h)     At any and all reasonable times, the Master Trustee, and its duly authorized agents, attorneys, experts, engineers, accountants and representatives, shall have the right fully to inspect any and all books, papers and records of any Member pertaining to the Obligations, and to take such memoranda from and in regard thereto as may be reasonably desired.

(i)     The Master Trustee shall not be required to give any bond or surety in respect of the execution of the said trusts and powers or otherwise in respect of the premises.

(j)     Notwithstanding anything contained elsewhere in this Master Indenture, the Master Trustee shall have the right, but shall not be required, to demand, in respect of the authentication of any Obligation, the withdrawal of any cash, the release of any property, or any action whatsoever within the purview of this Master Indenture, any showings, certificates, opinions, appraisals or other information, or corporate action or evidence thereof, in addition to that by the terms hereof required as a condition of such action by the Master Trustee deemed desirable for the purpose of establishing the right of any Member to the authentication of any Obligations, the withdrawal of any cash, the release of any property or the taking of any other action by the Master Trustee.

(k)     Before taking any action under this Master Indenture the Master Trustee may require that indemnification satisfactory to it be furnished for the reimbursement of all expenses to which it may be put and to protect it against all liability, except liability which is adjudicated to have resulted from its negligence or willful default in connection with any action so taken.

(l)     All moneys received by the Master Trustee or any Paying Agent shall, until used or applied or invested as herein provided, be held in trust for the purposes for which they were received but need not be segregated from other funds except to the extent required by law or by this Master Indenture.  Neither the Master Trustee nor any Paying Agent shall be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

*Section 602. Fees, Charges and Expenses of Master Trustee and any Additional Paying Agent.* The Master Trustee shall be entitled to payment and/or reimbursement for reasonable fees and for its services rendered hereunder and all advances, counsel fees and other expenses reasonably made or incurred by the Master Trustee in connection with such services. The Master Trustee shall be entitled to payment and reimbursement for the reasonable fees and charges of the Master Trustee as Paying Agent and Obligation Registrar for the Obligations as hereinabove provided. Any additional Paying Agent shall be entitled to payment and reimbursement for its reasonable fees and charges as additional Paying Agent for the Obligations. Upon an event of default, but only upon an event of default, the Master Trustee and any additional Paying Agent shall have a right of payment prior to payment on account of principal of, or premium, if any, or interest on any Obligation for the foregoing advances, fees, costs and expenses incurred.

*Section 603. Notice to Obligation Holders if Default Occurs.* If an event of default occurs of which the Master Trustee is by subsection (g) of Section 601 hereof required to take notice or if notice of default be given as in said subsection (g) provided, then the Master Trustee shall give written notice thereof by mail to the last known owners of all Obligations then outstanding shown by the list of Master Obligation holders required by the terms of this Master Indenture to be kept at the office of the Master Trustee.

*Section 604. Intervention by Master Trustee.* In any judicial proceeding to which any Member is a party and which in the opinion of the Master Trustee and its counsel has a substantial bearing on the interests of owners of the Obligations, the Master Trustee may intervene on behalf of Obligation holders and, subject to the provisions of Section 601(k), shall do so if requested in writing by the owner of an Accelerable Instrument or the owners of at least 25% in aggregate principal amount of all Obligations then outstanding. The rights and obligations of the Master Trustee under this Section are subject to the approval of a court of competent jurisdiction.

*Section 605. Successor Master Trustee.* Any corporation or association into which the Master Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which it is a party, ipso facto, shall be and become successor Master Trustee hereunder and vested with all of the title to the whole property or trust estate and all the trusts, powers, discretions, immunities, privileges and all other matters as was its predecessor, without the execution or filing of any instrument or any further act, deed or conveyance on the part of and of the parties hereto, anything herein to the contrary notwithstanding.

*Section 606. Corporate Master Trustee Required; Eligibility.* There shall at all times be a Master Trustee hereunder which shall be a bank or trust company organized under the laws of the United States of America or any state thereof, authorized to exercise corporate trust powers, subject to supervision or examination by federal or state authorities, and (except for the Master Trustee initially appointed under this Master Indenture and its successors under Section 605) having a

-89-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

reported combined capital and surplus of at least $25,000,000. If at any time the Master Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner provided in Section 607. No resignation or removal of the Master Trustee and no appointment of a successor Trustee shall become effective until the successor Master Trustee has accepted its appointment under Section 610 hereof.

Section 607. *Resignation by the Master Trustee.* The Master Trustee and any successor Master Trustee may at any time resign from the trusts hereby created by giving thirty days' written notice to the Obligated Group Agent and by registered or certified mail to each registered owner of Obligations then outstanding and to each holder of Obligations as shown by the list of Obligation holders required by this Master Indenture to be kept at the office of the Master Trustee. Such resignation shall take effect at the end of such thirty days or when a successor Master Trustee has been appointed and has assumed the trusts created hereby, whichever is later, or upon the earlier appointment of a successor Master Trustee by the Obligation holders or by the Obligated Group. Such notice to the Obligated Group Agent may be served personally or sent by registered or certified mail.

Section 608. *Removal of the Master Trustee.* The Master Trustee may be removed at any time, by an instrument or concurrent instruments in writing delivered to the Master Trustee and to the Obligated Group Agent, and signed by the owners of a majority in aggregate principal amount of Obligations then outstanding or, so long as the Obligated Group is not in default under the Master Indenture, by the Obligated Group Agent; provided that, if any Related Issuer so elects, it may sign such an instrument as the owner of the Obligation or Obligations pledged to secure the Related Bonds issued by such Related Issuer.

Section 609. *Appointment of Successor Master Trustee by the Obligation Holders; Temporary Master Trustee.* In case the Master Trustee hereunder shall resign or be removed, or be dissolved, or shall be in the process of dissolution or liquidation, or otherwise becomes incapable of acting hereunder, or in case it shall be taken under the control of any public officer or officers, or of a receiver appointed by a court, a successor may be appointed by the owners of a majority in aggregate principal amount of Obligations then outstanding, by an instrument or concurrent instruments in writing signed by such owners, or by their attorneys in fact, duly authorized. The foregoing notwithstanding, so long as the Obligated Group is not in default hereunder, the Obligated Group shall have the right to approve any such successor trustee. If a successor trustee shall not have been appointed within 30 days after notice of resignation by or removal of the Master Trustee, the Master Trustee, the Obligated Group or any holder of an Obligation may apply to any court of competent jurisdiction to appoint a successor to act until such time, if any, as a successor shall have been appointed as above provided. The successor so appointed by such court shall immediately and without further act be superseded by any successor appointed as above provided. Every such successor Master Trustee appointed pursuant to the provisions of this Section shall be a trust company or bank in good standing under the law of the jurisdiction in which it was created and by

-90-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

which it exists, having corporate trust powers and subject to examination by federal or state authorities, and having a reported capital and surplus of not less than $25,000,000.

*Section 610. Concerning Any Successor Master Trustee.* Every successor Master Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor and also to the Obligated Group Agent an instrument in writing accepting such appointment hereunder, and thereupon such successor, without any further act, deed or conveyance, shall become fully vested with all the estates, properties, rights, powers, trusts, duties and obligations of its predecessor; but such predecessor shall, nevertheless, on the written request of the Obligated Group Agent, or of its successor, execute and deliver an instrument transferring to such successor Master Trustee all the estates, properties, rights, powers and trusts of such predecessor hereunder; and every predecessor Master Trustee shall deliver all securities and moneys held by it as Master Trustee hereunder to its successor upon payment of all outstanding fees, costs and expenses of the predecessor Master Trustee. Should any instrument in writing from any Member be required by any successor Master Trustee for more fully and certainly vesting in such successor the estate, rights, powers and duties hereby vested or intended to be vested in the predecessor, any and all such instruments in writing shall, on request, be executed, acknowledged and delivered by such Member. The resignation of any Master Trustee and the instrument or instruments removing any Master Trustee and appointing a successor hereunder, together with all other instruments provided for in this Article shall be filed and/or recorded by the successor Master Trustee in each recording office, if any, where the Master Indenture shall have been filed and/or recorded.

*Section 611. Master Trustee Protected in Relying Upon Resolutions, Etc.* The resolutions, opinions, certificates and other instruments provided for in this Master Indenture may be accepted by the Master Trustee as conclusive evidence of the facts and conclusions stated therein and shall be full warrant, protection and authority to the Master Trustee for the release of property and the withdrawal of cash hereunder.

*Section 612. Successor Master Trustee as Trustee of Funds, Paying Agent and Obligation Registrar.* In the event of a change in the office of Master Trustee, the predecessor Master Trustee which has resigned or been removed shall cease to be trustee of any funds provided hereunder and Obligation Registrar and Paying Agent for principal of, premium, if any, and interest on the Obligations, and the successor Master Trustee shall become such Master Trustee, Obligation Registrar and Paying Agent unless a separate Paying Agent or Agents are appointed by the Obligated Group Agent in connection with the appointment of any successor Master Trustee.

*Section 613. Maintenance of Record.* The Master Trustee agrees to maintain such records with respect to any and all moneys or investments held by the Master Trustee pursuant to the provisions hereof as are requested by the Obligated Group Agent. The Master Trustee shall be entitled to reasonable compensation for its maintenance of any such records.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

## ARTICLE VII

## SUPPLEMENTAL MASTER INDENTURES

*Section 701. Supplemental Master Indentures Not Requiring Consent of Obligation Holders.* Subject to the limitations set forth in Section 702 hereof with respect to this Section 701, the Members and the Master Trustee may, without the consent of, or notice to, any of the Obligation holders, amend or supplement this Master Indenture, for any one or more of the following purposes:

(a)     To cure any ambiguity or defective provision in or omission from this Master Indenture in such manner as is not inconsistent with and does not impair the security of the Master Indenture or adversely affect the holder of any Obligation;

(b)     To grant to or confer upon the Master Trustee for the benefit of the Obligation holders any additional rights, remedies, powers or authority that may lawfully be granted to or conferred upon the Obligation holders and the Master Trustee, or either of them, to add to the covenants of the Members for the benefit of the Obligation holders or to surrender any right or power conferred hereunder upon any Member;

(c)     To assign and pledge under this Master Indenture any additional revenues, properties or collateral;

(d)     To evidence the succession of another corporation to the agreements of a Member or the Master Trustee, or the successor of any thereof hereunder;

(e)     To permit the qualification of this Master Indenture under the Trust Indenture Act of 1939, as then amended, or under any similar federal statute hereafter in effect or to permit the qualification of any Obligations for sale under the securities laws of any state of the United States;

(f)     To provide for the refunding or advance refunding of any Obligation;

(g)     To provide for the issuance of Additional Obligations;

(h)     To reflect the addition to or withdrawal of a Member from the Obligated Group;

(i)     To provide for the issuance of Obligations with original issue discount, provided such issuance would not materially adversely affect the holders of Outstanding Obligations;

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

(j)     To permit an Obligation to be secured by security which is not extended to all Obligation holders;

(k)     To permit the issuance of Obligations which are not in the form of a promissory note;

(l)     To amend *Exhibit C* in the circumstances permitted by Sections 404, 405 and 425 hereof, and

(m)     To make any other change which, in the opinion of the Master Trustee, does not materially adversely affect the holders of any of the Obligations and, in the opinion of each Related Bond Trustee, does not materially adversely affect the holders of the Related Bonds with respect to which it acts as trustee, including without limitation any modification, amendment or supplement to this Master Indenture or any indenture supplemental hereto in such a manner as to establish or maintain exemption of interest on any Related Bonds under a Related Bond Indenture from federal income taxation under applicable provisions of the Code.

Any Supplemental Master Indenture providing for the issuance of Additional Obligations shall set forth the date thereof, the date or dates upon which principal of, premium, if any, and interest on such Obligations shall be payable, the other terms and conditions of such Obligations, the form of such Obligations and the conditions precedent to the delivery of such Obligations which shall include, among other things:

(a)     delivery to the Master Trustee of all materials required to be delivered as a condition precedent to the incurrence of the Additional Indebtedness evidenced by such Obligations;

(b)     delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that all requirements and conditions to the issuance of such Obligations, if any, set forth herein and in the Supplemental Master Indenture have been complied with and satisfied; and

(c)     delivery to the Master Trustee of an opinion of Independent Counsel acceptable to the Master Trustee to the effect that registration of such Obligations under the Securities Act of 1933, as amended, is not required, or, if such registration is required, that the Obligated Group has complied with all applicable provisions of said Act.

If at any time the Obligated Group Agent shall request the Master Trustee to enter into any Supplemental Master Indenture pursuant to subsection (1) above, the Master Trustee shall cause notice of the proposed execution of such Supplemental Master Indenture to be given to each Rating Agency then maintaining a rating on any Obligations or Related Bonds, in the manner provided in

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

Section 1004 hereof at least 15 days prior to the execution of such Supplemental Master Indenture, which notice shall include a copy of the proposed Supplemental Master Indenture. If at any time the Obligated Group Agent shall request the Master Trustee to enter into any Supplemental Master Indenture pursuant to which an Obligation is issued in connection with an Interest Rate Agreement, the Master Trustee shall cause notice of the execution of such Supplemental Master Indenture to be given to each Rating Agency then maintaining a rating on any Obligation or Related Bonds, in the manner provided in Section 1004 immediately succeeding the execution of such Supplemental Master Indenture, which notice shall include a copy of the Supplemental Master Indenture.

*Section 702. Supplemental Master Indentures Requiring Consent of Obligation Holders.* In addition to Supplemental Master Indentures covered by Section 701 hereof and subject to the terms and provisions contained in this Section, and not otherwise, the holders of not less than a majority in aggregate principal amount of the Obligations which are outstanding hereunder at the time of the execution of such Supplemental Master Indenture or, in case less than all of the several series of Obligations are effected thereby, the holders of not less than a majority in aggregate principal amount of the Obligations of each series affected thereby which are outstanding at the time of execution of such Supplemental Master Indenture shall have the right, from time to time, anything contained in this Master Indenture to the contrary notwithstanding, to consent to and approve the execution by the Members and the Master Trustee of such Supplemental Master Indentures as shall be deemed necessary and desirable by the Members for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Master Indenture or in any Supplemental Master Indenture; *provided, however,* that nothing contained in this Section or in Section 701 hereof shall permit, or be construed as permitting, (a) an extension of the stated maturity or reduction in the principal amount of or reduction in the rate or extension of the time of paying of interest on or reduction of any premium payable on the redemption of, any Obligation, without the consent of the holder of such Obligation, (b) a reduction in the aforesaid aggregate principal amount of Obligations the holders of which are required to consent to any such Supplemental Master Indenture or any such amending or supplementing instruments, without the consent of the holders of all the Obligations at the time outstanding which would be affected by the action to be taken, or (c) modification of the rights, duties or immunities of the Master Trustee, without the written consent of the Master Trustee; provided further that no such modification shall be made if it materially adversely affects the provisions of the Master Indenture concerning the conditions precedent to a Person becoming a Member, the conditions precedent to cessation of status as a Member, the maintenance of the Obligated Group's Property free and clear of Liens other than Permitted Encumbrances, the definition of Permitted Encumbrances or transactions with or transfers to Members and other entities without the written approval or consent of the holders of not less than a majority in aggregate principal amount of the Obligations of each series affected thereby.

If at any time the Obligated Group Agent shall request the Master Trustee to enter into any such Supplemental Master Indenture for any of the purposes of this Section, the Master Trustee shall, upon being satisfactorily indemnified with respect to expenses, cause notice of the proposed

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

execution of such Supplemental Master Indenture to be mailed by first class mail postage prepaid to each holder of an Obligation.   Such notice shall briefly set forth the nature of the proposed Supplemental Master Indenture and shall state that copies thereof are on file at the principal corporate trust office of the Master Trustee for inspection by all Obligation holders.   The Master Trustee shall not, however, be subject to any liability to any Obligation holder by reason of its failure to mail such notice, and any such failure shall not affect the validity of such Supplemental Master Indenture when consented to and approved as provided in this Section.   If the holders of not less than a majority in aggregate principal amount of the Obligations which are outstanding hereunder at the time of the execution of any such Supplemental Master Indenture shall have consented to and approved the execution thereof as herein provided, no holder of any Obligation shall have any right to object to any of the terms and provisions contained therein, or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Master Trustee or the Members from executing the same or from taking any action pursuant to the provisions thereof   Upon the execution of any such Supplemental Master Indenture as in this Section permitted and provided, this Master Indenture shall be and be deemed to be modified and amended in accordance therewith.

For the purpose of obtaining the foregoing consents, the determination of who is deemed the holder of an Obligation held by a Related Bond Trustee shall be made in the manner provided in Section 513.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

ARTICLE VIII

SATISFACTION OF THE MASTER INDENTURE

*Section 801. Defeasance.* If the Members shall pay or provide for the payment of the entire indebtedness on all Obligations (including, for the purposes of this Section 801, any Obligations owned by a Member) outstanding in any one or more of the following ways:

(a)    by paying or causing to be paid the principal of (including redemption premium, if any) and interest on all Obligations outstanding, as and when the same become due and payable;

(b)    by depositing with the Master Trustee, in trust, at or before maturity, moneys in an amount sufficient to pay or redeem (when redeemable) all Obligations outstanding (including the payment of premium, if any, and interest payable on such Obligations to the maturity or redemption date thereof), provided that such moneys, if invested, shall be invested at the direction of the Obligated Group Agent in Escrow Obligations, in an amount, without consideration of any income or increment to accrue thereon, sufficient to pay or redeem (when redeemable) and discharge the indebtedness on all Obligations outstanding at or before their respective maturity dates; it being understood that the investment income on such Escrow Obligations may be used at the direction of the Obligated Group Agent for any other purpose permitted by law;

(c)    by delivering to the Master Trustee, for cancellation by it, all Obligations outstanding; or

(d)    by depositing with the Master Trustee, in trust, before maturity, Escrow Obligations in such amount as the Master Trustee shall determine will, together with the income or increment to accrue thereon, without consideration of any reinvestment thereof, be fully sufficient to pay or redeem (when redeemable) and discharge the indebtedness on all Obligations outstanding at or before their respective maturity dates;

and if the Obligated Group shall also pay or cause to be paid all other sums payable hereunder by the Obligated Group and, if any such Obligations are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given in accordance with the requirements of this Master Indenture or provisions satisfactory to the Master Trustee shall have been made for the giving of such notice, then and in that case (but subject to the provisions of Section 803 hereof) this Master Indenture and the estate and rights granted hereunder shall cease, determine, and become null and void, and thereupon the Master Trustee shall, upon Written Request of the Obligated Group Agent, and upon receipt by the Master Trustee of (i) an Officer's Certificate from the Obligated Group Agent and an opinion of Independent Counsel acceptable to the Master Trustee and addressed to

-96-

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

each Related Bond Trustee and each Bond Insurer (as defined in any Related Bond Indenture), each
stating that in the opinion of the signers all conditions precedent to the satisfaction and discharge of
this Master Indenture have been complied with, and (ii) a verification report of a nationally
recognized independent certified public accountant or firm of nationally recognized independent
certified public accountants (which verification report may be accepted by the Master Trustee as
conclusive evidence of the sufficiency of the amount of such deposit) and addressed to each Related
Bond Trustee and each Bond Insurer (as defined in any Related Bond Indenture) to the effect that
the Escrow Obligations together, if applicable, with the income or increment to accrue thereon,
without consideration of any reinvestment thereof, and any uninvested cash, will be fully sufficient
to pay or redeem (when redeemable) and discharge the indebtedness on such Obligations at or before
their respective maturity dates, forthwith execute proper instruments acknowledging satisfaction of
and discharging this Master Indenture and the lien hereof. The satisfaction and discharge of this
Master Indenture shall be without prejudice to the rights of the Master Trustee to charge and be
reimbursed by the Obligated Group for any expenditures which it may thereafter incur in connection
herewith. The foregoing notwithstanding, the liability of the Obligated Group in respect of the
Obligations shall continue, but the holders thereof shall thereafter be entitled to payment only out
of the moneys or Escrow Obligations deposited with the Master Trustee as aforesaid.

Any moneys, funds, securities, or other property remaining on deposit under this Master
Indenture (other than said Escrow Obligations or other moneys deposited in trust as above provided)
shall, upon the full satisfaction of this Master Indenture, forthwith be transferred, paid over and
distributed to the Obligated Group.

The Obligated Group may at any time surrender to the Master Trustee for cancellation by it
any Obligations previously authenticated and delivered which the Obligated Group may have
acquired in any manner whatsoever, and such Obligations, upon such surrender and cancellation,
shall be deemed to be paid and retired.

*Section 802. Provision for Payment of a Particular Series of Obligations or Portion Thereof.*
If the Obligated Group shall pay or provide for the payment of the entire indebtedness on all
Obligations of a particular series or a portion of such a series (including, for the purpose of this
Section 802, any such Obligations owned by a Member) in one of the following ways:

(a)  by paying or causing to be paid the principal of (including redemption
premium, if any) and interest on all Obligations of such series or portion thereof outstanding,
as and when the same shall become due and payable;

(b)  by depositing with the Master Trustee, in trust, at or before maturity, moneys
in an amount sufficient to pay or redeem (when redeemable) all Obligations of such series
or portion thereof outstanding (including the payment of premium, if any, and interest
payable on such Obligations to the maturity or redemption date), provided that such moneys,
if invested, shall be invested at the direction of the Obligated Group Agent in Escrow

Obligations in an amount, without consideration of any income or increment to accrue thereon, sufficient to pay or redeem (when redeemable) and discharge the indebtedness on all Obligations of such series or portion thereof outstanding at or before their respective maturity dates; it being understood that the investment income on such Escrow Obligations may be used at the direction of the Obligated Group Agent for any other purpose permitted by law;

(c)     by delivering to the Master Trustee, for cancellation by it, all Obligations of such series or portion thereof outstanding; or

(d)     by depositing with the Master Trustee, in trust, Escrow Obligations in such amount as the Master Trustee shall determine will, together with the income or increment to accrue thereon without consideration of any reinvestment thereof, be fully sufficient to pay or redeem (when redeemable) and discharge the indebtedness on all Obligations of such series or portion thereof at or before their respective maturity dates;

and if the Obligated Group shall also pay or cause to be paid all other sums payable hereunder by the Obligated Group with respect to such series of Obligations or portion thereof, and, if any such Obligations of such series or portion thereof are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given in accordance with the requirements of the Master Indenture or provisions satisfactory to the Master Trustee shall have been made for the giving of such notice, then in that case (but subject to the provisions of Section 803 hereof) such Obligations shall cease to be entitled to any lien, benefit or security under the Master Indenture. In determining whether the Escrow Obligations deposited with it together, if applicable, with the income or increment to accrue thereon, without consideration of any reinvestment thereof, and any uninvested cash, will be fully sufficient to pay or redeem (when redeemable) and discharge the indebtedness on such Obligations or portions thereof at or before their respective maturity dates, the Master Trustee shall be entitled to receive and may conclusively rely on a verification report of a nationally recognized independent certified public accountant or firm of nationally recognized independent certified public accountants. The liability of the Obligated Group in respect of such Obligations shall continue but the holders thereof shall thereafter be entitled to payment (to the exclusion of all other Obligation holders) only out of the moneys or Escrow Obligations deposited with the Master Trustee as aforesaid.

*Section 803. Satisfaction of Related Bonds.* The provisions of Section 801 and Section 802 of this Master Indenture notwithstanding, any Obligation which secures a Related Bond (i) shall be deemed paid and shall cease to be entitled to the lien, benefit and security under the Master Indenture in the circumstances described in subsection (b)(ii) of the definition of "Outstanding Obligations" contained in Article I; and (ii) shall not be deemed paid and shall continue to be entitled to the lien, benefit and security under this Master Indenture unless and until such Related Bond shall cease to be entitled to any lien, benefit or security under the Related Bond Indenture pursuant to the provisions thereof.

## ARTICLE IX

## MANNER OF EVIDENCING OWNERSHIP OF OBLIGATIONS

*Section 901. Proof of Ownership.* Any request, direction, consent or other instrument provided by this Master Indenture to be signed and executed by the Obligation holders may be in any number of concurrent writings of similar tenor and may be signed or executed by such Obligation holders in person or by an agent appointed in writing. Proof of the execution of any such request, direction or other instrument or of the writing appointing any such agent and of the ownership of Obligations, if made in the following manner, shall be sufficient for any of the purposes of this Master Indenture and shall be conclusive in favor of the Master Trustee and the Obligated Group, with regard to any action taken by them, or either of them, under such request or other instrument, namely:

(a)     The fact and date of the execution by any person of any such writing may be proved by the certificate of any officer in any jurisdiction who by law has power to take acknowledgments in such jurisdiction, that the person signing such writing acknowledged before him the execution thereof, or by the affidavit of a witness of such execution; and

(b)     The ownership of Obligations shall be proved by the registration of such Obligations.

Any action taken or suffered by the Master Trustee pursuant to any provision of this Master Indenture, upon the request or with the assent of any person who at the time is the holder of any Obligation or Obligations, shall be conclusive and binding upon all future holders of the same Obligation or Obligations or any Obligation or Obligations issued in exchange therefor.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

## ARTICLE X

## MISCELLANEOUS

*Section 1001. Limitation of Rights.* With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from this Master Indenture or the Obligations is intended or shall be construed to give to any Person other than the parties hereto, and the holders of the Obligations, any legal or equitable right, remedy or claim under or in respect to this Master Indenture or any covenants, conditions and provisions herein contained; this Master Indenture and all of the covenants, conditions and provisions hereof being intended to be and being for the sole and exclusive benefit of the parties hereto and the holders of the Obligations as herein provided.

*Section 1002. Unclaimed Moneys.* Any moneys deposited with the Master Trustee by the Obligated Group in accordance with the terms and covenants of this Master Indenture, in order to redeem or pay any Obligation in accordance with the provisions of this Master Indenture, and remaining unclaimed by the owners of the Obligation for six years after the date fixed for final redemption or of maturity, as the case may be, shall, if the Obligated Group is not at the time to the knowledge of the Master Trustee in default with respect to any of the terms and conditions of this Master Indenture, or in the Obligations, be repaid by the Master Trustee to the Obligated Group Agent upon its written request therefor on behalf of the Members; and thereafter the registered owners of the Obligation shall be entitled to look only to the Obligated Group for payment thereof. The Obligated Group hereby covenants and agrees to indemnify and save the Master Trustee harmless from any and all losses, costs, liability and expense suffered or incurred by the Master Trustee by reason of having returned any such moneys to the Members as herein provided.

*Section 1003. Severability.* If any provision of this Master Indenture shall be held or deemed to be or shall, in fact, be inoperative or unenforceable as applied in any particular case in any jurisdiction or jurisdictions or in all jurisdictions, or in all cases because it conflicts with any other provision or provisions or any constitution or statute or rule of public policy, or for any other reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatever.

The invalidity of any one or more phrases, sentences, clauses or Sections in this Master Indenture contained, shall not affect the remaining portions of this Master Indenture, or any part thereof.

*Section 1004. Notices.* It shall be sufficient service of any notice, complaint, demand or other paper on the Corporation if the same shall be delivered in person or duly mailed by registered or certified mail addressed as follows:

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

To the Corporation or the Obligated Group Agent:

>   Mercy Hospital, Iowa City, Iowa
>   500 East Market Street
>   Iowa City, Iowa  52245
>   Attention:  Chief Financial Officer

To the Master Trustee:

>   Norwest Bank Iowa, National Association
>   666 Walnut Street
>   Des Moines, Iowa  50309
>   Attention: Corporate Trust Department

To Fitch:

>   Fitch IBCA, Inc.
>   One State Street Plaza
>   New York, NY  10004

To Standard & Poor's:

>   Standard & Poor's Ratings Services
>   25 Broadway
>   New York, New York 10004

*Section 1005. Master Trustee as Paying Agent and Registrar.* The Master Trustee is hereby designated and agrees to act as principal Paying Agent and Obligation Registrar for and in respect to the Obligations.  The Obligated Group may also appoint one or more other banks as Paying Agent.

*Section 1006. Counterparts.* This Master Indenture may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

*Section 1007. Applicable Law.* This Master Indenture shall be governed exclusively by the applicable laws of the State of Iowa.

*Section 1008. Immunity of Officers, Employees and Members.* No recourse shall be had for the payment of the principal of or premium or interest on any of the Obligations or for any claim based thereon or upon any obligation, covenant or agreement in this Master Indenture contained against any past, present or future officer, director, employee, member or agent of any Member, or of any successor corporation, as such, either directly or through any Member or any successor

-101-

Mercy Hospital Iowa City/#41968-2/Master Trust Indenture

corporation, under any rule of law or equity, statute or constitution or by the enforcement of any assessment or penalty or otherwise, and all such liability of any such officers, directors, employees, members or agents as such is hereby expressly waived and released as a condition of and consideration for the execution of this Master Indenture and the issuance of such Obligations.

*Section 1009.  Holidays.*  If the date for making any payment or the date for performance of any act or the exercising of any right, as provided in this Master Indenture, is not a Business Day, such payment may be made or act performed or right exercised on the next succeeding business day with the same force and effect as if done on the nominal date provided in this Master Indenture.

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

IN WITNESS WHEREOF, the Corporation has caused these presents to be signed in its name and on its behalf as of the day and year first above written.

MERCY HOSPITAL, IOWA CITY, IOWA

By _Ronald R. Reed_
      President and Chief Executive Officer

By _____
      Vice President of Finance and
      Chief Financial Officer

Mercy Hospital Iowa City/441968-2/Master Trust Indenture

IN WITNESS WHEREOF, the Master Trustee has caused these presents to be signed in its name and on its behalf as of the day and year first above written.

NORWEST BANK IOWA, NATIONAL
ASSOCIATION, as Master Trustee


By _____
Trust Officer

(Seal)

Exhibits to the foregoing document may be obtained from counsel for Plaintiffs.