# Exhibit F

BK: 5782 PG: 745
Recorded: 5/11/2018 at 8:57:07.0 AM
Fee Amount: $112.00
Revenue Tax:
Kim Painter RECORDER
Johnson County, Iowa

Prepared by and Return to: Patricia A. Scallon, Davis Brown Law Firm, 215 10th St., Suite 1300, Des Moines, IA 50309 (515) 288-2500

## MORTGAGE AND SECURITY AGREEMENT
## AND FIXTURE FINANCING STATEMENT

between

## MERCY HOSPITAL, IOWA CITY, IOWA
as Mortgagor

and

## WELLS FARGO BANK, NATIONAL ASSOCIATION, as Master Trustee
as Mortgagee

Dated as of May 1, 2018

NOTICE: This Mortgage secures credit in the amount of $76,405,000.00. Loans and advances up to this amount, together with interest, are senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens. This Mortgage contains an after-acquired property clause.

#2954601 v.4

# TABLE OF CONTENTS

This Table of Contents is not a part of this Mortgage and is provided only for convenience of reference,

| | | |
|---|---|---|
| SECTION 1. | TERMS DEFINED. | 3 |
| SECTION 2. | TITLE TO THE MORTGAGED PROPERTY AND THE STATUS OF THE LIEN OF THIS MORTGAGE; MAINTENANCE OF LIEN; RECORDING; FURTHER ASSURANCE; AFTER-ACQUIRED PROPERTY. | 4 |
| SECTION 3. | PAYMENTS UNDER THE OBLIGATIONS. | 6 |
| SECTION 4. | TAXES AND ASSESSMENTS. | 6 |
| SECTION 5. | MAINTENANCE AND REPAIR | 6 |
| SECTION 6. | INSURANCE REQUIRED TO BE CARRIED. | 7 |
| SECTION 7. | CONDITIONS FOR RELEASE OF MORTGAGED PROPERTY. | 7 |
| SECTION 8. | INSPECTION OF THE MORTGAGED PROPERTY | 7 |
| SECTION 9. | DAMAGE, DESTRUCTION OR CONDEMNATION; APPLICATION OF NET PROCEEDS. | 7 |
| SECTION 10. | COMPLIANCE WITH LAWS. | 7 |
| SECTION 11. | ADVANCES. | 8 |
| SECTION 12. | MORTGAGE, SALE, LEASE, ETC. OF THE MORTGAGED PROPERTY. | 9 |
| SECTION 13. | DEFAULTS, EVENTS OF DEFAULT. | 9 |
| SECTION 14. | REMEDIES ON DEFAULT. | 10 |
| SECTION 15. | LITIGATION. | 12 |
| SECTION 16. | NON-WAIVER. | 13 |
| SECTION 17. | REMEDIES CUMULATIVE. | 13 |
| SECTION 18. | WAIVER OF CERTAIN RIGHTS AND REMEDIES. | 13 |
| SECTION 19. | MATURITY DATE. | 13 |
| SECTION 20. | ATTORNEYS' FEES. | 13 |
| SECTION 21. | USURY. | 13 |
| SECTION 22. | SEVERABILITY. | 13 |
| SECTION 23. | SECURITY INTEREST; FINANCING STATEMENT. | 14 |
| SECTION 24. | CONSTRUCTION. | 14 |
| SECTION 25. | AMENDMENTS, CHANGES AND MODIFICATIONS. | 14 |
| SECTION 26. | ADDRESSES FOR NOTICE AND DEMANDS. | 14 |
| SECTION 27. | DISCHARGE OF LIEN. | 15 |
| SECTION 28. | CONCERNING ANY SUCCESSOR TRUSTEE. | 15 |
| SECTION 29. | INDEMNIFICATION OF THE MORTGAGEE. | 16 |
| SECTION 30. | EXECUTION OF COUNTERPARTS. | 16 |

THIS MORTGAGE AND SECURITY AGREEMENT AND FIXTURE FINANCING STATEMENT (the "Mortgage"), is made as of the first day of May, 2018, by and between Mercy Hospital, Iowa City, Iowa (the "Mortgagor" or the "Corporation"), as Mortgagor, and Wells Fargo Bank, National Association (successor in interest to Wells Fargo Bank Iowa, National Association and Norwest Bank Iowa, National Association, the "Master Trustee" or the "Mortgagee"), as Master Trustee under the Master Trust Indenture, dated as of June 1, 1998 (as supplemented and amended, the "Master Indenture") between the Corporation and the Master Trustee.

WITNESSETH:

WHEREAS, the Mortgagor is authorized by law, and has entered into the Master Indenture to provide for the incurrence of Indebtedness by the Mortgagor and all other Persons that become Members of the Obligated Group established by the Master Indenture, and the issuance of Obligations under the Master Indenture to evidence such Indebtedness; and

WHEREAS, pursuant to the provisions of Chapter 419 of the Code of Iowa, as amended (the "Act"), the City of Hills, Iowa (the "Issuer") has entered into a Loan Agreement dated November 1, 2011 (the "2011 Agreement") with Mortgagor as Obligated Group Agent pursuant to which the Issuer issued its $44,615,000 Health Facilities Revenue Bonds (Mercy Hospital Project) Series 2011 (the "Series 2011 Bonds"), to (i) refund the outstanding principal amount of the City's Revenue Refunding Bonds, Series 1998 (Mercy Hospital, Iowa City, Iowa) (ii) finance a portion of the costs of the construction, renovation, expansion, equipping and furnishing of the Corporation's existing hospital facilities, all located on the Corporation's campus at 500 E. Market Street, Iowa City, Iowa and (iii) pay certain costs of issuance of the Series 2011 Bonds; and

WHEREAS, in order to secure its obligations under the 2011 Agreement and provide for the payment of the Series 2011 Bonds, the Mortgagor has issued its $44,615,000 principal amount Direct Note Obligation, Series 2011 (the "Series 2011 Obligation") pursuant to the Master Indenture, as supplemented and amended by the Seventh Supplemental Master Trust Indenture dated as of November 1, 2011 (the "Seventh Supplemental Indenture") between the Mortgagor and the Mortgagee; and

WHEREAS, as of the date hereof, the Series 2011 Bonds are outstanding in the principal amount of $34,645,000, and the last stated maturity of the Series 2011 Obligation is August 15, 2035; and

WHEREAS, pursuant to the provisions of the Act the Issuer has entered into a Loan Agreement, dated as of even date herewith (the "Loan Agreement") with the Mortgagor pursuant to which the Issuer has agreed to issue its Health Facilities Revenue Bonds (Mercy Hospital Project) Series 2018 in the aggregate principal amount of $41,760,000 (the "Bonds") to provide funds to finance the costs of (i) financing a portion of the costs of the construction, renovation, expansion, equipping and furnishing of the Corporation's existing hospital facilities, including the purchase of routine capital equipment, hardware, and software, all located on the Corporation's campus at 500 East Market Street, Iowa City, Iowa (the "Project"); (ii) refunding the outstanding principal amount of the Issuer's Variable Rate Demand Health Facilities

Revenue Bonds, Series 2008 (Mercy Hospital Project) (the "Prior Bonds"); (iii) funding a debt service reserve fund; and (iv) paying for costs of issuance of the Bonds; and

WHEREAS, the Bonds are being issued in accordance with the provisions of a Trust Indenture dated as of even date herewith (the "Indenture") between the Corporation and the Master Trustee as Trustee; and

WHEREAS, the Loan Agreement provides that the Issuer will lend the proceeds from the sale of the Bonds to the Mortgagor and the Mortgagor will pay the Issuer a sum sufficient to pay the principal of, interest, and premium, if any, on the Bonds as and when the same become due; and

WHEREAS, in order to secure its obligations under the Loan Agreement and provide for the payment of the Bonds, the Mortgagor has issued its $41,760,000 principal amount Direct Note Obligation, Series 2018 (the "Series 2018 Obligation") pursuant to the Master Indenture, as supplemented and amended by the Eighth Supplemental Master Trust Indenture dated as of even date herewith (the "Eighth Supplemental Indenture") between the Mortgagor and the Mortgagee; and

WHEREAS, the Master Indenture provides for the incurrence of additional Indebtedness and issuance from time to time by the Mortgagor and other Members of the Obligated Group of additional Obligations (the "Additional Obligations") to be of equal standing with the Series 2011 Obligation (the Series 2011 Obligation, the Series 2018 Obligation and all Additional Obligations are referred to herein as the "Obligations"); and

WHEREAS, the Eighth Supplemental Indenture provides that as a condition to the issuance of the Bonds, to secure performance by the Mortgagor of its obligations under the Loan Agreement, and as an inducement to the purchase of the Bonds by all who shall at any time become holders thereof, the Mortgagor will execute and deliver this Mortgage to the Mortgagee.

## GRANTING CLAUSES

NOW, THEREFORE, for the purposes of securing the payment of all amounts now or hereafter advanced under the Master Indenture, owing under the Obligations, the Master Indenture, or this Mortgage and the faithful performance of all covenants, conditions, stipulations and agreements of the Obligations, the Master Indenture and this Mortgage contained, and in consideration of the premises, and as an inducement to the purchase of the Obligations by all who shall at any time become holders thereof, and other good and valuable consideration the receipt whereof is hereby acknowledged, the Mortgagor has executed and delivered this Mortgage to the Mortgagee and the Mortgagor does hereby grant, bargain, sell, convey, transfer, assign, set over, mortgage, grant a security interest in, and warrant to the Mortgagee, its successors and assigns forever, all and singular the following described properties, whether now owned or hereafter acquired (herein collectively called the "Mortgaged Property"):

A.     All of the Mortgagor's interest in the tracts or parcels of land (the "Land") located in Johnson County, Iowa, and more particularly described in Exhibit A attached hereto;

- 2 -

B.     All buildings, structures, additions, improvements and appurtenances now standing or at any time hereafter constructed or placed on the Land;

C.     All building materials, building equipment, fixtures and supplies of every kind and nature now or hereafter located on the Land and suitable or intended to be incorporated in any building, structure or other improvement now or hereafter standing on the Land;

D.     All fixtures and articles of personal property of every kind and nature that will integrally belong to, be or hereafter become an integral part of the Land, and whether attached or detached, and whether now owned or hereafter acquired by Mortgagor, including, but without limiting the generality of the foregoing, any and all carpeting, drapes, screens, awnings, storm windows, floor coverings, call and sprinkler systems, and all heating, lighting, ventilating, incinerating, air-conditioning and air-cooling equipment, gas and electric machinery, and all of the right, title and interest of the Mortgagor in and to any fixtures which may be subject to any title retention or security agreement superior in lien to the lien of this Mortgage, and all additions, accessions, increases, parts, fittings, accessories, replacements, substitutions, betterments, repairs and proceeds of all of the foregoing, all of which shall be construed as fixtures;

E.     All and singular the tenements, hereditaments, easements, rights of way, rights, privileges and appurtenances to the Land, belonging or in any way appertaining thereto, and all claims or demands whatsoever of the Mortgagor either in law or in equity, in possession or expectancy of, in and to the Land;

F.     Any and all leases, subleases, licenses, concessions or grants of other possessory interests now or hereafter in force, oral or written, covering or affecting the building and improvements to be constructed on the Land;

G.     All the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests now or hereafter belonging or in any way pertaining to the Mortgagor's interest in the Land and each and every lease, sublease and agreement described in the foregoing paragraph E and every right, title and interest thereunder, from the date of this Mortgage until the terms hereof are complied with and fulfilled;

H.     All machinery, apparatus, equipment, furnishings and personal property which may or might now or hereafter be or be deemed to be personal property and not an integral part of the Land now owned or hereinafter acquired by the Mortgagor (hereinafter called the "Equipment") and all accessions, parts, fittings, accessories, replacements, substitutions, betterments, repairs and proceeds of all of the foregoing, and a security interest is hereby granted by the Mortgagor and hereby attaches thereto, all as provided by the Iowa Uniform Commercial Code; and

I.     All furniture, furnishings, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Iowa Commercial Code, whether tangible or intangible, other

than fixtures, which are now or hereafter owned by Corporation as otherwise provided by this Mortgage, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof, and the right, title and interest of Corporation in and to any of such personal property which may be subject to any security interests, as defined in the Iowa Commercial Code, superior in lien to the lien of this Mortgage and all proceeds and products of the above;

TOGETHER with the reversions, remainders and benefits and all other revenues, rents, earnings, issues and income and profits arising or to arise out of or to be received or had of and from the properties hereby mortgaged or intended so to be or any part thereof and all the estate, right, title, interest and claims, at law or in equity which the Mortgagor now or may hereafter acquire or be or become entitled to in and to the aforesaid properties and any and every part thereof. The above described Mortgaged Property is hereby declared to be subject to the lien of this Mortgage as security for the payment of the aforementioned indebtedness.

TO HAVE AND TO HOLD all and singular, the Mortgaged Property, whether now owned or hereafter acquired, unto the Mortgagee, its successors and assigns forever; provided, however, that this Mortgage is upon the express condition that if the Mortgagor shall pay or cause to be paid all indebtedness secured hereby and shall keep, perform and observe all and singular the covenants and promises in the Master Indenture and the Obligations and in this Mortgage expressed to be kept, performed and observed by the Mortgagor, then this Mortgage and the rights hereby granted shall cease, determine and be void, otherwise to remain in full force and effect,

As additional security for the payment of the Bonds and the amounts due under the Loan Agreement, the Mortgagor hereby further covenants, warrants and agrees with the Mortgagee as follows:

SECTION 1.  Terms Defined.  All words and phrases defined in Article I of the Master Indenture shall have the same meaning in this Mortgage, unless the context clearly otherwise requires.  In addition, the following words and phrases shall have the following meanings:

"Net Proceeds", when used with respect to any insurance or condemnation award, means the gross proceeds from the insurance or condemnation award remaining after payment of all expenses (including attorneys' fees and any extraordinary expenses of the Mortgagee) incurred in the collection of such gross proceeds.

"Repayment Rate" means the rate of 11% per annum.

SECTION 2.   Title to the Mortgaged Property and the Status of the Lien of this Mortgage; Maintenance of Lien; Recording; Further Assurance; After-Acquired Property.

(a)     The Mortgagor is lawfully seized of the Land and the lien created by this Mortgage is a first, prior and paramount lien on the Mortgagor's interest in and to the Land and the remainder of the above described Mortgaged Property, except for Permitted Encumbrances, and Mortgagor will keep said premises and the rights, privileges and appurtenances thereto free from all lien claims of every kind on a parity with or superior to the lien of this Mortgage and

free from all subordinate financings of every kind and any liens thereof, except Permitted Encumbrances, and if any such lien be filed, Mortgagor, within thirty (30) days after such filing shall cause same to be discharged by payment or protected against by bonding or adequate reserves as agreed upon by the Mortgagor and the Mortgagee being maintained with the Mortgagee in escrow. The Mortgagor further agrees to protect and defend the title and possession of the Mortgaged Property so that this Mortgage shall be and remain a lien thereon prior to all liens other than Permitted Encumbrances until the Obligations and the indebtedness secured hereby have been fully paid, or if foreclosure sale be had hereunder so that the purchaser at said sale shall acquire good title in and to said premises free and clear of all liens and encumbrances, except Permitted Encumbrances;

(b)     The Mortgagor will, at its expense, take all necessary action to maintain and preserve the lien and security interest of this Mortgage so long as any of the Obligations and any of the indebtedness secured hereby remain outstanding;

(c)     The Mortgagor will, forthwith after the execution and delivery of this Mortgage and thereafter from time to time, cause this Mortgage and any financing statements in respect thereof to be filed, registered and recorded in such manner and in such places as may be required by law in order to publish notice of and fully to protect the lien hereof upon, and the title of the Mortgagor to, the Mortgaged Property; and from time to time will perform or cause to be performed any other act as provided by law and will execute or cause to be executed any and all continuation statements and further instruments for such publication and protection. Except to the extent that it is exempt therefrom, the Mortgagor will pay or cause to be paid all filing, registration and recording fees incident to such filing, registration and recording, and all expenses incident to the preparation, execution and acknowledgment of this assurance, and all federal or state fees and other similar fees, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage and such instruments of further assurance;

(d)     The Mortgagor will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all such further acts, deeds, conveyances, mortgages, assignments, transfers, financing statements, continuation statements and assurances as the Mortgagee reasonably may require for the better assuring, conveying, mortgaging, assigning and confirming unto the Mortgagee all and singular the Mortgaged Property as now or hereafter constituted; and

(e)     All right, title and interest of the Mortgagor in and to all improvements, betterments, renewals, substitutions, replacements and proceeds of the Mortgaged Property or any part thereof, hereafter constructed or acquired by the Mortgagor, which shall become a part of the Mortgaged Property, immediately upon such construction or acquisition, and without any further mortgaging, conveyance or assignment, shall become and be part of the Mortgaged Property and shall be subject to the lien of this Mortgage as fully and completely and with the same effect as though now owned by the Mortgagor, but at any and all times the Mortgagor will execute and deliver to the Mortgagee any and all such further assurances, mortgages, conveyances or assignments therefor and other instruments with respect thereto as the Mortgagee may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Mortgage.

- 5 -

SECTION 3.   Payments Under the Obligations.   The Mortgagor agrees to pay the repayment installments and all amounts due under the Obligations in accordance with their terms.

SECTION 4.   Taxes and Assessments.   The Mortgagor agrees to promptly pay before the same become delinquent:

(a)      All taxes, liabilities, charges, impositions and assessments of every type or nature at any time levied and assessed upon or against the Mortgaged Property;

(b)      All other claims which might or could become a lien on the Mortgaged Property or any part thereof equal to or prior to the lien of this Mortgage except for Permitted Encumbrances unless approved in writing by the Mortgagee;

(c)      All taxes, assessments or impositions upon this Mortgage or on the interest of the Mortgagee herein, or upon the Loan Agreement, the Bonds, or indebtedness secured hereby.

Provided, however, that no such tax, liability, charge, imposition, assessment or claim need be paid so long as the validity thereof is being contested in good faith by appropriate proceedings and in a manner not to jeopardize any of the Mortgaged Property or to subject the Mortgagee to any liability, and adequate reserves as agreed upon by the Mortgagor and the Mortgagee are maintained by the Mortgagor with the Mortgagee in escrow to assure full payment thereof.

The Mortgagor will not allow to arise or exist any lien of whatsoever kind or nature equal to or prior to the lien of this Mortgage, or create, allow to arise or exist any subordinate financing of any kind or any lien thereof upon the Mortgaged Property, or any party thereof, save and except for Permitted Encumbrances which, as herein provided, are permitted to remain unpaid.

The Mortgagor agrees to exhibit to the Mortgagee, at any time upon request, official receipts showing payment of all taxes, assessments and charges which the Mortgagor is required or elects to pay hereunder.

SECTION 5.   Maintenance and Repair.   The Mortgagor shall at all times maintain, preserve and keep, or shall cause to be maintained, the Mortgaged Property and every part thereof in good condition, repair and working order and will from time to time make, or shall cause to be made, all needful and proper repairs thereto and renewals, replacements, additions, betterments and improvements thereto so that the value and the operating efficiency thereof shall at all times be maintained and preserved, all in accordance with the provisions of Section 406 of the Master Indenture. Notwithstanding the foregoing or the requirements of Section 12 hereof, the Mortgagor may remove and dispose of obsolete, worn out or surplus items of Equipment or replace any item of Equipment with Equipment of equivalent function or utility without consent of the Mortgagee.

SECTION 6.   Insurance Required to be Carried.   The Mortgagor shall maintain insurance in accordance with the provisions of Article IV of the Master Indenture.

- 6 -

SECTION 7.  Conditions for Release of Mortgaged Property.  So long as no Event of Default shall have occurred and be continuing under this Mortgage or under the Master Indenture, the Trustee shall release, with the prior approval of the Bondholder Representative, which approval shall not be unreasonably withheld, any of the Mortgaged Property from the lien of this Mortgage, subject to the following conditions and limitations having been met:

(a)    The aggregate fair market value of the released portion(s) of the Mortgaged Property shall not exceed 15% of the then fair market value of all Mortgaged Property secured by the Mortgage; and

(b)    The Mortgaged Property that would remain following the release of the portion of the Mortgaged Property must have a minimum appraised value of in an amount equal to the redemption price of all Outstanding Obligations.

SECTION 8.  Inspection of the Mortgaged Property.  The Mortgagee may (but has no duty to) by itself, its agents or workmen enter and inspect during normal business hours and upon providing reasonable notice to Mortgagor, unless an Event of Default has occurred in which case no notice is required, any part of the Mortgaged Property for the purpose of inspecting the same and for the purpose of performing any of the acts it is authorized to perform under the terms of this Mortgage.

SECTION 9.  Damage, Destruction and Condemnation; Application of Net Proceeds.  If prior to full payment of the Obligations (or provision for payment thereof in accordance with the provisions of the Master Indenture) (i) the Mortgaged Property or any substantial portion thereof is destroyed (in whole or in part) or is damaged by fire or other casualty, or (ii) title to, or the temporary use of, the Mortgaged Property or any substantial portion thereof shall be taken under the exercise of the power of eminent domain by any governmental body or by any person, firm or corporation acting under governmental authority, the Mortgagor shall proceed as provided in Sections 410, 411 and 412 of the Master Indenture.

SECTION 10.  Compliance with Laws.  The Mortgagor shall furnish and keep in force a certificate of occupancy, or its equivalent, and shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions from time to time affecting the Mortgaged Property and shall not suffer or permit any act to be done in or upon the Mortgaged Property in violation thereof, unless and to the extent the same are being contested in good faith by appropriate proceedings and in a manner not to jeopardize the Mortgaged Property or the lien or priority of this Mortgage or the Bonds or subject the Mortgagee to any liability.

Except as heretofore disclosed by the Mortgagor to Mortgagee in writing, the Mortgagor has no knowledge of any public health, environmental or other land-use action or proceeding, either instituted or threatened, which would or might detrimentally affect the use or operation of the Mortgaged Property or adversely affect the value thereof.  Promptly upon learning of any such action or proceeding, whether threatened or initiated, the Mortgagor will notify the Mortgagee thereof in writing.

All public health and environmental permits, licenses and authorizations required by law, ordinance or regulation, if any, in connection with the intended use or operation of the Mortgaged Property have been obtained; and the Mortgagor and any lessee claiming by, through or under the Mortgagor at all times hereafter will be in full compliance with all requirements of all such permits, licenses, authorities, laws, regulations and ordinances.

If any of the foregoing covenants or representations are breached or prove to be inaccurate in any material respect, then, in addition to all rights, powers and remedies granted to the Mortgagee by law hereunder (including rights of acceleration of indebtedness as in the case of any other default or Event of Default hereunder or under any obligation secured hereby) the Mortgagee, upon failure of the Mortgagor to do so and in exercise of its reasonable judgment, may (but shall not be required to) do any or all of the following, at the expense of the Mortgagor:

(a)    Appear in and defend any such action or proceeding; and

(b)    Retain such legal and technical advice and counsel as the Mortgagee believes necessary to protect itself and the security of this instrument.

The Mortgagor hereby agrees to indemnify, protect and hold the Mortgagee harmless of and from any and all loss, liability, cost, expense or damage (including reasonable attorneys' fees and expenses) which the Mortgagee may suffer or incur by reason of any material breach or inaccuracy in any of the covenants or representations contained in this Section.

If any action has occurred in the past which would constitute a violation of any of the laws, ordinances and regulations referred to in this Section, the Mortgagor hereby agrees to indemnify, protect and hold the Mortgagee harmless of and from any and all loss, liability, cost, expense or damage (including reasonable attorneys' fees and expenses) which the Mortgagee may suffer or incur by reason thereof. The obligations of the Mortgagor under this Section 10 shall survive the termination of this Mortgage and any resignation or removal of the Master Trustee.

SECTION 11.  Advances.  Upon the Mortgagor's failure to comply with the preceding covenants and agreements, the payment of prior liens, liens on a parity with this Mortgage, taxes, assessments and charges, and maintenance of insurance and repairs as required by the Loan Agreement and this Mortgage, the Mortgagee without prejudice to any rights given herein may, but shall be under no obligation to, make advances to perform the same in behalf of the Mortgagor and, in furtherance thereof, the Mortgagee may:  place or cause the Mortgaged Property to be placed in good condition, repair and working order; pay, settle or contest any such taxes, liabilities, charges and assessments; redeem the Mortgaged Property from any sale or forfeiture for any tax or assessment; purchase any tax title obtained or that shall be obtained thereon; pay any judgments based on such tax or assessment; pay, settle or contest any unpermitted lien on the Mortgaged Property and procure such insurance as may be necessary to comply with the provisions of this Mortgage and the Loan Agreement.  The Mortgagor hereby agrees to repay all sums so advanced, on demand, with interest thereon, to the extent permitted by law, from the date advanced until paid at the Repayment Rate, and all sums so advanced with interest as aforesaid until paid by the Mortgagor shall be immediately due and payable and be added to and become a part of any indebtedness or obligation secured hereby in such manner or

order as the Mortgagee may desire or determine, having the benefit of the lien hereby created as a part thereof, and of its priority, but no such advances shall be deemed to relieve the Mortgagor from any default hereunder or impair any right or remedy consequent thereon, and the exercise of the rights to make advances granted in this Section shall be optional with the Mortgagee and not obligatory, and the Mortgagee shall not in any case be liable to the Mortgagor for failure to exercise any such right.

SECTION 12.   Mortgage, Sale, Lease, etc. of the Mortgaged Property.   Except as hereinafter provided, the Mortgagor will not, now or in the future, mortgage, pledge or encumber or place any lien or encumbrance (or permit same to exist) on the Mortgaged Property, or any part thereof without the consent of the Mortgagee and the Bondholder Representative except for Permitted Encumbrances.

The Mortgagor shall not sell, convey, transfer or otherwise alienate in any manner, whether directly or indirectly, any right, title or interest in the Mortgaged Property, or any part thereof except as expressly permitted by Section 417 of the Master Indenture or other provisions of this Mortgage.   The Mortgagor may however lease any portion or all of the Mortgaged Property as permitted under the Loan Agreement.   The Mortgagee shall release from this Mortgage any Mortgaged Property that may properly be transferred by the Mortgagor pursuant to Section 417 of the Master Indenture.

Nothing in this Mortgage shall prohibit the Mortgagor from (1) conveying, mortgaging, pledging, encumbering or placing a lien on any equipment and personal property that do not constitute fixtures, (2) leasing equipment and personal property that do not constitute fixtures; and (3) giving a purchase money security interest in equipment or personal property that do not constitute fixtures.

SECTION 13.   Defaults, Events of Default.   If any of the following defaults occur, it is hereby declared to constitute an "Event of Default":

(a)     The occurrence of an Event of Default under the Master Indenture; or

(b)     The failure of the Mortgagor to observe and perform any covenant, condition or agreement on its part to be observed or performed in this Mortgage (other than an occurrence which may sooner constitute an Event of Default under the Loan Agreement) for a period of sixty (60) days after written notice specifying such failure and requesting that it be remedied, given to the Mortgagor by the Mortgagee, unless the Mortgagee shall agree in writing to an extension of such time prior to its expiration.

SECTION 14.   Remedies on Default.   Upon the occurrence of an Event of Default:

(a)     The Mortgagee may, at its option, by notice in writing to the Mortgagor and the Bondholder Representative, declare the installments under the Obligations remaining unpaid immediately due and payable and accelerate the Bonds upon the same terms and conditions and in the manner provided for in the Master Indenture.

- 9 -

(b)     The Mortgagee may, at its option, after notice in writing to the Mortgagor and the Bondholder Representative, institute proceedings for the collection at law or in equity of any and all indebtedness due under the provisions of the Master Indenture secured by this Mortgage.

(c)     The Mortgagee may, at its option, after notice in writing to the Mortgagor and the Bondholder Representative, immediately cause this Mortgage to be foreclosed in the manner prescribed by law and, upon the commencement of foreclosure proceedings, shall be entitled to have a receiver appointed at once or at any time thereafter, either before or after sale, without notice and without requiring bond, and without regard to the solvency or insolvency of any person liable for payment of the indebtedness secured hereby, and without regard to the then value of the Mortgaged Property (the provisions for the appointment of a receiver and assignment of rents hereby granted to the Mortgagee being an express condition upon which the loans and payments hereby secured are made) for the benefit of the Mortgagee, with power to rent the same and to collect the rents, issues and profits of the Mortgaged Property, due and to become due, during the pendency of such foreclosure suit and in the case of a sale and deficiency, during the full statutory period of redemption whether there be redemption or not, as well as during any future times when the Mortgagor, except for the intervention of such receiver, would be entitled to collect such rents, issues and profits and shall have all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Mortgaged Property during the whole of said period.  Any amount so collected by such receiver, whether prior to or following foreclosure, shall be applied under direction of the court upon the costs and expenses of foreclosure and receivership, expense of insurance on the improvements, expense of repairs, taxes, assessments, and the balance shall be paid to the Mortgagee to be applied on the indebtedness secured by this Mortgage.

(d)     The Mortgagee may, at its option, after 10 days' notice in writing to the Mortgagor and the Bondholder Representative, at any time either by its agents, attorneys, employees or by a receiver to be appointed by a court and without regard to the adequacy of any security for the indebtedness hereby secured, either with or without process of law, forcibly or otherwise, enter upon and take possession of the Mortgaged Property or any part thereof, expel and remove any persons, goods or chattels occupying or upon the same, do and perform any act that the Mortgagee may deem necessary or proper to conserve the value thereof, and to collect and receive all rents, issues and profits therefrom, including those past due and unpaid, as well as those accruing thereunder, to manage and control the same, and to lease the same or any part thereof.  The Mortgagor further agrees that the Mortgagee may also take possession of, and use any and all personal property contained in the Mortgaged Property and used by the Mortgagor in the rental or leasing of the Mortgaged Property or any part thereof.  The expense (including receiver's fees, if any, and compensation to any agent appointed by the Mortgagee, and counsel fees and costs and disbursements) incurred in taking possession and effecting such collection, shall be deemed a portion of the expense of this Mortgage secured hereby.  Neither the collection of such rents, issues and profits and the application or release thereof as aforesaid shall cure or waive any default.  After deducting all attorneys' fees and expenses incurred in connection herewith, the remaining net income shall be paid to the Mortgagee to be applied upon the indebtedness secured hereby in accordance with the Master Indenture according to their outstanding principal amounts.

In any suit to foreclose the lien of this Mortgage there shall be allowed and included in the decree for sale, to be paid out of the proceeds of such sale:

> (i)      All of the principal remaining unpaid on the Obligations, plus all interest accrued thereon and which will accrue thereon to the date of payment, plus interest on the foregoing amounts of principal and interest (to the extent permitted by law) from their respective due dates until paid;

> (ii)      All items advanced or paid by the Mortgagee pursuant to this Mortgage, with interest thereon at the Repayment Rate per annum from the date of advancement until paid; and

> (iii)      All reasonable court costs, attorneys' fees and expenses, appraisers' fees, expenditures for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all abstracts of title, title searches and examinations, title guarantee or insurance policies, and similar data with respect to title which the Mortgagee may deem necessary in connection with any proceeding, including probate and bankruptcy proceedings, to which the Mortgagee shall be a party, either as plaintiff, claimant or defendant, by reason of this Mortgage or any indebtedness secured or in connection with preparations for the commencement of any suit for the foreclosure hereof after accrual of such right to foreclose, whether or not actually commenced, and all such expenses shall become so much additional indebtedness secured hereby and immediately due and payable, with interest thereon at the Repayment Rate per annum from the date when paid or incurred by the Mortgagee until paid.

The proceeds of any foreclosure shall be distributed and applied to the items described in (ii) and (iii) of this Section, in the order of their listing, then to (i) and any surplus of the proceeds of such sale shall be paid to the Mortgagor.

In case of any sale under this Mortgage by virtue of judicial proceedings or otherwise, the Mortgaged Property may be sold in one parcel, as an entirety, or in such parcels, manner or order as the Mortgagee in its sole discretion may elect, and the Mortgagor waives any and all rights which the Mortgagor may have to insist upon the sale of the Mortgaged Property in one parcel or separate parcels, and the Mortgagee may sell the personal property and Equipment covered by this Mortgage at one or more separate sales in any manner permitted by the Iowa Commercial Code, and one or more exercises of the powers herein granted shall not extinguish or exhaust such powers, until all the Mortgaged Property is sold or the Bonds and other secured indebtedness is paid in full. If the Bonds and other secured indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts or guaranty, assignments of lease, or other security instruments, Mortgagee at its option may exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Mortgagee may determine.

To the extent permitted by law, the Mortgagor hereby waives any and all rights of redemption or reinstatement that it may have.

- 11 -

If the aforementioned waiver is not effective, then it is agreed that if this Mortgage covers less than ten (10) acres of land, and in the event of the foreclosure of this Mortgage and sale of the property by sheriffs sale in such foreclosure proceedings, the time of one (1) year for redemption from said sale provided by the statutes of the State of Iowa shall be reduced to six (6) months provided the Mortgagee, in such action, files an election to waive any deficiency judgment against Mortgagor which may arise out of the foreclosure proceedings; all to be consistent with the provisions of Chapter 628 of the Code of Iowa, 2017, as amended (the "Iowa Code"). If the redemption period is so reduced, for the first three (3) months after the sale, such right of redemption shall be exclusive to the Mortgagor, and the time periods in Sections 628.5, 628,15 and 628.16 of the Iowa Code shall be reduced to four (4) months.

It is further agreed that the period of redemption after a foreclosure of this Mortgage shall be reduced to sixty (60) days if all of the three following contingencies develop: (1) the real estate is less than ten (10) acres in size; (2) the court finds affirmatively that the said real estate has been abandoned by the owners and those persons personally liable under this Mortgage at the time of such foreclosure; and (3) Mortgagee in such action files an election to waive any deficiency judgment against Mortgagor or its successor in interest in such action. If the redemption period is so reduced, Mortgagor or its successors in interest or the owner shall have the exclusive right to redeem for the: first thirty (30) days after such sale, and the time provided for redemption by creditors as provided in Sections 628.5, 628.15 and 628.16 of the Iowa Code shall be reduced to forty (40) days. Entry of appearance by pleading or docket entry by or on behalf of Mortgagor shall be a presumption that the property is not abandoned. Any such redemption period shall be consistent with all of the provisions of Chapter 628 of the Iowa Code.

This Section shall not be construed to limit or otherwise affect any other redemption provisions contained in Chapter 628 of the Iowa Code. This Section also shall not be construed to limit Mortgagee's right to elect foreclosure without redemption or to elect foreclosure by nonjudicial procedure as set forth in Chapters 654 and 655A of the Iowa Code. Mortgagor agrees that, in the event of a foreclosure of the Mortgage, under any provision of Iowa law, Mortgagee shall be entitled to sole possession and use of the Mortgaged Property during any redemption period.

Any sale or sales under this Section shall operate, after any applicable redemption period, to divest all estate, right, title, interest, claim or demand whatsoever, whether at law or in equity, of the Mortgagor in and to the premises, property, privileges and rights so sold, and shall be a perpetual bar both at law and in equity against the Mortgagor, its successors and assigns and against any and all persons claiming or who may claim the same, or any part thereof, from, through or under the Mortgagor, its successors or assigns.

Notwithstanding anything contained herein or in the Master Indenture to the contrary, before taking any foreclosure action, before taking possession of or title to the Mortgaged Property, before taking any other action under this Section or before taking any action which may subject the Mortgagee to liability under any environmental law, statute, rule or regulation, the Mortgagee may require an environmental audit or survey and that a satisfactory indemnity bond, indemnity or environmental impairment insurance be furnished for the payment or reimbursement of all expenses to which it may be put and to protect it against all liability

resulting from any claims, judgments, damages, losses, penalties, fines, liabilities (including strict liability) and expenses which may result from such foreclosure or other action.

SECTION 15. Litigation. If any action or proceedings be commenced, to which action or proceeding the Mortgagee is made a party by reason of the execution of this Mortgage or in which the Mortgagee deems it necessary to appear or answer in order to uphold the lien of this Mortgage or the priority thereof or the possession of the Mortgaged Property, or otherwise to protect the interest of holders of the Bonds or the Mortgagee or security hereunder, all sums paid or incurred by the Mortgagee for attorneys' fees and other expenses in such action or proceeding shall be repaid by the Mortgagor, together with interest thereon to the extent permitted by law from the date of payment by the Mortgagee at the Repayment Rate until paid and all such sums and the interest thereon shall be immediately due and payable and shall be added to and become a part of the indebtedness secured hereby, and be secured hereby, having the benefit of the lien hereby created and of its priority.

SECTION 16. Non-Waiver. Acceptance by the Mortgagee of any sum in payment or part payment of any indebtedness secured hereby after the same is due or after foreclosure proceedings are filed shall not constitute a waiver of the right to require prompt payment when due of all the sums so secured nor shall such acceptance cure or waive any remaining default or invalidate any foreclosure proceedings for any such remaining default or prejudice any of the rights of the Bondholders or the Mortgagee under this Mortgage. Further, the failure of the Mortgagee to insist upon the strict performance of any of the covenants or agreements of the Mortgagor contained in this Mortgage, or the delay by the Mortgagee in the enforcement of any of its remedies herein contained upon any default of the Mortgagor shall never constitute a waiver of any requirement or obligation of the Mortgagor or right or remedy of the Mortgagee contained in or based upon said covenants or agreements.

SECTION 17. Remedies Cumulative. No remedy herein or in the Loan Agreement conferred upon or reserved to the Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. In addition, no recovery of any judgment by the Mortgagee and no levy of any execution under any judgment upon the Mortgaged Property or upon any other property shall affect the lien created by this Mortgage upon the Mortgaged Property or any part thereof or any lien, rights, powers or remedies of the Mortgagee hereunder, but such lien, rights, powers or remedies of the Mortgagee shall continue unimpaired as before.

SECTION 18. Waiver of Certain Rights and Remedies. If applicable and if permitted by law, the Mortgagor hereby waives and releases any and all rights and remedies related to redemption or marshalling of liens and assets under the Mortgage.

SECTION 19. Maturity Date. The final payment of the indebtedness secured by this Mortgage shall be due August 15, 2035.

SECTION 20. Attorneys' Fees. The Mortgagor hereby agrees in the event of foreclosure to pay to the Mortgagee such reasonable attorneys' fees and expenses as are authorized by law, together with the cost of extending the abstract and all court costs.

SECTION 21. <u>Usury</u>. Notwithstanding any provision herein or in the Loan Agreement, the total liability for payments in the nature of interest shall not exceed the limits imposed by the usury laws of Iowa, if such laws are applicable to this transaction.

SECTION 22. <u>Severability</u>. If any provision hereof should he held unenforceable or void, then such provision shall be deemed separable from the remaining provisions and shall in no way affect the validity of this Mortgage.

All rights, remedies and powers provided by this Mortgage may be exercised only to the extent that the exercise thereof does not violate any applicable provision of law in the premises, and all the provisions of this Mortgage are intended to be subject to all applicable mandatory provisions of law which may be controlling in the premises and to be limited to the extent necessary so that they will not render this Mortgage invalid or unenforceable under the provisions of any applicable law.

SECTION 23. <u>Security Interest; Financing Statement</u>. Mortgagor executes this instrument as a debtor under the Iowa Uniform Commercial Code, it being intended that this Mortgage shall constitute and be a security agreement and financing statement under the laws of the State of Iowa.

This Mortgage constitutes a financing statement filed as a fixture filing under the Iowa Uniform Commercial Code, as amended or recodified from time to time, covering any of the collateral which now is or later may become fixtures attached to the Land or the improvements thereon, and for this purpose the name and address of the debtor is the name and address of the Mortgagor as set out in Section 26 herein, and the name and address of the secured party is the name and address of the Mortgagee as set out in Section 26 herein. Pursuant to the provisions of Section 554.9403 subparagraph 6 of the Iowa Code, such fixture filing remains in effect until this Mortgage is released or satisfied of record or its effectiveness otherwise terminates as to the Land.

Upon the occurrence of an Event of Default hereunder in addition to the other rights and remedies available to it, the Mortgagee may exercise all other rights and remedies with respect to such property that are available to a secured party under the Iowa Uniform Commercial Code. In the event notice of intended disposition of such property is required by law in any particular instance, the Mortgagor agrees that notice given in the manner and place provided in Section 19 hereunder and sent ten (10) days prior to a disposition of collateral is commercially reasonable notification within the meaning of the Iowa Uniform Commercial Code. Information concerning the security interests may be obtained from the parties at the addresses set forth above.

The Mortgagor warrants and agrees that no financing statement or security agreement covering any of the Mortgaged Property is or will be placed on file in any public office or delivered to any secured party except pursuant hereto, except for Permitted Encumbrances.

SECTION 24. <u>Construction</u>. This Mortgage shall be construed according to the laws of the State of Iowa.

SECTION 25.  Amendments, Changes and Modifications.  The Mortgagor and the Mortgagee may from time to time enter into amendments, changes and modifications of this Mortgage, but only in writing signed by Mortgagor and Mortgagee and with the written consent of the Bondholder Representative.

SECTION 26.  Addresses for Notice and Demands.  All notices, demands, certificates or other communications hereunder shall be personally delivered or mailed by registered or certified mail, postage prepaid, with proper address as indicated below.  The Mortgagor and the Mortgagee may, by written notice given by each to the others, designate any address or addresses to which notices, demands, certificates or other communications to them shall be sent when required as contemplated by this Mortgage.  Until otherwise provided by the respective parties, all notices, demands, certificates and communications to each of them shall be addressed as follows:

| | |
|---|---|
| To the Mortgagor: | Mercy Hospital, Iowa City, Iowa<br>500 E. Market Street<br>Iowa City, IA  55245<br>Attention:  Chief<br>Executive Officer |
| To the Trustee: | Wells Fargo Bank, National Association<br>10 South Wacker Drive, 13th Floor<br>Chicago, IL 60606<br>Attention: Corporate Trust Services |
| To the Bondholder Representative: | Preston Hollow Capital, LLC<br>1717 Main Street, Suite 3900<br>Dallas, TX 75201<br>Attention: General Counsel |

All such notices and other communications shall be deemed given when delivered or, if mailed, three days after the date of deposit in the mails, addressed as aforesaid, or upon receipt thereof, whichever is earlier.

SECTION 27.  Discharge of Lien.  If the Mortgagor shall pay and discharge or provide, in a manner satisfactory to the Mortgagee, for the payment and discharge of the whole amount of all sums payable under the Loan Agreement and the Bonds, or shall make arrangements satisfactory to the Mortgagee for such payment and discharge, then and in that case all property, rights and interest hereby conveyed or assigned or pledged shall revert to the Mortgagor, and the estate, right, title and interest of the Mortgagee therein shall thereupon cease, terminate and become void; and this Mortgage, and the covenants of the Mortgagor contained herein, shall be discharged and the Mortgagee in such case on demand of the Mortgagor and at the Mortgagor's cost and expense, shall execute and deliver to the Mortgagor a proper instrument or proper instruments acknowledging the satisfaction and termination of this Mortgage and shall convey, assign and transfer or cause to be conveyed, assigned or transferred, and shall deliver or cause to be delivered, to the Mortgagor, all property, including money, then held by the Mortgagee hereunder.

SECTION 28. Concerning Any Successor Trustee. Every successor Master Trustee appointed under the Master Indenture shall thereupon automatically be and become successor Master Trustee and Mortgagee hereunder and shall execute, acknowledge and deliver to its or his predecessor and also to the Issuer, and the Mortgagor an instrument in writing accepting such appointment hereunder and thereupon such successor, without any further act, deed or conveyance, shall become fully vested with all the estates, properties, rights, powers, trusts, duties and obligations of its predecessors hereunder; but such predecessor shall, nevertheless, on the written request of the successor Master Trustee, execute and deliver an instrument transferring to such successor all the estates, properties, rights, powers and trusts of such predecessor hereunder; and every predecessor Master Trustee shall deliver all securities and moneys held by it as Master Trustee hereunder to its successor. Should any instrument in writing from the Mortgagor be required by any successor Master Trustee for more fully and certainly vesting in such successor the estate, rights, powers and duties hereby vested or intended to be vested in the predecessor, any and all such instruments in writing shall, on request, be executed, acknowledged and delivered by the Mortgagor. The resignation of any Master Trustee and the instrument or instruments removing any Master Trustee and appointing a successor hereunder, together with all other instruments provided for in this Section, shall be filed or recorded by the successor Master Trustee in each recording office where the Mortgage shall have been filed or recorded.

SECTION 29. Indemnification of the Mortgagee. The Mortgagor agrees to indemnify and save harmless the Mortgagee not in possession of the Mortgaged Property against any and all losses, injuries, claims, damages or injuries to persons or property, demands and expenses, including legal fees and expenses, of whatsoever kind and nature and by whomsoever made arising from or in any manner directly or indirectly growing out of (a) the use and occupancy or nonuse of the Mortgaged Property or any equipment or facilities thereon or used in connection therewith by anyone whomsoever, (b) any repairs, construction, restoration, replacements, alterations, remodeling on or to the Mortgaged Property, or any part thereof, or any equipment or facilities therein or thereon, and (c) the condition of the Mortgaged Property including any adjoining sidewalks, ways or alleys and any equipment or facilities at any time located thereon or used in connection therewith.

SECTION 30. Execution of Counterparts. This Mortgage may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have caused these presents to be signed in their names and behalf by their duly authorized officers, all as of the day and year first above written.

MERCY HOSPITAL, IOWA CITY, IOWA

By _____
Mark Phillips, Chairperson, Board
of Directors

By _____
Scott Fisher, Secretary, Board of
Directors

STATE OF IOWA          )
                       ) ss:
COUNTY OF JOHNSON       )

On this 2nd day of May, 2018, before me, the undersigned, a Notary Public in and for the State of Iowa, personally appeared Mark Phillips and Scott Fisher, to me personally known, who being by me duly sworn did say that they are the Chairperson of the Board of Directors and the Secretary of the Board of Directors, respectively, of Mercy Hospital, Iowa City, Iowa, the corporation executing the within and foregoing Mortgage to which this is attached; that no seal has been procured by the corporation; that said instrument was signed on behalf of said corporation by authority of its Board of Directors and that the said Mark Phillips and Scott Fisher, as such officers, acknowledged the execution of said instrument to be the voluntary act and deed of said corporation by it and by them voluntarily executed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(SEAL)

_____
Notary Public

MICHELE A BOGS
Commission Number 808199
My Commission Expires
January 02, 2021

- 17 -

Case 23-00623   Doc 435-6   Filed 11/02/23   Entered 11/02/23 11:18:08   Desc Exhibit
F - Mortgage   Page 21 of 23

IN WITNESS WHEREOF, the Mortgagor and the Mortgagee have caused these presents to be signed in their names and behalf by their duly authorized officers, all as of the day and year first above written.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as Master Trustee, as Mortgagee

By _____
       Gail A. Klewin       , Vice President

STATE OF ILLINOIS     )
                      ) ss:
COUNTY OF COOK        )

On this 2nd day of May, 2018, before me, the undersigned, a Notary Public in and for the State of Illinois, personally appeared ___Gail A. Klewin___, to me personally known, who being by me duly sworn did say that she is the Vice President of Wells Fargo Bank, National Association, the corporation executing the within and foregoing Mortgage to which this is attached; that no seal has been procured by the corporation; that said instrument was signed on behalf of said corporation by authority of its Board of Directors and that the said Vice President, as such officer, acknowledged the execution of said instrument to be the voluntary act and deed of said corporation by it and by her voluntarily executed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

(SEAL)

_____
Notary Public

DANIEL RADICK
Official Seal
Notary Public - State of Illinois
My Commission Expires Jul 13, 2019

- 18 -

EXHIBIT A
DESCRIPTION OF THE LAND

The following described real estate located in Johnson County, Iowa:

PARCEL A:

ALL OF LOTS 1, 2, 7, 8 AND THE EAST HALF OF LOT 3; THE FOLLOWING
DESCRIBED PORTION OF LOT 4: COMMENCING AT THE SOUTHWEST CORNER OF
LOT 4, THENCE EAST ALONG THE SOUTH LINE 70 FEET, THENCE NORTH AT RIGHT
ANGLES 40 FEET, THENCE WEST AT RIGHT ANGLES 70 FEET TO THE WEST LINE
OF SAID LOT 4, THENCE SOUTH ALONG THE WEST LINE 40 FEET TO THE PLACE OF
BEGINNING; THE EAST 160 FEET OF THE VACATED ALLEY; ALL IN BLOCK 47,
IOWA CITY IOWA, ACCORDING TO THE RECORDED PLAT THEREOF; AND THAT
PART OF VACATED VAN BUREN STREET FROM THE NORTH LINE OF MARKET
STREET TO THE SOUTH LINE OF BLOOMINGTON STREET IN IOWA CITY, IOWA.

PARCEL B:

COMMENCING AT THE NORTHEAST CORNER OF LOT 4, IN BLOCK 47, IN IOWA
CITY, IOWA, ACCORDING TO THE RECORDED PLAT THEREOF, THENCE RUNNING
SOUTH TO THE SOUTHEAST CORNER OF SAID LOT 4; THENCE WEST 10 FEET
ALONG THE SOUTH LINE OF SAID LOT 4 TO A POINT 70 FEET FROM THE
SOUTHWEST CORNER OF SAID LOT 4, THENCE NORTH AT RIGHT ANGLES 40 FEET,
THENCE WEST AT RIGHT ANGLES 70 FEET TO THE WEST LINE OF SAID LOT 4,
THENCE NORTH 110 FEET ALONG THE WEST LINE OF SAID LOT 4 TO THE NORTH
LINE OF SAID LOT 4, THENCE EAST 80 FEET ALONG THE NORTH LINE OF SAID LOT
4 TO THE PLACE OF BEGINNING.

PARCEL C:

THE WEST HALF OF LOT 3, BLOCK 47, IN IOWA CITY, IOWA, ACCORDING TO THE
RECORDED PLAT THEREOF.

PARCEL D:

ALL OF BLOCK 38, IOWA CITY, IOWA, ACCORDING TO THE RECORDED PLAT
THEREOF, INCLUDING THE VACATED ALLEY IN SAID BLOCK 38.

PARCEL E:

LOTS 5, 6, 7 AND 8, BLOCK 27, IOWA CITY, IOWA, ACCORDING TO THE RECORDED
PLAT THEREOF AND THE EAST-WEST VACATED ALLEY IN BLOCK 27, IOWA CITY,
IOWA, ACCORDING TO THE RECORDED PLAT THEREOF.

PARCEL F:

THE AREA DESIGNATED AS "CENTRE MARKET" ON THE ORIGINAL PLAT OF IOWA
CITY, IOWA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING
AT THE INTERSECTION OF THE SOUTH RIGHT-OF-WAY LINE OF MARKET STREET
WITH THE EAST RIGHT-OF-WAY LINE OF VAN BUREN STREET; THENCE EAST
ALONG THE SOUTH RIGHT-OF-WAY LINE OF MARKET STREET TO ITS
INTERSECTION WITH THE WEST RIGHT-OF-WAY LINE OF JOHNSON STREET;
THENCE SOUTH ALONG THE WEST RIGHT-OF-WAY LINE OF JOHNSON STREET TO
THE NORTH RIGHT OF WAY LINE OF JEFFERSON STREET; THENCE WEST ALONG
THE NORTH RIGHT-OF-WAY LINE OF JEFFERSON STREET TO ITS INTERSECTION
WITH THE EAST RIGHT-OF-WAY LINE OF VAN BUREN STREET; THENCE NORTH
ALONG THE EAST RIGHT-OF-WAY LINE OF VAN BUREN STREET TO THE POINT OF
BEGINNING.

PARCEL G:

NONEXCLUSIVE APPURTENANT EASEMENTS CREATED IN SKYWAY EASEMENT,
EVIDENCED OF RECORD BY RESOLUTION NO. 90-5, DATED JANUARY 9, 1990,
RECORDED FEBRUARY 16, 1990, IN BOOK 1104, PAGE 483.