## EXHIBIT A

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,[1] | ) Case No. 23-00623 |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## ORDER (I) APPROVING THE SALE OF
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE
## AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
## INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
## OF CONTRACTS AND LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Motion of Debtors for Entry of Order (I)(A) Approving Bidding Procedures of the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* (the "**Sale Motion**") [Docket No. 58] filed by the above-captioned debtors and debtors in possession (the "**Debtors**"), which requests an order (this "**Sale Order**") that, among other things, authorizes and approves (a) the sale, assignment,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Mercy Hospital, Iowa City, Iowa (0391), Mercy Services Iowa City, Inc. (1044) ("Mercy Services"), and Mercy Iowa City ACO, LLC (9472). The location of Mercy's corporate headquarters and the Debtors' service address is 500 E. Market Street, Iowa City, IA 52240.

transfer, conveyance and delivery of substantially all of the Debtors' assets (the "**Sale**"), as defined

in the Asset Purchase Agreement (including all related exhibits and schedules, as may be amended,

modified or supplemented in accordance with its terms, the "**Agreement**")[2] a complete copy of

which is attached hereto as <u>Exhibit A</u>[3] among the Debtors and the State University of Iowa (the

"**Purchaser**"), and (b) the assumption and assignment of certain unexpired leases and executory

contracts identified as "Assumed Contracts" (as defined in the Agreement), in each case, effective

as of the Closing on the Closing Date, all as more fully set forth in the Motion; upon consideration

of the *Amended Notice of Auction Results* [Docket No. 420] this Court having entered the *Order*

*(A) Approving Bidding Procedures for the Sale the Debtors' Assets, (B) Approving Break-up Fee,*

*(C) Scheduling an Auction for, and a Hearing to Approve, the Sale of the Debtors' Assets, (D)*

*Approving the Form and Manner of Notice Thereof, (E) Approving Contracts Assumption and*

*Assignment Procedures, and (F) Granting Related Relief* on September 14, 2023 [Docket No. 222]

(the "**Bid Procedures Order**"); this Court having reviewed and considered the Sale Motion and

any objections thereto; this Court having heard statements of counsel and the evidence presented

in support of the relief requested by the Debtors in the Sale Motion at a hearing before this Court

(the "**Sale Hearing**"); upon the full record of these Chapter 11 Cases; it appearing no other notice

need be given; it further appearing the legal and factual bases set forth in the Sale Motion and the

record made at the Sale Hearing establish just cause for the relief granted herein; and after due

deliberation and sufficient cause therefor:

THE COURT FINDS AND DETERMINES THAT:

---

[2] Except as otherwise defined herein, or where reference is made to a definition in the Sale Motion, all capitalized terms shall have the meanings ascribed to them in the Agreement.

[3] The Agreement attached hereto as <u>Exhibit A</u> is a revised Agreement that has been updated to reflect the results of the bidding at the Auction as well as a redline to the original highlighting any and all changes to the same.

**Jurisdiction, Final Order, and Statutory Predicates**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9006, 9007, and 9014.

D.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds there is no just reason for delay in the implementation of this Sale Order and waives any stay and expressly directs entry of judgment as set forth herein.

**Retention of Jurisdiction**

E.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including its related documents, all amendments thereto and any waivers and consents

thereunder and each of the agreements executed in connection therewith to which the Debtors are

a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary,

any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the

Sale or the transactions contemplated in the Agreement, and related documents.

### Corporate Authority; Consents and Approvals

F.     Each of the Debtors has, to the extent necessary or applicable, (a) the full corporate

power and authority to execute and deliver the Agreement and all other documents contemplated

thereby, (b) all corporate authority necessary to consummate the transaction contemplated by the

Agreement, and (c) taken all corporate action necessary to authorize and approve the Agreement

and the consummation of the transactions contemplated thereby. The Sale has been duly and

validly authorized by all necessary corporate action. No consents or approvals, other than those

expressly provided for in the Agreement, are required for the Debtors to consummate the Sale, the

Agreement, or the transactions contemplated thereby.

### Notice of Sale, Auction, Sale Hearing, Agreement, and Assumption and Assignment

G.     Actual written notice of the Sale Motion, the Sale, the Auction, the Sale Hearing,

and the transactions contemplated thereby, and a reasonable opportunity to object or be heard with

respect to the Sale Motion and the relief requested therein, has been afforded to all known

interested entities and parties, including, without limitation, the following entities and parties: (a)

the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department of Revenue; (d) the

United States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid

Services; (f) the parties included on the Debtors' consolidated list of their 30 largest unsecured

creditors; (g) counsel for the Master Trustee and Trustee; (h) counsel for the Bondholder

Representative; (i) counsel for the Stalking Horse Bidder; (j) counsel for any statutory committee

appointed in the Chapter 11 Cases; (k) the Federal Trade Commission; and (l) all parties entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that no other or further notice is required.

H.     In addition, the Debtors have caused notice of the Sale Motion, the Sale, the Auction, and the Sale Hearing to be posted on the website maintained by the Debtors' claims and noticing agent, Epiq, available at https://dm.epiq11.com/case/mercyhospital/info, as required by the Bid Procedures Order. The foregoing notice was sufficient and reasonably calculated under the circumstances to reach entities whose identities are not reasonably ascertainable by the Debtors.

I.     In accordance with the provisions of the Bid Procedures Order, the Debtors have served notice upon the counterparties to the Assumed Contracts (as defined in the Agreement) (the "**Contract Counterparties**"): (a) that the Debtors seek to assume and assign to the Purchaser the Assumed Contracts on the Closing Date (as defined in the Agreement); and (b) of the relevant Cure Amounts (as defined below). *See* Docket No. 265. Service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of establishing the Cure Amounts for the Contracts. Each of the Contract Counterparties has had an adequate opportunity to object to the Cure Amounts set forth in the notice and to the assumption and assignment to the Purchaser of the applicable Assumed Contracts (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Purchaser (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code). Except as set forth in Paragraph 21, herein, all objections, responses, or requests for adequate assurance, if any, have been resolved, overruled, or denied, as applicable.

J.      On October 2, 2023, Hayes Locums, LLC filed the *Objection of Hayes Locums to the Debtors' Notice of Assumption and Assignment of Executory Contracts for Unexpired Leases and C[u]re Costs* [Docket No. 310] (the "**Hayes Locums Objection**").

K.      On October 2, 2023, Owens & Minor Distribution, Inc. filed the *Limited Objection and Reservation of Rights of Owens & Minor Distribution, Inc. to Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 313] (the "**O&M Objection**").

L.      On October 2, 2023, Progressive Rehabilitation Associates, LLC filed the *Response to Debtors' Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 316] (the "**PRA Objection**").

M.      On October 2, 2023, RMS Holdings, P.C. and Radiologic Medical Services, P.C. filed the *Limited Objection of RMS Holdings, P.C. and Radiologic Medical Services, P.C. to the Sale of Substantially all of the Debtors' Assets* [Docket No. 317] (the "**RMS Objection**").

N.      On October 2, 2023, Revology, Inc. filed *Revology, Inc.'s Objection to Proposed Cure Amount* [Docket No. 318] (the "**Revology Objection**").

O.      On October 2, 2023, Roche Diagnostics Corporation filed the *Objection of Roche Diagnostics Corporation to Debtors' Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 319] (the "**Roche Objection**").

P.      On October 2, 2023, Catholic Health Initiatives-Iowa Corp; Mercy ACO, LLC; Mercy Clinics, Inc.; Mercy College of Health Sciences; and MHN ACO, LLC filed the *Objection to Assumption and Assignment by Catholic Health Initiatives-Iowa Corp; Mercy ACO, LLC; Mercy Clinics, Inc.; Mercy College of Health Sciences; and MHN ACO, LLC* [Docket No. 320] (the "**CHI Objection**").

Q.      On October 2, 2023, McKesson Corporation and its affiliates filed *McKesson's Response and Reservation of Rights to Debtors' Motion for Entry of Order, (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 323] (the "**McKesson Objection**").

R.      On October 3, 2023, Altera Digital Health, Inc. filed the *Objection of Altera Digital Health, Inc. to Debtors' Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 327] (the "**Altera Objection**")

S.      On October 4, 2023, MediRevv, LLC filed *Medirevv, LLC's Limited Objection and Reservation of Rights to (A) Debtor's Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs; and (B) Sale to Stalking Horse Bidder* [Docket No. 331] (the "**MediRevv Objection**,").

T.      On October 25, 2023, EverBank, N.A. f/k/a TIAA, FSB, assignee of TIAA Commercial Finance, Inc., as successor in interest to GE HFS, LLC filed the *Adequate Assurance Objection* [Docket No. 414] (the "**EverBank Objection**" and together with the MediRevv Objection, the Hayes Locums Objection, the O&M Objection, the PRA Objection, the RMS Objection, the Revology Objection, the Roche Objection, the CHI Objection, and the McKesson Objection, the "**Formal Objections**"). In addition, numerous contract counterparties informally

objected, or otherwise contacted counsel to the Debtors prior to the expiration of the applicable objection period, regarding reconciliation of their proposed cure amount (collectively, the "**Informal Objections**" and together with the Formal Objections, each an "**Objection**" and collectively the "**Objections**").

U.     The notice of the Auction and the Sale Hearing provided all interested parties with timely and proper notice of the Sale, the Auction, and the Sale Hearing.

V.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including, without limitation: (i) determination of final Cure Amounts; and (ii) approval and authorization to serve notice of the Auction and Sale Hearing.

W.     As evidenced by the affidavits of service and affidavits of publication previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, including, without limitation, the assumption and assignment of the Assumed Contracts to the Purchaser, has been provided in accordance with the Bid Procedures Order and Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, or the assumption and assignment of the Assumed Contracts to the Purchaser is or shall be required.

X.     The disclosures made by the Debtors concerning the Sale Motion, the Agreement, the Auction, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts to the Purchaser were good, complete, and adequate.

Y.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein (including, without limitation, the assumption and assignment of the Assumed Contracts to the Purchaser and any Cure Amounts relating thereto), has been afforded to all interested persons and entities, including the applicable notice parties.

**Auction**

Z.      Two (2) competing bids were submitted for the Assets and an Auction was commenced at 10:00 a.m. prevailing Central Time on October 4, 2023 at the offices of McDermott Will & Emery LLP, 444 W. Lake Street, Chicago, Illinois 60606 in accordance with the Bid Procedures Order.

AA.     The Auction was adjourned at approximately 6:41 p.m. prevailing Central Time on October 4, 2023, and continued to October 10, 2023 at 10:00 a.m. prevailing Central Time via Zoom.

BB.     The Auction was concluded on October 10, 2023 at approximately 1:10 p.m. prevailing Central Time. At the close of the Auction on October 10, 2023, the Debtors declared that the bid of Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee (the "**Bondholder Representatives**") was the Winning Bid.

CC.     Subsequently, a material disagreement arose between the Debtors and the Official Committee of Unsecured Creditors, on the one hand, and the Bondholder Representatives, on the other hand. As a result, the Debtors determined, in an exercise of their fiduciary duties, to reopen the Auction on October 27, 2023 at 9:00 a.m. prevailing Central Time via Zoom. Neither the Purchaser nor the Bondholder Representatives objected to the reopening of the Auction.

DD.    The Auction was concluded on October 27, 2023 at approximately 10:34 a.m. prevailing Central Time. At the conclusion of the Auction, Purchaser was declared the Winning Bidder.

EE.    The Debtors complied in all material respects with applicable law.

FF.    All Qualified Bidders confirmed that they did not engage in any collusion in connection with the Auction or the purchase of the Assets.

GG.    The Auction was substantively and procedurally fair to all potential Bidders and Qualified Bidders.

### Highest and Best Offer

HH.    The Debtors conducted a sale process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order. The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Auction was duly noticed in a non-collusive, fair, and good-faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.

II.    Pursuant to the Agreement and Bidding Procedures, the Winning Bidder was the Purchaser, with a Winning Bid in the amount of $28,000,000, plus (i) Cure Amount and (ii) an amount equal to the actual net operating losses (exclusive of restructuring professional fees and all other costs and expenses relating to this bankruptcy case) incurred by the Debtors from December 1, 2023 until the Closing Date, all as further set forth in the Agreement.

JJ.    Pursuant to the Bid Procedures Order, the Purchaser submitted the highest and best bid for the Assets and, accordingly, the Purchaser was determined to be the Winning Bidder for the Assets.

KK.     The final bid of the Bondholder Representatives was rejected by the Debtors, pursuant to the terms of the Bidding Procedures, as the Debtors determined, in their reasonable business judgment, that any such bid that required use of the Debtors' remaining cash and foundation cash prior to closing was not a viable transaction under the circumstances.  The Debtors determined to reject such bid, pursuant to the broad discretion granted to the Debtors under the Bidding Procedures as (1) not in conformity with the requirements of the Bankruptcy Code and/or the Bidding Procedures, or (2) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.

LL.     The Purchaser has confirmed that it did not engage in any collusion in connection with the Auction or the purchase of the Assets.

MM.     The Winning Bid and Agreement constitute the highest and best offer for the Assets and will provide a greater recovery for the Debtors' creditors than would be provided by any other practical alternative.

NN.     The Debtors' determination that the Winning Bid and Agreement constitute the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' reasonable business judgment.

OO.     The Winning Bid and Agreement represent a fair and reasonable offer to purchase the Assets under the circumstances of this bankruptcy case.

PP.     No other entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' or their estates than the Purchaser, nor has any bid been presented to the Debtors that the Debtors determined presented a viable alternative transaction.

QQ.    The Debtors' decision to sell the Proposed Purchased Assets to the Purchaser pursuant to the Agreement and this order is supported by good business reasons and sound justification based upon the Debtors' experience and the circumstances presented in this case.

RR.    Approval of the Sale Motion and the Agreement and the consummation of the transaction contemplated thereby are in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

SS.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets prior to, and outside of, a plan of reorganization.

TT.    Entry of an order approving the Agreement and all the provisions thereof is a necessary condition precedent to Purchaser's consummation of the Sale, as set forth in the Agreement.

### Good Faith of the Purchaser

UU.    As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their advisors marketed the Assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount of the Purchase Price, which is found to constitute reasonably equivalent and fair value.

VV.    The Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, managers, controlling shareholders, or other insider of the Debtors exist between the Purchaser and the Debtors.

WW.   The Debtors and the Purchaser extensively negotiated the terms and conditions of the Agreement in good faith and at arm's length. The Purchaser is purchasing the Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) the Purchaser recognized the Debtors were free to deal with any other party interested in purchasing the Assets; (ii) the Purchaser agreed to subject its bid to competitive bidding at the Auction; (iii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iv) the Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction; (v) no common identity of directors or controlling stockholders exists between the Purchaser and the Debtors; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

XX.   Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n). The Debtors and the Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

YY.   No party has objected to the Sale, the Agreement, or the Auction on the grounds of fraud or collusion.

ZZ.   Accordingly, the Purchaser is purchasing the Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m). The Purchaser is therefore entitled to all of the protections afforded under Bankruptcy Code section 363(m).

### No Fraudulent Transfer or Merger

AAA.   The consideration provided by the Purchaser pursuant to the Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Assets, and (c) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

BBB.   Neither the Purchaser nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "**Purchaser Parties**") is a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between any Purchaser Party and the Debtors. No Purchaser Party is holding itself out to the public as a continuation of the Debtors or their respective estates. No Purchaser Party is a successor to the Debtors or their estates, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Purchaser (or any other Purchaser Party) and the Debtors.

## **Validity of Transfer**

CCC.   The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any of its states, territories, or possessions, or the District of Columbia. Neither the Debtors nor the Purchaser are entering into the transactions contemplated by the Agreement fraudulently, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims.

DDD.   The Debtors are the sole and lawful owner of the Assets. Subject to Bankruptcy Code section 363(f) (addressed below), the transfer of the Assets to the Purchaser will be, as of

15

the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will

vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of (i)

all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code)

and Encumbrances (as defined in the Agreement) relating to, accruing, or arising any time prior to

the Closing Date (collectively, the "**Liens**"), and (ii) all debts (as that term is defined in section

101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of the

Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities,

obligations, demands, guaranties, options in favor of third parties, rights, contractual

commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan

agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trusts,

security interests or similar interests, conditional sale or other title retention agreements and other

similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement,

contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits,

defenses, credits, allowances, options, limitations, causes of action, choses in action, rights of first

refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or

transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights

of way, encroachments, liabilities, and matters of any kind and nature, whether arising prior to or

subsequent to the Petition Date, whether known or unknown, legal or equitable, mature or

unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted,

whether imposed by agreement, understanding, law, equity, or otherwise (including, without

limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give any

party a right or option to effect a setoff or recoupment against, or a right or option to effect any

forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right

or option, or termination of, any of the Debtors' or the Purchaser's interests in the Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) collectively, as defined in this clause (ii), the "**Claims**" and, together with the Liens and other interests of any kind or nature whatsoever, the "**Interests**"), relating to, accruing or arising any time prior to the entry of this Sale Order, with the exception of the Assumed Liabilities and the Permitted Encumbrances (each as defined in the Agreement for conveyance purposes) to the extent set forth in the Agreement, and any covenants set forth in the Agreement.

EEE.    For the avoidance of doubt, the terms "Liens" and "Claims" as used in this Sale Order, include, without limitation, rights with respect to any Liens or Claims:

(a)    that purport to give any party a right of setoff or recoupment against, or a right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase writer option, or termination of, any of the Debtors' or the Purchaser's interest in the Assets, or any similar rights; or

(b)    in respect of taxes, restrictions, rights of first refusal, charges of interest of any kind and nature, if any, and including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any of the attributes of ownership relating to, accruing, or arising at any time prior to the Closing Date, with the exception of Permitted Encumbrances and Assumed Liabilities (as those terms are defined in the Agreement) that are expressly assumed by the Purchaser pursuant to the Agreement.

FFF.    For the further avoidance of doubt, the Assets will be transferred, and the Purchaser is expressly assuming responsibility for, only obligations accruing, arising at or after the Closing Date under the Assumed Contracts, as set forth in the Agreement. The Purchaser is obligated to pay all Cure Amounts under the Assumed Contracts.

## **Section 363(f) is Satisfied**

GGG.    The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Interests in the property other than any Permitted Encumbrances and Assumed Liabilities.

HHH.    The Purchaser would not have entered into the Agreement, and would not consummate the transactions contemplated thereby, if the Sale of the Assets to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Interests, other than Permitted Encumbrances and the Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any of such Interests (other than the Permitted Encumbrances and the Assumed Liabilities). Unless otherwise expressly included in the Permitted Encumbrances or the Assumed Liabilities, the Purchaser shall not be responsible for any Interests against the Debtors, their estates, or any of the Assets, including in respect of the following: (a) any labor or employment agreement; (b) all mortgages, deeds of trust, and other security interests; (c) intercompany loans and receivables among the Debtors and any of their affiliates (as defined in Bankruptcy Code section 101(2)); (d) any other environmental, employee, workers' compensation, occupational disease, or unemployment- or temporary disability-related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor

Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age

Discrimination and Employee Act of 1967 and the Age Discrimination in Employment Act, as

amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus

Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) the unemployment

compensation laws or any other similar state laws, or (xii) any other state or federal benefits or

claims relating to any employment with the Debtors or their predecessor, if any, (xiii) Claims or

Liens arising under any Environmental Law (as defined in the Agreement) with respect to the

Debtors' business, Excluded Liabilities (as defined in the Agreement), the Assets, the Excluded

Assets (as defined in the Agreement), or any assets owned or operated by the Debtors or any

corporate predecessor of the Debtors, at any time prior to the Closing Date, (xiv) any bulk sales or

similar law, (xv) any tax statutes or ordinances, including, without limitation, the Internal Revenue

Code of 1986, as amended, and (xvi) any statutory or common-law bases for successor liability.

III.     The Debtors may sell the Assets free and clear of all Interests in such property of

any entity other than the Debtors' estates, including, without limitation, any Liens and Claims

against the Debtors, their estates, or any of the Assets (other than the Permitted Encumbrances and

Assumed Liabilities) because, in each case, one or more of the standards set forth in Bankruptcy

Code section 363(f)(1)-(5) has been satisfied. Those holders of interests in the Assets, including,

without limitation, holders of Liens, Claims, or other encumbrances against the Debtors, their

estates, or any of the Assets, who did not object, or who withdrew their objections, to the Sale or

the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2). All

other holders of interests (except to the extent such interests are Permitted Encumbrances or

Assumed Liabilities) are adequately protected by having their interests, if any, in each instance

against the Debtors, their estates, or any of the Assets, attached to the net proceeds of the Sale

received by the Debtors ultimately attributable to the Assets in which such party alleges an interest, in the same order of priority, with the same validity, force, and effect that such interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## **Assumption and Assignment of the Assumed Contracts**

JJJ.     The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interest of the Debtors and their estates, their creditors, and all of the parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

KKK.   As set forth in section 2.5(a) of the Agreement, Purchaser has the right, "at any time prior to the Sale Hearing, to determine that any Available Contract shall be an Assumed Contract or an Excluded Contract." Further, Purchaser "shall have the right to designate any Assumed Contract as an Excluded Contract at any time prior to the Closing Date" in the event a dispute over the assumption and assignment or proposed Cure Amount is not resolved to Purchaser's satisfaction.

LLL.    The sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults and pay all pecuniary losses under the Assumed Contracts (collectively, the "**Cure Amounts**"), will be determined after the conclusion of the Sale Hearing as negotiated between the Debtors and respective counterparties to the Assumed Contracts. No other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the Assumed Contracts.

MMM. Pursuant to the terms of the Agreement, on the Closing Date the Debtors shall assume and assign the Assumed Contracts or cause them to be assumed and assumed to the

Purchaser. Purchaser shall to the extent necessary, promptly cure any default existing prior to the date hereof with respect to the Assumed Contracts, within the meaning of Bankruptcy Code sections 365(b)(1)(A) and 365(f)(2)(A).

NNN.   As of the Closing Date, subject only to the Purchaser's payment of the Cure Amounts, as determined in accordance with the procedures identified in the Sale Motion and its accompanying and related documents, each of the Assumed Contracts will be in full force and effect and enforceable by the Purchaser against any Contract Counterparty thereto in accordance with its terms.

OOO.   The Debtors have, to the extent necessary, satisfied the requirements of Bankruptcy Code sections 365(b)(1) and 365(f) in connection with the Sale, the assumption and assignment of the Assumed Contracts, and shall upon assignment thereto on the Closing Date, be relieved from any liability for any breach thereof.

PPP.   The Purchaser has demonstrated it has the financial wherewithal to fully perform and satisfy the obligations under the Assumed Contracts as required by Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B). Pursuant to Bankruptcy Code section 365(f)(2)(B), the Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

QQQ.   The Purchaser's payment of the Cure Amounts, together with Purchaser's promise to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

RRR.   To the extent any Contract Counterparty failed to timely object (or otherwise contact counsel to the Debtors to address reconciliation of a Cure Amount) to its Cure Amount or

to the assumption and assignment of its Assumed Contracts to the Purchaser, such Contract Counterparty is deemed to have consented to such Cure Amount and the assignment of its Assumed Contract(s) to the Purchaser and waived any other defaults under the Assumed Contracts.

SSS.    No sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the Debtors, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code section 365(e).  The (i) transfer of the Assets to the Purchaser and (ii) assignment to the Purchaser of the Assumed Contracts, will not subject the Purchaser or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

### Sound Business Purpose for the Sale

TTT.    Good and sufficient reasons for approval of the Agreement and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

UUU. The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Agreement and (b) compelling circumstances for the sale outside the ordinary course of business, pursuant to Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, and the Sale will provide the means for the Debtors to maximize distributions to creditors.

### Compelling Circumstances for an Immediate Sale

VVV. To maximize the value of the Assets and preserve the viability of the business to which the Assets relate, it is essential the Sale of the Assets occur promptly. Therefore, time is of the essence in effectuating the Agreement and consummating the Sale. As such, the Debtors and the Purchaser intend to close the Sale of the Assets as soon as reasonably practicable, as provided for in the Agreement. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for immediate approval and consummation of the Agreement. Accordingly, there is sufficient cause to waive the stay provided in Bankruptcy Rules 6004(h) and 6006(d).

WWW.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

XXX. The consummation of the Sale and the assumption and assignment of the Assumed Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

YYY.  The Sale does not constitute a *sub rosa* or *de facto* chapter 11 plan for which approval has not been sought without the protections a disclosure statement would afford, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Bankruptcy Code sections 1125 and 1129; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities. Accordingly, the Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

### No Anticompetitive Effects

ZZZ.  The Sale will not substantially lessen competition, because there is no alternative buyer that can or will operate the Assets as a viable competitor. Specifically, the Court finds that:

a.  The evidence shows that the Debtor faces the grave probability of imminent business failure and will cease operations within a few weeks if the Assets are not sold to a buyer who can operate it successfully.

b.  The Debtor cannot be successfully reorganized under Chapter 11 of the Bankruptcy Code.

c.  The Purchaser is the only viable bidder that can and will operate the Assets as a viable acute care hospital.  The Debtor has made unsuccessful good-faith efforts to elicit reasonable alternative offers that pose a less severe danger to competition than does the Sale, and no such offer has been received.  The only other bid submitted by the Bondholder Representatives has been rejected by the Debtors, pursuant to the broad discretion granted to the Debtors under the Bidding Procedures as (1) not in conformity with the requirements of the

Bankruptcy Code and/or the Bidding Procedures, or (2) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders, nor did their bid provide assurance to the Debtors that such bid, even if viable, ensured that they could operate the Assets as an acute care hospital in the long term.  Only the Purchaser has the commitment and the ability to do so.

AAAA.    The Court therefore finds that the Sale will not violate Section 7 of the Clayton Act, 15 U.S.C § 18, Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, or any other state or federal antitrust law.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions.

1.    **Relief Granted.** The relief requested in the Sale Motion and the transactions contemplated thereby and by the Agreement are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.    **Objections Overruled.** Except as otherwise provided in the Sale Order, including Paragraph 21, herein, all Objections, statements, and reservations of rights to the Cure Amounts or the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including, without limitation, any and all reservations of rights included in such Objections or otherwise, are hereby denied and overruled on the merits, with prejudice. Those parties, including the Federal Trade Commission, who did not object, or who withdrew their objections, to the Cure Amounts or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2) or 365(c)(1)(B), as applicable.

3.      **Prior Findings and Conclusions Incorporated.** This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

4.      **Sale Order and Agreement Binding on All Parties.** This Sale Order and the Agreement shall be binding in all respects upon all creditors of and holders of equity interests in the Debtors (whether known or unknown), agents, trustees and collateral trustees, holders of Interests in, against, or on the Assets, or any portion thereof, all Contract Counterparties and any other non-debtor parties to any contracts with the Debtors (whether or not assigned), all successors and assigns of the Debtors, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or unwinding. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Agreement or this Sale Order.

**Approval of the Agreement**

5.      **Agreement Approved.** The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6.      **Authorization to Consummate Transactions.** Pursuant to Bankruptcy Code sections 363(b) and (f), the Debtors are authorized, empowered, and directed to use their reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Agreement, including the assumption and

assignment to the Purchaser of the Assumed Contracts, together with additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

## **Transfer of the Assets**

7.      **Transfer of the Assets Authorized.** Pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), and 365 the Debtors are authorized and directed to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Agreement and this Sale Order, (b) assume and assign any and all Assumed Contracts, and (c) take all further actions and execute and deliver the Agreement and other related ancillary transaction documents and any and all additional instruments and documents that may be necessary or appropriate to implement the Agreement and the other related documents and consummate the Sale in accordance with the terms thereof, all without further order of the Court. At Closing, all of the Debtors' right, title, and interest in and to, and possession of, the Assets shall be immediately vested in the Purchaser (or its designee). Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Assets. For the avoidance of doubt, and notwithstanding anything to the contrary, all claims and causes of action held by or on behalf of the Debtors, including, without limitation, any claims or causes of action (i) against Allscripts Healthcare Solutions, Inc. and/or Altera Digital Health Inc. arising out of or relating to the migration of the Debtors' electronic medical records system, (ii) against Computershare Trust Company, N.A., Preston Hollow Community Capital, Inc., holders of the 2011 Bonds and 2018 Bonds (as defined in the Declaration of Mark E. Toney [Docket No. 27] and/or any of their respective affiliates, officers, directors, shareholders, members, trustees, employees, agents, consultants, professionals or other representatives; (iii) against any of the Debtors or non-Debtor affiliates and/or their respective officers, directors, shareholders, members,

trustees, employees, agents, consultants, professionals or other representatives; or (iv) arising under Chapter 5 of the Bankruptcy Code or state law equivalents (the claims and causes of action described in clauses (i) through (iv) hereof, collectively, "Excluded Causes of Action"), are not purchased Assets and shall remain property of the Debtors' estates.

8.    **Surrender of Assets by Third Parties.** All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser or its assignee at the Closing. Governmental entities in possession of some or all of the Assets on the Closing Date are authorized to surrender possession of such Assets to the Purchaser or its assignee at the Closing. On the Closing Date, each of the Debtors' creditors are authorized, if governmental entities, or are otherwise authorized and directed to execute such documents and take such other actions as may be reasonably necessary to release their Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist. All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

9.    **Transfer Free and Clear of Interests.** Upon the Debtors' receipt of the Purchase Price for the Assets subject to this Sale Order, and other than Permitted Encumbrances and Assumed Liabilities specifically set forth in the Agreement, the transfer of the Assets to the Purchaser shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, (a) successor or successor-in-interest liability, (b) Claims in respect of the Excluded Liabilities, and (c) any and all Contracts not assumed and assigned to the Purchaser pursuant to the terms of the Agreement, with all such Interests to attach to the net proceeds received by the Debtors ultimately attributable to the Assets against, or in, which such Interests are asserted,

subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Assets, subject to any rights, claims, and defenses that the Debtors or their estates, as applicable, may possess with respect thereto. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Assets shall not have delivered to the Debtors prior to the Closing of the Sale in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Encumbrances that the person or entity has with respect to such Assets, then only with regard to the Assets that are purchased by the Purchaser pursuant to the Agreement and this Sale Order, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets. For the avoidance of doubt, the Excluded Causes of Action are not purchased Assets and shall remain property of the Debtors' estates.

10.    **Legal, Valid, and Marketable Transfer with Permanent Injunction.** The transfer of the Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Assets, and vests, or will vest, the Purchaser with all right, title, and interest to the Assets, free and clear of all Interests except as otherwise expressly stated as obligations of the Purchaser under the Agreement. All Persons holding interests or claims of any kind or nature whatsoever against the Debtors or the Assets, the operation of the Assets prior to the Closing Date, the Auction or the Sale are hereby and forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Assets, any claim, interest or liability existing, accrued, or arising prior to the Closing; provided that nothing herein shall enjoin, limit or otherwise impair the rights of the

Debtors, their estates or any successors thereof, to commence, prosecute and/or settle any of the Excluded Causes of Action.

11.    **Recording Offices and Releases of Interests.** On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Assets or a bill of sale transferring good and marketable title of the Assets to the Purchaser. This Sale Order is and shall be effective as a determination that, on the Closing Date, all interests of any kind or nature whatsoever existing as to the Assets prior to the Closing, other than Permitted Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected. This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or

recorded with any other governmental agency to act to cancel any interests against the Assets, other than the Permitted Encumbrances and Assumed Liabilities.

12.     **Cancellation of Third-Party Interests.** If any person or entity that has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Assets (other than with respect to Permitted Encumbrances or Assumed Liabilities) has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests that such person or entity has or may assert with respect to all or a portion of the Assets, the Debtors and the Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the transfer of the Assets free and clear of all Interests (except only for Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

<u>Assumption and Assignment of Contracts</u>

13.     **Authorization to Assume and Assign.** Upon the Closing, the Debtors are authorized and directed, in accordance with Bankruptcy Code sections 105(a), 363 and 365, to assume and assign each of the Assumed Contracts to the Purchaser free and clear of all Interests as of the Closing Date. The payment of the applicable Cure Amounts (if any) by the Purchaser shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default. The Purchaser shall then have assumed the Assumed Contracts and, pursuant to Bankruptcy Code

section 365(f), the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, neither the Debtors, nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assumed Contracts, which accrue and become due and payable on or after the Closing Date.

14.    **Assignment Requirements Satisfied.** The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance with their respective terms, notwithstanding (a) any provision in any such Assumed Contract (including provisions of the type described in Bankruptcy Code sections 365(b)(2), (e)(1) and (f)(1)) which prohibits, restricts or conditions such assignment or transfer or (b) any default by the Debtors prior to Closing under any such Assumed Contract or any disputes between the Debtors and a Contract Counterparty with respect to any such Assumed Contract arising prior to Closing. In particular, any provisions in any Assumed Contract that restrict, prohibit or condition the assignment of such Assumed Contract or allow the Contract Counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. Additionally, no sections or provisions of the Assumed Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assumed Contracts, including, but not limited to, the conditioning of such assignment on the consent of the non-debtor parties to such Assumed Contracts; (b) authorize the termination, cancellation or modification of the Assumed Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; or (c) declare a breach or default or otherwise give rise to a right of termination as a result of any change in control in respect of the

Debtors, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code section 365(f) and/or are otherwise unenforceable under Bankruptcy Code section 365(e). All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with Bankruptcy Code sections 363 and 365, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed Contracts.

15.     **Consent to Assign.** The Contract Counterparties to each Assumed Contract shall be and hereby are deemed to have consented to such assumption and assignment under Bankruptcy Code section 365(c)(1)(B) or this Court has determined that no such consent is required, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the Closing Date without the necessity of obtaining the Contract Counterparty's written consent to the assumption and assignment thereof. Each Contract Counterparty to an Assumed Contract with an unresolved objection to the assumption, assignment, or cure of its contract is hereby deemed to consent to the assignment of its Assumed Contract subject to payment of the Cure Amount when resolved with the Debtors. Notwithstanding anything to the contrary herein or in an order of this Court authorizing Debtors' assumption and assignment of the Assumed Contracts, the Purchaser and the Contract Counterparties are permitted to enter into separate written agreements ("**Assumed Contract Counterparty Agreements**") that may amend or modify the terms of the Assumed Contracts and in the event of any inconsistency, the terms of the Assumed Contract Counterparty Agreements shall control over the terms of this Sale Order and the Agreement with respect to the Purchaser's use and occupancy of the applicable premises from and after the Closing Date.

16.     **Section 365(k).** Upon the Closing and the payment of the applicable Cure Amount, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors and their estates shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assumed Contracts. A Contract Counterparty to an Assumed Contract with an unresolved objection to the assumption, assignment, or cure of its Assumed Contract who fails to resolve its objection with the Debtors and whose Contract is rejected reserves the ability to pursue liability, if any, solely against the Debtors and their estates and in no event against the Purchaser.

17.     **No Default.** Subject to the terms hereof with respect to the Cure Amounts, all monetary or non-monetary defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Purchaser in accordance with the terms hereof. Each party to an Assumed Contract is forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its property or affiliates, or successors and assigns, any breach or default under any Assumed Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assumed Contract or with regard to the assumption and assignment therefore pursuant to the Agreement or this Sale Order. Upon the payment of the applicable Cure Amount, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.     **Adequate Assurance Provided.** The requirements of Bankruptcy Code sections 365(b)(1) and 365(f)(2) are hereby deemed satisfied with respect to the Assumed Contracts based

on the Purchaser's evidence of its financial condition and wherewithal and without any further action by the Purchaser, including but not limited to any other or further deposit. Pursuant to Bankruptcy Code section 365(f), the Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

19.     **No Fees.** There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

20.     **Injunction.** Pursuant to Bankruptcy Code sections 105(a), 363, and 365, other than the right to payment of the Cure Amounts by the Debtors, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim, or pecuniary loss arising under or related to the Assumed Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

21.     **Contract Objections.** Except to the extent a Contract Counterparty has timely filed or otherwise interposed, an Objection (as defined in paragraph T above and shall include, for the avoidance of doubt, any email communications to counsel to the Debtors (to the extent timely), such Contract Counterparty is deemed to have consented to such Cure Amount and is deemed to have consented to the assumption and assignment, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to, such Assumed Contracts pursuant to Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B). With respect to any Contract Counterparty that timely filed, or otherwise interposed an Objection (as provided above), such Contract Counterparties shall have until January 12, 2024 to file (to the extent not resolved by agreement with the Debtors) a formal Contract Objection and all rights, claims, and defenses with

respect to such Contract Objections are expressly preserved. The provisions of this Sale Order shall be effective and binding upon the Contract Counterparties to the extent set forth in, and in accordance with, such procedures. Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is, or shall be, deemed an admission by the Debtors that any Assumed Contract is an executory contract or unexpired lease, or must be assumed and assigned pursuant to the Agreement in order to consummate the Sale.

22.     **No Further Debtor Liability.** Except as provided in the Agreement or in this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of such Claims are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or the Debtors' estates.

23.     **No Waiver of Rights.** The failure of the Debtors or the Purchaser to enforce, at any time, one or more terms or conditions of any Assumed Contracts shall not be a waiver of any such terms or conditions, or of the Debtors' or the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

**<u>Prohibition of Actions Against the Purchaser</u>**

24.     **No Successor Liability.** Except for the Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise expressly provided for in this Sale Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, the Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer reliability, labor law, *de facto*

merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

25.    Other than as expressly set forth in the Agreement, no Purchaser Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Agreement with respect to the Purchaser, no Purchaser Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "**Successor or Transferee Liability**") based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind of character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods, (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation, or other employee benefits which is or has been

sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute, or (c) any liability in respect of Medicare Accelerated and Advance Payments. Except to the extent expressly included in the Assumed Liabilities with respect to the Purchaser or as otherwise expressly set forth in the Agreement, no Purchaser Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Purchaser's purchase of the Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Agreement. Without limiting the foregoing, no Purchaser Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Assets except to the extent they are Assumed Liabilities set forth in the Agreement.

26.     **Actions Against the Purchaser Enjoined.** Except with respect to Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise permitted by the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interests of any kind or nature whatsoever against, or in, all or any portion of the Assets, arising under, out of, in connection with,

or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, or any of its affiliates, successors, or assigns, or their property or the Assets, such persons' or entities' Interests in and to the Assets, including, without limitation, the following actions against the Purchaser or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the business operated with the Assets.

## Other Provisions

27.    **Post-Closing Cooperation**.   After the Closing, the Purchaser shall permit, for a period of not less than six (6) years, each of the Debtors, any direct or indirect successor to the Debtors and their respective professionals, the Committee and its professionals (collectively, the "Permitted Parties") reasonable access to all books and records that are in connection with or that otherwise relate to the Debtors and their operations prior to the Closing and that are in the control or the possession of the Purchaser or any of its affiliates or their respective agents or representatives (collectively, "Business Records") for the purposes of (i) pursuing, assessing, settling, or otherwise dealing with any Excluded Assets or Excluded Liabilities (including, without limitation, Causes of Action), (ii) pursuing, assessing, defending, settling, or otherwise dealing with Causes of

Action, including, without limitation, any objection or motion, that any Permitted Party has the right to pursue, (iii) performing and/or otherwise dealing with any obligations of the Debtors, including the Excluded Liabilities, (iv) assisting any one or more of the Permitted Parties in connection with or otherwise relating to the claims reconciliation process relating to any of the Debtors, including, without limitation, with respect to Causes of Action against any person, including, without limitation, assessing, resolving, settling, and/or otherwise dealing with priority and administrative claims and any general unsecured claims that accrue prior to the Closing Date and (v) without limiting the generality of the immediately preceding clauses (i) through (iv), otherwise administering the Debtors' estates including, without limitation, the preparation and confirmation of a plan relating to any of the Debtors and the preparation of accompanying disclosure statement, and compliance with any subpoena, document request, or order of any court compelling any Permitted Party to produce documents to third parties, winding down the Debtors' estates, preparing or filing tax returns and causing audits to be performed and/or for any other reasonable purpose. For the avoidance of doubt, the Permitted Parties shall <u>not</u> have access to the Purchaser's books and records that are created subsequent to the Closing and do not related to the Debtors and their operations prior to the Closing.

28. The right of access for the Permitted Parties shall include, without limitation, (a) (i) the right of such Permitted Party, upon reasonable notice during regular business hours, to copy at the Permitted Party's premises or the Purchaser's premises (including any location formerly operated by any of the Debtors) at each requesting Permitted Party's expense, such documents and records as they may request in furtherance of any of the purposes referred to herein and (ii) Purchaser's copying and delivering, at the Permitted Party's cost, to such Permitted Party such documents and records as may reasonably be requested, but only to the extent such Permitted Party

furnishes the Purchaser with reasonable written descriptions of the materials to be so copied. The Purchaser shall not dispose of or destroy any of the Business Records before the sixth (6th) anniversary of the Closing Date and will provide the Permitted Parties and the Court pursuant to a filing with the Bankruptcy Court with at least ninety (90) days written notice before doing so and will provide each Permitted Party that requests copies of any Business Records within such ninety (90) day period copies of all requested Business Records at the cost of the requesting Permitted Party.

29.     The Purchaser shall use commercially reasonable efforts to make reasonably available to Permitted Parties employees of the business to assist the Debtors and the Committee in connection with the administration of the Debtors' estates as set forth herein, including, without limitation, in connection with Excluded Assets and/or Excluded Liabilities.

30.     **Licenses**. To the maximum extent permitted by applicable law, and in accordance with the Agreement, the Purchaser (or its designee) shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "**Licenses**") of the Debtors with respect to the Assets. To the extent the Purchaser (or its designee) cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Purchaser (or its designee), with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Purchaser (or its designee). The Debtors shall, at Purchaser's sole cost, maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser (or its designee).

31.     **Effective Immediately.** For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), and 7062(g), this Sale Order shall not be stayed and shall be effective immediately upon

entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order. The Debtors and the Purchaser may consummate the Agreement at any time after entry of this Sale Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Acquired Asset Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

32.     **Access to Books and Records.** Following the Closing of the Sale, the Debtors shall have, and the Purchaser shall provide, reasonable access to their books and records, to the extent they are included in the Assets transferred to the Purchaser as part of the Sale as set forth in the Agreement.

33.     **Bulk Sales Law.** No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

34.     **Agreement Approved in Entirety.** The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

35.     **RMS Objection**. On October 2, 2023, RMS Holdings, P.C. and Radiologic Medical Services, P.C. (collectively, "**RMS**") filed the *Limited Objection of RMS Holdings, P.C. and Radiologic Medical Services, P.C. to the Sale of Substantially all of the Debtors' Assets* [Docket No. 317] (the "**RMS Objection**"). The RMS Objection is hereby adjourned to allow RMS, the Debtors and the Purchaser time to reach a consensual resolution on the issues raised in the RMS Objection. In the event the parties are unable to reach a consensual resolution prior to the Closing, the parties shall seek resolution of the RMS Objection from the Court. RMS, the Debtors,

and the Purchaser reserve all their rights with respect to the issues raised in the RMS Objection.

Notwithstanding anything in this Sale Order to the contrary, the Debtors' ownership interest in

Corridor Radiology, LLC shall not be transferred to the Purchaser without further agreement and

stipulation of the relevant parties or order of this Court.

36.     **Further Assurances**. From time to time, as and when requested, all parties shall

execute and deliver, or cause to be executed and delivered, all such documents and instruments

and shall take, or cause to be taken, all such further or other actions as the requesting party may

reasonably deem necessary or desirable to consummate the Sale, including such actions as may be

necessary to vest, perfect, or confirm or record or otherwise in the Purchaser its right, title, and

interest in and to the Assets.

37.     **Modifications to Agreement.** The Agreement and any related agreements,

documents or other instruments may be modified, amended or supplemented by the parties thereto

and in accordance with the terms thereof, in a writing signed by such parties, without further order

of this Court, provided any such modification, amendment or supplement does not have a material

adverse effect on the Debtors' estates.

38.     **Standing.** The transactions authorized herein shall be of full force and effect,

regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed

or authorized to transact business.

39.     **Authorization to Effect Order.** The Debtors are authorized to take all actions

necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale

Motion.

40.     **Automatic Stay.** The automatic stay pursuant to Bankruptcy Code section 362 is

hereby modified, lifted, and annulled with respect to the Debtors and the Purchaser to the extent

necessary, without further order of this Court, to (a) allow the Purchaser to deliver any notice provided for in the Agreement and (b) allow the Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

41.     **No Other Bids.** No further bids or offers for the Assets shall be considered or accepted by the Debtors after the date hereof unless the Sale to the Purchaser is not consummated or otherwise does not occur in accordance with the Agreement or its related documents.

42.     **Order to Govern.** To the extent this Sale Order is inconsistent with any prior order entered or pleading filed in these Chapter 11 Cases, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

43.     **Standing**. The Purchaser has standing to seek to enforce the terms of this Sale Order.

44.     **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction with respect to the terms and provisions of this Sale Order and the Agreement.

Dated and entered this ____ day of _____, 2023

_____

_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

Roy Leaf, AT0014486
625 1st Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone: (319) 286-7002
Facsimile: (319) 286-7050
rleaf@nyemaster.com

-and-

Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
fperlman@mwe.com
dsimon@mwe.com
ekeil@mwe.com

- and –

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## Exhibit A

**The Agreement**