## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Doc. Nos. 26 and 434** |
| | **Hearing Date: November 6, 2023 at 10:30 a.m. (prevailing Central Time)** |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO ENTRY OF THE PROPOSED FINAL CASH COLLATERAL ORDER

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Mercy Hospital, Iowa City, Iowa (the "Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby files this objection (the "Objection") to entry of the *[Proposed] Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* (the "Proposed Final Order") [Doc. No. 434-1] submitted to the Court in connection with the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 26] (the "Cash Collateral Motion").[1] In support of the Objection, the Committee relies upon the *Declaration of Narendra Ganti*, filed contemporaneously herewith, and respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion or the Proposed Final Order, as applicable.

## PRELIMINARY STATEMENT

1.      The Committee supports entry of a final cash collateral order that enables the

Debtors to operate through consummation of the proposed sale to the University of Iowa (the

"University"), ensures Mercy Hospital can continue to provide the highest level of care to its

patients, protects the interests of the Debtors' estates and unsecured creditors, and paves the way

for confirmation of an appropriate plan of liquidation that treats all creditors fairly.

2.      However, any final cash collateral order should only provide adequate protection

as required by the Bankruptcy Code and not unfairly tip the balance of these Chapter 11 Cases in

favor of the Master Trustee through an excessive adequate protection package and waivers of

rights that will be detrimental to the interests of general unsecured creditors. The Master Trustee

has had the benefit of the protections included in the Interim Cash Collateral Order for the past 3

months –including an unnecessary replacement lien on the assets of all Debtors– and there has

been no showing whatsoever that such protections have been inadequate.  There is no reason,

evidence or support to change the *status quo* to tilt the scales of these cases in favor of the

Master Trustee.

3.      In determining what constitutes appropriate adequate protection for the Master

Trustee's interests going forward, the Court should consider that the circumstances and risk

profile of these cases have been altered dramatically (for the better) by two (2) significant events:

(1) the agreement by the Mercy Hospital Foundation (the "Foundation") to inject millions of

dollars of unrestricted funds to help offset operating losses through the Foundation Settlement

(as defined herein); and (2) the selection of the University as the winning bidder for substantially

all of the Debtors' assets and its commitment to fund any operating losses that Mercy Hospital

may incur from and after December 1, 2023, without counting any of the Debtors' cash on hand.

These benefits were not available to the Debtors and the Master Trustee both prepetition and

before the entry of the Interim Cash Collateral Order and should assist the Court in determining what protections are "adequate" for the Master Trustee.

4.      As a result, it is highly questionable whether the interests of the Master Trustee have been diminished at all since entry of the Interim Cash Collateral Order. To the contrary, it appears that the interests of the Master Trustee have been protected and bettered through the Interim Cash Collateral Order, sale process, the Foundation Settlement, the University's agreement to cover all of Mercy Hospital's operating losses after November 30, 2023, and the fact that the escrow for bankruptcy professional fees has been funded solely from the Debtors' unencumbered investment account to facilitate an orderly sale of certain of the collateral in which the Master Trustee asserts an interest.

5.      The Master Trustee's collateral package in these cases consists of two (2) primary categories: accounts receivable and real estate (including furniture, fixtures and personal property attendant thereto). With regard to the real estate collateral, there is no need for adequate protection as there can be no showing of any deterioration or diminution of value of such assets. In fact, the value of the real estate collateral may have been augmented through the sale process conducted by the Debtors. With regard to the accounts receivable collateral, as reflected in the below chart prepared by the Debtors, there has been virtually no diminution in value:[2]

---

[2] The Committee is aware that this chart is subject to review and revision by the Debtors and reserves all rights in that regard.

| Pre and Post Estimate of AR Realizations | 8/7/2023 | 8/31/2023 | 9/30/2023 | 10/31/2023 |
|---|---|---|---|---|
| Prepetition Hospital AR | 23,714,184 | 14,108,077 | 10,101,681 | 8,251,529 |
| Prepetition Clinic AR | 4,612,766 | 3,527,073 | 2,871,073 | 2,530,224 |
| Total Prepetition | 28,326,950 | 17,635,150 | 12,972,754 | 10,781,753 |
| Post-Petition Hospital AR | - | 8,404,192 | 11,407,849 | 14,966,547 |
| Post-Petition Clinic AR | - | 965,233 | 1,435,354 | 1,872,620 |
| Total Post-Petition AR | - | 9,369,425 | 12,843,203 | 16,839,167 |
| Total AR | 28,326,950 | 27,004,575 | 25,815,958 | 27,620,920 |

| | | | | |
|---|---|---|---|---|
| Hospital Balance | 23,714,184 | 22,512,269 | 21,509,530 | 23,218,077 |
| Clinic Balance | 4,612,766 | 4,492,306 | 4,306,428 | 4,402,843 |
| | 28,326,950 | 27,004,575 | 25,815,958 | 27,620,920 |

6.    The limited scope of the Master Trustee's security interests and liens and limited need for adequate protection (and no need for additional protections) is confirmed by the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Doc. No. 27] (the "First Day Declaration"), which states at paragraph 39 that "the Master Trustee does not have a perfected security interest in the Debtors' primary bank accounts."[3]  Paragraph 40 of that Declaration further states as follows:

> All of the Debtors' assets, other than the Prepetition Collateral, were unencumbered as of the Petition Date (such assets, the "Excluded Assets"), including all real or personal property owned by Debtor Mercy Services Iowa City, Inc. and Mercy Iowa City ACO, LLC, cash and other securities held in Mercy Hospital's investment account, main operating account and other deposit accounts, and all of the Debtors' equity interests in non-Debtor affiliates. In addition, pursuant to section 552 of the Bankruptcy Code, the Master Trustee only has a lien on the proceeds of Unrestricted

---

[3] The limited scope of the assets is further confirmed by the Reservation of Rights [Doc. No. 435] filed by the Master Trustee, which notably omits "cash and other securities held in Mercy Hospital's investment account, main operating account and other deposit accounts, and all of the Debtors' equity interests in non-Debtor affiliates" from the list of Collateral (as defined therein) at p. 5.

Receivables generated by Mercy Hospital prior to the Petition Date, but any
accounts receivable generated by Mercy Hospital on or after the Petition
Date are unencumbered.

7.      Given the limited extent of the perfected liens and security interests asserted by

the Master Trustee, there is no proof, credible evidence or showing of any kind or nature that the

broad protections and waivers sought by the Master Trustee in the Proposed Final Order (which

go way beyond protecting interests in accounts receivable) are necessary or appropriate to

address any potential diminishment in collateral value (at most, $500,000 in hospital accounts

receivable). The lack of any need for such protections and waivers is abundantly clear when the

Foundation Settlement (which has and will further augment the Debtors' financial condition), the

terms of the purchase by the University (providing a backstop for any operating losses after

December 1, 2023), the superpriority administrative claim granted by operation of section 507(b)

of Bankruptcy Code, and the other protections already afforded under the Interim Cash Collateral

Order (as defined herein) are factored into the Court's consideration.

8.      Accordingly, any final cash collateral order should be appropriately tailored to the

circumstances of these Chapter 11 Cases consistent with applicable law and not prejudice the

Debtors' estates and unsecured creditors by granting the Master Trustee a variety of "bells and

whistles" benefits that it is not entitled to as an undersecured[4] prepetition lender with limited

liens and security interests. Specifically, the following provisions of the Proposed Final Order

should be removed or appropriately revised for the reasons set forth below in this Objection:

- There should be no waiver of the Debtors' estates surcharge rights under
  section 506(c) of the Bankruptcy Code or the equities of the case
  exception under section 552(b) of the Bankruptcy Code.

- The Master Trustee should not be granted additional and replacement liens
  and a superpriority claim against any collateral the Master Trustee did not

---

[4] Based upon valuations and information to date.

have a lien on as of the Petition Date. This includes, without limitation, Mercy Hospital's deposit accounts, investment accounts, unencumbered real estate, avoidance actions under chapter 5 of the Bankruptcy Code, and commercial tort claims (including D&O claims), the proceeds of such causes of action, and all assets of non-borrower Debtors Mercy Services Iowa City, Inc. or Mercy Iowa City ACO, LLC,[5] each of which should remain unencumbered and available for distribution to unsecured creditors.

- To the extent any case milestones remain in the Proposed Final Order as events of default, they should not hand control over the Chapter 11 Cases to the Master Trustee by requiring that any plan, disclosure statement and confirmation order be "in form and substance reasonably acceptable to the [Master Trustee]."

- The Proposed Final Order should be clarified to provide that the Challenge Deadline does not apply to any affirmative claims and causes of action, including avoidance actions, that the Committee could potentially assert against the Master Trustee.

- The Challenge Deadline (limited to challenges to the extent, validity, perfection, priority and enforceability of the Master Trustee's prepetition liens and security interests) should be increased to sixty (60) days after entry of a final cash collateral order, and the Committee should be granted standing under any final cash collateral order to commence, prosecute and/or settle any potential lien challenges, as well as affirmative claims against the Master Trustee.

9.      In order to address the above issues, the Committee proposes that the Court enter

the final cash collateral order attached hereto as <u>Exhibit A</u> (the "<u>Committee Proposed Final</u>

<u>Order</u>"), which protects the interests of the Debtors' estates and unsecured creditors consistent

with this Objection, while also offering adequate protection to the Master Trustee to the extent of

any postpetition diminution in the value of its prepetition collateral.[6]

---

[5] The Master Trustee's security interest only encompasses the "Obligated Group" which is defined to include only Mercy Hospital and does not include the assets of the other Debtors.

[6] A redline of the Committee Proposed Final Order compared to the Proposed Final Order is attached hereto as <u>Exhibit B</u>.

## **RELEVANT BACKGROUND**

10.     On August 7, 2023, the Debtors filed their voluntary petitions for relief under

chapter 11 of the Bankruptcy Code, thereby commencing these cases (collectively, the "Chapter

11 Cases").

11.     On the same date, the Debtors filed the Cash Collateral Motion.

12.     On August 8, 2023, Computershare Trust Company, N.A., as Master Trustee (the

"Master Trustee"), and Preston Hollow Community Capital, Inc., as Bondholder Representative,

filed an objection [Doc. No. 35] (the "Master Trustee Cash Collateral Objection") to the Cash

Collateral Motion, arguing that (a) the Debtors have access to unencumbered cash and other

assets of the Foundation and should be required to use such funds before using the Master

Trustee's cash collateral, (b) the potential cash burn caused by the Chapter 11 Cases is

unwarranted and will cause an unnecessary and substantial decrease in the value of the Master

Trustee's prepetition collateral, and (c) the Debtors fail to provide the Master Trustee with

sufficient adequate protection.

13.     On August 8, 2023, the Court entered the *Interim Order Granting Motion of*

*Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and*

*Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral,*

*and (III) Granting Related Relief* [Docket No. 38] (the "Interim Cash Collateral Order").

14.     The Interim Cash Collateral Order authorized the Debtors to use the cash

collateral of the Master Trustee on an interim basis and provided the Master Trustee with

adequate protection for any potential postpetition diminution in the value of its prepetition

collateral.

15.     The Interim Cash Collateral Order also provided for the establishment of a professional fee reserve to be funded solely by the Mercy Hospital investment account, which was unencumbered as of the Petition Date. *See* Interim Cash Collateral Order ¶ 7.

16.     The Master Trustee Cash Collateral Objection did not request, and the Interim Cash Collateral Order did not provide, for any of the following waivers and other relief that are now requested in the Proposed Final Order:

- a waiver of the Debtors' estates surcharge rights under section 506(c) of the Bankruptcy Code;

- a waiver of the equities of the case exception under section 552(b) of the Bankruptcy Code;

- to impose any case milestones or other events of default; or

- to impose any lien challenge deadline or deadline for the Committee to assert any other cause of action against the Master Trustee.

17.     On October 9, 2023, the Debtors filed the *Debtors' (I) Motion For Entry Of Order Approving Settlement by and Among the Debtors, the Bondholder Representatives, the Committee, and Mercy Foundation; and (II) Application of Mercy, as Sole Member of Mercy Foundation, for Section 540A.106 Ruling* [Doc. No. 346] (the "Settlement Motion").  The Settlement Motion seeks approval of a proposed settlement (the "Foundation Settlement") pursuant to which, among other things, the Foundation has agreed to contribute substantially all of its Unrestricted Funds (as defined in the Settlement Motion) to the Debtors.

18.     Through the Foundation Settlement, the Debtors are expected to receive contributions of $7 million or more in unencumbered cash from the Foundation. To date, at least $2.2 million of those contributions have already been received by the Debtors.

19.     On October 27, 2023, the Debtors filed an *Amended Notice of Auction Results* [Doc. No. 420], announcing that the Debtors had reopened the auction for their assets and, in

consultation with the Committee, designated the University as the winning bidder.  The

University's winning bid includes a commitment by the University to fund any operating losses

that Mercy Hospital may incur from and after December 1, 2023, without counting any of the

Debtors' cash on hand (including contributions by the Foundation).

20.     On November 1, 2023, the Debtors filed the Proposed Final Order.

21.     A final hearing on the Cash Collateral Motion, as well as a hearing on the

Settlement Motion and to consider approval of the proposed sale of substantially all of the

Debtors' assets to the University, is scheduled for November 6, 2023.

22.     On November 2, 2023, the Master Trustee filed a reservation of rights with

respect to the Cash Collateral Motion [Doc. No. 435] (the "Reservation"). In the Reservation, the

Master Trustee makes a bold unsupported assertion that its "Cash Collateral has been depleted at

a tremendous rate since these Chapter 11 Cases began. Through the 12-weeks ending on October

27th, the Debtors have consumed approximately $9 million of cash on-hand (as of August 11th)

*plus* approximately $40.4 million of cash receipts, including approximately $25 million of pre-

petition accounts receivable." Reservation ¶ 1. The Master Trustee further asserts that "the

Master Trustee's Cash Collateral will continue to be depleted – and the bondholders will suffer

further diminution – as these Chapter 11 Cases progress." Reservation ¶ 2.

23.     The Master Trustee's assertions are inconsistent with the facts and unsupported

by any evidence. First, the granting clauses in the governing bond documents do not include any

grant of a security interest in the Debtors' deposit accounts or investment property (as set forth

above). Thus, the Master Trustee's effort to include cash in the Debtors' deposit accounts or the

contents of the Debtors' investment account in establishing the value of the Master Trustee's

collateral as of the Petition Date should be rejected. In fact, the Debtors have consistently

confirmed that such assets are not part of the Master Trustee's collateral in the First Day

Declaration, the Interim Cash Collateral Order and the Proposed Final Order.

24.     Second, the Master Trustee's assertion that its interest in Mercy Hospital's

accounts receivable was depleted "at a tremendous rate" is belied by the fact that, according to

the Debtors' data, between the Petition Date and October 31, 2023, Mercy Hospital's total

accounts receivable balance declined by only approximately $496,000 ($23,714,184 –

$23,218,077). This alleged diminution is more than covered by the adequate protection liens and

superpriority administrative claim granted to the Master Trustee on Mercy Hospital's and other

Debtors' unencumbered assets under the Interim Cash Collateral Order.

25.     Finally, the Master Trustee has not offered any explanation, let alone evidence, to

support its assertion that "its Cash Collateral will continue to be depleted."  To the contrary, as

described herein, (i) the sale of the Debtors' assets to the University with the concomitant

assumption of net operating losses by the University as of December 1, 2023; (ii) the

contribution of the Foundation funds to the Debtors' estates; and (iii) the existence of potentially

millions of dollars of unencumbered assets at Mercy Hospital and other Debtors provide more

than adequate protection of the Master Trustee's collateral against diminution in value without

the need for the overreaching benefits that the Master Trustee seeks to the detriment of the

interests of unsecured creditors.

## **OBJECTION**

26.     Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash

collateral unless consent is obtained from creditors that have an interest in the collateral, or the

bankruptcy court authorizes its use. 11 U.S.C. § 363(c)(2). If the creditor does not consent, cash

collateral may be used by the debtor only to the extent that the court determines that the

creditor's interest in the collateral is adequately protected. 11 U.S.C. § 363(e). Adequate

protection is not defined in the Bankruptcy Code, but section 361 provides three non-exclusive methods as examples of same: (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the indubitable equivalent of the secured creditor's interest. 11 U.S.C. § 361.

27.     "The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy." *In re Vander Vegt*, 499 B.R. 631, 637 (Bankr. N.D. Iowa 2013), aff'd sub nom., *First Sec. Bank & Tr. Co. v. Vegt*, 511 B.R. 567 (N.D. Iowa 2014) (quoting *In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987)). Adequate protection therefore "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) (quoting *In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir. 1984).

28.     What constitutes adequate protection for a secured party's interests must be decided on a case-by-case basis. *See In re Martin,* 761 F.2d at 472; *In re Swedeland Dev. Group. Inc.,* 16 F.3d 552, 564 (3d Cir. 1994); *In re O'Connor*, 808 F.2d at 1396; *In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984). In gauging whether adequate protection has been provided, courts must "(1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence." *In re Martin,* 761 F.2d at 476-77.

29.     There has been no demonstration that the protections included in the Interim Cash Collateral Order for the past 3 months have been inadequate. In determining what is appropriate

adequate protection going forward, the Court should consider that funds from the Foundation

Settlement have and will continue to offset any operating losses that Mercy Hospital may incur

through November 30, 2023 and the University has committed to funding any operating losses

from and after December 1, 2023 without counting any of the Debtors' cash on hand or

contributions from the Foundation. In addition, the escrow for bankruptcy professional fees has

been funded solely by funds in the Debtors' unencumbered investment account.

30.     Thus, the need for adequate protection of the Master Trustee's interests has, if

anything, been diminished since entry of the Interim Cash Collateral Order, and there is little, if

any, risk that the collateral which is subject to any lien asserted by the Master Trustee will

degrade or otherwise erode in value.

31.     The combination of overreaching provisions contained in the Proposed Final

Order go well beyond the requirements of providing adequate protection to the Master Trustee

and would prejudice the Debtors' estates and unsecured creditors by granting the Master Trustee

a variety of "bells and whistles" benefits that the Master Trustee is not entitled to as a prepetition

lender. In fact, the Proposed Final Order will augment the position of the Master Trustee, rather

than protect against risks of diminution as required by applicable caselaw.  Based on the current

circumstances of these cases, the Committee submits that the following objectionable provisions

of the Proposed Final Order should be removed or appropriately revised.

**I.      There is No Basis for a Waiver of the Debtors' Estates' Rights Under Section 506(c) of the Bankruptcy Code**

32.     A waiver of the Debtors' rights to seek to surcharge the Master Trustee's

collateral under section 506(c) of the Bankruptcy Code is improper and could undermine

potential claims in the millions of dollars. Specifically, because the Debtors have asserted that

there are significant unencumbered assets which were used to fund these cases (as set forth

above), there may be substantial claims arising under section 506(c) that should be preserved, investigated and pursued, if necessary.

33.     Section 506(c) of the Bankruptcy Code permits a debtor to recover the "reasonable, necessary costs and expenses of preserving, or disposing of, [collateral] to the extent of any benefit to the holder of [an allowed secured claim]."  11 U.S.C. § 506(c).

34.     Section 506(c) is "equitable in origin, preventing a windfall to a secured creditor at the expense of the trustee or debtor in possession by shifting the costs of preserving or disposing of a secured party's collateral from the bankruptcy estate to the secured party." *U.S. I.R.S. v. Boatmen's First Nat. Bank of Kansas City*, 5 F.3d 1157, 1159 (8th Cir. 1993), overruled on other grounds by *In re Hen House Interstate, Inc.*, 177 F.3d 719 (8th Cir. 1999). "The purpose of [section 506(c)] is to prevent a windfall to a secured creditor at the expense of the estate." *In re Stacy's, Inc.*, 508 B.R. 370, 377 (Bankr. D.S.C. 2014) (quoting *Ford Motor Credit Co. v. Reynolds & Reynolds Co.* (*In re JKJ Chevrolet, Inc.*), 26 F.3d 481, 483 (4th Cir. 1994)). Section 506(c) "protects the estate and its general creditors from the cost of preserving what is not theirs." *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 602 (Bankr. E.D. Va. 1985) (citing *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982)).

35.     The Debtors' proposed waiver of section 506(c) rights should be carefully scrutinized and rejected by this Court. It is not necessary or appropriate to provide adequate protection and will strip the estates of a valuable right which could be worth millions of dollars in order to protect, at best, a $500,000 reduction in hospital accounts receivable – which claim, if any, can and should be protected by operation of section 507(b).[7]

---

[7] Even if the Master Trustee ultimately has a superpriority claim under section 507(b) on account of a reduction in the value of its accounts receivable collateral, the estates' rights under section 506(c) should be preserved to, at a bare minimum, offset such claim.

36.    The estates' rights under section 506(c) of the Bankruptcy Code are significant in these cases because the Debtors have been using millions of dollars of unencumbered funds in their investment and cash accounts to preserve (and possibly increase) the value of the collateral in which the Master Trustee asserts liens, and the Master Trustee has not provided (and will not provide) any consideration in exchange for a waiver of such a valuable right.

37.    It would be improper and inappropriate to strip the Debtors and their estates of their potential surcharge claims under section 506(c) of the Bankruptcy Code, which may be worth millions of dollars, in exchange for no consideration, let alone fair consideration.[8] There is simply no basis for (or evidence to support) a broad waiver of valuable section 506(c) surcharge rights under the circumstances of these Chapter 11 Cases.

## II.    There is No Basis for a Waiver of the "Equities of the Case" Exception Under Section 552(b) of the Bankruptcy Code

38.    The Proposed Final Order also includes an unnecessary and improper waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code.  That statutory exception permits a court to disregard a secured creditor's post-petition lien on "proceeds, products, offspring, or profits" of prepetition collateral based on the "equities of the case." 11 U.S.C. § 552(b)(1). It authorizes a bankruptcy court to utilize its discretion when deciding whether to allow a prepetition lien to survive postpetition. *See United Va. Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986); *Gray v. Bank of Early*, 2018 WL 9415069, *6 (M.D. Ga. Sept. 20, 2018). In exercising this discretion, "[e]ach case will have to be decided on its own merit." *In re Underbakke,* 60 B.R. 705, 708–09 (Bankr. N.D. Iowa 1986). The bankruptcy court "evaluates the expenditures of time, labor, and funds relating to the collateral,

---

[8] "To be effectual a waiver must not only be made intentionally, but with knowledge of the circumstances."  *Axtell v. Harbert,* 256 Iowa 867, 874 (1964).  As set forth herein, under the circumstances of these cases, a waiver should not be permitted.

the relative position of the secured party, and the overall rehabilitative theme of bankruptcy law."

*In re Lawrence*, 41 B.R. 36, 38 (Bankr. D. Minn.), aff'd, 56 B.R. 727 (D. Minn. 1984).

39.    Courts have typically applied the "equities of the case" exception in cases

where a secured creditor would receive a windfall because, for example, the value of the

creditor's collateral is increased by an expenditure of estate funds that would otherwise be

distributed to unsecured creditors in the case. *Gray v. Bank of Early*, 2018 WL 9415069, at *6

(citing cases and noting that five courts of appeals have embraced this interpretation of section

552(b)(1)'s purpose and application). Such circumstances may exist here.

40.    In addition, as described in the *Declaration of Mark E. Toney in Support of

Chapter 11 Petitions and First Day Pleadings* [Doc. No. 27], the Debtors may have significant

claims against the Master Trustee based on its alleged prepetition misconduct that jeopardized

the health and well-being of Mercy Hospital's patients and resulted in significant destruction of

value for all of the Debtors' stakeholders. *See id.* ¶¶ 68-69. This misconduct may warrant

application of the equities of the case exception. Therefore, these Chapter 11 Cases present

circumstances under which any waiver of the Debtors' estates rights under section 552(b) of the

Bankruptcy Code as part of a cash collateral order is entirely inappropriate (if it is ever

appropriate).

41.    Just as there is no basis for any waiver of section 506(c) rights, there is also no

basis for any waiver of this important right arising under section 552(b).

III.    **The Master Trustee is Adequately Protected by the Replacement Liens and
Superpriority Claim Provided in the Committee Final Proposed Order**

42.    Sections 552(a) and (b) of the Bankruptcy Code, together, provide that a lender's

prepetition security interest will attach to post-petition proceeds, products, offspring or profits of

its prepetition collateral (if such proceeds, products, offspring or profits are included in the

security agreement), but assets of the same type on which the lender had a prepetition lien

(which are not proceeds, products, offspring or profits of prepetition collateral) will not be

subject to the prepetition security interest. 11 U.S.C. § 552(a)-(b).

43.    "Generally, 'a secured creditor's security interest in cash collateral generated

postpetition is cut off as of the petition date by § 552(a) of the Bankruptcy Code.'  In this

situation the debtor can adequately protect the creditor's interest by offering a replacement lien

on the cash collateral generated post-petition because the creditor no longer has a security

interest in the collateral pursuant to § 552(a)."  *In re Smithville Crossing, LLC*, 2011 Bankr.

LEXIS 4605, at *30-31 (Bankr. E.D.N.C. Sep. 28, 2011) (citing *In re Union-Go Dairy Leasing,*

*LLC*, 2010 Bankr. LEXIS 1468, *10 (Bankr. S.D. Ind. May 6, 2010)); *see also In re Isaacson*

*Steel, Inc.*, No. 11-12415-JMD, 2013 Bankr. LEXIS 3900, *14 (Bankr. D.N.H. Sept. 19, 2013)

(explaining that the lender had a replacement lien on the debtors' after-acquired inventory and

accounts receivable to adequately protect the lender from diminution of value of its prepetition

collateral). To the extent the provision of adequate protection does not protect the lender, section

507(b) of the Bankruptcy Code provides the lender with a "superpriority" administrative claim.

11 U.S.C. § 507(b).

44.    Here, to protect the Master Trustee from any potential diminution in the value of

its prepetition collateral, the Committee Proposed Final Order grants the Master Trustee

replacement liens on and a superpriority claim against the same categories of assets against

which the Master Trustee had a prepetition lien but would not otherwise have a postpetition lien.

The replacement liens on, and superpriority claim against, these categories of collateral, together

with the continued adequate protection payments that have been authorized since entry of the

Interim Cash Collateral Order, are more than sufficient as adequate protection of the Master

Trustee's interests in its prepetition collateral in these Chapter 11 Cases. The Master Trustee has

offered no evidence to justify an adequate protection lien against collateral in which the Master

Trustee did not have any interest whatsoever as of the Petition Date. Thus, the Master Trustee's

adequate protection package should be limited to replacement liens on and a superpriority claim

against the same categories of assets against which the Master Trustee had a prepetition lien,

together with continued adequate protection payments. The additional adequate protection

provisions included in the Final Proposed Order are unnecessary and detrimental to the Debtors

and their estates.

45.     In particular, the Master Trustee should not be granted additional and replacement

liens on, or a superpriority claim against, any categories of collateral the Master Trustee did not

have a lien on as of the Petition Date. This includes, without limitation, Mercy Hospital's deposit

accounts, investment accounts, unencumbered real estate, avoidance actions under chapter 5 of

the Bankruptcy Code, and commercial tort claims (including D&O claims), the proceeds of such

causes of action, and all assets of non-borrower Debtors Mercy Services Iowa City, Inc. or

Mercy Iowa City ACO, LLC, each of which should remain unencumbered and available for

distribution to unsecured creditors.

46.     There has been no evidence that the additional liens sought by the Master Trustee

in the Proposed Final Order are necessary or appropriate to address any potential diminution in

collateral value ($500,000 in hospital accounts receivable, at most), particularly when the

contributions of unencumbered funds from the Foundation ($2.2 million to date and another $4.5

million anticipated by early December), the University's agreement to fund any operating losses

after December 1, 2023, the superpriority administrative claim granted by operation of section

507(b) of Bankruptcy Code, and the protections already afforded under the Interim Cash

Collateral Order are considered. If anything, the risk to the Master Trustee from continued use of cash collateral have significantly diminished since entry of the Interim Cash Collateral Order.

47.     If the Court were to nevertheless consider granting the Master Trustee an adequate protection lien on assets that it did not have a lien on as of the Petition Date, such lien should (i) be limited to the assets of Mercy Hospital **only**,[9] and (ii) exclude avoidance actions under chapter 5 of the Bankruptcy Code, commercial tort claims (including D&O claims), and the proceeds thereof.

48.     In sum, this Court should only grant the Master Trustee protections that are adequate – not protections or provisions designed to augment and "better" the position of the Master Trustee at the expense of the Debtors' estates and unsecured creditors.

## IV.    The Proposed Events of Default and Case Milestones Should Not Turn Case Control Over to the Master Trustee

49.     The Proposed Final Order includes various events of default in the form of milestones for the Debtors' filing of a plan and disclosure statement and confirmation of a plan by certain deadlines, all of which must be "in form and substance reasonably acceptable to the [Master Trustee]." To the extent any case milestones are included in the Proposed Final Order, they should not hand control over the Debtors and the remainder of these Chapter 11 Cases to the Master Trustee. This overreaching by the Master Trustee should not be permitted by the Court. The Master Trustee should not be allowed to have "case controls" or veto rights regarding the direction of these bankruptcy cases. The requested case controls go far beyond any protection that is adequate to protect the Master Trustee's prepetition security interests.

---

[9] As noted above, the Master Trustee did not have any prepetition security interest in any assets of Mercy Services Iowa City, Inc. or Mercy Iowa City ACO, LLC.

**V.   The Challenge Deadline Should be Lengthened and Should Not Apply to Any
Affirmative Claims and Causes of Action, Including Avoidance Actions, Against the
Master Trustee**

50.     Pursuant to section 1103(2) of the Bankruptcy Code, the Committee is
empowered to "investigate the acts, conduct, assets, liabilities, and financial condition of the
debtor . . . and any other matter relevant to the case or to the formulation of a plan."  11 U.S.C. §
1103(c)(2).

51.     The Committee does not object in principle to a reasonable challenge deadline as
long as it applies only to challenges to the extent, validity, perfection, priority and enforceability
of the Master Trustee's prepetition liens and security interests. However, the Challenge Deadline
should not apply to any affirmative claims and causes of action, including avoidance actions, that
the Committee is investigating and could potentially assert against the Master Trustee.

52.     The Bankruptcy Code provides no such limitation on the Committee's ability to
investigate and assert non-lien challenges. To the contrary, section 546(a), for example, gives the
estate two years from the Petition Date to bring a chapter 5 cause of action. Similarly, section
108 of the Bankruptcy Code gives the estate an extended two year time period to pursue causes
of action that have not expired prior to the Petition Date.  The Bankruptcy Code does not limit
the estate's ability to investigate and pursue such causes of action, but rather affords the estate
additional time to do so.  The Committee should be given adequate time to investigate and, if
appropriate, pursue such causes of action.

53.     The proposed artificial deadline for commencing any causes of action against the
Master Trustee unrelated to a challenge of its liens and security interests has absolutely no
bearing on the provision of adequate protection. The Master Trustee cannot use a cash collateral
order to impose arbitrary deadlines curtailing rights granted under the Bankruptcy Code.

54.     Finally, any challenge deadline (limited to challenges to the extent, validity, perfection, priority and enforceability of the Master Trustee's prepetition liens and security interests) should be sixty (60) days after entry of a final cash collateral order, unless such date is extended with the written consent of the Master Trustee, and the Committee should be granted standing under any final cash collateral order to commence, prosecute and/or settle any potential lien challenges, as well as affirmative claims against the Master Trustee.

## RESERVATION OF RIGHTS

55.     The Committee expressly reserves and preserves all rights, claims, arguments and objections with respect to the Cash Collateral Motion, to supplement, modify or amend this Objection, and to raise additional objections in writing or orally at the final hearing on the Cash Collateral Motion.

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that this Court (a) deny approval of the Proposed Final Order, (b) enter the Committee Proposed Final Order instead, and (c) grant the Committee such other and further relief as this Court deems just and proper.

Dated:  November 3, 2023                    Respectfully submitted,

                                            /s/ Andrew H. Sherman
                                            Andrew  H.  Sherman,  NJS  Bar  No.  042731991
                                            (admitted *pro hac vice*)
                                            Boris I. Mankovetskiy, NJS Bar No. 012862001
                                            (admitted *pro hac vice*)
                                            SILLS CUMMIS & GROSS, P.C.
                                            One Riverfront Plaza
                                            Newark, New Jersey 07102
                                            Telephone:  973-643-7000
                                            Facsimile:  973-643-6500
                                            E-mail:  asherman@sillscummis.com
                                                     bmankovetskiy@sillscummis.com

                                            -and-

                                            /s/ Robert C. Gainer
                                            Robert C. Gainer IS9998471
                                            CUTLER LAW FIRM, P.C.
                                            1307 50th Street
                                            West Des Moines, Iowa 50266
                                            Telephone:     515-223-6600
                                            Facsimile:     515-223-6787
                                            E-mail:  rgainer@cutlerfirm.com

                                            *Attorneys for The Official Committee of Unsecured*
                                            *Creditors of Mercy Hospital, Iowa City, Iowa, et al.*

## CERTIFICATE OF SERVICE

        I certify that a copy of the foregoing document was served electronically on parties who
receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing
dated November 3, 2023.
                                    /s/ Stephanie Newton

## **Exhibit A**

Committee Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Related to Docket Nos. 26, 38** |

**[PROPOSED] FINAL ORDER GRANTING MOTION OF DEBTORS FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION,
AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the Debtors for entry of that certain *Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 38] (the "Interim Order") and a final order (this "Final Order" and, together with the Interim Order, the "Cash Collateral Orders") (a) authorizing the Debtors' use of Cash Collateral and granting adequate protection and (b) granting related relief, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and due and appropriate notice of the Motion, the interim hearing held on August 8, 2023 (the "Interim Hearing") to consider entry of the Interim Order, and the final hearing (the "Final Hearing" and, together with the Interim Hearing, the "Cash Collateral Hearings") to consider entry of this Final Order having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the Debtors in the Motion, in the First Day Declaration, and at the Cash Collateral Hearings; and

the relief requested in the Motion being reasonable, appropriate and in the best interests of the

Debtors, their creditors, their estates and all other parties-in-interest in these Chapter 11 Cases;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[2]

A.      *Petition Date*.  On August 7, 2023 (the "<u>Petition Date</u>"), the Debtors filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code in the Court commencing these

Chapter 11 Cases.

B.      *Debtors-in-Possession*.   The Debtors continue to manage and operate their

businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  On August 15, 2023, the Office of the United States Trustee

(the "<u>U.S. Trustee</u>") filed a *Notice of Appointment of Creditors' Committee* [Docket No. 107]

appointing an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant

to section 1102 of the Bankruptcy Code (the "<u>Committee</u>").

D.      *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1334,

over the Chapter 11 Cases, the Motion, and the parties and property affected thereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue for

---

[2] Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

      E.      *Debtors' Stipulations and Acknowledgements Regarding the Prepetition Secured Parties*.  In requesting the use of Cash Collateral, and in exchange for and in recognition of the

consent (and/or deemed consent) of the Prepetition Secured Parties (as defined below) to the use

of their Cash Collateral (in each case, as set forth in this Final Order), subject to paragraph 12

hereof, the Debtors for themselves, their estates and all representatives of such estates, admit,

stipulate, acknowledge and agree as follows (collectively, the admissions, stipulations, and

acknowledgments and agreements set forth in this paragraph E, the "Stipulations"):

      (i)      Mercy Hospital is indebted to the Trustee for the benefit of the beneficial

holders with respect to those certain Health Facilities Revenue Bonds, Series 2011 (Mercy

Hospital Project) (the "2011 Bonds") and the Health Facilities Revenue Bonds, Series 2018

(Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the

"Bonds").

      (ii)      The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer")

pursuant to that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust

Indenture"), between the Issuer and Wells Fargo Bank, National Association, as

predecessor Trustee (the "2011 Bond Trustee") and the proceeds of the 2011 Bonds were

loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of November

1, 2011 (the "2011 Loan Agreement"), between the Issuer and Mercy Hospital.  Under the

2011 Trust Indenture, the Issuer assigned and pledged to the 2011 Bond Trustee

substantially all of its rights under the 2011 Loan Agreement, including its rights in and to

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the "Obligation" (as defined therein) securing the 2011 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2011 Loan Agreement.

(iii)       The 2018 Bonds were issued by the Issuer pursuant to that certain Trust

Indenture dated as of May 1, 2018 (the "2018 Trust Indenture" and, together with the 2011

Trust Indenture, the "Indentures"), between the Issuer and Wells Fargo Bank, National

Association, as predecessor Trustee (the "2018 Bond Trustee") and the proceeds of the

2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated

as of May 1, 2018 (the "2018 Loan Agreement"), between the Issuer and Mercy Hospital.

Under the 2018 Trust Indenture, the Issuer assigned and pledged to the 2018 Bond Trustee

substantially all of its rights under the 2018 Loan Agreement, including its rights in and to

the "Obligation" (as defined therein) securing the 2018 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2018 Loan Agreement, except for

certain Reserved Rights (as defined therein).

(iv)       Both series of Bonds are secured by Obligations issued by Mercy Hospital

under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and

amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998, a Second

Supplemental Master Trust Indenture dated as of September 1, 2002, a Third Supplemental

Master Trust Indenture dated as of July 1, 2005, a Fourth Supplemental Master Trust

Indenture dated as of October 1, 2005, a Fifth Supplemental Master Trust Indenture dated

as of April 1, 2008, a Sixth Supplemental Master Trust Indenture dated as of August 1,

2010, a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018, and an

Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 (collectively, as

supplemented, the "Master Trust Indenture"), each by and between Mercy Hospital and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Wells Fargo Bank, National Association, as predecessor Master Trustee (the "Master Trustee" and, together with the 2011 Bond Trustee and the 2018 Bond Trustee, the "Trustee").

(v)      Computershare Trust Company, N.A., is the successor 2011 Bond Trustee, 2018 Bond Trustee, and Master Trustee.

(vi)      As security for their obligations with respect to the Bonds, Mercy Hospital entered into the Master Trust Indenture and that certain Mortgage and Security Agreement and Fixture Financing Statement (the "Mortgage"), dated as of May 1, 2018, and recorded on May 11, 2018, in Johnson County, Iowa, in favor of the Master Trustee. The 2011 Trust Indenture, 2011 Loan Agreement, 2018 Trust Indenture, 2018 Loan Agreement, Master Trust Indenture, Mortgage, Obligations, and any other document or agreement delivered as security for, or in respect of, the Bonds or Mercy Hospital's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

(vii)      The Trustee holds a valid and enforceable perfected first priority lien and security interest in substantially all of Mercy Hospital's real and personal property as set forth in, and subject to the terms of, the Bond Documents (all such collateral, the "Prepetition Trustee Collateral" and the liens on such Prepetition Trustee Collateral, the "Prepetition Trustee Liens") including, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the

5

land as set forth (and to the extent set forth) in the Mortgage, and all of Mercy Hospital's

accounts and assignable general intangibles regardless of how generated, and all proceeds

therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial

Code, as set forth (and to the extent set forth) in the Granting Clauses, Division I, of the

Master Trust Indenture, which includes Mercy Hospital's membership interest in its limited

liability company affiliates Corridor Radiology, LLC, Eastern Iowa Rehabilitation

Hospital, LLC; Iowa City Ambulatory Surgery Center, L.L.C; and Mercy Iowa City ACO,

LLC; *provided, however*, that the Debtors assert that the Prepetition Trustee Liens do not

attach, extend or otherwise cover Mercy Hospital's deposit accounts and investment

accounts and hereby make no Stipulation to that effect; *provided further*, that the Trustee

asserts that the Prepetition Trustee Liens do attach, extend, or otherwise cover such deposit

accounts and investment accounts and reserves its rights and claims with respect thereto.

All parties in interest reserve their rights with respect to whether the Prepetition Trustee

Liens extend to Mercy Hospital's membership and/or ownership interests in Mercy

Hospital Foundation and Mercy Services Iowa City, Inc.

(viii)      [3]As of the Petition Date, the aggregate indebtedness under the Bonds (the

"Bond Claim") was not less than the sum of (A) $[58,489,897.63] in unpaid principal on

the Bonds was, consisting of $[24,270,000] in principal amount of Series 2011 Bonds and

$[34,219,897.63] in principal amount of Series 2018 Bonds, (B) accrued but unpaid interest

on the Bonds in the aggregate amount of $[1,036,758.06], consisting of $[570,036.67] in

accrued interest on the 2011 Bonds and $[466,721.39] in accrued interest on the 2018

Bonds, and (C) other amounts, including accrued and unpaid fees and expenses of the

---

[3] NTD: Amounts under review

6

Trustee and its professionals incurred through the Petition Date, that are reimbursable under the Bond Documents in accordance with their terms.

(ix)        The Bond Claim constitutes a legal, valid, binding, and enforceable obligation against Mercy Hospital and is secured on a first priority basis by the Prepetition Trustee Liens in the Prepetition Trustee Collateral, subject to Prepetition Permitted Liens (as defined below).

(x)        The Debtors do not possess and agree not to assert any claim (as such term is defined in section 101(5) of the Bankruptcy Code), counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Bond Documents, and the Debtors agree not to assert recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(xi)        On or about November 22, 2016, Mercy Services submitted a customer application to McKesson Corporation and its affiliates (collectively, "McKesson"; the Trustee and McKesson are collectively referred to as the "Prepetition Secured Parties") for the purchase of pharmaceutical and medical-surgical products (the "McKesson Security Agreement"; the McKesson Agreement and any related documents or filings are, together with the Bond Documents, collectively referred to as the "Prepetition Documents"). McKesson holds a valid and enforceable first priority lien and security interest in substantially all of Mercy Services' personal property as set forth in, and subject to the terms of, the McKesson Security Agreement and any related documents or filings (all such collateral, the "Prepetition McKesson Collateral" and the liens on such Prepetition McKesson Collateral, the "Prepetition McKesson Liens"; the Prepetition Trustee Collateral

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

and Prepetition McKesson Collateral are collectively referred to as the "Prepetition Collateral," and the Prepetition Trustee Liens and Prepetition McKesson Liens are collectively referred to as the "Prepetition Liens").

(xii)     As of the Petition Date, the aggregate indebtedness owed to McKesson (the "McKesson Claim") was approximately $400,000.00.

F.     *Consensual Use of Cash Collateral*.   The Debtors have requested the use of the Cash Collateral of the Prepetition Secured Parties in connection with the Chapter 11 Cases.  The Prepetition Secured Parties consent to the use of each of their respective Cash Collateral upon the express terms of this Final Order.

G.     *Need for Use of Cash Collateral* .  Without the use of Cash Collateral, the Debtors' continued operation as a going concern would be disrupted, and the Debtors and their patients, employees, estates and creditors would be immediately and irreparably harmed. The Debtors would not have the funds necessary to maintain the Mercy Hospital facilities, pay employee compensation, payroll taxes, overhead and other expenses, nor could they effectuate a sale transaction.  The Debtors require use of Cash Collateral as provided herein.

H.     *Good Faith; Exercise of Debtors' Business Judgment*.   The Debtors and the Prepetition Secured Parties have negotiated at arm's length and in good faith in the negotiation and preparation of this Final Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Final Order, inclusive of the adequate protection provided to the Prepetition Secured Parties, reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

8

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

1.      *Motion Granted.*  The Motion is granted on a final basis as set forth herein.

2.      *Use of Cash Collateral.*  The Debtors may use Cash Collateral subject to the terms

of this Final Order and solely in accordance with the budget, attached hereto as **Exhibit 1** (as such

budget may be updated and/or modified from time to time by the Debtors; provided, however, that

to the extent such updates or modifications increase total disbursements over a four (4) week period

by more than ten (10%) percent in the aggregate, they shall require the consent of the Master

Trustee (which consent shall not be unreasonably withheld, conditioned, or delayed) or, if the

Master Trustee does not consent, the approval of the Court, the "Budget"); *provided*, that the

Budget may not be modified to increase expenditures for estate professional fees without consent

of the Master Trustee.  In the event of a dispute concerning the Budget, all rights of the Debtors,

the Committee, and Trustee shall be and are reserved.

3.      *Adequate Protection of Interests of McKesson.*  As provided in this Final Order,

McKesson is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to

adequate protection of its interests in the Prepetition McKesson Collateral (including Cash

Collateral), solely to the extent of the postpetition diminution in value which is as a result of, or

arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of

such Prepetition McKesson Collateral (including Cash Collateral), or the grant of a lien under

Bankruptcy Code section 364, or subordination to the Carve Out and applicable case law

interpreting the same (any such diminution, "Diminution in Value").  McKesson shall receive the

following:

(a)      *McKesson Adequate Protection Liens.*  McKesson is hereby granted, upon

entry of this Final Order, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding,

enforceable, and perfected additional and replacement security interests in and liens upon all of

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the property of Mercy Services (the "McKesson Adequate Protection Liens") of any kind or nature

whatsoever, including, without limitation, property which, but for the commencement of the

Chapter 11 Cases, would constitute Prepetition McKesson Collateral subject to validly perfected,

non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and

profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the

"McKesson Adequate Protection Collateral"); *provided, however*, that such McKesson Adequate

Protection Collateral shall not include any causes of action, including, without limitation, any

claims and causes of action under Bankruptcy Code section 502(d), 506(c), 510, 544, 545, 547,

548, 549, 550, 552(b) or 553, or any other actions under the Bankruptcy Code (collectively,

"Causes of Action") or the proceeds thereof; *provided, further, that* the McKesson Adequate

Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out (as defined

below), (ii) any liens that exist on, and are legal, valid, binding, enforceable, perfected, and non-

avoidable as of, the Petition Date and are permitted to be senior to the Prepetition Liens (as

applicable) pursuant to applicable Prepetition Documents or applicable law, and (iii) any liens in

existence immediately prior to the Petition Date that are legal, valid, enforceable, binding and non-

avoidable, and are perfected after the Petition Date as permitted by Bankruptcy Code section

546(b), and which are permitted to be senior to the Prepetition Liens (as applicable) pursuant to

applicable Prepetition Documents or applicable law, and in each case not including the Prepetition

Liens or the Adequate Protection Liens (as defined below) (such liens described in clauses (ii) and

(iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the

"Prepetition Permitted Liens"); and

(b)  *Payment of McKesson's Fees and Expenses*. As further adequate protection,

the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

documented out-of-pocket professional fees, expenses and disbursements of one primary legal counsel and one local Iowa legal counsel, in each case, incurred by McKesson (the "McKesson Fees and Expenses") in the amounts and at the times set forth in the Budget.

4.      *Adequate Protection of Interests of the Trustee.*   As provided in the Interim Order and reaffirmed by this Final Order, the Trustee is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition Collateral (including Cash Collateral), solely to the extent of the Diminution in Value of such Prepetition Collateral (including Cash Collateral).   The adequate protection granted to the Trustee pursuant to the Interim Order, through the date of entry of this Final Order, is hereby reaffirmed.   The Trustee, for the benefit of itself and the holders of the Bonds, upon entry of this Final Order, shall receive the following:

(a)      *Trustee Adequate Protection Liens.*   The Trustee, for the benefit of the holders of the Bonds, is granted, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected replacement security interests in and liens upon all of Mercy Hospital's property (the "Trustee Adequate Protection Liens" and, together with the McKesson Adequate Protection Liens, the "Adequate Protection Liens") which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral subject to validly perfected, non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the "Trustee Adequate Protection Collateral" and, together with the McKesson Adequate Protection Collateral, the "Adequate Protection Collateral"); *provided, however*, that such Trustee Adequate Protection Collateral shall not include any Causes of Action, or proceeds thereof (the "Excluded Adequate Protection Collateral"); *provided, further, that* the Trustee Adequate Protection Liens shall in each

11

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

case be subject and subordinate only to (i) the Carve-Out, (ii) any Prepetition Permitted Liens, and

(iii) solely with respect to the McKesson Adequate Protection Collateral, the McKesson Adequate

Protection Liens;

(b)     *Superpriority Claims.*   As additional adequate protection, the Master

Trustee, for the benefit of itself and the holders of the Bonds, is granted, subject only to payment

of the Carve-Out, an allowed superpriority administrative expense claim (each a "Superpriority

Claim" and, collectively, the "Superpriority Claims") as provided for in Bankruptcy Code sections

503(b) and 507(b) against all assets of Mercy Hospital's estate, *provided*, *however*, that such

Superpriority Claims shall not include Excluded Adequate Protection Collateral.   Subject only to

the Carve-Out, and except as provided below, the Superpriority Claims shall have priority over

any and all administrative expenses, adequate protection claims and other claims against Mercy

Hospital, now existing or hereafter arising, of any kind whatsoever, including without limitation,

all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b),

and over any and all administrative expenses or other claims arising under the Bankruptcy Code.

Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases of the

Debtors shall be senior to, or *pari passu* with, any of the Superpriority Claims; and

(c)     *Payment of Master Trustee's Fees and Expenses.* As further adequate

protection, the Debtors shall pay in full in cash and in immediately available funds, the actual,

reasonable and documented out-of-pocket professional fees, expenses and disbursements

(including, but not limited to, the expenses and disbursements of counsel and other third-party

consultants, including financial advisors) incurred by the Master Trustee (the "Master Trustee Fees

and Expenses" and, together with the McKesson Fees and Expenses, the "Fees and Expenses")

solely in the amounts and at the times set forth in the Budget.

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(d)      *Distribution of Sale Proceed*s.  As further adequate protection, and solely in the event that the Trustee does not file or otherwise assert an objection to a sale of substantially all of the Debtors' assets to the University of Iowa, the Debtors agree to not object or otherwise assert an objection to a motion filed by the Master Trustee that seeks a distribution to the Trustee at closing of such sale; *provided* that such distribution of sale proceeds is not in excess of $26,800,000, minus the Carve-Out.

5.      *Review of Fees and Expenses*.  None of the Fees and Expenses shall be subject to separate approval by this Court or require compliance with the United States Trustee Guidelines, and no recipient of any such payments made with respect to the Fees and Expenses shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments; *provided, that* copies of the invoices for such Fees and Expenses (the "Invoiced Fees") shall be served by email on the Debtors, the United States Trustee, and counsel to the Committee (collectively, the "Fee Notice Parties"), who shall have ten (10) business days (the "Review Period") to review and assert any objections thereto.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, together with time entries which may be modified to redact information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. The Fee Notice Parties reserve their respective rights to request additional information with respect to the Invoiced Fees

13

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

and to challenge an assertion of privilege with respect to such redactions.  The Fee Notice Parties may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Fee Notice Party notifies the submitting party in writing the Disputed Invoiced Fees and the basis for such objection (the applicable parties shall work in good faith to promptly resolve any such objection or, if unable to do so, shall seek an order of the Court).  For the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

6.      *Undersecurity/506(b).*  In the event that it is determined by order of the Court that McKesson or the Trustee is either (a) not oversecured and/or (b) not entitled pursuant to Bankruptcy Code section 506(b) to any postpetition adequate protection payment, fees and expenses relating to the McKesson Claim or the Bond Claim, respectively, then any Fees and Expenses remitted to the Trustee shall reduce the Bond Claim and any Fees and Expenses remitted to McKesson shall reduce the McKesson Claim.

7.      *Perfection of Adequate Protection Liens.*  The approval of the Cash Collateral Orders by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the Adequate Protection Liens granted to the Prepetition Secured Parties whether or not the Prepetition Secured Parties elect to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect such liens under applicable law; *provided, however*, that the Prepetition Secured Parties may, in their sole discretion, but shall not be required to, file a certified copy of one or both of the Cash Collateral Orders in any filing or recording office in any jurisdiction in which the Debtors have

14

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

real or personal property; and such filing or recording shall be accepted and shall constitute further evidence of perfection of the liens and security interests of the Prepetition Secured Parties.

8.     *Financial Reporting.*  As additional adequate protection, the Debtors shall deliver to the Master Trustee and its counsel, and the Committee and its counsel, an updated rolling Budget no later than the Tuesday of each calendar week commencing on the first Tuesday following the first full week after the Petition Date.  No later than the Wednesday of each calendar week commencing on the first Wednesday following the first full week, the Debtors shall deliver to the Master Trustee and the Committee a variance report comparing, on a line-item basis, actual results to the Budget for the previous individual week on a weekly and cumulative basis.  The Debtors shall also use reasonable best efforts to provide to professional advisors for the Master Trustee and the Committee (i) within 45 days after the end of each month, commencing with the month ending July 31, 2023, a monthly balance sheet of Mercy Hospital as of the last day of each fiscal month and the related income statement for the one-month period then ended and (ii) within 15 days after the end of each month, commencing with the month ending August 31, 2023, "AR Days", "Days Not Final Billed", and accounts receivable balances by aging.

9.     *Right to Seek Additional Adequate Protection.* This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time upon notice and a hearing or the rights of the Debtors or any other party to contest such request.

10.     *Events of Default; Remedies Upon an Event of Default.*

(a)     Each of the following shall be considered an Event of Default ("Event of Default") under this Final Order:

(i)     this Final Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Trustee;

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(ii)     the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order;

(iii)    the dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases to chapter 7 cases, or suspension of the Chapter 11 Cases under section 305 of the Bankruptcy Code;

(iv)    the appointment of a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code);

(v)     the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtors, by any entity other than the Trustee on any Prepetition Collateral or Adequate Protection Collateral;

(vi)    the entry of an order granting any superpriority claim which is senior to or *pari passu* with the Trustee other than as provided for in this Final Order;

(vii)   the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtors other than as set forth in the Budget or as provided for in this Final Order;

(viii)  the cessation of Adequate Protection Liens or the Superpriority Claims granted pursuant to this Final Order to be valid, perfected and enforceable in all respects;

(ix)    the filing of any Challenge (as defined below) to any Prepetition Liens or Prepetition Collateral by the Debtors;

(x)     the payment of estate professional fees by the Debtors out of Prepetition Collateral or Trustee Adequate Protection Collateral other than to the extent set forth in the Budget;

(xi)    the filing of, or otherwise asserting an, objection by the Debtors to a motion by the Master Trustee seeking a distribution to the Master Trustee at closing of no more than $26,800,000 in sale proceeds, minus the Carve-Out; or

(xii)   failure to materially comply with the following milestone covenants:

   a.   By December 5, 2023, the Debtors shall provide drafts of the Disclosure Statement and Plan to the Trustee;

   b.   By December 14, 2023, the Debtors shall file the Disclosure Statement and Plan;

   c.   By January 24, 2024, the Debtors shall obtain entry of an order approving the Disclosure Statement and related solicitation procedures;

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

d. By not later than March 8, 2024, the Debtors shall obtain an order confirming the Plan; and

e. Within 30 days of the Plan being confirmed, the Plan effective date shall occur.

(b)     Notwithstanding anything herein, the Debtors shall no longer, pursuant to the Interim Order, this Final Order or otherwise, be authorized to use Cash Collateral for any purpose hereunder upon the occurrence of an Event of Default (such date, the "Termination Date"); provided, however, that the Trustee shall provide five (5) business days (the "Default Notice Period") written notice via email to counsel to the Debtors, the United States Trustee, and counsel to the Committee of any Event of Default (the "Default Notice") and the Debtors may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtors or the Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing (collectively, the "Debtor Default Period Rights").

(c)     Notwithstanding the occurrence of an Event of Default, the Trustee may elect in writing not to terminate the Debtors' authority to borrow funds and/or use Cash Collateral hereunder, as applicable, to waive defaults hereunder, or to forbear from the exercise of rights and remedies hereunder.

(d)     Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Trustee shall survive the Termination Date.

17

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

11.     *Exercise of Rights.*  The Trustee shall be entitled to apply the payments or proceeds

of the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral as it deems

appropriate, subject to the Carve-Out and the Prepetition Permitted Liens, if any.

12.     *Challenges to Debtors' Stipulations/Investigation Period.*   The Debtors'

Stipulations shall be binding upon the Debtors in all circumstances and for all purposes

immediately upon entry of this Final Order.  The Debtors' Stipulations shall be binding upon the

Committee, all other creditors, and all parties-in-interest (collectively, the "Interested Parties") and

each of their respective successors and assigns, in all circumstances and for all purposes, and the

Debtors and all Interested Parties shall be prohibited and barred from otherwise asserting any

claims or causes of action against the Trustee and/or holders of the Bonds on behalf of the Debtors'

estates, unless (a)  any Interested Party timely files an adversary proceeding or contested matter (a

"Challenge") by no later than the date that is sixty (60) days after entry of this Final Order (the

"Challenge Deadline") challenging the Stipulations and (b) there is entered a final non-appealable

order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely

Challenge.  If no Challenge is commenced by an Interested Party prior to the Challenge Deadline,

then the Stipulations shall be binding upon such Interested Party in all circumstances and for all

purposes and not be subject to any other or further Challenge, contest, attack, objection, challenge,

defense, claim, or counterclaim, whether under the Bankruptcy Code, applicable non-bankruptcy

law or otherwise, by such Interested Party.  Further, if an Interested Party timely files a Challenge

to a Stipulation or Stipulations, then except for the Stipulation or Stipulations  expressly subject to

such Challenge, Challenges to other Stipulations are hereby deemed forever waived and barred.

This Final Order confers standing on the Committee, but not on any other Interested Party to

commence, prosecute and/or settle a Challenge. For the avoidance of doubt, the Challenge

18

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Deadline shall not apply to any Causes of Action that the Committee may assert against the Master Trustee. This Final Order confers standing on the Committee, but not on any other Interested Party, to commence, prosecute and/or settle any Causes of Action against the Master Trustee.

13.     *Section 506(c); Section 552(b).* Nothing herein shall be deemed a waiver or limitation of any of the Debtors or their estates rights under sections 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law, all of which rights are expressly reserved and preserved.

14.     *Carve-Out.* In partial consideration of the Debtors' acknowledgement of the Bond Claim, the Trustee consents to the payment of certain expenses and professional fees incurred during the pendency of these Chapter 11 Cases that shall be superior in all instances to the liens and claims of the Trustee and all other parties (the "Carve Out").  As used in the Cash Collateral Orders, "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all budgeted, accrued and unpaid fees, costs, and expenses ("Professional Fees") incurred or accrued by persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363 or 1103 (collectively, the "Professionals") prior to the date that is five (5) business days following the Termination Date (the "Carve-Out Trigger Date"); and (iv) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all Professional fees incurred or accrued by Professionals after the Carve-Out Trigger

19

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Date in an aggregate amount not to exceed $250,000. Notwithstanding anything to the contrary in this Final Order or Prepeititon Documents, or otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate Protection Liens and Superpriority Claims), the Prepetition Liens, the Prepetition Permitted Liens, and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out. Nothing herein shall constitute a waiver of any right of the Prepetition Secured Parties to object to fees and expenses of any Professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid (or parties' rights to respond thereto). Any payment or reimbursement made in respect of the Carve Out incurred by any Professional on or after the Carve-Out Trigger Date shall permanently reduce the Carve Out on a dollar for dollar basis.

15.     *Professional Fee Reserve.* For purposes of the Cash Collateral Orders, the Debtors are authorized to establish a reserve (the "Professional Fee Reserve") of funds sufficient to satisfy the budgeted Professional Fees that have or will come due during the pendency of the Case, including those that have not yet been approved by the Court. At the end of each week following the Petition Date, the Debtors may (and are hereby authorized to) disburse and allocate funds from the Mercy Hospital investment account to the Professional Fee Reserve in an amount equal to 100% of the Carve-Out amount allocated for Professional Fees for that week under the Budget, pending approval of the Court to disburse such funds to the respective beneficiaries. The Debtors are not permitted to use funds contained in the Professional Fee Reserve for any purpose other than for Professional Fees without further order of this Court. To the extent that the funds in the Professional Fee Reserve exceed the Professional Fees allowed by the Court for a beneficiary of the Carve-Out, such funds shall revert to the Debtors.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

16.      *Limitations on Use of Cash Collateral.*   Notwithstanding anything else herein, subject to the proviso at the last sentence of this paragraph 16, no amounts under the Carve-Out or the proceeds of Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral shall be used after the date of entry of the Final Order for the purpose of: (i) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of: (a) the Bond Claim or the Prepetition Liens or (b) any other rights or interests of the Trustee granted under the Cash Collateral Order; (ii) asserting any claims or causes of action, including, without limitation, any Causes of Action against the Trustee or the holders of the Bonds; (iii) preventing, hindering, or delaying the enforcement or realization by the Trustee upon any of the Prepetition Collateral or Adequate Protection Collateral (other than to contest whether an asserted Event of Default or Termination Date has occurred and is continuing); (iv) incurring secured indebtedness that would be senior to, or *pari passu* with, the obligations owed to the Trustee under the Cash Collateral Orders except as permitted by the Cash Collateral Orders; or (v) modifying any adequate protection granted to the Trustee. Notwithstanding the foregoing, not more than $65,000 of the Cash Collateral may be made available to reimburse the Committee upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Bond Claim and/or the Prepetition Trustee Liens.

17.      *Right to Credit Bid.*   The Debtors admit, acknowledge, and agree that the Trustee has the right to credit bid the Bond Claim in connection with any sale or other disposition of the Prepetition Collateral under the Bankruptcy Code.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

18.     *Deemed Request for Stay Relief.*  This Final Order shall be deemed to constitute a request by the Trustee for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection as of the Petition Date.

19.     *No Control.*  None of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding any consent to this Final Order and extending financial accommodations of any type, kind or nature under this Final Order.

20.     *No Third Party Beneficiaries.*  The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors). No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

21.     *No Modification.*  Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Prepetition Documents.

22.     *No Waiver.*  No consent by the Trustee to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Trustee, as applicable, in the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to the provisions of sections 506(c) and/or 552(b) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence.

10118614 v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

23.     *Final Order Controls.*  In the event of a conflict between the terms of the Interim Order and this Final Order, the terms of this Final Order shall control.

24.     *Effectiveness of the Final Order.*  Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

25.     *Implementation of the Final Order.*  The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

26.     *Exclusive Jurisdiction.*  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated and entered this _____ day of _____, 2023.


_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:     (319) 286-7002
Facsimile:     (319) 286-7050
Email:          rleaf@nyemaster.com

- and –

**MCDERMOTT WILL & EMERY LLP**                 ekeil@mwe.com
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)          - and -
Emily Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000                Jack G. Haake (admitted *pro hac vice*)
Chicago, Illinois 60606                         2501 North Harwood Street, Suite 1900
Telephone:     (312) 372-2000                   Dallas, TX 75201
Facsimile:     (312) 984-7700                   Telephone:     (214) 295-8000
Email:          fperlman@mwe.com                Facsimile:     (972) 232-3098
                dsimon@mwe.com                  Email:          jhaake@mwe.com

23

10118614 v2

**EXHIBIT 1**

**Cash Collateral Budget**

**Exhibit B**

Redline

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related to Docket Nos. 26, 38** |

**[PROPOSED] FINAL ORDER GRANTING MOTION OF DEBTORS FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION,
<u>AND (II) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[1] of the Debtors for entry of that certain *Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 38] (the "<u>Interim Order</u>") and a final order (this "<u>Final Order</u>" and, together with the Interim Order, the "<u>Cash Collateral Orders</u>") (a) authorizing the Debtors' use of Cash Collateral and granting adequate protection and (b) granting related relief, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and due and appropriate notice of the Motion, the interim hearing held on August 8, 2023 (the "<u>Interim Hearing</u>") to consider entry of the Interim Order, and the final hearing (the "<u>Final Hearing</u>" and, together with the Interim Hearing, the "<u>Cash Collateral Hearings</u>") to consider entry of this Final Order having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and upon the record made by

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Debtors in the Motion, in the First Day Declaration, and at the Cash Collateral Hearings; and

the relief requested in the Motion being reasonable, appropriate and in the best interests of the

Debtors, their creditors, their estates and all other parties-in-interest in these Chapter 11 Cases;

and the Court having determined that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[2]

A.      *Petition Date*.  On August 7, 2023 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code in the Court commencing these

Chapter 11 Cases.

B.      *Debtors-in-Possession*.   The Debtors continue to manage and operate their

businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  On August 15, 2023, the Office of the United States Trustee

(the "U.S. Trustee") filed a *Notice of Appointment of Creditors' Committee* [Docket No. 107]

appointing an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant

to section 1102 of the Bankruptcy Code (the "Committee").

D.      *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1334,

over the Chapter 11 Cases, the Motion, and the parties and property affected thereby.

Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue for

---

[2] Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

E.     *Debtors' Stipulations and Acknowledgements Regarding the Prepetition Secured*

*Parties*.  In requesting the use of Cash Collateral, and in exchange for and in recognition of the

consent (and/or deemed consent) of the Prepetition Secured Parties (as defined below) to the use

of their Cash Collateral (in each case, as set forth in this Final Order), subject to paragraph 12

hereof, the Debtors for themselves, their estates and all representatives of such estates, admit,

stipulate, acknowledge and agree as follows (collectively, the admissions, stipulations, and

acknowledgments and agreements set forth in this paragraph E, the "Stipulations"):

(i)     Mercy Hospital is indebted to the Trustee for the benefit of the beneficial

holders with respect to those certain Health Facilities Revenue Bonds, Series 2011 (Mercy

Hospital Project) (the "2011 Bonds") and the Health Facilities Revenue Bonds, Series 2018

(Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the

"Bonds").

(ii)     The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer")

pursuant to that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust

Indenture"), between the Issuer and Wells Fargo Bank, National Association, as

predecessor Trustee (the "2011 Bond Trustee") and the proceeds of the 2011 Bonds were

loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of November

1, 2011 (the "2011 Loan Agreement"), between the Issuer and Mercy Hospital.  Under the

2011 Trust Indenture, the Issuer assigned and pledged to the 2011 Bond Trustee

substantially all of its rights under the 2011 Loan Agreement, including its rights in and to

3

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the "Obligation" (as defined therein) securing the 2011 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2011 Loan Agreement.

(iii)    The 2018 Bonds were issued by the Issuer pursuant to that certain Trust

Indenture dated as of May 1, 2018 (the "2018 Trust Indenture" and, together with the 2011

Trust Indenture, the "Indentures"), between the Issuer and Wells Fargo Bank, National

Association, as predecessor Trustee (the "2018 Bond Trustee") and the proceeds of the

2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated

as of May 1, 2018 (the "2018 Loan Agreement"), between the Issuer and Mercy Hospital.

Under the 2018 Trust Indenture, the Issuer assigned and pledged to the 2018 Bond Trustee

substantially all of its rights under the 2018 Loan Agreement, including its rights in and to

the "Obligation" (as defined therein) securing the 2018 Bonds, the amounts payable

thereon and the amounts payable to the Issuer under the 2018 Loan Agreement, except for

certain Reserved Rights (as defined therein).

(iv)    Both series of Bonds are secured by Obligations issued by Mercy Hospital

under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and

amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998, a Second

Supplemental Master Trust Indenture dated as of September 1, 2002, a Third Supplemental

Master Trust Indenture dated as of July 1, 2005, a Fourth Supplemental Master Trust

Indenture dated as of October 1, 2005, a Fifth Supplemental Master Trust Indenture dated

as of April 1, 2008, a Sixth Supplemental Master Trust Indenture dated as of August 1,

2010, a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018, and an

Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 (collectively, as

supplemented, the "Master Trust Indenture"), each by and between Mercy Hospital and

4

Wells Fargo Bank, National Association, as predecessor Master Trustee (the "Master Trustee" and, together with the 2011 Bond Trustee and the 2018 Bond Trustee, the "Trustee").

(v)        Computershare Trust Company, N.A., is the successor 2011 Bond Trustee, 2018 Bond Trustee, and Master Trustee.

(vi)        As security for their obligations with respect to the Bonds, Mercy Hospital entered into the Master Trust Indenture and that certain Mortgage and Security Agreement and Fixture Financing Statement (the "Mortgage"), dated as of May 1, 2018, and recorded on May 11, 2018, in Johnson County, Iowa, in favor of the Master Trustee.  The 2011 Trust Indenture, 2011 Loan Agreement, 2018 Trust Indenture, 2018 Loan Agreement, Master Trust Indenture, Mortgage, Obligations, and any other document or agreement delivered as security for, or in respect of, the Bonds or Mercy Hospital's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

(vii)        The Trustee holds a valid and enforceable perfected first priority lien and security interest in substantially all of Mercy Hospital's real and personal property as set forth in, and subject to the terms of, the Bond Documents (all such collateral, the "Prepetition Trustee Collateral" and the liens on such Prepetition Trustee Collateral, the "Prepetition Trustee Liens") including, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the

5

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

land as set forth (and to the extent set forth) in the Mortgage, and all of Mercy Hospital's

accounts and assignable general intangibles regardless of how generated, and all proceeds

therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial

Code, as set forth (and to the extent set forth) in the Granting Clauses, Division I, of the

Master Trust Indenture, which includes Mercy Hospital's membership interest in its limited

liability company affiliates Corridor Radiology, LLC, Eastern Iowa Rehabilitation

Hospital, LLC; Iowa City Ambulatory Surgery Center, L.L.C; and Mercy Iowa City ACO,

LLC; *provided, however*, that the Debtors assert that the Prepetition Trustee Liens do not

attach, extend or otherwise cover Mercy Hospital's deposit accounts and investment

accounts and hereby make no Stipulation to that effect; *provided further*, that the Trustee

asserts that the Prepetition Trustee Liens do attach, extend, or otherwise cover such deposit

accounts and investment accounts and reserves its rights and claims with respect thereto.

All parties in interest reserve their rights with respect to whether the Prepetition Trustee

Liens extend to Mercy Hospital's membership and/or ownership interests in Mercy

Hospital Foundation and Mercy Services Iowa City, Inc.

(viii)         [3]As of the Petition Date, the aggregate indebtedness under the Bonds (the

"Bond Claim") was not less than the sum of (A) $[58,489,897.63] in unpaid principal on

the Bonds was, consisting of $[24,270,000] in principal amount of Series 2011 Bonds and

$[34,219,897.63] in principal amount of Series 2018 Bonds, (B) accrued but unpaid interest

on the Bonds in the aggregate amount of $[1,036,758.06], consisting of $[570,036.67] in

accrued interest on the 2011 Bonds and $[466,721.39] in accrued interest on the 2018

Bonds, and (C) other amounts, including accrued and unpaid fees and expenses of the

---

[3] NTD: Amounts under review

6

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Trustee and its professionals incurred through the Petition Date, that are reimbursable under the Bond Documents in accordance with their terms.

(ix)     The Bond Claim constitutes a legal, valid, binding, and enforceable obligation against Mercy Hospital and is secured on a first priority basis by the Prepetition Trustee Liens in the Prepetition Trustee Collateral, subject to Prepetition Permitted Liens (as defined below).

(x)     The Debtors do not possess and agree not to assert any claim (as such term is defined in section 101(5) of the Bankruptcy Code), counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity or enforceability of the Bond Documents, and the Debtors agree not to assert recharacterization, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(xi)     On or about November 22, 2016, Mercy Services submitted a customer application to McKesson Corporation and its affiliates (collectively, "McKesson"; the Trustee and McKesson are collectively referred to as the "Prepetition Secured Parties") for the purchase of pharmaceutical and medical-surgical products (the "McKesson Security Agreement"; the McKesson Agreement and any related documents or filings are, together with the Bond Documents, collectively referred to as the "Prepetition Documents"). McKesson holds a valid and enforceable first priority lien and security interest in substantially all of Mercy Services' personal property as set forth in, and subject to the terms of, the McKesson Security Agreement and any related documents or filings (all such collateral, the "Prepetition McKesson Collateral" and the liens on such Prepetition McKesson Collateral, the "Prepetition McKesson Liens"; the Prepetition Trustee Collateral

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

and Prepetition McKesson Collateral are collectively referred to as the "<u>Prepetition Collateral</u>," and the Prepetition Trustee Liens and Prepetition McKesson Liens are collectively referred to as the "<u>Prepetition Liens</u>").

(xii)     As of the Petition Date, the aggregate indebtedness owed to McKesson (the "<u>McKesson Claim</u>") was approximately $400,000.00.

F.     *Consensual Use of Cash Collateral*.  The Debtors have requested the use of the Cash Collateral of the Prepetition Secured Parties in connection with the Chapter 11 Cases.  The Prepetition Secured Parties consent to the use of each of their respective Cash Collateral upon the express terms of this Final Order.

G.     *Need for Use of Cash Collateral*.  Without the use of Cash Collateral, the Debtors' continued operation as a going concern would be disrupted, and the Debtors and their patients, employees, estates and creditors would be immediately and irreparably harmed. The Debtors would not have the funds necessary to maintain the Mercy Hospital facilities, pay employee compensation, payroll taxes, overhead and other expenses, nor could they effectuate a sale transaction.  The Debtors require use of Cash Collateral as provided herein.

H.     *Good Faith; Exercise of Debtors' Business Judgment*.  The Debtors and the Prepetition Secured Parties have negotiated at arm's length and in good faith in the negotiation and preparation of this Final Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Final Order, inclusive of the adequate protection provided to the Prepetition Secured Parties, reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

1.      *Motion Granted.*  The Motion is granted on a final basis as set forth herein.

2.      *Use of Cash Collateral.*  The Debtors may use Cash Collateral subject to the terms of this Final Order and solely in accordance with the budget, attached hereto as **Exhibit 1** (as such budget may be updated and/or modified from time to time by the Debtors; provided, however, that to the extent such updates or modifications increase total disbursements over a four (4) week period by more than ten (10%) percent in the aggregate, they shall require the consent of the Master Trustee (which consent shall not be unreasonably withheld, conditioned, or delayed) or, if the Master Trustee does not consent, the approval of the Court, the "Budget"); *provided*, that the Budget may not be modified to increase expenditures for estate professional fees without consent of the Master Trustee.  In the event of a dispute concerning the Budget, all rights of the Debtors, the Committee, and Trustee shall be and are reserved.

3.      *Adequate Protection of Interests of McKesson.*  As provided in this Final Order, McKesson is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition McKesson Collateral (including Cash Collateral), solely to the extent of the postpetition diminution in value which is as a result of, or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of such Prepetition McKesson Collateral (including Cash Collateral), or the grant of a lien under Bankruptcy Code section 364, or subordination to the Carve Out and applicable case law interpreting the same (any such diminution, "Diminution in Value").  McKesson shall receive the following:

(a)      *McKesson Adequate Protection Liens.*  McKesson is hereby granted, upon entry of this Final Order, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected additional and replacement security interests in and liens upon all of

10118614 v1v2

the property of Mercy Services (the "<u>McKesson Adequate Protection Liens</u>") of any kind or nature

whatsoever, including, without limitation, property which, but for the commencement of the

Chapter 11 Cases, would constitute Prepetition McKesson Collateral subject to validly perfected,

non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and

profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the

"<u>McKesson Adequate Protection Collateral</u>"); *provided*, *however*, that such McKesson Adequate

Protection Collateral shall not include any causes of action, including, without limitation, any

claims and causes of action under Bankruptcy Code section 502(d), <u>506(c), 510,</u> 544, 545, 547,

548, 549, 550<u>, 552(b)</u> or 553, or any other ~~avoidance~~ actions under the Bankruptcy Code

(collectively, "~~Avoidance Actions~~<u>Causes of Action</u>") or the proceeds thereof; *provided, further,*

*that* the McKesson Adequate Protection Liens shall in each case be subject and subordinate only

to (i) the Carve-Out (as defined below), (ii) any liens that exist on, and are legal, valid, binding,

enforceable, perfected, and non-avoidable as of, the Petition Date and are permitted to be senior

to the Prepetition Liens (as applicable) pursuant to applicable Prepetition Documents or applicable

law, and (iii) any liens in existence immediately prior to the Petition Date that are legal, valid,

enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by

Bankruptcy Code section 546(b), and which are permitted to be senior to the Prepetition Liens (as

applicable) pursuant to applicable Prepetition Documents or applicable law, and in each case not

including the Prepetition Liens or the Adequate Protection Liens (as defined below) (such liens

described in clauses (ii) and (iii), collectively, and not including any Prepetition Liens or Adequate

Protection Liens, the "<u>Prepetition Permitted Liens</u>"); and

       (b)    *Payment of McKesson's Fees and Expenses*. As further adequate protection,

the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and

documented out-of-pocket professional fees, expenses and disbursements of one primary legal counsel and one local Iowa legal counsel, in each case, incurred by McKesson (the "McKesson Fees and Expenses") in the amounts and at the times set forth in the Budget.

4.     *Adequate Protection of Interests of the Trustee.*  As provided in the Interim Order and reaffirmed by this Final Order, the Trustee is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition Collateral (including Cash Collateral), solely to the extent of the Diminution in Value of such Prepetition Collateral (including Cash Collateral).  The adequate protection granted to the Trustee pursuant to the Interim Order, through the date of entry of this Final Order, is hereby reaffirmed.  The Trustee, for the benefit of itself and the holders of the Bonds, upon entry of this Final Order, shall receive the following:

(a)     *Trustee Adequate Protection Liens.*  The Trustee, for the benefit of the holders of the Bonds, ~~was granted upon entry of the Interim Order, which grant is hereby reaffirmed upon entry of this Final Order~~is granted, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected ~~additional and~~ replacement security interests in and liens upon all of ~~the Debtors'~~ Mercy Hospital's property (the "Trustee Adequate Protection Liens" and, together with the McKesson Adequate Protection Liens, the "Adequate Protection Liens") ~~of any kind or nature whatsoever, including, without limitation, property~~ which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition Collateral subject to validly perfected, non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the "Trustee Adequate Protection Collateral" and, together with the McKesson Adequate Protection Collateral, the "Adequate Protection Collateral"); *provided*, *however*, that

11

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

such Trustee Adequate Protection Collateral shall not include any ~~Avoidance Actions~~Causes of Action, or proceeds thereof (the "Excluded Adequate Protection Collateral"); *provided, further, that* the Trustee Adequate Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out, (ii) any Prepetition Permitted Liens, and (iii) solely with respect to the McKesson Adequate Protection Collateral, the McKesson Adequate Protection Liens;

(b) *Superpriority Claims*. As additional adequate protection, the Master Trustee, for the benefit of itself and the holders of the Bonds, ~~was granted upon entry of the Interim Order, which grant is hereby reaffirmed upon entry of this Final Order~~is granted, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (each a "Superpriority Claim" and, collectively, the "Superpriority Claims") as provided for in Bankruptcy Code sections 503(b) and 507(b) against all assets of ~~the Debtors' estates~~Mercy Hospital's estate, *provided*, *however*, that such Superpriority Claims shall not include Excluded Adequate Protection Collateral. Subject only to the Carve-Out, and except as provided below, the Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against ~~the Debtors~~Mercy Hospital, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under the Bankruptcy Code. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases of the Debtors shall be senior to, or *pari passu* with, any of the Superpriority Claims; and

(c) *Payment of Master Trustee's Fees and Expenses*. As further adequate protection, the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and documented out-of-pocket professional fees, expenses and disbursements

12

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Master Trustee (the "Master Trustee Fees and Expenses" and, together with the McKesson Fees and Expenses, the "Fees and Expenses") solely in the amounts and at the times set forth in the Budget.

(d)     *Distribution of Sale Proceed*s.  As further adequate protection, and solely in the event that the Trustee does not file or otherwise assert an objection to a sale of substantially all of the Debtors' assets to the University of Iowa, the Debtors agree to not object or otherwise assert an objection to a motion filed by the Master Trustee that seeks a distribution to the Trustee at closing of such sale; *provided* that such distribution of sale proceeds is not in excess of $26,800,000, minus the Carve-Out.

5.     *Review of Fees and Expenses*.  None of the Fees and Expenses shall be subject to separate approval by this Court or require compliance with the United States Trustee Guidelines, and no recipient of any such payments made with respect to the Fees and Expenses shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments; *provided, that* copies of the invoices for such Fees and Expenses (the "Invoiced Fees") shall be served by email on the Debtors, the United States Trustee, and counsel to the Committee (collectively, the "Fee Notice Parties"), who shall have ten (10) business days (the "Review Period") to review and assert any objections thereto.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, together with time entries which may be modified to redact information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. The Fee Notice Parties reserve their respective rights to request additional information with respect to the Invoiced Fees and to challenge an assertion of privilege with respect to such redactions.  The Fee Notice Parties may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Fee Notice Party notifies the submitting party in writing the Disputed Invoiced Fees and the basis for such objection (the applicable parties shall work in good faith to promptly resolve any such objection or, if unable to do so, shall seek an order of the Court).  For the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

6.    *Undersecurity/506(b)*.  In the event that it is determined by order of the Court that McKesson or the Trustee is either (a) not oversecured and/or (b) not entitled pursuant to Bankruptcy Code section 506(b) to any postpetition adequate protection payment, fees and expenses relating to the McKesson Claim or the Bond Claim, respectively, then any Fees and Expenses remitted to the Trustee shall reduce the Bond Claim and any Fees and Expenses remitted to McKesson shall reduce the McKesson Claim.

7.    *Perfection of Adequate Protection Liens*.  The approval of the Cash Collateral Orders by the Court shall be sufficient and conclusive evidence of the validity, extent, enforceability, and perfection of the Adequate Protection Liens granted to the Prepetition Secured Parties whether or not the Prepetition Secured Parties elect to file or record financing statements or any other documents that may otherwise be required under federal or state law in any jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect

14

such liens under applicable law; *provided, however*, that the Prepetition Secured Parties may, in their sole discretion, but shall not be required to, file a certified copy of one or both of the Cash Collateral Orders in any filing or recording office in any jurisdiction in which the Debtors have real or personal property; and such filing or recording shall be accepted and shall constitute further evidence of perfection of the liens and security interests of the Prepetition Secured Parties.

8.      *Financial Reporting.*  As additional adequate protection, the Debtors shall deliver to the Master Trustee and its counsel, and the Committee and its counsel, an updated rolling Budget no later than the Tuesday of each calendar week commencing on the first Tuesday following the first full week after the Petition Date.  No later than the Wednesday of each calendar week commencing on the first Wednesday following the first full week, the Debtors shall deliver to the Master Trustee and the Committee a variance report comparing, on a line-item basis, actual results to the Budget for the previous individual week on a weekly and cumulative basis.  The Debtors shall also use reasonable best efforts to provide to professional advisors for the Master Trustee and the Committee (i) within 45 days after the end of each month, commencing with the month ending July 31, 2023, a monthly balance sheet of Mercy Hospital as of the last day of each fiscal month and the related income statement for the one-month period then ended and (ii) within 15 days after the end of each month, commencing with the month ending August 31, 2023, "AR Days", "Days Not Final Billed", and accounts receivable balances by aging.

9.      *Right to Seek Additional Adequate Protection.* This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time upon notice and a hearing or the rights of the Debtors or any other party to contest such request.

10.     *Events of Default; Remedies Upon an Event of Default.*

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(a) Each of the following shall be considered an Event of Default ("Event of Default") under this Final Order:

(i) this Final Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Trustee;

(ii) the failure by the Debtors to timely perform any of the material terms, provisions, conditions, covenants, or other obligations under this Final Order;

(iii) the dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases to chapter 7 cases, or suspension of the Chapter 11 Cases under section 305 of the Bankruptcy Code;

(iv) the appointment of a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code);

(v) the granting of relief from the automatic stay to permit foreclosure with respect to a material asset of the Debtors, by any entity other than the Trustee on any Prepetition Collateral or Adequate Protection Collateral;

(vi) the entry of an order granting any superpriority claim which is senior to or *pari passu* with the Trustee other than as provided for in this Final Order;

(vii) the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtors other than as set forth in the Budget or as provided for in this Final Order;

(viii) the cessation of Adequate Protection Liens or the Superpriority Claims granted pursuant to this Final Order to be valid, perfected and enforceable in all respects;

(ix) the filing of any Challenge (as defined below) to any Prepetition Liens or Prepetition Collateral by the Debtors;

(x) the payment of estate professional fees by the Debtors out of Prepetition Collateral or Trustee Adequate Protection Collateral other than to the extent set forth in the Budget;

(xi) the filing of, or otherwise asserting an, objection by the Debtors to a motion by the Master Trustee seeking a distribution to the Master Trustee at closing of no more than $26,800,000 in sale proceeds, minus the Carve-Out; or

(xii) failure to materially comply with the following milestone covenants:

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

    a.   By December 5, 2023, the Debtors shall provide drafts of the Disclosure Statement and Plan to the Trustee;

    b.   By December 14, 2023, the Debtors shall file the Disclosure Statement and Plan~~, each in form and substance reasonably acceptable to the Trustee~~;

    c.   By January 24, 2024, the Debtors shall obtain entry of an order approving the Disclosure Statement and related solicitation procedures~~, in form and substance reasonably acceptable to the Trustee~~;

    d.   By not later than March 8, 2024, the Debtors shall obtain an order confirming the Plan~~, in form and substance reasonably acceptable to the Trustee~~; and

    e.   Within 30 days of the Plan being confirmed, the Plan effective date shall occur.

(b)    Notwithstanding anything herein, the Debtors shall no longer, pursuant to the Interim Order, this Final Order or otherwise, be authorized to use Cash Collateral for any purpose hereunder upon the occurrence of an Event of Default (such date, the "Termination Date"); provided, however, that the Trustee shall provide five (5) business days (the "Default Notice Period") written notice via email to counsel to the Debtors, the United States Trustee, and counsel to the Committee of any Event of Default (the "Default Notice") and the Debtors may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtors or the Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing (collectively, the "Debtor Default Period Rights").

(c)    Notwithstanding the occurrence of an Event of Default, the Trustee may elect in writing not to terminate the Debtors' authority to borrow funds and/or use Cash Collateral hereunder, as applicable, to waive defaults hereunder, or to forbear from the exercise of rights and remedies hereunder.

17

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(d)      Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Trustee shall survive the Termination Date.

11.    2.*Exercise of Rights.*   The Trustee shall be entitled to apply the payments or proceeds of the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral as it deems appropriate, subject to the Carve-Out and the Prepetition Permitted Liens, if any, and in no event shall the Trustee be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Trustee Adequate Protection Collateral or otherwise.

12.    3.*Challenges to Debtors' Stipulations/Investigation Period.*    The Debtors' Stipulations shall be binding upon the Debtors in all circumstances and for all purposes immediately upon entry of this Final Order.  The Debtors' Stipulations shall be binding upon the Committee, all other creditors, and all parties-in-interest (collectively, the "Interested Parties") and each of their respective successors and assigns, in all circumstances and for all purposes, and the Debtors and all Interested Parties shall be prohibited and barred from otherwise asserting any claims or causes of action against the Trustee and/or holders of the Bonds on behalf of the Debtors' estates, unless (a)  any Interested Party timely files an adversary proceeding or contested matter (a "Challenge") by no later than the date that is thirty sixty (3060) days after entry of this Final Order (the "Challenge Deadline") challenging the Stipulations or otherwise asserting any claim or cause of action against the Trustee and/or holders of the Bonds and and (b) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge.  If no Challenge is commenced by an Interested Party prior to the Challenge Deadline, then the Stipulations shall be binding upon such Interested Party in all circumstances and for all purposes and not be subject to any other or further Challenge, contest, attack, objection,

18

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

challenge, defense, claim, or counterclaim, whether under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by such Interested Party.  Further, if an Interested Party timely files a Challenge to a Stipulation or Stipulations ~~or raises a claim or cause of action~~, then except for the Stipulation~~,~~ _or_ Stipulations~~, claims or causes of action~~ _ expressly subject to such Challenge, Challenges to other Stipulations ~~and other claims and causes of action~~ are hereby deemed forever waived and barred.  This Final Order confers standing on the Committee, but not on any other Interested Party to commence, prosecute and/or settle a Challenge. For the avoidance of doubt, the Challenge Deadline shall not apply to any Causes of Action that the Committee may assert against the Master Trustee. This Final Order confers standing on the Committee, but not on any other Interested Party, to commence, prosecute and/or settle any Causes of Action against the Master Trustee.

13. ~~4.~~*Section 506(c); Section 552(b).* ~~Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral, pursuant to section~~ Nothing herein shall be deemed a waiver or limitation of any of the Debtors or their estates rights under sections 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law, ~~without the prior written consent of the Trustee and no such consent shall be implied from any other action, inaction, or acquiescence by the Trustee~~all of which rights are expressly reserved and preserved.

14. ~~5.~~*Carve-Out.* In partial consideration of the Debtors' acknowledgement of the Bond Claim ~~and the Debtors' waiver of any claims under sections 506(c) and 552(b) of the Bankruptcy Code~~, the Trustee consents to the payment of certain expenses and professional fees incurred

during the pendency of these Chapter 11 Cases that shall be superior in all instances to the liens and claims of the Trustee and all other parties (the "Carve Out").  As used in the Cash Collateral Orders, "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all budgeted, accrued and unpaid fees, costs, and expenses ("Professional Fees") incurred or accrued by persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363 or 1103 (collectively, the "Professionals") prior to the date that is five (5) business days following the Termination Date (the "Carve-Out Trigger Date"); and (iv) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all Professional fees incurred or accrued by Professionals after the Carve-Out Trigger Date in an aggregate amount not to exceed $250,000.  Notwithstanding anything to the contrary in this Final Order or Prepeititon Documents, or otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate Protection Liens and Superpriority Claims), the Prepetition Liens, the Prepetition Permitted Liens, and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out.  Nothing herein shall constitute a waiver of any right of the Prepetition Secured Parties to object to fees and expenses of any Professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid (or parties' rights to respond thereto).  Except to the extent of and in consideration of the Carve Out, (y) no expenses of administration of the Chapter 11 Cases or any future proceeding

20

10118614 v1v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

~~that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Trustee, the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code or a similar principal of law; and (z) the "equities of the case" exception under section 552(b) of the Bankruptcy Code is waived as to the Trustee, the Prepetition Trustee Collateral, and the Trustee Adequate Protection Collateral.~~ Any payment or reimbursement made in respect of the Carve Out incurred by any Professional on or after the Carve-Out Trigger Date shall permanently reduce the Carve Out on a dollar for dollar basis.

15. ~~6.~~*Professional Fee Reserve.*  For purposes of the Cash Collateral Orders, the Debtors are authorized to establish a reserve (the "<u>Professional Fee Reserve</u>") of funds sufficient to satisfy the budgeted Professional Fees that have or will come due during the pendency of the Case, including those that have not yet been approved by the Court.  At the end of each week following the Petition Date, the Debtors may (and are hereby authorized to) disburse and allocate funds from the Mercy Hospital investment account to the Professional Fee Reserve in an amount equal to 100% of the Carve-Out amount allocated for Professional Fees for that week under the Budget, pending approval of the Court to disburse such funds to the respective beneficiaries.  The Debtors are not permitted to use funds contained in the Professional Fee Reserve for any purpose other than for Professional Fees without further order of this Court.  To the extent that the funds in the Professional Fee Reserve exceed the Professional Fees allowed by the Court for a beneficiary of the Carve-Out, such funds shall revert to the Debtors.

16. ~~7.~~*Limitations on Use of Cash Collateral*.  Notwithstanding anything else herein, subject to the proviso at the last sentence of this paragraph 16, no amounts under the Carve-Out or the proceeds of Prepetition Collateral (including Cash Collateral) and Adequate Protection

21

Collateral shall be used after the date of entry of the Final Order for the purpose of: (i) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of: (a) the Bond Claim or the Prepetition Liens or (b) any other rights or interests of the Trustee granted under the Cash Collateral Order; (ii) asserting any claims or causes of action, including, without limitation, any ~~Avoidance Actions~~ Causes of Action against the Trustee or the holders of the Bonds ~~or invoking the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Trustee Collateral, the Trustee Adequate Protection Collateral or otherwise~~; (iii) preventing, hindering, or delaying the enforcement or realization by the Trustee upon any of the Prepetition Collateral or Adequate Protection Collateral (other than to contest whether an asserted Event of Default or Termination Date has occurred and is continuing); (iv) incurring secured indebtedness that would be senior to, or *pari passu* with, the obligations owed to the Trustee under the Cash Collateral Orders except as permitted by the Cash Collateral Orders; or (v) modifying any adequate protection granted to the Trustee. Notwithstanding the foregoing, not more than $~~50,000~~ 65,000 of the Cash Collateral may be made available to reimburse the Committee upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Bond Claim and/or the Prepetition Trustee Liens.

17.   ~~8.~~*Right to Credit Bid*.  The Debtors admit, acknowledge, and agree that the Trustee has the right to credit bid the Bond Claim in connection with any sale or other disposition of the Prepetition Collateral under the Bankruptcy Code.

18.   ~~9.~~*Deemed Request for Stay Relief*.  This Final Order shall be deemed to constitute a request by the Trustee for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection as of the Petition Date.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

19. 10. *No Control*.  None of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding any consent to this Final Order and extending financial accommodations of any type, kind or nature under this Final Order.

20. 11. *No Third Party Beneficiaries*.  The provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).  No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

21. 12. *No Modification*.  Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Prepetition Documents.

22. 13. *No Waiver*.  No consent by the Trustee to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Trustee, as applicable, in the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to the provisions of sections 506(c) and/or 552(b) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence.

23. 14. *Final Order Controls*.  In the event of a conflict between the terms of the Interim Order and this Final Order, the terms of this Final Order shall control.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

24. ~~15.~~*Effectiveness of the Final Order.*  Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

25. ~~16.~~*Implementation of the Final Order.*  The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

26. ~~17.~~*Exclusive Jurisdiction.*  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated and entered this _____ day of _____, 2023.


_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:     (319) 286-7002
Facsimile:     (319) 286-7050
Email:          rleaf@nyemaster.com

- and –

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:          fperlman@mwe.com
                 dsimon@mwe.com
                 ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:          jhaake@mwe.com

10118614 ~~v1~~v2

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

10118614 v1v2

**EXHIBIT 1**

**Cash Collateral Budget**