## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Doc. No.** ___ |

### DECLARATION OF NARENDRA GANTI IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO ENTRY OF THE PROPOSED FINAL CASH COLLATERAL ORDER

I, Narendra Ganti, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director with FTI Consulting, Inc., an international consulting firm that is serving as financial advisor to the Official Committee of Unsecured Creditors in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").

2. I submit this Declaration in support of *The Official Committee Of Unsecured Creditors' Objection to Entry of the Proposed Final Cash Collateral Order* (the "Objection").[1]

3. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

4. I have reviewed the *Reservation of Rights of Secured Bondholder Representatives to Debtors' Motion for Entry of Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use Of Cash Collateral, and (III)*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

10118176

*Granting Related Relief* [Doc. No. 435] (the "Reservation") filed by the Secured Bondholder Representatives on November 2, 2023.

5. In the Reservation, the Master Trustee asserts that its "Cash Collateral has been depleted at a tremendous rate since these Chapter 11 Cases began. Through the 12-weeks ending on October 27th, the Debtors have consumed approximately $9 million of cash on-hand (as of August 11th) *plus* approximately $40.4 million of cash receipts, including approximately $25 million of pre-petition accounts receivable." Reservation ¶ 1. The Master Trustee further asserts that "the Master Trustee's Cash Collateral will continue to be depleted – and the bondholders will suffer further diminution – as these Chapter 11 Cases progress." Reservation ¶ 2.

6. Based on my review and familiarity with the financial reporting by the Debtors concerning the results of the Debtors' operations since the Petition Date, I believe the Master Trustee's assertions in paragraphs 1 and 2 of the Reservation are misleading and/or inaccurate.

7. First, it is not true that the Debtors have "consumed" approximately $9 million of cash on-hand through the 12-weeks ending on October 27, 2023. Rather, the Debtors' cash position, to the extent of any possible degradation, can be supported by funds through the Foundation Settlement or investment account, as necessary.

8. Second, between the Petition Date and October 31, 2023, Mercy Hospital's total accounts receivable balance declined by only approximately **$496,000** ($23,714,184 minus $23,218,077), with certain accounts receivable being collected but replaced as collateral with new accounts receivable. Mercy Hospital has not "consumed" $25 million of prepetition accounts receivable during that time period.[2] In addition, pursuant to the Interim Cash Collateral Order, the Master Trustee was granted as adequate protection an additional lien on the accounts

---

[2] I understand that the Master Trustee had a prepetition lien on the accounts receivable of Mercy Hospital, but not on any accounts receivable of the other Debtors.

2

receivable of the Debtors' medical clinics. Those receivables totaled approximately **$4.4 million** as of October 31, 2023, which is far in excess of any potential post-petition diminution of the Master Trustee's accounts receivable collateral.

9. Third, I do not believe the assertion that "the Master Trustee's Cash Collateral will continue to be depleted – and the bondholders will suffer further diminution – as these Chapter 11 Cases progress" is supported by the factual circumstances of these Chapter 11 Cases. On the contrary, assuming that: (i) the sale of the Debtors' assets to the University is approved by the Bankruptcy Court, with the University's concomitant assumption of Mercy Hospital's net operating losses from and after December 1, 2023; and (ii) the settlement with the Mercy Hospital Foundation, I believe it is unlikely that the Master Trustee's cash collateral will be materially depleted as these Chapter 11 Cases progress.

10. Instead, I believe that circumstances going forward in these Chapter 11 Cases are more favorable for Mercy Hospital than they have been until now because of (i) the funds to be contributed to the Debtors pursuant to the Foundation Settlement (assuming approval by the Bankruptcy Court), (ii) the proposed assumption by the University of Mercy Hospital's net operating losses from and after December 1, 2023, (iii) the expected stability that the pending sale to the University is likely to bring to Mercy Hospital with respect to patient census and elective procedures, and (iv) favorable traditional seasonal conditions for hospitals during the upcoming winter months.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2023

*/s/ Narendra Ganti*
Narendra Ganti
Managing Director
FTI Consulting, Inc.