# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| | Joint Administration Requested |
| Debtors. | **Re: Docket Nos. 439 & 448** |

## MOTION IN LIMINE BY SECURED BONDHOLDER REPRESENTATIVES TO EXCLUDE THE TESTIMONY OF NARENDRA GANTI

Computershare Trust Company, N.A., as Master Trustee (the "Master Trustee"), and Preston Hollow Community Capital, Inc., as Bondholder Representative (the "Bondholder Representative" and, collectively with the Master Trustee, the "Secured Bondholder Representatives"), hereby submit this motion in limine to exclude the testimony of Narendra Ganti offered by Official Committee of Unsecured Creditors (the "Committee") in support of the *Official Committee Of Unsecured Creditors Objection to Entry of the Proposed Final Cash Collateral Order* [Docket No. 448] (the "Objection") in connection with the *Response by Secured Bondholder Representatives to Official Committee of Unsecured Creditors' Objection to Entry of the Proposed Final Cash Collateral Order* (the "Response")[1] filed contemporaneously herewith, and respectfully state as follows:

## PRELIMINARY STATEMENT

1. By the Objection, the Committee asks this Court to determine complicated collateral valuation issues on three days' notice on an incomplete record, which is completely inappropriate and violative of the Secured Bondholder Parties' due process rights. As set forth in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Response.

the Response, the issues posed by the Objection are not ripe.  Further, Mr. Ganti's testimony has no probative value to the issues underlying the Objection.  Instead, Mr. Ganti cherry-picks unsourced and unsubstantiated numbers in support of his untenable position that the Secured Bondholder Representatives' Prepetition Collateral have suffered no loss in value during these Chapter 11 Cases.  Further, his opinions regarding the possible future value of the Collateral are nothing more that soothsaying, and are contradicted by the facts of the case, as set forth in the *Declaration of Peter Chadwick of Berkeley Research Group, LLC in Support of the Response by Secured Bondholder Representatives to Official Committee of Unsecured Creditors' Objection to Entry of the Proposed Final Cash Collateral Order*, filed contemporaneously herewith.

2.    The Objection, and the accompanying Ganti Declaration, were not filed until Friday, November 3 – the business day before the Court's hearing on the Debtor's Motion.  Prior to this point, the Secured Bondholder Representative had no notice of the issues to be presented at the hearing nor of the "evidence" the Committee intended to provide in support. Despite this lack of notice, the Secured Bondholder Representatives served a Notice of Deposition of Mr. Ganti for Saturday, November 4, 2023.  The Committee agreed to produce Mr. Ganti for only ***one hour*** of testimony.  The Secured Bondholder Representatives conducted this abbreviated deposition of Mr. Ganti on November 4, 2023.  A true and correct copy of Mr. Ganti's deposition transcript ("Ganti Dep. Transcript") is attached hereto as Exhibit A.

3.    In that deposition, Mr. Ganti admitted that he had no involvement in putting together the *only piece of evidence* submitted by the Committee in its Objection – an unsourced chart purporting to analyze the accounts receivable of the Debtors at several points in time. Mr. Ganti testified he has *done nothing* to understand Mercy's revenue cycle management, and as such has no basis for providing testimony in support of any analysis of the value of the Debtors'

accounts receivable.  The Committee has provided no basis on which to conclude that Mr. Ganti is qualified as an expert on the topic of his testimony – the accounts receivable of the Debtors.  Nor has the Committee provided *any* substantive, admissible evidence thereon.  As such, all such evidence should be excluded.

4. Further, as set forth in the Response, it is a fruitless and unnecessary exercise for the Court to conduct a trial on collateral diminution issues midway through the case in the context of the Debtors' Motion.  It is clear that the Committee's evidence supporting their Objection is misleading and incomplete, and as such any value that it might have is outweighed by its prejudicial impact, especially on *three-days' notice* to the Secured Bondholder Representatives.  To accept Mr. Ganti's "evidence" at this stage in the case and on this procedural posture would be violative of the Secured Bondholder Representatives' due process rights.

## ARGUMENT

### A. Introduction of Mr. Ganti's Testimony on Three Days' Notice Is Violative of the Secured Bondholder Parties' Due Process Rights

5. The Committee filed its amended witness and exhibit list designating Mr. Ganti as a witness on Thursday, November 2nd, and did not file the Objection and accompanying Ganti Declaration until late in the day on Friday, November 3rd.  [Docket Nos. 439 & 448].  The Secured Bondholder Representatives immediately noticed Mr. Ganti's deposition for Saturday, November 4th, and the Committee produced the witness for one hour of testimony.

6. Prior to November 2, the Secured Bondholder Representatives were unaware that the Committee intended to call Mr. Ganti, and prior to November 3, the Secured Bondholder Representatives were unaware of the substance of the Objection or Mr. Ganti's testimony.  Indeed, in the Committee's original witness and exhibit list filed on October 23, the Committee did not identify any witness.  [Docket No. 408].  To allow the Committee to conduct an evidentiary

hearing on an incomplete record on three days' notice is inappropriate and violates the Secured Bondholder Party's right to due process under the law. The Court should not accept the Committee's invitation to conduct such a trial, and should preclude Mr. Ganti's testimony in full.

      **B.    Mr. Ganti Has Not Provided a Basis for His Expert Opinion on the Matters Set Forth in the Declaration**

7. Pursuant to the Federal Rules of Evidence, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

8. Courts must serve a gatekeeping function to ensure that expert witness testimony is both reliable and relevant before it is admitted. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591–93, 113 S. Ct. 2786, 2796 (1993); *see also Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). In performing its gatekeeping function, "[t]he court should consider, among other factors (1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996) (quoting *Daubert*, 509 U.S. at 593–94, 113 S. Ct. at 2796–97); *see also In re Barnes*, 266 B.R. 397, 404 (B.A.P. 8th Cir. 2001) ("The analysis of the admissibility of proffered expert testimony under Rule 702 centers on

whether the reasoning or methodology underlying the testimony is reliable and whether the reasoning or methodology has been properly applied to the facts in issue.") (citation omitted).

9. The Committee has not laid proper foundation regarding Mr. Ganti's qualifications as an expert witness to testify on the Debtors' accounts receivable generally or specifically with regard to diminishing value. Mr. Ganti admitted in his deposition that he has done nothing to understand revenue cycle management at Mercy. Ganti Dep. Transcript, at 18:23-25. As such, Mr. Ganti lacks the qualifications to provide an expert opinion on the topic of accounts receivable and the diminishing value of the Secured Bondholder Representatives' Prepetition Collateral.

10. Mr. Ganti also testified that he did not assist in the preparation of the summary of the Debtors' accounts receivable estimates or analyses, nor did he conduct a separate analysis regarding the methodology the Debtors' used. In fact, Mr. Ganti does not know how Mercy accounts for the treatment of gross billings to net account receivables. *Id.* at 19:12-17. In short, Mr. Ganti simply took one piece of financial reporting provided to him by the Debtors and parroted it. There is simply no value to allowing Mr. Ganti to provide testimony on this point, without any analysis of his own.

**B. Mr. Ganti Cannot Testify as a Fact Witness Because He Did Not Perceive the Facts Himself**

11. Fact witnesses testifying in the form of an opinion are limited to testimony that is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

12. Since Mr. Ganti does not have firsthand personal knowledge of the Debtor's accounts receivable, and did not conduct his own investigation or analysis, he cannot testify as a

lay witness as to the diminution in value of the Secured Bondholder Representatives Prepetition Collateral.  Furthermore, the proffered testimony of Mr. Ganti would be based on his technical and specialized knowledge as a financial advisor, and such testimony can only be given as an expert witness.  However, Mr. Ganti does not qualify as an expert witness on accounts receivable or the diminishing value of accounts receivable.

> **C.    Mr. Ganti's Testimony, and the Chart Included in the Objection, Should be Excluded as Inadmissible Hearsay**

13.    To the extent that Mr. Ganti testifies as a fact witness, any testimony on the diminishment in the Debtors' accounts receivable is based on inadmissible hearsay. As the Committee admits, the chart listed on page 4 of the Objection that purportedly analyzes and summarizes the accounts receivable of the Debtors at several points of time —which Mr. Ganti relies on in forming his opinion—was prepared by the Debtors.  Mr. Ganti did not assist with the preparation of this chart, nor did Mr. Ganti conduct a separate investigation or analysis to verify the accuracy of the information.  Further, the chart itself is inadmissible hearsay.  Pursuant to Mr. Ganti's testimony, the chart was created by the Debtors, and the Committee has offered no support thereof.  Ganti Dep. Transcript, at 10:18-25, 11:1-5, 13:2-20, 26:5-12.

14.    While as an expert witness Mr. Ganti may rely on hearsay opinions, the Committee must first establish foundation that "[s]uch hearsay opinions and inferences are relied upon by other experts with respect to the subject matter of the expert's testimony." *In re Cox*, 315 B.R. 850, 857 (B.A.P. 8th Cir. 2004) (citing *Arkwright Mutual Ins. Co. v. Gwinner Oil Co.*, 125 F.3d 1176, 1181 (8th Cir. 1997)).  The Committee, however, has not laid any foundation regarding the hearsay opinions provided by the Debtors.  In fact, Mr. Ganti admitted in his deposition that none of the figures produced by the Debtors had been authenticated or independently reviewed. Ganti Dep. Transcript, at 10:18-25, 11:1-5, 13:2-20, 26:5-12.

**D. Mr. Ganti's Testimony Violates the Best Evidence Rule**

15. Under the "best evidence rule" a witness cannot testify to the contents of a writing without producing the original. Fed. R. Evid. 1002. Mr. Ganti's testimony is merely a recitation of a chart prepared by the Debtors. To the extent the Committee seeks to introduce the chart into evidence, it has not laid the foundation for the reliability and admissibility of the chart. Furthermore, the chart cannot be introduced into evidence without disclosing and producing the underlying documents supporting the summaries listed in the chart. *See* Fed. R. Evid. 1006.

WHEREFORE, the Master Trustee and the Bondholder Representative respectfully request that the Ganti Declaration be stricken from evidence and Narendra Ganti be precluded from testifying.

Date: November 5, 2023

**WHITFIELD & EDDY, P.L.C.**

*/s/ Peter J. Chalik*

Peter J. Chalik (Iowa Bar No. AT0013036)
699 Walnut St., Suite 2000
Des Moines, Iowa 50309
Telephone: (515) 288-6041
Email: *Chalik@whitfieldlaw.com*

-and-

**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

William W. Kannel (admitted *pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: WKannel@mintz.com

Nathan F. Coco (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
Kaitlin R. Walsh (admitted *pro hac vice*)
919 Third Avenue

        New York, New York 10022
        Telephone: (212) 935-3000
        Email: NFCoco@mintz.com
        MPreusker@mintz.com
        KRWalsh@mintz.com

**CERTIFICATE OF SERVICE**

      I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated November 5, 2023.

      */s/ Peter J. Chalik*