## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DECLARATION OF MARK E. TONEY IN SUPPORT OF
## DEBTORS' PROPOSED SALE TO THE UNIVERSITY OF IOWA

I, Mark E. Toney, being duly sworn, state the following under penalty of perjury and that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Member and Senior Managing Director with ToneyKorf Partners, LLC ("ToneyKorf Partners"), a management and advisory firm that provides expert services to healthcare organizations in various professional areas, including bankruptcy and corporate restructuring. I am the Chief Restructuring Officer (the "CRO") of Mercy Hospital, Iowa City, Iowa (the "Hospital") and its subsidiaries and affiliates that are debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"). I serve as CRO of the Debtors pursuant to an engagement letter approved by the *Order Authorizing Debtors to Retain ToneyKorf Partners, LLC as Interim Management of the Debtors, Effective as of the Petition Date Pursuant to Section 363 of the Bankruptcy Code, and Granting Related Relief* [Docket No. 259].

2.       I submit this declaration (the "Declaration") in support of the Debtors' proposed sale to the State of Iowa's University of Iowa (the "University"). The statements in this Declaration are, except where specifically noted, based on (a) my personal knowledge of the Debtors' business operations; (b) my opinion based on my experience, knowledge, and

information concerning the Debtors' operations; (c) my participation in various discussions and negotiations surrounding the sale and auction process; and (d) my review of the Debtors' books and records and relevant information that I have obtained from the Debtors' management and other employees, the Debtors' advisors, and employees of ToneyKorf Partners working directly with me and under my supervision, direction, or control.

3.      I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtors.  If called to testify, I could and would competently testify to the facts set forth herein.

## **BACKGROUND**

### I.      **The Bidding Procedures**

4.      On August 9, 2023, the Debtors filed their *Motion for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 58] (the "Bidding Procedures Motion")[1] with the United States Bankruptcy Court for the Northern District of Iowa (the "Court").

5.      The Bidding Procedures Motion named the University as the Debtors' Stalking Horse Bidder, with an initial proposed purchase price of $20 million (the "Stalking Horse Bid")

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion, Bidding Procedures Order, or 9019 Motion, as applicable and each as defined herein.

plus certain assumed liabilities as set forth therein, and set forth proposed procedures for the Debtors' proposed bidding and auction process.  On September 14, 2023, the Court entered the order approving the relief requested in the Bidding Procedures Motion [Docket No. 222] (the "Bidding Procedures Order").

## II.     The Submission of Bids

6.      Pursuant to the timelines outlined in the Bidding Procedures Order, the Debtors received one other bid prior to the Bid Deadline, which was submitted by Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee (together, the "Bondholder Representatives").  The Bondholder Representatives' initial bid contemplated a purchase price consisting of (a) $27,000,000 to be satisfied in the form of a credit bid and (b) cash consideration in the amount of $800,000 to satisfy the Break-Up Fee payable to the University (together, the "Bondholder Bid").  As part of that initial bid, the Bondholder Representative indicated that they intended to designate American Health Systems ("AHS") as the operator.  The initial Bondholder Bid did not contain an agreement between the Bondholder Representatives and AHS.

## III.    The Debtors' Auction Process

7.      Pursuant to the Bidding Procedures Order, the Debtors commenced an in-person auction at the offices of Debtors' counsel in Chicago, Illinois on October 4, 2023, which was subsequently continued to October 10, 2023 via Zoom and reopened on October 27, 2023 via Zoom.  I personally attended each of the auction sessions.  In addition, each of these auction sessions were attended by representatives of the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), the Bondholder Representatives as a bidding party, and the University as a bidding party.

### A.    October 4, 2023 Auction[2]

8.      A critical discussion point at the commencement of the auction was the timing of any proposed closing date.  Because the University had begun numerous workstreams relating to transition and potential closing issues, the University had the ability to close the transaction as soon as November 30, 2023.  In contrast, if the Bondholder Representatives were to be selected as the winning bidder, it was likely that their transaction would not be in a position to close until, at a minimum, several months thereafter.  This was critical because, on average, the Debtors' operational burn is approximately $1 million per week, and because the Debtors' liquidity would run out prior to the end of November 2023.  Therefore, in order to properly assess and compare the bids between the University and the Bondholder Representatives, it was crucial to get both parties to agree to fund any operating losses between November 30, 2023 and any potential closing.

9.      To this end, as part of the Debtors' initial auction on October 4, 2023, the University modified the Stalking Horse Bid to reflect that "[i]f the University fails to close the transaction on or before November 30, 2023, despite the fact that all closing conditions have been satisfied, the University will absorb and assume the actual operating losses of the Debtors until such time as the University closes, including any shutdown costs, if applicable."  Ex. A at 12:7–14.  Based upon this modification to the University's bid, the Debtors and the Committee pushed the Bondholder Representatives during the October 4, 2023 auction to include a similar funding mechanism in the Bondholder Bid.  Later that day, the Bondholder Representatives modified their bid "to include a commitment on the part of the [Bondholder Representatives] to cover the operating expenses for the hospital beginning on December 1 to the extent that the [Bondholder Representatives] are designated and selected as the winning bidder . . ."  Ex. A at 10:5–11 (emphasis added).

---

[2]    A copy of the transcript of the October 4, 2023 auction is attached hereto as **Exhibit A**.

10.     On the evening of October 4, 2023, the Debtors continued the auction in order to, among other things, (i) address potential modifications in the bids relating to certain parcels of real property, (ii) further assess the role of AHS in the Bondholder Representatives' bid; and (iii) continue negotiations among the bidding parties.  At the end of the auction on October 4, 2023, the University's bid remained at $20 million plus additional assumed liabilities, with a commitment to fund operating losses after November 30, whereas the Bondholder Representatives bid was, in addition to payment of the Break-Up Fee, a credit bid of $27 million plus additional assumed liabilities, plus a commitment to fund up to $750,000 in operating losses between November 15 and November 30, and an uncapped commitment to fund operating losses after November 30 until closing.

**B.      October 10, 2023 Auction[3]**

11.     At the resumed auction on October 10, 2023, after several rounds of bidding, the University submitted a modified topping bid of $28 million in cash (after having modified their bid to remove certain unencumbered real property), plus the operating loss commitment for funding operating losses after November 30 until closing, as well as an agreement to invest an additional $25 million over a five-year period at Mercy Hospital.

12.     Similarly, at the resumed auction on October 10, 2023, the Bondholder Representatives modified the Bondholder Bid to include (i) $27.8 million in credit bid; (ii) agreement to fund up to $1.2 million for operating losses incurred between November 15-November 30, 2023 in exchange for clinics that are not part of the Bondholder Representatives' collateral; (iii) payment of the $800,000 Break-Up Fee to the University; and (iv) agreement to fund uncapped operating losses incurred after November 30 until closing.  As was the case with

---

[3]      A copy of the transcript of the October 10, 2023 auction is attached hereto as **Exhibit B**.

the initial Bondholder Bid, the Bondholder Representatives committed to engage an interim manager designee to assume operational control over the Hospital as of November 15, 2023.

13.     At the conclusion of the auction on October 10, 2023, the Debtors determined, in consultation with the Committee, that the final bid from the Bondholder Representatives was determined to be the highest or otherwise best bid, subject to documentation reasonably acceptable to the parties.  In addition, the Debtors designated the University's final bid as the Back-Up Bidder, pursuant to the requirements of the Bidding Procedures.[4]  As described further below, the Debtors relied on the Bondholder Representatives' operating loss commitment in selecting the bid from the Bondholder Representatives, as it was intended to allow the Debtors' estate to be net neutral between the two bids given the differences between the parties' proposed closing dates.

14.     On October 10, 2023, the Debtors filed the *Notice of Auction Results* [Docket No. 352], which disclosed that the Debtors selected the final bid from the Bondholder Representatives as the highest and best bid.

## C.     Definitive Documentation and Material Disagreement

15.     Immediately following the conclusion of the auction, the Debtors engaged in numerous discussions and negotiations with the Bondholder Representatives and AHS regarding (i) an amended asset purchase agreement, (ii) an interim management agreement providing for AHS to take over interim management of the Debtors as of November 15, 2023, and (iii) a funding agreement to provide for funding of operating losses consistent with the Bondholder Representatives' bid.  During these negotiations, the Bondholder Representatives took the position—to the surprise of the Debtors and the Committee—that the funding commitments for operating losses incurred after November 30 would be subject to first using all of the Debtors'

---

[4]     The University disagreed with this designation and reserved rights with respect to this issue.

cash on hand and funds available from Mercy Hospital Foundation (the "Foundation"), an amount that could approach, or potentially exceed, $10 million.

16.     Critically, both the University's and Bondholder Representatives' bids to cover operating losses were made on the record prior to the filing of the *Debtors' (I) Motion for Entry of Order Approving Settlement by and Among the Debtors, the Bondholder Representatives, the Committee, and Mercy Foundation; and (II) Application of Mercy, as Sole Member of Mercy Foundation for Section 540A.106 Ruling* [Docket No. 346] (the "Foundation Settlement"), which was filed on October 9, 2023. Because the motion seeking approval of the Foundation Settlement had not been filed when both bidders added the operating loss commitment to their respective bids on October 4, 2023, it was clear that the Foundation Settlement and proposed use of the Foundation funds was not a factor in the University's modified bid to absorb and assume the Debtors' operating losses following November 30, 2023.

17.     The operating loss commitment was a crucial term that the Debtors (in consultation with the Committee) weighed in evaluating the bids submitted by the Bondholder Representatives. In the absence of an operating loss commitment—that is, a commitment to backstop the Debtors' operating losses without requiring the Debtors to obtain liquidity from assets beyond its operations—the Debtors and the Committee firmly believed that the last bid submitted by the Bondholder Representatives (based on the Bondholder Representatives' mistaken interpretation) was **materially lower** than the last bid by the University, which would mean that the Debtors would be forced to deplete all of the remaining cash and foundation funds before the closing of the sale transaction, which was not required by the University as part of its bid. In addition to this critical issue, the Debtors were unable to reach final agreement on the funding agreement, the interim management agreement, and to the Debtors' knowledge, the Bondholder Representatives

7

had not reached agreement with AHS on a definitive agreement to allow AHS to operate the hospital.

18.     During this period, the Debtors re-engaged in discussions and negotiations with the University to determine whether they were willing and able to recommit to the transaction in light of the fact that the Debtors believed that—based upon the developments occurring after October 10, 2023—that the University's bid was the only viable transaction available to the Debtors.

**D.     Auction Reopening**

19.     In light of this material disagreement, and because the hearing on the Debtors' proposed sale had been continued and no sale order had been entered, the Debtors determined, after consultation with the Committee, that (a) the last bid from the Bondholder Representatives (previously designated as the Winning Bid) was not higher or otherwise better than the last bid submitted by the University, and, therefore (b) it was appropriate and consistent with the Bidding Procedures Order and the Debtors' fiduciary duties to reopen the auction.

20.     On the record at the October 27, 2023 auction,[5] the University stated, "[c]onsistent with its commitment to maintaining sustainable access to care and healthcare workforce, and in light of the current impasse among the parties to this bankruptcy court proceeding, the State University of Iowa is willing to intercede to preserve the legacy of Mercy Iowa City."  Ex. C at 14:22:15:3.

21.     To that end, the University confirmed that the University's bid "would not include any Foundation money whatsoever," nor would it deplete the Debtors' cash on hand.  Ex. C at 13:4-5, 13:9-10.  Based on those clarifications, the Debtors determined that "the last bid submitted by the Bondholder Representatives [was] no longer the highest or otherwise best bid."  *Id.* at 13:15-

---

[5]     A copy of the transcript of the October 27, 2023 auction is attached hereto as **Exhibit C**.

18. Instead, the Debtors determined that (a) the last bid submitted by the University on the record on October 10, 2023 was the highest or otherwise best bid, and the last bid submitted by the Bondholder Representatives was "no longer the successful bid or the winning bid." *See id.* at 13:19-25, 14:1-2.

22.     It is my understanding that the University subsequently restated its bid on the record at the October 27, 2023 auction, which consisted of (a) $28 million *plus* (b) an amount equal to the Debtors' actual operating losses exclusive of professional fees and all other costs and expenses relating to the bankruptcy that are not already otherwise covered by the Debtors' cash and other investments for the period commencing on December 1, 2023, and continuing until such time as the transaction closes *plus* (c) a commitment to invest at least $25 million within five years of the transaction closing on information technology and physical plant infrastructure at the Hospital. *See id*. at 15:16-24; 16:4-12.  Upon request by the Debtors, I understand that the University also confirmed on the record that "[t]o the extent that actual operating disbursements are greater than actual operating receipts, then the University agrees to fund the difference post-December 1st without regard to the Debtors' Foundation funds or the Debtors' cash on hand as of . . . December 1st." *Id.* at 17:8-14; 17:21-24.

23.     With these clarifications and statements made on the record, the Debtors determined, in consultation with the Committee, that the University's bid was the "highest or otherwise best bid" at the conclusion of the October 27, 2023 auction. *See id.* at 18:1-3.  In addition, the Debtors determined that any bid that required the use of the Debtors' remaining cash and the Foundation's cash prior to closing was not a viable transaction under the circumstances, and under the broad discretion granted in the Bidding Procedures Order, the Debtors rejected the bid from the Bondholders Representatives as not being financially viable, and the Bondholder

Representatives confirmed that they were unwilling to move forward with their bid without use of all remaining cash on hand and Foundation funds. *See id.* at 20-22.

24.     It is my understanding that the Debtors subsequently filed the *Amended Notice of Auction Results* [Docket No. 420] on October 27, 2023, and later that day, publicly announced that the University was the winning bidder.

## THE PROPOSED SALE IS IN THE BEST INTEREST OF THE DEBTORS

25.     Based on the foregoing auction results, I believe that the consummation of the proposed sale to the University represents the highest and best (and only viable) transaction available for the Debtors.  I have been involved in numerous transition calls with the University, and I believe that the transaction with the University will allow the mission of the Hospital to continue to flourish, and provide the Debtors with the necessary financial resources to continue operating until the closing date.

26.     In summary, based on my understanding of and participation in the negotiations between the various parties involved with the sale and auction process, I believe the terms of the University bid are fair, reasonable, and in the best interest of the Debtors.  Thus, in my estimation, the proposed sale to the University represents the sound exercise of the Debtors' business judgment and should be authorized by this Court.


*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: Iowa City, Iowa
      November 4, 2023

*/s/ Mark E. Toney*
Mark E. Toney
Chief Restructuring Officer
Mercy Hospital, Iowa City, Iowa

## EXHIBIT A

**October 4, 2023 Auction Transcript**

1          IN THE UNITED STATES BANKRUPTCY COURT

2            FOR THE NORTHERN DISTRICT OF IOWA

3

4              Case No. 23-00623 (TJC)

5

6                                              :
7                                              :
8                                              :
                                               :
9    In re:                                    :
                                               :
10                                             :
     MERCY HOSPITAL, IOWA CITY, IOWA, et al.,  :
11                                             :
                                               :
12   Debtors.                                  :
                                               :
13                                             :
                                               :
14                                             :

15          -------------------------------

16

17            REPORT OF AUCTION PROCEEDINGS

18                 Chicago, Illinois

19            Wednesday, October 4th, 2023

20

21                   CONFIDENTIAL

22

23

24   REPORTED BY:  GREG S. WEILAND, CSR, RMR, CRR

25   JOB NO.:      23298

1

2

3

4                        October 4th, 2023

5                 10:00 a.m. Central Daylight Time

6

7               REPORT OF AUCTION PROCEEDINGS, taken

8    before GREG S. WEILAND, CSR, RMR, CRR, pursuant to

9    the Federal Rules of Civil Procedure for the United

10   States Bankruptcy Court, at Suite 4000, 444 West

11   Lake Street, in the City of Chicago, Cook County,

12   Illinois, commencing at 10:00 o'clock a.m. Central

13   Daylight Time, on the 4th day of October, 2023.

14

15

16

17

18

19

20

21

22

23

24

25

1   PRESENT:

2

3   ON BEHALF OF THE DEBTORS:

4        MCDERMOTT WILL & EMERY

5        BY: MS. FELICIA GERBER PERLMAN

6             444 West Lake Street

7             Chicago, Illinois 60606-0029

8             (312) 984-3680

9             Email: fperlman@mwe.com

10                          - and -

11       MCDERMOTT WILL & EMERY

12       BY: MR. DANIEL M. SIMON

13            1180 Peachtree Street, NE, Suite 3350

14            Atlanta, Georgia 30309

15            (404) 260-8535

16            Email: dmsimon@mwe.com

17                          - and -

18       NYEMASTER GOODE, P.C.

19       BY: MR. ROY LEAF

20            625 First Street SE, Suite 400

21            Cedar Rapids, Iowa 52401

22            (319) 286-7000

23            Email: rleaf@nyemaster.com

24

25

```
 1   PRESENT (CONTINUED):

 2


 3   COUNSEL FOR THE COMMITTEE:

 4        SILLS CUMMIS & GROSS P.C.

 5        BY: MR. ANDREW H. SHERMAN

 6             One Riverfront Plaza

 7             Newark, New Jersey 07102

 8             (973) 643-6982

 9             Email: asherman@sillscummis.com

10


11   ON BEHALF OF COMPUTERSHARE TRUST COMPANY AND

12   PRESTON HOLLOW CAPITAL:

13        MINTZ, LEVIN, COHN, FERRIS

14        BY: MR. NATHAN F. COCO

15             MS. MEGAN M. PREUSKER

16             919 Third Avenue

17             New York, New York 10022

18             (212) 692-6795

19             Email: nfcoco@mintz.com

20                  mpreusker@mintz.com

21


22


23


24


25
```

1    PRESENT (CONTINUED):

2

3    ON BEHALF OF THE STATE UNIVERSITY OF IOWA:

4         POLSINELLI

5         BY: MR. DAVID E. GORDON

6              501 Commerce Street, Suite 1300

7              Nashville, Tennessee 37219

8              (404) 253-6005

9              Email: dgordon@polsinelli.com

10                        - and -

11        POLSINELLI

12        BY: MR. LINAS J. GRIKIS

13             150 North Riverside Plaza, Suite 3000

14             Chicago, Illinois 60606

15             (312) 873-2946

16             Email: lgrikis@polsinelli.com

17                        - and -

18        POLSINELLI

19        BY: MR. CULLIN B. HUGHES

20             900 West 48th Place, Suite 900

21             Kansas City, Missouri 64112

22             (816) 360-4121

23             Email: chughes@polsinelli.com

24

25

1    ALSO PRESENT:

2         MS. KARA BORODKIN, on behalf of the Debtors

3         MR. JIM PORTER, on behalf of the Debtors

4         MR. MARK TONEY, on behalf of the Debtors

5         DR. THOMAS CLANCY, on behalf of the Debtors

6         MR. JOSEPH CLAMON, University of Iowa

7         MR. CORBIN CONNELL, Computershare

8         MR. FAISAL GILL, AHS

9         MR. JOHN DINAN, PRESTON HOLLOW

10        MR. NARENDRA GANTI, FTI Consulting

11        MR. CLIFFORD A. ZUCKER, FTI Consulting

12        MR. C. RICHARD BAYMAN, H2C Securities Inc.

13        MR. ANDREW S. ORMAN, H2C Securities Inc.

14

15

16

17

18

19

20

21

22

23

24

25

1          MS. PERLMAN:  Before we start, on the

2    record, I want to kind of just reiterate some

3    of the rules of the auction from the bidding

4    procedures to make sure that we're all on the

5    same page, and then we will turn it over to

6    each of the potentially bidding parties in the

7    room for their statements on the record.

8          Obviously, this auction is being conducted

9    in accordance with the bid procedures that have

10   been approved in this case.  Minimum bid

11   increments are $100,000.

12         Once qualified, there will be a statement

13   on the record for each bidder to make regarding

14   good-faith purchaser status as set forth in the

15   bidding procedures, but we will come back to

16   that once we have qualified bidders.

17         At this time, we are not putting any time

18   frames in place with respect to subsequent bids

19   and the duration of the auction, but be aware

20   that we have the right to do so and may do that

21   later in the afternoon depending on how the

22   auction is proceeding.

23         If any party has objections at any point

24   during the day to how the auction is being

25   conducted, those objections must be stated on

In Re Mercy Hospital, Iowa City, Iowa, et al

1    the record, or legally they will be waived by

2    each party.

3         And I'd like to ask each party right now

4    to confirm their understanding of that.

5         MR. GORDON:  On behalf of the State

6    University of Iowa, we agree with that.

7         MR. COCO:  On behalf of the master

8    trustee, we agree to that.

9         MS. PERLMAN:  Before we proceed, I would

10   like each party to designate somebody who will

11   be speaking on behalf of each party for the

12   court reporter's benefit.  I assume it's the

13   two of you, but if you could just confirm that.

14        MR. GORDON:  Sure.  David Gordon with

15   Polsinelli, and I'll be speaking on behalf of

16   the State University of Iowa.

17        MR. COCO:  Nathan Coco from Mintz Levin.

18   I'll be speaking on behalf of Computershare as

19   master trustee.

20        MS. PERLMAN:  And then as we're beginning,

21   we started the auction having received -- the

22   process having received a bid from

23   Preston Hollow.  Or I don't know how you want

24   the bidding --

25        MR. DINAN:  Bondholders.

1          MS. PERLMAN:  Bondholders.  Thank you.

2          And I'd like to turn the floor over to

3      you, Nathan, so to speak, to see if there are

4      any further clarifications to your bid so we

5      can then move forward to qualified bidders in

6      this case.

7          MR. COCO:  Sure.  Nathan Coco from

8      Mintz Levin on behalf of the master trustee and

9      bondholders.

10         I'll just identify for the record for the

11     sake of posterity that Corbin Connell, who is

12     serving as the master trustee, is present.

13     Corbin is with Computershare.

14         Also present is Preston Hollow, John Dinan

15     from Preston Hollow, general counsel.  And

16     Preston Hollow is the majority bondholder and

17     also the noteholder representative.

18         And we also have Faisal Gill from AHS, who

19     is a partner who has been identified in

20     Computershare's bid as part of this auction as

21     the operator that Computershare selected to run

22     the hospital post-closing.

23         Okay.  In terms of our bid, it speaks for

24     itself, but we have been asked to add some

25     additional flourish.  And it's our

1    understanding that, you know, the other

2    qualified bidder will also be making a

3    representation to this effect, perhaps.

4         But our bid is modified in such a way as

5    to include a commitment on the part of the

6    bondholders to cover the operating expenses for

7    the hospital beginning on December 1st to the

8    extent that Computershare and the bondholders

9    are designated and selected as the winning

10   bidder and that we are approved as the winning

11   bidder by the bankruptcy court.

12        MS. PERLMAN:  Thank you.  With that, you

13   guys are deemed a qualified bidder in the

14   process.

15        Now, as we have two qualified bidders,

16   before we turn the floor over to you, I would

17   like to complete a statement for the record and

18   ask each qualified bidder to please confirm

19   their understanding of this.

20        The bid procedures provide that each

21   qualified bidder participating in the auction

22   will be required to confirm on the record at

23   the auction that it has not engaged in any

24   collusion within the meaning of 363(n) of the

25   Bankruptcy Code with respect to any bid

1    submitted or not submitted in connection with

2    the sale, and it reaffirms its certification

3    that the qualified bid is a good-faith,

4    bona fide offer and intends to consummate the

5    proposed transaction if selected as the winning

6    bidder or the backup bidder.

7        Would you please so confirm on behalf of

8    Preston Hollow and the bondholders?

9        MR. COCO:  I will confirm that.  Agreed.

10       MS. PERLMAN:  Thank you.  And will you

11   please confirm that on behalf of the

12   University?

13       MR. GORDON:  On behalf of the University,

14   confirmed and agreed.

15       MS. PERLMAN:  Thank you.  Do you have any

16   similar modification to your bid to make on the

17   record on behalf of the University?

18       MR. GORDON:  Sure.  So the University, we

19   stand on our $20 million bid amount that's

20   already been submitted.

21       However, the University is willing to

22   enhance its bid in the following manner:  If

23   the University is chosen as the winning bidder,

24   not the backup bidder, and subject to

25   satisfaction of all closing conditions,

1    including regulatory approval, and subject to

2    entering into an employee leaseback with the

3    Debtors for the month of December 2023 that is

4    acceptable to the University, the University

5    commits to closing the transaction on or before

6    November 30th, 2023.

7         If the University fails to close the

8    transaction on or before November 30th, 2023,

9    despite the fact that all closing conditions

10   have been satisfied, the University will absorb

11   and assume the actual operating losses of the

12   Debtors until such time as the University

13   closes, including any shutdown costs, if

14   applicable.

15        The University does not commit to being a

16   backup bidder.

17        MS. PERLMAN:  Taking all the information

18   stated on the record to date into account, and

19   in consultation with the consultation party,

20   and to confirm that the only consultation party

21   at this point in time is the creditors'

22   committee, the Debtors and the creditors'

23   committee determine that the current highest or

24   otherwise best bid is the bid of

25   Preston Hollow.

1          And at this point, I'll turn to the

2     University to see if you're ready to make a

3     subsequent bid or would like to take a break at

4     this time.

5          MR. GORDON:  We'd like to take a short

6     break at this time.

7          MS. PERLMAN:  Thank you.

8          Off the record.

9               (Whereupon, a recess was taken

10              from 1:06 p.m. to 6:37 p.m.)

11          MS. PERLMAN:  We're going to go back on

12     the record.

13          This is a continuation of the auction of

14     Mercy Hospital.

15          The University has informed us that it

16     will not be increasing its bid with respect to

17     the full hospital but may be bidding with

18     respect to individual clinics from the

19     hospital.

20          Am I stating that correctly?

21          MR. GORDON:  That's correct.

22          MS. PERLMAN:  Thank you.

23          Preston Hollow is making -- it's our

24     understanding that Preston Hollow is making a

25     modification to its bid.  Is that correct?

1        MR. COCO:  That's correct.  And so the

2    modification is as follows:  In addition to

3    what we've already bid, Preston Hollow's

4    proposal would be to take over operational

5    control on November 15th, on or before

6    November 15th, I guess November 15th let's say

7    for precision, and that the bondholders,

8    Computershare and Preston Hollow, would be

9    responsible for operating losses at a capped

10   amount of $750,000 for that 15-day stub period

11   before December 1st in exchange for the

12   additional assets, which are all of the

13   debtor's interest in their clinics, all of the

14   clinics, leased and owned, and for the title to

15   all of the parking properties.

16        The other thing that we want to put on the

17   record is that this auction process with the

18   sort of supplemental bid by the University of

19   Iowa, after it chose not to give a topping bid,

20   is peculiar, goes outside the scope of the bid

21   procedures as approved by the court, and we

22   reserve all objections to that.

23        MS. PERLMAN:  Understood.  The Debtors

24   believe that it has the discretion in the bid

25   procedures to accept bids for subsets of the

1   assets that will maximize value and ensure the

2   ability for sales to close.

3          With that, given the hour and the fact

4   that our consultation party, the creditors'

5   committee, is unable to reach its members to

6   discuss this bid, we are suspending the auction

7   at this time.  We will give notice of

8   reconvening the auction prior to the sale

9   hearing to parties and find a mutually

10  convenient time for parties to continue and

11  conclude the auction.

12         I do want to give an admonishment to all

13  that this auction is a confidential proceeding

14  and that nobody here should discuss any of the

15  events of today publicly.  We will make

16  whatever notices we need to as to the extension

17  of the auction, but the parties are not free to

18  do so.

19         Does anybody else care to make any

20  statements, or should we go off the record?

21         MR. SHERMAN:  Just as far as on the

22  addendum to the confidentiality, the statement

23  could be that the action has been continued.

24         MS. PERLMAN:  It's fair to say that we

25  will be filing a notice of continuance, so it

1    will be public that the auction has been

2    continued.

3         MR. GORDON:  David Gordon of Polsinelli on

4    behalf of the University.  I just want to

5    reserve all of our rights to continue to

6    participate at the continued auction.

7         MS. PERLMAN:  Any other statements for the

8    record?

9         With that, we are included for the

10   evening.  Thank you, everybody, for coming, and

11   we will follow up shortly with when the auction

12   will be continued to.

13                    (Whereupon, the proceeding was

14                    adjourned at 6:41 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           The within and foregoing auction was

4    reported in shorthand by GREG S. WEILAND, CSR, RMR,

5    CRR, within and for the County of Cook and State of

6    Illinois, on the 4th day of October, 2023, at the

7    hour of 10:00 a.m., at 444 West Lake Street,

8    Suite 4000, in the City of Chicago, Cook County,

9    Illinois.

10          The proceedings were taken down in

11   shorthand by the undersigned, acting as

12   stenographer; and the within and foregoing is a

13   true, correct and complete record of all of the

14   proceedings had at the time and place hereinabove

15   referred to.

16          The undersigned is not interested in the

17   within case, nor of kin or counsel to any of the

18   parties.

19          Witness my signature on this 5th day of

20   October, 2023.

21

22

23   _____
     GREG S. WEILAND, CSR, RMR, CRR
24   License No. 084-003472

25

## WORD INDEX

**< $ >**
**$100,000** 7:*11*
**$20** 11:*19*
**$750,000** 14:*10*

**< 0 >**
**07102** 4:*7*
**084-003472** 17:*24*

**< 1 >**
**1:06** 13:*10*
**10:00** 2:*5, 12* 17:*7*
**10022** 4:*17*
**1180** 3:*13*
**1300** 5:*6*
**150** 5:*13*
**15-day** 14:*10*
**15th** 14:*5, 6*
**1st** 10:*7* 14:*11*

**< 2 >**
**2023** 1:*19* 2:*4, 13*
  12:*3, 6, 8* 17:*6, 20*
**212** 4:*18*
**23-00623** 1:*4*
**23298** 1:*25*
**253-6005** 5:*8*
**260-8535** 3:*15*
**286-7000** 3:*22*

**< 3 >**
**3000** 5:*13*
**30309** 3:*14*
**30th** 12:*6, 8*
**312** 3:*8* 5:*15*
**319** 3:*22*
**3350** 3:*13*
**360-4121** 5:*22*
**363(n** 10:*24*
**37219** 5:*7*

**< 4 >**
**400** 3:*20*
**4000** 2:*10* 17:*8*
**404** 3:*15* 5:*8*
**444** 2:*10* 3:*6* 17:*7*
**48th** 5:*20*

**4th** 1:*19* 2:*4, 13*
  17:*6*

**< 5 >**
**501** 5:*6*
**52401** 3:*21*
**5th** 17:*19*

**< 6 >**
**6:37** 13:*10*
**6:41** 16:*14*
**60606** 5:*14*
**60606-0029** 3:*7*
**625** 3:*20*
**64112** 5:*21*
**643-6982** 4:*8*
**692-6795** 4:*18*

**< 8 >**
**816** 5:*22*
**873-2946** 5:*15*

**< 9 >**
**900** 5:*20*
**919** 4:*16*
**973** 4:*8*
**984-3680** 3:*8*

**< A >**
**a.m** 2:*5, 12* 17:*7*
**ability** 15:*2*
**absorb** 12:*10*
**accept** 14:*25*
**acceptable** 12:*4*
**account** 12:*18*
**acting** 17:*11*
**action** 15:*23*
**actual** 12:*11*
**add** 9:*24*
**addendum** 15:*22*
**addition** 14:*2*
**additional** 9:*25* 14:*12*
**adjourned** 16:*14*
**admonishment** 15:*12*
**afternoon** 7:*21*
**agree** 8:*6, 8*
**Agreed** 11:*9, 14*
**AHS** 6:*8* 9:*18*
**al** 1:*10*

**amount** 11:*19* 14:*10*
**ANDREW** 4:*5* 6:*13*
**anybody** 15:*19*
**applicable** 12:*14*
**approval** 12:*1*
**approved** 7:*10* 10:*10*
  14:*21*
**asherman@sillscummi**
  **s.com** 4:*9*
**asked** 9:*24*
**assets** 14:*12* 15:*1*
**assume** 8:*12* 12:*11*
**Atlanta** 3:*14*
**AUCTION** 1:*17* 2:*7*
  7:*3, 8, 19, 22, 24* 8:*21*
  9:*20* 10:*21, 23* 13:*13*
  14:*17* 15:*6, 8, 11, 13,*
  *17* 16:*1, 6, 11* 17:*3*
**Avenue** 4:*16*
**aware** 7:*19*

**< B >**
**back** 7:*15* 13:*11*
**backup** 11:*6, 24*
  12:*16*
**BANKRUPTCY** 1:*1*
  2:*10* 10:*11, 25*
**BAYMAN** 6:*12*
**beginning** 8:*20* 10:*7*
**BEHALF** 3:*3* 4:*11*
  5:*3* 6:*2, 3, 4, 5* 8:*5, 7,*
  *11, 15, 18* 9:*8* 11:*7,*
  *11, 13, 17* 16:*4*
**believe** 14:*24*
**benefit** 8:*12*
**best** 12:*24*
**bid** 7:*9, 10* 8:*22* 9:*4,*
  *20, 23* 10:*4, 20, 25*
  11:*3, 16, 19, 22* 12:*24*
  13:*3, 16, 25* 14:*3, 18,*
  *19, 20, 24* 15:*6*
**bidder** 7:*13* 10:*2, 10,*
  *11, 13, 18, 21* 11:*6, 23,*
  *24* 12:*16*
**bidders** 7:*16* 9:*5*
  10:*15*
**bidding** 7:*3, 6, 15*
  8:*24* 13:*17*
**bids** 7:*18* 14:*25*

**bona** 11:*4*
**bondholder** 9:*16*
**Bondholders** 8:*25*
  9:*1, 9* 10:*6, 8* 11:*8*
  14:*7*
**BORODKIN** 6:*2*
**break** 13:*3, 6*

**< C >**
**CAPITAL** 4:*12*
**capped** 14:*9*
**care** 15:*19*
**Case** 1:*4* 7:*10* 9:*6*
  17:*17*
**Cedar** 3:*21*
**Central** 2:*5, 12*
**certification** 11:*2*
**Chicago** 1:*18* 2:*11*
  3:*7* 5:*14* 17:*8*
**chose** 14:*19*
**chosen** 11:*23*
**chughes@polsinelli.co**
  **m** 5:*23*
**CITY** 1:*10* 2:*11*
  5:*21* 17:*8*
**Civil** 2:*9*
**CLAMON** 6:*6*
**CLANCY** 6:*5*
**clarifications** 9:*4*
**CLIFFORD** 6:*11*
**clinics** 13:*18* 14:*13,*
  *14*
**close** 12:*7* 15:*2*
**closes** 12:*13*
**closing** 11:*25* 12:*5, 9*
**COCO** 4:*14* 8:*7, 17*
  9:*7* 11:*9* 14:*1*
**Code** 10:*25*
**COHN** 4:*13*
**collusion** 10:*24*
**come** 7:*15*
**coming** 16:*10*
**commencing** 2:*12*
**Commerce** 5:*6*
**commit** 12:*15*
**commitment** 10:*5*
**commits** 12:*5*
**COMMITTEE** 4:*3*
  12:*22, 23* 15:*5*

**COMPANY** 4:*11*
**complete** 10:*17* 17:*13*
**COMPUTERSHARE**
 4:*11* 6:*7* 8:*18* 9:*13*,
 *21* 10:*8* 14:*8*
**Computershare's** 9:*20*
**conclude** 15:*11*
**conditions** 11:*25*
 12:*9*
**conducted** 7:*8*, *25*
**CONFIDENTIAL**
 1:*21* 15:*13*
**confidentiality** 15:*22*
**confirm** 8:*4*, *13*
 10:*18*, *22* 11:*7*, *9*, *11*
 12:*20*
**confirmed** 11:*14*
**connection** 11:*1*
**CONNELL** 6:*7* 9:*11*
**consultation** 12:*19*,
 *20* 15:*4*
**Consulting** 6:*10*, *11*
**consummate** 11:*4*
**continuance** 15:*25*
**continuation** 13:*13*
**continue** 15:*10* 16:*5*
**CONTINUED** 4:*1*
 5:*1* 15:*23* 16:*2*, *6*, *12*
**control** 14:*5*
**convenient** 15:*10*
**Cook** 2:*11* 17:*5*, *8*
**CORBIN** 6:*7* 9:*11*,
 *13*
**correct** 13:*21*, *25*
 14:*1* 17:*13*
**correctly** 13:*20*
**costs** 12:*13*
**COUNSEL** 4:*3* 9:*15*
 17:*17*
**County** 2:*11* 17:*5*, *8*
**COURT** 1:*1* 2:*10*
 8:*12* 10:*11* 14:*21*
**cover** 10:*6*
**creditors** 12:*21*, *22*
 15:*4*
**CRR** 1:*24* 2:*8* 17:*5*,
 *23*
**CSR** 1:*24* 2:*8* 17:*4*,
 *23*

**CULLIN** 5:*19*
**CUMMIS** 4:*4*
**current** 12:*23*

**< D >**
**DANIEL** 3:*12*
**date** 12:*18*
**DAVID** 5:*5* 8:*14*
 16:*3*
**day** 2:*13* 7:*24* 17:*6*,
 *19*
**Daylight** 2:*5*, *13*
**Debtors** 1:*12* 3:*3*
 6:*2*, *3*, *4*, *5* 12:*3*, *12*,
 *22* 14:*23*
**debtor's** 14:*13*
**December** 10:*7* 12:*3*
 14:*11*
**deemed** 10:*13*
**depending** 7:*21*
**designate** 8:*10*
**designated** 10:*9*
**despite** 12:*9*
**determine** 12:*23*
**dgordon@polsinelli.co
 m** 5:*9*
**DINAN** 6:*9* 8:*25*
 9:*14*
**discretion** 14:*24*
**discuss** 15:*6*, *14*
**DISTRICT** 1:*1*
**dmsimon@mwe.com**
 3:*16*
**DR** 6:*5*
**duration** 7:*19*

**< E >**
**effect** 10:*3*
**Email** 3:*9*, *16*, *23* 4:*9*,
 *19* 5:*9*, *16*, *23*
**EMERY** 3:*4*, *11*
**employee** 12:*2*
**engaged** 10:*23*
**enhance** 11:*22*
**ensure** 15:*1*
**entering** 12:*2*
**et** 1:*10*
**evening** 16:*10*
**events** 15:*15*

**everybody** 16:*10*
**exchange** 14:*11*
**expenses** 10:*6*
**extension** 15:*16*
**extent** 10:*8*

**< F >**
**fact** 12:*9* 15:*3*
**fails** 12:*7*
**fair** 15:*24*
**FAISAL** 6:*8* 9:*18*
**far** 15:*21*
**Federal** 2:*9*
**FELICIA** 3:*5*
**FERRIS** 4:*13*
**fide** 11:*4*
**filing** 15:*25*
**find** 15:*9*
**First** 3:*20*
**floor** 9:*2* 10:*16*
**flourish** 9:*25*
**follow** 16:*11*
**following** 11:*22*
**follows** 14:*2*
**foregoing** 17:*3*, *12*
**forth** 7:*14*
**forward** 9:*5*
**fperlman@mwe.com**
 3:*9*
**frames** 7:*18*
**free** 15:*17*
**FTI** 6:*10*, *11*
**full** 13:*17*
**further** 9:*4*

**< G >**
**GANTI** 6:*10*
**general** 9:*15*
**Georgia** 3:*14*
**GERBER** 3:*5*
**GILL** 6:*8* 9:*18*
**give** 14:*19* 15:*7*, *12*
**given** 15:*3*
**go** 13:*11* 15:*20*
**goes** 14:*20*
**going** 13:*11*
**GOODE** 3:*18*
**good-faith** 7:*14* 11:*3*

**GORDON** 5:*5* 8:*5*,
 *14* 11:*13*, *18* 13:*5*, *21*
 16:*3*
**GREG** 1:*24* 2:*8*
 17:*4*, *23*
**GRIKIS** 5:*12*
**GROSS** 4:*4*
**guess** 14:*6*
**guys** 10:*13*

**< H >**
**H2C** 6:*12*, *13*
**hearing** 15:*9*
**hereinabove** 17:*14*
**highest** 12:*23*
**HOLLOW** 4:*12* 6:*9*
 8:*23* 9:*14*, *15*, *16*
 11:*8* 12:*25* 13:*23*, *24*
 14:*8*
**Hollow's** 14:*3*
**HOSPITAL** 1:*10*
 9:*22* 10:*7* 13:*14*, *17*,
 *19*
**hour** 15:*3* 17:*7*
**HUGHES** 5:*19*

**< I >**
**identified** 9:*19*
**identify** 9:*10*
**Illinois** 1:*18* 2:*12*
 3:*7* 5:*14* 17:*6*, *9*
**include** 10:*5*
**included** 16:*9*
**including** 12:*1*, *13*
**increasing** 13:*16*
**increments** 7:*11*
**individual** 13:*18*
**information** 12:*17*
**informed** 13:*15*
**intends** 11:*4*
**interest** 14:*13*
**interested** 17:*16*
**IOWA** 1:*2*, *10* 3:*21*
 5:*3* 6:*6* 8:*6*, *16*
 14:*19*
**its** 11:*2*, *22* 13:*16*, *25*
 15:*5*

**< J >**

Jersey 4:7
JIM 6:3
JOB 1:25
JOHN 6:9 9:14
JOSEPH 6:6

< K >
Kansas 5:21
KARA 6:2
kin 17:17
kind 7:2
know 8:23 10:1

< L >
Lake 2:11 3:6 17:7
LEAF 3:19
leaseback 12:2
leased 14:14
legally 8:1
LEVIN 4:13 8:17 9:8
lgrikis@polsinelli.com 5:16
License 17:24
LINAS 5:12
losses 12:11 14:9

< M >
majority 9:16
making 10:2 13:23, 24
manner 11:22
MARK 6:4
master 8:7, 19 9:8, 12
maximize 15:1
MCDERMOTT 3:4, 11
meaning 10:24
MEGAN 4:15
members 15:5
MERCY 1:10 13:14
million 11:19
Minimum 7:10
MINTZ 4:13 8:17 9:8
Missouri 5:21
modification 11:16 13:25 14:2

modified 10:4
month 12:3
move 9:5
mpreusker@mintz.com 4:20
mutually 15:9

< N >
NARENDRA 6:10
Nashville 5:7
NATHAN 4:14 8:17 9:3, 7
NE 3:13
need 15:16
New 4:7, 17
Newark 4:7
nfcoco@mintz.com 4:19
North 5:13
NORTHERN 1:2
noteholder 9:17
notice 15:7, 25
notices 15:16
November 12:6, 8 14:5, 6
NYEMASTER 3:18

< O >
objections 7:23, 25 14:22
Obviously 7:8
o'clock 2:12
October 1:19 2:4, 13 17:6, 20
offer 11:4
Okay 9:23
Once 7:12, 16
operating 10:6 12:11 14:9
operational 14:4
operator 9:21
ORMAN 6:13
outside 14:20
owned 14:14

< P >
P.C 3:18 4:4
p.m 13:10 16:14
page 7:5

parking 14:15
part 9:20 10:5
participate 16:6
participating 10:21
parties 7:6 15:9, 10, 17 17:18
partner 9:19
party 7:23 8:2, 3, 10, 11 12:19, 20 15:4
Peachtree 3:13
peculiar 14:20
period 14:10
PERLMAN 3:5 7:1 8:9, 20 9:1 10:12 11:10, 15 12:17 13:7, 11, 22 14:23 15:24 16:7
Place 5:20 7:18 17:14
Plaza 4:6 5:13
please 10:18 11:7, 11
point 7:23 12:21 13:1
POLSINELLI 5:4, 11, 18 8:15 16:3
PORTER 6:3
post-closing 9:22
posterity 9:11
potentially 7:6
precision 14:7
PRESENT 3:1 4:1 5:1 6:1 9:12, 14
PRESTON 4:12 6:9 8:23 9:14, 15, 16 11:8 12:25 13:23, 24 14:3, 8
PREUSKER 4:15
prior 15:8
Procedure 2:9
procedures 7:4, 9, 15 10:20 14:21, 25
proceed 8:9
proceeding 7:22 15:13 16:13
PROCEEDINGS 1:17 2:7 17:10, 14 14:17
process 8:22 10:14 14:17
properties 14:15

proposal 14:4
proposed 11:5
provide 10:20
public 16:1
publicly 15:15
purchaser 7:14
pursuant 2:8
put 14:16
putting 7:17

< Q >
qualified 7:12, 16 9:5 10:2, 13, 15, 18, 21 11:3

< R >
Rapids 3:21
reach 15:5
ready 13:2
reaffirms 11:2
received 8:21, 22
recess 13:9
reconvening 15:8
record 7:2, 7, 13 8:1 9:10 10:17, 22 11:17 12:18 13:8, 12 14:17 15:20 16:8 17:13
referred 17:15
regarding 7:13
regulatory 12:1
reiterate 7:2
REPORT 1:17 2:7
REPORTED 1:24 17:4
reporter's 8:12
representation 10:3
representative 9:17
required 10:22
reserve 14:22 16:5
respect 7:18 10:25 13:16, 18
responsible 14:9
RICHARD 6:12
right 7:20 8:3
rights 16:5
Riverfront 4:6
Riverside 5:13
rleaf@nyemaster.com 3:23

**RMR**  1:*24*  2:*8*  17:*4,*
*23*
**room**  7:*7*
**ROY**  3:*19*
**Rules**  2:*9*  7:*3*
**run**  9:*21*

**< S >**
**sake**  9:*11*
**sale**  11:*2*  15:*8*
**sales**  15:*2*
**satisfaction**  11:*25*
**satisfied**  12:*10*
**scope**  14:*20*
**SE**  3:*20*
**Securities**  6:*12, 13*
**see**  9:*3*  13:*2*
**selected**  9:*21*  10:*9*
*11:5*
**serving**  9:*12*
**set**  7:*14*
**SHERMAN**  4:*5*
*15:21*
**short**  13:*5*
**shorthand**  17:*4, 11*
**shortly**  16:*11*
**shutdown**  12:*13*
**signature**  17:*19*
**SILLS**  4:*4*
**similar**  11:*16*
**SIMON**  3:*12*
**somebody**  8:*10*
**sort**  14:*18*
**speak**  9:*3*
**speaking**  8:*11, 15, 18*
**speaks**  9:*23*
**stand**  11:*19*
**start**  7:*1*
**started**  8:*21*
**STATE**  5:*3*  8:*5, 16*
*17:5*
**stated**  7:*25*  12:*18*
**statement**  7:*12*
*10:17*  15:*22*
**statements**  7:*7*  15:*20*
*16:7*
**STATES**  1:*1*  2:*10*
**stating**  13:*20*
**status**  7:*14*
**stenographer**  17:*12*

**Street**  2:*11*  3:*6, 13,*
*20*  5:*6*  17:*7*
**stub**  14:*10*
**subject**  11:*24*  12:*1*
**submitted**  11:*1, 20*
**subsequent**  7:*18*  13:*3*
**subsets**  14:*25*
**Suite**  2:*10*  3:*13, 20*
*5:6, 13, 20*  17:*8*
**supplemental**  14:*18*
**sure**  7:*4*  8:*14*  9:*7*
*11:18*
**suspending**  15:*6*

**< T >**
**take**  13:*3, 5*  14:*4*
**taken**  2:*7*  13:*9*
*17:10*
**Tennessee**  5:*7*
**terms**  9:*23*
**Thank**  9:*1*  10:*12*
*11:10, 15*  13:*7, 22*
*16:10*
**thing**  14:*16*
**Third**  4:*16*
**THOMAS**  6:*5*
**Time**  2:*5, 13*  7:*17*
*12:12, 21*  13:*4, 6*
*15:7, 10*  17:*14*
**title**  14:*14*
**TJC**  1:*4*
**today**  15:*15*
**TONEY**  6:*4*
**topping**  14:*19*
**transaction**  11:*5*
*12:5, 8*
**true**  17:*13*
**TRUST**  4:*11*
**trustee**  8:*8, 19*  9:*8,*
*12*
**turn**  7:*5*  9:*2*  10:*16*
*13:1*
**two**  8:*13*  10:*15*

**< U >**
**unable**  15:*5*
**undersigned**  17:*11, 16*
**understanding**  8:*4*
*10:1, 19*  13:*24*

**Understood**  14:*23*
**UNITED**  1:*1*  2:*9*
**UNIVERSITY**  5:*3*
*6:6*  8:*6, 16*  11:*12, 13,*
*17, 18, 21, 23*  12:*4, 7,*
*10, 12, 15*  13:*2, 15*
*14:18*  16:*4*

**< V >**
**value**  15:*1*

**< W >**
**waived**  8:*1*
**want**  7:*2*  8:*23*
*14:16*  15:*12*  16:*4*
**way**  10:*4*
**Wednesday**  1:*19*
**WEILAND**  1:*24*  2:*8*
*17:4, 23*
**we're**  7:*4*  8:*20*  13:*11*
**West**  2:*10*  3:*6*  5:*20*
*17:7*
**we've**  14:*3*
**willing**  11:*21*
**winning**  10:*9, 10*
*11:5, 23*
**Witness**  17:*19*

**< Y >**
**York**  4:*17*

**< Z >**
**ZUCKER**  6:*11*

## WORD LIST

**< $ >**
**$100,000**  *(1)*
**$20**  *(1)*
**$750,000**  *(1)*

**< 0 >**
**07102**  *(1)*
**084-003472**  *(1)*

**< 1 >**
**1:06**  *(1)*
**10:00**  *(3)*
**10022**  *(1)*
**1180**  *(1)*
**1300**  *(1)*
**150**  *(1)*
**15-day**  *(1)*
**15th**  *(3)*
**1st**  *(2)*

**< 2 >**
**2023**  *(8)*
**212**  *(1)*
**23-00623**  *(1)*
**23298**  *(1)*
**253-6005**  *(1)*
**260-8535**  *(1)*
**286-7000**  *(1)*

**< 3 >**
**3000**  *(1)*
**30309**  *(1)*
**30th**  *(2)*
**312**  *(2)*
**319**  *(1)*
**3350**  *(1)*
**360-4121**  *(1)*
**363(n**  *(1)*
**37219**  *(1)*

**< 4 >**
**400**  *(1)*
**4000**  *(2)*
**404**  *(2)*
**444**  *(3)*
**48th**  *(1)*
**4th**  *(4)*

**< 5 >**
**501**  *(1)*
**52401**  *(1)*
**5th**  *(1)*

**< 6 >**
**6:37**  *(1)*
**6:41**  *(1)*
**60606**  *(1)*
**60606-0029**  *(1)*
**625**  *(1)*
**64112**  *(1)*
**643-6982**  *(1)*
**692-6795**  *(1)*

**< 8 >**
**816**  *(1)*
**873-2946**  *(1)*

**< 9 >**
**900**  *(2)*
**919**  *(1)*
**973**  *(1)*
**984-3680**  *(1)*

**< A >**
**a.m**  *(3)*
**ability**  *(1)*
**absorb**  *(1)*
**accept**  *(1)*
**acceptable**  *(1)*
**account**  *(1)*
**acting**  *(1)*
**action**  *(1)*
**actual**  *(1)*
**add**  *(1)*
**addendum**  *(1)*
**addition**  *(1)*
**additional**  *(2)*
**adjourned**  *(1)*
**admonishment**  *(1)*
**afternoon**  *(1)*
**agree**  *(2)*
**Agreed**  *(2)*
**AHS**  *(2)*
**al**  *(1)*
**amount**  *(2)*
**ANDREW**  *(2)*

**anybody**  *(1)*
**applicable**  *(1)*
**approval**  *(1)*
**approved**  *(3)*
**asherman@sillscummins.com**  *(1)*
**asked**  *(1)*
**assets**  *(2)*
**assume**  *(2)*
**Atlanta**  *(1)*
**AUCTION**  *(22)*
**Avenue**  *(1)*
**aware**  *(1)*

**< B >**
**back**  *(2)*
**backup**  *(3)*
**BANKRUPTCY**  *(4)*
**BAYMAN**  *(1)*
**beginning**  *(2)*
**BEHALF**  *(18)*
**believe**  *(1)*
**benefit**  *(1)*
**best**  *(1)*
**bid**  *(24)*
**bidder**  *(12)*
**bidders**  *(3)*
**bidding**  *(5)*
**bids**  *(2)*
**bona**  *(1)*
**bondholder**  *(1)*
**Bondholders**  *(7)*
**BORODKIN**  *(1)*
**break**  *(2)*

**< C >**
**CAPITAL**  *(1)*
**capped**  *(1)*
**care**  *(1)*
**Case**  *(4)*
**Cedar**  *(1)*
**Central**  *(2)*
**certification**  *(1)*
**Chicago**  *(5)*
**chose**  *(1)*
**chosen**  *(1)*
**chughes@polsinelli.com**  *(1)*
**CITY**  *(4)*

**Civil**  *(1)*
**CLAMON**  *(1)*
**CLANCY**  *(1)*
**clarifications**  *(1)*
**CLIFFORD**  *(1)*
**clinics**  *(3)*
**close**  *(2)*
**closes**  *(1)*
**closing**  *(3)*
**COCO**  *(8)*
**Code**  *(1)*
**COHN**  *(1)*
**collusion**  *(1)*
**come**  *(1)*
**coming**  *(1)*
**commencing**  *(1)*
**Commerce**  *(1)*
**commit**  *(1)*
**commitment**  *(1)*
**commits**  *(1)*
**COMMITTEE**  *(4)*
**COMPANY**  *(1)*
**complete**  *(2)*
**COMPUTERSHARE**  *(7)*
**Computershare's**  *(1)*
**conclude**  *(1)*
**conditions**  *(2)*
**conducted**  *(2)*
**CONFIDENTIAL**  *(2)*
**confidentiality**  *(1)*
**confirm**  *(8)*
**confirmed**  *(1)*
**connection**  *(1)*
**CONNELL**  *(2)*
**consultation**  *(4)*
**Consulting**  *(2)*
**consummate**  *(1)*
**continuance**  *(1)*
**continuation**  *(1)*
**continue**  *(2)*
**CONTINUED**  *(6)*
**control**  *(1)*
**convenient**  *(1)*
**Cook**  *(3)*
**CORBIN**  *(3)*
**correct**  *(4)*
**correctly**  *(1)*
**costs**  *(1)*

**COUNSEL** *(3)*
**County** *(3)*
**COURT** *(5)*
**cover** *(1)*
**creditors** *(3)*
**CRR** *(4)*
**CSR** *(4)*
**CULLIN** *(1)*
**CUMMIS** *(1)*
**current** *(1)*

**< D >**
**DANIEL** *(1)*
**date** *(1)*
**DAVID** *(3)*
**day** *(4)*
**Daylight** *(2)*
**Debtors** *(10)*
**debtor's** *(1)*
**December** *(3)*
**deemed** *(1)*
**depending** *(1)*
**designate** *(1)*
**designated** *(1)*
**despite** *(1)*
**determine** *(1)*
**dgordon@polsinelli.com** *(1)*
**DINAN** *(3)*
**discretion** *(1)*
**discuss** *(2)*
**DISTRICT** *(1)*
**dmsimon@mwe.com** *(1)*
**DR** *(1)*
**duration** *(1)*

**< E >**
**effect** *(1)*
**Email** *(8)*
**EMERY** *(2)*
**employee** *(1)*
**engaged** *(1)*
**enhance** *(1)*
**ensure** *(1)*
**entering** *(1)*
**et** *(1)*
**evening** *(1)*
**events** *(1)*

**everybody** *(1)*
**exchange** *(1)*
**expenses** *(1)*
**extension** *(1)*
**extent** *(1)*

**< F >**
**fact** *(2)*
**fails** *(1)*
**fair** *(1)*
**FAISAL** *(2)*
**far** *(1)*
**Federal** *(1)*
**FELICIA** *(1)*
**FERRIS** *(1)*
**fide** *(1)*
**filing** *(1)*
**find** *(1)*
**First** *(1)*
**floor** *(2)*
**flourish** *(1)*
**follow** *(1)*
**following** *(1)*
**follows** *(1)*
**foregoing** *(2)*
**forth** *(1)*
**forward** *(1)*
**fperlman@mwe.com** *(1)*
**frames** *(1)*
**free** *(1)*
**FTI** *(2)*
**full** *(1)*
**further** *(1)*

**< G >**
**GANTI** *(1)*
**general** *(1)*
**Georgia** *(1)*
**GERBER** *(1)*
**GILL** *(2)*
**give** *(3)*
**given** *(1)*
**go** *(2)*
**goes** *(1)*
**going** *(1)*
**GOODE** *(1)*
**good-faith** *(2)*
**GORDON** *(10)*

**GREG** *(4)*
**GRIKIS** *(1)*
**GROSS** *(1)*
**guess** *(1)*
**guys** *(1)*

**< H >**
**H2C** *(2)*
**hearing** *(1)*
**hereinabove** *(1)*
**highest** *(1)*
**HOLLOW** *(11)*
**Hollow's** *(1)*
**HOSPITAL** *(6)*
**hour** *(2)*
**HUGHES** *(1)*

**< I >**
**identified** *(1)*
**identify** *(1)*
**Illinois** *(6)*
**include** *(1)*
**included** *(1)*
**including** *(2)*
**increasing** *(1)*
**increments** *(1)*
**individual** *(1)*
**information** *(1)*
**informed** *(1)*
**intends** *(1)*
**interest** *(1)*
**interested** *(1)*
**IOWA** *(9)*
**its** *(5)*

**< J >**
**Jersey** *(1)*
**JIM** *(1)*
**JOB** *(1)*
**JOHN** *(2)*
**JOSEPH** *(1)*

**< K >**
**Kansas** *(1)*
**KARA** *(1)*
**kin** *(1)*
**kind** *(1)*
**know** *(2)*

**< L >**
**Lake** *(3)*
**LEAF** *(1)*
**leaseback** *(1)*
**leased** *(1)*
**legally** *(1)*
**LEVIN** *(3)*
**lgrikis@polsinelli.com** *(1)*
**License** *(1)*
**LINAS** *(1)*
**losses** *(2)*

**< M >**
**majority** *(1)*
**making** *(3)*
**manner** *(1)*
**MARK** *(1)*
**master** *(4)*
**maximize** *(1)*
**MCDERMOTT** *(2)*
**meaning** *(1)*
**MEGAN** *(1)*
**members** *(1)*
**MERCY** *(2)*
**million** *(1)*
**Minimum** *(1)*
**MINTZ** *(3)*
**Missouri** *(1)*
**modification** *(3)*
**modified** *(1)*
**month** *(1)*
**move** *(1)*
**mpreusker@mintz.com** *(1)*
**mutually** *(1)*

**< N >**
**NARENDRA** *(1)*
**Nashville** *(1)*
**NATHAN** *(4)*
**NE** *(1)*
**need** *(1)*
**New** *(3)*
**Newark** *(1)*
**nfcoco@mintz.com** *(1)*
**North** *(1)*
**NORTHERN** *(1)*

noteholder *(1)*
notice *(2)*
notices *(1)*
November *(5)*
NYEMASTER *(1)*

< O >
objections *(3)*
Obviously *(1)*
o'clock *(1)*
October *(5)*
offer *(1)*
Okay *(1)*
Once *(2)*
operating *(3)*
operational *(1)*
operator *(1)*
ORMAN *(1)*
outside *(1)*
owned *(1)*

< P >
P.C *(2)*
p.m *(3)*
page *(1)*
parking *(1)*
part *(2)*
participate *(1)*
participating *(1)*
parties *(5)*
partner *(1)*
party *(8)*
Peachtree *(1)*
peculiar *(1)*
period *(1)*
PERLMAN *(15)*
Place *(3)*
Plaza *(2)*
please *(3)*
point *(1)*
POLSINELLI *(5)*
PORTER *(1)*
post-closing *(1)*
posterity *(1)*
potentially *(1)*
precision *(1)*
PRESENT *(6)*
PRESTON *(12)*
PREUSKER *(1)*

prior *(1)*
Procedure *(1)*
procedures *(6)*
proceed *(1)*
proceeding *(3)*
PROCEEDINGS *(4)*
process *(3)*
properties *(1)*
proposal *(1)*
proposed *(1)*
provide *(1)*
public *(1)*
publicly *(1)*
purchaser *(1)*
pursuant *(1)*
put *(1)*
putting *(1)*

< Q >
qualified *(9)*

< R >
Rapids *(1)*
reach *(1)*
ready *(1)*
reaffirms *(1)*
received *(2)*
recess *(1)*
reconvening *(1)*
record *(15)*
referred *(1)*
regarding *(1)*
regulatory *(1)*
reiterate *(1)*
REPORT *(2)*
REPORTED *(2)*
reporter's *(1)*
representation *(1)*
representative *(1)*
required *(1)*
reserve *(2)*
respect *(4)*
responsible *(1)*
RICHARD *(1)*
right *(2)*
rights *(1)*
Riverfront *(1)*
Riverside *(1)*
rleaf@nyemaster.com

*(1)*
RMR *(4)*
room *(1)*
ROY *(1)*
Rules *(2)*
run *(1)*

< S >
sake *(1)*
sale *(2)*
sales *(1)*
satisfaction *(1)*
satisfied *(1)*
scope *(1)*
SE *(1)*
Securities *(2)*
see *(2)*
selected *(3)*
serving *(1)*
set *(1)*
SHERMAN *(2)*
short *(1)*
shorthand *(2)*
shortly *(1)*
shutdown *(1)*
signature *(1)*
SILLS *(1)*
similar *(1)*
SIMON *(1)*
somebody *(1)*
sort *(1)*
speak *(1)*
speaking *(3)*
speaks *(1)*
stand *(1)*
start *(1)*
started *(1)*
STATE *(4)*
stated *(2)*
statement *(3)*
statements *(3)*
STATES *(2)*
stating *(1)*
status *(1)*
stenographer *(1)*
Street *(6)*
stub *(1)*
subject *(2)*
submitted *(3)*

subsequent *(2)*
subsets *(1)*
Suite *(7)*
supplemental *(1)*
sure *(4)*
suspending *(1)*

< T >
take *(3)*
taken *(1)*
Tennessee *(1)*
terms *(1)*
Thank *(7)*
thing *(1)*
Third *(1)*
THOMAS *(1)*
Time *(11)*
title *(1)*
TJC *(1)*
today *(1)*
TONEY *(1)*
topping *(1)*
transaction *(3)*
true *(1)*
TRUST *(1)*
trustee *(4)*
turn *(4)*
two *(2)*

< U >
unable *(1)*
undersigned *(2)*
understanding *(4)*
Understood *(1)*
UNITED *(2)*
UNIVERSITY *(20)*

< V >
value *(1)*

< W >
waived *(1)*
want *(5)*
way *(1)*
Wednesday *(1)*
WEILAND *(4)*
we're *(3)*
West *(4)*
we've *(1)*

**willing**  *(1)*
**winning**  *(4)*
**Witness**  *(1)*

**< Y >**
**York**  *(2)*

**< Z >**
**ZUCKER**  *(1)*

## EXHIBIT B

**October 10, 2023 Auction Transcript**

```
1

2              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA
3                   Case No. 23-00623 (TJC)

4

5     --------------------
      In re:
6
      MERCY HOSPITAL, IOWA CITY, IOWA,
7     et al.,

8      Debtors.
      --------------------
9

10
                      --------------------
11            REPORT OF AUCTION PROCEEDINGS
                        Via Zoom
12            Tuesday, October 10th, 2023
                      --------------------
13

14                     CONFIDENTIAL

15

16   This transcript portion contains information subject to

17   a Confidentiality Agreement and shall be used

18   only in accordance therewith.

19

20

21

22

23    REPORTED BY:  Karen Friedlander, CCR-NJ, RCR-NY,

24    RDR, CRR

25    JOB NO.: 23527
```

1                    REPORT OF AUCTION PROCEEDINGS,

2       taken before Karen Friedlander, CCR-NJ, RCR-NY,

3       RDR, CRR, pursuant to the Federal Rules of Civil

4       Procedure for the United States Bankruptcy

5       Court, via Zoom, commencing at 10:00 o'clock

6       a.m. Central Daylight Time, on the 10th day of

7       October, 2023.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    APPEARANCES:

 2    MCDERMOTT WILL & EMERY LLP
      BY:  DANIEL M. SIMON, ESQUIRE
 3    1180 Peachtree Street, NE
      Suite 3350
 4    Atlanta, GA 30309
      (404) 260 8554
 5    Dmsimon@mwe.com
      - and -
 6    MCDERMOTT WILL & EMERY LLP
      BY:  FELICIA GERBER PERLMAN, ESQUIRE
 7        MEGAN ROONEY, ESQUIRE
      444 West Lake Street
 8    Chicago, IL  60606-0029
      (312) 984 3680
 9    Fperlman@mwe.com
      Mrooney@mwe.com
10    Counsel for the Debtors

11    NYEMASTER GOODE, P.C.
      BY:  ROY LEAF, ESQUIRE
12    700 Walnut Street
      Suite 1600
13    Des Moines, Iowa 50309
      (515) 283-3100
14    Rleaf@nyemaster.com
      Counsel for Debtors
15
      SILLS CUMMIS & GROSS P.C.
16    BY:  ANDREW H. SHERMAN, ESQUIRE
           BORIS MANKOVETSKY, ESQUIRE
17    One Riverfront Plaza
      Newark, New Jersey 07102
18    (973) 643-6982
      Asherman@sillscummis.com
19    Bmankovetskiy@sillscummis.com
      Counsel for the Committee
20
      MINTZ, LEVIN, COHN, FERRIS
21    BY:  NATHAN F. COCO, ESQUIRE
           MEGAN M. PREUSKER, ESQUIRE
22    919 Third Avenue
      New York, New York 10022
23    (212) 692-6795
      Nfcoco@mintz.com
24    Mpreusker@mintz.com
      Counsel for Computershare Trust Company and
25    Preston Hollow Capital
```

1   APPEARANCES CONTINUED:

2   POLSINELLI
    BY:  DAVID E. GORDON, ESQUIRE
3   501 Commerce Street, Suite 1300
    Nashville, Tennessee 37219
4   (404) 253-6005
    Dgordon@polsinelli.com
5    - and -
    POLSINELLI
6   BY:  LINAS J. GRIKIS, ESQUIRE
    150 North Riverside Plaza, Suite 300
7   Chicago, Illinois 60606
    (312) 873-2946
8   Lgrikis@polsinelli.com
     - and -
9   POLSINELLI
    BY:  CULLIN B. HUGHES, ESQUIRE
10  900 West 48th Place, Suite 900
    Kansas City, Missouri 64112
11  (816) 360-4121
    Chughes@polsinelli.com
12  Counsel for The State University of Iowa

13  SIMMONS PERRINE MOYER BERGMAN PLC
    BY:  SAMUEL GRAY, ESQUIRE
14  115 3rd Street SE
    Suite 1200
15  Cedar Rapids, Iowa 52401
    (319) 366-7641
16  Counsel for The Mercy Hospital Foundation

17
    ALSO PRESENT:
18
    JOHN DINAN, Preston Hollow
19  JIM PORTER, on behalf of the Debtors
    MARK TONEY, on behalf of the Debtors
20  JOSEPH CLAMON, University of Iowa
    CORBIN CONNELL, Computershare
21  FAISAL GILL, AHS
    NARENDRA GANTI, FTI Consulting
22  CLIFFORD A. ZUCKER, FTI Consulting
    C. RICHARD BAYMAN, H2C Securities Inc.
23  ANDREW S. ORMAN, H2C Securities Inc.

24

25

1          MS. PERLMAN:  For the record,

2   this is Felicia Gerber Perlman on behalf of

3   Mercy Hospital, the debtors, and we are starting

4   the continuation of the auction that began last

5   Wednesday, October 4th, and took a break as we

6   were discussing bids, when they were coming in,

7   to give parties a time to evaluate and go back

8   and parch the committee to talk with its

9   constituents.

10          So with that, I'd like to reopen

11  the auction by looking to Preston Hollow to see

12  if they have any changes to the bid they made on

13  the record with respect to the clinics and the

14  parking, which my understanding was, and the

15  record will stand for itself, but for the sake

16  of clarity, starting the auction is 750,000 for

17  all the clinics and all the parking.

18          So, Nathan, do you have any

19  modifications or comments on that bid?

20          MR. COCO:  Yeah, thank you,

21  Felicia.

22          MR. DINAN:  Excuse me.  Excuse

23  me, Nathan.  I'm sorry.

24          Felicia, I just want for clarity,

25  the $750,000 bid was related to -- I want to

 1   make sure we got this correct -- was related to

 2   all of the real estate, which included the

 3   clinics, the lots, the vacant lots, the parking

 4   lots, and included the old Cancer Center or

 5   what's referred to as MOB 2, which is

 6   unoccupied.  That was the $750,000 number.

 7                    I thought we revised that on the

 8   record that to the extent we were carving out

 9   and excluding the Medical Office Building Number

10   2 or the old Cancer Center and the adjacent

11   parking to that, that the bid was for 600,000 of

12   covering additional operating losses, commencing

13   on November 15th.

14                    I just don't remember what the

15   record reflected.  But those were the two --

16   those were the two variations.

17                    MS. PERLMAN:  I don't believe the

18   600,000 was ever made on the record, so that's

19   what I was looking for, indication from Nathan.

20                    I believe, and we could check the

21   record if it becomes relevant, which I don't

22   think it will, that the 750 included all of the

23   parking, including the parking related to the

24   MOB, but not the building itself; that the

25   statement on the record was the clinics and all

1     the parking versus the clinics and not including

2     the parking at the MOB.

3                     MR. DINAN:  Correct.

4                     MS. PERLMAN:  But for now,

5     Nathan, what is -- do you have an update to or

6     clarification modification with respect to that

7     bid?

8                     MR. COCO:  We do, we do, and it's

9     consistent with precisely what Mr. Dinan just

10    said, which is that as an alternative to our

11    $750,000 offer, we're prepared to make a

12    $600,000 offer using the same structured format.

13                    It would be a $600,000 offer that

14    would be in the form of accepting interim

15    operational control instead of on November 30th

16    or December 1st, on November 15th, and assuming

17    operating losses up to a capped amount of

18    600,000 as consideration for all of Mercy's

19    clinics and the parking -- the parking

20    properties, but excluding the MOB 2 property and

21    the adjacent parking lot to the MOB 2 property.

22                    And so, you know, this was an

23    evolution from our original bid, which was

24    announced on the record last Wednesday, which

25    was a $27 million bid plus a commitment to take

1    operational control on an interim basis,

2    beginning December 1st, and assuming

3    responsibility for any operating losses that

4    accrue, beginning on December 1st to the closing

5    date.

6                    JD, I'll just ask, is there any

7    additional details or flourish that I missed?

8                    MR. DINAN:  No.  That's correct.

9    Thank you.  You did it much more eloquently than

10   I did.

11                   MR. SHERMAN:  This is Andrew

12   Sherman for the Committee.

13                   Just for clarification, Mr. Coco.

14   You referred to parking.  Can you clarify the

15   parking.  Is it the lots that are interconnected

16   relating to the clinics, which is I think the

17   way you -- I heard it, but I just want to, for

18   clarity, if you could make that statement.

19                   MR. COCO:  Yeah, it's my

20   understanding that they are not connected to the

21   clinics, they are just separate parking lot

22   properties.

23                   MR. DINAN:  They're the patchwork

24   of, quote, parking lots and vacant lots.

25                   So this is including everything

 1    that was part of the original stalking horse bid

 2    that was -- I think was included in all of those

 3    assets.

 4                    So all of the parking lots, all

 5    of the vacant lots that were part of the

 6    stalking horse bid, with the exception of the

 7    MOB 2 and the adjacent parking to MOB 2.

 8                    MR. SHERMAN:  And we refer to MOB

 9    2.  That's the cancer center?

10                    MR. DINAN:  Correct.

11                    MS. PERLMAN:  Does the University

12    have a counterresponse to that offer?

13                    MR. GORDON:  The University does.

14    So David Gordon on behalf of the State

15    University of Iowa.

16                    The University does desire to bid

17    for the clinics.  But the University only wants

18    the clinics if they come with a hospital.

19                    And so University is prepared to

20    bid $27.1 million for the clinics, the hospital,

21    everything that was included in the original

22    stalking horse asset purchase agreement.

23                    You know, since the auction on

24    Wednesday, the University has had significant

25    time to reflect and have discussions with

 1   leadership, and in light of what the University

 2   views to be the risk to the community and the

 3   State of Iowa, based on the University's

 4   concerns about the competing bidder's ability

 5   and continuing to operate Mercy as a general

 6   acute-care hospital in a viable manner, the

 7   University of Iowa is willing to enhance its bid

 8   to bid $27.1 million for all of the assets that

 9   were in the original stalking horse asset

10   purchase agreement.  And just some points of

11   clarification on that.

12                    So if the University is chosen as

13   the winning bidder and not the backup bidder and

14   subject to the acquisition being timely approved

15   by the bankruptcy cohort, satisfaction of all

16   closing conditions of the APA, including

17   licensure and entering into an employee

18   leaseback with the debtors for the month of

19   December, if applicable, the University commits

20   to closing the transaction on or before

21   November 30th, 2023.

22                    If the University fails to close

23   on or before November 30th, 2023, despite the

24   fact that the closing conditions have been met,

25   the University will absorb the actual operating

 1    losses of the debtors until the University can

 2    close, and the University, in addition to

 3    bidding the $27.1 million, if the University is

 4    chosen as the winning bidder, not the backup

 5    bidder, the University commits to invest at

 6    least $25 million on information technology,

 7    infrastructure, physical plant infrastructure,

 8    including but not limited to the roof, the

 9    parking facilities and plan equipment and

10    medical equipment for the hospital, and the

11    University will commit to investing these $25

12    million within five years of closing.

13                    And just for clarification and

14    being consistent with our prior bid, the

15    University is not willing to serve as a backup

16    bidder.

17                    MS. PERLMAN:  Unless anyone has

18    comments to make on the record right at this

19    time, we are going to take a break and send

20    folks to virtual rooms and then we'll resume.

21                    MR. COCO:  Felicia, we do have a

22    comment to make on the record, which is that all

23    of this is completely improper; flies in the

24    face of the expressed conditions and terms of

25    the bid procedures.

1              The University of Iowa was

2    disqualified from participating in the auction

3    following its failure to make it a topping bid

4    last Wednesday at the auction.  Article 9,

5    Section (b)(4) of the bid procedures makes

6    clear, it's express, that if any bidder does not

7    participate in a round of overbids, it is deemed

8    disqualified for all purposes in the auction.

9              And even the University of Iowa's

10   nonconforming bid for just two of the clinics,

11   which, by the way, was never put on the record,

12   also was a nonconforming bid, although the bid

13   procedures do contemplate that a bidder may bid

14   for less than all of the assets, that may only

15   be done in connection with an overbid, once

16   again, based upon the express terms of the bid

17   procedures.

18              And so we were declared the

19   highest bidder on Wednesday.  There was no

20   competing bid after a full day of awaiting.  The

21   University of Iowa confirmed on the record that

22   it was not making an overbid on Wednesday.  At

23   that point, based on the bid procedures, it was

24   deemed disqualified and is disqualified for all

25   purposes.

1       And so this bid is nonconforming,

2    it's inappropriate, it's improper, it flies in

3    the face of bid procedures and cannot and should

4    not be considered by anybody and does not

5    require a response from the -- from

6    Computershare or Preston Hollow.

7              MR. GORDON:  So David Gordon --

8              MS. PERLMAN:  Go ahead.

9              MR. GORDON:  -- on behalf of the

10   University, just to respond to that.

11             You know, the University did

12   reserve the right to continue bidding at the

13   continued auction.  The auction was not

14   concluded.  The goal of an auction is to maximum

15   value.

16             The debtors have broad discretion

17   to conduct the auction in a manor that maximizes

18   value and that is for the best of the debtors,

19   the estate, and the charitable mission of the

20   hospital.

21             And so that's the University's

22   position.

23             MS. PERLMAN:  We're going to

24   break into separate rooms and then we will

25   regroup shortly.

1           Dan, if you can figure out each

2   of the four groups, that would be great.

3               (Discussion off the record.)

4               MS. PERLMAN:  We should be off,

5   unless, JD, were you going on the record or off

6   the record?

7               MR. DINAN:  Doesn't matter.  I

8   was just going to ask, you said, you know, we'll

9   reconvene shortly.  We're going to need some

10  time to, obviously, discuss this, and so, do we

11  just --

12              MS. PERLMAN:  You'll be in your

13  own breakout room where it's just you guys.  We

14  will probably come join you at some point, but I

15  think the way it works is we send a ping, kind

16  of like a knock on the door, asking --

17              MR. DINAN:  Okay.

18              MS. PERLMAN:  -- to come join

19  you.  So you'll be able to discuss in there.

20              MR. DINAN:  Okay.

21              MS. PERLMAN:  If you prefer to do

22  your own link, you can.  But if this works, it

23  should be the same --

24              MR. DINAN:  Okay.

25              MS. PERLMAN:  -- as if you went

1    back to your conference room.

2                        But I do believe that we will be

3    joining -- coming over to your room to visit

4    shortly.

5                        MR. DINAN:  Okay.

6                        (Off the record at 10:17 a.m.

7    Central Time.)

8                        (On the record at 12:17 p.m.

9    Central Time.)

10                       MS. PERLMAN:  So we are back on

11   the record.  After conversation and consultation

12   with the UCC, our consultation party, the

13   debtors determined that at the -- as we

14   concluded the last round of bidding, the bid of

15   Preston Hollow was higher than the bid of the

16   University, who had bid $27.1 million.

17                       We would like to turn it back

18   over to the University to see whether they are

19   interested in modifying or increasing their bid.

20                       MR. GORDON:  Yes, the University

21   is interested in modifying its bid in the

22   following ways:  Everything that was in our

23   prior bid, including the $25 million and future

24   capital commitments, with two modifications:

25   Number 1, we will exclude MOB 2, the Cancer

1    Center, so it's apples to apples, comparing the

2    bondholder bid to our bid.

3                   And Number 2, we will raise our

4    bid to $28 million.

5                   MS. PERLMAN:  And to clarify,

6    when you say you're excluding the Cancer Center,

7    it's the Cancer Center and the parking lot that

8    is adjacent to the Cancer Center?

9                   MR. GORDON:  Yes, that's correct.

10                  MS. PERLMAN:  So now the parties

11   are on the same universe of assets.

12                  MR. GORDON:  Correct.

13                  MR. DINAN:  One additional

14   question of clarification, David.

15                  Does that bid come with an

16   agreement with the debtor regarding providing a

17   perpetual unrestricted access easement to the

18   MOB 2?

19                  MR. GORDON:  We have not

20   discussed that.

21                  MS. PERLMAN:  And to clarify with

22   either party, the debtor needs an easement for

23   MOB 2, and that will be consistent between the

24   two parties.

25                  MR. GORDON:  We're happy to

1    consider that.  I didn't have a chance to

2    discuss that with my client, but I don't see

3    that as being something that would be

4    problematic.

5                    MS. PERLMAN:  With that, unless

6    Preston Hollow has additional questions, I

7    assume that you need time to go back and have

8    further conversations.

9                    MR. COCO:  We do.  But before we

10   do, and while we're still on the record, it will

11   surprise no one in the Zoom room to hear that we

12   reserve objections, including the objections

13   raised on the record during the prior session.

14                    But thank you.

15                    MS. PERLMAN:  Thank you.

16                    Dan, can you again send us all

17   back to our corners.

18                    (Off the record, 12:20 p.m.

19   Central Time.)

20                    (Off the record, 12:58 p.m.

21   Central Time.)

22                    MS. PERLMAN:  On the record

23   before the break, the University increased their

24   bid to $28 million and removed the Cancer Center

25   and adjacent parking lot from their bid so that

1    it is apples-to-apples bids on the same group of

2    assets between the two parties at this point in

3    time.

4                    The debtors determined -- they

5    also confirmed that they would be willing to

6    give an easement on the -- for the entryway to

7    the Cancer Center.

8                    We determined that their bid at

9    that time was the highest and best bid, and at

10   this point in time, turn it back over to Preston

11   Hollow to see if they have an additional bid to

12   make on the record.

13                   MR. COCO:  Yes.  Thanks, Felicia.

14   The bondholder's group Computershare, Preston

15   Hollow do wish to modified their bid thusly,

16   increase the aggregate amount of their bid to 29

17   million.

18                   There are two components to that

19   bid.  27.8 million of the 29 is the credit bid

20   portion.  The cash portion is 1.2 million, which

21   is the value of the ancillary real properties,

22   excluding the Cancer Center, MOB 2, and the

23   adjacent parking lot, and the 1.2 million

24   consists of what our prior bids would be

25   contributed in the form of covering operating

 1   losses upon our assumption of management on an

 2   interim management basis beginning on

 3   November 15th.

 4                 MS. PERLMAN:  I would ask you to

 5   clarify two things, please, that that bid, in

 6   addition to that, is the payment of the breakup

 7   fee if you were the successful bidder.

 8                 MR. COCO:  That is correct.

 9                 MS. PERLMAN:  Great, thank you.

10   And also would like you to clarify on the record

11   that you would agree to give an easement with

12   respect to the entryway to the building, similar

13   to the University's bid.

14                 MR. DINAN:  Felicia, I'll address

15   that.  First of all, I did not hear the

16   University make that stipulation on the record.

17   The prior time I heard that they would consider

18   it, but that they needed approval.

19                 So we did -- we will also

20   consider it, but maybe Dave wants to clarify

21   that now --

22                 MR. GORDON:  Sure.

23                 MR. DINAN:  -- and then we can

24   consider it.

25                 MR. GORDON:  Yeah, we are willing

1   to offer the easement.  So we will modify our

2   prior bid by committing to provide the easement

3   as requested.

4                   MR. DINAN:  So are we in a

5   position where we can break out again and the

6   University has to address this?  I also believe

7   that we, too, will not have a problem with that,

8   but I just -- I need to confirm that with my

9   group.

10                  MS. PERLMAN:  Yeah, let's take a

11  break for you to confirm that with your group

12  and then you can come back on the record right

13  after that.

14                  So, Nathan, if you would text me

15  as soon as you have that confirmed and we can

16  come back on the record, because, obviously,

17  that impacts valuation of your bid.

18                  MR. DINAN:  Okay.  This won't

19  take very long.  We should be back in five

20  minutes.

21                  MS. PERLMAN:  Sounds good.

22                  MR. COCO:  In fact, if you could

23  put us back in our room, yeah, that would be

24  great.

25                  MS. PERLMAN:  Yes.

```
1              MR. COCO:  Thank you.

2              (Off the record at 1:01 p.m.

3    Central Time.)

4              (On the record at 1:06 p.m.

5    Central Time.)

6              MS. PERLMAN:  So to pick up where

7    we left off, I'd like to ask Preston Hollow to

8    confirm on the record that their bid includes an

9    easement with respect to the entryway to the

10   cancer center.

11             MR. COCO:  We confirm.

12             MS. PERLMAN:  Thank you.

13             So turn to the University.  Do

14   you need additional time now or are you ready to

15   move forward?

16             MR. GORDON:  We're ready to move

17   forward.

18             MS. PERLMAN:  Okay.

19             MR. GORDON:  So is the highest

20   bid now with the bondholder representatives?

21             MS. PERLMAN:  Yes.  So the

22   highest bid at this point is with the bondholder

23   representatives.

24             MR. GORDON:  Okay.  We are not

25   going to further bid.
```

1              You know, the purpose of the

2    University's participation in this process was

3    to ensure access to health care and to jobs.

4    That's why we bid, that's why we served as the

5    stalking horse, and at this point, we're, you

6    know, we're not going to bid any further.

7              We look forward to working

8    collaboratively with the future operators of

9    Mercy Iowa City, wish the best of luck to

10   Preston Hollow, the bondholder representatives,

11   and the American Health Care Systems.

12             MS. PERLMAN:  Thank you very

13   much.  We appreciate your support throughout

14   this process, as well as the support of Preston

15   Hollow, and --

16             MR. SHERMAN:  Felicia, from the

17   Creditor's Committee's standpoint, David, we

18   appreciate that, but Felicia, would you

19   designate the University as a backup bidder?

20             MS. PERLMAN:  Yes.  From

21   participating in the auction, pursuant to the

22   terms of the bid procedures, we believe -- thank

23   you, Andrew -- that the University is a backup

24   bidder to Preston Hollow.

25             We believe that Preston Hollow

1  has, you know, all the wherewithal and intention

2  of closing.

3              So we assume that we are moving

4  forward with them towards closing, but wanted to

5  so designate in accordance with the bid

6  procedures.

7              And with that, the debtors in

8  consultation with the consultation party, which

9  is the UCC, determine that the highest and

10  otherwise best bid is the bid of Preston Hollow,

11  with a credit bid of 27.8 million, plus a

12  $1.2 million reimbursement for operating losses

13  for the hospital, the clinics, and the parking

14  lots that go along with those clinics, excluding

15  the Cancer Center and the adjacent parking lot

16  to the Cancer Center, and allowing for an

17  easement into the Cancer Center and covering, in

18  addition to that, the breakup fee, all subject

19  to documentation reasonably acceptable to the

20  parties.

21              Does anybody else have anything

22  that they want to put on the record before we

23  conclude the auction?

24              MR. GORDON:  I do.  David Gordon,

25  on behalf of the University.

1         At the prior auction it was

2    discussed that the University as stalking horse

3    did not need to serve as backup bidder.  I

4    believe that was on the record at one point

5    during the auction at this point.

6              That continues to be our

7    position.  We reserve all rights with respect to

8    the backup bidder issue.

9              MS. PERLMAN:  Understood.

10             Anybody else have anything they

11   want to say on the record?  If not, we

12   appreciate everybody's participation in the

13   process and support for Mercy Hospital and its

14   continued operations, and we look forward to

15   moving forward with Preston Hollow and AHS and

16   to continue provision of care through the

17   hospital in Iowa City going forward.

18             So thank you all, and we will be

19   working to reschedule the sale hearing and give

20   notice to all.

21             MR. DINAN:  Felicia, when you go

22   off the record, can I ask a couple questions?

23             MS. PERLMAN:  Yes.  We can go off

24   the record.

25             (1:10 p.m. Central Time.)

```
 1                    CERTIFICATE

 2

 3

 4              I, Karen Friedlander, a

 5    Certified Court Reporter of the State of New

 6    Jersey, do hereby certify that the foregoing is

 7    a true and accurate computer-aided transcript of

 8    the proceedings as taken stenographically by and

 9    before me at the time, place and on the date

10    hereinbefore set forth.

11                    I do further certify that I am

12    neither of counsel nor attorney for any party in

13    this action that I am not interested in the

14    event nor outcome of this litigation.

15                    Karen Friedlander

16

17            S/Karen Friedlander
              Certified Court Reporter
18            License No. XI01282

19

20

21    Dated:    10-10-23

22

23

24

25
```

## WORD INDEX

**< $ >**
**$1.2** 23:*12*
**$25** 11:*6, 11* 15:*23*
**$27** 7:*25*
**$27.1** 9:*20* 10:*8*
  11:*3* 15:*16*
**$28** 16:*4* 17:*24*
**$600,000** 7:*12, 13*
**$750,000** 5:*25* 6:*6*
  7:*11*

**< 0 >**
**07102** 3:*17*

**< 1 >**
**1** 15:*25*
**1.2** 18:*20, 23*
**1:01** 21:*2*
**1:06** 21:*4*
**1:10** 24:*25*
**10:00** 2:*5*
**10:17** 15:*6*
**10022** 3:*22*
**10-10-23** 25:*17*
**10th** 1:*12* 2:*6*
**115** 4:*14*
**1180** 3:*3*
**12:17** 15:*8*
**12:20** 17:*18*
**12:58** 17:*20*
**1200** 4:*14*
**1300** 4:*3*
**150** 4:*6*
**15th** 6:*13* 7:*16* 19:*3*
**1600** 3:*12*
**1st** 7:*16* 8:*2, 4*

**< 2 >**
**2** 6:*5, 10* 7:*20, 21*
  9:*7, 9* 15:*25* 16:*3, 18,*
  *23* 18:*22*
**2023** 1:*12* 2:*7* 10:*21,*
  *23*
**212** 3:*23*
**23-00623** 1:*3*
**23527** 1:*25*
**253-6005** 4:*4*

**260** 3:*4*
**27.8** 18:*19* 23:*11*
**283-3100** 3:*13*
**29** 18:*16, 19*

**< 3 >**
**300** 4:*6*
**30309** 3:*4*
**30th** 7:*15* 10:*21, 23*
**312** 3:*8* 4:*7*
**319** 4:*15*
**3350** 3:*3*
**360-4121** 4:*11*
**366-7641** 4:*15*
**3680** 3:*8*
**37219** 4:*3*
**3rd** 4:*14*

**< 4 >**
**404** 3:*4* 4:*4*
**444** 3:*7*
**48th** 4:*10*
**4th** 5:*5*

**< 5 >**
**501** 4:*3*
**50309** 3:*13*
**515** 3:*13*
**52401** 4:*15*

**< 6 >**
**600,000** 6:*11, 18* 7:*18*
**60606** 4:*7*
**60606-0029** 3:*8*
**64112** 4:*10*
**643-6982** 3:*18*
**692-6795** 3:*23*

**< 7 >**
**700** 3:*12*
**750** 6:*22*
**750,000** 5:*16*

**< 8 >**
**816** 4:*11*
**8554** 3:*4*
**873-2946** 4:*7*

**< 9 >**

**9** 12:*4*
**900** 4:*10*
**919** 3:*22*
**973** 3:*18*
**984** 3:*8*

**< A >**
**a.m** 2:*6* 15:*6*
**ability** 10:*4*
**able** 14:*19*
**absorb** 10:*25*
**acceptable** 23:*19*
**accepting** 7:*14*
**access** 16:*17* 22:*3*
**accrue** 8:*4*
**accurate** 25:*7*
**acquisition** 10:*14*
**action** 25:*13*
**actual** 10:*25*
**acute-care** 10:*6*
**addition** 11:*2* 19:*6*
  23:*18*
**additional** 6:*12* 8:*7*
  16:*13* 17:*6* 18:*11*
  21:*14*
**address** 19:*14* 20:*6*
**adjacent** 6:*10* 7:*21*
  9:*7* 16:*8* 17:*25*
  18:*23* 23:*15*
**aggregate** 18:*16*
**agree** 19:*11*
**Agreement** 1:*17*
  9:*22* 10:*10* 16:*16*
**ahead** 13:*8*
**AHS** 4:*21* 24:*15*
**al** 1:*7*
**allowing** 23:*16*
**alternative** 7:*10*
**American** 22:*11*
**amount** 7:*17* 18:*16*
**ancillary** 18:*21*
**ANDREW** 3:*16* 4:*23*
  8:*11* 22:*23*
**announced** 7:*24*
**anybody** 13:*4* 23:*21*
  24:*10*
**APA** 10:*16*
**APPEARANCES** 3:*1*
  4:*1*

**apples** 16:*1*
**apples-to-apples** 18:*1*
**applicable** 10:*19*
**appreciate** 22:*13, 18*
  24:*12*
**approval** 19:*18*
**approved** 10:*14*
**Article** 12:*4*
**Asherman@sillscumm**
**is.com** 3:*18*
**asking** 14:*16*
**asset** 9:*22* 10:*9*
**assets** 9:*3* 10:*8*
  12:*14* 16:*11* 18:*2*
**assume** 17:*7* 23:*3*
**assuming** 7:*16* 8:*2*
**assumption** 19:*1*
**Atlanta** 3:*4*
**attorney** 25:*12*
**AUCTION** 1:*11* 2:*1*
  5:*4, 11, 16* 9:*23* 12:*2,*
  *4, 8* 13:*13, 14, 17*
  22:*21* 23:*23* 24:*1, 5*
**Avenue** 3:*22*
**awaiting** 12:*20*

**< B >**
**b)(4** 12:*5*
**back** 5:*7* 15:*1, 10, 17*
  17:*7, 17* 18:*10* 20:*12,*
  *16, 19, 23*
**backup** 10:*13* 11:*4,*
  *15* 22:*19, 23* 24:*3, 8*
**BANKRUPTCY** 1:*2*
  2:*4* 10:*15*
**based** 10:*3* 12:*16, 23*
**basis** 8:*1* 19:*2*
**BAYMAN** 4:*22*
**began** 5:*4*
**beginning** 8:*2, 4* 19:*2*
**behalf** 4:*19* 5:*2*
  9:*14* 13:*9* 23:*25*
**believe** 6:*17, 20* 15:*2*
  20:*6* 22:*22, 25* 24:*4*
**BERGMAN** 4:*13*
**best** 13:*18* 18:*9*
  22:*9* 23:*10*
**bid** 5:*12, 19, 25* 6:*11*
  7:*7, 23, 25* 9:*1, 6, 16,*
  *20* 10:*7, 8* 11:*14, 25*

12:*3, 5, 10, 12, 13, 16,
20, 23* 13:*1, 3* 15:*14,
15, 16, 19, 21, 23* 16:*2,
4, 15* 17:*24, 25* 18:*8,
9, 11, 15, 16, 19* 19:*5,
13* 20:*2, 17* 21:*8, 20,
22, 25* 22:*4, 6, 22*
23:*5, 10, 11*
**bidder** 10:*13* 11:*4, 5,
16* 12:*6, 13, 19* 19:*7*
22:*19, 24* 24:*3, 8*
**bidder's** 10:*4*
**bidding** 11:*3* 13:*12*
15:*14*
**bids** 5:*6* 18:*1, 24*
**Bmankovetskiy@sillsc**
**ummis.com** 3:*19*
**bondholder** 16:*2*
21:*20, 22* 22:*10*
**bondholder's** 18:*14*
**BORIS** 3:*16*
**break** 5:*5* 11:*19*
13:*24* 17:*23* 20:*5, 11*
**breakout** 14:*13*
**breakup** 19:*6* 23:*18*
**broad** 13:*16*
**Building** 6:*9, 24*
19:*12*

**< C >**
**Cancer** 6:*4, 10* 9:*9*
15:*25* 16:*6, 7, 8*
17:*24* 18:*7, 22* 21:*10*
23:*15, 16, 17*
**Capital** 3:*25* 15:*24*
**capped** 7:*17*
**care** 22:*3, 11* 24:*16*
**carving** 6:*8*
**Case** 1:*3*
**cash** 18:*20*
**CCR-NJ** 1:*23* 2:*2*
**Cedar** 4:*15*
**Center** 6:*4, 10* 9:*9*
16:*1, 6, 7, 8* 17:*24*
18:*7, 22* 21:*10* 23:*15,
16, 17*
**Central** 2:*6* 15:*7, 9*
17:*19, 21* 21:*3, 5*
24:*25*

**CERTIFICATE** 25:*1*
**Certified** 25:*5, 17*
**certify** 25:*6, 11*
**chance** 17:*1*
**changes** 5:*12*
**charitable** 13:*19*
**check** 6:*20*
**Chicago** 3:*8* 4:*7*
**chosen** 10:*12* 11:*4*
**Chughes@polsinelli.co**
**m** 4:*11*
**CITY** 1:*5* 4:*10* 22:*9*
24:*17*
**Civil** 2:*3*
**CLAMON** 4:*20*
**clarification** 7:*6*
8:*13* 10:*11* 11:*13*
16:*14*
**clarify** 8:*14* 16:*5, 21*
19:*5, 10, 20*
**clarity** 5:*16, 24* 8:*18*
**clear** 12:*6*
**client** 17:*2*
**CLIFFORD** 4:*22*
**clinics** 5:*13, 17* 6:*3,
25* 7:*1, 19* 8:*16, 21*
9:*17, 18, 20* 12:*10*
23:*13, 14*
**close** 10:*22* 11:*2*
**closing** 8:*4* 10:*16, 20,
24* 11:*12* 23:*2, 4*
**COCO** 3:*21* 5:*20*
7:*8* 8:*13, 19* 11:*21*
17:*9* 18:*13* 19:*8*
20:*22* 21:*1, 11*
**COHN** 3:*19*
**cohort** 10:*15*
**collaboratively** 22:*8*
**come** 9:*18* 14:*14, 18*
16:*15* 20:*12, 16*
**coming** 5:*6* 15:*3*
**commencing** 2:*5*
6:*12*
**comment** 11:*22*
**comments** 5:*19* 11:*18*
**Commerce** 4:*3*
**commit** 11:*11*
**commitment** 7:*25*
**commitments** 15:*24*
**commits** 10:*19* 11:*5*

**Committee** 3:*19* 5:*8*
8:*12*
**Committee's** 22:*17*
**committing** 20:*2*
**community** 10:*2*
**Company** 3:*24*
**comparing** 16:*1*
**competing** 10:*4*
12:*20*
**completely** 11:*23*
**components** 18:*18*
**computer-aided** 25:*7*
**Computershare** 3:*24*
4:*20* 13:*6* 18:*14*
**concerns** 10:*4*
**conclude** 23:*23*
**concluded** 13:*14*
15:*14*
**conditions** 10:*16, 24*
11:*24*
**conduct** 13:*17*
**conference** 15:*1*
**CONFIDENTIAL**
1:*14*
**Confidentiality** 1:*17*
**confirm** 20:*8, 11*
21:*8, 11*
**confirmed** 12:*21*
18:*5* 20:*15*
**connected** 8:*20*
**connection** 12:*15*
**CONNELL** 4:*20*
**consider** 17:*1* 19:*17,
20, 24*
**consideration** 7:*18*
**considered** 13:*4*
**consistent** 7:*9* 11:*14*
16:*23*
**consists** 18:*24*
**constituents** 5:*9*
**consultation** 15:*11,
12* 23:*8*
**Consulting** 4:*21, 22*
**contains** 1:*16*
**contemplate** 12:*13*
**continuation** 5:*4*
**continue** 13:*12* 24:*16*
**CONTINUED** 4:*1*
13:*13* 24:*14*

**continues** 24:*6*
**continuing** 10:*5*
**contributed** 18:*25*
**control** 7:*15* 8:*1*
**conversation** 15:*11*
**conversations** 17:*8*
**CORBIN** 4:*20*
**corners** 17:*17*
**correct** 6:*1* 7:*3* 8:*8*
9:*10* 16:*9, 12* 19:*8*
**Counsel** 3:*10, 14, 19,
24* 4:*12, 16* 25:*12*
**counterresponse** 9:*12*
**couple** 24:*22*
**COURT** 1:*2* 2:*5*
25:*5, 17*
**covering** 6:*12* 18:*25*
23:*17*
**credit** 18:*19* 23:*11*
**Creditor's** 22:*17*
**CRR** 1:*24* 2:*3*
**CULLIN** 4:*9*
**CUMMIS** 3:*14*

**< D >**
**Dan** 14:*1* 17:*16*
**DANIEL** 3:*2*
**date** 8:*5* 25:*9*
**Dated** 25:*17*
**Dave** 19:*20*
**DAVID** 4:*2* 9:*14*
13:*7* 16:*14* 22:*17*
23:*24*
**day** 2:*6* 12:*20*
**Daylight** 2:*6*
**debtor** 16:*16, 22*
**Debtors** 1:*8* 3:*10, 14*
4:*19* 5:*3* 10:*18* 11:*1*
13:*16, 18* 15:*13* 18:*4*
23:*7*
**December** 7:*16* 8:*2,
4* 10:*19*
**declared** 12:*18*
**deemed** 12:*7, 24*
**Des** 3:*13*
**designate** 22:*19* 23:*5*
**desire** 9:*16*
**despite** 10:*23*
**details** 8:*7*
**determine** 23:*9*

**determined** 15:*13* 18:*4, 8*

**Dgordon@polsinelli.com** 4:*4*

**DINAN** 4:*16* 5:*22* 7:*3, 9* 8:*8, 23* 9:*10* 14:*7, 17, 20, 24* 15:*5* 16:*13* 19:*14, 23* 20:*4, 18* 24:*21*

**discretion** 13:*16*

**discuss** 14:*10, 19* 17:*2*

**discussed** 16:*20* 24:*2*

**discussing** 5:*6*

**Discussion** 14:*3*

**discussions** 9:*25*

**disqualified** 12:*2, 8, 24*

**DISTRICT** 1:*2*

**Dmsimon@mwe.com** 3:*5*

**documentation** 23:*19*

**door** 14:*16*

**< E >**

**easement** 16:*17, 22* 18:*6* 19:*11* 20:*1, 2* 21:*9* 23:*17*

**either** 16:*22*

**eloquently** 8:*9*

**EMERY** 3:*2, 6*

**employee** 10:*17*

**enhance** 10:*7*

**ensure** 22:*3*

**entering** 10:*17*

**entryway** 18:*6* 19:*12* 21:*9*

**equipment** 11:*9, 10*

**ESQUIRE** 3:*2, 6, 7, 11, 16, 21* 4:*2, 6, 9, 13*

**estate** 6:*2* 13:*19*

**et** 1:*7*

**evaluate** 5:*7*

**event** 25:*14*

**everybody's** 24:*12*

**evolution** 7:*23*

**exception** 9:*6*

**exclude** 15:*25*

**excluding** 6:*9* 7:*20*

16:*6* 18:*22* 23:*14*

**Excuse** 5:*22*

**express** 12:*6, 16*

**expressed** 11:*24*

**extent** 6:*8*

**< F >**

**face** 11:*24* 13:*3*

**facilities** 11:*9*

**fact** 10:*24* 20:*22*

**fails** 10:*22*

**failure** 12:*3*

**FAISAL** 4:*21*

**Federal** 2:*3*

**fee** 19:*7* 23:*18*

**FELICIA** 3:*6* 5:*2, 21, 24* 11:*21* 18:*13* 19:*14* 22:*16, 18* 24:*21*

**FERRIS** 3:*19*

**figure** 14:*1*

**First** 19:*15*

**five** 11:*12* 20:*19*

**flies** 11:*23* 13:*2*

**flourish** 8:*7*

**folks** 11:*20*

**following** 12:*3* 15:*22*

**foregoing** 25:*6*

**form** 7:*14* 18:*25*

**format** 7:*12*

**forth** 25:*10*

**forward** 21:*15, 17* 22:*7* 23:*4* 24:*14, 15, 17*

**Foundation** 4:*16*

**four** 14:*2*

**Fperlman@mwe.com** 3:*9*

**Friedlander** 1:*23* 2:*2* 25:*4, 14*

**FTI** 4:*21, 22*

**full** 12:*20*

**further** 17:*8* 21:*25* 22:*6* 25:*11*

**future** 15:*23* 22:*8*

**< G >**

**GA** 3:*4*

**GANTI** 4:*21*

**general** 10:*5*

**GERBER** 3:*6* 5:*2*

**GILL** 4:*21*

**give** 5:*7* 18:*6* 19:*11* 24:*19*

**go** 5:*7* 13:*8* 17:*7* 23:*14* 24:*21, 23*

**goal** 13:*14*

**going** 11:*19* 13:*23* 14:*5, 8, 9* 21:*25* 22:*6* 24:*17*

**good** 20:*21*

**GOODE** 3:*11*

**GORDON** 4:*2* 9:*13, 14* 13:*7, 9* 15:*20* 16:*9, 12, 19, 25* 19:*22, 25* 21:*16, 19, 24* 23:*24*

**GRAY** 4:*13*

**great** 14:*2* 19:*9* 20:*24*

**GRIKIS** 4:*6*

**GROSS** 3:*14*

**group** 18:*1, 14* 20:*9, 11*

**groups** 14:*2*

**guys** 14:*13*

**< H >**

**H2C** 4:*22, 23*

**happy** 16:*25*

**health** 22:*3, 11*

**hear** 17:*11* 19:*15*

**heard** 8:*17* 19:*17*

**hearing** 24:*19*

**hereinbefore** 25:*10*

**higher** 15:*15*

**highest** 12:*19* 18:*9* 21:*19, 22* 23:*9*

**Hollow** 3:*25* 4:*16* 5:*11* 13:*6* 15:*15* 17:*6* 18:*11, 15* 21:*7* 22:*10, 15, 24, 25* 23:*10* 24:*15*

**horse** 9:*1, 6, 22* 10:*9* 22:*5* 24:*2*

**HOSPITAL** 1:*5* 4:*16* 5:*3* 9:*18, 20* 10:*6* 11:*10* 13:*20*

23:*13* 24:*13, 17*

**HUGHES** 4:*9*

**< I >**

**IL** 3:*8*

**Illinois** 4:*7*

**impacts** 20:*17*

**improper** 11:*23* 13:*2*

**inappropriate** 13:*2*

**included** 6:*2, 4, 22* 9:*2, 21*

**includes** 21:*8*

**including** 6:*23* 7:*1* 8:*25* 10:*16* 11:*8* 15:*23* 17:*12*

**increase** 18:*16*

**increased** 17:*23*

**increasing** 15:*19*

**indication** 6:*19*

**information** 1:*16* 11:*6*

**infrastructure** 11:*7*

**intention** 23:*1*

**interconnected** 8:*15*

**interested** 15:*19, 21* 25:*13*

**interim** 7:*14* 8:*1* 19:*2*

**invest** 11:*5*

**investing** 11:*11*

**IOWA** 1:*2, 5* 3:*13* 4:*12, 15, 20* 9:*15* 10:*3, 7* 12:*1, 21* 22:*9* 24:*17*

**Iowa's** 12:*9*

**issue** 24:*8*

**its** 5:*8* 10:*7* 12:*3* 15:*21* 24:*13*

**< J >**

**JD** 8:*6* 14:*5*

**Jersey** 3:*17* 25:*6*

**JIM** 4:*19*

**JOB** 1:*25*

**jobs** 22:*3*

**JOHN** 4:*16*

**join** 14:*14, 18*

**joining** 15:*3*

**JOSEPH** 4:*20*

**< K >**
**Kansas** 4:*10*
**Karen** 1:*23* 2:*2* 25:*4*
**kind** 14:*15*
**knock** 14:*16*
**know** 7:*22* 9:*23*
 13:*11* 14:*8* 22:*1, 6*
 23:*1*

**< L >**
**Lake** 3:*7*
**leadership** 10:*1*
**LEAF** 3:*11*
**leaseback** 10:*18*
**left** 21:*7*
**LEVIN** 3:*19*

**Lgrikis@polsinelli.com**
 4:*8*
**License** 25:*17*
**licensure** 10:*17*
**light** 10:*1*
**limited** 11:*8*
**LINAS** 4:*6*
**link** 14:*22*
**litigation** 25:*14*
**LLP** 3:*2, 6*
**long** 20:*19*
**look** 22:*7* 24:*14*
**looking** 5:*11* 6:*19*
**losses** 6:*12* 7:*17* 8:*3*
 11:*1* 19:*1* 23:*12*
**lot** 7:*21* 8:*21* 16:*7*
 17:*25* 18:*23* 23:*15*
**lots** 6:*3, 4* 8:*15, 24*
 9:*4, 5* 23:*14*
**luck** 22:*9*

**< M >**
**making** 12:*22*
**management** 19:*1, 2*
**MANKOVETSKY**
 3:*16*
**manner** 10:*6*
**manor** 13:*17*
**MARK** 4:*19*
**matter** 14:*7*
**maximizes** 13:*17*

**maximum** 13:*14*
**MCDERMOTT** 3:*2, 6*
**Medical** 6:*9* 11:*10*
**MEGAN** 3:*7, 21*
**MERCY** 1:*5* 4:*16*
 5:*3* 10:*5* 22:*9* 24:*13*
**Mercy's** 7:*18*
**met** 10:*24*
**million** 7:*25* 9:*20*
 10:*8* 11:*3, 6, 12*
 15:*16, 23* 16:*4* 17:*24*
 18:*17, 19, 20, 23*
 23:*11, 12*
**MINTZ** 3:*19*
**minutes** 20:*20*
**missed** 8:*7*
**mission** 13:*19*
**Missouri** 4:*10*
**MOB** 6:*5, 24* 7:*2, 20,*
 *21* 9:*7, 8* 15:*25*
 16:*18, 23* 18:*22*
**modification** 7:*6*
**modifications** 5:*19*
 15:*24*
**modified** 18:*15*
**modify** 20:*1*
**modifying** 15:*19, 21*
**Moines** 3:*13*
**month** 10:*18*
**move** 21:*15, 16*
**moving** 23:*3* 24:*15*
**MOYER** 4:*13*
**Mpreusker@mintz.co**
**m** 3:*24*
**Mrooney@mwe.com**
 3:*9*

**< N >**
**NARENDRA** 4:*21*
**Nashville** 4:*3*
**NATHAN** 3:*21* 5:*18,*
 *23* 6:*19* 7:*5* 20:*14*
**NE** 3:*3*
**need** 14:*9* 17:*7* 20:*8*
 21:*14* 24:*3*
**needed** 19:*18*
**needs** 16:*22*
**neither** 25:*12*
**never** 12:*11*

**New** 3:*17, 22* 25:*5*
**Newark** 3:*17*
**Nfcoco@mintz.com**
 3:*23*
**nonconforming** 12:*10,*
 *12* 13:*1*
**North** 4:*6*
**NORTHERN** 1:*2*
**notice** 24:*20*
**November** 6:*13* 7:*15,*
 *16* 10:*21, 23* 19:*3*
**number** 6:*6, 9* 15:*25*
 16:*3*
**NYEMASTER** 3:*11*

**< O >**
**objections** 17:*12*
**obviously** 14:*10*
 20:*16*
**o'clock** 2:*5*
**October** 1:*12* 2:*7*
 5:*5*
**offer** 7:*11, 12, 13*
 9:*12* 20:*1*
**Office** 6:*9*
**Okay** 14:*17, 20, 24*
 15:*5* 20:*18* 21:*18, 24*
**old** 6:*4, 10*
**once** 12:*15*
**operate** 10:*5*
**operating** 6:*12* 7:*17*
 8:*3* 10:*25* 18:*25*
 23:*12*
**operational** 7:*15* 8:*1*
**operations** 24:*14*
**operators** 22:*8*
**original** 7:*23* 9:*1, 21*
 10:*9*
**ORMAN** 4:*23*
**outcome** 25:*14*
**overbid** 12:*15, 22*
**overbids** 12:*7*

**< P >**
**P.C** 3:*11, 14*
**p.m** 15:*8* 17:*18, 20*
 21:*2, 4* 24:*25*
**parch** 5:*8*
**parking** 5:*14, 17* 6:*3,*
 *11, 23* 7:*1, 2, 19, 21*

8:*14, 15, 21, 24* 9:*4, 7*
 11:*9* 16:*7* 17:*25*
 18:*23* 23:*13, 15*
**part** 9:*1, 5*
**participate** 12:*7*
**participating** 12:*2*
 22:*21*
**participation** 22:*2*
 24:*12*
**parties** 5:*7* 16:*10, 24*
 18:*2* 23:*20*
**party** 15:*12* 16:*22*
 23:*8* 25:*12*
**patchwork** 8:*23*
**payment** 19:*6*
**Peachtree** 3:*3*
**PERLMAN** 3:*6* 5:*1,*
 *2* 6:*17* 7:*4* 9:*11*
 11:*17* 13:*8, 23* 14:*4,*
 *12, 18, 21, 25* 15:*10*
 16:*5, 10, 21* 17:*5, 15,*
 *22* 19:*4, 9* 20:*10, 21,*
 *25* 21:*6, 12, 18, 21*
 22:*12, 20* 24:*9, 23*
**perpetual** 16:*17*
**PERRINE** 4:*13*
**physical** 11:*7*
**pick** 21:*6*
**ping** 14:*15*
**Place** 4:*10* 25:*9*
**plan** 11:*9*
**plant** 11:*7*
**Plaza** 3:*17* 4:*6*
**PLC** 4:*13*
**please** 19:*5*
**plus** 7:*25* 23:*11*
**point** 12:*23* 14:*14*
 18:*2, 10* 21:*22* 22:*5*
 24:*4, 5*
**points** 10:*10*
**POLSINELLI** 4:*2, 5,*
 *9*
**PORTER** 4:*19*
**portion** 1:*16* 18:*20*
**position** 13:*22* 20:*5*
 24:*7*
**precisely** 7:*9*
**prefer** 14:*21*
**prepared** 7:*11* 9:*19*
**PRESENT** 4:*16*

Preston  3:*25*  4:*16*
5:*11*  13:*6*  15:*15*
17:*6*  18:*10*, *14*  21:*7*
22:*10*, *14*, *24*, *25*
23:*10*  24:*15*
PREUSKER  3:*21*
prior  11:*14*  15:*23*
17:*13*  18:*24*  19:*17*
20:*2*  24:*1*
probably  14:*14*
problem  20:*7*
problematic  17:*4*
Procedure  2:*4*
procedures  11:*25*
12:*5*, *13*, *17*, *23*  13:*3*
22:*22*  23:*6*
PROCEEDINGS
1:*11*  2:*1*  25:*8*
process  22:*2*, *14*
24:*13*
properties  7:*20*  8:*22*
18:*21*
property  7:*20*, *21*
provide  20:*2*
providing  16:*16*
provision  24:*16*
purchase  9:*22*  10:*10*
purpose  22:*1*
purposes  12:*8*, *25*
pursuant  2:*3*  22:*21*
put  12:*11*  20:*23*
23:*22*

< Q >
question  16:*14*
questions  17:*6*  24:*22*
quote  8:*24*

< R >
raise  16:*3*
raised  17:*13*
Rapids  4:*15*
RCR-NY  1:*23*  2:*2*
RDR  1:*24*  2:*3*
ready  21:*14*, *16*
real  6:*2*  18:*21*
reasonably  23:*19*
reconvene  14:*9*
record  5:*1*, *13*, *15*
6:*8*, *15*, *18*, *21*, *25*

7:*24*  11:*18*, *22*  12:*11*,
*21*  14:*3*, *5*, *6*  15:*6*, *8*,
*11*  17:*10*, *13*, *18*, *20*,
*22*  18:*12*  19:*10*, *16*
20:*12*, *16*  21:*2*, *4*, *8*
23:*22*  24:*4*, *11*, *22*, *24*
refer  9:*8*
referred  6:*5*  8:*14*
reflect  9:*25*
reflected  6:*15*
regarding  16:*16*
regroup  13:*25*
reimbursement  23:*12*
related  5:*25*  6:*1*, *23*
relating  8:*16*
relevant  6:*21*
remember  6:*14*
removed  17:*24*
reopen  5:*10*
REPORT  1:*11*  2:*1*
REPORTED  1:*23*
Reporter  25:*5*, *17*
representatives  21:*20*,
*23*  22:*10*
requested  20:*3*
require  13:*5*
reschedule  24:*19*
reserve  13:*12*  17:*12*
24:*7*
respect  5:*13*  7:*6*
19:*12*  21:*9*  24:*7*
respond  13:*10*
response  13:*5*
responsibility  8:*3*
resume  11:*20*
revised  6:*7*
RICHARD  4:*22*
right  11:*18*  13:*12*
20:*12*
rights  24:*7*
risk  10:*2*
Riverfront  3:*17*
Riverside  4:*6*

Rleaf@nyemaster.com
3:*14*
roof  11:*8*
room  14:*13*  15:*1*, *3*
17:*11*  20:*23*

rooms  11:*20*  13:*24*
ROONEY  3:*7*
round  12:*7*  15:*14*
ROY  3:*11*
Rules  2:*3*

< S >
S/Karen  25:*14*
sake  5:*15*
sale  24:*19*
SAMUEL  4:*13*
satisfaction  10:*15*
SE  4:*14*
Section  12:*5*
Securities  4:*22*, *23*
see  5:*11*  15:*18*  17:*2*
18:*11*
send  11:*19*  14:*15*
17:*16*
separate  8:*21*  13:*24*
serve  11:*15*  24:*3*
served  22:*4*
session  17:*13*
set  25:*10*
SHERMAN  3:*16*
8:*11*, *12*  9:*8*  22:*16*
shortly  13:*25*  14:*9*
15:*4*
significant  9:*24*
SILLS  3:*14*
similar  19:*12*
SIMMONS  4:*13*
SIMON  3:*2*
soon  20:*15*
sorry  5:*23*
Sounds  20:*21*
stalking  9:*1*, *6*, *22*
10:*9*  22:*5*  24:*2*
stand  5:*15*
standpoint  22:*17*
starting  5:*3*, *16*
State  4:*12*  9:*14*
10:*3*  25:*5*
statement  6:*25*  8:*18*
STATES  1:*2*  2:*4*
stenographically  25:*8*
stipulation  19:*16*
Street  3:*3*, *7*, *12*  4:*3*,
*14*
structured  7:*12*

subject  1:*16*  10:*14*
23:*18*
successful  19:*7*
Suite  3:*3*, *12*  4:*3*, *6*,
*10*, *14*
support  22:*13*, *14*
24:*13*
sure  6:*1*  19:*22*
surprise  17:*11*
Systems  22:*11*

< T >
take  7:*25*  11:*19*
20:*10*, *19*
taken  2:*2*  25:*8*
talk  5:*8*
technology  11:*6*
Tennessee  4:*3*
terms  11:*24*  12:*16*
22:*22*
text  20:*14*
thank  5:*20*  8:*9*
17:*14*, *15*  19:*9*  21:*1*,
*12*  22:*12*, *22*  24:*18*
Thanks  18:*13*
therewith  1:*18*
things  19:*5*
think  6:*22*  8:*16*  9:*2*
14:*15*
Third  3:*22*
thought  6:*7*
thusly  18:*15*
Time  2:*6*  5:*7*  9:*25*
11:*19*  14:*10*  15:*7*, *9*
17:*7*, *19*, *21*  18:*3*, *9*,
*10*  19:*17*  21:*3*, *5*, *14*
24:*25*  25:*9*
timely  10:*14*
TJC  1:*3*
TONEY  4:*19*
topping  12:*3*
transaction  10:*20*
transcript  1:*16*  25:*7*
true  25:*7*
Trust  3:*24*
Tuesday  1:*12*
turn  15:*17*  18:*10*
21:*13*

**two**  6:*15, 16*  12:*10*
  15:*24*  16:*24*  18:*2, 18*
  19:*5*

**< U >**
**UCC**  15:*12*  23:*9*
**understanding**  5:*14*
  8:*20*
**Understood**  24:*9*
**UNITED**  1:*2*  2:*4*
**universe**  16:*11*
**University**  4:*12, 20*
  9:*11, 13, 15, 16, 17, 19,
  24*  10:*1, 7, 12, 19, 22,
  25*  11:*1, 2, 3, 5, 11, 15*
  12:*1, 9, 21*  13:*10, 11*
  15:*16, 18, 20*  17:*23*
  19:*16*  20:*6*  21:*13*
  22:*19, 23*  23:*25*  24:*2*
**University's**  10:*3*
  13:*21*  19:*13*  22:*2*
**unoccupied**  6:*6*
**unrestricted**  16:*17*
**update**  7:*5*

**< V >**
**vacant**  6:*3*  8:*24*  9:*5*
**valuation**  20:*17*
**value**  13:*15, 18*  18:*21*
**variations**  6:*16*
**versus**  7:*1*
**viable**  10:*6*
**views**  10:*2*
**virtual**  11:*20*
**visit**  15:*3*

**< W >**
**Walnut**  3:*12*
**want**  5:*24, 25*  8:*17*
  23:*22*  24:*11*
**wanted**  23:*4*
**wants**  9:*17*  19:*20*
**way**  8:*17*  12:*11*
  14:*15*
**ways**  15:*22*
**Wednesday**  5:*5*  7:*24*
  9:*24*  12:*4, 19, 22*
**well**  22:*14*
**went**  14:*25*

**we're**  7:*11*  13:*23*
  14:*9*  16:*25*  17:*10*
  21:*16*  22:*5, 6*
**West**  3:*7*  4:*10*
**wherewithal**  23:*1*
**willing**  10:*7*  11:*15*
  18:*5*  19:*25*
**winning**  10:*13*  11:*4*
**wish**  18:*15*  22:*9*
**working**  22:*7*  24:*19*
**works**  14:*15, 22*

**< X >**
**XI01282**  25:*17*

**< Y >**
**Yeah**  5:*20*  8:*19*
  19:*25*  20:*10, 23*
**years**  11:*12*
**York**  3:*22*

**< Z >**
**Zoom**  1:*11*  2:*5*
  17:*11*
**ZUCKER**  4:*22*

## WORD LIST

**< $ >**
**$1.2** (*1*)
**$25** (*3*)
**$27** (*1*)
**$27.1** (*4*)
**$28** (*2*)
**$600,000** (*2*)
**$750,000** (*3*)

**< 0 >**
**07102** (*1*)

**< 1 >**
**1** (*1*)
**1.2** (*2*)
**1:01** (*1*)
**1:06** (*1*)
**1:10** (*1*)
**10:00** (*1*)
**10:17** (*1*)
**10022** (*1*)
**10-10-23** (*1*)
**10th** (*2*)
**115** (*1*)
**1180** (*1*)
**12:17** (*1*)
**12:20** (*1*)
**12:58** (*1*)
**1200** (*1*)
**1300** (*1*)
**150** (*1*)
**15th** (*3*)
**1600** (*1*)
**1st** (*3*)

**< 2 >**
**2** (*12*)
**2023** (*4*)
**212** (*1*)
**23-00623** (*1*)
**23527** (*1*)
**253-6005** (*1*)
**260** (*1*)
**27.8** (*2*)
**283-3100** (*1*)
**29** (*2*)

**< 3 >**
**300** (*1*)
**30309** (*1*)
**30th** (*3*)
**312** (*2*)
**319** (*1*)
**3350** (*1*)
**360-4121** (*1*)
**366-7641** (*1*)
**3680** (*1*)
**37219** (*1*)
**3rd** (*1*)

**< 4 >**
**404** (*2*)
**444** (*1*)
**48th** (*1*)
**4th** (*1*)

**< 5 >**
**501** (*1*)
**50309** (*1*)
**515** (*1*)
**52401** (*1*)

**< 6 >**
**600,000** (*3*)
**60606** (*1*)
**60606-0029** (*1*)
**64112** (*1*)
**643-6982** (*1*)
**692-6795** (*1*)

**< 7 >**
**700** (*1*)
**750** (*1*)
**750,000** (*1*)

**< 8 >**
**816** (*1*)
**8554** (*1*)
**873-2946** (*1*)

**< 9 >**
**9** (*1*)
**900** (*2*)
**919** (*1*)
**973** (*1*)
**984** (*1*)

**< A >**
**a.m** (*2*)
**ability** (*1*)
**able** (*1*)
**absorb** (*1*)
**acceptable** (*1*)
**accepting** (*1*)
**access** (*2*)
**accrue** (*1*)
**accurate** (*1*)
**acquisition** (*1*)
**action** (*1*)
**actual** (*1*)
**acute-care** (*1*)
**addition** (*3*)
**additional** (*6*)
**address** (*2*)
**adjacent** (*7*)
**aggregate** (*1*)
**agree** (*1*)
**Agreement** (*4*)
**ahead** (*1*)
**AHS** (*2*)
**al** (*1*)
**allowing** (*1*)
**alternative** (*1*)
**American** (*1*)
**amount** (*2*)
**ancillary** (*1*)
**ANDREW** (*4*)
**announced** (*1*)
**anybody** (*3*)
**APA** (*1*)
**APPEARANCES** (*2*)
**apples** (*2*)
**apples-to-apples** (*1*)
**applicable** (*1*)
**appreciate** (*3*)
**approval** (*1*)
**approved** (*1*)
**Article** (*1*)
**Asherman@sillscumm is.com** (*1*)
**asking** (*1*)
**asset** (*2*)
**assets** (*5*)
**assume** (*2*)
**assuming** (*2*)

**assumption** (*1*)
**Atlanta** (*1*)
**attorney** (*1*)
**AUCTION** (*17*)
**Avenue** (*1*)
**awaiting** (*1*)

**< B >**
**b)(4** (*1*)
**back** (*11*)
**backup** (*7*)
**BANKRUPTCY** (*3*)
**based** (*3*)
**basis** (*2*)
**BAYMAN** (*1*)
**began** (*1*)
**beginning** (*3*)
**behalf** (*6*)
**believe** (*7*)
**BERGMAN** (*1*)
**best** (*4*)
**bid** (*60*)
**bidder** (*13*)
**bidder's** (*1*)
**bidding** (*3*)
**bids** (*3*)
**Bmankovetskiy@sillsc ummis.com** (*1*)
**bondholder** (*4*)
**bondholder's** (*1*)
**BORIS** (*1*)
**break** (*6*)
**breakout** (*1*)
**breakup** (*2*)
**broad** (*1*)
**Building** (*3*)

**< C >**
**Cancer** (*14*)
**Capital** (*2*)
**capped** (*1*)
**care** (*3*)
**carving** (*1*)
**Case** (*1*)
**cash** (*1*)
**CCR-NJ** (*2*)
**Cedar** (*1*)
**Center** (*14*)
**Central** (*8*)

CERTIFICATE  (1)
Certified  (2)
certify  (2)
chance  (1)
changes  (1)
charitable  (1)
check  (1)
Chicago  (2)
chosen  (2)
Chughes@polsinelli.co
m  (1)
CITY  (4)
Civil  (1)
CLAMON  (1)
clarification  (5)
clarify  (6)
clarity  (3)
clear  (1)
client  (1)
CLIFFORD  (1)
clinics  (14)
close  (2)
closing  (7)
COCO  (12)
COHN  (1)
cohort  (1)
collaboratively  (1)
come  (6)
coming  (2)
commencing  (2)
comment  (1)
comments  (2)
Commerce  (1)
commit  (1)
commitment  (1)
commitments  (1)
commits  (2)
Committee  (3)
Committee's  (1)
committing  (1)
community  (1)
Company  (1)
comparing  (1)
competing  (2)
completely  (1)
components  (1)
computer-aided  (1)
Computershare  (4)
concerns  (1)

conclude  (1)
concluded  (2)
conditions  (3)
conduct  (1)
conference  (1)
CONFIDENTIAL  (1)
Confidentiality  (1)
confirm  (4)
confirmed  (3)
connected  (1)
connection  (1)
CONNELL  (1)
consider  (4)
consideration  (1)
considered  (1)
consistent  (3)
consists  (1)
constituents  (1)
consultation  (4)
Consulting  (2)
contains  (1)
contemplate  (1)
continuation  (1)
continue  (2)
CONTINUED  (3)
continues  (1)
continuing  (1)
contributed  (1)
control  (2)
conversation  (1)
conversations  (1)
CORBIN  (1)
corners  (1)
correct  (7)
Counsel  (7)
counterresponse  (1)
couple  (1)
COURT  (4)
covering  (3)
credit  (2)
Creditor's  (1)
CRR  (2)
CULLIN  (1)
CUMMIS  (1)

< D >
Dan  (2)
DANIEL  (1)
date  (2)

Dated  (1)
Dave  (1)
DAVID  (6)
day  (2)
Daylight  (1)
debtor  (2)
Debtors  (13)
December  (4)
declared  (1)
deemed  (2)
Des  (1)
designate  (2)
desire  (1)
despite  (1)
details  (1)
determine  (1)
determined  (3)
Dgordon@polsinelli.co
m  (1)
DINAN  (18)
discretion  (1)
discuss  (3)
discussed  (2)
discussing  (1)
Discussion  (1)
discussions  (1)
disqualified  (4)
DISTRICT  (1)
Dmsimon@mwe.com
 (1)
documentation  (1)
door  (1)

< E >
easement  (8)
either  (1)
eloquently  (1)
EMERY  (2)
employee  (1)
enhance  (1)
ensure  (1)
entering  (1)
entryway  (3)
equipment  (2)
ESQUIRE  (12)
estate  (2)
et  (1)
evaluate  (1)
event  (1)

everybody's  (1)
evolution  (1)
exception  (1)
exclude  (1)
excluding  (5)
Excuse  (1)
express  (2)
expressed  (1)
extent  (1)

< F >
face  (2)
facilities  (1)
fact  (2)
fails  (1)
failure  (1)
FAISAL  (1)
Federal  (1)
fee  (2)
FELICIA  (10)
FERRIS  (1)
figure  (1)
First  (1)
five  (2)
flies  (2)
flourish  (1)
folks  (1)
following  (2)
foregoing  (1)
form  (2)
format  (1)
forth  (1)
forward  (7)
Foundation  (1)
four  (1)
Fperlman@mwe.com
 (1)
Friedlander  (4)
FTI  (2)
full  (1)
further  (4)
future  (2)

< G >
GA  (1)
GANTI  (1)
general  (1)
GERBER  (2)
GILL  (1)

give  (4)
go  (6)
goal  (1)
going  (8)
good  (1)
GOODE  (1)
GORDON  (18)
GRAY  (1)
great  (3)
GRIKIS  (1)
GROSS  (1)
group  (4)
groups  (1)
guys  (1)

< H >
H2C  (2)
happy  (1)
health  (2)
hear  (2)
heard  (2)
hearing  (1)
hereinbefore  (1)
higher  (1)
highest  (5)
Hollow  (15)
horse  (6)
HOSPITAL  (11)
HUGHES  (1)

< I >
IL  (1)
Illinois  (1)
impacts  (1)
improper  (2)
inappropriate  (1)
included  (5)
includes  (1)
including  (7)
increase  (1)
increased  (1)
increasing  (1)
indication  (1)
information  (2)
infrastructure  (2)
intention  (1)
interconnected  (1)
interested  (3)
interim  (3)

invest  (1)
investing  (1)
IOWA  (14)
Iowa's  (1)
issue  (1)
its  (5)

< J >
JD  (2)
Jersey  (2)
JIM  (1)
JOB  (1)
jobs  (1)
JOHN  (1)
join  (2)
joining  (1)
JOSEPH  (1)

< K >
Kansas  (1)
Karen  (3)
kind  (1)
knock  (1)
know  (7)

< L >
Lake  (1)
leadership  (1)
LEAF  (1)
leaseback  (1)
left  (1)
LEVIN  (1)

Lgrikis@polsinelli.com
 (1)
License  (1)
licensure  (1)
light  (1)
limited  (1)
LINAS  (1)
link  (1)
litigation  (1)
LLP  (2)
long  (1)
look  (2)
looking  (2)
losses  (6)
lot  (6)
lots  (9)

luck  (1)

< M >
making  (1)
management  (2)
MANKOVETSKY
 (1)
manner  (1)
manor  (1)
MARK  (1)
matter  (1)
maximizes  (1)
maximum  (1)
MCDERMOTT  (2)
Medical  (2)
MEGAN  (2)
MERCY  (6)
Mercy's  (1)
met  (1)
million  (16)
MINTZ  (1)
minutes  (1)
missed  (1)
mission  (1)
Missouri  (1)
MOB  (12)
modification  (1)
modifications  (2)
modified  (1)
modify  (1)
modifying  (2)
Moines  (1)
month  (1)
move  (2)
moving  (2)
MOYER  (1)
Mpreusker@mintz.co
m  (1)
Mrooney@mwe.com
 (1)

< N >
NARENDRA  (1)
Nashville  (1)
NATHAN  (6)
NE  (1)
need  (5)
needed  (1)
needs  (1)

neither  (1)
never  (1)
New  (4)
Newark  (1)
Nfcoco@mintz.com
 (1)
nonconforming  (3)
North  (1)
NORTHERN  (1)
notice  (1)
November  (6)
number  (4)
NYEMASTER  (1)

< O >
objections  (2)
obviously  (2)
o'clock  (1)
October  (3)
offer  (5)
Office  (1)
Okay  (7)
old  (2)
once  (1)
operate  (1)
operating  (6)
operational  (2)
operations  (1)
operators  (1)
original  (4)
ORMAN  (1)
outcome  (1)
overbid  (2)
overbids  (1)

< P >
P.C  (2)
p.m  (6)
parch  (1)
parking  (23)
part  (2)
participate  (1)
participating  (2)
participation  (2)
parties  (5)
party  (4)
patchwork  (1)
payment  (1)
Peachtree  (1)

**PERLMAN** (*34*)
perpetual (*1*)
**PERRINE** (*1*)
physical (*1*)
pick (*1*)
ping (*1*)
Place (*2*)
plan (*1*)
plant (*1*)
Plaza (*2*)
PLC (*1*)
please (*1*)
plus (*2*)
point (*8*)
points (*1*)
**POLSINELLI** (*3*)
**PORTER** (*1*)
portion (*3*)
position (*3*)
precisely (*1*)
prefer (*1*)
prepared (*2*)
**PRESENT** (*1*)
**Preston** (*15*)
**PREUSKER** (*1*)
prior (*7*)
probably (*1*)
problem (*1*)
problematic (*1*)
Procedure (*1*)
procedures (*8*)
**PROCEEDINGS** (*3*)
process (*3*)
properties (*3*)
property (*2*)
provide (*1*)
providing (*1*)
provision (*1*)
purchase (*2*)
purpose (*1*)
purposes (*2*)
pursuant (*2*)
put (*3*)

**< Q >**
question (*1*)
questions (*2*)
quote (*1*)

**< R >**
raise (*1*)
raised (*1*)
**Rapids** (*1*)
**RCR-NY** (*2*)
**RDR** (*2*)
ready (*2*)
real (*2*)
reasonably (*1*)
reconvene (*1*)
record (*37*)
refer (*1*)
referred (*2*)
reflect (*1*)
reflected (*1*)
regarding (*1*)
regroup (*1*)
reimbursement (*1*)
related (*3*)
relating (*1*)
relevant (*1*)
remember (*1*)
removed (*1*)
reopen (*1*)
**REPORT** (*2*)
**REPORTED** (*1*)
Reporter (*2*)
representatives (*3*)
requested (*1*)
require (*1*)
reschedule (*1*)
reserve (*3*)
respect (*5*)
respond (*1*)
response (*1*)
responsibility (*1*)
resume (*1*)
revised (*1*)
**RICHARD** (*1*)
right (*3*)
rights (*1*)
risk (*1*)
**Riverfront** (*1*)
**Riverside** (*1*)

Rleaf@nyemaster.com
(*1*)
roof (*1*)
room (*5*)

rooms (*2*)
**ROONEY** (*1*)
round (*2*)
**ROY** (*1*)
Rules (*1*)

**< S >**
S/Karen (*1*)
sake (*1*)
sale (*1*)
**SAMUEL** (*1*)
satisfaction (*1*)
SE (*1*)
Section (*1*)
Securities (*2*)
see (*4*)
send (*3*)
separate (*1*)
serve (*2*)
served (*1*)
session (*1*)
set (*1*)
**SHERMAN** (*5*)
shortly (*3*)
significant (*1*)
**SILLS** (*1*)
similar (*1*)
**SIMMONS** (*1*)
**SIMON** (*1*)
soon (*1*)
sorry (*1*)
Sounds (*1*)
stalking (*6*)
stand (*1*)
standpoint (*1*)
starting (*2*)
State (*4*)
statement (*2*)
**STATES** (*2*)
stenographically (*1*)
stipulation (*1*)
Street (*5*)
structured (*1*)
subject (*3*)
successful (*1*)
Suite (*6*)
support (*3*)
sure (*2*)
surprise (*1*)

Systems (*1*)

**< T >**
take (*4*)
taken (*2*)
talk (*1*)
technology (*1*)
Tennessee (*1*)
terms (*3*)
text (*1*)
thank (*10*)
Thanks (*1*)
therewith (*1*)
things (*1*)
think (*4*)
Third (*1*)
thought (*1*)
thusly (*1*)
Time (*19*)
timely (*1*)
TJC (*1*)
TONEY (*1*)
topping (*1*)
transaction (*1*)
transcript (*2*)
true (*1*)
Trust (*1*)
Tuesday (*1*)
turn (*3*)
two (*8*)

**< U >**
UCC (*2*)
understanding (*2*)
Understood (*1*)
UNITED (*2*)
universe (*1*)
University (*37*)
University's (*4*)
unoccupied (*1*)
unrestricted (*1*)
update (*1*)

**< V >**
vacant (*3*)
valuation (*1*)
value (*3*)
variations (*1*)
versus (*1*)

viable *(1)*
views *(1)*
virtual *(1)*
visit *(1)*

**< W >**
**Walnut** *(1)*
**want** *(5)*
**wanted** *(1)*
**wants** *(2)*
**way** *(3)*
**ways** *(1)*
**Wednesday** *(6)*
**well** *(1)*
**went** *(1)*
**we're** *(8)*
**West** *(2)*
**wherewithal** *(1)*
**willing** *(4)*
**winning** *(2)*
**wish** *(2)*
**working** *(2)*
**works** *(2)*

**< X >**
**XI01282** *(1)*

**< Y >**
**Yeah** *(5)*
**years** *(1)*
**York** *(2)*

**< Z >**
**Zoom** *(3)*
**ZUCKER** *(1)*

## EXHIBIT C

**October 27, 2023 Auction Transcript**

1              IN THE UNITED STATES BANKRUPTCY COURT

2                FOR THE NORTHERN DISTRICT OF IOWA

3

4

5    IN RE:

6    MERCY HOSPITAL, IOWA CITY     Case No. 23-00623 (TJC)

7    IOWA, et al.                  Jointly Administered

8                     Debtors.

9    _____

10

11

12              REPORT OF AUCTION PROCEEDINGS

13                        Via Zoom

14                Friday, October 27, 2023

15            10:09 a.m. Eastern Standard Time

16

17                      CONFIDENTIAL

18   This transcript portion contains information subject to

19   a Confidentiality Agreement and shall be used

20   Only in accordance therewith.

21

22

23   Reported by:  Renee J. Ogden, CSR-3455, RPR.

24   Job No.: 23979

25

1   APPEARANCES:

2

3   MCDERMOTT WILL & EMERY LLP

4   BY:  DANIEL M. SIMON, ESQUIRE

5   1180 Peachtree Street, NE

6   Suite 3350

7   Atlanta, GA 30309

8   (404) 260 8554

9   Dmsimon@mwe.com

10   - and -

11   MCDERMOTT WILL & EMERY LLP

12   BY:  FELICIA GERBER PERLMAN, ESQUIRE

13   444 West Lake Street

14   Chicago, Illinois  60606-0029

15   (312) 984 3680

16   Fperlman@mwe.com

17   Counsel for the Debtors

18

19

20

21

22

23

24

25

```
 1   NYEMASTER GOODE, P.C.

 2   BY:  ROY LEAF, ESQUIRE

 3   700 Walnut Street

 4   Suite 1600

 5   Des Moines, Iowa 50309

 6   (515) 283-3100

 7   Rleaf@nyemaster.com

 8   Counsel for Debtors

 9

10   NYEMASTER GOODE, P.C.

11   BY: KRISTINA M. STANGER

12   700 Walnut

13   Suite 1600

14   Des Moines, Iowa 50309-3899

15   (515) 283-8009

16   Kmstanger@nyemaster.com

17   Counsel for the Debtors

18

19

20

21

22

23

24

25
```

1    APPEARANCES CONTINUED:

2

3    POLSINELLI

4    BY:  DAVID E. GORDON, ESQUIRE

5    501 Commerce Street

6    Suite 1300

7    Nashville, Tennessee 37219

8    (404) 253-6005

9    Dgordon@polsinelli.com

10   - and -

11   POLSINELLI

12   BY:  LINAS J. GRIKIS, ESQUIRE

13   150 North Riverside Plaza

14   Suite 300

15   Chicago, Illinois 60606

16   (312) 873-2946

17   Lgrikis@polsinelli.com

18   - and -

19

20

21

22

23

24

25

```
 1    POLSINELLI

 2    BY:  CULLIN B. HUGHES, ESQUIRE

 3    900 West 48th Place

 4    Suite 900

 5    Kansas City, Missouri 64112

 6    (816) 360-4121

 7    Chughes@polsinelli.com

 8    Counsel for The State University of Iowa

 9

10    MINTZ LEVIN COHN FERRIS

11    GLOVSKY AND POPEO, P.C.

12    BY:  NATHAN F. COCO, ESQUIRE

13    919 Third Avenue

14    New York, New York  10022

15    (212) 935-3000

16    Nfcoco@mintz.com

17    Counsel for Computershare Trust

18    Company as master trustee and

19    Preston Hollow Community Capital, Inc.

20    As bondholder representative

21

22

23

24

25
```

1  SILLS CUMMIS & GROSS P.C.

2  BY:  ANDREW H. SHERMAN, ESQUIRE

3  The Legal Center

4  One Riverfront Plaza

5  Newark, New Jersey  07102

6  Asherman@sillscummis.com

7  Counsel to the Official

8  Committee of Unsecured Creditors

9  - and -

10  BORIS I. MANKOVETSKIY

11  SILLS CUMMIS & GROSS P.C.

12  BY:  ANDREW H. SHERMAN, ESQUIRE

13  The Legal Center

14  One Riverfront Plaza

15  Newark, New Jersey  07102

16  Bmankovetskiy@sillscummis.com

17  Counsel to the Official

18  Committee of Unsecured Creditors

19

20  ALSO PRESENT:

21  JOHN DINAN - Preston Hollow

22  JIM PORTER - on behalf of the Debtors

23  MARK TONEY - on behalf of the Debtors

24  CORBIN CONNELL - Computershare

25  NARENDRA GANTI - FTI Consulting

```
 1   CLIFFORD A. ZUCKER - FTI Consulting

 2   C. RICHARD BAYMAN - H2C Securities Inc.

 3   ANDREW S. ORMAN - H2C Securities Inc.

 4   TOM CLANCY - Mercy, Iowa City

 5   ASHLEY CHAMPION-POLSINELLI - State University of Iowa

 6   JACK HAAKE - Debtors

 7   JACOB PARK - Mercy, Iowa City

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   Friday, October 27, 2023

2   10:09 a.m. Eastern Standard Time

3

4            ATTORNEY SIMON:  Good morning, everyone.

5            This is the reopened auction in the

6   Mercy Hospital, Iowa City matter, case number

7   23-00623 currently pending in the United States

8   Bankruptcy Court for the Northern District of Iowa.

9            My name is Dan Simon from McDermott Will

10  & Emery, counsel for the Debtors.

11           We're joined today by my partner,

12  Felicia Perlman; the Debtors' chief executive

13  officer, Tom Clancy; the Debtors' chief

14  restructuring officer, Mark Toney; and the Debtors'

15  chief financial officer, Jim Porter.

16           We also have the two bidding parties on

17  the line.

18           The first is the group known as the

19  Bondholder Representatives from Preston Hollow

20  Community Capital and Computershare.

21           And the second is the University of

22  Iowa.

23           We're also joined by the Official

24  Committee of Unsecured Creditors who acts as the

25  sole consultation party under the bidding

1     procedures.

2            I'm going to ask that each party have

3     only one speaker designated to speak so that we

4     keep the transcript streamlined.

5            Nathan Coco, is it safe to assume that

6     you are the speaker for the Bondholder

7     Representative?

8            ATTORNEY COCO:  That is correct.

9            ATTORNEY SIMON:  Dave Gordon, is it safe

10    to assume that you are the speaker for the

11    University of Iowa?

12           ATTORNEY GORDON:  Yes, that's correct.

13    David Gordon on behalf of the State University of

14    Iowa.

15           ATTORNEY SIMON:  Andrew Sherman, is it

16    fair to assume that you are the speaker for the

17    committee?

18           ATTORNEY SHERMAN:  It is a fair

19    statement, Mr. Simon.

20           ATTORNEY SIMON:  Thank you.

21           As you know, this auction is being

22    conducted pursuant to the bidding procedures order

23    which was entered by the bankruptcy court on

24    September 14th, and filed at Docket 222.

25           The Debtor commenced the auction

1    pursuant to those bidding procedures on

2    October 4th.  We were all in person at McDermott's

3    offices in Chicago.  The auction was continued

4    later that evening and resumed via Zoom on

5    October 10th.

6                At the conclusion of the auction on

7    October 10th, the Debtors, after consultation with

8    the committee, determined that the highest or

9    otherwise best bid was the final bid submitted by

10   the Bondholder Representative.

11               That bid, as stated on the record, was a

12   credit bid in the amount of $27.8 million, an

13   agreement to fund up to $1.2 million in operating

14   losses from November 15th to November 30th, and

15   payment in cash of the $800,000 breakup fee to the

16   University of Iowa.

17               That bid also included an obligation to

18   begin funding the operating losses of the Debtors

19   in full from December 1st until the closing of the

20   sale.

21               In the days that followed the conclusion

22   of that auction, a material disagreement emerged.

23   The Bondholder Representative took the position

24   that the obligation to fund operating losses of the

25   Debtors would be offset by all available sources of

1    funds, which would include the Debtors' cash as

2    well as Foundation cash contemplated to be paid

3    under a settlement agreement which remains subject

4    to court approval.

5            The practical reality of that

6    disagreement meant that the Debtors' cash and

7    Foundation cash would be depleted prior to any

8    funding obligation was required by the Bondholder

9    Representative and prior to any closing.

10           The Bondholder Representative last

11   Thursday filed a motion to compel compliance with

12   the bidding procedures.

13           The Debtors dispute many of the

14   allegations in that pleading and reserve all

15   rights.

16           Needless to say, this disagreement

17   necessarily meant that the value of the final bid

18   from Preston Hollow was materially different than

19   what the Debtors and the Committee determined at

20   the auction.

21           Given that the sale hearing had been

22   continued and no sale order was entered, and that

23   the Debtors could not reach agreement with the

24   Bondholder Representative, the Debtors determined

25   after consultation with the Committee that it was

1    appropriate and consist with the bidding procedures

2    and their fiduciary duties to reopen the auction

3    this morning.

4            The various parties on the phone today

5    were notified via email this past Wednesday.

6            So with those introductory comments, I

7    want to seek one simple clarification from the

8    University of Iowa first.

9            The last bid described by the

10   University of Iowa on the record on October 10th

11   contained an obligation to fund operating losses of

12   the Debtors on and after December 1st, 2023 until a

13   closing occurred.

14           The Debtors understood that the funding

15   of operating losses would be calculated as the

16   difference between operating expenses and operating

17   revenues.  In other words, this calculation would

18   be without regard to Debtors' existing cash or

19   Foundation cash.

20           Was the University's last bid on the

21   record consistent with the Debtors' understanding

22   as I just described?

23           ATTORNEY GORDON:  The University's last

24   bid on the record did not include any Foundation

25   money.

1     With respect to cash, I do believe we

2  assumed that the Debtors would use their cash on

3  hand to fund their operations and that we would

4  make up the difference between operating revenues

5  and losses.

6     ATTORNEY SIMON:  Okay.  So it would be

7  the difference between the operating expenses and

8  the operating revenues?

9     ATTORNEY GORDON:  Correct.  And would

10  not include any Foundation money whatsoever.

11     ATTORNEY SIMON:  Thank you.

12     With that clarification and the fact

13  that the Bondholder Representative stated in their

14  papers that they had a different interpretation of

15  operating losses, the Debtors have determined in

16  consultation with the committee that the last bid

17  submitted by the Bondholder Representatives is no

18  longer the highest or otherwise best bid.

19     Instead, the last bid submitted by the

20  University of Iowa on the record on October 10th

21  has been determined to be the current highest or

22  otherwise best bid.

23     This also necessarily means that the

24  Bondholder Representative bid, which was previously

25  determined to be the successful bid or the winning

1   bid at the auction, is no longer the successful bid

2   or the winning bid.

3          At this point, I will turn back to you,

4   Mr. Gordon, from the University of Iowa, to see if

5   you have any modifications to your current bid or

6   otherwise wish to make any statements for the

7   record.

8          ATTORNEY GORDON:  Sure, we do.  Again,

9   David Gordon with Polsinelli on behalf of the State

10  University of Iowa.

11         Since October 10th when the Debtors

12  filed the notice of auction results designating

13  Preston Hollow's credit bid, the Bondholder

14  Representative credit bid as the winning bid, the

15  State University of Iowa has continued to monitor

16  the situation of this bankruptcy.

17         The University of Iowa Healthcare

18  Leadership, Board of Regents, State of Iowa believe

19  that the providers and staff members of

20  Mercy Iowa City who serve our community are

21  invaluable essential partners.

22         Consistent with its commitment to

23  maintaining sustainable access to care and

24  healthcare workforce, and in light of the current

25  impasse among the parties to this bankruptcy court

1    proceeding, the State University of Iowa is willing

2    to intercede to preserve the legacy of Mercy

3    Iowa City.

4         The University hereby reinstates the bid

5    in the following manner:  If the University is

6    chosen as with winning bidder, and subject to the

7    acquisition being approved as the winning bidder by

8    the bankruptcy court within a reasonable period of

9    time, the satisfaction of all the closing

10   conditions in our asset purchase agreement

11   including licensure, and entering into an employee

12   leaseback with the Debtors until such time as the

13   transaction can reasonably close, which the

14   University anticipates will occur on or before

15   January 31, 2024, we reinstate our bid.

16        The purchase price will be an amount

17   equal to $28 million, plus an amount equal to the

18   Debtors' actual operating losses exclusive of

19   professional fees and all other costs and expenses

20   the relating to the bankruptcy that are not already

21   otherwise covered by the Debtors' cash and other

22   investments for the period commencing on

23   December 1, 2023, and continuing until such time as

24   the transaction closes.

25        For the avoidance of doubt, calculation

Case 23-00623   Doc 464   Filed 11/05/23   Entered 11/05/23 18:19:04   Desc Main

Transcript of Bankruptcy Auction 10.27.2023   **Document**   **Page 91 of 110**   In Re Mercy Hospital, Iowa City, Iowa, et al

1   of the Debtors' operating losses shall in no way

2   take into account any funds made available to the

3   Debtors by the Mercy Iowa City Foundation.

4         In addition to that cash component just

5   stated, if University is chosen as the winning

6   bidder, it commits to invest at least $25 million

7   on information technology infrastructure, physical

8   plant infrastructure, including but not limited to

9   the roof, parking facility, plant equipment, and

10   medical equipment.  The University will make this

11   $25 million investment within five years of

12   closing.

13         The University submits this bid in

14   recognition and appreciation of the profound

15   contribution that Mercy Hospital has made and will

16   continue to make to the community.  We look forward

17   to continuing the mission of Mercy Iowa City,

18   supporting its loyal staff and healthcare

19   professionals through what has been a trying time

20   and we stand with Mercy Iowa City and its employees

21   and staff.

22         ATTORNEY SIMON:  I'd like to go off the

23   record for five minutes just to have a quick break

24   with our team.

25         (Off the record at 10:20 a.m.)

1        (Back on the record at 11:27 a.m.)

2        ATTORNEY SIMON:  We're back on the

3    record.  We appreciate everyone's patience during

4    that break.

5        We do want to make one clarification for

6    the record with respect to the last bid from the

7    University of Iowa.  I'll make it now.

8        With respect to the assets being

9    purchased.  To the extent that actual operating

10    disbursements are greater than actual operating

11    receipts, then the University agrees to fund the

12    difference post-December 1st without regard to the

13    Debtors' Foundation funds or the Debtors' cash on

14    hand as of that date as of December 1st.

15        That funding commitment does not include

16    any agreement to fund by the University of

17    restructuring professional fees of the Debtors

18    during this period.

19        David, can you confirm that statement on

20    behalf of the University?

21        ATTORNEY GORDON:  I confirm that

22    statement on behalf of the University.  That is our

23    understanding of our commitment to fund the

24    operating expenses.

25        ATTORNEY SIMON:  So with that

1    clarification and statements made on the record,

2    the Debtors deem the University of Iowa's bid to be

3    highest or otherwise best bid.

4              I will now turn to Nathan, the

5    Bondholder Representatives, to determine whether

6    you wish to submit a topping bid.

7              ATTORNEY COCO:  Before I address that

8    question, Dan -- thank you -- let me ask Corbin and

9    JD, do you think it's appropriate for us to have a

10   caucus or recess here or are you comfortable with

11   us proceeding?

12             MR. DINAN:  PHC as Bondholder

13   Representative is comfortable proceeding.

14             MR. CONNELL:  Computershare likewise is

15   comfortable proceeding.  Thank you.

16             ATTORNEY COCO:  So with that, I'll

17   address your question as follows.

18             Let me first state for the record, this

19   is Nathan Coco on behalf of the Preston Hollow

20   Community Capital, Inc. and Bondholder

21   Representatives, and Computershare Trust Company,

22   NA, as master trustee, which I will refer to

23   collectively as the Secured Bondholder

24   Representatives.

25             I'm joined in this proceeding by Corbin

1    Connell from Computershare who serves as the master

2    trustee, and by John Dinan on behalf of Preston

3    Hollow.

4             We would like to state for the record

5    and for the avoidance of doubt, that the Secured

6    Bondholder Representatives' final bid at the

7    auction convened on October 10, 2023 was for the

8    payment of the breakup fee, plus $29 million

9    consisting of, one, $27.8 million credit bid; two,

10   a $1.2 million cash bid to be satisfied through the

11   backstop of operating losses up to that amount

12   incurred by Mercy Hospital, Iowa City, Iowa for the

13   for the period of November 15 through November 30;

14   three, a further commitment to backstop operating

15   losses incurred by Mercy for the period of

16   December 1, 2023 through the closing date.

17            The credit bid was for all of the

18   purchased assets, as that term is defined in the

19   credit bid asset purchase agreement, as well as

20   Mercy's interest in certain clinics and parking

21   lots, but excluding the medical office building

22   referred to as the MOB2 and adjacent parking lot.

23            The bid was subject to satisfaction of

24   all contractual closing conditions and the Secured

25   Bondholder's credit bid asset purchase agreement.

1          For the further avoidance of doubt, the

2     the backstop commitment incorporated in the Secured

3     Bondholder Representative's bid is different from

4     what the University and the Debtors have just

5     described with respect to the University's bid.

6          The backstop commitment incorporated in

7     the Secured Bondholder Representative's bid was to

8     advance funds to the Debtors' bankruptcy estates

9     for the specific amounts by which Mercy's operating

10    expenses exceeded its available funds to pay such

11    expenses including Mercy's available cash on hand

12    and any funds contributed to Mercy by the

13    Foundation.

14         The Secured Bondholder Representatives

15    are willing to increase their credit bid by

16    $1 million.  But to be clear, the Secured

17    Bondholder Representatives will not alter or

18    increase the amount of their bid, nor will the

19    Secured Bondholder Representatives agree to or

20    close a transaction with the Debtors either as a

21    bidder, a backup bidder, or otherwise, if such bid

22    does not provide for the application of Mercy's

23    cash on hand and funds contributed by the

24    Foundation in determining operating losses.

25         From the Secured Bondholder

1        Representative's perspective, any transaction that

2        is not inclusive of Mercy's cash on hand and

3        Foundation funds for purposes of determining

4        operating losses is not financially viable, does

5        not comport with the bid they proffered at the

6        auction convened on October 10th, and the Secured

7        Bondholder Representatives will not move forward on

8        that basis.

9            The Secured Bondholder Representatives

10       reserve all of their rights in connection with this

11       auction and the sale process.

12            ATTORNEY SIMON:  Thank you, Nathan.

13            Based upon the statements made on the

14       record today, the Debtors in consultation with the

15       committee determine that the bid from the

16       University of Iowa is the winning bid or successful

17       bid at the auction.

18            I'll say as a part of this determination

19       the Debtors take very seriously their fiduciary

20       duties and the power granted to the Debtors under

21       the bidding procedures order.

22            That's in part why we believed it

23       appropriate to reopen the auction today.

24            The bid submitted by the Bondholder

25       Representatives as described by Mr. Coco, after

1    accounting for the fact that it required use of all

2    of the remaining funds, including Foundation funds

3    and cash on hand, meant that this bid is not a

4    viable alternative.

5            The bidding procedures grant broad

6    discretion to the Debtors, including the specific

7    ability of the Debtors to reject at any time before

8    entry of an order of the court approving a winning

9    bids, any bid that the Debtors determine is, 1,

10   inadequate or insufficient; 2 not in conformity

11   with the requirements of the bankruptcy codes

12   and/or bidding procedures; or 3, contrary to the

13   best interest of the Debtor, their estate, their

14   creditors, and other stakeholders.

15           Under this power, the Debtors do not

16   believe that any bid that requires use of the

17   Debtors' remaining cash and Foundation cash prior

18   to closing is a viable transaction under the

19   circumstances.  Therefore, the Debtors reject the

20   bid of the Bondholder Representatives as stated.

21           The Debtors deem the winning bidder to

22   be the University of Iowa based upon the terms

23   stated on the record which will remain subject to

24   definitive documentation and approval of the

25   bankruptcy court.

1          Does anyone else wish to say anything

2     for the record at this point?

3          With that, I'd like to thank all of

4     parties for their cooperation and attention in

5     these important matters.

6          As you know, the Debtors have been very

7     focused on ongoing patient care in the midst of

8     these bankruptcy proceedings which has not always

9     been an easy task.

10          We thank both of the bidding parties.

11     We believe that the transaction with the University

12     of Iowa will go a long way to restoring confidence

13     in the Debtors' employees and ensuring ongoing

14     patient care in the community for many years to

15     come.

16          The Debtors will be filing shortly an

17     amended notice of auction results.  I will report

18     these results to the court at the hearing this

19     afternoon.

20          We also intend to notice up a sale

21     hearing for November 5th.

22          Thank you, everyone.  We're off the

23     required.

24          (Auction concluded at 11:34 a.m.)

25

1                    CERTIFICATE OF NOTARY

2    STATE OF MICHIGAN        )

3                             ) SS

4    COUNTY OF WAYNE          )

5

6              I, RENEE J. OGDEN, certify that the

7        foregoing was recorded by me stenographically and

8        reduced to computer transcription; that this is a

9        true, full and correct transcript of my

10       stenographic notes so taken; and that I am not

11       related to, nor of counsel to, either party nor

12       interested in the event of this cause.

13

14

15

16

17                    *Renee J. Ogden*

18                    RENEE J. OGDEN, CSR-3455

19                    Notary Public,

20                    Wayne County, Michigan

21        My Commission expires: June 21, 2025

22

23

24

25

## WORD INDEX

**< $ >**
**$1**  20:16
**$1.2**  10:13  19:10
**$25**  16:6, 11
**$27.8**  10:12  19:9
**$28**  15:17
**$29**  19:8
**$800,000**  10:15

**< 0 >**
**07102**  6:5, 15

**< 1 >**
**1**  15:23  19:16  22:9
**10**  19:7
**10:09**  1:15  8:2
**10:20**  16:25
**10022**  5:14
**10th**  10:5, 7  12:10
  13:20  14:11  21:6
**11:27**  17:1
**11:34**  23:24
**1180**  2:5
**1300**  4:6
**14th**  9:24
**15**  19:13
**150**  4:13
**15th**  10:14
**1600**  3:4, 13
**1st**  10:19  12:12
  17:12, 14

**< 2 >**
**2**  22:10
**2023**  1:14  8:1  12:12
  15:23  19:7, 16
**2024**  15:15
**2025**  24:21
**21**  24:21
**212**  5:15
**222**  9:24
**23-00623**  1:6  8:7
**23979**  1:24
**253-6005**  4:8
**260**  2:8
**27**  1:14  8:1
**283-3100**  3:6

**283-8009**  3:15

**< 3 >**
**3**  22:12
**30**  19:13
**300**  4:14
**30309**  2:7
**30th**  10:14
**31**  15:15
**312**  2:15  4:16
**3350**  2:6
**360-4121**  5:6
**3680**  2:15
**37219**  4:7

**< 4 >**
**404**  2:8  4:8
**444**  2:13
**48th**  5:3
**4th**  10:2

**< 5 >**
**501**  4:5
**50309**  3:5
**50309-3899**  3:14
**515**  3:6, 15
**5th**  23:21

**< 6 >**
**60606**  4:15
**60606-0029**  2:14
**64112**  5:5

**< 7 >**
**700**  3:3, 12

**< 8 >**
**816**  5:6
**8554**  2:8
**873-2946**  4:16

**< 9 >**
**900**  5:3, 4
**919**  5:13
**935-3000**  5:15
**984**  2:15

**< A >**
**a.m**  1:15  8:2  16:25

**17:1**  23:24
**ability**  22:7
**access**  14:23
**account**  16:2
**accounting**  22:1
**acquisition**  15:7
**acts**  8:24
**actual**  15:18  17:9, 10
**addition**  16:4
**address**  18:7, 17
**adjacent**  19:22
**Administered**  1:7
**advance**  20:8
**afternoon**  23:19
**agree**  20:19
**Agreement**  1:19
  10:13  11:3, 23  15:10
  17:16  19:19, 25
**agrees**  17:11
**al**  1:7
**allegations**  11:14
**alter**  20:17
**alternative**  22:4
**amended**  23:17
**amount**  10:12  15:16,
  17  19:11  20:18
**amounts**  20:9
**and/or**  22:12
**ANDREW**  6:2, 12
  7:3  9:15
**anticipates**  15:14
**APPEARANCES**  2:1
  4:1
**application**  20:22
**appreciate**  17:3
**appreciation**  16:14
**appropriate**  12:1
  18:9  21:23
**approval**  11:4  22:24
**approved**  15:7
**approving**  22:8
**Asherman@sillscumm**
**is.com**  6:6
**ASHLEY**  7:5
**asset**  15:10  19:19, 25
**assets**  17:8  19:18
**assume**  9:5, 10, 16
**assumed**  13:2
**Atlanta**  3:7
**attention**  23:4

**ATTORNEY**  8:4
  9:8, 9, 12, 15, 18, 20
  12:23  13:6, 9, 11
  14:8  16:22  17:2, 21,
  25  18:7, 16  21:12
**AUCTION**  1:12  8:5
  9:21, 25  10:3, 6, 22
  11:20  12:2  14:1, 12
  19:7  21:6, 11, 17, 23
  23:17, 24
**available**  10:25  16:2
  20:10, 11
**Avenue**  5:13
**avoidance**  15:25
  19:5  20:1

**< B >**
**back**  14:3  17:1, 2
**backstop**  19:11, 14
  20:2, 6
**backup**  20:21
**BANKRUPTCY**  1:1
  8:8  9:23  14:16, 25
  15:8, 20  20:8  22:11,
  25  23:8
**Based**  21:13  22:22
**basis**  21:8
**BAYMAN**  7:2
**behalf**  6:22, 23  9:13
  14:9  17:20, 22  18:19
  19:2
**believe**  13:1  14:18
  22:16  23:11
**believed**  21:22
**best**  10:9  13:18, 22
  18:3  22:13
**bid**  10:9, 11, 12, 17
  11:17  12:9, 20, 24
  13:16, 18, 19, 22, 24,
  25  14:1, 2, 5, 13, 14
  15:4, 15  16:13  17:6
  18:2, 3, 6  19:6, 9, 10,
  17, 19, 23, 25  20:3, 5,
  7, 15, 18, 21  21:5, 15,
  16, 17, 24  22:3, 9, 16,
  20
**bidder**  15:6, 7  16:6
  20:21  22:21
**bidding**  8:16, 25
  9:22  10:1  11:12

12:*1*   21:*21*   22:5, *12*
23:*10*
**bids**   22:9
**Bmankovetskiy@sillsc**
**ummis.com**   6:*16*
**Board**   14:*18*
**bondholder**   5:*20*
8:*19*   9:6   10:*10*, 23
11:*8*, *10*, 24   13:*13*, *17*,
*24*   14:*13*   18:5, *12*, *20*,
*23*   19:6   20:*3*, 7, *14*,
*17*, *19*, 25   21:7, *9*, *24*
22:*20*
**Bondholder's**   19:*25*
**BORIS**   6:*10*
**break**   16:*23*   17:*4*
**breakup**   10:*15*   19:*8*
**broad**   22:5
**building**   19:*21*

**< C >**
**calculated**   12:*15*
**calculation**   12:*17*
15:*25*
**Capital**   5:*19*   8:*20*
18:*20*
**care**   14:*23*   23:7, *14*
**Case**   1:*6*   8:*6*
**cash**   10:*15*   11:*1*, 2, 6,
7   12:*18*, *19*   13:*1*, 2
15:*21*   16:*4*   17:*13*
19:*10*   20:*11*, *23*   21:*2*
22:*3*, *17*
**caucus**   18:*10*
**cause**   24:*12*
**Center**   6:*3*, *13*
**certain**   19:*20*
**CERTIFICATE**   24:*1*
**certify**   24:6
**CHAMPION-**
**POLSINELLI**   7:5
**Chicago**   2:*14*   4:*15*
10:*3*
**chief**   8:*12*, *13*, *15*
**chosen**   15:*6*   16:5
**Chughes@polsinelli.co**
**m**   5:*7*
**circumstances**   22:*19*

**CITY**   1:*6*   5:5   7:*4*, 7
8:6   14:*20*   15:*3*   16:*3*,
*17*, 20   19:*12*
**CLANCY**   7:*4*   8:*13*
**clarification**   12:7
13:*12*   17:5   18:*1*
**clear**   20:*16*
**CLIFFORD**   7:*1*
**clinics**   19:*20*
**close**   15:*13*   20:*20*
**closes**   15:*24*
**closing**   10:*19*   11:*9*
12:*13*   15:9   16:*12*
19:*16*, *24*   22:*18*
**COCO**   5:*12*   9:5, *8*
18:*7*, *16*, *19*   21:*25*
**codes**   22:*11*
**COHN**   5:*10*
**collectively**   18:*23*
**come**   23:*15*
**comfortable**   18:*10*,
*13*, *15*
**commenced**   9:*25*
**commencing**   15:*22*
**comments**   12:6
**Commerce**   4:5
**Commission**   24:*21*
**commitment**   14:*22*
17:*15*, *23*   19:*14*   20:*2*,
6
**commits**   16:6
**Committee**   6:*8*, *18*
8:*24*   9:*17*   10:8
11:*19*, 25   13:*16*
21:*15*
**Community**   5:*19*
8:*20*   14:*20*   16:*16*
18:*20*   23:*14*
**Company**   5:*18*   18:*21*
**compel**   11:*11*
**compliance**   11:*11*
**component**   16:*4*
**comport**   21:5
**computer**   24:*8*
**Computershare**   5:*17*
6:*24*   8:*20*   18:*14*, *21*
19:*1*
**concluded**   23:*24*
**conclusion**   10:*6*, *21*

**conditions**   15:*10*
19:*24*
**conducted**   9:*22*
**confidence**   23:*12*
**CONFIDENTIAL**
1:*17*
**Confidentiality**   1:*19*
**confirm**   17:*19*, *21*
**conformity**   22:*10*
**connection**   21:*10*
**CONNELL**   6:*24*
18:*14*   19:*1*
**consist**   12:*1*
**consistent**   12:*21*
14:*22*
**consisting**   19:9
**consultation**   8:*25*
10:7   11:*25*   13:*16*
21:*14*
**Consulting**   6:*25*   7:*1*
**contained**   12:*11*
**contains**   1:*18*
**contemplated**   11:*2*
**continue**   16:*16*
**CONTINUED**   4:*1*
10:*3*   11:*22*   14:*15*
**continuing**   15:*23*
16:*17*
**contractual**   19:*24*
**contrary**   22:*12*
**contributed**   20:*12*, *23*
**contribution**   16:*15*
**convened**   19:7   21:6
**cooperation**   23:*4*
**CORBIN**   6:*24*   18:*8*,
25
**correct**   9:*8*, *12*   13:*9*
24:*9*
**costs**   15:*19*
**Counsel**   2:*17*   3:*8*, *17*
5:*8*, *17*   6:*7*, *17*   8:*10*
24:*11*
**COUNTY**   24:*4*, 20
**COURT**   1:*1*   8:*8*
9:*23*   11:*4*   14:*25*
15:*8*   22:*8*, 25   23:*18*
**covered**   15:*21*
**credit**   10:*12*   14:*13*,
14   19:*9*, *17*, *19*, 25
20:*15*

**Creditors**   6:*8*, *18*
8:*24*   22:*14*
**CSR-3455**   1:*23*   24:*18*
**CULLIN**   5:*2*
**CUMMIS**   6:*1*, *11*
**current**   13:*21*   14:5,
24
**currently**   8:*7*

**< D >**
**Dan**   8:*9*   18:*8*
**DANIEL**   2:*4*
**date**   17:*14*   19:*16*
**Dave**   9:*9*
**DAVID**   4:*4*   9:*13*
14:*9*   17:*19*
**days**   10:*21*
**Debtor**   9:*25*   22:*13*
**Debtors**   1:*8*   2:*17*
3:*8*, *17*   6:*22*, 23   7:6
8:*10*, *12*, *13*, 14   10:7,
*18*, 25   11:*1*, 6, *13*, *19*,
*23*, *24*   12:*12*, *14*, *18*,
*21*   13:*2*, *15*   14:*11*
15:*12*, *18*, *21*   16:*1*, 3
17:*13*, *17*   18:*2*   20:*4*,
*8*, *20*   21:*14*, *19*, *20*
22:6, 7, *9*, *15*, *17*, *19*,
*21*   23:*6*, *13*, *16*
**December**   10:*19*
12:*12*   15:*23*   17:*14*
19:*16*
**deem**   18:*2*   22:*21*
**defined**   19:*18*
**definitive**   22:*24*
**depleted**   11:*7*
**Des**   3:5, *14*
**described**   12:*9*, *22*
20:5   21:*25*
**designated**   9:*3*
**designating**   14:*12*
**determination**   21:*18*
**determine**   18:5
21:*15*   22:9
**determined**   10:*8*
11:*19*, 24   13:*15*, *21*,
25
**determining**   20:*24*
21:*3*

Dgordon@polsinelli.com  4:*9*
difference  12:*16*
 13:*4, 7*  17:*12*
different  11:*18*
 13:*14*  20:*3*
DINAN  6:*21*  18:*12*
 19:*2*
disagreement  10:*22*
 11:*6, 16*
disbursements  17:*10*
discretion  22:*6*
dispute  11:*13*
DISTRICT  1:*2*  8:*8*
Dmsimon@mwe.com
 2:*9*
Docket  9:*24*
documentation  22:*24*
doubt  15:*25*  19:*5*
 20:*1*
duties  12:*2*  21:*20*

< E >
Eastern  1:*15*  8:*2*
easy  23:*9*
either  20:*20*  24:*11*
email  12:*5*
emerged  10:*22*
EMERY  2:*3, 11*  8:*10*
employee  15:*11*
employees  16:*20*
 23:*13*
ensuring  23:*13*
entered  9:*23*  11:*22*
entering  15:*11*
entry  22:*8*
equal  15:*17*
equipment  16:*9, 10*
ESQUIRE  2:*4, 12*
 3:*2*  4:*4, 12*  5:*2, 12*
 6:*2, 12*
essential  14:*21*
estate  22:*13*
estates  20:*8*
et  1:*7*
evening  10:*4*
event  24:*12*
everyone's  17:*3*
exceeded  20:*10*

excluding  19:*21*
exclusive  15:*18*
executive  8:*12*
existing  12:*18*
expenses  12:*16*  13:*7*
 15:*19*  17:*24*  20:*10,
11*
expires  24:*21*
extent  17:*9*

< F >
facility  16:*9*
fact  13:*12*  22:*1*
fair  9:*16, 18*
fee  10:*15*  19:*8*
fees  15:*19*  17:*17*
FELICIA  2:*12*  8:*12*
FERRIS  5:*10*
fiduciary  12:*2*  21:*19*
filed  9:*24*  11:*11*
 14:*12*
filing  23:*16*
final  10:*9*  11:*17*
 19:*6*
financial  8:*15*
financially  21:*4*
first  8:*18*  12:*8*  18:*18*
five  16:*11, 23*
focused  23:*7*
followed  10:*21*
following  15:*5*
follows  18:*17*
foregoing  24:*7*
forward  16:*16*  21:*7*
Foundation  11:*2, 7*
 12:*19, 24*  13:*10*  16:*3*
 17:*13*  20:*13, 24*  21:*3*
 22:*2, 17*
Fperlman@mwe.com
 2:*16*
Friday  1:*14*  8:*1*
FTI  6:*25*  7:*1*
full  10:*19*  24:*9*
fund  10:*13, 24*  12:*11*
 13:*3*  17:*11, 16, 23*
funding  10:*18*  11:*8*
 12:*14*  17:*15*
funds  11:*1*  16:*2*
 17:*13*  20:*8, 10, 12, 23*

 21:*3*  22:*2*
further  19:*14*  20:*1*

< G >
GA  2:*7*
GANTI  6:*25*
GERBER  2:*12*
Given  11:*21*
GLOVSKY  5:*11*
go  16:*22*  23:*12*
going  9:*2*
Good  8:*4*
GOODE  3:*1, 10*
GORDON  4:*4*  9:*9,
12, 13*  12:*23*  13:*9*
 14:*4, 8, 9*  17:*21*
grant  22:*5*
granted  21:*20*
greater  17:*10*
GRIKIS  4:*12*
GROSS  6:*1, 11*
group  8:*18*

< H >
H2C  7:*2, 3*
HAAKE  7:*6*
hand  13:*3*  17:*14*
 20:*11, 23*  21:*2*  22:*3*
Healthcare  14:*17, 24*
 16:*18*
hearing  11:*21*  23:*18,
21*
highest  10:*8*  13:*18,
21*  18:*3*
Hollow  5:*19*  6:*21*
 8:*19*  11:*18*  18:*19*
 19:*3*
Hollow's  14:*13*
HOSPITAL  1:*6*  8:*6*
 16:*15*  19:*12*
HUGHES  5:*2*

< I >
Illinois  2:*14*  4:*15*
impasse  14:*25*
important  23:*5*
inadequate  22:*10*
include  11:*1*  12:*24*
 13:*10*  17:*15*
included  10:*17*

including  15:*11*  16:*8*
 20:*11*  22:*2, 6*
inclusive  21:*2*
incorporated  20:*2, 6*
increase  20:*15, 18*
incurred  19:*12, 15*
information  1:*18*
 16:*7*
infrastructure  16:*7, 8*
insufficient  22:*10*
intend  23:*20*
intercede  15:*2*
interest  19:*20*  22:*13*
interested  24:*12*
interpretation  13:*14*
introductory  12:*6*
invaluable  14:*21*
invest  16:*6*
investment  16:*11*
investments  15:*22*
IOWA  1:*2, 6, 7*  3:*5,
14*  5:*8*  7:*4, 5, 7*  8:*6,
8, 22*  9:*11, 14*  10:*16*
 12:*8, 10*  13:*20*  14:*4,
10, 15, 17, 18, 20*  15:*1,
3*  16:*3, 17, 20*  17:*7*
 19:*12*  21:*16*  22:*22*
 23:*12*
Iowa's  18:*2*
its  14:*22*  16:*18, 20*
 20:*10*

< J >
JACK  7:*6*
JACOB  7:*7*
January  15:*15*
JD  18:*9*
Jersey  6:*5, 15*
JIM  6:*22*  8:*15*
Job  1:*24*
JOHN  6:*21*  19:*2*
joined  8:*11, 23*  18:*25*
Jointly  1:*7*
June  24:*21*

< K >
Kansas  5:*5*
keep  9:*4*
Kmstanger@nyemaste

**r.com** 3:*16*
**know** 9:*21* 23:*6*
**known** 8:*18*
**KRISTINA** 3:*11*

**< L >**
**Lake** 2:*13*
**Leadership** 14:*18*
**LEAF** 3:*2*
**leaseback** 15:*12*
**legacy** 15:*2*
**Legal** 6:*3, 13*
**LEVIN** 5:*10*

**Lgrikis@polsinelli.com**
*4:17*
**licensure** 15:*11*
**light** 14:*24*
**likewise** 18:*14*
**limited** 16:*8*
**LINAS** 4:*12*
**line** 8:*17*
**LLP** 2:*3, 11*
**long** 23:*12*
**longer** 13:*18* 14:*1*
**look** 16:*16*
**losses** 10:*14, 18, 24*
*12:11, 15* 13:*5, 15*
*15:18* 16:*1* 19:*11, 15*
*20:24* 21:*4*
**lot** 19:*22*
**lots** 19:*21*
**loyal** 16:*18*

**< M >**
**maintaining** 14:*23*
**MANKOVETSKIY**
*6:10*
**manner** 15:*5*
**MARK** 6:*23* 8:*14*
**master** 5:*18* 18:*22*
*19:1*
**material** 10:*22*
**materially** 11:*18*
**matter** 8:*6*
**matters** 23:*5*
**MCDERMOTT** 2:*3,*
*11* 8:*9*
**McDermott's** 10:*2*

**means** 13:*23*
**meant** 11:*6, 17* 22:*3*
**medical** 16:*10* 19:*21*
**members** 14:*19*
**MERCY** 1:*6* 7:*4, 7*
*8:6* 14:*20* 15:*2* 16:*3,*
*15, 17, 20* 19:*12, 15*
*20:12*
**Mercy's** 19:*20* 20:*9,*
*11, 22* 21:*2*
**MICHIGAN** 24:*2, 20*
**midst** 23:*7*
**million** 10:*12, 13*
*15:17* 16:*5, 11* 19:*8,*
*9, 10* 20:*16*
**MINTZ** 5:*10*
**minutes** 16:*23*
**mission** 16:*17*
**Missouri** 5:*5*
**MOB2** 19:*22*
**modifications** 14:*5*
**Moines** 3:*5, 14*
**money** 12:*25* 13:*10*
**monitor** 14:*15*
**morning** 8:*4* 12:*3*
**motion** 11:*11*
**move** 21:*7*

**< N >**
**name** 8:*9*
**NARENDRA** 6:*25*
**Nashville** 4:*7*
**NATHAN** 5:*12* 9:*5*
*18:4, 19* 21:*12*
**NE** 2:*5*
**necessarily** 11:*17*
*13:23*
**Needless** 11:*16*
**New** 5:*14* 6:*5, 15*
**Newark** 6:*5, 15*
**Nfcoco@mintz.com**
*5:16*
**North** 4:*13*
**NORTHERN** 1:*2* 8:*8*
**NOTARY** 24:*1, 19*
**notes** 24:*10*
**notice** 14:*12* 23:*17,*
*20*
**notified** 12:*5*

**November** 10:*14*
*19:13* 23:*21*
**number** 8:*6*
**NYEMASTER** 3:*1,*
*10*

**< O >**
**obligation** 10:*17, 24*
*11:8* 12:*11*
**occur** 15:*14*
**occurred** 12:*13*
**October** 1:*14* 8:*1*
*10:2, 5, 7* 12:*10*
*13:20* 14:*11* 19:*7*
*21:6*
**office** 19:*21*
**officer** 8:*13, 14, 15*
**offices** 10:*3*
**Official** 6:*7, 17* 8:*23*
**offset** 10:*25*
**Ogden** 1:*23* 24:*6, 18*
**Okay** 13:*6*
**ongoing** 23:*7, 13*
**operating** 10:*13, 18,*
*24* 12:*11, 15, 16* 13:*4,*
*7, 8, 15* 15:*18* 16:*1*
*17:9, 10, 24* 19:*11, 14*
*20:9, 24* 21:*4*
**operations** 13:*3*
**order** 9:*22* 11:*22*
*21:21* 22:*8*
**ORMAN** 7:*3*

**< P >**
**P.C** 3:*1, 10* 5:*11*
*6:1, 11*
**paid** 11:*2*
**papers** 13:*14*
**PARK** 7:*7*
**parking** 16:*9* 19:*20,*
*22*
**part** 21:*18, 22*
**parties** 8:*16* 12:*4*
*14:25* 23:*4, 10*
**partner** 8:*11*
**partners** 14:*21*
**party** 8:*25* 9:*2*
*24:11*
**patience** 17:*3*

**patient** 23:*7, 14*
**pay** 20:*10*
**payment** 10:*15* 19:*8*
**Peachtree** 2:*5*
**pending** 8:*7*
**period** 15:*8, 22*
*17:18* 19:*13, 15*
**PERLMAN** 2:*12*
*8:12*
**person** 10:*2*
**perspective** 21:*1*
**PHC** 18:*12*
**phone** 12:*4*
**physical** 16:*7*
**Place** 5:*3*
**plant** 16:*8, 9*
**Plaza** 4:*13* 6:*4, 14*
**pleading** 11:*14*
**plus** 15:*17* 19:*8*
**point** 14:*3* 23:*2*
**POLSINELLI** 4:*3, 11*
*5:1* 14:*9*
**POPEO** 5:*11*
**PORTER** 6:*22* 8:*15*
**portion** 1:*18*
**position** 10:*23*
**post-December** 17:*12*
**power** 21:*20* 22:*15*
**practical** 11:*5*
**PRESENT** 6:*20*
**preserve** 15:*2*
**Preston** 5:*19* 6:*21*
*8:19* 11:*18* 14:*13*
*18:19* 19:*2*
**previously** 13:*24*
**price** 15:*16*
**prior** 11:*7, 9* 22:*17*
**procedures** 9:*1, 22*
*10:1* 11:*12* 12:*1*
*21:21* 22:*5, 12*
**proceeding** 15:*1*
*18:11, 13, 15, 25*
**PROCEEDINGS**
*1:12* 23:*8*
**process** 21:*11*
**professional** 15:*19*
*17:17*
**professionals** 16:*19*
**proffered** 21:*5*

profound 16:*14*
provide 20:*22*
providers 14:*19*
Public 24:*19*
purchase 15:*10, 16*
19:*19, 25*
purchased 17:*9*
19:*18*
purposes 21:*3*
pursuant 9:*22* 10:*1*

< Q >
question 18:*8, 17*
quick 16:*23*

< R >
reach 11:*23*
reality 11:*5*
reasonable 15:*8*
reasonably 15:*13*
receipts 17:*11*
recess 18:*10*
recognition 16:*14*
record 10:*11* 12:*10,
21, 24* 13:*20* 14:*7*
16:*23, 25* 17:*1, 3, 6*
18:*1, 18* 19:*4* 21:*14*
22:*23* 23:*2*
recorded 24:*7*
reduced 24:*8*
refer 18:*22*
referred 19:*22*
regard 12:*18* 17:*12*
Regents 14:*18*
reinstate 15:*15*
reinstates 15:*4*
reject 22:*7, 19*
related 24:*11*
relating 15:*20*
remain 22:*23*
remaining 22:*2, 17*
remains 11:*3*
Renee 1:*23* 24:*6, 18*
reopen 12:*2* 21:*23*
reopened 8:*5*
REPORT 1:*12* 23:*17*
Reported 1:*23*
representative 5:*20*
9:*7* 10:*10, 23* 11:*9,*

10, 24* 13:*13, 24*
14:*14* 18:*13*
Representatives 8:*19*
13:*17* 18:*5, 21, 24*
19:*6* 20:*14, 17, 19*
21:*7, 9, 25* 22:*20*
Representative's 20:*3,
7* 21:*1*
required 11:*8* 22:*1*
23:*23*
requirements 22:*11*
requires 22:*16*
reserve 11:*14* 21:*10*
respect 13:*1* 17:*6, 8*
20:*5*
restoring 23:*12*
restructuring 8:*14*
17:*17*
results 14:*12* 23:*17,
18*
resumed 10:*4*
revenues 12:*17* 13:*4,
8*
RICHARD 7:*2*
rights 11:*15* 21:*10*
Riverfront 6:*4, 14*
Riverside 4:*13*

Rleaf@nyemaster.com
3:*7*
roof 16:*9*
ROY 3:*2*
RPR 1:*23*

< S >
safe 9:*5, 9*
sale 10:*20* 11:*21, 22*
21:*11* 23:*20*
satisfaction 15:*9*
19:*23*
satisfied 19:*10*
second 8:*21*
Secured 18:*23* 19:*5,
24* 20:*2, 7, 14, 16, 19,
25* 21:*6, 9*
Securities 7:*2, 3*
see 14:*4*
seek 12:*7*
September 9:*24*

seriously 21:*19*
serve 14:*20*
serves 19:*1*
settlement 11:*3*
SHERMAN 6:*2, 12*
9:*15, 18*
shortly 23:*16*
SILLS 6:*1, 11*
SIMON 2:*4* 8:*4, 9*
9:*9, 15, 19, 20* 13:*6,
11* 16:*22* 17:*2, 25*
21:*12*
simple 12:*7*
situation 14:*16*
sole 8:*25*
sources 10:*25*
speak 9:*3*
speaker 9:*3, 6, 10, 16*
specific 20:*9* 22:*6*
SS 24:*3*
staff 14:*19* 16:*18, 21*
stakeholders 22:*14*
stand 16:*20*
Standard 1:*15* 8:*2*
STANGER 3:*11*
State 5:*8* 7:*5* 9:*13*
14:*9, 15, 18* 15:*1*
18:*18* 19:*4* 24:*2*
stated 10:*11* 13:*13*
16:*5* 22:*20, 23*
statement 9:*19*
17:*19, 22*
statements 14:*6* 18:*1*
21:*13*
STATES 1:*1* 8:*7*
stenographic 24:*10*
stenographically 24:*7*
streamlined 9:*4*
Street 2:*5, 13* 3:*3*
4:*5*
subject 1:*18* 11:*3*
15:*6* 19:*23* 22:*23*
submit 18:*6*
submits 16:*13*
submitted 10:*9*
13:*17, 19* 21:*24*
successful 13:*25*
14:*1* 21:*16*
Suite 2:*6* 3:*4, 13*

4:*6, 14* 5:*4*
supporting 16:*18*
Sure 14:*8*
sustainable 14:*23*

< T >
take 16:*2* 21:*19*
taken 24:*10*
task 23:*9*
team 16:*24*
technology 16:*7*
Tennessee 4:*7*
term 19:*18*
terms 22:*22*
Thank 9:*20* 13:*11*
18:*8, 15* 21:*12* 23:*3,
10, 22*
therewith 1:*20*
think 18:*9*
Third 5:*13*
three 19:*14*
Thursday 11:*11*
Time 1:*15* 8:*2* 15:*9,
12, 23* 16:*19* 22:*7*
TJC 1:*6*
today 8:*11* 12:*4*
21:*14, 23*
TOM 7:*4* 8:*13*
TONEY 6:*23* 8:*14*
topping 18:*6*
transaction 15:*13, 24*
20:*20* 21:*1* 22:*18*
23:*11*
transcript 1:*18* 9:*4*
24:*9*
transcription 24:*8*
true 24:*9*
Trust 5:*17* 18:*21*
trustee 5:*18* 18:*22*
19:*2*
trying 16:*19*
turn 14:*3* 18:*4*
two 8:*16* 19:*9*

< U >
understanding 12:*21*
17:*23*
understood 12:*14*
UNITED 1:*1* 8:*7*

**University** 5:*8* 7:*5*
8:*21* 9:*11, 13* 10:*16*
12:*8, 10* 13:*20* 14:*4,*
*10, 15, 17* 15:*1, 4, 5,*
*14* 16:*5, 10, 13* 17:*7,*
*11, 16, 20, 22* 18:*2*
20:*4* 21:*16* 22:*22*
23:*11*
**University's** 12:*20, 23*
20:*5*
**Unsecured** 6:*8, 18*
8:*24*
**use** 13:*2* 22:*1, 16*

**< V >**
**value** 11:*17*
**various** 12:*4*
**viable** 21:*4* 22:*4, 18*

**< W >**
**Walnut** 3:*3, 12*
**want** 12:*7* 17:*5*
**way** 16:*1* 23:*12*
**WAYNE** 24:*4, 20*
**Wednesday** 12:*5*
**well** 11:*2* 19:*19*
**We're** 8:*11, 23* 17:*2*
23:*22*
**West** 2:*13* 5:*3*
**whatsoever** 13:*10*
**willing** 15:*1* 20:*15*
**winning** 13:*25* 14:*2,*
*14* 15:*6, 7* 16:*5*
21:*16* 22:*8, 21*
**wish** 14:*6* 18:*6* 23:*1*
**words** 12:*17*
**workforce** 14:*24*

**< Y >**
**years** 16:*11* 23:*14*
**York** 5:*14*

**< Z >**
**Zoom** 1:*13* 10:*4*
**ZUCKER** 7:*1*

## WORD LIST

**< $ >**
**$1** *(1)*
**$1.2** *(2)*
**$25** *(2)*
**$27.8** *(2)*
**$28** *(1)*
**$29** *(1)*
**$800,000** *(1)*

**< 0 >**
**07102** *(2)*

**< 1 >**
**1** *(3)*
**10** *(1)*
**10:09** *(2)*
**10:20** *(1)*
**10022** *(1)*
**10th** *(6)*
**11:27** *(1)*
**11:34** *(1)*
**1180** *(1)*
**1300** *(1)*
**14th** *(1)*
**15** *(1)*
**150** *(1)*
**15th** *(1)*
**1600** *(2)*
**1st** *(4)*

**< 2 >**
**2** *(1)*
**2023** *(6)*
**2024** *(1)*
**2025** *(1)*
**21** *(1)*
**212** *(1)*
**222** *(1)*
**23-00623** *(2)*
**23979** *(1)*
**253-6005** *(1)*
**260** *(1)*
**27** *(2)*
**283-3100** *(1)*
**283-8009** *(1)*

**< 3 >**

**3** *(1)*
**30** *(1)*
**300** *(1)*
**30309** *(1)*
**30th** *(1)*
**31** *(1)*
**312** *(2)*
**3350** *(1)*
**360-4121** *(1)*
**3680** *(1)*
**37219** *(1)*

**< 4 >**
**404** *(2)*
**444** *(1)*
**48th** *(1)*
**4th** *(1)*

**< 5 >**
**501** *(1)*
**50309** *(1)*
**50309-3899** *(1)*
**515** *(2)*
**5th** *(1)*

**< 6 >**
**60606** *(1)*
**60606-0029** *(1)*
**64112** *(1)*

**< 7 >**
**700** *(2)*

**< 8 >**
**816** *(1)*
**8554** *(1)*
**873-2946** *(1)*

**< 9 >**
**900** *(2)*
**919** *(1)*
**935-3000** *(1)*
**984** *(1)*

**< A >**
**a.m** *(5)*
**ability** *(1)*
**access** *(1)*
**account** *(1)*

**accounting** *(1)*
**acquisition** *(1)*
**acts** *(1)*
**actual** *(3)*
**addition** *(1)*
**address** *(2)*
**adjacent** *(1)*
**Administered** *(1)*
**advance** *(1)*
**afternoon** *(1)*
**agree** *(1)*
**Agreement** *(8)*
**agrees** *(1)*
**al** *(1)*
**allegations** *(1)*
**alter** *(1)*
**alternative** *(1)*
**amended** *(1)*
**amount** *(5)*
**amounts** *(1)*
**and/or** *(1)*
**ANDREW** *(4)*
**anticipates** *(1)*
**APPEARANCES** *(2)*
**application** *(1)*
**appreciate** *(1)*
**appreciation** *(1)*
**appropriate** *(3)*
**approval** *(2)*
**approved** *(1)*
**approving** *(1)*
**Asherman@sillscumm**
**is.com** *(1)*
**ASHLEY** *(1)*
**asset** *(3)*
**assets** *(2)*
**assume** *(3)*
**assumed** *(1)*
**Atlanta** *(1)*
**attention** *(1)*
**ATTORNEY** *(19)*
**AUCTION** *(18)*
**available** *(4)*
**Avenue** *(1)*
**avoidance** *(3)*

**< B >**
**back** *(3)*
**backstop** *(4)*

**backup** *(1)*
**BANKRUPTCY** *(11)*
**Based** *(2)*
**basis** *(1)*
**BAYMAN** *(1)*
**behalf** *(8)*
**believe** *(4)*
**believed** *(1)*
**best** *(5)*
**bid** *(51)*
**bidder** *(6)*
**bidding** *(10)*
**bids** *(1)*
**Bmankovetskiy@sillsc**
**ummis.com** *(1)*
**Board** *(1)*
**bondholder** *(27)*
**Bondholder's** *(1)*
**BORIS** *(1)*
**break** *(2)*
**breakup** *(2)*
**broad** *(1)*
**building** *(1)*

**< C >**
**calculated** *(1)*
**calculation** *(2)*
**Capital** *(3)*
**care** *(3)*
**Case** *(2)*
**cash** *(19)*
**caucus** *(1)*
**cause** *(1)*
**Center** *(2)*
**certain** *(1)*
**CERTIFICATE** *(1)*
**certify** *(1)*
**CHAMPION-**
**POLSINELLI** *(1)*
**Chicago** *(3)*
**chief** *(3)*
**chosen** *(2)*
**Chughes@polsinelli.co**
**m** *(1)*
**circumstances** *(1)*
**CITY** *(11)*
**CLANCY** *(2)*
**clarification** *(4)*
**clear** *(1)*

CLIFFORD  (1)
clinics  (1)
close  (2)
closes  (1)
closing  (8)
COCO  (7)
codes  (1)
COHN  (1)
collectively  (1)
come  (1)
comfortable  (3)
commenced  (1)
commencing  (1)
comments  (1)
Commerce  (1)
Commission  (1)
commitment  (6)
commits  (1)
Committee  (9)
Community  (6)
Company  (2)
compel  (1)
compliance  (1)
component  (1)
comport  (1)
computer  (1)
Computershare  (6)
concluded  (1)
conclusion  (2)
conditions  (2)
conducted  (1)
confidence  (1)
CONFIDENTIAL  (1)
Confidentiality  (1)
confirm  (2)
conformity  (1)
connection  (1)
CONNELL  (3)
consist  (1)
consistent  (2)
consisting  (1)
consultation  (5)
Consulting  (2)
contained  (1)
contains  (1)
contemplated  (1)
continue  (1)
CONTINUED  (4)
continuing  (2)

contractual  (1)
contrary  (1)
contributed  (2)
contribution  (1)
convened  (2)
cooperation  (1)
CORBIN  (3)
correct  (4)
costs  (1)
Counsel  (9)
COUNTY  (2)
COURT  (9)
covered  (1)
credit  (8)
Creditors  (4)
CSR-3455  (2)
CULLIN  (1)
CUMMIS  (2)
current  (3)
currently  (1)

< D >
Dan  (2)
DANIEL  (1)
date  (2)
Dave  (1)
DAVID  (4)
days  (1)
Debtor  (2)
Debtors  (52)
December  (5)
deem  (2)
defined  (1)
definitive  (1)
depleted  (1)
Des  (2)
described  (4)
designated  (1)
designating  (1)
determination  (1)
determine  (3)
determined  (6)
determining  (2)
Dgordon@polsinelli.co
m  (1)
difference  (4)
different  (3)
DINAN  (3)
disagreement  (3)

disbursements  (1)
discretion  (1)
dispute  (1)
DISTRICT  (2)
Dmsimon@mwe.com
  (1)
Docket  (1)
documentation  (1)
doubt  (3)
duties  (2)

< E >
Eastern  (2)
easy  (1)
either  (2)
email  (1)
emerged  (1)
EMERY  (3)
employee  (1)
employees  (2)
ensuring  (1)
entered  (2)
entering  (1)
entry  (1)
equal  (2)
equipment  (2)
ESQUIRE  (9)
essential  (1)
estate  (1)
estates  (1)
et  (1)
evening  (1)
event  (1)
everyone's  (1)
exceeded  (1)
excluding  (1)
exclusive  (1)
executive  (1)
existing  (1)
expenses  (6)
expires  (1)
extent  (1)

< F >
facility  (1)
fact  (2)
fair  (2)
fee  (2)
fees  (2)

FELICIA  (2)
FERRIS  (1)
fiduciary  (2)
filed  (3)
filing  (1)
final  (3)
financial  (1)
financially  (1)
first  (3)
five  (2)
focused  (1)
followed  (1)
following  (1)
follows  (1)
foregoing  (1)
forward  (2)
Foundation  (12)
Fperlman@mwe.com
  (1)
Friday  (2)
FTI  (2)
full  (2)
fund  (7)
funding  (4)
funds  (10)
further  (2)

< G >
GA  (1)
GANTI  (1)
GERBER  (1)
Given  (1)
GLOVSKY  (1)
go  (2)
going  (2)
Good  (1)
GOODE  (2)
GORDON  (10)
grant  (1)
granted  (1)
greater  (1)
GRIKIS  (1)
GROSS  (2)
group  (1)

< H >
H2C  (2)
HAAKE  (1)
hand  (6)

Healthcare  (3)
hearing  (3)
highest  (4)
Hollow  (6)
Hollow's  (1)
HOSPITAL  (4)
HUGHES  (1)

< I >
Illinois  (2)
impasse  (1)
important  (1)
inadequate  (1)
include  (4)
included  (1)
including  (5)
inclusive  (1)
incorporated  (2)
increase  (2)
incurred  (2)
information  (2)
infrastructure  (2)
insufficient  (1)
intend  (1)
intercede  (1)
interest  (2)
interested  (1)
interpretation  (1)
introductory  (1)
invaluable  (1)
invest  (1)
investment  (1)
investments  (1)
IOWA  (35)
Iowa's  (1)
its  (4)

< J >
JACK  (1)
JACOB  (1)
January  (1)
JD  (1)
Jersey  (2)
JIM  (2)
Job  (1)
JOHN  (2)
joined  (3)
Jointly  (1)
June  (1)

< K >
Kansas  (1)
keep  (1)
Kmstanger@nyemaste
r.com  (1)
know  (2)
known  (1)
KRISTINA  (1)

< L >
Lake  (1)
Leadership  (1)
LEAF  (1)
leaseback  (1)
legacy  (1)
Legal  (2)
LEVIN  (1)

Lgrikis@polsinelli.com
  (1)
licensure  (1)
light  (1)
likewise  (1)
limited  (1)
LINAS  (1)
line  (1)
LLP  (2)
long  (1)
longer  (2)
look  (1)
losses  (13)
lot  (1)
lots  (1)
loyal  (1)

< M >
maintaining  (1)
MANKOVETSKIY
  (1)
manner  (1)
MARK  (2)
master  (3)
material  (1)
materially  (1)
matter  (1)
matters  (1)
MCDERMOTT  (3)
McDermott's  (1)

means  (1)
meant  (3)
medical  (2)
members  (1)
MERCY  (13)
Mercy's  (5)
MICHIGAN  (2)
midst  (1)
million  (9)
MINTZ  (1)
minutes  (1)
mission  (1)
Missouri  (1)
MOB2  (1)
modifications  (1)
Moines  (2)
money  (2)
monitor  (1)
morning  (2)
motion  (1)
move  (1)

< N >
name  (1)
NARENDRA  (1)
Nashville  (1)
NATHAN  (5)
NE  (1)
necessarily  (2)
Needless  (1)
New  (4)
Newark  (2)
Nfcoco@mintz.com
  (1)
North  (1)
NORTHERN  (2)
NOTARY  (2)
notes  (1)
notice  (3)
notified  (1)
November  (5)
number  (1)
NYEMASTER  (2)

< O >
obligation  (4)
occur  (1)
occurred  (1)
October  (10)

office  (1)
officer  (3)
offices  (1)
Official  (3)
offset  (1)
Ogden  (3)
Okay  (1)
ongoing  (2)
operating  (21)
operations  (1)
order  (4)
ORMAN  (1)

< P >
P.C  (5)
paid  (1)
papers  (1)
PARK  (1)
parking  (3)
part  (2)
parties  (5)
partner  (1)
partners  (1)
party  (3)
patience  (1)
patient  (2)
pay  (1)
payment  (2)
Peachtree  (1)
pending  (1)
period  (5)
PERLMAN  (2)
person  (1)
perspective  (1)
PHC  (1)
phone  (1)
physical  (1)
Place  (1)
plant  (2)
Plaza  (3)
pleading  (1)
plus  (2)
point  (2)
POLSINELLI  (4)
POPEO  (1)
PORTER  (2)
portion  (1)
position  (1)
post-December  (1)

power  (2)
practical  (1)
PRESENT  (1)
preserve  (1)
Preston  (7)
previously  (1)
price  (1)
prior  (3)
procedures  (8)
proceeding  (5)
PROCEEDINGS  (2)
process  (1)
professional  (2)
professionals  (1)
proffered  (1)
profound  (1)
provide  (1)
providers  (1)
Public  (1)
purchase  (4)
purchased  (2)
purposes  (1)
pursuant  (2)

< Q >
question  (2)
quick  (1)

< R >
reach  (1)
reality  (1)
reasonable  (1)
reasonably  (1)
receipts  (1)
recess  (1)
recognition  (1)
record  (17)
recorded  (1)
reduced  (1)
refer  (1)
referred  (1)
regard  (2)
Regents  (1)
reinstate  (1)
reinstates  (1)
reject  (2)
related  (1)
relating  (1)
remain  (1)

remaining  (2)
remains  (1)
Renee  (3)
reopen  (2)
reopened  (1)
REPORT  (2)
Reported  (1)
representative  (11)
Representatives  (13)
Representative's  (3)
required  (3)
requirements  (1)
requires  (1)
reserve  (2)
respect  (4)
restoring  (1)
restructuring  (2)
results  (3)
resumed  (1)
revenues  (3)
RICHARD  (1)
rights  (2)
Riverfront  (2)
Riverside  (1)

Rleaf@nyemaster.com
(1)
roof  (1)
ROY  (1)
RPR  (1)

< S >
safe  (2)
sale  (5)
satisfaction  (2)
satisfied  (1)
second  (1)
Secured  (11)
Securities  (2)
see  (1)
seek  (1)
September  (1)
seriously  (1)
serve  (1)
serves  (1)
settlement  (1)
SHERMAN  (4)
shortly  (1)
SILLS  (2)

SIMON  (13)
simple  (1)
situation  (1)
sole  (1)
sources  (1)
speak  (1)
speaker  (4)
specific  (2)
SS  (1)
staff  (3)
stakeholders  (1)
stand  (1)
Standard  (2)
STANGER  (1)
State  (10)
stated  (5)
statement  (3)
statements  (3)
STATES  (2)
stenographic  (1)
stenographically  (1)
streamlined  (1)
Street  (4)
subject  (5)
submit  (1)
submits  (1)
submitted  (4)
successful  (3)
Suite  (6)
supporting  (1)
Sure  (1)
sustainable  (1)

< T >
take  (2)
taken  (1)
task  (1)
team  (1)
technology  (1)
Tennessee  (1)
term  (1)
terms  (1)
Thank  (8)
therewith  (1)
think  (1)
Third  (1)
three  (1)
Thursday  (1)
Time  (7)

TJC  (1)
today  (4)
TOM  (2)
TONEY  (2)
topping  (1)
transaction  (6)
transcript  (3)
transcription  (1)
true  (1)
Trust  (2)
trustee  (3)
trying  (1)
turn  (2)
two  (2)

< U >
understanding  (2)
understood  (1)
UNITED  (2)
University  (30)
University's  (3)
Unsecured  (3)
use  (3)

< V >
value  (1)
various  (1)
viable  (3)

< W >
Walnut  (2)
want  (2)
way  (2)
WAYNE  (2)
Wednesday  (1)
well  (2)
We're  (4)
West  (2)
whatsoever  (1)
willing  (2)
winning  (9)
wish  (3)
words  (1)
workforce  (1)

< Y >
years  (2)
York  (2)

**< Z >**
**Zoom**  *(2)*
**ZUCKER**  *(1)*