**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 26, 38** |

### SECOND INTERIM ORDER GRANTING MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of the Debtors for entry of that certain *Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 38] (the "Interim Order") and a final order (this "Second Interim Order" and, together with the Interim Order and the final order, the "Cash Collateral Orders") (a) authorizing the Debtors' use of Cash Collateral and granting adequate protection and (b) granting related relief, pursuant to sections 105, 361, 362, 363, 506(a), 507(b), 552 and 553 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and due and appropriate notice of the Motion, the interim hearing held on August 8, 2023 (the "Interim Hearing") to consider entry of the Interim Order, and a second interim hearing held on November 6, 2023 (together with a final hearing, the "Cash Collateral Hearings") to consider entry of this Second Interim Order having been provided by the Debtors; and it appearing that no other or further notice need be provided; and the Court having reviewed

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the Motion; and upon the record made by the Debtors in the Motion, in the First Day Declaration, and at the Cash Collateral Hearings; and the relief requested in the Motion being reasonable, appropriate and in the best interests of the Debtors, their creditors, their estates and all other parties-in-interest in these Chapter 11 Cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED:[2]

A.      *Petition Date*.  On August 7, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Court commencing these Chapter 11 Cases.

B.      *Debtors-in-Possession*.   The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      *Committee Formation*.  On August 15, 2023, the Office of the United States Trustee (the "U.S. Trustee") filed a *Notice of Appointment of Creditors' Committee* [Docket No. 107] appointing an official statutory committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

D.      *Jurisdiction and Venue*.  The Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over the Chapter 11 Cases, the Motion, and the parties and property affected thereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue for

---

[2] Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

E.       *Debtors' Stipulations and Acknowledgements Regarding the Prepetition Secured*

*Parties*.  In requesting the use of Cash Collateral, and in exchange for and in recognition of the

consent (and/or deemed consent) of the Prepetition Secured Parties (as defined below) to the use

of their Cash Collateral (in each case, as set forth in this Second Interim Order), subject to

paragraph 12 hereof, the Debtors for themselves, their estates and all representatives of such

estates, admit, stipulate, acknowledge and agree as follows (collectively, the admissions,

stipulations, and acknowledgments and agreements set forth in this paragraph E, the

"Stipulations"):

(i)       Mercy Hospital is indebted to the Trustee for the benefit of the beneficial

holders with respect to those certain Health Facilities Revenue Bonds, Series 2011 (Mercy

Hospital Project) (the "2011 Bonds") and the Health Facilities Revenue Bonds, Series 2018

(Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the

"Bonds").

(ii)      The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer")

pursuant to that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust

Indenture"), between the Issuer and Wells Fargo Bank, National Association, as

predecessor Trustee (the "2011 Bond Trustee") and the proceeds of the 2011 Bonds were

loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of November

1, 2011 (the "2011 Loan Agreement"), between the Issuer and Mercy Hospital.  Under the

2011 Trust Indenture, the Issuer assigned and pledged to the 2011 Bond Trustee

substantially all of its rights under the 2011 Loan Agreement, including its rights in and to

3

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the "Obligation" (as defined therein) securing the 2011 Bonds, the amounts payable thereon and the amounts payable to the Issuer under the 2011 Loan Agreement.

(iii)　　　The 2018 Bonds were issued by the Issuer pursuant to that certain Trust Indenture dated as of May 1, 2018 (the "<u>2018 Trust Indenture</u>" and, together with the 2011 Trust Indenture, the "<u>Indentures</u>"), between the Issuer and Wells Fargo Bank, National Association, as predecessor Trustee (the "<u>2018 Bond Trustee</u>") and the proceeds of the 2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of May 1, 2018 (the "<u>2018 Loan Agreement</u>"), between the Issuer and Mercy Hospital. Under the 2018 Trust Indenture, the Issuer assigned and pledged to the 2018 Bond Trustee substantially all of its rights under the 2018 Loan Agreement, including its rights in and to the "Obligation" (as defined therein) securing the 2018 Bonds, the amounts payable thereon and the amounts payable to the Issuer under the 2018 Loan Agreement, except for certain Reserved Rights (as defined therein).

(iv)　　　Both series of Bonds are secured by Obligations issued by Mercy Hospital under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998, a Second Supplemental Master Trust Indenture dated as of September 1, 2002, a Third Supplemental Master Trust Indenture dated as of July 1, 2005, a Fourth Supplemental Master Trust Indenture dated as of October 1, 2005, a Fifth Supplemental Master Trust Indenture dated as of April 1, 2008, a Sixth Supplemental Master Trust Indenture dated as of August 1, 2010, a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018, and an Eighth Supplemental Master Trust Indenture dated as of May 1, 2018 (collectively, as supplemented, the "<u>Master Trust Indenture</u>"), each by and between Mercy Hospital and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Wells Fargo Bank, National Association, as predecessor Master Trustee (the "Master Trustee" and, together with the 2011 Bond Trustee and the 2018 Bond Trustee, the "Trustee").

(v)      Computershare Trust Company, N.A., is the successor 2011 Bond Trustee, 2018 Bond Trustee, and Master Trustee.

(vi)      As security for their obligations with respect to the Bonds, Mercy Hospital entered into the Master Trust Indenture and that certain Mortgage and Security Agreement and Fixture Financing Statement (the "Mortgage"), dated as of May 1, 2018, and recorded on May 11, 2018, in Johnson County, Iowa, in favor of the Master Trustee.  The 2011 Trust Indenture, 2011 Loan Agreement, 2018 Trust Indenture, 2018 Loan Agreement, Master Trust Indenture, Mortgage, Obligations, and any other document or agreement delivered as security for, or in respect of, the Bonds or Mercy Hospital's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

(vii)      The Trustee holds a valid and enforceable perfected first priority lien and security interest in substantially all of Mercy Hospital's real and personal property as set forth in, and subject to the terms of, the Bond Documents (all such collateral, the "Prepetition Trustee Collateral" and the liens on such Prepetition Trustee Collateral, the "Prepetition Trustee Liens") including, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the

5

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

land as set forth (and to the extent set forth) in the Mortgage, and all of Mercy Hospital's accounts and assignable general intangibles regardless of how generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial Code, as set forth (and to the extent set forth) in the Granting Clauses, Division I, of the Master Trust Indenture, which includes Mercy Hospital's membership interest in its limited liability company affiliates Corridor Radiology, LLC, Eastern Iowa Rehabilitation Hospital, LLC; Iowa City Ambulatory Surgery Center, L.L.C; and Mercy Iowa City ACO, LLC; *provided, however*, that the Debtors assert that the Prepetition Trustee Liens do not attach, extend or otherwise cover Mercy Hospital's deposit accounts and investment accounts and hereby make no Stipulation to that effect; *provided further*, that the Trustee asserts that the Prepetition Trustee Liens do attach, extend, or otherwise cover such deposit accounts and investment accounts and reserves its rights and claims with respect thereto. All parties in interest reserve their rights with respect to whether the Prepetition Trustee Liens extend to Mercy Hospital's membership and/or ownership interests in Mercy Hospital Foundation and Mercy Services Iowa City, Inc.

(viii)    As of the Petition Date, the aggregate indebtedness under the Bonds (the "Bond Claim") was not less than the sum of (A) $58,489,897.63 in unpaid principal on the Bonds was, consisting of $24,270,000 in principal amount of Series 2011 Bonds and $34,219,897.63 in principal amount of Series 2018 Bonds, (B) accrued but unpaid interest on the Bonds in the aggregate amount of $1,036,758.06, consisting of $570,036.67 in accrued interest on the 2011 Bonds and $466,721.39 in accrued interest on the 2018 Bonds, and (C) other amounts, including accrued and unpaid fees and expenses of the Trustee and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

its professionals incurred through the Petition Date, that are reimbursable under the Bond

Documents in accordance with their terms.

(ix)    The Bond Claim constitutes a legal, valid, binding, and enforceable

obligation against Mercy Hospital and is secured on a first priority basis by the Prepetition

Trustee Liens in the Prepetition Trustee Collateral, subject to Prepetition Permitted Liens

(as defined below).

(x)    The Debtors do not possess and agree not to assert any claim (as such term

is defined in section 101(5) of the Bankruptcy Code), counterclaim, setoff or defense of

any kind, nature or description which would in any way affect the validity or enforceability

of the Bond Documents, and the Debtors agree not to assert recharacterization,

disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable

non-bankruptcy law.

(xi)    On or about November 22, 2016, Mercy Services submitted a customer

application to McKesson Corporation and its affiliates (collectively, "McKesson"; the

Trustee and McKesson are collectively referred to as the "Prepetition Secured Parties") for

the purchase of pharmaceutical and medical-surgical products (the "McKesson Security

Agreement"; the McKesson Agreement and any related documents or filings are, together

with the Bond Documents, collectively referred to as the "Prepetition Documents").

McKesson holds a valid and enforceable first priority lien and security interest in

substantially all of Mercy Services' personal property as set forth in, and subject to the

terms of, the McKesson Security Agreement and any related documents or filings (all such

collateral, the "Prepetition McKesson Collateral" and the liens on such Prepetition

McKesson Collateral, the "Prepetition McKesson Liens"; the Prepetition Trustee Collateral

and Prepetition McKesson Collateral are collectively referred to as the "Prepetition Collateral," and the Prepetition Trustee Liens and Prepetition McKesson Liens are collectively referred to as the "Prepetition Liens").

(xii)     On October 16, 2023, McKesson submitted its proof of claim (Claim No. 10310) in the base amount of $267,932.19, together with any additional charges, attorneys' fees and costs (the "McKesson Claim").  The Debtors' rights to contest the precise amount of the McKesson Claim are reserved.  Likewise, McKesson reserves the right to amend or supplement the McKesson Claim.

F.     *Consensual Use of Cash Collateral*.   The Debtors have requested the use of the Cash Collateral of the Prepetition Secured Parties in connection with the Chapter 11 Cases.  The Prepetition Secured Parties consent to the use of each of their respective Cash Collateral upon the express terms of this Second Interim Order.

G.     *Need for Use of Cash Collateral*.   Without the use of Cash Collateral, the Debtors' continued operation as a going concern would be disrupted, and the Debtors and their patients, employees, estates and creditors would be immediately and irreparably harmed. The Debtors would not have the funds necessary to maintain the Mercy Hospital facilities, pay employee compensation, payroll taxes, overhead and other expenses, nor could they effectuate a sale transaction.  The Debtors require use of Cash Collateral as provided herein.

H.     *Good Faith; Exercise of Debtors' Business Judgment*.    The Debtors and the Prepetition Secured Parties have negotiated at arm's length and in good faith in the negotiation and preparation of this Second Interim Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Second Interim Order, inclusive of the adequate protection provided to the Prepetition Secured Parties, reflect the

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Debtors' exercise of prudent business judgment under exigent circumstances and are consistent

with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     *Motion Granted.*   The Motion is granted on a further interim basis as set forth

herein.

2.     *Use of Cash Collateral*.  The Debtors may use Cash Collateral subject to the terms

of this Second Interim Order and solely in accordance with the budget, attached hereto as **Exhibit**

**1** (as such budget may be updated and/or modified from time to time by the Debtors; provided,

however, that to the extent such updates or modifications increase total disbursements over a four

(4) week period by more than ten (10%) percent in the aggregate, they shall require the consent of

the Master Trustee (which consent shall not be unreasonably withheld, conditioned, or delayed)

or, if the Master Trustee does not consent, the approval of the Court, the "Budget"); *provided*, that

the Budget may not be modified to increase expenditures for estate professional fees without

consent of the Master Trustee.  In the event of a dispute concerning the Budget, all rights of the

Debtors, the Committee, and Trustee shall be and are reserved.

3.     *Adequate Protection of Interests of McKesson*.  As provided in this Second Interim

Order, McKesson is entitled, pursuant to Bankruptcy Code sections 361, 362, 363(c)(2) and

363(e), to adequate protection of its interests in the Prepetition McKesson Collateral (including

Cash Collateral), solely to the extent of the postpetition diminution in value which is as a result of,

or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale or lease of

such Prepetition McKesson Collateral (including Cash Collateral), or the grant of a lien under

Bankruptcy Code section 364, or subordination to the Carve Out and applicable case law

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

interpreting the same (any such diminution, "Diminution in Value"). McKesson shall receive the following:

      (a)    *McKesson Adequate Protection Liens*. McKesson is hereby granted, upon entry of this Second Interim Order, pursuant to Bankruptcy Code sections 361 and 363(e), valid, binding, enforceable, and perfected additional and replacement security interests in and liens upon all of the property of Mercy Services (the "McKesson Adequate Protection Liens") of any kind or nature whatsoever, including, without limitation, property which, but for the commencement of the Chapter 11 Cases, would constitute Prepetition McKesson Collateral subject to validly perfected, non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products, and profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the "McKesson Adequate Protection Collateral"); *provided*, *however*, that such McKesson Adequate Protection Collateral shall not include any causes of action, including, without limitation, any claims and causes of action under Bankruptcy Code section 502(d), 544, 545, 547, 548, 549, 550 or 553, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") or the proceeds thereof; *provided, further, that* the McKesson Adequate Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out (as defined below), (ii) any liens that exist on, and are legal, valid, binding, enforceable, perfected, and non-avoidable as of, the Petition Date and are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Prepetition Documents or applicable law, and (iii) any liens in existence immediately prior to the Petition Date that are legal, valid, enforceable, binding and non-avoidable, and are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), and which are permitted to be senior to the Prepetition Liens (as applicable) pursuant to applicable Prepetition Documents or applicable law, and in each case not including the Prepetition

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Liens or the Adequate Protection Liens (as defined below) (such liens described in clauses (ii) and

(iii), collectively, and not including any Prepetition Liens or Adequate Protection Liens, the

"Prepetition Permitted Liens"); and

        (b)    *Payment of McKesson's Fees and Expenses*. As further adequate protection,

the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and

documented out-of-pocket professional fees, expenses and disbursements of one primary legal

counsel and one local Iowa legal counsel, in each case, incurred by McKesson (the "McKesson

Fees and Expenses") in the amounts and at the times set forth in the Budget.

        4.    *Adequate Protection of Interests of the Trustee*.  As provided in the Interim Order

and reaffirmed by this Second Interim Order, the Trustee is entitled, pursuant to Bankruptcy Code

sections 361, 362, 363(c)(2) and 363(e), to adequate protection of its interests in the Prepetition

Collateral (including Cash Collateral), solely to the extent of the Diminution in Value of such

Prepetition Collateral (including Cash Collateral).  The Trustee, for the benefit of itself and the

holders of the Bonds, shall receive the following:

        (c)    *Trustee Adequate Protection Liens*.  The Trustee, for the benefit of the

holders of the Bonds, was granted upon entry of the Interim Order, which grant is hereby

reaffirmed upon entry of this Second Interim Order, pursuant to Bankruptcy Code sections 361

and 363(e), valid, binding, enforceable, and perfected additional and replacement security interests

in and liens upon all of the Debtors' property (the "Trustee Adequate Protection Liens" and,

together with the McKesson Adequate Protection Liens, the "Adequate Protection Liens") of any

kind or nature whatsoever, including, without limitation, property which, but for the

commencement of the Chapter 11 Cases, would constitute Prepetition Collateral subject to validly

perfected, non-avoidable Prepetition Liens as of the Petition Date and the proceeds, rents, products,

and profits from all of the foregoing, whether acquired or arising before or after the Petition Date (the "Trustee Adequate Protection Collateral" and, together with the McKesson Adequate Protection Collateral, the "Adequate Protection Collateral"); *provided*, *however*, that such Trustee Adequate Protection Collateral shall not include Avoidance Actions, commercial tort claims, or proceeds thereof (the "Excluded Adequate Protection Collateral"); *provided, further, that* the Trustee Adequate Protection Liens shall in each case be subject and subordinate only to (i) the Carve-Out, (ii) any Prepetition Permitted Liens, and (iii) solely with respect to the McKesson Adequate Protection Collateral, the McKesson Adequate Protection Liens;

(d)     *Superpriority Claims*.   As additional adequate protection, the Master Trustee, for the benefit of itself and the holders of the Bonds, was granted upon entry of the Interim Order, which grant is hereby reaffirmed upon entry of this Second Interim Order, subject only to payment of the Carve-Out, an allowed superpriority administrative expense claim (each a "Superpriority Claim" and, collectively, the "Superpriority Claims") as provided for in Bankruptcy Code sections 503(b) and 507(b) against all assets of the Debtors' estates, *provided*, *however*, that such Superpriority Claims shall not include Excluded Adequate Protection Collateral.  Subject only to the Carve-Out, and except as provided below, the Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under the Bankruptcy Code. Other than the Carve-Out, no cost or expense of administration of the Chapter 11 Cases of the Debtors shall be senior to, or *pari passu* with, any of the Superpriority Claims; and

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

(e)      *Payment of Master Trustee's Fees and Expenses.* As further adequate protection, the Debtors shall pay in full in cash and in immediately available funds, the actual, reasonable and documented out-of-pocket professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors) incurred by the Master Trustee (the "<u>Master Trustee Fees and Expenses</u>" and, together with the McKesson Fees and Expenses, the "<u>Fees and Expenses</u>") solely in the amounts and at the times set forth in the Budget.

(f)      *Distribution of Sale Proceeds.* As further adequate protection, and solely in the event that the Trustee does not file or otherwise assert an objection to a sale of substantially all of the Debtors' assets to the University of Iowa, the Debtors agree to not object or otherwise assert an objection to a motion filed by the Master Trustee that seeks a distribution to the Trustee at closing of such sale; *provided* that such distribution of sale proceeds is not in excess of $26,800,000, minus the Carve-Out.

(g)      *Distribution of Sale Proceeds to McKesson.* As further adequate protection, and solely in the event that McKesson does not object to the approval of, or closing of the sale of substantially all of the Debtors' assets to the University of Iowa, the Debtors agree to not object or otherwise assert an objection to a motion filed by McKesson that seeks a distribution to the McKesson at closing of such sale in the amount of the McKesson Claim including any unpaid McKesson Fees and Expenses.

5.      *Review of Fees and Expenses.* None of the Fees and Expenses shall be subject to separate approval by this Court or require compliance with the United States Trustee Guidelines, and no recipient of any such payments made with respect to the Fees and Expenses shall be required to file any interim or final fee application with respect thereto or otherwise seek the

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Court's approval of any such payments; *provided, that* copies of the invoices for such Fees and Expenses (the "Invoiced Fees") shall be served by email on the Debtors, the United States Trustee, and counsel to the Committee (collectively, the "Fee Notice Parties"), who shall have ten (10) business days (the "Review Period") to review and assert any objections thereto. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, together with time entries which may be modified to redact information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. The Fee Notice Parties reserve their respective rights to request additional information with respect to the Invoiced Fees and to challenge an assertion of privilege with respect to such redactions. The Fee Notice Parties may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Fee Notice Party notifies the submitting party in writing the Disputed Invoiced Fees and the basis for such objection (the applicable parties shall work in good faith to promptly resolve any such objection or, if unable to do so, shall seek an order of the Court). For the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than Disputed Invoiced Fees.

6.    *Undersecurity/506(b)*.  In the event that it is determined by order of the Court that McKesson or the Trustee is either (a) not oversecured and/or (b) not entitled pursuant to Bankruptcy Code section 506(b) to any postpetition adequate protection payment, fees and

expenses relating to the McKesson Claim or the Bond Claim, respectively, then any Fees and

Expenses remitted to the Trustee shall reduce the Bond Claim and any Fees and Expenses remitted

to McKesson shall reduce the McKesson Claim.

7.      *Perfection of Adequate Protection Liens*.    The approval of the Cash Collateral

Orders by the Court shall be sufficient and conclusive evidence of the validity, extent,

enforceability, and perfection of the Adequate Protection Liens granted to the Prepetition Secured

Parties whether or not the Prepetition Secured Parties elect to file or record financing statements

or any other documents that may otherwise be required under federal or state law in any

jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or perfect

such liens under applicable law; *provided, however*, that the Prepetition Secured Parties may, in

their sole discretion, but shall not be required to, file a certified copy of one or both of the Cash

Collateral Orders in any filing or recording office in any jurisdiction in which the Debtors have

real or personal property; and such filing or recording shall be accepted and shall constitute further

evidence of perfection of the liens and security interests of the Prepetition Secured Parties.

8.      *Financial Reporting*.    As additional adequate protection, the Debtors shall deliver

to the Master Trustee and its counsel, and the Committee and its counsel, an updated rolling Budget

no later than the Tuesday of each calendar week commencing on the first Tuesday following the

first full week after the Petition Date.    No later than the Wednesday of each calendar week

commencing on the first Wednesday following the first full week, the Debtors shall deliver to the

Master Trustee and the Committee a variance report comparing, on a line-item basis, actual results

to the Budget for the previous individual week on a weekly and cumulative basis.    The Debtors

shall also use reasonable best efforts to provide to professional advisors for the Master Trustee and

the Committee (i) within 45 days after the end of each month, commencing with the month ending

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

July 31, 2023, a monthly balance sheet of Mercy Hospital as of the last day of each fiscal month

and the related income statement for the one-month period then ended and (ii) within 15 days after

the end of each month, commencing with the month ending August 31, 2023, "AR Days", "Days

Not Final Billed", and accounts receivable balances by aging.

9.        *Right to Seek Additional Adequate Protection.* This Second Interim Order is

without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the

Prepetition Secured Parties to request further or alternative forms of adequate protection at any

time upon notice and a hearing or the rights of the Debtors or any other party to contest such

request.

10.        *Events of Default; Remedies Upon an Event of Default.*

(a)        Each of the following shall be considered an Event of Default ("Event of

Default") under this Second Interim Order:

(i)        this Second Interim Order becomes stayed, reversed, vacated, amended or
otherwise modified in any respect without the prior written consent of the
Trustee;

(ii)        the failure by the Debtors to timely perform any of the material terms,
provisions, conditions, covenants, or other obligations under this Second
Interim Order;

(iii)        the dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases
to chapter 7 cases, or suspension of the Chapter 11 Cases under section 305
of the Bankruptcy Code;

(iv)        the appointment of a chapter 11 trustee or an examiner with enlarged powers
(beyond those set forth in section 1104(c) and 1106(a)(3) and (4) of the
Bankruptcy Code);

(v)        the granting of relief from the automatic stay to permit foreclosure with
respect to a material asset of the Debtors, by any entity other than the
Trustee on any Prepetition Collateral or Adequate Protection Collateral;

(vi)        the entry of an order granting any superpriority claim which is senior to or
*pari passu* with the Trustee other than as provided for in this Second Interim
Order;

16

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

    (vii)    the payment of or granting adequate protection with respect to prepetition indebtedness of the Debtors other than as set forth in the Budget or as provided for in this Second Interim Order;

    (viii)    the cessation of Adequate Protection Liens or the Superpriority Claims granted pursuant to this Second Interim Order to be valid, perfected and enforceable in all respects;

    (ix)    the filing of any Challenge (as defined below) to any Prepetition Liens or Prepetition Collateral by the Debtors;

    (x)    the payment of estate professional fees by the Debtors out of Prepetition Collateral or Trustee Adequate Protection Collateral other than to the extent set forth in the Budget; or

    (xi)    the filing of, or otherwise asserting an, objection by the Debtors to a motion by the Master Trustee seeking a distribution to the Master Trustee at closing of no more than $26,800,000 in sale proceeds, minus the Carve-Out.

    (b)    Notwithstanding anything herein, the Debtors shall no longer, pursuant to the Interim Order, this Second Interim Order or otherwise, be authorized to use Cash Collateral for any purpose hereunder upon the occurrence of an Event of Default (such date, the "Termination Date"); provided, however, that the Trustee shall provide five (5) business days (the "Default Notice Period") written notice via email to counsel to the Debtors, the United States Trustee, and counsel to the Committee of any Event of Default (the "Default Notice") and the Debtors may continue to use Cash Collateral pursuant to the Budget for five (5) business days after receipt of such Default Notice while the Debtors or the Committee seeks an expedited hearing to contest whether an Event of Default has occurred, and the Trustee consents to the holding of such an expedited hearing within five (5) business days of such a filing (collectively, the "Debtor Default Period Rights").

    (c)    Notwithstanding the occurrence of an Event of Default, the Trustee may elect in writing not to terminate the Debtors' authority to borrow funds and/or use Cash

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Collateral hereunder, as applicable, to waive defaults hereunder, or to forbear from the exercise of rights and remedies hereunder.

(d)      Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Trustee shall survive the Termination Date.

11.      *Exercise of Rights.*  The Trustee shall be entitled to apply the payments or proceeds of the Trustee Adequate Protection Collateral or the Prepetition Trustee Collateral as it deems appropriate, subject to the Carve-Out and the Prepetition Permitted Liens, if any, and in no event shall the Trustee be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Trustee Adequate Protection Collateral or otherwise.

12.      *Challenges to Debtors' Stipulations/Investigation Period.*      The Debtors' Stipulations shall be binding upon the Debtors in all circumstances and for all purposes immediately upon entry of this Second Interim Order.  The Debtors' Stipulations shall be binding upon the Committee, all other creditors, and all parties-in-interest (collectively, the "Interested Parties") and each of their respective successors and assigns, in all circumstances and for all purposes, and the Debtors and all Interested Parties shall be prohibited and barred from otherwise asserting any claims or causes of action against the Trustee and/or holders of the Bonds on behalf of the Debtors' estates, unless (a) any Interested Party timely files an adversary proceeding or contested matter (a "Challenge") by no later than December 14, 2023, or such other date as agreed upon between the Committee and the Trustee or as otherwise ordered by the Court (the "Challenge Deadline") challenging the Stipulations or otherwise asserting any claim or cause of action against the Trustee and/or holders of the Bonds and (b) there is entered a final non-appealable order by a court of competent jurisdiction in favor of the plaintiff sustaining any such timely Challenge.  In

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

the event the Committee seeks an extension of the Challenge Deadline, the Challenge Deadline

will be deemed automatically extended until 2 days after the Court hears the motion to extend the

Challenge Deadline on an expedited basis.  If no Challenge is commenced by an Interested Party

prior to the Challenge Deadline, then the Stipulations shall be binding upon such Interested Party

in all circumstances and for all purposes and not be subject to any other or further Challenge,

contest, attack, objection, challenge, defense, claim, or counterclaim, whether under the

Bankruptcy Code, applicable non-bankruptcy law or otherwise, by such Interested Party.  Further,

if an Interested Party timely files a Challenge to a Stipulation or Stipulations or raises a claim or

cause of action, then except for the Stipulation, Stipulations, claims or causes of action expressly

subject to such Challenge, Challenges to other Stipulations and other claims and causes of action

are hereby deemed forever waived and barred.  This Second Interim Order confers standing on the

Committee, but not on any other Interested Party to commence, prosecute and/or settle a

Challenge.

13.     *Carve-Out*. In partial consideration of the Debtors' acknowledgement of the Bond

Claim, the Trustee consents to the payment of certain expenses and professional fees incurred

during the pendency of these Chapter 11 Cases that shall be superior in all instances to the liens

and claims of the Trustee and all other parties (the "Carve Out").  As used in the Cash Collateral

Orders, "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court

and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus

interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) all

reasonable fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section

726(b) (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed by

the Court at any time, whether by interim order, procedural order, final order, or otherwise, all

budgeted, accrued and unpaid fees, costs, and expenses ("Professional Fees") incurred or accrued by persons or firms retained by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 363 or 1103 (collectively, the "Professionals") prior to the date that is five (5) business days following the Termination Date (the "Carve-Out Trigger Date"); and (iv) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all Professional fees incurred or accrued by Professionals after the Carve-Out Trigger Date in an aggregate amount not to exceed $250,000.  Notwithstanding anything to the contrary in this Second Interim Order or Prepeititon Documents, or otherwise, the liens, security interests, and superpriority claims granted herein (including Adequate Protection Liens and Superpriority Claims), the Prepetition Liens, the Prepetition Permitted Liens, and any other liens, claims or interests of any person, shall be subject and subordinate to the Carve-Out.  Nothing herein shall constitute a waiver of any right of the Prepetition Secured Parties to object to fees and expenses of any Professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid (or parties' rights to respond thereto).  Any payment or reimbursement made in respect of the Carve Out incurred by any Professional on or after the Carve-Out Trigger Date shall permanently reduce the Carve Out on a dollar for dollar basis.

14.     *Professional Fee Reserve*.  For purposes of the Cash Collateral Orders, the Debtors are authorized to establish a reserve (the "Professional Fee Reserve") of funds sufficient to satisfy the budgeted Professional Fees that have or will come due during the pendency of the Case, including those that have not yet been approved by the Court.  At the end of each week following the Petition Date, the Debtors may (and are hereby authorized to) disburse and allocate funds from the Mercy Hospital investment account to the Professional Fee Reserve in an amount equal to 100% of the Carve-Out amount allocated for Professional Fees for that week under the Budget,

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

pending approval of the Court to disburse such funds to the respective beneficiaries. The Debtors are not permitted to use funds contained in the Professional Fee Reserve for any purpose other than for Professional Fees without further order of this Court. To the extent that the funds in the Professional Fee Reserve exceed the Professional Fees allowed by the Court for a beneficiary of the Carve-Out, such funds shall revert to the Debtors.

15. *Limitations on Use of Cash Collateral.* Notwithstanding anything else herein, subject to the proviso at the last sentence of this paragraph 16, no amounts under the Carve-Out or the proceeds of Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral shall be used after the date of entry of the Second Interim Order for the purpose of: (i) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of: (a) the Bond Claim or the Prepetition Liens or (b) any other rights or interests of the Trustee granted under the Cash Collateral Order; (ii) asserting any claims or causes of action, including, without limitation, any Avoidance Actions against the Trustee or the holders of the Bonds or invoking the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Trustee Collateral, the Trustee Adequate Protection Collateral or otherwise; (iii) preventing, hindering, or delaying the enforcement or realization by the Trustee upon any of the Prepetition Collateral or Adequate Protection Collateral (other than to contest whether an asserted Event of Default or Termination Date has occurred and is continuing); (iv) incurring secured indebtedness that would be senior to, or *pari passu* with, the obligations owed to the Trustee under the Cash Collateral Orders except as permitted by the Cash Collateral Orders; or (v) modifying any adequate protection granted to the Trustee. Notwithstanding the foregoing, not more than $50,000 of the Cash Collateral may be made available to reimburse the Committee upon appropriate application therefor, for the

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Bond Claim and/or the Prepetition Trustee Liens.

16.     *Right to Credit Bid*.  The Debtors admit, acknowledge, and agree that the Trustee has the right to credit bid the Bond Claim in connection with any sale or other disposition of the Prepetition Collateral under the Bankruptcy Code.

17.     *Deemed Request for Stay Relief*.  This Second Interim Order shall be deemed to constitute a request by the Trustee for relief from the automatic stay with respect to the Pre-Petition Collateral and for adequate protection as of the Petition Date.

18.     *No Control*.  None of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors, notwithstanding any consent to this Second Interim Order and extending financial accommodations of any type, kind or nature under this Second Interim Order.

19.     *No Third Party Beneficiaries*.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, the Committee, and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).  No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

20.     *No Modification*.  Nothing contained herein shall alter or modify, or be deemed to alter or modify, the Prepetition Documents.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

21.     *No Waiver*.  No consent by the Trustee to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Trustee, as applicable, in the Prepetition Trustee Collateral, or the Trustee Adequate Protection Collateral pursuant to the provisions of sections 506(c) and/or 552(b) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence.

22.     *Second Interim Order Controls*.  In the event of a conflict between the terms of the Interim Order and this Second Interim Order, the terms of this Second Interim Order shall control.

23.     *Effectiveness of the Second Interim Order*.  Notwithstanding Bankruptcy Rule 6004(h), this Second Interim Order shall be effective and enforceable immediately upon entry hereof.

24.     *Implementation of the Second Interim Order*.  The Debtors are authorized to take all actions necessary to implement the relief granted in this Second Interim Order.

25.     *Final Order*.  The final hearing (the "<u>Final Hearing</u>") on the Motion shall occur no later than December 8, 2023, subject to Court availability, and shall be set by a separate notice or court order.  No party shall have the ability to object unless they filed a timely objection to entry of either the Interim Order or the Second Interim Order; *provided however*, that the only issues preserved for entry of the Final Order shall be the Trustee's entitlement to any waivers under sections 506(c) or 552(b) of the Bankruptcy Code, or the milestones contained in this Second Interim Order, with all rights of the Committee with respect thereto expressly preserved.

*In re Mercy Hospital, Iowa City, Iowa, et al.*
*Case No. 23-00623 (TJC)*

26.    *Exclusive Jurisdiction.*  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Second Interim Order.

Dated and entered this _____7th__ day of November, 2023.

_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:      (319) 286-7002
Facsimile:      (319) 286-7050
Email:          rleaf@nyemaster.com

– and –

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:      (312) 372-2000
Facsimile:      (312) 984-7700
Email:          fperlman@mwe.com
                dsimon@mwe.com
                ekeil@mwe.com

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:      (214) 295-8000
Facsimile:      (972) 232-3098
Email:          jhaake@mwe.com

*Proposed Counsel for Debtors and*
*Debtors-in-Possession*

**EXHIBIT 1**

**<u>Cash Collateral Budget</u>**

**Mercy Hospital, Iowa City, IA, et al.**
Cash Flow Extended Forecast - as of 10/27/23
($000s)

| | | Week 9 Actual 10/6/23 | Week 10 Actual 10/13/23 | Week 11 Actual 10/20/23 | Week 12 Actual 10/27/23 | Week 13 Forecast 11/3/23 | Week 14 Forecast 11/10/23 | Week 15 Forecast 11/17/23 | Week 16 Forecast 11/24/23 | Week 17 Forecast 12/1/23 | Week 18 Forecast 12/8/23 | Week 19 Forecast 12/15/23 | Week 20 Forecast 12/22/23 | Week 21 Forecast 12/29/23 | Week 22 Forecast 1/5/24 | Week 23 Forecast 1/12/24 | Week 24 Forecast 1/19/24 | Week 25 Forecast 1/26/24 | Week 26 Forecast 2/2/24 | 18 Wk Forecast 10/6 - 2/2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Receipts* | | | | | | | | | | | | | | | | | | | |
| 1 | Medicare / Medicaid (Hospital Only) | 602 | 660 | 289 | 423 | 876 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 526 | 9,688 |
| 2 | Blue Cross (Hospital Only) | 868 | 1,021 | 1,009 | 861 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 710 | 13,698 |
| 3 | Other Receipts (Hospital Only) | 1,293 | 1,303 | 1,171 | 1,322 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 1,055 | 19,865 |
| 4 | Clinic-Only Receipts | 434 | 535 | 438 | 408 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 403 | 7,459 |
| 5 | *Patient Receipts* | 3,196 | 3,518 | 2,907 | 3,015 | 3,045 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 2,695 | 50,711 |
| 6 | Non-Patient Receipts | 45 | 46 | 32 | 85 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 544 |
| 7 | **Total Cash Receipts** | 3,242 | 3,564 | 2,939 | 3,099 | 3,069 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 2,719 | 51,255 |
| | *Disbursements* | | | | | | | | | | | | | | | | | | | |
| 8 | Payroll | (1,673) | - | (1,632) | - | (1,650) | - | (1,650) | - | (1,650) | - | (1,650) | - | (1,650) | - | (1,650) | - | (1,650) | - | (14,855) |
| 9 | Payroll Taxes | (636) | (102) | (613) | (98) | (610) | (110) | (610) | (110) | (610) | (110) | (610) | (110) | (610) | (110) | (610) | (110) | (610) | (110) | (6,489) |
| 10 | Retirement Benefits (Pension/401k/457b) | (2) | (196) | (218) | (193) | (5) | (250) | (5) | (320) | (5) | (320) | (5) | (320) | (5) | (320) | (5) | (320) | (5) | (320) | (2,814) |
| 11 | Health Benefits | (12) | (488) | (11) | (384) | (150) | (200) | (150) | (200) | (150) | (200) | (150) | (200) | (150) | (200) | (150) | (200) | (150) | (200) | (3,345) |
| 12 | Other Payroll Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 13 | *People Costs* | (2,322) | (786) | (2,474) | (676) | (2,415) | (560) | (2,415) | (630) | (2,415) | (630) | (2,415) | (630) | (2,415) | (630) | (2,415) | (630) | (2,415) | (630) | (27,503) |
| 14 | Pharmacy | (37) | (6) | (9) | (15) | (450) | (325) | (275) | (175) | (175) | (175) | (175) | (175) | (175) | (175) | (175) | (175) | (175) | (175) | (3,043) |
| 15 | Med/Surg Supplies & Blood | (440) | (558) | (267) | (613) | (441) | (341) | (541) | (341) | (441) | (441) | (441) | (441) | (441) | (441) | (441) | (441) | (441) | (441) | (8,054) |
| 16 | Contractual Services | (150) | (681) | (274) | (369) | (356) | (356) | (481) | (356) | (356) | (356) | (356) | (356) | (356) | (356) | (356) | (356) | (356) | (356) | (6,585) |
| 17 | Professional Services | (195) | (416) | (1,031) | (263) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (325) | (6,454) |
| 18 | Lease and Rental Expense | (5) | (2) | (1) | (52) | (10) | (10) | (10) | (35) | (78) | (10) | (10) | (35) | (78) | (10) | (10) | (35) | (78) | (10) | (478) |
| 19 | Supplemental Operating Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 20 | Medical Malpractice Settlements | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21 | Insurance / Workers Comp | (6) | - | - | (6) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (835) | (10) | (10) | (10) | (10) | (10) | (970) |
| 22 | IT | (106) | (140) | (116) | (229) | (145) | (145) | (200) | (200) | (145) | (145) | (200) | (200) | (145) | (145) | (200) | (200) | (145) | (145) | (2,951) |
| 23 | Utilities | (47) | (6) | (121) | (11) | - | (62) | - | (62) | - | (62) | - | (62) | - | - | (62) | - | (62) | - | (556) |
| 24 | Clinic Expenditures | (786) | (247) | (972) | (171) | (770) | (238) | (770) | (238) | (770) | (238) | (770) | (238) | (770) | (770) | (238) | (770) | (238) | (770) | (9,758) |
| 25 | Other | (233) | (23) | (30) | (67) | (67) | (222) | (67) | (67) | (67) | (222) | (67) | (67) | (67) | (67) | (222) | (67) | (344) | (67) | (2,274) |
| 26 | *Operating Costs* | (2,006) | (2,078) | (2,821) | (2,043) | (2,573) | (2,033) | (2,678) | (1,808) | (2,466) | (1,828) | (2,453) | (1,908) | (3,246) | (2,298) | (1,983) | (2,378) | (2,228) | (2,298) | (41,123) |
| 27 | **Total Disbursements** | (4,328) | (2,864) | (5,294) | (2,718) | (4,988) | (2,593) | (5,093) | (2,438) | (4,881) | (2,458) | (4,868) | (2,538) | (5,661) | (2,928) | (4,398) | (3,008) | (4,643) | (2,928) | (68,625) |
| 28 | **Operating Cash Flow** | (1,086) | 700 | (2,356) | 381 | (1,919) | 126 | (2,374) | 281 | (2,162) | 261 | (2,149) | 181 | (2,942) | (209) | (1,679) | (289) | (1,924) | (209) | (17,370) |
| 29 | **Beginning Balance (excl. Investments)** | 4,266 | 2,905 | 3,330 | 3,199 | 3,305 | 798 | 336 | 411 | 104 | 104 | 5,015 | 2,866 | 3,047 | 104 | 3,997 | 2,318 | 2,029 | 454 | 4,266 |
| 30 | Operating Cash Flow | (1,086) | 700 | (2,356) | 381 | (1,919) | 126 | (2,374) | 281 | (2,162) | 261 | (2,149) | 181 | (2,942) | (209) | (1,679) | (289) | (1,924) | (209) | (17,370) |
| 31 | *Buyer Operating Loss Funding* | - | - | - | - | - | - | - | - | - | 4,650 | - | - | 4,102 | - | - | - | - | 209 | 8,961 |
| 32 | Professional Fees | (275) | (275) | (275) | (275) | (588) | (588) | (588) | (588) | (575) | (575) | (575) | (575) | (575) | (575) | (575) | (575) | (575) | (575) | (9,206) |
| 33 | Non-Operating Income | - | - | - | - | - | - | 663 | - | - | - | - | - | - | - | - | - | 350 | - | 1,013 |
| 34 | Net Transfers (Hospital Investments) | - | - | 2,500 | - | - | - | - | - | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 8,254 |
| 35 | Net Transfers (Foundation) | - | - | - | - | - | - | 2,374 | - | 2,162 | - | - | - | - | - | - | - | - | - | 4,536 |
| 36 | **Ending Cash Balance (excl. Inv & Found)** | 2,905 | 3,330 | 3,199 | 3,305 | 798 | 336 | 411 | 104 | 104 | 5,015 | 2,866 | 3,047 | 104 | 3,997 | 2,318 | 2,029 | 454 | 454 | 454 |
| 37 | Hospital Investment Balance | 8,352 | 8,352 | 5,852 | 5,852 | 5,852 | 5,852 | 5,852 | 5,852 | 5,276 | 4,701 | 4,126 | 3,550 | 2,975 | 2,399 | 1,824 | 1,249 | 673 | 98 | 98 |
| 38 | Foundation Transfer Balance | | | | | 7,000 | 4,626 | 4,626 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 | 2,464 |
| 39 | Ending Total Cash Balance | 11,257 | 11,682 | 9,051 | 9,157 | 6,650 | 13,188 | 10,889 | 10,582 | 7,845 | 12,180 | 9,455 | 9,061 | 5,543 | 8,860 | 6,606 | 5,741 | 3,591 | 3,016 | 3,016 |

11/5/2023