**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTER DISTRICT OF IOWA**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 23-000623 (TJC) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, ) | |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | **Re: Docket Nos. 141, 223** |
| ) | |

**DECLARATION OF DISINTERESTEDNESS IN SUPPORT OF THE
ORDINARY COURSE RETENTION OF DELOITTE TAX LLP**

I, Shawna Jansons, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am a managing director of the firm of Deloitte Tax LLP ("**Deloitte Tax**"), which has an office at Chase Tower, 111 Monument Circle, Suite 4200, Indianapolis, IL 46204. I am duly authorized to make and submit this declaration (the "**Declaration**") on behalf of Deloitte Tax pursuant to the *Order Authorizing the Employment and Payment of Professionals Used in the Ordinary Course of Business* [Docket No. 223] (the "**OCP Order**"). Pursuant to the terms of the OCP Order, Mercy Hospital, Iowa City, Iowa and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") seek to retain Deloitte Tax as an OCP (as such term is defined in the Debtors' motion approved by the OCP Order) to provide the services set forth herein. Deloitte Tax is included on the Schedule of Ordinary Course Professionals, attached as Exhibit 1 to the OCP Order.

2. The Debtors seek to retain and employ Deloitte Tax pursuant to the terms and conditions set forth in: (i) that certain engagement letter among Deloitte Tax and the Debtors, dated April 13, 2023, to provide the Debtors with certain tax compliance and consulting services

(the "**Tax Compliance Engagement Letter**"); and (ii) that certain engagement letter between the Debtors and Deloitte Tax, dated June 26, 2023, to provide tax services related to the preparation of the Form 5500 for certain Debtors' employee benefit plans for the 2022 tax year (the "**EBP Engagement Letter**" and together with the Tax Advisory Engagement Letter, the "**Engagement Agreements**").

3. The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

### Deloitte Tax's Qualifications

4. Deloitte Tax is a professional services firm with offices across the United States. Deloitte Tax has significant experience in providing the professional services described herein. Such experience renders Deloitte Tax well qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases (the "**Chapter 11 Cases**") in a cost effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals.

5. In addition, since approximately June 2005, Deloitte Tax has provided certain professional services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte Tax is familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these Chapter 11 Cases.

Accordingly, Deloitte Tax is both well qualified and able to provide the aforementioned services for the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## Disinterestedness

A. *Background Information*

6. Deloitte Touche Tohmatsu Limited ("**DTTL**") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each a "**DTTL Member Firm**") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis, and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries or branch offices of each other or of a global parent. Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm. Profits are not shared between or among the DTTL Member Firms.

7. In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte Tax, Deloitte & Touche LLP ("**Deloitte & Touche**"), Deloitte Financial Advisory Services LLP ("**Deloitte FAS**"), Deloitte Consulting LLP ("**Deloitte Consulting**"), and Deloitte Transactions and Business Analytics LLP ("**DTBA**")

(Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, the "**Deloitte U.S. Entities**"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

B. *Conflicts Check Process*

8. Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained (the "**Deloitte Tax Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtors with respect to the matters on which Deloitte Tax is to be retained in their Chapter 11 Cases; and (b) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other parties-in-interest, or to the attorneys that are known to be assisting the Debtors in their Chapter 11 Cases, except as stated herein or in any attachment hereto.

9. In connection with Deloitte Tax's retention by the Debtors in their Chapter 11 Cases, Deloitte Tax undertook searches to determine, and to disclose, whether it or its affiliates, is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte Tax by the Debtors, listed on **Schedule 1** attached hereto. To check upon and disclose possible relationships

4

with significant Potential Parties-in-Interest in these Chapter 11 Cases, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or significant Potential Parties-in-Interest.

10. As described herein, for the most part, the conflicts searches conducted by Deloitte Tax involves checking client and other databases of the Deloitte U.S. Entities. Given the separateness of the various DTTL Member Firm as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries. However, notwithstanding the separateness of the DTTL Member Firms, the Deloitte U.S. Entities' checking procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms, as described below.

11. When any of Deloitte LLP's operating affiliates, such as Deloitte Tax, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "**Conflicts Team**"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections. Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

    i. With respect to the debtor and debtor affiliates, the Conflicts Team will:

        a) Initiate cross border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the

        Conflicts Team of publicly available information. The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

    b)     Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[1] This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement).

    c)     Perform a search of the database system associated with audit and other related independence requirements (the "**Independence Database**") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated. Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[2] Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

ii.     With respect to the debtor's parties in interest, the Conflicts Team will:

    (a)     Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity.

    (b)     Perform a search of the Independence Database to determine whether a party in interest is identified therein.

---

[1]     These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

[2]     Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

12. Deloitte Tax and/or its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties-in-Interest. Accordingly, Deloitte Tax and/or its affiliates have or may have provided professional services, may currently provide professional services, and/or may in the future provide professional services in matters unrelated to the Chapter 11 Cases to certain of the Potential Parties-in-Interest. Additionally, certain of these Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Deloitte Tax Engagement Partners/Principals/Managing Directors in matters unrelated to the Chapter 11 Cases. A listing of parties with such connections to Deloitte Tax and/or its affiliates is attached to this Declaration as **Schedule 2**.

13. With respect to Deloitte Tax's conflicts checks conducted in these Chapter 11 Cases, if a database query identified a potential connection between a Potential Party-in-Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to the Chapter 11 Cases. Responses to these emails were consolidated and subsequently reviewed. As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to the Chapter 11 Cases. The identified potential connections to the Potential Parties-in-Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the Chapter 11 Cases.

14. Deloitte Tax believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the services for which Deloitte Tax's retention is being sought by the Debtors in these Chapter 11 Cases. Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with these Chapter 11 Cases.

15. To the best of my knowledge, based on the searches discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows.

   a. Deloitte Tax and its affiliates provide services in matters unrelated to the Chapter 11 Cases to certain of the Debtors' largest unsecured and secured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 2**.

   b. Law firms identified on **Schedule 2**, including Dinsmore & Shohl LLP; Hall Render Killian Heath & Lyman P.C.; Lane & Waterman LLP; McDermott Will & Emery LLP; Mintz Levin Cohn Ferris Glovsky & Popeo P.C.; Polsinelli P.C.; Sedgwick LLP, have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to their Chapter 11 Cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

   c. In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in their Chapter 11 Cases. For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

   d. Certain financial institutions or their respective affiliates (including Allianz Global Assistance; Blue Cross Blue Shield; Blue Cross Blue Shield Association; Guardian Life Insurance Company of America; U.S. Bank; and Wells Fargo Bank, National Association) listed on **Schedule 2** (i) are lenders to an affiliate of Deloitte Tax (Deloitte Tax is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various managing partners and principals, respectively, of Deloitte Tax and its affiliates.

   e. Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to the Chapter 11 Cases.

    f.   Prior to the Petition Date, Deloitte & Touche provided and continues to provide audit services to the Debtors and/or their affiliates, in matters unrelated to these Chapter 11 Cases.

    g.   Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates, in matters unrelated to these Chapter 11 Cases. In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties-in-Interests' business arrangements with the Debtors.

    h.   Deloitte Consulting and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these Chapter 11 Cases.

16. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in their Chapter 11 Cases, the United States Trustee for Region 12, the Assistant United States Trustee for the Northern District of Iowa, and the attorney therefor assigned to these Chapter 11 Cases.

17. Despite the efforts described above to identify and disclose Deloitte Tax's connections with the Potential Parties-in-Interest in the Chapter 11 Cases, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

18. Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax is a

9

"disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

## Scope of Services

19. As set forth more fully in the Engagement Agreements, Deloitte Tax has agreed to provide the Debtors with certain tax advisory services, as follows:

   a. **Tax Compliance Engagement Letter**. Pursuant to the terms of the Tax Compliance Engagement Letter, Deloitte Tax will assist the Debtors with (i) the preparation of the 2022 federal and state income tax and exempt organization returns identified in Exhibit A to the letter, as well as the calculation of amounts of extension payments and preparation of extension requests for the 2022 income tax and exempt organization returns identified in Exhibit A to the letter, and (ii) tax consulting services on various tax matters, as requested by the Debtors. Additionally, Deloitte Tax may perform certain tax consulting services upon the request of the Debtors.

   b. **EBP Engagement Letter**. Pursuant to the terms of the EBP Engagement Letter, Deloitte Tax will assist the Debtors with preparing (i) the Form 5500 (Annual Return/Report of Employee Benefit Plan) for each plan identified in Exhibit A to the letter, (ii) the Form 5558 (Extension of Time to File Certain Employee Plan Returns), as requested by the Debtors or as needed, and (iii) and the Summary Annual Report for each plan, as applicable.

## Professional Compensation

20. Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Agreements.

21. Pursuant to the terms of the Tax Compliance Engagement Letter, Deloitte Tax will charge the Debtors fixed fees for tax compliance services performed thereunder in the aggregate amount of $44,885.

22. With respect to any tax consulting services performed by Deloitte Tax under the Tax Compliance Engagement Letter, Deloitte Tax will charge the Debtors based on the amount of professional time incurred at agreed-upon hourly rates from between $380/hour to $700/hour.

23. Pursuant to the terms of the EBP Engagement Letter, Deloitte Tax will charge the Debtors fixed fees for services performed thereunder in the aggregate amount of $11,540.

24. In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business. Deloitte Tax shall advise the Debtors of any new rates should it institute a rate-change during the Chapter 11 Cases. Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

25. In addition, reasonable expenses, including travel, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services, will be included in the total amount billed.

26. Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. In particular, a portion of the services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("**Deloitte Tax India**"). A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax. The hourly rates charged to clients by Deloitte

Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India. The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the Potential Parties-in-Interest searched by Deloitte Tax are set forth in **Schedule 2** to this Declaration.

27. Prior to the Petition Date, Deloitte Tax provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors did not pay Deloitte Tax any amounts on account of invoices issued and/or services performed prior to such date. As of the Petition Date, no amounts were outstanding with respect to invoices issued and/or services performed by Deloitte Tax prior to such date.

28. Prior to the Petition Date, Deloitte & Touche provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $35,562 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoice(s) issued by Deloitte & Touche prior to such date.

29. Prior to the Petition Date, Deloitte Consulting provided professional services to the Debtors. In the ninety (90) days prior to the Petition Date, the Debtors did not pay Deloitte Consulting any amounts on account of invoices issued and/or services performed prior to such date. As of the Petition Date, approximately $25,000 was outstanding with respect to the invoice(s) issued and/or services performed by Deloitte Consulting prior to such date.

30. Deloitte Tax has received no promises regarding compensation in these Chapter 11 Cases other than in accordance with the Bankruptcy Code and as set forth in this

Declaration.  Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 8, 2023

By:   */s/ Shawna Jansons*
Shawna Jansons
Managing Director
Deloitte Tax LLP