# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 23-00623 (TJC)<br>)<br>) Jointly Administered<br>)<br>) |

## DEBTORS' MOTION FOR ENTRY OF ORDER EXTENDING EXCLUSIVE PERIODS TO FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") granting the relief described below. In support thereof, the Debtors respectfully represent as follows:

## RELIEF REQUESTED

1. By the Motion, the Debtors respectfully request entry of the Proposed Order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), extending by 90 days (a) the period during which the Debtors have the exclusive right to file a chapter 11 plan, through and including March 4, 2024 (the "Exclusive Filing Period"), and (b) the period during which the Debtors have the exclusive right to solicit votes on a chapter 11 plan, through and including May 6, 2024 (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The legal predicate for the relief requested herein is Bankruptcy Code section 1121(d), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules").

**BACKGROUND**

4. On August 7, 2023 (the "Petition Date"), the Debtors each commenced a chapter 11 case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code section 1107(a) and 1108.

5. On August 15, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Bankruptcy Code section 1102(a). *See* Docket No. 107. On November 4, 2023, the U.S. Trustee appointed an Official Committee of Pensioners (the "Pension Committee"). *See* Docket No. 458.

6. No trustee or examiner has been appointed in the Chapter 11 Cases.

7. Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of the Chapter 11 Cases, are set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* (the "Toney Declaration"). *See* Docket No. 27.

8. On the Petition Date, the Debtors filed a number of first day motions to stabilize the Debtors' operations following the filing of a state court receivership action by Preston Hollow Community Capital ("Preston Hollow") and Computershare Trust Company ("Computershare" and together with Preston Hollow, the "Bondholder Representatives"). These motions included, among others: a motion for entry of interim and final orders regarding wages, compensation and employee benefits; a motion to continue to operate cash management processes, maintain existing bank accounts, systems, and forms; a motion to authorize the Debtors to maintain insurance; a motion to maintain and administer refund programs and practices; a utilities motion; a motion regarding notice procedures for the case; a motion for joint administration; and a motion related to the use of cash collateral. *See* Docket Nos. 2, 7-10, 13-17, 21, 23, 26.

9. On August 9, 2023, the Debtors filed a motion for a sale under 363 of the Bankruptcy Code of substantially all of their assets and sought approval of bidding procedures. *See* Docket No. 58.

10. On August 14, 2023, the Court established October 16, 2023 (general) and February 5, 2024 (governmental) as the deadlines for filing proofs of claim against the Debtors.

11. On October 27, 2023, following several auction sessions, the Debtors declared the State of Iowa's University of Iowa (the "University of Iowa") as the successful bidder. *See* Docket No. 420. On November 7, 2023, the Court entered an order approving the sale to the University of Iowa. *See* Docket No. 476. Pursuant to the bid of the University of Iowa, the University of Iowa agreed to fund the Debtors' operating losses incurred from December 1, 2023 until closing of the sale, which is currently contemplated for January 31, 2024. The Debtors have expended significant resources, time, and energy in working collaboratively with the University of Iowa to ensure a smooth and seamless transition.

3

12.     Since the approval of the sale to the University of Iowa, the Debtors have engaged constructively with the Bondholder Representatives, the Committee, and the Pension Committee regarding a potential plan construct, in an effort to obtain consensus regarding the monetization of remaining assets, pursuit of certain causes of action, and liquidation and wind-down of the Debtors. The Debtors' goal is to be in a position to file a consensual liquidating plan with the support of the key stakeholders in the coming weeks.

13.     In the wake of the emergency nature of the filing of the Chapter 11 Cases following the initiation of the state court receivership action by the Bondholder Representatives, the Debtors have stabilized operations, provided much-needed assurances to the Debtors' employees and physician base, completed a successful auction process, and have generally brought about consensus in the face of significant acrimony among the parties.  As such, the Debtors have made significant progress in the Chapter 11 Cases thus far.  Accordingly, for the reasons discussed herein, the Debtors seek an extension of the Exclusive Periods to allow the Debtors additional time to proceed with the Chapter 11 Cases, including proposing, confirming, and consummating what will hopefully be a consensual and value-maximizing liquidating chapter 11 Plan.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

14.     Bankruptcy Code section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan. *See* 11 U.S.C. § 1121(b).  Bankruptcy Code section 1121(c)(3) provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan.  *See* 11 U.S.C. § 1121(c)(3).  Bankruptcy Code section 1121(d) permits the Bankruptcy Court to extend the

Exclusive Periods for "cause." *See* 11 U.S.C. § 1121(d). For the reasons set forth herein, the Debtors believe that such "cause" exists to extend the Debtors' Exclusive Periods by 90 days each.

**I.    Bankruptcy Code Section 1121(d) Permits the Court to Extend the Exclusive Periods for "Cause."**

15.    The plan exclusivity periods are intended to afford debtors the opportunity to propose a plan and to solicit acceptances of the plan without the disruption that might be caused by the filing of competing plans by third parties. It is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[1] *See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under Bankruptcy Code section 1121(d), courts have looked to its legislative history for guidance. *See In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (noting that the exclusive periods under Bankruptcy Code section 1121 are intended "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated") (quoting H.R. Rep. No. 103-835, at 36 (1994)); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend the 120- and 180-day exclusivity periods to be a hard and fast limit. *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with

---

[1]    Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Bankruptcy Code section 1121(d) by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the Chapter 11 Cases.

5

extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility."). Rather, Congress intended that the debtor's exclusivity periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). This period of exclusivity affords a debtor an opportunity to propose a chapter 11 plan and solicit acceptances thereof without the potential value deterioration and disruption to business operations that would ensue from the filing and solicitation of competing plans by non-debtor parties. Further, the legislative history indicates that "cause" should be interpreted in such a way "to allow the debtor to reach agreement." H.R. Rep. No. 95-595 at 231-32 (1978).

16. To determine whether "cause" exists to grant an extension of the Exclusive Periods, courts analyze the following factors:

(a) the size of the debtor and difficulty in formulating a plan;

(b) the necessity of sufficient time to negotiate a plan and prepare adequate information to allow a creditor to determine whether to accept the plan;

(c) the existence of good faith progress towards reorganization;

(d) whether the debtor is paying its debts as they come due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiating with creditors;

(g) the length of time the case has been pending;

> (h) whether the debtor is seeking an extension to pressure creditors to submit to its demands; and
>
> (i) whether or not unresolved contingencies exist.

*See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639 (8th Cir. 2003); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)

17. Not all of the above factors are relevant to every case and courts may consider the relevant subset of factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See In re Hoffinger Indus., Inc.*, 292 B.R. at 644; *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity). The Debtors respectfully submit that, as detailed below, consideration of the relevant factors supports the requested extensions of the Exclusive Periods for at least 90 days.

**II.     Good Cause Exists to Extend the Exclusive Periods**

18. This is the Debtors' first request for an extension of its Exclusive Periods. The Debtors submit that the factors discussed below weigh in favor of such extension.

   **A.     The Chapter 11 Cases are Complex.**

19. The Chapter 11 Cases are sufficiently complex to warrant the requested extension of the Exclusive Periods. There are three Debtors involved in the Chapter 11 Cases, including a Debtor that operates a Catholic-based non-profit acute care community hospital (the "Hospital")

7

and clinics located in Iowa City, Iowa and its surrounding communities. The Hospital has endured for the last 150 years and is responsible for the care of tens of thousands of patients annually. The Debtors lease and own facilities in Eastern and Southeastern Iowa, and provide health care through an emergency department, family health centers, obstetric and gynecology, cancer care, behavioral health care, home health care, a walk-in clinic and various other primary and specialty care centers. There are over 1,200 employees, 90 physicians, and their medical staffs. The Debtors also act as joint venture partners in multiple other healthcare ventures.

These operations are uniquely heavily regulated and accredited industry. Nearly every aspect of the Debtors' operations, from patient services to billing, is subject to strict rules and regulations that require methodical and careful planning and support.

20. The Estates' constituents and creditors are a dynamic and unique set of groups, each with sufficiently distinct claims, interests and potential assets. Such groups include, but are not limited to, the Debtors' bondholders, the Committee, the Pension Committee, workers compensation claimants, pre- and post-petition trade creditors, medical care providers, national staffing companies, and tort claimants.

21. While maintaining operations and prioritizing patient care has been their primary focus during the Chapter 11 Cases, the Debtors also have addressed critical issues in the ordinary course of business while simultaneously engaging with key constituents to implement a comprehensive sale and transition process with respect to the operations of their facilities.

22. Having obtained Court approval of the sale to the University of Iowa, the Debtors now turn their focus to claim analysis and Plan development. To that end, the Debtors have commenced negotiations with certain creditors and parties-in-interest regarding numerous complicated plan-related issues, with the goal of developing a largely consensual Plan and

confirmation process amongst key constituents. Thus, the Debtors submit that the complexity of the Chapter 11 Cases weigh in favor of granting the requested extension of the Exclusive Periods.

  **B.**  **The Debtors Have Made Good Faith Progress Since the Petition Date.**

23. Since the Petition Date, the Debtors have made significant and material progress toward advancing the Chapter 11 Cases, including the following:

  (a) **Obtaining First Day Relief.** Upon entering an unexpected and urgent chapter 11, the Debtors immediately sought to stabilize their operations through various operational first day motions and orders. Such relief allowed the Debtors to, among other things, maintain operations and prioritize patient care, continue to use their existing cash management system, and pay certain obligations in the ordinary course.

  (b) **Obtaining Cash Collateral Use on Interim Basis.** Following extensive negotiations and efforts with the Bondholder Representatives, the U.S. Trustee, and the Committee, the Court entered an interim order approving the Debtors' post-petition use of cash collateral, which provided critical financing and access to cash collateral to finance the Debtors' operations throughout the Chapter 11 Cases. *See* Docket No. 38. Following additional discussions amongst the parties, the Court entered a second interim order, approving the Debtors' continued use of cash collateral. *See* Docket No. 475. The final cash collateral hearing is currently scheduled for December 19, 2023.

  (c) **Filing Schedules and Statements.** The Debtors filed their schedules and statements after compiling information from books, records, and other documents relating to claims, assets, and contracts of each Debtor. Because the bankruptcy filing was an urgent and forced endeavor, the Debtors are currently working to update and amend these filings.

  (d) **Preparing and Conducting a Sale of the Debtors' Operations as a Going Concern Business Through 363 Auction.** The Debtors obtained Court approval in August to conduct a 363 sale of substantially of all of their assets and the business operations as a going concern. Following certain challenges during the bidding and auction process, the University of Iowa was declared the successful bidder and the Debtors anticipate closing on the transaction with the University of Iowa by the end of January 2024. The Court conducted a sale hearing and approved this sale just a few weeks ago on November 7, 2023. The Debtors and the University of Iowa are currently in the process of evaluating, analyzing, and transitioning the operations for the future. Contracts, vendors, providers, policies, expenses, revenues, management and other key aspects of the operation are under review. The

Debtors and their incredible employee teams continue to focus on maintaining excellent patient care through this transition period.

(e) **Analysis and Supporting Research on Claims and Causes of Action**. At the request of the Court and the Committee, the Debtors began the analysis and research regarding various potential claims and causes of action, laying the necessary groundwork for the potential Plan-related negotiations to be initiated.

(f) **Negotiations with Creditors**. The Debtors have, throughout the Chapter 11 Cases, sought to reach consensual resolution of issues raised by their key creditor constituencies and other creditors. The Debtors' willingness to negotiate with their creditors and other constituents is well documented in these cases, and the Debtors continue to work with these parties as they develop the structure for a future consensual chapter 11 plan. The Debtors prefer to continue to discuss mutual resolution of claims and provisions of the plan that best address each of their interests rather than be forced to initiate or defend costly litigation that may result if a nonconsensual and premature plan is filed.

24. In sum, the continued good faith efforts and progress exhibited by the Debtors in the Chapter 11 Cases thus far support a further extension of the Exclusive Periods.

C. **Additional Time is Necessary to Negotiate and Prepare Adequate Information to Allow Creditors to Determine Whether to Accept the Plan.**

25. Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on stabilizing the operations, negotiating cash collateral and continued funding of expenses, administering the Chapter 11 Cases in the ordinary course of business, and negotiating with vendors and other creditors, including the Committee and the bondholder parties. Moreover, as already discussed, the Debtors also spent significant time preparing for and engaging in an extended sale process, as well as obtaining critical funding from Mercy Hospital Foundation to ensure that the Debtors could successfully consummate the sale transaction. Now that the Debtors have Court approval of their sale to the University of Iowa, the Debtors can turn their focus to negotiations related to and preparation of their plan and disclosure statement. Granting the requested extensions will give the Debtors a full and fair opportunity to

10

engage in meaningful discussions and negotiations with creditors and prepared the Plan and Disclosure Statement without the distraction, cost, and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting section 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (internal quotation and citation omitted). Accordingly, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### D. The Debtors Have Paid Their Debts in the Ordinary Course as They Came Due.

26. The Debtors have made and will continue to make timely payments on their undisputed post-petition obligations in the ordinary course, meaning that the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors. As such, this factor also weighs in favor of extending the Exclusive Periods.

### E. The Debtors are Not Seeking an Extension to Pressure Creditors.

27. Granting the requested extensions of the Exclusive Periods will not pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. To the contrary, the Debtors have been in regular communications with the Committee, the Bondholder Representatives, and the Pension Committee and furthering discussion with other constituents during this time. The Debtors are not seeking an extension to pressure their creditors to take any action, but only to ensure that the Debtors can pursue the resolution of the Chapter 11 Cases, including by proposing, confirming, and consummating a chapter 11 plan, free from distraction or

competing plan proposals. Therefore, this factor also weighs in favor of extending the Exclusive Periods.

**F.  The Debtors Have Reasonable Prospects for Filing a Viable Plan.**

28.  Following a successful auction and sale process, which provided a stepping stone for the successful transition of continued operations of the Hospital, the Debtors are in a position to resolve and negotiate with key constituents for a consensual path forward. With that foundation and the progress in these Chapter 11 Cases to date, the Debtors submit that they have reasonable prospects for proposing, confirming, and consummating a plan. Accordingly, the Debtors believe that this factor weighs in favor of extending the Exclusive Periods.

**G.  The Debtors Face Unresolved Contingencies, Including Pensioner and Tort Claims.**

29.  While the stage is set for the Plan development, the Debtors currently face multiple unresolved issues and are working on a solution that would potentially address the interests of the Pension Committee and its constituents. The Debtors will need time to assess each of these contingent claims and develop solutions with the parties. The existence of such unresolved contingencies weighs in favor of granting the requested extension of the Exclusive Periods, as such extensions will allow the Debtors additional time to negotiate the treatment of holders of tort and pensioner claims in the Plan.

**H.  Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases.**

30.  Termination of the Exclusive Periods, particularly at this stage of the Chapter 11 Cases, would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and would further complicate the progression of the Chapter 11 Cases. Such termination may disincentivize creditors from negotiating with the Debtors and could undermine the

consummation of the Debtors' approved sale to the University of Iowa. Moreover, the proposal and solicitation of any competing plan would greatly complicate and increase the cost of administering the Chapter 11 Cases, further justifying the requested extension of the Exclusive Periods.

31. Based upon the foregoing, the Debtors respectfully submit that cause exists in the Chapter 11 Cases to extend the Exclusive Periods as requested herein.

## NOTICE

32. The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Attorney for the Northern District of Iowa; (d) the Centers for Medicare & Medicaid Services; (e) counsel to the Committee; (f) counsel to the Pension Committee; (g) counsel to the Bondholder Representatives; and (h) all parties entitled to notice pursuant to Bankruptcy Rule 2002. . The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

33. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: December 5, 2023
      Cedar Rapids, Iowa

Respectfully Submitted,

*/s/ Roy Leaf*
**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:  (319) 286-7002
Facsimile:  (319) 286-7050
Email:  rleaf@nyemaster.com

- and -

*/s/ Kristina M. Stanger*
Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-283-8009
Fax:  515-283-8045
Email:  kmstanger@nyemaster.com
       mmcguire@nyemaster.com
       dhempy@nyemaster.com

- and-

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700
Email:  fperlman@mwe.com
       dsimon@mwe.com
       ekeil@mwe.com

## Certificate of Service

  The undersigned certifies, under penalty of perjury, that on this December 5, 2023, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

                /s/ *Kristina M. Stanger*

# EXHIBIT A

# Proposed Order

3

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-00623 (TJC)<br><br>Jointly Administered |

## ORDER EXTENDING EXCLUSIVE PERIODS TO FILE
## A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the motion (the "<u>Motion</u>")[1] of the Debtors for entry of an order (this "<u>Order</u>") extending by 90 days the Debtors' exclusive periods to (i) file a chapter 11 plan, through and including March 4, 2024 (the "<u>Exclusive Filing Period</u>"), and (ii) solicit votes thereon, through and including May 6, 2024 (the "<u>Exclusive Solicitation Period</u>" and, together with the Exclusive Filing Period, the "<u>Exclusive Periods</u>"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is granted as set forth herein.

2. The Exclusive Filing Period is extended through and including March 5, 2024.

3. The Exclusive Solicitation Period is extended through and including May 5, 2024.

4. The entry of this Order is without prejudice to the Debtors' right to request further extensions of the Exclusive Periods.

5. The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

6. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.