**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | Re: Dkt. No. 554 |

**SECURED BONDHOLDER REPRESENTATIVES' OBJECTION TO
MOTION FOR ENTRY OF ORDER EXTENDING EXCLUSIVE PERIODS TO
FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee (together, the "Secured Bondholder Representatives"), hereby object (the "Objection") to the *Debtors' Motion for Entry of Order Extending Exclusive Periods to File Chapter 11 Plan and Solicit Acceptances Thereof* [Dkt. No. 554] (the "Exclusivity Extension Motion") filed by Mercy Hospital, Iowa City, Iowa ("Mercy Hospital") and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors"),[1] and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. On December 5, 2023, the day the Debtors' 120-day Exclusive Filing Period was set to expire, the Debtors filed the Exclusivity Extension Motion and sought a 90-day extension of each of the Exclusive Filing Period and the Exclusive Solicitation Period through March 4, 2024 and May 6, 2024, respectively.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Exclusivity Extension Motion.

1

2. However, we are four months into these Chapter 11 Cases, and it has been clear since the outset that the Debtors' intention was to liquidate substantially all of their assets rather than to reorganize. The Court-approved sale of the Debtors' operating assets is expected to close before the end of January 2024, after which time the Debtors will no longer operate as a going concern. And yet, very little progress has been made to date regarding the formulation of a consensual chapter 11 plan.

3. This is a not a complex, multi-faceted reorganization that requires a seven-month plan formulation process; it is a straight-forward liquidation that merely requires a mechanism for allocating the value associated with the Debtors' liquidated assets as they are monetized. There is no reason to wait until the end of March to file a chapter 11 plan of liquidation and, indeed, granting the Debtors' requested extension of exclusivity through March will unduly delay the resolution of these Chapter 11 Cases and substantially reduce the overall recovery to creditors.

4. Aside from the operating losses, the monthly professional fees incurred in these cases have been tremendous – in excess of $3.6 million in aggregate through October. The Debtors project that monthly professional fees over the next few months will be approximately $2.3 million. Any further delay in filing and confirming a chapter 11 plan of liquidation will cost the estates millions of additional dollars, thus reducing the distributions to creditors. The continued accrual of administrative expenses will quickly become a major obstacle to a fair plan in these Chapter 11 Cases.

5. The Debtors note in their Exclusivity Extension Motion that they have just begun to engage with the Secured Bondholder Representatives, the Committee and the Pension Committee regarding a potential plan. The Secured Bondholder Representatives welcome that engagement, but no tangible progress has been made to date. To the extent that the Debtors are

ultimately unsuccessful in formulating a consensual and/or confirmable chapter 11 plan of liquidation, the requested extension of exclusivity would unduly hamstring the Secured Bondholder Representatives and the other key constituents through March or even May, resulting in over $10 million of dollars of lost value.

6. Notably, the Secured Bondholder Representatives have made an initial plan proposal to the Debtors, the Committee and the Pension Committee. The Secured Bondholder Representatives are prepared to file their own chapter 11 plan of liquidation, particularly given that the majority of the remaining assets constitute the bondholders' collateral. It is a plan that they believe the pension claimants will endorse and support.

7. The Secured Bondholder Representatives intend to continue their discussions with the Debtors, the Committee and the Pension Committee around a consensual chapter 11 plan of liquidation, but it is essential that the Secured Bondholder Representatives be given the opportunity to file their own proposed plan if those discussions do not bear fruit over the next several weeks. Time is of the essence.

8. Given the foregoing and in consideration of the substantial administrative expenses that continue to accumulate each day the Chapter 11 Cases remain pending, it is in the best interest of the estates and all parties-in-interest to terminate the Debtors' exclusivity. The Debtors have not established sufficient "cause" for extension of the 120-day period in accordance with section 1121(b). Rather, under the circumstances presented herein, the expeditious resolution of these Chapter 11 Cases may only be achieved from the statutorily prescribed expiration of the exclusive periods.

**RELEVANT BACKGROUND**

9. The Debtors filed these Chapter 11 Cases on August 7, 2023.

10. On August 9, 2023, the Debtors filed their motion to sell substantially all of their assets and sought approval of bidding procedures. *See* Dkt. No. 58.

11. On October 27, 2023, the Debtors filed their *Amended Notice of Auction Results* [Dkt. No. 420] (the "Amended Auction Notice") designating the University of Iowa as the winning bidder for substantially all of the Debtors' assets. Pursuant to the Asset Purchase Agreement by and among the Debtors and the University of Iowa (the "APA"), closing of the contemplated sale will occur on the later of (a) January 31, 2024, (b) five (5) business days after satisfaction of the conditions set forth in the APA and (c) such other time as the Debtors and the University of Iowa may agree. Amended Auction Notice, Ex. A at § 2.8.

12. As of October 31, 2023, the Debtors have incurred no less than $2,585,797.88 in attorneys' fees and costs and have paid their financial professionals $660,532.00, as set forth in the following chart:[2]

|  | Fees | Costs | Total |
| --- | --- | --- | --- |
| McDermott Will & Emery, LLP | $2,297,986.50 | $13,725.95 | $2,311,711.95 |
| Nyemaster Goode, P.C. | $237,091.50 | $36,994.43 | $274,085.93 |
| ToneyKorf Partners | $200,000.00 |  | $200,000.00 |
| H2C Securities, Inc. | $460,532.00 |  | $460,532.00 |
|  |  |  | **$3,246,329.88** |

13. Further, as of September 30, 2023, the Committee has incurred no less than $260,504.99 in attorneys' fees and expenses and $139,720.00 in fees for its financial advisor, as set forth in the following chart:[3]

---

[2] *See Monthly Operating Report* [Dkt. No. 525], *Summary of Third Monthly Fee Application of Nyemaster Goode, P.C., Counsel to Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses for the Period from October 1, 2023 Through October 31, 2023* [Dkt. No. 530] and *Summary of Third Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 532].

[3] *See First Monthly Application of Sills Cummis & Gross P.C. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from August 18, 2023 Through August 31, 2023* [Dkt. No. 486], *Second Monthly Application of Sills Cummis & Gross P.C. for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from September 1, 2023 Through September 30, 2023* [Dkt. No.

|  | Fees | Costs | Total |
|---|---|---|---|
| Sills Cummis & Gross P.C. | $256,256.25 | $4,248.74 | $260,504.99 |
| FTI Consulting, Inc. | $139,720.00 | $0.00 | $139,720.00 |
|  |  |  | **$400,224.99** |

## ARGUMENT

**A. The Debtors Must Demonstrate "Cause" to Extend the Exclusive Periods.**

14.     Section 1121 allows the Debtors a 120-day period to propose a plan, and then contemplates opening the plan process up to third parties. 11 U.S.C. § 1121(b). The provision "was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987). As such, extensions of such exclusivity "should not be employed as a tactical measure to put pressure on parties in interest to yield to a plan they consider unsatisfactory." *Bunch v. Hoffinger Indus. (In re Hoffinger Indus.)*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003) (internal citation omitted); *see also In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d at 372 (cautioning that courts "must avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings" before the enactment of section 1121). "The decision whether to grant an extension of a chapter 11 debtor's exclusivity requires a court to engage in a careful balancing of competing factors." *In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011). "[E]xtensions are not granted routinely or cavalierly," and a debtor's first request to extend exclusivity does not by itself constitute cause for extension. *Id.*

15.     The Debtors bear the burden of establishing "good cause" to extend exclusivity, *In re Hoffinger Indus.*, 292 B.R. at 643, and "must produce affirmative evidence to support a finding of cause." *In re Borders Grp., Inc.*, 460 B.R. at 821; *see also In re Dow Corning Corp.*, 208 B.R.

---

488] and *Summary of First Monthly Fee Application of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors, for Allowance of Compensation and Reimbursement of Expenses for the Period from August 21, 2023 Through September 30, 2023* [Dkt. No. 490].

5

661, 663 (Bankr. E.D. Mich. 1997). While bankruptcy courts have "great latitude" and flexibility in determining whether a debtor has satisfied its burden to demonstrate cause, the determination is made on a case-by-case basis based on the specific facts and circumstances of the case. *See, e.g.*, *Geriatrics Nursing Home v. First Fid. Bank, N.A. (In re Geriatrics Nursing Home)*, 187 B.R. 128, 132 (D.N.J. 1995); *In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012); *see also In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (stating that "[w]hether or not [a movant] has [proven 'cause' exists] is a question committed to the sound discretion of the bankruptcy judge.").

16. Bankruptcy courts consider a non-exhaustive list of factors to determine whether to modify exclusivity, including: (i) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge creditor with a complex financial structure; (ii) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information; (iii) the existence of good faith progress towards reorganization; (iv) the existence of an unresolved contingency; (v) the fact that the debtor is paying bills as they become due; (vi) the length of previous extensions of exclusivity; (vii) breakdowns in plan negotiations, such that the continuation of the debtor's exclusive period would result in the debtor having an unfair bargaining position over creditors; (viii) the debtor's failure to resolve fundamental reorganization matters essential to its survival; and (ix) the gross mismanagement of the debtor. *In re Hoffinger*, 292 B.R. at 643-44.

17. Notably, "these are only factors, not all of which are relevant in every case. Nor is it simply a question of adding up the number of factors which weigh for and against an extension." *Id.* Indeed, courts often find that the "primary consideration" is whether extending exclusivity would "facilitate moving the case forward. And that is a practical call that can override a mere

6

toting up of the factors." *In re Dow Corning Corp.*, 208 B.R. at 670.  And, courts will deny a debtor an extension where, as here, insufficient cause is shown, particularly when an extension will not move the case toward a reorganization or other chapter 11 exit. *See, e.g., In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 601 (Bankr. S.D.N.Y. 2014) (observing that "courts have not hesitated to deny a first motion to extend exclusivity where the circumstances warrant it."); *Off. Comm. of Unsecured Creditors of Mirant Am. Generation, L.L.C. v. Mirant Corp. (In re Mirant Corp.)*, No. 4–04–CV–476–A, 4–04–CV–530–A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (observing that "[i]n virtually every case where an extension has been granted, the debtor showed *substantial* progress has been made in negotiations toward reorganization.") (emphasis added).

**B.  The Debtors Have Not Met Their Burden to Show Cause to Extend the Exclusive Periods.**

18.  Here, cause does not exist to extend exclusivity because (i) exclusivity will not materially move these Chapter 11 Cases forward and instead may hinder their progress and (ii) the Debtors' financial condition necessitates termination of exclusivity and a quicker exit from chapter 11.

19.  The stated purpose of the Chapter 11 Cases was to effectuate a sale process to liquidate substantially all of the Debtors assets.  *See* Toney Declaration at ¶ 10.  The Debtors are very close to accomplishing that.  They have obtained approval of a sale of their assets to the University of Iowa, and the sale is anticipated to close by the end of January 2024. *See Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Dkt. No. 476].  The Debtors now know what sale proceeds will be coming into their estates and have a better sense of the values of their other assets.

7

20. Similarly, the Debtors now have an understanding of the claims against them and the relative priorities of such claims. The claims bar date for all creditors except governmental units has passed.[4] The Debtors have stipulated to the validity of the Secured Bondholder Representatives' liens and security interests in substantially all of Mercy Hospital's real and personal property assets, including, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the land as set forth (and to the extent set forth) in the Mortgage and Security Agreement and Fixture Financing Statement, and all of Mercy Hospital's accounts and assignable general intangibles regardless of how generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial Code, as set forth (and to the extent set forth) in the Granting Clauses, Division I, of the Master Trust Indenture, which includes Mercy Hospital's membership interest in its limited liability company affiliates Corridor Radiology, LLC; Eastern Iowa Rehabilitation Hospital, LLC; Iowa City Ambulatory Surgery Center, L.L.C; and Mercy Iowa City ACO, LLC. *See Second Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* [Dkt. No. 475] at ¶ E(vii). The challenge deadline for any remaining claims against the Secured Bondholder Representatives is set to expire on December 14, 2023. *Id.* at ¶ 12.

---

[4] The deadline for governmental units to file claims is February 5, 2024. *See* Dkt. No. 92.

21. Meanwhile, the Chapter 11 Cases are being funded from the use of the Secured Bondholder Representatives' cash collateral. *Id.* This is the appropriate time to initiate a plan process, not months from now when the hospital's assets and operations will have transferred to the University of Iowa and the cases will continue to exist solely to pay professional fees.

22. This Court should deny the Exclusivity Extension Motion for these reasons. In addition, these cases are not particularly large or complex so as to justify an extension for this is simply a liquidation that requires a mechanism for allocating the value of the Debtors' liquidated assets. Yet, the Debtors have thus far made no meaningful progress towards a consensual plan of liquidation. An extension at this point would simply afford the Debtors unfair bargaining power over other key constituents who wish to see the cases brought to a prompt conclusion.

## CONCLUSION AND RESERVATION OF RIGHTS

23. For all of the foregoing reasons, the Secured Bondholder Representatives respectfully request the Court deny the Exclusivity Extension Motion and the relief sought herein.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Date: December 6, 2023 | **WHITFIELD & EDDY, P.L.C.** |

*/s/ Peter J. Chalik*
Peter J. Chalik (Iowa Bar No. AT0013036)
699 Walnut St., Suite 2000
Des Moines, Iowa 50309
Telephone: (515) 288-6041
Email: *Chalik@whitfieldlaw.com*

-and-

**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

William W. Kannel (admitted *pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: WKannel@mintz.com

Nathan F. Coco (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
Kaitlin R. Walsh (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 935-3000
Email: NFCoco@mintz.com
   MPreusker@mintz.com
   KRWalsh@mintz.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document and accompanying exhibits was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated December 6, 2023.

*/s/ Peter J. Chalik*