**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, | ) | |
| IOWA CITY, IOWA, *et al.,* | ) | Case No.  23-00623C |
| | ) | |
| Debtors. | ) | Jointly Administered |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE DEBTORS' THIRD MONTHLY FEE APPLICATION OF MCDERMOTT WILL & EMERY, LLP**

**JURISDICTION, VENUE, AND STATUTORY PREDICATE**

1. The Court has jurisdiction over this Objection and the Sale Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief sought herein is 11 U.S.C. §§330 and 331, as well as Fed. R. Bankr. P. 2016. The United States Trustee has standing to raise, appear and be heard on this Objection pursuant to 11 U.S.C. §307; 28 U.S.C. § 581 *et seq.*

**PROCEDURAL BACKGROUND**

2. On August 7, 2023, Mercy Iowa City ACO, LLC, Mercy Hospital, Iowa City, Iowa, and Mercy Services Iowa City, Inc., (hereinafter "Mercy" or "Debtors") filed three individual chapter 11 bankruptcy petitions that are being Jointly Administered under case number 23-00623.

3. The Debtors continue to operate as debtors-in-possession under §§1107 and 1108 of the Bankruptcy Code.

4. McDermott Will & Emery, LLP (McDermott) filed its Application to Employ on August 23, 2023. On September 14, 2023, the Court entered an Order allowing retention of McDermott effective August 7, 2023.

5. On September 14, 2023, the Interim Compensation Order was entered by the Court. Doc. 224. It provided that a Retained Professional may file and serve Monthly Fee Applications and required a 20% holdback of all fees awarded.

6. McDermott reported that it was paid pre-petition $3,141.170.00 by the Debtors from February 28, 2023, through August 4, 2023. *See* Doc. 189 page 14. In addition, McDermott also received a prepetition retainer of $761,951.00.

7. McDermott previously filed their *First Monthly Fee Application of McDermott Will & Emery, LLP, Counsel to the Debtors and Debtors-In-Possession, For Allowance of Compensation and Reimbursement of Expense* on October 9, 2023 (doc. 348) and their *Second Application for Compensation* on November 10, 2023 (doc. 502) (collectively "First and Second Applications"). The UST filed objections to both fee applications, which have not yet been heard by the Court or otherwise resolved, and there are no orders entered by the Court allowing payment of any fees. Therefore, many of the issues and objections remain the same. As stated in the UST's Objections to the First and Second Applications, resolution of these matters should proceed expeditiously so all attorneys billing in this matter may conform their practices to the expectations of this Court.

8. As many of the identified issues remain in the present Application, the UST hereby incorporates all prior factual development and argument made in docket entries 348 and 502.

9. The UST filed its Objection to the First Fee Application on November 6, 2023, and sought a reduction of the total award by 30%. *See* Doc. 467. The UST filed its Objection to the Second Fee Application on November 24, 2023, and sought a reduction of the total award by 20%. *See* Doc. 529. *Debtors' Third Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, For Allowance of Compensation and Reimbursement of Expenses* was filed on November 27, 2023, seeking payment of $450,968.00 (80% of

$563,710.00in fees billed) and expenses of $5,638.37 (hereinafter the "Application" or "present Application"). Footnote 1 of the Application reports that McDermott has voluntarily written off $10,360.66 including $6,712.00 in fees and $3,648.66 in expenses. The "no charge" entries are not set out in the Application and therefore cannot be verified.

10. The fees in the Third Monthly Application were incurred between October 1, 2023, through October 31, 2023. Payment for fees and expense is sought pursuant to 11 U.S.C. §§ 330 and 331.

## INTRODUCTION

11. The UST filed Objections to McDermott's First Fee and Second Fee Applications, but the issues raised have not yet been decided. Many of the same issues persist in the Third Application. The UST incorporates those prior arguments as if fully stated herein. Describing itself as having extensive bankruptcy and restructuring experience, as well as experience in virtually all other aspects of law that may arise in these cases, McDermott continues to seek payment of fees multiple times greater than any other party in this case. The Third Application period saw substantial issues related to the Auction sale of "substantially all of the Debtor's assets." However, noting that "every dollar expended on legal fees results in a dollar less that is available for distribution to creditors or use by debtor," the UST continues to look closely at all fee applications filed in these jointly administered cases. *In re Pettibone Corp.*, 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987) (internal citations omitted). Apparent yet again in the present Application is the pattern where several attorneys are all billing to complete the same tasks, including partner-attorneys. Presumably, this number of attorneys all working on the same file has implicated the law of diminishing returns. Now that an extension of exclusivity has been sought, the continued viability of this practice is a paramount concern.

**ARGUMENT**

12. All requests for compensation should be carefully examined by the Court to determine whether the services were reasonable and necessary to the administration of the estate and to determine whether the applicants exercised reasonable billing judgment.

13. 11 U.S.C. § 330 requires that compensation be for actual and necessary services and makes the exercise of "billing judgment" a mandatory requirement in bankruptcy fees matters. The U.S. Supreme Court in *Hensley v. Eckerhart* noted that attorneys are obligated to make a good faith effort to exclude from a fee request hour that are excessive, redundant, or otherwise unnecessary. 461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). If such requests are found in a fee application, they are disallowed by the court as unnecessary. Good billing judgment is reflected in part where a case is staffed in an efficient manner that is cost-effective to the client's interest. *Matter of Fansteel, Inc.*, No. 16-01823, 2017 Bankr. LEXIS 1265, at *5 (Bankr. S.D. Iowa May 9, 2017).

14. The Court may award compensation that is less than the amount requested in the Application. The bankruptcy court has broad power and discretion to award or deny attorney fees under § 330(a).

15. In this jurisdiction the lodestar method is used to calculate fee allowances, which considers the number of hours reasonably expended multiplied by a reasonable hourly rate to reach the appropriate calculation of fees. The Bankruptcy Code requires courts to consider a number of factors to determine the reasonable rates and hours, including: the time spent, the rates charged, the necessity of the services for administration of the case, the reasonableness of the amount of time spent in light of the complexity, importance and nature of the problem, issue or task addressed, and the reasonableness of the requested compensation compared to the

customary compensation charged by comparably skilled practitioners in non-bankruptcy cases. *See In re Agriprocessors*, 2009 Bankr. LEXIS 3916 at *3-4 (Bankr. N.D. Iowa 2009); *citing In re Peterson*, 251 B.R. 359, 364 (B.A.P. 8th Cir. 2000).

16. The applicant bears the burden of demonstrating "the value of his or her services in relation to a particular case." *In re Pothoven*, 84 B.R. 579, 584 (Bankr. S.D. Iowa 1988). This burden is not to be taken lightly, especially given that "every dollar expended on legal fees results in a dollar less that is available for distribution to creditors or use by debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299- 300 (Bankr. N.D. Ill. 1987) (internal citations omitted).

*Note on the Hourly Rates of McDermott*

17. The Application for Employment sets out the hourly rates of attorneys, including partners, F. Pearlman ($1,850.00) and D. Simon ($1,450.00) associates J. Haake ($1,190) and E. Kiel ($1,105.00). The blended hourly rate is often used to analyze the reasonableness of the hourly rate in a given case. In this case, the blended hourly rate for the McDermott Firm in the First Application was $1,273.49. The figure for the blended hourly rate in the Second and Third Applications was not provided. The rates charged far exceed the local standards as evidenced by the hourly rate of $295.00 for local counsel, Roy Leaf, a shareholder in the Nyemaster Firm. This rate is also substantially higher than the blended rate being used for all attorneys working on matters for the Committee of Unsecured Creditors, which has been reduced to $675. Of the professionals seeking compensation from the estate, the McDermott firm charges the highest hourly rate.

18. As set out in the UST's Objection to the First and Second Applications, the hourly rate should be commensurate with the expertise of the firm. However, the McDermott firm continues

to have several attorneys working on the file (12 in the present Application) who all bill rates higher than any other professional in the case ($725 - $1,850/hour in the present Application).

19. By way of example, on October 22, 2023, J. Haake billed (1.0) to "research case law re: bankruptcy sale process" and on October 23, 2023 he billed (.9) to "research case law re auction and sell issues." J. Haake bills at $1,190.00 per hour. It is unclear why a law firm with McDermott's experience in bankruptcy cases would have to research bankruptcy auction sales. J. Haack billed (1.1) hours to research Iowa Law related to trust law issues.  It is unclear why J. Haake would research Iowa law when the Debtor has local counsel who would either have that information available or who could research the Iowa law at approximately 25% of billing rate charged by J. Haack.

*A Lack of Billing Judgment Should Result in a Reduction of Fees Awarded*

20. As this court has noted in *VeroBlue Farms USA, Inc.*, a "factor to be considered is 'whether billing judgment was exercised to avoid duplicate or unnecessary services. Billing judgment is reflected in staffing a file in a manner that efficiently provides the most cost-effective representation necessary to a client's interest without redundant, duplicative, and unnecessary services." *VeroBlue Farms USA, Inc. v. Cassels Brock & Blackwell LLP (In re VeroBlue Farms USA, Inc.)*, 2023 Bankr. LEXIS 1071, at *17 (Bankr. N.D. Iowa April 19, 2023) (internal citations omitted).

21. A careful review of the Third Application reflects that there continue to be a significant amount duplication of effort and overstaffing with multiple attorneys reviewing and revising each other's work and conferencing on multiple issues. An accurate exercise of good billing judgment would result in a reduction of the actual amount charged to the Debtor as such overbilling is not warranted. *See Matter of Fansteel, Inc.*, Bankr. LEXIS 1265 at *5.

22. The UST asserts that the McDermott firm does not have the unfettered right for every attorney to meet with several of their colleagues on every matter and bill accordingly. The UST appreciates the inherent collaborative approach that is often utilized in bankruptcy cases, but the UST maintains that the usefulness of intra-office conferences does not mean every attorney may bill for every conference. Because of the general lack of billing judgment, the UST requests a reduction in any fees awarded.

*Overstaffing*

23. As noted in the UST's Objection to the First and Second Fee Applications, McDermott's Retention Application (Doc. 148) lists names and rates of the six "McDermott professionals currently performing, or expected to perform, material work in the Chapter 11 cases."

24. McDermott's Third Monthly Fee Application reflects that it had fifteen (15) individuals that worked on the case. This included eight (8) partners, four (4) associates, one (1) technology manager and two (2) technology data analysts billing the estate for services for a total of 386.8 hours in the month of October. The Application does not include any billing charges by a paralegal.

25. As noted in this objection, the McDermott firm generally has multiple partners and associates working on the same matters and revising each other's work. This constitutes unnecessary duplication of effort that may accurately reflect the work performed but does not demonstrate a commensurate benefit to the estate. Due to the overstaffing that has been apparent through the life of the case and has not been substantiated once again in the present Application, the UST requests a reduction in any fees awarded.

***Intra-Office Conferences Leading to Duplication of Efforts***

26. While not controlling law in the Northern District, most Iowa attorneys follow the advice of *In re Pothoven* which asks attorneys to use their best billing judgment as required by the Code. *In re Pothoven*, 84 B.R. 579, 584-85 (Bankr. S.D. Iowa 1988). *Pothoven* also notes that "the bankruptcy estate should not bear the cost of compensating each attorney present at an intra-office conference. . ." *Pothoven*, 84 B.R. 579 at 585.

27. The intra-office conferences and overall duplication of efforts persist in the Third Application. The UST reiterates its prior arguments that while these efforts may aid the firm in the practice of law, the applicant bears the burden of showing the necessity of each individual billing for the same tasks. *See In re Agriprocessors, Inc.*, 2009 Bankr. LEXIS 3916 at *8; *see also In re VeroBlue Farms USA, Inc.* 2023 Bankr. LEXIS 1071, at *16-17. Throughout this fee application, rather than discussing the subject of meetings, communications, or conferences by naming the individuals involved, McDermott uses phrases such as "multiple communications," "multiple correspondence and conferences," and "multiple conferences."

28. Examples of the overstaffing, duplication of billing and intra-office conferences include, but are not limited to, the following objectionable entries:

- October 2, 2023: Partners, (D. Simon and M. Rooney) appear to have been at the same meeting. M. Rooney to "lead transaction status conference"; D. Simon attended the sale closing conference. (.5). Partners Pearlman (1.3) and Simon (.6) reviewed or analyzed the PH credit bid. Associate D. Golinghorst billed (.8) to review and analyze credit bid APA.

- On October 3, 2023, partners F. Pearlman, D. Simon prepared for the auction, while associate E. Kiel billed (1.5) hours for multiple conferences and correspondence re auction preparations.

- On October 4, 2023, three partners billed to prepare for and attend the auction and for "numerous meetings re same." F. Pearlman (8.0) hours. D. Simon (9.0) hours, and M. Rooney. (6.8) hours.

- On October 10, 2023, three partners billed to prepare for and participate for in the reconvened bankruptcy auction. F. Pearlman (2.7), D. Simon (3.5) M. Rooney (2.7). On October 11, 2023, the three partners all charged for analysis re sale and auction issues and review of sale documents. On October 16, 2023, Associate J. Haake billed (1.3) hours to "analyze sale hearing issues."

- Multiple attorneys also prepared for and participated in the October 27, 2023, auction.

- Multiple attorneys drafted, reviewed, and revised the credit bid closing checklist. For example, on 10/5/23 associate D. Golinghorst billed 3.5 hours related to the closing checklist and partner M. Rooney updated closing checklist. D. Golinghorst revised closing checklist for credit bid (1.3) hours. Partner M. Rooney updated the closing checklist. (1.5) hours. On 10/6/23 Golinghorst billed to drafted transaction closing checklist for credit bid for (2.0) hours and partner M. Rooney billed (1.0) to review and comment on the closing checklist.

- Multiple attorneys reviewed and revised the 9019 Motion, include J. Haack, E. Kiel, D. Simon, and F. Pearlman in early October 2023.

29. "Fees are not allowed for simply reviewing the work product of another or for duplicative billing by attorneys involved in intra-office conferences." *In re Agriprocessors, Inc.*, 2009 WL 4823808 at *2 (Bankr. N.D. Iowa Dec. 8, 2009). If multiple partners were indeed needed at each intra-office conference, the case law states the Applicant bears the burden of proving the specific expertise the additional participant provided. *See Pothoven*, 84 B.R. at 585 ("The bankruptcy estate should not bear the cost of compensating each attorney present at an intra-office conference unless counsel can show that the estate benefitted from each attorney's special area of expertise.").

30. Absent this additional analysis and explanation, the UST requests a reduction of the total fee award.

*Issues Regarding Benefit to the Estate*

31. The present Application contains a number of charges which do not on their face provide a benefit to the bankruptcy estate, a threshold requirement to be met for any payment to estate professionals.

32. Notably, On October 11, 2023, partner F. Pearlman charged (.3) hours to "review press releases re sales process" for a cost of $555.

33. On October 27, 2023, the court conducted a telephonic hearing regarding the application to appoint an ad hoc pensioner committee. D. Simon attended but did not participate in the issue before the court. Local counsel, K. Stanger, and R. Leaf, also attend the hearing. At the conclusion of the hearing, D. Simon announced that the University of Iowa was the winning bidder at the auction which had concluded that morning. He billed the estate for (1.5) hours for a total of ($2,175) for his time. The UST does not believe it is appropriate to bill the estate for attending the hearing to make an announcement when local counsel for a shared client was already attending and participating. The report of auction results was filed the same day.

34. The Third Application also includes charges of $17,901 for "Fee/Employment Applications." This amount and the time entries supporting this expense do not appear reasonable when the motions themselves have been largely the same pleadings for each of the Three Fee Applications, and time entries are presumably kept contemporaneously with task completion.

35. To the extent any of these charges are to support McDermott's fee application, they are not compensable under *Baker v. Botts*. 576 U.S. 121 (2015). Many of the entries do not provide enough detail in what "Fee/Employment Application" was being worked on, and as such the

UST cannot ascertain what exactly is compensable and what must be excluded under *Baker v. Botts. Id.*

*Vague Entries*

36. Vague time entries have been a consistent issue for all three Applications. These entries do not allow any party to complete a meaningful reasonableness analysis. For example, there are multiple entries by various attorneys to "Analyze sale and auction issue" and "" and "work on sale issues." It is unclear what service is being provided by counsel in these entries. There are also various entries regarding conferences re: "strategy issues re auction" again making it unclear the services being provided.

37. Examples of vague entries include on October 12, 2023, F. Pearlman billed (.6) to work on "sale hearing issue" and (1.3) hours to "follow up re closing timeline and open issues". On October 16, 2023, J. Haack billed (1.3) hours to "analyze sale hearing issues." The frequent use of the word "issue or issues" without identifying the issue makes it difficult to determine whether the work performed was reasonable, necessary or benefited the estate.

38. A new pattern in the Third Application is to include entries such as "Multiple communications re: sale" or…" multiple conferences and correspondence re auction" or "analysis and communications re auction sale" which does not allow the reader to ascertain who was involved in the conference or included in the correspondence or the appropriateness of the billing for such conferences and communications.

39. Notably, the details provided in the fee application setting out the names of the individuals participating in a particular conference, or the issues that are being addressed, have become progressively more opaque in each fee application.

40. "Courts may reject vague, incomplete, or imprecise time entries because they "preclude any meaningful review…of the fee application for "excessive, redundant, or otherwise unnecessary" hours that make it impossible to attribute a particular attorneys' specific time to a distinct issue or claims." *Frerichs v. Harford Life & Acc. Ins. Co.*, 2012 LEXIS 119214 at *5. (Dist. Minn, Aug. 28, 2012).

41. Finally, the Application reflects that that only 2.2 hour of travel were billed at the non-working rate of 50%.  McDermott should explain their billing practices to the court for working while on travel status.

## CONCLUSION

42. The applicant bears the burden of proving both the reasonableness and necessity of fees requested in the fee application. If a professional fails to meet this burden of proof under 11 U.S.C. §330(a), the bankruptcy court may award less than the amount of compensation that is requested.

43. The McDermott Third Fee Application totals $563,710.00 for fees for the month of October 2023.  The UST submits that the Fee Application is excessive for the reasons stated in this objection.

44. The UST reserves all rights to amend and supplement or modify each portion of this objection.

WHEREFORE, the Acting United States Trustee requests that the Court reduce the Third Fee Application by 20% absent further explanation requested and required above and Order McDermott to provide the billing entries for the voluntarily written off charges.

Dated: December 11, 2023

**Mary R. Jensen**
Acting United States Trustee
Region 12

By:/s/ Janet G. Reasoner
**Janet G. Reasoner**
111 7th Ave SE, Box 17
Cedar Rapids, Iowa 52404
Ph: (319) 364-2211
Janet.G.Reasoner@usdoj.gov

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated December 11, 2023.

By:/s/ Jennifer L. Cline
**Jennifer L. Cline**
Paralegal Specialist

United States Trustee's Office