IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY OF ORDER (I) EXPANDING THE SCOPE OF EMPLOYMENT AND RETENTION OF H2C SECURITIES, INC. AS INVESTMENT BANKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION, (II) APPROVING THE TERMS OF THE AMENDMENT TO THE H2C ENGAGEMENT LETTER, AND (III) GRANTING RELATED RELIEF**

Mercy Hospital, Iowa City, Iowa ("Mercy Hospital") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this amended application (the "Amended Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the relief described below.  In support of this Amended Application, the Debtors submit the *Supplemental Declaration of C. Richard Bayman in Support of Expanded Scope of Retention of H2C Securities, Inc.*, a copy of which is attached hereto as **Exhibit B** (the "Supplemental Bayman Declaration"). In further support of the Amended Application, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1. By the Amended Application, the Debtors seek entry of the Proposed Order authorizing the Debtors to employ and retain H2C Securities, Inc. ("H2C"), a subsidiary of Fifth Third Bank, National Association ("Fifth Third") as their investment banker on the expanded terms of engagement set forth in the *Third Amendment to the Engagement Agreement Dated June 17, 2021* (the "Amended Engagement Letter"). Under the Amended Engagement Letter, the Debtors

and H2C propose expanding the scope of the Debtors' retention of H2C to authorize H2C to provide various services to the Debtors related to their interests in Melrose Retirement Community, LLC ("Melrose"), Iowa City Ambulatory Surgical Center, LLC ("ICASC"), Progressive Rehabilitation Associates, LLC ("PRA"), and Central (Eastern) Iowa Rehabilitation Hospital, LLC ("Rehab Hospital" and, together with Melrose, ICASC, and PRA, the "Joint Ventures"). The Debtors believe that H2C's expertise and investment banking experience is critical to helping the Debtors quickly and efficiently monetize their interests in the Joint Ventures, thereby providing value to the Debtors' estates. Accordingly, the Debtors respectfully request that the Court approve their retention of H2C on the expanded terms and conditions set forth herein and in the Amended Engagement Letter, which *inter alia*, provide that H2C will be compensated in accordance with the JV Fee Structure (defined below) set forth in the Amended Engagement Letter and explained herein.

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Amended Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     The Debtors confirm their consent to the entry of a final order by the Court in connection with this Amended Application in the event that it is later determined that the Court,

2

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.    Chapter 11 Cases**

4.    On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

5.    The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.    On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023 the U.S. Trustee appointed an official committee of pensioners (the "Pension Committee") in the Chapter 11 Cases [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

7.    Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

**II.    Retention of H2C in the Chapter 11 Cases**

8.    On August 23, 2023, the Debtors filed *Debtors' Application for Entry of Order (I) Authorizing the Employment and Retention of H2C Securities Inc. as Investment Banker to the Debtors and Debtors-in-Possession, Nunc Pro Tunc to the Petition Date, (II) Approving the Terms*

*and the H2C Engagement Letter, (III) Waiving Certain Time-Keeping Requirements, and (IV) Granting Related Relief* [Docket No. 150] (the "H2C Application").

9.  On September 18, 2023, the Court entered an *Order (I) Authorizing the Employment and Retention of H2C Securities, Inc. as Investment Banker to the Debtors and Debtors-in-Possession, Nunc Pro Tunc to the Petition Date, (II) Approving the Terms of the H2C Engagement Letter, (III) Waiving Certain Time-Keeping Requirements, and (IV) Granting Related Relief* [Docket No. 247] (the "H2C Retention Order").

10. The H2C Retention Order generally authorized the Debtors to retain H2C *nunc pro tunc* to the Petition Date on the terms set forth therein and in accordance with the Engagement Letter (as defined in the H2C Application).

11. In particular, the H2C Retention Order authorized the Debtors to, among other things, retain H2C to advise and assist the Debtors in connection with a potential strategic transaction, including a merger, affiliation, partnership, or other type of combination with another health care provider (a "Strategic Transaction").

12. The terms of the H2C Retention Order, however, did not authorize H2C to be compensation or perform services with respect to the Joint Ventures.

**III.   Necessity for Expanded Scope of Retention to Monetize the Joint Venture Interests**

13. The Debtors are in the process of consummating the Strategic Transaction with the State University of Iowa (the "University"). *See* Docket No. 476.

14. The Debtors also hold interests in the Joint Ventures, which are not part of the Strategic Transaction.

15. The Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of H2C to assist them in pursuing transaction(s) related to

4

the Joint Ventures in order to maximize the value of the Debtors' Joint Venture interests for the benefit of the Debtors' estates in these Chapter 11 Cases. An investment banker such as H2C fulfills a critical service that complements and enhances the services provided by the Debtors' other professionals.

16. As set forth in the H2C Application, H2C is well qualified to serve as the Debtors' investment banker with respect to the Joint Ventures. H2C is a healthcare-focused strategic advisory and investment banking firm with experience in restructuring and distressed M&A and offices across the country in New York, Chicago, Atlanta, and San Diego. H2C is uniquely positioned to help the Debtors monetize their interests in the Joint Ventures given, among other things, their knowledge and experience related to the Debtors, their operations, and these Chapter 11 Cases. H2C has worked closely with the Debtors, their management, and their other advisors and is well acquainted with, among other things, the Debtors' operations, business needs, and capital structure. Thus, H2C is particularly well-suited to provide the investment banking services to the Debtors that are contemplated by the Amended Engagement Letter and described herein.

17. Moreover, the Committee, the Pension Committee, and Computershare Trust Company, N.A. and Preston Hollow Community Capital, Inc. (collectively, the "Secured Bondholder Representatives") have consented to the expanded scope of representation of H2C to assist the Debtors in monetizing the Joint Venture interests as well as the terms of compensation set forth in the Amended Engagement Letter.

**IV.    Expanded Scope of Employment**

18. Pursuant to the Amended Engagement Letter, in addition to continuing to advise the Debtors with respect to the Strategic Transaction on the terms set forth in the H2C Retention Order, the Debtors propose that H2C will advise and assist them in selling, transferring, or

5

otherwise monetizing their interests in the Joint Ventures. As part of its amended engagement and in addition to the Services (as defined in the H2C Application) related to the Strategic Transaction, H2C will undertake the following tasks (the "JV Services"):[1]

a) assist the Debtors in the review of the business and operations of the Debtors and their historical and projected financial condition;

b) assist the Debtors in preparing an informational disclosure package, as may be necessary and appropriate, describing the Debtors, their operations, their historical performance, and their future prospects for distribution to prospective parties;

c) assist the Debtors in formulating a marketing strategy for the Joint Venture interests, and in developing procedures and a timetable to execute the strategy, if applicable;

d) identify and manage communications with prospective parties;

e) assist the Debtors, as may be necessary and appropriate, in the preparation of a management presentation for prospective parties;

f) coordinate due diligence investigations of prospective parties;

g) assist in the evaluation of Joint Venture proposals received from prospective parties;

h) assist the Debtors in negotiating financial aspects of the disposition of Joint Venture interests, including advise as to the strategy and tactics of negotiations with prospective partners;

i) meet with the Board of Directors, if requested, to discuss the Joint Ventures and financial implications related thereto;

j) provide other customary and appropriate financial advisory services as are mutually agreed in writing by H2C and the Debtors from time to time;

---

[1] The summary provided herein is for illustrative purposes only and is subject to the Amended Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Amended Engagement Letter, the Amended Engagement Letter will control. The Amended Engagement Letter may be amended from time to time to modify the scope of services to reflect the requirements of the Debtors based upon the circumstances of the Chapter 11 Cases. Capitalized terms not otherwise defined in such summary shall have the meanings ascribed to them in the Amended Engagement Letter.

k) review the Debtors' capital structure to obtain an understanding of constituent stakeholders, unencumbered assets, and liabilities of the Debtors;

l) interact and negotiate with all key stakeholders;

m) assist the Debtors with bankruptcy reporting requirements in coordination with the Debtors' financial advisor and other advisors;

n) participate in hearings before the Court with respect to the matters upon which H2C has been engaged pursuant to the Amended Engagement Letter, including testifying at any hearing or deposition in the Chapter 11 Cases relating to the Joint Ventures;

o) cooperate with any third-party consultants retained by the Debtors and/or outside bankruptcy counsel in connection with the bankruptcy, regarding matters related to the services provided by H2C pursuant to the Amended Engagement Letter;

p) advise and assist the Debtors and counsel in developing a timeline and milestones related to a sale of the Debtors' interests in the Joint Ventures;

q) assist in the coordination of all activities related to closing any sale of the Joint Venture interests; and

r) provide additional advisory services mutually agreed upon between the Debtors and H2C that is usual and customary in a bankruptcy.

19. For the avoidance of doubt, H2C will continue to perform the Services approved by the Court in the H2C Retention Order and seek compensation for those Services as set forth therein. This Amended Application seeks only to add the JV Services to the scope of H2C's engagement and for H2C to be compensated for those JV Services in accordance with the JV Fee Structure.

20. The Debtors believe that H2C is well qualified and able to provide the foregoing services to the Debtors. H2C has indicated a willingness to act on behalf of the Debtors, on the terms described herein. Further, as noted above, H2C has been instrumental in assisting the Debtors in analyzing, negotiating, and documenting the current Strategic Transaction with the

University and is working closely with the Debtors and the University regarding various issues in connection with consummating the Strategic Transaction.

21.     The H2C Retention Order has already set forth the terms of H2C's proposed compensation in these Chapter 11 Cases. Pursuant to this Amended Application, H2C and the Debtors seek to amend and expand the terms of the H2C Compensation Order to include compensation and reimbursement of expenses sought in connection with the monetization of the Debtors' Joint Venture interests, in addition to the Fee Structure (as defined in the H2C Retention Order) already approved by this Court (the "JV Fee Structure"). H2C's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with the Amended Fee Structure, which have been negotiated between H2C, the Debtors, the Committee, and the Secured Bondholder Representatives.

22.     In summary, the JV Fee Structure provides that the Debtors shall pay H2C the following fees:[2]

    a)    **Initial Fee**. As compensation for certain of the JV Services, an initial fee of $50,000.00 payable upon execution and approval of the Amended Engagement Letter.

    b)    **Success Fees**. If a disposition of any Joint Venture interest is consummated, the Debtors will pay the following (the "JV Success Fees"):

        (1)    A success fee equal to 2.0% of the Proceeds[3] of any Joint Venture disposition, plus[4]

---

[2] The summary provided herein is for illustrative purposes only and is subject to the Amended Engagement Letter in all respects. In the event of any inconsistency between the Amended Fee Structure as set forth herein and the Amended Engagement Letter, the Amended Engagement Letter will control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Amended Engagement Letter.

[3] As defined in the Amended Engagement Letter.

[4] In the event that any Joint Venture disposition is delayed due to regulatory requirements, governmental review or similar actions, the specific Joint Venture disposition shall be deemed to have closed and Proceeds received in the month which the respective definitive agreement was executed.

    a.  An incentive fee equal to 1.75% of Proceeds received in January 2024, plus

    b.  An incentive fee equal to 1.25% of Proceeds received in February 2024, plus

    c.  An incentive fee equal to 0.75% of Proceeds in March 2024.

  c) **Monthly Fee**. The $25,000.00 Monthly Fee (as defined in the H2C Application) payable monthly on the 1st day of each month shall be extended until the earlier of i) all Joint Venture transactions are closed, or ii) the engagement with H2C is otherwise terminated.

Except to the extent set forth herein and in the Amended Engagement Letter, the compensation terms approved by the Court in the H2C Retention Order shall continue to govern.

  23. The Debtors believe the JV Fee Structure is consistent with and typical of compensation arrangements entered into by H2C and other comparable firms in connection with the rendering of similar services under similar circumstances. H2C's strategic and financial advisory expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, and the agreement of the Committee and Secured Bondholder Representatives were all important factors in determining the JV Fee Structure. The Debtors believe that the ultimate benefit of H2C's services cannot be measured by reference to the number of hours to be expended by H2C's professionals in the performance of such services. Indeed, the Debtors and H2C have agreed upon the JV Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of H2C and its professionals in connection with these cases and in light of the fact that: (a) such commitment may foreclose other opportunities for H2C and (b) the actual time and commitment required of H2C and its professionals to perform its services under the Amended Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for H2C.

24. In light of the foregoing and given the numerous issues that H2C may be required to address in the performance of its services hereunder, H2C's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for H2C's services for engagements of this nature both in- and out-of-court and in the chapter 11 context, the Debtors believe that the JV Fee Structure is fair, reasonable, and market-based under the standard set forth in Bankruptcy Code section 328(a).

25. The terms of the Indemnification Agreement (as defined in the H2C Application) with the limitations set forth in the H2C Retention Order would continue to apply to H2C's expanded scope of representation involving the JV Services. Additionally, H2C would continue to adhere to the limited record keeping requirements set forth in the H2C Retention Order with respect to the JV Services. Finally, H2C would seek compensation and expense reimbursement from the Debtors for performance of the JV Services (in accordance with the JV Fee Structure) in accordance with the terms set forth in the H2C Retention Order.

26. The Debtors intend that the JV Services to be rendered by H2C will not duplicate the services to be rendered by any other professional retained by the Debtors in these Chapter 11 Cases. The Engagement Letter (as defined in the H2C Application) reflects H2C's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request H2C will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

**V.    H2C's Continuing Disinterestedness**

27. H2C has performed a supplemental check to ensure that it can advise the Debtors with respect to the Joint Ventures.

28. H2C has informed the Debtors that H2C: (a) does not hold any interest adverse to the Debtors' estates; and (b) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Code section 1107(b), as required by Bankruptcy Code section 327(a). If any new material facts or relationships are discovered or arise, H2C will inform the Court as required by Bankruptcy Rule 2014(a).

29. Accordingly, to the best of the Debtors' knowledge, information, and belief (which in each case is based in reliance on the representations made to the Debtors by H2C in the Bayman Declaration (as defined in the H2C Application) and the Supplemental Bayman Declaration, the Debtors believe that H2C is disinterested and holds no materially adverse interest as to the matters upon which to be retained in these Chapter 11 Cases.

**BASIS FOR RELIEF REQUESTED**

30. Bankruptcy Code section 327(a) authorizes a debtor-in-possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, H2C satisfies the disinterestedness standard of Bankruptcy Code section 327(a).

31. The Debtors seek approval of the Amended Engagement Letter, including the JV Fee Structure set forth therein, pursuant to Bankruptcy Code section 328(a) and an order expanding H2C's scope of representation to include the JV Services. Bankruptcy Code section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

32. Bankruptcy Code section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their

11

services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations omitted).

33. As set forth above, notwithstanding approval of the Amended Engagement Letter under Bankruptcy Code section 328(a), H2C intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the H2C Retention Order, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the JV Fee Structure set forth in the Amended Engagement Letter.

34. The Debtors believe that the JV Fee Structure appropriately reflects the nature and scope of services to be provided by H2C related to the Joint Ventures, H2C's substantial experience with respect to investment banking services, and the fee structures typically utilized by H2C and other leading investment banks that do not bill their client on an hourly basis. In agreeing to seek H2C's retention under Bankruptcy Code section 328(a), the Debtors acknowledge that: (a) they believe that H2C's general restructuring experience and expertise, its knowledge of the capital markets, and its knowledge and experience with the Debtors and their operations will inure to the benefit of the Debtors in pursuing any disposition of the Debtors' Joint Venture interests; (b) the

value to the Debtors of H2C's services under the Amended Engagement Letter derives in substantial part from that expertise and experience; (c) accordingly, the JV Fee Structure is reasonable regardless of the number of hours to be expended by H2C's professionals in the performance of the services to be provided under the Amended Engagement Letter; and (d) any deferred fees earned by H2C pursuant to the Amended Engagement Letter should not be considered to be "bonuses" or fee enhancements under applicable law.

35. In light of the foregoing, the agreement of the Committee and Secured Bondholder Representatives with the terms of the Amended Engagement Letter, as a matter of fundamental fairness, and given the numerous issues that H2C may be required to address in the performance of the JV Services, H2C's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for H2C's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in Bankruptcy Code section 328(a).

## NOTICE

36. The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department of Revenue; (d) the United States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid Services; (f) counsel to the Committee; (g) counsel for the Secured Bondholder Representative; (h) the Federal Trade Commission; and (i) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Amended Application has been made to this or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Cedar Rapids, Iowa
December 29, 2023

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-283-3100
Fax:  515-283-8045
Email: mmcguire@nyemaster.com
       kmstanger@nyemaster.com
       dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        fperlman@mwe.com
              dsimon@mwe.com
              ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:  (214) 295-8000
Facsimile:  (972) 232-3098
Email:      jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this December 29, 2023, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

*/s/ Roy Leaf*

15