# EXHIBIT B
## Supplemental Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |

### SUPPLEMENTAL DECLARATION OF C. RICHARD BAYMAN IN SUPPORT OF EXPANDED SCOPE OF RETENTION OF H2C SECURITITES, INC.

I, C. Richard Bayman, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a Managing Director of H2C Securities, Inc. ("H2C"), a subsidiary of Fifth Third Bank, National Association ("Fifth Third"), and am authorized to execute this declaration (this "Declaration") on behalf of H2C.

1. I have been employed by H2C for over twenty years and have been involved in the investment banking industry since 2000.

2. H2C maintains offices at: 222 S. Riverside Plaza, 32nd Floor, Chicago, Illinois 60606; 623 Fifth Avenue, 29th Floor, New York, New York 10022; 3344 Peachtree Road Northeast, Suite 900, Atlanta, Georgia 30326; and 4655 Executive Drive, Suite 280, San Diego, California 92121.

3. I submit this Declaration in support of the *Debtors' Application for Entry of Order (I) Expanding the Scope of Employment and Retention of H2C Securities, Inc. as Investment*

*Banker to the Debtors and Debtors-in-Possession, (II) Approving the Terms of the Amendment to the H2C Engagement Letter, and (III) Granting Related Relief* (the "Amended Application").[1]

4. Unless stated otherwise, I have personal knowledge of the facts set forth in this Declaration.

5. I explicitly incorporate herein the *Declaration of C. Richard Bayman in Support of Retention of H2C Securities, Inc.* I filed in this case in support of the H2C Application.

## EXPANDED SCOPE OF ENGAGEMENT

**I.  The Joint Ventures**

6. I understand that the Debtors hold interests in the Joint Ventures, each of which may have value to the Debtors' estates.

7. The H2C Retention Order only authorizes H2C's retention with respect to a Strategic Transaction, but not with respect to the Joint Ventures.

8. I understand that the Debtors require the services of an investment banking firm to assist it with monetizing the Debtors' interests in the Joint Ventures. The Debtors have asked H2C to provide such services with respect to the Joint Ventures.

9. H2C is well qualified to serve as the Debtors' investment banker with respect to the Joint Ventures. H2C is a healthcare-focused strategic advisory and investment banking firm with experience in restructuring and distressed M&A and offices across the country in New York, Chicago, Atlanta, and San Diego. H2C is uniquely positioned to help the Debtors monetize their interests in the Joint Ventures given, among other things, their knowledge and experience related to the Debtors, their operations, and these Chapter 11 Cases. H2C has worked closely with the

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Amended Application.

2

Debtors, their management, and their other advisors and is well acquainted with, among other things, the Debtors' operations, business needs, and capital structure.

10. As a result of H2C's prepetition work with the Debtors and work involving the Strategic Transaction performed on behalf of the Debtors and the significant knowledge gained thereby, H2C has developed relevant experience and expertise regarding the Debtors that (a) makes H2C a natural selection as the Debtors' investment banker for the Debtors' interests in the Joint Ventures and (b) will allow H2C to provide effective and efficient JV Services to the Debtors in these Chapter 11 Cases.

11. I understand from conversations with representatives for the Committee, the Pension Committee, and Secured Bondholder Representatives that these parties do not object to H2C's retention on the terms of the Amended Engagement Letter.

## II. Expanded Scope of Employment

12. A true and correct copy of the Amended Engagement Letter is attached hereto as **Exhibit 1** and incorporated herein.[2]

13. As part of its amended engagement and in addition to the Services (as defined in the H2C Application) related to the Strategic Transaction, H2C will undertake the following tasks (the "JV Services"):

    a) assist the Debtors in the review of the business and operations of the Debtors and their historical and projected financial condition;

    b) assist the Debtors in preparing an informational disclosure package, as may be necessary and appropriate, describing the Debtors, their operations, their

---

[2] The summary provided herein is for illustrative purposes only and is subject to the Amended Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Amended Engagement Letter, the Amended Engagement Letter will control. The Amended Engagement Letter may be amended from time to time to modify the scope of services to reflect the requirements of the Debtors based upon the circumstances of the Chapter 11 Cases. Capitalized terms not otherwise defined in such summary shall have the meanings ascribed to them in the Amended Engagement Letter

3

        historical performance, and their future prospects for distribution to prospective parties;

c)     assist the Debtors in formulating a marketing strategy for the Joint Venture interests, and in developing procedures and a timetable to execute the strategy, if applicable;

d)     identify and manage communications with prospective parties;

e)     assist the Debtors, as may be necessary and appropriate, in the preparation of a management presentation for prospective parties;

f)     coordinate due diligence investigations of prospective parties;

g)     assist in the evaluation of Joint Venture proposals received from prospective parties;

h)     assist the Debtors in negotiating financial aspects of the disposition of Joint Venture interests, including advise as to the strategy and tactics of negotiations with prospective partners;

i)     meet with the Board of Directors, if requested, to discuss the Joint Ventures and financial implications related thereto;

j)     provide other customary and appropriate financial advisory services as are mutually agreed in writing by H2C and the Debtors from time to time;

k)     review the Debtors' capital structure to obtain an understanding of constituent stakeholders, unencumbered assets, and liabilities of the Debtors;

l)     interact and negotiate with all key stakeholders;

m)     assist the Debtors with bankruptcy reporting requirements in coordination with the Debtors' financial advisor and other advisors;

n)     participate in hearings before the Court with respect to the matters upon which H2C has been engaged pursuant to the Amended Engagement Letter, including testifying at any hearing or deposition in the Chapter 11 Cases relating to the Joint Ventures;

o)     cooperate with any third-party consultants retained by the Debtors and/or outside bankruptcy counsel in connection with the bankruptcy, regarding matters related to the services provided by H2C pursuant to the Amended Engagement Letter;

p)     advise and assist the Debtors and counsel in developing a timeline and milestones related to a sale of the Debtors' interests in the Joint Ventures;

q) assist in the coordination of all activities related to closing any sale of the Joint Venture interests; and

r) provide additional advisory services mutually agreed upon between the Debtors and H2C that is usual and customary in a bankruptcy

14. For the avoidance of doubt, H2C will continue to perform the Services approved by the Court in the H2C Retention Order and seek compensation for those Services as set forth therein. This Amended Application seeks only to add the JV Services to the scope of H2C's engagement and for H2C to be compensated for those JV Services in accordance with the JV Fee Structure.

15. Pursuant to the terms and conditions of the Amended Engagement Letter and subject to the Court's approval in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders of the Court, H2C intends to seek the following compensation from the Debtors during the Chapter 11 Cases for work performed related to the Joint Ventures, in addition to the compensation authorized as part of the Fee Structure: (a) payment of an Initial Fee, (b) payment of the JV Success Fee, and (c) continued payment of the Monthly Fee following closing of the Strategic Transaction.

16. With respect to the Initial Fee, the Amended Engagement Letter provides for payment of an initial fee of $50,000.00 payable upon execution and approval of the Amended Engagement Letter.

17. With respect to the JV Success Fees, the Amended Engagement Letter provides for payment of the following JV Success Fees if a disposition of any Joint Venture interest is consummated:

5

    (i) A success fee equal to 2.0% of the Proceeds[3] of any Joint Venture disposition, plus[4]

      a. An incentive fee equal to 1.75% of Proceeds received in January 2024, plus

      b. An incentive fee equal to 1.25% of Proceeds received in February 2024, plus

      c. An incentive fee equal to 0.75% of Proceeds in March 2024

18. The $25,000.00 Monthly Fee (as defined in the H2C Application) payable monthly on the 1st day of each month shall be extended until the earlier of i) all Joint Venture transactions are closed, or ii) the engagement with H2C is otherwise terminated.

19. Except to the extent set forth herein and in the Amended Engagement Letter, the compensation terms approved by the Court in the H2C Retention Order shall continue to govern.

20. I believe the terms and conditions set forth in the Amended Engagement Letter are reasonable and fairly compensate H2C given, among other things: (a) H2C may be foreclosed from pursuing other alternative engagement opportunities, in order to ensure the availability of all necessary professional resources for the Debtors; (b) the numerous issues which can currently be anticipated in providing services to the Debtors in these Chapter 11 Cases; (c) H2C's commitment to the variable level of time and effort necessary to provide the services necessary for the Debtors' successful monetization of the Joint Venture interests; (d) the expertise and capabilities of H2C that will be required in providing services to the Debtors in these Chapter 11 Cases; (e) the agreement of the major economic stakeholders in these Chapter 11 Cases; and (f) the market rate for H2C's services of the nature being provided to the Debtors, whether in-court or out-of-court.

---

[3] As defined in the Amended Engagement Letter.

[4] In the event that any Joint Venture disposition is delayed due to regulatory requirements, governmental review or similar actions, the specific Joint Venture disposition shall be deemed to have closed and Proceeds received in the month which the respective definitive agreement was executed

6

21. Moreover, the terms and conditions set forth in the Amended Engagement Letter take into consideration H2C's and the Debtors' understanding that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by H2C, and may result in substantially more work and/or services being performed by H2C than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of H2C's services may also be substantially more beneficial to the Debtors than already anticipated.

22. The terms of the Indemnification Agreement (as defined in the H2C Application) with the limitations set forth in the H2C Retention Order would continue to apply to H2C's expanded scope of representation involving the JV Services.

23. Additionally, H2C would continue to adhere to the limited record keeping requirements set forth in the H2C Retention Order with respect to the JV Services.

24. Finally, H2C would seek compensation and expense reimbursement from the Debtors for performance of the JV Services (in accordance with the JV Fee Structure) in accordance with the terms set forth in the H2C Retention Order.

25. H2C has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Cases, other than as permitted pursuant to Bankruptcy Code section 504. No promises have been received by H2C or any member, associate, or other employee of H2C as to payment or compensation in connection with the Chapter 11 Cases, other than in accordance with the Bankruptcy Code, Bankruptcy Rules, and U.S. Trustee Fee Guidelines.

26. Consistent with the U.S. Trustee Fee Guidelines, I state as follows:

   a. H2C has not agreed to a variation of its standard or customary billing arrangements for the Joint Ventures;

  b.  H2C has not varied any of its fees based on the geographic location of the Chapter 11 Cases; and

  c.  H2C was retained by the Debtors pursuant to the Engagement Letter and Amended Engagement Letter, and the (i) material terms of the prepetition engagement are the same as the terms described in the Application and this declaration and (ii) the fees have not changed.

### H2C'S DISINTERESTEDNESS

27. In connection with its proposed retention by the Debtors in the Chapter 11 Cases related to the Joint Ventures, H2C obtained from the Debtors and/or their representatives the names of individuals and entities related to the Joint Ventures (the "Potential Interested JV Parties"), reflected on the list attached hereto as **Exhibit 2**. H2C compared each of the Potential Interested JV Parties to names that H2C maintains in its client database and circulated the list of Potential Interested JV Parties to all of its professionals, who were required to disclose any actual or potential conflicts of interest as part of H2C's normal conflicts screening process. As noted herein, H2C is a subsidiary of Fifth Third. Accordingly, the conflicts screening process included Fifth Third's potential conflicts to the extent of corporate entities. Fifth Third is legally prohibited from publicly disclosing individual relationships with its current or former customers due to various banking regulations.

28. To the best of my knowledge, information, and belief, (a) H2C has no connection with the Joint Ventures, other than with regards to the Debtors in the Chapter 11 Cases, (b) H2C does not represent and has not represented, any entity related to the Joint Ventures other than the Debtors in the Chapter 11 Cases, (c) H2C does not have any connection with the Joint Ventures or their partners _other than_ with LifePoint Health, which is the parent company of Kindred Development 7, LLC and to whom Fifth Third has a lending relationship, (d) H2C and its professionals are not creditors, equity or security holders, or insiders of any of the Joint Ventures or their partners _other than_ with LifePoint Health, which is the parent company of Kindred

8

Development 7, LLC and to whom Fifth Third has a lending relationship, and (e) neither H2C nor any of its professionals is or was, within two years of the Petition Date, a director, officer or employee of any of the Joint Ventures or their partners.

29. H2C provides investment banking services to an array of clients on mergers and acquisitions, divestitures, special committee assignments, recapitalizations, restructurings and other strategic transactions. As a result, H2C has represented, and may in the future represent, certain Potential Interested JV Parties in matters unrelated to these Chapter 11 Cases, either individually or as part of representation of a committee of creditors or interest holders. Fifth Third is a large commercial bank that may have commercial and customer relationships with Potential Interested Parties unrelated to these Chapter 11 Cases. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

30. To the best of my knowledge and belief, I am unaware of any current investment banking engagements of H2C by the Potential Interested JV Parties and neither H2C nor I, nor any other employee of H2C that will work on the Debtors' engagement, has any connection with or holds interest adverse to the Debtors, their estates, or the Potential Interested JV Parties, except as otherwise set forth below:

    a) H2C is a large investment banking firm and Fifth Third is a large commercial bank. They have likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors and who may be creditors of the Debtors. Indeed, given the size and the breadth of H2C's client base, it is possible that H2C may now or in the future be retained by one or more of the Potential Interested JV Parties in unrelated matters without my knowledge. To the best of my knowledge, information, and belief, H2C's and Fifth Third's services to these parties did not and do not specifically relate to, or have any direct connection with the Debtors, their estates, or these Chapter 11 Cases.

9

b) As part of its diverse practice, H2C appears in numerous cases, proceedings and transactions involving attorneys, accountants, investment bankers, financial advisors and financial consultants, some of whom may represent claimants and parties-in-interest in these Chapter 11 Cases. Furthermore, H2C has in the past been, and may in the future be, represented by attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, H2C has in the past worked, and likely will in the future be working, with or opposite other professionals involved in these Chapter 11 Cases in matters unrelated to these Chapter 11 Cases. Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these business relationships constitute interests materially adverse to the Debtors in the matters upon which H2C is to be employed.

c) As set forth herein, Fifth Third may have mortgages, consumer or commercial loans, investment, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are creditors, equity holders or other parties-in-interest in these Chapter 11 Cases or with funds sponsored by or affiliated with such parties. H2C does not believe that these relationships create a conflict of interest regarding the Debtors or their Chapter 11 Cases.

d) Certain professionals employed by H2C may, directly or indirectly, hold debt or equity securities issued by, or other economic interests in, creditors, equity holders or other parties-in-interest in these Chapter 11 Cases. To the best of my knowledge, (i) none of these professionals' holdings would be considered material from the perspective of the issuers of such securities, and (ii) no professional employed by H2C holds a material interest in debt or equity securities issued by the Debtors.

e) Certain professionals presently employed by H2C were formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, the creditors, equity holders or other parties-in-interest in these Chapter 11 Cases. While employed by other firms, certain professionals presently employed by H2C may have represented creditors, equity holders or other parties-in-interest in these Chapter 11 Cases in connection with matters unrelated to the Debtors and the Chapter 11 Cases. H2C does not believe that these matters create a conflict of interest regarding the Debtors or the Chapter 11 Cases.

31. To the best of my knowledge, information and belief, except as set forth above and subject to the information set forth elsewhere in this Declaration, H2C has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection

10

with, these Chapter 11 Cases. H2C will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these Chapter 11 Cases; *provided* that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors. To the extent that H2C discovers any, or enters into any new, material relationship with Potential Interested JV Parties, H2C will supplement this Declaration.

32. Accordingly, which respect to the Joint Ventures, based upon information available to me at this time, I believe H2C is a "disinterested person," pursuant to Bankruptcy Code section 101(14), and that H2C and its professionals and employees who will work on the engagement:

(a) are not creditors, equity security holders, or insiders of the Debtors;

(b) were not, within two years before the date of filing of the Chapter 11 Cases, a director officer, or employee of the Debtors; and

(c) do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

33. This Declaration constitutes the statement of H2C, pursuant to Bankruptcy Code sections 328(a), 329, and 504 and Bankruptcy Rules 2014(a) and 2016(b).

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 29, 2023

By: /s/ *C. Richard Bayman*
Name: C. Richard Bayman
Title: Managing Director
H2C Securities, Inc.

11

## Exhibit 1

**Amended Engagement Letter**



ATLANTA   CHICAGO   **NEW YORK**   SAN DIEGO

623 Fifth Avenue, 29th Floor
New York, NY 10022

h2c.com
T 212.257.4500

December 18, 2023

Mr. Tom Clancy
Chief Executive Officer
Mercy Hospital Iowa City
500 E. Market Street
Iowa City, IA 52245

Re: Third Amendment to the Engagement Agreement Dated June 17, 2021, First Amendment dated November 15, 2022 and Second Amendment dated August 1, 2023

Dear Tom:

This letter agreement (the "Third Amendment") serves as an amendment to the Engagement Agreement dated June 17, 2021 (the "Agreement"), the Amendment dated November 15, 2022 (the "First Amendment"), and the Amendment dated August 1, 2023 ("Second Amendment") by and between Mercy Hospital Iowa City (the "Company") and H2C Securities, Inc. ("H2C") whereby Section 2 (Fee Schedule) of the First Amendment and Second Amendment shall be amended as described herein.  Except as otherwise provided in this Third Amendment, the terms of the Agreement, First Amendment, and Second Amendment shall remain in full force and effect.  All capitalized terms used in this Third Amendment and not otherwise defined herein shall be given the meanings assigned to them in the Agreement.

Section 2 "Fee Schedule" shall be amended by adding the following:

1. Section 2 shall be further amended by adding a new section entitled "2.h Joint Venture Fees" containing the following language: "Upon the execution of the Third Amendment, the Company shall pay to H2C the amounts at the times outlined below in relation to the sale of the Company's interest in Melrose Retirement Community, LLC ("Melrose"), Iowa City Ambulatory Surgical Center, LLC ("ICASC"), Progressive Rehabilitation Associates, LLC ("PRA"), and Central (Eastern) Iowa Rehabilitation Hospital, LLC ("Rehab Hospital") (collectively, the Joint Ventures"). The fees are in addition to, not in lieu of any fees previously outlined in the Agreement, First Amendment, and Second Amendment.

    a. Initial Fee of $50,000 payable upon execution of the Third Amendment, plus
    b. Success Fee equal to 2.0% of Proceeds, plus
    c. Incentive Fee equal to 1.75% of Proceeds received in January 2024, plus
    d. Incentive Fee equal to 1.25% of Proceeds received in February 2024, plus
    e. Incentive Fee equal to 0.75% of Proceeds in March 2024
    f. In the event, any Joint Venture Transaction is delayed due to regulatory requirements, governmental review or similar actions, the specific Joint Venture Transaction shall be deemed to

H2C Securities Inc.  |  h2c.com                                           +The Elements of Capital and Strategy

Securities and services offered through H2C Securities Inc., member FINRA/SIPC, a registered broker-dealer and an indirect subsidiary of Fifth Third Bank, National Association. All rights reserved. Securities and services offered through H2C Securities Inc.: **Are Not FDIC Insured  |  Offer No Bank Guarantee  |  May Lose Value  |  Are Not Insured by any Federal Government Agency  |  Are Not a Deposit**

Classification: Internal Use

*Mercy Iowa City Engagement Agreement – Amendment III*
*December 18, 2023*
*Page 2*

    have Closed and sale proceeds received in the month which the respective definitive agreement was executed.

g.    The $25,000 monthly Work Fee payable monthly on the 1st day of each month (outlined in section 2.a of the Second Amendment) shall be extended until the earlier of i) all Joint Venture transactions are closed, or ii) the engagement is otherwise terminated.

h.    <u>Proceeds.</u>  For the purpose of calculating the Success Fee and Incentive Fee related to a Joint Venture Transaction, "Proceeds" means: (i) the aggregate Consideration paid to (or received by), directly or indirectly, the Company and/or its securityholders, employees, or creditors in connection with any Joint Venture Transaction and regardless of how allocated or the form of consideration.

i.    For purposes of this Third Amendment, "Consideration", includes (without limitation), (i) cash; (ii) notes, securities, and other property valued at the fair market value thereof as determined by H2C and the Company as outlined below; (iii) all amounts paid or to paid into escrow; (iv)  payments to be made in installments; (v) the full amount of earn-outs and other amounts payable contingent upon future events, (collectively, this clause v, "Future Contingent Payments")  (vi) amounts paid or payable under consulting agreements, agreements not to compete, or similar arrangements (including such payments to management) other than amounts paid under employment and consulting agreements that represent fair value for services actually rendered by the employee or consultant; (vii) the net present value of any lease payments with respect to the leasing of the Company's business or property in lieu of or in conjunction with an actual purchase; (viii) any assets of the Company or its affiliates that are paid in the form of dividends, distributions, partial or total liquidating distributions, or otherwise, and the value of any stock redemptions or repurchases, in each case, in connection with the Transaction (other than normal recurring cash dividends in the ordinary course of business in an amount consistent with recent past practice); and (ix) the value of any reinvestment or "rollover" by any existing securityholders."

This Third Amendment shall only serve to amend and modify the Agreement, the First Amendment, and the Second Amendment to the extent specifically provided herein. All terms, conditions, provisions and references of and to the Agreement which are not specifically modified and/or amended herein shall remain in full force and effect and shall not be altered by any provisions herein contained.  On and after the date of this Third Amendment, each reference in the Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import, and each reference to the Agreement in any other agreements, documents or instruments executed and delivered pursuant to the Agreement, shall mean and be a reference to the Agreement, as amended by the First Amendment, Second Amendment, and Third Amendment.

This Third Amendment shall be read and construed as a single document with the Agreement, First Amendment, and Second Amendment and shall be governed by the terms and conditions of the Agreement, as amended hereby.

If the foregoing correctly sets forth the understanding and agreement between H2C and the Company, please so indicate in the space provided for that purpose below, whereupon this letter shall constitute a binding agreement as of the date hereof.

This Third Amendment may be signed in counterparts (which may include counterparts signed or delivered electronically or by any standard form of telecommunication), each of which shall be an original and all of which together shall constitute one and the same instrument.

**H2C Securities Inc. | h2c.com**    **+The Elements of Capital and Strategy**

Securities and services offered through H2C Securities Inc., member FINRA/SIPC, a registered broker-dealer and an indirect subsidiary of Fifth Third Bank, National Association. All rights reserved. Securities and services offered through H2C Securities Inc.: **Are Not FDIC Insured | Offer No Bank Guarantee | May Lose Value | Are Not Insured by any Federal Government Agency | Are Not a Deposit**

Classification: Internal Use

*Mercy Iowa City Engagement Agreement – Amendment III*
*December 18, 2023*
*Page 3*

## H2C SECURITIES, INC.

By: _____

C. Richard Bayman
Managing Director


AGREED:

**MERCY HOSPITAL IOWA CITY**

By: _____
Name:   Tom Clancy
Title:    Chief Executive Officer

Securities and services offered through H2C Securities Inc., member FINRA/SIPC, a registered broker-dealer and an indirect subsidiary of Fifth Third Bank, National Association. All rights reserved. Securities and services offered through H2C Securities Inc.: Are Not FDIC Insured | Offer No Bank Guarantee | May Lose Value | Are Not Insured by any Federal Government Agency | Are Not a Deposit

Classification: Internal Use

**Exhibit 2**

**Potential Interested JV Parties**

**Mercy Hospital, Iowa City, Iowa** *et al.*
**Potential Interested JV Parties**

RMS HOLDINGS, PC
KINDRED DEVELOPMENT 7, LLC
LIFEPOINT HEALTH
JOHNSON COUNTY SURGEON INVESTORS, LLC
NEWBURY DEVELOPMENT COMPANY
PROGRESSIVE PHYSICAL THERAPY AND SPORT CLINIC OF IOWA