IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) ) ) | Case No. 23-00623 (TJC) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING AND AUTHORIZING SETTLEMENT RELATED TO CERTAIN EMPLOYEES' REPAYMENT OF SIGN-ON BONUSES**

Mercy Hospital, Iowa City, Iowa ("Mercy" or the "Hospital") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the relief described below. In support thereof, Mercy respectfully represents as follows:

**RELIEF REQUESTED**

1. By the Motion, Debtors respectfully request the entry of the Proposed Order approving the terms of the Settlement Agreement between Debtor Mercy and Jessica L. Frana attached hereto as **Exhibit B**; and (b) authorizing the Debtors to compromise or settle the class of similar controversies between the Debtors and other employees related to breach of employment agreements and recovery of sign-on bonuses without further notice or hearing.

2. The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Public Administrative Order referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

1

3.  The legal predicates for the relief requested herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### I. Mercy Offers Sign-On Bonuses On The Condition The Employees Work For Mercy For At Least Two Years.

4.  Mercy entered into an employment agreement (the "Agreement") with Jessica L. Frana ("Frana") effective on or before February 1, 2023.

5.  The Agreement provided, in relevant part, that Mercy would pay Frana a "signing/starting bonus equal to a total of Thirteen Thousand Five Hundred Dollars, ($13,500.00), less applicable withholdings, payable to provider [(Frana)] in two equal installments."

6.  Frana's first day of work at Mercy was on or about February 1, 2023.

7.  Mercy performed under the Agreement by paying Frana the sign-on bonus of $13,500.00 in two installments.

8.  The Agreement provided that after Frana's start date, "[e]ither party may unilaterally terminate this Agreement without cause at any time." However, in the event of termination prior to the second anniversary of her employment, the agreement provided that Frana was responsible to repay Mercy a pro-ration of her sign-on bonus:

> In the event provider's employment is terminated prior to the second anniversary of his/her start date *for any reason other than Mercy Iowa city's insolvency*, APP's death or disability, APP *shall be required to repay all or a portion of signing/starting bonus inclusive of wage withholdings*. The repayment shall be determined by the number of months remaining between the APP's termination of employment and the second anniversary of the Start Date, with any partial months being considered a full month for the purposes of determining a repayment amount. In the event APP is required to repay any amounts hereunder, he/she agrees such amounts are due immediately on the effective date of APP's termination of employment, *any amounts due hereunder may be withheld from compensation* owed by APP by Mercy Iowa City, and APP will cooperate with Mercy Iowa City in completing documentation required for tax purposes. APP shall be responsible

for all costs incurred by Mercy Iowa City in collecting amounts due from Physician pursuant to this subsection including reasonable attorney's fees and court costs.[1]

9. Under the Agreement, Frana was eligible to retain her entire sign-on bonus if she remained working at Mercy from her start date through February 1, 2025 (the "Bonus Date").

10. Mercy entered into similar employment agreements with other employees.

II. **The Chapter 11 Cases**

A. **Overview**

11. On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

12. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

13. On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed the Committee in the Chapter 11 Cases [Docket No. 107]. No trustee or examiner has been appointed in the Chapter 11 Cases.

14. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

---

[1] The term "APP" in **Exhibit A** refers to the applicant for employment, or Frana in this situation.

3

### III. Employees, Including Frana, Voluntarily Quit Prior To End of Time Set for Sign-On Bonus.

15. Frana sent Mercy a notice she was terminating her employment on November 10, 2023, or sixteen months before the Agreement's Bonus Date.

16. Accordingly, under the Agreement, Frana was required to repay Mercy a pro-rated amount of the sign-on bonus for the sixteen-month-early termination, or $9,000.00.

17. On September 25, 2023, counsel for Mercy notified Frana of Mercy's intent to collect the amount Frana owed for repayment.

18. The parties dispute liability under the Agreement. On one end, Frana believes she was not required to return her sign-on bonus based on the Agreement's language that the obligation to repay did not apply if the Agreement was terminated due to "Mercy Iowa city's insolvency." Mercy disagrees and argues the insolvency exception is inapplicable in the context of a filing under the Bankruptcy Code. Nevertheless, the cost and time to the Debtors' estates of enforcing the Agreement and attempting to collect from Frana likely outweigh the benefit of enforcing the Agreement.

19. In addition to Frana, there are other employees at Mercy, who were paid sign-on bonuses under similar terms, who have terminated their employment prior to their respective bonus dates, and similarly owe Mercy a pro-rated share of the sign-on bonus under their employment agreements.

20. This Motion seeks to address not only the resolution of Frana's dispute but also to obtain permission for the Debtor to prospectively resolve this category of similar class of employees with repayment obligations of sign-on bonuses.

### IV. The Frana Settlement and Others

21. Before the Court is a request to approve Frana and Mercy's settlement under Rule 9019. The Parties engaged in good-faith, arm's length negotiations over several weeks with the goal of resolving the dispute without unnecessary costs of litigation and to preserve the estates' assets.

22. Ultimately, Mercy and Frana agreed to resolve the dispute over Frana's return of her sign-on bonus under the terms of the attached Settlement Agreement. *See* Exhibit B. In summary, Frana will: (a) continue employment through November 10, 2023, (b) repay Mercy $2,000.00, (c) agree to a non-defamation clause, and (d) release any and all claims Frana may have against Mercy.[2]

23. For the reasons set forth herein, Mercy submits that the settlement is reasonable, fair, and in the best interest of the Debtors and all parties-in-interest and accordingly requests that the Court approve the terms of the settlement, as set forth in the Settlement Agreement attached as Exhibit B, and respectfully requests that the Court prospectively authorize the Debtors to compromise or settle the class of controversies between the Debtors and other employees regarding sign-on bonuses in a similar fashion and upon similar terms.

### BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

**I. The Settlement is Fair, Reasonable, and Appropriate and Should be Approved Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019.**

24. Bankruptcy Code section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a). The foregoing section has been interpreted to expressly

---

[2] The summaries of the terms of the settlement contained in this Motion are qualified in their entirety by the Settlement Agreement. To the extent anything in this Motion is inconsistent with the Settlement Agreement, the terms of the Settlement Agreement shall control.

5

empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc). Although not limitless, Bankruptcy Code section 105(a) has also been construed to give bankruptcy courts authority to provide equitable relief appropriate to assure the orderly conduct of bankruptcy proceedings. *See, e.g.*, *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004). Moreover, Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

25. Bankruptcy Rule 9019(b) provides that "[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice." The Court can authorize a debtor-in-possession to compromise or settle controversies within a class where a trustee has not been appointed. *See In re Civic Partners Sioux City, LLC*, No. BR 11-00829, 2017 WL 1155686, at *1–2 (Bankr. N.D. Iowa Mar. 27, 2017).

26. A decision of whether to approve a proposed settlement agreement is within the sound discretion of the bankruptcy court. *See In re Simply Essentials, LLC*, 640 B.R. 922, 930 (Bankr. N.D. Iowa 2022), *aff'd*, 78 F.4th 1006 (8th Cir. Aug. 21, 2023) (citing *In re Hildreth*, No. 09-00293, 2012 WL 4520635 (Bankr. N.D. Iowa 2012)); *see also In re Nw. Corp.*, Case No. 03-12872 (KJC), 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) (internal quotations omitted). In exercising this discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests of the estate." *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005), *aff'd*, No.

03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate."); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (same); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (stipulations must be "fair and equitable").

27.    Generally, settlements in bankruptcy matters are favored, particularly when such settlements will reduce litigation risk and related expenses to the estate. *See In re Simply Essentials, LLC*, 640 B.R. at 931; *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (indicating that compromises pursuant to Bankruptcy Rule 9019 are favored in the bankruptcy context "[t]o minimize litigation and expedite the administration of a bankruptcy estate"); *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 646 (3d Cir. 2006) ("It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation."). A bankruptcy court need not determine that the settlement is "the best result obtainable;" rather, the standard of review "is whether the settlement is fair and equitable and in the best interests of the estate." *Ritchie Cap. Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015) (quoting *Tri-State Fin., LLC*, 525 F.3d 649, 654 (8th Cir. 2008)).

28.    Indeed, in evaluating a settlement, the court need only ensure that "the settlement does not fall below the lowest point in the range of reasonableness." *Id.* (quoting *Tri-State Fin.*, 525 F.3d at 654); *see also In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010); *see also In re World Health Alt., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotation marks omitted); *In re Coram Healthcare Corp.*, 315 B.R. 321,

330 (Bankr. D. Del. 2004) (indicating that a proposed compromise need not be the best result that a debtor could have achieved, but it must fall within the "reasonable range of litigation possibilities").

29. In determining whether to approve a proposed settlement, courts in this jurisdiction and others have considered the following factors:

(a) [t]he probability of success in litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; [and]

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Simply Essentials*, 640 B.R. at 931 (quoting *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)). To the extent a court concludes it is in the best interest of the creditors to approve a settlement, and the settlement is in the best interest of the estate, the settlement approval should be granted. *Id.*; *see also Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp. Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *In re Eastwind Grp., Inc.*, 303 B.R. 743, 750 (Bankr. E.D. Pa. 2004) (noting that in "deciding whether to approve a settlement, the court must determine whether the proposed settlement is in the best interests of the estate"); *In re Geller*, 74 B.R. 685, 688 (Bankr. E.D. Pa. 1987) (indicating that a settlement will be approved as long as it clears a threshold of reasonableness). In making such a determination, the bankruptcy court shall apprise itself "of all facts necessary to evaluate the settlement and make an 'informed and independent judgment' as to whether the compromise is fair and equitable." *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 162–63 (7th Cir. 1987) (citation omitted).

30. For the reasons set forth below, the Debtors respectfully submits that the terms of the Settlement Agreement, which are the result of extensive, arm's-length, good faith negotiations

by and among the parties, satisfy the above criteria for approval of a settlement pursuant to Bankruptcy Rule 9019 and therefore should be approved. The Debtors also submit that the Court should fix a class of controversies regarding the Debtors' disputes with employees related to return of their sign-on bonuses and authorize the Debtors to compromise or settle those controversies without further hearing or notice under Rule 9019.

31. Litigation against employees to obtain judgment on the pro-rated share of sign-on bonuses owed to the Debtors is not likely to be complex, and the Debtors believe would be likely to succeed in any such litigation. However, the cost of such litigation and collection risks significantly outweigh the amount the Debtors might recover from their employees, including Frana, given the relatively low amounts to be collected, the limited resources currently available to the Debtors, the current trajectory of the Chapter 11 Cases, and the financial condition of each of the employees. The costs of litigation and collection would diminish any proceeds collected upon a favorable verdict in connection with litigation against the employees.

32. The Settlement Agreement is in the best interests of the Debtors, their estates, and all other parties-in-interest. As discussed above, paying the costs of litigation to collect a relatively small sum from a handful of employees would likely result in a net loss to the Debtors and their estates.

33. In sum, the Debtors believe that the terms of the Settlement Agreement are reasonable, fair, and in the best interests of the Debtors, their creditors, and other parties-in-interest, and will facilitate, rather than hinder, the Debtors' continued operations, their proposed sale process, and the ultimate outcome of the Chapter 11 Cases. Accordingly, the Debtors respectfully submits that Court approval of the Settlement Agreement and Court authorizing the

Debtors to compromise or settle the remaining class of similar controversies without further hearing or notice is appropriate under the circumstances of these Chapter 11 Cases.

## NOTICE

38. The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) counsel for the Official Committee of Unsecured Creditors; and (c) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Mercy submits that no other or further notice is required.

## NO PRIOR REQUEST

39. No previous request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: December 29, 2023               **NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:   (319) 286-7002
Facsimile:    (319) 286-7050
Email:         rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-645-5510
Fax:  515-283-8045
Email: mmcguire@nyemaster.com
          kmstanger@nyemaster.com

-and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:   (312) 372-2000
Facsimile:    (312) 984-7700
Email:         fperlman@mwe.com
                dsimon@mwe.com
                ekeil@mwe.com

        Jack G. Haake (admitted *pro hac vice*)
        2501 North Harwood Street, Suite 1900
        Dallas, TX 75201
        Telephone:    (214) 295-8000
        Facsimile:    (972) 232-3098
        Email:        jhaake@mwe.com

        *Counsel for Debtors and Debtors-in-Possession*

### Certificate of Service

The undersigned certifies, under penalty of perjury, that on this December 29, 2023, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

        /s/ *Roy Leaf*