**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |

**SECURED BONDHOLDER REPRESENTATIVES' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND DIRECTING THE DISTRIBUTION OF PROCEEDS FROM THE SALE OF THE DEBTORS' ASSETS AND FOR RELIEF FROM STAY**

Computershare Trust Company, N.A., as Master Trustee (the "Master Trustee"), and Preston Hollow Community Capital, Inc., as Bondholder Representative (collectively, the "Secured Bondholder Representatives"), hereby move (the "Motion") for entry of an order authorizing and directing the distribution of proceeds to the Master Trustee from the sale of the Master Trustee's collateral to the State University of Iowa (the "University") promptly upon the closing of the sale between the University and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), and for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) in order to effectuate the relief sought herein. In support of this Motion, the Secured Bondholder Representatives respectfully state as follows:

**RELIEF REQUESTED**

1. As the Court is aware, the sale of certain of the Debtors' assets to the University (the "Sale") is anticipated to close on or around January 31, 2024. By this Motion, and in accordance with the Court's *Second Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* [Dkt. No. 475] (the "Second Interim Cash Collateral Order"), the Secured Bondholder Representatives request entry of an order authorizing and

directing the Debtors to distribute the portion of Sale Proceeds (as defined herein) attributable to the Master Trustee's collateral to the Master Trustee in the amount of $26,800,000 (the "Collateral Proceeds"), either at closing or as soon as practicable following closing of the Sale.

2. It is undisputed that the Master Trustee holds valid, perfected, and enforceable first-priority liens upon and security interests in substantially all of Mercy Hospital, Iowa City, Iowa's ("Mercy Hospital") real and personal property assets, as evidenced by that certain Mortgage and Security Agreement and Fixture Financing Statement dated as of May 1, 2018 and recorded on May 11, 2018 in Johnson County, Iowa (the "Mortgage"), a true and correct copy of which is attached hereto as **Exhibit A**. The "Purchased Assets" under the University's asset purchase agreement with the Debtors (the "APA") include primarily the Debtors' owned real property constituting Mercy Hospital and the medical office building known as "MOB I," real property leases, tangible personal property, and hospital inventory, which are all subject to the Master Trustee's liens and security interests. *See* Dkt. No. 476, Exhibit 1, § 2.1. Pursuant to the Court's Sale Order (defined below), the Master Trustee's liens and security interests attach to the sale proceeds of these Purchased Assets.

3. Distribution of the Collateral Proceeds to the Master Trustee and bondholders is authorized and appropriate under section 362(d) of the Bankruptcy Code where, as here, the proceeds are derived from sale of the real and personal property upon which the Master Trustee holds unassailable first-priority liens. The Debtors have consented to the distribution of the Collateral Proceeds to the Master Trustee. *See* Second Interim Cash Collateral Order at ¶ 4(f). Moreover, the partial satisfaction of the bondholders' claims on account of the proposed distribution will, *inter alia*, benefit the estates by reducing the amount of interest accrual on the Master Trustee's secured claim.

4. In light of the foregoing, and for the reasons detailed herein, good cause exists for the Court to grant the relief requested.

## RELEVANT BACKGROUND

5. On August 7, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Master Trustee serves as successor bond trustee and successor master trustee for the Health Facilities Revenue Bonds, Series 2011 (Mercy Hospital Project) (the "2011 Bonds") and the Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the "Bonds"). As security for Mercy Hospital's obligations owing on the Bonds, the Master Trustee holds a valid, enforceable, and perfected first-priority lien on and security interest in substantially all of Mercy Hospital's real and personal property assets. For purposes of this Motion, it is important to note that the Master Trustee's liens granted under the Mortgage and perfected by the recording of the same extend to, without limitation, the hospital campus located at 500 East Market Street, Iowa City, Iowa, the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, all building materials, building equipment, fixtures and supplies of every kind and nature located on such real property and suitable or intended to be incorporated in any building, structure or other improvement on such real property, all fixtures and articles of personal property that integrally belong to such real property, all leases, subleases, licenses, concessions or grants of other possessory interests covering or affecting such real property, and all machinery, apparatus, equipment, furnishings and personal

property which may be deemed to be personal property and not an integral part of the real property, all as set forth more fully in the Mortgage.

7. In the Second Interim Cash Collateral Order, the Debtors stipulated to the Master Trustee's liens upon and security interests in the foregoing assets of Mercy Hospital. *See Second Interim Cash Collateral Order* at ¶¶ E(vii), (ix).

8. The Master Trustee timely filed a proof of claim for the total amount outstanding on the Bonds as of the Petition Date, *i.e.* not less than $59,526,655.69 (the "Bond Claim"). *See* Claim No. 10132. The Debtors agree that the Bond Claim is not less than $59,526,655.69 plus "other amounts, including accrued and unpaid fees and expenses of the Trustee and its professionals incurred through the Petition Date . . . ." *Second Interim Cash Collateral Order* at ¶ E(viii).

9. Mercy Hospital's obligation to make payment on the Bonds is "absolute and unconditional" and "without abatement, deduction or setoff . . . ." Loan Agreement at § 3.5, attached hereto as **Exhibit B** ("The rights of the Trustee or any party or parties on behalf of whom the Trustee is acting shall not be subject to any defense, setoff, counterclaim or recoupment whatsoever, whether arising out of any breach of any duty or obligation of the Issuer, the Master Trustee or the Trustee owing to the Borrower, or by reason of any other indebtedness or liability at any time owing by the Issuer, the Master Trustee or the Trustee to the Borrower.").

10. On August 9, 2023, the Debtors filed the *Debtors' Motion for Entry of Order (I)(A) Approving Bidding Procedures of the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner*

4

*of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Dkt. No. 58]. The Court subsequently entered an *Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Break-up Fee, (C) Scheduling an Auction for, and a Hearing to Approve, the Sale of the Debtors' Assets, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Contract Assumption and Assignment Procedures, and (F) Granting Related Relief* on September 14, 2023 [Dkt. No. 222] (the "Bid Procedures Order").

11. On October 4, 2023, the Debtors commenced an auction pursuant to the Bid Procedures Order, which auction was continued thereafter and concluded on October 27, 2023, wherein the Debtors designated the University as the Winning Bidder, as such term is defined in the Bid Procedures Order. *See Amended Notice of Auction Results* [Dkt. No. 420].

12. The auction, which included the participation of the Secured Bondholder Representatives, definitively established the value of the Purchased Assets (as defined in the APA) subject to the Master Trustee's liens and security interests to be not less than $26,800,000 (*i.e.*, the amount of the total Sale Proceeds the movants seek to have distributed).[1]

13. On November 7, 2023, the Court entered its *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Dkt. No. 476] (the "Sale Order") authorizing the Sale. The total purchase price for the Purchased Assets is "$28,000,000, plus the Cure Amounts, plus an amount equal to

---

[1] The Debtors attributed $1.2 million in value to the medical clinics, which are included in the Sale but are not subject to the Master Trustee's liens. The Secured Bondholder Representatives therefore deducted $1.2 million in Sale Proceeds from the amount they are seeking to have distributed pursuant to this Motion.

the actual net operating losses (exclusive of restructuring professional fees and all other costs and expenses relating to the bankruptcy cases) incurred by the Debtors from December 1, 2023 until the Closing Date . . . ." Sale Order at ¶ II; APA, § 2.6(b).

14.     The Sale Order provides that the transfer of the Purchased Assets to the University shall be free and clear of all interests, with such interests to attach to the net proceeds received by the Debtors with the same validity, force, and effect, and in the same order of priority, which such interests now have against the Purchased Assets. *See* Sale Order at ¶ 9.

15.     The Sale is expected to close on the later of (a) January 31, 2024, (b) five (5) business days after satisfaction of the conditions set forth in the APA, and (c) such other time as the Debtors and the University may agree. *See* APA, § 2.8.

16.     On November 7, 2023, the Court also entered the Second Interim Cash Collateral Order pursuant to which the Debtors provided adequate protection to the Master Trustee. Pursuant to the Second Interim Cash Collateral Order, the Debtors consented to the distribution of the Collateral Proceeds to the Master Trustee. *See* Second Interim Cash Collateral Order at ¶ 4(f) ("the Debtors agree to not object or otherwise assert an objection to a motion filed by the Master Trustee that seeks a distribution to the Trustee at closing of such sale; *provided* that such distribution of sale proceeds is not in excess of $26,800,000, minus the Carve-Out.") (emphasis in original).

## ARGUMENT

17.     By this Motion, the Secured Bondholder Representatives seek an order authorizing and directing the distribution of the proceeds that the Debtors receive from the Sale (the "Sale Proceeds") as soon as practicable following closing of the Sale to satisfy the Bond Claim, in part. Specifically, the Secured Bondholder Representatives request that the Collateral Proceeds, which

are attributable to the Master Trustee's collateral which is the subject of the Sale, be distributed to the Master Trustee. The relief requested by the Secured Bondholder Representatives is authorized by sections 362(d)(1) and (2) of the Bankruptcy Code.

18. Section 362(d)(2) states that "the court *shall* grant relief from the stay provided under subsection (a) of this section . . . with respect to a stay of an act against property under subsection (a) of this section, if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2) (emphasis added). "A debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the property exceed the value of the property." 3 COLLIER ON BANKRUPTCY at 362-98 (Lawrence P. King ed., 15th rev. ed.). Here, the Debtors have no equity in the Collateral Proceeds; it is beyond peradventure that the amount of the bond indebtedness securing the Master Trustee's liens far exceeds the value of the Collateral Proceeds. Moreover, the Collateral Proceeds are not necessary to an effective reorganization because, *inter alia*, the Debtors are not, in fact, reorganizing. As the Court has been advised by the Debtors themselves, they are in liquidation.

19. The Secured Bondholder Representatives are also entitled to relief under Bankruptcy Code section 362(d)(1), which allows the Court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *In re Watts*, No. 13–00395 (TJC), 2013 WL 5979814 at *4 (Bankr. N.D. Iowa Nov. 12, 2013) (internal citation omitted).

20. Cause exists to grant the Secured Bondholder Representatives relief from stay to receive the distribution of the Collateral Proceeds. Pursuant to the Sale Order, the Master Trustee's

liens and security interests properly attach to the Sale Proceeds of the Purchased Assets that serve as the Master Trustee's collateral. The Debtors have stipulated to the validity and amount of the Bond Claim and the Master Trustee's liens and security interests in substantially all of the real and personal property comprising the Purchased Assets (except for the medical clinics). Moreover, after the closing of the Sale, the Debtors will have no material operations that require that they continue to hold the Collateral Proceeds. The Debtors will still have access to cash collateral, including cash on hand and the proceeds of accounts receivable that will continue to be collected post-closing, which may be used to fund administrative and other wind-down expenses.

21. Cause further exists as distribution of the Collateral Proceeds will partially satisfy the Master Trustee's secured claim and will directly benefit the estates by reducing the interest accrual on the Bond Claim.

22. Lastly, the Second Interim Cash Collateral Order specifically contemplates the proposed distribution, and the Debtors have consented thereto. *See* Second Interim Cash Collateral Order at ¶ 4(f) (describing the distribution of sale proceeds as "further adequate protection"). This, too, constitutes cause for granting the relief sought in this Motion. *See, e.g., In re A. Hirsch Realty, LLC*, 583 B.R. 583, 601-02 (Bankr. D. Mass. 2018) (finding that a prior bankruptcy court-approved contractual waiver of the automatic stay constitutes "cause").

23. The distribution of proceeds from the sale of a debtor's assets upon the closing of such sale – and prior to the confirmation of a plan – is commonly authorized by bankruptcy courts under similar circumstances. *See*, *e.g.*, *In re Henry Ford Village, Inc.*, Bankr. E.D. Mich., Case No. 20-51066, Dkt. No. 436, ¶ 15; *In re Mayflower Communities, Inc.*, Bankr. N.D. Tex., Case No. 19-30283, Dkt. No. 318, ¶ 15; *In re Louisiana Pellets, Inc.*, Bankr. W.D. La., Case No. 16-80162, Dkt. No. 661, ¶ 23.

## **CONCLUSION**

WHEREFORE, the Secured Bondholder Representatives request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

*[Remainder of page intentionally left blank.]*

Date: January 11, 2024  **WHITFIELD & EDDY, P.L.C.**

*/s/ Peter J. Chalik*
Peter J. Chalik (Iowa Bar No. AT0013036)
699 Walnut St., Suite 2000
Des Moines, Iowa 50309
Telephone: (515) 288-6041
Email: *Chalik@whitfieldlaw.com*

-and-

**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

William W. Kannel (admitted *pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: WKannel@mintz.com

Nathan F. Coco (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
Kaitlin R. Walsh (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 935-3000
Email: NFCoco@mintz.com
       MPreusker@mintz.com
       KRWalsh@mintz.com

## CERTIFICATE OF SERVICE

      I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated January 11, 2024.

                                              */s/ Peter J. Chalik*