**Exhibit B**

CITY OF HILLS, IOWA

AND

MERCY HOSPITAL, IOWA CITY, IOWA

LOAN AGREEMENT

Dated as of May 1, 2018

$41,760,000
CITY OF HILLS, IOWA
HEALTH FACILITIES REVENUE BONDS, SERIES 2018
(MERCY HOSPITAL PROJECT)

TABLE OF CONTENTS

This Table of Contents is not a part of this Loan Agreement and is provided only for convenience of reference.

ARTICLE I        DEFINITIONS; INTERPRETATION.................................................................. 3

    Section 1.1        Definitions............................................................................ 3
    Section 1.2        Interpretation........................................................................ 3
    Section 1.3        Content of Certificates and Opinions................................... 3

ARTICLE II        ISSUANCE OF BONDS AND SERIES 2018 OBLIGATION......................... 4

    Section 2.1        The Bonds. ........................................................................... 4
    Section 2.2        Issuance of the Series 2018 Obligation................................ 4
    Section 2.3        Restrictions on Number and Transfer of the Series 2018 Obligation. ....... 4

ARTICLE III        LOAN OF PROCEEDS; PAYMENTS; CONSTRUCTION OF THE
                   PROJECT;  REFUNDING THE PRIOR BONDS; DEBT SERVICE RESERVE
                   FUND .......................................................................................... 5

    Section 3.1        Loan of Proceeds; Payments of Principal, Premium and Interest............. 5
    Section 3.2        Additional Payments............................................................. 5
    Section 3.3        Credits for Payments............................................................ 7
    Section 3.4        Prepayment. ......................................................................... 7
    Section 3.5        Obligations Unconditional. .................................................. 7
    Section 3.6        Condition Precedent. ........................................................... 8
    Section 3.7        Disbursements from the Project Fund................................... 8
    Section 3.8        Completion of the Project; Substitution of Equipment and Improvements.8
    Section 3.9        Borrower Required to Pay in Event Project Fund Insufficient. ............... 9
    Section 3.10        Assignment of Issuer's Rights. ............................................ 9
    Section 3.11        Refunding of the Prior Bonds. ............................................. 9
    Section 3.12        Debt Service Reserve Fund................................................... 9

ARTICLE IV        REPRESENTATIONS AND WARRANTIES............................................. 10

    Section 4.1        Representations and Warranties of the Borrower. ................. 10
    Section 4.2        Representations and Warranties of the Issuer....................... 10

ARTICLE V        COVENANTS ............................................................................... 12

    Section 5.1        Covenants Relating to the Tax Status of the Series 2018 Bonds............. 12
    Section 5.2        No Pecuniary Liability of Issuer........................................... 13
    Section 5.3        Indemnification; Compensation and Expenses...................... 14
    Section 5.4        Assignment, Sale, Lease or Disposition of Project and Bond Financed
                   Property............................................................................... 17
    Section 5.5        Maintenance and Operation of Project. ................................ 17

Section 5.6     Insurance. ........................................................................... 17
Section 5.7     Additions, Modifications and Improvements. ......................... 17
Section 5.8     Operating Contracts. ............................................................ 18
Section 5.9     No Warranty of Condition or Suitability by Issuer................... 18
Section 5.10    Limitation of Liability of Issuer............................................. 18
Section 5.11    Compliance with Indenture.................................................... 18
Section 5.12    Master Indenture Covenants. ................................................ 18

ARTICLE VI     EVENTS OF DEFAULT AND REMEDIES ................................. 19

Section 6.1     Events of Default. ................................................................ 19
Section 6.2     Remedies on Default.............................................................. 20
Section 6.3     Discontinuance or Abandonment of Default Proceedings...................... 21
Section 6.4     Remedies Cumulative. ........................................................... 21
Section 6.5     Application of Moneys Collected. ........................................... 21
Section 6.6     Notice of Default................................................................... 21
Section 6.7     Attorney's Fees and Other Expenses. ..................................... 21

ARTICLE VII    MISCELLANEOUS ............................................................... 22

Section 7.1     Amendments and Supplements............................................... 22
Section 7.2     Time of the Essence; Nonbusiness Days. ................................ 22
Section 7.3     Binding Effect....................................................................... 22
Section 7.4     Entire Agreement. ................................................................ 22
Section 7.5     Severability. ......................................................................... 22
Section 7.6     Notices. ............................................................................... 22
Section 7.7     Term. .................................................................................. 23
Section 7.8     Counterparts. ....................................................................... 23
Section 7.9     Governing Law; Venue.......................................................... 23
Section 7.10    Continuing Disclosure. .......................................................... 23

010-8607-6426/9

This LOAN AGREEMENT (the "Agreement" or the "Loan Agreement"), dated as of May 1, 2018, between the City of Hills, Iowa (the "Issuer"), a city and political subdivision of the State of Iowa (the "State"), and Mercy Hospital, Iowa City, Iowa (the "Borrower"), a nonprofit corporation organized and existing under the laws of the State of Iowa;

WITNESSETH:

WHEREAS, the Issuer is authorized under the provisions of Chapter 419 of the Code of Iowa, 2017, as amended (the "Act"), among other things, to issue revenue bonds and loan the proceeds thereof pursuant to a loan agreement to one or more contracting parties (as defined in the Act) to be used to pay the cost of acquiring, by construction or purchase, land, buildings, improvements and equipment, or any interest therein, suitable for use of any organization described in Section 501(c)(3) of the Internal Revenue Code (the "Code") which is exempt from federal income tax under Section 501(a) of the Code (a "Tax Exempt Organization") and to refund any bonds issued under the Act; and

WHEREAS, the Borrower is a Tax Exempt Organization and has requested the Issuer to issue its Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project), in the principal amount of $41,760,000 (the "Series 2018 Bonds" or the "Bonds") and to loan the proceeds of the Series 2018 Bonds to the Borrower to be used by the Borrower for the following purposes: (i) financing a portion of the costs of the construction, renovation, expansion, equipping and furnishing of the Borrower's existing hospital facilities, including the purchase of routine capital equipment, hardware, and software, all located on the Borrower's campus at 500 East Market Street, Iowa City, Iowa (the "Project"); (ii) refunding the outstanding principal amount of the Issuer's Variable Rate Demand Health Facilities Revenue Bonds, Series 2008 (Mercy Hospital Project) (the "Prior Bonds"); and (iii) funding any necessary debt service reserve and/or capitalized interest funds and paying for costs of issuance of the Series 2018 Bonds; and

WHEREAS, the Issuer intends to issue the Series 2018 Bonds pursuant to a Trust Indenture dated as of May 1, 2018 (the "Indenture") between the Issuer and Wells Fargo Bank, National Association, as Trustee (the "Trustee"); and

WHEREAS, the proceeds of the sale of the Series 2018 Bonds will be loaned to the Borrower pursuant to this Agreement, and in order to provide for the repayment of such loan (the "Loan"), the Borrower will execute and deliver to the Trustee, its Direct Note Obligation, Series 2018, dated the date of authentication of the Series 2018 Bonds (the "Series 2018 Obligation"), which Series 2018 Obligation will be issued and secured under the Master Trust Indenture dated as of June 1, 1998 (the "Original Master Indenture") as supplemented and amended by a First Supplemental Master Trust Indenture dated as of June 1, 1998 (the "First Supplemental Indenture"), a Second Supplemental Master Trust Indenture dated as of September 1, 2002 (the "Second Supplemental Indenture"), a Third Supplemental Master Trust Indenture dated as of July 1, 2005 (the "Third Supplemental Indenture"), a Fourth Supplemental Master Trust Indenture dated as of October 1, 2005 (the "Fourth Supplemental Indenture"), a Fifth Supplemental Master Trust Indenture dated as of April 1, 2008 (the "Fifth Supplemental Indenture"), a Sixth Supplemental Master Trust Indenture dated as of August 1, 2010 (the "Sixth Supplemental Indenture"), a Seventh Supplemental Master Trust Indenture dated as of May 1, 2018 (the "Seventh Supplemental Indenture") and an Eighth Supplemental Master Trust Indenture dated as

of May 1, 2018 (the "Eighth Supplemental Indenture") (together, as further supplemented and amended from time to time in accordance with the provisions thereof, the "Master Indenture"), all by and between the Borrower and Wells Fargo Bank, National Association, as Master Trustee (the "Master Trustee"); and

WHEREAS, the Series 2018 Bonds shall be secured by a pledge by the Issuer to the Trustee of the Revenues (as defined in the Indenture), including the payments to be paid by the Borrower pursuant to the Series 2018 Obligation;

NOW, THEREFORE, for and in consideration of the premises and of the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto DO HEREBY AGREE as follows:

# ARTICLE I

## DEFINITIONS; INTERPRETATION

Section 1.1    <u>Definitions</u>.

Unless otherwise required by the context, all terms used herein shall have the meanings assigned to such terms in Section 1.01 of the Indenture, as originally executed and as amended or supplemented from time to time.

Section 1.2    <u>Interpretation</u>.

(a)    Unless the context otherwise indicates, words expressed in the singular shall include the plural and vice versa and the use of the neuter, masculine, or feminine gender is for convenience only and shall be deemed to mean and include the neuter, masculine or feminine gender, as appropriate.

(b)    Headings of articles and sections herein and the table of contents hereof are solely for convenience of reference, do not constitute a part hereof and shall not affect the meaning, construction or effect hereof.

(c)    All references herein to "Articles," "Sections" and other subdivisions are to the corresponding Articles, Sections or subdivisions of this Loan Agreement; the words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Loan Agreement as a whole and not to any particular Article, Section or subdivision hereof.

Section 1.3    <u>Content of Certificates and Opinions</u>.

Every certificate or opinion provided for in this Loan Agreement with respect to compliance with any provision hereof shall include the requirements set forth in Section 1.02 of the Indenture.

## ARTICLE II

## ISSUANCE OF BONDS AND SERIES 2018 OBLIGATION

Section 2.1     The Bonds.

Pursuant to the Indenture, the Issuer has authorized the issuance of the Bonds in the aggregate principal amount of $41,760,000.  The Borrower hereby approves the Indenture, the assignment thereunder to the Trustee of the right, title and interest of the Issuer (with certain exceptions noted therein) in this Loan Agreement and the Series 2018 Obligation and the issuance thereunder by the Issuer of the Bonds.  All rights accruing to or vested in the Issuer with respect to the Series 2018 Obligation may be exercised by the Trustee.

Section 2.2     Issuance of the Series 2018 Obligation.

In consideration of the issuance of the Bonds by the Issuer and the application of the proceeds thereof as provided in the Indenture, the Borrower agrees to issue and to cause to be authenticated and delivered to the Trustee, as assignee of the Issuer, the Series 2018 Obligation in the amount of $41,760,000, pursuant to the Master Indenture, and in particular the Eighth Supplemental Indenture, concurrently with the issuance and delivery of the Bonds.  The Issuer agrees that the Series 2018 Obligation shall be registered in the name of the Trustee.

Section 2.3     Restrictions on Number and Transfer of the Series 2018 Obligation.

(a)     The Borrower agrees that, except as provided in subsection (b) of this Section, so long as any Bond remains Outstanding, the Series 2018 Obligation shall be issuable only as a single obligation without coupons, registered as to principal and interest in the name of the Trustee, and no transfer of the Series 2018 Obligation shall be registered under the Master Indenture or be recognized by the Borrower except for transfers to a successor Trustee.

(b)     Upon the principal of all Obligations Outstanding (within the meaning of that term as used in the Master Indenture) being declared immediately due and payable, the Series 2018 Obligation may be transferred if and to the extent that the Trustee requests that the restrictions on transfers set out in subsection (a) of this Section be terminated.

- 4 -

ARTICLE III

LOAN OF PROCEEDS; PAYMENTS; CONSTRUCTION OF THE PROJECT; REFUNDING THE PRIOR BONDS; DEBT SERVICE RESERVE FUND

Section 3.1    Loan of Proceeds; Payments of Principal, Premium and Interest.

(a)    The Issuer hereby lends and advances to the Borrower, and the Borrower hereby borrows and accepts from the Issuer, a loan in a principal amount equal to the aggregate principal amount of the Bonds, the net proceeds of which loan shall be equal to the net proceeds received from the sale of the Bonds, such proceeds to be applied under the terms and conditions of this Loan Agreement and the Indenture.  In consideration of the loan of the proceeds of the Bonds by the Issuer to the Borrower, the Borrower agrees that, on or before each Interest Payment Date and Principal Payment Date and as long as any of the Bonds remain Outstanding, it shall pay to the Trustee for deposit in the Revenue Fund such amount as is required by the Trustee to make the transfers and deposits required on or prior to such Interest Payment Date or Principal Payment Date by Section 5.02 of the Indenture.  Notwithstanding the foregoing, if on any Interest Payment Date or Principal Payment Date, the aggregate amount in the Revenue Fund is for any reason insufficient or unavailable to make the required payments of principal (or Redemption Price) of or interest on the Bonds then becoming due (whether by maturity, redemption or acceleration), the Borrower shall forthwith pay the amount of any such deficiency to the Trustee.  Each payment by the Borrower to the Trustee hereunder (the "Loan Repayments") shall be in lawful money of the United States of America and paid to the Trustee at the Corporate Trust Office, and held, invested, disbursed and applied as provided in the Indenture.

(b)    Except as otherwise expressly provided herein, all amounts payable with respect to the Series 2018 Obligation or hereunder by the Borrower to the Issuer, other than payments with respect to Reserved Rights, shall be paid to the Trustee or other parties entitled thereto as assignee of the Issuer, if any, and this Loan Agreement; and all right, title and interest of the Issuer in any such payments are hereby assigned and pledged to the Trustee so long as any Bonds remain Outstanding.

Section 3.2    Additional Payments.

In addition to Loan Repayments and payments on the Series 2018 Obligation, the Borrower shall also pay to the Issuer and to the Trustee or the designated agent of either of them, as the case may be, "Additional Payments," as follows:

(a)    All taxes and assessments of any type or character charged to the Issuer or to the Trustee affecting the amount available to the Issuer or the Trustee from payments to be received hereunder or in any way arising due to the transactions contemplated hereby (including taxes and assessments assessed or levied by any public agency or governmental authority of whatsoever character having power to levy taxes or assessments) but excluding franchise taxes based upon the capital and/or income of the Trustee and taxes based upon or measured by the net income of the Trustee; provided, however, that the Borrower shall have the right to protest any such taxes or assessments and to require the Issuer or the

- 5 -

Trustee, at the Borrower's expense, to protest and contest any such taxes or assessments levied upon them and that the Borrower shall have the right to withhold payment of any such taxes or assessments pending disposition of any such protest or contest unless such withholding, protest or contest would adversely affect the rights or interests of the Issuer, the Trustee or the Beneficial Owners of the Bonds;

(b)     All reasonable fees, charges, expenses and indemnities of the Trustee hereunder and under the Indenture, as and when the same become due and payable;

(c)     The reasonable fees and expenses of such accountants, consultants, attorneys and other experts as may be engaged by the Issuer or the Trustee to prepare audits, financial statements, reports, opinions or provide such other services required under this Loan Agreement, the Master Indenture, the Series 2018 Obligation or the Indenture;

(d)     The reasonable fees and expenses of the Issuer, or any agent selected by the Issuer to act on its behalf in connection with this Loan Agreement, the Master Indenture, the Series 2018 Obligation, the Bonds or the Indenture, including, without limitation, any and all reasonable expenses incurred in connection with the authorization, issuance, sale and delivery of any such Bonds in connection with the reasonable supervision or inspection of the Borrower, any Members, any affiliates, their properties, assets or operations or otherwise in connection with the administration of this Loan Agreement;

(e)     All other reasonable and necessary fees and expenses attributable to the Bonds, this Loan Agreement, the Series 2018 Obligation or related documents, including without limitation all payments required pursuant to the Tax Agreement; and

(f)     In the event that the amount on deposit in the Debt Service Reserve Fund is ever less than the Debt Service Reserve Requirement, either because of a transfer of funds to the Interest Account and/or Principal Account or a valuation thereof, the Borrower shall pay to the Trustee as follows: (i) in the case of a deficiency due to a transfer of funds to the Interest Account and/or Principal Account, the Borrower shall pay to the Trustee on the first Business Day of each subsequent month an amount not less than one-fifth of the initial deficiency in order to eliminate the deficiency prior to the next Interest Payment Date; and (ii) in the case of a deficiency due to a change in the value of Qualified Investments in the Debt Service Reserve Fund, the Borrower shall pay to the Trustee the amount necessary to restore the amount on deposit in the Debt Service Reserve Fund to the Debt Service Reserve Fund Requirement within 30 days of the valuation in which the deficiency is quantified.

Such Additional Payments shall be billed to the Borrower by or upon direction of the Issuer or the Trustee from time to time, together with a statement certifying that the amount billed has been incurred or paid for one or more of the above items.  After such a demand, amounts so billed shall be paid by the Borrower within thirty (30) days after receipt of the bill by the Borrower.

The obligations of the Borrower under this Section shall survive the resignation or removal of the Trustee under the Indenture and payment of the Bonds and discharge of the Indenture.

010-8607-6426/9

Section 3.3      Credits for Payments.

The Borrower shall receive credit against its payments required to be made under Section 3.1, in addition to any credits resulting from payment or repayment from other sources, as follows:

(a)      on installments of interest in an amount equal to moneys on deposit in the Interest Account, to the extent such amounts have not previously been credited against such payments; and

(b)      on installments of principal in an amount equal to moneys on deposit in the Principal Account, to the extent such amounts have not previously been credited against such payments.

Section 3.4      Prepayment.

The Borrower shall have the right, so long as all amounts which have become due hereunder have been paid, at any time or from time to time, and an obligation pursuant to every mandatory redemption, to prepay all or any part of the Loan Repayments and the Trustee shall accept such prepayments when the same are tendered. Prepayments may be made by payments of cash, deposit of United States Government Obligations or surrender of Bonds. All such prepayments (and the additional payment of any amount necessary to pay the applicable premium, if any, payable upon the redemption of Bonds) shall be deposited upon receipt at the Borrower's direction in (i) the Optional Redemption Account of the Redemption Fund if the Bonds are to be redeemed pursuant to Section 4.01(A) of the Indenture, (ii) the Principal Account of the Revenue Fund if the Bonds are to be redeemed pursuant to Section 4.01(C) of the Indenture, or (iii) the Special Redemption Account of the Redemption Fund if the Bonds are to be redeemed pursuant to Section 4.01(B) or (D) of the Indenture (or in such other Trustee escrow account as may be specified by the Borrower) and, at the request of and as determined by the Borrower, credited against payments due hereunder or used for the redemption or purchase of Outstanding Bonds in the manner and subject to the terms and conditions set forth in the Indenture. The Borrower also shall have the right to surrender Bonds acquired by it in any manner whatsoever to the Trustee for cancellation, and such Bonds, upon such surrender and cancellation, shall be deemed to be paid and retired, and in the case of Bonds shall be allocated as set forth in the Indenture. Notwithstanding any such prepayment or surrender of Bonds, as long as any Bonds remain Outstanding or any Additional Payments required to be made hereunder remain unpaid, the Borrower shall not be relieved of its obligations hereunder.

Section 3.5      Obligations Unconditional.

The obligations of the Borrower hereunder and pursuant to the Series 2018 Obligation are absolute and unconditional, notwithstanding any other provision of this Loan Agreement, the Series 2018 Obligation, the Master Indenture or the Indenture. Until this Loan Agreement is terminated and all payments hereunder are made, the Borrower:

(a)      will pay all amounts required hereunder and under the Series 2018 Obligation without abatement, deduction or setoff except as otherwise expressly provided in this Loan Agreement;

- 7 -

(b)    will not suspend or discontinue any payments due hereunder or under the Series 2018 Obligation for any reason whatsoever, including, without limitation, any right of setoff or counterclaim;

(c)    will perform and observe all its other agreements contained in this Loan Agreement; and

(d)    except as provided herein, will not terminate this Loan Agreement for any cause, including, without limiting the generality of the foregoing, damage, destruction or condemnation of the Project, the health facilities owned and operated by any of the Members or any part thereof, commercial frustration of purpose, any change in the tax or other laws of the United States of America, the State or any political subdivision of either, or any failure of the Issuer to perform and observe any agreement, whether express or implied, or any duty, liability or obligation arising out of or connected with this Loan Agreement.

Nothing contained in this Section shall be construed to release the Issuer from the performance of any of the agreements on its part contained herein, and in the event the Issuer should fail to perform any such agreement on its part, the Borrower may institute such action against the Issuer as the Borrower may deem necessary to compel performance.

The rights of the Trustee or any party or parties on behalf of whom the Trustee is acting shall not be subject to any defense, setoff, counterclaim or recoupment whatsoever, whether arising out of any breach of any duty or obligation of the Issuer, the Master Trustee or the Trustee owing to the Borrower, or by reason of any other indebtedness or liability at any time owing by the Issuer, the Master Trustee or the Trustee to the Borrower.

Section 3.6    Condition Precedent.

The obligation of the Issuer to make the Loan as herein provided shall be subject to the receipt by it of the proceeds of the issuance and sale of the Bonds.

Section 3.7    Disbursements from the Project Fund.

In the Indenture, the Issuer has authorized and directed the Trustee to make disbursements from the Project Fund to pay the costs of the Project, or to reimburse the Borrower for any costs of the Project paid by the Borrower.

Section 3.8    Completion of the Project; Substitution of Equipment and Improvements.

The Borrower agrees that the Borrower will proceed with the construction, acquisition and/or installation of the Project in a timely manner and to pay the costs thereof to the extent that the same are not paid or reimbursed out of the proceeds of the Series 2018 Bonds and amounts otherwise on deposit in the Project Fund.  The Borrower, with the consent of the Bondholder Representative, may from time to time amend the Project to substitute buildings, equipment and improvements for part or all of the buildings, equipment or improvements then constituting a part of the Project and may pay for such substitute buildings, equipment or improvements with the proceeds of the Series 2018 Bonds so long as (i) the same will still constitute a "project" within

- 8 -

the meaning of the Act, (ii) the same consist of buildings, equipment or improvements intended for use in connection with the provisions of hospital and related health care services and are located at the Borrower's campus at 500 East Market Street, Iowa City, Iowa, and (iii) the same have sufficient reasonably expected economic lives such that the weighted average maturity the Series 2018 Bonds does not exceed 120% of the average reasonably expected economic life of the facilities financed and refinanced with the proceeds of the Series 2018 Bonds.

Section 3.9    Borrower Required to Pay in Event Project Fund Insufficient.

In the event the moneys in the Project Fund available for payment of the costs of the Project should not be sufficient to pay the costs of the Project in full, the Borrower agrees to complete the Project and to pay that portion of the costs of the Project in excess of the moneys available therefor in the Project Fund.  The Issuer does not make any warranty, either express or implied, that the moneys paid into the Project Fund and available for payment of the costs of the Project will be sufficient to pay all of the costs of the Project.  The Borrower agrees that if after exhaustion of the moneys in the Project Fund, the Borrower should pay any portion of the costs of the Project pursuant to the provisions of this Section, the Borrower shall not be entitled to any reimbursement therefor from the Issuer, the Trustee or the Bondholders nor shall the Borrower be entitled to any diminution of the amounts payable under the Series 2018 Obligation.

Section 3.10    Assignment of Issuer's Rights.

As a source of payment for the Series 2018 Bonds, the Issuer will assign to the Trustee all the Issuer's rights in this Agreement (except the Reserved Rights) and any rights of the Issuer under the Series 2018 Obligation pursuant to the Indenture.  The Borrower consents to such assignment and agrees to make payment of all sums assigned by the Issuer directly to the Trustee without defense or set-offs by reason of any dispute between the Borrower and the Issuer.

Section 3.11    Refunding of the Prior Bonds.

The Borrower will cause a portion of the proceeds of the Bonds to be applied to the defeasance of the Prior Bonds on the Date of Issuance and the redemption of the Prior Bonds within ninety days of the Date of Issuance.

Section 3.12    Debt Service Reserve Fund.

On the Date of Issuance, the Borrower will cause a portion of the net proceeds of the Bonds to be applied to, and deposited in, the Debt Service Reserve Fund in accordance with Section 3.02 of the Indenture.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

Section 4.1     Representations and Warranties of the Borrower.

The Borrower represents and warrants for the benefit of the Issuer, the Trustee, the Holders and the Beneficial Owners of the Series 2018 Bonds as follows:

(a)     The Borrower has been duly incorporated and is validly existing as a domestic nonprofit corporation in good standing under the laws of the State, and has all requisite power and authority and all necessary licenses and permits to own, lease and operate its properties, to carry on its activities as now conducted and as presently proposed to be conducted, to enter into this Agreement, the Mortgage, the Master Indenture and the Series 2018 Obligation, and to carry out and consummate all transactions contemplated by this Agreement, the Mortgage, the Master Indenture and the Series 2018 Obligation.

(b)     The execution and delivery of this Agreement, the Mortgage, the Eighth Supplemental Indenture and the Series 2018 Obligation, and the performance by the Borrower of its obligations under this Agreement, the Mortgage, the Master Indenture and the Series 2018 Obligation, (i) have been duly and effectively authorized by all necessary corporate action on the part of the Borrower, (ii) do not conflict with or result in any breach of any of the material terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any material lien, charge or encumbrance upon any property or assets of the Borrower pursuant to any indenture, loan agreement or other agreement or instrument (other than the Master Indenture, this Agreement, the Mortgage, and the Series 2018 Obligation) to which the Borrower is a party or by which the Borrower, its properties or operations may be bound, and (iii) will not result in any material violation of the provisions of the articles of incorporation or by-laws or similar incorporating or governing documents of the Borrower or any material laws, ordinances, governmental rules or regulations or court or other governmental orders to which the Borrower, its properties or operations is subject.

(c)     This Agreement, the Mortgage, the Eighth Supplemental Indenture and the Series 2018 Obligation have been duly authorized, executed and delivered by the Borrower, and this Agreement, the Mortgage, the Master Indenture and the Series 2018 Obligation are legal, valid and binding obligations of the Borrower and the other Obligated Group Members, as defined in the Master Indenture.

(d)     No event has occurred and no condition exists that, upon execution of this Agreement, would constitute a Loan Default Event hereunder.

Section 4.2     Representations and Warranties of the Issuer.

The Issuer represents, covenants and warrants for benefit of the Borrower, the Trustee and the owners of the Series 2018 Bonds, as follows:

- 10 -

(a)      The Issuer is a city and political subdivision of the State.   Under the provisions of the Act, the Issuer is authorized to enter into the transactions contemplated by this Agreement and the Indenture and to carry out its obligations hereunder and thereunder.  The Issuer has been duly authorized to execute and deliver this Agreement and the Indenture and assign the Series 2018 Obligation to the Trustee.

(b)      The Issuer covenants that it has not previously pledged and will not pledge the amounts derived from this Agreement other than as contemplated by the Indenture.

- 11 -

ARTICLE V

COVENANTS

Section 5.1    Covenants Relating to the Tax Status of the Series 2018 Bonds.

(a)    The Borrower covenants that it will not take (or fail to take) any action or permit (or fail to permit) any action to be taken on its behalf, or cause or permit any circumstance within its control to arise or continue, if such action or circumstance, or its reasonable expectation on the date of issuance of the Series 2018 Bonds, would cause the interest on the Series 2018 Bonds to be includable in the gross income of owners thereof for federal income tax purposes.  The Borrower makes the representations, warranties and covenants in, and agrees to comply with the Tax Agreement.

(b)    Without limiting the foregoing, the Borrower covenants that, notwithstanding any other provision of this Agreement or any other instrument, it will neither make nor cause to be made, or permit any investment or other use of the proceeds of the Loan or any property or investment property financed or refinanced thereby, which use would cause any of the Series 2018 Bonds to be an "arbitrage bond" under Section 148(a) of the Code or "hedge bonds" under Section 149(g) of the Code.  The Borrower agrees that it will not make or permit any use of the proceeds of the Series 2018 Bonds or the investment proceeds thereof or the Bond Financed Property which would cause the interest on the Series 2018 Bonds to become includable in the gross income of the Bondholders.

(c)    Without limiting the generality of the foregoing, the Borrower hereby agrees for the benefit of the owners of the Series 2018 Bonds as follows:

(i)    that, during the term of this Agreement, and for such period thereafter as may be required by applicable law, the Borrower will fully comply with all effective rules, rulings and regulations promulgated by the Department of the Treasury or the Internal Revenue Service which are applicable to the Series 2018 Bonds;

(ii)    that the Borrower shall take all action required from time to time to comply with the rebate requirements of Section 148(f) of the Code.  The Borrower agrees to provide the Trustee with a copy of any reports or returns filed with the Internal Revenue Service or the Department of the Treasury pursuant to Section 148(f) of the Code;

(iii)    all property acquired with the proceeds of the Series 2018 Bonds, the Prior Bonds or any income from the investment thereof will be owned by a 501(c)(3) organization as defined in Section 150(a)(4) of the Code or a "governmental unit" within the meaning of Section 150(a)(2);

(iv)    the amount of the costs of issuance of the Series 2018 Bonds financed from proceeds of the Series 2018 Bonds will not exceed two percent of the sale proceeds of the Series 2018 Bonds;

- 12 -

(v)     the proceeds of the Series 2018 Bonds will be applied to the payment of the costs of the Project and the refunding of the Prior Bonds so that the average maturity of the Series 2018 Bonds will not exceed 120% of the average reasonably expected economic life of the facilities financed and refinanced with the proceeds of the Series 2018 Bonds (determined in the manner provided in Section 147(b) of the Code); and

(vi)    none of the proceeds of the Series 2018 Bonds will be used to provide any airplane, skybox or other private luxury box, facility primarily used for gambling or store the principal business of which is the sale of alcoholic beverages for consumption off-premises.

Section 5.2     No Pecuniary Liability of Issuer.

It is understood and agreed by the Borrower, Holders and Beneficial Owners that no covenant, provisions or agreement of the Issuer herein or in the Bonds or in any other document executed by the Issuer in connection with the issuance, sale and delivery of the Bonds, or any obligation herein or therein imposed upon the Issuer or breach thereof, shall give rise to a pecuniary liability of the Issuer, its council members, officials, officers, employees or agents or a charge against the Issuer's general credit or general fund or shall obligate the Issuer, its council members, officials, officers, employees or agents financially in any way except with respect to the Indenture, the funds and accounts held thereunder and the application of revenues therefrom and from this Agreement, and from the proceeds of the Bonds.  No failure of the Issuer to comply with any term, condition, covenant or agreement therein shall subject the Issuer, its council members, officials, officers, employees or agents to liability for any claim for damages, costs or other financial or pecuniary charges except to the extent that the same can be paid or recovered from the Indenture, the funds and accounts held thereunder and the application of revenues therefrom and from this Agreement and from the proceeds of the Bonds.  No execution on any claim, demand, cause of action or judgment shall be levied upon or collected from the general credit or general fund of the Issuer.  In making the agreements, provisions and covenants set forth herein, the Issuer has not obligated itself except with respect to the Indenture and the funds and accounts held thereunder and the application of revenues therefrom and from this Agreement, and from the proceeds of the Bonds, as hereinabove provided.

The Bonds constitute special, limited obligations of the Issuer, payable solely from proceeds of the Bonds, the revenues pledged to the payment thereof pursuant to this Agreement, including without limitation pursuant to Section 3.1(b) hereof, proceeds of the Series 2018 Obligation and Mortgage, and the funds and accounts held under and pursuant to the Indenture and pledged thereof.  The Bonds, the interest thereon and any other payments or costs incident thereto do not constitute an indebtedness or a loan of the credit of the Issuer, the State or any political subdivision thereof within the meaning of any constitutional or statutory provisions.  The Issuer does not pledge its faith or credit nor the faith or credit of the State nor any political subdivision of the State to the payment of the principal of, the interest on or any other payments or costs incident to the Bonds.  The issuance of the Bonds and the execution of any documents in relation thereto do not directly, indirectly or contingently obligate the State or any political subdivision of the State to apply money from or levy or pledge any form of taxation whatever to

- 13 -

the payment of the principal of or interest on the Bonds or any other payments or costs incident thereto.

It is further understood and agreed by the Borrower and the Bondowners that the Issuer, its council members, officers, employees or agents shall incur no pecuniary liability hereunder and shall not be liable for any expenses related hereto, all of which the Borrower agrees to pay.  If, notwithstanding the provisions of this Section, the Issuer, its council members, officers, employees or agents incur any expense, or suffer any losses, claims or damages or incurs any liabilities, the Borrower will indemnify and hold harmless the Issuer, its council members, officials, officers, employees or agents from the same and will reimburse the Issuer, its council members, officials, officers, employees or agents in relation thereto, and this covenant to indemnify, hold harmless and reimburse the Issuer, its council members, officials, officers, employees or agents shall survive delivery of and payment for the Bonds.

Section 5.3    Indemnification; Compensation and Expenses.

(a)    The Borrower hereby covenants to pay the Trustee from time to time, and the Trustee shall be entitled to, reasonable compensation for all services rendered by it in the execution of the trusts created by the Indenture and in the exercise and performance of any of the powers and duties of the Trustee under the Indenture, which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust, and the Borrower hereby covenants to pay or reimburse the Trustee upon its request for all expenses, disbursements and advances incurred without limitation or made by or on behalf of the Trustee in accordance with any of the provisions of the Indenture, including the reasonable compensation and the expenses and disbursements of its counsel and of all persons not regularly in its employ, except any such expense, disbursement or advance as may arise from its negligence or willful misconduct.  The Trustee, if and to the extent authorized by a receivership, bankruptcy or other court of competent jurisdiction, shall be entitled (but not obligated) to make advances for the purpose of preserving property of the Borrower or the Issuer.

(b)    The Borrower agrees that the Trustee shall not be liable for, and agrees to indemnify, defend and hold the Trustee harmless against, any loss or damage to property or any injury to or death of any person that may be occasioned by any cause whatsoever pertaining to facilities financed or refinanced by the Series 2018 Bonds or the use thereof. The Borrower shall indemnify and hold harmless the Trustee from and against all causes of action, legal or equitable, arising by reason of any act of the Borrower or the failure of the Borrower or any of its agents or employees to fulfill any duty toward the Trustee or toward the public or toward any person or persons whomsoever the Borrower or the Trustee may owe in connection with the facilities financed or refinanced by the Series 2018 Bonds. The Borrower shall at its own cost and expense defend any such actions which may be brought against the Trustee as aforementioned, whether or not such actions have any basis in law or in fact, and shall pay all amounts which may be recovered therein against the Trustee.  For the purposes of this Section, "Trustee" shall mean the Trustee, and its board members, officers, council members, officials, agents, servants, assignees and employees. The Borrower agrees to indemnify and hold harmless the Trustee against any and all losses, claims, taxes, penalties, disbursements, court costs, damages, expenses (including without

- 14 -

limitation reasonable counsel fees and expenses) and liabilities arising from, in connection with, or as a result of the issuance of the Series 2018 Bonds, the execution and delivery of this Agreement, the Indenture, the Master Indenture and all related documents (including the Series 2018 Obligation) or the performance and observance by or on behalf of the Borrower of those things on the part of the Borrower agreed to be performed or observed hereunder and thereunder, including without limitation the fees and expenses of enforcing its indemnification rights hereunder and the legal fees and expenses incurred in successfully defending itself against claims of its negligence or willful misconduct.  No member of the board of directors, officer, director, agent, servant, assignee or employee of the Borrower shall be personally liable for the obligations of the Borrower created hereunder.

(c)     If any action shall be brought against the Trustee in respect of which indemnity may be sought under the foregoing provisions of this Section against the Borrower, the Trustee shall promptly notify the Borrower in writing, and the Borrower shall assume the defense thereof, including the employment of counsel and the payment of all expenses.  In any such action, the Trustee shall have the right to employ separate counsel, but the fees and expenses of such counsel shall be at the expense of the Trustee, unless the Borrower and the Trustee shall have mutually agreed to the employment of such counsel to represent both the Borrower and the Trustee; provided, however, that the Trustee shall be entitled to employ separate counsel and the fees and expenses of such counsel shall be paid by the Borrower if the Trustee believes in good faith that there are defenses available to the Borrower which are not available to it or vice versa, or that a conflict of interest exists between the Borrower and the Trustee, as applicable.  The Borrower shall not be liable for any settlement of such action effected without its written consent, but if settled with the written consent of the Borrower or if there shall be a final judgment for the plaintiff in any action, the Borrower agrees to indemnify and hold harmless the Trustee from and against any loss or liability by reason of such settlement or judgment.  The obligations of the Borrower under this Section shall survive the termination of this Agreement and the resignation or removal of the Trustee.

(d)     The Borrower will, to the fullest extent permitted by law, protect, indemnify and save the Issuer and its council members, officials, officers, agents, and employees and any person who controls the Issuer within the meaning of the Securities Act of 1933, harmless from and against all liabilities, losses, damages, costs, expenses (including attorneys' fees and expenses of the Issuer), taxes, causes of action, suits, claims, demands and judgments in connection with the transaction contemplated by this Agreement or arising from or related to the issuance or sale of the Bonds, including but not limited to:

1.     any injury to or death of any person or damage to property in or upon the Project or growing out of or connected with the use, non-use, condition or occupancy of the Facilities or any part thereof, including any and all acts or operations relating to the acquisition or installation of property or improvements. The foregoing indemnification obligations shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Borrower, customers, suppliers or affiliated organizations under any

- 15 -

Workers' Compensation Acts, Disability Benefit Acts or other employee benefit acts;

2.      violation of any agreement, provision or condition of this Agreement, the Bonds or the Indenture, except a violation by the party seeking indemnification;

3.      violation by the Borrower of any contract, agreement or restriction which shall have existed at the commencement of the term of this Agreement or shall have been approved by the Borrower;

4.      violation by the Borrower of any law, ordinance, resolution, court order or regulation affecting the Project or a part thereof or the ownership, occupancy or use thereof;

5.      any statement or information relating to the expenditure of the proceeds of the Bonds contained in the Tax Agreement or similar document furnished by the Borrower to the Issuer or Trustee which, at the time made, is misleading, untrue or incorrect in any material respect; and

6.      any untrue statement or alleged untrue statement of a material fact contained in any offering material relating to the sale of the Bonds (as from time to time amended or supplemented) or arising out of or based upon the omission or alleged omission to state therein a material fact required to be stated therein or necessary in order to make the statements therein not misleading, or failure to properly register or otherwise qualify the sale of the Bonds or failure to comply with any licensing or other law or regulation which would affect the manner whereby or to whom the Bonds could be sold.

Promptly after receipt by the Issuer or any such other indemnified person, as the case may be, of notice of the commencement of any action with respect to which indemnity may be sought against the Borrower under this subsection, such person shall notify the Borrower in writing of the commencement thereof, and, subject to the provisions hereinafter stated, the Borrower shall assume the defense of such action (including the employment of counsel, who shall be counsel subject to the approval of the Issuer, which approval shall not be unreasonably withheld, and the payment of expenses).  Insofar as such action shall relate to any alleged liability with respect to which indemnity may be sought against the Borrower, the Issuer or any such other indemnified person shall have the right to employ separate counsel of their own choice in any such action and to participate in the defense thereof, and the fees and expenses of such counsel shall be at the expense of the Borrower.  The Borrower shall not be liable to indemnify any person for any settlement of any such action effected without its consent.

The provisions of this subsection shall survive payment and discharge of the Bonds.

(e)      Nothing contained in this Section shall be construed to provide for indemnification of, or payment of expenses to, the Trustee as a result of the Trustee's negligence or willful misconduct.

- 16 -

(f)        Failure by the Borrower to make payments required under this Section shall not constitute an Event of Default under Section 6.1(b) hereof

(g)        The Borrower hereby covenants to pay to the Issuer its costs and expenses relating to the issuance of the Bonds, including its counsel fees, and further covenants to pay to the Issuer any costs and expenses of the Issuer arising out of its performance under this Loan Agreement, the Indenture, or the Bonds.

Section 5.4        Assignment, Sale, Lease or Disposition of Project and Bond Financed Property.

Subject to compliance with the terms of the Master Indenture, including without limitation Sections 406, 413 and 417, the Borrower may, with the written consent of the Bondholder Representative, assign its interest in this Agreement and may sell, lease and dispose of the Bond Financed Property, in whole or in part, without the prior written consent of the Issuer or the Trustee provided that in connection with any such assignment of this Agreement or any sale, lease or disposition of the Project or the Bond Financed Property, in whole or in part, other than in the ordinary course of business, the Borrower shall provide the Trustee with (i) an Officer's Certificate to the effect that such assignment or such sale or lease will not result in any event of default, or event which, with the passage of time or the giving of notice or both would constitute such event of default under the Master Indenture and (ii) an opinion of Bond Counsel to the effect that such assignment or such sale or lease is authorized or permitted under the terms of the Act and will not, by itself, result in the interest on the Series 2018 Bonds becoming includable in gross income for federal income tax purposes.  No such assignment, sale or lease shall relieve the Borrower from its obligations hereunder or under the Series 2018 Obligation.

Section 5.5        Maintenance and Operation of Project.

The Borrower shall be responsible for operating and maintaining the Bond Financed Property in good working order; provided, however, that nothing in this Section 5.5 shall require the Borrower to operate or maintain the Bond Financed Property or any part thereof if it determines that it is not in its best interests to do so.

Section 5.6        Insurance.

The Issuer shall not have any obligation to keep or maintain or cause to be kept or maintained the Project or a portion thereof insured.  The Borrower shall maintain, or cause to be kept and maintained, insurance in accordance with the provisions of Article IV of the Master Indenture.  The Borrower shall apply net proceeds of insurance (other than business interruption) in accordance with the Master Indenture.

Section 5.7        Additions, Modifications and Improvements.

The Borrower may remodel, renovate, or improve all or any portion of the Project or any of its other properties or make additions, modifications or improvements thereon or thereto as it, in its discretion, may deem desirable for its purposes and uses.

- 17 -

Section 5.8    Operating Contracts.

Subject to compliance with the terms of the Master Indenture, including without limitation Section 417, the Borrower, with the consent of the Bondholder Representative, may lease all or substantially all or any portion of the Project or any of its facilities or contract for the performance by others of all or substantially all of the operations or services at or in connection with the Project or any portion of its facilities; provided that (i) no such lease or contract shall result in an event of default or an event which, with the lapse of time or the giving of notice would constitute such an event of default under the terms of the Master Indenture or (ii) no such lease or contract shall adversely affect the exclusion of interest on the Series 2018 Bonds from gross income for federal income tax purposes (and which conclusion, in the case of a lease, is supported by an opinion of Bond Counsel delivered to the Trustee to such effect).

Section 5.9    No Warranty of Condition or Suitability by Issuer.

THE ISSUER MAKES NO WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE PROJECT OR THE CONDITION THEREOF, OR THAT THE PROJECT WILL BE SUITABLE FOR THE PURPOSES OR NEEDS OF THE BORROWER.  THE ISSUER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, CONDITION OR WORKMANSHIP OF ANY PART OF THE PROJECT OR ITS SUITABILITY FOR THE BORROWER'S PURPOSES.

Section 5.10    Limitation of Liability of Issuer.

No covenant, agreement or obligation contained herein shall be deemed to be a covenant, agreement or obligation of any council member, official, officer, employee or agent of the Issuer in his or her individual capacity, and neither the council members of the Issuer nor any officer thereof executing the Series 2018 Bonds shall be liable personally on the Series 2018 Bonds or be subject to any personal liability or accountability by reason of the issuance thereof.  No council member, official, officer, employee or agent of the Issuer shall incur any personal liability with respect to any other action taken by him or her pursuant to this Agreement or the Indenture.

Section 5.11    Compliance with Indenture.

The Borrower hereby covenants and agrees that it will comply with and carry out all of the provisions of the Indenture to be performed by the Borrower.

Section 5.12    Master Indenture Covenants.

The Borrower shall perform its covenants, and cause the other Members of the Obligated Group to perform their covenants, under the Master Indenture while the Master Indenture is in effect.

- 18 -

## ARTICLE VI

### EVENTS OF DEFAULT AND REMEDIES

Section 6.1     Events of Default.

Each of the following events shall constitute and be referred to herein as a "Loan Default Event":

(a)     failure by the Borrower to pay in full any Loan Repayment when such Loan Repayment is due and payable;

(b)     except as provided in Section 5.3(f) hereof, failure of the Borrower to pay any other payment required hereunder when due and payable;

(c)     if any representation made by the Borrower herein or made by the Borrower or any Member in any document, instrument or certificate furnished to the Trustee or the Issuer in connection with the issuance of the Series 2018 Obligation or the Bonds shall at any time prove to have been incorrect in any material respect as of the time made;

(d)     if the Borrower shall fail to observe or perform any other covenant, condition, agreement or provision in this Loan Agreement on its part to be observed or performed, other than as referred to in subsection (a), (b) or (c) of this Section, or shall breach any warranty by the Borrower herein contained, for a period of sixty (60) days after written notice, specifying such failure or breach and requesting that it be remedied, has been given to the Borrower by the Issuer, the Bondholder Representative or the Trustee; except that, if such failure or breach can be remedied but not within such sixty-day period and if the Borrower has taken all action reasonably possible to remedy such failure or breach within such sixty-day period, such failure or breach shall not become a Loan Default Event for so long as the Borrower shall diligently proceed to remedy such failure or breach in accordance with and subject to any directions or limitations of time established by the Trustee or the Bondholder Representative;

(e)     if the Borrower files a petition in voluntary bankruptcy, for the composition of its affairs or for its corporate reorganization under any state or federal bankruptcy or insolvency law, or makes an assignment for the benefit of creditors, or admits in writing to its insolvency or inability to pay debts as they mature, or consents in writing to the appointment of a trustee or receiver for itself or for the whole or any substantial part of the Borrower's facilities;

(f)     if a court of competent jurisdiction shall enter an order, judgment or decree declaring the Borrower an insolvent, or adjudging it bankrupt, or appointing a trustee or receiver of the Borrower or of the whole or any substantial part of the Borrower's facilities, or approving a petition filed against the Borrower seeking reorganization of the Borrower under any applicable law or statute of the United States of America or any state thereof, and such order, judgment or decree shall not be vacated or set aside or stayed within sixty (60) days from the date of the entry thereof;

- 19 -

(g)    if, under the provisions of any other law for the relief or aid of debtors, any court of competent jurisdiction shall assume custody or control of the Borrower's facilities, and such custody or control shall not be terminated within sixty (60) days from the date of assumption of such custody or control;

(h)    any Event of Default as defined in and under the Indenture shall have occurred and be continuing; or

(i)    any Event of Default as defined in and under the Master Indenture shall have occurred and be continuing.

Section 6.2    <u>Remedies on Default</u>.

If a Loan Default Event shall occur, then, and in each and every such case during the continuance of such Loan Default Event, the Issuer and Trustee, but subject to the limitations in the Indenture as to the enforcement of remedies and subject to their respective rights and protections under the Indenture, may take such action as each deems necessary or appropriate to collect amounts due hereunder, to enforce performance and observance of any obligation or agreement of the Borrower hereunder or to protect the interests securing the same, and may, without limiting the generality of the foregoing:

(a)    Exercise any or all rights and remedies given hereby or available hereunder or given by or available under any other instrument of any kind securing the Borrower's performance hereunder (including, without limitation, the Mortgage, the Series 2018 Obligation and the Master Indenture);

(b)    By written notice to the Borrower declare all Loan Repayments and Additional Payments to be immediately due and payable under this Loan Agreement, whereupon the same shall become immediately due and payable; provided, however, that Loan Repayments shall become immediately due and payable upon the acceleration of the Bonds or the Series 2018 Obligation without the requirement of such written notice; and

(c)    Take any action at law or in equity to collect the payment required hereunder then due, whether on the stated due date or by declaration of acceleration or otherwise, for damages or for specific performance or otherwise to enforce performance and observance of any obligation, agreement or covenant of the Borrower hereunder.

Notwithstanding any other provision of this Loan Agreement or any right, power or remedy existing at law or in equity or by statute, the Issuer or the Trustee shall not under any circumstances declare the entire unpaid aggregate amount of the payment due hereunder to be immediately due and payable except in accordance with the directions of the Master Trustee if the Master Trustee shall have declared the aggregate principal amount of the Series 2018 Obligation and all interest thereon immediately due and payable in accordance with Section 6.02 of the Master Indenture. Nothing herein shall be construed to require the Issuer to exercise any rights or remedies provided herein or in the Indenture.

- 20 -

Section 6.3    Discontinuance or Abandonment of Default Proceedings.

If any proceeding taken by the Trustee on account of any Loan Default Event shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee, then and in every case the Issuer, the Trustee and the Borrower shall be restored to their former position and rights hereunder, respectively, and all rights, remedies and powers of the Issuer and the Trustee shall continue as though no such proceeding had taken place.

Section 6.4    Remedies Cumulative.

No remedy conferred upon or reserved to the Issuer or the Trustee hereby or now or hereafter existing at law or in equity or by statute, shall be exclusive but shall be cumulative with all others.  Such remedies are not mutually exclusive and no election need be made among them, but any such remedy or any combination of such remedies may be pursued at the same time or from time to time so long as all amounts realized are properly applied and credited as provided herein.  No delay or omission to exercise any right or power accruing upon any Loan Default Event shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient by the Issuer or the Trustee.  In the event of any waiver of a Loan Default Event hereunder, the parties shall be restored to their former positions and rights hereunder, but no such waiver shall extend to any other or subsequent Loan Default Event or impair any right arising as a result thereof.  In order to entitle the Trustee to exercise any remedy reserved to it, it shall not be necessary to give notice other than as expressly required herein.

Section 6.5    Application of Moneys Collected.

Any amounts collected pursuant to action taken under this Article shall be applied in accordance with the provisions of Article VII of the Indenture and to the extent applied to the payment of amounts due on the Bonds shall be credited against amounts due on the Series 2018 Obligation.

Section 6.6    Notice of Default.

The Borrower agrees to give the Trustee, the Master Trustee, the Bondholder Representative and the Issuer, promptly upon its becoming aware of the existence thereof, written notice of (i) any action referred to in Section 6.1(c), 6.1(f) or 6.1(g) filed by or against the Borrower or (ii) the occurrence of any other event or condition which constitutes, or that with the giving of notice or the passage of time or both would constitute, a Loan Default Event.

Section 6.7    Attorney's Fees and Other Expenses.

If, as a result of the occurrence of a Loan Default Event, the Issuer, the Bondholder Representative or the Trustee employs attorneys or incurs other expenses for the collection of payments due hereunder or for the enforcement of performance or observance of any obligation or agreement on the part of the Borrower, the Borrower shall, on demand, reimburse the Issuer or the Trustee, as the case may be, for the reasonable fees of such attorneys and such other reasonable expenses so incurred.

- 21 -

# ARTICLE VII

# MISCELLANEOUS

Section 7.1   <u>Amendments and Supplements</u>.

This Loan Agreement may be amended, changed or modified only as provided in Section 6.08 of the Indenture. The Issuer and the Borrower agree to cooperate reasonably in connection with any necessary or desirable amendment, change or modification to this Loan Agreement, the Indenture or any other agreement or instrument in respect of the Bonds.

Section 7.2   <u>Time of the Essence; Nonbusiness Days</u>.

Time shall be of the essence for purposes of this Loan Agreement. When any action is provided for herein to be done on a day named or within a specified time period, and the day or the last day of the period falls on a day other than a Business Day, such action may be performed on the next ensuing Business Day with the same effect as though performed on the appointed day or within the specified period.

Section 7.3   <u>Binding Effect</u>.

This instrument shall inure to the benefit of and shall be binding upon the Issuer and the Borrower and their respective successors and assigns, subject to the limitations contained herein; provided, however, that the Trustee shall have only such duties and obligations as are expressly given to it hereunder.

Section 7.4   <u>Entire Agreement</u>.

This Loan Agreement, together with all agreements and documents incorporated by reference herein, constitutes the entire agreement of the parties and is not subject to modification, amendment, qualification or limitation except as expressly provided herein.

Section 7.5   <u>Severability</u>.

If any covenant, agreement or provision, or any portion thereof contained in this Loan Agreement, where the application thereof to any Person or circumstance is held to be unconstitutional, invalid or unenforceable, the remainder of this Loan Agreement and the application of such covenant, agreement or provision, or portion thereof, to other Persons or circumstances, shall be deemed severable and shall not be affected thereby, and this Loan Agreement shall remain valid, and the Bondholders shall retain all valid rights and benefits accorded to them under this Loan Agreement and the Constitution and laws of the State.

Section 7.6   <u>Notices</u>.

(a)   Unless otherwise expressly specified or permitted by the terms hereof, all notices, consents or other communications required or permitted hereunder shall be deemed sufficiently given or served if given by confirmed Electronic Means or in writing,

mailed by first-class mail, postage prepaid and addressed as provided in Section 11.07 of the Indenture.

(b)    The Borrower, the Issuer and the Trustee may at any time and from time to time by notice in writing to the other Persons listed in Section 7.6(a) designate a different address or addresses for notice under this Loan Agreement.

Section 7.7    Term.

Except as otherwise provided herein this Loan Agreement shall remain in full force and effect from the date of execution hereof until no Bonds remain Outstanding under the Indenture and all payments required hereunder have been made.

Section 7.8    Counterparts.

This Loan Agreement may be executed in several counterparts, each of which shall be an original and all of which shall constitute one instrument.

Section 7.9    Governing Law; Venue.

This Agreement is governed by the laws of the State, without regard to the choice of law rules of the State.  Venue for any action under this Agreement to which the Issuer is a party shall lie within the district courts of the State, and the parties hereto consent to the jurisdiction and venue of any such court and hereby waive any argument that venue in such forums is not convenient.

Section 7.10    Continuing Disclosure.

The Borrower hereby covenants and agrees that it will comply with and carry out the provisions of the Continuing Disclosure Undertaking, which complies with the provisions of Rule 15c2-12 promulgated by the Securities and Exchange Commission (as amended from time to time, the "Rule").  Notwithstanding any other provision of this Agreement, failure of the Borrower to comply with the Continuing Disclosure Undertaking shall not be considered a Loan Default Event; however, the Trustee may or any Bondholder or Beneficial Owner may take such actions as may be necessary and appropriate, including seeking specific performance by court order, to cause the Borrower to comply with its obligations under this Section 7.10.

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed by its duly authorized officers, all as of the date first above written.

CITY OF HILLS, IOWA

By _____
Mayor

Attest:

By _____
City Clerk

(Seal)

MERCY HOSPITAL, IOWA CITY, IOWA

By _____
Chairman, Board of Directors

[Execution Page for Loan Agreement]

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed by its duly authorized officers, all as of the date first above written.

CITY OF HILLS, IOWA


By _____
    Mayor

Attest:

By _____
    City Clerk


(Seal)


MERCY HOSPITAL, IOWA CITY, IOWA


By _____
    Chairman, Board of Directors


[Execution Page for Loan Agreement]