**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) COMPELLING
CONTRACTUAL PERFORMANCE UNDER ALTERA AGREEMENT,
(II) ENFORCING THE AUTOMATIC STAY, AND (III) GRANTING
RELATED RELIEF**

Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) compelling Altera Digital Health Inc. ("Altera"), as successor to Allscripts Healthcare, LLC, to perform transition services required under that certain *Master Client Agreement* between Altera and the Debtors dated March 9, 2021 (as amended, modified, or supplemented, the "Altera Agreement"), (ii) finding Altera in violation of the automatic stay and awarding damages, and (iii) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT[1]**

1.      The Debtors are working diligently to conclude all required conditions for the value-maximizing sale of substantially all the Debtors' assets to the State of Iowa's University of Iowa (the "University" or the "Buyer"), which is currently scheduled to close on January 31, 2024. The Debtors and the University have collaborated on a daily basis, holding numerous town halls

---

[1]      Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them elsewhere in this Motion.

and employee meetings to provide comfort to the Debtors' physicians and employees, and otherwise taken all necessary steps to ensure that the transition of the operations of the Debtors' hospital (the "Hospital") is seamless and successful.

2.      Of the utmost importance to patient care and ongoing operations, the Debtors are required to ensure the smooth transition of their electronic medical record ("EMR") system and IT systems to the University.  The EMR system is the backbone of the Hospital's operations and is vital to the day-to-day operations of the Hospital to keep and track medical records, schedule patient visits, track medical histories, lab results, physicians' notes, and to the Hospital's ability to bill and collect.  Altera's services and licenses are critical to the operation of the EMR system, and as a result, without Altera's assistance in the transition, the Debtors could not continue to operate.

3.      A transition of the EMR system is a condition to closing with the University.  The Debtors have worked diligently to fulfill this condition by taking the necessary contractual steps to ensure that Altera provides transition services, as it is required to do under the Altera Agreement. Under the Altera Agreement, at the Debtors' election, Altera is obligated to provide transition services for one year after termination, and the Altera Agreement expressly provides that it is freely assignable to a purchaser of substantially all assets.  In light of the importance of the continued operation of the EMR system, the Debtors and the University have spent considerable time negotiating with Altera to provide those critical transition services.  Unfortunately, Altera has instead sought to exploit the situation by demanding a release from the Debtors in exchange for providing transition services.

4.      The Debtors believe that they have valuable claims and causes of action against Altera for its role in willfully failing to properly implement the EMR system in 2022 in accordance with the Altera Agreement.  The fall-out from these failures by Altera created a massive cash

shortfall in 2022 and 2023, as the Debtors' ability to bill and collect accounts receivable was significantly impaired, and ultimately was a primary cause of the filing of these Chapter 11 Cases. These are not new issues, and Altera was well aware (even prior to the commencement of these Chapter 11 Cases) of the significant harm caused by Altera to the Debtors' liquidity as part of the failed EMR roll-out in 2022.[2]

5.      Notwithstanding these significant issues, Altera has negotiated the terms of a transition services agreement with the University but refuses to execute the agreement unless the Debtors agree to a release of all claims and causes of action against Altera and its related parties. Standing on the precipice of closing the $28 million transaction with the University, which would ensure continuity of care and save more than 1,000 jobs in the community, Altera now seeks to hold the Debtors hostage by forcing them to choose between closing the sale with the University, and granting a release against a party that has caused significant financial harm to the Debtors.

6.      Altera's demands and failure to meaningfully cooperate with the Debtors and the University has sown uncertainty and threatened to derail the Debtors' sale transaction. Unfortunately for Altera, their harmful actions run contrary to the plain language of the Altera Agreement, which itself requires Altera to provide the very same transition services that the Debtors seek (without extracting an improper release from the Debtors' estates). Put simply, Altera has overplayed its hand, and should be compelled to perform transition services as contemplated under the Altera Agreement. To the extent there are valuable causes of action that can be asserted by the Debtors' estates against Altera, those should be reserved for another day and not released simply because Altera wrongly believes it holds leverage against the Debtors by

---

[2]      The Debtors described these issues in the "Events Leading Up To The Chapter 11 Cases" portion of the *Declaration of Mark E. Toney In Support of Chapter 11 Petitions and First Day Pleadings*, filed on the Petition Date [Docket No. 27] (the "First Day Declaration"). The Debtors also met with Altera prior to the Petition Date to seek a consensual resolution of the potential causes of action

acting as a potential roadblock to the closing of the Sale.  These actions should not be countenanced by the Court.

7.      Accordingly, the Court should enter an order compelling Altera to perform their transition services obligations and for damages for violation of the automatic stay.

## RELIEF REQUESTED

8.      By this Motion, the Debtors respectfully request that the Court enter the Proposed Order (i) compelling specific performance of the Altera Agreement by Altera so that Altera provides transition services to the University through and including March 9, 2025, pursuant to the Transition Services Right (as defined below), (ii) finding Altera in violation of the automatic stay and awarding damages, and (iii) granting related relief.

## JURISDICTION AND VENUE

9.      The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Public Administrative Order entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

10.     The legal predicates for the relief requested herein are sections 105(a), 362, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

11.     The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

I.    **Altera Agreement and EMR Implementation Issues**

12.    The Debtors use an EMR system to keep and track medical records, including scheduling patient visits, tracking medical histories, lab results, and physicians' notes, among other things in the operation of the Hospital.  The EMR system is vital information technology ("IT") infrastructure and essential for the day-to-day operations of the Hospital and the Debtors' associated clinics.

13.    On March 9, 2021, the Debtors entered into the Altera Agreement with Allscripts Healthcare Solutions, Inc., which subsequently was acquired by Harris Computer Corporation and rebranded as Altera Digital Health, to implement a needed upgrade to their EMR system.  A copy of the Altera Agreement is attached as **Exhibit B** and filed under seal.  Pursuant to the Altera Agreement, Altera is required to provide the Debtors with software services and remote hosting services.  Stated simply, Altera provides licenses for and operates the Debtors' essential EMR system, but also serves as the IT infrastructure and support system that is the lifeblood of the Debtors' operations.

14.    Altera's EMR implementation, which went live in March 2022, was an immediate and catastrophic failure. The Hospital suffered from severe operational problems, including difficulties in coding, billing, and collecting for patient encounters, an inability to submit regulatory reports on time, and misconfigured workflows.  Consequently, the flawed system caused a precipitous loss of revenue in late 2022 and early 2023 due to delayed patient bill submissions, resulting in a substantial backlog of accounts receivable payments that could not be collected promptly.  As depicted in the chart below, the Debtors' accounts receivable ballooned by more than 40% during this period despite lower year-over-year net patient revenues.



15.     As a result of these issues relating to Altera's implementation, the Debtors' financial liquidity was severely affected during the latter half of 2022 and the first quarter of 2023, which triggered alleged covenant defaults in the Debtors' bond financings and ultimately forced the Debtors to commence the restructuring negotiations that eventually forced the Debtors to seek relief under chapter 11.

16.     Notwithstanding its failure to provide software and services to the standard required under the contract, in mid-2023, Altera asserted that the Debtors owed Altera approximately $9.8 million.[3]  Due to Altera's pervasive non-performance, the Debtors dispute that they owe any amounts to Altera and further believe that the Debtors and their estates have valuable affirmative claims against Altera for its reckless EMR implementation.

17.     However, the Debtors were focused on maintaining patient care against the backdrop of their worsening financial liquidity.  Rather than becoming embroiled in costly litigation, on August 1, 2023, the Debtors and Altera entered into a modification of the Altera Agreement (the "Modification"), a copy of which is attached as **Exhibit C** and filed under seal,

---

[3]     Altera has filed proof of claims in the amount of $9,625,739.15.  *See* Claim Nos. 10273 and 10283.

modifying the payment terms of the Altera Agreement to provide for payments in advance at a reduced rate while reserving both parties' rights as to the amount, if any, owed to each other. The Debtors have paid Altera post-petition for all amounts due and owing under the terms of the Modification.

## II.   The Chapter 11 Cases and Sale Process

18.    On August 7, 2023, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

19.    On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "UCC") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023, the U.S. Trustee appointed the Official Committee of Pensioners (the "Pension Committee") [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

20.    Information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the First Day Declaration.

21.    As set forth in the First Day Declaration, the failed EMR implementation was a significant contributing factor to the Debtors' financial difficulties in 2022 and 2023, that ultimately necessitated the filing of these Chapter 11 Cases. The Debtors included claims against Altera in connection with the EMR implementation in 2022 in their schedule of assets and liabilities. *See* Docket Nos. 135 and 136 at section 74.1.

22.     Shortly after commencing these Chapter 11 Cases, the Debtors sought to commence a sale process.  On August 9, 2023, the Debtors filed a motion to sell substantially all their assets under section 363 of the Bankruptcy Code.  *See* Docket No. 58.

23.      Following a sale and auction process, on October 27, 2023, the Debtors declared the University as the successful bidder. *See* Docket No. 420. On November 7, 2023, the Court entered an order approving the Debtors' sale to the University and the Debtors' entry into the underlying asset purchase agreement with the University (the "APA"). *See* Docket No. 476.

### III.   Altera Transition Services Required Under the APA

24.     Pursuant to Section 6.2 of the APA with the University, a closing condition to the sale is that the Buyer shall have entered into transition services agreements with such material third parties as may be necessary to continue to operate the Hospital following closing, which is currently contemplated for January 31, 2024 (the "Closing Date").

25.     Given the contemplated Closing Date, the Debtors have expended significant resources, time, and energy in recent weeks working collaboratively with the University to ensure a smooth and seamless transition, which cannot occur without leaving intact the IT infrastructure necessary for the University to continue to operate the Hospital and provide critical patient care. The University has advised the Debtors that it will require at least one year of transition services from Altera to transition the Debtors' information technology infrastructure to the University.

26.     The University and Altera have engaged in discussions regarding the terms of a potential transition services agreement (the "TSA").  The University has committed to paying Altera reasonable value for its services during this transition period, which is not only a condition

to closing, but absolutely vital for the operations of the Hospital to continue.[4]   The Debtors understand that the University and Altera are close to an agreement on the terms of the TSA, except Altera has refused to enter into the agreement unless and until Altera receives a full and complete release from the Debtors' estates, including any claims that the Debtors' estates have related to the EMR implementation.

27.   The Debtors are unwilling to provide Altera of a release of potentially valuable causes of action without consideration.  And although the Debtors have sought to achieve consensus without involving the Court, to date, Altera has refused to engage in any meaningful discussions until the Debtors grant the release.

28.   Section 14.3 of the Altera Agreement provides for transition services (the "Transition Services Right") if the Altera Agreement is terminated for any reason other than a breach by the Debtors.  Section 14.3 of the Altera Agreement specifically states:



---

[4]      The Debtors understand that the proposed pricing by Altera for services to the University greatly exceeds the pricing under the Altera Agreement, notwithstanding that the Transition Services Right (as defined herein) provides for ███████████████████████████

29.     As a result of Altera's continuing and material breaches of the Altera Agreement, and to ensure that the University is able to rely on transition services following the Closing Date, on December 8, 2023, the Debtors provided written notice of termination of the Altera Agreement (the "December 8 Termination Letter") effective as of March 9, 2024, (the "Termination Date"), and invoked ███████████████████████████████████████████████ one year of transition services through and include March 9, 2025.  The Debtors followed up with a second termination letter on January 9, 2024 (together with the December 8 Termination Letter, the "Termination Letters"), ██████████████████████████████████████ ████████████████████████████.  In each of the Termination Letters, the Debtors requested that Altera confirm its commitment to abide by the terms of the Altera Agreement to provide transition services to the Buyer, but again, Altera has refused to do so, absent a release by the Debtors' estates of all causes of action against Altera.

30.     Altera filed the Altera Motion to further pressure the Debtors to grant the release Altera is seeking.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### I.     The Court Should Compel Altera to Provide Transition Services Pursuant to the Obligations Contained in the Altera Agreement

31.     The Court should compel Altera to provide transition services, which are the very same obligations that it contracted to provide in the Altera Agreement.  This is particularly important where Altera's actions and threats of nonperformance have sown uncertainty and threatened the sale closing with the University.

32.     This Court may compel Altera to perform its contractual obligations.  *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 693 (Iowa 2020) (noting that specific performance is a possible equitable remedy for a breach of contract).  The decision to compel

specific performance rests within the court's sound discretion. *See Beckman v. Kitchen*, 599 N.W.2d 699, 702 (Iowa 1999). The object of this remedy "is to best effectuate the purpose for which a contract is made" and should be granted upon the terms and conditions justice requires. *Lange v. Lange*, 520 N.W.2d 113, 118 (Iowa 1994). An agreement will be enforced "where the specified thing or act contracted for, and not mere pecuniary compensation, is the redress practically required." *In re MJK Clearing, Inc.*, 286 B.R. 109, 124 (Bankr. D. Minn. 2002), *aff'd*, No. 01-4257 RJK, 2003 WL 1824937 (D. Minn. Apr. 7, 2003), *aff'd,* 371 F.3d 397 (8th Cir. 2004).

33.    Here, the Court should exercise its discretion and compel Altera to perform its transition service obligations under the Altera Agreement. Recognizing at the time of entering into the contract that the sudden shutoff of services could prove disastrous for Mercy Hospital, Altera contracted to provide transition services for an orderly transition upon termination of the Altera Agreement. Transition services upon termination of the Altera Agreement is a material term thereof. In the absence of an orderly transition, Altera will effectively shut down the Hospital and its patient care, since a functional EMR system is required for regulatory compliance and to run the daily operations of the Hospital. The result of Altera's failure to perform its obligations would likely derail the sale transaction with the University, disrupt patients' continuing care, and interfere with the Hospital's operations. Accordingly, monetary damages would be inadequate to protect the Debtors' interests. Thus, justice requires that the Court enforce the Altera Agreement and require Altera to perform the transition services that it contracted to provide.

34.    The Debtors have fulfilled the two contractual requirements to trigger the Transition Services Right. Specifically, the Debtors terminated the Altera Agreement pursuant to the Termination Letters, and the Debtors do not owe Altera any unpaid amounts in light of their breach and failure to perform. Absent a resolution between the Debtors and Altera, the Debtors

anticipate objecting to Altera's claim and contesting that any amounts are owed to Altera, particularly in light of the claims that the Debtors have against Altera. However, this issue is not ripe at the present time and the Debtors expect to continue working with Altera to resolve this dispute. In addition, the Debtors have fully paid all amounts due and owing under the Modification, meaning that the Debtors have paid all amounts current under the Altera Agreement. As discussed below, it is improper and unlawful for Altera to withhold contractually obligated services under the Altera Agreement in an effort to leverage the Debtors to provide a release for no consideration.

35.    Thus, the Court should exercise its discretion and compel Altera to perform transition services pursuant to the terms of the Altera Agreement.

## II.    The Court Should Enforce the Automatic Stay and Not Allow Altera to Seek to Extract a Release from the Debtors.

36.    Altera's demands for a release and failure to engage with the University to ensure appropriate transition services of the EMR system is little more than an attempt by Altera to exercise control against the Debtors and force the Debtors to give up a valuable claim. This violates the automatic stay.

37.    Section 362 of the Bankruptcy Code operates immediately upon a debtor's filing of a bankruptcy petition to stay various acts that could interfere with the orderly distribution of the bankruptcy estate. 11 U.S.C. § 362.

38.    "The § 362 automatic stay 'is among the most basic of debtor protections under bankruptcy law'" and "[t]he scope of the automatic stay is extremely broad." *In re Wood*, No. BR 07-01864, 2012 WL 1899254, at *2 (Bankr. N.D. Iowa May 24, 2012) (quoting *In re Vierkant*, 240 B.R. 317, 320 (B.A.P. 8th Cir.1999)).

39.     The scope of the automatic stay is very broad and applies to "all legal and equitable interest of the debtor in the property." *Matter of American Cent. Airlines, Inc*., 52 B.R. 567 (Bankr. N.D. Iowa 1985) (noting for purposes of the automatic stay the debtor's property includes its tangible and intangible property, such as contractual rights).  Therefore, the Debtors rights and interests in the Altera Agreement (including the requirement to provide transition services), as well as the valuable causes of action that the Debtors hold against Altera are protected by the automatic stay.

40.     "To recover damages under § 362, Debtors must show that they were injured by the violation of the stay and that the violation was willful." *In re Wood*, 2012 WL 1899254, at *2 (quoting *In re Forkner*, No. BR 10-01585, 2010 WL 5462543 (Bankr. N.D. Iowa Dec. 22, 2010)).

41.     "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition," regardless of intent.  *Id*.

42.     Upon a showing that party has violated the automatic stay, the Court must award "actual damages, including costs and attorneys' fees, and, in appropriate circumstances," the Court may award punitive damages. 11 U.S.C. § 362.

43.     Altera's demand for a release in exchange for transition services that it is obligated to provide pursuant to the Altera Agreement is a deliberate act taken with full knowledge of these bankruptcy cases.  Section 362(a)(3) of the Bankruptcy Code operates as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  The causes of action held by the Debtors' estates are clearly valuable property of the estate, and Altera's actions to extract a release in exchange for performing the services already contemplated under the Altera Agreement are akin to exercising control over property of the estate, and therefore violates section 362(a)(3) of the Bankruptcy Code.  *See, e.g.*,

*Computer Comms, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc.)*, 824 F.2d 725 (9th Cir.

1987); *In re Diamond*, 346 F.3d 224 (1st Cir. 2003) (finding that debtor's complaint sufficiently

alleged a stay violation where, during settlement negotiations, a creditor threatened to revoke a

debtor's real estate license if the debtor did not resolve an adversary proceeding in a manner

favorable to the creditor).

44.     The Debtors have been damaged by Altera's actions, including by incurring the

costs to bring this Motion. Therefore, the Court should enforce the automatic stay, find that Altera

has violated the automatic stay, and award appropriate damages to the Debtors, including punitive

damages.

## **NOTICE**

45.     The Debtors will provide notice of this Motion to the following parties or their

respective counsel: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department

of Revenue; (d) the United States Attorney for the Northern District of Iowa; (e) the Centers for

Medicare & Medicaid Services; (f) counsel to the Committee; (g) counsel to the Pension

Committee; (h) counsel to Altera, and (i) all parties entitled to notice pursuant to Bankruptcy Rule

2002. The Debtors submit that no other or further notice is required. The Debtors submit that, in

light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

46.     No prior request for the relief sought in this Motion has been made to this or any

other court.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Proposed Order substantially in the form attached hereto as **Exhibit A**: (i) compelling Altera to perform transition services under the Altera Agreement, (iii) finding Altera in violation of the automatic stay and awarding damages to the Debtors, and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: Cedar Rapids, Iowa
        January 12, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax: 515-283-8045
Email: mmcguire@nyemaster.com
       kmstanger@nyemaster.com
       dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        fperlman@mwe.com
              dsimon@mwe.com

ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this January 12, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

*/s/ Roy Leaf*

## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket No. __** |

**[PROPOSED] ORDER (I) COMPELLING CONTRACTUAL
PERFORMANCE OF ALTERA DIGITAL HEALTH, INC., (II)
ENFORCING THE AUTOMATIC STAY, AND (III) GRANTING
RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of the above-captioned debtors and

debtors-in-possession (the "Debtors") for the entry of an order (this "Order"): compelling

contractual performance of Altera Digital Health, Inc. ("Altera") and granting related relief, in

each case, as more fully described in the Motion; and the Court having found that it has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of the

Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having found that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and the Court having found that the

Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion

under the circumstances; and the Court having reviewed the Motion and the First Day Declaration

and having heard the statements in support of the relief requested therein at a hearing before the

Court; and the Court having determined that the legal and factual bases set forth in the Motion and

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Altera Motion is DENIED.

2.      The Motion to compel transition services is GRANTED as set forth herein.

3.      Altera shall perform transition services required under the Altera Agreement to the

Debtors and/or the University through and including March 9, 2025.

4.      Altera has been determined to violate the automatic stay found in section 362(a) of

the Bankruptcy Code, with damages owing by Altera to the Debtors' estates to be determined at a

future date by the Court.

5.      Nothing in the Motion or this Order or the relief granted (including any actions

taken or payments made by the Debtors pursuant thereto) shall be construed as (a) authority to

assume or reject any executory contract or unexpired lease of real property, or as a request for the

same, (b) an admission as to the validity, priority, or character of any claim or other asserted right

or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any

ground permitted by bankruptcy or applicable non-bankruptcy law, (c) a promise or requirement

to pay any claim or other obligation, or (d) granting third-party-beneficiary status, bestowing any

additional rights on any third party, or being otherwise enforceable by any third party.

6.      The Court finds and determines that the requirements of Bankruptcy Rule 6003 are

satisfied, and that the relief requested in the Motion is necessary to avoid immediate and irreparable

harm.

7.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and

enforceable immediately upon entry hereof.

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated and entered this _____ day of _____, 2024.

_____
Honorable Thad J. Collins, Chief Judge

**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone: (319) 286-7002
Facsimile: (319) 286-7050
Email: rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: mmcguire@nyemaster.com
          kmstanger@nyemaster.com
          dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700

Email:  fperlman@mwe.com
        dsimon@mwe.com
        ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: jhaake@mwe.com


*Counsel for Debtors and*
*Debtors-in-Possession*

**<u>EXHIBIT B</u>**

**Alterra Agreement**

# SEALED PURSUANT TO COURT ORDER DATED JANUARY 12, 2024

**<u>EXHIBIT C</u>**

**Modification**

# SEALED PURSUANT TO COURT ORDER DATED JANUARY 12, 2024