# EXHIBIT C



**mwe.com**

Daniel Simon
Attorney at Law
dmsimon@mwe.com
+1 404 260 8554

January 9, 2024

Altera Digital Health, Inc.
c/o Schuyler G. Carroll
345 Park Avenue
New York, NY 10154
scarroll@loeb.com

VIA EMAIL AND FIRST CLASS MAIL

Re:    *In re Mercy Hospital, Iowa City, Iowa, et al.* (Bankr. N.D. Iowa Case No. 23-00623)

Dear Schuyler:

As you know, we represent Mercy Hospital, Iowa City, Iowa ("Mercy" or the "Hospital") and certain of its affiliates and subsidiaries as debtors and debtors-in-possession (collectively, the "Debtors") in the above-referenced jointly-administered chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), which are currently pending before the Honorable Thad J. Collins in the United States Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court"). This letter is a follow-up to our correspondence to you dated December 8, 2023 (the "December 8 Letter"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the December 8 Letter.

To date, your client has continued to refuse to honor its contractual obligation to provide transition services to the University of Iowa (the "Purchaser"), unless the Debtors accede to your demand to extract an unwarranted release from the Debtors' estates. This improper demand for a release has the potential to jeopardize the upcoming closing of the sale and shutter the hospital, causing the loss of countless jobs and endangering patients' lives. Most concerning, of course, is that Altera's flat-out refusal to provide these transition services (absent a self-serving release) ***directly contradicts*** its obligations under the Altera Agreement. My December 8 Letter provided notice of the Debtors' termination of the Altera Agreement, effective March 9, 2024. In your response letter, you indicated that such termination was not effective because the Altera Agreement ran for a ten-year term. Although we disagree with your position, there is no doubt that we can terminate the Altera Agreement in light of Altera's material and incurable breaches under the Altera Agreement. To the extent our prior December 8 Letter was not an effective termination of the Altera Agreement (which it was), this letter provides notice of the Debtors' termination of the Altera Agreement for cause pursuant to Section 14.1 of the Altera Agreement.

As we outlined in our December 8 Letter, the Debtors' EMR system implemented by Altera was a complete and utter failure on the part of Altera and its predecessor, Allscripts. Over the course of nearly two years, the Debtors have continued to seek assistance from Altera in order to



1180 Peachtree Street NE Suite 3350  Atlanta GA 30309  Tel +1 404 260 8535  Fax +1 404 393 5260
*US practice conducted through McDermott Will & Emery LLP.*

DM_US 202876621-2.104125.0012

Altera Digital Health, Inc.
January 9, 2024
Page 2

remediate the harm caused by this EMR implementation.  Put simply, the Debtors are in chapter 11 and a primary cause of the filing was the willful failure of Altera to implement its EMR system as required by the Altera Agreement.  The chart below shows the dramatic and significant decline in hospital revenues attributable to your client's failures following the "go-live" of the EMR system in March of 2022.



Your client has been on notice of its failures under the Altera Agreement for some time, and the Debtors estimate that Altera's actions have caused tens of millions of dollars of damages to the Debtors and their estates.

Unfortunately, Altera is now seeking to use the sale of the Hospital as an opportunity to obtain a valuable release.  As I described in my prior December 8 Letter, however, that leverage is of no use where, as here, the Altera Agreement itself requires Altera to provide the very transition services that it refuses to provide (absent a release).  Accordingly, pursuant to Section 14.1, the Debtors hereby provide notice that they are terminating the Altera Agreement for cause, effective as of March 9, 2024 (the same date of termination provided by the December 8 Letter).  And although Altera's breaches are incurable, we have provided 60-days' notice as contemplated by Section 14.1 of the Altera Agreement.  This termination triggers Section 14.3 under the Altera Agreement, which *requires* Altera to provide transition services for up to one year following the termination date, subject to payment of the current rates being paid by the Debtors pursuant to the Agreement.

Time is of the essence, since the Debtors' sale to the University of Iowa is scheduled to close on or around January 31, 2024.  Please confirm to me **no later than January 11, 2024** of your client's willingness to abide by the terms of the Altera Agreement to provide transition services to the University of Iowa; otherwise, we will take all appropriate actions before the

McDermott
Will & Emery

DM_US 202876621-2.104125.0012

Altera Digital Health, Inc.
January 9, 2024
Page 3

Bankruptcy Court.  The Debtors' rights with respect to the Altera Agreement, including the ability at any time to rescind this notice, and any causes of action or claims against Altera are expressly reserved.

Despite the clear directive of the Altera Agreement to provide transition services, we remain hopeful of achieving a commercial resolution to these issues, in lieu of litigation.  Please do not hesitate to contact me to discuss a potential resolution of these issues.

Sincerely,

Daniel Simon

cc:   Felicia Gerber Perlman
      Mark E. Toney
      Marcus Perez
      Andrew Sherman
      Boris Mankovetskiy
      Nathan Coco
      David Gordon
      Janet Reasoner
      Paula Roby

McDermott Will & Emery

DM_US 202876621-2.104125.0012