**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | (Jointly Administered) |

**MCKESSON CORPORATION'S MOTION FOR ORDER
AUTHORIZING AND DIRECTING THE DISTRIBUTION OF PROCEEDS
FROM THE SALE OF THE DEBTORS' ASSETS AND FOR RELIEF FROM STAY**

Secured creditor McKesson Corporation and its affiliates ("McKesson") moves (the "Motion") for entry of an order authorizing and directing the distribution of proceeds from the above-captioned debtors' and debtor in possession's (the "Debtors") sale of McKesson's collateral to the State University of Iowa (the "Sale") to McKesson upon the closing of the Sale, and for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) in order to effectuate the relief sought herein.

In support of this Motion, McKesson respectfully states as follows:

**RELIEF REQUESTED**

1.      Pursuant to the *Second Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* [Docket No. 475] (the "Second Interim Cash Collateral Order"), and more specifically paragraph 4(g), McKesson requests entry of an order authorizing and directing the Debtors to distribute to McKesson the portion of the Sale Proceeds in the amount of the McKesson Claim (as that term is defined in the Second Interim Cash Collateral Order) including any unpaid fees and expenses.

2.      To the extent necessary, McKesson also requests relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1), (2), to effectuate the relief sought herein.

*/ / /*

1

## **FACTUAL BACKGROUND**

3.      On August 7, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Iowa.  The Debtors remain as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      On August 9, 2023, the Debtors filed the *Debtors' Motion for Entry of Order, (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 58] (the "Sale Motion").

5.      McKesson filed the following responses to the Sale Motion:

    a.  *McKesson's Response and Reservation of Rights to Debtors' Motion for Entry of Order, (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice thereof, (D) Approving the Assumption and Assignment Procedures, and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 323] ("McKesson's First Response");

    b.  *McKesson Corporation's Supplemental Response to Sale Motion* [Docket No. 443] ("McKesson's Second Response").

2

At the time of filing McKesson's First Response, McKesson believed that the McKesson Claim was approximately $450,000.00.

6.      On October 16, 2023, McKesson filed its proof of claim against the Debtors, asserting a total claim of $267,932.19 plus future interest, fees and expenses.  McKesson is the senior, secured creditor of Debtor Mercy Services Iowa City, Inc. ("Mercy Services").  McKesson holds the only "all asset" perfected security interest against Mercy Services' assets, including the Debtors' accounts receivable. That security interest secures trade credit for pharmaceutical and medical-surgical goods McKesson delivered to Mercy Services.  Among other assets, this claim is secured by about $4.85 million of current accounts receivable, making McKesson vastly over secured.  As of the date of the filing of this Motion, the amount of the McKesson Claim is $276,261.38 which includes post-petition interest, and is subject to the addition of the McKesson Fees and Expenses (as that term is defined in the Second Interim Cash Collateral Order). True and correct copies of the documents substantiating the McKesson Claim are attached hereto as **Exhibits A through C**.

7.      On November 7, 2023, the Court entered its *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Docket No. 476] (the "Sale Order").  Pursuant to the Sale Order, the purchase price is "$28,000,000, plus the Cure Amounts, plus an amount equal to the actual net operating losses (exclusive of restructuring professional fees and all other costs and expenses relating to the bankruptcy cases) incurred by the Debtors from December 1, 2023 until the Closing Date."(the "Sale Proceeds")  *See* Sale Order at ¶ II.

8.      The Sale Order provides that the transfer shall be free and clear of all liens, claims, and encumbrances, with such interests to attach to the Sale Proceeds with the same validity, force, and effect.  The sale is set to close on the later of "(a) January 31, 2024, (b) five (5) business days after satisfaction of the conditions set forth in ARTICLE VI [of the Asset Purchase Agreement] (other than those conditions that by their nature are to be satisfied at the Closing but subject to the

3

satisfaction of such conditions at the Closing), and (c) such other time or place as the Buyer and Sellers may agree" (the "Closing Date").

9.      Also on November 7, 2023, the Court entered the Second Interim Cash Collateral Order.  As adequate protection under the Second Interim Cash Collateral Order, the Debtors agreed not to oppose "a distribution to McKesson at closing of such sale in the amount of the McKesson Claim including any unpaid McKesson Fees and Expenses."  *See* Second Interim Cash Collateral Order, ¶ 4(g).  In reliance on this additional adequate protection, McKesson consented to the use of its cash collateral and further agreed to withdraw any objection it had to the sale.

10.      On January 16, 2024, McKesson filed its *Withdrawal of McKesson Corporation's Responses to Sale Motion* [Docket No. 653] ("McKesson's Withdrawal of Objection").

## LEGAL ARGUMENT

11.      By this Motion, McKesson respectfully requests that the Court enter an order authorizing and directing the Debtors to distribute to McKesson the portion of the Sale Proceeds required to satisfy the McKesson Claim immediately after the Closing Date.

12.      Courts have routinely allowed interim distributions to secured creditors where the senior secured creditor was entitled to such proceeds.  *See generally United States v. Valley Nat'l Bank (In re Decker)*, 199 B.R. 684 (B.A.P. 9th Cir. 1996) (affirming distribution of sale proceeds secured creditor holding senior lien); *In re LMS Holding Co.*, 197 B.R. 915, 916-17 (Bankr. N.D. Okla. 1996) (court authorized distribution of all sales proceeds to undersecured creditor); *Nat'l Bank of Commerce v. McMullan (In re McMullan)*, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996), *aff'd* 162 F.3d 1164 (8th Cir. 1998) (directing chapter 11 trustee to sell debtor's assets and make interim distributions according to Bankruptcy Code priorities); *In re Ridgely Communications, Inc.*, 139 B.R 374 (Bankr D. Md. 1992) (granting secured creditor's motion to distribute sale proceeds from sale of FCC license despite dispute that debtor did not have property interest in FCC license); *Century Brass Prods., Inc. v. Colonial Bank (In re Century Brass Prods., Inc.)*, 95 B.R. 277 (D. Conn. 1989) (ordering proceeds of sale turned over to the secured creditor with prior security interest where bankruptcy court determined and district court agreed that senior

secured creditor was entitled to sales proceeds); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934 (Bankr. S.D. Tex. 1988) (court authorized interim distribution of sales proceeds to secured creditor where creditor held senior lien).

13.     As detailed above, McKesson is the senior secured creditor of Mercy Services and holds the only all asset perfected security interest in Mercy Services' assets.  Any delay in paying the McKesson Claim only serves to diminish assets of the estate to the detriment of the Debtors, the general and priority unsecured creditors, and the administrative claimants.  Further, one of the assets not included in the Sale Motion is the accounts receivable of Mercy Services.  If the McKesson Claim can be satisfied by the Sale Proceeds, the accounts receivable can be used to pay administrative expenses of the estates.  Due to the relatively small size of the McKesson Claim (relative to the claims of other interested parties), there are more than sufficient funds on hand to satisfy the McKesson Claim in full.  Upon payment of the full amount of the McKesson Claim, McKesson will promptly file a termination statement for its security interest in Mercy Services' assets, including the accounts receivable.

14.     To the extent necessary, McKesson also requests that court enter an order granting it relief from the automatic stay to effectuate the distribution sought herein.

15.     On request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay, with respect to a stay of an act against property, if the debtor does not have any equity in the property; and such property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  Equity refers to the difference between the value of the property in question and all encumbrances upon it.  *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984) (citing *In re Faires*, 34 B.R. 549, 551 (Bankr. W.D. Wash. 1983); *In re Shriver*, 33 B.R. 176, 186-87 (Bankr. N.D. Ohio 1983).  The McKesson Claim, combined with the claim of Computershare Trust Company, N.A. as Master Trustee and Preston Hollow as Bondholder Representative, greatly exceeds the value of the Sale Proceeds.

16.     Once it can be established that the debtor lacks equity in the property at issue, it is the debtor's burden to prove that the property is necessary to an effective reorganization.  11 U.S.C.

§ 362(g).  The Debtors will be unable to meet this burden.  By selling substantially all of their assets, the Debtors will not be reorganizing and will, instead, be liquidating.  It is impossible for the property to be "necessary for an effective reorganization."

17.     Further, on request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay for *cause*.  11 U.S.C. § 362(d)(1).  "Cause" is not defined under the Bankruptcy Code and must be determined on a case-by-case basis.  *In re Hurst*, 212 B.R. 890, 893 (Bankr. W.D. Tenn. 1997) (citing *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994)).  Consent to relief from the automatic stay has been deemed "cause" under Section 362(d)(1).  *See In re A. Hirsch Realty, LLC*, 583 B.R. 583, 592 (Bankr. D. Mass. 2018) (citing *In re DB Capital Holdings, LLC*, 463 B.R. 142 (10th Cir. BAP 2010) ("when [a waiver of the automatic stay] is made a part of a confirmed plan or a court-approved settlement agreement, either with the consent of unsecured creditors or after they have received notice and an opportunity to object, absent changed circumstances, such waivers have routinely been enforced")).

18.     Because the Debtors have agreed, in the Second Interim Cash Collateral Order, not to oppose this Motion, the Debtors have effectively agreed to a waiver of the automatic stay.  As such, "cause" exists to grant the Motion and afford McKesson relief from the automatic stay to effectuate the distribution contemplated herein.

///

///

### CONCLUSION

WHEREFORE, McKesson respectfully requests that the court enter an order granting the

Motion and any further relief as the Court may deem just and proper.

Dated:  February 1, 2024

BRICK GENTRY P.C.

/s/*Nicholas F. Miller*
Nicholas F. Miller, Iowa AT0015361
6701 Westown Parkway, Suite 100
West Des Moines, IA 50266
Telephone (515) 446-3441
Nick.miller@brickgentry.com

*And Co-Counsel*

BUCHALTER, A Professional Corporation

/s/*Jeffrey K. Garfinkle*
Jeffrey K. Garfinkle, Esq., admitted *pro hac vice*
CA Bar No. 153496
Joseph A.G. Sakay, admitted *pro hac vice*
WSBA #24667
18400 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone:  (949) 224-6254
Email:  jgarfinkle@buchalter.com

ATTORNEYS FOR MCKESSON CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024, a copy of the foregoing pleading was electronically filed with the Clerk of Court. All parties of record registered with the CM/ECF filing system will receive notification of such filing through CM/ECF.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed: February 1, 2024

By: */s/Patricia D. Jolley*
Patricia D. Jolley, Paralegal