**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) ) ) | Case No. 23-00623 (TJC) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING THE SALE OF THE DEBTORS' INTEREST IN A JOINT VENTURE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF**

COMES NOW, Mercy Hospital, Iowa City, Iowa and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") granting the relief described below. In further support of the Motion, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, approving the sale of all of Debtor Mercy Services Iowa City, Inc. ("Mercy Services")'s interests in Progressive Rehabilitation Associates, LLC ("PRA") to Progressive Physical Therapy, PLLC ("Progressive") on the terms set forth in the *Unit Purchase Agreement* (the "Purchase Agreement"). An unexecuted copy of the Purchase Agreement is attached hereto as **Exhibit B**.[1]

---

[1] The Debtors will file an executed copy of the Purchase Agreement as a support document in the days following the filing of this Motion.

2. PRA is a physical therapy and rehabilitation service in Eastern Iowa with seven locations, including one in the medical plaza located on the Debtors' main hospital campus. Mercy Services owns 25% of the limited liability company interests in PRA and Progressive owns the remaining 75%.

3. While the Debtors are selling substantially all of their assets to the State University of Iowa (the "University"), the University determined that it will not be acquiring Mercy Service's interests in PRA. The Debtors' advisors therefore reached out to Progressive, PRA's co-owner with Mercy Services, to determine if Progressive was interested in acquiring the interests and becoming the 100% owner of PRA. Following negotiation, Progressive agreed to purchase all of Mercy Service's transferable interest in PRA ("Mercy Service's Interest") for $250,000.00 (the "Purchase Price").[2]

4. The sale of Mercy Service's Interests in PRA to Progressive is a sound exercise of the Debtors' business judgment. The Purchase Price represents the highest offer the Debtors have received for Mercy Service's Interest following their marketing efforts. The proceeds from the sale will provide a meaningful recovery for the Debtors' estates and represent a sound exercise of the Debtors' business judgment. The Debtors will continue their efforts to liquidate the Debtors' remaining interests in their other joint ventures.

5. Accordingly, the Debtors respectfully request that the Court approve this Motion, enter the Proposed Order, and approve the sale of Mercy Service's Interests to Progressive free and clear of all liens, claims, interests, and encumbrances.

---

[2] For the avoidance of doubt, notwithstanding the Purchase Agreement, the Debtors are in the process of reconciling their postpetition invoices and payments and reserve all rights whatsoever to seek any amounts overpaid by the Debtors to PRA during the postpetition period.

2

**JURISDICTION AND VENUE**

6. The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Public Administrative Order referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested in this Motion are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") The Debtors confirm their consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**I.    The Chapter 11 Cases**

8. On August 7, 2023 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

9. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10. On August 15, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023 the U.S. Trustee appointed an official committee of

pensioners (the "Pension Committee") in the Chapter 11 Cases [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

11. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

**II. Sale to the University**

12. The Debtors have commenced the Chapter 11 Cases to pursue the sale of all or substantially all of their assets pursuant to section 363 of the Bankruptcy Code to maximize the value of their estates and the recoveries of their stakeholders.

13. On August 8, 2023, the Debtors filed *Debtors' Motion for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 58] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors sought, among other things, authority from the Court to sell substantially all of their assets to the State University of Iowa (the "University").

14. Following the Debtors' extensive marketing efforts and two auctions, on November 7, 2023, the Court entered an order approving the Sale Motion and the sale of substantially all of the Debtors' assets (the "Sale") to the University [Docket No. 476] (the "Sale Order")

15. The Sale, however, does not include certain of the Debtors' interests in joint ventures that the Debtors participated in, including Mercy Service's Interest.

16. Accordingly, the Debtors' have undertaken efforts to monetize these joint venture interests and return value to their estates. *See Debtors' Application for Entry of Order (I) Expanding the Scope of Employment and Retention of H2C Securities, Inc. as Investment Banker to the Debtors and Debtors-in-Possession, (II) Approving the Terms of the Amendment to the H2C Engagement Letter, and (III) Granting Related Relief* [Docket No. 613].

### III. PRA

17. The Debtors' have held their interests in PRA for approximately 28 years.

18. PRA is governed by an *Operating Agreement* (the "Operating Agreement").

19. The Operating Agreement contains transfer restrictions on a member's interest in PRA. In particular, the Operating Agreement provides that a member cannot sell their interest in PRA without first offering that interest to any other members, The Operating Agreement further provides a procedure for valuing that interest.

20. Because of the transfer restrictions contained in the Operating Agreement, the Debtors identified Progressive as the most likely party to acquire Mercy Service's Interests.

### IV. Negotiations and the Purchase

21. After it became clear that the University was not interested in trying to acquire the Debtors' interest in PRA, the Debtors and Progressive had a number of discussions about

5

Progressive repurchasing Mercy Service's Interest in accordance with the terms of the Operating Agreement.

22. The result of these good faith and arms'-length discussions is the Purchase Agreement.

23. Pursuant to the PRA Purchase Agreement, Progressive has agreed to pay the Purchase Price in exchange for Mercy Service's Interest.

24. The Purchase Price was negotiated in accordance with the valuation mechanisms provided for in the Operating Agreement.

25. The Purchase Price represents the highest or otherwise best offer that the Debtors have received for Mercy Service's Interests. Further, the sale to Progressive on the terms set forth in the PRA Purchase Agreement is in accordance with the Operating Agreement and procedures set forth therein for the sale of a member's interest in PRA. The sale to Progressive, therefore, represents a sound use of the Debtors' business judgment and satisfies the requirements of Bankruptcy Code section 363.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

**I.   The Proposed Sale Satisfies the Requirements of Section 363 of the Bankruptcy Code**

26. Ample authority exists for approval of the sale contemplated by this Motion. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although that provision does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Chateaugay*

6

*Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-390 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

27. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del.1985)).

### A. The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale

28. A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing that the main goal of any proposed sale of property of a debtor's estate is to maximize value); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986).

29. A strong business justification exists for the sale of Mercy Service's Interest in PRA. The sale of Mercy Service's Interest is continuing the process started by the Sale Motion of

maximizing the value of the Debtors' assets and recoveries for the Debtors' stakeholders. These value-maximizing efforts—the goal of any chapter 11 proceeding—clearly establish the justification under Bankruptcy Code section 363.

### B. Notice of this Motion is Reasonable and Appropriate

30. Notice of this Motion complies with Bankruptcy Rule 2002 and is accordingly reasonable and appropriate. Pursuant to Bankruptcy Rule 2002(a)(2), all creditors must receive at least 21-days' notice of the proposed sale of a debtor's assets. Fed. R. Bankr. P. 2002(a)(2). A copy of a notice of sale pursuant to this Motion is attached hereto as **Exhibit C** (the "Sale Notice"). The Sale Notice will be served on all creditors in the case, thereby satisfying Bankruptcy Rule 2002's requirements. Additionally, the Sale Notice contains substantially the same language required by Local Rule 6004-1 and is incompliance therewith.

### C. The Purchase Price is Fair and Reasonable

31. The Purchase Price is a fair and reasonable price for Mercy Service's Interests. The Purchase Price is the highest or otherwise best offer the Debtors have received for Mercy Service's Interest. Moreover, the parties arrived at the Purchase Price utilizing the procedures set forth in the Operating Agreement for valuing a member's interest in PRA. The Purchase Price, therefore, satisfies the requirements of Bankruptcy Code section 363.

### D. Progressive Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

32. Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states the following: "The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . entity that purchased . . . such

property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal." 11 U.S.C. § 363(m). Section 363(m) fosters the "policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 n.13 (3d Cir. 2001) (quoting *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 647–48 (3d Cir. 1997)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

33. While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *Abbotts Diaries*, 788 F.2d at 147 (explaining that to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).

34. The Debtors submit that Progressive is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. The Purchase Agreement was negotiated at arm's length, in good faith between the Debtors and Progressive, and in accordance with the procedures set forth in the Operating Agreement. Progressive, therefore, should be afforded the protections of Bankruptcy Code section 363(m).

9

35. Based on the foregoing, the Debtors submit that they have demonstrated that the proposed Sale is a sound exercise of the Debtors' business judgment and should be approved as a good faith transaction.

## II. Mercy Service's Interst Should Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances Under Section 363(f) of the Bankruptcy Code

36. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

 (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

 (b) such entity consents;

 (c) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

 (d) such interest is in bona fide dispute; or

 (e) such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

37. Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free

and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

38. The Debtors submit that the sale of Mercy Service's Interests free and clear of liens, claims, interests and encumbrances will satisfy one or more of the requirements under section 363(f). To the extent a party objects to the sale on the basis that it holds a prepetition lien or encumbrance on Mercy Service's Interests, the Debtors believe that (i) that such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property, under section 363(f)(3) of the Bankruptcy Code; (ii) any such party could be compelled to accept a monetary satisfaction of such claims, under section 363(f)(5) of the Bankruptcy Code, or (iii) that such lien is in bona fide dispute, under section 363(f)(4) of the Bankruptcy Code.

39. The Debtors will send the Sale Notice to any known purported prepetition lienholders. If such lienholders do not object to the proposed sale, then their consent should reasonably be presumed. Accordingly, the Debtors request that, unless a party asserting a prepetition lien, claim or encumbrance on Mercy Service's Interest timely objects to this Motion, such party shall be deemed to consent. *See Hargave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (highlighting that by not objecting to a sale motion, a creditor is deemed to consent to the relief requested).

40. The purpose of a sale order authorizing the transfer of assets free and clear of all claims, liens and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Accordingly, the Debtors request that the Court authorize the sale of the assets free and clear of any liens, claims, interests, and encumbrances (with the exception of permitted encumbrances and assumed liabilities), in accordance with section 363(f) of the Bankruptcy Code, subject to such liens, claims,

11

interests, and encumbrances attaching to the proceeds thereof in the same order of relative priority, with the same validity, force, and effect as prior to such.

### IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

41.  The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in the Motion is necessary for the Debtors to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief. Moreover, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a).

### RESERVATION OF RIGHTS

42.  Nothing in the Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise or requirement to pay any claim or other obligation; or (d) granting third-party-beneficiary status, bestowing any additional rights on any third party, or being otherwise enforceable by any third party.

### NOTICE

43.  The Debtors will provide notice of the Motion via the Sale Notice to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department of Revenue; (d) the United

States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid Services; (f) counsel to the Committee; (g) counsel to the Pension Committee; (h) counsel for the Secured Bondholder Representative; (i) the Federal Trade Commission; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required The Debtors submit that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and granting such other and further relief as the Court may deem just and proper.

Dated: Cedar Rapids, Iowa
February 1, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone: (319) 286-7002
Facsimile: (319) 286-7050
Email: rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax: 515-283-8045
Email: mmcguire@nyemaster.com
kmstanger@nyemaster.com
dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: fperlman@mwe.com
dsimon@mwe.com
ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)

2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:   (214) 295-8000
Facsimile:   (972) 232-3098
Email:       jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

### Certificate of Service

The undersigned certifies, under penalty of perjury, that on this February 1, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

*/s/ Roy Leaf*