IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| Debtors. | ) Jointly Administered |

**DEBTORS' APPLICATION FOR ENTRY OF ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF CBRE, INC. AS REAL ESTATE BROKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION EFFECTIVE AS OF JANUARY 15, 2024, AND (II) APPROVING THE TERMS OF THE EXCLUSIVE SALES LISTING AGREEMENT**

Mercy Hospital, Iowa City, Iowa ("Mercy Hospital") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit this application (this "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the relief described below. In support of this Application, the Debtors submit the *Declaration of William J. Wright in Support of Retention of CBRE, Inc.*, a copy of which is attached hereto as **Exhibit B** (the "Wright Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1. By this Application, the Debtors seek entry of the Proposed Order authorizing the Debtors to employ and retain CBRE, Inc. ("CBRE") as their real estate broker, effective as of January 15, 2024, to assist with the sale of the Debtors' real property located at 601 E Bloomington Street, Iowa City, Johnson County, Iowa (the "Real Estate") under the terms of engagement set forth in the *Exclusive Sales Listing Agreement* dated January 30, 2024 (the "Listing Agreement"), a true and correct copy of which is attached as Annex 1 to **Exhibit A**.

1

2. Pursuant to the Listing Agreement, the Debtors propose to retain CBRE to sell the Real Estate and, in exchange, provide a commission payment to CBRE upon the sale of the Real Estate. The Debtors believe that CBRE's expertise in commercial medical office building real estate sales in Iowa is essential to assisting the Debtors in quickly and efficiently selling the Real Estate, thereby maximizing value to the Debtors' estates. Accordingly, the Debtors respectfully request that the Court approve their retention of CBRE on the terms and conditions set forth herein and in the Listing Agreement.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. The Debtors confirm their consent to the entry of a final order by the Court in connection with this Application in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### I. The Chapter 11 Cases

6. On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

7. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023 the U.S. Trustee appointed an official committee of pensioners (the "Pension Committee") in the Chapter 11 Cases [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

9. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

### II. The Real Estate

10. The Real Estate includes a commercial medical office building that was originally intended to be built into a cancer center for the Debtors, but was never completed and was excluded from the sale of substantially all of the Debtors' assets to the State University of Iowa (the "University") that closed on January 31, 2024. The Debtors intend to list the Real Estate for sale for approximately $3,750,000.00.

**III. Retention of CBRE**

11. The Debtors require a qualified and experienced real estate broker licensed in Iowa with the resources, capabilities, and experience of CBRE to assist them in selling the Real Estate, which will ultimately provide significant value to the Debtors' estates.

12. Prior to selecting CBRE, the Debtors held two rounds of interviews with four potential real estate brokers. Throughout the interview process, the Debtors consulted with financial advisors for the Committee, Pension Committee, and Preston Hollow Community Capital, Inc. and Computershare Trust Company, N.A. (together, the "Bondholders"). The financial advisors for these parties voiced support for the Debtors selecting the broker that the Debtors' advisors felt were best suited to sell the Real Estate. Additionally, a financial advisor for the Committee joined the final round of interviews with CBRE and another potential candidate.

13. Following this interview process, the Debtors selected CBRE to serve as broker to sell the Real Estate based on CBRE's experience, qualifications, and market reach.

14. CBRE is well qualified to serve as the Debtors' real estate broker. As detailed in the Wright Declaration, CBRE is a global leader in commercial real estate services and investments with an office in Des Moines, Iowa. CBRE's Des Moines office is a leading commercial brokerage firm with over 37 professionals and staff members. CBRE has experience in the sale of medical office buildings and commercial real estate of similar kind and quality to the Debtors' Real Estate.

15. CBRE provides real estate services across Iowa. CBRE has experience marketing and selling commercial healthcare properties in Iowa City, Cedar Rapids, Coralville, Hiawatha, and other cities across Eastern Iowa.

4

16. CBRE has assembled a team of professionals that are uniquely situated to assist with the marketing and sale of the Real Estate, including Bill Wright, Chris Pendroy, Grant Wright and Dakota Little.

17. CBRE was previously employed by the Debtors with regards to the sale of a different medical office building located at 2460 Towncrest Drive, Iowa City, Iowa. CBRE listed the property in March 2022 and the property sold for $1,250,000.00 in May 2023. CBRE is therefore familiar with the Debtors, their historical operations, and the local medical office real estate market.

A.   **Scope of Employment**

18. Pursuant to the Listing Agreement, CBRE will advise and assist the Debtors in connection with the sale of the Real Estate, including: (a) providing a sales strategy to market the Real Estate, (b) communicating and negotiating offers, counteroffers, and notices with prospective buyer(s), (c) providing prospective buyer(s) access to the Real Estate, and (d) assistance with the purchase and closing of the Real Estate (collectively, the "Services").[1]

B.   **Professional Compensation**

19. As compensation for the Services, CBRE would be entitled to a sale commission equal to five percent (5%) of the gross sales price of the Real Estate, to be paid at closing of the sale of the Real Estate under the terms provided in the Commission Schedule to the Listing Agreement. The proposed sale commission is inclusive of a Cooperating Brokers fee as detailed

---

[1] The summary provided herein is for illustrative purposes only and is subject to the Listing Agreement in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Listing Agreement, the Listing Agreement will control. The Listing Agreement may be amended from time to time to modify the scope of services to reflect the requirements of the Debtors based upon the circumstances of the Chapter 11 Cases. Capitalized terms not otherwise defined in such summary shall have the meanings ascribed to them in the Listing Agreement.

5

in the Listing Agreement in order to incentivize a buyer's broker to engage on the sale of the Real Estate (the "Cooperating Broker Fee").

20. Additionally, in the event the Real Estate is sold to the University (or its related entities) or the City of Iowa City, CBRE's commission will be reduced to two-and-a-half percent (2.5%) of the gross sales price of the Real Estate, which amount would be paid to CBRE at closing of the sale of the Real Estate under the terms provided in the Commission Schedule to the Listing Agreement.

21. The Debtors believe that CBRE is well qualified to provide the foregoing Services to the Debtors. CBRE has indicated a willingness to act on behalf of the Debtors on the terms described herein.

C. **Record Keeping and Applications for Compensation**

22. Real estate professionals such as CBRE do not typically charge for their services on an hourly basis. Instead, for real estate matters, they customarily charge a commission fee that is earned upon the sale of real estate. The Listing Agreement follows this custom in the real estate industry and sets forth the commissions that will be payable to CBRE upon the sale of the Real Estate.

23. CBRE requests that it not be required to file time records in accordance with the fee guidelines established by the U.S. Trustee (the "U.S. Trustee Fee Guidelines") and any otherwise applicable orders or procedures of the Court. The Debtors also requests that, in accordance with the procedures set forth in Bankruptcy Code section 330 and 331, the Bankruptcy Rules, and any other applicable procedures of the Court, the Debtors be authorized to pay any commission owed to CBRE in accordance with the terms of, and the times specified in, the Listing

Agreement, without further order of the Court and without CBRE filing or serving any prior fee application or statement.

24. The compensation arrangements contained in the Listing Agreement are highly beneficial to the Debtors' estates, as they do not require the Debtors to make any payments to CBRE for CBRE's efforts to secure the sale of the Real Estate unless and until the Real Estate is sold. Accordingly, because the Debtors are seeking to retain CBRE under Bankruptcy Code section 328(a), the Debtors believe that CBRE's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and does not constitute a "bonus" or fee enhancement under applicable law.

**D.    No Duplication of Services**

25. The Debtors intend that CBRE's services will not duplicate the services to be rendered by any other professional previously retained by the Debtors in these Chapter 11 Cases. The Listing Agreement reflects CBRE's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that, at their request, CBRE will work cooperatively with such professionals to integrate any respective work they provide on behalf of the Debtors.

**E.    CBRE's Disinterestedness**

26. As set forth further in the Wright Declaration, CBRE has informed the Debtors that CBRE: (a) does not hold any interest adverse to the Debtors' estates; and (b) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (as modified by Bankruptcy Code section 1107(b)) and as required by Bankruptcy Code section 327(a). If any new material facts or relationships are discovered or arise, CBRE will inform the Court as required by Bankruptcy Rule 2014(a).

27. As set forth in the Wright Declaration, Mr. Wright has performed a review of the entities listed on Schedule A attached thereto to verify to the best of his knowledge and belief that CBRE does not hold any interest adverse to the Debtors with respect to the sale of the Real Estate.

28. Accordingly, to the best of the Debtors' knowledge, information, and belief (which in each case is based in reliance on the representations made to the Debtors by CBRE in the Wright Declaration), the Debtors believe that CBRE is disinterested and holds no materially adverse interest as to the matters upon which to be retained in these Chapter 11 Cases.

## BASIS FOR RELIEF REQUESTED

29. Bankruptcy Code section 327(a) authorizes a debtor-in-possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, CBRE satisfies the disinterestedness standard of Bankruptcy Code section 327(a).

30. The Debtors seek approval of the Listing Agreement, including the Commission Schedule set forth therein, pursuant to Bankruptcy Code section 328(a). Bankruptcy Code section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed *or percentage fee basis*, or on a contingent fee basis." 11 U.S.C. § 328(a) (emphasis added).

31. Bankruptcy Code section 328 permits the compensation of professionals, including real estate professionals, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

8

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations omitted).

33. The Debtors believe that the Commission Structure appropriately reflects the nature and scope of services to be provided by CBRE related to the sale of the Real Estate, CBRE's substantial experience with respect to commercial real estate services, and the fee structures typically utilized by CBRE and other leading real estate professionals that do not bill their client on an hourly basis. In agreeing to seek CBRE's retention under Bankruptcy Code section 328(a), the Debtors acknowledge that: (a) they believe that CBRE's general commercial real estate experience and expertise, its knowledge of the medical office building markets, and its knowledge and experience with the Debtors and their operations will inure to the benefit of the Debtors in pursuing the sale of the Real Estate; (b) the value to the Debtors of CBRE's services under the Listing Agreement derives in substantial part from that expertise and experience; and (c) accordingly, the Commission Schedule is reasonable regardless of the number of hours to be expended by CBRE's professionals in the performance of the services to be provided under the Listing Agreement.

33. The Debtors also request that the Court waive the requirements of Bankruptcy Code section 330 and authorize the Debtors to pay CBRE's commission earned pursuant to the Commission Schedule upon the sale of the Real Estate. Requiring CBRE to submit a fee application pursuant to Bankruptcy Code section 330 would be unnecessary given that the Court is already approving the Commission Schedule in accordance with this Application. Requiring the

9

Debtors to file an application pursuant to Bankruptcy Code section 330 on behalf of CBRE for it to receive its commission would also unduly burden the Debtors' estates with further professional fees with little corresponding benefit to stakeholders.

34. The Debtors also believe that employment of CBRE effective as of January 15, 2024 is warranted by the circumstances presented by these Chapter 11 Cases. Courts have held that they may, in the proper circumstances, approve employment retroactively. *See, e.g., Lavender v. Wood L. Firm*, 785 F.2d 247, 248 (8th Cir. 1986) (recognizing that the bankruptcy court as a matter of fundamental fairness may exercise its discretion and enter retroactive orders relating to employment of professionals representing a debtor-in-possession); *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1284 (5th Cir. 1983) (no per se rule against *nunc pro tunc* approval of employment); *In re Arkansas Co., Inc.*, 798 F.2d 645, 647 (3d Cir. 1986) (same); *In re Jarvis*, 53 F.3d 416, 419–20 (1st Cir. 1995) (same); *In re Singson*, 41 F.3d 316, 319–20 (7th Cir. 1994) (same). Retroactive relief is necessary and appropriate to ratify the work already undertaken by CBRE, inures to the benefit of the estate, and harms no party in interest. In particular, CBRE has already undertaken the work needed to being listing the Real Estate for sale on behalf of the Debtors and the Debtors intend on having the Real Estate listed prior to entry of the Proposed Order. These efforts are necessary and appropriate to maximizing the value of the Debtors' estates in an expeditious manner. Further, following the sale of substantially all of the Debtors' other assets to the University, the Debtors no longer have employees who are able to look after and care for the Real Estate. Getting the Real Estate sold in a timely manner will maximize the return to the Debtors' estates and, accordingly, the requested relief is appropriate.

35. In light of the foregoing, as a matter of fundamental fairness, given the issues that CBRE may be required to address in the performance of the Listing Agreement, CBRE's

commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for CBRE's services for engagements of this nature, the Debtors believe that the terms and conditions of the Listing Agreement are fair, reasonable, and market-based under the standards set forth in Bankruptcy Code section 328(a).

## NOTICE

36. The Debtors will provide notice of this Application to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department of Revenue; (d) the United States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid Services; (f) counsel to the Committee; (g) counsel to the Pension Committee; (h) counsel for the Secured Bondholder Representatives; (i) the Federal Trade Commission; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Cedar Rapids, Iowa
February 5, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:    rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-8009
Fax: 515-283-8045
Email: kmstanger@nyemaster.com
mmcguire@nyemaster.com
dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:    fperlman@mwe.com
dsimon@mwe.com
ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

### CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this February 5, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

<u>/s/ *Roy Leaf*</u>