**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 23-00623 (TJC)<br>)<br>) Jointly Administered<br>) |

**[PROPOSED] ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF CBRE, INC. AS REAL ESTATE BROKER TO THE DEBTORS AND DEBTORS-IN-POSSESSION EFFECTIVE AS OF JANUARY 15, 2024, AND (II) APPROVING THE TERMS OF THE EXCLUSIVE SALES LISTING AGREEMENT**

Upon the application (the "Application")[1] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to Bankruptcy Code sections 327(a) and 328(a) and Bankruptcy Rule 2014 authorizing the employment and retention of CBRE, Inc. ("CBRE") as real estate broker to the Debtors to provide them the Services on the terms set forth in the Listing Agreement and granting related relief, all as more fully set forth in the Application and the Wright Declaration filed in support of the same; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa; and this Court being able to enter a final order consistent with Article III of the United States Constitution; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of

---

[1] Capitalized terms used but not defined herein have the meanings given to such terms in the Application.

the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Application is approved as set forth in this Order.

2. In accordance with Bankruptcy Code sections 327(a) and 328(a) and Bankruptcy Rule 2014(a), the Debtors are authorized to employ and retain CBRE to perform the Services related to the sale of the Real Estate in accordance with the terms and conditions set forth in the Listing Agreement, effective as of the date of CBRE's retention on January 15, 2024.

3. The Listing Agreement attached hereto as **Annex 1**, together with all attachments thereto and all compensation set forth therein, including, without limitation, the Commission Schedule are approved pursuant to Bankruptcy Code section 328(a).

4. The Debtors are hereby authorized to pay the commission owed to CBRE when earned, upon the sale of the Real Estate and under the terms set forth in the Listing Agreement and Commission Schedule. CBRE shall not be required to apply for compensation in accordance with Bankruptcy Code section 330, given the structure of CBRE's compensation and the Court's approval of the Commission Schedule set forth herein.

5. CBRE shall be compensated pursuant to Bankruptcy Code section 328(a) in accordance with the terms of, and at the times specified in, the Listing Agreement. CBRE's

compensation shall be subject to the standard of review provided in Bankruptcy Code section 328(a) and not subject to any other standard of review under Bankruptcy Code section 330.

6. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of the services to be provided by CBRE and the structure of CBRE's compensation pursuant to the Listing Agreement, CBRE and its professionals shall be granted a limited waiver of the information-keeping requirements of Bankruptcy Rule 2016(a), the U.S. Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court in connection with the services to be rendered pursuant to the Listing Agreement.

7. None of the fees payable to CBRE under the Listing Agreement shall constitute a "bonus" or fee enhancement under applicable law.

8. Other than the Cooperating Broker Fee, which is hereby authorized pursuant to Bankruptcy Code section 105 and 328, no agreement or understanding exists between CBRE and any other person, other than as permitted by Bankruptcy Code section 504, to share compensation received for services rendered in connection with these cases, nor shall CBRE share or agree to share compensation received for services rendered in connection with these cases with any other person other than with respect to the Cooperating Broker Fee or as permitted by Bankruptcy Code section 504.

9. To the extent that there may be any inconsistency between the terms of the Application, the Wright Declaration, the Listing Agreement, and this Order, the terms of this Order shall govern.

10. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12.  Notwithstanding anything to the contrary in the Listing Agreement, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated and entered this _____ day of _____, 2024.

_____

Honorable Thad J. Collins, Chief Judge


**Prepared and Submitted By:**

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone: (319) 286-7002
Facsimile: (319) 286-7050
Email: rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: mmcguire@nyemaster.com
       kmstanger@nyemaster.com
       dhempy@nyemaster.com

4

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email:  fperlman@mwe.com
    dsimon@mwe.com
    ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: jhaake@mwe.com


*Counsel for Debtors and*
*Debtors-in-Possession*

# ANNEX 1

**Listing Agreement**



January 30, 2024

**BY ELECTRONIC MAIL**
Mercy Hospital Iowa City, Iowa
James R. Porter
Chief Financial Officer
500 E Market Street
Iowa City, IA 52245

    Re:    *Exclusive Sales Listing Agreement*
            *601 E Bloomington Street, Iowa City, Johnson County, Iowa*
            <u>*Brief Legal Description*</u>*: Iowa City (Original Town) LOTS 1 & 2 & 3 & 4 BLK 27  ("Property")*

Dear Jim:

Thank you for selecting CBRE, Inc. ("CBRE", "us", "we", "our") to represent Mercy Hospital, Iowa City, Iowa ("Mercy," "you," "your"). The terms of this engagement are contained in this agreement ("Agreement").

1. This Agreement shall terminate six (6) months after the above date ("Term").

2. During the Term, you appoint us as your agent with the exclusive right to list and market the Property for sale and to negotiate agreements for the sale of the Property (which includes portions thereof). If, during the Term, the Property is removed from the market because escrow is opened or an offer to purchase the Property is accepted, and if that sale is not consummated for any reason, then the Term will be extended by the longer of the number of days that (i) escrow was open or (ii) the Property was removed from the market, but in no event more than 180 calendar days in the aggregate.

3. We will commit the appropriate number of qualified and licensed professionals to this engagement. Your "Listing Team" is comprised of <u>Bill Wright, Chris Pendroy, Grant Wright and Dakota Albrecht</u>. We will have the right to change members of the Listing Team as necessary and appropriate.  The Listing Team shall owe you duties of trust, confidence and loyalty.

Furthermore, you and CBRE acknowledge the following duties of real estate licensees as set forth in IA Stat. §543B.56(1) and (2):

**543B.56 Duties of licensees.**
1.    *Duties to all parties in a transaction*. In providing brokerage services to all parties to a transaction, a licensee shall do all of the following:
    a.   Provide brokerage services to all parties to the transaction honestly and in good faith.
    b.   Diligently exercise reasonable skill and care in providing brokerage services to all parties.
    c.   Disclose to each party all material adverse facts that the licensee knows except for the following:
       (1)   Material adverse facts known by the party.
       (2)   Material adverse facts the party could discover through a reasonably diligent inspection, and which would be discovered by a reasonably prudent person under like or similar circumstances.
       (3)   Material adverse facts the disclosure of which is prohibited by law.
       (4)   Material adverse facts that are known to a person who conducts an inspection on behalf of the party.

        d.      Account for all property coming into the possession of a licensee that belongs to any party within a reasonable time of receiving the property.

2. *Duties to a client*. In addition to the licensee's duties under subsection 1, a licensee providing brokerage services to a client shall do all of the following:
   a. Place the client's interests ahead of the interests of any other party, unless loyalty to a client violates the licensee's duties under subsection 1, section 543B.58, or under other applicable law.
   b. Disclose to the client all information known by the licensee that is material to the transaction and that is not known by the client.
   c. Fulfill any obligation that is within the scope of the agency agreement, except those obligations that are inconsistent with other duties that the licensee has under this chapter or any other law.
   d. Disclose to a client any financial interests the licensee or the brokerage has in any business entity to which the licensee or brokerage refers a client for any service or product related to the transaction.

4. We will offer the Property at an initial listing price of $3,750,000. However, it is your right to: (a) approve, modify, reject or disapprove any and all proposals and offers as well as any prospective purchasers for the Property and (b) adjust the terms and conditions of any offer made, including but not limited to, adjusting the Property's listing price.

5. We will work with you to create and implement a sales strategy for the Property, including preparation of appropriate and customary marketing materials (such as an offering brochure). In developing the strategy, we will rely on (without requirement to verify) any information provided to us by you, your agents, affiliates and/or any of the Property's managers. However, we will not issue any written marketing materials without your prior written approval. Further, you authorize us to place one or more signs on the Property as we deem appropriate.

6. The success of this engagement relies, in part, on cooperation and communication between you and CBRE. Therefore, you agree to: (i) provide us with all available information to assist us in marketing the Property; (ii) immediately refer to us all purchase inquiries for the Property; and (iii) conduct all negotiations with prospective purchasers exclusively through us; *provided, however,* that CBRE acknowledges that Mercy and certain of its affiliates and subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court"), case number 23-00623 (the "Chapter 11 Cases") and that Mercy is obligated to keep certain parties in interest in the Chapter 11 Cases reasonably informed of such negotiations and may, in Mercy's sole discretion, involve certain parties in interest in such negotiations.

7. You represent that you either are the fee owner of or otherwise have control over the Property. You further represent that you have full authority to enter into this Agreement without violating anyone else's rights, or any other agreements or contractual obligations.

8. Unless directed otherwise, the Listing Team, shall at a minimum, provide the following services: (a) accept delivery of and present all offers and counteroffers to buy, sell, rent, lease, or exchange your property or the property you seek to purchase or lease; (b) assist you in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived and the transaction is completed; (c) answer your questions relating to this Agreement, offers, counteroffers, notices, and contingencies; (d) provide prospective buyers access to the Property; and (e) promptly comply with reasonable requests for information from Mercy and its counsel related to the Chapter 11 Cases and CBRE's requirements as a retained professional of Mercy under the Bankruptcy Code.

Rev. 04/2022
IA

2

9. You agree that you and/or your legal counsel are solely responsible for determining the legal sufficiency of any documents to be executed by you in any transaction contemplated by this engagement as well as the tax consequences of any such transaction. You are also responsible for evaluating any offers and determining with whom you will negotiate or enter into a transaction. While we may assist you in gathering reasonably available information, we cannot represent or warrant the creditworthiness of any prospect and/or their ability to satisfy their obligations under a purchase agreement. All final business and legal decisions shall be made solely by you. Notwithstanding any designation of us as "agent" in this Agreement, we will have no right, power, or authority to enter into any agreement with any prospective purchaser, real estate broker, or any other person in the name of, on behalf of, or otherwise binding upon you.

10. We will earn, and you agree to pay us, a commission in accordance with this Agreement and the attached Exhibit A to this Agreement ("Commission Schedule") if either of the following occur:

    (a) during the Term, you enter into an agreement to sell the Property to a purchaser, whether procured by us, you or anyone else, and the sale of the Property closes during or any time after the Term; or

    (b) within sixty (60) days after the expiration of the Term or after the Agreement otherwise terminates (the "Post-Term"), the Property is sold to, or negotiations continue, resume or commence leading to a sale of the Property at any time during the Post-Term or thereafter to any person or entity with whom, CBRE negotiated (either directly or through another broker or agent) or to whom the Property was submitted during the Term, or to any such person's or entity's successors, assigns, or affiliates ("Existing Prospect"), or you enter into an agreement to sell the Property to an Existing Prospect and the sale of the Property subsequently closes (whether during or after the Post-Term). You agree that CBRE is authorized to continue negotiations with Existing Prospects. We will submit to you, in the manner required by IA Admin. Code § 193E-11.2, a list of such Existing Prospects no later than the earlier of (i) the expiration of the Term set forth above, or (ii) fifteen (15) business days following the earlier termination of this Agreement.

11. CBRE acknowledges that payment of any commission in accordance with the Commission Schedule may be subject to Bankruptcy Court approval (a "Fee Application").

12. You agree that we are authorized to cooperate with and, if appropriate, share our commission with "Cooperating Brokers" (such as a broker representing a purchaser). We will be responsible for paying the fee or commission due to the Cooperating Broker (if any) provided the Cooperating Broker: (i) represents the prospective purchaser pursuant to a written agreement, a copy of which is furnished to us prior to the execution of the transaction; (ii) is properly licensed; and (iii) executes and delivers to us an acceptable cooperating brokerage agreement.

13. If you lease the Property to anyone during the Term or Post-Term, you agree to pay CBRE a lease commission in accordance with the Commission Schedule.

14. (a) The Listing Team are your appointed agents to the exclusion of all of CBRE's other licensees. In the event that the Listing Team, or any member thereof, has a potential conflict of interest (such as a Listing Team member proposing to act for a potential buyer), then we will disclose the conflict to you, obtain your written consent to waive the conflict in advance of any negotiations with that potential buyer, and obtain authorization to waive such conflict from the Bankruptcy Court as deemed appropriate and necessary in Mercy's sole discretion. In the event that a member of the Listing Team is unable to fulfill the terms of this Agreement, or as you and CBRE's Iowa "designated broker" otherwise agree, CBRE may remove a member of the Listing Team and/or appoint another one of CBRE's licensees to become a member of the Listing Team and act as your appointed agent hereunder; provided, however, that removal of a member of the Listing Team shall not

    relieve such removed licensee from any duties previously owed to you under Iowa law or hereunder.

  (b) You also acknowledge that CBRE and its affiliates provide a wide range of real estate services and certain CBRE affiliates (including employees), may: (a) assist with the sale of the Property and (b) pay and/or receive referral fees and other compensation relating to such services, including to and from CBRE.

15. Questions regarding environmental and zoning issues may arise during the course of our representation. CBRE is not obligated to perform, and has not made any investigation of the physical conditions or zoning issues relating to the Property. You agree to disclose to us and allow us to disclose to prospective purchasers everything you know (after reasonable inquiry by you) regarding present and future property issues including, but not limited to, structural, mechanical, hazardous materials, zoning and environmental matters affecting the Property and/or the Property's condition.

16. You acknowledge and agree that CBRE is required to disclose material adverse facts to each party to the transaction, except for the following: (1) Material adverse facts known by the party; (2) Material adverse facts the party could discover through a reasonably diligent inspection, and which would be discovered by a reasonably prudent person under like or similar circumstances; (3) Material adverse facts the disclosure of which is prohibited by law; (4) Material adverse facts that are known to a person who conducts an inspection on behalf of the party. Pursuant to IA Stat. §543B.5(15), "material adverse fact" means an adverse fact that a party indicates is of such significance, or that is generally recognized by a competent licensee as being of such significance to a reasonable party, that it affects or would affect the party's decision to enter into a contract or agreement concerning a transaction, or affects or would affect the party's decision about the terms of the contract or agreement. Pursuant to IA Stat. §543B.5(15), "Adverse fact" means a condition or occurrence that is generally recognized by a competent licensee as resulting in any of the following: (1) Significantly and adversely affecting the value of the property; (2) Significantly reducing the structural integrity of improvement to real estate; or (3) Presenting a significant health risk to occupants of the property. Notwithstanding anything contained herein to the contrary, you acknowledge and agree that CBRE, acting as an agent for a seller or landlord, owes no duty to conduct an independent inspection of the property for the benefit of a prospective buyer or tenant and owes no duty to independently verify the accuracy or completeness of any statement made by you (or anyone else on your behalf) or any independent inspector, unless CBRE knows or has reason to believe the information is not accurate.

17. If the Property becomes the subject of foreclosure proceedings before the expiration of the Term, then in our sole and absolute discretion we may: (a) suspend this Agreement until we may elect to reinstate it or (b) terminate this Agreement and enter into a listing agreement with any receiver, party initiating foreclosure, party purchasing the Property at a foreclosure sale, or any other third party.

18. CBRE will commence work upon execution of this Agreement. Mercy will promptly apply to the Bankruptcy Court to obtain approval of CBRE's retention nunc pro tunc to the Agreement's execution date. CBRE acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval and that in the event that such approval is denied, this Agreement shall be null and void.

19. While we are confident that this relationship will be mutually satisfactory, the parties agree to resolve any disputes subject to the following:

  (a) if either party institutes a legal proceeding against the other party relating to this Agreement, each party shall bear its own costs and fees, including attorneys' fees and costs. No party will be entitled to punitive, special and/or consequential damages, and each party waives all rights to and claims for relief other than for compensatory damages;

Rev. 04/2022
IA

4

(b) The Bankruptcy Court shall have exclusive jurisdiction over any such dispute; and

(c) **EACH PARTY KNOWINGLY AGREES TO WAIVE ANY AND ALL RIGHTS TO HAVE A DISPUTE ON ANY MATTER RELATING TO, OR ARISING FROM THIS AGREEMENT DETERMINED BY A JURY.**

20. You and CBRE agree to comply with all applicable laws (including, but not limited, to the Bankruptcy Code), regulations, codes, ordinances and administrative orders governing each party's respective participation in any transaction contemplated by this Agreement. Further, you and CBRE acknowledge that: (a) it is illegal to refuse to display or lease or sell to or from any person because of one's membership in a protected class, *e.g.*: race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental handicap, familial status or any other class protected by applicable law and (b) the Property will be offered in compliance with all applicable anti-discrimination laws.

21. You hereby acknowledge receipt of an executed copy of this Agreement.

22. This Agreement is intended for the benefit of the parties hereto and their respective successors and permitted assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person or entity.

23. This Agreement is the entire agreement and supersedes all prior understandings between you and CBRE regarding this engagement. The Agreement is governed by the laws of the state of Iowa, where the Property is located, without regard to its conflict of laws principles. This Agreement will be binding and inure to the benefit of your and CBRE's respective lawful representatives, heirs, successors, designees and assignees. It may not be altered or terminated except in a writing signed by both you and CBRE. Neither party's failure to exercise any of its rights under this Agreement will relieve the other party of its obligations hereunder. Nothing herein is or may be deemed a waiver or full statement of any of either party's respective rights or remedies, whether at law or in equity, all of which are expressly reserved. If any provision of this Agreement is unenforceable or void under applicable law, the remaining provisions will continue to be binding. This Agreement and the rights, interests or obligations created hereunder will not be assigned by either of the parties without the prior written consent of the other party. Each party agrees that each has participated equally in the negotiation and drafting of this Agreement. You acknowledge that the person signing this Agreement on your behalf has your full authority to execute it. This Agreement will be binding whether signatures are exchanged electronically or by hand, by mail, by fax, by electronic transfer or image, by photocopy or in counterparts.

Thank you again for this opportunity. We look forward to working with you.

Very truly yours,

CBRE, Inc.
**Licensed Real Estate Broker**

By: *William J. Wright*
Name: William J. Wright
Title: Managing Director

AGREED:

**Mercy Hospital, Iowa City, Iowa**

By: _____
Name: James R. Porter
Title: Chief Financial Officer

Rev. 04/2022
IA

6

## **EXHIBIT A – Commission Schedule**

A. *Sale.* If the Property is sold, CBRE's commission shall be **five percent (5%)** of the gross sales price. Gross sales price shall include any and all consideration received or receivable, in whatever form, including but not limited to assumption or release of existing liabilities. In the event this sale is in connection with a "build to suit" transaction, the commission shall be calculated on the gross sales price plus the gross construction cost of the building to be constructed on the Property. The commission shall be earned and paid on the date title to the Property is transferred to the purchaser; provided, however, that if the transaction involves an installment contract, then payment shall be made upon execution of such contract. If you are a partnership, corporation, or other business entity, and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid at the time of the transfer.

1. *Definitions.* Under this Agreement the terms "sell," "sale" or "sold" shall mean: (a) an exchange of the Property; (b) the granting of an option to purchase the Property; or (c) any other transfer, conveyance or contribution of a controlling interest in the Property or in the entity which owns the Property, including, but not limited to, situations where you are a corporation, partnership or other business entity and a controlling interest in such corporation, partnership or other business entity is transferred, whether by merger, outright purchase or otherwise, in lieu of a sale of the Property.

2. *Option to Purchase.* If you grant an option to purchase the Property, you agree to pay us a commission in accordance with this Commission Schedule, on the price paid for the option and for any extensions when you receive payment for any such option and/or extensions. If the option is exercised, whether during the Term or after, we will earn a further commission in accordance with this Agreement. Notwithstanding the foregoing, to the extent that all or part of the price paid for the option or any extension thereof is applied to the sales price of the Property, then any commission previously paid by you to us on account of the option payments will be credited against the commission payable to us on account of the exercise of the option.

3. Reserved Prospects. In the event that the Property is sold to either (a) University of Iowa Health Care, or related entities, or (b) the City of Iowa City, Iowa, CBRE's commission shall be reduced to two and one-half percent (2.5%) of the gross sales price.