IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-00623 (TJC)<br><br>Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) AUTHORIZING THE DEBTORS TO (A) ADMINISTER, SETTLE, AND WIND DOWN WORKERS' COMPENSATION PROGRAM, AND (B) PAY ADMINISTRATION EXPENSES FOR WORKERS' COMPENSATION PROGRAM, AND (II) GRANTING RELATED RELIEF**

Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), granting the relief described below. In support thereof, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1. Pursuant to this Motion, the Debtors seek entry of the Proposed Order, (I) authorizing the Debtors to (a) transition the Mercy Hospital, Iowa City, Iowa self-insured workers' compensation program (the "Workers' Compensation Program") into an administration, settlement, and wind down phase; (b) pay administration expenses of the Workers' Compensation Program from the fully-funded self-insured trust (the "Workers' Compensation SIR Trust") held by Hills Bank & Trust Company ("Hills Bank"); and (II) granting related relief.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United

States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3. The legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 363, Rules 2002(a), 6004(h), 6006(f), 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules").

## RELEVANT BACKGROUND

### I. The Chapter 11 Cases

4. On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

5. The Debtors continued to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023 the U.S. Trustee appointed an official committee of pensioners (the "Pension Committee") in the Chapter 11 Cases [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

7. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in*

2

*Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

**II.     The Debtors' Workers' Compensation Self-Insured Trust**

8.     Pursuant to chapter 87 of the Iowa Code, every Iowa employer must provide workers' compensation insurance. *See generally* Iowa Code § 87.1, et seq. Employers are allowed to self-insure this obligation under certain showings of financial ability and by depositing security satisfactory to the Iowa insurance commissioner as a guaranty of the payment of such obligations. *See* Iowa Code § 87.11. This security is held in "trust for the sole purpose of paying compensation and benefits and is not subject to attachment, levy, execution, garnishment, liens, or any other form of encumbrance." Iowa Code § 87.11(1)(a).

9.     On January 1, 2018, the Debtors established and funded the Workers' Compensation SIR Trust with Hills Bank as security under Iowa Code section 87.11(1)(a) for the purposes of self-insuring their workers' compensation obligation under Iowa law. Upon creation of the Workers' Compensation SIR Trust, the Debtors and Hills Bank entered into a Workers' Compensation Trust Fund Agreement (the "Trust Agreement"). A copy of the Trust Agreement is attached hereto as **Exhibit B**. The Debtors have funded and maintained the Workers' Compensation SIR Trust since 2018.[1]

10.    Sedgwick, an industry-leading third-party administrator who delivers workers' compensation claims management and support, currently administers the Workers' Compensation Program, ensuring the Debtors' commitments to beneficiaries are made by Hills Bank from the Workers' Compensation SIR Trust.

---

[1]     In addition to the Workers' Compensation SIR Trust, the Debtors have an excess workers' compensation insurance policy with Safety National. The Debtors paid the annual renewal premium for 2024 earlier this year.

11. Up and until January 31, 2024, Sedgwick and professionals related to administering, settling, and discharging the claims and benefits of the Workers' Compensation Program have been paid as part of the Debtors' ordinary course of business expenses.

### III. The Sale and End of the Debtors' Operations

12. Following the sale of substantially all of the Debtors' assets, on January 31, 2024, the State University of Iowa (the "University") took over active operations of all of the Debtors. *See* Docket No. 699. The Debtors' former employees either entered into new employment with the University of Iowa or otherwise opted out of that employment and ended employment with the Debtors. As such, the Debtors no longer have any employees and will discontinue their self-insured status as they will no longer be an employer with the requirements under Iowa Code Chapter 87.

13. While the Debtors will continue to provide compensation and benefits through the Workers' Compensation SIR Trust until claims under the Workers' Compensation Program are settled, discharged, or administered, either through Sedgwick and the Workers' Compensation SIR Trust or otherwise through a chapter 11 plan, the universe of the claimants, claims, and the ability to calculate the benefits needed for the former employees will be determined either by March 15, 2024 (the Administrative Claim Bar Date per Docket No. 741) or within 91 days of the Effective Date. *See* Iowa Code § 85.23 (requiring claimants to provide notice of injury to its employer within 90 days of when the employee knew or should have known that the injury was work-related). As such, the Workers' Compensation Program will then only be administered with the intent of winding down and eventually returning funds from the Workers' Compensation SIR Trust to the estates. *See* Iowa Code § 87.11(b)(1); *see also In re Cedar Rapids Meats, Inc.*, 121 B.R. 562 (Bankr. N.D. Iowa 1990) (finding that debtors have a residual interest in the funds that remain

4

in an Iowa workers' compensation self-insured trust fund after satisfaction of all outstanding claims). This Motion is intending to initiate that process and provide for payment of the expenses now that the Debtors have consummated the sale to the University. The Debtors anticipate that a chapter 11 plan will then provide for the continuation and completion of this wind down process.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

14. The Debtors request this Court to authorize and direct Hills Bank to pay all expenses related to the Workers' Compensation Program (collectively, the "TPA Expenses") such as those for Sedgwick's and counsel's administration, settlement, commuting, and discharging claims from the Workers' Compensation SIR Trust from and after February 1, 2024.

15. The Debtors have an equitable and expectancy interest in the assets in the Workers' Compensation SIR Trust. *See, e.g.*, *Cedar Rapids Meats*, 121 B.R. at 574; *In re Simply Essentials, LLC.*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("The property of the estate includes inchoate or contingent interests held by the debtor prior to the filing of the bankruptcy."). Accordingly, the Debtors are seeking the Court's permission to use these assets in a manner outside of the ordinary course.

16. Under Bankruptcy Code sections 363(b)(1) and 363(c)(1), after notice and hearing, a debtor-in-possession is authorized to "use, sell, or lease" property of the estate in a manner other than in the ordinary course of business after court approval. *See* 11 U.S.C. § 363(b), (c). In determining whether to authorize the use, sale, or lease of estate property other than in the ordinary course of business, bankruptcy courts require the debtor to show that a sound business purpose justifies such actions. *See* 11 U.S.C. § 363(b); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147 (D. Del. 1999); *In re Veg Liquidation, Inc.*, 583 B.R. 203 (8th Cir. BAP 2018) (noting the bankruptcy court's finding that the Debtors demonstrated "a sound business purpose" for the sale);

5

*In re Channel One Communications, Inc.*, 117 B.R. 493 (E.D. Mo 1990) (requiring a "good business reason"). Debtors seeking permission to use, sell, or lease property outside of the ordinary course have a burden to demonstrate that the use will aid in the debtors' reorganization and will benefit the estate. *See In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir. 1983); *Sapir v. Sartorius*, 205 F.3d 1324 (S.D.N.Y. 1999). Bankruptcy courts have considerable discretion with respect to these types of motions seeking the use outside of the ordinary course. *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153.

17. Authorizing the payment of the TPA Expenses from the Workers' Compensation SIR Trust is based in sound business purpose and supports the Debtors' duty to maximize assets for the estates. This relief avoids costs, duplication of efforts, eliminates potential errors and inefficiencies in transition from different third-party administrators, and is the best use of the estates' assets. The sooner this process can begin, the sooner the claims related to the Workers' Compensation Program are satisfied. This will not only aid in the Debtors' liquidation, but it will also resolve outstanding claims under the Workers' Compensation Program, bring closure to the Debtors' former employees, and return real value to the estates for the benefit of all creditors, rather than sitting in the Workers' Compensation SIR Trust for the foreseeable future.

18. As of the filing of this Motion, there are sufficient funds in the Workers' Compensation SIR Trust to satisfy the most recent actuarial estimates of the workers' compensation claims. In its 2023 annual review, which included a formal audit and actuarial report from RMS Solutions, the State of Iowa determined that the assets in the Workers' Compensation SIR Trust provided satisfactory security to fund and support the claims, expense liabilities and obligations associated with the Workers' Compensation Program. *See* Iowa Code § 87.11. Further, Sedgwick has also confirmed that the Debtors' obligations have not significantly changed

since that State of Iowa's review and the Workers' Compensation SIR Trust is not only adequate security for the claims.

19.     Granting the relief requested herein will ensure consistent administration and care for the Debtors' former employees.  Without continued operations and revenue of the Debtors, especially following the effective date of any chapter 11 plan, the TPA Expenses will no longer be paid as part of the Debtors' ongoing business expenses.  While the Debtors could attempt to create an entirely new funding structure or additional trust to provide for payment of the TPA Expenses, such efforts are duplicative, inefficient, unnecessarily costly, and overly complicated.  The current Workers' Compensation SIR Trust is already in place, and funded to cover the liabilities to the former employee claimants as estimated by the actuaries.

20.     Moreover, granting the relief sought herein will not only ensure the seamless delivery of workers' compensation benefits to the Debtors' former employees by maintain the current administration but will also simultaneously allow the Debtors to wind down the Workers' Compensation Program without exhausting the limited assets of their estates.  Without this relief, the Workers' Compensation Program may have gaps in administration, resolution, and possible decades[2] of delay in winding down pursuant to Iowa Code section 87.11(1)(b) or otherwise be surrendered to the State of Iowa, which will only unnecessarily deplete valuable estate, governmental, and judicial resources.

21.     Continuing Sedgwick's engagement through the completion of the administration of the Workers' Compensation Program will: (a) provide the Debtors' former employees with consistency in their care and treatment, (b) provide for a seamless transition into post-sale

---

[2]     If the Debtors wait for the Insurance Commissioner to approve a release of the SIR security, Iowa Code section 87.11(1)(b)(2) contemplates that could be at least ten years from the date of the last open claim, claim activity, or claim payment.

7

proceedings of the Debtors, (c) will be an efficient use of the Workers' Compensation SIR Trust, (d) prevent any gap in coverage and administration so the State of Iowa does not have to administer its wind down, and (e) provide for the same quality of administration that former employees have already been use to receiving.

22.     Importantly, Iowa Code chapter 87 does not prohibit this approach.  In fact, if the State of Iowa (instead of the Debtors) were to take over the administration, settlement, commuting, and discharging of claims, the State of Iowa would use the Workers' Compensation SIR Trust assets to pay these expenses and would also hire a third-party administrator and counsel to do what is proposed in this Motion.  *See* Iowa Code Section 87.11(3)(a)[3].  The Debtors should be permitted to take the same approach, particularly when it is in the best interest of the creditors and Workers' Compensation Program claimants.

23.     Accordingly, the Debtors have established sound business judgment supports this Motion and the relief requested herein should be granted.

### WAIVER OF BANKRUPTCY RULE 6004

24.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements

---

[3] Iowa Code 87.11(3)(c) sets forth a process for the State of Iowa to conduct the wind-down if the Debtors surrender that process, which would include the State of Iowa using the funds in the Workers' Compensation SIR Trust for the administration costs.  The statute is silent on how the State of Iowa would return the Debtors' excess funds to the Debtors and the State of Iowa provided no assurances that it would do so.  Therefore, it is in the best interests of the estates, the creditors, and the former employee beneficiaries for the Debtors to conduct the process in the manner proposed herein.

8

and such stay apply.

## NOTICE

25.     The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) counsel for the Committee; (c) counsel for the Pension Committee; (d) the United States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid Services; (f) counsel for the Master Trustee and Trustee; (g) counsel for the Bondholder Representative; (h) the Federal Trade Commission; (i) the Iowa Workers' Compensation Commissioner; (j) the Iowa Insurance Commissioner; and (k) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

26.     No previous request for the relief sought herein regarding these specific contract counterparties has been made to this or any other court.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Cedar Rapids, Iowa
February 19, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and -

*/s/ Kristina M. Stanger*
Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax: 515-283-8045
Email: mmcguire@nyemaster.com
       kmstanger@nyemaster.com
       dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        fperlman@mwe.com
              dsimon@mwe.com
              ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:    jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this February 19, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

/s/ *Kristina M. Stanger*