IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,[1] | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF IOWA CITY AMBULATORY SURGICAL CENTER, LLC FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY TO ISSUE A NOTICE OF INTENT TO OBTAIN A PURCHASE PRICE DETERMINATION**

Out of an abundance of caution, Iowa City Ambulatory Surgical Center, LLC ("ICASC" or "Movant"), by its undersigned attorney, respectfully files this motion for entry of an order granting relief from the automatic stay, pursuant to section 362(d), of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"); Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Iowa (the "Local Rules"), to allow Movant to issue a notice of intent to obtain a Purchase Price Determination (as defined herein) to Mercy Hospital, Iowa City, Iowa ("Mercy or "Debtor"). In support of the Motion, Movant respectfully states as follows:

**SUMMARY**

Johnson County Surgeon Investors, LLC ("JCSI"), an entity whose members number approximately 30 physicians, and the Debtor have been joint venture ("JV") partners in ICASC, an outpatient surgical services facility in Iowa City for more than 16 years. Also known as ambulatory surgical centers or "ASCs," the physician-hospital co-ownership model can be

---

[1] The Debtors include Mercy Hospital, Iowa City, Iowa (Case No. 23-00623), Mercy City, ACO, LLC (Case No. 23-00622), and Mercy Services Iowa City, Inc. (Case No. 23-00624).

1

advantages in many ways: for patients who favor the convenience and lowered costs, for the physician partners who can gain greater autonomy over their practice and schedules than they would otherwise have in an institutional setting, and for the hospital partners who can regain market share and revenues that would otherwise be going exclusively to an ASC.  In addition, nearly all ASCs require their physicians to have admitting privileges at a hospital, a benefit a hospital partner also provides.  Additionally, the hospital may be able to offer better overall service to its community by directing patients to their co-owned ASC under the right conditions, thereby saving them money, allowing for specialized procedures, and adding convenience and flexibility in scheduling.

Because of the close symbiotic relationship that the physician and hospital JV partners have, these partnerships are not entered into lightly and the parties heavily negotiate for specific rights.  Among others, JCSI and the Debtor negotiated that neither member can sell or transfer their ownership interests without the consent of the ASC's management and no new member may be admitted without 100% member approval.  Additionally, the JV parties agreed that under specific circumstances affecting a member (each a "Permissive Redemption Event"), the Management Board can direct ICASC to elect to have the member's interests (the "Units") valued pursuant to a mutually agreed upon process and, once the Units' value had been established, ICASC may be entitled to redeem the member's Units at the determined fair price.

One such Permissive Redemption Event has recently occurred.  Under the JV agreement, Mercy's sale of substantially all of its assets to the University of Iowa entitles Movant to issue notice requesting that the JV's Units be valued via the prescribed process.

Though JCSI and the Debtor have already been in active negotiations regarding the future of Debtor's Units (including obtaining one valuation), Movant brings this Motion to lift the stay

2

to provide a notice of intent to obtain a Purchase Price Determination (the "Price Determination Notice") to Debtor and does so only to ensure that Mercy not later maintain that Movant failed to exercise its right to issue the Price Determination Notice in a timely manner following entry of the *Notice of Sale Closing* [Docket No. 699].

For the avoidance of doubt, Movant does not believe that this action violates the automatic stay as set forth in § 362(a) of the Bankruptcy Code as there is no relief sought in this Motion that would divest the Debtor of its property, *i.e.*, its Units. Delivery of the Price Determination Notice only entitles Movant to utilize the JV's agreed-to valuation process should the Parties' negotiations fail, and Movant seeks nothing more at this time.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

2. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are section 362(d)(1) of the Bankruptcy Code, and Rule 4001 of the Bankruptcy Rules.

## BACKGROUND

**A. Iowa City Ambulatory Surgery Center and JV Agreement**

4. All members of JCSI are surgeons in and around the Iowa City, Iowa area and, until its bankruptcy filing and subsequent sale, Mercy was an acute care community hospital located in Iowa City.

5. JCSI and the Debtor are JV partners (each a "Member" and together, the "Members") pursuant to that certain Amended & Restated Operating Agreement of ICASC

3

effective as of March 6, 2022 (the "Operating Agreement"), which amended and restated the original operating agreement effective January 3, 2007. Pursuant to the Operating Agreement, both parties' status as Members derives from their ownership of the Units each of these parties hold in ICASC.

6. ICASC is a multi-specialty, state of the art surgical facility providing quality outpatient surgical services. ICASC was established in 2008 and currently performs approximately 7,000 surgical procedures per year.

7. As Members in ICASC and counterparties to the Operating Agreement and certain related ancillary agreements, the Debtor and JCSI owe a number of duties to each other and to ICASC and have agreed to certain affirmative or negative covenants, including, but not limited to, on-going certification requirements, governance requirements, and competition-related covenants.

8. Under the Operating Agreement, the Debtor and JCSI agreed to certain restrictions on the transferability of Units. Most notably, "[a] Member may not assign the Member's Units, in whole or in part, or pledge, grant a security interest, lien, or other encumbrance in or against any or all of the Member's Units unless the other Member provides written consent." *Operating Agreement* at § 9.1.

9. Relevant to the instant matter, the Operating Agreement also identifies certain Permissive Redemption Events, including "The sale, lease, exchange or other transfer or disposition of, *(sic)* all or substantially all, of the assets of the Member, the merger or consolidation of the Member with or into another Person in which the Member is not the surviving entity". *Id.* at § 1.1.yy.F.

4

B.   **Permissive Redemption Events and the Valuation Process**

10. Upon a Permissive Redemption Event, ICASC has the right to obtain a Purchase Price Determination (as defined in the Operating Agreement) and begins that process by providing a Price Determination Notice to the Member that was subject to the event (no form for such notice is specified). *Id.* at 5.6. The request for a Purchase Price Determination merely triggers a contractual process for determining and verifying the fair market value of the Units, whereby an additional notice must be provided at a later date if the Company decides to exercise its right to purchase the Units. *Id.*

11. Section 3.2 of the Operating Agreement provides the process for determination of the purchase price for the Units (the "Valuation Process"). The Valuation Process is the process by which the parties either confirm that the "Unit Purchase Price Formula"[2] is providing a fair market value valuation of the Units in question or identify a mutually agreeable appraisal for such Units. The valuation of the Units is determined and verified by a company appraiser and/or independent appraisers (the "Company Appraisal"). *Id.* at § 3.2(a)-(b)

12. The Operating Agreement provides an additional process in the event that the Members do not agree with the Company Evaluation, whereby each Member retains an independent appraiser, and the Operating Agreement provides additional mechanics thereafter to utilize the two independent appraisals and the Company Appraisal to ultimately generate the "Purchase Price Determination." *Id.* at § 3.2

13. Once the Purchase Price Determination is noticed to the Members and ICASC, ICASC shall made a decision as to whether it will purchase the Member's Units at that

---

[2] Unit Purchase Price Formula is defined, in the Operating Agreement, as a formula of six (6) times Adjusted EBITDA to determine a valuation of the Company for the twelve (12) months preceding the date of the notice of request for a purchase price determination.

5

price and if so, shall have forty-five (45) days to issue a notice that it will purchase all of the Member's Units (the "Intent to Purchase Notice").

### C. Valuation and Negotiations to Date

14. In November 2023, JCSI informed the Debtor that it would be retaining the valuation firm PYA, P.C. ("PYA") to prepare a valuation of the Units of ICASC. The Debtor did not object and in mid-January PYA delivered the report (the "PYA Report").

15. By letter dated February 27, 2024, the Debtor objected to the PYA Valuation as undervaluing the Units and set forth a number of concerns with the methodology underlying the PYA Valuation.

16. In addition, the Debtor provided a counteroffer to JCSI which it stated will remain open until March 4, 2024. Debtor did not indicate whether it would be obtaining an independent appraisal or otherwise progressing on through the various steps of the Valuation Process.

17. Movant has been informed that JCSI is providing due consideration to the Debtor's counteroffer.

### D. The PRA Sale

18. On February 1, 2024, the Debtor filed its *Motion for Entry of Order (I) Approving the Sale of the Debtors' Interest in a Joint Venture Free and Clear of Liens, Claims, Interests and Encumbrances and (II) Granting Related Relief* [Docket No. 703] (the "PRA Sale Motion").

19. On February 27, 2024, the Court entered an order approving the PRA Sale Motion [Docket No. 770] which sold the Debtor's membership interests in a physical therapy and rehabilitation service joint venture to its co-owner Progressive Therapy, PLLC.

**RELIEF REQUESTED**

20. Movant requests the Court enter an order, pursuant to Section 362(d)(1) of the Bankruptcy Code, modifying and terminating the automatic stay to the extent necessary to issue a Price Determination Notice.

**BASIS FOR RELIEF REQUESTED**

21. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

22. Although the Bankruptcy Code does not expressly define "cause," the legislative history of section 362 explains that "[o]ne example of such "cause" is the rule that where the creditor's action is not connected with or interfering with the bankruptcy procedure, continued imposition of the stay would not foster congressional policy." *In re Steffens Farm Supply, Inc.*, 35 B.R. 73, 75 (Bankr. N.D. Iowa 1983). Further, bankruptcy courts have found that cause is defined as "any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Dittrick*, 2016 WL 7742158, *2 (Bankr. N.D. Iowa Nov. 1, 2016)(quoting *In re Cornish*, Bankr., 2013 WL 1755485, *1 (Bankr. N.D. Iowa Apr. 24, 2013)) (alteration in original). Further, the Eighth Circuit holds that the Bankruptcy Court must grant relief from the automatic stay if the movant shows cause. *See In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005); *see also In re Dittrick*, 2016 WL 7742158, *2 (Bankr. N.D. Iowa Nov. 1, 2016)

23. In this instance, sufficient cause exists to grant relief from the automatic stay because without issuing the Price Determination Notice and thereby utilizing the Valuation Process there is no alternative process for determining and verifying the fair market value for the Units in the Company. The Operating Agreement clearly sets out the procedures for determining the value of Units in the Company. Without triggering the prescribed Valuation Process set forth in the Operating Agreement, there is no equitable way to identify a purchase price for the Units where the Operating Agreement's consent restrictions render an "open market" sale process moot.

24. By this Motion, Movant does not seek to cause a termination of negotiations between the Debtor and JCSI over the Unit price; however, Movant was compelled to file this Motion so as not to be prejudiced as to the Permissive Redemption Event by the passage of time should the Parties' fail to reach agreement and further fail to progress down the Operating Agreement's designated valuation procedures.

25. Absent the Valuation Process, Movant should not be forced to accept an arbitrary valuation or appraisal the Debtors identify independently when there are procedures governing the process for determining the value of the Units in the very terms negotiated and agreed to in the Operating Agreement. If Movant were stayed from issuing a Price Determination Notice, the contractual rights of the Debtors would be expanded to allow unilateral control over the valuation of the Units and Movant would be left without a remedy. Bypassing the agreed Valuation Process set forth in the Operating Agreement would result in Movant receiving less than its bargain from the Debtors because it would be diminishing Movant's contractual rights.

26. However, the commencement of a bankruptcy case does not enlarge or expand the terms of a contract and provide the debtor and the estate with new contractual rights. *See Hazen First State Bank v. Speight*, 888 F.2d 574, 576 (8th Cir. 1989). In fact, the automatic

stay is not intended to act as a toll on contractual rights or terms but is intended to be a stay on "actual proceedings and similar acts against the debtor." *In re McCready*, 2004 WL 626142, *3 (N.D. Ill. Mar. 29, 2004) (quoting *Hazen First State Bank*, 888 F.2d 574 (8th Cir. 1989)). Accordingly, Movant has the same authority to commence the Valuation Process in bankruptcy as it did outside bankruptcy.

27. Just this week, the Court entered an order approving the PRA Sale Motion which stated, among other things, that the purchase price for the ownership interests was "negotiated in accordance with the valuation mechanisms provided for in the Operating Agreement." *See* PRA Sale Motion [Docket No. 703]. A similar, if not identical, valuation process was employed by the Debtor to reach an agreement on what has now been determined to be the "highest and best offer" for those interests. *See Order (I) Approving the Sale of the Debtors' Interest in a Joint Venture Free and Clear of Liens, Claims, Interests and Encumbrances and (II) Granting Related Relief* [Docket No. 770].

28. The Valuation Process does not cause harm to the Debtors or diminish the value of the Debtors' estate. It is merely a contractual process for determining and verifying the fair market value for the Units. In fact, allowing for the Valuation Process to take place has the potential to maximize the value of the Debtors' estate because it sets in motion the potential for an eventual sale of the Units.

29. Notably, the Valuation Process does not require the Debtor to sell nor ICASC to purchase the Units, bind either party to a purchase price or bind the parties to enter into a purchase agreement for the Units. The Valuation Process purely allows for the parties to identify an appropriate purchase price for the Units and verify the current fair market value of those Units. This Motion is limited to relief from the automatic stay, solely, to permit Movant to issue a Price

Determination Notice to the Debtors allowing for usage of the Valuation Process. This Motion does not seek approval for a purchase of the Units. If and/or when purchase of the Units is being sought, the authority to purchase such Units will be sought.

30. As set forth above, the Operating Agreement expressly provides for the procedures of the Valuation Process and there is no alternative for reaching a fair valuation of the Units. The commencement of this chapter 11 case should not alter this provision of the Operating Agreement and expand Debtors' rights thereunder. Accordingly, Movant submits that cause exists to grant it relief from the automatic stay.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Movant respectfully requests that the Court enter an order granting this Motion, modifying and terminating the automatic stay to the extent necessary to permit Movant to issue the Price Determination Notice to Debtors, waiving the stay of effectiveness of an order granting this Motion as imposed by Bankruptcy Rule 4001(a)(3) and granting such further and other relief as this Court deems just.

Dated: March 1, 2024

                                        Respectfully submitted,

*/s/ Michael T. Gustafson*
Michael T. Gustafson (*Admitted pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Phone: (312) 569-1000
Fax: (312) 569-3000
Email: mike.gustafson@faegredrinker.com

*Counsel to Iowa City Ambulatory Surgical Center, LLC*

**Certificate of Service**

    The undersigned certifies, under penalty of perjury, that on this 1st day of March, 2024, the foregoing document was electronically filed with the Clerk of Bankruptcy Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

*/s/ Michael T. Gustafson*