**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Related to Docket No. 554** |
| | ) |

**DEBTORS' SECOND MOTION FOR ENTRY OF ORDER FURTHER EXTENDING
EXCLUSIVE PERIODS TO FILE CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF**

Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates as debtors and
debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),
hereby move (the "Motion") for entry of an order substantially in the form attached hereto as
**Exhibit A** (the "Proposed Order") granting the relief described below. In support thereof, the
Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1.      By the Motion, the Debtors respectfully request entry of the Proposed Order,
pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"),
extending by an additional 90 days (a) the period during which the Debtors have the exclusive
right to file a chapter 11 plan, through and including June 3, 2024 (the "Exclusive Filing Period"),
and (b) the period during which the Debtors have the exclusive right to solicit votes on a chapter
11 plan, through and including August 5, 2024 (the "Exclusive Solicitation Period" and, together
with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors' right
to seek further extensions of the Exclusive Periods.

2.      This Motion is only the Debtors' second request to extend the Exclusive Periods.
The Court has yet to rule on the First Exclusivity Motion (as defined below) because the Debtors,

on the one hand, and Computershare Trust Company, N.A., as Trustee, and Preston Hollow Community Capital, Inc., as Bondholder Representative (collectively, the "Secured Bondholder Representatives"), on the other, agreed to continue multiple hearings on the First Exclusivity Motion and the Objection (as defined herein) in order to continue discussions on issues related to plan formation. The First Exclusivity Motion is currently scheduled for hearing on March 27, 2024.

3.      These discussions between the Debtors and the Secured Bondholder Representatives bore fruit. On February 23, 2024, the Debtors filed *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 760] (the "Combined Plan and Disclosure Statement"), which is supported by the Secured Bondholder Representatives and represents a significant step towards reaching an expeditious resolution in these Chapter 11 Cases (as defined below) that maximizes value for all stakeholders.

4.      The Debtors are filing this Motion out of an abundance of caution in order to ensure that the Debtors' exclusivity under Bankruptcy Code section 1121(d) continues while the Combined Plan and Disclosure Statement is solicited following Court approval. The First Exclusivity Motion sought an extension of the Exclusive Filing Period through only March 4, 2024 and an extension of the Exclusive Solicitation Period through May 6, 2024. This Motion seeks to extend the Exclusive Periods an additional 90 days in order to avoid the significant reduction in estate resources and disruptions that would result from any creditors filing and trying to solicit a competing plan while the Combined Plan and Disclosure Statement is being considered and solicited.

5.      While the Committee (as defined below) has yet to formally provide its support for the Combined Plan and Disclosure Statement as of the filing of this Motion, the Debtors and Secured Bondholder Representatives have worked—and will continue to try to work—with the

2

Committee in order to arrive at a consensual version of the Combined Plan and Disclosure Statement. Further, the Debtors will continue working with the Pension Committee (as defined below), which has voiced its general support for the Combined Plan and Disclosure statement and process related thereto thus far. The Debtors, however, require an extension of the Exclusivity Periods in order to ensure that these efforts can continue uninterrupted.

6.      For the reasons set forth herein and below, the Debtors respectfully request that the Court (a) extend the Exclusive Filing Period by 90 days from the date requested in the First Exclusivity Motion to and including June 3, 2024 and (b) extend the Exclusive Solicitation Period by 90 days from the date requested in the First Exclusivity Motion to and including August 5, 2024.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8.      The legal predicate for the relief requested herein is Bankruptcy Code section 1121(d), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules").

## BACKGROUND

**I.      The Chapter 11 Cases**

9.      On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

10.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

11.     On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023 the U.S. Trustee appointed an official committee of pensioners (the "Pension Committee") in the Chapter 11 Cases [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

12.     Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27].

## II.     The First Exclusivity Motion

13.     On December 5, 2023, the Debtors filed *Debtors' Motion for Entry of Order Extending Exclusive Periods to File Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 554] (the "First Exclusivity Motion"). The First Exclusivity Motion requests that the Court extend the Exclusive Filing Period to March 4, 2024 and the Exclusive Solicitation Period to May 6, 2024.

14.     On December 6, 2023, the Secured Bondholder Representatives filed *Secured Bondholder Representatives' Objection to Motion for Entry of Order Extending Exclusive Periods to File Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 559] (the "Objection").

15.     The First Exclusivity Motion and Objection were set for hearing on January 22, 2024. *See* Docket No. 561.

4

16.    On January 19, 2024, the Debtors filed *Debtors' Expedited Motion to Continue Debtors' Exclusivity Motion Set for Hearing on January 22, 2024* [Docket No. 669] (the "Continuance Motion"). The Continuance Motion asked the Court to continue the January 22, 2024 hearing on the First Exclusivity Motion to February 12, 2024 based on an agreement between the Debtors and Secured Bondholder Representatives to continue discussions on formation of a chapter 11 plan. The Court granted the Continuance Motion at the hearing on January 22, 2024 and entered an order in accordance therewith on January 23, 2024, which set the First Exclusivity Motion for hearing on February 12, 2024. *See* Docket Nos. 683, 683.

17.    At the hearing on February 12, 2024, counsel for the Debtors and Secured Bondholder Representatives reported that they were continuing to work through issues related to the First Exclusivity Motion and formation of a chapter 11 plan. The parties asked the Court to continue the hearing on the First Exclusivity Motion until the hearing set for February 22, 2024. *See* Docket No. 738. The Court granted the request. *See* Docket No. 739.

18.    On February 20, 2024, the Debtors filed their *Notice of Continuation of Hearing on Final Cash Collateral Order and Exclusivity Motion* [Docket No. 751] (the "Continuation Notice"). As set forth in the Continuation Notice, the Debtors, Secured Bondholder Representatives, and the Committee entered into the Third Cash Collateral Stipulation (as defined in the Continuation Notice), pursuant to which the parties agreed to have the First Exclusivity Motion heard on March 27, 2024 or as soon thereafter as the Court's schedule would allow.

19.    On February 23, 2024, the Debtors filed the Combined Plan and Disclosure Statement with the support of the Secured Bondholder Representatives. The filing of the Combined Plan and Disclosure Statement resolved the Secured Bond Representatives' Objection.

**BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY**

20.     Bankruptcy Code section 1121(b) provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan. *See* 11 U.S.C. § 1121(b). Bankruptcy Code section 1121(c)(3) provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan. *See* 11 U.S.C. § 1121(c)(3). Bankruptcy Code section 1121(d) permits the Bankruptcy Court to extend the Exclusive Periods for "cause." *See* 11 U.S.C. § 1121(d). For the reasons set forth herein, the Debtors believe that such "cause" exists to extend the Debtors' Exclusive Periods by 90 days each.

**I.      Bankruptcy Code Section 1121(d) Permits the Court to Extend the Exclusive Periods for "Cause."**

21.     The plan exclusivity periods are intended to afford debtors the opportunity to propose a plan and to solicit acceptances of the plan without the disruption that might be caused by the filing of competing plans by third parties. It is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[1] *See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under Bankruptcy Code section 1121(d), courts have looked to its legislative history for guidance. *See In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213,

---

[1]     Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Bankruptcy Code section 1121(d) by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the Chapter 11 Cases.

at *4 (D.N.J. Nov. 2, 2005) (noting that the exclusive periods under Bankruptcy Code section 1121

are intended "to promote an environment in which the debtor's business may be rehabilitated and

a consensual plan may be negotiated") (quoting H.R. Rep. No. 103-835, at 36 (1994)); *In re Gibson*

*& Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197

B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not

intend the 120- and 180-day exclusivity periods to be a hard and fast limit. *See Amko Plastics, Inc.*,

197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions

of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The

hallmark of [section 1121(d)] is flexibility."). Rather, Congress intended that the debtor's

exclusivity periods be of an adequate length, given the circumstances, for a debtor to formulate,

negotiate, and draft a viable plan without the disruptions that would occur with the filing of

competing plans.  *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133

(D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held,

is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme

and thus ensure its survival as a business."). This period of exclusivity affords a debtor an

opportunity to propose a chapter 11 plan and solicit acceptances thereof without the potential value

deterioration and disruption that would ensue from the filing and solicitation of competing plans

by non-debtor parties. Further, the legislative history indicates that "cause" should be interpreted

in such a way "to allow the debtor to reach agreement."  H.R. Rep. No. 95-595 at 231-32 (1978).

22.    To determine whether "cause" exists to grant an extension of the Exclusive Periods,

courts analyze the following factors:

(a)    the size of the debtor and difficulty in formulating a plan;

(b)    the necessity of sufficient time to negotiate a plan and prepare adequate
       information to allow a creditor to determine whether to accept the plan;

(c)      the existence of good faith progress towards a resolution;

(d)      whether the debtor is paying its debts as they come due;

(e)      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)      whether the debtor has made progress in negotiating with creditors;

(g)      the length of time the case has been pending;

(h)      whether the debtor is seeking an extension to pressure creditors to submit to its demands; and

(i)      whether or not unresolved contingencies exist.

*See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639 (8th Cir. 2003); *In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

23.     Not all of the above factors are relevant to every case and courts may consider the relevant subset of factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See In re Hoffinger Indus., Inc.*, 292 B.R. at 644; *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity). The Debtors respectfully submit that, as detailed below, consideration of the relevant factors supports the requested extensions of the Exclusive Periods for at least another 90 days.

## II.     Good Cause Exists to Extend the Exclusive Periods

24.     This is the Debtors' second request for an extension of its Exclusive Periods. The Debtors submit that the factors discussed below weigh in favor of such extension.

### A.     The Chapter 11 Cases are Complex.

25.     The Chapter 11 Cases are sufficiently complex to warrant the requested extension of the Exclusive Periods. While the Debtors closed on the sale of substantially all of their assets to the State University of Iowa at the end of January, there are still numerous issues related to the disposition of assets that the Debtors and their stakeholders must continue to work through, including treatment of the Debtors' pension plan and its participants, analysis and treatment of administrative claims, winddown of the Debtors' self-insured insured trusts, and, ultimately, the economic issues underlying distributions under a chapter 11 plan of liquidation. While the Debtors believe that the Combined Plan and Disclosure Statement threads the needle on these many issues, the Debtors understand that continuing negotiations are necessary in order to try and gain the formal support of certain constituents that will be important to confirmation of the Combined Plan and Disclosure Statement.

26.     The Debtors' constituents and creditors are also a dynamic and unique set of groups, each with sufficiently distinct claims, interests and potential assets. Such groups include, but are not limited to, the Secured Bondholder Representatives, the Committee, the Pension Committee, workers' compensation claimants, pre- and post-petition trade creditors, medical care providers, national staffing companies, tort claimants, and former patients.

27.     Thus, the Debtors submit that the complexity of the Chapter 11 Cases weigh in favor of granting the requested extension of the Exclusive Periods.

**B.      The Debtors Have Made Good Faith Progress Since the Petition Date.**

28.      Since the Petition Date, the Debtors have made significant and material progress toward advancing the Chapter 11 Cases, including, most significantly, consummating the transaction with the University in a manner that provided continuity of care for the Debtors' patients and job opportunities for the Debtors' former workforce as well as filing the Combined Plan and Disclosure Statement. The continued good faith efforts and progress exhibited by the Debtors in the Chapter 11 Cases thus far support a further extension of the Exclusive Periods.

**C.      Additional Time is Necessary to Continue Negotiations Without the Threat of Value-Destructive Fights Over Multiple Plans.**

29.      As noted herein, the Debtors and the Secured Bondholder Representatives understand that continuing negotiations must occur in the coming weeks even though the Combined Plan and Disclosure Statement have been filed. Indeed, counsel for the Debtors and the Secured Bondholder Representatives stated as much at the hearing on February 22, 2024. Granting the requested extensions will give the Debtors a full and fair opportunity to engage in meaningful discussions and negotiations with the Pension Committee and Committee without the distraction, cost, and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting section 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (internal quotation and citation omitted). Accordingly, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

**D.      The Debtors Have Paid Their Debts in the Ordinary Course as They Came Due.**

30.     The Debtors have made and will continue to make timely payments on their undisputed post-petition obligations in the ordinary course. The requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors. As such, this factor also weighs in favor of extending the Exclusive Periods.

**E.      The Debtors are Not Seeking an Extension to Pressure Creditors.**

31.     Granting the requested extensions of the Exclusive Periods will not pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage. In fact, extension of the Exclusivity Periods will allow the Debtors and the Secured Bondholder Representatives to continue the good faith negotiations with the Debtors' creditor constituencies that have been ongoing during the preceding months. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. To the contrary, the Debtors have been in regular communications with the Pension Committee, the Secured Bondholder Representatives, and the Committee and other constituents during this time. The Debtors are not seeking an extension to pressure their creditors to take any action, but only to ensure that the Debtors can pursue the Combined Plan and Disclosure Statement and the resolution of the Chapter 11 Cases free from the distraction and value-destructive potential of competing plan proposals. Therefore, this factor also weighs in favor of extending the Exclusive Periods.

**F.      The Debtors Have Already Filed a Viable Plan.**

32.     Not only do the Debtors have a viable path towards a plan, they have already filed the Combined Plan and Disclosure Statement. This factor strongly weighs in favor of extension of the Exclusivity Periods in order to allow the Debtors to solicit the Combined Plan and Disclosure Statement without the distraction and cost of competing plans.

**G.     Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases.**

33.     Termination of the Exclusive Periods, particularly at this stage of the Chapter 11 Cases, would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and would further complicate the progression of the Chapter 11 Cases. As noted above, termination of the Exclusive Periods may result in creditors filing competing plans during the time that the Debtors are soliciting the Combined Plan and Disclosure Statement, creating unnecessary duplicative costs for the estate and confusion among the wider creditor base. Such termination may also disincentivize creditors from negotiating with the Debtors. The proposal and solicitation of any competing plan would greatly complicate and increase the cost of administering the Chapter 11 Cases, further justifying the requested extension of the Exclusive Periods.

34.     Based upon the foregoing, the Debtors respectfully submit that cause exists in the Chapter 11 Cases to extend the Exclusive Periods as requested herein.

## NOTICE

35.     The Debtors will provide notice of the Motion to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Attorney for the Northern District of Iowa; (d) the Centers for Medicare & Medicaid Services; (e) counsel to the Committee; (f) counsel to the Pension Committee; (g) counsel to the Secured Bondholder Representatives; and (h) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

36.     No previous request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

12

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: Cedar Rapids, Iowa
      March 4, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:   (319) 286-7002
Facsimile:   (319) 286-7050
Email:       rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax: 515-283-8045
Email: mmcguire@nyemaster.com
      kmstanger@nyemaster.com
      dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:   (312) 372-2000
Facsimile:   (312) 984-7700
Email:      fperlman@mwe.com
      dsimon@mwe.com
      ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this March 4, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

/s/ *Roy Leaf*