**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, | ) | |
| IOWA CITY, IOWA, *et al.,* | ) | Case No.  23-00623C |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE DEBTORS'**
**SIXTH MONTHLY FEE APPLICATION OF MCDERMOTT WILL & EMERY, LLP**

**JURISDICTION, VENUE, AND STATUTORY PREDICATE**

1.  The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief sought herein is 11 U.S.C. §§330 and 331, as well as Fed. R. Bankr. P. 2016. The United States Trustee has standing to raise, appear and be heard on this Objection pursuant to 11 U.S.C. §307; 28 U.S.C. § 581 *et seq.*

**PROCEDURAL BACKGROUND**

2.  On August 7, 2023, Mercy Iowa City ACO, LLC, Mercy Hospital, Iowa City, Iowa, and Mercy Services Iowa City, Inc., (hereinafter "Mercy" or "Debtors") filed three individual chapter 11 bankruptcy petitions that are being Jointly Administered under case number 23-00623.

3.  The Debtors continue to operate as debtors-in-possession under §§1107 and 1108 of the Bankruptcy Code.

4.  McDermott Will & Emery, LLP (McDermott) filed its Application to Employ on August 23, 2023. On September 14, 2023, the Court entered an Order allowing retention of McDermott effective August 7, 2023.

5.  On September 14, 2023, the Interim Compensation Order was entered by the Court.  Doc. 224. It provided that a Retained Professional may file and serve Monthly Fee Applications and required a 20% holdback of all fees awarded.

6.  McDermott reported that it was paid pre-petition $3,141.170.00 by the Debtors from February 28, 2023, through August 4, 2023.  *See* Doc. 189 page 14.  In addition, McDermott also received a prepetition retainer of $761,951.00.

1.  McDermott previously filed four regular monthly fee applications: the *First Monthly Fee Application of McDermott Will & Emery, LLP, Counsel to the Debtors and Debtors-In-Possession, For Allowance of Compensation and Reimbursement of Expense* on October 9, 2023 (doc. 348); the *Second Application for Compensation* on November 10, 2023 (doc. 502); the *Third Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on November 27, 2023 (doc. 532); the *Fourth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on December 15, 2023 (doc. 574); and the *Fifth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on March 8, 2024 (doc. 817)  (collectively "prior Applications"). The UST filed objections to each of the prior Applications (collectively "prior objections") and as such payment of any of McDermott's fees has not been approved. None of the UST's objections have been heard by the Court or otherwise resolved, and there are no orders entered by the Court allowing payment of any fees beyond the Interim Compensation Order at docket 224. Therefore, many of the issues and objections remain the same. As stated in the UST's

prior objections, resolution of these matters should proceed expeditiously so all attorneys billing in this matter may conform their practices to the expectations of this Court.

2.   The UST hereby incorporates all prior factual development and argument made in the prior objections at docket numbers 467, 529, 564, 608, and 857.

3.   The fees in the Sixth Monthly Application were incurred between January 1, 2024 and January 31, 2024. The total amount of fees incurred for the Application period is $690,492.00 and $2,999.00 in expenses. Pursuant to the Interim Compensation Order, McDermott is seeking $552,393.60 as 80% of the total fees incurred and 100% of the expenses. Payment for fees and expense is sought pursuant to 11 U.S.C. §§ 330 and 331.

4.   The Application includes a footnote noting "written-off" fees and expenses of $19,972.09, although none of the written-off entries are included in the Application.

## ARGUMENT

5.   The UST filed Objections to McDermott's First, Second, Third, Fourth, and Fifth Fee Applications, but the issues raised have not yet been decided. Many of the same issues persist in the Sixth Application. The UST incorporates those prior arguments as if fully stated herein.

6.   Describing itself as having extensive bankruptcy and restructuring experience, as well as experience in virtually all other aspects of law that may arise in these cases, McDermott continues to seek payment of fees multiple times greater than any other party in this case. However, noting that "every dollar expended on legal fees results in a dollar less that is available for distribution to creditors or use by debtor," the UST continues to look closely at all fee applications filed in these jointly administered cases. *In re Pettibone Corp.*, 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987) (internal citations omitted). Apparent yet again in the present Application is the pattern of a number of attorneys all billing to complete the same tasks, including a number of partner-attorneys all

billing for the same items and to review every document in the case. Presumably, this vast number of attorneys all working on the same file has implicated the law of diminishing returns. Now that an extension of exclusivity has been granted, the continued viability of this practice is a paramount concern.

7.   As stated in the UST's prior objections, the Court has the authority to award less than the requested amount if it determines, through the lodestar method of calculation, that the services rendered were not reasonable and necessary to the administration of the estate and represents the applicant's best billing judgment.

8.   As stated in the prior objections, McDermott bills at hourly rates substantially higher than any other professional in the case, and the rates far exceed those customary in the Northern District of Iowa. As hourly rates should be set to be commensurate with the experience and expertise, the high hourly rates charged by McDermott invite close scrutiny.

9.   The UST continues to note a lack of billing judgment evident in the Sixth Application, as was evident in the prior Applications. A good exercise of billing judgement should result in the Application being reduced to pay only for those attorneys who were actually necessary at each meeting or conference and whose individual expertise actually benefitted the estate. Absent such a showing, the Application award must be reduced.

10. Also, again evident in the Sixth Application is significant overstaffing, resulting in McDermott charging effectively over $3,000/hour to "review" and stay up-to-date on the daily activities of the case. This duplication of efforts is particularly evident where multiple partner-level attorneys are attending nearly every meeting or settlement negotiation. While the UST understands the entire team of attorneys need to be kept apprised of the status of meetings and

4

negotiations, partner attorneys making well over $1,000 per hour should be able to complete meetings and tasks without excessive consultation or over-representation.

11. Specific to McDermott's firm practices is an excessive amount of intra-office conferences. Throughout the course of the case, the UST has observed that every decision by the Debtor's firm invites numerous conferences with attorneys who are highly involved in the case to attorneys who only bill infrequently in the case.

12. The UST reiterates its prior arguments that while these efforts may aid the firm in the practice of law, the applicant bears the burden of showing the necessity of each individual billing for the same tasks. *See In re Agriprocessors, Inc.*, 2009 Bankr. LEXIS 3916 at *8; *see also In re VeroBlue Farms USA, Inc.* 2023 Bankr. LEXIS 1071, at *16-17. The Sixth Application also includes increasingly vague entries which do not allow the reviewer to fully understand the participants or purpose behind each meeting. These entries, in addition to potentially evidencing the excessive intra-office conferences and general overstaffing, are objectionable also as vague and therefore not compensable.

13. Overall, the excessive staffing and billing of the case results in diminished benefit to the bankruptcy estate. Compensation should only be awarded to actions which actually benefit the bankruptcy estate.

14. A number of entries in the Sixth Application continue to be vague, making it impossible for the reader to determine if they do in fact benefit the estate. Examples from partners include but are not limited to:

- 1/04/24:  N. Bull billed (1.0) hours for "Attention to Altera claims and legal research."
- 1/09/24:  D. Simon billed (1.0) for "Multiple conferences with D. Gordon re Altera and other transition issues (1.0) and (1.1) hours for "Conferences with N. Bull and others re Altera litigation strategies"

- 1/10/24 D. Simon billed (1.3) hours for" Multiple conferences with J. Haake, N. Bull and client re Altera litigation issues" and (1.8) hours for "revisions to motion and related communications re same."
- 1/16/24: J. Greathouse billed (.4) hours for "Teleconference with D. Golinghorst and D. Burke re physician agreement."
- 1/22/24: J. Haake billed (.2) hours for "Correspondence with D. Golinghorst re sale closing issues."
- 1/27/24: J Greathouse billed (1.4) hours for "Correspondence with D. Golinghorst re signature pages and open issues."
- 1/30/24: J. Greathouse billed (7.5) hours for "extensive correspondence and teleconferences with Mercy, Polsinelli re closing matters."

15. Because the entries cannot be evaluated for their necessity or usefulness to the estate, a conclusion that they benefitted the estate cannot be made and the Application award must be reduced.

## **CONCLUSION**

16. The applicant bears the burden of proving both the reasonableness and necessity of fees requested in the fee application. If a professional fails to meet this burden of proof under 11 U.S.C. §330(a), the bankruptcy court may award less than the amount of compensation that is requested.

17. The McDermott Sixth Fee Application totals $690,492.00 for fees and $2,999.00 in expenses for the month of January 2024.  The UST submits that the Fee Application is excessive for the reasons stated in this objection.

18. The UST reserves all rights to amend and supplement or modify each portion of this objection.

WHEREFORE, the Acting United States Trustee requests that the Court reduce the Sixth Fee Application by 15% absent further explanation requested and required above and Order McDermott to provide the billing entries for the voluntarily written off charges.

Dated:    March 22, 2024         **Mary R. Jensen**
Acting United States Trustee
Region 12

By:/s/ Janet G. Reasoner
**Janet G. Reasoner**
111 7th Ave SE, Box 17
Cedar Rapids, Iowa 52404
Ph: (319) 364-2211
Janet.G.Reasoner@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated March 22, 2024

By:/s/ Jennifer L. Cline
**Jennifer L. Cline**
Paralegal Specialist
United States Trustee's Office