## **EXHIBIT 1**

**Liquidation Analysis**

**Mercy Hospital**  
Consolidated Liquidation Analysis  
*(as of 1/31/2024)*

Draft and Subject to Change

*$ in 000's*

| Gross Proceeds | | | | Recovery Estimates ($) Ch 11 Low | Recovery Estimates ($) Ch 11 High | Chapter 7 % Impact | Recovery Estimates ($) Ch 7 Low | Recovery Estimates ($) Ch 7 High |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | |
| Cash & Cash Equivalents | | | | 15,013.4 | 15,013.4 | 100% | 15,013.4 | 15,013.4 |
| Estimated Proceeds from UI Transaction | | | | 26,723.1 | 26,723.1 | 100% | 26,723.1 | 26,723.1 |
| Accounts Receivable, Net | | | | 17,575.2 | 23,655.6 | 70% | 12,302.6 | 16,558.9 |
| Other Real Estate | | | | 1,880.0 | 2,820.0 | 75% | 1,410.0 | 2,115.0 |
| Estimated Joint Ventures Recovery | | | | 4,458.5 | 9,238.5 | 50% | 2,229.3 | 4,619.2 |
| Estimated Contingent Sources | | | | 1,000.0 | 5,100.0 | 55% | 550.0 | 2,805.0 |
| *Subtotal, Assets* | | | | *66,650.3* | *82,550.7* | | *58,228.5* | *67,834.7* |
| **Potential Causes of Action** | | | | | | | | |
| Other | | | | Undetermined | Undetermined | 0% | Undetermined | Undetermined |
| Avoidance Actions | | | | Undetermined | Undetermined | 0% | Undetermined | Undetermined |
| *Subtotal, Potential Causes of Action* | | | | - | - | | - | - |
| **Cost of Asset Liquidation** | | | | | | | | |
| Liquidating Trust and Pension Trust Administrative Costs | | | | (1,000.0) | (1,000.0) | 0% | - | - |
| 2024 Est. Professional Fees (for comparison) | | | | (3,000.0) | (3,000.0) | 100% - 83% | (3,000.0) | (2,500.0) |
| Trustee Fees | | | | - | - | 0% | (1,794.9) | (2,123.4) |
| Legal Fees for Trustee | | | | - | - | 0% | (1,000.0) | (1,000.0) |
| *Subtotal, Cost of Asset Liquidation* | | | | *(4,000.0)* | *(4,000.0)* | | *(5,794.9)* | *(5,623.4)* |
| **Net Cash Available for Distribution** | | | | **62,650.3** | **78,550.7** | | **52,433.6** | **62,211.4** |

| Claims | Filed Claims | Ch 11 Rec. | Ch 11 Low | Ch 11 High | Ch 7 Rec. | Ch 7 Low | Ch 7 High |
|---|---|---|---|---|---|---|---|
| Class 1: Secured (Bondholders) | (62,000.0) | 77% - 97% | (47,787.9) | (60,088.9) | 85% - 100% | (52,433.6) | (62,000.0) |
| Class 2: Other Secured Claims[A] | (598.9) | 100% - 100% | (598.9) | (598.9) | 0% - 35% | - | (211.4) |
| Unclassified: Administrative & Priority Expenses | | 100% | (9,484.8) | (11,854.0) | 0% | - | - |
| Unclassified: Ch.7. Administrative Claims (Altera Only)[B] | (2,800.0) | N/A | N/A | N/A | 0% | - | - |
| General Unsecured Claims | (38,368.1) - (113,493.8) | | | | | | |
| Class 3: General Unsecured Claims[C] | (38,368.1) | 8% - 10% | (4,778.8) | (6,008.9) | 0% | - | - |
| Class 3: Ch.7 General Unsecured Claims (Altera-Only)[B] | (53,625.7) | N/A | N/A | N/A | 0% | - | - |
| Class 4: Bondholder Deficiency Claims[D] | Varies | | - | - | 0% | - | - |
| Class 5: Pension Claims[E] | (21,500.0) | | - | - | 0% | - | - |

Filed Claim Amounts include the following adjustments:

[A] Class 2 Claims represent the as-filed secured claims, less bondholder claim less US Dept of Health and Human Services claim related to Medicare Advanced Funding  
[B] Settlement with Altera  
  [1] The settlement with Altera is contingent on a Ch.11 Plan (vs. Chapter 7). A $2.8M Administrative Claim, a $9.625M GUC Claim, and a $50M Rejection Damages GUC Claim may be asserted by Altera in the Ch.7 scenario. See also [C][2].  
  [2] Altera-Only General Unsecured Claim includes: $50M Rejection Damages Claim, along with adjusted increase of the GUC Claim of $3.625M from the settlement indicated in note [C][2]  
[C] Class 3 GUC is TBD. Additional Notes below are based on filed and scheduled claims:  
  [1] Altera's filed claim totaled $9,625,739.15, claim amount adjusted down to $6,000,000 based on settlement  
  [2] Reduced by $1.22M related to filed pension claims. (Estimate of pension claim in Class 5)  
  [3] Excludes Claim from HRSA related to PRF funding. Claimed amount of $14,149,139 received 2/2/24  
  [4] Excludes potential additional reduction from reclassification of 503(b)(9) claims filed after the administrative claims bar date that were originally filed as unsecured claims. 503(b)(9) claims are estimated to be $2.64M  
  [5] Reduced by $3.4M related to cure payments from sale transaction. These settlements may not be part of the filed/scheduled unsecured claims  
[D] Class 4 Distribution to be included as part of Class 3 distribution to the extent Class 1 <$62M, which is subject to actual asset recovery amounts  
[E] Class 5 Distribution to be included as part of Class 3 distribution after specific causes of action  

  [1] Class 5 Claim is estimated using Jan 31 estimates of pension fund balances less 6/30/23 estimates of pension liabilities, rolled forward to 1/31/24. The actual liability is sensitive to corporate bond rate changes and thus the funded status can fluctuate significantly from month to month. The basis of calculation is also subject to change which can also materially impact any potential deficiency.  
  [2] Recoveries for Class 5: Pension Claims do not reflect current Pension balances or adjustments for fees related to administration of the pension  
[C&D] Note: Class 3 and 5 claims are shown in aggregate for the purposes of estimating percentage recovery. Therefore, the percentage recovery for pension claims are shown before any potential recoveries from specific cause of action for which proceeds are attributable to the pension claimants alone.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| | ) |
| Debtors. | ) Jointly Administered |

## NOTES AND CERTAIN ASSUMPTIONS REGARDING
## THE DEBTORS' LIQUIDATION ANALYSIS

**I.     Background**

Section 1129(a)(7) of the Bankruptcy Code, which is often referred to as the "best interests of creditors" test, requires that, as a condition to confirmation of the Plan, each holder of a Claim or Interest in each Impaired Class must either (i) accept the Plan or (ii) receive or retain under the Plan property of value that is not less than the amount the Holder of an Impaired Class Claim would receive or retain in a hypothetical liquidation under chapter 7 of the Bankruptcy Code (the "Liquidation Analysis"),[1] as of the proposed effective date of the Plan.

The Debtors prepared the Liquidation Analysis to include: (i) estimated cash proceeds that a chapter 7 trustee would generate if the Debtors' Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code on or about May 31, 2024 and the Assets of the Debtors' Estates were liquidated; (ii) estimated distribution that each Holder of a Claim or Interest would receive from the liquidation proceeds; and (iii) compared each Holder's estimated distribution and recovery under a chapter 7 liquidation to the distribution and recovery under the Plan.

The Liquidation Analysis is based upon certain assumptions and, as such, certain aspects may be different from those represented in the Combined Disclosure Statement and Plan.  As such, the Liquidation Analysis should be read in conjunction with the Combined Disclosure Statement and Plan.

THE DEBTORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THESE ESTIMATES AND ASSUMPTIONS CONTAINED HEREIN, OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE THE PROJECTED RESULTS.  IN THE EVENT THAT THE CHAPTER 11 CASES ARE CONVERTED TO A CHAPTER 7 LIQUIDATION, ACTUAL RESULTS MAY VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Disclosure Statement and Plan or Liquidation Analysis, as applicable.

II. **Presentation**

The Liquidation Analysis has been prepared assuming the Debtors converted their Chapter 11 Cases to chapter 7 of the Bankruptcy Code on or about May 31, 2024 (the "Liquidation Date"). The Liquidation Date coincides with the assumed effective date of the Plan. The values presented herein are assumed to be representative of the Debtors' assets and liabilities as of the Liquidation Date.

The Debtors' estimates of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for the purpose of determining the value of any distribution to be made on account of Allowed Claims or Interests under the Plan.

Under the "absolute priority rule," no junior creditor may receive any distribution until all senior creditors are paid in full, and no equity holder may receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

III. **Liquidation Process**

This Liquidation Analysis assumes that a liquidation would be conducted pursuant to chapter 7 of the Bankruptcy Code by a chapter 7 trustee. The Debtors have assumed that their liquidation would occur over approximately [twelve] months during which the Trustee would monetize the Debtors' assets and administer and wind-down the estates. To the extent that causes of action would be pursued, that process would likely take additional time; however, for the reasons described in the Liquidation Analysis, the Debtors have not assumed any such recoveries herein.

    a. **Carve-Out Administrative Claims**

Pursuant to the Second Interim Cash Collateral Order ¶ 13, amounts included in the Carve-Out (as defined in the Second Interim Cash Collateral Order) include the following:

(1) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for statutory fees payable to the U.S. Trustee, together with the statutory rate of interest, and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court (collectively, the "Statutory Fees"), which shall not be subject to any budget;

(2) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code;

(3) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all budgeted, accrued and unpaid fees, costs, and expenses ("Allowed Professional Fees") incurred by Professionals (as defined in the Second Interim Cash Collateral Order), any time prior to the date that is five business days following the occurrence of an Event of Default (as defined in the Second Interim Cash Collateral Order) (the "Carve-Out Trigger Date"), and

2

  (4)  Allowed Professional Fees of Professionals in an aggregate amount not to exceed $250,000 incurred or accrued after the Carve-Out Trigger Date.

### b. Net Cash Available for Distribution

Net Cash Available for Distribution reflects amounts available to Holders of Claims from the proceeds generated from assets ("Net Proceeds Generated from Assets") and proceeds from causes of action ("Proceeds from Causes of Action"), as reduced by the Chapter 7 Liquidation costs.

Under this analysis, the Net Proceeds Generated from Assets available for distribution are distributed to Holders of Claims against, and Interests in, the Debtors in accordance with the Bankruptcy Code.

Importantly, the assumptions contained in the Liquidation Analysis are based upon the timely conversion of accounts receivable to cash by either the Debtors in chapter 11 or a trustee following the Debtors' conversion to chapter 7. Depending on the timing of that conversion, the Debtors project some degradation in a chapter 7 trustee's ability to maximize recoveries of the Debtors' accounts receivable and certain other assets.

This Liquidation Analysis does not include any recoveries or related litigation costs resulting from any potential preference, fraudulent transfer, or other litigation or causes of action that may be available under the Bankruptcy Code because of the uncertainty on the cost of such litigation, the uncertainty of the outcome, and potential disputes regarding these matters. Moreover, given substantial additional claims triggered in a chapter 7 liquidation, and the need to pay Administrative Claims and Priority Claims before General Unsecured Claims, recoveries from potential causes of action would not result in chapter 7 recoveries exceeding those under the Plan.

### c. Administrative Claims and Priority Claims

The Administrative Claims and Priority Claims reflect the estimated unpaid administrative costs and priority costs as of the Liquidation Date.

The Liquidation Analysis assumes that Net Cash Available for Distribution would be used to fund Administrative Claims and Priority Claims prior to the payment of any General Unsecured Claims. In addition, in the event of a chapter 7 conversion, the significant redirection of proceeds to General Unsecured Claims and Pension Claims would not apply.

## IV. Conclusion

The Debtors have determined that the Plan will provide Holders of Allowed Claims and Interests in Impaired Classes with a recovery that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.