**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 23-00623 (TJC)<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>    Plaintiff,<br><br>v.<br><br>COMPUTERSHARE TRUST COMPANY, N.A., as Master Trustee and Trustee, PRESTON HOLLOW COMMUNITY CAPITAL, INC., as Bondholder Representative, PRESTON HOLLOW CAPITAL, LLC, and PHCC LLC d/b/a PRESTON HOLLOW COMMUNITY CAPITAL,<br><br>    Defendants. | Adv. Pro. No. 24-<br><br>**COMPLAINT FOR DECLARATORY RELIEF, COMPENSATORY DAMAGES, AND OTHER RELIEF, AND IN SUPPORT OF OBJECTION TO PROOF OF CLAIM** |

The Official Committee of Unsecured Creditors ("<u>Plaintiff</u>" or the "<u>Committee</u>")

appointed in the above-captioned chapter 11 cases of Mercy Hospital, Iowa City, Iowa ( "<u>Mercy</u>

<u>Hospital</u>"), Mercy Services Iowa City, Inc. ("<u>Mercy Services</u>") and Mercy Iowa City ACO, LLC

("<u>Mercy ACO</u>" and, together with Mercy Hospital and Mercy Services, the "<u>Debtors</u>"), for and

on behalf of the Debtors' estates, as and for its adversary complaint ("<u>Complaint</u>") against (i)

Computershare Trust Company, N.A. (the "<u>Master Trustee</u>"), in its capacities as Master Trustee

under the Master Trust Indenture (as defined herein) and Trustee under the 2011 Trust Indenture

and 2018 Trust Indenture (each as defined herein), (ii) Preston Hollow Community Capital, Inc.,

in its capacity as Bondholder Representative under the 2018 Trust Indenture (in such capacity,

the "<u>Bondholder Representative</u>"), (iii) Preston Hollow Capital, LLC ("<u>PHC</u>"), and (iv) PHCC

1

LLC d/b/a Preston Hollow Community Capital ("PHCC" and, with the Bondholder

Representative and PHC, collectively, "Preston Hollow"), pursuant to sections 105, 363(b),

502(b), 506(a), 506(c), 510(c), 552(b) and 1125(b) of title 11 of the United States Code, 11

U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 7001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and 28 U.S.C. § 2201(a), respectfully alleges as follows:

## **NATURE OF THE ACTION**[1]

1.       This adversary proceeding seeks (a) a declaratory judgment pursuant to 28 U.S.C.

§ 2201(a) determining that certain property of the Debtors' estates, as described herein, was not

subject to a valid, perfected and/or enforceable prepetition security interest or lien of the Master

Trustee as of the Petition Date, (b) a judgment and compensatory damages against Preston

Hollow for its breach of the Confidentiality Agreement (as defined below), (c) equitable

subordination of the Master Trustee Claim (as defined below) pursuant to section 510(c) of the

Bankruptcy Code as a remedy for Preston Hollow's breach of the Confidentiality Agreement, (d)

surcharge of the Master Trustee's collateral pursuant to section 506(c) of the Bankruptcy Code

for the costs of preserving and disposing of that collateral, (e) application of the equities of the

case exception under section 552(b) of the Bankruptcy Code to limit the scope of the Master

Trustee's security interest in Mercy Hospital's property to exclude any proceeds of the Master

Trustee's prepetition collateral, (f) an order determining the allowed amount and extent of the

secured status of the Master Trustee Claim (as defined below), and (g) an order determining that

the Plan Support Agreement (as defined below) is unenforceable.

---

[1] Capitalized terms used but not defined in this section of the Complaint are defined below.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 1334 and 157. This Court may hear and determine and enter appropriate orders or judgments

with respect to claims in this adversary proceeding that constitute "core" claims under 28 U.S.C.

§ 157(b). With respect to claims in this adversary proceeding that constitute "non-core" claims,

this Court may not enter a final order or judgment without the consent of all parties under 28

U.S.C. § 157(c). Plaintiff does not consent to the entry of final orders or judgments by this Court

(a) with respect to any non-core claims, and (b) if it is determined that this Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United

States Constitution. Venue of this adversary proceeding in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 363(b),

502(b), 506(a), 506(c), 510(c), 552(b) and 1125(b) of the Bankruptcy Code, Bankruptcy Rule

7001 and 28 U.S.C. § 2201(a).

**THE PARTIES**

4.      Plaintiff was appointed on August 15, 2023 by the Office of the United States

Trustee for the Northern  District of Iowa pursuant to section 1102 of the Bankruptcy Code.

Plaintiff is vested with, among other things, the powers described in section 1103 of the

Bankruptcy Code, including the power to investigate the acts, conduct, assets, liabilities, and

financial condition of the Debtors.

5.      Plaintiff has standing to prosecute this adversary proceeding on behalf, and for the

benefit, of the estates of each of the Debtors' pursuant to paragraph 12 of this Court's *Second

Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing*

*Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief*
[Case No. 23-00623; Doc. No. 475] (the "Second Interim Cash Collateral Order"). Paragraph 12
of the Second Interim Cash Collateral Order provides, in relevant part, that "[t]his Second
Interim Order confers standing on the Committee, but not on any other Interested Party to
commence, prosecute and/or settle a Challenge." A "Challenge" is defined in paragraph 12 of the
Second Interim Cash Collateral Order to include any challenge to the Debtors' Stipulations (as
defined in the Second Interim Cash Collateral Order) and the assertion of "any claim or cause of
action against the Trustee and/or holders of the Bonds."

6.      The Master Trustee is a national banking association organized and existing under
the laws of the United States of America. The Master Trustee serves as the successor 2011 Bond
Trustee under the 2011 Trust Indenture (each as defined below), successor 2018 Bond Trustee
under the 2018 Trust Indenture (each as defined below), and successor Master Trustee under the
Master Trust Indenture (as defined below).

7.      The Bondholder Representative is a Maryland corporation with its principal place
of business in Dallas, Texas. The Bondholder Representative serves as Bondholder
Representative under the 2018 Trust Indenture (as defined below).

8.      PHC is a Delaware limited liability company with its principal place of business
in Dallas, Texas. PHC is the majority holder of the 2018 Bonds (as defined below).

9.      PHCC is an affiliate of the Bondholder Representative and PHC and is party to
the Confidentiality Agreement (as defined below) with Mercy Hospital.

## STATEMENT OF FACTS

**A.    General Background**

10.    On August 7, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Iowa (this "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

11.    The Debtors continue in possession of their remaining property and businesses as debtors in possession pursuant to the provisions of sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

12.    Mercy Hospital is a Catholic-based Iowa nonprofit corporation and a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended). Mercy Hospital, along with the other Debtors, operated an acute care community hospital and clinics located in Iowa City, Iowa and surrounding communities. Mercy Hospital was established in 1873 by the Sisters of Mercy to provide a facility where medical students could gain clinical experience and the Sisters of Mercy could pursue their mission of caring for the poor and sick.

13.    Mercy Hospital served Iowa City and Southeast Iowa. *Newsweek* recognized Mercy Hospital as one of the World's Best Hospitals in 2022 and 2023. In 2021, Watson Health recognized Mercy Hospital in its 100 Top Hospitals and 50 Top Cardiovascular awards. Mercy Hospital was nationally recognized for its commitment to providing high-quality stroke care and received the American Heart Association's Get With The Guidelines – Stroke GOLD PLUS award in 2023. Mercy Hospital's Wound and Vein Center received the 2022 Center of Distinction award from Healogics, the nation's largest provider of advanced wound care services.

14.     The Debtors operated in facilities in Iowa City and the surrounding area that they owned or leased. These facilities provided much-needed services to the communities that they served and included an acute care hospital, an emergency department, family health centers, obstetrics and gynecology, cancer care, behavioral health care, home health care, a walk-in clinic, and various other primary and specialty care clinics. In the period from July 1, 2022 through June 30, 2023 ("Fiscal Year 2023"), the Debtors generated total revenues of approximately $176 million (unaudited).

15.     As of the Petition Date, Mercy Hospital had 194 licensed beds and operated an emergency room with over 30,000 visits per year. In Fiscal Year 2023, Mercy Hospital had approximately 5,000 inpatient admissions, 1,550 observation admissions, and 800 newborn deliveries. Mercy Hospital's surgical volume was approximately 7,160 during this period.

16.     The Debtors, through Mercy Hospital and its clinics, provided a broad range of other healthcare services, including cardiovascular care, bariatric care, high-definition robotic surgery, behavioral and mental health services, pain management, urological services, obstetrics and gynecological services, and many other forms of specialized care.

17.     In addition to Mercy Hospital, the Debtors owned or operated 18 primary and specialty clinics through Mercy Hospital's for-profit subsidiary, Mercy Services. Total clinic visits for Mercy Services were over 140,000 in Fiscal Year 2023. The off-campus clinic sites are located in various towns and communities in the surrounding geographic region, primarily south and east of Iowa City.

18.     As of the Petition Date, the Debtors' workforce was comprised of approximately 1,122 employees, including nurses, certified nursing assistants, licensed practical nurses, caregivers, janitorial workers, receptionists, corporate-level personnel, and other staff. Further,

the Debtors employed over 90 physicians. With these employed providers, the Debtors' medical

staff was comprised of 365 individuals, including voluntary community doctors and other

contracted providers. As of the Petition Date, the Debtors were the fifth largest employer in Iowa

City.

19.     Mercy Hospital also benefits from non-Debtor Mercy Hospital Foundation, which

is a 501(c)(3) tax-exempt entity and wholly-owned subsidiary of Mercy Hospital whose purpose

is to support Mercy Hospital's healthcare mission.

20.     In addition, Mercy Hospital and/or Mercy Services act as joint venture partners in

various other healthcare ventures that operate separately and apart from the Debtors.

**B.     The Bond Debt and Master Trustee's Alleged Prepetition Security Interests**

21.     As of the Petition Date, Mercy Hospital was allegedly indebted to the Master

Trustee for the benefit of the beneficial holders with respect to (i) those certain Health Facilities

Revenue Bonds, Series 2011 (Mercy Hospital Project) (the "2011 Bonds")  in the aggregate

outstanding principal amount of approximately $24.3 million, and (ii) those certain Health

Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project) (the "2018 Bonds" and, together

with the 2011 Bonds, the "Bonds") in the aggregate outstanding principal amount of

approximately $34.2 million, plus accrued but unpaid interest on the Bonds in the amount of

approximately $1.0 million.

22.     The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer") pursuant to

that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust Indenture"), between

the Issuer and Wells Fargo Bank, National Association, as predecessor Trustee (the "2011 Bond

Trustee"), and the proceeds of the 2011 Bonds were loaned to Mercy Hospital pursuant to that

certain Loan Agreement dated as of November 1, 2011 (the "2011 Loan Agreement"), between

the Issuer and Mercy Hospital. Under the 2011 Trust Indenture, the Issuer pledged to the 2011

Bond Trustee substantially all of its rights under the 2011 Loan Agreement, including its rights

in and to the "Series 2011 Obligation" (as defined therein) securing the 2011 Bonds, the amounts

payable thereon and the amounts payable to the Issuer under the 2011 Loan Agreement, except

for certain Reserved Rights (as defined therein).

23.    The 2018 Bonds were issued by the Issuer pursuant to that certain Trust Indenture

dated as of May 1, 2018 (the "2018 Trust Indenture"), between the Issuer and Wells Fargo Bank,

National Association, as predecessor Trustee (the "2018 Bond Trustee"), and the proceeds of the

2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of

May 1, 2018 (the "2018 Loan Agreement"), between the Issuer and Mercy Hospital. Under the

2018 Trust Indenture, the Issuer pledged to the 2018 Bond Trustee substantially all of its rights

under the 2018 Loan Agreement, including its rights in and to the "Series 2018 Obligation" (as

defined therein) securing the 2018 Bonds, the amounts payable thereon and the amounts payable

to the Issuer under the 2018 Loan Agreement, except for certain Reserved Rights (as defined

therein).

24.    The Bonds are allegedly secured by "Obligations" issued by Mercy Hospital

under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and

amended from time to time (the "Master Trust Indenture"), by and between Mercy Hospital and

Norwest Bank Iowa, National Association, as predecessor Master Trustee.

25.    Computershare Trust Company, N.A. serves as the successor 2011 Bond Trustee

and 2018 Bond Trustee (in such capacities, the "Trustee"), and as the successor Master Trustee

under the Master Trust Indenture.

26.     As further alleged security for its obligations with respect to the Bonds, Mercy Hospital entered into that certain Mortgage and Security Agreement and Fixture Financing Statement, dated as of May 1, 2018 in favor of the Master Trustee (the "Mortgage").

27.     As of the Petition Date, the Master Trustee alleges a security interest in, and lien upon, the following assets of Mercy Hospital as collateral for amounts due under the 2011 Loan Agreement and the 2018 Loan Agreement (collectively, the "Prepetition Trustee Collateral"):

(a)     Pursuant to the Granting Clauses, Division I, of the Master Trust Indenture, the Master Trustee held a security interest in and lien upon all of Mercy Hospital's[2] "accounts and assignable general intangibles now owned or hereafter acquired by [Mercy Hospital] regardless of how generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial Code", subject to certain exclusions.

(b)     Pursuant to the Granting Clauses of the Mortgage, the Master Trustee held a mortgage and security interest in substantially all of Mercy Hospital's real and personal property including, without limitation, Mercy Hospital's hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, and all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging

---

[2] The Master Trustee's security interest under the Master Trust Indenture only encompasses the "Obligated Group" which is defined to include only Mercy Hospital, and does not include the assets of Mercy Services or Mercy ACO.

or in any way pertaining to Mercy Hospital's interest in the land as set forth (and solely to the extent set forth) in the Mortgage.

28.     On October 2, 2023, the Master Trustee filed a proof of claim (Claim No. 10132) (the "Master Trustee Claim") in the amount of $59,526,655.69 for amounts allegedly owed by Mercy Hospital with respect to the Bonds and related obligations. The Master Trustee Claim asserts that it is a fully secured claim.

**C.      The Unencumbered Assets**

29.     The Committee has identified certain assets of the Debtors, described below, that the Master Trustee was not granted any security interest in, or lien against, and which therefore do not constitute Prepetition Trustee Collateral.

30.     A determination by the Court pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 7001(2) and (9), and 28 U.S.C. § 2201(a) regarding the extent, validity and priority of the Master Trustee's security interests in or liens against the Debtors' assets is necessary to the proper administration of the Debtors' estates.

31.     As part of this adversary proceeding, the Committee seeks a determination by the Court that, as of the Petition Date, the Master Trustee did not have a valid, perfected and/or enforceable security interest in, or lien against, certain assets of the Debtors, including the following assets and the proceeds thereof (collectively, the "Unencumbered Assets"): (a) any and all assets of (i) Mercy Services, including, but not limited to, Mercy Service's 25% ownership interest in Progressive Rehabilitation Associates, LLC, 50% ownership interest in Melrose Retirement Community LLC, and 100% ownership interest in Captis Mercy Hospital, and (ii) Mercy ACO (collectively, the "Non-Obligor Assets"); (b) any and all of Mercy Hospital's deposit or other accounts and funds deposited therein, including, without limitation, the accounts

10

identified in Mercy Hospital's Schedules of Assets filed with the Court [Case No. 23-00623; Doc. No. 135] (the "Deposit Accounts"); (c) any and all of Mercy Hospital's investment accounts and any cash, securities or other investment property held therein, including, without limitation, the investment account identified in Mercy Hospital's Schedule A/B: Assets – Real and Personal Property filed with the Court [Case No. 23-00623; Doc. No. 135] (the "Investment Accounts"); (d) Mercy Hospital's 100% ownership interests in each of Mercy Hospital Foundation, Mercy Services, Captis Mercy Hospital,[3] Mercy Hospital Guild, and Mercy Outreach Iowa City, Inc., and Mercy Hospital's ownership interest in Mercy of Iowa City Regional PHO[4] (collectively, the "Subsidiary Equity Interests"); (e) any and all of the Debtors' commercial tort claims (the "Commercial Tort Claims"); (f) any and all of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code or under section 544 of the Bankruptcy Code and applicable state law governing avoidable or preferential transfers (collectively, the "Avoidance Actions"); or (g) any and all federal or state government grants, subsidies, entitlements, assistance and/or relief funds, including, without limitation, funds or tax credits awarded to, or received by the Debtors arising under or relating to (i) Federal Emergency Management Agency and other grants for COVID-19 business interruptions or (ii) the CARES Act, including all employee retention credits thereunder (collectively, the "Other Government Subsidies").

---

[3] The amended Schedule A/B: Assets – Real and Personal Property filed by both Mercy Hospital [Case No. 23-00623; Doc. No. 606] and Mercy Services [Case No. 23-00624; Doc. No. 19] on December 28, 2023 list a 100% ownership interest in Captis Mercy Hospital.

[4] The amended Schedule A/B: Assets – Real and Personal Property filed by Mercy Hospital [Case No. 23-00623; Doc. No. 606] on December 28, 2023 states that the percentage of Mercy Hospital's ownership interest in Mercy of Iowa City Regional PHO is undetermined.

**D.     The Confidentiality Agreement**

32.     Mercy Hospital (as "Company") and PHCC are parties to a Confidentiality

Agreement, dated as of February 7, 2023 (the "Confidentiality Agreement").

33.     Pursuant to the Confidentiality Agreement, Preston Hollow received significant

non-public, material and confidential operational, financial, and strategic information and

financial reporting from the Debtors for use by Preston Hollow "solely for the purpose of …

discussing, evaluating, negotiating, or implementing a Transaction." Confidentiality Agreement,

¶ 1. A "Transaction" was defined in the Confidentiality Agreement as "one or more potential

financing transactions involving the Company and/or certain of the Company's indebtedness."

Confidentiality Agreement, preamble.

34.     The Confidentiality Agreement had a term of 12 months and expired on February

24, 2024. Confidentiality Agreement, ¶ 8.

**E.     The Receivership Action and Preston Hollow's Deliberate Breach of the
Confidentiality Agreement**

35.     On or about July 18, 2023, the Master Trustee and Bondholder Representative

sent the Debtors a certain Notice of Events of Default and Loan Default Events; Demand for

Further Assurances (the "Default Notice"). The Default Notice incorrectly asserted that Mercy

Hospital was in default under the Bonds, identifying three different alleged defaults thereunder.

On or about July 21, 2023, Mercy Hospital disputed each of the alleged defaults under the Bonds

in writing.

36.     On July 24, 2023, the Master Trustee and Bondholder Representative sent a notice

of acceleration (the "Acceleration Notice") to the Debtors, which did not address Mercy

Hospital's letter of July 21, 2023 contesting each alleged default under the Bonds asserted by the

Master Trustee and Bondholder Representative.

37.     Also on July 24, 2023, within hours of the Debtors' receipt of the Acceleration

Notice, the Master Trustee and Bondholder Representative initiated an action against Mercy

Hospital seeking the appointment of a receiver for Mercy Hospital's assets in the Iowa District

Court for Johnson County (the "Iowa District Court"), styled as *Computershare Trust Company,*

*N.A., as Master Trustee and Series 2018 Trustee, and Preston Hollow Community Capital, Inc.,*

*as Bondholder Representative v. Mercy Hospital Iowa City,* Case No. LACV084546 (the

"Receivership Action"), by filing that certain Petition and Request for Appointment of a

Receiver (the "Receivership Petition").

38.     On July 25, 2023, the Master Trustee and Bondholder Representative filed a

Motion for Appointment of Receiver and Request for Expedited Hearing (the "Motion for

Receiver") in the Receivership Action.

39.     The Receivership Petition, the affidavits filed by representatives of the Master

Trustee and Bondholder Representative, respectively, in support thereof, and the Motion for

Receiver were replete with public disclosure of highly sensitive and confidential information

concerning the financial state of the Debtors that was provided to Preston Hollow pursuant to the

terms of the Confidentiality Agreement. Preston Hollow's sharing of such highly sensitive and

confidential information with the Master Trustee and its subsequent public disclosure of that

information in the Receivership Action were each in breach and violation of the terms of the

Confidentiality Agreement.

40.     The confidential information that Preston Hollow disclosed in the Receivership

Action in violation of the Confidentiality Agreement included, without limitation, information

found in the following paragraphs and attachments to the Receivership Petition, Motion for

Receiver and related supporting affidavits (collectively, the "Disclosed Confidential

Information"):

- Paragraphs 1, 2, 15, 16, 18, and 24 of the Receivership Petition and Exhibits I, K, L, and M to the Receivership Petition;

- Paragraphs 2 and 3 of the Motion for Receiver;

- Paragraphs 9 and 10 of the Affidavit of Corbin Connell in Support of Petition and Request for Appointment of Receiver (the "Connell Affidavit"); and

- Paragraphs 5-7 and 10 of the Affidavit of Charlie Visconsi in Support of Petition and Request for Appointment of Receiver and all Appendix items attached thereto (A through G) (the "Visconsi Affidavit").

41.     As a result of the commencement of the Chapter 11 Cases, the Receivership

Action was stayed pursuant to section 362(a) of the Bankruptcy Code before any substantive

relief was granted by the Iowa District Court.

**F.      Damages Arising From Preston Hollow's Improper Disclosure of the Debtors' Confidential Information**

42.     Mercy Hospital learned of the initiation of the Receivership Action on the

afternoon of July 24, 2023 by way of a news reporter, and first received the Receivership Petition

from media outlets.

43.     Preston Hollow's retained communications firm, Larson Shannahan Slifka Group

LLC d/b/a LS2group ("LS2"), contacted multiple major media outlets in Iowa, counterparties to

the Debtors' contracts, elected officials and other key stakeholders to tell them that Mercy

Hospital was placed in receivership to avoid closure (despite the fact that a receivership action

was only initiated by Preston Hollow, and had not been granted).

44.     Mercy Hospital was immediately faced with an onslaught of negative press and

other impacts from the commencement of the Receivership Action that hastened the initiation of

the Chapter 11 Cases.

45.     In the days that followed the Master Trustee's and Bondholder Representative's commencement of the Receivership Action, Mercy Hospital was hit with a deluge of cancellations for patient procedures and postponed patient appointments, unexpected and untimely employee resignations, canceled job interviews and delayed new employee start dates, physician resignations, and other negative impacts.

46.     Many of these issues were directly attributable to the false statements and disparaging remarks about Mercy Hospital, its Board, and its management team made by Preston Hollow and/or LS2, as well as Preston Hollow's broad dissemination of confidential information that was shared with Preston Hollow pursuant to the Confidentiality Agreement.

47.     The careless and callous actions taken by Preston Hollow and the Master Trustee jeopardized the health and well-being of Mercy Hospital's patients and limited viable options for Mercy Hospital's future, damaged Mercy Hospital's reputation, and resulted in significant and negative destruction of value for all of the Debtors' stakeholders (including Preston Hollow).

**G.     The Sale of Substantially All of the Debtors' Assets**

48.     On November 7, 2023, the Court entered an order approving the sale of substantially all of the Debtors' assets (the "Sale") to the State of Iowa's University of Iowa (the "University"). The Sale closed on January 31, 2024 (the "Closing Date").

**H.     The Plan Support Agreement**

49.     On February 23, 2023, the Debtors filed the *Debtors' Combined Disclosure Statement and Joint Plan of Liquidation* [Case No. 23-00623; Doc. No. 760] (the "Plan") with this Court.

50.     Also on February 23, 2024, the Debtors, the Bondholder Representative, PHC, and the Master Trustee entered into that certain Plan Support Agreement (as the same may be amended, the "Plan Support Agreement"). Pursuant to the Plan Support Agreement, the

Bondholder Representative, PHC, and the Master Trustee have agreed to, among other things, support and vote in favor of the Plan in exchange for certain treatment of the Master Trustee Claim and other rights and commitments by the Debtors specified in the Plan Support Agreement.

51.     The Debtors did not seek this Court's approval of the Plan Support Agreement prior to entering into it and did not disclose the existence of the Plan Support Agreement to the Committee until filing the Plan.

## COUNT 1

### (Declaratory Relief – Non-Obligor Assets)
### (28 U.S.C. § 2201(a))

52.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

53.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Non-Obligor Assets because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Non-Obligor Assets under the Master Trust Indenture or the Mortgage.

54.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Non-Obligor Assets.

## COUNT 2

### (Declaratory Relief – Deposit Accounts)
### (28 U.S.C. § 2201(a))

55.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

16

56.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Deposit Accounts because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Deposit Accounts under the Master Trust Indenture or the Mortgage.

57.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Deposit Accounts.

## COUNT 3

**(Declaratory Relief – Investment Accounts)**
**(28 U.S.C. § 2201(a))**

58.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

59.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Investment Accounts because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Investment Accounts under the Master Trust Indenture or the Mortgage.

60.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Investment Accounts.

## COUNT 4

**(Declaratory Relief – Subsidiary Equity Interests)**
**(28 U.S.C. § 2201(a))**

61.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

62.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Subsidiary Equity Interests because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Subsidiary Equity Interests under the Master Trust Indenture or the Mortgage.

63.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Subsidiary Equity Interests.

## COUNT 5

### (Declaratory Relief – Commercial Tort Claims)
### (28 U.S.C. § 2201(a))

64.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

65.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Commercial Tort Claims because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Commercial Tort Claims under the Master Trust Indenture or the Mortgage.

66.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Commercial Tort Claims.

## COUNT 6

### (Declaratory Relief – Avoidance Actions)
### (28 U.S.C. § 2201(a))

67.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

68.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Avoidance Actions because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Avoidance Actions under the Master Trust Indenture or the Mortgage.

69.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Avoidance Actions.

## COUNT 7

### (Declaratory Relief – Other Government Subsidies)
### (28 U.S.C. § 2201(a))

70.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

71.     The Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Other Government Subsidies because the Master Trustee was not granted a valid, perfected and/or enforceable security interest in the Other Government Subsidies under the Master Trust Indenture or the Mortgage.

72.     Accordingly, Plaintiff is entitled to a declaratory judgment that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Other Government Subsidies.

## COUNT 8

### (Breach of Contract as to Preston Hollow)

73.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

74.     Preston Hollow was bound by the terms of the Confidentiality Agreement with Mercy Hospital.

75.     Preston Hollow breached the Confidentiality Agreement by disclosing, or causing to be disclosed, the Disclosed Confidential Information to the Master Trustee.

76.     Preston Hollow breached the Confidentiality Agreement by publicly disclosing, or causing to be publicly disclosed, the Disclosed Confidential Information in the Receivership Petition, Motion for Receiver, Connell Affidavit and Visconsi Affidavit.

77.     Preston Hollow's disclosure of the Disclosed Confidential Information damaged Mercy Hospital's reputation and business and resulted in significant and negative destruction of value that harmed all of the Debtors' stakeholders as described above.

78.     Accordingly, Preston Hollow is liable for damages to Plaintiff in an amount to be proven at trial.

## COUNT 9

### (Equitable Subordination of the Master Trustee Claim)
### (11 U.S.C. § 510(c))

79.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

80.     Preston Hollow engaged in inequitable conduct by spreading false statements and disparaging remarks about Mercy Hospital, its Board, and its management team, and publicly disclosing and disseminating confidential information shared with Preston Hollow pursuant to the Confidentiality Agreement and in breach thereof.

81.     Preston Hollow's inequitable conduct resulted in injury and damages to the Debtors and their creditors as described above and conferred an unfair advantage on Preston Hollow.

20

82.     Equitable subordination of Preston Hollow's claims against the Debtors is not

inconsistent with the provisions of the Bankruptcy Code.

83.     Accordingly, pursuant to section 510(c) of the Bankruptcy Code, the Court should

equitably subordinate the Master Trustee Claim (to the extent it is allowed) to all allowed general

unsecured claims against the Debtors for purposes of distribution in the Chapter 11 Cases.

## COUNT 10

### (Surcharge of Collateral as to the Master Trustee)
### (11 U.S.C. § 506(c))

84.     The Committee restates and re-alleges each of the foregoing allegations as if fully

set forth herein.

85.     The Debtors used Unencumbered Assets, including, but not limited to, funds

provided by Mercy Hospital Foundation and funds from the Deposit Accounts and the

Investment Accounts, to preserve the value of the Prepetition Trustee Collateral from the Petition

Date through the Closing Date and to dispose of the Prepetition Trustee Collateral. The Debtors'

use of Unencumbered Assets to preserve and dispose of the Prepetition Trustee Collateral was

reasonable and necessary.

86.     The Debtors' preservation of the Prepetition Trustee Collateral from the Petition

Date through the Closing Date and consummation of the Sale to the University provided a direct

benefit to the Master Trustee.

87.     The Master Trustee impliedly consented to bear the expenses of preserving and

disposing of the Prepetition Trustee Collateral in the Chapter 11 Cases by consenting to the

Debtors' use of the Master Trustee's cash collateral, to the continued operation and preservation

of the Debtors' businesses post-petition, and to the sale of substantially all of the Debtors' assets,

21

including the Prepetition Trustee Collateral, and by its active participation in the auction process in connection with the Sale (including, without limitation, by submitting a bid).

88.     Accordingly, Plaintiff, on behalf of the Debtors' estates, is entitled to recover the reasonable, necessary costs and expenses of preserving and disposing of the Prepetition Trustee Collateral from the Prepetition Trustee Collateral or the proceeds thereof pursuant to section 506(c) of the Bankruptcy Code.

## COUNT 11

### (Equities of the Case Exception)
### (11 U.S.C. § 552(b))

89.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

90.     Preston Hollow's inequitable conduct described above resulted in injury and damages to the Debtors and their creditors.

91.     To the extent the Court determines that a surcharge of the Master Trustee's collateral pursuant to section 506(c) of the Bankruptcy Code is inappropriate with respect to any of the costs or expenses incurred by the Debtors in preserving and disposing of the Prepetition Trustee Collateral, the Court should limit the Master Trustee's liens on any proceeds of the Prepetition Trustee Collateral under the "equities of the case" exception in section 552(b)(1) of the Bankruptcy Code because Preston Hollow's inequitable conduct described above resulted in injury and damages to the Debtors and their creditors.

## COUNT 12

### (Objection to the Master Trustee Claim)
### (11 U.S.C. §§ 502(b)(1) and 506(a))

92.     The Committee restates and re-alleges each of the foregoing allegations as if fully set forth herein.

93.     The Master Trustee Claim is subject to setoff by Mercy Hospital on account of Preston Hollow's prepetition breach of the Confidentiality Agreement as described herein and should be reduced accordingly.

94.     The Master Trustee Claim is not a fully secured claim under section 506(a) of the Bankruptcy Code because the alleged amount of the Master Trustee Claim exceeds the value of the Prepetition Trustee Collateral and the secured amount of the Master Trustee Claim should be reduced accordingly.

95.     Accordingly, the Court should determine the allowed amount and extent of the secured status of the Master Trustee Claim pursuant to sections 502(b)(1) and 506(a) of the Bankruptcy Code.

## COUNT 13

### (Unenforceability of the Plan Support Agreement)
### (11 U.S.C. §§ 363(b) and 1125(b))

96.     The Debtors' entry into the Plan Support Agreement was a transaction other than in the ordinary course of the Debtors' business and required this Court's approval pursuant to section 363(b) of the Bankruptcy Code.

97.     The Debtors did not seek this Court's approval of their entry into the Plan Support Agreement prior to entering into the Plan Support Agreement.

98.     The Debtors' negotiation and entry into the Plan Support Agreement constituted a solicitation of an acceptance of the Plan without a disclosure statement approved by the Court, after notice and a hearing, prior to such solicitation in violation of section 1125(b) of the Bankruptcy Code.

99.     Accordingly, the Court should enter an order determining that the Plan Support Agreement is invalid and of no force and effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)     issue a declaratory judgment that, as of the Petition Date, the Master Trustee did not have a valid, perfected and/or enforceable security interest in, or lien against: (a) the Non-Obligor Assets; (b) the Deposit Accounts; (c) the Investment Accounts; (d) the Subsidiary Equity Interests; (e) the Commercial Tort Claims; (f) the Avoidance Actions; or (g) the Other Government Subsidies;

(2)     enter a judgment in favor of Plaintiff and against Preston Hollow and an award of compensatory damages in an amount to be determined at trial for breach of the Confidentiality Agreement;

(3)     order the equitable subordination of the Master Trustee Claim (to the extent it is allowed) for purposes of distribution to all allowed general unsecured claims against the Debtors pursuant to section 510(c) of the Bankruptcy Code;

(4)     enter an order in favor of Plaintiff and against the Master Trustee surcharging the Prepetition Trustee Collateral or the proceeds thereof for the reasonable, necessary costs and expenses incurred by the Debtors in preserving and disposing of the Prepetition Trustee Collateral pursuant to section 506(c) of the Bankruptcy Code;

(5)      to the extent the Court determines that a surcharge of the Prepetition Trustee

Collateral pursuant to section 506(c) of the Bankruptcy Code is inappropriate with respect to any

of the costs or expenses incurred by the Debtors in preserving the Prepetition Trustee Collateral,

enter an order limiting the Master Trustee's liens on any proceeds of the Prepetition Trustee

Collateral under the "equities of the case" exception in section 552(b)(1) of the Bankruptcy

Code;

(6)      enter an order determining the allowed amount and extent of the secured status of

the Master Trustee Claim;

(7)      enter an order determining that the Plan Support Agreement is invalid and of no

force and effect; and

(8)      grant Plaintiff such further and other legal and equitable relief as the Court deems

just and proper under the circumstances.

## **RESERVATION OF RIGHTS**

Plaintiff reserves the right to amend this Complaint pursuant to Bankruptcy Rule 7015 or

otherwise.

Dated: March 25, 2024

SILLS CUMMIS & GROSS P.C.

/s/ Andrew H. Sherman
ANDREW H. SHERMAN (Admitted *pro hac vice*)
asherman@sillscummis.com
BORIS I. MANKOVETSKIY (Admitted *pro hac vice*)
bmankovetskiy@sillscummis.com
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  (973) 643-7000
Facsimile:   (973) 643-6500

- and –

CUTLER LAW FIRM, P.C.

/s/ Robert C. Gainer
ROBERT C. GAINER IS9998471
rgainer@cutlerfirm.com
1307 50th Street
West Des Moines, Iowa 50266
Telephone: (515) 223-6600
Facsimile: (515) 223-6787

*Attorneys for the Official Committee*
*of Unsecured Creditors*