# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | (Jointly Administered) |
| | Re: Doc. No. 626 |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO SECURED BONDHOLDER REPRESENTATIVES' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND DIRECTING THE DISTRIBUTION OF PROCEEDS FROM THE SALE OF THE DEBTORS' ASSETS AND FOR RELIEF FROM STAY**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Mercy Hospital, Iowa City, Iowa (the "Mercy Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") files this objection (the "Objection") to the motion of Preston Hollow Community Capital, Inc., as Bondholder Representative (the "Bondholder Representative"), and Computershare Trust Company, N.A., as Master Trustee (the "Master Trustee", and together with the Bondholder Representative, the "Secured Bondholder Representatives"), for entry of an order authorizing and directing the distribution of proceeds from the Sale of substantially all of the Debtors' assets and for relief form the automatic stay [Doc. No. 626] (the "Motion"),[1] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. By the Motion, the Secured Bondholder Representatives are seeking the extraordinary relief of having $26,800,000 from the proceeds of the Sale of substantially all of the Debtors' assets prematurely paid to them on account of a disputed claim outside of a confirmed plan of liquidation. The Secured Bondholder Representatives fail to consider the impact of the Committee Challenge (defined below), which they were aware would be filed in the absence of a comprehensive settlement with the Committee with respect to the Master Trustee's liens and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

claims, and is now pending before this Court. The Secured Bondholder Representatives should not receive any distribution of proceeds from the Sale (the "Sale Proceeds") until the Committee Challenge is adjudicated or the parties agree otherwise.

2. As discussed below, the Committee Challenge includes, among other things, an objection to the scope, validity, perfection and/or enforceability of the Master Trustee's security interests, affirmative claims which may serve as a set off against the Master Trustee Claim (defined below), a claim for equitable subordination of the Master Trustee Claim, a claim for surcharge of the Prepetition Trustee Collateral (defined below), and a challenge to the extent to which the Master Trustee Claim is secured versus unsecured.

3. Although distribution of proceeds from a sale of a debtor's assets prior to confirmation of a plan is sometimes authorized by bankruptcy courts, it is only authorized with respect to allowed and undisputed secured claims. It is axiomatic that prepetition claims should not be paid until they are allowed. This general proposition is even more important when a claim is formally disputed and may not be fully secured, as is the case here. Thus, in the face of the Committee Challenge, the Master Trustee Claim cannot be deemed allowed and no distribution can be made with respect to it. It would simply be inequitable, a denial of due process, and prejudicial to the interests of the Debtors' estates and creditors for the Court to grant the Motion before the Committee Challenge is resolved and there is a determination as to the allowed amount of the Master Trustee Claim and the extent to which it is secured.

4. The Secured Bondholder Representatives assert that partial satisfaction of the Master Trustee Claim would benefit the Debtors' estates by reducing the amount of interest accrual on that claim. However, there has been no finding or determination that the Master Trustee Claim is in fact over-secured and entitled to post-petition interest. To the contrary, the Committee believes that the Master Trustee Claim is significantly under-secured. Thus, this argument is a red herring and does not support the Secured Bondholder Representatives' request. The Motion is devoid of any real demonstration of how granting the relief requested would be beneficial to the

Debtors' estates and creditors or why the automatic stay should be lifted to permit payment of any portion of the Master Trustee Claim at this time notwithstanding the Committee Challenge.

5. For the foregoing reasons and those that follow, the Committee submits that the Motion should be denied. However, the Committee remains open and willing to discuss with the Secured Bondholder Representatives a potential resolution to address the concerns raised in this Objection while fully preserving the Committee's rights and the issues raised in the Committee Challenge.

## RELEVANT BACKGROUND

4. On August 7, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Iowa (this "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

5. The Debtors continue in possession of their property and are operating as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

6. On August 15, 2023, the United States Trustee appointed the Committee [Doc. No. 107] to serve in the Chapter 11 Cases.

**A.    The Master Trustee's Alleged Security Interests and Secured Claim**

7. As of the Petition Date, Mercy Hospital was allegedly indebted to the Master Trustee for the benefit of the beneficial holders with respect to (i) those certain Health Facilities Revenue Bonds, Series 2011 (Mercy Hospital Project) (the "2011 Bonds") in the aggregate outstanding principal amount of approximately $24.3 million, and (ii) those certain Health Facilities Revenue Bonds, Series 2018 (Mercy Hospital Project) (the "2018 Bonds" and, together with the 2011 Bonds, the "Bonds") in the aggregate outstanding principal amount of approximately $34.2 million, plus accrued but unpaid interest on the Bonds in the amount of approximately $1.0 million.

8. The 2011 Bonds were issued by the City of Hills, Iowa (the "Issuer") pursuant to that certain Trust Indenture dated as of November 1, 2011 (the "2011 Trust Indenture"), between the Issuer and Wells Fargo Bank, National Association, as predecessor Trustee (the "2011 Bond Trustee") and the proceeds of the 2011 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of November 1, 2011 (the "2011 Loan Agreement"), between the Issuer and Mercy Hospital. Under the 2011 Trust Indenture, the Issuer pledged to the 2011 Bond Trustee substantially all of its rights under the 2011 Loan Agreement, including its rights in and to the "Series 2011 Obligation" (as defined therein) securing the 2011 Bonds, the amounts payable thereon and the amounts payable to the Issuer under the 2011 Loan Agreement.

9. The 2018 Bonds were issued by the Issuer pursuant to that certain Trust Indenture dated as of May 1, 2018 (the "2018 Trust Indenture"), between the Issuer and Wells Fargo Bank, National Association, as predecessor Trustee (the "2018 Bond Trustee") and the proceeds of the 2018 Bonds were loaned to Mercy Hospital pursuant to that certain Loan Agreement dated as of May 1, 2018 (the "2018 Loan Agreement"), between the Issuer and Mercy Hospital. Under the 2018 Trust Indenture, the Issuer pledged to the 2018 Bond Trustee substantially all of its rights under the 2018 Loan Agreement, including its rights in and to the "Series 2018 Obligation" securing the 2018 Bonds, the amounts payable thereon and the amounts payable to the Issuer under the 2018 Loan Agreement.

10. The Bonds are allegedly secured by "Obligations" issued by Mercy Hospital under that certain Master Trust Indenture dated as of June 1, 1998, as supplemented and amended from time to time (the "Master Trust Indenture"), by and between Mercy Hospital and Norwest Bank Iowa, National Association, as predecessor Master Trustee.

11. Computershare Trust Company, N.A. serves as the successor 2011 Bond Trustee and 2018 Bond Trustee (in such capacities, the "Trustee"), and as the successor Master Trustee under the Master Trust Indenture.

12. The Master Trustee alleges a security interest in, and lien upon, the following assets of Mercy Hospital as collateral for amounts allegedly due under the 2011 Loan Agreement and the 2018 Loan Agreement (collectively, the "Prepetition Trustee Collateral"):

(a) Pursuant to the Granting Clauses, Division I, of the Master Trust Indenture, the Master Trustee held a security interest in and lien upon all of Mercy Hospital's[2] "accounts and assignable general intangibles now owned or hereafter acquired by [Mercy Hospital] regardless of how generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Uniform Commercial Code", subject to certain exclusions.

(b) Pursuant to the Granting Clauses of the Mortgage, the Master Trustee held a mortgage and security interest in substantially all of Mercy Hospital's real and personal property including, without limitation, Mercy Hospital's hospital campus located at 500 East Market Street, Iowa City, Iowa and the medical office building commonly known as "MOB I" located at 540 E. Jefferson Street, Iowa City, Iowa, all buildings, structures, additions, improvements and appurtenances on such real property, and all the rents, issues, uses, profits, accounts receivable, condemnation awards, insurance proceeds and other rights and interests belonging or in any way pertaining to Mercy Hospital's interest in the land as set forth (and solely to the extent set forth) in the Mortgage.

13. On October 2, 2023, the Master Trustee filed a proof of claim (Claim No. 10132) (the "Master Trustee Claim") in the amount of $59,526,655.69 for amounts allegedly owed by Mercy Hospital with respect to the Bonds and related obligations. The Master Trustee Claim asserts that it is a fully secured claim.

---

[2] The Master Trustee's security interest only encompasses the "Obligated Group" which is defined to include only Mercy Hospital, and does not include the assets of Mercy Services or Mercy ACO.

-5-

**B.      Sale of Substantially all of the Debtors' Assets**

14.     On August 9, 2023, the Debtors filed the *Debtors' Motion for Entry of Order (I)(A) Approving Bidding Procedures of the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Doc. No. 58] (the "Bidding Procedures Motion").

15.     On September 14, 2023, the Court entered its *Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Break-Up Fee, (C) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Contract Assumption and Assignment Procedures, and (F) Granting Related Relief* [Doc. No. 222] (the "Bidding Procedures Order") which, among other things, (i) set October 2, 2023 as the deadline to submit bids for the Debtors' assets, and (ii) scheduled an auction (the "Auction") beginning on October 4, 2023.

16.     The Auction commenced on October 4, 2023 and was concluded on October 10, 2023. The Secured Bondholder Representatives' bid was the initial successful bid (the "Initial Successful Bid"). However, as a result of material disagreements between the Secured Bondholder Representatives and the Debtors and Committee, the Debtors determined, in an exercise of their fiduciary duties, to reopen the Auction on October 27, 2023.

17.     The Auction was reopened and concluded on October 27, 2023, with the State University of Iowa (the "University"), as the successful bidder.

18.     On November 7, 2023, the Court entered its *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and*

*Interests, (II) Authorizing the Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Doc. No. 476] (the "Sale Order").

19. The University's winning bid was in the amount of $28,000,000, plus (i) Cure Amounts (as defined in the Sale Order) and (ii) an amount equal to the actual net operating losses (exclusive of restructuring professional fees and all other costs and expenses relating to this bankruptcy case) incurred by the Debtors.[3] *See* Sale Order at ¶ II.

20. The Sale closed on January 31, 2024 pursuant to the terms of the *Asset Purchase Agreement* between the Debtors and the University and the Debtors transferred substantially all of their assets to the University. *See* Doc. No. 699.

**C.     The Committee's Challenge Rights**

21. On November 7, 2023, the Court also entered the *Second Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* [Docket No. 475] (the "Second Interim Cash Collateral Order").

22. Pursuant to the Second Interim Cash Collateral Order, the Debtors agreed to not object to a motion filed by the Master Trustee seeking a distribution of sale proceeds to the Master Trustee at the closing of the Sale; provided that such distribution is not in excess of $26,800,000, minus a carve-out defined in the Second Interim Cash Collateral Order. Second Interim Cash Collateral Order at ¶ 4(f).

23. Pursuant to the Second Interim Cash Collateral Order, the Committee (and other Interested Parties, as defined in the Second Interim Cash Collateral Order):

> . . . shall be prohibited and barred from otherwise asserting any claims or causes of action against the Trustee and/or holders of the Bonds on behalf of the Debtors' estates, unless (a) any Interested Party timely files an adversary proceeding or contested matter (a "Challenge") by no later than December 14, 2023, or such other date as agreed upon between the Committee and the Trustee or as otherwise ordered

---

[3] The final bid of the Secured Bondholder Representatives was rejected by the Debtors because the Debtors determined in their reasonable business judgment that any bid that required use of the Debtors' remaining cash prior to closing was not a viable transaction under the circumstances, which is what the Initial Successful Bid required. *See* Sale Order at ¶ KK.

by the Court (the "Challenge Deadline") challenging the Stipulations or otherwise asserting any claim or cause of action against the Trustee and/or holders of the Bonds… This Second Interim Order confers standing on the Committee, but not on any other Interested Party to commence, prosecute and/or settle a Challenge.

*See* Second Interim Cash Collateral Order at ¶ 12. Pursuant to paragraph 12 of the Second Interim Cash Collateral Order, the Committee was granted standing to raise a Challenge contesting the Secured Bondholder Representatives' liens.

24. The Challenge Deadline under the Second Interim Cash Collateral Order was subsequently extended for the Committee several times with the consent of the Debtors and the Secured Bondholders Representatives. *See* Doc. Nos. 578, 649 and 751.

**D.     The Committee Challenge**

25. On March 25, 2024, the Committee filed with this Court a complaint commencing an adversary proceeding in which the Committee asserted various Challenges to the Secured Bondholder Representatives' security interests and claims. *See Official Committee of Unsecured Creditors of Mercy Hospital, Iowa City, Iowa, et al. v. Computershare Trust Company, N.A., as Master Trustee and Trustee, Preston Hollow Community Capital, Inc., as Bondholder Representative, Preston Hollow Capital, LLC, and PHCC LLC d/b/a Preston Hollow Community Capital*, Adv. Proc. No. 24-09009 (Bankr. N.D. Iowa 2024) [Doc. No. 1] (the "Committee Challenge").

26. In the Committee Challenge, the Committee seeks a determination by the Court that, as of the Petition Date, the Master Trustee did not have a valid, perfected and/or enforceable security interest in, or lien against, certain assets of the Debtors, including the following assets and the proceeds thereof (collectively, the "Unencumbered Assets"):

> (a) any and all assets of (i) Mercy Services, including, but not limited to, Mercy Service's 25% ownership interest in Progressive Rehabilitation Associates, LLC, 50% ownership interest in Melrose Retirement Community LLC, and 100% ownership interest in Captis Mercy Hospital, and (ii) Mercy ACO (collectively, the "Non-Obligor Assets"); (b) any and all of Mercy Hospital's deposit or other accounts and funds deposited therein, including, without limitation, the accounts identified in Mercy Hospital's Schedules of Assets filed with the Court [Case No. 23-00623; Doc. No. 135] (the "Deposit Accounts"); (c) any and all of Mercy

-8-

Hospital's investment accounts and any cash, securities or other investment property held therein, including, without limitation, the investment account identified in Mercy Hospital's Schedule A/B: Assets – Real and Personal Property filed with the Court [Case No. 23-00623; Doc. No. 135] (the "Investment Accounts"); (d) Mercy Hospital's 100% ownership interests in each of Mercy Hospital Foundation, Mercy Services, Captis Mercy Hospital, Mercy Hospital Guild, and Mercy Outreach Iowa City, Inc., and Mercy Hospital's ownership interest in Mercy of Iowa City Regional PHO (collectively, the "Subsidiary Equity Interests"); (e) any and all of the Debtors' commercial tort claims (the "Commercial Tort Claims"); (f) any and all of the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code or under section 544 of the Bankruptcy Code and applicable state law governing avoidable or preferential transfers (collectively, the "Avoidance Actions"); or (g) any and all federal or state government grants, subsidies, entitlements, assistance and/or relief funds, including, without limitation, funds or tax credits awarded to, or received by the Debtors relating to (i) Federal Emergency Management Agency and other grants for COVID-19 business interruptions or (ii) the CARES Act (collectively, the "Other Government Subsidies").

Committee Challenge at ¶ 31.

27. Counts 1-7 of the Committee Challenge allege that the Master Trustee does not have a valid, perfected and/or enforceable security interest in or lien against the Non-Obligor Assets, the Deposit Accounts, the Investment Accounts, the Subsidiary Equity Interests, the Commercial Tort Claims, the Avoidance Actions, and the Other Government Subsidiaries. Committee Challenge at ¶¶ 52-72.

28. Count 8 of the Committee Challenge alleges that the Bondholder Representative and its affiliate defendants (collectively, "Preston Hollow") breached a confidentiality agreement between Mercy Hospital and PHCC LLC d/b/a Preston Hollow Community Capital when they disclosed, or caused to be disclosed, highly sensitive and confidential information concerning the financial state of the Debtors to the Master Trustee and in documents publicly filed in the Iowa District Court for Johnson County in an action styled as *Computershare Trust Company, N.A., as Master Trustee and Series 2018 Trustee, and Preston Hollow Community Capital, Inc., as Bondholder Representative v. Mercy Hospital Iowa City,* Case No. LACV084546, causing damage to Mercy Hospital's reputation and business and significant and negative destruction of value that harmed all of the Debtors' stakeholders. Committee Challenge at ¶¶ 32-47; 73-78.

29. Count 9 of the Committee Challenge seeks equitable subordination of the Master Trustee Claim against the Debtors pursuant to section 510(c) of the Bankruptcy Code as a result of Preston Hollow's engaging in egregious, gross and inequitable conduct by spreading false statements and disparaging remarks about Mercy Hospital, its Board, and its management team, and publicly disclosing and disseminating confidential information in breach of the Confidentiality Agreement, resulting in injury and damages to the Debtors and conferring an unfair advantage on Preston Hollow. Committee Challenge at ¶¶ 79-83.

30. Count 10 of the Committee Challenge alleges that the Debtors used Unencumbered Assets, including, but not limited to, funds provided by Mercy Hospital Foundation and funds from the Deposit Accounts and the Investment Accounts, to preserve the value of the Prepetition Trustee Collateral pending the Sale and to dispose of the Prepetition Trustee Collateral, and that the preservation and disposal of the Prepetition Trustee Collateral was necessary and reasonable and provided a direct benefit to the Master Trustee. The Committee alleges that the Committee, on behalf of the Debtors' estates, is entitled to recover the reasonable, necessary costs and expenses of preserving and disposing of the Prepetition Trustee Collateral from the Prepetition Trustee Collateral or the proceeds thereof pursuant to section 506(c) of the Bankruptcy Code. Committee Challenge at ¶¶ 84-88.

31. Count 11 of the Committee Challenge Committee alleges that, to the extent the Court determines that a surcharge of the Master Trustee's collateral pursuant to section 506(c) of the Bankruptcy Code is inappropriate with respect to any of the costs or expenses incurred by the Debtors in preserving and disposing of the Prepetition Trustee Collateral, the Court should limit the Master Trustee's liens on any proceeds of the Prepetition Trustee Collateral under the "equities of the case" exception in section 552(b)(1) of the Bankruptcy Code because Preston Hollow's egregious, gross and inequitable conduct resulted in injury and damages to the Debtors and their creditors. Committee Challenge at ¶¶ 89-91.

32. Count 12 of the Committee Challenge alleges that the Master Trustee Claim is subject to setoff by Mercy Hospital on account of Preston Hollow's prepetition breach of the

confidentiality agreement and should be reduced accordingly. Count 12 also alleges that the Master Trustee Claim is not a fully secured claim under section 506(a) of the Bankruptcy Code because the alleged amount of the Master Trustee Claim exceeds the value of the Prepetition Trustee Collateral. Count 12 seeks a determination of the allowed amount and extent of the secured status of the Master Trustee Claim. Committee Challenge at ¶¶ 92-95.

33. Count 13 of the Committee Challenge seeks a determination that the Plan Support Agreement, dated February 23, 2024, between the Debtors, the Master Trustee, the Bondholder Representative and Preston Hollow Capital, LLC is invalid and of no force and effect. Committee Challenge at ¶¶ 96-99.

**OBJECTION**

34. It is indisputable that prepetition claims in a chapter 11 case ordinarily should not be paid until a plan is confirmed and they are allowed. Certainly, disputed claims should not be paid until all objections and challenges to them are adjudicated. Indeed, courts in this and other circuits frequently confirm chapter 11 plans that contain provisions limiting distributions until a claim that is in dispute is settled/resolved and becomes an allowed claim post-confirmation. *See*, *e.g.*, *In re U.S. Fidelis, Inc.*, 481 B.R. 503, 528 (Bankr. E.D. Mo. 2012); *In re Union Fin. Servs. Grp., Inc.*, 303 B.R. 390, 413 (Bankr. E.D. Mo. 2003); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995); *In Re National Realty Investment Advisors LLC*, 2:22-BK-14539, Doc. No. 3260 (Bankr. D.N.J. 2022); *Celsius Network LLC, et al.*, 1:22-BK-10964, Doc. No. 3577 (Bankr. S.D.N.Y. 2022) (all discussing the procedures for resolving disputed claims and making distributions on account of such disputed claims once resolved).

35. The Committee objects to any distribution of Sale Proceeds to the Master Trustee at this time because the Master Trustee Claim has not been allowed and there is a pending dispute in the Committee Challenge regarding the scope, validity, perfection and/or enforceability of the Master Trustee's security interests and the extent to which the Master Trustee Claim is a secured claim. Moreover, the Committee is seeking equitable subordination of the Master Trustee Claim, a surcharge of the Master Trustee's collateral under section 506(c) of the Bankruptcy Code,

-11-

application of the equities of the case exception in section 552(b) of the Bankruptcy Code, and other relief in the Committee Challenge that may affect the ultimate allowed amount, secured status and priority of the Master Trustee Claim.

36. The Committee was granted the right to bring the Committee Challenge under this Court's Second Interim Cash Collateral Order. It would be inequitable and a denial of due process if the Court were to grant the Motion at this juncture, effectively stripping those rights from the Committee and providing a potential windfall to the Secured Bondholder Representatives to the prejudice of the Debtors' estates and unsecured creditors. In the absence of an agreement between the Committee and the Secured Bondholder Representatives, the Committee Challenge must be adjudicated and the allowed amount of the Master Trustee Claim and extent to which it is secured must be determined before any Sale Proceeds are paid to the Master Trustee.

6. The Secured Bondholder Representatives assert that partial satisfaction of the Master Trustee Claim would benefit the Debtors' estates by reducing the amount of interest accrual on that claim. However, there has been no finding or determination that the Master Trustee Claim is in fact over-secured and entitled to post-petition interest. To the contrary, the Committee believes that the Master Trustee Claim is significantly under-secured. The Motion is devoid of any real demonstration of how granting the relief requested would be beneficial to the Debtors' estates and creditors or why the automatic stay should be lifted to permit payment of any portion of the Master Trustee Claim at this time notwithstanding the Committee Challenge. The desire of the Secured Bondholder Representatives to receive payment of a portion of the Master Trustee Claim prior to confirmation of a plan and allowance thereof does not constitute grounds for stay relief.

37. In sum, although stay relief to permit distribution of proceeds from a sale of a debtor's assets prior to confirmation of a plan is sometimes authorized by bankruptcy courts, it is only authorized with respect to allowed and undisputed secured claims. Disputed claims, such as the Master Trustee Claim, ordinarily do not receive a distribution until they are allowed and determined to be secured. To grant the Motion and allow the distribution of proceeds from the Sale before resolving the Committee Challenge would be a denial of due process, inequitable and

prejudicial to the Committee, the Debtors' estates and unsecured creditors. Equity demands that the Committee Challenge be resolved prior to distribution of proceeds from the Sale to the Master Trustee.

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that the Court deny the Motion and grant the Committee such other and further relief as is just and proper.

Dated: March 25, 2024

Respectfully submitted,

*/s/ Andrew H. Sherman*
Andrew H. Sherman, NJS Bar No. 042731991
(admitted *pro hac vice*)
Boris I. Mankovetskiy, NJS Bar No. 012862001
(admitted *pro hac vice*)
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: 973-643-7000
Facsimile: 973-643-6500
E-mail: asherman@sillscummis.com
          bmankovetskiy@sillscummis.com

-and-

*/s/ Robert C. Gainer*
Robert C. Gainer IS9998471
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, Iowa 50266
Telephone: 515-223-6600
Facsimile: 515-223-6787
E-mail: rgainer@cutlerfirm.com

*Attorneys for the Official Committee
of Unsecured Creditors*

**Certificate of Service**

       The undersigned certifies, under penalty of perjury, that on this March 25, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case, caused to mail by United States mail, postage prepaid, to the following:

Peter J. Chalik
Whitfield & Eddy, P.L.C.
699 Walnut St., Suite 2000

William W. Kannel
Mintz Levin Cohn Ferris Glovsky & Popeo P.C.
One Financial Center
Boston, Massachusetts 02111

Nathan Coco
Mintz Levin Cohn Ferris Glovsky & Popeo P.C.
919 Third Avenue
New York, New York 10022


United States Trustee:

Office of the United States Trustee
111 Seventh Avenue SE, Suite 280
Cedar Rapids, IA 52401


                                                                      /s/ *Robert C. Gainer*