**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Doc. Nos. 26, 434, and 475** |
| | **Hearing Date: March 27, 2024 at 10:30 a.m. (prevailing Central Time)** |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL OBJECTION TO ENTRY OF THE PROPOSED FINAL CASH COLLATERAL ORDER**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 cases of Mercy Hospital, Iowa City, Iowa (the "Hospital") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") submits this supplemental objection (the "Supplemental Objection")[1] to the *[Proposed] Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* (the "Proposed Final Order") [Doc. No. 434-1] and the *Second Interim Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, and (II) Granting Related Relief* [Docket No. 475] (the "Second Interim Order") in connection with the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Scheduling a Final Hearing on the Use of Cash Collateral, and (III) Granting Related Relief* [Docket No. 26] (the

---

[1] The Committee previously filed its *Objection to Entry of the Proposed Final Cash Collateral Order* [Docket No. 448] (the "Initial Objection"). The factual background and arguments set forth in the Initial Objection are hereby incorporated into this Supplemental Objection.

"Cash Collateral Motion").[2] In support of the Supplemental Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. As discussed herein and in the Initial Objection, the Committee objects to inclusion in any final cash collateral order of a waiver of the estates' rights of surcharge pursuant to section 506(c) of the Bankruptcy Code and to seek to invoke the "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code. Any such waivers are inappropriate, particularly given the recent commencement by the Committee of an adversary proceeding styled *Official Committee of Unsecured Creditors of Mercy Hospital, Iowa City, Iowa, et al. v. Computershare Trust Company, N.A., as Master Trustee and Trustee, Preston Hollow Community Capital, Inc., as Bondholder Representative, Preston Hollow Capital, LLC, and PHCC LLC d/b/a Preston Hollow Community Capital*, Adv. Proc. No. 24-09009 (Bankr. N.D. Iowa 2024) (the "Adversary Proceeding").

2. In the Adversary Proceeding, the Committee, among other things, challenges the scope of the Master Trustee's prepetition security interests, seeks to surcharge the Master Trustee's collateral pursuant to section 506(c) of the Bankruptcy Code, seeks to limit the Master Trustee's alleged security interests in any proceeds of the Master Trustee's prepetition collateral under the "equities of the case" exception in section 552(b)(1) of the Bankruptcy Code, and seeks compensatory damages against Preston Hollow for its breach of a confidentiality agreement with Mercy Hospital. Any waivers of section 506(c) and 552(b) rights would purport to bar claims already timely asserted by the Committee in the Adversary Proceeding without due process and unduly prejudice the Committee's challenge rights, which were granted by the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion, the Proposed Final Order, and the Second Interim Order, as applicable.

-2-

Second Interim Order. The Committee further submits that any request for such waivers is moot because the Committee was granted standing to pursue a challenge under the Second Interim Order and has commenced a challenge that includes claims under sections 506(c) and 552(b) of the Bankruptcy Code.

## RELEVANT BACKGROUND

3. On August 7, 2023, the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby commencing these cases (collectively, the "Chapter 11 Cases").

4. On the same date, the Debtors filed the Cash Collateral Motion.

5. On November 7, 2023, the Court entered the Second Interim Order, *inter alia*, granting the Committee standing and reserving its rights to pursue the claims asserted in the Adversary Proceeding, which include claims under sections 506(c) and 552(b) of the Bankruptcy Code. Specifically, paragraph 12 of the Second Interim Order provides, in relevant part, that "[t]his Second Interim Order confers standing on the Committee, but not on any other Interested Party to commence, prosecute and/or settle a Challenge." A "Challenge" is defined in paragraph 12 of the Second Interim Cash Collateral Order to include any challenge to the Debtors' Stipulations (as defined in the Second Interim Cash Collateral Order) and the assertion of "any claim or cause of action against the Trustee and/or holders of the Bonds."

6. On March 25, 2024, the Committee commenced the Adversary Proceeding.

## SUPPLEMENTAL OBJECTION

7. There is no basis for a waiver of the estates' rights under section 506(c) of the Bankruptcy Code or the "equities of the case" exception in section 552(b) of the Bankruptcy Code in these Chapter 11 Cases, particularly in light of the Adversary Proceeding already commenced by the Committee seeking relief under those sections of the Bankruptcy Code.

**A.      Section 506(c) - Surcharge Rights**

8.      Section 506(c) of the Bankruptcy Code permits a debtor to recover the "reasonable, necessary costs and expenses of preserving, or disposing of, [collateral] to the extent of any benefit to the holder of [an allowed secured claim]." 11 U.S.C. § 506(c). Section 506(c) is "equitable in origin, preventing a windfall to a secured creditor at the expense of the trustee or debtor in possession by shifting the costs of preserving or disposing of a secured party's collateral from the bankruptcy estate to the secured party." *U.S. I.R.S. v. Boatmen's First Nat. Bank of Kansas City*, 5 F.3d 1157, 1159 (8th Cir. 1993), overruled on other grounds by *In re Hen House Interstate, Inc.*, 177 F.3d 719 (8th Cir. 1999). "The purpose of [section 506(c)] is to prevent a windfall to a secured creditor at the expense of the estate." *In re Stacy's, Inc.*, 508 B.R. 370, 377 (Bankr. D.S.C. 2014) (quoting *Ford Motor Credit Co. v. Reynolds & Reynolds Co.* (*In re JKJ Chevrolet, Inc.*), 26 F.3d 481, 483 (4th Cir. 1994)). Section 506(c) "protects the estate and its general creditors from the cost of preserving what is not theirs." *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 602 (Bankr. E.D. Va. 1985) (citing *In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982)).

9.      Any waiver of the Debtors' rights to surcharge the Master Trustee's collateral under section 506(c) of the Bankruptcy Code is improper and would vitiate claims already asserted in the Adversary Proceeding that are worth potentially millions of dollars for the Debtors' estates. For example, the Debtors used significant unencumbered assets to fund these Chapter 11 Cases, giving rise to substantial surcharge claims that the Committee is now pursuing. The issue of surcharge must be determined in the context of the Adversary Proceeding and any attempt to vitiate the causes of action the Committee has asserted in the Adversary

Proceeding would be a gross violation of due process. Moreover, a waiver of section 506(c) rights is not necessary or appropriate to provide adequate protection to the Master Trustee.

10. The estates' rights under section 506(c) of the Bankruptcy Code are significant in these Chapter 11 Cases because the Debtors used millions of dollars of unencumbered funds in their investment and cash accounts to preserve (and possibly increase) the value of the collateral in which the Master Trustee asserts liens, and dispose of that collateral, and the Master Trustee has not provided (and will not provide) any consideration in exchange for a waiver of such a valuable right. There is simply no basis or evidence to support a broad waiver of valuable section 506(c) surcharge rights under the circumstances of these Chapter 11 Cases, especially when the Committee has already commenced the Adversary Proceeding seeking to surcharge the Master Trustee's collateral.

**B.     Section 552(b) - Equities of the Case Exception**

11. The Adversary Proceeding also asserts a claim under section 552(b) of the Bankruptcy Code, which permits a court to disregard a secured creditor's post-petition lien on "proceeds, products, offspring, or profits" of prepetition collateral based on the "equities of the case." 11 U.S.C. § 552(b)(1). It authorizes a bankruptcy court to utilize its discretion when deciding whether to allow a prepetition lien to survive postpetition. *See United Va. Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986); *Gray v. Bank of Early*, 2018 WL 9415069, *6 (M.D. Ga. Sept. 20, 2018). In exercising this discretion, "[e]ach case will have to be decided on its own merit." *In re Underbakke,* 60 B.R. 705, 708–09 (Bankr. N.D. Iowa 1986). The bankruptcy court "evaluates the expenditures of time, labor, and funds relating to the collateral, the relative position of the secured party, and the overall rehabilitative theme of

bankruptcy law." *In re Lawrence*, 41 B.R. 36, 38 (Bankr. D. Minn.), aff'd, 56 B.R. 727 (D. Minn. 1984).

12.     Courts have typically applied the "equities of the case" exception in cases where a secured creditor would receive a windfall because, for example, the value of the creditor's collateral is increased by an expenditure of estate funds that would otherwise be distributed to unsecured creditors in the case. *Gray v. Bank of Early*, 2018 WL 9415069, at *6 (citing cases and noting that five courts of appeals have embraced this interpretation of section 552(b)(1)'s purpose and application). Such circumstances may exist here, and that is why application of the "equities of the case" exception is being pursued in the Adversary Proceeding. Any waiver of the Committee's rights to pursue relief under section 552(b) is inappropriate and would deny the Committee due process.

13.     In addition, the Committee has asserted claims in the Adversary Proceeding against Preston Hollow for prepetition breaches of a confidentiality agreement and other inequitable conduct that harmed the Debtors and resulted in significant destruction of value for all of the Debtors' stakeholders. This misconduct may warrant application of the equities of the case exception. Therefore, these Chapter 11 Cases present circumstances under which any waiver of the estates' rights under section 552(b) of the Bankruptcy Code as part of a cash collateral order is entirely inappropriate (if it is ever appropriate), especially when the Committee has already commenced the Adversary Proceeding asserting these specific rights.

## CONCLUSION

14.     A waiver of sections 506(c) and 552(b) rights would deny the Committee due process, unduly prejudice the claims asserted by the Committee in the Adversary Proceeding, and is without any basis or justification. Any request for such waivers is also moot because the Committee was granted standing to pursue a challenge under the Second Interim Order and has

commenced a challenge that includes claims under sections 506(c) and 552(b) of the Bankruptcy Code. The Court should not countenance any attempt to deprive the Committee of rights it is already pursuing.

### **RESERVATION OF RIGHTS**

15. The Committee expressly reserves and preserves all rights, claims, arguments and objections with respect to the Cash Collateral Motion, to supplement, modify or amend this Supplemental Objection, and to raise additional objections in writing or orally at the final hearing on the Cash Collateral Motion, including objections to any provisions of a revised proposed final cash collateral order that is filed by the Debtors in connection with the hearing.

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests that this Court (a) deny approval of any final cash collateral order waiving the estates rights under sections 506(c) or 552(b) of the Bankruptcy Code, and (b) grant the Committee such other and further relief as this Court deems just and proper.

Dated:  March 25, 2024

Respectfully submitted,

/s/ Andrew H. Sherman
Andrew H. Sherman, NJS Bar No. 042731991
(admitted *pro hac vice*)
Boris I. Mankovetskiy, NJS Bar No. 012862001
(admitted *pro hac vice*)
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone:  973-643-7000
Facsimile:  973-643-6500
E-mail:  asherman@sillscummis.com
bmankovetskiy@sillscummis.com

-and-

/s/ *Robert C. Gainer*
Robert C. Gainer IS9998471
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, Iowa 50266
Telephone:	515-223-6600
Facsimile:	515-223-6787
E-mail:  rgainer@cutlerfirm.com

*Attorneys for the Official Committee of Unsecured Creditors*

### Certificate of Service

The undersigned certifies, under penalty of perjury, that on this March 25, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case, caused to mail by United States mail, postage prepaid, to the following:

Peter J. Chalik
Whitfield & Eddy, P.L.C.
699 Walnut St., Suite 2000

MINTZ, LEVIN, COHN, FERRIS
GLOVSKY AND POPEO, P.C.
William W. Kannel
Mintz Levin Cohn Ferris Glovsky & Popeo P.C.
One Financial Center
Boston, Massachusetts 02111

Nathan Coco
Mintz Levin Cohn Ferris Glovsky & Popeo P.C.
919 Third Avenue
New York, New York 10022


United States Trustee:

Office of the United States Trustee
111 Seventh Avenue SE, Suite 280
Cedar Rapids, IA 52401


/s/ *Robert C. Gainer*