**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.* | ) ) ) | Case No. 23-00623 (TJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**OBJECTION OF MERCYONE**
**TO DEBTORS' COMBINED DISCLOSURE**
**STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION**

Mercy Health Network, Inc., d/b/a "MercyOne" ("MercyOne"), by its undersigned counsel, respectfully submits this objection (the "Objection") to the *Debtors' Motion for Entry of Order (I) Approving Disclosure Statement; (II) Scheduling Hearing on Confirmation of Plan; (III) Establishing Deadlines and Procedures for (A) Filing Objections to Confirmation of Plan, (B) Claim Objections, and (C) Temporary Allowance of Claims for Voting Purposes; (IV) Determining Treatment of Certain Unliquidated, Contingent, or Disputed Claims for Notice, Voting, and Distribution Purposes; (V) Setting Record Date; (VI) Approving (A) Solicitation Packages and Procedures for Distribution, (B) Form of Notice of Hearing on Confirmation and Related Matters, and (C) Forms of Ballots; (VII) Establishing Voting Deadline and Procedures for Tabulation of Votes; and (VIII) Granting Related Relief* [Docket No. 796] (the "Solicitation Motion").[1] In support of the Objection, MercyOne states as follows:

**PRELIMINARY STATEMENT**

1.      The fundamental purpose of a disclosure statement is to ensure that creditors can cast their votes to accept or reject a chapter 11 plan on an informed basis. The significance of the disclosure requirements imposed by Bankruptcy Code section 1125 cannot be understated,

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Plan.

(4405632)

especially in complex cases like these. The unsecured creditors (and all parties in interest) require a detailed yet understandable disclosure statement to enable such creditors to make an informed judgment when voting on the *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 750] (the "Combined Plan").

2.　　MercyOne respectfully submits that the "Disclosure Statement" portion of the Combined Plan is defective on two counts. *First*, the Combined Plan lacks clarity and sufficient disclosure regarding the Third Party Release, which is of substantial importance to the Debtors' unsecured creditors, and thus, the Combined Plan must be amended prior to solicitation. *Second*, MercyOne submits that the Combined Plan, as proposed, is patently unconfirmable. Although objections to the confirmation of a plan are reserved for the confirmation hearing, courts "have recognized that if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012). The defect here, as it relates to the Third Party Release included in Article XIV.D.2 of the Combined Plan, renders the Combined Plan patently unconfirmable. Most importantly, the inclusion of the Related Parties[2] in the Third Party Release, and the lack of justification thereof, is especially egregious. Many of the Related Parties' decision-making, actions, and excessive fees on a pre-petition basis contributed to the Debtors' Chapter 11 filing. Indeed, prior to the filing, MercyOne recognized the unsustainable cash burn generated by the professionals and consultants retained by the Debtors and by the Bondholders and raised that very issue with the

---

[2] For purposes of this Objection, "Related Parties" shall include with respect to such entity that is a Released Party, such Entity's current and former directors, managers, officers, equity holders, affiliated investment funds or investment vehicles, predecessors, successors, assigns, subsidiaries, affiliates, partners, principals, members, management companies, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors which are included in provision (g) of the definition of the Released Parties.

(4405632)

Debtors. MercyOne also reduced its own management fees in an attempt to reduce the expenses incurred by the Debtors on a pre-petition basis and strongly encouraged the Debtors to negotiate with the University of Iowa Hospitals and Clinics (the "UIHC"), as they were the only likely purchaser of the Debtors' business given UIHC's dominant presence in the service area. The outsized cash burn driven by some of the Related Parties (including those of the Debtors, the Bondholders, and certain of the other Released Parties) on a pre-petition basis has apparently continued post-petition, as evidenced by the objections of the United States Trustee to various post-petition fee statements and applications filed by some of the professionals in this case.

3. Based on the foregoing and as set forth more fully below, MercyOne respectfully requests that the Court deny the Motion, or in the alternative, condition approval of the Disclosure Statement portion of the Combined Plan on the Debtors providing additional disclosure to address the deficiencies outlined in this Objection and modifications of the Combined Plan, via removal or limitation of the Third Party Release—especially as it relates to the Related Parties—rendering it confirmable.

## FACTUAL BACKGROUND

4. On August 7, 2023 (the "Petition Date"), the Debtors commenced these chapter 11 cases. On February 23, 2024, the Debtors filed the *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 760] (the "Combined Plan").

5. The Combined Plan defines "Released Parties"[3] as:

> Collectively, the following Entities, each in their capacity as such: (a) the Debtors; (b) the UCC and each of its members (only in their capacity as such); (c) the Pension Committee and each of its members (only in their capacity as such); (d) the Bondholder Representatives; (e) the Foundation; (f) the Sisters of Mercy; and (g) with respect to any such Entity, in each case in its capacity as such with respect to such Entity, such Entity's current and former directors, managers,

---

[3] For purposes of this Objection, "Related Parties" shall include those parties included in provision (g) of the definition of the Released Parties.

(4405632)

officers, equity holders, affiliated investment funds or investment vehicles, predecessors, successors, assigns, subsidiaries, affiliates, partners, principals, members, management companies, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors; provided, however, that Released Parties shall not include former officers and directors of the Debtors but shall include any of the Debtors' directors and officers that served in such role at any time between the Petition Date and the Effective Date; provided further that Released Parties shall not include MercyOne.

6. Further, it defines "Releasing Parties" as:

The following Entities, each in their respective capacities as such: (a) each Holder of a Claim that (i) votes to accept the Plan or (ii) either (1) abstains from voting or (2) votes to reject the Plan and, in the case of either (1) or (2), does not opt out of the voluntary release by checking the opt-out box on the applicable Ballot, and returning it in accordance with the instructions set forth thereon, indicating that they are electing to opt out of granting the releases provided in the Plan; (b) each Holder of a Claim that is deemed to accept the Plan or is otherwise Unimpaired under the Plan and who does not opt out of the voluntary release by checking the opt out box on the applicable non-voting status notice form, and returning it in accordance with the instructions set forth thereon, indicating that they are not willing to grant the releases provided in the Plan; and (c) each Holder of a Claim that is deemed to reject the Plan or is otherwise Impaired under the Plan and who does not opt out of the voluntary release by checking the opt-out box on the applicable non-voting status notice form, and returning it in accordance with the instructions set forth thereon, indicating that they are not willing to grant the releases provided in the Plan.

7. Holders of claims or interest against the Debtors will give the Released Parties the following Third Party Release under the Combined Plan:

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably and forever release, waive, and discharge the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, liability, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, for any act or omission in connection with, relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' operations, the Chapter 11 Cases, the Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the

4

(4405632)

> Series 2011 Bonds, the Series 2018 Bonds, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, the Plan Support Agreement, or the Combined Disclosure Statement and Plan, and the administration, formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date.

## ARGUMENT

### I. The Disclosure Statement Fails to Include Adequate Information Regarding the Third Party Release.

24. Debtors provide no factual or legal basis for the broad, sweeping Third Party Release they propose. Significantly, except for the Foundation, the Debtors do not identify any mutual benefits or consideration provided in exchange for such releases or what each of the Released Parties is providing to the Debtors' estates. Without knowing if this information exists, it is impossible for holders of unsecured claims, or any impaired claims for that matter, to cast an informed vote. Further, there is no indication that any of the Related Parties have given or received anything that justifies the releases. It is unclear whether the Related Parties have been provided notice of the Combined Plan or whether they are even aware they are receiving releases. The Court should deny approval of the Disclosure Statement without additional evidence or amendments sufficient to satisfy this objection. Especially for prepetition actions, the Related Parties are not entitled to a release. There is no support for releasing claims related to actions that the Related Parties took prior to or following the filing. Although the Related Parties may have contributed to the restructuring on a postpetition basis potentially justifying the Third

5

(4405632)

Party Release for postpetition actions, the release of their prepetition actions is not similarly justifiable. In fact, there may be substantial claims on account of the Related Parties prepetition actions that could provide substantial value to the estate.

25. The Disclosure Statement fails to provide adequate information and cannot be approved in its current form. Bankruptcy Code section 1125(b) states that a disclosure statement must contain "adequate information" regarding a proposed plan to holders of impaired claims and interests entitled to vote on such plan. 11 U.S.C. § 1125(b). "Adequate information" means "information of a kind, and in sufficient details, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records ... that would enable ... a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The Bankruptcy Code requires that a debtor "adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan." *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. v. Fed. Deposit Ins. Corp.* (*In re Westland Oil*), 157 B.R. 100, 104 (S.D. Tex. 1993). Courts consider numerous factors when determining the sufficiency of the information in a disclosure statement, including, but not limited to, "financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan." *In re Divine Ripe, LLC,* 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (listing nineteen non-exhaustive factors set forth in *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)). Here, the Disclosure Statement fails to provide sufficient information for impaired general unsecured creditors to make an informed decision when voting on the Plan. In its current form, the Disclosure Statement is both facially and substantively deficient with respect to critical plan-related issues and thus fails to satisfy the basic disclosure requirements of section 1125(a) of the Bankruptcy Code.

(4405632)

**II. The Non-Consensual Third Party Release Are Impermissible, Rendering the Combined Plan Patently Unconfirmable.**

    **A. The Third Party Releases Are Non-Consensual.**

26. While the Debtors describe the Third Party Release as consensual, that is erroneous; rather the Third Party Release is non-consensual. The following categories of creditors are included as "Releasing Parties" even though they will not have taken any affirmative action to approve the Combined Plan: (i) creditors who abstain from voting and do not opt out of the release; (ii) creditors who vote to reject the Combined Plan and do not opt out of the release; (iii) each holder of a claim that deemed to accept the Combined Plan or are otherwise Unimpaired under the Combined Plan and who does not opt out of the voluntary release; and (iv) each holder of a Claim that is deemed to reject the Combined Plan or is otherwise Impaired under the Combined Plan and who does not opt out of the release.

27. Each of the foregoing will not have affirmed consent to the Combined Plan generally or the Third Party Release, but will nonetheless be deemed "Releasing Parties." This Court should not permit the Plan to strip these parties of such rights without their affirmative consent.

    **B. The Third Party Release Does Not Meet the High Bar Necessary to Approve Nonconsensual Releases in the Eighth Circuit.**

28. Under persuasive authority from another Bankruptcy Court in this Circuit—the U.S. Bankruptcy Court for the Western District of Missouri—confirmation is not per se improper where the plan includes non-consensual third party releases. *See In re Master Mortgage Invest., Fund, Inc.,* 168 B.R. 930 (Bankr. W.D. Mo. 1994). However, here that does not assist the Debtors. *Master Mortgage*, specifies five factors that need to be considered for third party releases to assess whether they render a plan non-confirmable. These are:

    (1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

    (2) substantial contribution by the non-debtor of assets to the reorganization;

    (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

    (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and

    (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction. *Id.*

Here, the application of these factors shows that the Third Party Releases in the Plan render it non-confirmable.

    29.    As described below, the Released Parties fail to meet most if not all of the *Master Mortgage* factors. And to the extent any of the Released Parties satisfies any one or more of the foregoing, that fact is not expressly set forth in the Combined Plan in a way that would properly inform a voting creditor or party in interest.

    30.    *Identity of Interest.* A suit against the Unsecured Creditors Committee or the impaired Bondholder Representatives likely satisfies the identity of interest requirement. A suit against either of them would likely trigger indemnification obligations from the Debtors or otherwise deplete the assets of the Debtors' estates. Meanwhile, a suit against the Pension Committee, the Foundation, or any of the Released Parties likely will not. Those are separate entities that are unaffiliated with the Debtors. A successful claim against any of them will benefit the Debtors' Estates.

    31.    *Substantial Contribution.* The Bondholder Representatives and the Foundation have contributed substantial assets to the Estates. In essence, any leakage to junior creditors should be considered a contribution by the Bondholder Representative. The Foundation

8

(4405632)

contributed millions of dollars to the Estate under the Settlement Motion. On the other hand, it is unclear from the Combined Plan whether any other Released Party—especially the Related Parties--has made a substantial contribution. Moreover, Debtors make no attempt to identify the substantial contribution made by each of the Related Parties. The Third Party Releases should not be included without identifying a specific substantial contribution by each Released Party and each individual Related Party.

32. *Essential Nature of the Third Party Release*. While the Settlement Motion required the release of the Foundation in exchange for the contributed funds, the Combined Plan omits any reason that the release of the remaining Released Parties is essential to the success of the Combined Plan. Under section 1129(b) of the Bankruptcy Code, the Debtors could confirm the Combined Plan without the consent of the Unsecured Creditors Committee or the Pension Committee. Moreover, limiting the Third Party Release would improve the potential value of the Liquidation Trust and, therefore, of the Estates. Especially as the Third Party Release relates to the Related Parties, the Third party Release is not essential. The Combined Plan can be effectuated pursuant to the currently proposed terms even absent the release of the Related Parties. Most of those parties are not creditors or parties in interest in the chapter 11 cases. Granting them a release is simply unnecessary.

33. *Agreement of Substantial Majority of Creditors*. While the voting process generally would have determined the percentage of creditors in favor of the Third Party Release, because of the Opt-Out mechanism in the proposed solicitation procedures, it will be impossible to determine the percentage of creditors who actually assent to the Third Party Release.

9

(4405632)

34. *Substantial Payment of the Class Effected By the Injunction*. The Third Party Releases will affect all classes, most notably the holders of General Unsecured Claims and Pension Claims. Those classes (Classes 3 and 5) are only projected to receive 8%- 10%.

**B. Even If the Third Party Release Was Deemed Consensual, It Would Still Be Impermissible.**

35. Regardless of the consensual nature of the Third Party Release, the Court should reject the Third Party Release here. The Third Party Release is exceedingly broad. Through this broad and general release with no redress other than returning the opt-out form, creditors are, in essence, giving up their rights to object to a settlement, and their treatment in the Plan is imposed with undue burden. Even though Debtors describe this as a "large case," this is not a rare mass tort case or a case of a similar nature where the plan channels tort claims to a settlement trust funded by insurance proceeds. And even if the Court considers non-consensual releases outside of the mass tort context, there is no specific evidence that every release beneficiary will provide a substantial contribution to the plan. Extending the Third Party Release to the Related Parties is inappropriate because those parties are not making any monetary contributions to the Plan. *See In re Washington Mut., Inc.*, 442 B.R. 314, 349-350 (Bankr. D. Del. 2011) (finding "that there is no basis whatsoever for the Debtors to grant a release to directors and officers or any professionals of the Debtors, current or former" and that "there has been no evidence presented of any 'substantial contribution' made to the case by the directors, officers, or professionals, justifying releases")) (*citing In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994)).

36. The Eighth Circuit has not squarely addressed the issue of whether consensual or nonconsensual third party releases or non-debtor injunctions are permissible as a matter of law.

Such releases are altogether forbidden in several Circuits.[4] Although the Eighth Circuit has not addressed the issue, bankruptcy courts in this circuit has permitted nonconsensual third-party releases, but only in extreme circumstances. *See, e.g., In re U.S. Fidelis, Inc.*, 481 B.R. 503, 519-21 (Bankr. E.D. Mo. 2012) (approving nonconsensual third party releases).

37.    The Second Circuit's decision in *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005), provides useful instruction regarding the allowance of third party releases. In *Metromedia,* the Second Circuit held that non-debtor third party releases are proper only in "rare cases." *Metromedia,* 416 F.3d at 141. The Second Circuit provided two reasons why it was generally reluctant to approve such releases: :

- First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] ...

- Second, a non-debtor release is a device that lends itself to abuse. By it, a

---

[4] The Fifth, Ninth, and Tenth Circuits categorically prohibit third party releases under any circumstances because they violate section 524(e) of the Bankruptcy Code, which states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *In re Pac. Lumber Co.*, 584 F.3d 229, 251-53 (5th Cir. 2009); *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995); *In re Western Real Estate Fund, Inc*., 922 F.2d 592, 600 (10th Cir. 1990).  In contrast, the Second, Fourth, Sixth, Seventh, and Eleventh Circuits allow nonconsensual third party releases under certain circumstances. *See In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070 (11th Cir. 2015) (applying Dow Corning factors and authorizing nonconsensual third party releases but only in "unusual" cases); *In re Airadigm Communications, Inc.*, 519 F.3d 640, 657 (7th Cir 2008) (approving nonconsensual third party releases where they are necessary for the reorganization and appropriately tailored); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-43 (2d Cir. 2005) (permitting approval under "rare" and "unusual" circumstances where the release is important to the plan and its scope is necessary to the plan); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (holding that when seven factors are present, a nonconsensual third party release may be upheld); *In re A.H. Robins Company, Inc.*, 880 F.2d 694, 700-02 (4th Cir. 1989) (approving releases where they were important to the reorganization and nearly all holders of released claims were to be fully compensated from the proceeds of a litigation trust).  The Third Circuit has not expressly established a specific standard under which nonconsensual third party releases may be approved.  *See In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000). Nevertheless, bankruptcy courts within the Third Circuit have acknowledged that such releases are permissible in certain instances.  *See, e.g., In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 573 (D. Del. 2018) (noting that nonconsensual third party releases are not per se impermissible); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 2014 Bankr. LEXIS 863 (Bankr. D.N.J. Mar. 5, 2014) (approving some but not all nonconsensual third party releases); *In re Wash. Mut., Inc.*, 442 B.R. 314, 351 (Bankr. D. Del. 2011) (noting that nonconsensual third party releases are not barred in the Third Circuit).

11

(4405632)

> nondebtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

*Id.* at 142.

38. The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan." *Id.* at 141 (*quoting SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.*), 960 F.2d 285, 292 (2d Cir. 1992)). However, the Second Circuit cautioned that a non-debtor third party release is not considered adequately supported by consideration simply because the non-debtor contributed something to the reorganization, and the enjoined creditor took something out. *Metromedia*, 416 F.3d at 143. Rather, "[a] non-debtor third party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." *Id*. Subsequent cases further clarify the *Metromedia* requirements. For example, in *In re DBSD North America, Inc.*, 419 B.R. 179 (Bankr. S.D.N.Y. 2009), the Court stated, "As the Second Circuit's decision in *Metromedia* and my earlier Decision in *Adelphia* provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter. They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims." *Id.* at 217 (Bankr. S.D.N.Y. 2009); *In re Motors Liquidation Co.*, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third party releases aren't

'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, *with appropriate consent or under circumstances that can be regarded as unique*, some of which the Circuit listed [emphasis added]. But, where those circumstances haven't been shown, third party releases can't be found to be appropriate."). *See also In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D. N. Y. 2017)*,* wherein the court determined the debtors failed to meet their burden of showing the court should approve the release as appropriate based upon unique circumstances of the case.

39. The Court should reject the Third Party Release here. The release is exceedingly broad and non-consensual. As described, certain parties are deemed to consent notwithstanding the fact that they are completely impaired and deemed rejecting unless they opt-out of the releases. In many instances, those parties may not understand the reason they would need to return a ballot when they are not entitled to vote on the Combined Plan. Many of these creditors likely are unrepresented by counsel and may not be privy to the rights they are waiving. Absent a switch to an opt-in mechanism

**C. Based on the Foregoing, The Combined Plan Is Patently Unconfirmable.**

40. On August 29, 2019, the U.S. Bankruptcy Court for the Northern District of Ohio issued an opinion in the First Energy bankruptcy case denying approval of the debtors' disclosure statement because the third party release provision included in the corresponding chapter 11 plan, which would have granted non-debtor releases related to, among other things, the debtors' historic business operations and assets, was overbroad and rendered the plan patently unconfirmable. *In re First Energy Sols. Corp.*, 2019 Bankr. LEXIS 2742, at *34 (Bankr. N.D. Ohio Aug. 29, 2019). Although courts generally make determinations on the appropriateness of releases at the plan confirmation hearing as opposed to the disclosure statement stage, here, the court held that it was appropriate to resolve the issue at the disclosure

13

(4405632)

statement stage because it viewed the proposed nonconsensual third party release provision in the plan as so defective that it rendered the plan patently unconfirmable. *Id*. at *41.

41. Here, the Third Party Release is nonconsensual and should, therefore, be determined to render the Combined Plan patently unconfirmable.

## CONCLUSION

WHEREFORE, MercyOne respectfully requests that the Court sustain the Objection, deny the Solicitation Motion, and require that the Debtors amend the Disclosure Statement and Combined Plan to either remove the Third Party Release or otherwise significantly limit its scope.

Dated: March 25, 2024

Respectfully submitted,

/s/ *Matthew T. Cronin*
BELIN McCORMICK, P.C.
Michael R. Reck
Matthew T. Cronin
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309
Tel: (515) 243-7100 / Fax: (515) 558-0704
mrreck@belinmccormick.com
mtcronin@belinmccormick.com

(4405632)

/s/ *Edward J. Green*
FOLEY & LARDNER LLP
Edward J. Green *(pro hac vice pending)*
David B. Goroff *(pro ha vice pending)*
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500 / Fax: (312) 832-4700
egreen@foley.com
dgoroff@foley.com

Jake W. Gordon (*Pro Hac Vice* pending)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: 248-943-6484
jake.gordon@foley.com
*Attorneys for Mercy Health Network, Inc.
d/b/a MercyOne*

15

(4405632)