IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) ) ) | Case No. 23-00623 (TJC) |
| Debtors. | ) ) ) | Jointly Administered |
| | ) | **Related to Docket No. 815** |

**SUPPLEMENTAL DECLARATION OF KRISTINA STANGER IN SUPPORT OF SIXTH FEE APPLICATION OF NYEMASTER GOODE, P.C. AS COUNSEL FOR THE DEBTORS AND DEBTORS-IN-POSSESSION**

I, Kristina Stanger, being duly sworn, state the following under penalty of perjury and that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a shareholder in the law firm of Nyemaster Goode, P.C. ("Nyemaster" or the "Firm").

2. I am assisting on a number of workstreams in the above-captioned case, including issues related to winddown and administration of Mercy Hospital Iowa City, Iowa's self-administered and insured workers compensation plan.

3. I hereby submit this supplemental declaration (this "Supplemental Declaration") in support of the *Sixth Monthly Fee Application of Nyemaster Goode, P.C., Counsel to Debtors and Debtors-in-Possession, for Allowance of Compensation and Reimbursement of Expenses from the Period from January 1, 2024 through January 31, 2024* [Docket No. 815] (the "Monthly Application") and to make revisions to certain time entries made therein in response to questions received from the United States Trustee's office.

I.   **Additional Time Detail**

4. The Monthly Application includes time entries for certain tasks I completed in regards to the Debtors' workers compensation plan. I submit this Supplemental Declaration to revise the time detail for certain entries in the Monthly Application related to matter number 0009 (Plan and Disclosure Statement).

5. On January 12, 2024, I spent 5.1 hours working on the following: Identifying claims, reserve funds, and administration issues related to payment of claims from professional and general liability claimants within the case. In support of that goal, I began by reviewing the client's workers' compensation claim, loss reports, and policy documents (1.3); I analyzed the bankruptcy code and searched and analyzed other chapter 11 health care plans and cases in other jurisdictions regarding similar issue such as: AAMC and Chester Medicine (2.3). I then began drafting the framework and potential structure for Plan treatment of these creditors, claims and insurance allocation (0.5). I considered the need for and the viability of a potential tort claimants' Trust in the Plan (0.4). I also identified workers compensation self-insured program financial audit positioning and strengths and begin analysis of Iowa Insurance Division authority and procedures for wind down, commutation and settlement in support of the plan (0.6).

6. On January 16, 2024, I spent 2.4 hours working on the following: Continued locating solutions for medical professionals' liability tail coverage issues and analyzing market and industry options for future "claims made" hospital insurance or bond coverage as allowed by the Iowa Insurance Division (0.9). I spent time in communications with an insurance broker regarding potential product or solution (0.6). Finally, I continued my analysis of Iowa Insurance Division authority and procedures for wind down, commutation and settlement of the workers' compensation plan and interaction with Iowa State statutory requirements (0.9).

7. On January 17, 2024, I spent 3.6 hours working on the following: Received and analyzed all client liability and general insurance policies and compared them to other Chapter 11 plans regarding similar drop down and tail coverage issues to ensure tort claimants had separate funds and coverage in a potential plan (2.2). I then identified and summarized case authority and legal support for a plan that mandates second level insurance carrier to provide coverage despite first line insolvency of debtor in a self-insured plan and drafted legal memorandum to support demand on carriers to allocate funds to potential plan for this category of claimants (1.4).

8. On January 18, 2024, I spent 1.1 hours working on the following: I continued identifying case authority and analyzed facts to support Mercy's authority to trigger drop-down protection for second level liability insurance carrier for tort claimants and tail policy issue (0.8); and considered whether Debtors' tendering of defense provisions provided leverage or possible bad faith demand for this plan strategy (0.3).

9. On January 19, 2024, I spent 1.3 hours working on the following: Identifying additional facts and authority to trigger drop-down second level insurance protection for tort claimants in developing plan treatment and funding for these claims.

10. On January 22, 2024, I spent 1.4 hours working on the following: Conference with Nyemaster insurance counsel expert, Attorney Tom Sullivan, regarding drop-down/insolvency solutions for tort claimants based on insurance industry principles and policies (0.7). I then revised memorandum on legal strategy regarding same (0.7).

11. On January 24, 2024, I spent 0.4 hours working on the following: Reviewed statutory authority regarding workers compensation discontinuance of self-insured retention procedures, Iowa Code Chapter 87 requirements, and the intersection with bankruptcy code and the Iowa Insurance Division regulations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: April 24, 2024

                                               */s/ Kristina Stanger*
                                               Kristina Stanger
                                               Shareholder
                                               Nyemaster Goode, P.C