**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 927** |

**NOTICE OF FILING OF PLAN SUPPLEMENT WITH RESPECT TO THE DEBTORS'**
**FIRST AMENDED COMBINED DISCLOSURE STATEMENT AND**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**PLEASE TAKE NOTICE** that, on April 3, 2024, Mercy Hospital, Iowa City, Iowa and certain of its affiliates and subsidiaries (collectively, the "Debtors") filed the *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 927] (as amended, modified, or supplemented and including all exhibits and supplements thereto, the "Plan")[1] in the United States Bankruptcy Court for the Northern District of Iowa (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file this *Plan Supplement with Respect to the Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (as amended, modified, or supplemented, the "Plan Supplement") in support of confirmation of the Plan. The documents contained in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Plan Supplement documents have not yet been approved by the Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement includes the following documents, as may be modified, amended, or supplemented from time to time by the Debtors in accordance with the Plan, as set forth below:

| **Exhibit** | **Description** |
|---|---|
| Exhibit A | Identity of Liquidation Trustee |
| Exhibit B | Identity of Pension Plan Administrator |
| Exhibit C | Form of Liquidation Trust Agreement |

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in this Plan Supplement remain subject to ongoing negotiations among the Debtors, the UCC, the Pension Committee, and the Bondholder Representatives, and other interested parties

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

with respect thereto.  The Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date, or any such other date in accordance with the Plan, the Confirmation Order, or any other order of the Court.  Each of the documents contained in the Plan Supplement or its amendments are subject to certain consent and approval rights to the extent provided in the Plan.

> **PLEASE TAKE FURTHER NOTICE** that the Plan, the Plan Supplement, and other documents and materials filed in the above-captioned chapter 11 cases may be examined by any party-in-interest (a) at the Debtors' case website (https://dm.epiq11.com/mercyhospital) or (b) at the Court's website (https://www.ianb.uscourts.gov/) (a PACER account is required).  Such documents may also be obtained by written request to Epiq Corporate Restructuring, LLC (the "Voting Agent") at mercyinfo@epiqglobal.com or by telephoning the Voting Agent at (888) 318-5044 (toll-free) or (503) 451-6294 (if calling from outside the U.S. or Canada).

Dated: Cedar Rapids, Iowa
     April 29, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:   (319) 286-7002
Facsimile:   (319) 286-7050
Email:      rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: 515-283-3100
Fax:      515-283-8045
Email:     mmcguire@nyemaster.com
         kmstanger@nyemaster.com
         dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:   (312) 372-2000
Facsimile:   (312) 984-7700

Email:        fperlman@mwe.com
              dsimon@mwe.com
              ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies, under penalty of perjury, that on this April 29, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

/s/ *Roy Leaf*

## EXHIBIT A

**Identity of Liquidation Trustee**

| Title | Name |
|---|---|
| Liquidation Trustee | William H. Henrich<br>Getzler Henrich & Associates, LLC |

## EXHIBIT B

### Identity of Pension Plan Administrator

| Title | Name |
|---|---|
| Pension Plan Administrator | Agilis Partners LLC[1] |

---

[1]   Discussions amongst the Debtors, the Pension Committee, and Agilis Partners LLC remain ongoing and subject to further documentation.  Accordingly, the Debtors hereby reserve all rights with respect to the Mercy Hospital, Iowa City, Iowa Employees' Pension Plan.

## **EXHIBIT C**

**Liquidation Trust Agreement**

*[Form attached]*

## LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (this "Liquidation Trust Agreement"), dated as of May [__], 2024, by and between Mercy Hospital, Iowa City, Iowa, Mercy Services Iowa City, Inc., and Mercy Iowa City ACO, LLC, as debtors and debtors-in-possession (collectively, the "Debtors"), William H. Henrich of Getzler Henrich & Associates, LLC, as Liquidation Trustee (the "Liquidation Trustee") pursuant to that certain *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* dated [__], 2024 [Docket No. [__]] (as amended, modified, and/or supplemented, the "Plan"),[1] and [__], [__], and [__], as members of the Trust Oversight Committee, is hereby executed to facilitate the implementation of the Plan, which provides for, among other things, the establishment of the Liquidation Trust created by this Liquidation Trust Agreement and the administration and disposition of the Liquidation Trust Assets for the benefit of the holders of certain Claims as set forth in the Plan.

**WHEREAS**, on August 7, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Iowa (the "Court");

**WHEREAS**, on August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "UCC") [Docket No. 107];

**WHEREAS**, on November 4, 2023, the U.S. Trustee appointed the Official Committee of Pensioners (the "Pension Committee") [Docket No. 458];

**WHEREAS**, on [__], 2024, the Debtors filed the Plan;

**WHEREAS**, on May [__], 2024, the Court entered an order confirming the Plan [Docket No. [__]] (the "Confirmation Order"), which became effective on May [__], 2024 (the "Effective Date");

**WHEREAS**, the Plan and the Confirmation Order provide for the establishment of a Liquidation Trust (as defined in the Plan, the "Liquidation Trust") pursuant to this Liquidation Trust Agreement and the appointment of the Liquidation Trustee to administer the Liquidation Trust for the benefit of the Holders of all Allowed Claims under the Plan;

**WHEREAS**, William H. Henrich of Getzler Henrich & Associates, LLC was appointed as the Liquidation Trustee pursuant to the Plan effective as of the Effective Date;

**WHEREAS**, a Trust Oversight Committee (as defined in the Plan, the "Trust Oversight Committee") has been appointed effective as of the Effective Date to oversee the Liquidation Trust;

---

[1]   Unless otherwise defined in this Liquidation Trust Agreement, all capitalized terms contained in this Liquidation Trust Agreement have the meanings ascribed to them in the Plan. To the extent that a definition of a term in this Liquidation Trust Agreement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

**WHEREAS**, the Trust Oversight Committee currently consists of the persons and/or entities identified on <u>Schedule 1</u> attached hereto;

**WHEREAS**, the Plan provides for, *inter alia*:

(a)   the transfer and assignment by the Debtors or Liquidating Debtors, as applicable, on the Effective Date (and periodically thereafter if additional Liquidation Trust Assets become available), of all their rights, title, and interests in and to all of the  Liquidation Trust Assets (as defined in the Plan, the "<u>Liquidation Trust Assets</u>") and, in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, and other interests, subject only to the interests of the Liquidation Trust Beneficiaries[2] (hereinafter, the "<u>Beneficiaries</u>") in the Liquidation Trust Assets and the Liquidation Trust Expenses;

(b)   the Liquidation Trust shall be established for the primary purposes of liquidating the Liquidation Trust Assets and making Distributions in accordance with the Plan and this Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidation Trust;

(c)   all parties to the Liquidation Trust will be required to treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as (1) a transfer of the Liquidation Trust Assets directly to the holders of Allowed Claims receiving interests in the Liquidation Trust (other than to the extent any of the Liquidation Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such holders to the Liquidation Trust of the Liquidation Trust Assets in exchange for interests in the Liquidation Trust;

(d)   the establishment of the Disputed Claims Reserve for the payment of Disputed Claims that become Allowed Claims after the Effective Date and any other necessary reserves that may be required under the Plan, including the Administrative Expense Claims Reserve and the Professional Fee Reserve;

(e)   the payment, in accordance with the terms of the Plan, of Allowed Administrative Expense Claims, including Allowed Professional Fee Claims; Allowed Priority Tax Claims; Allowed Priority Non-Tax Claims; Allowed Bondholder Claims; Allowed Other Secured Claims; Allowed General Unsecured Claims; Allowed Bondholder Deficiency Claims; and Allowed Pension Claims; and Distributions on account of Disputed

---

[2]   Pursuant to the Plan, "Liquidation Trust Beneficiaries" means Holders of Bondholder Claims, General Unsecured Claims, Bondholder Deficiency Claims, and Pension Claims entitled to receive Distributions pursuant to the terms of the Plan, whether or not such Claims are Allowed as of the Effective Date.

Claims or Claims not otherwise Allowed as of the Effective Date, if such Claims become Allowed; and

(f)    the administration of the Liquidation Trust and the Liquidation Trust Assets by the Liquidation Trustee for the purposes and in the manner set forth in this Liquidation Trust Agreement subject to the terms of the Plan; and

**WHEREAS**, this Liquidation Trust Agreement is entered into in accordance with, and to facilitate implementation and execution of, the Plan;

**WHEREAS**, the Liquidation Trust is intended to be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code that is owned by the Beneficiaries as grantors;

**WHEREAS**, the respective powers, authority, responsibilities and duties of the Liquidation Trustee shall be governed solely by this Liquidation Trust Agreement.

**NOW, THEREFORE**, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

**ARTICLE 1**

**DECLARATION OF TRUST**

**1.1**    **Purpose of the Liquidation Trust.**  The Debtors and the Liquidation Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code and applicable tax statutes, rules, and regulations, to the extent incorporated in this Liquidation Trust Agreement, hereby constitute and create a trust (*i.e.*, the Liquidation Trust) for the purpose of liquidating the Liquidation Trust Assets for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business (except to the extent reasonably necessary to carry out, and consistent with, the liquidating purpose of the Liquidation Trust, *provided* that any such conduct will not affect the Liquidation Trust's tax status as a liquidation trust).  In particular, the Liquidation Trust, through the Liquidation Trustee, shall (a) pending the reduction to Cash of the Liquidation Trust Assets (and any non-Cash proceeds thereof), manage, and collect and obtain proceeds from the Liquidation Trust Assets, with the goal of reducing the Liquidation Trust Assets (and any non-Cash proceeds thereof) to Cash; (b) make Distributions pursuant to this Liquidation Trust Agreement, the Plan, and the Confirmation Order; and (c) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order, and this Liquidation Trust Agreement.  The Liquidation Trust shall not have authority to engage in a trade or business, and no portions of the Liquidation Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Liquidation Trust Assets (and any non-Cash proceeds thereof) and an

3

orderly wind down of the Debtors' affairs, with the goal of maximizing such assets for the benefit of the Beneficiaries.

      **1.2**    **Name of the Liquidation Trust.**  The Liquidation Trust established hereby shall be known as the "Mercy Hospital Liquidation Trust."  In connection with the exercise of the Liquidation Trustee's powers, the Liquidation Trustee may use such name or such variation thereof as the Liquidation Trustee sees fit and may transact the business and affairs of the Liquidation Trust in such name.

      **1.3**    **Transfer of Assets to Create Liquidation Trust.**  Pursuant to the Plan and the Confirmation Order, the Debtors and their Estates hereby irrevocably grant, release, assign, transfer, convey, and deliver to the Liquidation Trustee, as of the Effective Date, the Liquidation Trust Assets, to have and to hold by the Liquidation Trustee and the Liquidation Trustee's successors in trust and to be applied as specified in the Plan and this Liquidation Trust Agreement.  On the Effective Date and from time to time thereafter, upon the direction of the Liquidation Trustee, the Debtors shall execute and deliver (or cause to be executed and delivered) to the Liquidation Trustee any and all such documents, in recordable form where necessary or appropriate, and the Debtors shall take or cause to be taken such further or other action, as the Liquidation Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Liquidation Trustee, title to and possession of all of the Liquidation Trust Assets. The Liquidation Trustee shall be responsible for establishing and maintaining such accounts as the Liquidation Trustee shall deem necessary or appropriate to carry out the provisions of this Liquidation Trust Agreement, and to perform all obligations specified for the Liquidation Trustee under the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

      **1.4**    **Acceptance by Liquidation Trustee.**  The Liquidation Trustee hereby accepts: (a) the appointment to serve as Liquidation Trustee; (b) the transfer of the Liquidation Trust Assets on behalf of the Liquidation Trust; and (c) the trust imposed on the Liquidation Trustee by this Liquidation Trust Agreement.  The Liquidation Trustee agrees to receive, hold, administer, and distribute the Liquidation Trust Assets and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Liquidation Trust Agreement.  The Liquidation Trustee agrees to perform all activities reasonably necessary to ensure the transfer of the Liquidation Trust Assets to the Liquidation Trustee on behalf of the Liquidation Trust.

**ARTICLE 2**

**LIQUIDATION TRUSTEE - GENERALLY**

      **2.1**    **Appointment.**  The initial Liquidation Trustee shall be William H. Henrich of Getzler Henrich & Associates, LLC.

      **2.2**    **Term of Service**.  The Liquidation Trustee shall serve until (a) the termination of the Liquidation Trust in accordance with Article 9 of this Liquidation Trust Agreement, or (b) the Liquidation Trustee's resignation, death, or removal, all in accordance with the provisions of this Liquidation Trust Agreement.

4

**2.3     Services**.  The Liquidation Trustee shall devote such time as is necessary to fulfill all of the Liquidation Trustee's duties as set forth in the Plan, the Confirmation Order, and this Liquidation Trust Agreement. The Liquidation Trustee (solely in his, her, or its individual capacity) shall be entitled to engage in such other activities unrelated to the administration of the Liquidation Trust as the Liquidation Trustee deems appropriate and which are not in conflict with the Plan, the Confirmation Order, this Liquidation Trust Agreement, or the interests of the Beneficiaries resulting from this Liquidation Trust Agreement.

**2.4     Resignation, Death, or Removal of Liquidation Trustee.**  The Liquidation Trustee may resign at any time upon ninety (90) days' written notice to the Trust Oversight Committee.  Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a successor Liquidation Trustee by the Liquidation Trustee, in consultation with the Trust Oversight Committee. Such appointment of a successor Liquidation Trustee shall not require application to or further order of the Court, but such successor Liquidation Trustee shall be required to execute an instrument accepting such appointment and file such acceptance in the Liquidation Trust records; *provided, however*, that the Liquidation Trustee may seek Court approval of such successor Liquidation Trustee's appointment in the Liquidation Trustee's sole discretion. The Liquidation Trustee may be removed either (i) upon unanimous consent of the members of the Trust Oversight Committee or (ii) by the Court upon application only by a Beneficiary if the Court determines: that the Liquidation Trustee has (a) materially failed to fulfill the duties under the Plan and this Liquidation Trust Agreement or (b) breached its fiduciary duties to the Beneficiaries.  In the event the Liquidation Trustee position becomes vacant, the vacancy shall be filled as determined (i) by the Trust Oversight Committee, or (ii) if the Trust Oversight Committee does not identify a successor Liquidation Trustee, by the Court upon submissions from any interested party or parties. Upon appointment pursuant to this <u>Section 2.4</u>, any successor Liquidation Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of such successor Liquidation Trustee's predecessor.

**2.5     Trust Continuance.**  The death, incapacity, resignation, or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Liquidation Trustee as Liquidation Trustee) created pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee appointed in such event agrees that the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of such successor Liquidation Trustee and all such successor Liquidation Trustee's heirs and legal and personal representatives, successors, or assigns.

**2.6     Compensation and Expenses of Liquidation Trustee.**  The Liquidation Trustee shall receive (a) fair and reasonable compensation for the Liquidation Trustee's services as Liquidation Trustee as set forth on <u>Schedule 2</u> attached hereto, and (b) reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' fees and other professional fees), and expenses incurred by the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties hereunder. All such compensation and reimbursement shall be paid (or reserved for, as applicable) from the Liquidation Trust Assets prior to any distribution to the Beneficiaries.  Nothing in the Plan, the Confirmation Order, or this Liquidation Trust Agreement shall prohibit the Liquidation Trustee from seeking approval of a fee enhancement

for extraordinary performance upon the recommendation of the Trust Oversight Committee and subject to approval of the Bankruptcy Court.

      **2.7**    **Retention of Professionals.**  The Liquidation Trustee may, without the necessity for application to or approval of the Court, but after consultation with the Trust Oversight Committee, retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out the Liquidation Trustee's duties under this Liquidation Trust Agreement on such terms as the Liquidation Trustee deems appropriate in the Liquidation Trustee's sole discretion, including any law, accounting, or financial advisory firm of which the Liquidation Trustee is a partner or otherwise affiliated from time to time and any law, accounting, or financial advisory firm that was retained as a professional in the Chapter 11 Cases.  The Liquidation Trustee may also award a fee enhancement for extraordinary performance to professionals retained consistent with this <u>Section 2.7</u> to the extent such fee enhancement is recommended by the Trust Oversight Committee and approved by the Bankruptcy Court.  The reasonable fees and expenses of all professionals retained consistent with this <u>Section 2.7</u> shall be borne exclusively by the Liquidation Trust, and such professionals may be compensated monthly upon submission of invoices to the Liquidation Trustee without review or approval of the Court or any other party, except as provided in <u>Section 2.8</u>.  All reasonable fees and expenses of administration of the Liquidation Trust and the Liquidation Trustee, including pursuant to <u>Section 2.6</u> and this <u>Section 2.7</u>, shall be paid from the Liquidation Trust, and the Liquidation Trustee may establish one or more reserves for this purpose.

      **2.8**    **No Bankruptcy Court Approval Needed for Payment.** Neither the Liquidation Trustee nor any professional retained by the Liquidation Trustee is required to seek Court authorization before the payment of any reasonable fees, or expenses, of the Liquidation Trustee or any professional retained by the Liquidation Trustee.  In addition, the Liquidation Trustee may pay Professionals in the ordinary course of business for any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those reasonable fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to, or order of, the Court.  Any invoices of the Liquidation Trustee and the Liquidation Trustee's professionals will be provided to the Trust Oversight Committee for review and approval contemporaneous with receipt by the Liquidation Trustee.  The Trust Oversight Committee must make any objection to fees or expenses  in writing within ten (10) days after receiving the pertinent invoice(s) and such objection must identify the time entries and any other matters subject to the objection and the grounds therefor. The parties will engage in good faith discussions to resolve the objection.  If the objection is not resolved within thirty (30) days of the Liquidation Trustee's receipt of such objection, the undisputed portion of the fees and expenses will be promptly paid and the party seeking payment shall have the right to seek approval of any disputed portion from the Court.  Failure to timely object to requested fees and/or expenses shall be deemed a waiver of any such objection and the Trust Oversight Committee's consent to the payment of such fees and expenses.

      **2.9**    **Preservation of Privileges**.  In connection with the rights, claims, and causes of action that constitute Liquidation Trust Assets, any attorney-client privilege, work-product doctrine, or other privilege or immunity attaching to any documents or communications (whether written, electronic, or oral) transferred to, or otherwise acquired by, the Liquidation Trust

pursuant to the terms of the Plan or otherwise shall vest in the Liquidation Trustee and the representatives of the Liquidation Trust, and the Liquidation Trustee is authorized to take any actions to the extent necessary to effectuate the transfer of such privileges and rights attendant thereto. The Liquidation Trustee's receipt of all such privileges shall not operate as a waiver of any other privileges or immunities possessed or retained by the Debtors. The Liquidation Trustee's disclosure of any privileged documents, communications or information to the members of the Trust Oversight Committee or any *ex officio* members of the Trust Oversight Committee in connection with their duties under the Plan or hereunder shall not result in any waiver of such privileged documents, communications or information.

## ARTICLE 3

## POWERS AND LIMITATIONS OF LIQUIDATION TRUSTEE

**3.1    General Powers of Liquidation Trustee.**  In connection with the administration of the Liquidation Trust, the Liquidation Trustee shall be deemed the authorized representative of the Debtors and their Estates in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, in addition to any rights and powers granted by law or conferred to it by any provision of the Plan. Enumeration of any specific rights and powers herein shall not be considered in any way to limit or control the power and authority of the Liquidation Trustee to act as specifically authorized by any provision of the Plan and/or any applicable law, and to act in such manner as the Liquidation Trustee may deem necessary or appropriate, including, without limitation, to discharge all obligations assumed by the Liquidation Trustee, to conserve and protect the Liquidation Trust and the Liquidation Trust Assets, or to confer on the Beneficiaries the benefits intended to be conferred upon them by the Plan. The Liquidation Trustee shall have the power and authority to make all decisions with respect to the Liquidation Trust Assets and perform those acts necessary or desirable to accomplish the purposes of the Liquidation Trust. The Liquidation Trust shall succeed to all the rights of the Debtors and their Estates necessary to protect, conserve, and liquidate the Liquidation Trust Assets as quickly as reasonably practicable consistent with the purposes of the Liquidation Trust.  Subject to the limitations set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan, and by the Confirmation Order, or by any other section or provision of this Liquidation Trust Agreement, the Liquidation Trustee may exercise all powers granted to the Liquidation Trustee hereunder related to, or in connection with, the administration and liquidation of Liquidation Trust Assets and distribution of Cash and other net proceeds derived therefrom in accordance with this Liquidation Trust Agreement, the Plan, and the Confirmation Order.  Without limitation, the Liquidation Trustee shall be expressly authorized, without need of further approval of the Court, but subject to the terms of the Plan and Confirmation Order, and consultation with the Trust Oversight Committee where specified in this Liquidation Trust Agreement, to:

> (a)    receive, manage, invest, supervise, and protect the Liquidation Trust Assets;

(b)     effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and this Liquidation Trust Agreement, including to exercise any powers necessary or incidental thereto;

(c)     pay taxes or other obligations incurred by the Liquidation Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms;

(d)     investigate, prosecute, settle, abandon, or compromise any Liquidation Trust Claims without any further notice to or action, order, or approval by the Court (including the power to continue any actions and proceedings that may have been commenced by the Debtors or the UCC prior to the Effective Date to the extent not waived or released pursuant to the Plan); *provided*, *however*, that the Liquidation Trustee shall consult with the Trust Oversight Committee prior to commencing or settling any Liquidation Trust Claim in excess of $500,000;

(e)     resolve issues involving Claims and Interests in accordance with the Plan, including the power to object to Claims against the Debtors, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding against the Debtors without any further notice to or action, order or approval by the Court; *provided*, *however*, that the Liquidation Trustee shall consult with the Trust Oversight Committee prior to settling any Claim Objection that would result in an Allowed Claim in excess of $250,000;

(f)     investigate, prosecute, settle, abandon, or compromise any Litigation Claims without further notice to or action, order, or approval by the Court (including the power to continue any actions and proceedings that may have been commenced by the Debtors or the UCC prior to the Effective Date to the extent not waived or released pursuant to the Plan) through and including the entry of a Final Order in any such Litigation Claim or cause of action; *provided*, *however*, that the Liquidation Trustee shall consult with the Trust Oversight Committee prior to commencing or settling any Litigation Claim in excess of $500,000;

(g)     resolve all Disputed Claims and any Claim Objections pending as of the Effective Date and, without Court approval, settle, compromise, withdraw, or resolve in any manner such Disputed Claims and Claim Objections; *provided*, *however*, that the Liquidation Trustee shall consult with the Trust Oversight Committee prior to settling any Claim Objection that would result in an Allowed Claim in excess of $250,000;

(h)     prosecute any Objections to Claims and Disputed Claims that the Liquidation Trustee deems appropriate (including any request for payment of an Administrative Expense Claim) through and including the entry of a Final Order relating to any Objections to Claims and Disputed Claims and, without Court approval, litigate, settle, compromise, withdraw, or resolve in any manner such objections; *provided*, *however*, that the Liquidation Trustee shall consult with the Trust Oversight Committee prior to settling any Claim Objection that would result in an Allowed Claim in excess of $250,000;

(i)     make Distributions from the Liquidation Trust to Holders of Allowed Claims as provided for in the Plan and this Liquidation Trust Agreement;

(j)     establish and administer any necessary reserves that may be required, including the Disputed Claims Reserve, the Administrative Expense Claims Reserve and the Professional Fee Reserve;

(k)     employ and compensate counsel or other professionals, advisors or agents to assist in the performance of the Liquidation Trustee's duties, which counsel may include any counsel who represented either the Debtors, the UCC, or the Pension Committee during the pendency of the Chapter 11 Cases, all without Court approval; *provided, however*, that any such compensation shall be made only out of the Liquidation Trust Assets and Liquidation Trust Proceeds;

(l)     file all federal, state and local tax returns on behalf of the Debtors or Liquidating Debtors, as applicable, if necessary or to the extent required by law;

(m)     undertake all administrative functions of the Chapter 11 Cases, including the payment of Statutory Fees incurred post-Effective Date with respect to distributions from the Liquidation Trust and the ultimate closing of the Chapter 11 Cases and dissolution of the Debtors;

(n)     after consultation with the Trust Oversight Committee, release any or all Avoidance Actions;

(o)     take any action as may be vested in or assumed by the Liquidation Trustee consistent with the Plan, this Liquidation Trust Agreement, and any applicable Orders of the Court, or as may be necessary and proper to carry out the provisions of the Plan;

(p)     use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making Distributions and/or fully consummating the Plan; *provided*, *however*, that the Liquidation Trustee shall obtain the approval of the member of the Trust Oversight Committee designated by the Bondholder Representatives prior to liquidating any JV Interests; *provided further* that, (i) in the event such approval is not granted, the Liquidation Trustee may seek approval of any proposed liquidation of any JV Interests from the Bankruptcy Court or (ii) in the event the Bondholder Representatives propose a liquidation of any JV Interests to which the Liquidation Trustee does not consent, the Bondholder Representatives may seek approval of any such liquidation from the Bankruptcy Court.

(q)     establish reserves for, satisfy and pay all Liquidation Trust Expenses;

(r)     obtain, renew, replace, or supplement insurance policies, pay any associated obligations, including all premiums and any other fees relating thereto, and exercise any other power or authority necessary or incidental thereto;

(s)     participate in or File any post-Effective Date motion(s) to amend or modify the Plan or this Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(t)     participate in or File any action to enforce or interpret the Plan;

9

(u)      take all steps necessary to wind-up and dissolve the Liquidation Trust after all Liquidation Trust Assets are liquidated or otherwise administered; and

(v)      take all other actions not inconsistent with the provisions of this Liquidation Trust Agreement, the Plan, and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan or this Liquidation Trust Agreement, including (without limitation) the following, irrespective of whether the authority to take such actions is expressly set forth in the Plan:

(i)      file all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases;

(ii)      pay any Statutory Fees;

(iii)      settle disputes as to any amounts owed to the Estates without Court approval;

(iv)      enter into, oversee, implement, and perform under any contract or agreement on behalf of the Liquidation Trust;

(v)      seek an estimation of contingent or unliquidated Claims pursuant to section 502(c) of the Bankruptcy Code;

(vi)      open and maintain bank accounts on behalf of or in the name of the Liquidation Trust;

(vii)      receive, conserve, and manage the Liquidation Trust Assets;

(viii)      if the Liquidation Trustee determines that any of the Beneficiaries or the Liquidation Trust may, will, or has become subject to adverse tax consequences, take such actions that the Liquidation Trustee, in the Liquidation Trustee's reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Liquidation Trust Assets into several trusts or other structures;

(ix)      hold legal title to any and all Liquidation Trust Assets;

(x)      establish, fund, and administer any reserve provided for in, or otherwise not inconsistent with, the terms of the Plan, the Confirmation Order, or this Liquidation Trust Agreement;

(xi)      represent the Liquidation Trust before governmental and other regulatory or administrative bodies;

(xii)      remove Liquidation Trust Assets or the situs of administration of the Liquidation Trust from one jurisdiction to another at any time or from time to time;

(xiii)    make decisions regarding the retention or engagement of professionals, employees, and consultants by the Liquidation Trust and pay, from the Liquidation Trust, the fees and charges incurred by the Liquidation Trust on or after the Effective Date, including fees of professionals, disbursements, expenses, or support services relating to the implementation of the Plan and this Liquidation Trust Agreement, without Court approval subject to the terms of Section 2.7 and Section 2.8 hereof;

(xiv)    pay all lawful expenses, debts, charges, and liabilities of the Liquidation Trust;

(xv)    withhold from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Liquidation Trustee has determined, in his or her sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of the Liquidation Trustee's discretion and judgment, enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld;

(xvi)    enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order, or this Liquidation Trust Agreement and the purposes of the Liquidation Trust, and perform all obligations thereunder;

(xvii)    abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Liquidation Trustee's choice, any assets that the Liquidation Trustee concludes are of no benefit to the Liquidation Trust;

(xviii)    if any performance under this Liquidation Trust Agreement by the Liquidation Trustee is subject to the laws of any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, nominate and appoint a Person or Entity duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as designated by the Liquidation Trustee; conferring upon such trustee any and all of the rights, powers, privileges, and duties of Liquidation Trustee, subject to the conditions and limitations of this Liquidation Trust Agreement and applicable law; require such trustee to be answerable to the Liquidation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidation Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal;

(xix)    invest Cash as deemed appropriate by the Liquidation Trustee in Cash equivalents; *provided, however*, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; *provided further* that any investment of Cash must be with institutions and in investment vehicles covered by Federal Deposit Insurance Corporation ("FDIC") insurance;

11

(xx)    hold title to any investment in the Liquidation Trustee's name as Liquidation Trustee or in a nominee's name;

(xxi)    collect amounts due (including, without limitation, Debtor receivables and/or amounts owed by third parties relating to outstanding Debtor receivables), and exercise and enforce all voting and other rights (including, without limitation, any foreclosure or similar rights), under or attendant to any notes, accounts receivable, general partnership interests, limited partnership interests, stock holdings, settlement agreements, life insurance policies or agreements, or other contracts or contract rights, or other assets, in each case that constitute Liquidation Trust Assets, or proceeds thereof;

(xxii)   file, amend, and represent the Debtors with respect to, and taking any other necessary actions with respect to, any Medicare and/or Medicaid cost reports or audits, similar cost reports or audits, and any entitlement to any funds relating to any of the foregoing, in each case solely to the extent such funds constitute Liquidation Trust Assets;

(xxiii)  sue and be sued, subject to the provisions herein, in the Plan, and in the Confirmation Order, and participate in any proceeding with respect to any matter relating to this Liquidation Trust Agreement, the Confirmation Order, the Plan, the Liquidation Trust, the Debtors, or the Estates; and

(xxiv)  delegate any or all of the discretionary power and authority herein conferred at any time with respect to any portion of the Liquidation Trust Assets or other powers enumerated herein to any one or more reputable individuals or recognized institutional advisors or investment managers or consultants without any liability for any action taken or omission made because of such delegation, except to the extent such delegation constituted gross negligence, willful misconduct, or fraud.

**3.2    Limitations on the Liquidation Trustee.**  Notwithstanding anything in this Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall not do or undertake any of the following without an order of the Court approving such decision or action:

(a)    take any action in contravention of the Plan, the Confirmation Order, or this Liquidation Trust Agreement;

(b)    take any action that would significantly jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes;

(c)    lend any Liquidation Trust Assets to the Liquidation Trustee;

(d)    purchase Liquidation Trust Assets from the Liquidation Trust;

(e)    transfer Liquidation Trust Assets to another trust with respect to which the Liquidation Trustee serves as trustee;

(f)    grant liens on any of the Liquidation Trust Assets; or

(g)    guarantee any debt incurred by any third party.

**3.3** **Liquidation Trustee Conflicts of Interest.** If the Liquidation Trustee determines, in the exercise of the Liquidation Trustee's discretion in consultation with the Trust Oversight Committee, that the Liquidation Trustee has a conflict of interest with respect to any matter, the Liquidation Trustee may authorize the Trust Oversight Committee to exercise the rights and authority of the Liquidation Trustee with respect to such matter or, after notice to the U.S. Trustee, request that the Court approve the Liquidation Trustee's choice of a designee to act on behalf of the Liquidation Trust solely with respect to such matter, with the Trust Oversight Committee's or such designee's authority to so act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.

## ARTICLE 4

## LIABILITY OF LIQUIDATION TRUSTEE AND MEMBERS OF TRUST OVERSIGHT COMMITTEE

**4.1** **Standard of Care; Exculpation; Limitation on Liability; Indemnification.** The Liquidation Trustee shall not be liable for any act the Liquidation Trustee may do or omit to do as Liquidation Trustee under the Plan and this Liquidation Trust Agreement while acting in good faith and in the exercise of the Liquidation Trustee's reasonable business judgment; nor will the Liquidation Trustee be liable in any event except for an act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted gross negligence, willful misconduct, or fraud. The foregoing limitation on liability also will apply to each member of the Trust Oversight Committee (and each such member's representative(s) on the Trust Oversight Committee), and any Person or Entity employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties hereunder or under the Plan. In addition, the Liquidation Trustee, each member of the Trust Oversight Committee (and each such member's representative(s) on the Trust Oversight Committee), and any Person or Entity employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee shall be entitled to indemnification and defense out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, or having been, a member of the Trust Oversight Committee (or a representative of such a member on the Trust Oversight Committee) or employed by the Liquidation Trust or the Liquidation Trustee or for performing any functions incidental to such service; *provided, however*, that the foregoing shall not relieve the Liquidation Trustee, any member of the Trust Oversight Committee (or any such member's representative on the Trust Oversight Committee), or any Person employed by the Liquidation Trustee from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan or this Liquidation Trust Agreement, for an act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, or fraud. Persons or Entities dealing with the Liquidation Trustee or any of the foregoing parties in their respective capacities as such, or seeking to assert claims against the Liquidation Trustee or any of the foregoing parties in their capacities as such, shall have recourse only to the Liquidation Trust Assets (excluding any fund or reserve to pay Liquidation Trust Expenses) to satisfy any liability incurred by the Liquidation Trustee or any of the foregoing parties in their respective capacities as such to such Persons or Entities in carrying out the terms of the Plan and this Liquidation Trust Agreement. Satisfaction of any obligation of the

13

Liquidation Trust arising pursuant to the terms of this <u>Section 4.1</u> shall be payable only from the Liquidation Trust Assets, and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Liquidation Trust Assets or proceeds thereof. The Liquidation Trustee, in consultation with the Trust Oversight Committee, shall have the right to control the defense and settlement of claims as to which the Liquidation Trust is obligated to indemnify.

  **4.2** **Bond.** The Liquidation Trustee shall not be obligated to give any bond or surety for the performance of any of the Liquidation Trustee's duties unless otherwise ordered by the Court. If so ordered, all costs and expenses of procuring a bond or surety shall be deemed a Trust Expense and payable from the Liquidation Trust Assets.

  **4.3** **No Liability for Acts of Predecessor Liquidation Trustees.** No successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a successor Liquidation Trustee expressly in writing assumes such responsibility.

  **4.4** **Reliance by Liquidation Trustee on Documents, Mistake of Fact, or Advice of Counsel.** Except as may be otherwise provided in this Liquidation Trust Agreement, the Liquidation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been presented by an authorized party. The Liquidation Trustee shall also not be liable if the Liquidation Trustee acts in good faith based on a mistake of fact before having actual knowledge of such mistake. The Liquidation Trustee shall not be liable for any action taken or suffered by the Liquidation Trustee in reasonably relying upon the advice of counsel or other professionals engaged by the Liquidation Trustee in accordance with this Liquidation Trust Agreement.

  **4.5** **Insurance.** The Liquidation Trustee may cause the Liquidation Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Liquidation Trustee may incur, including but not limited to attorneys' fees, arising out of or due to the Liquidation Trustee's actions or omissions, or consequences of such actions or omissions, other than as a result of the Liquidation Trustee's gross negligence, willful misconduct or fraud, with respect to the implementation and administration of the Plan, the Liquidation Trust, and this Liquidation Trust Agreement.

## ARTICLE 5

## DUTIES OF LIQUIDATION TRUSTEE

  **5.1** **General.** The Liquidation Trustee shall have all the duties specified in the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

  **5.2** **Books and Records.** The Liquidation Trustee shall maintain, in respect of the Liquidation Trust, books and records relating to the Liquidation Trust Assets and income and proceeds realized therefrom, and the payment of expenses of and claims against or assumed by

the Liquidation Trust, in such detail and for such period of time as may be necessary to enable the Liquidation Trustee to make full and proper reports in respect thereof.  Except as expressly provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets or proceeds therefrom.

### 5.3   Establishment of Accounts and Reserves.

(a)     On or prior to the Effective Date, or as soon as practicable thereafter, the Liquidation Trustee shall establish one or more federally insured domestic bank accounts in the name of the Liquidation Trust (the "Liquidation Trust Account"), which shall hold all Cash belonging to the Liquidation Trust, including all Cash transferred to the Liquidation Trust pursuant to the Plan and all Cash proceeds obtained through prosecution or settlement of the Liquidation Trust Claims or by the disposition of the Liquidation Trust Assets.

(b)     On the Effective Date or as soon as practicable thereafter, the Liquidation Trustee shall establish the Disputed Claims Reserve from and within the Liquidation Trust Account for the purposes of making Distributions to any Holder of a Disputed Claim if such Claim becomes an Allowed Claim or, if such Disputed Claim becomes Disallowed, then to the Holders of Allowed Claims pursuant to the terms of the Plan.  The Liquidation Trustee, in consultation with the Trust Oversight Committee, shall determine the amount to be reserved in the Disputed Claims Reserve, *provided* that such discretion is not exercised in a manner that is inconsistent with the express provisions of the Plan.  Unless otherwise provided in the Plan or this Liquidation Trust Agreement, when such a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the reserve and shall be treated as funds available for distribution in accordance with the terms of the Plan and this Liquidation Trust Agreement.

(c)     The Liquidation Trustee shall create, from time to time and as part of the Liquidation Trust Account, reserves in amounts sufficient to pay (a) Liquidation Trust Expenses (including compensation to the Liquidation Trustee and the Liquidation Trustee's professionals) and (b) all Allowed Administrative Expense Claims, including Allowed Professional Fee Claims (to the extent such Claims are not otherwise accounted for in funds held by Debtors' or the Liquidation Trustee's counsel to fund Allowed Professional Fee Claims), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Bondholder Claims, Allowed Other Secured Claims, Allowed General Unsecured Claims, Allowed Bondholder Deficiency Claims, and Allowed Pension Claims. Consistent with the Plan, on and after the Effective Date, the Liquidation Trustee, in consultation with the Trust Oversight Committee, shall have authority to increase or decrease such reserves as appropriate.

(d)     Except as otherwise provided in the Plan, Confirmation Order, and this Liquidation Trust Agreement, the Liquidation Trustee shall make Distributions to Holders of Allowed Claims in accordance with the terms of the Plan in the exercise of the Liquidation Trustee's sound discretion in consultation with the Trust Oversight Committee, based on, among other things, the amount of Cash on hand, the amount needed to fund any applicable reserves,

including any reserves to cover the Liquidation Trust Expenses, whether there remain any unpaid Allowed Administrative Expense Claims (including Allowed Professional Fee Claims), Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Bondholder Claims; Allowed Other Secured Claims, Allowed General Unsecured Claims; Allowed Bondholder Deficiency Claims; and Allowed Pension Claims, the amount of Disputed Claims and Claims not yet Allowed, and the status of any pending litigation, if any, affecting such Distributions.

## ARTICLE 6

## BENEFICIARIES

**6.1     Effect of Death, Incapacity, or Bankruptcy of Beneficiary.**  The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust, nor shall it entitle the representatives or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting, or to take any action in any court or elsewhere for the distribution of the Liquidation Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Liquidation Trust Agreement or in the Liquidation Trust.

**6.2     Standing of Beneficiary.**  Except as may be expressly provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Liquidation Assets.

**6.3     Release of Liability by Beneficiary.**  A Beneficiary shall not have any power to relieve the Liquidation Trustee from any duty, responsibility, restriction, or liability that would otherwise be imposed under this Liquidation Trust Agreement unless such relief is approved by Final Order of the Court.

## ARTICLE 7

## DISTRIBUTIONS

**7.1     Distributions from Liquidation Trust Assets.**  All payments to be made by the Liquidation Trustee to any Person or Entity shall be made only in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement, and from the Cash or Cash proceeds of Liquidation Trust Assets, and only to the extent that the Liquidation Trust has sufficient Cash to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Liquidation Trust Agreement. In accordance with the Plan, the first Distributions shall occur on or as soon as practicable after the Effective Date or as otherwise determined by the Liquidation Trustee. All subsequent Distributions shall occur as soon after the first Distribution Date as the Liquidation Trustee may reasonably determine in consultation with the Trust Oversight Committee and in accordance with the Plan and this Liquidation Trust Agreement. The Liquidation Trustee shall distribute to the Beneficiaries the net income of the Liquidation Trust plus all net proceeds from the sale of Liquidation Trust Assets at least annually; *provided* that (a) the Liquidation Trust may retain an amount of net proceeds or net

16

income reasonably necessary to maintain the value of its assets, pay Allowed Claims, and fund the Disputed Claims Reserve and such other reserves provided for in, or otherwise not inconsistent with, the terms of the Plan, the Confirmation Order, or this Liquidation Trust Agreement, including a reserve for the payment of Liquidation Trust Expenses, and (b) such distribution is not otherwise inconsistent with the terms of the Plan or the Confirmation Order. Any distribution made by the Liquidation Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error.

7.2    **Minimum Recoveries for Certain Classes of Claims.** Pursuant to the Plan, the aggregate recovery amounts from Distributions under the Plan attributable to the Holders of Allowed General Unsecured Claims (Class 3) and Holders of Allowed Pension Claims (Class 5) shall not be less than ten percent (10%) of the aggregate recovery amounts attributable to the Holders of Allowed Bondholder Claims (Classes 1-A and 1-B) (the "Minimum GUC/Pension Claims Recovery Ratio"), with Distributions made by the Liquidation Trust post-Effective Date being modified accordingly pursuant to this Liquidation Trust Agreement. Notwithstanding anything in this Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall at all times be authorized and required to adjust the Distributions made to the Holders of Allowed General Unsecured Claims, Allowed Pension Claims, and Allowed Bondholder Claims in such manner as the Liquidation Trustee determines, in consultation with the Trust Oversight Committee, to be necessary in the exercise of its reasonable discretion in order to effectuate and maintain the Minimum GUC/Pension Claims Recovery Ratio.

7.3    **Distributions; Withholding.** The Liquidation Trustee shall make distributions at such times, consistent with the terms of the Plan, the Confirmation Order, and this Liquidation Trust Agreement, as the Liquidation Trustee deems appropriate from all net Cash income and all other Cash proceeds received by the Liquidation Trust; *provided, however*, that the Liquidation Trust may retain such amounts as are reasonably necessary (a) to meet known, anticipated and contingent liabilities and to maintain the value of the Liquidation Trust Assets during the term of the Liquidation Trust; (b) to pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable costs, fees (including attorneys' and other professional fees), and expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties under this Liquidation Trust Agreement, the Plan, and the Confirmation Order; and (c) to satisfy all other liabilities incurred or assumed by the Liquidation Trust (or to which the Liquidation Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, Beneficiaries complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Beneficiary. Notwithstanding any other provision of this Liquidation Trust Agreement, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidation Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such

Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder of an Allowed Claim under the Plan unless and until such Holder of an Allowed Claim has made arrangements satisfactory to the Liquidation Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed pursuant to this Liquidation Trust Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Liquidation Trust until such time as the Liquidation Trustee is satisfied with such Holder's arrangements for any withholding tax obligations.

As a condition to receiving any Distribution under the Plan, each Holder of an Allowed Claim shall be required to provide any information necessary to effect the necessary information reporting and withholding of applicable taxes with respect to Distributions to be made under the Plan as the Liquidation Trustee may request, including returning an appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. The Liquidation Trustee shall be entitled in its sole discretion to withhold any Distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Liquidation Trustee to such Holder of an Allowed Claim, which timeframe shall not be less than thirty (30) days. **Unless the Liquidation Trustee agrees otherwise in its sole discretion, all Distributions to any Holder of an Allowed Claim that fails to timely respond to a request for tax information deemed necessary or appropriate by the Liquidation Trustee shall be waived and forfeited and the applicable Claim shall be deemed Disallowed without further order of the Court.**

7.4    **Non-Cash Property.**  Any non-Cash property of the Liquidation Trust may be sold, transferred, or abandoned by the Liquidation Trustee.  If, in the Liquidation Trustee's judgment, after consultation with the Trust Oversight Committee, such property cannot be sold in a commercially reasonable manner, the Liquidation Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Liquidation Trustee.  Except in the case of gross negligence, willful misconduct, or fraud, no party in interest shall have a cause of action against the Debtors, any manager, partner, director, officer, trustee, employee, consultant, or professional of the Debtors; the Liquidation Trust; the Liquidation Trustee; any member of the Trust Oversight Committee; or any manager, partner, director, officer, trustee, employee, consultant, or professional of the Liquidation Trust,  Liquidation Trustee, or any member of the Trust Oversight Committee arising from or related to the disposition of non-Cash property in accordance with this Section 7.4.

7.5    **Method of Cash Distributions.**  Any Cash payment to be made by the Liquidation Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Liquidation Trustee, by draft, check or wire transfer, or as otherwise required by applicable law.  Mailed distributions shall be sent to the address provided for the Holder of an Allowed Claim in its respective proof of claim filed with the Court or claims agent, if any, or if no proof of claim was filed, at the address provided on the Schedules or such Holder's last address known to the Debtors.  The Liquidation Trustee shall not be required to locate the current address for any Holder of an Allowed Claim whose distribution is returned to the Liquidation Trustee as undeliverable in accordance with Section 7.11 hereof.

**7.6     Distributions on Non-Business Days.**  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**7.7     Objections to Claims.**

(a)     <u>Objection Procedures</u>.  From and after the Effective Date, in accordance with the terms of the Plan, the Liquidation Trustee shall have the exclusive authority, right, and standing (but shall not be obligated) to (a) object to and contest the allowance of any and all Claims (except with respect to Claims that have been Allowed pursuant to the Plan); (b) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, without further notice to any party, or action, approval, or order of the Court; and (c) litigate to final resolution objections to Claims. No distribution shall be made pursuant to the Plan to a Holder of a Claim, Disputed or otherwise, unless and until such Claim is or becomes an Allowed Claim.  All objections to Claims shall be filed with the Court, and served upon the Holders of such Claims, on or before the deadline to object to Claims set forth in the Plan, as such deadline may be extended.

(b)     <u>Resolution of Claims</u>.  The Liquidation Trustee shall have the exclusive right to (i) compromise and settle any Disputed Claim or Claim that has not otherwise been Allowed, upon agreement with the Holder of such Disputed Claim or Claim that has not otherwise been Allowed, without further Order or approval of the Court; and (ii) litigate to final resolution objections to Claims.

(c)     <u>Unliquidated and Contingent Claims</u>.  Until such time as an unliquidated Claim, contingent Claim, or a contingent portion of a Claim becomes Allowed or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions.  The Holder of an unliquidated or contingent Claim will be entitled to a distribution under the Plan only if and when such unliquidated or contingent Claim becomes an Allowed Claim.

**7.8     De Minimis Interim Distributions.**  The Liquidation Trust shall not be required to make any interim distributions to Holders of Allowed Claims aggregating less than $50.00; *provided, however*, that Holders of Allowed Claims shall be entitled to final distributions regardless of their amount.

**7.9     Fractional Dollars.** The Liquidation Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

**7.10     Setoff and Recoupment.**  The Liquidation Trustee may, to the extent permitted under applicable law, setoff or recoup against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights, and Causes of Action of any nature that the Debtors or the Liquidation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released, or compromised in accordance with the Plan; *provided, however*, that neither such a setoff, recoupment, or failure to effect such a setoff or recoupment, nor the allowance of any Claim, shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights, and Causes of Action that the Debtors, the Estates

or the Liquidation Trustee may possess against such Holder. Any Holder of an Allowed Claim subject to such setoff or recoupment reserves the right to challenge any such setoff or recoupment in the Court.

**7.11    Undeliverable or Unclaimed Distributions.**

If a Distribution to any Holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address and such Holder provides sufficient evidence of such address as may be requested by the Liquidation Trustee at which time all missed Distributions shall be made to such Holder without interest, subject to the time limitations set forth below. Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (a) such time as a Distribution becomes deliverable or (b) ninety (90) days from the date the Liquidation Trustee made the applicable Distribution. Nothing contained in the Plan or this Liquidation Trust Agreement shall require the Liquidation Trust, the Liquidation Trustee, or any Disbursing Agent to attempt to locate any Holder of an Allowed Claim. In addition, the Liquidation Trustee shall have no obligation to check or identify a current mailing address for any Holder of an Allowed Claim.

Any Cash or other property to be distributed under the Plan shall revert to the Liquidation Trustee and/or the Liquidation Trust, as applicable, if it is not claimed on or before ninety (90) days from the date the Liquidation Trustee makes a Distribution (the "Unclaimed Distribution Deadline"). If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the Distribution shall be deemed to be reduced to zero. Any check that is not cashed or otherwise deposited on or before the Unclaimed Distribution Deadline shall be deemed an Unclaimed Distribution under the Plan and nonnegotiable thereafter. Any Distribution which is deemed nonnegotiable shall re-vest in the Liquidation Trust and be available for distribution consistent with the Plan.

The reversion of any undeliverable or Unclaimed Distribution to the Administrative Expense Claims Reserve or the Liquidation Trust, as applicable, shall be free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be treated in accordance with the terms of the Plan and this Liquidation Trust Agreement.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or Unclaimed Distribution within ninety (90) days after the date such Distribution was made shall be deemed to have forfeited its Claim for such undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or Unclaimed Distribution against the Debtors and their Estates, the Liquidation Trustee, the Liquidation Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its or their property.

If there is any residual unclaimed property at the time of dissolution of the Liquidation Trust, such residual unclaimed property shall be available for a subsequent Distribution on a Pro Rata basis to other Beneficiaries or donated to a charitable organization at the sole discretion of the Liquidation Trustee.

    **7.12    No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan or this Liquidation Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtors or the Liquidation Trust on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court, administrative tribunal, or such other court having jurisdiction over the matter.

**ARTICLE 8**

**TAXES**

    **8.1    Income Tax Status**.

        (a)    It is intended that the Liquidation Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code. Pursuant to the Plan, and in conformity with IRS Revenue Procedure 94–45, 1994.28 I.R.B. 124, the parties hereto and the Beneficiaries will be required to treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as (1) a transfer of the Liquidation Trust Assets (subject to any obligations relating to those assets) directly to the holders of Allowed Claims receiving interests in the Liquidation Trust (other than to the extent any of the Liquidation Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such holders to the Liquidation Trust of the Liquidation Trust Assets in exchange for interests in the Liquidation Trust. As such, notwithstanding anything set forth herein, the transfer of assets to the Liquidation Trust shall be treated for all purposes of the Internal Revenue Code as a transfer from the Estates to creditors to the extent the creditors are Beneficiaries of the Liquidation Trust followed by a deemed transfer by the Beneficiaries to the Liquidation Trust. The Beneficiaries will be treated as grantors and deemed owners of the Liquidation Trust.

        (b)    All parties, including the Debtors, the Liquidation Trustee, and all Beneficiaries of the Liquidation Trust, must value all assets transferred to the Liquidation Trust consistently, and those valuations must be used for all federal, state, and local income tax purposes.  The Liquidation Trustee must file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The assets shall be valued based upon the Liquidation Trustee's good faith determination of their fair market value.

        (c)    Notwithstanding anything set forth herein to the contrary, the Liquidation Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Liquidation Trust Assets during liquidation.  All income of the Liquidation Trust must be subject to tax on a current basis, including income retained in the Disputed Claims Reserve.  The taxable income of the Liquidation Trust will be allocated to and among Beneficiaries who are grantors of the Liquidation Trust as required by virtue of their being grantors and deemed owners of the

21

Liquidation Trust, and they shall each be responsible to report and pay taxes due on their appropriate share of Liquidation Trust income.

(d) The Liquidation Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994.28 I.R.B. 124, and in the event of any inconsistency between any term or provision herein, in the Plan, or in the Confirmation Order necessary for the Liquidation Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994.28 I.R.B. 124, and any other term or provision herein, in the Plan, or in the Confirmation Order, the term(s) and provision(s) necessary for the Liquidation Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994.28 I.R.B. 124, shall govern. Similarly, notwithstanding anything to the contrary set forth herein, in the Plan, or in the Confirmation Order, to the extent any term or provision herein, in the Plan, or in the Confirmation Order would result in the Liquidation Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994.28 I.R.B. 124, such term or provision shall be ineffective and reformed to the extent necessary for the Liquidation Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994.28 I.R.B. 124.

**8.2 Tax Returns.** The Liquidation Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns, and other filings as may be required by the Internal Revenue Code and may be required by applicable law of other jurisdictions. The Liquidation Trustee shall be responsible for filing all required federal, state, and local tax returns and information returns of the Liquidation Trust. The Liquidation Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

## ARTICLE 9

## TERMINATION OF TRUST

**9.1 Term**. The Liquidation Trust will terminate on the earlier of the: (a) final liquidation, administration, and Distribution of the Liquidation Trust Assets in accordance with the terms of the Plan and this Liquidation Trust Agreement, and the full performance of all other duties and functions as set forth in the Plan or this Liquidation Trust Agreement; and (b) the fifth anniversary of the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions of the Liquidation Trust can be obtained so long as Court approval is obtained within six months before or after the expiration of the term of the Liquidation Trust and each extended term, in the discretion of the Liquidation Trustee. Notwithstanding termination of the Liquidation Trust, the Liquidation Trustee shall have the power to: (a) take all actions necessary to fulfill performance of all its duties and functions as set forth in the Plan or the Liquidation Trust Agreement, including, without limitation, the authority, power, and responsibility to investigate, prosecute, litigate, settle, abandon, or compromise any Liquidation Trust Claims or Litigation Claims without further notice to or action, order, or approval by the Court; and (b) seek to obtain a *nunc pro tunc* extension of the term of the Liquidation Trust. After (a) the final Distributions pursuant

to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Court, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

**9.2    Books and Records**. As soon as practicable after the Liquidation Trust exhausts the assets of the Debtors' Estates by making the final Distribution under the Plan and this Liquidation Trust Agreement and has complied with and fulfilled its obligations under the Plan, the Liquidation Trustee shall be free, in its discretion, to abandon, destroy, or otherwise dispose of any books and records that have been delivered to or created by the Liquidation Trust in compliance with applicable non-bankruptcy law without the need for any other or further Court order.

**9.3    Disposition of Remaining Assets.** Upon the termination of the Liquidation Trust, the Liquidation Trustee shall be authorized to (a) abandon in any commercially reasonable manner any assets that the Liquidation Trustee concludes are of insubstantial or no benefit to the Liquidation Trust, and (b) make a charitable donation to a charitable organization of the Liquidation Trustee's choice of any undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making a Distribution of the remaining funds would be excessive in relation to the benefits to the Holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is made to an entity that is not related to the Liquidating Trustee.

**9.4    Final Decree**. At such time as the Liquidation Trust has been fully administered, the Liquidation Trustee will file an application for entry of a final decree by the Court closing the Chapter 11 Cases, discharging the Liquidation Trustee and relieving it of any further duties.

**9.5    No Implied Waiver or Relinquishment**.  Pending the entry of a final decree closing the Chapter 11 Cases, no asset of the Liquidation Trust shall be deemed abandoned or otherwise relinquished without the express authority, consent or authorization of the Liquidation Trustee.

## ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1    Liquidation Trust Expense Reserve.**  All costs, fees, and expenses incurred by the Liquidation Trust including, without limitation, for payment of Statutory Fees, compensation of the Liquidation Trustee, compensation of the members of the Trust Oversight Committee, payment of the reasonable expenses of members of the Trust Oversight Committee, and payment of the reasonable fees and expenses of professionals or other persons retained by the Liquidation Trustee in connection with carrying out the duties and responsibilities set forth in this Liquidation Trust Agreement and the Plan, shall be paid from a reserve set aside from the Liquidation Trust Assets (including any proceeds thereof) (the "Liquidation Trust Expense Reserve"). The Liquidation Trust Expense Reserve shall not be subject to charge for claims against the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, including,

without limitation, any claims that are subject to <u>Section 4.1</u> of this Liquidation Trust Agreement.

## ARTICLE 11

## THE TRUST OVERSIGHT COMMITTEE

**11.1    Trust Oversight Committee Members.**  The Trust Oversight Committee shall be comprised of three members, consisting of one member designated by the UCC, one member designated by the Bondholder Representatives, and one member designated by the Pension Committee. Any member designated by the Bondholder Representatives shall be deemed to withdraw as a member of the Trust Oversight Committee upon the Master Trustee's receipt of $62.8 million on account of the Bondholder Claim. The identities of the Persons and/or Entities that will serve on the Trust Oversight Committee as of the Effective Date are listed on <u>Schedule 1</u> hereto along with the identities of the individual representatives through whom such members intend to act.[3]  The Trust Oversight Committee may by majority vote appoint and remove *ex officio* members to the Trust Oversight Committee who are acceptable to the Liquidation Trustee. Any such *ex officio* members so appointed shall be permitted to participate in meetings and communications of the Trust Oversight Committee but shall not have any voting rights and shall not receive compensation.  The first *ex officio* member of the Trust Oversight Committee shall be Altera Digital Health, Inc. through its designated representatives.

In the event that any member of the Trust Oversight Committee resigns from the Trust Oversight Committee or is no longer able to serve on the Trust Oversight Committee due to death, incapacity, removal by the Court (which may only occur upon motion by the Liquidation Trustee based on such member's gross negligence, willful misconduct or fraud), or otherwise, such member shall be replaced on the Trust Oversight Committee by (a) the Bondholder Representatives (if replacing the member designated by the Bondholder Representatives), or (b) by the Liquidation Trustee and the remaining members if replacing the member designated by the Pension Committee or by the UCC, as applicable. In the event that no replacement member is designated within thirty (30) days after a vacancy on the Trust Oversight Committee occurs, the remaining members of the Trust Oversight Committee may designate a replacement member that is acceptable to the Liquidation Trustee to fill the vacancy. If no such designation occurs, or if the Liquidation Trustee and the remaining members are unable to reach an agreement in the event of a replacement under subclause (b) of this paragraph, the Liquidation Trustee may apply to the Court to appoint a new member of the Trust Oversight Committee to fill the vacancy.

**11.2    Powers and Duties of the Trust Oversight Committee.** The Trust Oversight Committee shall, as and when requested by the Liquidation Trustee, or when the members of the Trust Oversight Committee otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Liquidation Trust Agreement, consult in good faith with

---

[3]    For the avoidance of doubt, unless expressly stated otherwise in this Liquidation Trust Agreement, references to members of the Trust Oversight Committee in this Liquidation Trust Agreement do not refer to or include the individual representatives through whom such members act.  Each member of the Trust Oversight Committee may identify, remove, or replace the representative(s) through which it acts at any time upon written notice to the Liquidation Trustee.

and advise the Liquidation Trustee as to the administration and management of the Liquidation Trust in accordance with (i) the Plan, the Confirmation Order, and this Liquidation Trust Agreement, and (ii) the Liquidation Trustee's and the Trust Oversight Committee's fiduciary duties, and shall have the other responsibilities and powers as set forth herein. The Trust Oversight Committee shall have the authority and responsibility to consult in good faith with the Liquidation Trustee with respect to the activities of the Liquidation Trust and the performance of the Liquidation Trustee and shall have the authority to remove the Liquidation Trustee only in accordance with Section 2.4 hereof; provided, however, that the Trust Oversight Committee may not (i) advise the Liquidation Trustee or the members of the Trust Oversight Committee to act inconsistently with their duties under the Plan, the Confirmation Order, this Liquidation Trust Agreement, or their fiduciary obligations to the Beneficiaries; (ii) be authorized to engage in any trade or business; (iii) take any action inconsistent with the orderly liquidation of the assets of the Liquidation Trust as is required or contemplated by applicable law, the Confirmation Order, this Liquidation Trust Agreement, or the Plan; or (iv) be authorized to engage in any investments or activities inconsistent with the treatment of the Liquidation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684. The powers and duties of the Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and Distribution of the proceeds thereof.

**11.3    Trust Oversight Committee Member Compensation and Expenses.**  The members of the Trust Oversight Committee shall (i) receive compensation of $750 per hour, not to exceed $5,000 in any three-month period and (ii)  be reimbursed for all reasonable expenses (as determined by the Liquidation Trustee) incurred in the performance of their duties under the Plan and this Liquidation Trust Agreement.

**11.4    Confidentiality.** Each member of the Trust Oversight Committee and any *ex officio* members of the Trust Oversight Committee shall hold strictly confidential and not use for personal gain any material, non-public information that he or she becomes aware of in his or her capacity as a member of the Trust Oversight Committee.

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1    Amendments.** The Liquidation Trustee may apply to the Court to approve a modification, supplement, or amendment of this Liquidation Trust Agreement. No modification, supplement, or amendment of this Liquidation Trust Agreement shall be effective except upon a Final Order of the Court.

**12.2    Waiver.**  No failure by the Liquidation Trustee, any member of the Trust Oversight Committee, or any Beneficiary to exercise any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**12.3    Cumulative Rights and Remedies.**  The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.4    Irrevocability.** The Liquidation Trust is irrevocable.

**12.5    Division of Trust.** Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Court.

**12.6    Governing Law.** This Liquidation Trust Agreement shall be governed and construed in accordance with the laws of the State of Iowa, without giving effect to the principles of conflicts of law thereof.

**12.7    Retention of Jurisdiction.**  To the fullest extent permitted by law, the Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, or this Liquidation Trust Agreement, or any Person or Entity's obligations incurred in connection therewith or herewith, including, without limitation, any action against the Liquidation Trustee or any professional retained by the Liquidation Trustee or the Liquidation Trust, in each case in its capacity as such.  Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Court in any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement, or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Court.  Each party to this Liquidation Trust Agreement further irrevocably agrees that (a) any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement will be brought only in the Court and (b) all determinations, decisions, rulings, and holdings of the Court shall be final and non-appealable and not subject to reargument or reconsideration.  Each party to this Liquidation Trust Agreement hereby irrevocably consents to the service as set forth in <u>Section 12.10</u> of this Liquidation Trust Agreement or such other address as such party may designate from time to time by notice given in the manner provided in accordance therewith, of any process in any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement.

**12.8    Severability.**  In the event that any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Court to be invalid or unenforceable to any extent, the remainder of this Liquidation Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.9    Limitation of Benefits.**  Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

**12.10   Notices.**  All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person, by facsimile with an electromechanical report of delivery, sent by overnight courier or by registered or certified mail with postage prepaid, return receipt requested, or sent via electronic mail to the following addresses (as applicable to the particular notice, request, demand, consent, or other communication at issue).

| | |
|---|---|
| If to the Debtors: | McDermott Will & Emery LLP |
| | Attn:   Felicia Gerber Perlman |
| | Daniel M. Simon |
| | Emily C. Keil |
| | 444 West Lake Street, Suite 4000 |
| | Chicago, Illinois 60606 |
| | Email: fperlman@mwe.com |
| | dsimon@mwe.com |
| | ekeil@mwe.com |
| | |
| | - and - |
| | Nyemaster Goode, P.C. |
| | Attn: Roy Leaf |
| | 625 First Street SE, Suite 400 |
| | Cedar Rapids, IA 52401-2030 |
| | Email: rleaf@nyemaster.com |
| | |
| | - and - |
| | |
| | Kristina M. Stanger |
| | Matthew A. McGuire |
| | Dana Hempy |
| | 700 Walnut, Suite 1600 |
| | Des Moines, IA 50309 |
| | Email: mmcguire@nyemaster.com |
| | kmstanger@nyemaster.com |
| | dhempy@nyemaster.com |
| | |
| If to the Liquidation Trustee: | Getzler Henrich & Associates, LLC |
| | Attn: William H. Henrich |
| | 295 Madison Avenue, 20th Floor |
| | New York, NY  10017 |
| | Email: whenrich@getzlerhenrich.com |
| | |
| If to the UCC: | Sills Cummis & Gross P.C. |
| | Attn:   Andrew H. Sherman |
| | Boris I. Mankovetskiy |
| | One Riverfront Plaza |

Newark, NJ 07102
Email: asherman@sillscummis.com
        bmankovetskiy@sillscummis.com

- and -

Cutler Law Firm, P.C.
Attn: Robert C. Gainer
1307 50th Street
West Des Moines, Iowa 50266
E-mail: rgainer@cutlerfirm.com

If to the Bondholder
Representatives:

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Attn:  William W. Kannel
One Financial Center
Boston, MA 02111
Email: WKannel@mintz.com

- and –

Nathan F. Coco
Megan Preusker
Kaitlin R. Walsh
919 Third Avenue
New York, NY 10022
Email: NFCoco@mintz.com
        MPreusker@mintz.com
        KRWalsh@mintz.com

- and –

Whitfield & Eddy, P.L.C.
Attn: Peter J. Chalik
699 Walnut St., Suite 2000
Des Moines, IA 50309
Email: Chalik@whitfieldlaw.com

        The parties may designate in writing from time to time other and additional places to which notices may be sent.  All demands, requests, consents, notices, and communications shall be deemed to have been given (a) at the time of actual delivery thereof if by facsimile or electronic mail; (b) if given by certified or registered mail, five (5) Business Days after being deposited in the United States mail, postage prepaid, and properly addressed; or (c) if given by overnight courier, the next Business Day after being sent, charges prepaid, and properly addressed.

28

**12.11   Further Assurances.**   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

**12.12   Integration.**   This Liquidation Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations of the parties except as set forth herein, in the Plan, or in the Confirmation Order.  This Liquidation Trust Agreement, together with the Plan and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to the subject matter hereof and any transaction contemplated hereunder.

**12.13   Successors or Assigns**.   The terms of this Liquidation Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.14   Interpretation.**   The enumeration and section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Liquidation Trust Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, corporations, limited liability partnerships, limited liability companies, and similar entities.  The words herein, hereby, and hereunder, and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**12.15   Relationship to the Plan.**   The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Liquidation Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.16   Counterparts.**   This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same document.  Delivery of any executed counterpart may be in "wet ink" form, via facsimile, or via electronic transmission attaching a copy in pdf format or the like.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, each party hereto has either executed this Liquidation Trust Agreement, or caused it to be executed on its behalf by its duly authorized officer, all as of the date first above written.

**DEBTORS:**

**Mercy Hospital, Iowa City, Iowa**

By: _____
       Mark E. Toney
       Chief Restructuring Officer

**Mercy Services Iowa City, Inc.**

By: _____
       Mark E. Toney
       Chief Restructuring Officer

**Mercy Iowa City ACO, LLC**

By: _____
       Mark E. Toney
       Chief Restructuring Officer

**LIQUIDATION TRUSTEE:**

_____
William H. Henrich, in his capacity
as Liquidation Trustee

**TRUST OVERSIGHT COMMITTEE MEMBER:**

_____
[ ], in [his/her] capacity
as a member of the Trust Oversight Committee

**TRUST OVERSIGHT COMMITTEE MEMBER:**

_____
[ ], in [his/her] capacity
as a member of the Trust Oversight Committee

**TRUST OVERSIGHT COMMITTEE MEMBER:**

_____
[__], in [his/her] capacity
as a member of the Trust Oversight Committee

**<u>Schedule 1</u>**

**Members of the
Trust Oversight Committee**

|  | **Member** | **Representative** |
|---|---|---|
| UCC Designee | Steindler | Patrick Magallanes |
| Bondholder Representatives Designee |  |  |
| Pension Committee Designee |  |  |

## Schedule 2

### Terms of Compensation of Liquidation Trustee

The Liquidation Trustee will be compensated on an hourly basis for reasonable services rendered, plus reimbursement of actual and reasonable out-of-pocket expenses incurred.  Mr. Henrich's current hourly rate is $795, subject to adjustment in accordance with Getzler Henrich & Associates, LLC's customary rate adjustments. The Liquidation Trustee shall keep a record of his services rendered and time billed.