IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 Bankruptcy |
| | ) | NO. 23-00623 C |
| MERCY HOSPITAL, IOWA CITY, | ) | |
| IOWA, ET AL., | ) | MOTION TO MODIFY STAY OF |
| | ) | HYUNDAI CAPITAL AMERICA |
| Debtor. | ) | (HCA) SERVICING AGENT OF |
| | ) | HYUNDAI LEASE TITLING TRUST |

Hyundai Capital America (HCA) servicing agent of Hyundai Lease Titling Trust,
for its Motion to Modify Stay, states:

1.      Pursuant to 11 U.S.C. § 362(d), Hyundai Capital America (HCA) servicing
agent of Hyundai Lease Titling Trust ("Hyundai") seeks relief from the automatic stay.

2.      Hyundai is a corporation authorized to do business in the state of Iowa.

3.      On August 7, 2023, debtor filed a Chapter 11 bankruptcy petition.

4.      Prior to filing its Chapter 11 petition, debtor entered two written Motor
Vehicle Lease Agreements that were assigned to Hyundai and pursuant to which Hyundai
owns vehicles in debtor's possession as listed below.  Copies of each vehicle's Lease
Agreement and Certificate of Title, with each vehicle's set marked Exhibits 1 and 2
respectively, are attached.

March 31, 2024 Lease Agreement:  2021 Kia Forte, VIN 3KPF24AD9ME288823

April 29, 2022 Lease Agreement: 2022 Kia Forte, VIN 3KPF24AD1NE475538

5.      As of April 28, 2024, Debtor had defaulted under the terms of the Lease
Agreements by failing to make payments as follows:

2021 Kia Forte, VIN 3KPF24AD9ME288823
Arrearage $1,542.61 (due for October 1, 2023 - April 1, 2024)

2022 Kia Forte, VIN 3KPF24AD1NE475538
Arrearage $3,491.39 (due for September 1, 2023 - April 1, 2024)

6.       The May 1, 2024 lease payments have since come due, and Debtor has not paid those either.

7.       Debtor, as a lessee, has no equity in the vehicles

8.       Hyundai has no adequate protection for its interest in the vehicles.

9.       Hyundai is uncertain whether debtor has maintained insurance on said vehicles and is concerned the vehicles are being operated while uninsured.

10.      If Hyundai is not permitted to foreclose its security interest and reacquire said vehicles, it will suffer irreparable injury, loss, and damage.

11.      If Hyundai is not permitted to reacquire said vehicles, it will suffer irreparable injury, loss, and damage.

For the reasons set forth above, Hyundai Capital America (HCA) servicing agent of Hyundai Lease Titling Trust requests that the stay in these proceedings be modified to permit it to recover the above described vehicles and for such other and further relief as the court deems appropriate. Hyundai Capital America (HCA) servicing agent of Hyundai Lease Titling Trust further requests the right to file an amended proof of claim after liquidation of the vehicles and that the claim be allowed as an unsecured deficiency claim to be paid in conjunction with other creditors similarly classified/situated. Hyundai Capital America (HCA) servicing agent of Hyundai Lease Titling Trust further requests that this court order Rule of Bankruptcy Procedure 4001(a)(3) not be applicable and that Hyundai Capital America (HCA) servicing agent of Hyundai Lease Titling Trust may immediately enforce and implement the Order granting relief from the automatic stay.

NOTICE

Any party opposing this motion must timely file and serve an answer at least 7

days prior to the date set for the preliminary hearing on the motion.

PICKENS, BARNES & ABERNATHY

By ___/s/ Stephanie L. Hinz_____

Stephanie L. Hinz AT0003506
1800 First Avenue NE, Suite 200
P.O. Box 74170
Cedar Rapids, IA 52407-4170
PH: (319) 366-7621
FAX: (319) 366-3158
EMAIL: shinz@pbalawfirm.com

ATTORNEYS FOR HYUNDAI LEASE
TITLING TRUST

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of this document was served on May 6, 2024 upon the below
named parties by electronic noticing from the Bankruptcy Court or by U.S. mail. ___/s/ Lynette Stickney_____

Mercy Hospital, Iowa City, Iowa, et al.,
500 E. Market Street
Iowa City, IA 52245

Roy Leaf
Nyemaster Goode, P.C.
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030

Felicia Gerber Perlman & Daniel M. Simon
McDermott Will & Emery, LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606

Jack G. Haake
McDermott Will & Emery, LLP
2501 North Harwood Street, Suite 1900
Dallas, TX 75201

United States Trustee
Office of the United States Trustee
111 Seventh Avenue SE, Suite 280
Cedar Rapids, IA 52401

 **Finance**

**Motor Vehicle Lease Agreement**

DEAL # 29546
CUST # 481159
Call us toll-free at (866) 331-5632

Lease Date: __03/31/2021__

## 1. PARTIES AND VEHICLE DESCRIPTIONS

**LESSEE:** MERCY HOSPITAL, IOWA CITY, IOWA

Lessee: MERCY HOSPITAL, IOWA CITY, IOWA
Billing Address: **500 E MARKET ST**
*Address*

| IOWA CITY | IA | JOHNSON | 52245-2633 |
|---|---|---|---|
| City | State | County | Zip |

**LESSOR (Dealer):** BILLION KIA OF IOWA CITY

Dealer: BILLION KIA OF IOWA CITY
Address: **2845 MORMON TREK BLVD**
*Street Address*

| IOWA CITY | IA | | 52240 |
|---|---|---|---|
| City | State | County | Zip |

**CO-LESSEE:**

Co-Lessee: N/A
Billing Address: ☐ Check box if same as Lessee
N/A
*Address*
N/A

| | | | |
|---|---|---|---|
| City | State | County | Zip |

**GARAGING ADDRESS:**

☐ Check box if same as Lessee's Billing Address
☐ Check box if same as Co-Lessee's Billing Address
N/A
*(Street Address - No P.O. Boxes)*

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| City | State | County | Zip |

**LEASED VEHICLE**

☒ New  ☐ Used

| 2021 | KIA | FORTE |
|---|---|---|
| Year | Make | Model |

| 255 | | 3KPF24AD9ME288823 |
|---|---|---|
| Odometer | | VIN: |

☒ If checked, the Vehicle's primary intended use is for a Business, Commercial or Agricultural purpose.

**DESCRIPTION OF TRADE-IN VEHICLE**

| N/A | N/A | N/A |
|---|---|---|
| Year | Make | Model |

Gross Agreed Upon Trade-in Allowance ........................$ **N/A**
Outstanding Prior Credit or Lease Balance
  (To Be Paid by Dealer/Lessor) ...................................$ **N/A**
Net Trade-in Allowance (if less than 0, then enter 0)........$ **0.00**

Lessee and Co-Lessee ("you," "your" and together the "Lessee") each agree to lease the Leased Vehicle described above, including all equipment, parts and accessories (the "Vehicle") from Lessor ("we," "us" and "our") according to the terms and conditions of this Motor Vehicle Lease Agreement ("Lease"). Each of you who executes this Lease will be individually liable to us for all Lease obligations and for the entire amount owing under this Lease. After you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms "Assignee," "we," "us" and "our" will refer to HLTT and its agents or to any subsequent assignee.

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

**2. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (Itemized below)*

$ **2165.34**

**3. MONTHLY PAYMENTS**

A. Your first Monthly Payment of $ **265.34** is due on __03/31/2021__ followed by __35__ payments of $ **265.34** due on the __30th__ of each month, beginning on __04/30/21__

B. The Total of your Monthly Payments is $ **9552.24**

**4. OTHER CHARGES** (Not part of your Monthly Payment)

A. Turn-in Fee (if you do not purchase the Vehicle).....$ **400.00**

B. **N/A** **N/A**

C. Total ................................$ **400.00**

**5. TOTAL OF PAYMENTS** (The amount you will have paid by the end of the Lease)

$ **11852.24**

## 6. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| (1) | Capitalized Cost Reduction.......................................$ | **1900.00** |
| (2) | Sales/Use Tax on Capitalized Cost Reduction ..........$ | **N/A** |
| (3) | First Monthly Payment ............................................$ | **265.34** |
| (4) | Refundable Security Deposit ...................................$ | **N/A** |
| (5) | Acquisition Fee .......................................................$ | **N/A** |
| (6) | Initial License, Title and Registration Fees .............$ | **N/A** |
| (7) | Sales/Use Tax ........................................................$ | **N/A** |
| (8) | N/A .........................................................................$ | **N/A** |
| (9) | N/A .........................................................................$ | **N/A** |
| (10) | N/A .........................................................................$ | **N/A** |
| (11) | **TOTAL** ..................................................................$ | **2165.34** |

**B. How the Amount Due at Lease Signing or Delivery will Be Paid:**

| | | |
|---|---|---|
| (1) | Net Trade-in Allowance ...........................................$ | **N/A** |
| (2) | Rebates and Noncash Credits ................................$ | **1900.00** |
| (3) | Amount to Be Paid in Cash .....................................$ | **265.34** |
| (4) | N/A .........................................................................$ | **N/A** |
| (5) | **TOTAL** ..................................................................$ | **2165.34** |

EXHIBIT 1

83675*1*ICKIA-Ff
04/21/2021  06:42 pm

## 7. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ **20355.00** ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ............................ $ **21861.51**

B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, Rebate, Noncash Credit, or Cash you pay that reduces the Gross Capitalized Cost .................................... − $ **1900.00**

C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment ............................. = $ **19961.51**

D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment. .... − $ **11602.35**

E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ............................ = $ **8359.16**

F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts ....................... + $ **1193.08**

G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge ............... = $ **9552.24**

H. **Lease Payments.** The number of payments in your Lease .......................... + **36**

I. **Base Monthly Payment** ............................ = $ **265.34**

J. **Monthly Sales/Use Tax** ............................ + $ **N/A**

K. **Other (specify): N/A** ............................ + $ **N/A**

L. **Total Monthly Payment** ............................ = $ **265.34**

**EARLY TERMINATION. You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.**

## 8. EXCESS WEAR AND USE

You may be charged for excess wear based on our standards for normal use and for mileage in excess of **12000** miles per year (prorated based on the number of months in the Lease Term) at the rate of **20** ¢ per mile. No rebate or credit will be paid to you if the mileage is less than the specified amount.

☐ If this box is checked, you have purchased an additional **N/A** miles per year (prorated based on the number of months in the Lease Term), at 15¢ per mile, which is included in your Monthly Payment. No rebate or credit will be paid to you if the end of term mileage is less than the specified amount.

## 9. PURCHASE OPTION AT END OF LEASE TERM

You have an option to purchase the Vehicle from us at the scheduled end of the Lease Term, **AS IS, WHERE IS**, from us or a party we designate, (See Section 23), for the Residual Value on line 7D above ("Purchase Price") plus a **Purchase Option Fee of $ 300.00** . You are also responsible for any official fees, such as those for taxes, tags, license and registration. *Please see Section 23 of this Lease for additional terms and conditions.*

## 10. OTHER IMPORTANT TERMS

See the entirety of this Lease (8 pages total) for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**Notice:** If you do not meet your Lease obligations, you may lose the Vehicle.
**AK, OR and SD Notice:** If this Lease is for a consumer purpose, then this Lease is **CONSUMER PAPER.**

## 11. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle .................... $ **20355.00**
B. Sales/Use Tax .................... $ **442.51**
C. License, Title and Registration Fees .................... $ **234.00**
D. Outstanding Prior Credit or Lease Balance .................... $ **N/A**
E. Dealer Documentation/Service Fee** .................... $ **180.00**
F. **N/A** .................... $ **N/A**
G. **N/A** .................... $ **N/A**
H. **N/A** .................... $ **N/A**
I. **N/A** .................... $ **N/A**
J. **N/A** .................... $ **N/A**
K. Acquisition Fee .................... $ **650.00**
L. Total = Gross Capitalized Cost .................... $ **21861.51**

## 12. TERM AND SCHEDULED MATURITY DATE

The Lease Term is **36** months ("Lease Term").
The Scheduled Maturity Date: **03/30/2024** .

*[This area intentionally left blank.]*

**\*\* NOTICE TO MISSISSIPPI LESSEES: A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMING OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

## 13. OPTIONAL INSURANCE AND OTHER PRODUCTS

You do not have to purchase any optional protection products or services listed below to enter into this Lease, and they are not a factor in our credit decision to lease the Vehicle to you. If you have initialed below, it means you want the described product/service and have reviewed the separate contract for the product/service(s) which describes its terms and conditions. Coverage under any of the product(s)/service(s) you have purchased itemized below may be subject to approval by the provider of such product(s)/service(s). If the price of any products and/or services (whether defined below or otherwise) you purchased at the time of entering into this Lease is not set forth in the Itemization of Gross Capitalized Cost section on Page 2, you will pay for them upon Lease signing or delivery. We may receive a portion of the price of any optional products or services you buy.

☐ Other: **N/A** — Premium/Price: $ **N/A**          ☐ Other: **N/A** — Premium/Price: $ **N/A**
   Product Description                                     Product Description

| **N/A** | **N/A** | **N/A** / **N/A** | **N/A** | **N/A** | **N/A** / **N/A** |
|---|---|---|---|---|---|
| Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials | Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials |

☐ Other: **N/A** — Premium/Price: $ **N/A**          ☐ Other: **N/A** — Premium/Price: $ **N/A**
   Product Description                                     Product Description

| **N/A** | **N/A** | **N/A** / **N/A** | **N/A** | **N/A** | **N/A** / **N/A** |
|---|---|---|---|---|---|
| Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials | Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials |

☐ Other: **N/A** — Premium/Price: $ **N/A**          ☐ Other: **N/A** — Premium/Price: $ **N/A**
   Product Description                                     Product Description

| **N/A** | **N/A** | **N/A** / **N/A** | **N/A** | **N/A** | **N/A** / **N/A** |
|---|---|---|---|---|---|
| Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials | Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials |

☐ Other: **N/A** — Premium/Price: $ **N/A**          ☐ Other: **N/A** — Premium/Price: $ **N/A**
   Product Description                                     Product Description

| **N/A** | **N/A** | **N/A** / **N/A** | **N/A** | **N/A** | **N/A** / **N/A** |
|---|---|---|---|---|---|
| Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials | Provider | Term (in Months or Years) | Lessee / Co-Lessee Initials |

## 14. ESTIMATED OFFICIAL FEES AND TAXES

The total estimated amount you will pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term, whether included with your Monthly Payment or assessed otherwise, is $ **442.51** The actual total of fees and taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

## 15. WARRANTIES

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below.
☐ Used vehicle limited warranty provided by the manufacturer.
☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.
**LESSOR LEASES THE VEHICLE TO YOU "AS IS." EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), WE MAKE NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER.** If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

## 16. INSURANCE VERIFICATION

You must maintain the insurance coverage described in Section 20A of this Lease. You affirm that the following insurance coverage is in force as of the Lease Date:

Insurance Provider: **COMMERCIAL AUTO I**          Agent's Name: **AGENT**
Policy Number: ███████          Agent's Address: **97 COMMERCIAL DR IOWA CITY IA 52240**
Effective Date: **03/27/2021**          Agent's Phone Number: _____
Expiration Date: **10/01/2021**          Initials of Dealer Employee who verified insurance coverage X _____
You must instruct your insurance agent to add as an additional loss payee, and send the Insurance Policy, Endorsement or Certificate to:

**Hyundai Lease Titling Trust**
**PO Box 20809**
**Fountain Valley, CA 92728-0809**

**NOTICE TO MICHIGAN LESSEES:** The Adjusted Lease Balance upon early termination (see Section 22) may be different than the actual cash value of the Vehicle as determined by your automobile insurer. Unless we agree to waive your liability upon a Total Loss of the Vehicle (see Section 25B), then you will be responsible for the difference between the Adjusted Lease Balance and the Vehicle's actual cash value as determined by the insurer.

Lessee's Initials **N/A** / Co-Lessee's Initials **N/A**

83675*1*ICKIA-FI          04/21/2021   06:46 pm

## 17. LEASE MODIFICATIONS

Any change to this Lease must be in a writing, signed by us and you, except that (a) we may agree to requests for extensions, deferrals and due date changes (if offered by us) by phone and confirmed by us in writing, unless the law requires a signed written agreement, and (b) we may, in our sole discretion, modify any term(s) of this Lease without your signature upon written notice to you of the modified term(s), if the modified term(s) are at least as favorable to you as the existing terms of this Lease. Your failure to object within 10 days after we send you a modification notice shall be deemed your consent to the modified term(s). No other oral changes are binding.

Lessee Signature X **MERCY HOSPITAL, Iowa City, IOWA By:**            Co-Lessee Signature X ___**N/A**___

## 18. NOTICES AND SIGNATURES

BY SIGNING BELOW, YOU AGREE THAT KIA MOTORS FINANCE MAY OBTAIN ONE OR MORE CREDIT REPORTS OR OTHER CONSUMER REPORTS ABOUT YOU FOR USE IN CONNECTION WITH ATTEMPTING TO COLLECT AMOUNTS OWED UNDER THIS LEASE, ENFORCING THIS LEASE OR SELECTING YOU TO RECEIVE MARKETING SOLICITATIONS FOR FUTURE RETAIL FINANCING OR LEASE PROGRAMS.

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE.**

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE; AND (4) THIS IS A LEASE AND YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE SET FORTH IN THIS LEASE.

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

Lessee Signature: X ___**N/A**___            Co-Lessee Signature: X ___**N/A**___
        Name: ___**N/A**___                        Name: ___**N/A**___

**B. BUSINESS LESSEE SIGNATURE**

Printed Legal Business Name: **MERCY HOSPITAL, Iowa City, IOWA By:** ___ by (Authorized Signature): X _____
                                                        *Dawna R. Miller, CFO*
Name (Printed Name of Authorized Signer): **MERCY HOSPITAL, IOWA CITY, IOWA** Title (Title of Authorized Signer): ___**CFO**___

**C. LESSOR SIGNATURE AND ASSIGNMENT.** The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (3) assigning to **Hyundai Lease Titling Trust**, P.O. Box 20829, Fountain Valley, CA 92728-0829 or its successors and assigns all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Dealer Lease Sale Agreement between Hyundai Capital America and the Lessor.

Authorized Signature: X _____

Name (Not Dealership Name): ___**LUCAS LEGRAND**___            Title: ___**FI MANAGER**___

**AutoPay Authorization**
I authorize Hyundai Capital America dba Kia Motors Finance ("KMF") to initiate monthly Automated Clearing House (ACH) debit entries (and, if necessary, other debit or credit entries to correct errors) to the deposit account listed below (the "Account") on the payment due date specified in my motor vehicle lease (the "Lease"), each in the amount of the monthly payment specified in the Lease plus any applicable sales, use, rental or other taxes and any other charges due under the Lease and reflected on the most recent monthly statement. I agree that I will remain responsible for arranging payments due under the Lease until KMF confirms that it has initiated AutoPay, which may take up to two billing cycles. This authorization shall remain in effect, and KMF will continue to charge my Account, until I revoke my authorization by calling KMF's Customer Service Department at (866) 331-5632 at least 3 business days prior to the next scheduled payment due date to avoid further charges. I understand that when I revoke this authorization I will be responsible for scheduling and making all subsequent payments to KMF when due under the Lease. In addition, if funds are not available when KMF attempts to charge my Account, I will be responsible for arranging alternative payment to KMF and agree to pay KMF any late charges due under the Lease as well as any returned check, processing or insufficient funds fees as set forth in the Lease. Except to the extent imposed by applicable law, KMF shall have no liability to me with respect to a debit against the Account which is drawn in an incorrect amount or drawn after I have revoked authorization for AutoPay, other than the responsibility to correct any error. I represent to KMF that I am the holder of the Account or am authorized to make payments from the Account. I acknowledge that I received a copy of this authorization for my records.

| **N/A** | **N/A** | | **N/A** | |
|---|---|---|---|---|
| Bank Name | Name of Account Holder 1 | Date | Name of Account Holder 2 | Date |
| **N/A** | | | | |
| Bank Account Number | | | | |
| **N/A** | **N/A** | | **N/A** | |
| Bank Routing Number (9 digits) | Signature of Account Holder 1 | | Signature of Account Holder 2 | |
| **N/A** | **N/A** | | ☐ Attached is a copy of a cancelled check | |
| Account Type (Checking, Savings or Money Market) | Account Holder Email Address | | | |

**By signing this Lease, you agree that you have read all 8 pages of this entire Lease. See additional pages for additional lease terms.**

83675*1*ICKIA-FI                                        04/21/2021  06:46 pm

## 19. LATE CHARGES, FEES AND SECURITY DEPOSIT

**A. RETURNED INSTRUMENT CHARGE.** You will pay us a returned instrument charge of $15 for any check, instrument or electronic payment that is returned unpaid for any reason, except as limited by applicable law.

**B. LATE CHARGE.** To the extent permitted by applicable law, you will pay us a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due, except in Colorado, Kansas, Louisiana and Maine. Colorado: If this Lease is entered into in Colorado, we have the right to assess a late charge of the lesser of $15 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Kansas and Louisiana: If this Lease is entered into in Kansas or Louisiana, we have the right to assess a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Maine: If this Lease is entered into in Maine, we have the right to assess a late charge of the lesser of $10 or 5% of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due.

**C. ADMINISTRATIVE FEE.** If you do not pay any government-imposed fine, registration or other fee, storage, towing, penalty, toll, parking ticket or tax related to the Vehicle and we pay it on your behalf, you will reimburse us for the amount paid plus we may charge you and add to the amount you owe under this Lease a $20 administrative fee per incident, except as limited by applicable law.

**D. FEES FOR ADDITIONAL SERVICES.** Unless prohibited by applicable law, we may charge you and add to the amount you owe under this Lease a fee for any additional services you request from us relating to this Lease that are outside the ordinary servicing of this Lease. The fee will be in an amount agreed to by phone or in writing at the time you request the service, as may be limited by applicable law. For example, a convenience or other fee will apply to any expedited payment service, such as payments made by telephone, the Internet, text messaging, or by credit or debit card; we may receive all or a portion of the fee collected by a money transfer agent or other party we have contracted with to process the payment, except where prohibited by applicable law.

**E. SECURITY DEPOSIT.** We may apply some or all of the security deposit to any amounts you owe under this Lease. If you purchase the Vehicle, we may credit the security deposit towards the Purchase Price. After this Lease is terminated, we will return any unused security deposit to the Lessee whose name appears first under Section 1 of this Lease, as required by law. We do not keep the security deposit in a separate bank or set aside on our books, unless required by law. You are not entitled to any interest, increase, or profit on the security deposit.

## 20. VEHICLE INSURANCE

**A. INSURANCE REQUIREMENTS.** You must maintain primary insurance coverage in your name in the amount and types indicated below, at your expense, during the Lease Term and until the Vehicle is returned to us:

(1) Requirements of minimum insurance coverage is based on the state where the Vehicle is primarily garaged:

   a. If the Vehicle is primarily garaged in CT, KY, NJ, or RI, the minimum insurance coverage requirements are: liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage, or $300,000 combined single limit;

   b. If the Vehicle is primarily garaged in any other state (excluding CT, KY, NJ, or RI), the minimum insurance coverage requirements are: liability insurance with limits not less than the garaging state required minimum per person for bodily injury, garaging state required minimum per accident for bodily injury and state required minimum per accident for property damage, or state required minimums combined single limit. Provided, however, that if the garaging state does not require any of the above minimum coverage, the requirements of paragraph 20A1a will apply.

(2) All States require collision insurance with a deductible no higher than $1,000;

(3) All States require comprehensive fire and theft insurance with a deductible no higher than $1,000; and

(4) All States require uninsured motorist coverage as required by law in the state where the Vehicle is registered.

You may obtain the insurance from any licensed insurer reasonably acceptable to us. Assignee must be shown as additional insured and loss payee. The policy must require the insurance company to notify us at least 10 days before any non-renewal, cancellation, reduction or other material coverage change. You must provide us with a copy of your insurance policy within 30 days after the Lease Date and thereafter upon request. **Failure to maintain the required insurance is a Default under this Lease.**

**B. LESSOR'S PURCHASE OF INSURANCE.** If you fail to maintain the required insurance, we may, at our option, purchase the insurance. We may add the amount we pay for this insurance to the amounts you owe under this Lease or require that you pay it immediately. If we buy this insurance, it may cover your interest and our interest, or it may cover only our interest, unless the law requires us to buy insurance that also protects your interests.

**C. NOTIFICATION OF LOSS; SETTLEMENT OF CLAIMS.** You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the Vehicle. We are entitled to all insurance proceeds for physical damage to or loss of the Vehicle, even if the amount of the proceeds exceeds the Adjusted Lease Balance or other amounts you owe under this Lease. You authorize us, on your behalf, to receive and endorse your name on checks, drafts or other instruments received from your insurance company, and settle or release any claim under the insurance related to our ownership of the Vehicle. You also assign to us any other insurance proceeds related to this Lease or our interest in the Vehicle.

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

## 21. VEHICLE CONDITION, MAINTENANCE, USE AND TAXES

**A. VEHICLE CONDITION.** You have inspected the Vehicle and agree that at Lease signing: (i) the Vehicle is in good condition in both operation and appearance, and (ii) is equipped with all requested features and options.

**B. VEHICLE MAINTENANCE AND OPERATING COSTS.** You are responsible for maintaining, servicing and repairing the Vehicle, at your cost, according to the owner's manual maintenance schedule and to ensure that the warranty, if any, remains valid. You will use original equipment manufacturer's parts or those of equal value in the maintenance and service of the Vehicle. You agree to comply with all manufacturer recall notices. We are not obligated to provide you with a replacement vehicle for any reason. You must maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. You must make the maintenance record available to us at any time and provide it to us at the end of the Lease. You agree to pay all operating costs, including, but not limited to, gasoline, oil, antifreeze, parking fees, towing and replacement tires. You are liable for the payment of all tolls and any fines for toll evasion.

**C. VEHICLE INSPECTION AND USE.** We may inspect the Vehicle at any reasonable time and place. You will not allow any liens or claims to be placed or made against the Vehicle. **You are responsible for the risk of loss, damage, or destruction of the Vehicle during the Lease Term and until you return the Vehicle to us.** You will not: (1) use the Vehicle for any unlawful or improper purpose or to commit any illegal act; (2) change or install equipment without our prior written consent or that renders the Vehicle unsafe or unlawful to operate, but if you add equipment to the Vehicle, it will become our property and you will pay us the cost of removing it at the end of this Lease; (3) use the Vehicle in any way prohibited by any applicable insurance policy or manufacturer's warranty or in a manner that causes abnormal depreciation; (4) allow unlicensed drivers to drive the Vehicle; (5) remove the Vehicle for more than 30 consecutive days from the state where you reside without our prior written permission (for purposes of this Section 21C, the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (6) remove the Vehicle from the United States for any period of time without our prior written permission; or (7) transport passengers or goods for hire or use the Vehicle as a rental, taxi, limousine or shuttle service, without our prior written permission. You will also not let anyone else do any of these things.

**D. LICENSE, TITLING, REGISTRATION AND TAXES.**

(1) Lessee Responsibilities. You agree to license, title and register the Vehicle in the state in which it is garaged/parked. If you move or change the Vehicle garaging/ parking address, you will notify us immediately and pay for all resulting taxes and title, registration, or other fees. You also agree to provide us promptly upon request with the Vehicle's current license plate number, date and state of registration, and any other information about the Vehicle we may reasonably request. If you fail to provide us with that information and we need to obtain it from another source, such as the state motor vehicles department, you will reimburse us for the reasonable expenses we incur in doing so.

(2) Official Fees. You agree to timely pay all license, title, registration, inspection, testing, and other fees, taxes and charges imposed by government authorities or pursuant to law in connection with the Vehicle or this Lease. You must pay all such fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended.

(3) Tax Reserve. At termination (whether early or at maturity) of this Lease, you agree to pay us an amount ("Tax Reserve") we estimate to pay personal property and other taxes applicable to the Vehicle or this Lease for tax periods occurring before termination. If the actual taxes are more than the Tax Reserve collected, you will also owe us the difference. If they are less, we will refund you any excess. You will not be entitled to interest on any Tax Reserve we collect from you. We are not obligated to apply for any refund or abatement of official fees or taxes, including personal property taxes. **Some states assess personal property taxes for the full tax year, without prorating the tax if the Vehicle is sold or transferred during the tax year. You are responsible for the taxes assessed for the full tax year, even if the Lease terminates before the end of the tax year.**

(4) Retitling Fee. In addition to any government-imposed fees, we may charge you and add to the amount you owe under this Lease a retitling fee of $25 if the Vehicle is re-titled/re-registered because you move, change your name or add or remove a lessee from the Vehicle's title, unless the fee is prohibited by law.

**E. ASSIGNMENT AND TRANSFER OF THE VEHICLE. You may not assign, sell, give a security interest in, sublease or arrange an assumption of your interests or rights under this Lease or in the Vehicle without our prior written permission.**

83675*1*ICKIA-FI

Lessee Initials X _____  Co-Lessee Initials X _N/A_

04/21/2021   06:42 pm

## 22. EARLY TERMINATION

**A. LESSEE'S RIGHT TO TERMINATE EARLY.** You have the right to terminate this Lease early (before the end of the Lease Term), by returning the Vehicle to us or other person we designate, and paying the applicable Early Termination Liability set forth in Section 22C.

**B. LESSOR'S RIGHT TO TERMINATE EARLY.** We may terminate this Lease early if you are in default (see Section 25C). If we terminate this Lease early, you will owe us the applicable Early Termination Liability set forth in Section 22C.

**C. EARLY TERMINATION LIABILITY.** If this Lease is terminated early pursuant to Sections 22A or 22B of this Lease, you agree to pay us the sum of items (1) through (4) as follows: (1) any unpaid Monthly Payments accrued up to the termination date, plus (2) official fees and taxes in connection with the termination, plus (3) all other amounts due and owing under this Lease, except excess wear and mileage, plus (4) an **early termination charge** calculated as follows:

    (i)   Lessee's Early Termination:

        (a) if you terminate this Lease more than 120 days before the end of the Lease Term, the early termination charge you owe (provided the Vehicle is not a Total Loss) will be equal to the lesser of the Standard Formula and the Remaining Payments Formula defined below.

            (x) **Standard Formula:** The sum of (1) the difference, if any, between the Adjusted Lease Balance and the Vehicle's Realized Value, plus (2) an early termination fee in an amount equal to the Turn-In Fee disclosed in Section 4A of this Lease, and plus (3) the actual expenses we incur in connection with preparing for sale and selling the vehicle, including our third party auction fees and costs for transportation and reconditioning of the Vehicle prior to sale.

            (y) **Remaining Payments Formula:** The sum of: (1) all scheduled monthly Lease payments from the termination date through the end of the Lease Term, plus (2) as permitted by applicable law, any excess mileage, plus (3) as permitted by applicable law, any excess wear and use (See Section 24A), and plus (4) the Turn-In Fee amount disclosed in Section 4A of this Lease.

        (b) if you terminate this Lease 120 days or less before the end of the Lease Term, the early termination charge you owe will be the amount equal to the Remaining Payments Formula, provided the Vehicle is not a Total Loss.

        (c) if you terminate this Lease early in connection with a Total Loss, the early termination charge you owe will be the Standard Formula, minus the early termination fee referenced in Section 22C(i)(x)(2) ("Total Loss Early Termination Charge").

    (ii)   Lessor's Early Termination: the early termination charge if we terminate this Lease early will be the amount equal to the Standard Formula; provided that, if we repossess the Vehicle, in lieu of the early termination fee component of the Standard Formula, you will be charged the actual expenses we incur in connection with repossessing, obtaining and storing the Vehicle.

**D. ADJUSTED LEASE BALANCE.** Your Adjusted Lease Balance is the Adjusted Capitalized Cost shown on page 2 of this Lease, less all depreciation and other amortized amounts accrued up to the termination date, calculated according to the Constant Yield Method. "Constant Yield Method" means the method of determining the rent charge portion of each base monthly payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to rent charge as it declines during the scheduled Lease Term. At any time during the scheduled Lease Term, the balance subject to rent charge is the difference between the Adjusted Capitalized Cost and the sum of (1) all depreciation and other amortized amounts accrued during the preceding months and (2) the first base monthly payment.

**E. REALIZED VALUE.** If you obtain an independent appraisal (see below), the Realized Value is the appraised amount. If the Vehicle is a total loss, the Realized Value is the amount of any insurance proceeds we receive under your insurance plus any amount received from any other party in payment of the loss; if there is no payment, the Realized Value is zero. In all other cases, the Vehicle's Realized Value will be, at our option: (1) the gross wholesale sales price we receive for the Vehicle at disposition; (2) the fair wholesale market value of the Vehicle at termination according to a recognized used vehicle guide customarily used by motor vehicle dealers selected by us, including, but not limited to, Black Book, or other commercially reasonable valuation methodology, taking into consideration the Vehicle's mileage and physical condition; or (3) any amount you and we agree to in writing after termination.

**F. INDEPENDENT APPRAISAL.** You may obtain, at your expense, a professional appraisal by an independent third party, agreed to by you and us, of the value that could be realized at sale of the Vehicle at wholesale. The appraisal amount shall be final and binding.

## 23. PURCHASE OPTIONS AND VEHICLE RETURN

**A. PURCHASE OPTION AT MATURITY.** At the Scheduled Maturity Date, you may purchase the Vehicle under the conditions and for the amount set forth in Section 9, if you are not in Default.

**B. PURCHASE OPTION BEFORE MATURITY.** You have an option to purchase the Vehicle at any time before the Scheduled Maturity Date if you are not in Default, under the terms and conditions in Section 9, except that the Purchase Price will be the Adjusted Lease Balance figured according to Section 22D.

**C. ADDITIONAL PURCHASE OPTION CONDITIONS. You may not transfer or assign your purchase option to any other party without Assignee's prior written permission.** If you reside in a state that requires a seller to have a motor vehicle dealer license to sell used vehicles, you must purchase the Vehicle from the Lessor (Dealer) or from another authorized, licensed dealer selected by Assignee. Please notify us at least thirty (30) days before you intend to exercise your purchase option so that we may make appropriate arrangements with a licensed dealer, if necessary.

**D. VEHICLE RETURN.** Unless you purchase the Vehicle, you must return it to us or the authorized Kia dealer (or other designee) we designate at the time and place we specify, at your expense, upon termination of this Lease (whether early or at the Scheduled Maturity Date). At that time, you must give us a completed, signed odometer disclosure statement (see Section 24B), and a Vehicle condition report if we request one. You must also pay us any amounts you owe under the Lease.

If you fail to return the Vehicle to us, as required above, you will still owe us the Monthly Payments and other amounts that may come due and, if the Vehicle is not returned by the Scheduled Maturity Date, you will owe us an amount equal to the Monthly Payment for each Month or partial month that has elapsed from Scheduled Maturity Date to the date of actual return.

**E. SCHEDULED TERMINATION.** If this Lease is not terminated early and if you do not purchase the Vehicle, this Lease will terminate or end on the Scheduled Maturity Date and you must return the Vehicle (see Section 23D). Upon return, you will owe us:

    (1)   The Turn-In Fee disclosed in Section 4A; **plus**

    (2)   Any amounts owed for excess wear; **plus**

    (3)   Any amounts owed for excess mileage; **plus**

    (4)   All other amounts that are due or past due under this Lease; **plus**

    (5)   Any official fees and taxes due in connection with Lease termination.

## 24. STANDARDS FOR WEAR AND USE; ODOMETER MAINTENANCE AND STATEMENT

**A. STANDARDS FOR WEAR AND USE.** When returned to us, the Vehicle must be clean and in the same condition as it was when delivered to you, except for reasonable wear. If you do not purchase the Vehicle, then, upon Vehicle return at Scheduled Maturity Date or early termination as outlined in Section 22C, we will charge you for excess mileage and the estimated cost to repair or replace damage or wear to the Vehicle in excess of normal wear and use, whether or not such repairs are actually made, as permitted by applicable law. All repairs and part replacements must be made with original manufacturer's parts or those of equal quality. Excess wear and use includes, but is not limited to, the estimated cost to repair and/or replace:

    (1)   mechanical or electrical parts, including but not limited to, power accessories and lighting, that do not work properly;

    (2)   body damage, such as dents, scratches, chips, cuts, damage from water, sand or freezing, rusted or corroded areas on the body or other body or frame damage;

    (3)   paint damage including but not limited to mismatched, peeling or faded paint, poor quality or other damage to the paint, poor quality repairs, or lettering or "wrapping" on the body;

    (4)   damage to glass components including but not limited to the following: cracks, scratches, pits or chips in the windshield; broken windows or broken power windows; broken or missing headlight lenses, sealed beams or side mirrors;

    (5)   interior upholstery, dashboard or other surfaces that are burned, stained, cut or scratched;

    (6)   tires not comparable in type and quality to original tires with emergency "doughnut" spare or inflation kit, as applicable, or any tire that is flat, leaking, has been punctured or damaged (whether or not repaired) or that has less than 1/8 inch of tread remaining at its shallowest point;

    (7)   missing parts, accessories, and components, including keys and remote entry devices, owner's manual, floor mats, wheel covers, mirrors, GPS or audio components;

    (8)   any addition or modification to the Vehicle without our prior written consent; or

    (9)   any other wear beyond normal wear or that renders the Vehicle unsafe or incapable of passing any required inspection.

83675*1*ICKIA-FI

Lessee Initials X _XM_    Co-Lessee Initials X _N/A_

04/21/2021  06:42 pm

**B. ODOMETER; REQUIRED STATEMENT.** You will maintain the odometer of the Vehicle so that it always reflects the Vehicle's actual mileage. If the odometer is at any time inoperative, upon return of the Vehicle, you will provide us with reasonable evidence of the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Notice:** Federal law requires you to give us a statement of the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

If the odometer was tampered with or otherwise does not work correctly and you cannot prove the mileage shown on the odometer, we may charge you and add the amount you owe under this lease the greater of fifteen percent (15%) of the Residual Value or the amount we estimate the Vehicle's fair market value has been reduced by reason of additional miles not reflected on the odometer, the inability to determine the Vehicle's actual mileage, or both.

## 25. LOSS OF VEHICLE, DEFAULT AND REMEDIES.

**A. TOTAL LOSS OR DESTRUCTION OF VEHICLE.** If the Vehicle is lost, stolen, destroyed or damaged beyond repair (collectively a "Total Loss"), this Lease will terminate and you will owe the Early Termination Liability as outlined in Section 22C, including the Total Loss Early Termination Charge defined in Section 22C(i)(c).

**B. GAP WAIVER.** Except as otherwise provided, if the Vehicle is a Total Loss and you maintained the insurance required by this Lease, we will waive the Total Loss Early Termination Charge set forth in Section 22C(i)(c), when we receive your insurance proceeds for the Vehicle's actual cash value. You must report the Total Loss to us promptly, pay your insurance deductible and comply with all other terms of this Lease. There is no charge to you for this waiver. Exceptions: *This waiver does not apply if:*
(1)  The Vehicle was stolen and no police report was filed;
(2)  The Total Loss occurred while the Vehicle was not within the United States of America, its territories or possessions, or Canada, regardless of whether we consented;
(3)  The Total Loss resulted from your intentional misrepresentation, wrongful act or omission, or gross negligence;
(4)  There is a Default under this Lease which caused or contributed to the Total Loss; or
(5)  You fail to timely provide us or our designee with any information or documents reasonably requested in connection with the Total Loss, including a police report and insurance information.

**C. DEFAULT.** You will be in default ("Default") if any of the following occurs:
(1)  You do not pay a Monthly Payment when due (or within any grace period the law allows) or any other amount owed when we ask you to pay it;
(2)  Any information in your credit application or that of a guarantor of this Lease is false or misleading;
(3)  You fail to maintain required insurance;
(4)  The Vehicle is subject to actual or threatened confiscation, impoundment, seizure, forfeiture or other involuntary transfer by a government entity or legal process;
(5)  You die, are declared incompetent or are incarcerated and there is no surviving lessee, you become insolvent, file a bankruptcy petition, have a bankruptcy petition filed against you or you dissolve or cease business affairs, or make an assignment for the benefit of creditors;
(6)  You fail to return the Vehicle to us at the time and place we specify;
(7)  The Vehicle is used in any race, speed contest or other contest, or any other illegal manner, with or without your knowledge or consent;
(8)  The Vehicle is regularly used by anyone who is not a Lessee under this Lease, unless you have obtained our prior written consent;
(9)  Your driver's license expires or is suspended, revoked, canceled or is otherwise restricted, or you become ineligible to obtain a driver's license;
(10)  You break any other promise or fail to meet any other obligation under this Lease or in any other agreement with us;
(11)  You provided an incorrect Outstanding Prior Credit or Lease Balance and you fail to pay us the excess upon demand;
(12)  Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with obligations under the Lease; or
(13)  You do anything the law says is a default.

**D. REMEDIES FOR DEFAULT.** If you are in Default, after waiting any time the law requires, we may take any one or more of the following actions, to the extent not prohibited by state law:
(1)  Terminate this Lease and/or your rights to use the Vehicle and require you to pay the amount due at early termination;
(2)  Take (repossess) the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will neither be responsible for safekeeping such property nor be required to notify you about it, unless otherwise required by law. If you do not pick up the personal property within that time, we may dispose of it in any way we determine;
(3)  Charge and collect from you all out-of-pocket expenses we reasonably incur in connection with our attempts to collect what you owe or enforce our rights under this Lease, including, but not limited to, attorneys' fees (for attorneys who are not our employees, court costs, skip-tracing, repossession efforts, transportation and storage of the Vehicle, except as limited by applicable law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law);
(4)  Take any reasonable action to correct the Default or to protect our interest in the Vehicle (for example, buying insurance or removing you from this Lease). You agree to reimburse us for any amounts we pay to correct or cover your Default;
(5)  Require you to return the Vehicle and any related records or make them available to us in a reasonable manner;
(6)  Make a claim for or cancel any and all insurance and optional products and services included with this Lease that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe; and
(7)  Use any remedy we have at law or in equity.

**NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS.** Pursuant to the requirements of Colorado Revised Statutes § 43-4-808(2)(f)(II)(B), you will be liable for payment of all toll evasion civil penalties incurred on or after the date you take possession of the motor vehicle. The Lessor will provide your name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

## 26. ADDITIONAL TERMS AND CONDITIONS.

**A. PAYMENTS.** All payments due under this Lease must be made in good funds of the United States, by check, money order, cashier's check, electronic funds transfer, or as otherwise specified by Assignee.

**B. INDEMNIFICATION.** You agree to indemnify and hold us and our assignees, agents and insurers harmless from all claims, demands, losses and expenses (including reasonable attorneys' fees to the extent not prohibited by law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law) arising from the Vehicle's use, condition or operation, including claims based on strict liability and negligent entrustment.

**C. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** This lease may contain charges for optional insurance, service contracts or other contracts for products you purchased in connection with this Lease. You agree that we can claim benefits under such contracts. Unless prohibited by law, we may, upon your default or termination of this Lease, cancel any such contracts to obtain refunds of unearned charges or premiums. You authorize us to subtract any refund we receive on your behalf for any such contracts that are cancelled from the amount you owe under this Lease. If you receive a refund for any cancelled optional product contract, you must pay the entire amount of the refund to us.

**D. ASSIGNEE LIABILITY.** Except as limited by applicable law, you agree not to assert against any Assignee of this Lease, or its agents, any claims or defenses you may have against the Lessor from whom you originally leased the Vehicle.

**E. OWNERSHIP.** We own the Vehicle solely, including all original and after-market accessories installed on the Vehicle. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any tax advice regarding this Lease.

**F. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) loss proceeds of any insurance which you maintain with respect to the Vehicle; (2) the proceeds of any mechanical breakdown protection contract, service contract, excess wear and use waiver or other optional insurance or other product purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**G. WAIVER.** We do not waive our rights or remedies under this Lease by delaying or failing to exercise them at any time. Our acceptance of late or partial payments under this Lease will not constitute a waiver of our right to receive timely payment in full or of any of our rights.

**H. JOINT LIABILITY.** Lessee and any Co-Lessee are jointly and severally liable under this Lease. Our release, waiver or delay in the enforcement of our rights as to one Lessee shall not affect our rights as to the other Lessee signing this Lease.

83675*1*ICKIA-FI                        04/21/2021  06:42 pm
Lessee Initials X _____   Co-Lessee Initials X _____ **N/A**   Page 7 of 8

**I. ADDRESS CHANGES AND NOTICES.** We will send notices (including any default and repossession notices) and correspondence to you at the Billing Address or the Garaging Address or the Mailing Address. If our notice of your new address or the Garaging Address changes or is incorrect, you agree to notify us of the correct or new address within 10 days after the change. If you move and fail to notify us of your new address and we receive a forwarding address for you from the United States Postal Service, we will update your Billing Address to that forwarding address. If we are required to send you any notices, you agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period.

**J. SERVICING AND COLLECTION CALLS.** You agree that we, our agents and/or others we retain may monitor and record telephone calls with you in connection with this Lease. You also agree that we, our agents and/or others we retain may use an automatic telephone dialing system or artificial or prerecorded voice (collectively, "calling services") to call you on your cellular telephone or on any service for which you are charged for the call (including sending voicemail messages, text messages and e-mail), unless prohibited by law. This agreement does not restrict us from contacting you using any other means allowed by law. **You also agree that any revocation for us, our agents and/or others we retain, to call you on any of your telephone numbers using any calling services may only be made in writing to us if addressed to Hyundai Capital America; Attn: Legal Department at 3161 Michelson Dr., 19th Floor, Irvine, CA 92612;** and any verbal request to not be contacted regarding your obligations shall not be deemed a revocation of your consent for us to use calling services to call you (to the extent permitted by applicable law).

**K. LIMITED POWER OF ATTORNEY.** You appoint us or our agent as your attorney-in-fact to do the following: (1) settle any insurance claim related to the Vehicle; (2) endorse your name on any check or draft we receive for damage or loss of the Vehicle; and (3) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

**L. ADDITIONAL INFORMATION AND DOCUMENTS.** During the term of this Lease, you agree to provide us with additional documents and information we may reasonably request to verify any information provided in connection with your credit/lease application or your compliance with this Lease. You also agree to sign additional documents we reasonably request to carry out the terms of this Lease, including, but not limited to, motor vehicles department forms and applications.

**M. OUR ASSIGNMENT OF THIS LEASE.** We may assign some or all of our rights and obligations under this Lease at any time to anyone, including the HLTT, without your consent. Our assignment of this Lease will not affect your rights or obligation under this Lease. **Lessor and its employees are not agents of Assignee or Kia Motors Finance and have no authority to obligate either of them.** Kia Motors Finance, as the agent for the HLTT, has the power to act on the HLTT's behalf to administer, enforce and defend this Lease. You agree to pay all amounts owed under this Lease to Kia Motors Finance, or as otherwise directed by us. As part of a like-kind exchange program, the Assignee has engaged HCA Exchange, Inc., as a qualified intermediary. Dealer is hereby notified that Assignee has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the purchase of the Vehicle. If Lessee purchases the Vehicle, Lessee is hereby notified that the Assignee has engaged HCA Exchange, Inc., as qualified intermediary and has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the sale of the Vehicle.

**N. ENFORCEABILITY.** If any provision of this Lease is found unenforceable, void, illegal or otherwise against applicable law, the remaining provisions of this Lease will remain in full force and effect.

**O. ENTIRE AGREEMENT. Important. Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. Terms and promises, including oral promises, are not enforceable unless they are expressly contained in this Lease. This Lease is a final expression of the lease agreement between you and us. This Lease may not be contradicted by evidence of any prior oral lease agreement or of a contemporaneous oral lease agreement between you and us.**

**P. GOVERNING LAW.** This Lease will be governed and enforced by federal law and the internal laws of the state in which the Dealer is located as shown by the Dealer's address in Section 1 of this Lease.

**Q. NOTICE TO UTAH LESSEES:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**R. ARBITRATION PROVISION. Your Lease shall be subject to the following arbitration provision:**

---

### MANDATORY ARBITRATION
#### IMPORTANT INFORMATION, PLEASE REVIEW
#### THIS IMPACTS YOUR LEGAL RIGHTS

**A. Agreement to Arbitrate.** In the event of a claim or dispute between you and us (including our respective agents, employees, officers, directors, affiliates, subsidiaries and parents) ("we" or "us"), whether in contract, tort, statute, or otherwise, arising under or relating to this Lease or the Leased Vehicle, your experience with us, or any resulting transaction or relationship, the claim or dispute must be resolved by binding arbitration, as described below, instead of in court. Any claim or dispute (except for a claim challenging the Class Action Waiver below) must be resolved by binding arbitration if either side requests it, including a claim challenging the validity or enforceability of this Agreement to Arbitrate. **THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO, DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.**

**B. CLASS ACTION WAIVER. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS IF A DISPUTE WERE ARBITRATED, YOU WOULD GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**

**C.** Only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver. Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit.

**D. Your Right to Go To Small Claims Court.** We will not choose to arbitrate any claim you bring in small claims court. However, if such a claim is transferred, removed or appealed to a different court, we may then choose to arbitrate.

**E. Self-Help Rights.** Neither you or us waive any rights to seek self-help remedies, such as repossession or replevin of our respective property.

**F. Governing Law and Rules.** This Agreement to Arbitrate is governed by the Federal Arbitration Act (FAA). Arbitration must proceed only with the American Arbitration Association (AAA) or JAMS, or any organization that you choose subject to our approval. The rules for the arbitration will be those in this Agreement to Arbitrate and the procedures of the chosen arbitration organization. For a copy of each organization's procedures, to file a claim or for other information, please contact:

AAA at www.adr.org; 800-778-7879

JAMS at www.jamsadr.com; 800-352-5267

**G. Fees and Costs.** If you wish to begin arbitration against us but you cannot afford to pay the organization's or arbitrator's costs, we will advance those costs if you ask us in writing. Any request like this should be sent to Hyundai Capital America, Attn: Legal Department, 3161 Michelson Dr., 19th Floor, Irvine, CA 92612. If you lose the arbitration, the arbitrator will decide whether you must reimburse us for money we advanced for you for the arbitration. If you win the arbitration, we will not ask for reimbursement of money we advanced. Additionally, if you win the arbitration, the arbitrator may decide that you are entitled to be reimbursed your reasonable attorneys' fees and costs (if actually paid by you).

**H. Hearings and Decisions.** The arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. A single arbitrator will be appointed.

**I. Arbitrator Requirements.** The arbitrator must: (i) Be a retired judge or justice of any state or federal court; (ii) Proceed with the arbitration under the procedural rules of the FAA; (iii) Follow all applicable substantive law of the governing law set forth in Section 26.P of the Lease ("Governing Law") without regard to such Governing Law's choice of laws principles, except when contradicted by the FAA; (iv) Follow applicable statutes of limitations set forth in the Governing Law; (v) Honor valid claims of privilege; and (vi) Issue a written decision including the reasons for the award.

**J. Final Decision and Appeal.** The arbitrator's award will be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may appeal to a new appellate arbitrator. The appeal must be filed with the arbitration organization not later than 30 days after the original award issues and the appealing party must pay all appellate costs, unless the appellate arbitrator determines otherwise as part of its award. If you are unable to pay the appellate arbitrator's costs, we will advance those costs, if you ask us in writing, as set forth in Section G of this Arbitration Provision. Any arbitration award may be enforced (such as through a judgment) in any court with jurisdiction. If any part of this Agreement to Arbitrate is deemed or found to be unenforceable for any reason (except as set forth in the following sentence), the remainder shall remain enforceable. However, if the Class Action Waiver above is deemed or found to be unenforceable for any reason, this entire Agreement to Arbitrate will be deemed unenforceable.

---



**STATE OF IOWA**

## CERTIFICATE OF TITLE TO A VEHICLE          Regular

Designation

Title No. **52AG01384**          County **Johnson**          Issue Date **05/17/2021**

VIN **3KPF24AD9ME288823**          Type **Automobile**

| Year | **2021** | Make KIA | Model Forte Fe | Style | **SD** |
| Cyl. | **4** | Fuel Gasoline | Weight 3,000 | GVWR | |
| Color | **White** | | LP **$17,900** | Sq. Ft. | |
| Odometer | **255 Actual  Miles** | | | Cumulative Damage | |

Owner(s)

**Hyundai Lease Titling Trust**
**2975 Breckinridge Blvd**
**Duluth  GA  300964977**

|  | Fee | Penalty |
|---|---|---|
| Title Fees | $25.00 | $0.00 |
| Fee for New Reg | $430.90 | |
| Registration Fees | $206.00 | $5.00 |
| SI Fees | $10.00 | |
| Plate Fees | $0.00 | |
| Other Fees | $3.00 | |
| Totals | $674.90 | $5.00 |

Prev. Title No./ST  **KMA8855318**
Prev. Owner
    **Billion Chevrolet**
    **2733 MORMON TREK BLVD**
    **IOWA CITY  IA  522408606**

**1ST Security Interest**          If there are NO Security Interests "X" here: ☐
Date:    **05/17/2021**          No:    **52L07502933**
Held By:    **Hyundai Lease Titling Trust**
Address:    **2975 Breckinridge Blvd Duluth GA 300964977**

**Cancellation of 1ST Security Interest**
Date_____ No_____ Date_____
Holder_____ CO Treas._____
By_____ By_____

**2ND Security Interest**
Date                    No:
Held By:
Address:
**Cancellation of 2ND Security Interest**
Date_____ No_____ Date_____
Holder_____ CO Treas._____
By_____ By_____

**3RD Security Interest**
Date:                    No:
Held By:
Address:
**Cancellation of 3RD Security Interest**
Date_____ No_____ Date_____
Holder_____ CO Treas._____
By_____ By_____

Witness My Hand
    Thomas L. Kriz          By_____          _____ Deputy
    County Treasurer

A023392392

cdud ▮▮▮▮▮▮▮

THIS TITLE CONTAINS AN EAGLE WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT.

 **Finance**

**Motor Vehicle Lease Agreement**

DEAL # 30849
CUST # 481159
Call us toll-free at (866) 331-5632

Lease Date: **04/29/2022**

## 1. PARTIES AND VEHICLE DESCRIPTIONS

**LESSEE:**

| | |
|---|---|
| Lessee: | **MERCY HOSPITAL, IOWA CITY, IOWA** |
| Billing Address: | **500 E MARKET ST** |
| | _Address_       52245 |
| | **IOWA CITY**      **IA**      **JOHNSON** 52245-2699 |
| | _City_   _State_   _County_   _Zip_ |

**LESSOR (Dealer):**

| | |
|---|---|
| Dealer: | **BILLION KIA OF IOWA CITY** |
| Address: | **2845 MORMON TREK BLVD** |
| | _Street Address_ |
| | **IOWA CITY**      **IA**      **52240** |
| | _City_   _State_   _Zip_ |

**CO-LESSEE:**

| | |
|---|---|
| Co-Lessee: | **N/A** |
| Billing Address: | ☐ Check box if same as Lessee |
| | **N/A** |
| | _Address_ |
| | **N/A** |
| | _City_   _State_   _County_   _Zip_ |

**GARAGING ADDRESS:**

☐ Check box if same as Lessee's Billing Address
☐ Check box if same as Co-Lessee's Billing Address

**N/A**
_(Street Address - No P.O. Boxes)_

| **N/A** | **N/A** | **N/A** | **N/A** |
|---|---|---|---|
| _City_ | _State_ | _County_ | _Zip_ |

**LEASED VEHICLE:**

☒ New  ☐ Used

| **2022** | **KIA** | **Forte** |
|---|---|---|
| _Year_ | _Make_ | _Model_ |

| **19** | **3KPF24AD1NE475538** |
|---|---|
| _Odometer_ | _VIN:_ |

☒ If checked, the Vehicle's primary intended use is for a Business, Commercial or Agricultural purpose.

**DESCRIPTION OF TRADE-IN VEHICLE:**

| **2019** | **KIA** | **FORTE** |
|---|---|---|
| _Year_ | _Make_ | _Model_ |

| | |
|---|---|
| Gross Agreed Upon Trade-In Allowance .....................$ | **7300.00** |
| Outstanding Prior Credit or Lease Balance | |
| (To Be Paid by Dealer/Lessor) .........................$ | **11680.00** |
| Net Trade-in Allowance (if less than 0, then enter 0).......$ | **0.00** |

Lessee and Co-Lessee ("you," "your" and together the "Lessee") each agree to lease the Leased Vehicle described above, including all equipment, parts and accessories (the "Vehicle") from Lessor ("we," "us" and "our") according to the terms and conditions of this Motor Vehicle Lease Agreement ("Lease"). Each of you who executes this Lease will be individually liable to us for all Lease obligations and for the entire amount owing under this Lease. After you sign this Lease, we will assign it to Hyundai Lease Titling Trust ("HLTT") and the terms "Assignee," "we," "us" and "our" will refer to HLTT and its agents or to any subsequent assignee.

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 2. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below)* | 3. MONTHLY PAYMENTS | 4. OTHER CHARGES (Not part of your Monthly Payment) | 5. TOTAL OF PAYMENTS |
|---|---|---|---|
| $ **469.29** | A. Your first Monthly Payment of $ **469.29** is due on **04/29/2022** followed by **35** payments of $ **469.29** due on the **29th** of each month, beginning on **05/29/22**. <br><br>B. The Total of your Monthly Payments is $ **16894.44** | A. Turn-in Fee (if you do not purchase the Vehicle).....$ **400.00** <br><br> B. **N/A** .........$ **N/A** <br><br> C. Total ................................$ **400.00** | (The amount you will have paid by the end of the Lease) <br><br> $ **17294.44** |

### 6. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| (1) | Capitalized Cost Reduction.........................$ | **N/A** |
| (2) | Sales/Use Tax on Capitalized Cost Reduction .........$ | **N/A** |
| (3) | First Monthly Payment ............................$ | **469.29** |
| (4) | Refundable Security Deposit .......................$ | **N/A** |
| (5) | Acquisition Fee ................................$ | **N/A** |
| (6) | Initial License, Title and Registration Fees ................$ | **N/A** |
| (7) | Sales/Use Tax ................................$ | **N/A** |
| (8) | **N/A** ............................$ | **N/A** |
| (9) | **N/A** ............................$ | **N/A** |
| (10) | **N/A** ............................$ | **N/A** |
| (11) | **TOTAL**........................$ | **469.29** |

**B. How the Amount Due at Lease Signing or Delivery will Be Paid:**

| | | |
|---|---|---|
| (1) | Net Trade-in Allowance ............................$ | **N/A** |
| (2) | Rebates and Noncash Credits .....................$ | **N/A** |
| (3) | Amount to Be Paid in Cash .......................$ | **469.29** |
| (4) | **N/A** ...............................$ | **N/A** |
| (5) | **TOTAL**..............................$ | **469.29** |

**EXHIBIT 2**

83675*1*ICKIA-FI

Lessee Initials X _DMU CFO_     Co-Lessee Initials X ____**N/A**____

05/02/2022  11:19 am

## 7. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ __21565.00__ ) and any items you pay over
the Lease Term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ........................................$ __27933.79__

B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, Rebate, Noncash Credit, or Cash you pay
that reduces the Gross Capitalized Cost ............................................................................................................− $ __N/A__

C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment .......................................= $ __27933.79__

D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment...........− $ __13154.65__

E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use
and for other items paid over the Lease Term ...................................................................................................= $ __14779.14__

F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts ....................................+ $ __2115.30__

G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge .......................= $ __16894.44__

H. **Lease Payments.** The number of payments in your Lease ..............................................................................................+ __36__

I. **Base Monthly Payment** .............................................................................................................................................= $ __469.29__

J. **Monthly Sales/Use Tax** ..............................................................................................................................................= $ __N/A__

K. **Other (specify):** __N/A__ ........................................................................................................................................+ $ __N/A__

L. **Total Monthly Payment** .............................................................................................................................................= $ __469.29__

**EARLY TERMINATION.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars.
The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

## 8. EXCESS WEAR AND USE

You may be charged for excess wear based on our standards for normal use and for mileage in excess of __12000__ miles per year (prorated
based on the number of months in the Lease Term) at the rate of __20__ ¢ per mile. No rebate or credit will be paid to you if the mileage is less
than the specified amount.

☐ If this box is checked, you have purchased an additional __N/A__ miles per year (prorated based on the number of months in the Lease
Term), at 15¢ per mile, which is included in your Monthly Payment. No rebate or credit will be paid to you if the end of term mileage is less than
the specified amount.

## 9. PURCHASE OPTION AT END OF LEASE TERM

You have an option to purchase the Vehicle from us at the scheduled end of the Lease Term, **AS IS, WHERE IS**, from us or a party we designate,
(See Section 23), for the Residual Value on line 7D above ("Purchase Price") plus a **Purchase Option Fee of $** __300.00__ . You are also
responsible for any official fees, such as those for taxes, tags, license and registration. *Please see Section 23 of this Lease for additional terms and
conditions.*

## 10. OTHER IMPORTANT TERMS

See the entirety of this Lease (8 pages total) for additional information on early termination, purchase options, maintenance responsibilities,
warranties, late and default charges, insurance, and any security interest, if applicable.

**Notice:** If you do not meet your Lease obligations, you may lose the Vehicle.
**AK, OR and SD Notice:** If this Lease is for a consumer purpose, then this Lease is **CONSUMER PAPER.**

## 11. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle.....................................$ __21565.00__
B. Sales/Use Tax..........................................................$ __783.79__
C. License, Title and Registration Fees............................$ __375.00__
D. Outstanding Prior Credit or Lease Balance.................$ __4380.00__
E. Dealer Documentation/Service Fee**...........................$ __180.00__
F. __N/A__ ................................................................$ __N/A__
G. __N/A__ ................................................................$ __N/A__
H. __N/A__ ................................................................$ __N/A__
I. __N/A__ ................................................................$ __N/A__
J. __N/A__ ................................................................$ __N/A__
K. Acquisition Fee .......................................................$ __650.00__
L. **Total = Gross Capitalized Cost**...............................$ __27933.79__

## 12. TERM AND SCHEDULED MATURITY DATE

The Lease Term is __36__ months ("Lease Term").
The Scheduled Maturity Date: __04/29/2025__ .

*[This area intentionally left blank.]*

**\*\* NOTICE TO MISSISSIPPI LESSEES: A DOCUMENT/SERVICE FEE IS
NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT
MAY BE CHARGED TO A BUYER/LESSEE FOR THE PREPARATION,
HANDLING AND PROCESSING OF DOCUMENTS AND THE PERFORMING
OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR VEHICLE
AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY
REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

83675\*1\*JCKIA-FI
Lessee Initials X _____   Co-Lessee Initials X _____ __N/A__

05/02/2022  11:19 am

## 13. OPTIONAL INSURANCE AND OTHER PRODUCTS

You do not have to purchase any optional protection product(s)/service(s) listed below to enter into this Lease, and they are not a factor in our credit decision to lease the Vehicle to you. If you have initialed below, it means you want the described product/service(s) and have reviewed the separate contract for the product/service(s) which describes its terms and conditions. Coverage under any of the product(s)/service(s) you have purchased itemized below may be subject to approval by the provider of such product(s)/service(s). If the price of any products and/or services (whether defined below or otherwise) you purchased at the time of entering into this Lease is not set forth in the Itemization of Gross Capitalized Cost section on Page 2, you will pay for them upon Lease signing or delivery. We may receive a portion of the price of any optional products or services you buy.

| ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | | ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | |
|---|---|---|---|---|---|---|---|
| **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials | **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials |
| ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | | ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | |
| **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials | **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials |
| ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | | ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | |
| **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials | **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials |
| ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | | ☐ Other: **N/A** Product Description | Premium/Price: $ **N/A** | | |
| **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials | **N/A** Provider | **N/A** Term (in Months or Years) | **N/A** Lessee | **N/A** Co-Lessee Initials |

## 14. ESTIMATED OFFICIAL FEES AND TAXES

The total estimated amount you will pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term, whether included with your Monthly Payment or assessed otherwise, is $ **783.79**. The actual total of fees and taxes may be higher or lower than this estimate depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed.

## 15. WARRANTIES

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below:

☐ Used vehicle limited warranty provided by the manufacturer.

☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.

**LESSOR LEASES THE VEHICLE TO YOU "AS IS." EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW), WE MAKE NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND WE MAKE NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER.** If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

## 16. INSURANCE VERIFICATION

You must maintain the insurance coverage described in Section 20A of this Lease. You affirm that the following insurance coverage is in force as of the Lease Date:

Insurance Provider: **AMERICAN CASUALTY**

Policy Number: 

Effective Date: **04/29/2022**

Expiration Date: **10/01/2022**

Agent's Name: **AGENT**

Agent's Address: **353 N CLARK ST CHICAGO IL 60654**

Agent's Phone Number: **(312) 595 8100**

Initials of Dealer Employee who verified insurance coverage X **L J L**

You must instruct your insurance agent to add as an additional loss payee, and send the Insurance Policy, Endorsement or Certificate to:

Hyundai Lease Titling Trust
PO Box 20809
Fountain Valley, CA 92728-0809

**NOTICE TO MICHIGAN LESSEES:** The Adjusted Lease Balance upon early termination (see Section 22) may be different than the actual cash value of the Vehicle as determined by your automobile insurer. Unless we agree to waive your liability upon a Total Loss of the Vehicle (see Section 25B), then you will be responsible for the difference between the Adjusted Lease Balance and the Vehicle's actual cash value as determined by your insurer.

Lessee's Initials **N/A** / Co-Lessee's Initials **N/A**

83675*1*ICKIA-FI

05/02/2022 11:19 am

Any change to this Lease must be in a writing signed by us and you, except (a) we may agree to requests for extensions, deferrals and due date changes (if offered by us) by phone and confirmed by us in writing, unless the law requires a signed written agreement, and (b) we may, in our sole discretion, modify any term(s) of this Lease without your signature upon written notice to you of the modified term(s). If the modified term(s) are at least as favorable to you as the existing terms of this Lease. Your failure to object within 10 days after we send you a modification notice shall be deemed your consent to the modified term(s). No other oral changes are binding.

Lessee Signature X _MERCY HOSPITAL, IOWA CITY, IOWA_ By _Laura R. Miller CFO_     Co-Lessee Signature X ___N/A___

## 18. NOTICES AND SIGNATURES

BY SIGNING BELOW, YOU AGREE THAT KIA MOTORS FINANCE MAY OBTAIN ONE OR MORE CREDIT REPORTS OR OTHER CONSUMER REPORTS ABOUT YOU FOR USE IN CONNECTION WITH ATTEMPTING TO COLLECT AMOUNTS OWED UNDER THIS LEASE, ENFORCING THIS LEASE OR SELECTING YOU TO RECEIVE MARKETING SOLICITATIONS FOR FUTURE RETAIL FINANCING OR LEASE PROGRAMS.

**NOTICE TO LESSEE: (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE.**

THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THE ENTIRE LEASE; (2) YOU AGREE TO ALL OF THE PROVISIONS OF THIS LEASE; (3) YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE; AND (4) THIS IS A LEASE AND YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE THE VEHICLE SET FORTH IN THIS LEASE.

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

Lessee Signature: X ___N/A___     Co-Lessee Signature: X ___N/A___
Name: __N/A__     Name: __N/A__

**B. BUSINESS LESSEE SIGNATURE**

Printed Legal Business Name: _MERCY HOSPITAL, IOWA CITY, IOWA_  by (Authorized Signature) _Laura R. Miller CFO_
Name (Printed Name of Authorized Signer): _Diana Miller, CFO_ ~~MERCY HOSPITAL, IOWA CITY, IOWA~~ Title (Title of Authorized Signer): _CFO_

**C. LESSOR SIGNATURE AND ASSIGNMENT.** The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (3) assigning to Hyundai Lease Titling Trust, P.O. Box 20829, Fountain Valley, CA 92728-0829 or its successors and assigns all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Dealer Lease Sale Agreement between Hyundai Capital America and the Lessor.

Authorized Signature: X _____

Name (Not Dealership Name): __KIERRON WALLACE__     Title: __FIMANAGER__

**AutoPay Authorization**
I authorize Hyundai Capital America dba Kia Motors Finance ("KMF") to initiate monthly Automated Clearing House (ACH) debit entries (and, if necessary, other debit or credit entries to correct errors) to the deposit account listed below (the "Account") on the payment due date specified in my motor vehicle lease (the "Lease"), each in the amount of the monthly payment specified in the Lease plus any applicable sales, use, rental or other taxes and any other charges due under the Lease and reflected on the most recent monthly statement. I agree that I will remain responsible for arranging payments due under the Lease until KMF confirms that it has initiated AutoPay, which may take up to two billing cycles. This authorization shall remain in effect, and KMF will continue to charge my Account, until I revoke my authorization by calling KMF's Customer Service Department at (866) 331-5632 at least 3 business days prior to the next scheduled payment due date to avoid further charges. I understand that when I revoke this authorization I will be responsible for scheduling and making all subsequent payments to KMF when due under the Lease. In addition, if funds are not available when KMF attempts to charge my Account, I will be responsible for arranging alternative payment to KMF and agree to pay KMF any late charges due under the Lease as well as any returned check, processing or insufficient funds fees as set forth in the Lease. Except to the extent required by applicable law, KMF shall have no liability to me with respect to a debit against the Account which is drawn in an incorrect amount or drawn after I have revoked authorization for AutoPay, other than the responsibility to correct any error. I represent to KMF that I am the holder of the Account or am an authorized to make payments from the Account. I acknowledge that I received a copy of this authorization for my records.

| N/A | N/A | | N/A | |
|---|---|---|---|---|
| Bank Name | Name of Account Holder 1 | Date | Name of Account Holder 2 | Date |
| N/A | | | | |
| Bank Account Number | | | | |
| N/A | N/A | | N/A | |
| Bank Routing Number (9 digits) | Signature of Account Holder 1 | | Signature of Account Holder 2 | |
| N/A | N/A | | ☐ Attached is a copy of a cancelled check | |
| Account Type (Checking, Savings or Money Market) | Account Holder Email Address | | | |

**By signing this Lease, you agree that you have read all 8 pages of this entire Lease. See additional pages for additional lease terms.**

83675*1*ICKIA-FI     05/02/2022  11:19 am
Lessee Initials X _____  Co-Lessee Initials X ___N/A___     Page 4 of 8

Form No. LSE KMF Z (Rev. 1/2020) ©2020, Hyundai Capital America

**A. RETURNED INSTRUMENT CHARGE.** You will pay us a returned instrument charge of $15 for any check, instrument or electronic payment that is returned unpaid for any reason, except as limited by applicable law.

**B. LATE CHARGE.** To the extent permitted by applicable law, you will pay us a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due, except in Colorado, Kansas, Louisiana and Maine. Colorado: If this Lease is entered into in Colorado, we have the right to assess a late charge of the lesser of $15 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Kansas and Louisiana: If this Lease is entered into in Kansas or Louisiana, we have the right to assess a late charge of the lesser of $20 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Maine: If this Lease is entered into in Maine, we have the right to assess a late charge of the lesser of $10 or 5% of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due.

**C. ADMINISTRATIVE FEE.** If you do not pay any government-imposed fine, registration or other fee, storage, towing, penalty, toll, parking ticket or tax related to the Vehicle and we pay it on your behalf, you will reimburse us for the amount paid plus we may charge you and add to the amount you owe under this Lease a $20 administrative fee per incident, except as limited by applicable law.

**D. FEES FOR ADDITIONAL SERVICES.** Unless prohibited by applicable law, we may charge you and add to the amount you owe under this Lease a fee for any additional services you request from us relating to this Lease that are outside the ordinary servicing of this Lease. The fee will be in an amount agreed to by phone or in writing at the time you request the service, as may be limited by applicable law. For example, a convenience or other fee will apply to any expedited payment service, such as payments made by telephone, the Internet, text messaging, or by credit or debit card; we may receive all or a portion of the fee collected by a money transfer agent or other party we have contracted with to process the payment, except where prohibited by applicable law.

**E. SECURITY DEPOSIT.** We may apply some or all of the security deposit to any amounts you owe under this Lease. If you purchase the Vehicle, we may credit the security deposit towards the Purchase Price. After this Lease is terminated, we will return any unused security deposit to the Lessee whose name appears first under Section 1 of this Lease, as required by law. We do not keep the security deposit in a separate bank or set aside on our books, unless required by law. You are not entitled to any interest, increase, or profit on the security deposit.

**A. INSURANCE REQUIREMENTS.** You must maintain primary insurance coverage in your name in the amount and types indicated below, at your expense, during the Lease Term and until the Vehicle is returned to us:

(1) Requirements of minimum insurance coverage is based on the state where the Vehicle is primarily garaged:

    a. If the Vehicle is primarily garaged in CT, KY, NJ, or RI, the minimum insurance coverage requirements are: liability insurance with limits of not less than $100,000 per person for bodily injury, $300,000 per accident for bodily injury and $50,000 per accident for property damage, or $300,000 combined single limit;

    b. If the Vehicle is primarily garaged in any other state (excluding CT, KY, NJ, or RI), the minimum insurance coverage requirements are: liability insurance with limits not less than the garaging state required minimum per person for bodily injury, garaging state required minimum per accident for bodily injury and state required minimum per accident for property damage, or state required minimums combined single limit. Provided, however, that if the garaging state does not require any of the above insurance coverage, the requirements of paragraph 20A1a will apply.

(2) All States require collision insurance with a deductible no higher than $1,000;

(3) All States require comprehensive fire and theft insurance with a deductible no higher than $1,000; and

(4) All States require uninsured motorist coverage as required by law in the state where the Vehicle is registered.

You may obtain the insurance from any licensed insurer reasonably acceptable to us. Assignee must be shown as additional insured and loss payee. The policy must require the insurance company to notify us at least 10 days before any non-renewal, cancellation, reduction or other material coverage change. You must provide us with a copy of your insurance policy within 30 days after the Lease Date and thereafter upon request. **Failure to maintain the required insurance is a Default under this Lease.**

**B. LESSOR'S PURCHASE OF INSURANCE.** If you fail to maintain the required insurance, we may, at our option, purchase the insurance. We may add the amount we pay for this insurance to the amounts you owe under this Lease or require that you pay it immediately. If we buy this insurance, it may cover your interest and our interest, or it may cover only our interest, unless the law requires us to buy insurance that also protects your interests.

**C. NOTIFICATION OF LOSS; SETTLEMENT OF CLAIMS.** You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure, or impoundment of the Vehicle. We are entitled to all insurance proceeds for physical damage to or loss of the Vehicle, even if the amount of the proceeds exceeds the Adjusted Lease Balance or other amounts you owe under this Lease. You authorize us, on your behalf, to receive and endorse your name on checks, drafts or other instruments received from your insurance company, and settle or release any claim under the insurance related to our ownership of the Vehicle. You also assign to us any other insurance proceeds related to this Lease or our interest in the Vehicle.

**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**A. VEHICLE CONDITION.** You have inspected the Vehicle and agree that at Lease signing: (i) the Vehicle is in good condition in both operation and appearance, and (ii) is equipped with all requested features and options.

**B. VEHICLE MAINTENANCE AND OPERATING COSTS.** You are responsible for maintaining, servicing and repairing the Vehicle, at your cost, according to the owner's manual maintenance schedule and to ensure that the warranty, if any, remains valid. You will use original equipment manufacturer's parts or those of equal value in the maintenance and service of the Vehicle. You agree to comply with all manufacturer recall notices. We are not obligated to provide you with a replacement vehicle for any reason. You must maintain and keep in the Vehicle a record of all maintenance performed on the Vehicle. You must make the maintenance record available to us at any time and provide it to us at the end of the Lease. You agree to pay all operating costs, including, but not limited to, gasoline, oil, antifreeze, parking fees, towing and replacement tires. You are liable for the payment of all tolls and any fines for toll evasion.

**C. VEHICLE INSPECTION AND USE.** We may inspect the Vehicle at any reasonable time and place. You will not allow any liens or claims to be placed on or made against the Vehicle. **You are responsible for the risk of loss, damage, or destruction of the Vehicle during the Lease Term and until you return the Vehicle to us.** You will not: (1) use the Vehicle for any unlawful or improper purpose or to commit any illegal act; (2) change or install equipment without our prior written consent or that renders the Vehicle unsafe or unlawful to operate, but if you add equipment to the Vehicle, it will become our property and you will pay us the cost of removing it at the end of this Lease; (3) use the Vehicle in any way prohibited by any applicable insurance policy or manufacturer's warranty or in a manner that causes abnormal depreciation; (4) allow unlicensed drivers to drive the Vehicle; (5) remove the Vehicle for more than 30 consecutive days from the state where you reside without our prior written permission (for purposes of this Section 21C, the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (6) remove the Vehicle from the United States for any period of time without our prior written permission; or (7) transport passengers or goods for hire or use the Vehicle as a rental, taxi, limousine or shuttle service, without our prior written permission. You will also not let anyone else do any of these things.

**D. LICENSE, TITLING, REGISTRATION AND TAXES.**

(1) Lessee Responsibilities. You agree to license, title and register the Vehicle in the state in which it is garaged/parked. If you move or change the Vehicle garaging/ parking address, you will notify us immediately and pay for all resulting taxes and title, registration, or other fees. You also agree to provide us promptly upon request with the Vehicle's current license plate number, date and state of registration, and any other information about the Vehicle we may reasonably request. If you fail to provide us with that information and we need to obtain it from another source, such as the state motor vehicles department, you will reimburse us for the reasonable expenses we incur in doing so.

(2) Official Fees. You agree to timely pay all license, title, registration, inspection, testing, and other fees, taxes and charges imposed by government authorities or pursuant to law in connection with the Vehicle or this Lease. You must pay all such fees incurred during the Lease Term, even if they are assessed and billed after the Lease has ended.

(3) Tax Reserve. At termination (whether early or at maturity) of this Lease, you agree to pay us an amount ("Tax Reserve") we estimate to pay personal property and other taxes applicable to the Vehicle or this Lease for tax periods occurring before termination. If the actual taxes are more than the Tax Reserve we collected, you will also owe us the difference. If they are less, we will refund you any excess. You will not be entitled to interest on any Tax Reserve we collect from you. We are not obligated to apply for any refund or abatement of official fees or taxes, including personal property taxes. **Some states assess personal property taxes for the full tax year, without prorating the tax if the Vehicle is sold or transferred during the tax year. You are responsible for the taxes assessed for the full tax year, even if the Lease terminates before the end of the tax year.**

(4) Retitling Fee. In addition to any government-imposed fees, we may charge you and add to the amount you owe under this Lease a retitling fee of $25 if the Vehicle is re-titled/re-registered because you move, change your name or add or remove a lessee from the Vehicle's title, unless the fee is prohibited by law.

**E. ASSIGNMENT AND TRANSFER OF THE VEHICLE.** You may not assign, sell, give a security interest in, sublease or arrange an assumption of your interests or rights under this Lease or in the Vehicle without our prior written permission.

83675*11CKIA-FI

Lessee Initials X _____ Co-Lessee Initials X _____ N/A

05/02/2022  11:19 am

Form No. LSE KMF Z (Rev. 1/2020) ©2020, Hyundai Capital America

Page 5 of 8

## 22. EARLY TERMINATION

**A. LESSEE'S RIGHT TO TERMINATE EARLY.** You have the right to terminate this Lease early (before the end of the Lease Term), by returning the Vehicle to us or other person we designate, and paying the applicable Early Termination Liability set forth in **Section 22C**.

**B. LESSOR'S RIGHT TO TERMINATE EARLY.** We may terminate this Lease early if you are in default (see **Section 25C**). If we terminate this Lease early, you will owe us the applicable Early Termination Liability set forth in **Section 22C**.

**C. EARLY TERMINATION LIABILITY.** If this Lease is terminated early pursuant to **Sections 22A** or **22B** of this Lease, you agree to pay us the sum of items (1) through (4) as follows: (1) any unpaid Monthly Payments accrued up to the termination date, plus (2) official fees and taxes in connection with the termination, plus (3) all other amounts due and owing under this Lease, except excess wear and mileage, plus (4) an **early termination charge** calculated as follows:

(i)    Lessee's Early Termination:

     (a) if you terminate this Lease more than 120 days before the end of the Lease Term, the early termination charge you owe (provided the Vehicle is not a Total Loss) will be equal to the lesser of the Standard Formula and the Remaining Payments Formula defined below.

       (x)   Standard Formula: The sum of (1) the difference, if any, between the Adjusted Lease Balance and the Vehicle's Realized Value, plus (2) an early termination fee in an amount equal to the Turn-In Fee disclosed in **Section 4A** of this Lease, and plus (3) the actual expenses we incur in connection with preparing for sale and selling the vehicle, including our third party auction fees and costs for transportation and reconditioning of the Vehicle prior to sale.

       (y)   Remaining Payments Formula: The sum of: (1) all scheduled monthly Lease payments from the termination date through the end of the Lease Term, plus (2) as permitted by applicable law, any excess mileage, plus (3) as permitted by applicable law, any excess wear and use (See **Section 24A**), plus (4) the Turn-In Fee amount disclosed in **Section 4A** of this Lease.

     (b) if you terminate this Lease 120 days or less before the end of the Lease Term, the early termination charge you owe will be the amount equal to the Remaining Payments Formula, provided the Vehicle is not a Total Loss.

     (c) if you terminate this Lease early in connection with a Total Loss, the early termination charge you owe will be the Standard Formula, minus the early termination fee referenced in **Section 22C(i)(x)(2)** ("Total Loss Early Termination Charge").

(ii)   Lessor's Early Termination: the early termination charge if we terminate this Lease early will be the amount equal to the Standard Formula; provided that, if we repossess the Vehicle, in lieu of the early termination fee component of the Standard Formula, you will be charged the actual expenses we incur in connection with repossessing, obtaining and storing the Vehicle.

**D. ADJUSTED LEASE BALANCE.** Your Adjusted Lease Balance is the Adjusted Capitalized Cost disclosed on page 2 of this Lease, less all depreciation and other amortized amounts accrued up to the termination date, calculated according to the Constant Yield Method. "Constant Yield Method" means the method of determining the rent charge portion of each base monthly payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to rent charge as it declines during the scheduled Lease Term. At any time during the scheduled Lease Term, the balance subject to rent charge is the difference between the Adjusted Capitalized Cost and the sum of (1) all depreciation and other amortized amounts accrued during the preceding months and (2) the first base monthly payment.

**E. REALIZED VALUE.** If you obtain an independent appraisal (see below), the Realized Value is the appraised value. If the Vehicle is a total loss, the Realized Value is the amount of any insurance proceeds we receive under your insurance plus any amount received from any other party in payment of the loss; if there is no payment, the Realized Value is zero. In all other cases, the Vehicle's Realized Value will be, at our option: (1) the gross wholesale sales price we receive for the Vehicle at disposition; (2) the fair wholesale market value of the Vehicle at termination according to a recognized used vehicle guide customarily used by motor vehicle dealers selected by us, including, but not limited to, Black Book, or other commercially reasonable valuation methodology, taking into consideration the Vehicle's mileage and physical condition; or (3) any amount you and we agree to in writing after termination.

**F. INDEPENDENT APPRAISAL.** You may obtain, at your expense, a professional appraisal by an independent third party, agreed to by you and us, of the value that could be realized at sale of the Vehicle at wholesale. The appraisal amount shall be final and binding.

## 23. PURCHASE OPTIONS AND VEHICLE RETURN

**A. PURCHASE OPTION AT MATURITY.** At the Scheduled Maturity Date, you may purchase the Vehicle under the conditions and for the amount set forth in **Section 9**, if you are not in Default.

**B. PURCHASE OPTION BEFORE MATURITY.** You have an option to purchase the Vehicle at any time before the Scheduled Maturity Date if you are not in Default, under the terms and conditions in **Section 9**, except that the Purchase Price will be the Adjusted Lease Balance figured according to **Section 22D**.

**C. ADDITIONAL PURCHASE OPTION CONDITIONS. You may not transfer or assign your purchase option to any other party without Assignee's prior written permission.** If you reside in a state that requires a seller to have a motor vehicle dealer license to sell used vehicles, you must purchase the Vehicle from the Lessor (Dealer) or from another authorized, licensed dealer selected by Assignee. Please notify us at least thirty (30) days before you intend to exercise your purchase option so that we may make appropriate arrangements with a licensed dealer, if necessary.

**D. VEHICLE RETURN.** Unless you purchase the Vehicle, you must return it to us or the authorized Kia dealer (or other designee) we designate at the time and place we specify, at your expense, upon termination of this Lease (whether early or at the Scheduled Maturity Date). At that time, you must give us a completed, signed odometer disclosure statement (see **Section 24B**), and a Vehicle condition report if we request one. You must also pay us any amounts you owe under the Lease.

If you fail to return the Vehicle to us, as required above, you will still owe us the Monthly Payments and other amounts that may come due and, if the Vehicle is not returned by the Scheduled Maturity Date, you will owe us an amount equal to the Monthly Payment for each Month or partial month that has elapsed from Scheduled Maturity Date to the date of actual return.

**E. SCHEDULED TERMINATION.** If this Lease is not terminated early and if you do not purchase the Vehicle, this Lease will terminate or end on the Scheduled Maturity Date and you must return the Vehicle (see **Section 23D**). Upon return, you will owe us:

(1)   The Turn-In Fee disclosed in **Section 4A**; **plus**

(2)   Any amounts owed for excess wear; **plus**

(3)   Any amounts owed for excess mileage; **plus**

(4)   All other amounts that are due or past due under this Lease; **plus**

(5)   Any official fees and taxes due in connection with Lease termination.

## 24. STANDARDS FOR WEAR AND USE, ODOMETER MAINTENANCE AND STATEMENT

**A. STANDARDS FOR WEAR AND USE.** When returned to us, the Vehicle must be clean and in the same condition as it was when delivered to you, except for reasonable wear. If you do not purchase the Vehicle, then, upon Vehicle return at Scheduled Maturity Date or early termination as outlined in **Section 22C**, we will charge you for excess mileage and the estimated cost to repair or replace damage or wear to the Vehicle in excess of normal wear and use, whether or not such repairs are actually made, as permitted by applicable law. All repairs and part replacements must be made with original manufacturer's parts or those of equal quality. Excess wear and use includes, but is not limited to, the estimated cost to repair and/or replace:

(1)   mechanical or electrical parts, including but not limited to, power accessories and lighting, that do not work properly;

(2)   body damage, such as dents, scratches, chips, cuts, damage from water, sand or freezing, rusted or corroded areas on the body or other body or frame damage;

(3)   paint damage including but not limited to: mismatched, peeling or faded paint, poor quality or other damage to the paint, poor quality repairs, or lettering or "wrapping" on the body;

(4)   damage to glass components including but not limited to the following: cracks, scratches, pits or chips in the windshield; broken windows or broken power windows; broken or missing headlight lenses, sealed beams or side mirrors;

(5)   interior upholstery, dashboard or other surfaces that are burned, stained, cut or scratched;

(6)   tires not comparable in type and quality to original tires with emergency "doughnut" spare or inflation kit, as applicable, or any tire that is flat, leaking, has been punctured or damaged (whether or not repaired) or that has less than 1/8 inch of tread remaining at its shallowest point;

(7)   missing parts, accessories, and components, including keys and remote entry devices, owner's manual, floor mats, wheel covers, mirrors, GPS or audio components;

(8)   any addition or modification to the Vehicle without our prior written consent; or

(9)   any other wear beyond normal wear or that renders the Vehicle unsafe or incapable of passing any required inspection.

83675*1*ICKIA-FI

Lessee Initials X _____    Co-Lessee Initials X _____ N/A

**B. ODOMETER; REQUIRED STATEMENT.** You understand the odometer on the Vehicle and that it must be entered on 05/06/24. If the odometer is or becomes inoperative, upon return of the Vehicle, you will provide us with reasonable evidence of the Vehicle's actual mileage. You will provide us with an odometer certification at any time we request one. We may request more than one certification during the term of this Lease.

**Notice: Federal law requires you to give us a statement of the Vehicle's mileage in connection with a transfer of Vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.**

If the odometer was tampered with or otherwise does not work correctly and you cannot prove the mileage shown on the odometer, we may charge you and add the amount you owe under this lease the greater of fifteen percent (15%) of the Residual Value or the amount we estimate the Vehicle's fair market value has been reduced by reason of additional miles not reflected on the odometer, the inability to determine the Vehicle's actual mileage, or both.

## 25. LOSS OF VEHICLE, DEFAULT AND REMEDIES

**A. TOTAL LOSS OR DESTRUCTION OF VEHICLE.** If the Vehicle is lost, stolen, destroyed or damaged beyond repair (collectively a "Total Loss"), this Lease will terminate and you will owe the Early Termination Liability as outlined in Section 22C, including the Total Loss Early Termination Charge defined in Section 22C(i)(c).

**B. GAP WAIVER.** Except as otherwise provided, if the Vehicle is a Total Loss and you maintained the insurance required by this Lease, we will waive the Total Loss Early Termination Charge set forth in Section 22C(i)(c), when we receive your insurance proceeds for the Vehicle's actual cash value. You must report the Total Loss to us promptly, pay your insurance deductible and comply with all other terms of this Lease. There is no charge to you for this waiver. Exceptions: *This waiver does not apply if:*
(1) The Vehicle was stolen and no police report was filed;
(2) The Total Loss occurred while the Vehicle was not within the United States of America, its territories or possessions, or Canada, regardless of whether we consented;
(3) The Total Loss resulted from your intentional misrepresentation, wrongful act or omission, or gross negligence;
(4) There is a Default under this Lease which caused or contributed to the Total Loss; or
(5) You fail to timely provide us or our designee with any information or documents reasonably requested in connection with the Total Loss, including a police report and insurance information.

**C. DEFAULT.** You will be in default ("Default") if any of the following occurs:
(1) You do not pay a Monthly Payment when due (or within any grace period the law allows) or any other amount owed when we ask you to pay it;
(2) Any information in your credit application or that of a guarantor of this Lease is false or misleading;
(3) You fail to maintain required insurance;
(4) The Vehicle is subject to actual or threatened confiscation, impoundment, seizure, forfeiture or other involuntary transfer by a government entity or legal process;
(5) You die, are declared incompetent or are incarcerated and there is no surviving lessee, you become insolvent, file a bankruptcy petition, have a bankruptcy petition filed against you or you dissolve or cease business affairs, or make an assignment for the benefit of creditors;
(6) You fail to return the Vehicle to us at the time and place we specify;
(7) The Vehicle is used in any race, speed contest or other contest, or any other illegal manner, with or without your knowledge or consent;
(8) The Vehicle is regularly used by anyone who is not a Lessee under this Lease, unless you have obtained our prior written consent;
(9) Your driver's license expires or is suspended, revoked, canceled or is otherwise restricted, or you become ineligible to obtain a driver's license;
(10) You break any other promise or fail to meet any other obligation under this Lease or in any other agreement with us;
(11) You provided an incorrect Outstanding Prior Credit or Lease Balance and you fail to pay us the excess upon demand;
(12) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with obligations under the Lease; or
(13) You do anything the law says is a Default.

**D. REMEDIES FOR DEFAULT.** If you are in Default, after waiting any time the law requires, we may take any one or more of the following actions, to the extent not prohibited by state law:
(1) Terminate this Lease and/or your rights to use the Vehicle and require you to pay the amount due at early termination;
(2) Take (repossess) the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and exercise our right to take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will neither be responsible for safekeeping such property nor be required to notify you about it, unless otherwise required by law. If you do not pick up the property within that time, we may dispose of it in any way we determine;
(3) Charge and collect from you all out-of-pocket expenses we reasonably incur in connection with our attempts to collect what you owe or enforce our rights under this Lease, including, but not limited to, attorneys' fees for attorneys who are not our employees, court costs, skip-tracing, repossession efforts, transportation and storage of the Vehicle, except as limited by applicable law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law;
(4) Take any reasonable action to correct the Default or to protect our interest in the Vehicle (for example, buying insurance or removing you from this Lease). You agree to reimburse us for any amounts we pay to correct or cover your Default;
(5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner;
(6) Make a claim for or cancel any and all insurance and optional products and services included with this Lease that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe; and
(7) Use any remedy we have at law or in equity.

NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS. Pursuant to the requirements of Colorado Revised Statutes § 43-4-808(2)(f)(II)(B), you will be liable for payment of all toll evasion violation civil penalties incurred on or after the date you take possession of the motor vehicle. The Lessor will provide your name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

## 26. ADDITIONAL TERMS AND CONDITIONS

**A. PAYMENTS.** All payments due under this Lease must be made in good funds of the United States, by check, money order, cashier's check, electronic funds transfer, or as otherwise specified by Assignee.

**B. INDEMNIFICATION.** You agree to indemnify and hold us and our assignees, agents and insurers harmless from all claims, demands, losses and expenses (including reasonable attorneys' fees to the extent not prohibited by law provided that no attorneys' fees will be owed if this Lease if governed by Iowa, Maine or Ohio law) arising from the Vehicle's use, condition or operation, including claims based on strict liability and negligent entrustment.

**C. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** This lease may contain charges for optional insurance, service contracts or other contracts for products you purchased in connection with this Lease. You agree that we can claim benefits under such contracts. Unless prohibited by law, we may, upon your default or termination of this Lease, cancel any such contracts to obtain refunds of unearned charges or premiums. You authorize us to subtract any refund we receive on your behalf for any such contracts that are cancelled from the amount you owe under this Lease. If you receive a refund for any cancelled optional product contract, you must pay the entire amount of the refund to us.

**D. ASSIGNEE LIABILITY.** Except as limited by applicable law, you agree not to assert against any Assignee of this Lease, or its agents, any claims or defenses you may have against the Lessor from whom you originally leased the Vehicle.

**E. OWNERSHIP.** We own the Vehicle solely, including all original and after-market accessories installed on the Vehicle. This is a true lease for tax and other purposes and we receive all benefits of ownership. We have not given you any tax advice regarding this Lease.

**F. SECURITY INTEREST.** You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) loss proceeds of any insurance which you maintain with respect to the Vehicle; (2) the proceeds of any mechanical breakdown protection contract, service contract, excess wear and use waiver or other optional insurance or other product purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.

**G. WAIVER.** We do not waive our rights or remedies under this Lease by delaying or failing to exercise them at any time. Our acceptance of late or partial payments under this Lease will not constitute a waiver of our right to receive timely payment in full or of any other rights.

**H. JOINT LIABILITY.** Lessee and any Co-Lessee are jointly and severally liable under this Lease. Our release, waiver or delay in the enforcement of our rights as to one Lessee shall not affect our rights as to the other Lessee signing this Lease.

I. **ADDRESS CHANGES AND NOTICES.** We will send notices (including any default and repossession notices) and correspondence to you at the Billing Address or the Garaging Address changes or is incorrect, you agree to notify us of the Garaging and new address within 15 days after that change. If you move and fail to notify us of your new address and we receive a forwarding address for you from the United States Postal Service, we will update your Billing Address to that forwarding address. If we are required to send you any notices, you agree that 10 days' notice is a reasonable notice period, unless state law requires a longer period.

J. **SERVICING AND COLLECTION CALLS.** You agree that we, our agents and/or others we retain may monitor and record telephone calls with you in connection with this Lease. You also agree that we, our agents and/or others we retain may use an automatic telephone dialing system or artificial or prerecorded voice (collectively, "calling services") to call you on your cellular telephone or on any service for which you are charged for the call (including sending voicemail messages, text messages and e-mail), unless prohibited by law. This agreement does not restrict us from contacting you using any other means allowed by law. **You also agree that any revocation for us, our agents and/or others we retain, to call you on any of your telephone numbers using any calling services may only be made in writing to us if addressed to Hyundai Capital America; Attn: Legal Department at 3161 Michelson Dr., 19th Floor, Irvine, CA 92612;** and any verbal request to not be contacted regarding your obligations shall not be deemed a revocation of your consent for us to use calling services to call you (to the extent permitted by applicable law).

K. **LIMITED POWER OF ATTORNEY.** You appoint us or our agent as your attorney-in-fact to do the following: (1) settle any insurance claim related to the Vehicle; (2) endorse your name on any check or draft we receive for damage or loss of the Vehicle; and (3) to sign your name to any title, registration or other documents related to the Vehicle, for example, state motor vehicles department applications and documents. This power of attorney is coupled with an interest in the Vehicle and is not revocable.

L. **ADDITIONAL INFORMATION AND DOCUMENTS.** During the term of this Lease, you agree to provide us with additional documents and information we may reasonably request to verify any information provided in connection with your credit/lease application or your compliance with this Lease. You also agree to sign additional documents we reasonably request to carry out the terms of this Lease, including, but not limited to, motor vehicles department forms and applications.

M. **OUR ASSIGNMENT OF THIS LEASE.** We may assign some or all of our rights and obligations under this Lease at any time to anyone, including the HLTT, without your consent. Our assignment of this Lease will not affect your rights or obligation under this Lease. **Lessor and its employees are not agents of Assignee or Kia Motors Finance and have no authority to obligate either of them.** Kia Motors Finance, as the agent for the HLTT, has the power to act on the HLTT's behalf to administer, enforce and defend this Lease. You agree to pay all amounts owed under this Lease to Kia Motors Finance, or as otherwise directed by us. As part of a like-kind exchange program, the Assignee has engaged HCA Exchange, Inc., as a qualified intermediary. Dealer is hereby notified that Assignee has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the purchase of the Vehicle. If Lessee purchases the Vehicle, Lessee is hereby notified that the Assignee has engaged HCA Exchange, Inc., as qualified intermediary and has assigned to HCA Exchange, Inc., its rights (but not its obligations) in the agreement for the sale of the Vehicle.

N. **ENFORCEABILITY.** If any provision of this Lease is found unenforceable, void, illegal or otherwise against applicable law, the remaining provisions of this Lease will remain in full force and effect.

O. **ENTIRE AGREEMENT.** Important. Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. Terms and promises, including oral promises, are not enforceable unless they are expressly contained in this Lease. This Lease is a final expression of the lease agreement between you and us. This Lease may not be contradicted by evidence of any prior oral lease agreement or of a contemporaneous oral lease agreement between you and us.

P. **GOVERNING LAW.** This Lease will be governed and enforced by federal law and the internal laws of the state in which the Dealer is located as shown by the Dealer's address in **Section 1** of this Lease.

Q. **NOTICE TO UTAH LESSEES:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

R. **ARBITRATION PROVISION. Your Lease shall be subject to the following arbitration provision:**

---

### MANDATORY ARBITRATION
#### IMPORTANT INFORMATION, PLEASE REVIEW
#### THIS IMPACTS YOUR LEGAL RIGHTS

A. **Agreement to Arbitrate.** In the event of a claim or dispute between you and us (including our respective agents, employees, officers, directors, affiliates, subsidiaries and parents) ("we" or "us"), whether in contract, tort, statute, or otherwise, arising under or relating to this Lease or the Leased Vehicle, your experience with us, or any resulting transaction or relationship, the claim or dispute must be resolved by binding arbitration, as described below, instead of in court. Any claim or dispute (except for a claim challenging the Class Action Waiver below) must be resolved by binding arbitration if either side requests it, including a claim challenging the validity or enforceability of this Agreement to Arbitrate. **THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO, DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.**

B. **CLASS ACTION WAIVER. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS IF A DISPUTE WERE ARBITRATED, YOU WOULD GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.**

C. Only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver. Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit.

D. **Your Right to Go To Small Claims Court.** We will not choose to arbitrate any claim you bring in small claims court. However, if such a claim is transferred, removed or appealed to a different court, we may then choose to arbitrate.

E. **Self-Help Rights.** Neither you or us waive any rights to seek self-help remedies, such as repossession or replevin of our respective property.

F. **Governing Law and Rules.** This Agreement to Arbitrate is governed by the Federal Arbitration Act (FAA). Arbitration must proceed only with the American Arbitration Association (AAA) or JAMS, or any organization that you choose subject to our approval. The rules for the arbitration will be those in this Agreement to Arbitrate and the procedures of the chosen arbitration organization. For a copy of each organization's procedures, to file a claim or for other information, please contact:

AAA at www.adr.org; 800-778-7879

JAMS at www.jamsadr.com; 800-352-5267

G. **Fees and Costs.** If you wish to begin arbitration against us but you cannot afford to pay the organization's or arbitrator's costs, we will advance those costs if you ask us in writing. Any request like this should be sent to Hyundai Capital America, Attn: Legal Department, 3161 Michelson Dr., 19th Floor, Irvine, CA 92612. If you lose the arbitration, the arbitrator will decide whether you must reimburse us for money we advanced for you for the arbitration. If you win the arbitration, we will not ask for reimbursement of money we advanced. Additionally, if you win the arbitration, the arbitrator may decide that you are entitled to be reimbursed your reasonable attorneys' fees and costs (if actually paid by you).

H. **Hearings and Decisions.** The arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. A single arbitrator will be appointed.

I. **Arbitrator Requirements.** The arbitrator must: (i) Be a retired judge or justice of any state or federal court; (ii) Proceed with the arbitration under the procedural rules of the FAA; (iii) Follow all applicable substantive law of the governing law set forth in Section 26.P of the Lease ("Governing Law") without regard to such Governing Law's choice of laws principles, except when contradicted by the FAA; (iv) Follow applicable statutes of limitations set forth in the Governing Law; (v) Honor valid claims of privilege; and (vi) Issue a written decision including the reasons for the award.

J. **Final Decision and Appeal.** The arbitrator's award will be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may appeal to a new appellate arbitrator. The appeal must be filed with the arbitration organization not later than 30 days after the original award issues and the appealing party must pay all appellate costs, unless the appellate arbitrator determines otherwise as part of its award. If you are unable to pay the appellate arbitrator's costs, we will advance those costs, if you ask us in writing, as set forth in Section G of this Arbitration Provision. Any arbitration award may be enforced (such as through a judgment) in any court with jurisdiction. If any part of this Agreement to Arbitrate is deemed or found to be unenforceable for any reason (except as set forth in the following sentence), the remainder shall remain enforceable. However, if the Class Action Waiver is deemed or found to be unenforceable for any reason, this entire Agreement to Arbitrate will be deemed unenforceable.

---

83675*1*ICKIA-FI

Lessee Initials X ____    Co-Lessee Initials X ____  N/A

05/02/2022   11:19 am

Page 8 of 8



STATE OF IOWA

## CERTIFICATE OF TITLE TO A VEHICLE      **Regular**

Designation

Title No. **52AG47515**     Issuing County **Johnson**     Issue Date **06/16/2022**

VIN **3KPF24AD1NE475538**     Managing County **Johnson**     Type **Automobile**

| Year | **2022** | Make **KIA** | Model **Forte Fe** | Style | **SD** |
|---|---|---|---|---|---|
| Cyl. | **4** | Fuel **Gasoline** | Weight **3,000** | GVWR | |
| Color | **White** | | LP. **$19,600** | Sq. Ft. | |
| Odometer | **19 Actual Miles** | | | Cumulative Damage | |

Owner(s)

**Hyundai Lease Titling Trust**
**2975 Breckinridge Blvd**
**Duluth GA 300964977**

Prev. Title No./ST **10313078**
Prev. Owner
**Billion Kia of Iowa City**
**2733 MORMON TREK BLVD**
**IOWA CITY IA 522408606**

| | Fee | Penalty |
|---|---|---|
| Title Fees | $25.00 | $0.00 |
| Fee for New Reg | $778.00 | |
| Registration Fees | $158.00 | $5.00 |
| SI Fees | $10.00 | |
| Plate Fees | $0.00 | |
| Other Fees | $1.00 | |
| Totals | $972.00 | $5.00 |

**1ST Security Interest**      *If there are NO Security Interests "X" here.* ☐
Date: **06/16/2022**     No: **52L07902071**
Held By: **Hyundai Lease Titling Trust**
Address: **2975 Breckinridge Blvd Duluth GA 300964977**

**Cancellation of 1ST Security Interest**
Date_____ No._____ Date_____
Holder_____ CO Treas._____
By_____ By._____

**2ND Security Interest**
Date:      No:
Held By:
Address:
**Cancellation of 2ND Security Interest**
Date_____ No._____ Date_____
Holder_____ CO Treas._____
By_____ By._____

**3RD Security Interest**
Date:      No:
Held By:
Address:
**Cancellation of 3RD Security Interest**
Date_____ No._____ Date_____
Holder_____ CO Treas._____
By_____ By._____

Witness My Hand

Thomas L. Kriz     By_____     Deputy
County Treasurer

jmon      B023951154

THIS TITLE CONTAINS AN EAGLE WATERMARK WHICH IS VISIBLE WHEN HELD TO LIGHT.