UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| *In re* <br><br> MERCY HOSPITAL, IOWA CITY, IOWA, et al., <br><br> Debtor. | Chapter 11 <br><br> Case No. 23-00623 (TJC) <br><br> Jointly Administered <br><br> Re: Dkt. No. 760, 927, 993 |

### LIMITED OBJECTION OF CERTAIN CONCERNED PENSIONERS TO CONFIRMATION OF THE AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

Nancy Russo, J. Nicholas Russo, and Brent Strabala, (the "**Concerned Pensioners**") by and through their attorneys, file this limited objection to confirmation of the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation (the "Plan"), with respect to certain elements of its treatment of the claims and rights of beneficiaries of the Pension Trust.[1]

**A.      Objection to Assignment of Pension Causes of Action for Insufficient Consideration**

1.      The Concerned Pensioners are not members of the group of Mercy Hospital pensioners who formed an adhoc group early in this case and ultimately elected a few of its members to the Pension Committee once that committee was formed under 11 U.S.C. § 1102.  The Concerned Pensioners supported the formation of the Pension Committee[2] and appreciate the work that the Pension Committee and its professionals did in this case.  However, the Concerned Pensioners have questions and concerns about the settlement struck between the Pension Committee, the Debtors, the Creditor's Committee, and the Bondholders, as memorialized in the Plan (the "Pension Settlement").  It is unclear whether the Pension Settlement provides any material economic value to the Pension Trust and its beneficiaries.

---

[1]   Capitalized terms used herein but not otherwise defined have the meaning ascribed in the Plan.
[2]   The Concerned Pensioners supported the formation of the Pension Committee.  See Dkt. No. 419.

1

2.	It is good news for Pensioners that - as promised by the Debtors when this case commenced - the Pension Trust remains untouched.  At last report, it held approximately $118 million to continue to pay active pensioners according to the treatment they elected.  This remains unaffected by the proposed Plan.

3.	As reported, as of the Petition Date, the Pension Trust should have held approximately $141 million, and the difference between that number and the $118 million currently held by the Pension Trust is the Pension Trust's claim against the Debtors (the "Pension GUC Claim")[3].  Originally estimated at approximately $23 million, the plan proponents now estimate that the range of that deficiency may range from $7.9 million to $29.5 million, based on a more recent actuarial analysis performed by Deloitte.[4]  For simplicity, this Limited Objection will assume that the value is the median of that range - $18.7 million.

4.	In the Plan, the Debtors have amended the approach to Pensioner claims against the bankruptcy estate from the plan originally filed at docket number 760.  In the original Plan, Pensioners held direct general unsecured claims against the estate.  Now, the Plan provides that Pensioner general unsecured claims are not held individually but are supplanted by and incorporated into the Pension GUC Claim.[5]  Distributions will be made by the Liquidation Trust to the Pension Trust on that claim in the same percentage as distributions will be made to all non-Pensioner unsecured creditors.  With the current estimate of that distribution at 8 to 10%, the Pension Trust is expected to receive, on account of its general unsecured claim (estimated at $18.7 million), distributions totaling between $1.496 million and $1.87 million.

5.	The troubling part of the Pension Settlement is the treatment of the Pension Trust's unique claims that it may hold against, for example, the former Pension Plan administrator, the Pension Plan's actuaries, or others in connection with the Pension Trust shortfall (the "Pension

---

[3]   Plan, ¶ 1.159.

[4]   Plan, Article V, Sec. A at page 72.

[5]   The Concerned Pensioners agree that this change in approach is appropriate.

Causes of Action").[6]   The Concerned Pensioners do not claim to know whether there are any viable Pension Causes of Action and, if so, the extent of their value, though in theory, their value is up to the value of the shortfall (e.g., $18.7 million).  The key fact is that those claims belong solely to the Pension Trust and, if pursued, could be pursued solely for the benefit of the Pension Trust and its beneficiaries.  In fact, the original Plan [Dkt. 760] preserved the Pension Causes of Action for the sole benefit of the Pensioner class.

6. Under the current Plan, however, the Pension Causes of Action are assigned to the Liquidation Trust to be pursued (if at all) by the Liquidation Trustee for the benefit of all general unsecured creditors, not just the Pensioners.[7]  In exchange for this assignment of the Pension Causes of Action, the Pension Trust will receive an "advance" of $733,000 (the "Advanced Pension Plan Distribution Amount")[8] on the distributions it will receive on account of its claim.[9]

7. Leaving aside whether the $733,000 advance on distributions is sufficient consideration for the sale of the Pension Causes of Action to the Liquidation Trust if the transaction was an outright sale - the transaction is not, in fact, an outright sale.  Rather, Pension Causes of Action are exchanged for an advance on the Pension Trust's right to a distribution on its claim.  The advanced amount will ultimately be deducted from subsequent distributions to the Pension Trust on its claim, until the Pension Trust receives the same percentage distribution as all other unsecured creditors.

---

[6]   Plan, ¶ 1.156.

[7]   Plan, ¶ 1.134 (incorporating Pension Causes of Action into the Causes of Action (Plan, ¶ 1.40) assigned to the Liquidation Trust).

[8]   Plan, ¶ 1.10.

[9]   The Pension Trust is also receiving a $250,000 "Pension Trust Administrative Cost Amount" for the continued administration of the Pension Plan, an amount that can be reduced pro rata with other Plan entitlements (the Bondholder Claim Cash Amount, the Liquidation Trust Expense Fund, and the Unsecured Claims Initial Cash Amount) where additional cash is required to fund, or reserve for, Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Professional Fee Claims.  Since this amount was proposed in the initial Plan at docket 760, and that initial Plan did not include the proposed assignment of the Pension Causes of Action to the Liquidation Trust, the Pension Trust Administrative Cost Amount is not consideration for the Pension Settlement.

8. As a result, the only consideration represented by the advance appears to be the "time-value" of the advance.

9. And what is the "time-value" of the advance? The $733,000 advance is roughly 4% of the estimated Pension Trust shortfall. If we assume something like a generous 5% annual return on the Pension Trust investments generally, and thus a 5% annual return on that advance – 5% being the lodestar rate these days on higher interest savings accounts, certificates of deposit, and similar conservative investments[10] – that advance is worth $36,650 in first year earnings to the Pension Trust, an extremely small benefit even if we ignored the fact that (a) the $733,000 is subject to an immediate holdback of $150,000 held in escrow - thus eliminating any time-value of that portion of the advance - and (b) whatever is ultimately advanced to the Pension Trust will be set off and backed out of subsequent distributions to the Pension Trust on account of its Pension GUC Claim.

10. Over the next three of years, the "time value" of the advance to the Pension Trust may provide - generously calculated - approximately $115,539 of actual cash value to the Pension Trust,[11] an amount that is less than 1% of the potential damages attributable to the Pension Causes of Action. Furthermore, the impact of that "time-value" component is lowered by the subsequent reduction in the distribution to the Pension Trust on account of its claim.

11. While the Pension Trust can benefit, as a general unsecured creditor, from net recoveries on the Pension Causes of Action - assuming they are brought by the Liquidation Trustee - those recoveries are pooled and shared with a far larger class of non-Pension general unsecured creditors.

---

[10]   As of May 6, 2024, Bankrate (www.bankrate.com) reports on some of the highest current CD offerings, including: Wintrust (5.2% - 7 month CD); Capital One (5.1% - 10 month CD); Marcus by Goldman Sachs (5.0 % - 12 month CD); Barclays (5.0 % - 12 month CD); Lending Club (5.15% - 12 month CD). As of May 6, 2024, Bankrate reports that the national average across all surveyed lending institutions for CD's is substantially lower - 1.76% annual percentage rate.

[11]   $733,000 at 5% APY, compounded annually for three years, totals $848,539.13, or an increase of $115,539.13.

4

12. In sum, the economic benefits to the Pensioner class of the Pension Settlement are not obvious to the undersigned Concerned Pensioners. The economic exchange seems, if anything, more likely weighted in favor of the Debtors and other creditors.

13. The Concerned Pensioners admit that they are not privy to the analysis that the Pension Committee undertook to negotiate and accept this deal. However, they are not aware of any communications from the Pension Committee to its constituents regarding the bases for the settlement. Nor does the approved Disclosure Statement component of the Plan or the Plan itself address any of the specific components of the Pension Settlement. Rather, the Disclosure Statement merely notes that the Plan incorporates settlement discussions and terms that included the participation and agreement of the Pension Committee.[12]

14. Whatever the basis, neither the Debtors nor the Pension Committee has explained why the assignment of the Pension Causes of Action to the Liquidation Trust for what appears to be relatively nominal consideration is reasonable or justified under the circumstances.

15. To justify the Pension Settlement as a component of the overall Plan, the Debtors presumably need only satisfy Federal Rule of Bankruptcy Procedure 9019 - a standard that is not a particularly high bar, from the Debtors' perspective. From the Concerned Pensioners' perspective, however, the proposed treatment must also be justified from the Pensioner side, and that case has not been made.

**B.  Limited Objection to Plan Releases**

16. In addition, the Concerned Pensioners share the concerns expressed in the objection to confirmation filed by Mercy Health Network, Inc. d/b/a MercyOne [Dkt. No. 1016] regarding the breadth of the proposed releases in the Plan.

17. Outside of the Plan, any causes of action held by the Pension Trust would not be impaired by releases granted in the Plan. However, to the extent that the "Pension Causes of Action" are incorporated broadly into all "Causes of Action" and are assigned to the Liquidation

---

[12] See Plan, pages 40-41, 63-64 (describing generally a settlement related to value of Bondholder collateral and a settlement mediation occurring in March 2024 that included the Pension Committee).

Trust, the impact of the broad releases on the viability and value of the Pension Causes of Action is unknown. The Plan should provide that there are no releases granted in connection with the Pension Causes of Action, except with respect to the releases that are granted to certain parties for activities from and after the Petition Date.

|  |  |
|---|---|
| Dated: May 6, 2024 | **NANCY RUSSO, J. NICHOLAS RUSSO, AND BRENT STRABALA, CONCERNED PENSIONERS** |
|  | By: /s/ Mark S. Melickian |
| Samuel Z. Marks (AT0004896)<br>**MARKS LAW FIRM P.C.**<br>4225 University Avenue<br>Des Moines, Iowa 50311<br>Telephone: 515.276.7211<br>Fax: 515.276.6280<br>Email: office@markslawdm.com | -- and --  Mark S. Melickian (admitted *pro hac vice*)<br>**RAINES FELDMAN LITTRELL LLP**<br>30 N. LaSalle St., Ste. 3100<br>Chicago, Illinois 60602<br>Telephone: 312.704.9400<br>Mobile:    312-576-3644<br>Facsimile:  312.372.7951<br>Email: mmelickian@raineslaw.com |

# CERTIFICATE OF SERVICE

I hereby certify that on this day, May 6, 2024, a true and correct copy of the foregoing *Limited Objection of Certain Concerned Pensioners to Confirmation of the Amended Joint Chapter 11 Plan of Liquidation* was served electronically on all parties who receive electronic notice through the CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/  Mark S. Melickian

Mark S. Melickian
**RAINES FELDMAN LITTRELL LLP**
30 N. LaSalle St., Ste. 3100
Chicago, Illinois 60602
Telephone:    312.704.9400
Mobile:          312-576-3644
Facsimile:     312.372.7951
mmelickian@raineslaw.com

1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this day, May __, 2024, a true and correct copy of the foregoing pleading was served electronically on all parties who receive electronic notice through the CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/  Mark S. Melickian

Mark S. Melickian (admitted *pro hac vice*)
**RAINES FELDMAN LITTRELL LLP**
30 N. LaSalle St., Ste. 3100
Chicago, Illinois 60602
Telephone:    312.704.9400
Mobile:          312-576-3644
Facsimile:     312.372.7951
mmelickian@raineslaw.com