**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) ) ) | Case No. 23-00623 (TJC) |
| Debtors. | ) ) ) | Jointly Administered |

**DEBTORS' RESISTANCE TO PROGRESSIVE REHABILITATION ASSOCIATES' MOTION FOR PAYMENT OF ORDINARY COURSE INVOICES**

Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file *Debtors' Resistance to Progressive Rehabilitation Associates' Motion for Payment of Ordinary Course Invoices* (this "Resistance") in opposition to *Progressive Rehabilitation Associates' Motion for Payment of Ordinary Course Invoices* [Docket No. 990] (the "Payment Motion"). In support of this Resistance, the Debtors respectfully represent as follows:

**INTRODUCTION**

1. The Court should deny the Payment Motion for two independent reasons. First, the Debtors' liability to Progressive Rehabilitation Associates, LLC ("PRA") was fully resolved via the $200,000.00 cure payment that PRA agreed to accept from the State University of Iowa (the "University") as part of the assumption and assignment of certain of the Debtors' executory contracts pursuant to this Court's *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Authorizing the*

1

*Assumption and Assignment of Contracts and Leases, and (III) Granting Related Relief* [Docket No. 476] (the "Sale Order").

2. Second, even if the Debtors' obligations to PRA had not been satisfied by the University's cure payment to PRA (which they were), the *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 929] (the "Plan") that is currently being solicited to certain of the Debtors' creditors has a specific procedure set forth for allowance and payment of administrative claims. PRA has filed an administrative claim in the case based on the alleged invoices detailed in the Payment Motion. PRA should be required to comply with the provisions of the Plan like all other administrative claimants in this case.

3. The Payment Motion is an attempt to double dip by PRA. The Sale Order and Assumption and Assignment Procedures (as defined below) set forth therein are binding on PRA. PRA has not demonstrated cause to relieve it from the Sale Order under the Bankruptcy Rules. The Payment Motion should therefore be denied.

**BACKGROUND**

**I.     The Sale Process and Assumption and Assignment Procedures**

4. On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

5. On August 9, 2023, the Debtors filed *Debtors' Motion for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner*

*of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 58] (the "Sale Motion").

6. Pursuant to the Sale Motion, among other things, the Debtors sought an order from the Court establishing a process for the assumption and assignment of the Debtors' executory contracts to the eventual winning bidder (the "Assumption and Assignment Procedures"). *See Sale Motion*, ¶ 35. The proposed Assumption and Assignment Procedures provided a variety of procedures for the winning bidder and Debtors to designate any of the Debtors' executory contracts for assumption and assignment as part of the sale process under the Sale Motion. The Assumption and Assignment Procedures included, among other things, (i) providing notice of proposed assumption, assignment, and cure amounts to contract counterparties and (ii) providing objection deadlines for the Debtors' executory contract counterparties to object to such assumption, assignment, and cure amounts.

7. On September 14, 2023, the Court entered its *Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Break-Up Fee, (C) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Contract Assumption and Assignment Procedures, and (F) Granting Related Relief* [Docket No. 222] (the "Bidding Procedures Order").

8. Pursuant to the Bidding Procedures Order, among other things, the Court approved the Assumption and Assignment Procedures. *See Bidding Procedures Order*, ¶¶ I, 7.

9. In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, on September 20, 2023, the Debtors served their *Notice of Assumption and*

3

*Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 265] (the "Cure Notice"). The Cure Notice explicitly provides in bold, italicized font that "***[e]ach Cure Cost listed on the Potential Assumed Contract List represents all liabilities of any nature that the Debtors believe they have arising under a potential assumed Contract prior to the closing of the Sale***…" (emphasis added).

10. The Cure Notice listed seven contracts with PRA (the "PRA Contracts"), with a total cure amount of $150,056.23. *See Cure Notice*, p. 18. Cure Notice was served on PRA in accordance with the Assumption and Assignment Procedures. *See Certificate of Service*, Ex. A [Docket No. 368].

11. On October 2, 2023, PRA filed its *Response to Debtors' Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs* [Docket No. 316] (the "PRA Cure Objection"). The PRA Cure Objection argued that PRA's cure amount was higher than the amount listed by the Debtors. It also stated that "[p]ursuant to 11 U.S.C. § 365(b)(1)(A), the Debtors must pay all amounts outstanding under the Contracts at the time of assumption." *PRA Cure Objection*, ¶ 5 (emphasis added).

12. On November 7, 2023, the Court entered the Sale Order. The Sale Order acknowledged the PRA Cure Objection (among other cure and assumption and assignment objections filed) and gave such contract counterparties until January 12, 2024 to either resolve their objections with the Debtors and University or file a formal objection. *See Sale Order*, ¶¶ L, 21. The Sale Order further provides that "[t]he provisions of this Sale Order shall be effective and binding upon the Contract Counterparties to the extent set forth in, and in accordance with, [these] procedures." *Id.*

4

13. The Sale Order further provides that "[a]fter the payment of the relevant Cure Amounts, neither the Debtors, nor the Purchaser shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assumed Contracts, which accrue and become due and payable on or after the Closing Date." *Sale Order*, ¶ 13.

14. The Court set a hearing for January 22, 2024 pursuant to the Assumption and Assignment Procedures and Sale Order to resolve any remaining issues with executory contracts and cure amounts in connection with the sale to the University (the "Cure Objection Hearing"). *See* Docket Nos. 561, 683.

## II. Agreed PRA Cure Amount

15. PRA did not file a second formal objection by January 12, 2024 or attend the Cure Objection Hearing because PRA reached an agreement with the University to set PRA's cure amount at $200,000.00, approximately $50,000.00 more than the amount listed by the Debtors.

16. On January 31, 2024, the Debtors filed their *Notice of Designation of Assumed Contracts and Cure Amounts Related Thereto as of January 31, 2024* [Docket No. 698] (the "Final Assumption and Assignment Notice"). The Final Assumption and Assignment Notice listed the final cure amounts being paid to contract counterparties as of January 31, 2024 (either by agreement of the parties or order of the Court) in connection with the sale of substantially all of the Debtors' assets pursuant to the Sale Motion to the University (the "Sale").

17. The Final Assumption and Assignment Notice listed the cure amount for the PRA Contracts at $200,000.00, as had been agreed to between PRA and the University. *See Final Assumption and Assignment Notice*, pp. 55-56.

18. On February 1, 2024, the Debtors filed their *Notice of Sale Closing* [Docket No. 699], which provided notice to parties-in-interest that the Sale closed on January 31, 2024.

5

19. In other words, PRA agreed that as of the date of closing—January 31, 2024— the total amount due to PRA was $200,000.00.

20. Nevertheless, PRA filed the Payment Motion seeking an additional $83,178.25. PRA acknowledges in the Payment Motion that the additional amounts were known to PRA at the time of the Sale closing.

## APPLICABLE LAW

21. Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governs requests for the court to relieve a party from a prior order or judgment. Fed. R. Bankr. P. 9024. In turn, Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedures (the "Federal Rules") except for in certain situations not relevant to this Resistance. *Id.*

22. Relief under Federal Rule 60(b) is "an extraordinary remedy that lies within the discretion of the trial court." *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004). There are a variety of grounds for granting relief under Federal Rule 60(b) including "(1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence…(3) fraud…(4) the judgment is void, (5) the judgment has been satisfied…(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Vacation of a prior order of the court should only be done to "accomplish justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

## ARGUMENT

23. In effect, PRA argues that the Court should vacate its prior orders related to the Sale and Assumption and Assignment Procedures and allow PRA to seek an additional $83,178.25 from the Debtors' estates, after having agreed to and received a $200,000.00 cure payment from the University. This is an attempt to double dip, and is particularly unfair to the Debtors' other

unsecured creditors and pensioners. Moreover, PRA has not demonstrated (nor can it) grounds for relief under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(b).

24. PRA acknowledges in its Payment Motion that the invoices it is seeking payment on now were for amounts due and owing prior to January 31, 2024. The relief the Payment Motion seeks is <u>expressly prohibited</u> by paragraph 13 of the Sale Order and the Assumption and Assignment Procedures themselves.

25. PRA itself also acknowledges that the required cure amount is the amount due at the time of closing. *PRA Cure Objection*, ¶ 5 ("[p]ursuant to 11 U.S.C. § 365(b)(1)(A), the Debtors must pay all amounts outstanding under the Contracts <u>at the time of assumption</u>." (emphasis added)). By PRA's own logic and pleadings, it should be foreclosed now from seeking additional payments.

26. Finality of the cure amounts was an important point of the Sale to the University. The University paid $3,410,010.54 to the Debtors' contract counterparties and, in the process, removed $3,410,010.54 from the Debtors' claim register. This reduction of claims against the estate was a material inducement to the Debtors consummating the Sale to the University and a factor considered when assessing bids. To reverse the plain language of the Sale Order now would strip all other parties in interest in this case (other than PRA) of the benefit of that collective bargain. It would also open the door for other contract counterparties to seek additional amounts that had previously been agreed to or set by the Court via the Assumption and Assignment Procedures and Sale Order.

27. PRA, in effect, asks this Court to modify the Sale Order and Bidding Procedures Order to allow PRA to have its cake and eat it too. PRA has demonstrated no reasons why the Court should grant this "extraordinary remedy" under Federal Rule 60(b).

7

28. Finally, PRA has also filed an administrative claim on the basis of the invoices set forth in the Payment Motion. The Plan has an explicit procedure for creditors like PRA seeking payment on administrative claims. Article IV of the Plan provides for payment of Allowed Administrative Expense Claims (as defined in the Plan) and allows an objection period for parties in interest that wish to object to such Administrative Expense Claim before it is Allowed (as defined in the Plan). The Payment Motion seeks to shortcut this process.

29. PRA should not be allowed to cut to the front of the line. Notwithstanding the fact that it is not entitled under the Sale Order to payment for the invoices incurred prior to closing of the Sale, PRA should be required to comply with the administrative claims process in seeking the Payment sought by the Payment Motion.

30. Accordingly, the Debtors respectfully request that the Court deny the Payment Motion.

*[Remainder of the Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court **deny** the Payment Motion and grant such other and further relief as may be just and proper.

Dated: Cedar Rapids, Iowa
May 8, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:  (319) 286-7002
Facsimile:  (319) 286-7050
Email:  rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-283-3100
Fax:  515-283-8045
Email: mmcguire@nyemaster.com
         kmstanger@nyemaster.com
         dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:  (312) 372-2000
Facsimile:  (312) 984-7700
Email:  fperlman@mwe.com
         dsimon@mwe.com
         ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)

9

2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

### CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this May 8, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

*/s/ Roy Leaf*