**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY OF PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW (I) APPROVING THE SALE OF THE DEBTORS'
BENEFICIAL INTEREST IN THE THOMPSON TRUST FREE AND CLEAR OF
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (II) MODIFYING TERMS OF
THE THOMPSON TRUST; AND (III) GRANTING RELATED RELIEF**

COMES NOW, Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates

and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "Debtors"), and hereby move (the "Motion") for entry of proposed findings of

fact and conclusions of law to be submitted to the United States District Court for the Northern

District of Iowa (the "District Court") substantially in the form attached hereto as **Exhibit A** (the

"Proposed Findings and Conclusions") granting the relief described below. In further support of

the Motion, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1.      By this Motion, the Debtors request entry of the Proposed Findings and

Conclusions to the District Court, substantially in the form attached hereto as **Exhibit A**, approving

the transfer and sale of all of Mercy's interest as sole beneficiary under the Thompson Brothers

Trust dated August 15, 1960 (the "Thompson Trust") to Mercy Medical Center, Cedar Rapids,

Iowa Endowment Foundation, Inc. (the "Mercy CR Foundation") on the terms set forth in the

*Beneficiary Interest Transfer Agreement* (the "Agreement"). A copy of the Agreement is attached

hereto as **Exhibit B**.

2.      By this Motion, the Debtors also request the application of the *cy pres* doctrine pursuant to Iowa Code section 633A.5102 to modify the terms of the Thompson Trust in accordance with the Agreement to effectuate the transfer of the Beneficial Interest to Mercy CR Foundation.

## INTRODUCTION

3.      The transfer of Mercy's beneficiary interest in the Thompson Trust (the "Beneficial Interest") to Mercy CR Foundation on the terms set forth in the Agreement represents a win-win-win solution for the Debtors, Mercy Medical Center, Cedar Rapids, Iowa ("Mercy CR"), and the residents of Eastern Iowa.

4.      Mercy is the sole beneficiary under the Thompson Trust, which was formed under the will of George A. Thompson, who died September 22, 1947, and the will of Frank L. Thompson, who died December 16, 1957. The Thompson brothers established the Thompson Trust in order to pay yearly income from the Thompson Trust to Mercy for two purposes into perpetuity: (a) to support Mercy's surgical department and (b) to pay for the medical costs of indigent patients who could not otherwise afford their medical care. MidWestOne Bank is currently trustee of the Thompson Trust (the "Trustee"). Mercy has been receiving income from the Thompson Trust for many years on the terms set forth in the Thompson Trust and as discussed in more detail herein.

5.      Facing dire financial circumstances in the summer of 2023, each Debtor commenced a chapter 11 case (collectively, the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on August 7, 2023 (the "Petition Date"). As a result of dwindling liquidity and in order to try and maintain continuity of medical care in the Iowa City community, the Debtors implemented a sale process pursuant to Bankruptcy Code section 363 to sell substantially all of their assets to another entity that would

2

continue to provide medical care out of the Debtors' facilities. The result of that process was the sale to the State University of Iowa (the "Sale"), which this Court approved on November 7, 2023 [Docket No. 476].

6.      As a result of the Sale, Mercy no longer has any active medical operations and will be eventually dissolved as part of the pending chapter 11 plan of liquidation that is before the Court and set for confirmation on May 16, 2024 [Docket No. 929]. Mercy therefore is unable to satisfy the purposes set forth in the Thompson Trust. Absent this Motion, the Thompson Trust would no longer have a beneficiary to which it can distribute trust income.

7.      The Beneficial Interest is property of the Debtors' estates pursuant to Bankruptcy Code section 541. As property of the estate—and because its terms do not restrict alienation or transfer—the Beneficial Interest can be sold under Bankruptcy Code section 363 to a third party.

8.      In an exercise of its fiduciary duties to the stakeholders in these Chapter 11 Cases, representatives for Mercy reached out to at least seven not-for-profit organizations in Eastern Iowa that provide healthcare-related services in order to determine if any such organizations were interested in acquiring the Beneficial Interest. The Debtors believed that the Beneficial Interest presented a unique opportunity for an organization to spend money up front in order to receive the benefit of annual distributions from the Thompson Trust into perpetuity.

9.      Following weeks of communications with various not-for-profit organizations that expressed interest, Mercy received two formal offers to acquire the Beneficial Interest. Mercy's board of directors (the "Board") ultimately determined that Mercy CR Foundation's offer to acquire the Beneficial Interest for $225,000.00 represented the highest and best offer, not only because of the higher purchase price offered, but also because of how closely Mercy CR

Foundation's proposed use of the Thompson Trust funds aligned to the Thompson brothers' testamentary intent.

10.     Transfer of the Beneficial Interest to Mercy CR Foundation will ultimately require application of the *cy pres* doctrine pursuant to Iowa Code section 633A.5102 in order to effectuate the transfer of the Beneficial Interest. The *cy pres* doctrine will need to be applied to modify the terms of the Thompson Trust to substitute Mercy CR Foundation as the sole beneficiary and to slightly alter the terms under which Thompson Trust funds can be used—i.e. one-half of the Thompson Trust income may be used to benefit Mercy CR's surgical department and one-half of the income may be used to pay for medical bills of any indigent patient at Mercy CR. The application of the *cy pres* doctrine here adheres as closely as possible to the Thompson brothers' original testamentary intention and is accordingly soundly within the discretion of the court. *See Kolb v. City of Storm Lake*, 736 N.W.2d 546, 552–53 (Iowa 2007) (indicating that abuse of discretion would be the standard of review for grant of *cy pres* in decision deciding *cy pres* doctrine applies to charitable trusts).

11.     The Debtors believe it is necessary for the District Court to ultimately enter the Proposed Findings and Conclusions pursuant to Rule 9033 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") because of the Court's "related to" jurisdiction over the Debtors' request to use *cy pres* to modify the terms of the Thompson Trust. While the Debtors' request to sell property of the estate is clearly a core matter pursuant to 28 U.S.C. § 157(b)(2), the Court only has "related to" jurisdiction over the Debtors' request to use the *cy pres* doctrine under Iowa law to effectuate the transfer of the Beneficial Interest. *See, e.g.*, 28 U.S.C. § 157(b); 28 U.S.C. § 1334; *Schultze v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014) (explaining that a matter "arises under" title 11 when it concerns administration of the bankruptcy estate or when it concerns

4

a right or action specifically enumerated by the Bankruptcy Code and that a matter "arises in" a

case under title 11 when it is "not based on any right expressly created by title 11, but nevertheless,

would have no existence outside of the bankruptcy").

12.     Accordingly, the Debtors respectfully request that this Court submit the Proposed

Findings and Conclusions to the District Court in the form attached hereto as Exhibit A and grant

any other relief that is just and equitable.

## JURISDICTION AND VENUE

13.     The United States Bankruptcy Court for the Northern District of Iowa (the "Court")

has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Public

Administrative Order referring bankruptcy cases entered by the United States District Court for

the Northern District of Iowa.  This is a non-core proceeding under 28 U.S.C. § 157(c).

14.     The District Court may exercise its original "related to" jurisdiction to effectuate

the sale of estate assets to a third party by modifying the terms of the Thompson Trust pursuant to

the *cy pres* doctrine. *See Gupta v. Quincy Med. Cntr.*, 858 F.3d 657, 663 (1st Cir. 2017) (explaining

that "related to" proceedings are ones "which 'potentially have some effect on the bankruptcy

estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have

an impact upon the handling and administration of the bankrupt estate'"). The use of *cy pres*

accordingly satisfies the Eighth Circuit's "conceivable effect" test for determining whether there

is "related to" jurisdiction. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir.

1995) (stating that a matter is "related to" a bankruptcy case if the proceeding "could conceivably

have any effect on the estate being administered in the bankruptcy").

15.     Venue of these cases and the Motion in this District is proper under 28 U.S.C.

§§ 1408 and 1409.

16.     The statutory predicates for the relief requested in this Motion are sections 105(a), 363(b) and (f), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 9006, 9007, 9014, and 9033, and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Northern District of Iowa (the "Local Rules").

## **BACKGROUND**

### I.    **The Chapter 11 Cases**

17.     The Chapter 11 Cases are being jointly administered for procedural purposes only.

18.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

19.     On August 15, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases [Docket No. 107] (the "Committee"). On November 4, 2023 the U.S. Trustee appointed an official committee of pensioners in the Chapter 11 Cases [Docket No. 458] (the "Pension Committee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

20.     Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27].

### II.    **Sale to the University**

21.     The Debtors commenced the Chapter 11 Cases to pursue the sale of all or substantially all of their assets pursuant to Bankruptcy Code section 363 in order to (a) maximize

the value of their estates and creditor recoveries and (b) try and find an entity that could continue Mercy's operations as a community hospital in Iowa City.

22.    On August 8, 2023, the Debtors filed *Debtors' Motion for Entry of Order (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Provide Stalking Horse Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 58] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtors sought, among other things, authority from the Court to sell substantially all of their assets to the State University of Iowa (the "University").

23.    Following the Debtors' extensive marketing efforts and two auctions, on November 7, 2023, the Court entered an order approving the Sale Motion and the Sale to the University [Docket No. 476].

24.    The Sale, however, does not include certain of the Debtors' rights and interests, including the Beneficial Interest.

25.    Since the Sale, the Debtors' have undertaken efforts to monetize the rights and interests that were not sold to the University and return value to the Debtors' estates. *See, e.g.*, *Debtors' Motion for Entry of Order (I) Approving the Sale of the Debtors' Interest in a Joint Venture Free and Clear of Liens, Claims, Interests and Encumbrances and (II) Granting Related Relief* [Docket No. 703].

### III.   The Thompson Trust

26.     As noted above, Mercy is the sole beneficiary under the Thompson Trust. On August 15, 1960, Mercy and the then-trustee the Iowa State Bank and Trust Company, entered into an *Agreement* and *Enrolled Order* providing for the handling and disbursement of income from the Thompson Trust. A true and correct copy of documents constituting the Thompson Trust are attached hereto as **<u>Exhibit C</u>**.

27.     The Thompson Trust provides that one-half of the income from the Thompson Trust shall be given to Mercy for "equipping and providing or enlarging the surgical department" of Mercy and the other one-half of the income for the provision of "medical care and hospitalization" for patients at Mercy who are residents of Johnson County, Iowa and unable to pay the cost themselves. *See* Ex. C, *Application*, p. 2.

28.     As of December 31, 2023, there was $799,632.29 in Thompson Trust assets as set forth in the *Trustee's Annual Report* attached hereto as **<u>Exhibit D</u>**.

### IV.   Efforts to Monetize Beneficial Interest

29.     After reviewing the Thompson Trust documents, counsel for Mercy, in consultation with Mercy's management team, undertook a process to find a healthcare not-for-profit organization in Eastern Iowa that may be interested in acquiring the Beneficial Interest and continuing to honor the intent of the Thompson Brothers to provide for the general medical welfare of Eastern Iowa.

30.     As set forth in the *Declaration of Roy Leaf in Support of Debtors' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (I) Approving the Sale of the Debtors' Beneficial Interest in the Thompson Trust Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Modifying Terms of the Thompson Trust; and (III) Granting Related Relief*

(the "Leaf Declaration"), counsel for Mercy reached out to at least seven not-for-profit healthcare organizations operating in Eastern Iowa to see whether they were interested in submitting an offer to acquire the Beneficial Interest. A copy of the Leaf Declaration is attached hereto as **Exhibit E**.

31.     Five organizations responded to Mercy's counsel's initial inquiries and expressed a potential interest in acquiring the Beneficial Interest. Counsel had a variety of follow up communications with these five organizations, including calls and emails with counsel representing the organizations, chief executive officers of the organizations, and members of the board of directors for these organizations. Ex. E, ¶ 7.

32.     Two of these organizations made formal, written offers to acquire the Beneficial Interest. One of these organizations was Mercy CR Foundation, which offered a one-time, lump sum cash payment of $225,000.00 (the "Purchase Price"). *See* Ex. B. The other organization offered $150,000.00. Ex. E, ¶¶ 8-10.

33.     In addition to offering a higher purchase price, Mercy CR Foundation's proposed use of the income from the Thompson Trust most closely adhered to the testators' stated purposes in the Thompson Trust. Ex. E, ¶ 9.

**V.     Board Approval**

34.     On April 11, 2024, the Mercy Board of Directors (the "Board") held a meeting to consider, among other things, approval of the transfer of the Beneficial Interest to Mercy CR Foundation.

35.     Based on the similarities between the uses of income provided for in the Thompson Trust documents and those proposed by Mercy CR Foundation, as well as the materially higher price offered by Mercy CR Foundation, the Board approved the transfer of the Beneficial Interest to Mercy CR Foundation.

36.    A true and correct copy of that resolution is attached hereto as **Exhibit F**.

**BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY**

I.    **The Proposed Sale Satisfies the Requirements of Bankruptcy Code Section 363.**

37.    Ample authority exists for approval of the sale and transfer of the Beneficial Interest contemplated by this Motion. Bankruptcy Code section 363 provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although that provision does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-390 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

38.    Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of*

*Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del.1985)).

### A.    The Beneficial Interest is Property of Mercy's Estate Under Bankruptcy Code Section 541 that Can Be Sold.

39.    The Beneficial Interest is property of Mercy's estate that can be sold pursuant to

Bankruptcy Code section 363.

40.    Under Bankruptcy Code section 541(a), the property in a debtor's estate consists of

"all legal or equitable interests of the debtor in property as of the commencement of the case"

including "wherever located and by whomever held." 11 U.S.C. § 541(a). As indicated by its

language, Bankruptcy Code section 541 is "very broad." *In re Simply Essentials, LLC*, 78 F.4th

1006, 1009 (8th Cir. 2023) ("Our circuit has reinforced this principal, stating '[t]he scope of this

section is very broad and includes property of all descriptions, tangible and intangible, as well as

causes of action.'"); *In re Munroe*, 183 B.R. 667, 669 (Bankr. D.R.I. 1995).

41.    The Beneficial Interest is clearly the type of "interest" covered by Bankruptcy Code

section 541. The Iowa Trust Code (the "Trust Code") is set forth in Iowa Code Chapter 633A. The

Trust Code governs the Thompson Trust, which was established as an Iowa charitable trust. The

Trust Code defines a "beneficiary" as "a person who has any present or future interest in the trust,

vested or contingent, and also includes the owner of an interest." Iowa Code § 633A.1102(2)

(emphasis added). Mercy, as sole beneficiary, is the sole "owner of [the] interest" in the Thompson

Trust (*i.e.*, the Beneficial Interest). The Beneficial Interest, as an "interest" in a trust under the

Trust Code, is clearly the type of "interest" that is property of the estate under Bankruptcy Code

section 541.

42.    Importantly, the Thompson Trust does not impose any conditions or limitations on

Mercy's ability to transfer the Beneficial Interest. *See* Ex. C. Accordingly, Bankruptcy Code

section 541(c)(2) is not applicable to this Motion and Mercy's transfer of the Beneficial Interest to

Mercy CR Foundation. *See* 11 U.S.C. § 541(c)(2) ("A restriction on the transfer of a beneficial

interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is

enforceable in a case under this title.").

43.     Courts have consistently found that a debtor's interest in a trust is property of the

estate under Bankruptcy Code section 541. *See, e.g.*, *In re Mack*, 269 B.R. 392, 412 (Bankr. D.

Minn. 2001) (finding debtor's interest in income from a trust, as well as power to appoint or

discharge trustees and power to amend trust to preserve its tax qualified status, constitutes property

of the estate under section 541).

44.     Accordingly, the Beneficial Interest is property of Mercy's estate under Bankruptcy

Code section 541 and can be sold pursuant to Bankruptcy Code 363.

**B.     The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale.**

45.     A sound business purpose for the sale of a debtor's assets outside the ordinary

course of business exists where such sale is necessary to maximize value for a debtor's creditors.

*See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing that the

main goal of any proposed sale of property of a debtor's estate is to maximize value); *In re Abbotts

Dairies of Pa., Inc.*, 788 F.2d 143, 147–48 (3d Cir. 1986).

46.     A strong business justification exists for the sale of the Beneficial Interest. The

transfer and sale of the Beneficial Interest to Mercy CR Foundation is precisely the type of "value

maximizing" transaction that is at the heart of Bankruptcy Code section 363. If the Debtors did

nothing with the Beneficial Interest prior to dissolution, the Thompson Trust would be left without

a beneficiary and the Trustee would presumably have to use trust assets to identify a new

beneficiary and petition the Iowa District Court to use *cy pres*—the very thing Mercy is

12

accomplishing by this Motion. In that scenario, Mercy's creditors would receive nothing of value for the Beneficial Interest.

47.    Here, the Debtors are bringing an additional $225,000.00 into Mercy's estate for the benefit of all creditors. The Bankruptcy Code strongly encourages transactions such as these, placing fiduciary duties on directors of companies in bankruptcy to maximize estate value. *See, e.g.*, *Simply Essentials*, 78 F.4th at 1010 (finding estate property with value that cannot be practically realized should be sold in discharge of a debtor's "fiduciary duty to maximize the value of the estate"). The Board's approval of the transfer and sale of the Beneficial Interests was in discharge of its fiduciary duties. As such, a sound business purpose clearly exists for the sale of the Beneficial Interest.

### C.    Notice of this Motion is Reasonable and Appropriate.

48.    Notice of this Motion complies with Bankruptcy Rule 2002 and is accordingly reasonable and appropriate. Pursuant to Bankruptcy Rule 2002(a)(2), all creditors must receive at least 21-days' notice of the proposed sale of a debtor's assets. *See* Fed. R. Bankr. P. 2002(a)(2). A copy of a notice of sale pursuant to this Motion is attached hereto as **Exhibit G** (the "Sale Notice"). The Sale Notice will be served on all creditors in the case, thereby satisfying Bankruptcy Rule 2002's requirements. Additionally, the Sale Notice contains substantially the same language required by Local Rule 6004-1 and is in compliance therewith.

### D.    The Purchase Price is Fair and Reasonable.

49.    The Purchase Price that Mercy CR Foundation proposes is a fair and reasonable price for the Beneficial Interest. The Purchase Price is the highest or otherwise best offer the Debtors have received for the Beneficial Interest. The income—which is what the Trustee distributes yearly to the beneficiary for the stated purposes—in 2023 from the Thompson Trust was $27,000.00. Assuming the Thompson Trust generates income at that same level in the future,

it will take Mercy CR Foundation over eight years to "recoup" the Purchase Price paid to acquire it. If a party paid dollar-for-dollar for the Beneficial Interest, it would take it would take almost 30 years. As the market demonstrated, the Purchase Price was the highest and best available.

50.    Moreover, as set forth in the Leaf Declaration, the process the Debtors employed to identify and solicit bids for the Beneficial Interest was reasonable and likely to identify substantially all of the not-for-profit organizations that potentially could acquire the Beneficial Interest.

51.    The Purchase Price therefore, satisfies the requirements of Bankruptcy Code section 363

**E.    Mercy CR Foundation Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).**

52.    Bankruptcy Code section 363(m) protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, Bankruptcy Code section 363(m) states the following: "The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal." 11 U.S.C. § 363(m). Section 363(m) fosters the "policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 n.13 (3d Cir. 2001) (quoting *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 647–48 (3d Cir. 1997)); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers

of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

53.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *Abbotts Diaries*, 788 F.2d at 147 (explaining that to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).

54.     The Debtors submit that Mercy CR Foundation is a "good faith purchaser" within the meaning of Bankruptcy Code section 363(m). The Debtors and the Mercy CR Foundation negotiated the sale of the Beneficial Interest at arm's length and in good faith. *See* Ex. E, ¶ 12. Mercy CR Foundation, therefore, should be afforded the protections of Bankruptcy Code section 363(m).

55.     Based on the foregoing, the Debtors submit that they have demonstrated that the proposed Sale is a sound exercise of the Debtors' business judgment and should be approved as a good faith transaction.

## II.     The Beneficial Interest Should Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances Under Bankruptcy Code Section 363(f).

56.     Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if any one of the following conditions is satisfied:

(a)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(b)     such entity consents;

(c)      such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(d)      such interest is in bona fide dispute; or

(e)      such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

57.      Bankruptcy Code section 363(f) is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

58.      The Debtors submit that the sale of the Beneficial Interest free and clear of liens, claims, interests and encumbrances will satisfy one or more of the requirements under section 363(f). To the extent a party objects to the sale on the basis that it holds a prepetition lien or encumbrance on the Beneficial Interest, the Debtors believe that (a) that such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property, under Bankruptcy Code section 363(f)(3); (b) any such party could be compelled to accept a monetary satisfaction of such claims, under Bankruptcy Code section 363(f)(5), or (c) that such lien is in bona fide dispute, under Bankruptcy Code section 363(f)(4).

16

59.     The Debtors will send the Sale Notice to any known purported prepetition lienholders. If such lienholders do not object to the proposed sale, then their consent should reasonably be presumed. Accordingly, the Debtors request that, unless a party asserting a prepetition lien, claim or encumbrance on the Beneficial Interest timely objects to this Motion, such party shall be deemed to consent. *See Hargave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (highlighting that by not objecting to a sale motion, a creditor is deemed to consent to the relief requested).

60.     The purpose of a sale order authorizing the transfer of assets free and clear of all claims, liens and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Accordingly, the Debtors request that the Court authorize the sale of the assets free and clear of any liens, claims, interests, and encumbrances (with the exception of permitted encumbrances and assumed liabilities), in accordance with Bankruptcy Code section 363(f), subject to such liens, claims, interests, and encumbrances attaching to the proceeds thereof in the same order of relative priority, with the same validity, force, and effect as prior to such.

## III.     Application of the *Cy Pres* Doctrine Is Necessary to Effectuate the Terms of the Agreement and Authorized by Iowa Law

61.     In order to effectuate the transfer of the Beneficial Interest to Mercy CR Foundation, the terms of the Thompson Trust must be altered to substitute Mercy CR Foundation as beneficiary, authorize one-half of the yearly income to be given to Mercy CR's surgical department (rather than Mercy's), and authorize one-half of the yearly income to be used to pay medical bills of indigent patients of Mercy CR (rather than indigent patients of Mercy who lived in Johnson County).

62.     The Trust Code specifically authorizes a court to apply *cy pres* to a charitable trust

if the "particular charitable purpose for which a trust was created becomes impracticable, unlawful,

or impossible to fulfill." Iowa Code § 633A.5102. Following the sale to the University, Mercy no

longer has an operating a hospital and, accordingly, cannot operate a surgery department or care

for patients. The purposes of the Thompson Trust have therefore become "impracticable, unlawful,

or impossible to fulfill" and, accordingly, the District Court is authorized to apply the doctrine of

*cy pres*. *See id.*

63.     "Cy pres is a common law doctrine that 'permits a court to change the purpose or

recipients of a charitable trust under certain circumstances. When the doctrine applies, however,

the change must be 'cy pres comme possible,' or as near as may be, to the settlor's original

intention." *Kolb v. City of Storm Lake*, 736 N.W.2d 546, 553 (Iowa 2007) (*quoting* Martin D.

Begleiter, *In the Code We Trust—Some Trust Law for Iowa at Last*, 49 Drake L. Rev. 165, 290

(Iowa 2001)). The doctrine is "widely accepted by [Iowa] courts" and the "legislature has codified

the doctrine into law." *Id.*

64.     The *cy pres* doctrine is "a liberal rule of construction used to carry out, not defeat,

the [donor's] intent." *In re Matter of Coe College*, 935 N.W.2d 581, 593 (Iowa 2019). The court

must apply a three-part test to determine whether *cy pres* applies: "(1) a charitable trust; (2) a

specific trust purpose that is illegal, impractical, or impossible; and (3) a general charitable

intention by the donor." *Kolb,* 736 N.W.2d at 553. However, because section 633A.5102 states

that "[u]nless the terms of the trust provide to the contrary," *cy pres* "will not apply if the trust

directs otherwise." *Id.* (*quoting* Iowa Code § 633A.5102).

65.     Regarding impossibility or impracticability, there is "no precise definition" of

whether the trust has become impossible or impracticable. *Id.* at 556. Similarly, "there are 'no hard

and fast rules' to determine whether the settlors had general charitable intent," but the court evaluates "all the relevant facts and circumstances" including extrinsic evidence and the court "will make an effort to find a general charitable intent when possible." *Kolb*, 736 N.W.2d at 558.

66.     Here, the Thompson Trust is a charitable trust, the purpose of which has become impossible because the Debtors have ceased their business operations and will no longer exist after the bankruptcy case is complete. The trust documents themselves show a general charitable intention of the donor to fund a hospital or medical facility to provide care for needy patients in the surrounding area.  *See* Ex. D. Specifically, the Thompson Trust states "that it was felt by both the trustee and the Mercy Hospital that it would be mutually advantageous at this time as well as being necessary and useful in the future" to establish the Thompson Trust for disbursement of funds to Mercy Hospital based on the donor's intent to "secur[e] the most benefits to the persons and organizations entitled thereto." *Id.* at *Application,* p. 2. Additionally, the will of Frank Thompson provided that upon the death of George Thompson, the residue of his estate would create the Trust "in tender memory of our beloved parents" and that the Trust would "be perpetual to the end that we may contribute to the welfare of our fellow citizens and to the welfare of Iowa City in memory of our beloved parents in perpetuity." *Id.* at *Last Will and Testament of Frank L. Thompson*, p. 3. The donors therefore evidence a general charitable intent that the Thompson Trust would contribute to the welfare of Iowa citizens in memory of the donor's parents.

67.     Further, the transfer of the Beneficial Interest to Mercy CR Foundation on the terms set forth herein and in the Agreement is as "near as may be[] to the settlor's original intention." *Kolb*, 736 N.W.2d at 553. Mercy CR is located one county north of Mercy and provides medical care to a large portion of Eastern Iowa residents. Like Mercy, it is a Catholic, faith-based not-for-profit community hospital. Use of *cy pres* will be limited to only amending the Thompson Trust

to make Mercy CR Foundation the beneficiary and to slightly alter the authorized uses of the yearly income from the Thompson Trust to fit Mercy CR's circumstances. The transfer of the Beneficial Interest to Mercy CR Foundation satisfies the Thompson brothers' general charitable intentions to provide medical care to our Eastern Iowa community as closely as the circumstances here allow.

68.    Finally, there is nothing in the Thompson Trust that states the doctrine of *cy pres* cannot be applied to the Thompson Trust and there are no restrictions on transfer.

69.    Accordingly, the District Court is authorized and empowered by Iowa Code section 633A.5102 and the doctrine of *cy pres* to modify the Thompson Trust's terms to substitute Mercy CR Foundation as sole beneficiary and to modify the restrictions on use of trust income to provide that one-half of the income from the Thompson Trust shall be used for the benefit of the surgery department at Mercy CR and one-half of the income from the Thompson Trust shall be used to fund the medical expenses of patients of Mercy CR unable to pay the cost themselves

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

70.    The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in the Motion is necessary for the Debtors to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief. Moreover, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a).

## <u>RESERVATION OF RIGHTS</u>

71.     Nothing in the Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise or requirement to pay any claim or other obligation; or (d) granting third-party-beneficiary status, bestowing any additional rights on any third party, or being otherwise enforceable by any third party.

## <u>NOTICE</u>

72.     The Debtors will provide notice of the Motion via the Sale Notice to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the Iowa Department of Revenue; (d) the United States Attorney for the Northern District of Iowa; (e) the Centers for Medicare & Medicaid Services; (f) counsel to the Committee; (g) counsel to the Pension Committee; (h) counsel for the Secured Bondholder Representative; (i) the Federal Trade Commission; (j) the Iowa Attorney General's office; (k) MidWestOne Bank; (l) Mercy CR Foundation; and (m) all parties entitled to notice pursuant to Bankruptcy Rule 2002(a)(2).  The Debtors submit that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court submit the Proposed Findings and Conclusions substantially in the form attached hereto as **Exhibit A** to the District Court pursuant to Bankruptcy Rule 9033 and grant such other and further relief as the Court may deem just and proper.

Dated: Cedar Rapids, Iowa
       May 10, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-283-3100
Fax:  515-283-8045
Email: mmcguire@nyemaster.com
       kmstanger@nyemaster.com
       dhempy@nyemaster.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        fperlman@mwe.com
       dsimon@mwe.com
       ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:      (214) 295-8000
Facsimile:      (972) 232-3098
Email:           jhaake@mwe.com

*Counsel for Debtors and Debtors-in-Possession*

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this May 10, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

/s/ *Roy Leaf*