UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| MERCY HOSPITAL, IOWA CITY, ) | Case No. 23-00623 (TJC) |
| IOWA, et al. ) | |
| ) | |
| Debtors ) | |

**OBJECTION TO DEBTORS' MOTION FOR ENTRY OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (I) APPROVING THE SALE OF THE DEBTORS' BENEFICIAL INTEREST IN THE THOMPSON TRUST FREE AND CLEAR OF LIENS, CLAIMS, INTEREST, AND ENCUMBRANCES; (II) MODIFYING TERMS OF THE THOMPSON TRUST; AND (III) GRANTING RELATED RELIEF**

COMES NOW, MidWestOne Bank, Trustee of the Thompson Brothers Trust (hereafter, the "Trustee"), and hereby objects to the Debtors' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (I) Approving the Sale of the Debtors' Beneficial Interest in the Thompson Trust Free and Clear of Liens, Claims, Interest, and Encumbrances; (II) Modifying Terms of the Thompson Trust; and (III) Granting Related Relief (hereafter, the "Motion"). In support of this Objection, the Trustee respectfully submits the following:

1. With this Objection, the Trustee requests the Motion filed on behalf of Mercy Hospital, Iowa City, Iowa (hereafter "Mercy IC") be denied and the Court refuse to grant the relief requested therein. The Debtors do not have the right to transfer their beneficiary interest under the Thompson Brothers Trust dated August 15, 1960 (hereafter, "Trust") to Mercy Medical Center, Cedar Rapids, Iowa Endowment Foundation, Inc. (hereafter, the "Mercy CR") pursuant to the terms of the Beneficiary Interest Transfer Agreement (hereafter, the "Agreement"), attached to the Motion as Exhibit B.

2. The Trust established by George A Thompson and Frank L. Thompson provides the Trust should be a permanent fund, lasting "in perpetuity" and that the Trustee would pay the income from the fund to Mercy IC for two specific purposes:

> "At annual intervals, one-half of said income to be used in equipping
> and providing or enlarging the surgical department of its said

hospital, and the remaining one-half to be used to provide medical care and hospitalization for such needy persons who are residents of Johnson County, Iowa, and who are in need of such medical care and/or hospitalization but, because of their financial condition, are unable to pay for it themselves, and who are selected by the trustee and certified to the hospital as such."

3. The last will and testament of George A. Thompson specifically states that the trust should be "perpetual to the end [they can] contribute to the welfare of fellow citizens and to the welfare of Iowa City" in memory of the Thompson brothers' parents.

4. As admitted in the Debtors' Motion, Mercy IC no longer has active medical operations and will be dissolved as part of the chapter 11 plan of liquidation, so is unable to satisfy the purposes set forth in the Trust. Although the Trustee agrees the Trust must be reformed to identify a new beneficiary, Mercy IC does not have the legal authority to determine who that beneficiary will be and obtain compensation for the transfer.

5. In Paragraph 41 of their Motion, the Debtors conflate "beneficiary" and "owner" to conclude that Mercy IC owns a beneficial interest in the Thompson Brothers Trust and can sell that interest. This is entirely faulty and unsoundly based on a "creative" interpretation of the Iowa Trust Code. In support of their position, the Debtors cite the Iowa Trust Code's definition of "beneficiary." The Iowa Trust Code defines "beneficiary" as "a person who has any present or future interest in the trust, vested or contingent, and also includes the owner of an interest." From this definition, the Debtors *creatively* conclude that as the sole beneficiary of the Trust, Mercy IC is the sole "owner of an interest" by ignoring key language in the definition. In actuality, the definition states that a beneficiary may include the owner of the interest but does not state or even imply that the beneficiary is in all cases the owner of the interest. Mercy IC was very clearly the beneficiary of the Thompson Brothers Trust but in no way was the organization ever an owner of the interest. The recipient of a charitable interest held in trust can never become an owner of the interest, because the recipient is always subject to divestment if the conditions of the charitable trust fail.

6. Debtors have ignored very essential legal principles concerning the inalienability of

charitable interests held in trust. "It is a basic tenet of the law of charitable trusts that beneficial charitable interests are inalienable." *In re Bishop's College*, 151 B.R. 394, 399 (Bankr. N.D.Tex. 1993). "When a gift is made in trust for a charitable purpose, there is ordinarily no definite beneficiary. The equitable interest in the trust is inalienable." DICKINSON LAW REV., *Charitable Giving and the Rule Against Perpetuities*, Vol. 70(4), 3 and accompanying footnote 3 (1965-1966). Even when there is a charitable organization named as a beneficiary of a charitable trust, the beneficial interest is always contingent upon the continued existence of the organization and the purpose of the trust remaining legal, practical or possible. For that reason, there are no definite beneficiaries when a gift is made in trust for a charitable purpose. Mercy IC was a contingent beneficiary, but never an owner of the beneficial interest. When Mercy IC shuttered and ceased operations, any interest it had in the Thompson Brothers Trust ended.

7. After arguing that Mercy IC is the owner of the beneficial interest, the Debtors argue that because the Trust does not contain an express clause limiting the ability of Mercy to transfer the beneficial interest, the Debtors may sell the interest. Section 541(c) of the Bankruptcy Code states property that would otherwise be part of the bankruptcy estate but for language or provisions restricting the transfer of the interest in applicable nonbankruptcy law or in an agreement, becomes part of the bankruptcy estate, as the bankruptcy court has the power to remove that restriction on transfer. Section 541(c)(2) essentially provides that if, however, the debtor has a beneficial interest in a trust, and that trust restricts the transfer of the beneficial interest under nonapplicable bankruptcy law, the bankruptcy court is not empowered to remove the restriction on transfer.

8. The Debtors' argument is premised on Section 541(c)(2) only encompassing express language in restricting transfer, such as a spendthrift clause or the equivalent, but that is misguided and overly reductive. First, it is a longstanding tenet of charitable trust law (i.e. applicable nonbankruptcy law) that charitable interests are inalienable. Thus, the absence of an express statement of inalienability in the Trust is not surprising and does not change the fact that the interest is inalienable.

9. Second, bankruptcy courts routinely and overwhelmingly conclude that when a

nonprofit enters bankruptcy, the trust corpus from third-party charitable trusts <u>do not</u> become part of the debtor's estate, despite the absence of an express statement that the creditors of the charitable entity cannot reach or transfer the assets. *See, e.g.*, *In re Bishop's College*, 151 B.R. at 399; *In Re Winstead Memorial*, 249 B.R. 588 (Bankr. D. Conn. 2000). This is because the restriction on alienability is a fundamental, baseline legal tenet of charitable trust law (applicable nonbankruptcy law). At most, some bankruptcy courts have held that the income from a third-party charitable trust becomes part of the debtor's bankruptcy estate during the pendency of the case if the income is not specially earmarked or is for general purposes or expenses in the governing trust document. *See, In re Winstead.*, 249 B.R. at 595; *In re Bishop's College*, 151 B.R. 394, 399 (Bankr. N.D.Tex. 1993). Even when a bankruptcy court determines that the property of the estate includes the debtor's beneficial interest in the income from a charitable fund/trust, "the estate takes the income subject to the conditions on use." *In re Roman Catholic Arch. of Portland*, 345 B.R. 686, 707 (Bankr. D. Or. 2006). For example, the *Winstead* Court concluded that the charitable trust income could be used for payments of debts incurred only while the hospital was still carrying out its charitable purpose by providing patient care. The Bankruptcy Court will even protect funds held directly by the debtor that are earmarked for a specific charitable purpose, as those funds do not become part of the bankruptcy estate. *See In re Parkview Hosp.*, 211 B.R. 619 (Bankr. N.D. Ohio 1997) (concluding that funds held by debtor hospital earmarked to further osteopathic medicine in the Toledo area were not part of the bankruptcy estate).

10. The Thompson Brothers Trust is very clear that the trust income is to be dedicated to equipping or enlarging the surgical department and/or paying the medical bills of needy patients of Mercy who are residents of Johnson County. Unsurprisingly, the Debtors do not attempt to argue that the income or corpus are property of the bankruptcy estate. The Trust's purpose is not to pay the creditors of Mercy IC or even the general expenses of Mercy IC. Yet, that is precisely what the Debtors propose to do, albeit in an indirect way. Authorizing the Debtors to sell a charitable interest essentially circumvents the settlors' intent to provide a gift for the benefit of the public and puts a price tag on the settlors' benevolence.

11. To suggest that although the trust income and corpus are not part of the bankruptcy

estate, the Debtors still have some right to (1) dictate the successor charitable organization of the beneficial interest, (2) amend the terms of the third-party trust to suit its decision and (3) profit from the sale of a third-party *charitable* interest simply boggles the mind and defies all legal reasoning.

12. It further offends the senses to think that a charitable interest can be monetized and sold as an asset to the highest bidder, thereby crowding out smaller charitable organizations without the means to compete for the resource and that may have greater need for the income stream and align more closely with the purposes of the Trust. The fact that of the seven not-for-profit healthcare organizations advised of the "opportunity," only two made any bid demonstrates just how unfair this process was.

13. The sale of the charitable interest further dilutes the actual amount and impact of the charitable gift. As the Debtors point out, it will take some time for the nonprofit hospital to recoup its outlay, that will mean an overall reduction in funds used for the Trust's charitable purposes.

14. Nor do the Debtors cite any persuasive authority that charitable beneficial interests become part of the debtor's estate and are subject to sale. Debtors cite *In re Mack*, 269 B.R. 392, 412 (Bankr. D. Minn. 2001) to support its conclusion that "[c]ourts have consistently found that a debtor's interest in a trust is property of the estate under Bankruptcy Code Section 541." *In re Mack* is inapposite and not persuasive. *Mack* involved a Charitable Remainder Trust (CRUT). The bankruptcy debtor was the settlor and initial income beneficiary, and not the charitable organization. By the terms of the CRUT agreement, the debtor was to receive 7% of the net fair market value of the CRUT assets each year for his lifetime, followed by his spouse for her lifetime, and then to his children for their lifetimes. Upon the expiration of all of the income interests, the remainder would be distributed to a charitable organization (the Minneapolis Foundation). Debtor retained the right, in his last will and testament, to revoke the interests of his spouse and children in the CRUT. The terms of the CRUT agreement also gave the debtor, as the income recipient, the right to remove or appoint any trustee of the CRUT with or without cause and, as settlor, retained the right to amend, alter or revoke the designation of The Minneapolis Foundation as the charitable organization to receive the charitable remainder. The CRUT contained a spendthrift clause as to all income beneficiaries,

including the debtor/settlor. The bankruptcy Trustee sought a determination that the debtor's income interest, as well as his rights to remove and replace trustees and to amend the trust to protect its tax benefit status, were property of the bankruptcy estate. The Trustee did not seek an order finding the trust itself invalid or awarding the Trustee the assets of the trust, nor did the Trustee seek a determination that the debtor's power to revoke the income interests of his spouse and children, exercisable in his last will and testament, was property of the bankruptcy estate. The Bankruptcy Court determined that the debtor's income interest as well as the right to remove and replace trustees and to amend the trust to protect its tax benefit status were property of the estate. In essence, the Court concluded that with respect to the debtor, this was a self-settled trust. Under Minnesota law, a spendthrift provision would be invalid in a self-settled trust where the settlor is the beneficiary. Logically, this makes sense as it would be highly inequitable if a person could simply place his assets in trust to wholly evade his creditors while still retaining the benefits of the assets. Likewise, federal law did not contain any anti-alienation restriction on the alienability of the noncharitable beneficiary's interest in a CRUT. Thus, the Bankruptcy Court ruled that the individual debtor's income stream from his self-settled trust was property of the bankruptcy estate. The *Mack* case does not actually involve a charitable beneficiary interest that would be inalienable.

15. In attempting to justify the sale of the charitable interest, the Debtors state there is a sound business justification for the proposed sale (see Paragraphs 45-47 of the Motion). In essence, the Debtors argue that if it took no action, the Thompson Brothers Trust would still need to invoke *cy pres* to find another beneficiary but, in that scenario, the Debtors' creditors receive nothing. Whereas, by allowing the Debtors to sell the charitable interest, the Debtors' creditors receive an additional $225,000.00. This is akin to arguing that sales of organs should be permitted because the seller really needs the money and one kidney can do the work of two. All of that may be true, but it does not fundamentally change the fact that the sale is prohibited and illegal. The Debtors have no interest in the Thompson Brother Trust that can be legally sold, even if the funds would be useful to the Debtors.

16. Further, the selection of Mercy CR does not align with the charitable intent of the

settlors given their emphasis on Johnson County and Iowa City.  The Last Will and Testament of Frank L. Thompson posits that the Trust is in part for indigent residents of Johnson County and is designed to contribute "to the welfare of Iowa City in memory of our beloved parents in perpetuity."  Mercy CR will primarily benefit Linn County residents and the welfare of "a large portion of Eastern Iowa residents."  Motion, Paragraph 66.  In Paragraph 67, the Debtors focus on the similar, faith-based services provided by Mercy CR as a justification for the substitution of this beneficiary, but the language of the trust document contains no mention of religion or faith-based services as a reason for the gift to Mercy IC or as an objective of the trust.  Rather, the document emphasizes the impact on the Thompsons' <u>local</u> community.

      17. In addition, the Trustee is given "untrammeled discretion" to select the "needy persons who are residents of Johnson County, Iowa" and its decision shall be final.  Under this provision, the Trustee has discretion, but also a very clear mandate, to ensure the funds from the Trust are used specifically for residents of the County identified.  The Trustee, therefore, is compelled by its fiduciary duty to object to the proposed sale to Mercy CR.

      WHEREFORE, the Trustee hereby requests the Debtors' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (I) Approving the Sale of the Debtors' Beneficial Interest in the Thompson Trust Free and Clear of Liens, Claims, Interest, and Encumbrances; (II) Modifying Terms of the Thompson Trust; and (III) Granting Related Relief is denied.

      DATED this 29th day of May, 2024.

                                KENNEDY LAW FIRM PC

                                By _____
                                Kandie K. Gelner     AT0001064
                                920 S. Dubuque St., P.O. Box 2000
                                Iowa City, IA  52244
                                Tel: (319) 351-8181
                                Fax: (319) 351-0605
                                Email: kgelner@kennedylawyers.com
                             ATTORNEY FOR TRUSTEE