# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| Debtors. | ) (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW (I) APPROVING THE SALE OF THE DEBTORS' BENEFICIAL INTEREST IN THE THOMPSON TRUST FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (II) MODIFYING TERMS OF THE THOMPSON TRUST; AND (III) GRANTING RELATED RELIEF**

COMES NOW, Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), and hereby file this reply (the "Reply") in support of *Debtors' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (I) Approving the Sale of the Debtors' Beneficial Interest in the Thompson Trust Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Modifying Terms of the Thompson Trust; and (III) Granting Related Relief* [Docket No. 1043] (the "Sale Motion")[1] and in response to MidWestOne Bank's (the "Bank" or the "Thompson Trustee") *Objection to Debtors' Motion for Entry of Proposed Findings of Fact and Conclusions of Law (I) Approving the Sale of the Debtors' Beneficial Interest in the Thompson Trust Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Modifying Terms of the Thompson Trust; and (III) Granting Related Relief* [Docket No. 1085] (the "Objection"). In support of the Sale Motion, the Debtors hereby state:

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Sale Motion.

## REPLY

1. The Bank's Objection demonstrates a fundamental misunderstanding of both bankruptcy law and the purpose of the Sale Motion. Far from "boggl[ing] the mind and def[ying] all legal reasoning"[2] as alleged by the Bank, the Sale Motion asks this Court to perform a fundamental and essential task under the Bankruptcy Code—i.e., sell property of the Debtors' estate to maximize value for stakeholders in these Chapter 11 Cases.

2. The Sale Motion presents a basic question for the Court to answer: Are the Debtors' rights and interests in the Thompson Trust (the "Beneficial Interest") property of the Debtors' estates under Bankruptcy Code section 541? If the answer to the question is "yes," the Beneficial Interest can be sold pursuant to Bankruptcy Code section 363(b), like any other estate asset.

3. Both bankruptcy and Iowa law are clear that the answer to the question is "yes." The Sale Motion should be granted.

4. As discussed in the Sale Motion, Bankruptcy Code section 541 casts an extremely broad net over what constitutes property of a debtor's estate and encompasses any and all of a debtor's rights and interests in any form or property, whether tangible or intangible, vested or contingent, whole or partial, or otherwise. *See, e.g.*, *In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("'The scope of this section is very broad and includes property of all descriptions, tangible and intangible, as well as causes of action.'" (internal citations omitted)). To determine whether property is estate property, courts look to applicable non-bankruptcy law. *See, e.g.*, *In re Roman Catholic Archbishop of Portland*, 345 B.R. 686, 705 (Bankr. D. Or. 2006) ("The bankruptcy estate takes whatever interests a debtor has in property as of the petition date, subject to the same limitations and restrictions on the use of the property that existed prepetition.").

---

[2]  *Objection*, ¶ 12.

5.  Contrary to the Bank's assertions, the Iowa Trust Code is clear that the Beneficial Interest in the Thompson Trust is a type of interest and property encompassed by Bankruptcy Code section 541. As noted in the Sale Motion, the Trust Code defines "beneficiary" as a "person who has any present or future <u>interest</u> in a trust." Iowa Code § 633A.1102(2) (emphasis added). "Interest" is, of course, precisely the type of estate property explicitly included in Bankruptcy Code section 541, both "legal or equitable." 11 U.S.C. § 541(a)(1). Mercy, as sole beneficiary of the Thompson Trust, has a number of legal and equitable rights and interests in the Thompson Trust, including the right to receive yearly income from the trust, the right to take certain actions with respect to trust administration, and the right to be an interested person and initiate proceedings (such as a *cy pres* application) related to a trust. *See* Iowa Code § 633A.5104 (stating that "any charitable entity or other person with a special interest in the trust shall be interested persons in a proceeding involving a charitable trust"). Moreover, the Beneficial Interest is precisely the type of interest that bankruptcy courts across the country have held is property of the estate. *See, e.g.*, *Roman Catholic Archbishop*, 345 B.R. at 707 (finding that the debtor church archdiocese's "<u>beneficial interest</u> in the income" from a charitable fund as a co-beneficiary was property of the debtor's estate (emphasis added)); *In re Winsted Memorial Hosp.*, 249 B.R. 588, 595 (Bankr. D. Conn. 2000 (holding that debtor's interest in remainder of certain trusts was property of the debtor's estate).

6.  The Bank's arguments about inalienability of charitable trusts interests ignore Iowa Supreme Court case law directly on point as well as the plain language of the Trust Code.

7.  In particular, the Bank argues (without citation to Iowa law) that the Debtors "ignore[] very essential legal principles" that hold that "charitable interests are inalienable." *Objection*, ¶¶ 6, 8. The Iowa Supreme Court over the past almost 100 years, however, has stated

3

differently. The Iowa Supreme Court has made clear that the *general rule* is that there is a "prohibition against restraint on alienation," meaning that Iowa law generally favors alienability. *In re Coe College*, 935 N.W.2d 581, 586 (Iowa 2019) (quotation omitted). However, an exception to this general rule is that a charitable donor <u>may</u> impose restraints on alienation for charitable gifts. *Id.* However, if the trust is not so restrained, a beneficiary's interest is alienable based on the general prohibition on restraint of alienation that is axiomatic to property law. *Id.*; *see also Sisters of Mercy of Cedar Rapids v. Lightner*, 274 N.W. 86, 92 (Iowa 1937) ("A donor of property for a charitable use <u>may</u> impose such conditions as he may choose, including a restraint on alienation. This right is an exception to the prohibition against restraint on alienation." (emphasis added)). The Trust Code follows this rule by providing a means for a settlor or donor to restrict transfer or alienation <u>if they so choose</u>, which is an exception to the general rule that trust interests may be alienated or reached by creditors. *See* Iowa Code §§ 633A.2301, 633A.2302. There is no special exception for charitable trusts.

8. The Iowa Supreme Court and plain language of the Trust Code track each other and are clear that unless restricted by the donor, charitable trust interests—like ordinary trust interests—may be transferred or alienated. The Bank's blanket assertions to the contrary ignore these plain dictates and violate basic rules of statutory construction. *See, e.g.*, *Sanon v. City of Pella*, 865 N.W.2d 506, 511 (Iowa 2015) ("When interpreting a statute, we are required to assess a statute in its entirety…[w]e also look at the entire chapter…so that we may give the statute its proper meaning in context."); *Shelby Cnty Myrtue Memorial Hosp. v. Harrison Cnty.*, 86 N.W.2d 104, 108 (Iowa 1957) ("The question is not what the legislature should have said, or what it might have intended to say, but what it did say.").

9. The Objection also demonstrates that the Bank may not grasp the distinction between sale of the Beneficial Interest versus an attempt to access or sell the corpus of the Thompson Trust. While the Bank at least acknowledges that the Debtors are not asserting that the corpus of the Thompson Trust is estate property, the cases cited by the Bank suggest otherwise. The *Bishop College* case cited by the Bank, for example, is inapposite. The chapter 7 trustee of *Bishop's College* filed a turnover action and requested that the corpus of a charitable trust be liquidated and the funds turned over to the chapter 7 estate. *In re Bishop College*, 151 B.R. 394, 396 (Bankr. N.D. Tex. 1993). The court, however, stated that under Texas law, the estate had no direct claim to the corpus of the trust. *Id.* at 399. Other than a statement in dicta under Texas law that beneficial charitable interests are inalienable, it is unclear how the *Bishop College* decision is relevant to the Sale Motion. The Debtors here are not laying any claim to the corpus of the Thompson Trust and, instead, are trying to transfer their direct interest as sole beneficiary. The corpus of the Thompson Trust and Mercy's beneficiary interest therein are two different forms of property, which the Bank either ignores or fails to distinguish.

10. Further, the Bank appears to suggest in paragraph 13 of its Objection that the Sale Motion somehow affects the Thompson Trust and "will mean an overall reduction in funds used for the Trust's charitable purposes." *Objection*, ¶ 13. It is unclear where the Bank gets the notion. The Agreement provides that Mercy CR Foundation will be paying the Purchase Price with Mercy CR Foundation's own funds. *Sale Motion¸* Ex. B, § 1. The costs and expenses of the Debtors in bringing the Sale Motion (which have increased as a result of the Objection) are paid by the Debtors' estates. The Debtors are not seeking to use any of the corpus of the Thompson Trust under the Sale Motion. Instead, they are simply seeking to reform its terms to substitute the Mercy CR Foundation as sole beneficiary, entitling Mercy CR Foundation to receive its annual income.

11. Ironically, the only likely effect that the Sale Motion will have on the corpus of the Thompson Trust is that the Thompson Trust will presumably have to pay the Bank's fees and expenses incurred in objecting to the Sale Motion. *See id.* at Ex. D. The Bank is charged by the Trust Code with a fiduciary duty to "administer the trust solely in the interest of the beneficiaries" and to "act with due regard to their respective interests." Iowa Code § 633A.4202(1). It is unclear how filing the Objection in any way advances the interests of Mercy, the sole beneficiary.[3]

12. As noted in the Sale Motion, the transfer of the Beneficial Interest to the Mercy CR Foundation is a win not only for the Debtors' stakeholders and the Mercy CR Foundation, but also for the Thompson Trust. Absent the Sale Motion, the Bank acknowledges that it would itself have to apply for *cy pres* relief as a result of the Sale and Mercy's cessation of hospital operations. *Objection*, ¶ 4. By bringing the Sale Motion and monetizing the transfer of the Beneficial Interest to Mercy CR Foundation through the use of *cy pres*, the Debtors are at once maximizing value for their stakeholders (which they themselves have a fiduciary duty to do) and handling a process that the Bank would otherwise itself have to handle <u>at the expense of the Thompson Trust</u>. By filing and litigating the Objection, however, the Bank has potentially mitigated the cost savings to the Thompson Trust the Debtors' efforts would have brought. It is unclear how objecting to the Sale Motion with hyperbolic language—such as analogizing the sale at issue to an illegal "sale[] of organs"[4]—is acting with "due regard" to Mercy's interests.

13. It is also important to note that the Attorney General for the State of Iowa—the party charged under the Trust Code with monitoring charitable trusts under section 633A.5108—

---

[3] For the avoidance of doubt, the Debtors reserve all rights with respect to any breaches of the fiduciary duties owed to them by the Bank on behalf of themselves, their successors, and the stakeholders in these Chapter 11 Cases.

[4] *Objection*, ¶ 15.

6

has not objected to the Sale Motion. Presumably the State would get involved if it felt Mercy was violating the Trust Code. But it has not.

14.     What the Bank's Objection may boil down to is that the Bank would like to select Mercy's successor beneficiary. The Bank alludes to that fact that it may have chosen a different, smaller organization had the Beneficial Interest not been "unfair[ly]" monetized via the Sale Motion. *Objection*, § 12. But the Thompson Trust nor Trust Code grant it such a right.

15.     Regardless, the Bank presents no evidence of any other charitable organization in Eastern Iowa that would more closely algin with the purposes of the Thompson Trust. The Bank's suggestion of unfairness therefore lacks any merit. The process the Debtors utilized was fair and in the best interests of stakeholders in these Chapter 11 Cases.

16.     The Bank's final argument is that *cy pres* is inappropriate because the Thompson Trust specifically mentions Iowa City and Johnson County as the residents to whom they would like to provide a benefit. *Objection*, ¶ 16. But the charitable purpose of the Thompson brothers was not as limited as only helping their next-door neighbor. The Thompson Trust in fact provides for <u>both</u> the "welfare of our fellow citizens <u>and</u> the welfare of Iowa City" and, importantly, to do so in a way that would honor the "memory of our beloved parents in perpetuity." *Sale Motion*, Ex. C, *Last Will and Testament of Frank L. Thompson*, Art. 3.4(c).

17.     The Thompson's general charitable intent was to honor their parents' memory by providing for the medical care of their fellow citizens, including those in Iowa City. When assessing a settlor's intent, a court must determine their "dominant motive and purpose" in making a gift. *Coe College*, 935 N.W.2d at 590 ("It is a well recognized [*sic*] rule, uniformly followed by all courts that gifts to charitable uses and purposes are highly favored in law, and will be most liberally construed to make effectual the intended purpose of the donor." (internal citations and

7

quotations omitted)); *Lupton v. Leander Clark College*, 187 N.W. 496, 501 (Iowa 1922). In *Lupton*, for example, the Iowa Supreme Court found that the general charitable intention of a donor in establishing a charitable endowment at a college that went defunct was not to specifically benefit the institution or the man's hometown (Toledo, Iowa) where the college was located. *Id.* Instead, it was to more generally "establish a perpetual charitable trust for the aid and support of Christian education." *Id.* at 500. The Court relied on the donor not specifying any contingencies in the event that the defunct college ceased to exist and, instead, using language that signified a desire to support Christian education into perpetuity. *Id.* The Court found that the donor demonstrated "a broader and more generous purpose" than to have a college in the donor's hometown named after him. *Id.* Instead, it was to support Christian education widely. *Id.*

18. Like in *Lupton*, the Thompson's general charitable intention was to broadly honor "in perpetuity" their parents while contributing to the "welfare of our fellow citizens." This intent is broader than a localistic intent to benefit Iowa City and Johnson County and, like *Lupton*, the Thompson Trust contains no contingencies should Mercy cease to exist. It strains credulity to argue that the Thompson brothers' general charitable intent would not be satisfied by substituting as beneficiary a sister hospital organization approximately 27 miles away in Eastern Iowa's interconnected "Corridor" that serves an almost identical mission and purpose. The Thompson Trust's "broader and more generous purpose" is to advance medical care for all citizens in memory of the Thompson brothers' parents, including, but not limited to, those in Johnson County. The transfer of the Beneficial Interest to the Mercy CR Foundation will accomplish just that.

19. Accordingly, the Bank's Objection should be overruled in full and the Court should submit the Proposed Findings and Conclusions to the District Court for entry in accordance with Bankruptcy Rule 9033.

8

| | |
|---|---|
| Dated: Cedar Rapids, Iowa<br>June 4, 2024 | **NYEMASTER GOODE, P.C.**<br><br>*/s/ Roy Leaf*<br>Roy Leaf, AT0014486<br>625 First Street SE, Suite 400<br>Cedar Rapids, IA 52401-2030<br>Telephone:   (319) 286-7002<br>Facsimile:    (319) 286-7050<br>Email:          rleaf@nyemaster.com<br><br>- and -<br><br>Kristina M. Stanger, AT0000255<br>Matthew A. McGuire, AT0011932<br>Dana Hempy, AT0014934<br>700 Walnut, Suite 1600<br>Des Moines, IA 50309<br>Telephone:  515-283-3100<br>Fax:  515-283-8045<br>Email: mmcguire@nyemaster.com<br>         kmstanger@nyemaster.com<br>         dhempy@nyemaster.com<br><br>- and -<br><br>**MCDERMOTT WILL & EMERY LLP**<br>Felicia Gerber Perlman (admitted *pro hac vice*)<br>Daniel M. Simon (admitted *pro hac vice*)<br>Emily C. Keil (admitted *pro hac vice*)<br>444 West Lake Street, Suite 4000<br>Chicago, IL 60606<br>Telephone:    (312) 372-2000<br>Facsimile:     (312) 984-7700<br>Email:           fperlman@mwe.com<br>                     dsimon@mwe.com<br>                     ekeil@mwe.com<br><br>- and -<br><br>Jack G. Haake (admitted *pro hac vice*)<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX 75201<br>Telephone:    (214) 295-8000<br>Facsimile:     (972) 232-3098<br>Email:           jhaake@mwe.com |

*Counsel for Debtors and Debtors-in-Possession*

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this June 4, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

/s/ *Roy Leaf*