# **<u>EXHIBIT A</u>**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy No. 23-00623<br><br>Jointly Administered |

# MEMORANDUM OPINION AND ORDER OVERRULING MERCYONE'S OBJECTION TO DEBTORS' PLAN CONFIRMATION

The matter before the Court is Mercy Health Network's (d/b/a "MercyOne") Objection to Confirmation of Plan (Doc. 1016). The Debtors filed their Modified Chapter 11 Plan of Liquidation (Doc. 929) on April 4, 2024, with a Plan Supplement (Doc. 993) filed on April 29, 2024, and a final Modified Chapter 11 Plan of Liquidation (hereinafter "Plan") (Doc. 1050) on May 14, 2024. The Court held the plan confirmation hearing on May 16, 2024. The Court took evidence and heard argument on MercyOne's objection. This is a core proceeding. For the following reasons, MercyOne's objection is overruled.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

MercyOne's objection primarily involves the plan provisions on Released Parties at Article II(A)(1.189)(g) of the Plan. MercyOne asserts the release provisions are improper and make the plan non-confirmable. Debtors contend that MercyOne does not have standing to object because it opted out of the third-party release.

Debtors also contend that, even if MercyOne has standing, the release provisions satisfy all applicable confirmation standards. At the evidentiary hearing, the Debtor offered the declaration of Mark Toney in support of confirmation. He was also called as a witness. In sum, he testified the Article II(A)(1.189)(g) Releases were a product of extensive negotiation between the key parties to get a consensual plan—with all creditors consenting other than MercyOne. He noted the releases were an essential component of the compromise, which likely would not have been reached without their inclusion.

He admitted on cross-examination that no in-depth analysis was done to determine the potential for recovery, or possible amount of recovery, from the Released Parties. He noted that Debtors exercised their fiduciary duties by pursuing a course of action that was best for the estate, without spending unnecessary time and incurring fees to make that full-blown determination. Debtors relied on a basic view that there had been no reason to believe that any released party had clear liability or was likely to provide a source of substantial recovery for the estate. Debtors relied on counsel and on the fact that other parties who would benefit from a potential recovery against the Released Parties were in favor of their inclusion. He stated the releases were a trade-off Debtors and other key parties were willing to make to get a consensual plan. Moreover, most of the released parties provided key concessions or other value to the estate for the release they would receive.

2

## A. Debtors Argument That MercyOne Does Not Have Standing to Object to Article II(A)(1.189)(g) of the Plan.

"A *party in interest* may object to confirmation of a plan." 11 U.S.C. § 1128(b) (emphasis added). Section 1109(b) of the Code notes that a party-in-interest includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee . . . ." Id. There is no dispute that MercyOne is a party in interest here.

The analysis, however, does not end here. "Generally, it is only an aggrieved party, whose own interests are impacted by particular plan provisions, [who] may object to those provisions at confirmation." In re Nevel Properties Corp., No. BR 09-00415, 2012 WL 528179, at *6 (Bankr. N.D. Iowa Feb. 17, 2012), aff'd, 765 F.3d 846 (8th Cir. 2014) (citing In re Applied Safety, Inc., 200 B.R. 576, 587 (Bankr. E.D. Pa. 1996)). "Thus, a party cannot successfully object to plan provisions that have no effect on the party's rights and interests thereunder. A party may therefore not object to a plan raising rights that belong to third parties who are not objecting." Id.[1]

---

[1] In re Indianapolis Downs, LLC, 486 B.R. 286, 304 (Bankr. D. Del. 2013) (holding that parties who objected to the third-party release in the debtors' chapter 11 plan "lack[ed] the requisite standing to object" to such release because, among other things, the parties "voted to reject the Plan and . . . affirmatively opt[ed] out of the release provision"); In re Orlando Investors, L.P., 103 B.R. 593, 569-97 (Bankr. E.D. Pa. 1989) (finding that in the context of a confirmation hearing, creditors "have standing only to challenge those parts of a reorganization plan that affect their direct interests"); In re Mallinckrodt PLC, 639 B.R. 837, 877 (Bankr. D. Del. 2022) (finding "that the Pension Trust does not have standing to object to the Third-Party Releases because it has opted out and is therefore not bound by them"); Matter of Ultra Petroleum Corp., No. 21-20049, 2022 WL 989389, at *5 (5th Cir. Apr. 1, 2022) (finding that despite objecting party's argument that the opt-out process and releases were improper. . . he himself managed to opt-out and thus has no standing to challenge the releases"); In re Akorn, Inc., No. 20-1254 (MN), 2021 WL 4306222, at *16 (D. Del. Sept. 22, 2021) (holding that because appellants did not opt into the releases, they "lacked standing to challenge those releases"); Talarico v. Ultra Petroleum Corp., 2020 WL 8361996, at *3 (S.D. Tex. Dec. 29, 2020) ("[I]t is clear that [the appellant] lacks standing to bring and maintain this appeal based on the 'third-party release' provision[] of the Plan" because he "opted out of the provision."); In re Dynegy Inc., No. 12 Civ. 8908 (JGK), 2013 WL 2413482, at

3

Some confusion has arisen in both MercyOne's arguments in briefing and at the confirmation hearing. MercyOne objects at various points to "the Releases" in the Plan—and makes arguments about "the Releases" without distinguishing between the two types of releases at issue. There are "third-party" releases—by which non-debtor third-parties relinquish rights to pursue parties covered by the release. There are also "Debtor releases," which have the Debtor relinquish its rights to prusue specified parties. The distinction between those types of releases is important in this case—and important in the law. In re Midway Gold US. Inc., 575 B.R. 507, 509 (Bankr. D. Colo. 2017); In re Washington Mutual, 442 B.R. 314, 346-47 (Bankr. D. Del. 2011).

The distinction is important under the facts of this case for a very fundamental reason. MercyOne, as allowed by the Plan, has opted-out of the "Third-Party" release. As such MercyOne is not effected by the "Third Party" releases. It retains all rights to pursue its own claims against those otherwise immunized by the third-party release. The "Debtor release" is not a release of any rights of MercyOne. It provides that Debtors relinquish rights to pursue the parties covered by the Debtor release. MercyOne is not the Debtor and is not a released party. As such, MercyOne

---

*5 (S.D.N.Y. June 4, 2013) (affirming bankruptcy court ruling that creditor "lacked standing on his own behalf to object to the [r]elease because he had timely opted out of the [r]elease and therefore a decision on whether the [r]elease was permissible would not affect his rights").

4

is limited to arguing only about the effect such a release has on any recovery it could make as a creditor.

To the extent MercyOne is objecting to the negotiated, consensual non-debtor Third-Party Releases of *other* parties—which did not opt-out—MercyOne has no standing. MercyOne voluntarily and unequivocally opted out of the Third-Party Releases in the plan, meaning MercyOne is not bound by the provisions of the Plan that prevent a non-Debtor party like MercyOne from pursuing its own claims against the released parties. Case law provides that parties that opt-out of the third party releases—like MercyOne here—have no standing to challenge the releases. In re Indianapolis Downs, LLC, 486 B.R. 286, 304 (Bankr. D. Del. 2013); In re Mallinckrodt PLC, 639 B.R. 837, 877 (Bankr. D. Del. 2022) (finding "that the Pension Trust does not have standing to object to the Third-Party Releases because it has opted out and is therefore not bound by them"). MercyOne is a single creditor, with a small claim in comparision to the other key creditors supporting the plan—including the Bondholders,[2] the Pensioners,[3] and the Unsecured Creditors. MercyOne has made no credible argument that its rights are actually effected by the "Debtor releases." It has only suggested that the releases give away the right to pursue recoveries that **might possibily** result in MercyOne and other creditors

---

[2] The Court's references to the "Bondholders" include both Computershare Trust Company, N.A., as Trustee, and Preston Hollow Community Capital, Inc., as Bondholder Representative.
[3] The Court's references to the Pensioners include the Official Committee of Pensioners and its prior iterations in the case.

5

receiving payment on their claim. This suggestion—without any supporting evidence—does not provide MercyOne with adequate standing to object to the Debtor's release of other parties beyond that limited right.

**B. MercyOne's Objections Fail on the Merits.**

Even if MercyOne does have standing to object to the Debtor's release, the Court concludes MercyOne failed to sufficiently establish that objection. As a general matter, a proposed plan of reorganization may be confirmed by a bankruptcy court only if the plan meets all of the requirements for confirmation under 11 U.S.C § 1129. If all of the subparts of § 1129(a) except (a)(8) have been met, a plan may still be confirmed under the cramdown provisions of § 1129(b). The proponent of the plan bears the burden of proof with respect to each element of §§ 1129(a) and 1129(b) under a preponderance of the evidence standard. In re Internet Navigator Inc., 289 B.R. 128, 131 (Bankr. N.D. Iowa 2003). The findings of fact and conclusions of law satisfying these statutory requirements are set out in the Confirmation Order, ¶¶ N–EE, which is hereby adopted and incorporated by reference. No party—including MercyOne—has challenged these findings and conclusions.

MercyOne focuses its entire objection on the release of parties listed at Article II(A)(1.189)(g) of the Plan—a discretionary plan provision under §1123(b). MercyOne specifically argues: (i) the releases are overbroad, (ii) Debtors'

conclusory assertions cannot support inclusion of the Article II(A)(1.189)(g) Releases, (iii) there is no identity of interest between Debtors and the released parties, (iv) the released parties contributed nothing to the overall reorganization efforts, (v) the released parties are not essential to reorganization, (vi) the releases improperly apply to those who do not affirmatively consent to the plan, and finally that (vii) these releases do not satisfy Debtors' good faith requirement of § 1129(a)(3).

The Court begins this analysis by reiterating that this case is not about third-party releases where non-debtor parties are forced to give up their rights to pursue released parties. That is a contentious issue now before the United States Supreme Court. See <u>Lujan Claimants, et al. v. Boy Scouts of Am., et al.</u>, No. 23A741 (Feb. 9, 2024). Again, there is non-Debtor third-party release language in this Plan, but MercyOne has opted-out of the application of that Plan language. Case law is quite clear that a different and less demanding standard applies to challenges to Debtor releases.

The only real issue remaining, and the only one truly argued at the confirmation hearing, is whether the Debtors release of other parties to this case is warranted. MercyOne argues that the releases are not valid because Debtor has failed to show they meet the applicable legal standard. MercyOne also argues the releases should also be disallowed because that **might** result in MercyOne receiving more payment on its claim.

7

1.  <u>Debtors have met their burden of proof for the inclusion of the Debtor's Release in II(A)(1.189)(g).</u>

    Debtors and MercyOne agree that the factors set forth in <u>In re Master Mortg. Inv. Fund, Inc.</u>, 168 B.R. 930 (Bankr. W.D. Mo. 1994) are applicable here to assist the Court as it considereds the validity of the Debtors releases. The Factors that support releases include:

    > (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.
    > (2) The non-debtor has contributed substantial assets to the reorganization.
    > (3) The injunction is essential to reorganization. Without the it, there is little likelihood of success.
    > (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment.
    > (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

<u>Id.</u> at 935. Debtors, however, do not agree with MercyOne's suggestion that Debtor's releases are extraordinary and should rarely be approved. That assertion is not supported by case law. <u>In re Midway Gold US, Inc.</u>, 575 B.R. 475, 507, 609 (Bankr. D. Colo. 2017) ("Ordinarily, debtors are authorized under § 1123 (b)(3)(A) to settle or **release** claim in a Chapter 11 Plan"). In fact, <u>Midway Gold</u> went on to state:

> A plan may provide releases by a debtor of non-debtor third parties after considering the specific facts and equities of each case. Moreover, a debtor may release claims in a plan pursuant to Bankruptcy Code § 1123 (b)(3)(A), if

8

the release is a valid exercise of the debtor's **business judgment**, is fair and reasonable, and is in the best interest of the estate.

575 B.R. at 509 (citing In re Spansion, 426 B.R. 114, 142-43 n. 48 (Bankr. D. Del 2010) (emphasis added). There is language in the case law that also makes this abundantly clear and specifies that the analysis of the Master Mortgage factors allows for flexibility in the analysis tailored to each case. This is not a 'rigid factor test' to be applied in every circumstance." Id. "These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." In re Washington Mutual, Inc., 442 B.R. 314, 346 (Bankr. D. Del. 2011).

With those thoughts in mind, the Court turns to the Master Mortgage factors.

i.      Identity of Interest

Here, the Court finds that there is an identity of interest between Debtors and the Released Parties. Particularly persuasive is the fact that these releases were integral to the consesual nature of the Plan and necessary to avoid the prospect of immense and complex litigation absent the releases. In re Tribune Co., 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding that debtors and releases "share the common goal" of confirming a plan dependent on settlement of complex multi-party litigation resulted in an "identity of interest" for purposes of the Master Mortgage factors); In re Seaside Engineering & Surveying, Inc., 780 F.3d 1070, 1079-80 (11th Cir. 2015) (finding identity of interest between debtor and released parties, who were debtor's

9

key employees, where debtor would deplete its assets in defending released parties against litigation). Debtor also presented unrefuted evidence and argument on the fact that many of the Released Parties under the Debtor's releases had indemnity rights back against the Debtor. This fact further establishes the identity of interest factor.

  ii. Substantial Contribution

The evidence also showed that most parties receiving the benefit of the Debtor's release agreed to forego some right or possible right of recovery in exchange for the release. In doing so, these parties provided assurance that the Releases would both eliminate a risk of adverse result for the Debtor and allow the Debtor to avoid any further expense in pursuing those issues on which Debtor received concessions. Both of these elements provide substantial contribution to the estate. See In re rue21, Inc., 575 B.R. 314, 326 (Bankr. W.D. Pa. 2017) ("It is within the bankruptcy court's discretion to determine whether the nature and size of the consideration rises to the level of a 'substantial' contribution."); see also Seaside Engineering, 780 F.3d at 1079-80 (finding that labor and services of debtors' professionals constituted substantial contribution); In re Mercedes Homes, Inc., 431 B.R. 869, 881 (Bankr. S.D. Fla. 2009) (finding that debtors' officers' and directors' expertise and knowledge, which would be used to work for reorganized debtors, constituted a substantial contribution).

10

iii. Essential to the Plan

The evidence and undisputed arguments also show the Releases were critical to achieving the near-unanimous consent (other than MercyOne) to the Plan and its confirmation. Multiple major constituents, including most notably the Bondholders and the Pensioners, explicitly noted that their support of the Plan was dependent on Debtors' inclusion of the released parties. See Matter of Fansteel Foundry Corp., No. 16-01825 (ALS), 2018 WL 5472928, at *11-12 (Bankr. S.D. Iowa Oct. 26, 2018) (overruling objection to third-party releases because, among other things, "[t]he plan cannot move forward if the release and exculpation are not permitted"); In re 710 Long Ridge Rd. Operating Co., II, LLC, No. 13-13653 (DHS), 2014 WL 886433, at *15 (Bankr. D.N.J. Mar. 5, 2014) (finding factor satisfied where "contributions by [releasees were] absolutely necessary to a successful reorganization"); In re U.S. Fidelis, Inc., 481 B.R. 503, 520 (Bankr. E.D. Miss. 2012) ("A release of a non-debtor is appropriate only if, without it, there would be little likelihood of the (sic) accomplishing of the goal of the chapter 11: the confirmation of a successful plan of liquidation that benefits creditors, including the unsecured creditors. Here, there is no chance of a plan of liquidation without the releases, and if there is no confirmed plan, the Case either will be converted to a chapter 7 case or dismissed."); In re MAC Panel Co., No. 98-10952C, 2000 WL 33673757, at *10 (Bankr. M.D.N.C. Feb. 24, 2000) (finding factor satisfied because injunctive relief and release, "which were

11

prerequisites to the availability of the [releasee's] funds, [were] 'essential' to the confirmation" of debtor's plan); In re Union Fin. Servs. Grp., Inc., 303 B.R. 390, 428 (Bankr. E.D. Mo. 2003) ("Where the success of the reorganization is premised in substantial part on such releases, and failure to obtain releases means the loss of a critical financial contribution to the debtor's plan that is necessary to the plan's feasibility, such releases should be granted.").

    iv.    Overwhelming Support for the Plan

All of the Voting Classes voted overwhelmingly in favor of Confirmation of the Plan after information about the releases was widely distributed through the Solicitation Process. See Master Mortgage, 168 B.R. at 938 (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate); In re Key3Media Grp., 336 B.R. 87, 97-98 (Bankr. D. Del. 2005), aff'd, 2006 WL 2842462 (D. Del. Oct. 2, 2006) (granting a settlement of estate causes of action over a creditor's objection because, among other things, a majority of creditors approved the settlement). This factor provides strong support for approval of the release language.

    v.    Payment of Claims

Finally, it is undisputed that the Plan here provides for distributions to parties affected by the releases. Courts generally find this factor met when a plan provides for a distribution to impaired creditors affected by releases that is greater than the

12

distribution such creditors would receive under a chapter 7 liquidation. Matter of Fansteel Foundry Corp., 2018 WL 5472928, at *12 (approving thirdparty release because, among other things, "[t]he plan provides a mechanism that realizes recovery for creditors who would receive no distribution" otherwise); In re U.S. Fidelis, Inc., 481 B.R. at 520 (finding fifth Master Mortgage factor satisfied where there was a return to creditors).

After weighing all the factors and circumstances of this case, the Court finds that Debtors have met their burden under Master Mortgage or Midway Gold by a preponderance of the evidence. MercyOnes's objections that the Releases are unlawful and should not be included here is overruled.

This conclusion leaves only MercyOne's objection that this result is unfair to MercyOne and may allow other parties to escape some possible liability that **might possibly** result in more payment of MercyOne's claims.  The Court rejects this argument as well.  The formation of this Plan has been the result of extensive compromise and settlment talks between the key parties in this case, including the United States Trustee, the Unsecured Creditors Committee, the Pensioners, and the Bondholders, and various other constituents.  Where a compromise is part of a plan of reorganization, the court has the duty "to determine that a proposed compromise forming part of a reorganization plan is fair and equitable." In re Coram Healthcare

13

Corp., 315 B.R. 321 (Bankr. D. Del. 2004) (citing TMT Trailer Ferry, 390 U.S. 414, 424 (1968)).

As this Court has previously noted:

> [T]he standard for evaluation is whether the settlement is fair and equitable and in the best interests of the estate. The court need only ensure the settlement does not fall below the lowest point in the range of reasonableness. In assessing the reasonableness of a settlement, the court considers: (A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re McQuillen Place Co., LLC, No. BR 19-00507, 2021 WL 1234457, at *3 (Bankr. N.D. Iowa Mar. 30, 2021) (citing Ritchie Cap. Mgmt., L.L.C. v. Kelley, 785 F.3d 273, 278–79 (8th Cir. 2015)). Debtors argue it is within its reasonable business judgment to include the Releases as part of the global settlment that culminated in the Plan currently before this Court. See, e.g., In re Quincy Med. Ctr., Inc., No. 11-16394-MSH, 2011 WL 5592907, at *2 (Bankr. D. Mass. Nov. 16, 2011) ("With respect to a debtor's releases, there is no reason why a debtor in its *reasonable business judgment* should not be permitted, as part of its own plan, to propose to release whomever it chooses. Bankruptcy Code § 1123(b)(3) contemplates such plan provisions which are analogous to Federal Rule of Bankruptcy Procedure 9019 compromises and settlements.")(emphasis added); In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004) (citing In re Martin, 91 F.3d 389 (3d Cir. 1996)) (explaining

14

that "the court should defer to a trustee's judgment so long as there is a *legitimate business justification* for [its] action")(emphasis added).

This Court has in similar situations deferred to the business judgment of fiduciaries offering settlements as part of its "totality of the circumstances" analysis. See, e.g., In re Simply Essentials, LLC, 640 B.R. 922 (Bankr. N.D. Iowa 2022), aff'd, 78 F.4th 1006 (8th Cir. 2023)(noting that "[s]ubstantial deference should be given to the [fiduciary's] opinion" when evaluating a settlement); In re Hildreth, No. BR 09-00293, 2012 WL 4520635 (Bankr. N.D. Iowa Oct. 1, 2012)(explaining that "the Court gives weight to [the fiduciary's] opinion"). Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. See In re Woodberry, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021)(citing In re Engman, 331 B.R. 277, 289 (Bankr. W.D. Mich. 2005).

Here, MercyOne has offered no such evidence or argument. It asserted only that the possibility of greater recovery against released parties could have been explored in more detail before Debtor agreed to the releases. That is not enough. Debtors offered evidence at the Confirmation Hearing that the Releases were a product of good faith, arm's-length negotiations, and were a material and necessary precondition for the key parties in the case to support the Plan. The key parties, particularly the Bondholders, also reiterated at the Confirmation Hearing that, but

15

for the inclusion of the Releases, they would not have voted in support of the Plan. The Court finds this the most persuasive evidence and supportive of confirmation for this particular case. See <u>Midway Gold</u>, 575 B.R. at 509-10 (reaching similar conclusion). On August 8, 2023, when the Court held its "First Day Motions" hearing in this case, the animosity between Debtors and the multiple constituent groups was palpable. The Court urged the parties to work together toward consent, with an eye to the future and a confirmation plan. The parties have done just that. The gravity of having a consensual Plan presented to the Court just a short nine months later—with MercyOne's objections being the only remaining outlier—is not lost on this Court.

This is not to say that every consensual plan that results from heavily contested bankruptcy proceedings should be confirmed soley on that basis. Rather, in reading the applicable statutes and case law, the Court finds that in this particular case with these particular facts, the inclusion of the Releases in the Plan meets the standards set under <u>McQuillen Place</u>. This Plan is functionally a global settlement based on Debtors' business judgment that is fair, equitable, and in the best interests of the estate. See <u>Tri-State Fin., LLC v. Lovald</u>, 525 F.3d 649 (8th Cir. 2008) (upholding a settlment approval based on a review of the four factor considerations and the totality of the circumstances); <u>In re Martin</u>, 212 B.R. 316 (B.A.P. 8th Cir. 1997) (same). MercyOne has offered no evidence beyond conclusory allegations in

16

its motion that this settlement falls "outside the parameters of what a rational and reasonably informed businessperson might select." See In re Woodberry, 629 B.R. at 243. The Court finds the evidence actually offered at the hearing to be credible and persuasive here and overrules MercyOne's objections on this point.

2. Debtors satisfy the good faith requirement of § 1129(a)(3).

MercyOne also argues that the Plan was not proposed in good faith. Section 1129(a)(3) requires that plans be proposed in good faith, but the Code does not define good faith. In re Civic Partners Sioux City, LLC, No. BR 11-00829, 2013 WL 5534743, at *31 (Bankr. N.D. Iowa Oct. 7, 2013) (citing Hanson v. First Bank of S.D., N.A., 828 F.2d 1310, 1315 (8th Cir. 1987) (overturned on other grounds)). "[H]owever, a plan is considered proposed in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" Hanson, 828 F.2d at 1315 (citing In re Toy & Sports Warehouse, Inc., 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)). To determine if the Plan will achieve a result consistent with the Code, this Court must judge this case on its own facts after considering the totality of the circumstances surrounding the plan and the bankruptcy filing. See Noreen v. Slattengren, 974 F.2d 75, 76 (8th Cir. 1992); see also In re Riverbend Leasing LLC, 458 B.R. 520, 529 (Bankr. S.D. Iowa 2011); In re Cedar Shore Resort, Inc., 235 F.3d 375, 381 (8th Cir.2000) ("the powerful

equitable weapons of the bankruptcy court should be available only to those debtors with clean hands.").

MercyOne's conclusory objections on this point raise the same arguments addressed in full above—that the Releases show lack of good faith. As noted, the Releases meet all tests to be lawfully included here. MercyOne's arguments also do not explain in any additional detail why inclusion of the Releases would constitute bad faith or show any objections to Debtors' bankruptcy filing in the first place. Nothing in the record suggests that Debtors acted with "unclean hands" or any inappropriate purpose in submitting this Plan or in filing this bankruptcy petition. See Matter of Fansteel Foundry Corporation, 2018 WL 5472928 at *12-13 (Bankr. S.D. Iowa 2018). For all the reasons outlined above and in the Court's Confirmation Order, the goal of the Plan is consistent with the objectives of the Code. This objection to confirmation is overruled.

## II. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED THAT** MercyOne's objections are OVERRULED and Debtors' Plan is CONFIRMED by the separate court order adopted and incorporated by reference here.

**FURTHER IT IS ORDERED THAT**, to the extent necessary for clarity, this opinion is incorporated in and made a part of the separate Confirmation Order.

Ordered:   June 7, 2024

*[signature: Thad J. Collins]*

Thad J. Collins
Chief Bankruptcy Judge