### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.* | ) | Case No. 23-00623 (TJC) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

### MOTION OF MERCYONE FOR STAY OF CONFIRMATION
### ORDER PENDING APPEAL PURSUANT TO BANKRUPTCY RULE 8007

Mercy Health Network, Inc., d/b/a "MercyOne" ("MercyOne"), by its undersigned counsel, hereby moves (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), staying the Confirmation Order (defined below) entered on June 7, 2024 [Docket No. 1114] pending MercyOne's appeal pursuant to Bankruptcy Rule 8007(a)(1)(A) and granting the relief described below.   In support of the Motion, MercyOne states as follows:

### PRELIMINARY STATEMENT

1.      It is essential that this Court stay the Confirmation Order so that MercyOne may fairly pursue its appeal of the Confirmation Order and the Court's decision to overrule MercyOne's objection to the Combined Plan (defined below). The Combined Plan relies upon releases given by the Debtors and Non-Debtor third parties to unidentified individuals which, under controlling authority, make the Debtors' Combined Plan unconfirmable.  As the evidence at the confirmation hearing confirmed, the Combined Plan provides releases to hundreds, if not thousands, of unidentified individuals and entities who have contributed *nothing* to the Combined Plan, and most of whom have had no connection with this bankruptcy whatsoever.  As the Court acknowledged in overruling MercyOne's objection, the Debtors' fiduciaries did not even investigate whether there

were viable, potential claims against these remote parties that could bring value or enhance the

estates, nor how much in possible recoveries was being forfeited that could otherwise be used to

pay the claims of unsecured creditors who are not being made whole.  Under these circumstances,

the Court's determination that these broad releases were in the "best interest" of the estates cannot

stand.

2.     Moreover, the enforceability of third-party releases in a plan is presently being

considered by the United States Supreme Court in *Harrington v. Purdue Pharma L.P.*, No. 23-124

(U.S. 2023), with a ruling expected very shortly before the current term ends. That ruling may

impact the Combined Plan.

3.     Accordingly, MercyOne is filing its notice of appeal concurrently with the instant

Motion.

4.     To that end, and to preserve its rights on appeal, MercyOne seeks a stay of the

Confirmation Order pending its appeal. As detailed below, MercyOne satisfies each factor

considered for such a stay, as set forth in Fed. R. Bankr. P. 8007(a)(1)(A) and applicable case law.

## JURISDICTION, VENUE, AND STATUTORY BASIS

5.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United

States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C.

§ 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408

and 1409.

6.     The statutory bases for the relief requested herein are section 105 of Title 11 of the

United States Code (the "Bankruptcy Code") and rule 8007 of Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

## RELEVANT BACKGROUND

7.      On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

8.      On April 3, 2024, the Debtors filed their *Modified Chapter 11 Plan of Liquidation Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 927] (the disclosures contained therein, the "Disclosure Statement" and the plan contained therein, as subsequently amended, modified, or supplemented, the "Plan," collectively with the Disclosure Statement, the "Combined Plan"). On April 4, 2024, the Debtors later filed their *Modified Chapter 11 Plan of Liquidation* [Docket No. 929], with the *Plan Supplement* filed on April 29, 2024 [Docket No. 993], and the *Final Modified Chapter 11 Plan of Liquidation* filed on May 14, 2024 [Docket No. 1050]. The Combined Plan provides that the Debtors will provide certain releases to the "Released Parties" (the "Debtor Releases") as well as that other Non-Debtor Parties will provide releases of the "Releasing Parties" (the "Third-Party Releases," together with the Debtor Releases, the "Releases"). Combined Plan, Article II(A) (1.189) & (1.190).

9.      On May 16, 2024, MercyOne filed its *Objection to Confirmation of the Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 1016] (the "Objection").

10.      On May 16, 2024, the Court held a confirmation hearing on the Combined Plan (the "Confirmation Hearing"), at which Mr. Mark Toney, the Chief Restructuring Officer of the Debtors, testified in support of confirmation and was cross-examined.

11.      On June 7, 2024, the Court overruled MercyOne's Objection and entered an order confirming the Combined Plan. *See Memorandum Opinion and Order Overruling MercyOne's Objection to Debtor's Plan Confirmation*, Docket No. 1113 (the "Memorandum Opinion");

3

*Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Joint Chapter 11 Plan*

*of Liquidation*, Docket No. 1114 (the "Confirmation Order").

## ARGUMENT

### A. The Court Should Stay the Confirmation Order Pending MercyOne's Appeal of Confirmation Order and Denial Of Objection.

12.     Bankruptcy Rule 8007 requires that a party seeking a stay pending appeal must

"move first in the bankruptcy court." Fed. R. Bankr. P. 8007(a)(1)(A).  In determining whether to

grant a stay pending appeal, courts consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is
> likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other
> parties interested in the proceedings; and
>
> (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425-26, 129 S.Ct. 1749 (2009); *Brady v. Nat'l Football League,* 640

F.3d 785, 789 (8th Cir. 2011) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113

(1987)); *Ross v. Strauss (In re Ross)*, 223 B.R. 702, 703 (B.A.P. 8th Cir. 1998) (citing *Fargo*

*Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994); *James River Flood Control*

*Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam)).

13.     Courts must consider the relative strength of each factor, "balancing them all."

*Brady,* 640 F.3d at 789 (internal quotes omitted); *In re Smoldt*, 68 B.R. 533, 535 (Bankr. N.D. Iowa

1986) ("The moving party must show satisfactory evidence on all four factors, though they do not

need to be given equal weight.").  Still, in analyzing the four factors, courts have found, and the

Supreme Court has noted, that irreparable injury and likelihood of success on the merits "are the

most critical." *See, e.g., Nken*, 556 U.S. at 434, 129 S.Ct. 1749; *In re Revel AC, Inc.,* 802 F.3d 558, 569 (3d Cir. 2015).

### i.    MercyOne Has Made a Strong Showing of Success on the Merits

14.    To satisfy the strong showing of success factor, the movant need not establish "absolute certainty of success," but rather only "that they are 'likely' to succeed on the merits." *Knutson v. AG Processing, Inc.*, 302 F.Supp.2d 1023, 1035 (N.D. Iowa 2004). In other words, the movant "does not need to prove there is a greater than fifty-percent chance that it will prevail on the merits." *Id.* "At a minimum, the movant is required to show serious questions going to the merits." *Id.* (quoting *Anderson v. Gov't of the Virgin Islands*, 947 F.Supp. 894, 898 (D. Vi. 1996)) (internal quotes omitted).

15.    Here, MercyOne is likely to succeed in its appeal because the Combined Plan approves and makes immediately enforceable releases in favor of 18 categories of parties (potentially thousands of individuals and entities) who have contributed *nothing* to the Combined Plan (the "Remote Non-Debtor Parties").  The Combined Plan describes these parties solely in broad categories, and who is within each category or how many people or entities is unknown. The vast majority have not appeared in these Chapter 11 Cases; they are being released without doing a thing.  As the Court noted, the Debtors' only witness at confirmation, Mr. Toney, admitted he did no investigation of the possible claims being released against any of these parties, or the possible value to the estate that is being left on the table. *Memorandum Opinion*, at p. 2.  The Combined Plan creates a liquidating trust with a liquidating trustee to "pursue" claims to possibly obtain recoveries for the estate, but then releases any possible claims that would be pursued, including claims for preference or fraudulent transfer, from parties who might well have received such payments.   This taints both the Debtor Releases and Third-Party Releases in the Combined Plan.

16.     Notably, MercyOne did not object to the following Released Parties: (a) the Debtors; (b) the UCC and each of its members (only in their capacity as such); (c) the Pension Committee and each of its members (only in their capacity as such); (d) the Bondholder Representatives; (e) the Foundation; and (f) the Sisters of Mercy. Combined Plan, Article II(A)(1.189) (a)-(f). However, MercyOne maintains that Releases provided to those related parties identified in Article II(A)(1.189)(g) of the Combined Plan (*i.e.*, the Remote Non-Debtor Parties) make the Combined Plan patently unconfirmable. Indeed, the Releases of the Remote Non-Debtor Parties include some of the following: any (1) current and former directors; (2) managers; (3) officers; (4) predecessors; (5) successors; (6) affiliates; (7) principals; (8) members; (9) management companies; (10) employees; (11) agents; (12) financial advisors; (13) attorneys; (14) accountants; (15) investment bankers; (16) consultants (17) other professionals; and (18) advisors. Mr. Toney admitted at the Confirmation Hearing that the Debtors' employees alone, over time, number in the hundreds, if not more.

17.     In overruling MercyOne's Objection, the Court found that Mr. Toney testified that the Releases of the Remote Non-Debtor Parties was an essential part of the compromise leading to the Combined Plan and that this likely would not have been reached without the inclusion of such an expansive release. *Memorandum Opinion*, at p. 2. But that was not Mr. Toney's testimony. He could not identify any party who told him that it would walk away from the Combined Plan if the Remote Non-Debtor Parties were not released. He did not discuss this subject coming up at all. Constituents, including the Unsecured Creditor Committee and Bondholders, were present in the courtroom at the Confirmation Hearing, yet did not call a witness who testified that these parties would abandon the Combined Plan if the Remote Non-Debtor Releases were removed.

18.     As the Court found, Mr. Toney admitted on cross-examination that no in-depth analysis was done to determine the potential for recovery, or possible amount of recovery, from pursuing the Remote Non-Debtor Parties. *Id.* This meant that he was entirely ignorant as to what claims were being left on the table. Again, it defies belief that in this crowd of hundreds, if not thousands, of parties, there would not be some who received preferential or fraudulent transfers, the recovery of which would enhance the recoveries for those, like MercyOne, who will not presently be paid in full on their claim.

19.     The Court characterized this omission by Mr. Toney as an exercise of fiduciary duty, which was what was "best for the estates" because the estates did not spend time and incur fees determining if causes of action existed. But if the estate representatives could not know whether possible claims existed against the Remote Non-Debtor Parties that were being released or the value of these forfeited claims, then they could not know whether the loss of that value was damaging to the Debtors' estates, much less that it was in their best interests.

20.     Here, that forfeiture of potential claims makes even less sense, since the Combined Plan envisions that claims are supposed to be investigated and pursued by a liquidating trustee, which is receiving substantial sums to perform these tasks. Yet the Releases kneecap this work before the liquidating trustee has even started by eliminating claims against entire classes of possibly liable parties based on no investigation whatsoever.

21.     The Court further noted that the Debtors concluded that they had reason to believe that the released parties had no liability. But that is wholly speculative. Without investigating claims against parties, or even knowing who these parties were, the Debtors could not know if valuable claims existed. And it goes without saying that if a person or entity faces no risk of liability, then they do not need a release in the first place.

4876-3209-2871.7

22.     The Court found that the Release of the Remote Non-Debtor Parties satisfied the standards of *In re Master Mortgage, Inc*., 168 B.R. 930 (W.D. Mo. 1994), but that is untrue.

23.     There, the court identified five key factors to be considered in making this assessment. These are:

> (1) There is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate.
>
> (2) The non-debtor has contributed substantial assets to the reorganization.
>
> (3) The injunction is essential to reorganization. Without it (sic), there is little likelihood of success.
>
> (4) A substantial majority of the creditors agree to such injunction, specifically, the impacted class or classes has "overwhelmingly" voted to accept the proposed plan treatment.
>
> (5) The plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*Id.* at 935.

24.     Here, four of these tests fail. For example, there is no identity between the Debtors and every former employee.  None of the Remote Non-Debtor Parties have contributed a penny to the reorganization. Most have not even appeared. No evidence supports that without the release of the Remote Non-Debtor Parties, the Combined Plan is not likely to succeed. (To the contrary, by permitting a greater number of suits for recovery, the Combined Plan is *more likely* to succeed without these Remote Non-Debtor Party Releases).  The Combined Plan is not paying the claims in MercyOne's class, at least in full, which are directly impacted by these Releases.

25.     Under like circumstances, other bankruptcy courts in this District have denied plan confirmation. *See, e.g., In re Riverbend Leasing LLC*, 458 B.R. 520, 527 (Bankr. S.D. Iowa 2011)

(denying plan confirmation where plan proponent could not demonstrate exceptional circumstances warranting releases).

26.     The Combined Plan's Third-Party Releases suffer from these defects and more. Although the Court found that MercyOne has no standing to challenge these because its objection to the Combined Plan is taken as an opt-out of the release, this is untrue. Memorandum Opinion, at p. 3. First, no court in the Eighth Circuit has held that an opt-out provision eliminates standing to challenge a plan that complies with 11 U.S.C. § 1129. Because MercyOne is, as the Court acknowledged, undoubtedly a claimant with an interest in this bankruptcy, it has standing to object to the Combined Plan in its entirety. But in holding otherwise, the Court relied on inapposite cases from a few district courts outside this Circuit that have accepted this theory. *Id.* at p. 5.

27.     *In re Dow Corning*, 280 F.3d 648 (6th Cir. 2002), reflects the majority view. There, the Sixth Circuit reversed the bankruptcy court's finding upholding third-party releases where, as here, the record lacked supporting proof. As the bankruptcy court explained:

> The bankruptcy court's findings of fact with regard to the "unusual circumstances" test were no more than conclusory statements that restated elements of the test in the form of factual conclusions. The bankruptcy court provided no explanation or discussion of the evidence underlying these findings. Moreover, the findings did not discuss the facts as they related specifically to the various released parties, but merely made sweeping statements as to all released parties collectively. Such factual determinations are not sufficiently specific and explained to support a finding of "unusual circumstances."

*Id.* at 658.

28.     Moreover, as the Court noted at the Confirmation Hearing, the United States Supreme Court is presently hearing the *Purdue* case, which presents the question of whether third-party releases are ever permissible. Should the Supreme Court decide they are not, which is certainly a possibility, the Combined Plan will have to be modified and likely resolicited. This

makes a stay not only particularly sensible, as there is no reason to press ahead with a provision that may be struck down any day, but also evidences that there is a serious question as to the merits of Third-Party Releases.

### ii.    *MercyOne Will Suffer Irreparable Harm Absent a Stay Pending Appeal*

29.    "Irreparable harm is an injury that cannot be redressed by a legal or equitable remedy following trial." *In re Tribune Co.,* 477 B.R. 465, 477 (Bankr. D. Del. 2012).  Generally, economic loss does not alone constitute irreparable harm; however, "the threat of *unrecoverable* economic loss does amount to irreparable harm."  *Knutson*, 302 F.Supp.2d at 1037 (citing *Iowa Utilities Board v. Fed. Comm'c Comm'n*, 109 F.3d 418, 426 (8th Cir. 1996)) (emphasis in the original). Further, to establish irreparable harm, a movant must demonstrate an injury that is actual and imminent and not merely remote or speculative. *Id.* (citing *Iowa Utilities Board*, 109 F.3d at 425). The key exercise is balancing any irreparable harm to the movant without any substantial injury to the non-moving parties.  *Tribune Co.,* 477 B.R. at 477.

30.    "Where the denial of a stay pending appeal risks mooting any appeal or significant claims of error, the irreparable harm requirement is satisfied." *Fox Sports Net West 2, LLC v. Los Angeles Dodgers, LLC (In re Los Angeles Dodgers LLC),* 465 B.R. 18, 36 (D. Del. 2011) (cleaned up).  Although the risk of equitable mootness is not, by itself, grounds for granting stay relief, the risk is a factor courts may consider. *See, e.g., id.*; *In re LATAM Airlines Grp., S.A.,* No. 20-11254, 2022 WL 2657345, at *5 (Bankr. S.D.N.Y. July 8, 2022) (citing *ACC Bondholder Grp. v. Adelphia Comm'c Corp. (In re Adelphia Comm'c Corp.),* 361 B.R. 337, 348 (S.D.N.Y. 2007) (noting the potential loss of a party's right to appeal through equitable mootness is a consideration for finding irreparable harm); *In re General Motors Corp.*, 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) ("And

thus I'll assume that the threat of equitable mootness is enough to satisfy the requirement of showing some irreparable injury—enough to get on the scoreboard with respect to this issue.").

31.     Here, in approving confirmation, the Court dispensed with the customary stay of plan enforcement and allowed the Combined Plan to be immediately consummated, including the Release provisions. While there is ample law that would forbid equitable mootness under these circumstances, the Debtors and others supporting the Combined Plan can be expected to argue equitable mootness if there is no stay. This alone creates the risk of irreparable injury.

### iii.     *Staying the Confirmation Order Pending Appeal Will Not Substantially Injure the Debtors or Other Interested Parties*

32.     Here, the Remote Non-Debtor Parties are not the Debtors and are not an interested party in these Chapter 11 Cases. Yet they are the only ones whose interests may be impacted by a stay that prevents their being unjustly released. A stay would otherwise preserve the status quo and cause no injury to Debtors or any actually interested party.

### iv.     *Public Interest is Served by a Stay*

33.     Because the Releases of the Remote Non-Debtor Parties cause the Combined Plan to fail the requirements of Section 1129 of the Bankruptcy Code and risk depriving the estates of recoveries to pay injured creditors who otherwise have not been fully compensated, a stay pending appeal of the Confirmation Order will serve the public interest. A stay will ensure that the Debtor as well as non-debtor parties are held accountable for their post-petition and post-confirmation conduct, while preserving the rights and remedies of parties in interest under applicable non-bankruptcy law. Likewise, a stay will serve the public interest of respecting and upholding judicial precedent, particularly in light of the pending Supreme Court decision.

11

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, MercyOne respectfully requests the Court enter an order, substantially in the form attached hereto, staying the Confirmation Order while MercyOne's appeal is pending and granting such other and further relief as the Court deems equitable and proper.

Dated: June 17, 2024

Respectfully submitted,

/s/ Christopher J. Jessen
Michael R. Reck
Christopher J. Jessen
**BELIN McCORMICK, P.C.**
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309
Tel: (515) 243-7100
Fax: (515) 558-0675
mrreck@belinmccormick.com
cjessen@belinmccormick.com

 – and –

/s/ David B. Goroff
Edward J. Green (admitted *Pro Hac Vice*)
David B. Goroff (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
egreen@foley.com
dgoroff@foley.com

 – and –

Jake W. Gordon (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: (248) 943-6484
jake.gordon@foley.com

4876-3209-2871.7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies, under penalty of perjury, that on June 17, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

/s/ David B. Goroff
David B. Goroff

4876-3209-2871.7