**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related to Docket No. 1124** |
| | ) | |

## JOINT OPPOSITION AND RESERVATION OF RIGHTS

Mercy Hospital, Iowa City, Iowa ("Mercy")[1] and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), along with all of their key constituents including (i) Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee (together, the "Secured Bondholder Representatives"); (ii) the official committee of unsecured creditors (the "Committee"); and (iii) the official committee of pensioners (the "Pension Committee" and, collectively, with the Debtors, the Secured Bondholder Representatives, and the Committee, the "Parties"), hereby file this *Joint Opposition and Reservation of Rights* (this "Joint Opposition") with respect to *Motion of MercyOne for Stay of Confirmation Order Pending Appeal Pursuant to Bankruptcy Rule 8007* [Docket No. 1124] (the "Stay Motion") filed by Mercy Health Network, Inc. d/b/a MercyOne ("MercyOne"). In support of this Joint Opposition, the Parties respectfully represent as follows:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 1050] (the "Plan") or the Stay Motion, as applicable.

**PRELIMINARY STATEMENT**

1. Thirteen days ago, this Court entered a well-reasoned decision confirming the Debtors' chapter 11 Plan, paving the way for distributions to begin flowing to creditors holding more than $100 million in claims. This decision overruled the objection of MercyOne, which primarily took issue with certain release provisions under the Plan, including the third-party release of which MercyOne opted out. MercyOne's objection was a clear attempt to gain leverage to avoid litigation—the evidence at the Confirmation Hearing showed that the Debtors settled with other potential litigation targets but never received a settlement counteroffer from MercyOne, a sole claimant with a claim of $31,000, but against whom the Parties believe valuable claims exist. Recognizing that MercyOne's arguments lacked merit, this Court issued a sound and comprehensive 19-page opinion both finding that MercyOne lacked standing and addressing—and properly overruling—each and every one of MercyOne's arguments.

2. In the days that followed entry of the Confirmation Order, the Debtors worked closely with the Bondholder Representatives, the Committee, the Pension Committee, and the proposed Liquidation Trustee to "go effective" on the Plan. Such efforts included negotiations and discussions of potential solutions regarding a complex pension structure on a go-forward basis, settlements of workers' compensation claims, preparations to make distributions on Administrative Claims, and initial transitioning of winddown operations and accounts. In fact, the Parties were mere days away from the Plan's Effective Date when MercyOne filed its Notice of Appeal. In the meantime, MercyOne doubled down in its effort to extract an improper release for itself by seeking to stay the Confirmation Order pending its appeal without any evidentiary support or meeting the stringent standards articulated by the United States Court of Appeals for the Eighth Circuit for such extraordinary relief, which include demonstrating irreparable injury and posting a

bond. MercyOne's efforts to delay distributions to all of the Debtors' creditors and pensioners in an effort to continue its dogged pursuit of its self-serving agenda, again seeking to gain leverage and avoid litigation, should be rejected by this Court.

3. At bottom, MercyOne continues to be wrong on the facts, and wrong on the law. And its self-serving tactics could irreparably harm all of the Debtors' other creditors and parties-in-interest. These actions should not be countenanced, and they should not impede the tangible progress of the Debtors and all of their key stakeholders in negotiating and achieving confirmation of the Plan and preparing to declare the Plan effective, marking the culmination of a ten-month chapter 11 process that began in contentious fashion and resulted in a confirmed Plan supported by all key constituents. In fact, the key stakeholders' support for the Plan was conditioned on the Plan being approved and going effective quickly, so that prompt distributions could be made. Accordingly, the Stay Motion should be denied.

## **OPPOSITION AND LEGAL AUTHORITY**

4. Stays pending appeal under Bankruptcy Rule 8007 "are the exception, not the rule, and are granted only in limited circumstances." *In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 WL 2811904, at *2 (Bankr. S.D.N.Y. July 16, 2022) (citation omitted). Accordingly, the party seeking a stay "carries a heavy burden." *Id*. (citing *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005)). The burden is especially heavy where, as here, the appellant seeks to stay a Confirmation Order. *Id.*

5. The decision to grant a stay lies within the sound discretion of the court. *See In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009). "In order to obtain a stay pending appeal of a bankruptcy court order, an appellant must satisfy four requirements: (i) a likelihood of success on the merits of the appeal; (ii) irreparable harm in the event the stay is not granted; (iii) lack of harm if a stay is granted; and (iv) entry of a stay will serve the public interest." *In re*

*Fundamental Long Term Care, Inc.*, 508 B.R. 224, 225 (Bankr. M.D. Fla. 2014). All four of these elements must be considered, supported by "satisfactory" evidence, and then the strengths of all balanced. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011); *Turner v. Citizens Nat'l Bank (In re Turner)*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997).

6.  Further, MercyOne bears the burden of proof on each of these factors by a preponderance of the evidence. *See In re Wire Rope Corp. of America, Inc.*, 302 B.R. 646 (Bankr. W.D. Mo. 2003) (holding movant failed to establish any basis for a stay of the court's order pending an appeal when debtor and employees would be substantially harmed).

7.  The Court should deny the Stay Motion for at least three key reasons: (a) MercyOne has not—and cannot—establish its ability to succeed on appeal; (b) MercyOne has not established irreparable harm in the event the Stay Motion is denied, while the Debtors, their estates, and all other creditors will be irreparably harmed if the Stay Motion is granted; and (c) MercyOne has not put forth any evidence to support its request to satisfy its burden of proof. As MercyOne itself points out, these are among the most critical factors for consideration and, contrary to MercyOne's assertions in the Stay Motion, weigh *against* granting the relief requested by MercyOne. Accordingly, the Stay Motion should be denied.

8.  In addition, in the event the Court were to consider granting the Stay Motion, MercyOne should be required to post a bond to protect all other stakeholders from the additional expense of layers of professional fees and losses that would be caused by the delay in distributions while MercyOne pursues its meritless appeal.

I.  **MercyOne Has Not Established—and Cannot Establish —That There Is a Likelihood of Success on Appeal Based on The Merits.**

9.  The likelihood of success of MercyOne's appeal boils down to one question: whether the Court properly confirmed the Plan, which included releases by the Debtors and a

4

*consensual* third-party release. The answer is unequivocally yes—this Court was correct in confirming the Plan and overruling MercyOne's baseless objection to the release of "related parties." Absent evidence to the contrary, which MercyOne has yet to provide, MercyOne's appeal will fail.

10. As discussed at length at the Confirmation Hearing, the consideration and necessity of the release provisions was fully vetted, explored, considered, valued, and weighed by the Parties as part of their good-faith negotiations in connection with the Plan.[2] Tellingly, MercyOne has yet to bring forward ***any*** evidence of ***any*** viable claims or causes of action that would be impacted, waived, or released by virtue of the third-party release. Indeed, when pressed on this issue at the Confirmation Hearing, MercyOne could not identify ***one*** such potential claim or cause of action, failed to proffer any evidence and nothing in its papers filed to date comes close to substantiating the existence of the same. Instead, MercyOne supports its exaggerations and mere conjecture on the merits by citing to the "thousands" of employees who were released by the Plan. *See* Stay Motion ¶¶ 16, 18, 24. The fact that MercyOne can only point to the Debtors' current and former employees—many of whom are pensioners that fully participated in the Chapter 11 Cases, voted in favor of the Plan, and are poised to receive recoveries under the Plan—as the only basis for the Stay Motion demonstrates the weakness and lack of merit of the relief requested therein and of the appeal. Moreover, as discussed in the Debtors' brief in support of confirmation of the Plan and as will be briefed in connection with MercyOne's appeal,[3] the release provisions (which are similar

---

[2] Indeed, counsel to the Pension Committee advised the Court at the Confirmation Hearing that the Pension Committee fully investigated potential claims or causes of action involving the "related parties" and determined that they were meritless.

[3] The Parties reserve all rights with respect to any and all claims, counterclaims, arguments, and defenses with respect to MercyOne's appeal and nothing contained herein shall be construed as a waiver of the foregoing.

5

to those found in *many* confirmed plans across jurisdictions), as this Court aptly recognized, easily satisfy the governing standards for releases, including the *Master Mortgage* factors.

11. Importantly, while MercyOne attempts to use the potential issuance of a pending Supreme Court opinion as grounds for the relief requested in the Stay Motion, **this case is not analogous to *Purdue Pharma***. To the contrary, the *Purdue Pharma* plan contained **non-consensual third-party releases** while the Debtors' Plan contains **a consensual third-party release and releases by the debtors, which are not at issue in the *Purdue Pharma* appeal**. While the Supreme Court's opinion in *Purdue Pharma* may impact certain aspects of restructuring and bankruptcy law, the facts and releases involved in these Chapter 11 Cases are very different[4] and MercyOne's assertion to the contrary is nothing more than a disingenuous red-herring and a self-serving scare tactic. The *Purdue Pharma* case was pending both at the time of the confirmation hearing (during which counsel for MercyOne raised *Purdue Pharma* issues) as well as 13 days ago when this Court issued its well-reasoned and thorough confirmation ruling. To the extent the Supreme Court issues its ruling while MercyOne's appeal is pending, the opinion will not impact the confirmability of the Plan or MercyOne's appellate rights, given, among other things, the vast differences in the facts, circumstances, and applicable release provisions. This Court should not be paralyzed into inaction by MercyOne's use of *Purdue Pharma* as a "red herring" litigation tactic that has nothing to do with MercyOne's interest in maximizing recovery on its $31,000 claim and has everything to do with avoiding being a target of future litigation. For the rest of the creditors with a true interest in maximizing recoveries on their claims in these Chapter 11 Cases, justice delayed will be justice denied.

---

[4] Notably, the U.S. Trustee in these Chapter 11 Cases did <u>not</u> object to the release or exculpation provisions contained in the Plan, while the *Purdue Pharma* releases were objected to by numerous parties.

6

12. Accordingly, based on this Court's well-reasoned confirmation opinion, MercyOne is unlikely to succeed on the merits of its appeal. As required under Eighth Circuit law, MercyOne has not shown "serious questions" going to the merits so as to justify a stay of the Plan. *Knutson v. AG Processing, Inc.*, 302 F.Supp.2d 1023, 1035 (N.D. Iowa 2004). Instead, there are serious questions as to MercyOne's motives and the actual substance of its arguments in the Stay Motion, further mandating denial of the relief requested therein.

II. **MercyOne Has Not Established Irreparable Harm In the Event the Stay Motion is Not Granted.**

13. The Stay Motion should also be denied because MercyOne has failed to demonstrate any harm, let alone the level of irreparable harm needed to justify a stay, and has failed to present any pecuniary or other evidence in support thereof. Instead, it simply cites to a possible equitable mootness argument. *See* Stay Motion, ¶¶ 30-31. Tellingly, the entirety of MercyOne's substantive argument on this critical element of establishing grounds for a stay pending appeal consists of two sentences: "While there is ample law that would forbid equitable mootness under these circumstances, the Debtors and others supporting the Combined Plan can be expected to argue equitable mootness if there is no stay. This alone creates the ***risk of irreparable injury***." *Id.* (emphasis added). Thus, MercyOne is requesting that this Court grant it the extraordinary remedy of a stay pending appeal based solely on MercyOne's expectation of a potential argument by other parties and a *risk* of some unarticulated irreparable harm rather than actual irreparable harm.

14. If that argument alone were the governing legal standard, then disgruntled objectors in nearly every chapter 11 case would be entitled to a stay pending appeal. As set forth above, the legal standard is the opposite: granting a stay is rare. In addition, the analysis of this factor does not end with a simple "potential" mootness consideration. Instead, there must be a demonstration

of **irreparable** harm or a showing of **significant claims of error**. *See In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 WL 2811904, at *3 (Bankr. S.D.N.Y. July 16, 2022) (quoting *Adelphia*, 361 B.R. 649 (S.D. N.Y. 2005)). Under applicable bankruptcy law, the threat of irreparable harm "must be 'neither remote nor speculative, but actual and imminent.'" *In re Sabine Oil & Gas Corp.*, 548 B.R. 681, 681–82 (Bankr. S.D.N.Y. 2016) ("Even if the risk of mootness were sufficient to satisfy some showing of irreparable injury, however, the Court finds that any threat of harm here is insignificant when weighed against the injury that the Debtors would suffer if the stay sought…were granted.").

15. The denial of the Stay Motion will not prevent MercyOne from pursuing its appeal. To the extent MercyOne is successful when all appeals are exhausted, the contested portions of the Plan releases at issue will be deemed invalid, but this should not prevent the Plan from becoming effective to the great detriment of creditors.

16. The parties that could suffer irreparable harm here undoubtedly do **not** include MercyOne, a single claimant who **opted out of the third-party release**. In contrast, hundreds of other constituents, including pensioners, employees, and other claimants, will experience actual and imminent harm if the Confirmation Order is stayed due to, among other things, delay in distributions and winding down the Estates. Weighing this actual and imminent harm against the alleged (and non-existent) harm to MercyOne supports denying the requested relief.

17. Quizzically, MercyOne seems to believe that it could recover more money on a pro-rata distribution if phantom and unarticulated claims are pursued. The math on that does not add up to justify a stay, and here's why. MercyOne holds a claim of $31,000 in a claims pool that exceeds $100,000,000. As such, MercyOne could hypothetically be entitled to 0.00031% of any additional recovery if the releases were not granted. However, this argument assumes that (a) the

8

claims to be released by the Debtors would be pursued and successfully litigated by the Liquidation Trustee, (b) any recovery would exceed the costs of such litigation, and (c) the Liquidation Trustee would have no issue with collecting such recoveries.  Given this inconsequential (and unlikely) upside for MercyOne's return on its mere $31,000 claim to the millions of dollars of potential losses to all other stakeholders if implementation of the Plan is delayed for months or even years, including employees, pensioners, lenders, and other creditors, MercyOne fails to demonstrate **any** irreparable harm it will experience absent a stay.

18. In sum, MercyOne's inarticulate and misguided theory that a claim to be released by the Debtors may one day appear and provide value is woefully insufficient to demonstrate irreparable harm necessary to justify a stay, particularly when MercyOne has yet to present a single piece of evidence in support thereof.

### III. If a Stay Were Granted, the Court Should Require MercyOne to Post a Bond to Protect the Debtors' Estates and Creditors from Substantial Harm

19. In the event this Court may consider granting the Stay Motion, MercyOne should be required to post a bond to protect the Debtors, their estates and all other creditors from the additional expense in the form of layers of professional fees and losses that would be caused by the delay in distributions to creditors while MercyOne pursues its meritless appeal.

20. In determining whether a bond should be required on appeal of a confirmation order, the court looks to whether the bond would be necessary to protect "against diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Trib. Co.*, 477 B.R. 465, 478 (Bankr. D. Del. 2012) (citing *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007)). Moreover, where a movant seeks imposition of a stay without a bond, "the applicant has the burden

of demonstrating why the court should deviate from the ordinary full security requirement." *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016).

21. The Court should not issue any stay pending appeal unless MercyOne posts a bond in an amount determined by this Court upon a proper evidentiary hearing which will sufficient to protect the Debtors and all other stakeholders from the harm that would result from a delay in the Plan going effective and distributions to creditors being promptly commenced.

## CONCLUSION

22. The Court should reject MercyOne's request to delay and hinder this Court's well-reasoned and proper Confirmation Order because MercyOne has failed to show any likelihood of success on appeal or that it will suffer irreparable harm if the stay is not granted. In contrast, a stay will significantly harm every other party in the Chapter 11 Cases and when balanced among the other factors, such relief is neither justified nor supported by a showing of the preponderance of the evidence or law in this matter.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Parties respectfully request that the Court deny the Stay Motion and grant other relief as it deems just and proper.

Dated: June 20, 2024

/s/ Boris Mankovetskiy
Andrew H. Sherman, NJS Bar No. 042731991 (admitted *pro hac vice*)
Boris I. Mankovetskiy, NJS Bar No. 012862001 (admitted *pro hac vice*)
SILLS CUMMIS & GROSS, P.C.
One Riverfront Plaza,
Newark, New Jersey 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500
Email: asherman@sillscummis.com
bmankovetskiy@sillscummis.com

-and-

Robert C. Gainer IS9998471
CUTLER LAW FIRM, P.C.
1307 50th Street
West Des Moines, Iowa 50266
Telephone: (515) 223-6600
Facsimile: (515) 223-6787
Email: rgainer@cutlerfirm.com
*Co-Counsel for the Official Committee of Unsecured Creditors*


/s/ Paula L. Roby
Paula L. Roby AT0006749
DAY RETTIG MARTIN, P.C.
Telephone: (319) 365-0437
FAX: (319) 365-5866
E-mail: paula@drpjlaw.com

*Counsel for the
Official Committee of Pensioners*

/s/ Kristina M. Stanger
Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
**NYEMASTER GOODE, P.C.**
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone: 515-283-3100
Fax:          515-283-8045
Email:      kmstanger@nyemaster.com
              mmcguire@nyemaster.com
              dhempy@nyemaster.com

- and -

Roy Leaf, AT0014486
**NYEMASTER GOODE, P.C.**
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:   (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and –

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:   (312) 372-2000
Facsimile:    (312) 984-7700
Email: fperlman@mwe.com
          dsimon@mwe.com
          ekeil@mwe.com
*Counsel for Debtors and Debtors-in-Possession*

*/s/ Peter J. Chalik*
Peter J. Chalik AT0013036
**WHITFIELD & EDDY, P.L.C.**
699 Walnut St., Suite 2000
Des Moines, Iowa 50309
Telephone: (515) 288-6041
Email: *Chalik@whitfieldlaw.com*

-and-

*/s/ Megan Preusker*
William W. Kannel (admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS**
**GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: WKannel@mintz.com

Nathan F. Coco (admitted *pro hac vice*)
Megan Preusker (admitted *pro hac vice*)
Kaitlin R. Walsh (admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS**
**GLOVSKY AND POPEO, P.C.**
919 Third Avenue
New York, New York 10022
Telephone:  212-935-3000
Email:  NFCoco@mintz.com
MPreusker@mintz.com
RKWalsh@mintz.com

*Counsel for Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee*

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this June 20, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

/s/ *Kristina M. Stanger*