**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | Re: Dkt. Nos. 1050 & 1114 |

**SECURED BONDHOLDER REPRESENTATIVES' MOTION FOR
STATUS CONFERENCE REGARDING EFFECTIVE DATE DISTRIBUTIONS**

Preston Hollow Community Capital, Inc., as Bondholder Representative, and Computershare Trust Company, N.A., as Master Trustee (together, the "Secured Bondholder Representatives"), respectfully move the Court for a status conference in the above-captioned cases regarding the undue delay in making Effective Date distributions required under the Plan. In support of this Motion, the Secured Bondholder Representatives state as follows:

1.  On May 14, 2024, the above-captioned debtors (collectively, the "Debtors") filed the *First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Dkt. No. 1050] (the "Disclosure Statement" and "Plan", respectively).[1]

2.  On June 7, 2024, the Court confirmed the Plan and entered the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Chapter 11 Plan of Liquidation* [Dkt. No. 1114] (the "Confirmation Order").

3.  On June 18, 2024, the *Liquidation Trust Agreement* was executed by and between the Debtors, the Liquidation Trustee, and the members of the Trust Oversight Committee.

4.  On June 24, 2024 (the "Effective Date"), the Plan became effective. Dkt. No. 1139.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms as set forth in the Plan.

1

5.	According to the Plan, on the Effective Date or as soon as reasonably practicable thereafter, the Master Trustee, on behalf of the holders of Class 1-A: Bondholder Claims - Series 2018 Bonds and Class 1-B: Bondholder Claims - Series 2011 Bonds, was to receive "[a] Pro Rata Distribution of the Bondholder Claim Waterfall Amount." *See* Plan, Art. V.B. at §§ 1(b) and 2(b).

6.	The Plan further requires that the Bondholder Post-Distribution Cash – a component of the Bondholder Claim Waterfall Amount – initially be distributed within five (5) business days after the Effective Date and thereafter be distributed every other week to the Master Trustee. Specifically, the Plan defines "Bondholder Claim Waterfall Amount" and "Bondholder Post-Distribution Cash" as:

> "Bondholder Claim Waterfall Amount" means, collectively, (a) the Bondholder Claim Cash Amount (payable on the Effective Date or such earlier date approved by the Court), *plus* (b) ***the Bondholder Post-Distribution Cash (payable within five business days of the Effective Date, following all other Effective Date Distributions, and payable every other week thereafter, other than the Unsecured Claims Post-Distribution Cash Amount)***, *plus* (c) the JV Sale Proceeds (payable on the Effective Date to the extent any JV Interests are sold prior to the Effective Date and payable upon the closing of each such sale to the extent any JV Interests have not been sold prior to the Effective Date), *plus* (d) seventy-five percent (75%) of the Contingent Payments received on and after the Effective Date (payable by the Liquidation Trustee until the Bondholder Claim is paid in full), *plus* (e) forty percent (40%) of the Litigation Claims Recovery Amount received on and after the Effective Date (payable by the Liquidation Trustee until the Bondholder Claim is paid in full).
>
> "Bondholder Post-Distribution Cash" means, after funding all Effective Date Distributions, all remaining Cash, including without limitation, proceeds of Accounts Receivable (net of costs to collect the same), the Unrestricted Foundation Funds, and unencumbered Cash, whether received pre or post-Effective Date, up to the Initial Bondholder Post-Distribution Cash Amount, ***which shall initially be distributed within five Business Days after the Effective Date and thereafter be distributed every other week to the Master Trustee*** until it receives the Initial Bondholder Post-Distribution Cash Amount; *provided further* that after the Unsecured Claims Post-Distribution Cash Amount is distributed, all other remaining

2

>      Cash, including without limitation, proceeds of Accounts
> Receivable (net of costs to collect the same), the Unrestricted
> Foundation Funds, and unencumbered Cash, whether received pre
> or post-Effective Date, shall be distributed every other week to the
> Master Trustee for the benefit of the Holders of Bondholder Claims.

*Id.* at Art. I.A., §§ 1.27 and 1.29 (emphasis added); *see also id.* at § 1.109 (definition of "Initial Bondholder Post-Distribution Cash Amount" which is, after funding Effective Date Distributions, all remaining Cash up to $20,000,000).

7.  Although the Plan has been effective for over one month, and despite the plain language requiring Bondholder Post-Distribution Cash to be distributed within five (5) business days after the Effective Date (*i.e.*, by July 1, 2024), the Secured Bondholder Representatives have yet to receive a single Effective Date distribution. The settlements embodied in the Plan were premised upon the Bondholders receiving the projected Initial Bondholder Post-Distribution Cash Amount promptly after the Effective Date. And, it appears that the Debtors' management, ToneyKorf Partners, LLC ("ToneyKorf"), has not completed the accounting, claims reconciliation and other work necessary to properly calculate and promptly administer the Effective Date Distributions.

8.  The Secured Bondholder Representatives are cognizant that the amount of the Bondholder Post-Distribution Cash available to be distributed is dependent upon other Effective Date Distributions, which include:

    (a) Payment of the $250,000 Pension Trust Administrative Cost Amount (Plan, Art. I.A. at § 1.163)

    (b) Payment of the $750,000 Liquidation Trust Expense Fund (Plan, Art. I.A. at § 1.129)

    (c) Payment of the $2,200,000 Unsecured Claims Initial Cash Amount (Plan, Art. I.A. at § 1.235), and

3

   (d)  Funding of approximately $9.5 to $12 million in the Administrative Expense Claims Reserve (Plan, Art. I.A. at § 1.9).[2]

  9.  The Liquidation Trustee informed the Secured Bondholder Representatives that, after certain holdbacks by the Debtors, it received from the estates $30,462,175.68 on July 17, 2024. Taking into account the holdback amounts, the Debtors' cash balances appear to have increased from $28 million when ToneyKorf last reported account balances at the end of May to $34 million as of July 17. The initial Distributions that are required to be made under the Plan total between $12,700,000 and $15,200,000, based on the amounts set forth in the Plan. Thus, based on the cash balances and the estimated distributions that must be made pursuant to the Plan, the Secured Bondholder Representatives believe the Initial Bondholder Post-Distribution Cash Amount should be not less than $20 million.

  10.  It appears that there has been significant delay in transitioning the Debtors' accounts, books and records, accounts payable information, claims analyses, and other information relevant to Plan Distributions from ToneyKorf to the Liquidation Trustee. And, when such accounts, documents, and information were finally transferred to the Liquidation Trustee, the Liquidation Trustee informed the Secured Bondholder Representatives that the amount of Bondholder Post-Distribution Cash available to distribute is only $10,270,437.93—far short of the amount the Secured Bondholder Representatives expected to be available pursuant to the Plan.

  11.  The Liquidation Trustee is attempting to create a distribution waterfall based on the records provided to it, but there are inaccuracies that can only be reconciled with input from ToneyKorf. As but one example, ToneyKorf held back $2.5 million when it transferred funds to

---

[2] In the Liquidation Analysis attached as Exhibit A to the Plan, the Debtors estimated "Administrative & Priority Expenses" to be between $9,484,800 and $11,854,000. According to the claims register, approximately $10,988,690.75 in administrative claims have been filed as of the date of this Motion, and the administrative claims bar date is July 24, 2024.

the Liquidation Trustee to cover accounts payable, yet the proposed distribution waterfall separately reserves $2.4 million to cover accounts payable. This appears to be a duplicate reserve, yet the Secured Bondholder Representatives to date have been unable to verify the same.

12. In its most recent staffing report for the period from June 1, 2024 through June 24, 2024, ToneyKorf represents that, among other things, it "[r]eviews and assesses the liquidation analysis, waterfalls, and potential distributions to creditors per the Plan," "[r]eviews and directs asset recovery and administrative claims analysis," and "[o]verses and reviews cash management for disbursements and uses of cash . . . ." *See* Dkt. No. 1173, pg. 3. ToneyKorf should explain its underlying assumptions regarding the needed reserves for administrative, priority, and other contingent claims and assist the Liquidation Trustee in reconciling any discrepancies as quickly as possible, so that the Secured Bondholder Representatives and all creditors can understand the reasons for the significant discrepancy between estimates of funds available as set forth in the Plan and the amounts that are now asserted to be available. The Secured Bondholder Representatives are concerned that the delay in transitioning assets and records to the Liquidation Trust is having a negative effect on values and ultimate recoveries of the Trust Beneficiaries.

## **CONCLUSION**

13. Given the current status of the post-Effective Date Distributions, and the lack thereof, the Secured Bondholder Representatives believe that it is appropriate for the Court to hold a status conference to resolve the inconsistency, reduction, and lack of transparency regarding Distributions generally and, specifically the Bondholder Post-Distribution Cash. Accordingly, the Secured Bondholder Representatives respectfully request that the Court schedule a status conference as soon as practicable to discuss the status of the post-Effective Date Distributions that

are explicitly required to be made under the Plan, Confirmation Order, and the Liquidating Trust Agreement.

## **RESERVATION OF RIGHTS**

14. The Secured Bondholder Representatives reserve the right to be heard during argument relating to this Motion, distributions required under the Plan, and any other related matters. Nothing contained herein shall constitute a waiver of any rights or remedies of the Secured Bondholder Representatives, including, without limitation, the right to (i) amend, modify, or supplement this Motion, or (ii) raise any other additional arguments or evidence at a later date.

Date: July 26, 2024　　　　　　　　　　**WHITFIELD & EDDY, P.L.C.**

　　　　　　　　　　　　　　　　　　　 */s/ Peter J. Chalik*
　　　　　　　　　　　　　　　　　　　Peter J. Chalik (Iowa Bar No. AT0013036)
　　　　　　　　　　　　　　　　　　　699 Walnut St., Suite 2000
　　　　　　　　　　　　　　　　　　　Des Moines, Iowa 50309
　　　　　　　　　　　　　　　　　　　Telephone: (515) 288-6041
　　　　　　　　　　　　　　　　　　　Email: *Chalik@whitfieldlaw.com*

　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　**MINTZ, LEVIN, COHN, FERRIS GLOVSKY AND POPEO, P.C.**

　　　　　　　　　　　　　　　　　　　William W. Kannel (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　One Financial Center
　　　　　　　　　　　　　　　　　　　Boston, Massachusetts 02111
　　　　　　　　　　　　　　　　　　　Telephone: (617) 542-6000
　　　　　　　　　　　　　　　　　　　Email: WKannel@mintz.com

　　　　　　　　　　　　　　　　　　　Nathan F. Coco (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Megan Preusker (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　Kaitlin R. Walsh (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　　919 Third Avenue
　　　　　　　　　　　　　　　　　　　New York, New York 10022
　　　　　　　　　　　　　　　　　　　Telephone: (212) 935-3000
　　　　　　　　　　　　　　　　　　　Email: NFCoco@mintz.com
　　　　　　　　　　　　　　　　　　　　　　　MPreusker@mintz.com
　　　　　　　　　　　　　　　　　　　　　　　KRWalsh@mintz.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated July 26, 2024.

*/s/ Peter J. Chalik*