**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Obj. Deadline: 8/22/24 at 4:00 p.m. (CT)** |

### SUMMARY OF COMBINED FINAL FEE APPLICATION OF TONEYKORF PARTNERS, LLC AS INTERIM MANAGEMENT OF THE DEBTORS, FOR ALLOWANCE OF (I) COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM AUGUST 7, 2023, THROUGH AND INCLUDING JUNE 24, 2024, AND (II) SUCCESS FEE

| | |
|---|---|
| Name of Applicant: | **ToneyKorf Partners, LLC** |
| Authorized to provide professional services to: | **Debtors and Debtors-in-Possession** |
| Date of retention: | **Effective as of August 7, 2023, pursuant to an order entered on September 20, 2023** |
| Final period for which compensation and reimbursement is sought: | **August 7, 2023 through June 24, 2024** |
| Amount of compensation being approved on a final basis: | **$4,348,426.90** |
| Amount of expense reimbursement being approved on a final basis: | **$276,902.09** |
| Amount of Success Fee[1]: | **$250,000.00** |
| Total fees, expenses, and Success Fee requested in this application: | **$4,875,328.99** |

---

[1] Pursuant to ToneyKorf Partners' retention application [Docket No. 149], in accordance with the terms of the Engagement Letter (later modified by the Retention Order as per below), ToneyKorf Partners shall be entitled to a $250,000 success fee (the "Success Fee"), which shall be considered earned and payable upon a transaction and/or transition of substantially all assets to a new owner resulting in the continuation of Mercy as a healthcare facility serving the community. Pursuant to the court-entered Retention Order [Docket No. 259], ToneyKorf Partners shall file an application, which may include a fee application, seeking approval of the Success Fee in connection with the confirmation of a plan in these Chapter 11 Cases Detail of the Basis of Relief and Legal Standard are outlined herein.

## SUMMARY OF COMPENSATION REPORTS FILED

| Docket #/ Filed Date | Comp Period | Hours | Fees | Discounts | Net Fees | Expenses | Paid Fees & Expenses |
|---|---|---|---|---|---|---|---|
| #518 11/16/23 | 08/07/23 to 09/30/23 | 1,714.0 | $ 1,155,471.00 | $ (206,405.00) | $ 949,066.00 | $ 60,815.10 | $ 1,009,881.10 |
| #611 12/29/23 | 10/01/23 to 11/30/23 | 1,843.3 | $ 1,217,870.00 | (96,222.50) | $ 1,121,647.50 | $ 141,461.18 | $ 1,263,108.68 |
| #851 03/20/24 | 12/01/23 to 01/31/24 | 1,932.9 | $ 1,328,385.00 | (147,782.50) | $ 1,180,602.50 | $ 61,070.86 | $ 1,241,673.36 |
| #1056 05/15/24 | 02/01/24 to 03/31/24 | 966.1 | $ 680,499.50 | (11,692.50) | $ 668,807.00 | $ 9,742.91 | $ 678,549.91 |
| #1143 06/24/24 | 04/01/24 to 05/31/24 | 525.2 | $ 354,800.25 | (4,365.00) | $ 350,435.25 | $ 3,431.72 | $ 353,866.97 |
| #1182 07/26/24 | 06/01/24 to 06/24/24 | 122.9 | $ 77,868.65 | - | $ 77,868.65 | $ 380.32 | $ 78,248.97 |
| **Total** | | **7,104.3** | **$ 4,814,894.40** | **$ (466,467.50)** | **$ 4,348,426.90** | **$ 276,902.09** | **$ 4,625,328.99** |

## FINAL SUMMARY OF HOURS WORKED BY PROFESSIONAL

| Senior Management | Position | Rate[1] | Hours |
|---|---|---|---|
| Mark Toney | Chief Restructuring Officer | $ 1,050 | 1,374.9 |
| Jim Porter | Chief Financial Officer | 810 | 1,380.5 |
| Chris Karambelas | Chief Information Officer / Chief Operating Officer | 725 | 1,082.4 |
| **Subtotal** | | | **3,837.7** |

| Other Professionals | Position | Rate[1] | Hours |
|---|---|---|---|
| Peg Brubaker | Vice President of Human Resources | $ 685 | 1,356.9 |
| Jamy Houck | Manager of Administration and Communications | 660 | 159.7 |
| Dennis Rodriguez | Finance Manager | 645 | 565.6 |
| Kara Borodkin | Treasury and Finance Manager | 335 | 1,184.4 |
| **Subtotal** | | | **3,266.6** |

| Total Hours | | | 7,104.3 |
|---|---|---|---|

Note:

(1) The rates reflected in this column are the rates charged per hour by ToneyKorf Partners professionals as of the date of this Application. Note that certain of the ToneyKorf Partners' professionals charged lower hourly rates August 7, 2023 through December 31, 2023 and that such professionals raised their hourly rates to the amount set forth herein on January 1, 2024 pursuant to the terms of ToneyKorf Partners' engagement letters with the Debtors and the Retention Order (as defined below).

## FINAL SUMMARY OF COMPENSATION BY CATEGORY

| Category | Hours | | Amount |
|---|---|---|---|
| 01 Business Operations | 4,071.8 | $ | 2,728,256.40 |
| 02 Cash Management & Financing | 474.4 | | 237,161.00 |
| 03 Post-Closing UI Transition Services | 40.7 | | 28,051.50 |
| 04 Asset Sale | 546.0 | | 430,924.00 |
| 09 Bankruptcy Reporting | 462.3 | | 265,277.00 |
| 10 Claims Admin | 130.5 | | 86,109.50 |
| 11 DS & POL | 253.9 | | 218,678.75 |
| 13 Litigation | 216.8 | | 190,254.00 |
| 14 Other BK Matters | 99.5 | | 82,420.50 |
| 16 Bankruptcy Meetings and Communications | 185.5 | | 126,609.75 |
| 17 Court Hearings | 97.1 | | 74,002.00 |
| 18 Case Administration | 11.8 | | 9,728.00 |
| 19 Compensation and Staffing Reports | 68.7 | | 41,130.00 |
| 20 Travel Time | 445.7 | | 296,292.00 |
| **Total Hours / Fees Before Discount** | **7,104.3** | **$** | **4,814,894.40** |

## FINAL SUMMARY OF EXPENSES BY TYPE

| Expense Type | | Total |
|---|---|---|
| Airfare | $ | 88,322.73 |
| Ground Transportation | | 29,120.74 |
| Lodging | | 56,500.36 |
| Meals | | 10,658.51 |
| Miscellaneous / Other[1] | | 92,299.75 |
| **Total** | **$** | **276,902.09** |

*Note:*
*(1) Includes Getzler Henrich invoices for Foundation review for October 15, 2023 to December 2, 2023. Expenses are authorized to be paid pursuant to the Order Approving Settlement By and Among the Debtors, the Bondholder Representatives, the Committee, and Mercy Foundation [Docket No. 477]. Total amount paid to Getzler Henrich was $69,480.85.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | **Obj. Deadline: 8/22/24 at 4:00 p.m. (CT)** |

**COMBINED FINAL FEE APPLICATION OF TONEYKORF PARTNERS, LLC AS INTERIM MANAGEMENT OF THE DEBTORS, FOR ALLOWANCE OF (I) COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM AUGUST 7, 2023, THROUGH AND INCLUDING JUNE 24, 2024, AND (II) SUCCESS FEE**

ToneyKorf Partners, LLC ("ToneyKorf Partners"), as Chief Restructuring Officer ("CRO"), Chief Financial Officer ("CFO"), Chief Operating Officer/Chief Information Officer ("COO/CIO"), and Interim Management, to Mercy Hospital, Iowa City, Iowa ("Mercy") and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby submits this application (the "Application") pursuant to section 363 and 330 with respect to the Success Fee of title 11 of the United States Code (the "Bankruptcy Code"), to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 1114] (the "Confirmation Order"), and *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 1050] (the "Plan"), for entry of an order allowing and approving on a final basis its total net (after discounts) fees earned in the amount of $4,348,426.90 and reimbursement of its total expenses incurred in the amount of $276,902.09 during the period

4

from August 7, 2023 through and including June 24, 2024 (the "Application Period") and a success fee of $250,000. Although not retained as an estate professional under section 327 of title 11 of the United States Code (the "Bankruptcy Code"), and, therefore, not subject to the requirements of sections 327, 328, or 330 regarding compensation of professionals, ToneyKorf Partners submits this Application as required by the Retention Order (as defined below). Specifically, ToneyKorf Partners seeks confirmation of the final allowance of its net fees earned in the total amount of $4,348,426.90 and expenses incurred in the total amount of $276,902.09 during the Application Period which specific fees and expenses ToneyKorf Partners has previously disclosed in Compensation Reports pursuant to the requirements of the Retention Order (defined below). ToneyKorf Partners has received $4,625,328.99 in fees and expenses after the filing of each such Compensation Report and no objections to any such reports have been filed or received. Further, ToneyKorf Partners seeks confirmation of final allowance and approval of $250,000 in accordance with the Retention Order. In support of the Application, the declaration of Thomas R. Clancy, PhD is attached hereto as **Exhibit A**, and the declaration of Mark E. Toney is attached hereto as **Exhibit B**. In further support hereof, ToneyKorf Partners respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1.      ToneyKorf Partners was retained by the Debtors prior to filing for bankruptcy as Interim Management ("Management") pursuant to the terms of an engagement letter (as amended, modified, or supplemented from time to time, the "Engagement Letter") dated March 30, 2023. As part of the engagement, ToneyKorf Partners provided certain personnel with specific skill sets

---

[2]     Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings described in this Application.

that were deemed critical by the Board of Directors. The management roles and individuals provided by ToneyKorf Partners included Mark E. Toney as CRO, James R. Porter as CFO, and Christopher P. Karambelas as COO/CIO, and certain additional personnel from ToneyKorf Partners served as managers in various roles and departments of the Debtors (collectively "Management"). As Management of the Debtors and per the Engagement Letter, the CRO reported to the Board of Directors, and the above-mentioned individuals were responsible for the day-to-day operations of the hospital and clinic sites, including leading and managing the providers and employees, ensuring the continuing care for the patients, managing the finances and cash, maintaining and protecting the physical assets, and overseeing the communications with the community. In addition to operating the Debtors, Management oversaw and led the bankruptcy and restructuring process, the marketing and sale of the assets, the orderly transition of the employees and operations to the University of Iowa, the coordination and confirmation of the Plan of Liquidation ("Plan"), and the transition of information to the Liquidating Trustee.

2.      As this Court is aware, these Chapter 11 Cases began where the significant conflict between the key constituents "was palpable."[3] This pattern of dissension continued for several weeks following the Petition Date, as stakeholders took a litigious approach to initially resolving outstanding issues. Given the animosity between the various parties, consensus and resolution seemed impossible at many stages of these Chapter 11 Cases. Nevertheless, ToneyKorf Partners,

---

[3]  *See* Memorandum Opinion and Order Overruling MercyOne's Objection to Debtors' Plan Confirmation, *Mercy Hospital, Iowa City, Iowa*, Case No. 23-00623 (TJC) (Bankr. N.D. Iowa June 7, 2024) [Docket No. 1113], at 16 ("On August 8, 2023, when the Court held its 'First Day Motions' hearing in this case, the animosity between Debtors and the multiple constituent groups was palpable. The Court urged the parties to work together toward consent, with an eye to the future and a confirmation plan. The parties have done just that. The gravity of having a consensual Plan presented to the Court just a short nine months later—with MercyOne's objections being the only remaining outlier—is not lost on this Court.").

in coordination with the Debtors' attorneys and advisors, persevered and were able to both consummate the sale of substantially all of the Debtors' assets to a viable and sustainable buyer, University of Iowa, and achieve a global agreement for a confirmable Plan amongst all key stakeholders in advance of the Plan confirmation hearing. Given how the cases started, the realized success and positive outcome of this case was "not lost on this court."[3]

3.      This outcome would not have been possible without the efforts of the CRO and ToneyKorf Partners. As this Court instructed at the first-day hearing, the Debtors' Management and its attorneys and advisors endeavored to solve issues through determination, perseverance, patience, and out-of-court negotiation wherever possible. At every stage of the bankruptcy process, ToneyKorf Partners, as Management, remained steadfast in its commitment to facilitating the Debtors' chapter 11 goals with a focus on maximizing the recovery for the creditors while also ensuring the continuity of care for the patients, maintaining healthcare in the community, and preserving the livelihoods of the providers and employees for their families. These goals are especially important for healthcare bankruptcy cases and require extra skills, perseverance, and willingness to collaborate with parties to achieve. ToneyKorf Partners, as Management, led these efforts on a variety of nuanced and complex issues that achieved the goals and successful outcomes.

4.      ToneyKorf Partners was also critical in reaching a global solution for the Plan in advance of the Plan confirmation hearing and maximizing creditor recoveries under the Plan. Throughout the Chapter 11 Cases, the CRO and ToneyKorf Partners recognized the importance of the Pension Committee (as defined below) in the proceedings and worked to facilitate numerous discussions between the financial advisors of the Bondholder Representatives, the Committee (as defined below), and the Pension Committee regarding Plan settlement terms, claims treatment, and

7

the viability of various potential claims and causes of action. ToneyKorf collaborated with the Pension Committee and its professionals in an effort to assess various strategic options and balance the tensions between the various stakeholders.

5.    To achieve the foregoing results, ToneyKorf Partners' professionals, as Management, devoted significant time working and assisting the Debtors, including late nights and weekends and generally on-site at the Debtors' hospital and locations, and the fees and expenses requested herein reflect this dedication. As such, ToneyKorf submits that the hours expended and expenses incurred for the services rendered in these Chapter 11 Cases were reasonable and necessary to preserve the value of the estates for all stakeholders and to reach a resolution. Further, ToneyKorf submits that the work performed was not duplicative of other professionals representing the Debtors and could not have been done more cost-effectively by Debtors' personnel. In light of the foregoing, and as more fully set forth below, ToneyKorf Partners respectfully requests that the Court approve this Application and authorize the payment of fees and reimbursement of expenses sought herein on a final basis.

## JURISDICTION AND VENUE

19.    The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa. This is a core proceeding under 28 U.S.C. § 157(b).

20.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

21.    The basis for the relief requested herein is sections 363, and 330 with respect to the Success Fee, of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the

Federal Rules of Bankruptcy Procedures (the Bankruptcy Rules"), the Confirmation Order, and the Plan.

## BACKGROUND

### I.      The Chapter 11 Cases

22.      On August 7, 2023 (the "Petition Date"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered for procedural purposes only.

23.      On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in the Chapter 11 Cases [Docket No. 107]. On November 4, 2023, the U.S. Trustee appointed an official committee of pensioners (the "Pension Committee") [Docket No. 458]. No trustee or examiner has been appointed in the Chapter 11 Cases.

24.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").

25.      On June 7, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 1114] (the "Confirmation Order"), thereby confirming the Plan. On June 24, 2024 (the "Effective Date"), the Plan became effective. *See* Docket No. 1139.

26.     Section IV.D.1 of the Plan provides that all Chapter 11 Cases' professionals must file final requests for payment of compensation and reimbursement of expenses no later than 45 days after the Effective Date (*i.e.*, August 8, 2024). *See* Plan, IV.D.1. This Application represents ToneyKorf Partners for approval of compensation and reimbursement of expenses in the Chapter 11 Cases on a final basis and the approval of its $250,000 Success Fee (as discussed herein).

## II.     The Retention of ToneyKorf Partners

27.     On August 23, 2023, the Debtors applied [Docket No. 149] (the "ToneyKorf Partners Retention Application") to the Court for an order authorizing the Debtors to retain and employ ToneyKorf Partners as its interim management, effective as of August 7, 2023. On September 20, 2023, the Court entered the *Order Authorizing Debtors to Retain ToneyKorf Partners, LLC as Interim Management of the Debtors, Effective as of the Petition Date Pursuant to Section 363 of the Bankruptcy Code, and Granting Related Relief* [Docket No. 259] (the "Retention Order") and pursuant to the terms of the engagement letter dated March 30, 2023 (the "Engagement Letter"). Per the Retention Order, the Debtors appointed Mark E. Toney to serve as the CRO, James R. Porter to serve as the CFO, and Christopher P. Karambelas to serve as the COO/CIO as set forth in the Engagement Letter. The Engagement Letter further states that ToneyKorf Partners will provide additional personnel to assist Mr. Toney, Mr. Porter, and Mr. Karambelas with the restructuring efforts and other business of the Debtors (the "Additional Personnel"), as set forth more fully in the Engagement Letter.

28.     In addition to approving the employment of ToneyKorf Partners, the Retention Order also set forth compensation provisions subject to compensation being approved by final fee application.

10

29.     The Debtors were authorized to retain ToneyKorf Partners subject to the following terms, which apply notwithstanding anything in the Engagement Letter or the Application or any Exhibits related thereto to the contrary:

(a)     ToneyKorf Partners and its controlled affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the Chapter 11 Cases.

(b)     In the event the Debtors seek to have ToneyKorf Partners personnel assume executive officer positions that are different than the positions disclosed in the Application, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new executive officers, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c)     ToneyKorf Partners shall file with the Court with copies to Debtors, the United States Trustee (the "U.S. Trustee") and all official committees, a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

(d)     No principal, employee, or independent contractor of ToneyKorf Partners or its controlled affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the Chapter 11 Cases.

(e)     ToneyKorf Partners shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred for a sixty-day period, with the first such report to be filed for the period of August 7, 2023 through September 30, 2023. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. In addition, ToneyKorf Partners shall append to such reports fee summaries for the relevant periods identifying the number of hours worked by each executive officer and staff employee provided, each such person's rate, and each such person's total fees and expenses for the period, and, for staff employees, categorize such hours as appropriate. All compensation shall be subject to review by the Court in the event an objection is filed.

(f)     Notwithstanding the requirements of paragraph (e) above, the Debtors are authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by ToneyKorf Partners for fees and expenses incurred in connection with ToneyKorf Partners' retention, subject to review by the Court in the event an objection is filed in accordance with paragraph (e) above.

11

(g) For a period of three years after the conclusion of the engagement, neither ToneyKorf Partners nor any of its controlled affiliates shall make any investments in the Debtors.

(h) ToneyKorf Partners shall disclose any and all facts that may have a bearing on whether ToneyKorf Partners, its controlled affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. The obligation to disclose identified in this subparagraph is a continuing obligation.

(i) The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

17. Nothing in the Retention Order was deemed to constitute pre-approval of the $250,000 success fee contemplated by the Engagement Letter (the "Success Fee"). ToneyKorf Partners was required to file an application, which may include a fee application, seeking approval of the Success Fee in connection with the confirmation of a plan in these Chapter 11 Cases on notice to the United States Trustee, the Committee, Preston Hollow Community Capital, Inc., and Computershare Trust Company N.A., who shall have the right to object. In the event an objection is filed, the Court will determine whether the Success Fee (or a portion thereof) should be approved based on a reasonableness standard applied in reviewing professional fees under section 330(a) of the Bankruptcy Code, which may include consideration of the circumstances of the Chapter 11 Cases.

18. On November 16, 2023, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from August 7, 2023 Through September 31, 2023* [Docket No. 518] (the "First Compensation Report"), reporting total net fees in the amount of

12

$949,066.00 and total expenses in the amount of $60,815.10 during the relevant time period (the "First Compensation").  There were no objections to the First Compensation Report.

19.    On December 29, 2023, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from October 1, 2023 Through November 31, 2023* [Docket No. 611] (the "Second Compensation Report"), reporting total net fees in the amount of $1,121,647.50 and total expenses in the amount of $141,461.18 during the relevant time period (the "Second Compensation").  There were no objections to the Second Compensation Report.

20.    On March 20, 2024, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from December 1, 2023 Through January 31, 2024* [Docket No. 851] (the "Third Compensation Report"), reporting total net fees in the amount of $1,180,602.50 and total expenses in the amount of $61,070.86 during the relevant time period (the "Third Compensation").  There were no objections to the Third Compensation Report.

21.    On May 15, 2024, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from February 1, 2024 Through March 31, 2024* [Docket No. 1056] (the "Fourth Compensation Report"), reporting total net fees in the amount of $668,807.00 and total expenses in the amount of $9,742.91 during the relevant time period (the "Fourth Compensation").  There were no objections to the Fourth Compensation Report.

22.    On June 24, 2024, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from April 1, 2024 Through May 31, 2024* [Docket No. 1143] (the "Fifth Compensation Report"), reporting total net fees in the amount of

13

$350,435.25 and total expenses in the amount of $3,431.72 during the relevant time period (the "Fifth Compensation").  There were no objections to the Fifth Compensation Report.

23.     On July 26, 2024, ToneyKorf Partners filed its *Compensation Report of ToneyKorf Partners, LLC for the Period from June 1, 2024 Through June 24, 2024* [Docket No. 1182] (the "Sixth Compensation Report"), reporting total net fees in the amount of $77,868.65 and total expenses in the amount of $380.32 during the relevant time period (the "Sixth Compensation").  There were no objections to the Sixth Compensation Report.

## BASIS FOR RELIEF REQUESTED

24.     By this Application, ToneyKorf Partners seeks the Court's final approval and allowance of compensation in the amount of $4,348,426.90 for professional services rendered and reimbursement of actual and necessary expenses in the amount of $276,902.09 incurred, during the Application Period. ToneyKorf also seeks final approval of the $250,000 Success Fee as outlined and described herein.

25.     For the avoidance of doubt, ToneyKorf Partners was retained to provide professional services to the Debtors under sections 105(a) and 363(b) of the Bankruptcy Code, and its compensation is not subject to the provisions of sections 327, 328, and 330 of the Bankruptcy Code or the Compensation Procedures Order, other than the application of section 330 to the Success Fee. Pursuant to the Retention Order, ToneyKorf Partners' compensation has been remitted and is subject to approval on a final basis by final fee application, and ToneyKorf Partners seeks final approval of the Success Fee through filing of this combined final fee application.

14

26.     Pursuant to the Retention Order, and as detailed in the chart below, ToneyKorf Partners filed six (6) Compensation Reports. *See* Docket Nos. 518, 611, 851, 1056, 1143, and 1182 (collectively, the "Compensation Reports").

| Docket #/ Filed Date | Comp Period | Hours | Fees | Discounts | Net Fees | Expenses | Paid Fees & Expenses |
|---|---|---|---|---|---|---|---|
| #518 11/16/23 | 08/07/23 to 09/30/23 | 1,714.0 | $ 1,155,471.00 | $ (206,405.00) | $ 949,066.00 | $ 60,815.10 | $ 1,009,881.10 |
| #611 12/29/23 | 10/01/23 to 11/30/23 | 1,843.3 | $ 1,217,870.00 | $ (96,222.50) | $ 1,121,647.50 | $ 141,461.18 | $ 1,263,108.68 |
| #851 03/20/24 | 12/01/23 to 01/31/24 | 1,932.9 | $ 1,328,385.00 | $ (147,782.50) | $ 1,180,602.50 | $ 61,070.86 | $ 1,241,673.36 |
| #1056 05/15/24 | 02/01/24 to 03/31/24 | 966.1 | $ 680,499.50 | $ (11,692.50) | $ 668,807.00 | $ 9,742.91 | $ 678,549.91 |
| #1143 06/24/24 | 04/01/24 to 05/31/24 | 525.2 | $ 354,800.25 | $ (4,365.00) | $ 350,435.25 | $ 3,431.72 | $ 353,866.97 |
| #1182 07/26/24 | 06/01/24 to 06/24/24 | 122.9 | $ 77,868.65 | $ - | $ 77,868.65 | $ 380.32 | $ 78,248.97 |
| **Total** | | **7,104.3** | **$ 4,814,894.40** | **$ (466,467.50)** | **$ 4,348,426.90** | **$ 276,902.09** | **$ 4,625,328.99** |

27.     In support of this request for the final allowance of all fees and expenses incurred by ToneyKorf Partners during the Application Period, ToneyKorf Partners incorporates herein by reference each of its Compensation Reports.

## DESCRIPTION OF SERVICES REFERENCED

28.     The services rendered by ToneyKorf Partners during the Chapter 11 Cases and through the Plan Effective Date can be grouped into categories set forth below. ToneyKorf Partners' fees are presented on a gross (before "discounts") basis.

### i.     Business Operations

Total Fees: $2,728,256.40                    Total Hours: 4,071.8

29.     Managed debtor-in-possession operations and wind-down activities in chapter 11, including duties of the CRO, CFO, COO/CIO, and Vice President of Human Resources.

30.     The CRO managed all day-to-day restructuring, operations, and assets of the Debtors, navigating high-pressure situations and stakeholder tensions. Responsible for overall

15

case strategy, the CRO oversaw bankruptcy professionals, reported to and communicated with

the Restructuring Committee and Board of Directors, and managed communication with key

stakeholders, including employees, patients, vendors, and the media. Led the transition planning

team, coordinated with University of Iowa senior leaders, and facilitated the review of the

Foundation, and assessed related strategic options. Assessed various contingency plans on an

ongoing basis. Oversaw the wind-down and post-sale operations, including HR matters,

retirement plan wind-downs, and record retention. Developed transition planning for the

Liquidating Trustee.

31.     The CFO managed the Debtors' financial and treasury functions with a focus on

cash generation and preservation. This included overseeing budget and cash flow, preparing

periodic reports for the Bankruptcy Court, and developing presentations on the Company's

financial and bankruptcy status for the Board of Directors, Finance Committee, and

Restructuring Committee. The CFO coordinated cash flow efforts, managed vendor

relationships, and developed transition plans for the Buyer. Additionally, the CFO planned and

oversaw aspects of the Debtors' wind-down and post-sale operations, including final audits,

accounts receivable, the transition of revenue cycle services, and various human resources and

pension matters. Coordinated with governmental programs and other entities, recruited

permanent finance staff, and assisted the CRO with strategy and data acquisition. Developed

transition planning for the Liquidating Trustee.

32.     The COO/CIO managed the day-to-day operations of non-clinical areas, including

IT, facilities, engineering, environmental services, security, dietary, and biomedical engineering,

ensuring support for patient care delivery. Partnered with other leaders on regulatory compliance

16

and operational challenges. Developed and finalized transition plans for University of Iowa,
coordinated resources and information with the potential buyer and bankruptcy counsel, and
addressed urgent IT and facilities issues. Oversaw the wind-down of non-transitioning programs,
prepared assets for liquidation/sale, managed email migration, and coordinated historical data
extraction. Developed transition planning for the Liquidating Trustee and ensured the transition
of HR and IT data per the Transition Services Agreement.

33.     The VP of Human Resources managed the Debtors' HR department, overseeing
employee relations, compensation issues, benefits enrollment and coverage, defined benefit
pension inquiries, and coordination with insurance companies. Led employee transition planning
with the Buyer, including payroll, benefits, and role adjustments. Directed the wind-down of HR
and benefit functions, including retirement plans, health insurance, and workers' compensation.
Responded to pension inquiries, processed pension commencement requests, and verified data
for pension valuations. Developed transition plans for the Liquidating Trustee. Assisted with
employee communication plans and human resource relations.

34.     Temporary Staff supported senior management by preparing various weekly,
monthly, and ad hoc financial and operational reports for operations, external stakeholders, and
bankruptcy court. Temporary Staff managed the treasury function and provided reporting for the
CRO and CFO. Assisted the VP of HR with pension and Buyer data, developed transition
planning for the liquidating trustee, and worked on vendor relations and communications with
the Board and media.

**ii.     Cash Management & Financing**

Total Fees: $237,161.00                    Total Hours: 474.4

35.     Supported cash and liquidity management by preparing and maintaining debtor-in-possession cash flow forecasts and variance analyses, and managing bank accounts. Monitored compliance with cash collateral requirements, reviewed and approved vendor payments, and met regularly with advisors for secured lenders, bondholders, the Unsecured Creditors Committee, and the Pension Committee regarding cash management. Prepared net operating cash loss funding requirements and developed cash flow forecasts beyond the transaction closing date.

### iii.     Post-Closing UI Transition Services

Total Fees:  $28,051.50                    Total Hours:  40.7

36.     Provided post-closing employee, benefit, and payroll-related transition services to the Buyer as outlined in the Transition Services Agreement with the University of Iowa Health Care.

### iv.     Asset Sales

Total Fees:  $430,924.00                   Total Hours:  546.0

37.     Collaborated with the Debtors' professionals and investment bankers to support and coordinate the asset sale process. Assisted with due diligence requests, facility tours, and meetings with bidders, including the stalking horse. Participated in discussions with key parties, including the FTC regarding antitrust matters. Developed transition plans for potential new owners/operators and prepared various financial and operational reports. Engaged in negotiations with the Buyer, including amendments to the Asset Purchase Agreement (the "APA") and funding agreements. Coordinated the sale process for non-transitioning assets, joint ventures, and

real estate, and executed the strategy for their sale. Prepared for the sale hearing, reviewed

auction proposals, and finalized the APA.

### v.   **Bankruptcy Reporting**

Total Fees:  $265,277.00                    Total Hours:  462.3

38.     Oversaw and addressed administrative and reporting matters related to bankruptcy

filings, including analysis of contracts for cure analysis and assumption or rejection. Supported

the preparation of bankruptcy-related documents such as the Debtors' Statement of Financial

Affairs, Schedules of Assets and Liabilities, and Monthly Operating Reports. Coordinated with

the Debtors' claims agent.

### vi.   **Claims Administration**

Total Fees:  $86,109.50                    Total Hours:  130.5

39.     Reviewed and analyzed the claims database, claims register, and claims analysis

provided by the Debtors' Claims Agent to support the Plan of Liquidation and related activities.

Participated in communications with Debtors' counsel and the UCC professionals regarding the

claims register.

### vii.   **Disclosure Statement & Plan of Liquidation**

Total Fees:  $218,678.75                    Total Hours:  253.9

40.     Developed, analyzed, and negotiated the Plan of Liquidation, including a

liquidation analysis, in coordination with counsel and key stakeholders. Reviewed and directed

asset recovery and administrative claims in the waterfall analysis, as well as the treatment of

asset classes and distribution of post-closing funds in the winddown. Oversaw communications

with Bondholders, the Unsecured Creditors' Committee, and Pension Committee advisors, and

participated in facilitated conferences regarding the Plan of Liquidation and Disclosure

Statement negotiations. Reviewed objections to Plan Confirmation, discussed options and

strategies with Debtors' counsel and stakeholders professionals, prepared for testimony, and

planned and prepared for the Effective Date.

### viii.    Litigation

Total Fees:  $190,254.00                              Total Hours:  216.8

41.     Coordinated e-discovery and litigation hold requests from the bondholder.

Reviewed the Foundation's Adversarial Complaint and negotiated with Mercy Hospital

Foundation and related parties. Prepared for potential testimony on multiple occasions, including

participation in the CRO's deposition. Negotiated and managed litigation and settlement plans

with the Mercy Hospital Foundation. Oversaw data requests and follow-up items for the project

led by Getzler Henrich to characterize donations/gifts to the Foundation and properly record

them.

42.     Assisted counsel with objections and litigations by key stakeholders, including the

Motion to Compel Compliance with Auction Results by the Bondholder and the Motion to

Compel Assumption or Rejection of the executory contract for Altera Digital Health. Reviewed

court filings by Bondholders and UCC professionals, identifying errors and inconsistencies.

Prepared for potential testimony regarding cash collateral and sale hearings.

43.     Led negotiations towards a settlement plan, including meetings between the

Buyer, stakeholders, Altera, and the Board of Directors. Reviewed transcripts of testimony

regarding A/R valuation and assisted stakeholders' financial advisors with data discrepancies.

Regularly held calls with counsels and potential parties of causes of actions.

### ix.   Other Bankruptcy Matters

Total Fees: $82,420.50                    Total Hours:  99.5

44.      Addressed various bankruptcy matters, including docket and motion review,
diligence on case structure, public documents, and information requests. Handled issues related
to the Mercy Foundation and vendors concerning the bankruptcy filing. Reviewed calculations of
liabilities such as sick days, pensions, and medical malpractice, and developed strategies and
managed key liabilities of the estate. Reviewed potential avoidance actions and drafted memos to
attorneys regarding potential contract rejections. Analyzed recovery analysis provided by the
bondholder. Developed plans and executed the wind-down of the Foundation and the Guild (non-
Debtor entities).

### x.   Bankruptcy Meetings and Communications

Total Fees: $126,609.75                    Total Hours:  185.5

45.      Participated in bankruptcy meetings and general correspondence with UCC,
Creditors, Committee Professionals, US Trustee, Ombudsperson, Pension Committee, Other
Debtors' Advisors, Bondholders' Advisors, and other professionals relating to various case
updates. Prepared for and participated in the Initial Debtor Interview and the Section 341
meeting. Coordinated information with the Ombudsperson as appropriate.

### xi.   Court Hearings

Total Fees: $74,002.00                    Total Hours:  97.1

46.      Prepared for and participated in various hearings, including the first-day motions,
professional retentions, the pension committee motion, and the sales process. Prepared for

testimony or deposition on multiple occasions and provided testimony as required and appropriate.

**xii.      Case Administration**

Total Fees:  $9,728.00                              Total Hours:  11.8

47.     Oversaw case administration and retention-related matters, including preparing retention applications and responding to objections.

**xiii.     Compensation and Staffing Reports**

Total Fees:  $41,130.00                           Total Hours:  68.7

48.     Prepared and reviewed monthly invoices, staffing reports, and compensation reports.

**xiv.    Travel Time**

Total Fees:  $296,292.00                         Total Hours:  445.7

49.     Non-working time incurred traveling to and from business-related sites. For the purposes of this engagement, ToneyKorf Partners does not bill travel time over three hours and applies a 50% discount for travel billed.  The discount for travel time was $148,146.00.

<u>**DESCRIPTION OF EXPENSES INCURRED**</u>

50.     During the Application Period, ToneyKorf Partners incurred actual, reasonable, and necessary expenses in connection with its engagement by the Debtors in the aggregate amount of $276,902.09 for which ToneyKorf Partners seeks final approval.  The summary sheets annexed to this Application specify the categories of expenses and respective totals of expenses that ToneyKorf Partners incurred in connection with these Chapter 11 Cases.  Additionally, detailed

22

descriptions of the actual and necessary expenses incurred by ToneyKorf Partners in the performance of services rendered during the Case Period are included in the Compensation Reports.

51.     As illustrated in the summary cover sheets and the Compensation Reports, the expenses are broken down into various categories of charges, including travel expenses, business meals, and other various fees.

## DESCRIPTION OF SUCCESS FEE

52.     In addition to the professional fees and expenses described herein, the Debtors agreed to pay ToneyKorf Partners the Success Fee based on performance. The Engagement Letter provides:

> *The Success Fee shall be based upon a transaction and/or transition of substantially all assets to a new owner with the intent and expectation that Mercy will continue as a healthcare facility serving the community. The Success Fee to ToneyKorf Partners shall be considered earned and payable on one of the following events:*
>
> *A.     A transition and/or transaction resulting in the continuation of Mercy as a healthcare facility occurring outside of Chapter 11 or Chapter 7 protection under the United States Bankruptcy Code. The Success Fee for this transaction and/or transition shall be $1,000,000.*
>
> *B.     A transaction and/or transition resulting in the continuation of Mercy as a healthcare facility occurring under Chapter 11 of the Bankruptcy Code. Such Success Fee will be deemed earned, payable, and subject to the bankruptcy court's approval. The Success Fee for this transaction and/or transition shall be $250,000.*
>
> *For clarification of the above outline, in the event that the Company closes substantially all of the facilities and its operations, and eliminates substantially all staff, ToneyKorf Partners will not be entitled to a Success Fee.*

53.     The Success Fee is intended to compensate and reward ToneyKorf Partners not only for its roles in these Chapter 11 Cases, but also for driving the engagement successfully and maximizing the value of the Debtors' estate through an expeditious restructuring process. It is important to note that the Success Fee was negotiated as part of the overall agreement for the

services of Mr. Toney as CRO, Mr. Porter as CFO, Mr. Karambelas as COO/CIO, and ToneyKorf

Partners. The condition for earning a Success Fee in the amount of $250,000 was to complete a

transaction in Chapter 11 that preserved the hospital as a healthcare provider in the community. It

should be noted that ToneyKorf Partners made all efforts to complete a transaction outside of the

Chapter 11 proceeding which would have resulted in a higher Success Fee of $1,000,000.

54.     As part of the retention process, ToneyKorf Partners agreed to defer the review by

the Court of the Success Fee until the completion of the case. The Retention Order provided for

ToneyKorf Partners to file an application seeking approval of the Success Fee in connection with

the confirmation of a plan in these Chapter 11 Cases. The Success Fee goal as outlined in the

Engagement Letter of "*the continuation of Mercy as a healthcare facility*" was achieved with the

Court's approval of the sale of the operations to University of Iowa on November 7, 2023, as well

as maximizing the recovery for the creditors and preserving jobs for the employees and providers.

Secondly, the Court entered an order confirming the Plan on June 7, 2024, and, at the confirmation

hearing on May 16, 2024, key stakeholders duly noted the success of the case and the confirmation

of the Plan, as well as the Court's opinion as referenced in Footnote 3 herein. ToneyKorf Partners'

significant roles and contributions helped preserve value and drive the success of these Chapter 11

Cases, and subject to Court approval, ToneyKorf Partners is entitled to payment of the Success

Fee.

## **BASIS FOR RELIEF**

55.     ToneyKorf Partners performed substantial and necessary services in these Chapter

11 Cases, which enhanced the value of the Debtor's estates, warranting an award of compensation

beyond the amount that results from a simple application of the lodestar approach.

56.     As previously highlighted, these Chapter 11 Cases began with significant conflict between the key constituents. This pattern of dissension continued for an extended period following the Petition Date, as stakeholders took a litigious approach to initially resolving outstanding issues. Given the dissension between the various parties, consensus and resolution seemed impossible at many stages of the Chapter 11 Cases. Nevertheless, ToneyKorf Partners worked and persevered to both consummate the sale of substantially all of the Debtors' assets to University of Iowa and achieved agreement for a confirmable Plan of Liquidation amongst all key constituents in advance of Plan confirmation. Given how the cases started, the actual success and positive outcome of this case was "not lost on this Court."[3]

57.     ToneyKorf Partners played a vital role in the design and implementation of a cash management and cost-saving program to increase the time or "runway" for the Debtors to allow for a full court process to unfold, including the successful sale of the key assets. Such actions also included the securing of critical cash for the operations from affiliate non-Debtor entities.

58.     ToneyKorf Partners' involvement in the detailed management of the Debtors day-to-day cash management operations served as a layer of oversight that was welcomed by all the stakeholders in these Chapter 11 Cases. ToneyKorf Partners was responsible for organizing and leading weekly communications with various stakeholders' financial advisors regarding liquidity management. ToneyKorf Partners created an organizational cash flow forecast with the Debtors' finance team that was closely linked to the business plan forecast. This required assessing various minimum cash needs at every operational level and ultimately rolling up into a consolidated global view.

59.     Using the cash flow forecast provided by ToneyKorf Partners, the Debtors assessed various restructuring alternatives and developed views on funding needs based on multiple scenarios to enter and exit bankruptcy. Ultimately, ToneyKorf Partners' cash flows and projections were critical for the ongoing use of cash collateral from the commencement of the Chapter 11 Cases until the confirmation of the Plan.

60.     ToneyKorf Partners also supported the company in the development of its sales process, a critical step in the Debtors' strategy, which became the basis of the Plan. As part of this effort, ToneyKorf Partners was instrumental in leading numerous diligence sessions with each of the potential buyers, highlighting the appropriate drivers being considered in the purchase of the asset. ToneyKorf Partners supported the management team in various ways, including, but not limited to: (i) documenting assumptions, accounting treatments, Debtor-specific business metrics and forecasting methodologies through multiple iterations of the business model; (ii) developing management presentations for meetings with potential buyers; and (iii) assisting the potential buyers and their advisors with business plan due diligence, including data collection, responding to inquiries and facilitating meetings with management. Additionally, ToneyKorf Partners was instrumental in managing the entire planning process leading up to and during the filing. This involved producing all required documents and analyses for the first-day motions (including spend projections by type and category throughout the case such as operational and restructuring expenses as required by settlements with related or affiliated non-Debtor entities during the case), and various court filings in the financial components of the Plan and Disclosure Statement. ToneyKorf Partners also led the effort to develop and implement certain controls necessary for the company to operate in chapter 11, and played a pivotal role in managing and overseeing all

payments made throughout the process to ensure compliance with the authorization provided by this Court. Similarly, throughout this process, ToneyKorf planned for and managed the "worst-case" scenarios, including the orderly and/or crisis closure of the Debtors' operations including the hospital and clinics.

61.     ToneyKorf Partners played an integral role in leading, negotiating, and achieving a swift transition of the hospital and clinic operations to the University of Iowa after the Court approved the sale. These transition agreements and operating collaboration reduced the Debtors' cash use during the transition period, resulting in a higher recovery for the creditors.

62.     ToneyKorf Partners' skillful diligence, integrated approach, and accomplished capabilities guided the path to the successful results in these Chapter 11 Cases. The fundamental benefits reflected by constructive and quantifiable outcomes described herein reinforce the rationale for the approval of the Success Fee under the most rigorous of judicial standards. With the assistance of ToneyKorf Partners and other professionals, the Debtors were able to sell the major assets, confirm a Chapter 11 plan, and transition the restructuring process to a Liquidating Trust as part of such Plan, while reestablishing the pillars of a successful and thriving organization for the community on a go-forward basis. The Debtors immediately benefited from, and will continue to reap the benefits from, ToneyKorf Partners' contributions to these Chapter 11 Cases. The Court's allowance of the Success Fee is proper and with merit.

## Legal Standard

63.     Success fees or completion fees are normal parts of compensation for turnaround management, restructuring, and consulting firms, both inside and outside of bankruptcy courts.[4] Indeed, ToneyKorf Partners and other similar firms price their engagements to include performance or success fees as part of the total compensation package for such engagements. Thus, ToneyKorf Partners and other turnaround and management restructuring firms rely upon and take into account the negotiated performance or success fee when accepting engagements.

64.     Performance or success fees are typical in restructuring cases because clients appreciate an approach that aligns the interest of the client with the interest of its advisor. Further, providing a discount or "cap" on fees is used to demonstrate the commitment and willingness to put fees at risk in exchange for a Success Fee. As such, ToneyKorf Partners agreed to a discount in the Engagement Letter with Mercy as part of the overall pricing, which also included the potential for Success if the goals were met. In colloquial terms, success fees demonstrate that a turnaround firm, such as ToneyKorf Partners, has "skin in the game" along with the company undergoing the turnaround or restructuring. This alignment of interest inures to the overall benefit of a debtor, as well as its estate and creditors. Without that demonstrated alignment of interest, such a client might be reluctant to reach out for critical and specialized guidance from seasoned turnaround and restructuring firms like ToneyKorf Partners.

---

[4]     While success fees for lawyers and accountants are rarely sought or granted, success fees are a standard component of compensation for turnaround management, restructuring and consulting firms, and investment banking firms. ToneyKorf Partners is neither a law firm nor an accounting firm. ToneyKorf Partners is, among other things, a firm that specializes in providing advisory services and crisis management to financially distressed and troubled companies. As such, payment of the Success Fee or completion fee to ToneyKorf Partners is consistent with the industry practice in and out of bankruptcy cases.

65.     Similarly, such fees are a vital and inseparable component of the overall compensation model for turnaround and restructuring firms like ToneyKorf Partners, and denial of such fees, in cases, such as these, where the concrete achievement of one of the stated goals outlined at the outset of ToneyKorf Partners engagement has occurred, would ill-serve restructurings generally and potentially produce undesirable results. Some firms would simply decline challenging engagements and others would adjust their compensation model by increasing their monthly and/or hourly fees.[5] In recognition of these realities, courts routinely authorize and approve the payment of a success fee or completion fee upon a clear and demonstrable showing of management expertise that is transformative, in terms of business viability, capital structure fit, and value generation. This reasoning is precisely applicable to the engagement of ToneyKorf Partners by the Debtors in these Chapter 11 Cases. See Declaration of Dr. Thomas R. Clancy, Chairman of the Board, at Exhibit A.)

66.     The marketplace ordinarily compensates restructuring advisors with both a salary component based on hours worked and a performance-based fee. As the bankruptcy court in the Southern District of Ohio held in *In re Cardinal Indus., Inc.,* 151 B.R.843 (Bankr. S.D. Ohio 1993) (Chapter 11 operating trustee awarded a restructuring firm a fee of $2.1 million plus a success fee of 50,000 shares of stock):

> Performance-based or success-factor bonuses are a normal part of compensation arrangements for management restructuring consultants and… such bonuses generally far exceed the time value

---

[5]   The former is not an acceptable result, as it would deny distressed companies the necessary services of firms like ToneyKorf Partners that specialize in providing financial advisory services to financially troubled companies and that have earned a national reputation for their expertise in financial reorganizations and restructurings of troubled companies. The latter also is not a desirable result, as it would needlessly result in increased fees during the pendency of the case, without such fees being tied to performance-based criteria and the outcome of the case itself (measuring success against alternative outcomes and relative distributable value yields).

> of the consultant services on a lodestar basis. Indeed, the time value
> component is referred to as the base salary, apparently payable to
> the consultant even if success is not achieved.

151 B.R. at 847. *See also, In re Busy Beaver Building Center, Inc.,* 19F.3d 833 (3rd Cir. 1994) (the

basis for requested compensation should be based on the market rate that professional would

charge and collect from a client in a non-bankruptcy setting); In re UDC Homes, Inc., 203 B.R.

218 (Bankr. D. Del.1996).

67. Courts review performance-based fees under the "reasonableness standard" of

section 330 of the Bankruptcy Code. *In re Northwest Airlines Corporation,* 400 B.R. 393 (Bankr.

S.D.N.Y. 2009); *In re XO Communications, Inc.,* 398 B.R. 106 (Bankr. S.D.N.Y 2008). In

considering a success fee, courts consider (i) whether the financial advisor's services were

necessary and beneficial to the debtors' estates at the time the services were rendered; (ii) whether

the compensation is reasonable based on the customary compensation charge by comparably

skilled practitioners in cases outside of bankruptcy. *XO Communications, 398 B.R. at 113.* In

determining the reasonableness of a success fee and whether the services were necessary and

beneficial to the debtor's estate, courts will look "at the nexus between what was achieved." Id. at

116.

68. When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove

the "spirit of frugality" as a factor in bankruptcy fees. The standard is now the cost of comparable

services in a non-bankruptcy setting. Inasmuch as success fees are a normal part of the fee structure

of ToneyKorf Partners and other turnaround and restructuring firms within and outside the

bankruptcy processes, approval of the Success Fee or completion fee is appropriate to assure

comparable compensation for comparable services.

69.     Recent bankruptcy cases involving success fees, completion fees, or restructuring

fees awarded to restructuring firms serving as interim management in bankruptcy cases include

the following:

a.    *NPC International, Inc.*, a chapter 11 case in the Southern District of Texas before
the Honorable David R. Jones. In 2021, the restructuring firm was awarded a
restructuring fee of $1,500,000.00 [Case No. 20-33353, Docket No. 1655].

b.    *Noble Corporation PLC*, a chapter 11 case in the Southern District of Texas before
the Honorable David R. Jones. In 2021, the Bankruptcy Court approved a success
fee of $1,750,000.00 [Case No.20-33826, Docket No. 999].

c.    *Tailored Brands, Inc.*, a chapter 11 case in the Southern District of Texas before the
Honorable Marvin Isgur. In 2021, the Bankruptcy Court approved a success fee of
$500,000.00 [Case No. 20-33900, Docket No. 1648].

d.    *PG&E Corporation*, a chapter 11 case in the Northern District of California before
Honorable Dennis Montali. In 2020, the Debtors' restructuring firm was awarded a
success fee of $8,000,000.00 [Case No. 19-30088, Docket No. 9373].

e.    *Alta Mesa Resources, Inc.*, a chapter 11 case in the Southern District of Texas before
the Honorable Marvin Isgur. In 2020, the bankruptcy court approved a completion
fee of $200,000.00 [Case No.19-35133, Docket No. 2007].

f.    *McDermott International, Inc.*, a chapter 11 case in the Southern District of Texas
before the Honorable David R. Jones. In 2020, the Bankruptcy Court approved a
success fee of $5,000,000.00.

g.    *Aegerion Pharmaceuticals, Inc.*, a chapter 11 case in the Southern District of New
York before the Honorable Martin Glenn. In 2019, the Bankruptcy Court approved
a success fee of $500,000.00 [Case No. 19-11632, Docket No. 406].

h.    *Sungard Availability Capital Services*, a chapter 11 case in the Southern District of
New York before the Honorable Robert D. Drain.   In 2019, the Debtor's
restructuring firm was awarded a success fee of $1,250,000.00 [Case No. 19-22915,
Docket No. 115]

i.    *Aceto Corporation*, a chapter 11 case in the District of New Jersey before the
Honorable Vincent F. Papalia. In 2019, the Bankruptcy Court approved a success
fee of $1,000,000.00 [Case No. 19-13448, Docket No. 683].

j.    *Westinghouse Electric Company*, a chapter 11 case in the Southern District of New
York before the Honorable Michael E. Wiles. In 2018, the Bankruptcy Court
approved a success fee of $7,500,000.00 [Case No. 17-10751, Docket No. 3633].

k.    *VER Technologies Holdco, LLC*, a chapter 11 case in the District of Delaware before the Honorable Kevin Gross. In 2018, the Debtor's restructuring firm was awarded a success fee of $750,000.00 [Case No. 18-10834, Docket No. 881].

l.    *Oldapco, Inc. f//k/a Appvion, Inc.*, a chapter 11 case in the District of Delaware before the Honorable Kevin J. Carey. In 2018, the Bankruptcy Court approved a success fee of $628,125.00 [Case No. 17-12082, Docket No. 1070].

m.    *The Gymboree Corporation*, a chapter 11 case in the Eastern District of Virginia before the Honorable Keith L. Phillips. In 2017, the Bankruptcy Court approved a success fee of $1,250,000.00 [Case No. 17-32986, Docket No. 853]

n.    *Primorsk International Shipping Limited*, a chapter 11 case in the Southern District of New York before the Honorable Martin Glenn. In 2016, the Debtor's restructuring firm was awarded a success fee of $500,000.00 [Case No. 16-10073, Docket No. 315].

o.    *USEC Inc.*, a chapter 11 case in the District of Delaware before the Honorable Christopher S. Sontchi. In 2014, the Bankruptcy Court approved a success fee of $500,000.00. [Case No. 14-10475, Docket No. 619].

p.    *Synagro Technologies Inc.*, a chapter 11 case in the District of Delaware before the Honorable Brendan L. Shannon. In 2013, the Bankruptcy Court approved a success fee of $350,000.00. [Case No. 13-11041 Docket No. 907].

q.    *Bearing Point*, a Chapter 11 case in the Southern District of New York before the Honorable Jonathan D. Gerber. In 2009, the Bankruptcy Court approved a contingent success fee of $4,500,000.00. [Case No. 09-10691, Docket No. 1296].

r.    *Lyondell Chemical Co.*, a chapter 11 case in the Southern District of New York before Judge Jonathan D. Gerber.  In 2010, the Bankruptcy Court approved a contingent success fee of $7,000,000.00 [Case No. 09-10023 Docket No. 4814].

s.    *General Motors Corporation n/k/a Motors Liquidation Company*, a Chapter 11 case in the Southern District of New York before the Honorable Jonathan D. Gerber. In 2009, the Bankruptcy Court approved the retention of the crisis management firm's engagement which included several success fee components.  The Court approved a $13,000,000.00 success fee for work that was completed in the months leading up to the bankruptcy filing.  Of that amount, $6,500,000.00 was approved and paid in 2009 and $6,500,000.00 was approved and paid in 2010. Additional success fees were approved and earned based on the achievement of various objectives including confirmation of a plan of liquidation and reduction in claims.  [Case No. 09-50026, Docket No. 2949].

70.    In determining the reasonableness of fee awards under section 330, courts consider whether the services provided are "services which are reasonably likely to benefit the debtors' estates." *In re Residential Capital, LLC,* 504 B.R. 358, 366 (Bankr. S.D.N.Y. 2014) (quoting *In re Angelika Films 57th Inc.,* 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998)). *See also In re Ames Dep't Stores, Inc., 76 F.3d 66, 71-72 (2d Cir. 1996).*

71.    Additionally, "[w]hen a court conducts a section 330 review of fees that only are compensable if a specific result is achieved, it must find that the work was beneficial when rendered, and [therefore] must look to the nexus between the work done and the results achieved." *XO Communications,* 398 B.R. at 113-14. Thus, the "reasonable standard" analysis required by section 330 allows the court to consider "the nexus between the task performed and the results achieved," as well as the "impact of the advisor's effort in that regard." *Residential Capital, LLC,* 504 B.R. at 367 (citations omitted).

72.    In short, success fees or completion fees are a normal part of compensation for firms such as ToneyKorf Partners, which provide interim and crisis management services to the Debtors and may be approved on that basis. The services provided by ToneyKorf Partners resulted in tangible, measurable, and significant incremental value to the Debtors, their estates, and the creditors.

73.    ToneyKorf Partners' leadership and contributions were key enablers of the successful outcome and recovery in these Chapter 11 Cases. As such, the amount of the Success Fee in these cases is reasonable pursuant to the standard outlined in section 330 of the Bankruptcy Code and should be approved.

## NOTICE

74.     The Debtors will serve notice of this Application on the U.S. Trustee and all other

parties entitled to notice under the Plan, the Retention Order, or pursuant to Bankruptcy Rules.

## NO PRIOR REQUEST

75.     No prior request for the relief sought in the Application has been made to this or

any other court.

## CONCLUSION

WHEREFORE, ToneyKorf Partners respectfully requests that the Court enter an Order:
(i) granting the Application and authorizing (a) allowance of compensation in the amount of
$4,348,426.90 for professional services rendered, and (b) reimbursement for actual and necessary
costs in the amount of $276,902.09; (ii) directing payment by the Debtors or Liquidating Trustee
of the $250,000 Success Fee; and (iii) granting such other further relief as the Court deems just
and proper.


Dated: August 8, 2024                    _/s/ Mark E. Toney_
                                         Mark E. Toney
                                         Senior Managing Director
                                         ToneyKorf Partners, LLC

Dated: August 8, 2024

**NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*

Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:    (319) 286-7002
Facsimile:    (319) 286-7050
Email:        rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Dana Hempy, AT0014934
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone:  (515) 283-3100
Fax:  (515) 283-8045
Email:        kmstanger@nyemaster.com
              dhempy@nyemaster.com

-and -

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:    (312) 372-2000
Facsimile:    (312) 984-7700
Email:        fperlman@mwe.com
              dsimon@mwe.com
              ekeil@mwe.com

- and -

Jack G. Haake (admitted *pro hac vice*)
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
Telephone:    (214) 295-8000
Facsimile:    (972) 232-3098
Email:        jhaake@mwe.com
*Counsel for Debtors and Debtors-in-Possession*

35

**Certificate of Service**

The undersigned certifies, under penalty of perjury, that on this August 8, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

/s/ *Roy Leaf*