**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) Case No. 23-00623 (TJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Obj. Deadline: 8/22/24 at 4:00 p.m. (CT)** |
| | ) |

## SUMMARY OF ELEVENTH MONTHLY AND FINAL FEE APPLICATION OF McDERMOTT WILL & EMERY LLP, COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Name of Applicant: | **McDERMOTT WILL & EMERY LLP** |
| Authorized to provide professional services to: | **Debtors and Debtors-in-Possession** |
| Date of retention: | **September 14, 2023, effective as of August 7, 2023** |
| Monthly period for which compensation and reimbursement is sought: | **June 1, 2024 through June 24, 2024** |
| Amount of monthly compensation sought as actual, reasonable and necessary: | **$204,722.50[1]** |
| Amount of monthly expense reimbursement sought as actual, reasonable and necessary: | **$2,122.26[2]** |
| Case period for which compensation and reimbursement is sought: | **August 7, 2023 through June 24, 2024** |
| Amount of final compensation sought as actual, reasonable and necessary: | **$5,091,287.00[3]** |

---

[1]   This amount does not reflect $1,329.00 in incurred fees that McDermott has voluntarily written off with respect to the Monthly Period (as defined herein).

[2]   This amount does not reflect $1,559.32 in incurred expenses that McDermott has voluntarily written off with respect to the Monthly Period (as defined herein).

[3]   This amount does not reflect $108,254.50 in incurred fees that McDermott has voluntarily written off with respect to the Case Period (as defined herein).

Amount of final expense reimbursement
sought as actual, reasonable and
necessary:                                    **$33,264.88**[4]

Amount of compensation paid to date
as actual, reasonable and necessary,
as authorized under the Interim Compensation
Order (as defined herein):                    **$3,624,491.52**

Amount of expense reimbursement paid
to date as actual, reasonable and necessary:  **$31,142.62**

This is a:                                     **Final Fee Application**

---

[4]   This amount does not reflect $72,516.47 in incurred expenses that McDermott has voluntarily written off with respect to the Case Period for, among other things, computer research charges, computer storage costs incurred in connection with discovery processes, and travel expenses.

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.**
**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**
**SUMMARY OF BILLING BY PROFESSIONAL FOR PERIOD FROM**
**JUNE 1, 2024 TO JUNE 24, 2024**

| Name of Professional Person | Date of Bar Admission | Position with the Applicant and Practice Area | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|---|
| Felicia Gerber Perlman | 1992 | Partner; Corporate Advisory | $1,850 | 12.4 | $22,940.00 |
| James W. Kapp | 1994 | Partner; Corporate Advisory | $1,450 | 99.3 | $143,985.00 |
| Daniel M. Simon | 2008 | Partner; Corporate Advisory | $1,450 | 12.4 | $17,980.00 |
| Nathan M. Bull | 2006 | Partner; Trial | $1,410 | 1.5 | $2,115.00 |
| Emily C. Keil | 2018 | Associate; Corporate Advisory | $1,105 | 13.3 | $14,696.50 |
| Landon Foody | 2023 | Associate; Corporate Advisory | $835 | 3.6 | $3,006.00 |
| **TOTALS** | | | | **142.5** | **$204,722.50** |

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.
COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION
SUMMARY OF BILLING BY PROFESSIONAL FOR CASE PERIOD FROM
AUGUST 7, 2023 THROUGH JUNE 24, 2024**

| Name of Professional Person | Date of Bar Admission | Position with the Applicant and Practice Area | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation[2] |
|---|---|---|---|---|---|
| Michael Wilder | 1995 | Partner; U.S. and International Tax | $1,975 | 1.8 | $3,555.00 |
| Michael W. Peregrine | 1980 | Partner; Healthcare | $1,855 | 4.9 | $9,089.50 |
| Felicia Gerber Perlman | 1992 | Partner; Corporate Advisory | $1,850 | 522.3 | $966,255.00 |
| Neil T. Kawashima | 1996 | Partner; Private Client | $1,600 | 5.1 | $8,160.00 |
| Denise D. Burke | 1993 | Partner; Healthcare | $1,595 | 2.0 | $3,190.00 |
| Stephen Y. Wu | 1999 | Partner; Antitrust / Competition | $1,590 | 3.3 | $5,247.00 |
| Megan R. Rooney | 2006 | Partner; Healthcare | $1,460 | 78.6 | $114,756.00 |
| James W. Kapp | 1994 | Partner; Corporate Advisory | $1,450 | 391.4 | $567,530.00 |
| Jeffrey M. Holdvogt | 2003 | Partner; Employee Benefits and Executive Compensation | $1,450 | 92.1 | $133,545.00 |
| Daniel M. Simon | 2008 | Partner; Corporate Advisory | $1,450 | 839.4 | $1,217,130.00 |
| Nathan M. Bull | 2006 | Partner; Trial | $1,410 | 191.9 | $270,579.00 |
| Victoria P. Ose | 2008 | Partner; Private Client | $1,360 | 1.7 | $2,312.00 |

---

[1]  McDermott did not increase its annual rates as of January 1, 2024 with respect to these Chapter 11 Cases (despite its ability to do so under the McDermott Retention Application) and maintained its 2023 hourly rates for the Debtors during January – June 2024.

[2]  McDermott voluntarily wrote off $108,254.50 in incurred fees during the Case Period including, among other things, fees incurred by timekeepers who billed under one hour during the Case Period.

| Name of Professional Person | Date of Bar Admission | Position with the Applicant and Practice Area | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation[2] |
|---|---|---|---|---|---|
| Jay E. Greathouse | 2012 | Partner; Healthcare | $1,300 | 138.2 | $179,660.00 |
| Riley Orloff | 2015 | Partner; Corporate Advisory | $1,300 | 13.8 | $17,940.00 |
| DC Wolf | 2014 | Associate; Trial | $1,250 | 88.6 | $110,750.00 |
| Jack G. Haake | 2011 | Associate; Corporate Advisory | $1,190 | 130.8 | $155,855.00 |
| Emily C. Keil | 2018 | Associate; Corporate Advisory | $1,105 | 708.7 | $783,113.50 |
| Benjamin S. Paulsen | 2018 | Associate; Private Client | $1,060 | 145.5 | $154,230.00 |
| Dexter Golinghorst | 2021 | Associate; Healthcare | $945 | 239.5 | $226,327.50 |
| Jane J. Kim | 2021 | Associate; Trial | $945 | 59.6 | $56,322.00 |
| Teal N. Trujillo | 2021 | Associate; Employee Benefits and Executive Compensation | $945 | 3.6 | $3,402.00 |
| Landon Foody | 2023 | Associate; Corporate Advisory | $835 | 30.1 | $32,552.50 |
| Rebecca Trickey | 2022 | Associate; Corporate Advisory | $725 | 23.2 | $6,090.00 |
| Dante Pavan | 2022 | Associate; Corporate Advisory | $725 | 7.8 | $5,655.00 |
| Eunice Chu | 2022 | Associate; Corporate Advisory | $725 | 3.3 | $2,392.50 |
| Benjamin Glass | 2022 | Associate; Healthcare | $725 | 3.6 | $3,006.00 |
| Carson Clear | 2023 | Associate; Corporate Advisory | $725 | 9.5 | $6,887.50 |
| Haley M. Dow | 2023 | Associate; Employee | $725 | 10.5 | $7,612.50 |

| Name of Professional Person | Date of Bar Admission | Position with the Applicant and Practice Area | Hourly Billing Rate[1] | Total Billed Hours | Total Compensation[2] |
|---|---|---|---|---|---|
| | | Benefits and Executive Compensation | | | |
| Daniel Northrop | N/A | Paralegal; Corporate Advisory | $670 | 1.3 | $871.00 |
| Benjamin Casten | N/A | Discovery Consultant | $640 | 3.5 | $2,240.00 |
| Ed Y. Kwon | N/A | Manager of Technology Project Management | $545 | 19.4 | $10,573.00 |
| Raniel L. Dizon | N/A | Technology Project Manager | $545 | 19.0 | $10,355.00 |
| Janet Gorodetsky | N/A | Technology Project Manager | $545 | 4.8 | $2,616.00 |
| Albert Sieber | N/A | Senior Researcher | $345 | 1.3 | $448.50 |
| Jerry Drew | N/A | Litigation Technology Manager | $280 | 2.3 | $644.00 |
| Fitalesh G. Belayneh | N/A | Litigation Technology Data Analyst | $270 | 4.0 | $1,080.00 |
| Apurva Ingolikar | N/A | Litigation Technology Data Analyst | $270 | 25.6 | $6,912.00 |
| Daniel Valentino | N/A | Litigation Technology Data Analyst | $270 | 8.9 | $2,403.00 |
| **TOTALS** | | | | **3,840.9** | **$5,091,287.00** |

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.**
**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**
**COMPENSATION BY PROJECT CATEGORY FOR MONTHLY PERIOD**
**FROM JUNE 1, 2024 TO JUNE 24, 2024**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Disposition | 32.7 | $47,415.00 |
| Court Hearings | 4.0 | $5,671.50 |
| Fee/Employment Applications | 2.1 | $2,596.50 |
| Plan and Disclosure Statement | 102.2 | $146,924.50 |
| Litigation | 1.5 | $2,115.00 |
| **TOTALS** | **142.5** | **$204,722.50** |

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.**
**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**
**COMPENSATION BY PROJECT CATEGORY FOR CASE PERIOD**
**FROM AUGUST 7, 2023 TO JUNE 24, 2024**

| Project Category | Total Hours | Total Fees[1] |
|---|---|---|
| Case Administration | 36.9 | $38,466.00 |
| Asset Analysis & Recovery | 2.8 | $3,748.00 |
| Asset Disposition | 1,259.8 | $1,729,840.50 |
| Relief from Stay/Adequate Protection Proceedings | 1.5 | $1,761.00 |
| Meetings/Communications with Creditors | 16.1 | $21,384.50 |
| Court Hearings | 139.1 | $203,762.00 |
| Fee/Employment Applications | 115.1 | $131,599.50 |
| Fee/Employment Objections | 87.7 | $113,443.00 |
| Assumption/Rejection of Leases | 30.4 | $33,909.00 |
| Other Contested Matters | 387.8 | $510,898.50 |
| Non-Working Travel[2] | 37.0 | $59,663.50 |
| Business Operations | 46.9 | $65,571.00 |
| Employee Benefits/Pensions | 139.5 | $190,991.50 |
| Financing/Cash Collections | 106.5 | $162,068.50 |
| Real Estate | 2.3 | $3,075.00 |
| Tax Matters | 1.6 | $2,263.00 |
| Board of Directors | 35.7 | $57,853.50 |
| Utilities | 0.7 | $773.50 |
| Insurance | 0.8 | $884.00 |
| Claims Administration & Objections | 14.0 | $16,886.50 |
| Plan and Disclosure Statement | 744.5 | $1,011,207.50 |
| General Corporate | 4.8 | $6,960.00 |
| Litigation | 629.4 | $724,277.50 |
| **TOTALS** | **3,840.9** | **$5,091,287.00** |

---

[1]   McDermott voluntarily wrote off $108,254.50 in incurred fees during the Case Period including, among other things, fees incurred by timekeepers who billed under one hour during the Case Period.

[2]   The hours billed to Non-Working Travel were reduced by fifty percent (50%), as reflected in the time detail attached to the Monthly Fee Applications (as defined herein).

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.**
**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**
**EXPENSE SUMMARY FOR MONTHLY PERIOD FROM**
**JUNE 1, 2024 THROUGH JUNE 24, 2024**

| Expense Category[1] | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Travel Expenses | Various | $2,076.98 |
| Business Meals | Various | $45.28 |
| **TOTAL** | | **$2,122.26** |

---

[1]   McDermott voluntarily waived all Westlaw and LexisNexis charges, all computer data storage charges incurred as part of the discovery process during the Monthly Period for a total voluntary write-off of $1,559.32.

**MERCY HOSPITAL IOWA CITY, IOWA, ET AL.**
**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**
**EXPENSE SUMMARY FOR CASE PERIOD FROM**
**AUGUST 7, 2023 THROUGH JUNE 24, 2024**

| Expense Category[1] | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Travel Expenses | Various | $20,470.64 |
| Business Meals | Various | $2,951.37 |
| Transcripts | Everest Court Reporting LLC | $9,712.87 |
| Notary Expenses | BMO Harris Bank | $25.00 |
| Document Services | Various | $105.00 |
| **TOTAL** | | **$33,264.88** |

---

[1]  McDermott voluntarily waived all computer research charges, all computer data storage charges as part of the discovery process, and certain travel expenses incurred during the Case Period for a total voluntary write-off of $72,516.47.

x

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
| Debtors. | Jointly Administered |
| | **Obj. Deadline: 8/22/24 at 4:00 p.m. (CT)** |

## ELEVENTH MONTHLY AND FINAL FEE APPLICATION OF MCDERMOTT WILL & EMERY LLP, COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

McDermott Will & Emery LLP (the "<u>Applicant</u>" or "<u>McDermott</u>"), counsel to Mercy Hospital, Iowa City, Iowa ("<u>Mercy</u>") and certain of its affiliates and subsidiaries as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), hereby applies (the "<u>Application</u>"), pursuant to (i) sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (iii) the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 224] (the "<u>Interim Compensation Order</u>"), and (iv) the *Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 1050] (the "<u>Plan</u>") for final allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred for the period from August 7, 2023 through June 24, 2024 (the "<u>Case Period</u>"). In support of the Application, McDermott respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1.      As this Court is well aware, these Chapter 11 Cases began with significant consternation among the key constituents, with the Bondholder Representatives, the Committee, and the Pension Committee disagreeing on almost every critical issue.  This pattern of dissention and acrimony continued for several weeks following the Petition Date, as stakeholders remained focused on advocating for their own self-interests and frequently took a litigious approach to initially resolving outstanding issues.  Given the foregoing, consensus and resolution seemed next to impossible at many stages of the Chapter 11 Cases.  Nevertheless, the Debtors, with the assistance of their advisors, persevered and were able to both consummate the sale of substantially all of their assets to the University of Iowa and achieve global peace amongst all key constituents in advance of Plan confirmation.  Given how the cases started, these results are nothing short of miraculous.[2]

2.      This outcome would not have been possible without the efforts of McDermott.  As this Court instructed at the first-day hearing, McDermott endeavored to solve issues through out-of-court negotiation wherever possible, notwithstanding unexpected challenges that arose along the way, and played many critical roles in these Chapter 11 Cases, including, among others, auctioneer, litigator, and peacemaker.  Indeed, at every stage of these proceedings, McDermott remained steadfast in its commitment to facilitating the Debtors' chapter 11 goals and chose to

---

[1]   Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings described in this Application.

[2]   *See* Memorandum Opinion and Order Overruling MercyOne's Objection to Debtors' Plan Confirmation, *Mercy Hospital, Iowa City, Iowa*, Case No. 23-00623 (TJC) (Bankr. N.D. Iowa June 7, 2024) [Docket No. 1113], at 16 ("On August 8, 2023, when the Court held its 'First Day Motions' hearing in this case, the animosity between Debtors and the multiple constituent groups was palpable.  The Court urged the parties to work together toward consent, with an eye to the future and a confirmation plan.  The parties have done just that.  The gravity of having a consensual Plan presented to the Court just a short nine months later—with MercyOne's objections being the only remaining outlier—is not lost on this Court.").

face contention head on, engaging in numerous challenging conversations with key stakeholders, drafting multiple correspondence and responsive pleadings to address issues raised with this Court (several of which were never filed due in large part to out-of-court negotiations), and advising the Debtors on a variety of nuanced and complex issues.

3.      Importantly, McDermott was critical in shepherding the Debtors through their sale process from its tenuous beginning in August 2023 to its successful consummation in January 2024.  Among other things, McDermott drafted, negotiated, and sought court approval of the stalking horse asset purchase agreement with the University of Iowa, hosted three separate auctions, responded to due diligence requests from various interested parties, including the University of Iowa, and facilitated the closing of the sale.  Consummation of the Debtors' sale to the University of Iowa prevented Mercy Hospital, a highly-regarded Iowa healthcare institution, from closing its doors or being placed in receivership to the detriment of patients and Iowans generally.  Indeed, Mercy is still operating and serving the citizens of Iowa City as well as the surrounding communities under the University's leadership, a result that the Debtors feared could become a painful reality at the commencement of these Chapter 11 Cases.

4.      McDermott was also critical in reaching global peace amongst key constituents in advance of Plan confirmation and maximizing creditor recoveries under the Plan.  Throughout the Chapter 11 Cases, McDermott facilitated numerous discussions and settlement conferences between the Bondholder Representatives, the Committee, and the Pension Committee regarding Plan settlement terms, claim treatment, and the viability of various potential claims and causes of action.  Without McDermott's efforts as mediator amongst these parties during the Chapter 11 Cases, projected unsecured creditor recoveries under the Plan would be significantly less and,

critically, Mercy's pension plan may not have been preserved to the detriment of all of its beneficiaries.

5.      To achieve the foregoing results, McDermott Professionals devoted significant hours to their representation of the Debtors, and the fees and expenses requested herein reflect this dedication.  As such, McDermott submits that the hours expended and expenses incurred for the services rendered in these Chapter 11 Cases were reasonable and necessary to preserve the value of the estates for all stakeholders and to reach a resolution.  In light of the foregoing, and as more fully set forth below, McDermott respectfully requests that the Court approve this Application and authorize the payment of fees and reimbursement of expenses sought herein on a final basis.

## JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Public Administrative Order* referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

7.      The legal predicates for the relief requested herein are Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016.  McDermott confirms its consent to the entry of a final order by the Court in connection with the Application in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

**I.      The Chapter 11 Cases**

8.      On August 7, 2023 (the "<u>Petition Date</u>"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>").  The Chapter 11 Cases are being jointly administered for procedural purposes only.

9.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

10.      On August 15, 2023, the Office of the United States Trustee for the Northern District of Iowa (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors (the "<u>Committee</u>") in the Chapter 11 Cases [Docket No. 107].  On November 4, 2023, the U.S. Trustee appointed an official committee of pensioners (the "<u>Pension Committee</u>") [Docket No. 458].  No trustee or examiner has been appointed in the Chapter 11 Cases.

11.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "<u>First Day Declaration</u>").

12.      On June 7, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 1114] (the "<u>Confirmation Order</u>"), thereby confirming the Plan.  On June 24, 2024 (the "<u>Effective Date</u>"), the Plan became effective.  *See* Docket No. 1139.

13.      Section IV.D.1 of the Plan provides that all chapter 11 case professionals must file final requests for payment of compensation and reimbursement of expenses no later than 45 days

after the Effective Date (*i.e.*, August 8, 2024).  *See* Plan, IV.D.1.  This Application represents

McDermott's eleventh monthly and final request for payment of compensation and reimbursement

of expenses in the Chapter 11 Cases.

## II.    The Retention of McDermott

14.    On August 23, 2023, the Debtors applied [Docket No. 148] (the "McDermott

Retention Application") to the Court for an order authorizing the Debtors to retain and employ

McDermott as its counsel, effective as of August 7, 2023.  On September 14, 2023, the Court

entered an order [Docket No. 226] authorizing such retention.

## III.    The Interim Compensation Order

15.    On September 14, 2023, the Court entered the Interim Compensation Order, which

sets the procedures for interim compensation and reimbursement of expenses in the Chapter 11

Cases.  Specifically, the Interim Compensation Order provides that a Retained Professional may

file and serve a Monthly Fee Application on or after the 15th day of each month following the

month for which compensation is sought.  Provided that there are no objections to the Monthly

Fee Application filed within 14 days after service of the same, the Debtors are authorized to pay

such Retained Professional eighty percent (80%) of the fees and one-hundred percent (100%) of

the expenses requested in such Monthly Fee Application.  If an objection is filed to the Monthly

Fee Application, the Debtors are authorized to pay such Retained Professional for the amounts that

were not objected to, up to the foregoing cap of eighty percent (80%) of the fees and one-hundred

percent (100%) of the expenses requested in such Monthly Fee Application.

## RELIEF REQUESTED

16.    By this Application, McDermott seeks approval and allowance of compensation in

the amount of $204,722.50 for professional services rendered, and reimbursement of actual and

necessary expenses in the amount of $2,122.26 incurred, during the period from June 1, 2024

through June 24, 2024 (the "Monthly Period"). McDermott also seeks final approval and

allowance of compensation in the amount of $5,091,287.00 for professional services rendered, and

reimbursement of actual and necessary expenses in the amount of $33,264.88 incurred, during the

Case Period, including any and all holdbacks.

17.     Pursuant to the Interim Compensation Order, and as detailed in the chart below,

McDermott filed ten monthly fee applications that have not been heard by the Court for final

approval. *See* Docket Nos. 348, 502, 532, 574, 817, 819, 948, 1021, 1105, 1161 (collectively, the

"Monthly Fee Applications"). The U.S. Trustee filed timely objections[3] to certain of the Debtors'

Monthly Fee Applications. *See* Docket Nos. 467, 529, 564, 608, 857, 858, 982, 1132, 1179. A

summary of the Monthly Fee Applications and the U.S. Trustee's objections are reflected below:

| MONTHLY FEE APPLICATION | | | REQUESTED FEES AND EXPENSES | | UST OBJ | APPROVED FEES AND EXPENSES | | HOLDBACK |
|---|---|---|---|---|---|---|---|---|
| Application Docket No. Date Filed | Date Filed | Period Covered | Requested Fees | Requested Expenses | Amount Objected to | Approved Fees | Approved Expenses | Fee Holdback |
| **First Monthly** [D.I. 348] | 10/9/23 | 8/7/23 – 8/31/23 | $922,897.50 | $4,741.38 | 30% | $646,028.25 | $4,741.38 | $276,869.25 |
| **Second Monthly** [D.I. 502] | 11/10/23 | 9/1/23 – 9/30/23 | $811,378.50 | $3,346.20 | 20% | $649,102.80 | $3,346.20 | $162,275.70 |
| **Third Monthly** [D.I. 532] | 11/27/23 | 10/1/23 – 10/31/23 | $563,710.00 | $5,638.37 | 20% | $450,968.00 | $5,638.37 | $112,742.00 |
| **Fourth Monthly** [D.I. 574] | 12/15/23 | 11/1/23 – 11/31/23 | $361,574.00 | $4,988.95 | 20% | $289,259.20 | $4,988.95 | $72,314.80 |
| **Fifth Monthly** [D.I. 817] | 3/8/24 | 12/1/23 – 12/31/23 | $266,085.50 | $1,682.39 | 20% | $212,868.40 | $1,682.39 | $53,217.10 |
| **Sixth Monthly** [D.I. 819] | 3/8/24 | 1/1/24 – 1/31/24 | $690,492.00 | $2,999.00 | 15% | $552,393.60 | $2,999.00 | $138,098.40 |
| **Seventh Monthly** [D.I. 948] | 4/10/24 | 2/1/24 – 2/29/24 | $328,496.50 | $1,452.41 | 15% | $262,797.20 | $1,452.41 | $65,699.30 |
| **Eighth Monthly** [D.I. 1021] | 5/6/24 | 3/1/24 – 3/31/24 | $476,173.50 | $3,703.82 | N/A | $380,938.80 | $3,703.82 | $95,234.70 |

---

[3]     The U.S. Trustee filed an objection [Docket No. 1134] to the Debtors' eighth Monthly Fee Application on June 20, 2024, 31 days after the objection deadline of May 20, 2024, meaning that it is untimely and should not be considered.

| MONTHLY FEE APPLICATION | | | REQUESTED FEES AND EXPENSES | | UST OBJ | APPROVED FEES AND EXPENSES | | HOLDBACK |
|---|---|---|---|---|---|---|---|---|
| Application Docket No. Date Filed | Date Filed | Period Covered | Requested Fees | Requested Expenses | Amount Objected to | Approved Fees | Approved Expenses | Fee Holdback |
| Ninth Monthly [D.I. 1105] | 6/6/24 | 4/1/24 – 4/30/24 | $226,327.00 | $1,663.77 | 20% | $181,061.60 | $1,663.77 | $45,265.40 |
| Tenth Monthly [D.I. 1161] | 7/9/24 | 5/1/24 – 5/31/24 | $239,430.00 | $926.33 | 20% | $191,544.00 | $926.33 | $47,886.00 |
| Total | | | $4,886,564.50 | $31,142.62 | N/A | $3,816,961.85 | $31,142.62 | $1,069,602.65 |

18.     In support of this request for the final allowance of all fees and expenses incurred by McDermott during the Case Period, McDermott incorporates herein by reference each of its Monthly Fee Applications.

## STATEMENT FROM MCDERMOTT

19.     McDermott has made reasonable efforts to comply with the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective as of November 1, 2013 (the "U.S. Trustee Guidelines").   With respect to section C.5 of the U.S. Trustee Guidelines, McDermott respectfully states as follows with respect to the Case Period:

| Question | Yes or No | Additional Explanation |
|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining this engagement that were provided during the application period?  If so, please explain. | Yes | McDermott did not increase its billing rates as of January 1, 2024 and applied 2023 rates for the entire Case Period. |
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | N/A | McDermott's fees in these Chapter 11 Cases were less than the aggregate amount budgeted for McDermott under the Debtors' cash collateral budget, which was consented to by the Bondholder Representatives and the Committee. |
| Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? | No | N/A |

| Question | Yes or No | Additional Explanation |
|---|---|---|
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? | Yes | On average, McDermott spent less than three hours reviewing and revising each of its eleven monthly invoices for privilege issues and compliance with local rules, totaling approximately $33,481.50 (less than 0.007% of the total fees sought in this Application). |
| Does the fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees. | Yes | |
| If the fee application includes any rate increases since retention in these Cases:<br><br>i. Did your client review and approve those rate increases in advance?<br><br>ii. Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? | No | McDermott did not increase its billing rates as of January 1, 2024 and applied 2023 rates for the entire Case Period. |

## DESCRIPTION OF SERVICES REFERENCED

20.      During the Case Period, McDermott professionals, including attorneys, discovery professionals, and paraprofessionals (collectively, the "McDermott Professionals"), devoted 3,840.9 hours to, among other things, case administration matters, stay relief matters, meetings and communications with creditors, preparation for and attendance at court hearings, preparation of professional fee and retention applications, avoidance action analysis, contract and lease assumption and rejection, analysis of and response to contested matters, business operations matters, employee matters, financing and cash collateral matters, tax matters, utility matters, vendor matters, insurance matters, claims administration and analysis, and plan and disclosure

statement matters.  McDermott Professionals' work in the majority of the foregoing matter
categories is summarized below and is described in detail in the time detail attached hereto as
**Exhibit A** (for the Monthly Period) and in the exhibits to the Monthly Fee Applications.

### A.    Case Administration
Amount Sought: $38,466.00

21.    During the Case Period, McDermott Professionals devoted time to case
correspondence and monitoring case deadlines; filing case pleadings and coordinating service of
such pleadings; reviewing and filing the Debtors' schedules, statements of financial affairs, and
monthly operating reports; and performing various other case management tasks.

22.    McDermott Professionals devoted a total of 36.9 hours to case administration
matters during the Case Period, for which compensation in the amount of $38,466.00 is sought.

### B.    Asset Disposition
Amount Sought: $1,729,840.50

23.    During the Case Period, McDermott Professionals devoted time to numerous
aspects of the Debtors' sale process including, but not limited to: (a) drafting, negotiating, and
finalizing the Debtors' asset purchase agreement; (b) drafting and negotiating the governing bid
procedures for the Debtors' sale process and preparing a motion with respect to the same;
(c) hosting three auctions to determine the highest and best bidder for the Debtors' assets;
(d) negotiating various issues with key stakeholders in advance of a potentially contested sale
hearing (which was ultimately uncontested due to these negotiation efforts by McDermott prior to
the hearing); (e) coordinating in good faith with the University of Iowa in its due diligence efforts
post-sale hearing and pre-closing to ensure a successful transfer of assets; (f) negotiating aspects
of the Debtors' proposed sale of certain of their joint venture interests; and (g) facilitating all

necessary documentation for closing of the Debtors' sale to the University, including all supporting schedules to the asset purchase agreement.

24.     McDermott Professionals devoted a total of 1,259.8 hours to asset disposition matters during the Case Period, for which compensation in the amount of $1,729,840.50 is sought.

### C.     Meetings and Communications with Creditors
### Amount Sought: $21,384.50

25.     During the Case Period, McDermott Professionals corresponded with and responded to inquiries from current and former residents, employees, and other creditors regarding various aspects of the Chapter 11 Cases.  McDermott Professionals also coordinated with the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC ("Epiq"), to ensure that every incoming inquiry received a response.

26.     McDermott Professionals devoted a total of 16.1 hours to meetings and communications with creditors during the Case Period, for which compensation in the amount of $21,384.50 is sought.

### D.     Court Hearings
### Amount Sought: $203,762.00

27.     During the Case Period, McDermott Professionals prepared for and attended numerous hearings, including a contested financing hearing and a contested confirmation hearing, as well as several other hearings that, while eventually uncontested, required significant preparation.  Among other things, McDermott Professionals (a) reviewed and analyzed pleadings and other materials in preparation for such hearings; (b) prepared witnesses for their potential testimony and cross examination; and (c) communicated with various parties-in-interest in preparation for such hearings.

28.     McDermott Professionals devoted a total of 139.1 hours to hearing-related matters during the Case Period, for which compensation in the amount of $203,762.00 is sought.

**E.      Fee/Employment Applications**
**Amount Sought: $131,599.50**

29.     During the Case Period, McDermott Professionals prepared various employment, retention, and fee applications for certain of the Debtors' professionals, including McDermott, ToneyKorf Partners, LLC, H2C Securities, Inc., and Epiq.  Each of these retention applications were objected to, and so recognizing that the Debtors required skilled professionals to navigate these complex Chapter 11 Cases, the McDermott Professionals engaged with the objecting parties, prepared responses, and ultimately resolved the issues.  McDermott Professionals also sought approval of procedures for retention of "ordinary course professionals," and worked closely with such professionals to submit the necessary declarations in compliance with the Court's order approving their retention.

30.     McDermott Professionals devoted a total of 115.1 hours to fee and employment application matters during the Case Period, for which compensation in the amount of $131,599.50 is sought.

**F.      Fee/Employment Objections**
**Amount Sought: $113,443.00**

31.     During the Case Period, McDermott Professionals prepared responses to objections to multiple retention applications filed by the Bondholder Representatives, the Committee, and the U.S. Trustee, and negotiated with the U.S. Trustee as well as the Bondholder Representatives, the Committee, and the Pension Committee, regarding the same.  Recognizing that the Debtors required skilled professionals to navigate these complex Chapter 11 Cases, the McDermott Professionals engaged with the objecting parties, prepared responses, and ultimately resolved the

issues.  McDermott Professionals also reviewed objections filed by the U.S. Trustee to their Monthly Fee Applications and engaged in negotiations with the U.S. Trustee regarding certain of the same.

32.     McDermott Professionals devoted a total of 87.7 hours to fee and employment objection matters during the Case Period, for which compensation in the amount of $113,443.00 is sought.

**G.     Assumption/Rejection of Leases
        Amount Sought: $33,909.00**

33.     During the Case Period, McDermott Professionals spent time examining issues related to the Debtors' executory contracts and unexpired leases and negotiating perspective cure amounts with various contract counterparties.

34.     McDermott Professionals devoted a total of 30.4 hours to leases matters during the Case Period, for which compensation in the amount of $33,909.00 is sought.

**H.     Other Contested Matters
        Amount Sought: $510,898.50**

35.     During the Case Period, McDermott Professionals spent significant time analyzing and addressing various contested matters in the Chapter 11 Cases.  Among other things, McDermott Professionals (a) researched and drafted a fulsome response to the Bondholders' motion to appoint an examiner (which was not filed because the parties were able to negotiate an out-of-court resolution); (b) negotiated a comprehensive settlement with Mercy Hospital Foundation and drafted a motion seeking approval of the same; (c) prepare summary of potential claims and causes of action; (d) responded to discovery requests submitted by various constituents; and (e) negotiated a settlement with Altera and drafted a motion seeking approval of the same.

36.     McDermott Professionals devoted a total of 387.8 hours to other contested matters during the Case Period, for which compensation in the amount of $510,898.50 is sought.

**I.      Non-Working Travel**
          **Amount Sought: $59,663.50**

37.     During the Case Period, McDermott Professionals traveled to and from Iowa City, Iowa for various hearings, client site visits, and in-person mediation sessions with the Bondholder Representatives, the Committee, and the Pension Committee.  McDermott Professionals also traveled to Chicago for the Debtors' in-person auction in October 2023.  The amount billed to this category was billed at 50%.

38.     McDermott Professionals devoted a total of 37.0 hours to non-working travel during the Case Period, for which compensation in the amount of $59,663.50 is sought.

**J.      Business Operations**
          **Amount Sought: $65,571.00**

39.     During the Case Period, McDermott Professionals provided services related to the day-to-day operations of the Debtors' business, including engaging with vendors and suppliers to ensure continuity of services following the filing of these Chapter 11 Cases, and communicated with and responded to diligence requests by the U.S. Trustee, the patient care ombudsman, and other parties-in-interest regarding various aspects of the Debtors' operations.

40.     McDermott Professionals devoted a total of 46.9 hours to business operations during the Case Period, for which compensation in the amount of $65,571.00 is sought.

**K.      Employee Benefits/Pensions**
          **Amount Sought: $190,991.50**

41.     During the Case Period, McDermott Professionals reviewed and analyzed various employee-related issues, including, but not limited to, (a) reviewing and analyzing various pension

documents, (b) corresponding with the Debtors on a daily basis regarding their ongoing employee benefit and pension obligations, and (c) analyzing treatment of pension claims in a chapter 11 plan.

42.     McDermott Professionals devoted a total of 139.5 hours to employee matters during the Case Period, for which compensation in the amount of $190,991.50 is sought.

**L.      Financing/Cash Collections**
**Amount Sought: $162,068.50**

43.     During the Case Period, McDermott Professionals negotiated, drafted, and revised various pleadings, agreements, and amendments related to the Debtors' use of cash collateral and responded to multiple objections and addressed numerous contested issues with respect to the same with the Bondholder Representatives and the Committee.

44.     McDermott Professionals devoted a total of 106.5 hours to financing and cash collateral matters during the Case Period, for which compensation in the amount of $162,068.50 is sought.

**M.      Claims Administration and Objections**
**Amount Sought: $16,886.50**

45.     During the Case Period, McDermott Professionals prepared a bar date motion and related exhibits, including the applicable proof of claim form, and an administrative bar date motion and related exhibits, including the applicable proof of claim form.   McDermott Professionals also spent time reviewing and analyzing certain proofs of claim, as well as negotiating various requests for payment of section 503(b)(9) claims and administrative expense claims and preparing stipulations and motions for approval of payment of the same.

46.     McDermott Professionals devoted a total of 14.0 hours to claims administration and objection matters during the Case Period, for which compensation in the amount of $16,886.50 is sought.

### N.    Plan and Disclosure Statement
Amount Sought: $1,011,207.50

47.    During the Case Period, McDermott Professionals provided substantial services related to prosecution and confirmation of the Debtors' Plan and approval of the Debtors' disclosure statement.  Among other things, McDermott Professionals:

(a)    researched and analyzed Plan issues, including third-party releases, debtor releases, and exculpation;

(b)    negotiated, drafted, revised, and filed multiple versions of the Plan and disclosure statement and related pleadings and documents, including solicitation materials;

(c)    negotiated, drafted, revised, and filed a confirmation order for the Plan, the accompanying memorandum of law and reply to objections to confirmation of the Plan, and other documents related thereto;

(d)    prepared for and prosecuted a lengthy contested confirmation  hearing;

(e)    negotiated with the U.S. Trustee and other parties-in-interest regarding their comments to the Plan and disclosure statement; and

(f)    obtained approval of the disclosure statement and confirmation of the Plan.

48.    McDermott Professionals devoted a total of 744.5 hours to Plan and disclosure statement matters during the Case Period, for which compensation in the amount of $1,011,207.50 is sought.

### O.    Litigation
Amount Sought: $724,277.50

49.    During the Case Period, McDermott Professionals provided substantial services related to various litigation workstreams, including, among others, (a) reviewing, negotiating, and responding to discovery requests; (b) preparing for and attending depositions; and (c) researching and drafting various pleadings in response to filings in the Chapter 11 Cases.

50.    McDermott Professionals devoted a total of 629.4 hours to litigation matters during the Case Period, for which compensation in the amount of $724,277.50 is sought.

### DESCRIPTION OF ACTUAL, REASONABLE, AND
### NECESSARY EXPENSES INCURRED

51.     During the Case Period, McDermott incurred actual, reasonable, and necessary expenses in connection with its engagement by the Debtors in the aggregate amount of $33,264.88,[4] for which McDermott seeks reimbursement.  The summary sheets prefixed to this Application specify the categories of expenses and respective totals of expenses that McDermott incurred in connection with these Chapter 11 Cases.  Additionally, detailed descriptions of the actual and necessary expenses incurred by McDermott in the performance of services rendered during the Case Period (except for the Monthly Period) are attached as exhibits to the Monthly Fee Applications.  Detailed descriptions of the actual and necessary expenses incurred by McDermott in the performance of services rendered during the Monthly Period are attached hereto as **Exhibit B**.

52.     As illustrated in both the summary cover sheets, the Monthly Fee Applications, and **Exhibit B**, the expenses are broken down into various categories of charges, including travel expenses, business meals, transcripts, and other various fees.  Computer hosting and data storage fees for McDermott's licensed use of Relativity's document storage software, including processing, hosting, storage, and document conversion fees, as well as research costs incurred through the use of Westlaw, LexisNexis, and other online search engines, were voluntarily written off by the Applicant.  Due to the particularly litigious nature of these Chapter 11 Cases, it was necessary and reasonable for the Debtors to obtain copies of transcripts of the multiple depositions and hearings to ensure adequate preparation for subsequent proceedings.

### MCDERMOTT'S REQUESTED COMPENSATION
### AND REIMBURSEMENT SHOULD BE ALLOWED

---

[4]   This amount reflects the voluntary reduction of expenses in the amount of $72,516.47 in, among other things, computer research charges, computer storage costs incurred in connection with discovery processes, and travel expenses.

53.     Bankruptcy Code section 330(a) provides, in pertinent part, that:

> [T]he court may award . . . ***reasonable compensation*** for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a) (emphasis added).  The Eighth Circuit Court of Appeals has stated:

> "[Reasonable] [c]ompensation . . . presumably reflects (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained."

*P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728, 731–32 (8th Cir. 1992).

54.     In reviewing this Application, the Court should be guided by the Eighth Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

> Section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts."

*Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is so to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.").

55.     In accordance with the factors enumerated in Bankruptcy Code section 330, McDermott submits that the amount requested is fair and reasonable given (a) the complexity of the Chapter 11 Cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  McDermott respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  McDermott further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefitted not only the Debtors, but also the Debtors' estates, their constituents, and most importantly, the Debtors' patients.  McDermott further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

56.     The fees charged by McDermott in these Chapter 11 Cases were billed in accordance with its existing billing rates and procedures set forth in the McDermott Retention Application, in effect during the Case Period.  McDermott's rates for the services rendered by its attorneys and paraprofessionals in these Chapter 11 Cases are the same rates that McDermott charges for services rendered in comparable non-bankruptcy matters.  McDermott's hourly rates vary with the experience and seniority of the individuals assigned and are set at a level designed to compensate McDermott fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market, are subject to periodic adjustments to reflect economic and

other conditions,[5] and are consistent with rates charged elsewhere.  Moreover, these rates and the

McDermott rate structure reflect that such matters typically involve great complexity, high stakes,

and severe time pressures—all of which were present in these Chapter 11 Cases.

57.    In sum, McDermott respectfully submits that the professional services provided by

McDermott and expenses incurred on behalf of the Debtors and their estates during these Chapter

11 Cases were necessary for and beneficial to the Debtors' estates, given the complexity of these

Chapter 11 Cases, the time expended by McDermott, the nature and extent of McDermott's

services provided, the value of McDermott's services, and the cost of comparable services outside

of bankruptcy, all of which are relevant factors set forth in Bankruptcy Code section 330.

Accordingly, McDermott respectfully submits that approval of the compensation sought herein is

warranted and should be approved.

58.    McDermott reserves the right to correct, amend, or supplement this Application,

including, without limitation, to seek payment in the event this Application is not approved in full.

## NOTICE

59.    The Debtors will serve notice of this Application on the Liquidation Trustee, the

U.S. Trustee, and all other parties entitled to notice under the Plan or pursuant to Local Rule

2002-1(b).

## NO PRIOR REQUEST

60.    No prior request for the relief sought in the Application has been made to this or

any other court.

*[Remainder of Page Intentionally Left Blank]*

---

[5]    Importantly, McDermott did not increase its rates as of January 1, 2024 with respect to these Chapter 11 Cases
(despite its ability to do so under the McDermott Retention Application) and maintained its 2023 hourly rates for
the Debtors during January – June 2024.

## CONCLUSION

WHEREFORE, McDermott respectfully requests that the Court enter an Order: (i) granting the Application and authorizing (a) allowance of compensation in the amount of $5,091,287.00 for professional services rendered, and (b) reimbursement for actual and necessary costs in the amount of $33,264.88; (ii) directing payment by the Debtors of the foregoing amounts; and (iii) granting such other further relief as the Court deems just and proper.

Dated: Cedar Rapids, Iowa
August 8, 2024

**MCDERMOTT WILL & EMERY LLP**

*/s/ Daniel M. Simon*
Felicia Gerber Perlman (admitted *pro hac vice*)
Daniel M. Simon (admitted *pro hac vice*)
Emily C. Keil (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone:   (312) 372-2000
Facsimile:   (312) 984-7700
Email:       fperlman@mwe.com
             dsimon@mwe.com
             ekeil@mwe.com

- and -

**NYEMASTER GOODE, P.C.**
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:   (319) 286-7002
Facsimile:   (319) 286-7050
Email:       rleaf@nyemaster.com

- and -

Kristina M. Stanger, AT0000255
Matthew A. McGuire, AT0011932
Dana Hempy, AT0014934
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone:  515-645-5510
Facsimile:  515-283-8045
Email:       mmcguire@nyemaster.com

kmstanger@nyemaster.com
dhempy@nyemaster.com

*Counsel for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this August 8, 2024, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of the Chapter 11 Cases.

*/s/ Daniel M. Simon*