**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, | ) | |
| IOWA CITY, IOWA, *et al.,* | ) | Case No.  23-00623C |
| | ) | |
| Debtors. | ) | Jointly Administered |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE DEBTORS' FINAL FEE APPLICATION OF MCDERMOTT WILL & EMERY, LLP**

**JURISDICTION, VENUE, AND STATUTORY PREDICATE**

1. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief sought herein is 11 U.S.C. §§330 and 331, as well as Fed. R. Bankr. P. 2016. The United States Trustee has standing to raise, appear and be heard on this Objection pursuant to 11 U.S.C. §307; 28 U.S.C. § 581 *et seq*.

**PROCEDURAL BACKGROUND**

2. On August 7, 2023, Mercy Iowa City ACO, LLC, Mercy Hospital, Iowa City, Iowa, and Mercy Services Iowa City, Inc., (hereinafter "Mercy" or "Debtors") filed three individual chapter 11 bankruptcy petitions that are being Jointly Administered under case number 23-00623.

3. McDermott Will & Emery, LLP ("McDermott") filed its Application to Employ on August 23, 2023. On September 14, 2023, the Court entered an Order allowing retention of McDermott effective as of the petition date, August 7, 2023.

4. On September 14, 2023, the Interim Compensation Order was entered by the Court.  Doc. 224. It provided that a Retained Professional may file and serve Monthly Fee Applications and required a 20% holdback of all fees awarded.  The UST has maintained her position that when an

1

objection is filed to a fee application, no fees should be paid until there is an order allowing payment. No order allowing payment of any amount has been entered in favor of McDermott to date.

5. McDermott reported that it was paid pre-petition $3,141,170.00 by the Debtors from February 28, 2023, through August 4, 2023. *See* Doc. 189 page 14. In addition, McDermott also received a prepetition retainer of $761,951.00. The Confirmed Plan also provides a release to McDermott for any causes of action the Liquidating Trustee may have asserted against McDermott.

6. McDermott previously filed ten regular monthly fee applications: the *First Monthly Fee Application of McDermott Will & Emery, LLP, Counsel to the Debtors and Debtors-In-Possession, For Allowance of Compensation and Reimbursement of Expense* on October 9, 2023 (doc. 348); the *Second Application for Compensation* on November 10, 2023 (doc. 502); the *Third Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on November 27, 2023 (doc. 532); the *Fourth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on December 15, 2023 (doc. 574); the *Fifth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on March 8, 2024 (doc. 817); the *Sixth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on March 8, 2024 (doc. 819); the *Seventh Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on April

10, 2024 (doc. 948); the *Eighth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on May 6, 2024 (doc. 1021); the *Ninth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on June 6, 2024 (doc. 1105); and the *Tenth Monthly Fee Application of McDermott Will & Emery LLP, Counsel to the Debtors and Debtors-In-Possession, for Allowance of Compensation and Reimbursement of Expenses* on July 9, 2024 (doc. 1105) (collectively "prior Applications"). The current application requests final fees through the Plan Effective Date, June 24, 2024. The UST filed objections to each of the prior Applications and as such payment of any of McDermott's fees has not been approved. None of the UST's objections have been heard by the Court or otherwise resolved, and there are no orders entered by the Court allowing payment of any fees beyond the Interim Compensation Order at docket 224.

7. The UST hereby incorporates all prior factual development and argument made in the prior objections at docket numbers 467, 529, 564, 608, 857, 858, 982, 1132, 1134, and 1179.

8. The unreviewed fees in the "Exhibit A Time Detail" in the Final Monthly Application were incurred between June 1, 2024 and June 24, 2024. Payment for fees and expense is sought pursuant to 11 U.S.C. §§ 330 and 331.

## ARGUMENT

9. The UST filed Objections to all of McDermott's Prior Fee Applications, but the issues raised have not yet been decided. The UST incorporates those prior arguments as if fully stated herein.

10. This Court has the authority to award less than the requested amount if it determines, through the lodestar method of calculation, that the services rendered were not reasonable and necessary to the administration of the estate and represents the applicant's best billing judgment.

11. Describing itself as having extensive bankruptcy and restructuring experience, as well as experience in virtually all other aspects of law that may arise in these cases, McDermott seeks payment of fees multiple times greater than any other party in this case. Yet "every dollar expended on legal fees results in a dollar less that is available for distribution to creditors or use by debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987) (internal citations omitted).

12. The cost of McDermott's work throughout this case must be analyzed for *reasonableness* at this juncture. The UST has consistently communicated her concerns with the McDermott fee applications throughout the life of the case. Each of the Fee Applications show patterns of practice which are not reasonable. These patterns can be reduced to a lack of billing judgment, which has resulted in an unreasonable request for final fees. The McDermott final fee application seeks over $5 million to be paid to one of the Debtors' employed law firms. The balance of professional fees to be paid in this case will also be in the millions of dollars expended.

13. Common throughout the applications is a number of attorneys all billing to complete the same tasks, including a number of partner-attorneys all billing for the same items and to review every document in the case. Presumably, this vast number of attorneys all working on the same file has implicated the law of diminishing returns. The lack of use of paralegal staff comes to the detriment of creditors and pensioners, as McDermott associate attorneys have taken up tasks which would be more appropriately delegated to a paralegal. "In reviewing and awarding fee applications, the court must make a cost/benefit analysis" *In re Bailey Ridge Partners, LLC*,

Case 23-00623 Doc 1244 Filed 09/05/24 Entered 09/05/24 19:12:09 Desc Main
Document Page 5 of 9

2018 Bankr. LEXIS 1961 (Bankr. N.D. Iowa June 28, 2018); *citing In re Cumberland Farms, Inc.*, 154 B.R. 9, 10 (Bankr. D. Mass 1993).

14. As stated in the prior objections, McDermott bills at hourly rates substantially higher than any other professional in the case, and the rates far exceed those customary in the Northern District of Iowa. As hourly rates should be set to be commensurate with the experience and expertise, the high hourly rates charged by McDermott invite close scrutiny.

15. This Court has previously struck down the hourly rates of out-of-state counsel when it found the proposed hourly rates were unreasonable. *VeroBlue Farms USA, Inc. v. Cassels Brock & Blackwell LLP (In re VeroBlue Farms USA, Inc.)*, 2023 Bankr. LEXIS 1071 (Bankr. N.D. Iowa April 19, 2023). In *VeroBlue*, although looking at an award of fees requested as a sanction, this Court stressed that it was analyzing the *reasonableness* of requests; a common requirement whenever an attorney is seeking fees, regardless of the Code Section fees are sought under. *Id.* at 9. This Court in *VeroBlue* noted that the "Chicago firm" counsel's rates were "quite a bit above rates charged by . . . local counsel. . .". *Id*. at 14. Counsel from Chicago in *VeroBlue* sought a top-rate of $660 per hour where local counsel sought $400 per hour; the Court used its discretion to cut the Chicago counsel's rate to a flat rate of $450 per hour.

16. The Court could again utilize a rate-cut to bring the McDermott fees more in line with local counsel. The highest rate charged by McDermott's co-counsel from the local Nyemaster Goode P.C. firm charged $560 per hour. However, the attorneys who billed the most hours billed at $345 per hour and $450 per hour. In contrast, the highest rate charged by McDermott was $1,975 per hour. The attorneys who billed the most hours in the case billed at $1,850 and $1,450. Only the scarcely-used non-attorney support staff billed at rates lower than those of local

5

counsel. Of the 10 non-attorney support staff who worked on this case, only 5 bill at hourly rates lower than local counsel from the Nyemaster Goode P.C. firm.

17. "This Court has applied the following general standards in reviewing fees: (1) "Attorneys generally will not be compensated for preparing, submitting or defending their fee applications"; (2) "[S]ecretarial work performed by lawyers" is not compensable; (3) "Time charged for travel should be billed at one-half the standard hourly rate"; and (4) "Fees are not allowed for simply reviewing the work product of another or for duplicative billing by attorneys involved in intra-office conferences." *In re Agriprocessors, Inc.*, 2009 Bankr. LEXIS 3916, 2009 WL 4823808, at *2 (Bankr N.D. Iowa Dec. 8, 2009).

18. In this case, McDermott billed for 115.1 hours devoted only to fee and employment applications, requesting payment of $131,599.50. McDermott also billed 87.7 hours for time devoted to dealing with fee and employment objections, requesting $113,443.00. However, the UST has been the only party consistently objecting to each and every one of McDermott's fee applications, and no response has ever been filed.

19. Throughout the life of the case, 38 McDermott professionals worked on this case. McDermott expended 3,840.9 hours on this matter. The following is a breakdown of the level of expertise employed across the McDermott team:

|  | Total Professionals | Hours | Compensation ($) | Compensation (%) |
| --- | --- | --- | --- | --- |
| Non-Attorney Staff | 10 | 90.1 | $38,142.50 | 0.75% |
| Associate Attorneys | 14 | 1,464.3 | $1,554,196.00 | 30.52% |
| Partner Attorneys | 14 | 2,286.5 | $3,498,948.50 | 68.72% |

20. The UST continues to note a lack of billing judgment evident throughout the applications. A good exercise of billing judgment should result in the Application being reduced to pay only

6

for those attorneys who were actually necessary at each meeting or conference and whose individual expertise actually benefitted the estate. Good billing judgment also results in effective use of paralegals and other support staff. Notably, while 10 non-attorney support staff individuals worked on this case, *only 1 paralegal* was employed, who expended *only 1.3 hours* throughout the case. Rather than utilizing paralegal services in any capacity, the time details reveal associate attorneys were fulfilling most paralegal roles. The UST submits failing to properly use support staff is unreasonable. "Reasonableness standards are intended to check claims for unrestrained billing based on such 'hyperactive legal efforts.'" *Matter of Fansteel, Inc.*, No. 16-01823, 2017 Bankr. LEXIS 1265, 2017 WL 1929489, at *3 (Bankr. S.D. Iowa May 9, 2017) (citations omitted).

21. Further, at the first-day hearings in this case the Court cautioned attorneys from having multiple people appearing on matters before the Court. Yet the UST observed McDermott consistently had multiple attorneys appearing in court, and more listening in on the phone line. McDermotts' time details reveal 139.1 hours devoted to court hearings, requesting $203,762.00. Where attorneys appear in Court with pre-written statements and largely consensual proceedings not necessitating complex legal arguments, a partner's time would be better spent elsewhere. Further, much of the time devoted to court hearings also reflects that each individual attending the hearing, regardless of their role at that hearing, spends valuable time preparing for said hearing, in addition to continuing to review and stay up-to-date with all the pleadings and events of the case.

22. Common throughout the McDermott time details is significant overstaffing, resulting in McDermott charging effectively over $3,000/hour in some instances to "review" and stay up-to-date on the daily activities of the case. This duplication of efforts is particularly evident where

multiple partner-level attorneys are attending nearly every meeting or settlement negotiation. While the UST understands the entire team of attorneys need to be kept apprised generally of the status of the case, partner attorneys making well over $1,000 per hour should be able to complete meetings and tasks without excessive consultation or over-representation.

23. The UST reiterates its prior arguments that while these efforts may aid the firm in the practice of law, the applicant bears the burden of showing the necessity of each individual billing for the same tasks. *See In re Agriprocessors, Inc.*, 2009 Bankr. LEXIS 3916 at *8; *see also In re VeroBlue Farms USA, Inc.* 2023 Bankr. LEXIS 1071, at *16-17.

24. Overall, the excessive staffing and billing of the case results in diminished benefit to the bankruptcy estate. Compensation should only be awarded to actions which are shown to actually benefit the bankruptcy estate. As the court has already noted in this case, just because an action may be taken doesn't mean it should be.

## **CONCLUSION**

25. The applicant bears the burden of proving both the reasonableness and necessity of fees requested in the fee application. If a professional fails to meet this burden of proof under 11 U.S.C. §330(a), the bankruptcy court may award less than the amount of compensation that is requested.

26. The McDermott Final Fee Application final payment of $5,091,287.00 in fees and $33,264.88 in expenses incurred throughout the case from August 7, 2023 through June 24, 2024. The UST submits that the Fee Application is excessive for the reasons stated in this objection.

27. The UST reserves all rights to amend and supplement or modify each portion of this objection.

WHEREFORE, the Acting United States Trustee requests that the Court reduce the Final Fee Application by 25% and for any other relief the Court deems necessary.

Dated: September 5, 2024

**Mary R. Jensen**
Acting United States Trustee
Region 12

By:/s/ Janet G. Reasoner
**Janet G. Reasoner**
111 7th Ave SE, Box 17
Cedar Rapids, Iowa 52404
Ph: (319) 364-2211
Janet.G.Reasoner@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing dated September 5, 2024.

By:/s/ Claire Davison
**Claire Davison**
Trial Attorney
United States Trustee's Office