# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| In re:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors. | No. 24-CV-99-CJW-MAR<br><br>Bankruptcy Case No. 23-00623 (TJC)<br><br>**ORDER** |

_____

## I.    INTRODUCTION

This matter is before the Court on an August 16, 2024 Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") filed by the Honorable Thad J. Collins, Chief Bankruptcy Judge for the Northern District of Iowa. (Doc. 1).[1] Judge Collins recommends that the Court (1) approve the sale of the debtor's beneficial interest in the Thompson Trust free and clear of liens, claims, interests, and encumbrances, (2) modify the terms of the Thompson Trust, and (3) grant related relief. (*Id.*, at 1). No party has filed objections to the Proposed Findings and the deadline to do so has expired. Having carefully reviewed the Proposed Findings, the Court finds they should be accepted in their entirety.

---

[1] References to "Doc." are to docket entries in the District Court case related to this matter, 24-CV-99. References to "Bankr. Doc." are to docket entries in the underlying bankruptcy matter in the United States Bankruptcy Court for the Northern District of Iowa, 23-00623 (TJC).

## II.  BACKGROUND

The findings of fact made by the Bankruptcy Court are set forth in detail in the Proposed Findings.  The Court has reviewed the record and finds that Judge Collins accurately summarized the facts.  Only the salient facts are set forth below.

On August 7, 2023, Mercy Hospital, Iowa City, Iowa ("Mercy") and related entities (collectively the "Debtors") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code.  (Bankr. Doc. 1).  The Debtors implemented a sale process under Bankruptcy Code 363 to sell substantially all their assets to another entity that would continue to provide medical care out of the Debtor's facilities.  (Bankr. Doc. 1043, at 2-3).  The State University of Iowa ("University") purchased substantially all of the Debtors' assets and continues to provide medical care out of the Debtors' facilities. (*Id.*)  As a result of the sale, Mercy no longer has any active medical operations and will eventually be completely dissolved as part of the Chapter 11 liquidation plan.  (*Id.*, at 3).

The sale to the University, however, did not include all of the Debtors' assets, including the Thompson Brothers Trust dated August 15, 1960 ("Thompson Trust"). (*Id.*, at 7).  The Thompson Trust was formed under the will of George A. Thompson, who died September 22, 1947, and the will of Frank L. Thompson, George's brother, who died December 16, 1957 ("Thompson Brothers").  (*Id.*, at 2).  The Thompson Trust's yearly income was to be used "one half for the benefit and enlargement of the surgical department of the Mercy hospital, and the other half for the payment of the bills for hospitalization and medical care for worthy residents of Johnson County, Iowa, unable to pay their bills."  *See* (Bankr. Doc. 1043-3, at 4, 7; Bankr. Doc. 1043, at 2).  Mercy has been receiving income from the Thomson Trust for many years.  (*Id.*).

Mercy is the sole beneficiary of the Thompson Trust.  *See generally* (Doc. 1043-3).  The Thompson Trust does not contain a "spendthrift" provision or a transfer restriction.  (*Id.*).  As such, Mercy attempted to sell its beneficial interest ("Beneficial Interest") in the Thompson Trust to benefit its estate in the Chapter 11 matter.  Mercy

2

representatives contacted seven not-for-profit healthcare organizations operating in Eastern Iowa to determine whether any were interested in purchasing the Beneficial Interest. (Doc. 1043-5, at 3). Two of the organizations made written offers to acquire the Beneficial Interest. (*Id.*). Mercy Medical Center, Cedar Rapids, Iowa Endowment Foundation, Inc. ("Mercy CR Foundation") submitted the highest offer, which was $75,000 more than the next highest offer. (*Id.*). Mercy CR Foundation is also a healthcare organization that has a similar mission to that of Mercy Iowa City. (*Id.*). The Mercy board of directors approved the sale and transfer of the beneficial interest to the Mercy CR Foundation ("Sale Agreement"). (*Id.*, at 4). The parties seek approval of the sale here.

On May 10, 2024, the Debtors filed a motion for entry of proposed findings of fact and conclusions of law approving the sale of the Beneficial Interest in the Thompson Trust, modifying the terms of the Thompson Trust, and for related relief. (Bankr. Doc. 1043). On August 16, 2024, the Bankruptcy Court filed its Proposed Findings. (Bankr. Doc. 1234). On September 13, 2024, the Proposed Findings were submitted to this Court for review. (Doc. 1). No party has filed objections to the Proposed Findings on either the District Court docket or the Bankruptcy Court docket.

### III.   APPLICABLE STANDARDS

The Bankruptcy Court submits the Proposed findings to this Court under Title 28, United States Code, Section 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033.

Under Section 157(c), "a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). In a non-core proceeding, however,

> the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions of law and after reviewing de novo those matters to which any party has timely and specifically objected.

*Id.* As part of this finding, the bankruptcy court is also to determine whether a proceeding is a core proceeding or whether it is otherwise related a case as a non-core proceeding. *Id.* at 157(3).

Further, under Federal Rule of Bankruptcy Procedure 9033,

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed. R. Bankr. P. 9033(d). A party must object "[w]ithin 14 days after being served with a copy of the proposed findings of fact and conclusion of law" by serving and filing with the clerk written objections "which identify the specific proposed findings or conclusions objected to and state the grounds for such objection." *Id.* 9033(b).

## IV. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction over this matter under Title 28, United States Code, Sections 157(c)(1) and 1334 and Federal Rule of Bankruptcy Procedure 9033. Further, using the *cy pres* doctrine to modify the Thompson Trust is a critical and necessary component to effectuating the Trust's sale. But for the application of the *cy pres* doctrine to the Thompson Trust, the Debtors would be unable to transfer and sell the Beneficial Interest and liquidation of the assets. Accordingly, the Court has related to jurisdiction to apply *cy pres* because the application of *cy pres* satisfies the "conceivable effects" test. *See, e.g.*, *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995).

### B.     *The Thompson Trust's Sale*

After a careful review of the record, the Court agrees with the Proposed Findings and accepts them without modification. The Court specifically accepts the bankruptcy court's findings as they relate to, among other things: the Thompson Trust is property of the Debtors' estate; Mercy has the authority to execute and deliver the Agreement; actual written notice of the Thompson Sale Motion, the Sale, the Sale hearing before the Bankruptcy Court, the Proposed Findings, and the transactions contemplated thereby has been afforded to all known interested entities and parties and they have had an opportunity to object or be heard; the Debtors conducted a sale process that afforded a full, fair, and reasonable opportunity to determine the highest or best purchase offer; consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estate, their creditors, and other parties in interest; the consideration provided by the Purchaser under the Agreement is fair and reasonable and the highest and best offer, and; good and sufficient reasons for approval of the Agreement and the Sale have been articulated.

Thus, the Court accepts the Proposed Findings related to the Sale.

### C.     *Modification of the Thompson Trust's Terms*

As noted above, using the *cy pres* doctrine to modify the Thompson Trust is a critical and necessary component to effectuating the Trust's sale. "*Cy pres* is a common law doctrine that permits a court to change the purpose or recipients of a charitable trust under certain circumstances." *Kolb v. City of Storm Lake*, 736 N.W.2d 546, 553 (Iowa 2007). Iowa recognizes the *cy pres* doctrine and the Iowa legislature has codified the doctrine into law. *Id.* (citing Iowa Code § 633.5102). Iowa Code Section 633.5102 states:

> Unless the terms of the trust provide to the contrary the following apply:
> 1. A charitable trust does not fail, in whole or in part, if a particular purpose for which the trust was created becomes impracticable, unlawful, or impossible to fulfill.

5

> 2. If a particular charitable purpose for which a trust is created becomes impracticable, unlawful, or impossible to fulfill, the court may modify the terms of the trust or direct that the property of the trust be distributed in whole or in part in a manner best meeting the settlor's general charitable purposes. If an administrative provision of a charitable trust becomes impracticable, unlawful, impossible to fulfill, or otherwise impairs the effective administration of the trust, the court may modify the provision.

Iowa Code § 633A.5102.

Iowa courts apply a three-part test to determine whether *cy pres* applies. *Kolb*, 736 N.W.2d at 555. "The test requires the presence of three criteria: (1) a charitable trust; (2) a specific trust purpose that is illegal, impractical, or impossible; and (3) a general charitable intention by the donor." *Id.* (citing Restatement (Second) of Trusts § 399). "Section 633A.5102, however, effectively establishes a presumption that *cy pres* should apply if the trust does not state 'to the contrary.'" *Id.* (quoting Iowa Code § 633A.5102).

Here, the Thompson Trust is a charitable trust. *See* Iowa Code § 633A.5101(1) (noting a charitable trust may be created for "the promotion of health, or any other purpose the accomplishment of which is beneficial to the community"). The Thompson Trust both promotes health in the community and benefits the community by providing for medical equipment and facilities and by helping pay for medical services for those who otherwise could not afford it. The Thompson Trust's purpose also can no longer be accomplished because Mercy does not provide the type of services the Thompson Trust is directed to benefit.

As to the third factor, the Court finds the Thompson Brothers had general charitable intent. "[T]here are no hard and fast rules to determine whether the settlors had general charitable intent," and charitable intent must be evaluated under all the relevant facts and circumstances, including external evidence. *Id.* In *Kolb v. City of Storm Lake*, the Iowa Supreme Court stated that one of the best ways to determine

6

whether there is general charitable intent is that "it would not reject the continuation of the trust when a particular purpose fails." *Id.*

The first place the Court looks to for guidance is the language of the Thompson Trust itself. There are no clauses in the Thompson Trust that prevent transfer of the Trust if its purpose fails for any reason. This indicates the Thompson Brothers intended that the Trust could be transferred.

There is, however, a clause in the Thompson Trust that specifically indicates the Trust's income is for residents of Johnson County. The Thompson Trust specifically states that "half of the proceeds [are] for the payment of the bills for hospitalization and medical care for worthy residents of Johnson County, Iowa, unable to pay their bills." *See* (Bankr. Doc. 1043-3, at 4, 7). There is also extrinsic evidence that the Thompson Trust was intended to benefit the people of Iowa City. The Last Will and Testament of Frank Thompson states the Trust is to "contribute to the welfare of our fellow citizens and to the welfare of Iowa City." (Bankr. Doc. 1043-3, at 11). The people of Iowa City and Johnson County were clearly important to the Thompson Brothers and the Thompson family. That said, the Thompson Brothers also specifically stated the Trust's interest should be used for medical facilities and to pay medical bills. Frank Thompson's Last Will and Testament also says the Trust is to contribute "to the welfare of our fellow citizens." (*Id.*). If the Thompson Brother's specific intent was to serve only and exclusively the people of Johnson County, they could have written it to provide services for Johnson County without restricting it to medical care. The Court finds that by including the instruction that the Thompson Trust be used for medical purposes, the Trust's main emphasis was to provide medical services.

The record clearly indicates the Thompson Brothers cared about the health and welfare of the people of Eastern Iowa, and particularly those in the community who cannot afford medical care. Despite the expression of their desire to help the people of Iowa City and Johnson County, under the circumstances, the Court finds that expression

7

was not an intended restriction of the scope of the Thompson Brothers' charitable intent. The Court finds the settlors would not reject the continuation of the Trust even when the particular purpose failed. The Court therefore finds there was a general charitable intent.

Having found *cy pres* applies to the Thompson Trust, the Court must next consider whether the request to modify the Thompson Trust is permissible. In doing so, the Court must apply a "liberal rule of construction to carry out, not defeat, the [Thompson Brother's] intent." *Matter of Trust of Rothrock*, 452 N.W.2d 403, 405-06 (Iowa 1990).

Through their Trust, the Thompson Brothers wanted to help provide medical services for those in need in their community. Although their community was Iowa City, that community has grown and changed significantly since they created the Thompson Trust. Indeed, the borders of Iowa City have blended into other nearby communities that have expanded in all directions. Cedar Rapids, too, has expanded south toward Iowa City. Countless people commute between Iowa City and Cedar Rapids daily for work, recreation, and even healthcare. The two cities and the counties in which they are located are intertwined in important ways that help both city populations interact and serve each other.

Further, many of the people the Thompson Trust supported at Mercy in Iowa City are the same type of people who go to Cedar Rapids for medical care. People in need of medical care in rural areas seek facilities in cities that serve as hubs for medical services. Both Iowa City and Cedar Rapids have large medical facilities that serve rural Iowa populations, and especially those in Eastern Iowa. The care the facilities provide extends well beyond city and county lines. Given the language of the Thompson Trust the Court believes the Thompson Brothers would have preferred their vision of helping others receive quality and affordable medical care continue, even if it meant going beyond the borders of Johnson County.

As discussed, Mercy CR is located in Linn County, which is a contiguous county north of Johnson County and serves many of the same communities Mercy served. Like

8

Mercy, Mercy CR is a not-for-profit community hospital. (Bankr. Doc. 1043, at 19). The Thompson Trust will still be used to benefit the surgical department and to fund the medical expenses of patients who are unable to pay the costs themselves. Thus, because the modification serves the same purpose and serves the same type of people the Thompson Brothers intended to benefit, the Court finds the modification is appropriate and accepts the Proposed Findings relating to the modification of the Thompson Trust.

### D.    *Miscellaneous Relief*

Last, the Debtors seek "related relief." (Bankr. Doc. 1043, at 20). The Debtors specifically request that the Court waive the stay imposed by Bankruptcy Rule 6004(h). As there have been no objections filed asking that the stay be applied here, the Court accepts the Proposed Findings as it relates to the stay and other miscellaneous relief.

To the extent the Court has not addressed a specific item raised in the Proposed Findings, the Court accepts such findings here.

### V.    CONCLUSION

For these reasons, the Proposed Findings (Doc. 1) are **accepted** in all respects. In addition to filing this Order with the District Court, the Clerk of Court for the Northern District of Iowa is directed to transfer this Order to the bankruptcy court for entry on the bankruptcy court's docket.

**IT IS SO ORDERED** this 10th day of October, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa