**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**MOTION OF GETZLER HENRICH & ASSOCIATES LLC AND COLE SCHOTZ P.C.
TO ENFORCE THE CONFIRMATION ORDER, PLAN AND LIQUIDATION TRUST
AGREEMENT AND TO COMPEL THE LIQUIDATION TRUSTEE TO PAY POST-
PETITION FEES**

Getzler Henrich & Associates LLC and Cole Schotz P.C. ("Getzler", "Cole", collectively

"Movants") submit this motion (the "Motion") pursuant to section 105 and 1142 of the United

States Bankruptcy Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (a) enforcing the terms of

this Court's *Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Joint

Chapter 11 Plan Of Liquidation* (the "Confirmation Order") [Docket No. 1114], the *Debtors'

First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (the

"Plan"), [Docket No. 1050] and the Liquidation Trust Agreement ("LTA") [Docket No. 993-3]

approved pursuant to the Confirmation Order, and (b) compelling the Liquidation Trustee of the

Mercy Hospital Liquidation Trust (the "Liquidation Trustee") to pay fees in the amount of

$164,737.10 to Getzler for the period from April 22, 2024 through August 9, 2024 and

$13,500.00 to Cole for the period from July 26, 2024 through August 10, 2024 in accordance

with the terms of the LTA.

There is a clear theme to this dispute.  William H. Henrich ("Mr. Henrich" or the "Initial

Liquidation Trustee") has fully and faithfully complied with his duties and acted one hundred

percent appropriately.  Unfortunately, as the Court will see below, the Trust Oversight

Committee has not.  The reason is simple – the Trust Oversight Committee members were

apparently not happy with positions that Sills Cummis & Gross P.C. ("Sills") took in the chapter

11 case, and did not want them hired to represent the Liquidation Trust.  Mr. Henrich first

proposed to hire Sills, which was specifically permitted in the LTA.  Despite that express

contractual language, when consulted by Mr. Henrich, the Trust Oversight Committee asserted

that Sills had a conflict and objected to their retention.  When Mr. Henrich said he would hire

independent counsel, Cole, to examine that issue, the Trust Oversight Committee terminated Mr.

Henrich before receiving the benefit of that examination.  Now the Trust Oversight Committee

has again ignored the express terms of the LTA and asserted untimely objections to Getzler's

fees that do not comply with the LTA requirements.  As to Cole, neither the Trust Oversight

Committee nor the Liquidation Trustee have objected, yet those fees remain unpaid despite

multiple requests for payment.

## **JURISDICTION**

1.      The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §

1409.

2.      Movants consent to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent the consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

3.      Pursuant to paragraph 14 of the Confirmation Order, the Court retained sole

jurisdiction over claims and causes of action against the Liquidation Trustee (solely in his

capacity as the Liquidation Trustee) arising out of the performance of the Liquidation Trustee's duties. *See also* Plan, Art. XV, TA, § 12.7.

4.      The basis for the relief requested herein are sections 105 and 1142 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

5.      On August 7, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Iowa (this "Court"), thereby commencing these chapter 11 cases (the "Chapter 11 Cases").

6.      On August 15, 2023, the U.S. Trustee formed the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases of Mercy Hospital, Iowa City, Iowa and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") [Docket. No. 107].

7.      On February 23, 2024, the Debtors filed the initial *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan Of Liquidation* [Docket No. 760].

8.      On April 29, 2024, the Debtors filed their *Notice of Filing of Plan Supplement with Respect to the Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [Docket No. 993] (as modified, supplemented, or otherwise amended from time to time, the "Plan Supplement"), which included (a) the identity of the Liquidation Trustee; (b) the identity of the Pension Plan Administrator; and (c) the form of the Liquidation Trust Agreement at Docket No. 993-3.

9.      On May 14, 2024, the Debtors filed the Debtors' Plan.

**B.      The Confirmation Order.**

10.      On June 7, 2024, the Court entered the Confirmation Order.

11.     On June 24, 2024 (the "Effective Date"), the Debtors filed the *Notice of (I) Entry of Order Confirming Debtors' First Amended Joint Chapter 11 Plan of Liquidation and (II) Occurrence of Effective Date* [Docket No. 1139].

12.     Pursuant to paragraph 4 of the Confirmation Order, the Court authorized and approved the documents contained in the Plan Supplement, including the LTA and the terms of the Plan, including the Plan Supplement, were incorporated by reference into and deemed an integral part of the Confirmation Order. *See* Confirmation Order,  ¶4. The execution, delivery, and performance of the Plan Supplement by the Liquidating Debtors and Liquidation Trustee were authorized and approved. *See id.*, ¶¶ 4, 18 & 19. Moreover, the Confirmation Order provided that the Plan and the Plan Supplement, which includes the LTA, were immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law. *See id.*, ¶ 55. *See also* Plan, Art. XVII.G. (providing that the Plan Supplement is incorporated by reference as if fully set forth in the Plan).

13.     Upon the Effective Date, the Liquidation Trust was established pursuant to the Plan and Mr. Henrich was appointed as the initial trustee of the Liquidation Trust. *See* Confirmation Order, ¶ 14; Plan §§ X.F, X.I. Mr. Henrich is co-chairman of Getzler, a management and financial advisory firm focused on corporate restructuring with a long-standing, excellent reputation nationally.  Mr. Henrich has more than 40 years of experience in turnaround and crisis management, loan workout and bankruptcy consulting.

14.     Additionally, on the Effective Date, a three-member oversight committee (the "Trust Oversight Committee") was deemed to have been formally appointed in accordance with the Plan and terms of the LTA. *See* Confirmation Order, ¶15.

15.     The Confirmation Order further provides that the Liquidation Trustee and any professionals retained by the Liquidation Trustee may be compensated by the Liquidation Trust in connection with any services provided to or on account of the Liquidation Trust from and after the Effective Date, subject to and in accordance with the terms of the Plan and the LTA. *See id.*, ¶ 14. The Confirmation Order provides that upon the occurrence of the Effective Date, all reasonable fees and expenses incurred by the Liquidation Trustee shall be paid by the Liquidation Trust in accordance with the terms of the LTA. *See id.*, ¶ 17.

**C.      The Plan.**

16.     As confirmed, the Plan provides that the assets of the Liquidation Trust will be administered and distributed pursuant to the terms of the Plan and the LTA. *See* Plan, Art. I.A. *See also* Plan, Art. X.A ("The Liquidation Trust shall be administered by the Liquidation Trustee in accordance with the LTA.").

17.     The Liquidation Trustee (including any successor Liquidation Trustee) is bound by the terms of the Plan, the Confirmation Order, and the LTA and must "perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and LTA." *See id.*, Art. X.F. Included among the authority, power, and responsibility of the Liquidation Trustee is the authority, power, and responsibility "to employ and compensate counsel or other advisors to assist in the performance of its duties, which counsel may include any counsel who has represented either the Debtors, the UCC, or the Pension Committee during the pendency of the Chapter 11 Cases, … ." *See id.*, Art. X.I.1(k). *See also* Plan, Art. IV.D.2.

18.     Notably, distributions from the Liquidation Trust must be made in accordance with the Plan and the LTA "after paying, reserving against, or satisfying, among other things, the operating and administrative expenses of the Liquidation Trust, including but not limited to all costs, expenses, and obligations incurred by the Liquidation Trustee (or professionals who may

be employed by the Liquidation Trustee in administering the Liquidation Trust) in carrying out

their responsibilities to the Liquidation Trust under the LTA, or in any manner connected,

incidental, or related thereto." *See id.*, Art. X.E.

**D.      The Liquidation Trust Agreement.**

19.      On June 18, 2024, the LTA was executed by and between the Debtors, the Initial

Liquidation Trustee, and Steindler Orthopedic Clinic, PLC, Preston Hollow Community Capital,

Inc. ("Preston Hollow"), and Paula Roby, as members of the Trust Oversight Committee.

Pursuant to the Plan, the powers and duties of the Trust Oversight Committee are set forth in the

LTA. *See* Plan, Art. X.B.

20.      Section 2.6 of the LTA provides that the Liquidation Trustee receive fair and

reasonable compensation for his services and the terms of the Initial Liquidation Trustee's

Compensation were explicitly set forth on Schedule 2.

21.      Like the Plan, the LTA authorizes the Liquidation Trustee to engage attorneys as

may be necessary to carry out the Liquidation Trustee's duties under the LTA on such terms as

the Liquidation Trustee deems appropriate in the Liquidation Trustee's sole discretion, including

any law firm that was retained as a professional in the Debtors' chapter 11 cases after

consultation with the Trust Oversight Committee. *See* LTA, § 2.7.

22.      All reasonable fees and expenses of administration of the Liquidation Trust and

the Liquidation Trustee, including those for professionals pursuant to section 2.7, are to be paid

from the Liquidation Trust. *See id.* The reasonable fees and expenses of such professionals are

borne exclusively by the Liquidation Trust without review or approval of the Court or any other

party, except as provided in Section 2.8 of the LTA. *See id.*

23.      Section 2.8 of the LTA sets forth the explicit process for the payment of and any

objections to the Liquidation Trust's professional fees. *See* LTA, § 2.8. Court authorization is not

required before the payment of professional fees and expenses. *See id.* Section 2.8 further

provides:

> …Any invoices of the Liquidation Trustee and the Liquidation
> Trustee's professionals will be provided to the Trust Oversight
> Committee for review and approval contemporaneous with receipt
> by the Liquidation Trustee. <u>The Trust Oversight Committee must
> make any objection to fees or expenses in writing within ten (10)
> days after receiving the pertinent invoice(s)</u> and such objection
> <u>must identify the time entries and any other matters subject to the
> objection and the grounds therefor.</u> The parties will engage in good
> faith discussions to resolve the objection. If the <u>objection is not
> resolved within thirty (30) days of the Liquidation Trustee's
> receipt of such objection, the undisputed portion of the fees and
> expenses will be promptly paid and the party seeking payment
> shall have the right to seek approval of any disputed portion from
> the Court.</u> Failure to timely object to requested fees and/or
> expenses shall be deemed a waiver of any such objection and the
> Trust Oversight Committee's consent to the payment of such fees
> and expenses.

*See id.*

24.     Under the LTA, this Court retained exclusive jurisdiction over the Liquidation

Trust after the Effective Date, including, without limitation, jurisdiction to resolve all

controversies, suits, and issues that may arise in connection with the Liquidation Trust or the

LTA. *See* LTA, § 12.7. All parties to the LTA irrevocably agreed that any action to enforce,

interpret, or construe any provision of the LTA would be brought only in the Court. *See id.*

**E.     <u>The Services Rendered by Getzler and Cole and the Replacement of the Liquidation
Trustee.</u>**

25.     Both Pre- and Post-Effective Date prior to July 24, 2024, Mr. Henrich met with

the Trust Oversight Committee on various matters.

26.     During these meetings, Mr. Henrich made it clear that he intended to retain Sills,

former counsel to the Official Committee of Unsecured Creditors, to represent the Liquidation

Trustee, and no objections were raised in any of those meetings.

27.     On July 24, 2024, the Trust Oversight Committee sent email correspondence to Mr. Henrich, stating that the Trust Oversight Committee did not believe it was appropriate for the Liquidation Trust to retain Sills.  See Exhibit 1 attached and made a part hereof.

28.     The Trust Oversight Committee erroneously asserted that Sills' previous representation of the Committee was disqualifying, although no specific reason was cited. Presumably Sills had previously taken adversarial positions to the bondholders and pensioners.

29.     Mr. Henrich immediately met with the Trust Oversight Committee on July 25, 2024 to listen to its concerns.  Again, the conflict due to Sills' prior chapter 11 role was asserted, but no specifics were provided.

30.     On July 26, 2024, Mr. Henrich sent email correspondence to the Trust Oversight Committee that he intended to engage Cole as independent counsel to investigate and advise him as to whether the engagement of Sills presented a conflict.  See Exhibit 2 attached and made a part hereof.

31.     The Trust Oversight Committee did not express (and never has expressed) any objection to the retention of Cole.

32.     Cole performed the requested work and presented a memo dated August 6, 2024 to the Trustee concluding that, both pursuant to the express terms of the Trust Agreement as well as under applicable law, the engagement of Sills did not present a conflict.

33.     After Mr. Henrich received funds and information from the Debtor and its Chief Restructuring Officer, he made an initial determination of the available cash, net of reserves, for initial distributions.

34.     Since the initial distributions were considerably less than parties anticipated based on information developed in May 2024, the Initial Liquidation Trustee and Getzler worked

diligently to scrutinize claims and the level of reserves, in conjunction with the bondholder's financial advisor, and by August 9, 2024, distributed $18,500,000 of the Plan's prescribed "up to $20,000,000" initial distribution to the bondholders as well as the initial pension related distribution.

35.     Without any advance notice, by letter dated August 9, 2024, the Trust Oversight Committee removed Mr. Henrich as the Initial Liquidation Trustee and appointed Dan R. Childers, Esq. of Shuttleworth & Ingersoll P.L.C., as successor Liquidation Trustee under the Trust Agreement and the Plan (herein, the "Liquidation Trustee"). See Exhibit 3 attached and made a part hereof.  *See also Notice of Removal and Replacement of Liquidation Trustee Under the Trust Agreement and Plan*, dated August 9, 2024 [Docket No. 1226].

36.     After his removal, Mr. Henrich and Getzler communicated and cooperated fully with the Successor Trustee, forwarding all requested documentation and analyses to the Successor Trustee and his financial advisor, despite the fact that they received no assurances that they and Cole would be paid their outstanding fees and expenses.

37.     Mr. Henrich, as the Initial Liquidation Trustee, hired Getzler and Cole to perform services to the Liquidation Trust in accordance with the terms of the Confirmation Order, the Plan, and section 2.7 of the LTA. During the period of April 22, 2024 through and including August 9, 2024, Getzler and Cole provided services at the request and direction of Mr. Henrich, as Initial Liquidation Trustee.

38.     The services rendered by Getzler and Cole related to the administration of the Liquidation Trust, the implementation of the Plan and Confirmation Order, and the examination of the alleged Sills conflict asserted by the Trust Oversight Committee.

39.     Specifically, Getzler provided 223.60 hours of services at its standard hourly rates resulting in an amount due of $164,737.70 and Cole provided 20.70 hours of services at its standard hourly rates resulting in an amount due of $22,185.00.  However, as an accommodation to the Liquidation Trust and its beneficiaries when Mr. Henrich was the Initial Litigation Trustee, Cole provided a courtesy discount of $8,685.00, resulting in an invoice for services rendered of $13,500.

**F.     Trust Oversight Committee's Waiver and Consent**

**I.     Failure of Trust Oversight Committee to Timely Object**

40.     On August 14, 2024, Mr. Henrich submitted Getzler's Invoice Number 1-01 and 1-02 (the "Getzler Invoices") and Cole's Invoice Number 984270 (the "Cole Invoice") to the Liquidation Trustee and the members of the Trust Oversight Committee as required by section 2.8 of the LTA. See Exhibit 4 attached and made a part hereof. Detailed descriptions of the services rendered by Getzler and Cole were set forth in the Getzler Invoices and Cole Invoice.

41.     The Liquidation Trustee has not provided Getzler or Cole with any objections to the Getzler or Cole Invoices.  Despite the fact that he has not objected to the Getzler or Cole fees, the Liquidation Trustee has expressed a hesitancy to pay any of those fees absent an agreement of the parties or an Order of the Court.

42.     The Trust Oversight Committee has not provided Cole with any objections to the Cole Invoice.

43.     On August 26, 2024, Paula Roby, one of the members of the Trust Oversight Committee, sent email correspondence to Mr. Henrich purporting to object to the Getzler Invoices based on the rights granted to the Trust Oversight Committee in the LTA.  See Exhibit 5 attached and made a part hereof.

-10-

44.     Mr. Henrich promptly contacted the Liquidation Trustee in a good faith effort to resolve the matter.  Mr. Henrich explained that the Trust Oversight Committee's objections to the Getzler Invoices were untimely and did not comport with the requirements of the LTA, and requested that all outstanding fees and expenses be paid.

45.     On September 4, 2024, Paula Roby sent email correspondence to Mr. Henrich asserting the objections of the Trust Oversight Committee were timely and cited the Federal Rule of Civil Procedure 6 and Bankruptcy Rule 9006.  See Exhibit 6 attached and made a part hereof

46.     On September 10, 2024, the Initial Liquidation Trustee again responded to Ms. Roby's email, inviting discussions to resolve this matter.  See Exhibit 7 attached and made a part hereof.

47.     As explained by the Initial Liquidation Trustee in his September 10, 2024 email with respect to the timeliness of the Trust Oversight Committee's objection, Section 2.8 of the LTA requires the Trust Oversight Committee to make an objection within ten (10) days after receiving the invoices, not ten (10) "business days".  The Trust Oversight Committee received the invoices on August 14, 2024 but did not object to the Getzler Invoices until August 26, 2024 – twelve (12) days later.

48.     The drafters of the LTA knew how to articulate the difference between counting "days" v. "business days".  Sections 7.6 and 12.10 of the LTA refer to "Business Days" as distinguished from Section 2.8's use of the word "days",

49.     The LTA's language could not be more clear, and Federal Rule of Civil Procedure 6 and Federal Rule of Bankruptcy Procedure 9006 do not alter that contractual agreement.  F.R.C.P. 6 and F.R.B.P. 9006 are rules regarding computing time in litigation and bankruptcy cases (but were not specifically incorporated into the terms of the LTA).  Those rules specifically

state that they "apply in computing any time period specified in these rules, in any local rule or

court order, or in any statute that does not specify a method of computing time". Therefore, the

contract (i.e. the LTA) governs, and F.R.C.P. 6 and F.R.P.B. 9006 are inapplicable, making the

Trust Oversight Committee's objection to Getzler invoices untimely.

50.     Section 2.8 of the LTA specifically states that the failure to timely object to

requested fees shall be deemed a waiver of any such objection and the Trust Oversight

Committee's consent to the payment of such fees.

51.     The Trust Oversight Committee's failure to timely object to the Getzler and Cole

Invoices operated as a waiver of the rights of the Trust Oversight Committee and deemed

consent to pay the Invoices.

## II. Failure of Trust Oversight Committee to Properly Object

52.     Even assuming that the Trust Oversight Committee's objection to the Getzler

Invoices was timely, the Trust Oversight Committee's objections to the Getzler Invoices failed to

follow the procedure detailed in the LTA and should be overruled.

53.     Section 2.8 of the LTA requires the Trust Oversight Committee to identify the

time entries and any other matters subject to the objection and the grounds therefor.

54.     Ms. Roby's August 26, 2024 email correspondence to Mr. Henrich does not

identify the time entries subject to the objections or any specific grounds for the objection(s).

55.     The Trust Oversight Committee's failure to properly object to the Getzler

Invoices operated as a waiver of the rights of the Trust Oversight Committee and deemed

consent to pay the Invoices.

56.     Further, Section 2.8 of the LTA requires the Liquidation Trustee to pay the

undisputed portion of the fees.

57.    Getzler and Cole have yet to receive payment of any portion of the Getzler or Cole Invoices.

58.    In Mr. Henrich's September 10, 2024 email correspondence, previously identified as Exhibit 7, he explains the Trust Oversight Committee's waiver and consent and asks the Liquidation Trustee for payment of the Invoices.

59.    On September 10, 2024, Eric Lam, the Liquidation Truste's attorney, advised Mr. Henrich that the Liquidation Trustee cannot issue any payment until the Court has ruled.  See Exhibit 8 attached and made a part hereof.

## RELIEF REQUESTED

60.    By this Motion, Getzler and Cole seek entry of an order (a) enforcing the terms of the Confirmation Order, the Plan, and the LTA, and (b) compelling the Liquidation Trustee to promptly pay fees in the amount of $164,737.10 to Getzler and $13,500.00 to Cole in accordance with the terms of the LTA.

## BASIS FOR RELIEF

61.    The Court has jurisdiction over this Motion as part of its inherent power to enforce its own orders. Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce their own orders and the Bankruptcy Code's provisions and provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The Supreme Court and courts in this District have recognized that bankruptcy courts retain core jurisdiction to interpret and enforce their own prior orders,

including confirmation orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 139 (2009);

*Thys Chevrolet, Inc. v. Gen. Motors LLC*, No. 10-CV-46-LRR, 2010 WL 4004328, at *8 (N.D.

Iowa Oct. 12, 2010).

62.     Similarly, once a chapter 11 plan has been confirmed, the debtor and any entity

organized or to be organized for the purpose of carrying out the plan are bound by its provisions

and must carry out the plan. To this effect, section 1142(a) of the Bankruptcy Code provides that:

> Notwithstanding any otherwise applicable nonbankruptcy law,
> rule, or regulation relating to financial condition, the debtor and
> any entity organized or to be organized for the purpose of carrying
> out the plan and shall comply with any orders of the court.

11 U.S.C. § 1142(a). *See In re Cent. Steel Tube Co.*, No. BKR. 83-856-D H, 1989 WL 1684536,

at *4 (Bankr. S.D. Iowa May 1, 1989) ("Section 1142(a) directs the debtor to carry out the plan

and comply with any orders of the Court as well as gives the debtor the authority to implement

the plan regardless of any non-bankruptcy limitations."). Upon confirmation, a chapter 11 plan

acts like a contract that binds the parties that participate in the plan. *In re Dial Business Forms,

Inc.*, 341 F.3d 738, 743 (8th Cir. 2003). *See also In re Finstad*, 613 B.R. 180, 184 (B.A.P. 8th

Cir. 2020), *aff'd*, 4 F.4th 693 (8th Cir. 2021).

63.     Here, Getzler and Cole request that the Court enforce the terms of the LTA.

Pursuant to paragraph 4 of the Confirmation Order, the terms of the Plan, including the Plan

Supplement, were incorporated by reference into and deemed an integral part of the

Confirmation Order. *See* Confirmation Order, ¶ 4. *See also* Plan, Art. XVII.G. (providing that the

Plan Supplement is incorporated by reference as if fully set forth in the Plan). The Confirmation

Order also provides that the Plan and the Plan Supplement, which includes the LTA, were

immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code

and applicable nonbankruptcy law. *See* Confirmation Order, ¶ 55. As such, the Liquidation

Trustee and the members of the Trust Oversight Committee are bound to the provisions of the

LTA and cannot take actions contrary to it. *See also* Plan, Art. X.F. (providing that the

Liquidation Trustee any successor Liquidation Trustee are bound by the terms of the Plan, the

Confirmation Order, and the LTA and must "perform all of the duties, responsibilities, rights,

and obligations set forth in the Plan and LTA.").

64.     Included among the duties of the Liquidation Trustee are the payment of the

expenses of the Liquidation Trust and to compensate counsel or other advisors that assist in the

performance of the Liquidation Trustee's duties. *See* Plan, Art. X.I.1(k). *See also* Plan, Art.

IV.D.2. Distributions from the Liquidation Trust must be made in accordance with the Plan and

the LTA "after paying, reserving against, or satisfying, among other things, the operating and

administrative expenses of the Liquidation Trust, including but not limited to all costs, expenses,

and obligations incurred by the Liquidation Trustee (or professionals who may be employed by

the Liquidation Trustee in administering the Liquidation Trust) in carrying out their

responsibilities to the Liquidation Trust under the LTA, or in any manner connected, incidental,

or related thereto." *See id.*, Art. X.E. *See also* LTA, § 2.7 (providing that all reasonable fees and

expenses of administration of the Liquidation Trust and the Liquidation Trustee, including those

for professionals, are to be paid from the Liquidation Trust).

65.     While the Trust Oversight Committee had the authority to review and object to

the fees set forth in the Getzler and Cole Invoices, any objections were subject to the following

requirements and procedures as set forth at length in section 2.8 of the LTA:

- Any objection to fees or expenses must be made in writing within ten (10) days after receiving the invoice;

- The objection must identify the time entries and any other matters subject to the objection and the grounds therefor; and

- The parties will engage in good faith discussions to resolve the objection.

-15-

- If the objection is not resolved within thirty (30) days of the Liquidation Trustee's receipt of such objection, the undisputed portion of the fees and expenses must be promptly paid.

- A failure to timely object to requested fees and/or expenses is a waiver of the Trust Oversight Committee's objections and is deemed to be the Trust Oversight Committee's consent to the payment of such fees and expenses. *Id.*

66.     These processes and procedures regarding the payment of professionals, as well as the language in the LTA, are clear and unambiguous and set forth an explicit and detailed timeline and methodology for objections to the Getzler and Cole Invoices.

67.     Because this process was not followed, the Trust Oversight Committee waived its objections and is deemed to have consented to payment of the Getzler and Cole Invoices.

68.     Therefore, Getzler and Cole respectfully submit that enforcement of the Confirmation Order, the Plan, and the LTA is necessary and prudent and that the Liquidation Trustee should be compelled to promptly pay the fees set forth in the Getzler and Cole Invoices in accordance with the terms of the LTA.

## <u>CONCLUSION</u>

**WHEREFORE**, Getzler and Cole respectfully request that the Court enter an order (a) enforcing the terms of the Confirmation Order, the Plan, and the Liquidation Trust Agreement, and (b) compelling the Liquidation Trustee to promptly pay fees in the amount of $164,737.10 to Getzler and $13,500.00 to Cole in accordance with the terms of the Liquidation Trust

Agreement; and (c) and granting such additional relief as the Court determines to be just and

proper.

Date: October 18, 2024.                   /s/ Nicole Hughes_____
                                          Nicole Hughes, AT0002263
                                          Telpner Peterson Law Firm, LLP
                                          25 Main Place, Suite 200
                                          Council Bluffs, IA  51503
                                          Telephone:  (712)325-9000
                                          Facsimile:  (712)328-1946
                                          Email: nhughes@telpnerlaw.com
                                          ATTORNEY FOR GETZLER AND COLE

### CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury, that on October 18, 2024, a copy of this
document was served electronically on parties who receive electronic notice through CM/ECF as
listed on CM/ECF's notice of electronic filing, the U.S. Trustee, the Liquidation Trustee, and the
members of the Trust Oversight Committee, and all parties that have filed a renewed request for
notice pursuant to Bankruptcy Rule 2002 after the Effective Date in accordance with section
XVII.E of the Plan.

                                          /s/ Nicole Hughes_____

July 24, 2024

**_Via Email_**
Mr. William H. Henrich
Getzler Henrich & Associates, LLC
295 Madison Avenue, 20th Floor
New York, NY 10017
Email: whenrich@getzlerhenrich.com

Re:     *In re Mercy Hospital*, *Iowa City, Iowa*, *et al.*, Case No. 23-00623 (TJC)
       Liquidation Trust Agreement and Administration

Dear Bill,

We are writing to you in our capacities as members of the Trust Oversight Committee under the Liquidation Trust Agreement dated June 18, 2024 (the "Trust Agreement") established under the above-referenced jointly administered cases (the "Chapter 11 Cases").[1]

Pursuant to, *inter alia*, Sections 2.7, 2.8, 3.1, and 11.2 of the Trust Agreement, the Trust Oversight Committee members are granted broad consultation, advisory, and consent rights and privileges regarding the administration of the Liquidation Trust, including the engagement of attorneys and other professionals by the Liquidation Trustee.

We are writing to advise you that we do not believe that it is appropriate for the Liquidation Trust to retain the law firm of Sills Cummis & Gross P.C. ("Sills Cummis") to represent the Liquidation Trustee, the Liquidation Trust and its beneficiary stakeholders in connection with (i) the general administration of the Liquidation Trust, (ii) resolving issues involving Claims and Interests under the Plan, (iii) making Distributions to Holders of Allowed Claims, (iv) bankruptcy-related matters arising in or related to the Chapter 11 Cases, or (v) the investigation, prosecution and/or settlement of any Liquidation Trust Claims which the Debtors, the Estates or the Liquidation Trustee may possess.

There are several reasons for this, which we will be pleased to discuss with you at your convenience. But, most notably, the Trust Oversight Committee members believe that the legal work Sills Cummis previously performed as counsel for the Official Committee of Unsecured Creditors in the Chapter 11 Cases and its corresponding legal duties to that committee are disqualifying. We believe that the Liquidation Trustee should not engage a law firm that has taken adverse positions on behalf of one of the three beneficiary / constituent groups under the Liquidation Trust against the other two beneficiary / constituent groups. Sills Cummis has done so, which presents an appearance of conflict, if not an actual conflict.

---

[1]  Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Trust Agreement and/or the Debtors' First Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation dated May 14, 2024 [Docket No. 1050].

Please know that we do not doubt the skills or expertise of the Sills Cummis attorneys involved in this case; they are excellent bankruptcy attorneys.  But we note that there is a legion of other law firms that could expertly represent and advise the Liquidation Trustee both for trust administration matters and litigation-related claims.  Moreover, we do not believe that the same law firm must undertake *both* categories of work.

In short, as per the Trust Oversight Committee's consultation rights under the Trust Agreement, please be advised that the Trust Oversight Committee does not consent to the Liquidation Trust engaging Sills Cummis. Please let us know when you are available to discuss these matters further.

Many thanks,


*/s/ Patrick Magallanes*
Patrick Magallanes of Steindler Orthopedic Clinic, PLC
in his capacity as a member of the Trust Oversight Committee



*/s/ John Dinan*
John Dinan of Preston Hollow Community Capital, Inc.
in his capacity as a member of the Trust Oversight Committee



*/s/ Paula Roby*
Paula Roby, Esq., in her capacity as a member of the
Trust Oversight Committee



Getzler Henrich & Associates LLC

295 Madison Avenue
20th Floor
New York, NY 10017

T: 212.697.2400
F: 212.697.4812
www.getzlerhenrich.com

**Getzler Henrich**
MANAGEMENT & FINANCIAL CONSULTANTS



July 26, 2024

Trust Oversight Committee of
Mercy Hospital Iowa City

Re: *In re Mercy Hospital, Iowa City, Iowa, et al.*, Case No. 23-00623 (TJC)
Liquidation Trust Agreement and Administration

Dear John, Paula and Patrick:

Thank you for your time yesterday and the opportunity to discuss the concerns raised in your July 24th letter to me.  As I stated last night, I appreciated the openness and candor of the discussion relative to your concerns.  I take those concerns seriously and very much desire to give them due consideration and fulfill my fiduciary duties as Trustee in a prudent, comprehensive and professional manner.

For that reason, I intend to engage independent counsel to assist me in connection with the proposed retention of Sills Cummis & Gross P.C. ("Sills Cummis") as Trust counsel and to investigate and advise me with respect to whether the engagement of Sills Cummis presents an appearance of conflict, if not an actual conflict (as you state in your July 24th letter).

To that end, I have selected the firm of Cole Schotz P.C. (Norman Pernick and David Bass) to guide me as I consider the issues raised in your letter and in determining whether the proposed engagement is in the best interest of the Liquidation Trust and the Estates.

I can assure each of you that I intend to act quickly, with due consideration.  If you wish to discuss this matter further, please do not hesitate to reach out to me.

My best,

William H. Henrich
Liquidating Trustee for Mercy Hospital Iowa City

August 9, 2024

*<u>Via Email</u>*

Mr. William H. Henrich
Getzler Henrich & Associates, LLC
295 Madison Avenue, 20th Floor
New York, NY 10017
Email: whenrich@getzlerhenrich.com

Re:     *In re Mercy Hospital*, *Iowa City, Iowa, et al.*, Case No. 23-00623 (TJC)
         <u>Liquidation Trust Agreement and Administration</u>

Dear Bill,

We are writing in our capacities as members of the Trust Oversight Committee under the Liquidation Trust Agreement dated June 18, 2024 (the "<u>Trust Agreement</u>") established under the above-referenced jointly administered bankruptcy cases.  Capitalized terms used and not otherwise defined herein shall have the meanings assigned to them in the Trust Agreement.

Pursuant to Section 2.4 of the Trust Agreement, the Liquidation Trustee may be removed upon unanimous consent of the members of the Trust Oversight Committee.  Also pursuant to Section 2.4 of the Trust Agreement, in the event the Liquidation Trustee position becomes vacant, the vacancy shall be filled as determined by the Trust Oversight Committee.

The undersigned, being all of the members of the Trust Oversight Committee, hereby remove William H. Henrich of Getzler Henrich & Associates, LLC as Liquidation Trustee under the Trust Agreement and hereby appoint Dan R. Childers, Esq. of Shuttleworth & Ingersoll P.L.C. as successor Liquidation Trustee under the Trust Agreement.  By his signature hereto, Mr. Childers hereby accepts such appointment as Liquidation Trustee, agrees to be bound by the Trust Agreement, and agrees to execute such other and further documents and instruments as are necessary to further memorialize and effectuate his appointment as Liquidation Trustee.  Such removal and appointment shall be immediately effective.

Exhibit 3, Page 1

Pursuant to Section 2.4 of the Trust Agreement, upon his appointment, and without any further act, Mr. Childers, as successor Liquidation Trustee, is hereby fully vested with all the rights, powers, duties, and obligations of the Liquidation Trustee.

We anticipate that the predecessor Liquidation Trustee and its professionals will cooperate fully with this transition and appreciate your assistance in doing so.

Sincerely,


*/s/ Patrick Magallanes*
Patrick Magallanes of Steindler Orthopedic Clinic, PLC
in his capacity as a member of the Trust Oversight Committee



*/s/ John Dinan*
John Dinan of Preston Hollow Community Capital, Inc.
in its capacity as a member of the Trust Oversight Committee



*/s/ Paula Roby*
Paula Roby, Esq., in her capacity as a member of the
Trust Oversight Committee



*/s/ Dan R. Childers, Esq.*
Dan R. Childers, Esq. of Shuttleworth & Ingersoll P.L.C., indicating acceptance of his appointment as Liquidation Trustee under the Trust Agreement

Exhibit 3, Page 2

**From:** Henrich, William
**Sent:** Wednesday, August 14, 2024 5:42 PM
**To:** Dan Childers <DRC@ShuttleworthLaw.com>
**Cc:** John Dinan (jdinan@phccap.com) <jdinan@phccap.com>; Paula Roby <Paula@drpjlaw.com>; Patrick Magallanes <pmagallanes@steindler.com>
**Subject:** Getzler Henrich Invoices & Cole Schotz Invoice

Dan –

Pleasure speaking with you yesterday.  I wish you well in your endeavors as Successor Trustee.  I and my firm appreciated the opportunity to serve as Trustee and Financial Advisor to the Trust even if it was for an abbreviated timeframe.  We endeavored to work diligently, smartly, and expediently to administer the Trust in accordance with the Plan of Liquidation approved by the Court.  I'm certain you will continue to serve in the same vein.  Attached, please find Getzler Henrich's invoices and accompanying time detail for the timeframe served.  Additionally, I've attached Cole Schotz's invoice for their services to the Trust.  As discussed, it is our expectation to be paid for the work performed, which benefitted the beneficiaries of the Trust.

Thanks very much!

My best,
Bill

**William H. Henrich** | Co-Chairman
Getzler Henrich & Associates LLC, a Hilco Global Company
295 Madison Avenue | 20th Floor | New York, NY 10017
**T:** 212-697-2400 | **D:** 212-540-4480 | **C:** 516-241-1561
whenrich@getzlerhenrich.com | http://www.getzlerhenrich.com

*This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety.*

**From:** Paula Roby <Paula@drpjlaw.com>
**Sent:** Monday, August 26, 2024 11:35 AM
**To:** Henrich, William <whenrich@getzlerhenrich.com>; John Dinan <jdinan@phccap.com>; Patrick Magallanes <pmagallanes@steindler.com>; Dan Childers Esq. (drc@shuttleworthlaw.com) <DRC@ShuttleworthLaw.com>
**Subject:** Mercy Liquidating Trust

**This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.**

Mr. Heinrich,

The Liquidating Trust Oversight Committee is in receipt of your invoices related to your work on this matter.

We are writing to request additional information and further cooperation with the successor Trustee, Dan Childers.

In reviewing your invoice, a few things stand out:

First, the total amount billed is greater than 20% of the total amount set aside for the administration of the liquidating trust. That is just for your company's time, we have not yet received an invoice from Sills Cummins. As you can imagine, we would like to review both invoices at the same time.

Second, many of the time entries are "block billed," making it difficult to evaluate the reasonableness of the time spent on individual tasks. Block billing is not an accepted practice in the Northern District of Iowa. As such, please break down the block bills into individual tasks with time assigned to each. Without such information, we are unable to effectively evaluate those entries for reasonableness.

Third, there are several references to things that we would classify as "deliverables" to the successor trustee, including a ShareFile that was apparently created by your office. Please advise as to when Mr. Childers can expect to receive access to the ShareFile, as well as any other information and documentation related to the Liquidating Trust not yet provided.

Finally, your billing records begin on 4/22/24. It is our position that any time spent prior to the Confirmation of the Plan is not properly included in the billing to the Liquidating Trust.

We would appreciate your cooperation in providing the information requested by the end of the week.

Thank you.



Joseph E. Day
jday@drpjlaw.com

Mark H. Rettig
markr@drpjlaw.com

Ronald C. Martin †
ronm@drpjlaw.com
† Also Admitted in Texas

Paula L. Roby
paula@drpjlaw.com

Associate

Erica L. Yoder
eyoder@drpjlaw.com

September 4, 2024

***Sent via First Class U.S. Mail or e-mail to:***
Bill Henrich
whenrich@getzlerhenrich.com

Re:

Dear Mr. Henrich,

I am following up on my email of 08/26/2024, to which there has been no response.

I understand you phoned the Successor Trustee, Mr. Childers, and asked for payments, asserting that the Objection of the Liquidating Trust Oversight Committee was untimely. To be clear, it was not. I refer you to FRCP 6 and FRCP 9006/Mr. Childers has been instructed not to pay any portion of your bill at this time.

On 08/26 we requested additional information from you regarding your billings. None has been provided. As such, our objection continues. The Liquidating Trust Agreement provides a procedure for approval of fees or objections thereto that is simple and straight forward. The Oversight Committee is following that procedure, and we urge you to do the same.

Very truly yours,
DAY RETTIG MARTIN, P.C.

Paula L. Roby.

**P.O. Box 2877, 150 First Avenue NE, Suite 415, Cedar Rapids, IA 52406-2877**
**Phone:  319-365-0437  •  Fax:  319-365-5866**

*We are a debt relief agency.  We help people file for bankruptcy relief under the Bankruptcy Code.*

Exhibit 6, Page 1

**From:** Henrich, William
**Sent:** Tuesday, September 10, 2024 10:20 AM
**To:** Dan Childers <DRC@ShuttleworthLaw.com>
**Subject:** Mercy Liquidation Trust
**Importance:** High

Subject to FRE 408

September 10, 2024

Dear Dan –

Please accept this email in response to Ms. Roby's letter dated September 4th, and her reference therein to certain rules to attempt to support the position that the Trust Oversight Committee's objection to my fees was timely.  Her position is not supported by the Liquidation Trust Agreement and is untimely.  I have not copied Ms. Roby on this email, as the Trust Oversight Committee's "[f]ailure to timely object to the requested fees and/or expenses shall be deemed a waiver of any such objection and the Trust Oversight Committee's consent to the payment of such fees and expenses" pursuant to Section 2.8 of the Liquidation Trust Agreement.  Given that "waiver" and "deemed consent", I do not view the Trust Oversight Committee to have standing any longer and it is simply not appropriate for the Trust Oversight Committee to instruct you not to pay any portion of my bill at this time.  Even if it did still have standing, the Trust Oversight Committee's "direction" to withhold the entirety of the fees, while not only punitive in nature, violates the terms of the Liquidation Trust Agreement, which requires that any "undisputed portion of the fees and expenses will be promptly paid."  *See* Section 2.8. That notwithstanding, you are free to share this with her, but I would prefer to deal with you only at this point.

The relevant provision of the Liquidation Trust Agreement (Section 2.8) provides: "The Trust Oversight Committee must make any objection to fees or expenses in writing within ten (10) days after receiving the pertinent invoice(s) and such objection must identify the time entries and any other matters subject to the objection and the grounds therefor."  Moreover, that same section, which itself is titled "**No Bankruptcy Court Approval Needed for Payment**" is specific that no court authorization for fees is required, and there is no requirement or mechanism that requires that the Liquidation Trustee seek Court approval prior to payment.  *See* Section 2.8 ("Neither the Liquidation Trustee nor any professional retained by the Liquidation Trustee is required to seek Court authorization before the payment of any reasonable fees, or expenses, of the Liquidation Trustee or any professional retained by the Liquidation Trustee").

The rules Ms. Roby cites simply do not apply.  As I read the federal rule (and its bankruptcy rule corollary), the extension she purports to rely upon exists because the Clerk's office is "inaccessible" on non-business days, i.e. courthouses are closed on those days, but there is nothing that would have prevented the Trust Oversight Committee from providing the objection to me "within ten (10) days", particularly since it is not required to be filed in any court.  Indeed, the objection was set out in an email format, as was contemplated, and nothing would have prevented Ms. Roby from sending that email to me on August 24th, rather than August 26th.  This is a simple matter of contract and "within ten (10) days" means just that.  There is nothing in the Liquidation Trust Agreement that suggests that the federal rules apply and contracts (and specifically this Liquidation Trust Agreement) don't require the incorporation of the federal rules.  That said, contracts do often provide for similar extensions where a deadline to do something falls on a weekend or other non-business day (like the rule does).  Indeed, the Liquidation

Trust Agreement has such a provision.  *See* Section 7.6.  ("**Distributions on Non-Business Days**.  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.").  If the parties contemplated that that the Trust Oversight Committee would get additional time beyond the ten (10) day objection period, they could have specifically provided for that if they so chose (as they did in Section 7.6).  But they didn't.  Thus, the objection is untimely and the "[f]ailure to timely object to requested fees and/or expenses shall be deemed a waiver of any such objection and the Trust Oversight Committee's consent to the payment of such fees and expenses."

Even were it not untimely, the objection falls short of what is required by the Liquidation Trust Agreement:

1.      As noted above, the objection is required to, i.e., it "must", identify the specific time entries and any other matters subject to the objection and the grounds therefor.  For example, generic references to "block billing" fail to meet that requirement.  Indeed, there is no requirement in the Liquidation Trust Agreement, nor have I/my Firm ever before been requested, to prepare time entries post-confirmation/effective date on an individual task basis.  That there is no bankruptcy court approval required makes it irrelevant whether "block billing" is an accepted practice in the Northern District of Iowa.  Even were this a valid objection, and it is not, the undisputed fees and expenses would still need to be "promptly paid".  That the Oversight Trust Committee failed to even offer that demonstrates its bad faith and violates Section 2.8 of the Liquidation Trust Agreement.

2.      Next, applying my fees to a percentage of the budget is irrelevant and fails to account for the work performed and the value provided.  The work performed was necessary, complimented by the bondholders' financial advisor, and benefited the Trust beneficiaries.  Moreover, an initial funding of a Trust is not the equivalent of the total Trust administrative cost anticipated to be incurred.

3.      Additionally, I take exception to the objection to the billing records prior to the confirmation of the plan.  I was requested in April to serve on the Board of the Iowa City Ambulatory Surgical Center ("ICASC").  The minimal time spent prior to the effective date was primarily incurred serving my Board role.  Such services were provided in anticipation of serving as Liquidating Trustee and were never intended to be provided free of charge.  Nor is it reasonable to be expected to responsibly serve without being compensated for my time.

4.      Finally, the Trust Oversight Committee's suggestion that I have not worked cooperatively with you, or provided assistance, is misplaced. I, and my colleagues, have sought to cooperate fully with you and Marc Ross, your financial advisor.  To the best of my knowledge, we have complied with all your requests for information and/or assistance, and we remain committed to cooperating and assisting your transition.  I'm unaware of any requests that haven't been fulfilled.  Should you require additional information or help, always feel free to call me.  That said, I asked my colleagues to review and send, which they did, what additional information we possess that could prove helpful to you.

In light of the foregoing, I appreciate your cooperation and adherence to the Liquidation Trust Agreement terms that provide for payment to Getzler Henrich, and hope that you will remit payment promptly as required therein.  This email is without prejudice to any and all rights that I or my firm may have, including the right to seek payment of all of my/my firm's fees under the indemnification provision or to pursue such other affirmative claims that may exist, whether against the Liquidation Trust, the Trust Oversight Committee and/or the Day Rettig Martin firm.

I welcome your call upon receipt of my letter.

Best regards,
Bill

**William H. Henrich** | Co-Chairman
Getzler Henrich & Associates LLC, a Hilco Global Company
295 Madison Avenue | 20th Floor | New York, NY 10017
**T:** 212-697-2400 | **D**: 212-540-4480 | **C**: 516-241-1561
whenrich@getzlerhenrich.com | http://www.getzlerhenrich.com

*This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are strictly prohibited from disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender immediately and destroy the material in its entirety.*

**From:** Eric Lam <elam@simmonsperrine.com>
**Sent:** Tuesday, September 10, 2024 2:39 PM
**To:** Henrich, William <whenrich@getzlerhenrich.com>
**Cc:** Dan Childers <DRC@ShuttleworthLaw.com>
**Subject:** Mercy Liquidation Trust FRE 408

**This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.**

Hi Bill, your 9-10 email to Dan has been referred to me for response. Dan of course is governed by the provisions of the Liquidation Trust, and he and I  read the provisions of the Trust to mean if the O C objects to a fee request, then Judge Collins will need to consider the request and the objection and issue a ruling accordingly. In that light, Dan cannot issue any payment until the Court has ruled

Thank you