**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Obj. Deadline: February 6, 2025** |
| | ) | |

**TRUST OVERSIGHT COMMITTEE'S MOTION FOR ENTRY OF ORDER
REQUIRING MERCYONE TO PRODUCE RECORDS AND SUBMIT TO
EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

COMES NOW the Mercy Hospital Liquidation Trust Oversight Committee as designee of

the Liquidation Trustee (the "OC")[1] of the Mercy Hospital, Iowa City, Iowa Liquidation Trust (the

"Liquidation Trust"), by and through its counsel Roy Leaf and Leslie Behaunek of Nyemaster

Goode P.C., and respectfully submits this motion (the "Motion"), pursuant to Rule 2004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), to take discovery

of Mercy Health Network, Inc. d/b/a MercyOne ("MercyOne") regarding certain documents,

communications, and information pertaining to the assets, management, and financial condition of

Mercy Hospital, Iowa City, Iowa ("MIC") and its affiliates (collectively, the "Debtors"). In support

of this Motion, the OC respectfully states as follows:

**INTRODUCTION**

1.      Between May 2017 and April 2023, the strategic affairs of MIC were largely run

and dictated by MercyOne and its agents pursuant to a *Management Services and Strategic*

---

[1]      The Liquidation Trustee designated his authority to the OC to exercise the rights and authority of the
Liquidation Trustee with respect to this matter pursuant to section 3.3 of the *Liquidation Trust Agreement*.

1

*Affiliation Agreement* (the "Management and Affiliation Agreement"). MIC entered into the

Management and Affiliation Agreement following the departure of its long-time chief executive

officer Ronald Reed, who retired in spring 2016 after 21 years of service to MIC. After struggling

to effectively replace Mr. Reed, MIC sought the experience of an organization like MercyOne—

which purportedly could leverage its size, geographic coverage area, and expertise—to stabilize

MIC's executive suite, help implement a new electronic medical records (EMR) system, and

improve MIC's financial operations.

2.      Instead, however, during the approximately six years that MercyOne operated MIC

under the Management and Affiliation Agreement, MIC reported over $100,000,000.00 in

operating losses, continued to suffer from instability and inexperience in its executive suite, and

experienced a disastrous EMR implementation that accelerated the depletion of MIC's once

impressive cash reserves. During this same period, MIC paid MercyOne almost $9,000,000.00 in

management fees and spent millions more on MercyOne employees "leased" to MIC under the

Management and Affiliation Agreement.

3.      Since its retention in September 2024, counsel for the OC has undertaken an

investigation into the prepetition relationship between MIC and MercyOne in order to evaluate

any and all claims that the Liquidation Trust may have against MercyOne on behalf of the Debtors.

The OC needs to understand whether claims against MercyOne are warranted and whether the

incurrence of legal fees to pursue those claims is in the best interests of the Debtors' creditors who

hold interests in the Liquidation Trust.

4.      Counsel is in the process of reviewing potentially relevant documents and

communications from MIC's computers and servers. However, it is clear that MercyOne and its

employees possess a large number of documents and communications related to this investigation

as well as highly relevant information about the Debtors' business, financial condition, and affairs in the six years before MIC filed chapter 11. This material is critical to the OC's investigation and to helping the professionals employed by the Liquidation Trust more fully understand the background and events that precipitated MIC's chapter 11 filing.

5.      The OC takes seriously its obligation to balance the potential costs of litigation against the benefit to the Debtors' creditors. Accordingly, the OC brings this Motion so that it can better understand what factors led to MIC's bankruptcy filing and swift financial decline in the years leading up to the chapter 11 cases.

6.      As set forth in the Proposed Order attached hereto as Exhibit A, the OC respectfully asks this Court pursuant to Bankruptcy Rule 2004 to (i) authorize the OC to issue non-party subpoenas to MercyOne pursuant to Bankruptcy Rule 9016 and Rule 45 of the Federal Rules of Civil Procedure (the "Rules"), (ii) order MercyOne to produce all non-privileged documents and communications in response thereto, and (iii) authorize the OC to examine MercyOne, Robert Ritz, and Michael Trachta pursuant to Rule 45 subpoenas to testify.

## JURISDICTION AND VENUE

7.      The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

8.      This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1409 and pursuant to United States District Court for the Northern District of Iowa Administrative Order No. 07-AO-0016-P.

## BACKGROUND

**A.      The Chapter 11 Cases**

10.      On August 7, 2023 (the "Petition Date"), the Debtors commenced the chapter 11

cases by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11

Cases").

11.     No statutory trustee or examiner was appointed in the Chapter 11 Cases.

12.     Additional information regarding the Debtors and the Chapter 11 Cases, including

the Debtors' business operations, capital structure, financial condition, and the reasons for and

objectives of the Chapter 11 Cases, is set forth in the *Declaration of Mark E. Toney in Support of*

*Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "Toney Declaration").

13.     On June 7, 2024, the Court confirmed *Debtors' First Amended Combined*

*Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (the "Combined Disclosure

Statement and Plan"). *See* Docket Nos. 1113, 1114.

**B.     The Management and Affiliation Agreement**

14.     On May 1, 2017, MIC entered into the Management and Affiliation Agreement

with MercyOne. Pursuant to the Management and Affiliation Agreement, MercyOne agreed to

provide MIC with a variety of services intended to help stabilize MIC including: (i) administrative,

clinical, and business support to the operations of the Debtors; (ii) assistance with selection of

chief executive officers and other executive suite positions to oversee the management and

operations of the Debtors; (iii) establishment of strategic goals, plans to implement these goals,

and policies and procedures to improve MIC's operations; (iv) direction and oversight of telehealth

services; (v) recruitment of physicians and professional staff; (vi) facilitation of the procurement

and purchase of products and services for the Debtors; (vii) occupancy of three (3) seats on MIC's

board of directors (the "Board"); and the provision of legal services from MercyOne's retained

counsel. In exchange for these services, MIC paid yearly fees exceeding $2,000,000.00. By

operation of the Management and Affiliation Agreement, MercyOne stepped into the role of a non-

statutory insider, supervising and directing large portions of MIC's business affairs.

15.     As a result of the Management and Affiliation Agreement and MercyOne's significant role in directing MIC in the six years prior to the Petition Date, the OC believes that MercyOne has a large number of important documents, communications, and information relating to MIC during the period of time that it was in control of MIC. The Toney Declaration details how MercyOne employed the Debtors' senior management team, oversaw the Debtors' financial affairs and operations, directed critical aspects of the Debtors' prepetition operations such as turnaround management, and oversaw the Debtors' failed request for proposal process in 2021 in an attempt to sell MIC to another party.

16.     The OC continues to investigate to what extent MercyOne performed its obligations under the Management and Affiliation Agreement. A significant number of individuals associated with MIC have told the OC and its counsel that they believe an investigation is warranted to determine what precisely happened during the lead up to the Chapter 11 Cases. Indeed, Mr. Toney testified at the hearing to consider confirmation of the Combined Plan and Disclosure Statement that he believed an investigation of the Debtors' potential claims against MercyOne was "warranted" and spoke of how "employees were asking at townhall meetings if we would be pursing claims against MercyOne…" (May 16, 2024 Trans. p. 67).

17.     The circumstances leading up to the Chapter 11 Cases circumstantially indicate that MercyOne may not have fully performed its obligations under the Management and Affiliation Agreement. For example, the Management and Affiliation Agreement required MercyOne to assist MIC with replacing its existing information technology system and provide consultation regarding changes to MIC medical records management. The Combined Plan and Disclosure Statement, however, discusses the disastrous implementation of the new electronic medical record system

5

("EMR") in 2022 and 2023. The failed EMR implementation caused MIC to suffer substantial operational problems and incur significant lost revenue during this time period. While the OC has documents and communications from the Debtors, it needs documents and communications from MercyOne—the entity that was ostensibly in control of the Debtors during this period of time—to determine what MercyOne did or did not do in relation to the EMR rollout.

18.     It is unclear to the OC at this time to what extent MercyOne performed other services required of it by the Management and Affiliation Agreement and whether MIC benefited from those services. Pursuant to this Motion, the OC seeks this information so that it can more properly weigh the costs of any potential litigation against MercyOne with the benefits to the Debtors' creditors.

19.     MercyOne also largely controlled the affairs of MIC. In addition to holding three seats on the Board, MercyOne directed the conduct of MIC by, under the Management and Affiliation Agreement, "leasing" certain of its (or its parent company's) employees to MIC to serve roles in the executive suite, including as chief executive officer. The MercyOne employees who served roles at MIC included, for example, MIC's former CEO Mike Trachta, MIC's former CEO Sean Williams, MIC's former chief financial officer Jeff Rooney, former MIC Board member and MercyOne CEO Bob Ritz, former MIC Board member and MercyOne president and former CEO Dave Vellinga, and former MIC Board member and MercyOne employee Jack Dusenbery who handled significant MercyOne operations in Eastern Iowa. The OC seeks further information to determine the degree of control MercyOne exerted over the management and operation of MIC and whether fiduciary duties to MIC were properly discharged.

**C.      Documents and Information Sought by this Motion**

20.     Pursuant to this Motion, the OC seeks documents, communications, and

information from MercyOne related to MercyOne's obligations under the Management and

Affiliation Agreement, critical events that led to the Debtors' chapter 11 filing, and MercyOne's

role on the Board. The OC seeks this key information pursuant to Bankruptcy Rule 2004 via two

sources—requests for production and depositions.

21.     The documents and communications that the OC seeks are attached hereto as

**Exhibit B** (the "Document Requests"). The Document Requests are narrowly tailored and limited

to topics on which the OC needs further information to understand MercyOne's operation under

the Management and Affiliation Agreement as well as conduct of the Debtors prepetition. For

example, based on its review of documents and communications obtained to date from the Debtors'

servers, a number of MercyOne executives and employees continued to use their MercyOne email

address to conduct MIC business. These documents and communications are arguably property of

the Debtors' estates and very clearly relate to the conduct of the Debtors prior to the Petition Date.[2]

The OC also believes that the relevant MercyOne executives and employees maintained important

records, documents, and communications related to MIC on MercyOne servers. Again, this

information will enable the OC to better understand MIC's financial condition and operations

prepetition, as well as to identify any causes of action the Liquidation Trust has against MercyOne

and other insiders and the value of such causes of action for the Debtors' creditors.

22.     Pursuant to Rule 2004-1 of the *Local Rules of Bankruptcy Practice and Procedure*

(the "Local Rules"), on January 3, 2025 counsel for the OC emailed MercyOne's counsel a copy

of the Document Requests for the parties to discuss on a call scheduled for January 9, 2025.

23.     During the call on January 9, 2025, counsel for MercyOne informed counsel for the

---

[2]     The OC reserves all rights with respect to any property of the Debtors' estates that is either
        in MercyOne's possession or under MercyOne's control.

OC that counsel for MercyOne had not yet reviewed the Document Requests and would not

consider the OC's meet and confer obligations under the Local Rules met. The parties scheduled

a call for January 17, 2025, to meet and confer regarding the Document Requests. During the call

on January 17, 2025, counsel for MercyOne informed counsel for the OC that it objected at this

time to the Document Requests and corresponding deposition requests, and counsel for MercyOne

agreed that counsel for the OC had met its meet and confer obligations under the applicable rules

in order to be able to seek relief from the Court.

## RELIEF REQUESTED

24.     Pursuant to Bankruptcy Rules 2004 and 9016 and Rule 45 of the Federal Rules of

Civil Procedure, the OC requests entry of an order, substantially in the form attached hereto as

**Exhibit A**, (i) authorizing counsel for the OC to direct a subpoena to MercyOne for production of

the documents and communications set forth in the Document Requests, (ii) directing MercyOne

to produce responsive, non-privileged documents requested in the Document Requests within 21

days of the Court's order, and (iii) authorizing counsel for the OC to direct subpoenas for testimony

to MercyOne, Robert Ritz, and Michael Trachta to testify on matters related to MIC and the

Debtors.

## BASIS FOR RELIEF REQUESTED

**A.      Rule 2004 Entitles the Trust to Broad Discovery Concerning Recovery of Estate Assets**

25.     Bankruptcy Rule 2004 authorizes discovery of any entity by motion of any party in

interest. Bankruptcy Rule 2004 provides in pertinent part:

> (a)     On motion of any party in interest, the court may order examination of any entity.
> (b)     The examination of an entity under this rule or of the debtor under section 343 of the Code may relate only to acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which

may affect the administration of the debtor's estate, or to the debtor's right to a discharge….the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004(a)–(b).[3]

26.     Courts consistently recognize the extremely broad scope of Bankruptcy Rule 2004, which authorizes discovery on a far broader basis than that permitted by the Federal Rules of Civil Procedure. *See In re Apex Oil Co.*, 101 B.R. 92, 102 (Bankr. E.D. Mo. 1989) ("[T]he scope of [Rule 2004] investigation is broader than that of F.R.C.P. 26 discovery."); *In re Drexel Burnham Lambert Group Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards.").

27.     Bankruptcy Rule 2004 provides for "broad" exploration, often analogous to that of a "fishing expedition." *In re Apex Oil Co.*, 101 B.R. at 102; *see also In re Drexel Burnham Lambert Group Inc.*, 123 B.R. at 711 (noting the investigation of an examiner in bankruptcy "can be legitimately compared to a fishing expedition," which can "net the dolphins as well as the tuna."); *In re Youk-See,* 450 B.R. 312, 319-20 (Bankr. D. Mass. 2011) ("The examination [] is of necessity . . . a fishing expedition.").

28.     Bankruptcy Rule 2004 allows the court to "order the examination of any entity relating to the acts, conduct, property, liabilities or financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or the debtor's right to a discharge." *In re Rosenberg*, 303 B.R. 172, 175 (B.A.P. 8th Cir. 2004); *see In re Hughes*, 281 B.R.

---

[3]     A liquidation trust steps into the role of the debtor and may utilize Bankruptcy Rule 2004 to investigate and evaluate potential claims held by the trust. *See In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016).

224, 226 (Bankr. S.D.N.Y. 2002) ("Rule 2004 of the Federal Rules of Bankruptcy Procedure provides courts with the authority to order examinations with respect to the financial matters of debtors . . . ."). Under Bankruptcy Rule 2004 "a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds." *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr. D. Mass. 1983).

29.     Bankruptcy Rule 2004 was specifically designed to authorize discovery relating to the size and nature of the debtors' liabilities and the assets available to meet those liabilities, including the operation of a business and its continuation the source of any money or property acquired or to be acquired by the debtor for the purpose of consummating a plan, and any other matter relevant to the case or the formulation of a plan. *See* Fed. R. Bankr. P. 2004(b).

30.     As a result, "if a third person can be shown to have a relationship with the debtor's affairs, the party is subject to the [Rule] 2004 investigation." *In re Apex Oil Co.*, 101 B.R. at 102; *see also In re Kroh*, 80 B.R. 488, 491 (Bankr. W.D. Mo. 1987) ("[A]n examination under Rule 2004 may be made of any person and may relate to 'any matter which may affect the administration of the debtor's estate.'" (citation omitted)); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

31.     Here, MercyOne had more than just a "relationship" with MIC. In fact, due in part to the Management and Affiliation Agreement, MercyOne had a *substantial* role in overseeing MIC's prepetition operations by and through individuals affiliated with or employed by MercyOne. For example, during the course of the relationship between MIC and MercyOne,

10

MercyOne employed MIC's former CEO Mike Trachta (who also served as director on the Board),

MIC's former CFO Jeff Rooney, former MIC Board member Jack Dusenbery, former MIC Board

member Dave Vellinga, and former MIC Board member Robert Ritz. As a result of MercyOne's

provision of executive officers and members of the Board, MercyOne exercised extensive control

over the financial condition, management, and operation of MIC.

32.     Beyond providing executive officers and board members, MercyOne may have also

supplied MIC with administrative staff, management staff, and legal counsel under the

Management and Affiliation Agreement. For example, during the Management and Affiliation

Agreement, MercyOne's in-house legal counsel, Heather Campbell, provided legal advice to MIC.

33.     Together with the executive, administrative, and management staff, MercyOne was

also supposed to supply MIC with consultants and vendors to ostensibly implement special

projects, including the EMR system, and MIC paid MercyOne and its affiliates a substantial sum

under the Management and Affiliation Agreement. MercyOne cannot plausibly contend that it

lacks documents, communications, and information relevant to MIC's financial condition or

operations nor that this information is not squarely within the scope of Bankruptcy Rule 2004.

**B.      Good Cause Is Established for Rule 2004 Examination of MercyOne**

34.     A party seeking discovery under Bankruptcy Rule 2004 must show "good cause"

for the proposed examination. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627

(Bankr. D. Del. 2016) ("The party seeking to conduct a 2004 examination has the burden of

showing good cause for the examination which it seeks."); *In re Metiom, Inc.*, 318 B.R. 263, 268

(S.D.N.Y. 2004) (party seeking Rule 2004 examination must show good cause).

35.     Good cause is established if, among other things, the information sought is

necessary to establish the validity of a claim or if the examiner would suffer undue hardship or

11

injustice if discovery were denied. *See, e.g.*, *In re Jasper Pellets, LLC*, 647 B.R. 151, 157 (Bankr. D.S.C. 2022) (recognizing that a Rule 2004 examination should be permitted upon a showing that the information sought is needed to establish a claim, investigate and marshal the assets of the debtor, or continue administering the bankruptcy estate and were denial of examination under Rule 2004 would cause a hardship or injustice by interfering with the fiduciary duty to maximize estate assets); *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 627 (good cause exists if information requested is needed to establish claims). In assessing Rule 2004 motions, courts balance the parties' competing interests weighing the relevance of and necessity of the information sought by examination. *Id.*

36.     Here, "good cause" exists to grant the requested Bankruptcy Rule 2004 examination. The requested examination is relevant and "fits squarely within the purposes of Rule 2004," as the OC seeks to "examine third parties for the purpose of 'discovering assets, examining transactions, and determining whether wrongdoing has occurred' on behalf of the Debtor's estate." *In re Millennium Lab Holdings II, LLC*, 562 B.R. at 627 (citation omitted). Moreover, the information the OC seeks from MercyOne is necessary to determine the existence, scope, and viability of potential claims against MercyOne, its affiliates, and any insiders and to balance the benefits of any such claims for the Debtors' creditors against the costs to litigate.

37.     MercyOne is not prejudiced by the Court granting the Motion. Notably, MercyOne has repeatedly asserted to counsel for the OC that it believes it is being unfairly scapegoated by the Debtors and the Liquidation Trust. If MercyOne's position is correct, MercyOne should willingly provide the requested information to the OC to prove it discharged its obligations to the Debtors under the Management and Affiliation Agreement. Moreover, the information sought by the OC should be readily accessible for MercyOne through a search of its document and

12

communication repositories, limiting any burden its production may impose. The Debtors'

creditors, on the other hand, will suffer undue hardship if they are deprived of this information and

not able to properly assess potential causes of action that exist. As explained above, MercyOne is

in sole possession of much of the information necessary to determine the scope of potential causes

of action. Absent the broad discovery powers granted through Bankruptcy Rule 2004, the OC will

be unable to adequately and efficiently pursue any such claims for the benefit of the Debtors'

creditors.

38.     The documents and information sought by the OC directly pertain to MIC's

prepetition assets, including the viability and value of any potential causes of action, the

management and operation of MIC, and the continued administration of the Debtors' cases. Time

is of the essence for the OC in ascertaining the full scope of any adversary actions against

MercyOne.

39.     Based on the foregoing, the OC respectfully submits that good cause exists for this

Court to grant the Motion.

## **NOTICE**

40.     The OC submits that, in light of the nature of the relief requested, no other or further

notice need be given beyond notice to the registered CM/ECF users for this matter, which includes

counsel for MercyOne. The OC has therefore provided adequate notice of this Motion under the

applicable rules.

## **NO PRIOR REQUEST FOR RELIEF**

No previous request for the relief sought herein has been made by the OC to this or any

other Court.

**CONCLUSION**

The OC respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, (i) authoring counsel for the OC to direct a subpoena to MercyOne for production of the documents and communications set forth in the Document Requests, (ii) directing MercyOne to produce responsive, non-privileged documents requested in the Document Requests within 21 days of this Court's order, (iii) authorizing counsel for the OC to direct subpoenas for testimony to MercyOne, Robert Ritz, and Michael Trachta to testify on matters related to MIC and the Debtors and (iv) granting further relief as is just and proper.


Dated:        January 23, 2025              **NYEMASTER GOODE, P.C.**


                                            */s/ Roy Leaf*
                                            Roy Leaf, AT0014486
                                            625 First Street SE, Suite 400
                                            Cedar Rapids, IA 52401-2030
                                            Telephone:    (319) 286-7002
                                            Facsimile:    (319) 286-7050
                                            Email:        rleaf@nyemaster.com

                                            - and -

                                            Leslie C. Behaunek, AT0011563
                                            700 Walnut, Suite 1300
                                            Des Moines, IA 50309
                                            Telephone:  (515) 283-3100
                                            Fax:  (515) 283-8045
                                            Email:        lcbehaunek@nyemaster.com

                                            *Counsel for the Mercy Hospital Liquidation Trust*
                                            *Oversight Committee as Designee of the*
                                            *Liquidation Trustee*

**<u>Certificate of Service</u>**

The undersigned certifies, under penalty of perjury, that on this January 23, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

<u>/s/ *Roy Leaf*   </u>