# **EXHIBIT B**

## **Document Requests**

## DEFINITIONS

For purposes of responding to these document requests (the "Requests" and each, a "Request"), the following definitions shall apply:

1. The term "Affiliation Goals" shall have the meaning set forth in the Management and Affiliation Agreement.

2. The term "Chapter 11 Cases" shall mean the jointly administered chapter 11 cases of MIC and its debtor affiliates pending at case number 23-00623 in the United States Bankruptcy Court for the Northern District of Iowa.

3. The term "CHI" shall mean Catholic Health Initiatives and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on CHI's behalf.

4. The term "Communication(s)" means any Document constituting, reflecting or evidencing any oral or written transmission or receipt of words or information, by whatever manner or means, regardless of how or by whom the communication was initiated, including without limitation: (*i*) any written contact by means such as letter, memorandum, telegram, telex, e-mail, instant message or facsimile and (*ii*) oral contact by any means including face-to-face meetings and telephone. Communications with any entity includes, but is not limited to, communications by or with its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, financial advisor, investment banker, or any other person acting on its behalf.

5. The term "Document" or "Documents" is used in the broadest sense permitted by the Federal Rules of Civil Procedure, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes,

minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, records (*e.g.*, voicemail records), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

6. The term "H2C" means H2C Securities, Inc.

7. The term "Insider" means all of MIC's past and present members, board members, partners, general partners, officers, persons in control, directors, and relatives of such general partners, directors, officers, or persons in control of MIC, and any of the forgoing entities' subsidiaries, directors, officers, assigns, agents, transferees, and affiliates, and any of the foregoing persons' or entities' aliases, and, for the avoidance of doubt, shall also include any 'insider' as that term is understood under section 101(31) of the Bankruptcy Code or as that term is understood in applicable common law.

8. The term "Management Support" shall mean any services provided by MercyOne under the Management and Affiliation Agreement pursuant to "Core Service #3" of Exhibit B of such agreement.

9. The term "Management and Affiliation Agreement" shall mean the Management Services and Strategic Affiliation Agreement executed May 1, 2017, by and between MIC and Mercy Health Network, Inc., as subsequently amended, modified, extended, or otherwise.

10. The terms "MercyOne," "You," or "Your" shall mean Mercy Health Network, Inc. and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on MercyOne's behalf.

11. The term "MIC" shall mean Mercy Hospital, Iowa City, Iowa and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on MIC's behalf.

3

12. The term "Performance Targets" shall mean the performance targets for the first two (2) years of the Management and Affiliation Agreement and for meeting the Affiliation Goals, as described in paragraph 7 of the Management and Affiliation Agreement.

13. The term "Period" shall mean May 1, 2017 to present.

14. The term "Person" shall mean any natural person, partnership, association, firm business organization, business entity, or government agency or body, as well as any divisions, subdivisions, bureaus, offices, or other units thereof.

15. The term "Physician Recruiter" shall have the meaning ascribed to it in Core Services #6, Exhibit B to the Management and Affiliation Agreement.

16. The term "RFP Process" means the request for proposal process conducted by H2C on behalf of MIC that began on or around June 2021, the purpose of which was to search for a long-term strategic partner for MIC, including through a merger, affiliation, partnership, or other similar transaction or type of arrangement.

17. The term "Services" shall be construed to include any work, material, equipment, content, product, information, activities, or advice prepared or provided in relation to any agreement, communication, contract, or Documents between MIC and MercyOne.

18. The term "Strategic Council" shall have the meaning ascribed to it in paragraph 1 of the Management and Affiliation Agreement.

19. The term "TeleHealth Services" shall have the meaning ascribed to it in Core Services #5, Exhibit B to the Management and Affiliation Agreement.

20. The term "Trinity" shall mean Trinity Health and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on Trinity's behalf.

21. The term "Turnaround Management" shall mean any services, work, or assistance provided by MercyOne under paragraph 4 of the Management and Affiliation Agreement. to or for the benefit of MIC, including without limitation business, administrative, operational, compliance, or legal work, related to a change or prospective change in the financial condition, profitability, or expenses of MIC.

22. The terms "referring to" or "relating to" as used in reference to a stated subject means all of the following:

    a.    Containing, comprising, constituting, stating, setting forth, reporting, including, negating or manifesting in any way, whether in whole or in part, that subject; and

    b.    Describing, mentioning, discussing, reflecting, interpreting, identifying, concerning, contradicting, referring to, or in any way pertaining to, whether in whole or in part, that subject.

23. The words "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

24. The term "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." Similarly, "any" shall be construed to include the word "all," and "all" shall be construed to include the word "any."

25. The term "including" means including, but not limited to.

## INSTRUCTIONS

1. All terms defined above shall have the meanings set forth therein, whether capitalized in these Requests or not.

2. The Requests herein are continuing. You shall supplement any production of Documents made in response to any of the Requests and produce promptly any and all responsive

5

Documents that are received, discovered, or created after any of Your responses to these Requests, or that are otherwise within Your possession, custody, or control (or within the possession, custody, or control of anyone acting on Your behalf).

3. These Requests apply to all Documents in Your possession, custody, or control, and include Documents, wherever located, within the possession, custody, or control of Your advisors, affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, parent company, subsidiaries, and other Persons acting or who have acted on behalf of the foregoing entities or individuals referenced in this instruction.

4. If You object to any part of any of these Requests, You shall produce all Documents responsive to the portions of any of the Requests to which the objection does not apply pending the resolution of any such objections and state whether any responsive materials are being withheld on the basis of each such objection.

5. Documents are to be produced in their entirety without abbreviation or expurgation. In making Documents available, all Documents which are physically attached to each other in files shall be made available in that form. Documents which are segregated or separated from other Documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, shall be made available in that form. Documents shall be made available in the order in which they were maintained. If no Document exists that is responsive to a particular Request, You shall so state in writing.

6. If responsive information appears on one or more pages of a multi-page Document, provide the entire Document, including any exhibits or attachments thereto. Except pursuant to a claim of privilege or work product, no Document should be altered, defaced, masked or redacted prior to production.

7. If a Document contains both privileged and non-privileged material, the nonprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed and any redaction must be clearly visible on the redacted Documents.

8. In the event any Document is withheld in part or in whole on a claim of attorney/client privilege, other privilege, or work-product doctrine, provide a detailed privilege log that describes the nature and basis for Your claim and the subject matter of the Document withheld or the portion redacted, in a manner sufficient to disclose facts upon which You rely in asserting Your claim, and to permit the grounds and reasons for withholding the Document to be identified.

9. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

10. The use of the singular form of any word includes the plural and vice versa.

11. If, in responding to the requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

12. Unless otherwise specified herein, the time frame covered by these Requests is the Period.

**ELECTRONICALLY STORED INFORMATION ("ESI") PRODUCTION PROTOCOL**

13. Documents created or stored electronically must be produced in accordance with these instructions. All electronically stored information ("ESI") shall not be printed to paper, but

instead shall be produced in electronic form (the "production set") in a manner that preserves all metadata.

14. Each Document will have its own unique identifier ("Bates number"), which must be consistently formatted across the production, comprising of an alpha prefix and a fixed length number of digits (e.g., "PREFIX0000001").

15. The production set shall consist of, and meet, the following specifications:

    a. <u>Image Files</u>. All ESI will be rendered to single-page, black and white, Group IV *tagged image file* (".tif" or ".tiff") images with a resolution of 300 dpi, wherein the file name for each page is named after its corresponding Bates number. Records in which a color copy is necessary to interpret the document (e.g., photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page *joint photographic experts group* (".jpg" or ".jpeg") format. Endorsements must follow these guidelines:

        i. Bates numbers must be stamped on the lower right hand corner of all images.

        ii. Confidentiality must be stamped on the lower left hand corner of all images.

        iii. Other pertinent language may be stamped on the bottom center, or top of the images, as deemed necessary.

    b. <u>Load Files</u>. All ESI must be produced with appropriate data load files, denoting logical document boundaries. The following files should be included within each production set.

        i. A Concordance delimited ASCII text file (".dat").

A. The .dat file will contain metadata from the original native documents, wherein the header row (*i.e.*, the first line) of the.dat file must identify the metadata fields.

B. The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is not acceptable):

ASCII 020 [¶] for the comma character;

ASCII 254 [þ] for the quote character; and

ASCII 174 [®] for new line.

C. All attachments, or *child* records, should sequentially follow the *parent* record.

D. The following fields and metadata will be produced:

Beginning Bates

Ending Bates

Beginning Bates Attachment

Ending Bates Attachment

Custodian

File Name

From

Recipient

CC

BCC

Subject

9

       Date Sent

       Time Sent

       Last Modified Date

       Last Modified Time

       Author

       Title

       Date Created

       Time Created

       Document Extension

       Page Count

       MD5Hash

       Text Path

       Native File Path

  ii. Image cross-reference files, *Opticon* image file (".opt") and *IPRO View Load* file (".lfp"), which link images to the database and identifies appropriate document breaks.

 c. <u>Text Files</u>. All ESI will be produced in a word searchable, text file format (".txt"), at the document level for all records. Such text files may be delivered as multi-page ASCII or, where appropriate, Unicode text files and named after its corresponding Bates number. All records must include:

  i. *extracted text* for all ESI, at the document level, wherein the text from the record is natively extracted; and/or

10

      ii.      *optical character recognition* ("OCR") text, at the document level, for records where: (1) embedded or extracted text does not exist in the electronic document; (2) the document originated in a hard-copy format; and/or (3) OCR must be run on documents so as not to reveal the contents any redacted material.

The text files may be placed in an individual folder, from which the full path for each text file should correspond to its record in the .dat file and populated under the *Text Path* field.

d.    <u>Native Files</u>. ESI that cannot be interpreted in an image format, or for such that may be voluminous and burdensome when printed to image files, may be produced in its native format, with its file name corresponding to its designated Bates number. Such files include Microsoft Excel, PowerPoint and Access file types, multimedia files (e.g., ".avi", "mpeg", ".wmv", ".mp3", etc.), AUTOCAD files, source code, and other files that may be requested and/or agreed upon by counsel. All native files produced must contain a corresponding image placeholder with appropriate endorsements, as well as extracted text.

**DOCUMENT REQUESTS**

1. Documents, including but not limited to all organizational charts, sufficient to show MercyOne's subsidiaries, parent companies, and the percentage ownership of MercyOne in its subsidiaries.

2. All Documents and Communications referring to or relating to the decision to enter into the First Amendment to the Management and Affiliation Agreement dated September 1, 2019.

3. All Documents and Communications referring to or relating to the Strategic Council.

4. All Documents and Communications referring to or relating to the "Liaison" described in the Management and Affiliation Agreement.

5. All Documents and Communications referring to or relating to Turnaround Management.

6. All Documents and Communications referring to or relating to any IT support provided by MercyOne to MIC pursuant to paragraph 5 of the Management and Affiliation Agreement.

7. All Documents and Communications referring to or relating to the Performance Targets.

8. All Documents and Communications referring to or relating to the Affiliation Goals.

9. Documents sufficient to show all insurance policies held, obtained, or otherwise entered into by MercyOne pursuant to paragraph 20(b) of the Management and Affiliation Agreement including, but not limited to, certificates of insurance and policy Documents.

10. All Documents and Communications referring to or related to the "corporate responsibility program" set forth on Exhibit B to the Management and Affiliation Agreement.

11. All Documents and Communications referring to or related to all Management Support provided by MercyOne to MIC.

12. All Documents and Communications referring to or related to MIC's consultation with legal counsel engaged by MercyOne in accordance with Exhibit B of the Management and Affiliation Agreement.

13. All Documents and Communications in Your possession from MercyOne's retained counsel prepared, drafted, or otherwise created for MIC.

14. All Documents and Communications referring to or related to TeleHealth Services provided by MercyOne to MIC.

15. All Documents and Communications referring to or related to Services provided by the Physician Recruiter to MIC on behalf of MercyOne.

16. All Documents and Communications referring to or related to Services provided to MIC through the "CHI GPO" as set forth by Core Services #7 in Exhibit B to the Management and Affiliation Agreement.

17. All Documents and Communications between MercyOne and CHI related to MIC.

18. All Documents and Communications between MercyOne and Trinity related to MIC.

19. Any and all termination notices provided by MIC or MercyOne pursuant to paragraph 16 of the Management and Affiliation Agreement.

20. All Documents and Communications referring to or related to MIC from January 1, 2023 to June 30, 2023.

21. All Documents and Communications sent, received, created, or otherwise transmitted by or to Robert Ritz related to MIC.

22. All Documents and Communications sent, received, created, or otherwise transmitted by or to David Vellinga related to MIC.

23. All Documents and Communications sent, received, created, or otherwise transmitted by or to Jack Dunsenberry related to MIC.

24. All Documents and Communications sent, received, created, or otherwise transmitted by or to Heather Campbell related to MIC.

25. All Documents and Communications sent, received, created, or otherwise transmitted by or to Jeff Rooney related to MIC in Your possession.

26. All Documents and Communications sent, received, created, or otherwise transmitted by or to Sean Williams related to MIC in Your possession.

27. All Documents and Communications sent, received, created, or otherwise transmitted by or to Mike Trachta related to MIC in Your possession.

28. All Documents and Communications sent, received, created, or otherwise transmitted by or to Douglas Davenport related to MIC.

29. All Documents and Communications sent, received, created, or otherwise transmitted by or to Michael Heinrich related to MIC.

30. All Documents and Communications sent, received, created, or otherwise transmitted by or to Shane Cerone related to MIC.

31. All Communications referring to or related to H2C.

32. All Documents and Communications referring to or related to the RFP Process.

33. All Documents and Communications referring to or related to any proposals, efforts, agreements, or otherwise from the State University of Iowa to merge with, buy, affiliate with, or otherwise acquire MIC from January 1, 2021 to present.

34. All Documents and Communications referring to or relating to the identification, recruiting, and hiring investigation of Sean Williams as candidate for the chief executive officer position at MIC.

35. All Documents and Communications referring to or relating to the presentation of Sean Williams as candidate for the chief executive officer position at MIC to the board of directors of MIC.

36. All Documents and Communications referring to or relating to the identification, recruiting, and hiring investigation of any other candidate for the chief executive officer position at MIC who was presented to the board of directors of MIC for consideration substantially contemporaneously with the presentation of Sean Williams.

37. All Documents and Communications referring to or relating to the presentation to the board of directors of MIC of any other candidate for the chief executive officer position at MIC for consideration substantially contemporaneously with the presentation of Sean Williams.

38. All Documents and Communications referring to or related to Sean Williams' performance improvement plan.

39. All Documents and Communications referring to or related to Sean Williams' MercyOne employee personnel file created during the Period.

40. All Documents and Communications referring to or related to performance evaluations of Sean Williams completed by any Person affiliated with MIC.

41. All Documents and Communications referring to or related to Sean Williams' work on behalf of MercyOne while serving as chief executive officer of MIC.

42. All Documents and Communications referring to or relating to the identification, recruiting, and hiring investigation of Mike Trachta as candidate for the chief executive officer position at MIC.

43. All Documents and Communications referring to or relating to the presentation of Mike Trachta as candidate for the chief executive officer position at MIC to the board of directors of MIC.

44. All Documents and Communications referring to or relating to the identification, recruiting, and hiring investigation of any other candidate for the chief executive officer position at MIC who was presented to the board of directors of MIC for consideration substantially contemporaneously with the presentation of Mike Trachta.

45. All Documents and Communications referring to or relating to the presentation to the board of directors of MIC of any other candidate for the chief executive officer position at MIC for consideration substantially contemporaneously with the presentation of Mike Trachta.

46. All Documents and Communications referring to or related to Mike Trachta's performance improvement plan.

47. All Documents and Communications referring to or related to Mike Trachta's MercyOne employee personnel file created during the Period.

48. All Documents and Communications referring to or related to performance evaluations of Mike Trachta completed by any Person affiliated with MIC.

49. All Documents and Communications referring to or related to Mike Trachta's work on behalf of MercyOne while serving as chief operations officer of MIC.

50. All Documents and Communications referring to or related to Mike Trachta's work on behalf of MercyOne while serving as chief executive officer of MIC.

51. All Documents referring or related to meetings of the MIC board of directors including, but not limited to, meeting minutes, meeting agendas, corporate resolutions, Excel spreadsheets, and PowerPoint presentations.

52. All Documents and Communications referring to or relating to any performance review, evaluation, or performance measurement for any Person employed by MercyOne that served as an officer of MIC, including without limitation any Documents or Communications used or reviewed in the preparation of any review, evaluation, or performance measurement.

53. All Documents and Communications referring to or relating to Dawna Miller.

54. All Documents and Communications referring to or relating to Judy Andronowitz.