IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**TRUST OVERSIGHT COMMITTEE'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER REQUIRING MERCYONE TO PRODUCE RECORDS AND SUBMIT TO EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

COMES NOW the Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidation Trustee (the "OC") of the Mercy Hospital, Iowa City, Iowa Liquidation Trust (the "Liquidation Trust"), by and through its counsel Roy Leaf and Leslie Behaunek of Nyemaster Goode P.C., and respectfully submits this reply (the "Reply") in support of the *Trust Oversight Committee's Motion for Entry of Order Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* [Docket No. 1545] (the "Motion") and, in support thereof, respectfully states:

**REPLY**

1. The objection filed by MercyOne[1] [Docket No. 1554] (the "MercyOne Objection") contains a number of factually unsupported and incorrect accusations against the OC and its counsel. This Reply will largely ignore these attacks as they are not relevant to the Motion and the OC's entitlement to information under Bankruptcy Rule 2004.[2] For example, the MercyOne

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

[2] For the avoidance of doubt, the undersigned counsel unequivocally denies the accusations by MercyOne that counsel for the OC has "knowingly" filed an improper pleading with this Court. Counsel for the OC takes

1

Objection selectively highlights certain "first day" motions filed by the undersigned counsel on behalf of the Debtors as apparent evidence that the Debtors and the OC are only now, in some immediate about-face, unfairly "scapegoating" MercyOne. *MercyOne Objection*, p. 3. In pursuing its theory that it is being victimized, MercyOne ignores other pleadings prepared and filed early in the Chapter 11 Cases listing potential causes of action against MercyOne, such as the *Notice and Initial Report on Potential Actions or Proceedings* [Docket No. 457] (the "Initial Report"). The Initial Report, filed approximately three months into the Chapter 11 Cases, discloses the Debtors as having potential fraudulent transfer causes of action under Bankruptcy Code section 548 based on the $4,020,062.06 paid to MercyOne in the two years prior to the Petition Date. MercyOne's potentially significant liability to the Debtors is not, as MercyOne claims, a new issue in this case.

2.  In fact, based on the OC's initial investigation, the Debtors paid over $14,000,000.00 to MercyOne purportedly on account of the Management and Affiliation Agreement in the less than six years the agreement was in place. As set forth in the Motion, during this time, the Debtors continued a precipitous financial decline and burned through approximately $100,000,000.00 of cash reserves.[3]

3.  The financial and operational difficulties that the Debtors experienced in the years leading to the Chapter 11 Cases were obviously complex. The OC and its counsel have never suggested that MercyOne is the *sole* reason for the Chapter 11 Cases. MercyOne, however, received substantial sums of money to manage MIC during the time MIC's financial decline

---

with the utmost seriousness their legal and ethical obligations—including the duties of candor to this Court and fairness to opposing counsel. MercyOne has no basis in fact or law for this accusation.

[3] According to Moody's Investment Service's August 15, 2018 credit opinion, MIC had approximately $116,000,000.00 in unrestricted cash reserves. *See* https://emma.msrb.org/ER1144039-ER895154-ER1295704.pdf. As of the Petition Date approximately 5 years later, MIC had approximately $15,000,000.00 in unrestricted cash reserves. *Mercy Hospital Iowa City, Iowa Statement of Assets and Liabilities*, Schedule A/B [Docket No. 135].

rapidly accelerated. Basic logic and the duties to the Debtors' creditors dictate that further investigation by the OC is needed.

4. The facts and circumstances surrounding MercyOne and the money it received alone demonstrate substantial and compelling good cause for a Bankruptcy Rule 2004 examination. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 628–29 (Bankr. D. Del. 2016) ("The Trustee has testified that the examinations are necessary to 'enable the Plan Trusts to determine the scope of viable claims that may exist on behalf of the Plan trusts against potential third parties that may be culpable for causing such harm to the Debtors'…[a]s such, the Trustee has demonstrated good cause warranting granting of the Trustee's Rule 2004 Motion."). Any potential causes of action against MercyOne are estate property under Bankruptcy Code section 541. 11 U.S.C. § 541(a)(1). Bankruptcy Rule 2004 examinations are proper and necessary tools for any party in interest—including fiduciaries of a debtor's estate—to obtain information related to these potential causes of action and estate property. *See, e.g.*, Fed. R. Bank. P. 2004(b)(1); *Motor Coach Indus. Inc. v. Drewes* (*In re Rosenberg*), 303 B.R. 172, 175 (B.A.P. 8th Cir. 2004) ("The scope of the requested examination related to the claim which was listed as an asset of the estate. Accordingly, the examination ordered by the court was within the scope of Rule 2004.").

5. Nowhere in the MercyOne Objection does MercyOne deny that it has information related to the Debtors' property, financial condition, or liabilities. The MercyOne Objection spends a significant portion of its 24 pages reciting MercyOne's version of certain events. Rather than claiming it lacks information, MercyOne claims it has <u>so</u> much information that it would be too burdensome for MercyOne to be required to produce it. *MercyOne Objection*, ¶ 52.

6. Clearly, there is no dispute that MercyOne has substantial information that is

3

covered by the plain text of Bankruptcy Rule 2004. Lacking this argument to prevent entry of an order granting the Motion, MercyOne's turns to claiming that it would suffer undue burden responding to the Motion and that the Motion was brought to "harass" it.

7. <u>First</u>, the burden to MercyOne is not "undue." As noted above, MercyOne received approximately $14,000,000.00 from the Debtors during the course of the Management and Affiliation Agreement. Moreover, MercyOne maintained control of MIC through finding and "leasing" executive employees and holding three seats on MIC's board of directors (the "<u>Board</u>"). Former directors on the Board have reported that MercyOne held considerable sway based on its perceived expertise (for which it was being paid millions of dollars). It strains credulity for MercyOne to now argue that it is disproportionate or excessive for it to have to produce any documents and communications from its six-year relationship with the Debtors in light of the substantial fees it received and control it exerted.

8. MercyOne also claims that it is unduly burdened because the "OC (or the Liquidation Trustee) succeeded to all of MIC's emails, documents, and ESI" and, therefore, there is no need for MercyOne to have to produce the specific documents and communications related to MIC requested by the OC. *MercyOne Objection*, ¶ 52.

9. While the OC does have access to some of the Debtors' emails and documents, the OC does not have access to MercyOne's servers and electronic databases.[4] Based on the OC's review, the MercyOne employees who served on the Board did not have MIC email addresses and, <u>instead</u>, used their MercyOne emails to communicate about MIC. These emails, of course, would

---

[4] Further, it should be noted that the Document Requests were narrowly tailored to seek only the categories of documents that may be in MercyOne's possession, custody, or control and which the OC believes may not already be in its possession. The Document Requests were drafted carefully to limit requests to the information needed to examine potential claims, so as not to impose undue burden on MercyOne.

4

not be in the OC's possession if they were sent to individuals that did not have MIC email addresses. Further, based on the OC's review, MIC's CEOs appointed by MercyOne sent and received numerous documents and communications to and from email addresses affiliated with MercyOne and Common Spirit while they were serving as MIC CEO. Thus, if MIC's CEOs appointed by MercyOne were communicating with individuals who did not have an MIC email address, MIC does not have access to such emails—but MercyOne does. Based on this review, the OC believes that MercyOne has a significant number of documents and communications related to MIC in its possession that the OC does not possess. This is squarely within the scope of a Bankruptcy Rule 2004 examination. *Millennium Lab Holdings II, LLC*, 562 B.R. at 628–29 ("The fact that the Trustee already has access to certain documents and information of the Debtors <u>does not detract from the Trustee's testimony that the documents already in his purview are not sufficient to determine the scope of the Trustee's viable claims</u>. As such, the Trustee has demonstrated good cause warranting granting of the Trustee's Rule 2004 Motion…" (emphasis added)).

10. MercyOne's claims about H2C and undue burden highlight the intellectual friction throughout the MercyOne Objection. MercyOne claims that it was "largely excluded" from discussions with H2C Securities, Inc. ("H2C") about the 2021 sale process that did not yield a buyer for MIC. *MercyOne Objection*, ¶ 22. However, the engagement letter that Sean Williams—the former MIC chief executive officer who was also formerly employed by MercyOne—executed on behalf of MIC in 2021 provides differently. *See Debtors' Application for Entry of Order (I) Authorizing the Employment and Retention of H2C Securities, Inc. as Investment Banker to the Debtors and Debtors-in-Possession, Nunc Pro Tunc to the Petition Date, (II) Approving the Terms of the H2C Engagement Letter, (III) Waiving Certain Time-Keeping Requirements, and (IV)*

5

*Granting Related Relief*, Ex. A, Annex 1 [Docket No. 150]. Section 6(b) of the 2021 H2C engagement agreement provides that H2C is required to generally maintain strict confidentiality related to the sale process <u>provided, however</u> that "the obligations of confidentiality contained herein shall not apply to i) disclosure of any information to MercyOne in its capacity of manager of the [MIC]…" *Id.* Further, "[a]ny financial advice (oral or written) rendered by H2C pursuant to this Agreement is intended solely for the benefit and use of the senior management of the Company, <u>MercyOne in its capacity as manager of the Company</u> and the Board of Directors of [MIC]." *Id.* (emphasis added).

11. Notwithstanding the language in the 2021 H2C engagement letter providing MercyOne access to confidential information related to the sale process, if MercyOne was indeed "largely excluded" from the process as it claims, then the burden on it to produce responsive documents and communications will be small and not "undue." If, however, individuals associated with MercyOne were more involved in the sale process (which counsel for the OC, on information and belief, believes may be true), this information is clearly a necessary and proper subject of a Bankruptcy Rule 2004 examination. *Millennium Lab Holdings II, LLC*, 562 B.R. at 628–29 (finding good cause for the Bankruptcy Rule 2004 examination requested by a plan trustee in order to, among other things, allow it to properly evaluate the claims that were under the trustee's supervision).

12. MercyOne's claims that it would be unduly financially burdened by the production of the documents and communications related to MIC are another example of the discord present in MercyOne's attempts to defeat the Motion. MercyOne contents that being required to respond to the Document Requests and sit for three examinations would "cost thousands if not hundreds of thousands of dollars." *MercyOne Objection*, ¶ 52. As a threshold matter, it is evident from

MercyOne's Objection that MercyOne has not undertaken a search for the requested Bankruptcy Rule 2004 documents to identify the volume of documents that would actually be responsive to the OC's Document Requests. Ascertaining the financial burden associated with undertaking the search, review, and production process is therefore entirely speculative by MercyOne at this juncture.[5] Well settled law requires MercyOne, as the party asserting that an undue burden exists, to conduct a review of the requested records and specifically identify the expense and hardship it would suffer. MercyOne, however, has not identified any costs, the number of documents, reviewer hours, or any other relevant metric to suggest that it would suffer an undue burden. *See In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. 761, 767 (Bankr. D.N.M. 2014) (requiring the party objecting on the basis of undue burden to demonstrate that the burden is in fact undue by conducting an initial review of the requested information and identifying the specific cost that would be involved).

13. Further, this argument about financial burden by MercyOne falls flat when litigation history is taken into account. MercyOne has spent thousands—if not hundreds of thousands of dollars—in legal fees objecting to and appealing this Court's confirmation of the Combined Disclosure Statement and Plan on the basis its $31,524.63 unsecured claim. The Debtors' estates have borne the expense of these litigation tactics. MercyOne now contends that it should be protected from the further incurrence of cost where such cost could assist the OC's investigation of potential claims that could bring substantial value back to the Debtors' estates.

14. Additionally, undersigned counsel met and conferred multiple times with counsel

---

[5] MercyOne also raises issue with what it terms the "byzantine and onerous requests for metadata and ESI." *MercyOne Objection,* ¶ 43. Undersigned counsel understands this concern to be aimed at the "Electronically Stored Information ("ESI") Production Protocol" set forth on pages 7-11 of Exhibit B to the Motion ("ESI Protocol"). This type of ESI Protocol is standard in cases involving the production of ESI, particularly where the native file format is requested.

7

for MercyOne in an attempt to identify any potential areas to narrow the Document Requests based on MercyOne's review of those requests, and MercyOne did not identify *any* areas to narrow the requests. Instead, its counsel encouraged the OC to bring its Motion to the Court for adjudication with the Document Requests remaining in their original scope. To now claim such requests are unduly burdensome, and to identify objections to specific requests on a variety of bases including attacking the scope of the Document Requests, undermines the entire purpose of the meet and confer process contemplated by the Local Rules. Counsel for the OC engaged in good faith at all times throughout this meet and confer process. The OC should not be penalized at this juncture and either delayed or prevented from obtaining the full scope of Bankruptcy Rule 2004 discovery because of MercyOne's litigation tactics.

15.     In sum, MercyOne has not established that the burden associated with the requested Bankruptcy Rule 2004 discovery is undue. The Document Requests are narrowly tailored and seek specific categories of documents for a limited time range.[6] The Motion should be granted in full.

16.     Second, MercyOne's claims that the Motion is aimed at harassing MercyOne could not be further from the truth. The OC had been trying to work with MercyOne for over two months to enter into a tolling agreement, explore settlement, and agree to a consensual scope of Bankruptcy Rule 2004 production as contemplated by the Local Rules. MercyOne has repeatedly rejected the OC's offers to try and resolve these issues without Court involvement. Indeed, as noted above, during the meet and confers required by the Local Rules, MercyOne's counsel refused to consensually produce a single document and further refused to provide any input about how the Document Requests could be narrowed, instructing counsel for the OC to file the Motion so

---

[6] MercyOne and MIC began discussions on a merger, affiliation, or management agreement in 2014. The Document Requests, however, largely only seek requests from May 1, 2017 to present and on a tailored category of topics. *Motion*, Ex. B (defining "Period" to "mean May 1, 2017 to present").

MercyOne could object in full.

17.    To date, the actions of MercyOne appear to be aimed at preventing the OC from investigating and pursuing any potential causes of action against it. Bankruptcy Rule 2004 is the proper tool for the OC to examine and evaluate for the benefit of all of the Debtors' creditors MercyOne's role in MIC's financial free fall.

18.    Good cause exists for the Document Requests and three oral examinations requested in the Motion. As such, the Court should summarily deny MercyOne's motion for a protective Order.[7] The OC respectfully requests the Court grant the Motion in full and order MercyOne to produce documents and communications within 21 days.

*[Remainder of the Page Intentionally Left Blank]*

---

[7] It should be noted that MercyOne's argument about two of the Document Requests seeking privileged information is inaccurate. *See MercyOne Objection*, ¶ 56. Request No. 12 seeks "Documents and Communications referring to or related to MIC's consultation with legal counsel engaged by MercyOne in accordance with Exhibit B of the Management and Affiliation Agreement," and Request No. 24 seeks "Documents and Communications sent, received, created, or otherwise transmitted by or to Heather Campbell related to MIC." *See* Exhibit B to the Motion. Any documents that reflect MIC's consultation with legal counsel engaged by MercyOne includes privilege that can be waived by the OC and is, by such request, being waived by the OC. Any documents that are responsive to Request No. 24 that similarly fall within MIC's ability to waive privilege.

## CONCLUSION

The OC respectfully requests that the Court overrule the MercyOne Objection, deny MercyOne's motion for protective order, enter the Proposed Order attached to the Motion as Exhibit A, and grant any other relief that is just and equitable.

Dated: February 10, 2025 **NYEMASTER GOODE, P.C.**

*/s/ Roy Leaf*
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone: (319) 286-7002
Facsimile: (319) 286-7050
Email: rleaf@nyemaster.com

- and -

Leslie C. Behaunek, AT0011563
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: lcbehaunek@nyemaster.com

*Counsel for the Mercy Hospital Liquidation Trust Oversight Committee as Designee of the Liquidation Trustee*

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this February 10, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

*/s/ Roy Leaf*