# **EXHIBIT B**
## **Document Requests**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.* | ) ) ) | Case No. 23-00623 (TJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**MERCYONE HEALTH NETWORK, INC.'S**
**RULE 2004 EXAMINATION REQUESTS**

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Mercy Health Network, Inc., d/b/a MercyOne ("MercyOne"), by its attorneys, Foley & Lardner LLP and Belin McCormick P.C., hereby requests that the Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidating Trust (the "OC") of the Mercy Hospital, Iowa City, Iowa Liquidation Trust respond to the following document requests contained herein.

_____, 2025

| | |
|---|---|
| */s/ Christopher J. Jessen* | */s/David B. Goroff* |
| Michael R. Reck | Edward J. Green (*Pro Hac Vice*) |
| Christopher J. Jessen | David B. Goroff (*Pro Hac Vice*) |
| **BELIN McCORMICK, P.C.** | **FOLEY & LARDNER LLP** |
| 666 Walnut Street, Suite 2000 | 321 N. Clark Street, Suite 3000 |
| Des Moines, Iowa 50309 | Chicago, IL 60654 |
| Tel: (515) 243-7100 | Tel: (312) 832-4500 |
| Fax: (515) 558-0675 | Fax: (312) 832-4700 |
| mrreck@belinmccormick.com | egreen@foley.com |
| cjessen@belinmccormick.com | dgoroff@foley.com |
| | |
| | Jake W. Gordon (*Pro Hac Vice*) |
| | **FOLEY & LARDNER LLP** |
| | 500 Woodward Avenue, Suite 2700 |
| | Detroit, MI 48226 |
| | Tel: (248) 943-6484 |
| *Counsel to Mercy Health Network, Inc., d/b/a MercyOne* | jake.gordon@foley.com |

4935-5581-1118.2

**DEFINITIONS**

For purposes of responding to these document requests (the "<u>Requests</u>" and each, a "<u>Request</u>"), the following definitions shall apply:

1. The term "Agreement" shall mean the Management Services and Strategic Affiliation Agreement executed May 1, 2017, by and between MIC and Mercy Health Network, Inc., as subsequently amended, modified, extended, or otherwise.

2. The term "Allscripts" shall mean Allscripts and its subsidiaries, officers, members, managers, employees, successors and affiliates, including any agent, representative, person or entity acting or purporting to act on Allscripts' behalf.

3. The term "Altera" shall mean Altera f/k/a Allscripts and its subsidiaries, officers, members, managers, employees, predecessors and affiliates, including any agent, representative, person or entity acting or purporting to act on Altera's behalf.

4. The term "Bankruptcy" or "Chapter 11 Cases" shall mean the jointly administered chapter 11 cases of MIC and its debtor affiliates pending at case number 23-00623 in the United States Bankruptcy Court for the Northern District of Iowa.

5. The term "Communication(s)" means any Document constituting, reflecting or evidencing any oral or written transmission or receipt of words or information, by whatever manner or means, regardless of how or by whom the communication was initiated, including without limitation: (I) any written contact by means such as letter, memorandum, telegram, telex, e-mail, instant message or facsimile and (II) oral contact by any means including face-to-face meetings and telephone. Communications with any entity includes, but is not limited to, communications by or with its subsidiaries, divisions, subdivisions, affiliates, predecessor and

2

successor entities, partners, officers, directors, employees, agents, legal counsel, financial advisor, investment banker, or any other person acting on its behalf.

6. The term "Confirmation Hearing" shall mean the hearing to confirm the Debtors' plan of liquidation on May 16, 2024, before United States Bankruptcy Court for the Northern District of Iowa.

7. The term "CON" shall mean the Certificate of Need to build a hospital in North Liberty, Iowa.

8. The term "Document" or "Documents" is used in the broadest sense permitted by the Federal Rules of Civil Procedure, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), any electronically stored information, records (*e.g.*, voicemail records), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

9. The term "Debtors" shall mean (a) Mercy Hospital, Iowa City, Iowa, (b) Mercy Services Iowa City, Inc., and (c) Mercy Iowa City ACO, LLC, in their capacity as debtors and debtors-in- possession in the Chapter 11 Cases.

10. The term "EMR" shall mean MIC's electronic medical records.

11. The term "First Day Declaration" shall mean the *Declaration of Mark E. Toney in Support of Chapter 11 Petitions and First Day Pleadings* filed at Docket No. 27.

12. The term "H2C" means H2C Securities, Inc. and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on H2C's behalf.

3

13. The term "Insight Health Partners" shall mean Insight Health Partners [Inc.] and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on Insight Health Partners' behalf.

14. The terms "MercyOne," shall mean Mercy Health Network, Inc. and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on MercyOne's behalf.

15. The term "MIC" shall mean Mercy Hospital, Iowa City, Iowa and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on MIC's behalf.

16. The term "MIC Board" or "Board" shall mean the board of directors at MIC.

17. The term "MWE" shall mean McDermott Will and Emery and its professionals serving as MIC's attorneys.

18. The term "Motion" or "OC's Motion" shall mean the *Trust Oversight Committee's Motion for Entry of Order Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* filed at Docket No. 1545.

19. The term "Navigant" shall mean Navigant and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on Navigant's behalf.

20. The term "Person" shall mean any natural person, partnership, association, firm business organization, business entity, or government agency or body, as well as any divisions, subdivisions, bureaus, offices, or other units thereof.

21. The term "Preston Hollow" shall mean Preston Hollow Community Capital, Inc., and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on PH's behalf.

22. The term "OC" "You," or "Your" shall mean the Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidating Trust of the Mercy Hospital, Iowa City, Iowa Liquidation Trust and its professionals, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on OC's behalf.

23. The term "ToneyKorf" shall mean ToneyKorf Partners, LLC and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on ToneyKorf's behalf.

24. The term "UIHC" shall mean the University of Iowa Hospitals and Clinics and its officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on UIHC's behalf.

25. The term "Vizient" shall mean Vizient, Inc. and its subsidiaries, officers, members, managers, employees, and affiliates, including any agent, representative, person or entity acting or purporting to act on Vizient's behalf.

26. The term "evidencing" as used in reference to a stated subject shall mean containing, comprising, constituting, stating, setting forth, reporting, including, negating or manifesting in any way, whether in whole or in part, that subject; and

27. The term "related to" or "relating" as used in reference to a stated subject shall mean describing, mentioning, discussing, reflecting, interpreting, identifying, concerning, contradicting, referring to, or in any way pertaining to, whether in whole or in part, that subject.

5

28. The term "referring to" as used in reference to a stated subject shall mean specific word(s) that may be used in a specific word search.

29. The words "and" and "or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

30. The term "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." Similarly, "any" shall be construed to include the word "all," and "all" shall be construed to include the word "any."

31. The term "including" means including, but not limited to.

## INSTRUCTIONS

1. Nothing in the Requests is intended to include Documents and/or Communications that are believed to be, in good faith, subject to attorney-client privilege.

2. All terms defined above shall have the meanings set forth therein, whether capitalized in these Requests or not.

3. The Requests herein are continuing. You shall supplement any production of Documents made in response to any of the Requests and produce promptly any and all responsive Documents that are received, discovered, or created after any of Your responses to these Requests, or that are otherwise within Your possession, custody, or control (or within the possession, custody, or control of anyone acting on Your behalf).

4. These Requests apply to all Documents in Your possession, custody, or control, and include Documents, wherever located, within the possession, custody, or control of Your advisors, affiliates, agents, attorneys, accountants, consultants, employees, experts, investment bankers, representatives, parent company, subsidiaries, and other Persons acting or who have acted on behalf of the foregoing entities or individuals referenced in this instruction.

6

4935-5581-1118.2

5. If You object to any part of any of these Requests, You shall produce all Documents responsive to the portions of any of the Requests to which the objection does not apply pending the resolution of any such objections and state whether any responsive materials are being withheld on the basis of each such objection.

6. Documents are to be produced in their entirety without abbreviation or expurgation. In making Documents available, all Documents which are physically attached to each other in files shall be made available in that form. Documents which are segregated or separated from other Documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, shall be made available in that form. Documents shall be made available in the order in which they were maintained. If no Document exists that is responsive to a particular Request, You shall so state in writing.

7. If responsive information appears on one or more pages of a multi-page Document, provide the entire Document, including any exhibits or attachments thereto. Except pursuant to a claim of privilege or work product, no Document should be altered, defaced, masked or redacted prior to production.

8. If a Document contains both privileged and non-privileged material, the nonprivileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed and any redaction must be clearly visible on the redacted Documents.

9. In the event any Document is withheld in part or in whole on a claim of attorney/client privilege, other privilege, or work-product doctrine, provide a detailed privilege log that describes the nature and basis for Your claim and the subject matter of the Document withheld

4935-5581-1118.2

or the portion redacted, in a manner sufficient to disclose facts upon which You rely in asserting Your claim, and to permit the grounds and reasons for withholding the Document to be identified.

10. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

11. The use of the singular form of any word includes the plural and vice versa.

12. If, in responding to the requests, you encounter any ambiguities when construing a request or definition, your response shall set forth the matter deemed ambiguous and the construction used in responding.

13. Unless otherwise specified herein, the time frame covered by these Requests is January 2017 through August 7, 2023.

14. The Electronically Stored Information ("ESI") production protocol shall be the same as MercyOne's production of documents to the OC (unless otherwise agreed in writing by the parties).

## RULE 2004 REQUESTS FOR PRODUCTION

1. All Documents and Communications referring to the "control" of MIC by its Board.

2. All Documents and Communications referring to MercyOne being an "independent contractor" to MIC.

3. All Documents and Communications evidencing control by MercyOne over any of the financial condition, operation and management of MIC, as alleged by the OC in its Motion at Paragraph 31.

4. All Documents and Communications referring to the relationship between MIC and MercyOne under the Agreement as being at "arm's length."

8

5. All Documents and Communications referring to the "strategic affiliation relationship" between MIC and MercyOne.

6. All Documents and Communications evidencing consideration by MIC of other providers of management or management-related services during the period of the Agreement.

7. Documents and Communications sufficient to show the need of MIC to "improve . . . financial operations" in the period prior to contracting with MercyOne.

8. All Documents and Communications referring to the impact of COVID on MIC's operations, financial performance and/or viability, including but not limited to its impact on patient volume, reimbursement rates, liquidity and/or cash flows.

9. All Documents and Communications evidencing the impact of COVID on MIC's net income.

10. All Documents and Communications evidencing the Board's role and involvement in the selection of Allscripts (and/or Altera) as the provider of the EMR system to MIC.

11. All Documents and Communications evidencing the ways in which the EMR system provided by Allscripts (and/or Altera) to MIC failed to perform, including but not limited to any difficulties in coding, billing and collecting for patient encounters, an inability to submit regulatory reports on time and misconfigured workflows attributable to these failures and all causes identified for each such failure.

12. All Documents and Communications evidencing the role of failures of the EMR system provided by Allscripts (and/or Altera) in MIC's failure and/or its decision to file the Chapter 11 Cases.

13. All Documents and Communications referring to the requirement that an EMR system for MIC comply with the "meaningful use" requirements of the Affordable Care Act.

9

14. All Documents and Communications evidencing the role that failures of the EMR system provided by Allscripts (and/or Altera) played in MIC's losses of net income for each of 2022 and 2023.

15. All Documents and Communications evidencing the retention by MIC of Vizient regarding its EMR conversion.

16. All Documents and Communications evidencing the role failures of the EMR system played in any delay of patient bills, backlog of accounts receivable or inability to timely collect accounts receivable.

17. All Documents and Communications evidencing MIC's consideration of alternatives to the filing of a chapter 11 bankruptcy, including but not limited to, its reasons for rejecting each alternative.

18. All nonprivileged Documents and Communications evidencing MWE's role in MIC's consideration of alternatives to the filing of a Chapter 11 bankruptcy.

19. All Documents and Communications evidencing ToneyKorf's role in MIC's consideration of alternatives to the filing of a chapter 11 bankruptcy.

20. All Documents and Communications relating to H2C's role in the filing of the Chapter 11 Cases, as well as regarding any consideration or rejection of alternatives to such a filing.

21. All Documents and communications evidencing negotiations between Debtors and Allscripts and/or Altera for a release of claims in the Chapter 11 Cases.

22. A copy of any agreement between Debtors and Allscripts and/or Altera which contains a release of claims.

10

23. Documents and Communications sufficient to show MIC's compliance with its obligations under the Agreement.

24. Documents and Communications sufficient to identify each member of MIC's Board for the period of 2017 to the date of the termination of the Agreement who was not a MercyOne designee.

25. Documents and Communications sufficient to identify each officer of MIC and/or member of MIC's senior management for the period of 2017 to the date of the termination of the Agreement who was not provided by MercyOne, including the employer of each such member.

26. All Documents and Communications evidencing the townhall meetings referenced by Mr. Mark Toney in his testimony at the Confirmation Hearing at which MercyOne was allegedly mentioned, including, but not limited to, all minutes, transcripts, recording, reports or other records of such townhall meetings.

27. All Documents and Communications evidencing the statements by Mr. Toney about Preston Hollow referenced in his First Day Declaration.

28. All Documents and Communications evidencing negotiations between Preston Hollow and Debtors for a release of claims in the Chapter 11 Cases.

29. A copy of any agreement between Debtors and Preston Hollow which contains a release of claims.

30. All Documents and Communications evidencing negotiations between H2C and Debtors for a release of claims in the Bankruptcy.

31. A copy of any agreement between Debtors and H2C which contains a release of claims.

32. All Documents and Communications evidencing the "events that precipitated MIC's chapter 11 filing" as referenced in the OC's Motion.

33. All Documents and Communications evidencing UIHC's acquisition of practices of MIC, including but not limited to the impact any such acquisition had on MIC's operations, financial performance or viability or its decision to pursue bankruptcy.

34. All Documents and Communications evidencing UIHC's demotion of MIC from UIHC's preferred tier payor/provider network, including but not limited to the impact that demotion had on MIC's operations, financial performance or viability.

35. All Documents and Communications evidencing the recommendation by MercyOne that MIC join the CommonSpirit Group Purchasing Organization.

36. All Documents and Communications evidencing the rejection by the MIC Board of the recommendation that MIC join the Common Spirit Group Purchasing Organization, including the reasons for that rejection.

37. All Documents and Communications evidencing the work of Insight Health Partners for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

38. All Documents and Communications evidencing the work of Navigant for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

39. All Documents and Communications evidencing the work of Vizient for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

4935-5581-1118.2

40. Documents and Communications sufficient to show that MIC reported "over $100,000,00 in operating losses," as set forth in paragraph 2 of the OC's Motion.

41. Documents and Communications sufficient to show the rates charged by MWE to MIC and amounts paid to MWE prior to Bankruptcy.

42. Documents and Communications sufficient to show the rates charged by ToneyKorf to MIC and amounts paid to ToneyKorf prior to the Bankruptcy.

43. All Documents and Communications evidencing the effect that the approval of a CON sought by UIHC to build a hospital in North Liberty, Iowa had on MIC, including, but not limited to staff retention.

44. All Documents and Communications evidencing executive sessions of the Board from which MercyOne and/or its representatives were excluded, including sessions regarding potential buyers of MIC.

45. All Documents and Communications evidencing a more than $605 million offer by UIHC in or about August 2021 to take ownership of MIC, including any reasons for MIC not pursuing or rejecting this offer.

46. All Documents and Communications evidencing efforts by H2C to find a buyer for MIC which did not include MercyOne's participation.

47. All Documents and Communications evidencing MercyOne's advice to MIC not to use a bankruptcy as a means to sell the organization, including but not limited to the response to that advice by MIC or any professional retained by MIC (apart from MercyOne).

48. All Documents and Communications provided to Moody's Investors Service by MIC prior to its March 16, 2023 downgrade.

13

49. All Documents and Communications evidencing reactions to and steps taken in response to Moody's warning on March 16, 2023, that there could be a further downgrading were there a "discontinuation of the relationship with MercyOne before a new partner or affiliation is established."

50. All Documents and Communications evidencing Preston Hollow's demand in or about June 2023 that MIC senior management be replaced, including but not limited to MIC's analysis of and response to this demand.

51. All Documents and Communications evidencing the impact that Preston Hollow's notice of acceleration on or about July 24, 2023, had on MIC, including but not limited to on its operations, financial condition or viability.

52. All Documents and Communications evidencing the impact that Preston Hollow's receivership action filed in Iowa State Court on or about July 24, 2023 had on MIC, including but not limited to on its operations, financial condition or viability.

53. All Documents and Communications evidencing the improvement of the funding of pension liabilities by MIC during the tenure of MercyOne.