## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | ) | Case No. 23-00623 (TJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

### TRUST OVERSIGHT COMMITTEE'S RESISTANCE AND OBJECTION TO MERCY HEALTH NETWORK INC.'S MOTION FOR ENTRY OF AN ORDER REQUIRING THE OC TO PRODUCE RECORDS AND SUBMIT TO EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004

COMES NOW, Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidation Trustee (the "OC") and hereby resists and objects to the relief requested by Mercy Health Network, Inc., d/b/a MercyOne ("MercyOne"), through its *Motion for Entry of an Order Requiring the OC to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* [Docket No 1858] (the "MercyOne Motion"), and the OC supports its resistance and objection as follows:

### PRELIMINARY STATEMENT

1.     MercyOne lacks a basis in fact and law to bring the MercyOne Motion. The Court should deny it in full and grant the OC any other relief that is appropriate and just.

2.     The MercyOne Motion is a direct reaction to the Bankruptcy Rule 2004 motion brought by the OC. MercyOne first appeared in these chapter 11 cases of Mercy Hospital, Iowa City, Iowa and its debtor affiliates (collectively, the "Debtors") in March 25, 2024. [Docket No. 875]. Since that time, MercyOne—holding a $31,524.63 general unsecured claim against the Debtors—has been an active participant in the Debtors' chapter 11 proceedings. MercyOne has (i)

1

objected to the Debtors' disclosure statement [Docket No. 879], (ii) prosecuted that objection at

the disclosure statement hearing [Docket No. 898], (iii) objected to the Debtors' chapter 11 plan

[Docket No. 1016], prosecuted that objection at the Debtors' confirmation hearing, [Docket No.

1062], appealed confirmation of the Debtors' chapter 11 plan [Docket No. 1123], moved to stay

the effectiveness of the Debtors' confirmed chapter 11 plan [Docket No. 1124], and appealed to

the 8th Circuit the adverse finding of the District Court dismissing MercyOne's appeal for both

lack of standing and on the merits [Docket No. 1575, 1861].

3.      Despite all of this activity, MercyOne did not request a Rule 2004 examination until

*after* the OC filed a motion for authorization to conduct a Rule 2004 examination of MercyOne.

The timing speaks for itself. It is not coincidental that the OC's Rule 2004 motion contained 54

requests for production of documents and MercyOne's contains 53.

4.      Rule 2004, however, does not entitle MercyOne to a tit-for-tat examination of the

Debtors or the OC. Rule 2004 does not entitle MercyOne to *any* information or documents from

the OC as a matter of law. The plain language of Rule 2004 and caselaw from across the country

are clear. Rule 2004 does not give *carte blanche* authorization to any party-in-interest to ask any

question of the debtor that it wants. Rule 2004 requires a legitimate purpose, tied to the

specifically-enumerated categories listed in subsection b of the Rule. A Rule 2004 examination

"may relate **only** to the acts, conduct, or property or to the liabilities and financial condition of the

debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bank.

P. 2004(b).

5.      MercyOne's articulated purposes for its motion achieve the dual task of failing both

the letter and spirit of Rule 2004. MercyOne asserts it is entitled to an examination of the Debtors'

and OC's records to (i) make any speculative future litigation between MercyOne and the OC

"more efficient," (ii) help MercyOne better assess settlement if and whenever it determines it will engage settlement discussions with the OC, (iii) allow MercyOne to probe into statements related to MercyOne made by counsel in the OC Motion, and (iv) help MercyOne investigate other parties-in-interest in the Debtors' chapter 11 cases (almost all of whom the Debtors' chapter 11 plan released) on the basis of unarticulated causes of actions or theories.

6.      Putting aside that MercyOne—whose highest-level employees served as fiduciaries of the above-captioned debtors for almost six years—should already have access to the bulk of the information requested, MercyOne's objectives are untethered from any valid Rule 2004 reason. They are also unconnected to MercyOne's economic recovery on its $31,524.63 general unsecured claim.

7.      The common thread between the MercyOne Motion and the other actions taken by MercyOne in these chapter 11 cases is that they all appear aimed at creating roadblocks for the estates' fiduciaries to investigate and pursue any causes of action against MercyOne. The Debtors' estates have already expended many thousands of dollars defending this Court's chapter 11 confirmation order (the "Confirmation Order") against MercyOne's appeals. MercyOne now seeks to impose significant additional costs on the estates to, among other things, fund what appears to amount to a public relations campaign for MercyOne. [MercyOne Motion, pp. 2, 18, ¶¶ 1, 45].

8.      MercyOne has not articulated—and cannot articulate—a legal or factual basis under Rule 2004 to support its examination requests of the OC. The Court should deny the MercyOne Motion in full.

## JURISDICTION AND VENUE

9.      The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

10.     This Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1409 and pursuant to United States District Court for the Northern District of Iowa Administrative Order No. 07-AO-00016-P.

## BACKGROUND

12.     On January 23, 2025, the OC, by and through its counsel of record, submitted its *Motion for Entry of Order Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* (the "OC's Motion") [Docket No 1545], seeking production of certain documents and communications identified in Exhibit B to that motion, and seeking entry of an order directing the deposition of certain representatives of MercyOne.

13.     On February 6, 2025, MercyOne filed its *Objection to Trust Oversight Committee's Motion for Entry of Order to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004 and Cross Motion for Protective Order* ("MercyOne's Objection") [Docket No. 1554], wherein MercyOne contested the factual support for the OC's Motion.

14.     Thereafter, and following direction of this Court, counsel for the OC and MercyOne attempted to resolve the Objection and reach an agreement regarding the information to be produced under the OC's Rule 2004 Motion. [Docket Nos. 1559, 1562, 1568, 1603, 1840, 1853] (comprising proceeding memos regarding progress between parties).

15.     On March 25, 2025, the Court entered its *Order Granting Motion of the Trust Oversight Committee Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* (the "Rule 2004 Order") [Docket No. 1854], which was submitted jointly by the OC and MercyOne and which overruled MercyOne's Objection.

16.     On March 28, 2025, MercyOne filed the MercyOne Motion.

## LEGAL ANALYSIS

17.     Rule 2004 of the Federal Rules of Bankruptcy Procedure allows a court to authorize the examination of "any entity" as to "the acts, conduct, or property, or the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor[s'] estate[.]" Fed. R. Bankr. P. 2004(b). The mere fact that Rule 2004 permits an inquiry into the acts, conduct, property, or financial condition of a debtor is insufficient on its own to warrant an examination. Instead, the party moving for a Rule 2004 examination must *also* demonstrate good cause for the examination by showing that the examination sought is "necessary to establish the claim" of the party seeking the examination, or the denial of such request would "cause the proposed examiner undue hardship or injustice." *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998); *see In re SunEdison, Inc.,* 572 B.R. 482, 491 (Bankr. S.D.N.Y. 2017) (collecting cases). In the context of Rule 2004, the movant must demonstrate the existence, not the mere possibility, of a right to payment stemming from a legal claim against the bankruptcy estate or debtor. *See generally In re Metiom, Inc.*, 318 B.R. 263, 270 (S.D.N.Y. 2004). Potential relevance of requested documents does not alone reflect good cause for requiring their production. *In re AOG Ent., Inc*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016).

18.     The purpose of Rule 2004 is to "discover the nature and extent of the bankruptcy estate in order to distribute debtor's assets for the benefit of its creditors." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (collecting cases). While Rule 2004 permits broader discovery than what is traditionally available under the Federal Rules of Civil Procedure, Rule 2004 does not provide an unlimited right to obtain information for any party in interest. Instead, the grant of a Rule 2004 motion falls within the discretion of the reviewing court and requires the court to balance the relevancy and necessity of the requested information in relation to the burden to the parties. *Id.* If the cost and disruption to the examinee attendant to a

requested examination outweighs the benefits to the examiner, then the request should be denied. *Express One*, 217 B.R. at 217.

19.     Despite its broad scope, Rule 2004 is unavailable to help a creditor deal with issues pending in other litigation or contested matters or to deal with the special issues that arise in the case. *Millennium Lab Holdings II*, 562 B.R. at 626-28 (collecting cases); *see generally In re Express One Int'l, Inc.*, 217 B.R. 215, 216–17 (Bankr. E.D. Tex. 1998) (explaining that post-confirmation Rule 2004 examinations must be specifically tailored to obtain information subject to the court's continuing jurisdiction). Despite the limiting discovery of information relating to pending proceedings or special issues, Rule 2004 unquestionably allows a debtor to take pre-litigation discovery into the claims it owns without providing creditors with the ability to discover the merits of potential claims against third parties. *SunEdison,* 572 B.R. at 491 (explaining that a debtor and trustee have greater entitlement to Rule 2004 than a single creditor using the same rule). Rule 2004 examinations are also unavailable where the movant seeks an examination for an undue purpose, harassment, or requests burdensome production. *In re Kearney*, 590 B.R. 913, 921-22 (Bankr. D.N.M. 2018) (observing that the benefit of a Rule 2004 examination must be weighed against the burden of the requested production, and potentially denied where it is proposed for the purpose of abuse or harassment).

20.     MercyOne purports to identify four reasons that it believes its requests fall within the scope of Rule 2004, to wit:

a. MercyOne asserts that it should have a baseline of the information that the OC plans to rely upon if the OC "elects to litigate against MercyOne," as MercyOne believes this would provide efficiency for any future litigation between the OC and MercyOne;

b.   MercyOne asserts that its discovery requests might help MercyOne identify other sources of litigation that the OC could pursue, as well as third party claims that MercyOne might pursue;

c.   MercyOne asserts that it has the right to investigate the facts asserted in the OC's Motion to determine whether the OC engaged in impropriety when filing the OC's Motion; and

d.   MercyOne asserts that it should have the documents supporting the OC's potential claims against MercyOne so that MercyOne may evaluate the possibility for resolving those claims. [MercyOne Motion at 2-3, ¶ 1].

21.   MercyOne concludes that these purposes fall within the scope of Rule 2004 because courts have permitted Rule 2004 examinations to be used for pre-litigation investigation of potential impropriety, investigation regarding administration of the estate, and evaluation of settlement possibility and potential litigation. [MercyOne Motion at 15-18, ¶¶ 41-45]. However, MercyOne fails to identify any cases that permit Rule 2004 examinations to be extended to MercyOne on the basis of its purported rationale—in other words, all of the legal support presented by MercyOne is distinguishable and has no bearing on MercyOne's purported justifications for its Rule 2004 requests.

I.    <u>MercyOne Fails to Demonstrate Good Cause</u>

22.   MercyOne as the moving party must prove that good cause warrants the grant of its motion. *See, e.g.*, *Express One*, 217 B.R. at 217; *SunEdison,* 572 B.R. at 491; *Millennium Lab Holdings II*, 562 B.R. at 626. Its stated reasons do not comprise good cause. Instead, MercyOne's stated reasons suggest an improper purpose, as its arguments have no bearing on the investigation

of MercyOne's existing claim,[1] the assets or liabilities of the Debtors' estate, or the administration

of the estate.[2]

23.        Additionally, MercyOne's stated reasons omit any actual evidence of wrongdoing

or improper conduct capable of supporting a cause of action necessary to establish any new claim.

*AOG*, 558 B.R. at 109 (a showing of good cause requires the movant to plausibly show that the

subject of its investigation will have an effect on the estate). Moreover, nothing within MercyOne's

Motion suggests that it would suffer an undue hardship or injustice if it did not receive the

information it seeks. On the contrary, MercyOne suggests that it would receive an *advantage* that

it would not otherwise receive if the Court allows it to pursue discovery under Rule 2004 in case

the OC pursues a claim against MercyOne in the future. [MercyOne Motion at 16, ¶ 43].

### i.        *Investigation of Potential Litigation or Settlement Against Liquidation Trust*

24.        MercyOne seeks a Rule 2004 examination because "the OC has not provided a

single document or stated a single fact that supports any purported claim against MercyOne."

[MercyOne Motion at 12, ¶¶ 30-31]. But MercyOne does not explain how any Rule 2004

examination would provide it with information necessary to investigate or settle any of the OC's

claims while it simultaneously acknowledges that there are no claims to be litigated or settled.

[MercyOne Motion at 12, 16, ¶¶ 30, 42, 44]. Instead, MercyOne attempts to test the merits of what

---

[1]        MercyOne filed a proof of claim in this matter in the amount of $31,524.63 relating to compensation it claimed was due and owing under the Management Agreement between Mercy Iowa City and MercyOne. *See* Claim No. 10277. Nothing in the record or MercyOne's Motion suggests that further discovery under Rule 2004 is necessary to prove that claim. A Rule 2004 examination is inappropriate where a party has already identified the basis of and filed a proof of claim. *In re AOG Ent., Inc*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016).

[2]        MercyOne implies that the potential for more efficient litigation effects the administration of the estate, but does not explain how the mere possibility of more efficient litigation of potential claims, that would otherwise be governed by timing of the Federal Rules of Civil Procedure as incorporated by the Federal Rules of Bankruptcy Procedure, impacts the administration of this case post-confirmation. *See generally In re Enron Corp.*, 281 B.R. 836, 843 (Bankr. S.D.N.Y. 2002) (observing that the potential for more efficient litigation does not bear on administration of the estate).

it believes will be the OC's claims, if any litigation comes into being. This is not a proper purpose under Rule 2004; MercyOne has not shown good cause for production of documents and information that it speculates might be useful for hypothetical litigation or potential settlement. *See generally In re Kleynerman*, 617 B.R. 122, 129 (Bankr. E.D. Wis. 2020) (Rule 2004 examination must have a fruitful purpose and should not be used to investigate speculations or differing factual perspectives).

25.    Further, nothing within MercyOne's Motion suggests that a Rule 2004 examination is an appropriate mechanism for MercyOne to address the special problems it speculates may arise later between the OC and MercyOne. Rather, MercyOne supports its belief that courts permit the use of Rule 2004 examinations for its special speculative purpose by citing *In re Gaddy*, 622 B.R. 440, 449 & n.3 (Bankr. S.D. Ala. 2020). [MercyOne Motion at 17, ¶ 44]. The *Gaddy* court, in resolving an objection to a proposed settlement, merely noted that the objecting creditor had the opportunity to investigate its preexisting and previously asserted claim for fraudulent transfer prior to a contested settlement hearing, including through use of a Rule 2004 examination, and that the creditor had failed to investigate its claim in the three years before the proposed settlement. *In re Gaddy*, 622 B.R. at 449. *Gaddy* does not support MercyOne's proposition that it can pursue Rule 2004 discovery to help MercyOne analyze a potential settlement negotiation in the future with the OC. *Id.* Moreover, MercyOne cites other caselaw that expressly conditions the use of a Rule 2004 examination to permit the investigation of the value of a proposed settlement offer. *Matter of M4 Enterprises, Inc.*, 190 B.R. 471, 477 (Bankr. N.D. Ga. 1995). It is far-fetched to suggest that estate administration is enhanced by MercyOne rummaging through the Debtors' files—at the cost of hundreds of thousands of dollars to the estates—so that MercyOne can determine if a yet-to-be-made settlement offer is a good deal from their perspective. In fact, substantive settlement

discussions have not occurred despite the OC's willingness to engage in them. MercyOne has not established good cause. Rule 2004 is not a tool for litigation counterparties to use at the estate's costs to try and determine whether they would like to make a settlement offer to the estate.

26.     Similarly, MercyOne makes sweeping generalizations that Rule 2004 examinations are permitted as a pre-litigation discovery device by arguing that it can learn whether the OC possessed documents supporting its claim and whether MercyOne has its own claims and defenses against the OC and others. [MercyOne Motion at 15-16, ¶ 41-42]. MercyOne attempts to support this argument by citing to *Matter of M4*, 190 B.R. at 475, and *3 Kings*, 2024 WL 2264338, and *Martino*, 190 B.R. at 475, while also citing and quoting *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009). [MercyOne Motion at 15-16 ¶ 39, 41].[3] These cases do not support MercyOne's arguments. The *Martino* case provides a perfunctory mention of Rule 2004 examinations as a prelitigation discovery device. *See Martino*, 2011 WL 5856327 (Bankr. D. Colo. Nov. 17, 2011) (recognizing that Rule 2004 examinations are a possible pre-litigation discovery device if used to investigate and recover assets on behalf of the estate). Both *Matter of M4* and *In re 3 Kings* address use of Rule 2004 examinations after litigation has already commenced. *See Matter of M4*, 190 B.R. at 475 (providing that Rule 2004 may be used to investigate the value of a proposed settlement, *despite pending adversary or contested proceedings*); *In re 3 Kings*, 2024 WL 2264338 (permitting Trustee Rule 2004 examination regarding assets of the debtors following entry of default in a previously pending adversary proceeding). *Wilson* merely recognized that the U.S. Trustee ("UST") had not requested discovery under Rule 2004 and acknowledged that a Rule 2004 examination would have been a preferred method of investigating whether the UST needed to bring an adversary proceeding following entry of sanctions against a creditor for making false

---

[3]     MercyOne miscites *Martino* by duplicating the reporter citation for *Matter of M4*, 190 B.R. 471.

statements to the Court. *Wilson*, 413 B.R. at 336 (permitting discovery under § 105 where the discovery process resembled what was permitted under Rule 2004). Clearly, MercyOne does not stand in the shoes of the UST, and there is no finding of impropriety by the OC for which an adversary proceeding may be brought.

27.     MercyOne's arguments also ignore that the use of Rule 2004 examinations as pre-litigation discovery is limited to determining whether there are grounds to bring an objection to discharge or determine whether claims beneficial to the estate exist (the precise rationale for the OC Motion). *In re Roman Cath. Church of Diocese of Gallup*, 513 B.R. 761, 764 (Bankr. D.N.M. 2014) (collecting cases); *see generally In re Welch*, No. BK 11-18277-LBR, 2015 WL 65307, at *7 (B.A.P. 9th Cir. Jan. 5, 2015) (affirming denial of a motion to reopen to conduct Rule 2004 examination where creditor failed to identify specific asset that would be available for distribution to creditors and where there was a mere speculative prospect of relief). Use of Rule 2004 as a pre-litigation discovery device requires a showing that the request is reasonable and relevant to discovery of estate assets. *See In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (recognizing that implicit in "good cause" is the requirement that there be some identification and explanation for how the movant's purpose relates to the scope of Rule 2004). Here, MercyOne seeks to use Rule 2004 examination to obtain reciprocal discovery to evaluate the merits and determine defenses to the OC's (hypothetical) claim. But Rule 2004 is not a device for reciprocal discovery and the OC politely declines any invitation from MercyOne to assist in the OC's investigation. *See In re Symington*, 209 B.R. 678, 685 (Bankr. D. Md. 1997) (Rule 2004 does not provide a mechanism for reciprocal discovery).

## ii.    *Investigation of Potential Impropriety*

28.    The MercyOne Motion contains approximately eight pages discussing MercyOne's perspective on the genesis of the underlying bankruptcy case, including a number of factually unsupported and unfounded accusations against the OC and its counsel, which were previously raised in MercyOne's Objection to the OC's Motion[4] and through which MercyOne implies that the OC acted improperly. [MercyOne Motion at 17-18, ¶ 45].

29.    MercyOne argues that the OC made false assertions regarding, for example, MercyOne's control over MIC and MercyOne's oversight of MIC's failed request for proposal process in 2021. [MercyOne Motion at 18, ¶ 45]. MercyOne's Motion, however, also acknowledges that MercyOne provided MIC's CEO and on occasion its CFO and COO while MercyOne held multiple positions on MIC's board of directors during relevant periods of time. [MercyOne Motion at 5, ¶ 10-11]. MercyOne also acknowledges that MercyOne worked to oppose the CON and "again led opposition, but ultimately did not succeed as UIHC's second application was approved." [MercyOne Motion at 8, ¶¶ 20-21]. MercyOne's allegations of impropriety by the OC amounts to differences of opinion regarding the factual and legal conclusions of the parties and do not rise to the level of fraud or a breach of a duty imposed by the Bankruptcy Code. *See In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981) (applying Rule 205 (now Rule 2004) to deny a request for examination where the movant failed to identify actual impropriety); *see generally In re Enron Corp.*, 281 B.R. 836, 843 (Bankr. S.D.N.Y. 2002) (rejecting Rule 2004 examination based on arguments in favor of potential for efficient of litigation and where movant failed to identify actual wrongdoing).

---

[4]    *See MercyOne Motion* at 4, n.2 ("MercyOne set forth many of these facts in its opposition to the OC's Motion [Docket No. 1554], but for convenience and completeness repeats these here.")

30.     Moreover, MercyOne has waived any argument regarding the factual support for the OC's Motion and regarding MercyOne's different view of the facts leading to the filing of the underlying bankruptcy case as a result of MercyOne's agreement to entry of the Rule 2004 Order.[5] Rule 2004 permits discovery upon a showing of good cause; it does not permit discovery to aid a party in resolving the special issues in a case or to bypass traditional procedural tools. *In re GHR II*, 35 B.R. 534 (Bankr. D. Mass. 1983) (denying Rule 2004 examination where movant identified facts supporting cause of action that they proposed to investigate and explaining that Rule 2004 does not permit absolute circumvention of other procedural mechanisms). MercyOne fails to identify good cause to conduct a Rule 2004 examination to determine whether the OC acted improperly and its cited cases further reflect this failure. *See Matter of M4,* 190 B.R. at 475 (permitting limited Rule 2004 examination of settlement value following showing that panel trustee improperly prioritized certain creditors); *Wilson*, 413 B.R. at 336 (permitting quasi-Rule 2004 discovery by UST following entry of sanction for misrepresentations to court).

### iii.    *Investigation of Potential Claims Against Other Parties*

31.     MercyOne also justifies its Motion by asserting that it seeks information that would allow it to identify whether the OC could pursue claims against other parties. [MercyOne Motion at 16, ¶ 43]. However, Rule 2004 does not permit a party in interest to intrude upon the duties and powers of the trustee or debtor in possession, including the investigation of potential claims that

---

[5]     The OC notes that the Rule 2004 Order is entitled to preclusive effect, because MercyOne raises nearly identical factual assertions, involving the same parties, to which it could have raised the claims it now argues warrant its use of Rule 2004 and which were resolved in large part through finality of the Rule 2004 Order. Notably a final order in a bankruptcy case is not just the law of the case; "it has preclusive effect on later proceedings in the same case." *See, e.g., In re Just. Oaks II, Ltd.,* 898 F.2d 1544, 1552 (11th Cir. 1990) (observing that previous order had preclusive effect on nearly identical arguments raised in subsequent filing); *In re Phillips*, 553 B.R. 536, 549 (Bankr. E.D.N.C. 2016) (same); *In re marchFirst, Inc.*, 448 B.R. 499, 510-16 (Bankr. N.D. Ill. 2011) (same). Moreover, MercyOne had every opportunity prior to entry of the Rule 2004 Order to seek relief under Bankruptcy Rule 9023 if it thinks the facts underlying the Rule 2004 Order were unsupported.

the estate may have. *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (rejecting Rule 2004 examination where movant sought to supplant investigation of the appointed committees and the debtor). No matter how cleverly MercyOne articulates its argument, a creditor's investigation of claims held by the estate seeks merely to identify another entity that the creditor can collect from, does not have any impact on the administration of the bankruptcy estate, and thus falls outside the scope of Rule 2004. *Id.* Here, the Confirmation Order appointed a liquidation trustee and the OC to investigate and bring potential claims on behalf of the creditor body. MercyOne cannot now supplant its judgment for that of the liquidation trustee or OC. *In re AOG Ent., Inc*, 558 B.R. 98, 106 (Bankr. S.D.N.Y. 2016) (observing that a request for Rule 2004 examination pertaining to claims that might be raised by the estate or committees imposes an inappropriate burden on creditors and the estate); [Docket No. 1114, 1115]. To the extent MercyOne seeks to investigate whether the OC could have pursued claims against parties already released by the confirmed plan, those efforts are plainly a colossal waste of time and money at the expense of the estates.

32.     MercyOne's assertion that it should be permitted to investigate its own claims against third parties likewise fails. The potential for MercyOne to pursue claims against third parties falls well outside the scope of Rule 2004, as an investigation of potential claims against third parties is unrelated to the Debtors' bankruptcy case. *In re Defoor Ctr., LLC*, 634 B.R. 630, 637 (Bankr. M.D. Fla. 2021) (concluding that Rule 2004 does not permit examination for the purpose of investigating potential claims against third parties); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) (Rule 2004 does not provide creditors with tools to pursue claims against non-debtor entities). Simply put, "for movants' desire to identify third parties who may also be liable to them, that, quite simply, is neither this court's concern nor the purpose

14

of Rule 2004." *In re J & R Trucking, Inc.*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (recognizing

that Rule 2004 is not a private collection device for creditors and that other tools are available for

that purpose). The OC and the Debtors' creditors are not required to fund MercyOne's third-party

discovery or enable that potential litigation through Rule 2004.

### iv.     Administration of the Estate

33.     MercyOne quotes the OC to assert that a court may order the examination of any

entity "relating to the acts, conduct, liabilities or financial condition of the debtor, or to any matter

which may affect the administration of the debtor's estate." [MercyOne Motion at 15, ¶ 37]. In

doing so, MercyOne ignores that the Liquidating Trust has a fiduciary duty to investigate assets

and claims of the debtors and otherwise administer the Debtors' estate, including litigation and

distribution of any recovery to the creditor body. *Millennium Lab*, 562 B.R. at 629 (observing that

the trust formed by the debtors' confirmed plan has the duty to investigate claims and may use

Rule 2004 to do so).   MercyOne cites *In re Brooke Corp.*, 2013 WL 3948866, at *2 (Bankr. D.

Kan. July 29, 2013) to support its proposition that matters potentially affecting the administration

of the estate are proper areas for Rule 2004 examination. [MercyOne Motion at 16, ¶ 43]. The OC

agrees that Rule 2004 permits discovery of matters potentially affecting the administration of the

estate, but notes that despite quoting the OC, MercyOne fails to identify *how its proposed discovery*

*would implicate matters affecting the administration of the estate*. MercyOne submits the spare

suggestion that absent the grant of its motion there is potential for delayed litigation, followed by

the assertion that any potential litigation would enhance MercyOne's recovery against other

parties. [MercyOne Motion at 16, ¶ 43]. In the *In re Brooke Corp.* case upon which MercyOne

relies, the panel trustee sought to use Rule 2004 to investigate the transfer of successor liability for

the estate's claim against a creditor, the recovery of which had a direct impact on the administration

15

of the estate. It remains to be seen how the potential delay of litigation not yet in existence or MercyOne's recovery against other parties has any effect on the administration of the estate, and MercyOne fails to provide any legal support for this novel argument.

34.      Beyond MercyOne's failure to identify good cause for a Rule 2004 examination, it further fails to consider the Court's limited post-confirmation jurisdiction. *Millennium Lab Holdings*, 562 B.R. at 626 (explaining that Rule 2004 falls within a bankruptcy court's "arising in" core jurisdiction but clarifying that the court's jurisdiction is limited not by the motion itself but by the purpose for the requested information). Therefore, post confirmation Rule 2004 examinations must be tailored to produce information germane to the post confirmation administration of the case, including for example, information regarding compliance with the terms of the confirmed plan or causes of action a liquidation trust may possess. *In re Defoor Ctr., LLC*, 634 B.R. 630, 638 (Bankr. M.D. Fla. 2021). Accordingly, a court's jurisdiction to entertain a Rule 2004 motion is restricted to the continued administration of the case as outlined by the confirmed plan of reorganization or liquidation pursuant to 11 U.S.C. § 1141, *see, e.g., In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987); *Matter of Gregory,* 705 F.2d 1118 (9th Cir.1983), and makes the broader scope of a traditional Rule 2004 examination inapplicable post confirmation. *See In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988); *see also In re Vox II, LLC*, No. 05-20299PM, 2008 WL 596697, at *2 (Bankr. D. Md. Mar. 4, 2008) (restricting a Rule 2004 examination to whether money was being set aside for administrative claims and whether the debtor was complying with settlement terms incorporated into the plan). Regardless of MercyOne's unfounded assertions that its proposed discovery pertains to the administration of the estate, pre-litigation discovery, and potential settlement or efficient litigation, MercyOne fails in any way to

address the limited scope of Rule 2004 post confirmation and fails to show how any of the reasons

for its Motion comprise good cause.[6]

## II.       **MercyOne's Motion Imposes an Undue Burden on the OC.**

35.     In the absence of good cause and without any demonstration that MercyOne would

suffer undue hardship or injustice without the information it seeks, MercyOne seeks to impose a

significant burden on the OC. As a preliminary hurdle, MercyOne requests that the OC produce

53 different categories of information, many of which seek "[a]ll Documents and Communications

evidencing" various events and transactions that MercyOne believes supports its competing view

of the facts identified by the OC's Motion. [Docket No. 1858, Ex B at 8-14, ¶¶ 3, 6, 9, 10-12, 14-

19, 21, 26-28, 30, 32-39, 43-47, 49-53]. Because these requests use terms like "evidencing," they

require the OC and its counsel to make legal conclusions regarding the information MercyOne is

seeking, which requires a greater review of potentially responsive information than might

otherwise need to occur. Further, MercyOne's requests—which seek production of large amounts

of documents and communications concerning work performed by Debtors' professionals

prepetition—would require considerable review of privileged communications and attorney work

product prepared by the Debtors' prepetition counsel as the Debtors evaluated their bankruptcy

and non-bankruptcy options and negotiations between Debtors and various creditors relating to the

release of certain claims. [*see* Docket No. 1858, Ex. B at 10, ¶¶ 6, 15, 17- 22, 28-31, 33, 36, 38-

39, 43, 45-46, 49-53]. This burden is compounded by MercyOne's request that the OC produce

---

[6]      Counsel for the OC would be remiss if it did not point out that the lack of good cause, and the lack of any
Rule 2004 basis for MercyOne's 53 document requests, is why counsel for the OC laboriously met and
conferred with counsel for MercyOne prior to MercyOne filing its present motion. The OC wanted to be
completely sure that there was no Rule 2004 basis for a single one of MercyOne's requests. If counsel for the
OC had identified even one of the 53 requests that appeared to satisfy the Rule 2004 good cause standard and
was within the purposes of Rule 2004 examinations, then the OC would have had further conversations with
MercyOne about issues related to burden/expense/narrowing, as-needed for any such requests.

"all Documents and Communications" evidencing MercyOne's recommendation that MIC join the

CommonSpirit Group Purchasing Organization"; "all Documents and Communication evidencing

MercyOne's advice to MIC not to use bankruptcy as a means to sell the organization, including

but not limited to the response that advice by MIC or any professional retained by MIC (apart from

MercyOne)", and copies of any agreement between Debtors and parties which contains a release

of claim. [Docket No. 1858, Ex. B, at 10-13, ¶¶ 22, 29, 31, 36, 47]. These requests require the OC

to produce information that is already in MercyOne's possession and otherwise available through

this Court's docket.

36.     MercyOne incorrectly asserts that the OC objected to the production of *any*

documents due to the burden and expense of providing those documents to MercyOne. [MercyOne

Motion at 2, ¶ 2]. That characterization ignores that the OC refused to incur the expense of review

and production of documents absent MercyOne's threshold identification of a proper legal basis

for production within the scope of Rule 2004. [Docket No. 1858, Ex. F at 4-5.]. The OC will incur

expenses and experience a burden regardless of the scope of information sought by MercyOne, but

the OC should not be forced to locate and produce a single document absent an actual legal basis

for that production. *See AOG*, 558 B.R. at 109 (explaining that no production should occur until

the movant demonstrates good cause for a Rule 2004 examination).

37.     Further, the OC estimates that just the contract reviewer process and storage costs

that the OC is likely to incur to respond to MercyOne's Motion would cost $541,200-$667,200,

not including fees incurred to conduct a quality control and privilege review prior to production of

documents. *See* Declaration of Monica Schultz ("Decl.. of Schultz) at 11. MercyOne's Motion

does not provide any explanation regarding its belief that it should be able to impose any financial

burden on the OC where it has been unable to meet the good cause standard or otherwise establish

a proper Rule 2004 purpose for its fishing expedition. MercyOne fails to identify what benefit it would receive from the OC's production, yet it seeks to impose thousands of dollars of additional expense on the OC because MercyOne speculates that it might benefit from its requested production. Here, the expense and burden to the OC severely outweighs any purely speculative benefit to MercyOne.

### III.    MercyOne Seeks Rule 2004 Examination for an Improper Purpose

38.    MercyOne claims that it is entitled to a Rule 2004 examination because the OC will receive information pursuant to the Rule 2004 Order, because potential claims against Preston Hollow and others were released without a similar release for MercyOne, and because the OC has not provided MercyOne with documents to support the OC's claim against MercyOne. [MercyOne Motion at 12, ¶¶ 29-31]. Furthermore, as provided above, MercyOne requests documents and communication it already provided to the Debtors, seeks information requiring significant review before it may be produced, and seeks information for purposes outside the scope of Rule 2004.

39.    Taken together, MercyOne's direct statements and contradictory conclusion indicate that it seeks a Rule 2004 examination because MercyOne did not receive the relief it would have preferred under the Debtors' chapter 11 plan and Confirmation Order. MercyOne thus seeks to impose a financial burden on the OC and all creditors to apparently chase MercyOne's bygones. *See In re 3 Kings Constr. Residential LLC*, No. 22-10965-PMB, 2024 WL 2264338, at *3 (Bankr. N.D. Ga. May 17, 2024); *see In re AOG Ent., Inc*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) (Rule 2004 examinations should not be granted for investigation of speculative claims or where the investigation will increase costs to the estate and reduce the distributions available to the creditor body); *In re Symington*, 209 B.R. 678, 685 (Bankr. D. Md. 1997) (observing that Rule 2004 does not provide a reciprocal right to discovery).

19

40.     Furthermore, the implications of MercyOne's arguments that it should be able to investigate the factual assertions and legal conclusions made by counsel for the OC seems to indicate that within its Rule 2004 Motion permits a further inference that MercyOne seeks a Rule 2004 examination for an improper purpose where MercyOne has not identified a legitimate reason to conduct an examination. *See, e.g.*, *Musicians Union, AFM Local 6 v. Lewis (In re Lewis)*, No. C-93-3893 MHP, 1994 WL 125201, at *3 (N.D. Cal. Mar. 31, 1994) (affirming denial of the creditor's Rule 2004 examination and award of sanctions where the creditor's statements reflected it had a retaliatory intent and where the creditor failed to make a plausible showing of improper conduct); s*ee In re Wilcher*, 56 B.R. 434 (Bankr. N.D. Ill. 1985) (holding that a party was "not properly subject to a Rule 2004 examination" due to the absence of any actual evidence of the alleged wrongdoing and quashing subpoena where no legitimate reason for conducting the examination existed); *In re Strecker*, 251 B.R. 878, 883 (Bankr. D. Colo. 2000) (quashing 2004 subpoena where examiner lacked "some alleged conduct, or other facts, which could lead to a cause of action" beyond the fact that debtor had written a bad check before bankruptcy). Here, MercyOne attempts to litigate public perception by arguing the merits of potential adversary proceedings and drawing different factual and legal conclusions than the OC, without identifying any actual impropriety for which relief may be granted.

41.     Central to Rule 2004 is the requirement that the reviewing court must balance the intrusiveness of the proposed examination with the putative benefit to the requesting party. Here, the cost, stated purposes, absence of good cause, and improper targeting of the OC outweighs any hypothetical benefit that MercyOne might accrue through the proposed examination. *See In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("if the cost and disruption to

the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied"). Accordingly, MercyOne's Motion should be denied.

## **CONCLUSION**

WHEREFORE, Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidation Trustee requests that the Court deny MercyOne's *Motion for Entry of an Order Requiring the OC to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* and grant the OC such further relief as equity warrants.

Dated:        April 14, 2025         **NYEMASTER GOODE, P.C.**

/s/ Roy Leaf
Roy Leaf, AT0014486
625 First Street SE, Suite 400
Cedar Rapids, IA 52401-2030
Telephone:     (319) 286-7002
Facsimile:     (319) 286-7050
Email:          rleaf@nyemaster.com

- and -

Leslie C. Behaunek, AT0011563
700 Walnut, Suite 1300
Des Moines, IA 50309
Telephone:  (515) 283-3100
Fax:  (515) 283-8045
Email:          lcbehaunek@nyemaster.com

*Counsel for the Mercy Hospital Liquidation Trust Oversight Committee as Designee of the Liquidation Trustee*

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this April 14, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case

*/s/ Roy Leaf*