**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.* | ) ) ) | Case No. 23-00623 (TJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**MERCY HEALTH NETWORK INC.'S STATUS REPORT REGARDING MOTION FOR ENTRY OF AN ORDER REQUIRING THE OC TO PRODUCE RECORDS AND SUBMIT TO EXAMINATION PURSUANT TO BANKRUPTCY RULE 2004**

Mercy Health Network Inc., d/b/a MercyOne ("MercyOne"), by its attorneys, Foley & Lardner LLP and Belin McCormick, respectfully submits this status report (the "Status Report") for the upcoming status hearing on May 9, 2025 regarding MercyOne's *Motion for Entry of an Order Requiring the OC to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* [Docket No. 1858] (the "Motion").[1] MercyOne respectfully states as follows:

1. On April 25, 2025, this Court conducted a hearing on the Motion, at which the Court determined that MercyOne is entitled to limited discovery under Rule 2004. Specifically, this Court observed that MercyOne should be entitled to seek information under Rule 2004 that evidences any defenses or counterclaims MercyOne may have against the OC, Debtors and/or MIC.

2. This Court then instructed the parties to work together to narrow the Document Requests similar to what MercyOne did for the OC and set a status hearing for May 9.

3. Since then, the parties have participated in two (2) separate meet-and-confers via Zoom, on May 2 and May 6. As the date hereof, and detailed below, the parties have reached an

---

[1] Capitalized terms used but not defined herein shall have the same meanings as defined in the Motion or the Document Requests attached thereto as Exhibit B, as applicable.

4902-3790-3935.2

"agreement" as to seventeen (17) of MercyOne's Document Requests. The parties, however, are currently at an impasse regarding the other remaining thirty-four (34) Document Requests. The specific agreements and disagreements are outlined below.

### "Agreements" Between MercyOne And the OC

4. In advance of the May 2 conference, and in accordance with the Court's statements from the April 25 hearing, counsel for MercyOne eliminated eleven (11) Document Requests for which MercyOne's **sole basis** for discovery were to investigate third-party claims and potential improprieties or falsities made by the Debtors, MIC, or the OC. [*See* Document Requests No. 18-22, 26-31, & 41-42]. Counsel for MercyOne shared a copy of the revised Document Requests with the OC's counsel in advance of the May 2 meeting with the intent and expectation that the parties would work through the remaining Document Requests like they did in connection with the OC's Rule 2004 requests.[2] But that did not happen. Instead, OC's counsel simply stated they the OC would only "agree" to produce documents responsive to only seven (7) Document Requests. Those requests are as followed:[3]

> **Request No. 22**: A copy of any agreement between Debtors and Allscripts and/or Altera which contains a release of claims.[4]
>
> **Request No. 24**: Documents and Communications sufficient to identify each member of MIC's Board for the period of 2017 to the date of the termination of the Agreement who was not a MercyOne designee.
>
> **Request No. 25**: Documents and Communications sufficient to identify each officer of MIC and/or member of MIC's senior management for the period of 2017 to the date of the termination of the Agreement who was not provided by MercyOne, including the employer of each such member.

---

[2] A redline showing the eliminated Document Requests is attached hereto as **Exhibit 1.**

[3] Those "agreed" seven (7) Document Requests were not shared with MercyOne's counsel until before the May 6 conference.

[4] As noted above, Document Request No. 22 was eliminated by MercyOne to conform to this Court's ruling. Notwithstanding, the OC represented that it agreed to this request because it was "easy to **produce**." As such, MercyOne will proceed with this request.

2

>    **Request No. 44**: All Documents and Communications evidencing executive sessions of the Board from which MercyOne and/or its representatives were excluded, including sessions regarding potential buyers of MIC.
>
>    **Request No. 45**: All Documents and Communications evidencing a more than $605 million offer by UIHC in or about August 2021 to take ownership of MIC, including any reasons for MIC not pursuing or rejecting this offer.
>
>    **Request No. 46**: All Documents and Communications evidencing efforts by H2C to find a buyer for MIC which did not include MercyOne's participation.
>
>    **Request No. 47**: All Documents and Communications evidencing MercyOne's advice to MIC not to use a bankruptcy as a means to sell the organization, including but not limited to the response to that advice by MIC or any professional retained by MIC (apart from MercyOne).

The OC is currently working on proposing appropriate search terms for these "agreed" Document Requests. The parties also agreed that the Document Requests will subject to the same date range as in the OC Rule 2004 discovery request (May 1, 2017 through April 30, 2023) and to use the following custodians: Sean Williams, Michael Trachta, Douglas Davenport, Jeff Rooney, and Thomas Clancy. In addition, MercyOne is requesting that Tom McLaughlin be included as a custodian.

## Disagreements Between MercyOne And The OC

5.  As to the remaining thirty-four (34) Document Requests, OC's counsel is essentially refusing to engage in any further discussion, reasoning that they believed only seven (7) Document Requests were appropriate for discovery under Rule 2004 based on this Court's ruling.[5] To backstop this reasoning, counsel pointed to a previous letter (attached as Ex. F to the Motion) sent to the undersigned that purports to summarize MercyOne's justifications for each of its Document Requests. [*See* Mot. Ex. F.]. According to the OC, and as evidenced by the letter, if MercyOne justified a Document Request as being appropriate under Rule 2004, then such request

---

[5] Those "agreed" seven (7) Document Requests were not shared with MercyOne's counsel until before the May 6 conference.

was limited to only that purpose.  For instance, if MeryOne stated that a request was to "test" the representations made in the OC's 2004 Motion, then it *de facto* could not be for any other purpose, like investigating potential defenses and counterclaims.[6] [*See* Mot. Ex. F].

6. This is not only incorrect (and a misunderstanding by the OC), but it is also inconsistent what this Court said and the logical reading of the requests at issue.  Indeed, MercyOne understood and heard this Court when it said that this was not the appropriate time for discovery of third-party claims (but reserving MercyOne's rights to do so later), nor was this the time to investigate any impropriety of, or falsities or misstatements made by, the OC, the Debtors, MIC. MercyOne complied with this Court's instructions, thereby eliminating all eleven (11) Document Requests where the ***only justification*** was to investigate third-party claims or improprieties. [*See* Document Requests No. 18-22, 26-31, & 41-42].

7. The remaining thirty-four (34) Document Requests, MercyOne believes, in good faith, are all appropriate and relevant topics because they are also topics that are mentioned in/sought by the OC's Rule 2004 discovery requests—*i.e.*, are relevant to any defense and/or counterclaim that MercyOne may have. **It goes without saying that if the OC in good faith believed that a topic in its Rule 2004 requests was relevant to whether it had a potential claim, that topic is equally relevant to whether MercyOne has a defense to that potential claim.** Yet the OC rejected this logic and would not budge on any of these 34 requests over two conferral sessions. Withholding documents on these topics would subvert the purposes of Rule 2004 pre-litigation discovery permitted both sides.

---

[6] As MercyOne explained, "testing" assertions raised in the OC's Rule 2004 Motion and related discovery requests has two meanings: (1) does MercyOne have any defense or counterclaim against the OC; and (2) were such assertions disparaging?  MercyOne has already eliminated all Document Requests that are solely based on investigating any improprieties.

8. For instance, there are numerous Document Requests that relate to the alleged "control" (or absence thereof) exerted by MercyOne over MIC. [*See, e.g.,* Document Requests Nos. 1–3 & 35–36]. "Control" appears to be an essential allegation and theme to the OC's potential (and likely inevitable) lawsuit against MercyOne. The same is true for all Document Requests evidencing MIC's financial operations and condition as that appears to be another important allegation lodged against MercyOne. [*See, e.g.,* Requests Nos. 7, 33, 34, & 37–40, 48, 49, 53]. It is, therefore, entirely relevant, appropriate, and consistent with this Court's statements, for MercyOne to seek discovery on these topic as they clearly would support any counterclaim and/or defense that MercyOne may have against the Debtors and/or MIC.

9. Moreover, all Document Requests seeking information evidencing MercyOne's compliance with, or relationship under, the Management Agreement [*see, e.g.*, Document Requests Nos. 4, 5, 6, 7, & 23] are in direct response to those the OC's Rule 2004 requests [*see, e.g.,* OC Discovery Requests Nos. 2–12]. Those too are thus appropriate under Rule 2004 as they also would support any potential defense or counterclaim.

10. Similarly, Document Requests relating to the decisions to (or not to) file a chapter 11 bankruptcy [*see, e.g.,* Document Requests Nos. 17 & 32] are all directly related to the OC's requests for all documents and communications referring to MIC for the period immediately prior to the petition date (January 1, 2023 to June 30, 2023). [*See* OC Discovery Request No. 20]. These specifically relate to the defense of lack of causation and the demonstration that MercyOne did not in fact control MIC, as MercyOne strenuously recommended against Bankruptcy, specifically because it would harm pensioners and alternatives existed that were better for MIC and its creditors. Again, any matter that the OC sought discovery in its Rule 2004 discovery requests,

5

MercyOne should have the same opportunity as such topics would clearly relate to potential counterclaims and defenses.

11. Furthermore, all Document Requests that mention "COVID" or any EMR provider would go to causation (or lack thereof), thereby supporting a defense that MercyOne was *not* the cause of MIC's downfall. [*See, e.g.,* Document Requests Nos. 8–16]. The same basis is applicable to the remaining Document Requests seeking information related to UIHC and Preston Hollow's potential role or impact in MIC's decision to file chapter 11 bankruptcy. [*See, e.g.,* Request Nos. 33–34, 43, & 50–52]. To be clear, MercyOne fully understands that its discovery under Rule 2004 is limited and should not encompass any third-party claims. It also believes that these Document Requests could be, and should be, narrowed for the sole purpose of proving its defense—*i.e.*, that MercyOne is not responsible. The OC nevertheless has refused to do so.

12. MercyOne understands that the remaining Document Requests may require additional work to narrow the scope and so as to conform to this Court's prior statements and rulings. MercyOne is committed to doing so. But this requires the corporation of **both parties**—MercyOne cannot do this alone. As of this date, the OC refuses to have this conversation. And while the undersigned believes that everyone has been working together, and will continue to work, in good faith, the parties have nevertheless been unsuccessful and are in need of this Court's further guidance.

[*The remainder of this page is intentionally left blank*]

4902-3790-3935.2

|  |  |
|---|---|
| Dated: May 8, 2025 | Respectfully submitted, |

/s/ *Christopher J. Jessen*
Michael R. Reck
Christopher J. Jessen
**BELIN McCORMICK, P.C.**
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309
Tel: (515) 243-7100
Fax: (515) 558-0675
mrreck@belinmccormick.com
cjessen@belinmccormick.com

– and –

/s/ *David B. Goroff*
Edward J. Green (admitted *Pro Hac Vice*)
David B. Goroff (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
egreen@foley.com
dgoroff@foley.com

– and –

Jake W. Gordon (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: (248) 943-6484
jake.gordon@foley.com

7

**CERTIFICATE OF SERVICE**

The undersigned certifies, under penalty of perjury, that on this May 8, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

　　　　　　　　　　　　　　　　　　*/s/ David B. Goroff*
　　　　　　　　　　　　　　　　　　David B. Goroff

**EXHIBIT 1**

4902-3790-3935.2

**EXHIBIT 1**

*FOLEY DRAFT OF REVISED*
*DOCUMENT REQUESTS*

## RULE 2004 REQUESTS FOR PRODUCTION

1. All Documents and Communications referring to the "control" of MIC by its Board.

2. All Documents and Communications referring to MercyOne being an "independent contractor" to MIC.

3. All Documents and Communications evidencing control by MercyOne over any of the financial condition, operation and management of MIC, as alleged by the OC in its Motion at Paragraph 31.

4. All Documents and Communications referring to the relationship between MIC and MercyOne under the Agreement as being at "arm's length."

5. All Documents and Communications referring to the "strategic affiliation relationship" between MIC and MercyOne.

6. All Documents and Communications evidencing consideration by MIC of other providers of management or management-related services during the period of the Agreement.

7. Documents and Communications sufficient to show the need of MIC to "improve . . . financial operations" in the period prior to contracting with MercyOne.

8. All Documents and Communications referring to the impact of COVID on MIC's operations, financial performance and/or viability, including but not limited to its impact on patient volume, reimbursement rates, liquidity and/or cash flows.

9. All Documents and Communications evidencing the impact of COVID on MIC's net income.

10. All Documents and Communications evidencing the Board's role and involvement in the selection of Allscripts (and/or Altera) as the provider of the EMR system to MIC.

*FOLEY DRAFT OF REVISED
DOCUMENT REQUESTS*

11. All Documents and Communications evidencing the ways in which the EMR system provided by Allscripts (and/or Altera) to MIC failed to perform, including but not limited to any difficulties in coding, billing and collecting for patient encounters, an inability to submit regulatory reports on time and misconfigured workflows attributable to these failures and all causes identified for each such failure.

12. All Documents and Communications evidencing the role of failures of the EMR system provided by Allscripts (and/or Altera) in MIC's failure and/or its decision to file the Chapter 11 Cases.

13. All Documents and Communications referring to the requirement that an EMR system for MIC comply with the "meaningful use" requirements of the Affordable Care Act.

14. All Documents and Communications evidencing the role that failures of the EMR system provided by Allscripts (and/or Altera) played in MIC's losses of net income for each of 2022 and 2023.

15. All Documents and Communications evidencing the retention by MIC of Vizient regarding its EMR conversion.

16. All Documents and Communications evidencing the role failures of the EMR system played in any delay of patient bills, backlog of accounts receivable or inability to timely collect accounts receivable.

17. All Documents and Communications evidencing MIC's consideration of alternatives to the filing of a chapter 11 bankruptcy, including but not limited to, its reasons for rejecting each alternative.

18. ~~All nonprivileged Documents and Communications evidencing MWE's role in MIC's consideration of alternatives to the filing of a Chapter 11 bankruptcy.~~

2

4928-0285-2416.1

*FOLEY DRAFT OF REVISED*
*DOCUMENT REQUESTS*

19. ~~All Documents and Communications evidencing ToneyKorf's role in MIC's consideration of alternatives to the filing of a chapter 11 bankruptcy.~~

20. ~~All Documents and Communications relating to H2C's role in the filing of the Chapter 11 Cases, as well as regarding any consideration or rejection of alternatives to such a filing.~~

21. ~~All Documents and communications evidencing negotiations between Debtors and Allscripts and/or Altera for a release of claims in the Chapter 11 Cases.~~

22. A copy of any agreement between Debtors and Allscripts and/or Altera which contains a release of claims.[1]

23. Documents and Communications sufficient to show MIC's compliance with its obligations under the Agreement.

24. Documents and Communications sufficient to identify each member of MIC's Board for the period of 2017 to the date of the termination of the Agreement who was not a MercyOne designee.

25. Documents and Communications sufficient to identify each officer of MIC and/or member of MIC's senior management for the period of 2017 to the date of the termination of the Agreement who was not provided by MercyOne, including the employer of each such member.

26. ~~All Documents and Communications evidencing the townhall meetings referenced by Mr. Mark Toney in his testimony at the Confirmation Hearing at which MercyOne was allegedly mentioned, including, but not limited to, all minutes, transcripts, recording, reports or other records of such townhall meetings.~~

---

[1] As noted in the attached Status Report, MercyOne originally eliminated Request No. 22. The OC agreed to produce documents responsive to this request. As such, MercyOne will proceed with this request.

3

4928-0285-2416.1

*FOLEY DRAFT OF REVISED DOCUMENT REQUESTS*

27. ~~All Documents and Communications evidencing the statements by Mr. Toney about Preston Hollow referenced in his First Day Declaration.~~

28. ~~All Documents and Communications evidencing negotiations between Preston Hollow and Debtors for a release of claims in the Chapter 11 Cases.~~

29. ~~A copy of any agreement between Debtors and Preston Hollow which contains a release of claims.~~

30. ~~All Documents and Communications evidencing negotiations between H2C and Debtors for a release of claims in the Bankruptcy.~~

31. ~~A copy of any agreement between Debtors and H2C which contains a release of claims.~~

32. All Documents and Communications evidencing the "events that precipitated MIC's chapter 11 filing" as referenced in the OC's Motion.

33. All Documents and Communications evidencing UIHC's acquisition of practices of MIC, including but not limited to the impact any such acquisition had on MIC's operations, financial performance or viability or its decision to pursue bankruptcy.

34. All Documents and Communications evidencing UIHC's demotion of MIC from UIHC's preferred tier payor/provider network, including but not limited to the impact that demotion had on MIC's operations, financial performance or viability.

35. All Documents and Communications evidencing the recommendation by MercyOne that MIC join the CommonSpirit Group Purchasing Organization.

36. All Documents and Communications evidencing the rejection by the MIC Board of the recommendation that MIC join the Common Spirit Group Purchasing Organization, including the reasons for that rejection.

4

4928-0285-2416.1

*FOLEY DRAFT OF REVISED
DOCUMENT REQUESTS*

37. All Documents and Communications evidencing the work of Insight Health Partners for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

38. All Documents and Communications evidencing the work of Navigant for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

39. All Documents and Communications evidencing the work of Vizient for MIC, including all efforts to turn around MIC's financial decline and/or to assist with revenue cycle and operations.

40. Documents and Communications sufficient to show that MIC reported "over $100,000,00 in operating losses," as set forth in paragraph 2 of the OC's Motion.

41. ~~Documents and Communications sufficient to show the rates charged by MWE to MIC and amounts paid to MWE prior to Bankruptcy.~~

42. ~~Documents and Communications sufficient to show the rates charged by ToneyKorf to MIC and amounts paid to ToneyKorf prior to the Bankruptcy.~~

43. All Documents and Communications evidencing the effect that the approval of a CON sought by UIHC to build a hospital in North Liberty, Iowa had on MIC, including, but not limited to staff retention.

44. All Documents and Communications evidencing executive sessions of the Board from which MercyOne and/or its representatives were excluded, including sessions regarding potential buyers of MIC.

5

4928-0285-2416.1

*FOLEY DRAFT OF REVISED*
*DOCUMENT REQUESTS*

45. All Documents and Communications evidencing a more than $605 million offer by UIHC in or about August 2021 to take ownership of MIC, including any reasons for MIC not pursuing or rejecting this offer.

46. All Documents and Communications evidencing efforts by H2C to find a buyer for MIC which did not include MercyOne's participation.

47. All Documents and Communications evidencing MercyOne's advice to MIC not to use a bankruptcy as a means to sell the organization, including but not limited to the response to that advice by MIC or any professional retained by MIC (apart from MercyOne).

48. All Documents and Communications provided to Moody's Investors Service by MIC prior to its March 16, 2023 downgrade.

49. All Documents and Communications evidencing reactions to and steps taken in response to Moody's warning on March 16, 2023, that there could be a further downgrading were there a "discontinuation of the relationship with MercyOne before a new partner or affiliation is established."

50. All Documents and Communications evidencing Preston Hollow's demand in or about June 2023 that MIC senior management be replaced, including but not limited to MIC's analysis of and response to this demand.

51. All Documents and Communications evidencing the impact that Preston Hollow's notice of acceleration on or about July 24, 2023, had on MIC, including but not limited to on its operations, financial condition or viability.

52. All Documents and Communications evidencing the impact that Preston Hollow's receivership action filed in Iowa State Court on or about July 24, 2023 had on MIC, including but not limited to on its operations, financial condition or viability.

6

*FOLEY DRAFT OF REVISED
DOCUMENT REQUESTS*

53. All Documents and Communications evidencing the improvement of the funding of pension liabilities by MIC during the tenure of MercyOne.

4928-0285-2416.1