**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA**

|  |  |
|---|---|
| In re: | Chapter 11 |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, | Case No. 23-00623 (TJC) |
|  | Jointly Administered |
| Debtors. | **EXPEDITED RELIEF REQUESTED** |

**TRUST OVERSIGHT COMMITTEE'S EXPEDITED MOTION FOR ORDER (I) SETTING EVIDENTIARY HEARING, (II) REQUIRING MERCYONE TO APPEAR AND SHOW CAUSE AT THE EVIDENTIARY HEARING, AND (III) SUSPENDING AND EQUITABLY TOLLING CERTAIN STATUTES OF LIMITATION**

The Mercy Hospital Liquidation Trust Oversight Committee as designee of the Liquidation Trustee (the "OC") of the Mercy Hospital, Iowa City, Iowa Liquidation Trust (the "Liquidation Trust"), hereby moves (the "Motion") for entry of an order (i) setting an in-person hearing on July 14, 2025 (the "Evidentiary Hearing"), (ii) requiring Mercy Health Network, Inc. d/b/a MercyOne ("MercyOne") to appear at and show cause at the Evidentiary Hearing for why MercyOne is not in contempt of this Court's *Order Granting Motion of the Trust Oversight Committee Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004* [Docket No. 1854] (the "OC Rule 2004 Order"), and (iii) following the Evidentiary Hearing, suspending and equitably tolling certain statutes of limitations pursuant to 11 U.S.C. § 105(a) and 11 U.S.C. § 108(a). In support of this Motion, the OC represents as follows:

**INTRODUCTION**

1. This Motion respectfully asks this Court to enter an order setting the Evidentiary Hearing and requiring MercyOne to appear and show cause at the Evidentiary Hearing as to both why it is not in civil contempt for violating the OC Rule 2004 Order and why it did not correct mistakes of material fact related to the OC Rule 2004 Order during proceedings related thereto.

1

This Motion also asks the Court to take evidence at the Evidentiary Hearing related to suspending and tolling certain non-bankruptcy statutes of limitation pursuant to sections 105(a) and 108(a) of Title 11 of the United States Code (the "Bankruptcy Code"). Following the Evidentiary Hearing, the OC respectfully requests that the Court suspend and toll the statutes of limitation for all non-bankruptcy claims not pled in the OC's forthcoming complaint against MercyOne to the date that is the later of (i) 60 days after the OC is able to obtain the electronic communications requested in the OC Rule 2004 Order or (ii) the close of discovery in the forthcoming adversary case.

2. As the Court is well aware, on January 23, 2025, the OC filed a motion pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking an order requiring MercyOne to produce certain physical and electronic documents and communications (the "OC Rule 2004 Motion") related to debtor Mercy Hospital, Iowa City, Iowa ("MIC") so that the OC could evaluate potential claims the estates possessed against MercyOne. *See* Docket No. 1545. As detailed in the OC Rule 2004 Motion, MercyOne had an almost six-year relationship with MIC pursuant to a management and affiliation agreement and held seats on MIC's board of directors. *Id.*

3. After MercyOne objected in full to the OC Rule 2004 Motion, the parties spent approximately six weeks at the urging of the Court negotiating the terms upon which MercyOne would agree to produce documents **and communications** related to MIC. This Court held six telephonic hearings with the parties related to these negotiations surrounding the OC Rule 2004 Motion. *See* Docket Nos. 1559, 1562, 1568, 1603, 1840, and 1853. Significant issues discussed during these negotiations included (i) MercyOne email custodians and (ii) search terms and parameters for MercyOne's search and production of electronic communications related to MIC.

4. Over the course of numerous meet-and-confer conferences, counsel for the OC spent considerable time negotiating the terms of the OC Rule 2004 Order with MercyOne in good faith, particularly the search terms intended to narrow the scope of electronic communications related to MIC, of which MercyOne represented it possessed a significant number.

5. The result of the parties' negotiations was the twenty-two page OC Rule 2004 Order that specifically details—for <u>each</u> of the OC's relevant requests—search terms that MercyOne agreed to run through its document and communication repositories in order to find potentially responsive documents and communications to produce to the OC. MercyOne also agreed to a specific protocol related to electronically stored information ("<u>ESI</u>") that was set forth more fully in the OC Rule 2004 Motion.

6. Despite MercyOne's agreements, representations, and its obligations set forth in the OC Rule 2004 Order, and notwithstanding its over six-year relationship managing MIC, MercyOne produced only **one** ESI email communication to the OC. The rest of the emails in MercyOne's production (which were limited and sporadic) were scans of emails that had been physically printed and saved at some point.

7. Between June 18, 2025 and June 20, 2025, counsel for the OC conducted depositions of MercyOne's representations as authorized by the OC Rule 2004 Order. When questioned about MercyOne's access to the electronic communications requested by the OC Rule 2004 Order, MercyOne's CEO Robert Ritz and former MIC CEO (and current MercyOne Vice President) Michael Trachta both testified that they believed that **all** of MercyOne's electronic communications related to MIC **had been deleted, lost, or destroyed** in 2023 following MercyOne's merger with Trinity Health.

8. At no point prior to these depositions did counsel for MercyOne inform the Court or counsel for the OC that nearly all of MercyOne's electronic communications related to MIC had been lost, deleted, or destroyed. In fact, counsel for MercyOne specifically negotiated which MercyOne employees would be "email custodians"—i.e. have the agreed-upon searches run through their email accounts to find responsive communications—and represented that the search parameters and terms being discussed were being evaluated in conjunction with "MercyOne's IT professionals." *See* Docket No. 1567, ¶¶ 3-4; Docket No. 1801, ¶¶ 2(b), 5; Docket No. 18894-3 (email dated May 8, 2025 from D. Goroff stating "I will try to give you more sense of volume of email/ESI as we get closer").

9. Now, with the suspension of the statute of limitations under Bankruptcy Code section 108(a) set to lift on August 7, 2025, the OC is without critical communications from MercyOne that counsel for the OC believed MercyOne possessed and which the OC believes may demonstrate additional causes of action that MIC has against MercyOne.

10. Counsel for the OC contacted counsel for MercyOne in order to meet and confer about this concerning development. MercyOne, among other things, responded with threats of sanctions against counsel for the OC. MercyOne would not, as requested, provide a declaration under oath setting forth the process it employed to find responsive documents and communications or stating why communications would no longer be in its possession.

11. The OC and its counsel are not intimidated by the threats raised by MercyOne. It is of paramount importance to the OC and the creditors of the above-captioned debtors' estates to preserve all claims that the estates have against MercyOne. And the OC must act quickly with the deadlines imposed by Bankruptcy Code sections 108(a) and 546 rapidly approaching.

12. It is important to make clear the parameters of this Motion and the relief it seeks. This Motion is not about spoliation of evidence pursuant to Rule 37 of the Federal Rules of Civil Procedure (the "Rules"). At this time, it is unclear to the OC whether or not electronic communications related to MIC may still be retrieved by, for example, MercyOne, a forensic ESI expert, or a special master under Rule 53. The OC therefore seeks the Evidentiary Hearing to understand whether MercyOne complied with the OC Rule 2004 Order and the circumstances behind the deletion, loss, or destruction of any electronic communications subject to the OC Rule 2004 Order. While the OC reserves all rights with respect to spoliation of evidence under Rule 37, this Motion does not seek relief with respect thereto.

13. Additionally, this Motion does not address MercyOne's other deficiencies with regards to the OC Rule 2004 Order. In particular, the Rule 30(b)(6) deposition of MercyOne's corporate representatives was left open because MercyOne's designated representatives were not prepared to testify on multiple topics properly designated. During the depositions, these representatives admitted to not preparing for such topics. Again, the OC reserves all rights with respect to MercyOne's failure to properly prepare its witnesses pursuant to Rule 30, but this Motion does not seek relief with respect thereto.

14. Instead, by this Motion, the OC seeks an order setting the Evidentiary Hearing and requiring MercyOne to appear and show cause related to its failure to produce electronic communications requested by the OC Rule 2004 Order. Additionally, following conclusion of the Evidentiary Hearing, the OC seeks suspension and/or equitable tolling of the statute of limitations with respect to certain non-bankruptcy causes of action pursuant to Bankruptcy Code sections 105(a) and 108(a) in light of MercyOne's failure to produce electronic communications as

requested by the OC Rule 2004 Order. This Motion explains the specific relief sought in more detail below.

15.     The OC believes it is appropriate to address any other relief warranted at the conclusion of the Evidentiary Hearing after the Court has had the opportunity to assess the evidence before it.

## JURISDICTION AND VENUE

16.     The United States Bankruptcy Court for the Northern District of Iowa (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Public Administrative Order referring bankruptcy cases entered by the United States District Court for the Northern District of Iowa.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

17.     The legal predicates for the relief requested herein are sections 105 and 108 of the Bankruptcy Code and Bankruptcy Rules 2004, 9006, 9016, and 9020.

18.     The OC confirms its consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

19.     Pursuant to this Motion, the OC respectfully requests that the Court enter the proposed order attached hereto as **Exhibit A** (the "Proposed Order") setting the Evidentiary Hearing for Monday, July 14, 2025 and (i) requiring MercyOne to appear and show cause at the Evidentiary Hearing why it is not in contempt of the OC Rule 2004 Order and why it may have failed to correct mistakes of fact regarding its possession of electronic communications and (ii)

6

considering suspension and tolling of non-bankruptcy statutes of limitation pursuant to Bankruptcy Code sections 105(a) and 108(a).

I. **MercyOne Should Appear and Show Cause at the Evidentiary Hearing as to Why It Is Not in Contempt of the OC Rule 2004 Order and Why it Did Not Correct Material Mistakes of Fact**

20. A subpoena issued pursuant to Rule 45 is an order of the issuing court and as such, is enforced by a contempt proceeding. Fed R. Civ. P. 45(g); *see also In re Daly*, Adv. No. 22-00175, 2025 WL 1098521, at *6-7 (Bankr. N.D. Ill. Apr. 11, 2025). The "prudent practice" for courts prior to issuing a contempt order is to require the party to whom the subpoena was directed to appear and show cause as to if and why it has failed to comply with the subpoena. *S.E.C. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010); *see also* Fed R. Civ. P. 45, advisory committee notes ("Often contempt proceedings will be initiated by an order to show cause, and an order to comply or be held in contempt may modify the subpoena's command."). Contempt is a "potent weapon…[that] must be carefully and precisely employed." *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998). The party moving to enforce the subpoena via the contempt process bears the burden, which is clear and convincing evidence. *Id.*; *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, No. 09-CV-175-LRR, 2011 WL 4625661, at *3 (N.D. Iowa Oct. 3, 2011). It is not necessary to establish the violating party's intent before contempt may be found. *Id.* ("[I]t is not necessary for the moving party to show that the violation of the court order was willful because civil contempt is remedial.").

21. Here, the OC respectfully requests entry of the Proposed Order setting the Evidentiary Hearing at which MercyOne should be required to appear and show cause as to whether it has complied with the OC Rule 2004 Order and the subpoena issued to it pursuant to that order.

7

22. As detailed above and in the *Declaration of Roy Leaf* attached hereto as **Exhibit B** (the "Leaf Declaration"), the OC and its counsel spent approximately six weeks negotiating specific search terms and custodians with MercyOne prior to both parties agreeing to the terms contained in the OC Rule 2004 Order. During the course of those discussions, counsel for MercyOne repeatedly emphasized the burden that certain requests and search terms related to electronic communications would impose on MercyOne because of "overbreadth" and the significant number of documents and communications that would be potentially pulled in by such terms. Counsel for MercyOne also indicated multiple times that search parameters were being discussed with relevant people in MercyOne's technology department to assess burden and scope. Docket No. 1567, ¶¶ 3-4; Docket No. 1801, ¶¶ 2(b), 5; Docket No. 18894-3 (email dated May 8, 2025 from D. Goroff stating "I will try to give you more sense of volume of email/ESI as we get closer"). Certain search terms were also heavily negotiated, such as the modifer term "Mercy Hospital." *See* Docket No. 1801.

23. In dealing with ESI matters, the negotiation of custodians and search terms is typically done in order to avoid having the responding party look at every email ever sent or received to locate and produce responsive documents. Instead, the parties typically agree which email custodians' accounts will be searched, which search terms will be used to locate potentially responsive documents, and what date range will be applied to further narrow the scope of documents for review and production. These negotiations are undertaken with the understanding by both sides that the producing party has a significant quantity of ESI communications in its possession.

24. Based on the representations made by MercyOne and its counsel, the OC and its counsel understood that MercyOne had a significant number of electronic communications in its

8

possession related to MIC. At no point did MercyOne indicate that it no longer possessed any electronic communications from the time periods that it agreed to in the OC Rule 2004 Order.

25. The Court held six telephonic status conferences in connection with these ongoing discussions. *See* Docket Nos. 1559, 1562, 1568, 1603, 1840, and 1853. Again, at no point did MercyOne indicate that it no longer possessed any electronic communications from the time periods agreed to in the OC Rule 2004 Order.[1]

26. MercyOne moved for an extension of time to respond to the OC Rule 2004 Order. *See* Docket No. 1984. As detailed in the OC's response to that motion, the OC was prepared to agree to such request from MercyOne, but to date had only received one production of non-ESI documents and requested an approximation of the scope of the remaining production, particularly ESI documents and communications. *See* Docket No. 1899. The OC thus objected to MercyOne's requested extension because counsel for MercyOne was not being entirely forthcoming in providing information about the scope of the remaining production. *See id.*, ¶ 4. The Court held a hearing on May 9, 2025. *See* Docket No. 1902. Again, at no point did MercyOne indicate that it no longer possessed any electronic communications from the time periods agreed to in the OC Rule 2004 Order.

27. MercyOne only produced **one** email communication in its ESI production in response to the OC Rule 2004 Order. This seemed extremely unusual to the OC, given the representations made by MercyOne during the course of negotiating the OC Rule 2004 Order and the almost six-year close relationship between MercyOne and MIC.

---

[1] Most of the document and communication requests agreed to in the OC Rule 2004 Order were from May 1, 2017 to April 30, 2023, although certain requests were narrowed based on discussions among counsel and to purportedly avoid burden on MercyOne.

9

28. As authorized by the OC Rule 2004 Order, counsel for the OC deposed two individuals from MercyOne (CEO Robert Ritz and former MIC CEO Michael Trachta) between June 18, 2025 and June 20, 2025. During Mr. Trachta's personal deposition and during MercyOne's Rule 30(b)(6) deposition, counsel for the OC learned for the first time that MercyOne effectively no longer had electronic communications related to MIC, thus explaining why only **one** ESI communication was produced to the OC. For example, Mr. Ritz testified that he was knowledgeable about how MercyOne's electronic communications were generally maintained via MercyOne's record retention policy and that he was "sure" electronic communications related to MIC were lost, deleted, or destroyed as a result of MercyOne's merger with Trinity Health in September 2022.

29. Despite months of discussion with MercyOne about ESI search terms, the depositions in June 2025 were the first time that anyone affiliated with MercyOne had informed the OC about the loss, deletion, or destruction of essentially all ESI email communications related to MIC.

30. Immediately following the conclusion of MercyOne's Rule 30(b)(6) deposition on June 20, 2025, counsel for the OC directed a letter to counsel for MercyOne requesting to immediately meet and confer regarding the revelations made by MercyOne's representatives, to gain an understanding of MercyOne's process for running the search terms agreed to in the OC Rule 2004 Order, and to assess whether MercyOne or another party (like its parent company) may still have access to responsive electronic communications. A copy of this letter is attached hereto as **Exhibit C**.

31. Counsel for MercyOne and the OC held a meet and confer via Zoom on Wednesday, June 25, 2025 starting at approximately 2:15 P.M. During the meet and confer

conference, little progress was made. Counsel for MercyOne threatened to move for sanctions against counsel for the OC if the OC initiated contempt proceedings against MercyOne.

32. On Wednesday, June 25, 2025 following the meet and confer conversation, in an effort to further address issues related to MercyOne's compliance with the OC Rule 2004 Order outside of court, counsel for the OC asked counsel for MercyOne to provide a declaration pursuant to 28 U.S.C. § 1746 "explaining (i) the process used to look for <u>both</u> electronic documents <u>and</u> communications, (ii) why only one email file was included in the production to [the OC], and (iii) if email communications in MercyOne's possession were previously deleted/destroyed, as testified to by MercyOne's representatives at their recent depositions."

33. MercyOne declined to provide this declaration.

34. On Thursday, June 26, 2025, counsel for MercyOne directed a letter to counsel for the OC. A copy of this letter is attached as **<u>Exhibit D</u>**. Calling efforts by the OC to understand why it had only received **<u>one</u>** ESI email communication "false and scurrilous," counsel for MercyOne again threatened sanctions against counsel for the OC.

35. At this juncture, Court involvement is unfortunately necessary. Time is of the essence for the OC given the impending August 7, 2025 deadline imposed by Bankruptcy Code sections 108 and 546.

36. Accordingly, the OC respectfully requests that the Court enter the Proposed Order and set the Evidentiary Hearing for July 14, 2025. At the Evidentiary Hearing, MercyOne should be required to appear and show cause as to why it is not in contempt of the OC Rule 2004 Order by presenting a witness or witnesses that (i) have a full and complete knowledge of the process MercyOne employed to search for responsive documents and communications requested in the OC Rule 2004 Order, (ii) have full and complete knowledge of whether, and to what extent,

11

electronic communications related to MIC were lost, deleted, or destroyed as part of either the merger with Trinity or MercyOne's document retention policies, and (iii) have full and complete knowledge about back-up servers or other parties that may have duplicate copies of MercyOne's electronic communications related to MIC that were otherwise lost, deleted, or destroyed on MercyOne's system.

37. Further, in the event that substantially all of MercyOne's electronic communications related to MIC have been lost, deleted, or destroyed, MercyOne should be required to explain why at no point during negotiation or compliance with the OC Rule 2004 Order it made the OC or Court aware that MercyOne no longer had electronic communications related to MIC in its possession.

38. Following the Evidentiary Hearing, the Court should grant any relief that is equitable and just including, as set forth below, suspending and equitably tolling the statute of limitations for certain non-bankruptcy causes of action.

II. **Following the Evidentiary Hearing, the Court Should Suspend and Toll Certain Non-Bankruptcy Statutes of Limitation as Warranted**

39. Bankruptcy Code section 108(a) generally suspends the statute of limitations for non-bankruptcy causes of action a debtor may possess for up to two years after the petition date. 11 U.S.C. § 108(a); *Rajala v. Donnelly Meiners Jordan Kline, P.C.*, 193 F.3d 925, 928 (8th Cir. 1999) ("Preliminarily, it should be noted that the Trustee's action was commenced for statute of limitations purposes on April 29, 1994, the date on which U.S.C.I. filed bankruptcy, despite the fact that the Trustee's complaint was not filed until two years later.").

40. Absent Court action, the suspension provided by Bankruptcy Code § 108(a) will expire on August 7, 2025, the date two-years after the petition date in this case. *See* Docket No. 1.

41. Bankruptcy Rule 9006(b) sets forth the parameters upon which a court may extend the deadline by which certain acts must be taken in a bankruptcy case. Fed. R. Bankr. P. 9006(b). While there is some disagreement among courts about whether Bankruptcy Rule 9006(b) authorizes a bankruptcy court to extend the deadlines related to bringing causes of action— including section 108—the majority of courts to address the issue have found that bankruptcy courts <u>do have</u> the authority to extend, suspend, or toll the non-bankruptcy causes of action covered by Bankruptcy Code § 108. *In re Kwok*, Case No. 22-50073 (JAM), 2024 WL 666646, at *4–5 (Bankr. D. Conn. Feb. 15, 2024) (discussing cases and finding that bankruptcy courts have the authority to toll or suspend statutes of limitation via Bankruptcy Rule 9006 and Bankruptcy Code section 108); *In re Campbellton-Graceville Hosp. Corp.*, 616 B.R. 177, 186–88 (Bankr. N.D. Fla. 2019); *see also In re Int'l Admin. Servs., Inc.*, 408 F.3d 689 (11th Cir. 2005) (finding that Bankruptcy Rule 9006 provided basis to extend time limits set forth in Bankruptcy Code section 546); *but see In re Cramer*, 636 B.R. 830 (Bankr. C.D. Cal. 2022) (finding Bankruptcy Rule 9006 does not authorize such extension). Courts analyzing the issue of whether an extension of time is warranted under Bankruptcy Rule 9006 typically review whether some form of inequitable conduct has necessitated such extension. *See, e.g.*, *Int'l Admin Servs.*, 408 F.3d at 696 ("The Trustee's ability to investigate the transfers was hampered by [the debtor's principal] and his associates, who, among other things, delayed document production, withheld discovery responses, and simply 'lost' records of the asset transfers.").

42. In addition to the ability to extend time pursuant to Bankruptcy Rule 9006, bankruptcy courts also have the inherit authority to equitably toll statutes of limitation for non-bankruptcy causes of action under their general powers as courts of equity. *See, e.g.*, *Kwok*, 2024 WL 666646, at *8. Generally, courts considering equitable tolling assess whether the party seeking

13

such relief can prove "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

43. Here, to the extent that the testimony at the Evidentiary Hearing establishes that MercyOne has failed to comply with the OC Rule 2004 Order or otherwise engaged in inequitable conduct, the OC respectfully requests that the Court issue an order extending the deadline set forth by Bankruptcy Code § 108(a) and equitably tolling statutes of limitation for any non-bankruptcy claims that are not brought by the OC on or before August 7, 2025. The OC asks for the statute of limitations to be suspended and tolled to the date that is the later of (i) 60 days after the OC is able to obtain the electronic communications requested in the OC Rule 2004 Order or (ii) the close of discovery in the forthcoming adversary case.

44. In particular, the OC will be filing a complaint against MercyOne on or prior to August 7, 2025. However, without the benefit of reviewing MercyOne's internal communications, the OC is unable to effectively assess whether additional causes of action may exist.

45. To the extent that it is shown that MercyOne either did not comply with the OC Rule 2004 Order or misled the OC about its possession of relevant and material electronic communications during the course of negotiating the OC Rule 2004 Order, the OC and the creditors of the estates should not suffer harm as a result.

46. Accordingly, if the evidence at the Evidentiary Hearing establishes that MercyOne has hampered the investigation of the OC into causes of action against MercyOne vis-à-vis the OC Rule 2004 Order, the OC respectfully requests that the Court enter an order pursuant to Bankruptcy Code sections 105(a) and 108, Bankruptcy Rule 9006, and its general equitable powers suspending and tolling the statute of limitations for any non-bankruptcy causes of action that are not brought

14

as part of the OC's forthcoming complaint until the date that is the later of (i) 60 days after the OC is able to obtain the electronic communications requested in the OC Rule 2004 Order or (ii) the close of discovery in the forthcoming adversary case. Such an extension will allow the OC sufficient time to attempt to obtain such electronic communications and continue and complete its investigation.

**WHERFORE**, the OC respectfully requests that the Court enter the Proposed Order attached hereto as Exhibit A, set the Evidentiary Hearing for July 14, 2025, require MercyOne to appear and show cause related to the OC Rule 2004 Order as set forth in the Proposed Order, enter an order after the Evidentiary Hearing as warranted suspending and tolling the statute of limitations for any non-bankruptcy causes of action not brought pursuant to the OC's forthcoming complaint, and granting any other relief that is equitable and just.

*[Remainder of the Page Intentionally Left Blank]*

Dated: June 30, 2025
      Cedar Rapids, Iowa

          **NYEMASTER GOODE, P.C.**

          */s/ Roy Leaf*
          Roy Leaf, AT0014486
          625 First Street SE, Suite 400
          Cedar Rapids, IA 52401-2030
          Telephone:  (319) 286-7002
          Facsimile:  (319) 286-7050
          Email:  rleaf@nyemaster.com

          - and -

          Leslie C. Behaunek, AT0011563
          Jaden Banks, AT0016210
          Logan J. Eliasen, AT0013755
          700 Walnut, Suite 1300
          Des Moines, IA 50309
          Telephone:  (515) 283-3100
          Fax:  (515) 283-8045
          Email:  lcbehaunek@nyemaster.com
                    jbanks@nyemaster.com
                    leliasen@nyemaster.com

          *Counsel for the Mercy Hospital Liquidation Trust Oversight Committee as Designee of the Liquidation Trustee*

## Certificate of Service

The undersigned certifies, under penalty of perjury, that on this June 30, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

/s/ *Roy Leaf*