## __EXHIBIT D__

**MercyOne Response Letter**

**FOLEY**

FOLEY & LARDNER LLP

321 N CLARK ST.
SUITE 3000
CHICAGO, IL  60654-4762
312.832.4500 TEL
312.832.4700 FAX
FOLEY.COM

WRITER'S DIRECT LINE
312.832.5160
dgoroff@foley.com

CLIENT/MATTER NUMBER
048544-0394

June 26, 2025

**VIA ELECTRONIC MAIL**
Roy Leaf, Esq.
Nyemaster Goode, P.C.
625 First Street SE, Suite 400
Cedar Rapids, Iowa 54201-2030
rleaf@Nyemaster.com

Dear Roy:

This letter responds to your letter to me dated June 20, 2025 (your "Letter") and your email of June 24, 2025 (your "Email"), which falsely suggest MercyOne spoliated evidence and make other false and scurrilous statements that are contrary to fact and law.

**MercyOne Had The Right To Adhere To Its Document Retention Policy**

A party has every right to adhere to its Document Retention Policy until such time that litigation is either imminent or filed.

Here, MercyOne indisputably adhered to its Document Retention Policy, under which its computer system retains emails for 180 days absent a litigation hold. As MercyOne and Mercy Hospital Iowa City ("MIC") ceased performing under their Management Services and Affiliation Agreement ("Agreement") in April 2023, this meant emails related to MercyOne's work at MIC would no longer have been retained as of October 2023. (And of course emails from earlier months would no longer have been retained after 180 days from those earlier months). Your Letter inaccurately asserts that MercyOne's system "was purged in March 2023." Rather, at all times, MercyOne rightly adhered to its Document Retention Policy.

**The OC's Accusation Of Spoliation Is Frivolous**

A.  **Litigation Was Not Imminent In February 2023, Nor Two Years Later**

You falsely state that "MercyOne was on notice from communications with Mercy Iowa City's restructuring advisors at least as early as February 2023 that it could reasonably anticipate a future complaint pursued against it." Yesterday, you confirmed that by "restructuring advisors," you mean Mark Toney and unidentified attorneys from McDermott Will & Emery ("MWE"). I asked you to provide me with these communications immediately so MercyOne could make an informed assessment of your assertion. You refused, which both evidences a failure to reasonably cooperate and a lack of confidence in the veracity of this representation.

AUSTIN  |  BOSTON  |  BRUSSELS  |  CHICAGO  |  DALLAS  |  DENVER  |  DETROIT  |  HOUSTON  |  JACKSONVILLE  |  LOS ANGELES
MADISON  |  MEXICO CITY  |  MIAMI  |  MILWAUKEE  |  NASHVILLE  |  NEW YORK  |  ORLANDO  |  RALEIGH  |  SACRAMENTO  |  SALT LAKE CITY
SAN DIEGO  |  SAN FRANCISCO  |  SILICON VALLEY  |  TALLAHASSEE  |  TAMPA  |  TOKYO  |  WASHINGTON, D.C.

4928-9967-3425.2

**FOLEY**

**FOLEY & LARDNER LLP**

Roy Leaf, Esq.
June 26, 2025
Page 2

You stated that the OC would not produce any such document to MercyOne unless it is responsive MercyOne's Rule 2004 Order. As the OC's production does not need to be complete until the end of August, this would mean that the OC would have withheld this from MercyOne prior to the July 14, 2025 court date when, according to your Email, the OC intends to appear live before Judge Collins on a motion related to purported spoliation. Your intent also appears to be to place MercyOne at a disadvantage at such a hearing. You know you will lose on a level playing field.

Any accusation of spoliation is frivolous. The OC has admitted that litigation was neither imminent nor reasonably certain as of February 2023. Indeed, the OC admitted it was not imminent or reasonably certain as of January 23, 2025, when it filed its Motion for Entry of Order Requiring MercyOne to Produce Records and Submit to Examination Pursuant to Bankruptcy Rule 2004 (Doc.1545). In Paragraph 3 of that Motion, the OC represented:

> Since its retention in September 2024, counsel for the OC has undertaken an investigation into the prepetition relationship between MIC and MercyOne in order to evaluate any and all claims that the Liquidation Trust may have against MercyOne on behalf of the Debtors. **The OC needs to understand whether claims against MercyOne are warranted** and whether the incurrence of legal fees to pursue those claims is in the best interests of the Debtors' creditors who hold interests in the Liquidation Trust. (*Id.*, ¶3) (emphasis added).

Likewise, in Paragraph 18, the OC stated:

> It is unclear at this time to what extent MercyOne performed other services required by it by the Management and Affiliation Agreement and whether MIC benefitted from those services. Pursuant to this Motion, **the OC seeks this information so that it can more properly weigh the costs of any potential litigation against MercyOne** with the benefits to the Debtors' creditors. (*Id.*, ¶18) (emphasis added).

The OC emphasized that its counsel was "investigat[ing]" "the background and events that precipitated MIC's chapter 11 filing. (*Id.*, ¶4) (emphasis added). *See also id*, ¶16 ("The OC continues to investigate to what extent MercyOne performed its obligations under the Management and Affiliation Agreement."). Thus, by its own admission, the OC was (and presumably still is) investigating whether it even has claims against MercyOne and, even if so, whether it would be cost-effective or sensible to bring these.

Other facts belie the assertion that MercyOne should have known that litigation was imminent or near certain. MWE is a highly sophisticated firm. Its attorneys plainly know the importance of a litigation hold letter and how to draft one. They presented no such letter at any time to MercyOne. Nor did either the Liquidation Trust or the OC after their appointment.

4928-9967-3425.2



**FOLEY & LARDNER LLP**

Roy Leaf, Esq.
June 26, 2025
Page 3

Moreover, as of February 2023, MercyOne was still performing under the Agreement and continued to do so until it terminated the Agreement in April 2023. If MIC and its agents believed that MercyOne had engaged in actionable conduct, they would not have continued performance with MercyOne after that time. Nor would MercyOne have done so.

Also, as MercyOne has emphasized to Judge Collins, Mr. Toney, as CRO for Debtors, in his First Day Declaration did not list MercyOne as a cause of Debtors' failure and bankruptcy. (See generally Doc.27). He identified no breach or failure by MercyOne. By contrast, he did identify the Bondholders as a cause.

Further, your Letter speaks of MIC or its successor(s) pursuing litigation, yet in February 2023, it was not certain that MIC would have successors or, if so, who they would be, what powers they would have or whether MWE and Mr. Toney could speak for or act for them.

Finally, it goes without saying that when 30 months have passed since February 2023, litigation was neither "imminent" nor "certain" then.

**B.** **Under Established Law, MercyOne Had No Duty To Preserve Until Litigation Was Imminent**

The OC's arguments defy governing Eighth Circuit and federal law.

Thus, while there can be exceptions when a party knows litigation is imminent, generally the duty to preserve documents only arises when a lawsuit is filed. *See, e.g., Cache le Poudre Feeds, LLC v. Land O Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007); *Phillips Elecs. N. Am. Corp v. BC Technical*, 773 F. Supp. 2d 1149 (D. Utah 2011); *San Francisco Residence Club, Inc. v. Park Tower, LLC*, 2011 WL 13233320 (N.D. Ala. Mar. 31, 2011) ("The motion fails also because CBRE had no obligation to preserve documents through a litigation hold prior to June 2009. Only at that time did plaintiffs add claims against CBRE, doc. 64, and perfect service of the Second Amended Complaint, doc. 66."); *E*Trade Secs. LLC v. DeutscheBank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005) ("[C]ourts look for significant signs of imminent litigation prior to the filing of a complaint and only impose a duty to preserve evidence when the signs are clear.")

Until that time, a party is free to adhere to its document retention policy. Thus, in *Gladue v. St. Francis* Med. Ctr., 2015 WL 1359091, at *1 (E.D. Mo. Mar. 24, 2015), at the time when plaintiff's personnel file was purged pursuant to ordinary procedure there was no lawsuit or charge of discrimination. The court held that, "[a] litigation hold was not required at the time plaintiff's emails were deleted. Defendant has shown that emails were deleted as part of a routine maintenance procedure rather than in bad faith."

Courts also hold that communications about potential suit do not substitute for a litigation hold letter. Thus, in *Keller v. Pepsi Bottling Grp*., 2007 WL 9735622, at **4-5 (D. Minn. Aug. 27, 2007), the court found that a report of grievance from plaintiff to defendant claiming that his termination was unjust did not with certainty "constitute[] a clear sign of imminent litigation," making it legally permissible for defendant to destroy documents, holding:

# FOLEY

**FOLEY & LARDNER LLP**

> If documents existed and were destroyed in this case, such destruction was legally permissible for several reasons. As the Court previously stated and contrary to Plaintiff's assertions, Defendants did not have a pre-litigation duty to retain information. Any destruction of documents before litigation began was thereby a valid exercise of their records retention policy. (*Id*.).

*See also Point Blank Solutions v. Toyobo Am., Inc*., 2011 WL 1456029 (S.D. Fla., Apr. 5, 2011) (letter from opposing counsel listing documents wanted for litigation created no duty to preserve where "[t]his counsel-prepared list, however, is not a 'litigation hold.' It does not instruct Toyobo to retain and not to delete the documents collected, nor does it provide a specific directive not to destroy future emails and other documents concerning the same subjects.")

## C.   MercyOne Did Not Act In Bad Faith And Any Claim Otherwise Would Be Frivolous

Thus, even where documents are destroyed pre-litigation, a movant must show that this was done in bad faith and with an intent to suppress the truth in order to recover sanctions. *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032 (8th Cir. 2007). Mere allegations that a party "knew or should have known" of litigation does not suffice for bad faith. *Morris v. Union Pac. Railroad*, 373 F.3d 896, 901 (8th Cir. 2004); *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 747 (8th Cir. 2004) ("We have never approved of giving an adverse inference instruction on the basis of prelitigation destruction of evidence through a routine document retention policy on the basis of negligence alone."); *Navratil v. Menard*, 830 F. Appx 494, 495 (8th Cir. 2020) ("where routine document retention policy has been followed, there must be indication of intent to destroy evidence for purpose of suppressing truth in order to impose sanction of adverse inference instruction") (summarizing *Stevenson*); *Am. S.S. Co. v. Hallett Dock Co.*, 2013 WL 308907 (D. Minn. Jan 25, 2013) ("The Court declines to impose any sanction. First, the evidence before the Court is that, if any emails existed, they were destroyed based on a routine document retention policy before litigation commenced, and there is no showing whatsoever of bad faith or an intent to suppress the truth.").

## D.   The OC Cannot Show That Any Missing Document Would Support Any Claim, As Required

Moreover, to recover sanctions the movant must demonstrate that the deleted documents would likely support plaintiff's claims. *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 2011 WL 4499259, at *10 (N.D. Iowa Sept. 27, 2011). You make no attempt to do so in your correspondence and would not be able to do so in any motion. To the contrary, the OC already has succeeded to all documents possessed by MIC for nearly the entire seven-year period when MercyOne provided services. And MercyOne also made a robust production of both hard copies and ESI, with 8078 pages of ESI produced and nearly 11,000 pages overall. You cannot identify any email you believe contains information you would not otherwise have or that would be inculpating.



### E.   MercyOne Produced 11,000 Pages Of Responsive Documents

Your Letter distorts the time-consuming and labor-intensive process MercyOne conducted to obtain these documents. Your email falsely suggests that MercyOne "did not run the search terms that we spent weeks negotiating." It absolutely did and you have no basis to claim otherwise. Your Letter notes that Mr. Trachta ran his own search for emails, but this was *in addition to searches by IT professionals for MercyOne*. You also noted that Mr. Trachta, in his individual deposition, had a different answer for when MercyOne underwent an IT transition than did Mr. Ritz. However, you provided no notice that either witness or MercyOne as a corporation would be deposed on this subject. It was not a Rule 30(b)(6) topic, and the date of the transition is immaterial anyway.

You accurately note that the parties agreed to narrow search terms in numerous conferrals. This was for searches of ESI which, again, appropriately narrowed what was searched to relevant custodians and terms and still turned up 8078 pages.

### F.   Any Motion For Sanctions Would Necessitate A Cross-Motion For Sanctions And Fees

Your email posits the false dichotomy that MercyOne either made false representations to the OC in the Rule 2004 process or it did not undertake sufficient efforts to obtain documents and communications. Neither is true. MercyOne spent weeks running, reviewing and producing responsive ESI and hard copy documents.

As I have advised you, a frivolous motion for sanctions is itself sanctionable. *See, e.g.*, *Alliance to End Repression v. City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990); *Fitch v. St. Paul's School for Girls*, 2025 WL 1346605 at **3-4 (D. Md. May 8, 2025); *Sokos v. Hilton Hotels Corp.*, 283 F. Supp.2d 42, 54-56 (D.D.C. 2003) (awarding sanctions against party who filed frivolous sanctions motion). If, despite the factual and legal information above showing the OC has no basis for asserting spoliation or seeking sanctions, the OC seeks such relief anyway, we will cross-move for sanctions and for fees for vexatious litigation under 28 U.S.C. §1927 and the Court's inherent authority. *See, e.g., Woodruff v. Merrill Lynch Pierce Fenner & Smith,* 1990 WL 124996 (D. Neb. Jan. 2, 1990) (awarding sanctions under Rule 11 and Section 1927 for frivolous motion to compel); *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071 (9th Cir. 2011) (upholding award under Section 1927).

Very truly yours,

David B. Goroff

DBG
cc:   Michael R. Reck
      Christopher J. Jessen
      Nora McGuffey



**Roy Leaf, Esq.**
June 26, 2025
Page 6

Leslie Behaunek
Paula Roby
John Dinan
Patrick Magallanes