**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERCY HOSPITAL, IOWA CITY, IOWA, *et al.* | ) ) ) | Case No. 23-00623 (TJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**MERCY HEALTH NETWORK INC.'S RESISTANCE**
**TO MOTION TO COMPEL ACCEPTANCE OF PAYMENT**

Mercy Health Network Inc., d/b/a MercyOne ("MercyOne"), by its attorneys, Foley & Lardner LLP and Belin McCormick P.C., respectfully submits this resistance and objection (the "Resistance") to the *Motion to Compel Acceptance of Payment* [Docket No. 1928] (the "Motion")[1] filed by Dan R. Childers, in his sole capacity as Trustee (the "Liquidation Trustee"), of the Mercy Hospital Liquidation Trust ("Trust"). In support of this Resistance, MercyOne respectfully states as follows:

**PRELIMINARY STATEMENT**

1. By the Motion, the Liquidation Trustee seeks both extraordinary and unsupported relief. Indeed, the Liquidation Trustee seeks to compel MercyOne to accept payment of its entire general unsecured claim, totaling $31,524.23 [Claim No. 10277] (the "Claim"), thereby affording MercyOne better treatment than other unsecured creditors in the same class. This is a clear violation of section 1123(a)(4) of the Bankruptcy Code, and the Liquidation Trustee offers no valid argument to the contrary. In fact, the Liquidation Trustee, as the moving party, fails to offer any

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed them in the Motion or the Plan, as appliable.

legal support in the Motion as to why the Court can or should compel MercyOne to accept payment.

2. The Liquidation Trustee erroneously attempts to shoehorn this relief under his authority to negotiate, compromise, and pay claims provided to him under the Plan, Confirmation Order, and Liquidating Trust Agreement. In support, the Liquidation Trustee states that he wishes to pay MercyOne "in light of the fact that ongoing litigation and appeal expenses will far exceed (and have exceeded) the fact amount of MercyOne's Claim." Motion ¶ 4. The Liquidation Trustee also points to a letter sent by Paula Roby, a member of the Oversight Committee ("OC"), to MercyOne's counsel on May 5, 2025 [Motion, Ex. 1] (the "OC Letter"), regarding the appeal that is currently pending before the U.S. Court of Appeals for the Eighth Circuit (the "Appeal"). *See Mercy Health Network, Inc. v. Mercy Hospital, Iowa City*, No. 25-1654 (8th Cir. 2025). In the OC Letter, the OC member purported to "tender" immediate payment to MercyOne in an effort to conserve Trust assets.

3. Neither the Motion nor the OC Letter are genuine attempts to settle or negotiate the Claim or Appeal or other matters between MercyOne and the OC or Liquidation Trust, as nothing even references Fed. R. Bankr. P. 9019 or requests a meet and confer to discuss a potential settlement. In fact, that no genuine settlement is on the table is clear from the fact that the Motion and OC Letter reserve all claims, causes of action and rights regarding this relief that the Trust and/or OC may have against MercyOne. Instead, both are legally baseless attempts to deprive MercyOne of standing and moot the Appeal.[2]

---

[2] Even if MercyOne were forced to accept payment of its entire Claim, this would not moot the Appeal or otherwise impact MercyOne's standing. *See, e.g., In re Wood,* 647 B.R. 165, 170 (B.A.P. 6th Cir. 2022) (possibility "however remote" that trustee might later seek to unwind payment to creditor precluded mootness of appeal); *cf. U.S. v. Molak*, 276 F.3d 45, 48-49 (1st Cir. 2002) (possibility of having to pay restitution was pecuniary interest precluding mootness of appeal). MercyOne also emphasized this in its opposition to the Trustee's Motion to Dismiss the Appeal and in its opening brief to the Eighth Circuit. In each, MercyOne also noted that has other, independent bases for standing. The Eighth Circuit continued with the merits of the Appeal despite the Liquidation Trustee's motion to dismiss the Appeal

2

4932-1928-3539.2

4. As such, the Court should deny the Motion in its entirety.

## ARGUMENT

**A. Accepting the Payment Would Violate Section 1123(a)(4), the Plan, And Confirmation Order, And Possibly Expose MercyOne to Even More Litigation**

5. For a plan to be confirmed, it is essential that claims of creditors in a particular class be treated the same. 11 U.S.C. §1123(a)(4); *see also In re Peabody Energy Corp.*, 933 F.3d 918, 925 (8th Cir. 2019) (noting each claim in a particular class must receive the same treatment); *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) (noting that equality of distribution among creditors is a central policy of bankruptcy code); *In re Sunnyland Farms, Inc.*, 2016 WL 1212723, at *5 (Bankr. D.N.M. Mar. 28, 2016) (Section 1123(a)(4) requires that allowed claims be treated similarly). To pay 100% of MercyOne's claim while others in the same class are to receive little or none would violate that principle. *See, e.g., In re Hampton Corp., Inc.*, 1992 WL 1482466 (Bankr. D.N.D. July 7, 1992); *see also In re Machne Menachem, Inc.*, 233 F.App'x. 119, 121-22 (3d Cir. 2007). While the Liquidation Trustee cites *Peabody*, he ignores its essential holding.

6. The Liquidating Trustee nonetheless contends that section 1123 "only governs how a plan is or is not confirmable." Motion ¶ 6. However, this is not true.

7. A similar motion filed by an unsecured creditor in *In re Hampton Corp., Inc.*, 1992 WL 1482466 (Bankr. D.N.D. July 7, 1992), failed. There, the unsecured creditor Cole Papers, Inc. ("Cole") had an unsecured claim of approximately $51,707, which was also guaranteed by the debtor's president. *Id.* at *1. After the plan was confirmed, Cole received a $30,000 payment by the guarantor pursuant to a separate settlement of the guaranty obligation. *Id.* Nonetheless, Cole

---

for lack of standing, ruling that the issue of standing would be addressed as part of that merits determination. *See* Order dated June 5, 2025 in *Mercy Health Network, Inc. v. Mercy Hospital, Iowa City, et al*, No. 25-1654 (8th Cir. June 5, 2025), Entry ID 5524250.

3

sought to compel the debtor to make a full payment on account of claim under the plan, asserting that it was entitled to the original amount of $51,707. *Id.* (the applicable plan provision provided that the holders of an allowed claim would receive distributions totaling 35% of each of their allowed unsecured claim). The bankruptcy court denied Cole's motion to compel, finding that the guaranty payment reduced Cole's claim by $30,000 and therefore was only entitled to receive 35% distribution of 21,707 under the plan. *Id.* at *3. The bankruptcy court noted that if it were to accept Cole's logic and grant the motion, Cole would receive more than 35% of its claim, which would violate the plan and also section 1123(a)(4); "it would also be in a better position than the other creditors within the same class." *Id.* ("Cole simply cannot receive more than 35% of its unsecured claim since the basic requirement that every claim or interest within a particular class be treated identically would be violated."); *see also In re Machne Menachem, Inc.*, 233 F.App'x. 119, 121-22 (3d Cir. 2007) (paying creditors outside of plan violated §1123(a)(4), stating, "[w]e agree with the District Court that the debtor's orchestration of the purchase of claims outside the plan of reorganization undermined the critical confirmation requirements of the bankruptcy code.").

8. This same logic applies here to the Motion and the Liquidation Trustee's request that this Court compel MercyOne to accept payment of its Claim. MercyOne's Claim is a General Unsecured Claim, and therefore is only entitled to receive distributions in accordance with the Plan. Pursuant to the Plan, General Unsecured Claims are afforded the following treatment:

> On, or as soon as reasonably practicable after, the Effective Date, ***except to the extent such Holder and the Debtors or the Liquidation Trustee, as applicable, agree to alternative treatment in writing***, each Holder of an Allowed General Unsecured Claim shall receive, on account of, in exchange for, and in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed General Unsecured Claim, ***a Pro Rata Distribution of the Unsecured Claims Waterfall Amount***; *provided* that aggregate recovery amounts attributable to the Holders of Allowed General Unsecured Claims (Class 3) and Holders of Allowed Pension

> Claims (Class 5) shall not be less than ten percent (10%) of the aggregate recovery amounts attributable to the Holders of Allowed Bondholder Claims (Classes 1-A and 1-B), with distributions made by the Liquidation Trust post-Effective Date being modified accordingly pursuant to the Liquidation Trust Agreement.

Plan, Art. V.B.4 (emphasis added). The Confirmation Order then makes the explicit finding that Plan's proposed treatment of the General Unsecured Claims satisfies section 1123(a)(4) of the Bankruptcy Code, finding that:

> Article V of the Plan provides for the same treatment by the Debtors of each Claim in each respective Class unless the Holder of a particular Claim has agreed to or elected a less favorable or different treatment of such Claim. Therefore, the requirements of Bankruptcy Code section 1123(a)(4) have been satisfied.

Confirmation Order, ¶ N(iv).

9. As such, the Plan provides that MercyOne is entitled to a "Pro Rata Distribution of the Unsecured Claims Waterfall Amount" on account of its Allowed General Unsecured Claim.[3] If the Liquidation Trustee were to pay MercyOne its entire Claim, that would unquestionably put MercyOne in a better position than other General Unsecured Creditors within the same class, and thus, violate section 1123(a)(4). It would also violate the Plan and Confirmation Order, and potentially expose MercyOne to subsequent litigation to claw back that payment brought either by the OC or another party in interest.

10. The Liquidation Trustee nevertheless erroneously contends that his payment is "based on distinct, legitimate rights," citing *In re Peabody*, 933 F.3d 918 (8th Cir. 2019), as support. Motion ¶ 6. But the Liquidation Trustee misapplies *Peabody* to facts here.

---

[3] Notably, as the Trustee acknowledges, MercyOne does not even have an Allowed General Unsecured Claim as the Trustee's claim objection remains pending. *See* Motion, ¶ 3 (citing Claim Objection, Docket No. 1814).

11. The Eighth Circuit in *Peabody* determined that a chapter 11 plan "may treat one set of claim holders more favorably than another so long as the other treatment is not for a claim, but for distinct, legitimate rights or contributions from the favored group separate from the claim." *Peabody*, 933 F.3d at 925. In other words, a plan may treat certain claimants more favorably than others when ***those claimants*** contribute something to the plan or plan process. Specifically, in *Peabody* the Eighth Circuit determined that the plan's "Private Placement" option, which gave qualifying creditors the choice to purchase preferred stock in the reorganized debtors at a 35% discount, did not violate section 1123(a)(4) because the qualifying claimants "promised to support the plan, buy preferred stock that did not sell in the Private Placement, and backstop the Rights Offering." *Id. See also, Ahuja v. LightSquared Inc.*, 644 F.App'x 24, 29 (2d Cir. 2016) (holding that section 1123(a)(4) was not violated where the plan treated an equity holder better than others because that equity holder (1) had a secured claim separate from its equity interest; and (2) had "agreed to attribute" to the reorganized debtor certain "causes of action against third parties."); *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518-19 (5th Cir. 1998) (concluding that a plan proponent's payments to certain members of a debtor power cooperative did not violate section 1123(a)(4) because the payments were "reimbursement for plan and litigation expenses," not payments "made in satisfaction of the [members'] claims against [the debtor].").

12. Here, the offer to fully pay MercyOne's Claim **was not** on account of any contribution MercyOne made to the Plan or Plan-negotiation process. Instead, the Liquidation Trustee and/or OC wish to deprive MercyOne of its legal right to pursue the Appeal. The Liquidation Trustee's and OC's brazen, but legally improper, attempt to moot the Appeal clearly

6

runs afoul of section 1123(a)(4). The Liquidation Trustee fails to provide any relevant legal authority to the contrary.

13. As such, paying MercyOne's Claim in full unquestionably puts MercyOne in a better position than the other General Unsecured Creditors within the same class, and thus directly violates section 1123(a)(4), the Plan, and the Confirmation Order, while exposing MercyOne to subsequent challenges.

B. **Neither This Court's Inherent Authority Nor Section 105 Of The Bankruptcy Code Can Support An Order Compelling MercyOne To Accept Payment That Would Violate The Bankruptcy Code**

14. The Liquidation Trustee offers no legal basis for compelling MercyOne to accept payment, but rather argues that such payment would not violate section 1123(a)(4)—which, as detailed above, is incorrect. Notwithstanding, to the extent that the Liquidation Trustee relies on section 105(a) or this Court's inherent power to compel MercyOne's acceptance, this too would fail.

15. As a general rule, "'a bankruptcy court may not contravene specific statutory provisions' of the Bankruptcy Code." *In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 952 (8th Cir. 2018) (quoting *Law v. Siegel*, 571 U.S. 415, 421 (2014)). Section 105(a) thus cannot be used to override or contravene specific provisions of the Bankruptcy Code. *Id.* ("[T]he broad, catch-all equitable powers conferred under 11 U.S.C. § 105(a) do not allow a bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."). This section "confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Siegel*, 571 U.S. at 421.

16. As such, the Liquidation Trustee cannot rely on this Court's inherent authority or section 105(a) because compelling MercyOne to accept payment that would violate section

7

1123(a)(4). The Liquidation Trustee has failed to provide any other legal support (and none exists). The Liquidation Trustee cannot unilaterally force MercyOne to accept a distribution that would violate the Plan and Confirmation Order and leave MercyOne exposed to challenges raising these defects. Accordingly, the Motion should be denied in its entirety.

**C.    Compelling MercyOne to Accept Payment is Not Authorized Under the Liquidation Trustee's Authority to Compromise, Settle, or Pay Claims**

17. The Liquidation Trustee further asserts that his payment is "based on cost-benefit considerations and the desire to save and conserve resources of the Trust." Motion ¶ 6. To that end, the Liquidation Trustee suggests that compelling MercyOne to accept payment of its Claim falls under his power to "negotiate, compromise, and pay claims."[4] *Id.* This, too, is incorrect.

18. Significantly, the Motion does not even mention Fed. R. Bankr. P. 9019. Instead, the Motion improperly seeks to force MercyOne to accept payment of its Claim, which, in turn, the Liquidation Trustee hopes will moot the Appeal by depriving MercyOne of standing (an issue that the Eighth Circuit has already said it wants to reserve until its merits determination).

19. The Motion offers MercyOne purely illusory relief as to its Claim, as it reserves the Trust, Liquidation Trustee, and OC's respective "rights, remedies, arguments, claims, and theories etc. against MercyOne . . . in this Court or in any other forum." Motion ¶ 7. Thus, an order forcing MercyOne to accept payment might still be followed by an "argument[], claim[] or theor[y]" by any of these parties that MercyOne must give this back, or that it must lose other rights because it received this. This reservation of rights belies any notion of settlement or compromise.

---

[4] As recognized by the Trustee, only he has the power to negotiate, compromise, and pay claims. Interestingly, however, the OC Letter came from a member of the OC, who acts without legal authority. Pursuant to the Plan, Confirmation Order, and Trust Agreement, the OC has the authority to "consult in good faith with and advise the Liquidation Trustee as to the administration and management of the Liquidation Trust in accordance with (i) the Plan, the Confirmation Order, and this Liquidation Trust Agreement . . ." Docket No. 993, Liquidation Trust Agreement, Art. 11.2; Plan, Art. X.B (The powers and duties of the Trust Oversight Committee shall be set forth in the Liquidation Trust Agreement.).

20. And it is not just these parties who might challenge a payment to MercyOne. Claimants or those acting for them might also contest such perceived favoritism, especially where this is contrary to both the Plan and the Code.

21. The same is true about the OC Letter. The Letter states that the Trust and OC are "tender[ing]" immediate payment of MercyOne's entire Claim but "**without** conceding any and all right, theory, argument, etc. (such as but not limited to the Trust's right to seek relief pursuant to F.R.B.P. 8020, or any and all claims the Trust and the OC have against Mercy Healthcare Network et al)[.]" Motion, Ex. 1 (emphasis in the original). Again, the OC Letter is not a settlement—particularly, where the OC reserves all rights and claims to challenge this and anything else against MercyOne.

22. MercyOne has always indicated to the Liquidation Trustee and the OC that it is open to discussing a global resolution of all claims of MercyOne on the one hand and the Liquidation Trustee and OC on the other. Indeed, MercyOne's understanding of OC's Motion for Rule 2004 discovery was that it was in part designed to facilitate such discussions. Yet, at least as of this date, the OC (and the Liquidation Trust) have shown no interest whatsoever in truly settling. Thus, no interest in settling supports the Liquidation Trustee's Motion.

## CONCLUSION

**WHEREFORE**, MercyOne respectfully requests that the Court deny the Motion in its entirety and grant any other relief that it deems just and proper.

[*The remainder of this page is intentionally left blank*]

Dated: July 7, 2025

Respectfully submitted,

*/s/ David B. Goroff*
Edward J. Green (admitted *Pro Hac Vice*)
David B. Goroff (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
321 N. Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
egreen@foley.com
dgoroff@foley.com

- and -

*/s/ Christopher J. Jessen*
Michael R. Reck
Christopher J. Jessen
**BELIN McCORMICK, P.C.**
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309
Tel: (515) 243-7100
Fax: (515) 558-0675
mrreck@belinmccormick.com
cjessen@belinmccormick.com

– and –

Jake W. Gordon (admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Tel: (248) 943-6484
jake.gordon@foley.com

*Counsel for Mercy Health Network Inc., d/b/a MercyOne*

10

4932-1928-3539.2

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that on this July 7, 2025, the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

                                          */s/ David B. Goroff*
                                          David B. Goroff