IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*, nka MHIC<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 23-00623<br><br>**REPLY SUPPORTING MOTION TO COMPEL ACCEPTANCE OF PAYMENT** |

COMES NOW Dan R. Childers, in his sole capacity as Trustee ("Trustee") of the Mercy Hospital Liquidation Trust ("Trust"), and in support of his Motion to Compel Acceptance of Payment (Doc. 1928) ("Motion") respectfully states:

**I.  The Plan DOES allow the Trust to Pay MercyOne approximately $31,000**

1.  MercyOne urges if MercyOne were paid the full amount of its Allowed Claim, the payment would violate the pro-rata provision in Plan Article V(B)(4). MercyOne conveniently ignored the Plan defined "Pro Rata" as "the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class, *__unless the Plan provides otherwise__*." Plan, Art. 1.183 (emphasis added). At Article X(I)(1) of the Plan, the Liquidation Trustee is vested with the "powers of a trustee under Bankruptcy Code §§ 704 and 1106." Bankruptcy Code § 704(a)(1) provides the "trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." This Court interpreted §704(a)(1) to mean a trustee must "maximize value to the estate . . . ." *In re Wait*, 2010 WL 2667413, at *4 (Bankr. N.D. Iowa June 24, 2010) (Collins, C.J.). And it has long been held the trustee's duty to maximize value includes the duty to "preserve estate assets." *E.g.*, *In re*

*Slack*, 164 B.R. 19, 22 (Bankr. N.D.N.Y. 1994). With respect to MercyOne's appeal of the Plan Confirmation Order, the Trustee in the case at bar has at least two choices: pay $31,000 to MercyOne or spend multiples of $31,000 to litigate and participate in the appeal of this Court's Confirmation Order. No one can credibly urge the Trustee should pursue the latter but not the former. Simply put, paying MercyOne $31,000 does NOT violate the pro-rata Plan provision, because paying MercyOne $31,000 is specifically allowed by the "unless the plan provides otherwise" language in Article 1.183 of the Plan. MercyOne's myopic focus on Article V(B)(4) the Plan should be summarily rejected. Last but not least, the Plan indeed contemplated payment in full of an Allowed Claim, *viz.* the Plan at Art.XI(G) specifically stated "[n]otwithstanding any other provision hereof, no Liquidation Trust Beneficiary shall receive more than full payment of its applicable Allowed Claim …." If the Trustee were not allowed to pay in full an Allowed Claim, this provision would be rendered a nullity. Surely MercyOne is not suggesting this Court read only portions of the Plan and not the entire Plan.

**II.   § 1123(a)(4) Does Not Apply, and Even If It Did It Would Be Satisfied.**

2.   The Trustee seeks to maximize recoveries for the Trust beneficiaries by exercising his settlement authority and paying MercyOne's $31,000 Claim rather than continuing to spend money defending MercyOne's meritless appeal of the Confirmation Order. In response, MercyOne argues the proposed payment would violate Bankruptcy Code § 1123(a)(4). It does not. As the Trustee explained in his Motion, § 1123 exclusively governs the "[c]ontents" of a Chapter 11 "plan." 11 § U.S.C. 1123 (§ title). Because the Debtors' Plan has already <u>been</u> confirmed, § 1123 does not apply.

3.    Significantly, MercyOne could not find a single applicable case or binding authority saying otherwise. Although MercyOne cites *In re Hampton Corp., Inc.*, that decision involved a Bankruptcy Court's usage of § 105(a) to "construe[]" or "clarify" a confirmed plan, as opposed to modifying a plan via § 1127. *Hampton*, 1992 WL 1482466, at *2, *3 (Bankr. D.N.D. July 7, 1992). That usage of § 105, however, likely is no longer viable, in light of *Law v. Siegel*, 571 U.S. 415, 421 (2014), *viz.* the Supreme Court in *Siegel* held § 105 does not allow a Bankruptcy Court to "override explicit mandates" of the Code, and "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines" of the Code. *Id.* (citations omitted).  As such, *Hampton* likely is no longer good law, because its usage of § 105 contravenes the modification provision in §1127. And in any event *Hampton* does not bind this Court. MercyOne also relies on *In re Machne Menachem, Inc.*, 233 F.App'x 119, 121–22 (3d Cir. 2007). That decision, however, was an unpublished opinion, and unpublished opinions have no precedential value in the Third Circuit. *United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995); *Fallon Elec. Co., Inc. v. Cincinnati Ins. Co.*, 121 F.3d 125, 128 n.1 (3d Cir. 1997); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 n.12 (3d Cir. 1996); *In re Clayton*, 198 B.R. 878, 884 n.2 (Bankr. E.D. Pa. 1996). Surely an opinion that has no precedential value in its own Circuit cannot control proceedings in this Circuit.

4.    Even if § 1123(a) did apply, the Trust's payment to MercyOne would not violate it. MercyOne simply misreads *Peabody*. *In re Peabody*, 933 F.3d 918 (8th Cir. 2019). To MercyOne, *Peabody* mandates MercyOne make a "contribution" to the "Plan or Plan-negotiation process" before it can lawfully accept full payment of its claim under

§1123(a)(4). Doc. 1947 ¶ 12. Since MercyOne apparently agrees it didn't make any such contribution, MercyOne believes *Peabody* prevents the Motion's proposed payment. *Id.* But *Peabody* stands for a broader proposition than MercyOne contends. Instead of narrowly focusing on "contribution," the opinion holds § 1123(a)(4) is satisfied so long as a creditor's favorable treatment "is not for the [creditor's] claim but for . . . ***legitimate [distinct] rights* or** contributions . . . separate from the claim." *In re Peabody*, 933 F.3d at 925 (emphasis added). MercyOne's right of appeal of the Plan Confirmation Order is distinctly "separate from" its claim, so paying MercyOne to resolve that appeal comports with § 1123(a)(4). Simply put, MercyOne's reliance on the "contribution" prong of *Peabody* completely and wrongly ignores the "legitimate distinct rights" prong of *Peabody*. This Court should reject MercyOne's erroneous and selective reading of Judge Melloy's *Peabody* opinion.

5.  Further, § 1123(a)(4) merely requires each member of a class be subject to the "same process for claim satisfaction," regardless of whether that process "yield[s] the same pecuniary result for each class member." *In re Cent. Med. Ctr., Inc.*, 122 B.R. 568, 575 (Bankr. E.D. Mo. 1990). Here the Plan created a uniform Claim-treatment *process* by empowering the Trustee to resolve Claim Objections based on his discretion. Thus, even if that process might entail different "pecuniary result[s]" for some members of a class depending on the Trustee's deployment of his discretion, there is no § 1123(a)(4) violation. *Id.* Specifically, as applied to MercyOne, the Trustee determined that resolving MercyOne's $31,000 claim in full, rather than spending more than that on attorneys' fees litigating MercyOne's appeal, is in the best interests of the Trust's beneficiaries. Because the *process* used to reach this result is the same as the Trustee's payment of other Claims, compelling MercyOne to accept the $31,000 payment satisfies § 1123(a)(4). Indeed, satisfying § 1123(a)(4) through a uniform

*process*, as opposed to uniform *outcome*, is analogous to the uniformity of Bankruptcy Code's optional exemption regime. 11 U.S.C. § 522; *see In re Holt*, 84 B.R. 991, 998 (Bankr. W.D. Ark.), *aff'd*, 97 B.R. 997 (W.D. Ark. 1988), *aff'd*, 894 F.2d 1005 (8th Cir. 1990) (discussing constitutional uniformity requirement and holding § 522's optional exemptions passed constitutional muster), *viz.* even though individual States may enact different exemption regimes, Constitutional uniformity is achieved at the level of § 522 giving the States a choice to opt in or opt out of the Code's exemptions, not at the level of the exemptions actually in effect once that choice is made. Similar to the § 522 line of caselaw, the Plan satisfies §1123(a)(4)'s uniform treatment requirement because the Plan endows the Trustee with the discretionary authority to settle, resolve, or pay Claims, even if he may exercise that discretion differently for different claimants, and even if exercise of that discretion yields different monetary outcomes.

### III. The Liquidation Trust Agreement Permits the Proposed Payment.

6. The Liquidation Trust Agreement gave the Trustee the power to act "without Court approval" to "settle, compromise, withdraw, or *resolve in any manner*" Disputed Claims and Claim objections. Doc. 993 at 14, Trust Agreement § 3.1(g) (emphasis added). This constitutes a delegation of authority to the Trustee to use his judgment to reasonably resolve Disputed Claims however he sees fit. Included within this expansive delegation surely is the authority to resolve MercyOne's Dispute Claim by paying it in full. Any other interpretation arbitrarily restricts and dilutes the plain meaning of "resolve in any manner." As relevant here, the Plan endows the Trustee with wide authority to resolve Claims and thereby enables the Trustee to diverge from a literal pro rata distribution on a case-by-case basis to achieve a resolution most advantageous to the Trust's beneficiaries. *See generally*

Plan Art. X. The Court should not adopt a construction of the Plan that would hamstring this critical ability which the Trustee has already exercised multiple times. *See, e.g.*, Docs. 1494, 1518, 1526, 1558, 1920, and 1921 (orders approving different treatment and payments of unsecured and administrative claims).

7. MercyOne also attempts to argue the Motion is defective because it "does not even mention Fed. R. Bankr. P. 9019." Doc. 1947 ¶ 18. But Rule 9019 applies to a bankruptcy "trustee[,]" Fed. R. Bankr. P. 9019(a), and the Trustee here is merely a "representative" vested with the power of a trustee. *See* Plan Art. X(I)(1). Moreover, the standards governing a bankruptcy trustee's motion to compromise or settle a claim do not regulate the Trustee's Motion, because the Trust Agreement gives the Trustee authority to resolve claims "without Court approval." *In re W. Funding Inc.*, 550 B.R. 841, 850–51 (B.A.P. 9th Cir. 2016), *aff'd*, 705 F.App'x 600 (9th Cir. 2017); Doc. 993 at 14, Trust Agreement § 3.1(g).

8. But no matter what standard applies, the Trustee's proposed resolution of paying MercyOne's claim to forestall additional attorneys' fees in excess of the claim amount is reasonable. Notably, MercyOne never attacks (because it cannot attack) this basic proposition. Instead, MercyOne makes the curious argument that once MercyOne accepts payment, the Trustee, Oversight Committee, or some unidentified party could somehow demand the payment be reversed. Doc. 1947 ¶ 19. MercyOne never explains what cause of action the Trustee or Oversight Committee could employ to recapture the payment. To the extent MercyOne is relying on § 549, that provision only recaptures "property of the estate." Payments from the Trust are not transfers from the Debtors' Estates. This is so because property of the Debtors' estates in this case was vested in the Liquidation Trust. *See* Plan

Article IX(L) ("The property of the Debtors' Estates shall not be vested in the Debtors on or following the Effective Date, but shall be vested in the Liquidation Trust"). When the Liquidation Trust pays MercyOne, the money comes from the Trust assets, NOT "property of the estate" within the meaning of § 549. Plus, transfers subject to § 549 are merely voidable, not void. *In re Vierkant*, 240 B.R. 317, 324 (B.A.P. 8th Cir. 1999). And if MercyOne is concerned about the Plan being unwound, it can easily ameliorate that problem by dismissing its appeal. Further, apart from MercyOne, no other interested party has objected to the Trustee's Motion. One reason why is when granted, the Motion would increase distributions to every other creditor.

9. Finally, MercyOne's position in this proceeding is contradictory with its position in the Eighth Circuit appeal. There, MercyOne argued it is injured by the Plan's impairment of its Claim. But here, MercyOne objects to curing that injury via immediate cash payment of its entire Claim. Likewise, MercyOne insists on fidelity to the Plan while simultaneously seeking to reverse its confirmation. Simply put, MercyOne should not be allowed to say on the one hand it is injured as an impaired creditor while on the other hand argue payment in cash in full of its Claim cannot be effectuated.

WHEREFORE, the Trustee respectfully prays this Court enter and enroll an Order directing and compelling MercyOne to accept cash in the amount of $31,524.63 from the Trustee, and for such other relief as may be just and proper under the premises.

                                      */s/     E Lam*

Eric W. Lam, AT0004416
Joseph Porter, AT0014454
SIMMONS PERRINE MOYER BERGMAN PLC
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401
Tel: 319-366-7641; Fax: 319-366-1917
elam@simmonsperrine.com

jporter@spmblaw.com
ATTORNEYS FOR LIQUIDATION TRUSTEE

### Certificate of Service

The undersigned certifies, under penalty of perjury, that on this 10th day of July, 2025 the foregoing document was electronically filed with the Clerk of Court using the Northern District of Iowa CM/ECF and the document was served electronically through the CM/ECF system to the parties of this case.

                                      */s/     E Lam*

MHLT/Pldgs/BA 23-00623 – Drafts/Reply Supporting TE.MtoPayM1.071025.652.ewl