UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>MERCY HOSPITAL, IOWA CITY, IOWA, *et al.*,<br><br>Debtors | Chapter 11<br><br>Bankruptcy No. 23-00623 |

# OPINION AND ORDER ON
# MOTION TO COMPEL ACCEPTANCE OF PAYMENT

This matter came before the Court for a telephonic hearing on July 11, 2025, on a Motion to Compel Acceptance of Payment (Doc. 1928). It was filed by Dan R. Childers, in his sole capacity as Trustee ("Trustee") of the Mercy Hospital Liquidation Trust. The following appeared: Eric Lam and Joseph Porter for Trustee, David Goroff and Christopher Jessen for MercyOne, and Claire Davison for the United States Trustee. The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I. BACKGROUND

Debtors filed a Chapter 11 Petition on August 7, 2023. The Plan was confirmed on June 7, 2024 (Doc. 1115) over MercyOne's Objection. Under the Plan (Doc. 1050), the Trust was created, and Trustee was appointed. The Effective Date of the Plan

was June 24, 2024 (Doc. 1139). The Plan was to be substantially consummated under Bankruptcy Code sections 1101 and 1127 on the Effective Date (Doc. 1114, ¶ 57). MercyOne, Debtors' former manager, has appealed the Confirmation Order. Under the terms of the confirmed Plan, MercyOne holds a Class 3 general unsecured claim of $31,524.63 (No. 10277). Trustee has objected to MercyOne's Proof of Claim. In May 2025, the Trust Oversight Committee wrote to counsel for MercyOne. The letter stated, in relevant part:

> Based on information from the Trustee and our own independent assessment of the situation, the OC is reasonably sure continued pursuit of the appeal of the Confirmation Order will cost the Trust more than the face amount of MercyOne's Proof of Claim #10277. To that end, bearing in mind the need to conserve Trust assets and **_without_** conceding any and all right, theory, argument, etc. (such as but not limited to the Trust's right to seek relief pursuant to F.R.B.P. 8020, or any and all claims the Trust and the OC have against Mercy Healthcare Network *et al*), the Trust and the OC hereby tender immediate payment to Mercy Healthcare Network the amount of $31,524.23, as satisfaction in full of your client's Proof of Claim. Indeed, this payment is consistent with the contention you urged at *In re Mercy Hosp et al*, #23-623, Dkt #1881, ¶ 58, *viz.* you on behalf of your client posited the Trust should simply pay the amount displayed on the Proof of Claim.

(Doc. 1928, Ex. 1) (emphasis in original). Counsel for MercyOne rejected the cash tender, arguing that acceptance of the payment would violate 11 U.S.C. § 1123(a)(4) and related authority. The Trustee then filed a Motion to Compel Acceptance of Payment, arguing that the Plan and Liquidation Trust Agreement ("LTA") authorize him to pay MercyOne's claim and that it would not constitute a violation of section 1123.

2

## II. DISCUSSION

### A. The Parties' Arguments

Trustee asks the Court to direct MercyOne to accept the cash tender of $31,524.63—the full amount of MercyOne's claim. The Trustee asserts that this cash tender is within the power vested in him by the confirmed Plan and LTA to negotiate, compromise, and settle any proof of claim against the Debtors. MercyOne argues that the offer letter from the Oversight Committee was not a genuine attempt to reach a compromise. MercyOne points out it rejected the tender, that a meet and confer was not requested, and that the Trustee reserved all claims, causes of action, and rights against MercyOne. MercyOne argues that this makes clear that there was no attempt to truly settle its claim.

In addition, MercyOne argues that the payment of its claim would afford it better treatment than other unsecured creditors in the same class, in violation of 11 U.S.C. § 1123(a)(4). The Trustee argues that the payment would not violate section 1123 because that section exclusively governs the contents of a Chapter 11 plan, and the Debtors' Plan has already been confirmed. Even if section 1123 was applicable here, the Trustee argues that there would be no violation "because the payment is based on 'distinct, legitimate rights,' akin to 'consideration for valuable new commitments,'" as opposed to treatment for MercyOne's claim. The Trustee cites In re Peabody, 933 F.3d 918, 925 (8th Cir. 2019), in support of this argument. MercyOne

argues that the Trustee misapplies Peabody here. It asserts that the Trustee's attempt to pay the claim was not on account of "valuable new commitments" made by MercyOne, nor was it based on "distinct, legitimate rights" separate from the proof of claim. Instead, the payment was meant to be treatment for MercyOne's claim.

B. The Terms of the Plan and LTA

This dispute arose after the Plan was confirmed and substantially consummated. The Court thus first considers whether the plain language of the Plan and accompanying LTA, authorizes the Trustee to pay MercyOne's claim in full. "Once confirmed, a Chapter 11 plan acts as both a contract which binds the parties and as an order of the bankruptcy court." JCB, Inc. v. Union Planters Bank, NA, 539 F.3d 862, 870 (8th Cir. 2008) (citing Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.), 341 F.3d 738, 744 (8th Cir. 2003)). See also 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor … and any creditor"). Upon confirmation of the Plan, the Liquidation Trust was established under the LTA and a Trustee was appointed "to administer the Liquidation Trust for the benefit of the Holders of all Allowed Claims under the Plan."

The Plan provides that Iowa law governs the construction and implementation of the Plan, and any agreements executed in connection with the Plan, including the LTA. Under Iowa law, this Court cannot look at particular provisions in isolation and instead must interpret the agreements as a whole. Fashion Fabrics of Iowa, Inc. v.

4

Retail Investors Corp., 266 N.W.2d 22, 26 (Iowa 1978) (citing Gendler Stone Products Co. v. Laub, 179 N.W.2d 628, 630 (Iowa 1970)). "Because an agreement is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Id.

The Trustee argues that he is authorized to pay MercyOne's claim under sections 7.7(a) and (b) of the LTA. Section 7.7(a) empowers the Trustee to "**compromise and settle** any Disputed Claim … without further notice to any party, or action, approval, or order of the Court." (Emphasis added). Section 7.7(b) similarly grants the Trustee "the exclusive right to (i) **compromise and settle** any Disputed Claim or Claim that has not otherwise been Allowed, upon agreement with the Holder of such Disputed Claim … without further Order or approval of the Court." (Emphasis added). A claim is a "Disputed Claim" when it is the subject of a timely objection which has not been withdrawn or overruled by a final order (Doc. 1050, p. 19). The Trustee objected to the allowance of MercyOne's proof of claim (Doc. 1814). This objection has not been withdrawn or overruled. MercyOne's Claim is a Disputed Claim under the terms of the Plan and the Trustee has the power to "compromise and settle" the claim.

### C. There is No Compromise or Settlement Under the Law Defining Compromise or Settlement and the Terms of the Plan and LTA

"[S]ettlement agreements are essentially contractual in nature. [Iowa courts] utilize contract principles when interpreting settlement agreements and considering other challenges." Phipps v. Winneshiek County, 593 N.W.2d 143, 146 (Iowa 1999) (citations omitted). Both parties to a settlement "must manifest their mutual assent to the terms sought to be enforced." Sierra Club v. Wayne Weber LLC, 689 N.W.2d 696, 702 (Iowa 2004). "Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds." Royal Indem. Co. v. Factory Mut. Ins. Co., 786 N.W.2d 839, 846 (Iowa 2010).

The record here suggests that the Oversight Committee independently decided to pay MercyOne's Claim based on cost-benefit considerations. There was no "mutual assent" or a "meeting of the minds" between the parties, evidenced by the Motion to Compel Acceptance of Payment before the Court. Communication between the parties shows that no terms were agreed upon, the parties never had a meet-and-confer to discuss mutually agreeable terms, and MercyOne never accepted or assented to the demand of the Trustee. In addition, Trustee has not withdrawn his Objection to MercyOne's Proof of Claim. Both the Trustee and the TOC have asserted that by seeking to pay MercyOne's claim, they "are not waiving and instead are reserving and preserving any and all rights, remedies, arguments, claims, and theories, etc. against MercyOne." (Doc. 1928, p. 3). This is not a compromise or

6

settlement. The Trustee is merely seeking to pay the MercyOne's Disputed Claim in hopes that it will resolve the appeal. While this may be in the Trust's best interests, the Trustee does not have the power unilaterally to pay a Disputed Claim—only to compromise or settle the claim. There is no compromise or settlement under the law on this record. There is no mutual assent to the terms. There is only unilateral action by one party. This finding is dispositive.

The terms of the Plan and LTA make this more clear. They contemplate distributions only to holders of Allowed Claims.[1] This is consistent with Federal Rule of Bankruptcy Procedure 3021 and this Court's application of the Rule in earlier cases. See In re Reichenbach, 2004 Bankr. LEXIS 1009, at *5–6 (Bankr. N.D. Iowa May 5, 2004) (citing Fed. R. Bankr. P. 3021; In re Walters, 219 B.R. 520, 523 n.1 (Bankr. W.D. Ark. 1998); In re Griggs, 306 B.R. 660, 664 (Bankr. W.D. Mo. 2004)) ("After confirmation … distribution is made only to creditors with allowed claims. Even if the plan specifically provides for payments on a creditor's claim, the creditor is not entitled to distributions without an allowed claim."). A claim is an Allowed Claim when no objections to its allowance have been filed or any objections have

---

[1] Doc. 1050, Art. V(E)) ("Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim."); Doc. 1050, Art. XI(J)(2) ("Notwithstanding any other provision of the Plan or the Liquidation Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.")

7

been settled, waived, withdrawn, or overruled by a final order of the Court.[2] The Trustee has objected to MercyOne's Claim and this objection has not been settled, waived, withdrawn, or overruled. MercyOne's claim remains a Disputed Claim, which the Plan and LTA explicitly forbid the Trustee from paying:

> Notwithstanding any provision herein to the contrary, the Disbursing Agent shall only make Distributions to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.

Doc. 1050, Art. V(E).

> Notwithstanding any other provision of the Plan or the Liquidation Trust Agreement, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

Doc. 1050, Art. XI(J)(2). The use of a "notwithstanding" clause clearly shows that the drafter intended these provisions to prevail over any that could be interpreted to allow the Trustee to pay Disputed Claims. See State v. Hess, 983 N.W.2d 279, 289

---

[2] The full definition of "Allowed Claim" provided in the Plan is as follows:

> [A] Claim or any portion thereof (a) that has been allowed by a Final Order of the Court, (b) that has been scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero in the Schedules, and the Schedules have not been amended with respect to such Claim on or before the Claims Objection Deadline or the Filed Proof of Claim and either (i) no objection to its allowance has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount (x) in the Plan or (y) after the Effective Date, by the Liquidation Trustee in writing.

Doc. 1050, Art. II(A) at 1.13.

(Iowa 2022) ("The 'notwithstanding' clause … supersedes the otherwise conflicting mandatory language[.]"); United States v. Shkreli, 47 F.4th 65, 72 (2d Cir. 2022) ("The Supreme Court has indicated that 'the use of such a "notwithstanding" clause clearly signals the drafter's intention that the provisions of the "notwithstanding" section override conflicting provisions of any other section.") (quoting Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993)); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 127 (2012) ("[T]he catch-all *notwithstanding* is a fail-safe way of ensuring that the clause it introduces will absolutely, positively prevail"). If the Court were to endorse the Trustee's interpretation, it would render those provisions superfluous.

Even if MercyOne's Claim was not considered a Disputed Claim (which it is), the Plan and LTA place additional restrictions on the payment of claims that would apply here. Section 7.12 of the LTA states the following:

> To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtors or the Liquidation Trust on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court, administrative tribunal, or such other court having jurisdiction over the matter.

On August 6, 2025, the TOC filed a Complaint for Avoidance and Recovery of Fraudulent Transfers, Voidable Transfers, Breach of Contract, Unjust Enrichment, Negligent Misrepresentation, Breach of Fiduciary Duties, and Other Relief against

9

several defendants, including MercyOne. The demand listed in the Complaint is $55 million. Clearly, MercyOne "is or may be liable to the Debtors or the Liquidation Trust on account of a Cause of Action" and "no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Court." There is no way for the Trustee to pay MercyOne's claim without running afoul of the terms of the Plan and LTA. No provision of either agreement permits the Trustee—or the Oversight Committee—to do what they are attempting to do here.

Under the applicable law, the Plan, and the LTA, Trustee's attempt to enforce payment of MercyOne's claim fails on the record before this Court.

### D. 11 U.S.C. § 1123(a)(4) – Equal Treatment of Claims

Even assuming the Court's above conclusion is not dispositive, the Court finds Trustee's second argument equally unavailing. In response to MercyOne's argument that payment of its claim would treat it better than similarly situated creditors in violation of 11 U.S.C. § 1123, the Trustee asserts that if section 1123 is applicable here, payment of MercyOne's claim would not constitute unequal treatment because it would not be "treatment for" MercyOne's Claim, but "consideration for valuable new commitments." The Trustee cites In re Peabody in support of that argument. In that case, the Eighth Circuit held that "a reorganization plan may treat one set of

claim holders more favorably than another so long as the treatment is not for the claim but for distinct, legitimate rights or contributions from the favored group separate from the claim." 933 F.3d at 925.

Assuming, without deciding, that section 1123 applies in this context, the Court finds this case is distinguishable from Peabody, a case decided on appeal from a confirmation order. Id. at 921. Section 1123(a)(4) states: "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest. …" In Peabody, qualifying creditors were given the opportunity in the Plan to purchase discounted preferred stock in exchange for executing agreements that obligated them to buy set amounts of preferred stock, purchase shares of common and preferred stock that did not otherwise sell, and to support the plan in the confirmation process. Peabody, 933 F.3d at 922. The Eighth Circuit held that this opportunity to purchase discounted preferred stock, though only available to qualifying creditors, did not constitute unequal treatment of claims because the creditors had made "valuable new commitments" in exchange—i.e., agreeing to buy more stock and support the plan. Id. at 925. The opportunity to purchase discounted stock was compensation for those commitments, not treatment for the creditors' claims, and was included in the plan.

Here, there is no similar provision in the Plan allowing MercyOne to make new commitments. MercyOne has not made any such new commitments to assist the implementation of the Plan. Trustee's suggestion that the benefit to the Trustee, the Trust, or the overall case by getting rid of the appeal is such a new commitment, or new value is misplaced. MercyOne did nothing to add value or give up a right in exchange for a benefit like the creditors in <u>Peabody</u>. In fact, MercyOne rejected the Trustee's proposal and took no action at all. <u>Peabody</u> is thus distinguishable and does not control the present case. None of the elements of <u>Peabody</u> are implicated, nor does the Plan permit what Trustee proposes here.

### III.    CONCLUSION/ORDER

For the foregoing reasons, the Motion to Compel Acceptance of Payment is DENIED.

Ordered: October 15, 2025

Thad J. Collins
Chief Bankruptcy Judge