# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1654

_____

Mercy Health Network, doing business as MercyOne

*Appellant - Appellant*

v.

Mercy Hospital, Iowa City, IA, also known as Mercy Iowa City, also known as
Mercy Home Care, also known as Mercy Iowa City Home Care, also known as
Mercy Iowa City Cancer Care, also known as Mercy Iowa City Heart Care; Mercy
Services Iowa City, Inc.; Mercy Iowa City ACO, LLC

*Appellees*

Dan Childers, Successor Liquidation Trustee of the Mercy Hospital Liquidation
Trust

*Trustee - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 15, 2026
Filed: June 12, 2026

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Mercy Health Network (MercyOne) is a creditor of Mercy Hospital, Iowa City, Iowa (Mercy Hospital), a debtor in Chapter 11 bankruptcy proceedings. After Mercy Hospital filed for Chapter 11 bankruptcy, MercyOne appealed the bankruptcy court's confirmation of the plan of reorganization. The district court[1] dismissed MercyOne's appeal, holding that it was not a "person aggrieved" by the order and thus lacked standing. MercyOne appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of the appeal.

I.

Mercy Hospital and its related entities (collectively, the Debtors) filed for Chapter 11 bankruptcy in August 2023. As relevant here, the Debtors' plan of reorganization (the Plan) included "Third-Party Releases" that prevent non-debtor third parties from bringing future lawsuits related to the Debtors against third parties affiliated with the Debtors. These releases specify that

> the Releasing Parties shall . . . release, waive, and discharge the Released Parties from any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, liability . . . or right to payment . . . for any act or omission in connection with [or] relating to . . . the Debtors.

The releases protect a broad swath of parties, including "Key Parties" such as the Debtors as well as "Remote Released Parties" such as "current and former directors, managers, officers . . . representatives, and other professionals and advisors." However, creditors did not have to agree to these releases. If a creditor voted against the Plan and opted out of these releases, the creditor would not be bound by them and would be free to sue the parties referenced in the releases. In addition to the

---

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

-2-

Third-Party Releases, the Plan included "Debtor Releases." These contain the same language about relinquishing future claims against Key Parties and Remote Released Parties, but the Debtors, rather than third parties, are the ones issuing them. The Plan also creates a Liquidating Trust into which any unreleased legal claims are funneled, and it designates a Liquidating Trustee who has the power to pursue these claims.

MercyOne opted out of the Third-Party Releases and objected to the Plan's confirmation in bankruptcy court. MercyOne's sole objection was that the Third-Party Releases and Debtor Releases were overbroad because they extended protection to remote third parties and were thus invalid under In re Master Mortgage Investment Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994). MercyOne's claim against the Debtors was approximately $31,500—well below 0.1% of the total amount of allowed claims. Because this claim was unsecured and was not to be paid in full, MercyOne is an impaired creditor. Notwithstanding MercyOne's vote against the Plan, the five voting classes voted to approve the Plan with approval ranges from 88.14% to 100% by vote number. MercyOne's objection was the only one pending at the time that the bankruptcy court confirmed the Plan.

The bankruptcy court found that MercyOne lacked standing to challenge the validity of the releases. Because MercyOne had already opted out of the Third-Party Releases, it was not bound by them in the first place and did not stand to gain anything if the releases were invalidated. And because MercyOne offered no credible argument that the Debtor Releases harmed its ability to recover on its claim, it also lacked standing to challenge them. Accordingly, the bankruptcy court overruled MercyOne's objection and confirmed the plan. MercyOne then appealed the bankruptcy court's decision to the district court, and the Debtors responded by moving to dismiss for lack of standing.

The district court agreed with the bankruptcy court and dismissed MercyOne's appeal for lack of standing. It found that MercyOne lacked standing to challenge the Third-Party Releases because MercyOne had already opted out of

-3-

them, and it rejected MercyOne's theories of harm allegedly caused by the Debtor Releases as being either "purely speculative" or not supported by law. The district court also determined that MercyOne's arguments would fail on the merits even if MercyOne did have standing to challenge the releases. Accordingly, the district court granted the Debtors' motion to dismiss.

## II.

MercyOne challenges the district court's dismissal of its appeal based on lack of standing. "We review standing *de novo*." Smith v. UnitedHealth Grp. Inc., 106 F.4th 809, 812 (8th Cir. 2024). "Standing in a bankruptcy appeal is narrower than Article III standing." In re Wigley, 886 F.3d 681, 684 (8th Cir. 2018) (citation omitted). "[O]nly a 'person aggrieved' has standing to bring a bankruptcy appeal." Id. While "almost by definition, all appellants may claim in some way to be 'aggrieved,'" a party "is a 'person aggrieved' with standing to bring a bankruptcy appeal only if [it] has been 'directly and adversely affected pecuniarily' by an order of a bankruptcy court." Id. (citations omitted). In other words, the person must show that the "bankruptcy court order diminishes the person's property, increases the person's burdens, or impairs the person's rights." Id. (citation omitted). The purpose of this doctrine is "to prevent bankruptcies from being needlessly prolonged by parties whose interests are not central to the process." Opportunity Fin., LLC v. Kelley, 822 F.3d 451, 460 (8th Cir. 2016) (citation omitted). "Allowing appeals from parties who have suffered only an indirect harm . . . would defeat the very purpose underlying our person aggrieved standard." In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1326 (11th Cir. 2014), cited favorably in Opportunity Fin., 822 F.3d at 459.

A party does not have standing to appeal a bankruptcy court's order if it cannot materially benefit from the relief it is seeking. See In re Wigley, 886 F.3d at 684. In Wigley, we held that an appellant lacked standing to challenge an order denying the confirmation of a reorganization plan because the order did not exacerbate her preexisting exposure to liability. Id. at 685. While the proposed plan would have

-4-

limited the appellant's monetary liability in a separate civil suit, we noted that the "risk of liability and burden of litigation that [she] might [have] face[d] . . . pre-existed [the] bankruptcy proceeding." Id. Thus, because the order denying confirmation of the plan "d[id] not increase [the appellant's] burdens or diminish her rights" but "merely maintain[ed] the status quo ante," we held that the appellant lacked standing to appeal. Id. (emphasis omitted); see also In re Hecker, 496 B.R. 541, 550-51 (B.A.P. 8th Cir. 2013) (holding that an appellant lacked standing to challenge a bankruptcy court order because the order "had absolutely no effect on" the appellant's interest and thus the appellant "would not benefit" from a reversal of the order).

Like the appellant in Wigley, MercyOne would not gain anything from a reversal of the bankruptcy court's order. See 886 F.3d at 685. Because MercyOne already opted out of the Third-Party Releases, it is not bound by them regardless of whether they are held to be enforceable. MercyOne cannot gain a new ability to sue the Remote Released Parties because it never surrendered this right in the first place. As the bankruptcy court's order here "d[id] not increase [MercyOne's] burdens or diminish [its] rights" but "merely maintain[ed] the status quo ante," id. (emphasis omitted), MercyOne cannot challenge it. Furthermore, the mere fact that MercyOne wants to correct a perceived error in the Plan does not give MercyOne standing to appeal. See In re Cap. Contracting Co., 924 F.3d 890, 898 (6th Cir. 2019) ("[A party] may not assert merely the 'vindication of the rule of law' as its basis for harm without alleging an actual injury . . . . [because the] 'psychic satisfaction' that the bankruptcy 'laws are faithfully enforced' 'is not an acceptable Article III remedy[.]'" (citations omitted)); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

MercyOne argues that it has standing because the inability of the Liquidation Trustee to sue the released parties, due to the Debtor Releases, could theoretically lower the total amount of funds recovered for the creditors, which would reduce the pro rata share distributed to MercyOne. But this theory of harm is completely

-5-

speculative.  Indeed, as the district court observed, "MercyOne has not identified a single claim that the Debtors released that would have (or even could have) increased its recovery."  Speculation about hypothetical lawsuits and an increased hypothetical recovery, with no specific facts, does not show that one has been "directly and adversely affected."   See In re Wigley, 886 F.3d at 684 (citation omitted).  MercyOne's theory of harm is the exact type of "indirect harm" where allowing an appeal "would defeat the very purpose underlying our person aggrieved standard."  In re Ernie Haire Ford, 764 F.3d at 1326.

Similarly, MercyOne argues that it has standing because, as an impaired creditor, it will not recover its entire claim under the Plan.  But MercyOne does not seek to recover its claim in full under the Plan; it only seeks to invalidate the releases of remote third parties, by which it was never bound.  MercyOne also does not point to any precedent from this Court establishing that impaired creditors automatically have standing to appeal a bankruptcy court order, and the out-of-circuit cases it cites do not apply because they all involve creditors who, unlike MercyOne, sought to remedy concrete pecuniary harms under the order challenged.  See, e.g., In re P.R.T.C., Inc., 177 F.3d 774, 778 (9th Cir. 1999) (holding that a creditor had standing to appeal a bankruptcy court order that left the estates from which the creditor could recover "without any other significant asset"); Katebian v. Ogier, 654 B.R. 402, 411 (N.D. Ga. 2023) (noting that the bankruptcy court order being appealed "affected both the Property's minimum and actual sale price"); In re DBSD N. Am., Inc., 634 F.3d 79, 89 (2d Cir. 2011) ("After confirmation [of the plan], however, [the creditor] stood to receive property worth less than half [of its claim]."). Ultimately, "whether or not [a party] is a *creditor* misses the point.  To have standing to appeal, [a party] must demonstrate [it] has a direct and adverse pecuniary interest in each order [it] challenges."  In re Am. Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir. 1994); see also In re P.R.T.C., 177 F.3d at 778 (noting that courts "have been reluctant to afford broad standing to creditors" because doing so would create "a rule that any party who is involved either directly, indirectly or tangentially in the bankruptcy proceeding has the power to appeal from almost any order entered by the bankruptcy judge" (citation omitted)).  Accordingly, we agree with our sister

circuits who have held that unsecured creditors do not have standing to appeal a bankruptcy court order when it is only "'theoretically possible' that [they] would benefit" from their appeal.  In re GT Automation Grp., Inc., 828 F.3d 602, 605 (7th Cir. 2016); see also In re Richardson Indus. Contractors, Inc., 189 F. App'x 91, 93 (3d Cir. 2006).

Lastly, MercyOne argues that it has standing because the Plan's confirmation allowed MercyOne to be subject to costly discovery requests from other parties in the bankruptcy proceedings.  But "a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved" because "the harm [the party] suffer[s] remains indirect."  Opportunity Fin., 822 F.3d at 458-59.  Thus, the district court properly concluded that MercyOne lacked standing to appeal.

### III.

For the foregoing reasons, we affirm the district court's dismissal of MercyOne's appeal.

STRAS, Circuit Judge, concurring.

Under our precedent, I agree that MercyOne is not "aggrieved" by the hospital's bankruptcy plan. *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 458 (8th Cir. 2016) (citation omitted).  The mystery is why we still have a restrictive test for "bankruptcy [appellate] standing" at all.[2]  *In re Wigley*, 886 F.3d 681, 684 (8th Cir. 2018); *see In re Roman Cath. Church of Archdiocese of New Orleans*, 101 F.4th 400, 408 (5th Cir. 2024) (questioning its continued viability); *In re Cap. Contracting*

---

[2]"Bankruptcy standing" generally describes a party's ability to object in the bankruptcy court, *see* 11 U.S.C. § 1109(b); *Kiviti v. Bhatt*, 80 F.4th 520, 534 n.11 (4th Cir. 2023), whereas "bankruptcy appellate standing" is about who can appeal a bankruptcy order, *see* 28 U.S.C. § 158(a)(1), (d)(1); *Kiviti*, 80 F.4th at 534 n.11.  The issue here is whether MercyOne has standing to appeal.

*Co.*, 924 F.3d 890, 896–97 (6th Cir. 2019) (same).  It cannot come from the Bankruptcy Code, which dropped the "person aggrieved" language nearly five decades ago.  *See In re Krause*, 637 F.3d 1160, 1168 (10th Cir. 2011) (Gorsuch, J.) (noting that "the 'person aggrieved' phrase no longer appears").  Our answer, at least since then, is that it is "essentially prudential," *In re Wigley*, 886 F.3d at 684 (quoting *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)), but that label can be "misleading" and "inapt," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 127 n.3 (2014).

Some courts believe the answer lies in the zone-of-interests test.  *See In re Peeples*, 880 F.3d 1207, 1213, 1215–16 (10th Cir. 2018) (discussing the zone of interests in a bankruptcy-standing case); *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325–26 (11th Cir. 2014) (same).  But it is a poor fit because the statute does not say anything about who can appeal.  *See Lexmark*, 572 U.S. at 127 (explaining that courts should "us[e] traditional tools of statutory interpretation" to decide "[w]hether a [claimant] comes within the 'zone of interests'" (citation omitted)).  If anything, Congress has left us guessing since 1978.  *See Opportunity Fin.*, 822 F.3d at 457; *see also* 28 U.S.C. § 158(a)(1), (d)(1) (authorizing appeals without specifying who can bring them).

The closer match, at least in my view, is the prohibition on third-party standing.  It requires parties to "generally . . . assert [their] own legal rights and interests," not those belonging to "others."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Although there are a few "narrow" exceptions, "the litigants themselves still must have . . . a sufficiently concrete interest in the outcome."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024) (citation omitted).

Consider how it would apply here.  MercyOne opted out of the third-party releases and was never bound by the ones covering the debtors, meaning its challenges really belong to someone else.  As other courts have recognized, this scenario is common in bankruptcy.  *See, e.g.*, *In re Krause*, 637 F.3d at 1168 (remarking that "[t]hird-party standing is of special concern in the bankruptcy

-8-

context" and refusing to consider a bankruptcy challenge when "[t]hose affected by the bankruptcy court's order . . . d[id] not seek to appeal [it]" (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988)); *In re Andreuccetti*, 975 F.2d 413, 420 (7th Cir. 1992) (concluding that the appellants "lack[ed] standing to challenge" certain claims because they did not "hold any of [them], nor d[id] they assert" that they were "adversely affected by the plan's treatment of [them]").  And when it comes up, what the "person aggrieved" standard really does is filter out parties who lack "the appropriate incentive" to litigate the issues they are raising. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

If so, bankruptcy standing may have a sturdier foundation than we think. Unlike other "prudential" justiciability doctrines, this one is "closely related to Art[icle] III concerns," if not partially rooted in its "case-or-controversy requirement." *June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 363 (2020) (Thomas, J., dissenting) (alteration in original) (quoting *Warth*, 422 U.S. at 500).  The reasons for its survival may well lie there.  But whatever the answers to these deeper questions, precedent compels dismissal *here*, so they can await another day.

—————————————————